charges for conduct they regulate and defend at the same time after AB 3249, where it was announced by wire: "The State Bar of California announced today that this year's $308 billion State Budget will furnish more than $105 million in funding for access to justice efforts through the State Bar, supporting legal aid organizations that serve low-income Californians facing evictions and other forms of housing insecurity, mounting debt, and other legal problems. This supplements the more than $50.5 million in funds the State Bar plans to distribute for similar assistance from Interest on Lawyers' Trust Accounts (IOLTA) earnings in 2023."

405.    "The Legal Aid Association of California and California Access to Justice Commission were pivotal to the success in advocating for these resources [which were setup by our executive director in a "private and public" collaboration]. The funding, some of which is multiyear, will be distributed primarily by the State Bar's Legal Services Trust Fund Commission to legal aid organizations statewide. Through its distribution of pooled interest accumulated in IOLTA accounts, as well as the state-funded Equal Access Fund, the State Bar is the state's largest legal aid funder" [the foregoing may reflect 10,000+ violations or this section].

## OVERT ACTS CONSTITUTING EXTORTION

### [OVERT ACTs #35] 18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 873 - Blackmail

406.    The foregoing conduct is incorporated by reference, in each instance "[w]hoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than one year, or both" and Plaintiff continues to false knowingly false charges from the Racket of securities fraud that are subject to res judicata, and were brought and maintained without probable cause in the first instance on September 14, 2018.

### [OVERT ACTs #36] 18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 873 - Blackmail

407.   The foregoing conduct is incorporated by reference, where the Racket, fronted by KJC, did use a threat of force and fear against O'CONNOR, COOPER and HIGGERSON on or around January 23, 2019 to provide their signatures and property under color of official right, and each were fearful, and they did provide their signatures and property to KJC in exchange of submission and participation in deliberate schemes to defraud by the Racket because of that fear. And they did get charged with securities violations expressly distributed by KJC, TJO, BW, and CLC on October 14, 2018. And claims are purportedly tolled derivatively to "bring later" by KJC.

**[OVERT ACTs #37] 18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 873 - Blackmail**

408.   The foregoing conduct is incorporated by reference, where JTT did use the threat of fear on September 8, 2021, and also the wire to communicate, and did use the protection Racket, in order that he could extort the signatures and property of Plaintiff, having successfully done the same for COOPER, ZAKHIREH, HIGGERSON, O'CONNOR, and DUFFY to provide false evidence and testimony with KJC in Orange County Superior Court with full knowledge of EDM, GRANDT, and DURAN, and even despite DURAN's public statements in 2022, that they indeed continue to file and maintain actions without probable cause known on factual or legal circumstance to any reasonable person or attorney, and Beck was fearful and did suffer damages, and the courts were and continue to be defrauded, and financial institutions associated with Scottsdale Insurance Co. are defrauded and will be defrauded without federal intervention.

### OVERT ACTS CONSTITUTING EXTORTION

409.   **18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 876 - Mailing threatening communications** holds **"(d)** Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the

136

reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both."

410.    **Plaintiff incorporates G059766, and its citation of** *Cultivation Techs. v. Duffy*, No. G059457, 5 (Cal. Ct. App. Nov. 12, 2021) ("In October 2019, while Catanzarite was counsel of record for CTI in the Fincanna and Scottsdale actions, it filed a motion on behalf of the Mesa Action plaintiffs for the court to appoint a receiver over CTI. Thereafter, CTI expended a great deal of time and money to have the court disqualify Catanzarite as its legal counsel. Soon thereafter, Catanzarite dismissed the Scottsdale Action but asserted it still represented CTI's subsidiaries.")

**[OVERT ACTs #38] 18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 876**

411.    Plaintiff shows the foregoing Overt Acts 1-37 are executed with at least legal malice and/or intend to defraud by DURAN, STATE BAR, GRANDT, KJC, and that each act violates this section as to each act using Racket protection adjudicated in "21-12766" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, (11th Cir. Mar. 9, 2022) as being set forth here as a series of acts violative of this section and any statements from the Racket in this action which purport to have authority to take from Plaintiff give context to the activity.

**[OVERT ACTs #39] 18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 876**

412.    Filing and allowing Pinkerton Action, MFS Action, and Scottsdale Action, and each letter in furtherance thereof, and each wire, was violative of this section as a matter of law.

413.    Each KJC, EDM, TJO, JTT, GRANDT, NMC, DURAN, are involved in these acts.

**[OVERT ACTs #40] 18 U.S.C. § 1961(1)(A) and 18 U.S. Code § 880 and/or Cal. Pen. Cod. § § § 518, 522, 523 in Each Instance**

414.    **§ 1961(1)(A) and 18 U.S. Code § 880 - Receiving the proceeds of extortion** "A person who receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter that is punishable by imprisonment for more than 1 year, knowing the same to have been unlawfully obtained, shall be imprisoned not more than 3 years, fined under this title, or both."

415.    **Also, a serious crime under Cal. Pen. Cod. § 518,** (a) Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right.(b) For purposes of this chapter, "consideration" means anything of value, including sexual conduct as defined in subdivision (b) of  Section 311.3, or an image of an intimate body part as defined in subparagraph (C) of paragraph (4) of subdivision (j) of Section 647"

416.    **Also § 522 holds** "[e]very person who, by any extortionate means, obtains from another his signature to any paper or instrument, whereby, if such signature were freely given, any property would be transferred, or any debt, demand, charge, or right of action created, is punishable in the same manner as if the actual delivery of such debt, demand, charge, or right of action were obtained.". Plaintiff incorporates the conduct of KJC against COOPER, HIGGERSON here.

417.    **Also § 523 holds (a)** "[e]very person who, with intent to extort property or other consideration from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519 is punishable in the same manner as if such property or other consideration were actually obtained by means of such threat." Plaintiff shows KJC 1/28/19 letter, adjacent acts.

418.   **OVERT ACTs #1-40** are incorporated here, where EDM, GRANDT, DURAN, CLC, STATE BAR, NMC, KJC, JTT, and DOES are each violating this section where they accept proceeds from and/or conceal in favor of market participants so that others pay for their operations, and they do unlawfully take from Plaintiff, and they do so maliciously and knowingly to Plaintiff.

### ACTS CONSTITUTING INTERFERENCE WITH COMMERCE BY THREAT

419.   **18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1951 - Interference with commerce by threats** reads "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." "**(b)** As used in this section—**(1)** The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. **(2)** The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. **(3)** The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."

139

**[OVERT ACTSs #81-160] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1951**

420.    Overt Acts 1-80 were in restraint of commerce, and violative of this section.

**ACTS CONSTITUTING DISTRIBUTING UNLAWFUL ACTIVITY FUNDS**

**[OVERT ACTSs #160-320] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1952(a)(1)**

421.    18 U.S.C. § 1952(a)(1) holds "**(a)** Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—**(1)** distribute the proceeds of any unlawful activity; and thereafter performs or attempts to perform— **(A)** an act described in paragraph (1) or (3) to [otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity [] shall be fined under this title, imprisoned not more than 5 years, or both; [and] **(b)** As used in this section (i) "unlawful activity" means [] (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title and (ii) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States. **(c)** Investigations of violations under this section involving liquor shall be conducted under the supervision of the Attorney General. **(d)** If the offense under this section involves an act described in paragraph (1) or (3) of subsection (a) and also involves a pre-retail medical product (as defined in section 670), the punishment for the offense shall be the same as the punishment for an offense under section 670 unless the punishment under subsection (a) is greater. **(B)** the term "insured depository institution" shall have the meaning given the term in section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813).

422.    Each of the Overt Acts #1-160 involved extortion, bribery, and violations of §§ 1956, 1957. KJC, DURAN, GRANDT, WILSON, JTT, BW, NMC, and TJO did undertake them.

## ACTS CONSTITUTING CARRYING ON UNLAWFUL ACTIVITY

423.   **18 U.S.C. § 1952(a)(3) This code section applies to (a)** [DURAN, GRANDT, KJC, BW, NMC, JTT, EDM, and TJO] …[who used] the mail or any facility in interstate or foreign commerce [STATE BAR, CLC], with intent to—**(3)** otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity."

### [OVERT ACTSs #321-640] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1952(a)(3)

424.   Plaintiff incorporates each of the foregoing Overt Acts #1-320 as being Overt Acts 321-640 here violative of this section, as they did intend to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Overt Acts #1-320, and where each Overt Act #1-320 meets the definition of "unlawful activity," and each act does constitute violation of this section by DURAN, GRANDT, KJC, BW, NMC, JTT, EDM, and TJO

425.   The overt acts identified above have similar methods, beneficiaries, and victims, and they do pose a threat of continuing according to overwhelming evidence.

## ACTS CONSTITUING LAUNDERING OF MONETARY INSTRUMENTS

426.   **18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1956 - Laundering of monetary instruments holds "(a)(1)**Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—**(A)(i)** with the intent to promote the carrying on of specified unlawful activity **(B)** knowing that the transaction is designed in whole or in part— **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or **(ii)** to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever

is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement. **(3)**Whoever, with the intent— **(A)** to promote the carrying on of specified unlawful activity; **(B)** to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or **(C)** to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section. **(b)Penalties.**— **(1) In general.**—Whoever conducts or attempts to conduct a transaction described in subsection (a)(1) or (a)(3), or section 1957, or a transportation, transmission, or transfer described in subsection (a)(2), is liable to the United States for a civil penalty of not more than the greater of— **(A)** the value of the property, funds, or monetary instruments involved in the transaction; or **(B)** $10,000 **(c)** As used in this section— **(1)** the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7); **(2)** the term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction; **(3)** the term "transaction" includes a

purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition, and with respect to a financial institution includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected; **(4)** the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree; **(5)** the term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery; **(6)** the term "financial institution" includes— **(A)** any financial institution, as defined in section 5312(a)(2) of title 31, United States Code, or the regulations promulgated thereunder; and **(B)** any foreign bank, as defined in section 1 of the International Banking Act of 1978 (12 U.S.C. 3101); **(7)** the term "specified unlawful activity" means— **(A)** any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31; **(D)** section 152 (relating to concealment of assets; false oaths and claims; bribery)

### [OVERT ACTSs #641-1280] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1956

427.    Every transaction above involving CLC, KJC, JTT, BW, NMC consists of specified unlawful activity violative of section 1961(1), which is specifically defrauding at least Scottsdale

Insurance Co., and IOLTA financial institutions, and each company that is engaged in payments or indemnification of the lawyers engaged in this conduct under express authority of State.

428.   EDM, GRANDT, DURAN are receiving some form of unlawful consideration violative of section 152, and each CLC, KJC, JTT, BW, NMC did make unlawful oaths and claims, and did engage in bribery or receive consideration without regard for the harm to Plaintiff, or the harm to society and democracy.

**ACTS CONSTITUTING DEALING IN MONEY/PROPERTY/UNLAWFUL ACTIVITY**

429.   18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1957- Engaging in monetary transactions in property derived from specified unlawful activity **(a)** Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b). **(e)** Violations of this section may be investigated by such components of the Department of Justice as the Attorney General may direct, and by such components of the Department of the Treasury as the Secretary of the Treasury may direct, as appropriate, and, with respect to offenses over which the Department of Homeland Security has jurisdiction, by such components of the Department of Homeland Security as the Secretary of Homeland Security may direct, and, with respect to offenses over which the United States Postal Service has jurisdiction, by the Postal Service. Such authority of the Secretary of the Treasury, the Secretary of Homeland Security, and the Postal Service shall be exercised in accordance with an agreement which shall be entered into by the Secretary of the Treasury, the Secretary of Homeland Security, the Postal Service, and the Attorney General. **(f)** As used in this section— **(1)** the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution

(as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution; **(2)** the term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense; and **(3)** the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in section 1956 of this title.

**[OVERT ACTSs #1281-2560] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1957**

430.    Incorporating all of the foregoing overt acts 1-1280, Defendants, and each of them, have engaged in violations of this section in that they have engaged in monetary transactions shown in or affecting interstate commerce, or through monetary instruments, under the Racket, and IOLTAs and the related financial institutions which are published and available for investigators, and it does come from criminally derived property as set forth by Overt Acts 1-1280, and Defendants do know this but continue it with impunity.

**ACTS CONSTITUTING ILLEGAL MONEY TRANSMITTING BUSINESS**

431.    18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1960 - Prohibition of unlicensed money transmitting businesses holds "(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both. (b)As used in this section— (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and— (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable; (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31,

United States Code, or regulations prescribed under such section; or (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity; (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and (3) the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States."

**[OVERT ACTSs #2561-5120] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1960**

432.    Incorporating each of the foregoing violations and Overt Acts 1-2560, STATE BAR and CLC each did transfer funds on behalf of the public by any and all means including but not limited to transfers within this country by wire, check, undisclosed cash or other consideration to public employees or elected officials like GRANDT, DURAN, EDM and it was by draft, fax, or courier, and it did happen within the United States, and specifically California and Florida, and it did occur knowingly or at least with legal malice as to its effects on Plaintiff, or the cumulative, unsustainable effect on public, courts, and legal profession.

433.    DURAN, GRANDT, WILSON, and KJC know they are operating an illegal money transmitting business, and that there are predicate convictions for the same among their constituents from IOLTAs, and that there is predicate or parallel conduct in Orange County Superior Court convicted citing more than two acts of racketeering, and they were convicted for more than two acts in Orange County Superior Court, and that they are using their IOLTAs and sending funds affecting state commerce, and they do not, or are not using appropriately, a money transmitting business license or State supervision over IOLTAs and Enterprise 3+, and each know that some of the funds were derived from crimes, even against Plaintiff as victim specifically.

146

## ACTS CONSTITUTING VIOLATION OF RESTRICTED FINANCIAL DEALING

434.     **29 U.S.C. § 186 says** "(a) Payment or lending, etc., of money by employer or agent to employees, representatives[]. It shall be unlawful for any employer [STATE BAR, CLC] or association of employers [Enterprise 3+] or any person who acts as a…adviser [DURAN, GRANDT, EDM, WILSON], or consultant [WILSON] to an employer [STATE BAR] or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—(1) to any representative of any of his employees who are employed in an industry affecting commerce; [such as STATE BAR, CLC, Racket, Legal Aid Organizations Receiving $78 to $155.5 million annually among peers, Enterprise 3+] or (2) to any labor organization [California Lawyers Association; Local Bar Associations in California], or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; [to the Racket and/or Judiciary and/or Enterprise 2 to benefit Enterprise 1 and/or Enterprise 3+ through the selective use of functions and funding of THE STATE BAR OF CALIFORNIA and judiciary]; or (3) to any employee or group or committee of employees [Enterprise 1] of such employer employed in an industry affecting commerce [Enterprise 3+] in excess of their normal compensation for the purpose of causing such employee or group or committee [Board of Trustees, Office of Chief Trial Counsel, Office of General Counsel, Intake, Investigations, State Bar Court, California Supreme Court, judicial officers, clerks] directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; (b) Request, demand, etc., for money or other thing of value (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of section 52 of this title, and the provisions of chapter 6 of this title."

147

**[OVERT ACTSs #5121-10,240] in violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 186**

435.    Each of the foregoing Overt Acts #1-5120 did violate this section as a matter of federal law, where "The State Bar of California announced today [July 13, 2022 – the day the Fourth District, Division Three agreed that he is the victim of judicial and nonjudicial fraud in *Beck v. Catanzarite Law Corp.*, No. G059766, (Cal. Ct. App. Jul. 13, 2022); where he has faced the threat of homelessness by judicial extortion together with his partner] that this year's $308 billion State Budget will furnish more than $105 million in funding for access to justice efforts through the State Bar, supporting legal aid organizations that serve low-income Californians facing evictions and other forms of housing insecurity, mounting debt, and other legal problems. This supplements the more than $50.5 million in funds the State Bar plans to distribute for similar assistance from Interest on Lawyers' Trust Accounts (IOLTA) earnings in 2023."

436.    A violation of § 2314 occurs when anyone "transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities, or money" worth more than $5,000, knowing that they have been "stolen, converted or taken by fraud.

437.    To violate § 2314, each Defendant need not participate in the underlying unlawful schemes to defraud; the defendant must simply cause the transportation of the funds from IOLTAs, goods, or securities as shown with AEGIS and CLC, knowing that they were procured by fraud. Or there is STATE BAR and CLC as it applies to § 2315, which applies to those who receive the goods or funds, knowing they were procured by fraud.  The specific allegations are incorporated by reference, as being parallel and predicate or as part of all of these acts, and each of them from 2012-2022 and continuing. Fed. R. Civ. P. 9(b).

### ACTS CONSTITUTING VIOLATION OF RESTRICTED FINANCIAL DEALING

438.    Cal. Corp. Cod. § 25401 "It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral

148

communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."

**[OVERT ACTSs #10,241-20,480] in violation of 18 U.S.C. § 1961(1)(B) and Ca. Co. C. § 25401]**

439.    Each of Overt Acts #1-10,240 did violate this section, where KJC, a registered investment advisor under jurisdiction of the United States Securities Exchange Commission with Aegis Asset Management, Inc., whose affiliate is Catanzarite Law Corporation, is still making materially false statements affecting more than $500M in interstate securities in parallel conduct with similar *ultra vires* schemes, and is still engaging in nonjudicial and judicial fraud involving securities, and is still accusing Plaintiff and other innocent people of securities fraud or other criminal conduct while engaging racketeering through a protection racket, and thereby engaging in restricted financial dealing for all times and all Overt Acts 1-10,240, also ratified by DURAN and GRANDT with the Complaint Review Unit, abated by Office of Chief Trial Counsel, and known to all defendants.

440.    KJC did extort for the securities and signatures.

441.    EDM, DURAN, and GRANDT did allow the extortion and securities fraud.

442.    EDM, DURAN, and GRANDT did allow schemes using the signatures and property of coerced parties in favor of their active market participant KJC, who is among the 700 lawyers identified by California State Auditor in Report 2022-030.

443.    EDM, DURAN, KJC, GRANDT are in the parallel profession and markets for legal services after 2015.

444.    KJC, TJO, BW and CLC did use those coerced signatures and securities, of HIGGERSON, COOPER, and O'CONNOR on or around January 23, 2019, in furtherance of a knowingly fraudulent scheme to target Plaintiff with malice.

149

445.     KJC, TJO, BW, NMC, JTT and CLC did use the protection of EDM, GRANDT, DURAN, and did use the Racket, and did, together with STATE BAR, and CLC, partake in gains, influence, moneys, or other consideration for the foregoing acts incorporated by reference.

446.     KJC, TJO, BW, NMC, JTT, CLC, EDM, GRANDT, DURAN did distribute monies or invest or conceal monies horizontally within their trade, and did defraud insurance companies including Scottsdale Insurance Co. and Nationwide.

447.     KJC, TJO, BW, NMC, JTT, CLC, EDM, GRANDT, DURAN did disrupt Plaintiff's right to insurance coverage through all of these acts of extortion or coercion.

448.     KJC, TJO, BW, NMC, JTT, CLC, EDM, GRANDT, DURAN did use IOLTAs improperly to conceal the nature of funds and the distribution thereof.

449.     KJC, TJO, BW, NMC, JTT, CLC, EDM, GRANDT, DURAN did act with malice for improper purposes, and did make knowingly false statements to Courts in relation to these schemes without regard for the truth or Plaintiff's protected rights under the 14th Amendment to the United States Constitution.

450.     KJC, TJO, BW, NMC, JTT, CLC, EDM, GRANDT, DURAN did these things despite actual knowledge of Plaintiff's suffering, and overwhelming evidence that he has been subject to unlawful taking and civil rights violations, they did continue it and oppress him further as recently as October 4, 2022, and it was not privileged.

## ACTS CONSTITUTING OBSTRUCTION OF JUSTICE

451.     **18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1503** holds "**(a)** Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede...or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as

provided in subsection (b)…The punishment for an offense under this section is—
**(3)[]**imprisonment for not more than 10 years, a fine under this title, or both."

**[OVERT ACTSs #20,481-40,960] violation of 18 U.S.C. § 1961(1)(B) and 18 U.S.C. § 1503**

452.   **In obstruction of justice as being each Overt Act 1-20,481, each** with deliberate disregard for Plaintiff and his rights, and with knowing of his severe emotional distress, which any reasonable person or attorney would ascertain, and despite his actual damages to his person, property and business, did deliberately seek to continue the conduct with protection of the Racket and claims of sovereignty or privilege, and/or did seek to conceal it in regards to the damages and harm to ROES 1-150,000, and especially Plaintiff who is part of the suspect class in the public unwilling to accept these injustices.

453.   As context to other parallel conduct alleged by an individual who spoke with Plaintiff, she asserted that "Linkedin just deleted my previous post about a petition that is now going on against judge don franchi. My ex husband filed for a dissolution in a county neither of us resided in two weeks after I fled him to save my own life which is not legal. Judge Don Franchi is associated with CORA, a domestic abuse agency that refused to provide me protection when my ex husband almost killed me. He has been paid out by an attorney associated with the county, Stephen Montalvo. Just to share this one again as it has not only impacted my life, but people have been contacting me about similar situations and this judge is getting away with destroying lives that eventually impact the economy. This is a copy of Don's schedule C of a payout from an attorney within the county as well. #joebiden #cia #fbi #aclu can anyone do anything about this degree of corruption? I have experienced it for the past 7 years now! I literally had the CA unemployment development division unlawfully levy 100% of my account years ago in #sanmateocounty for payroll taxes during a year I did not have any employees. They lied about it for six weeks straight until they finally were able to find the money by the dollar amount only even

151

though I was a sole proprietor the time. This dropped my credit score hundreds of points and while I did get it back, it was too late and it destroyed my entire life. No civil rights entities have done anything about the corruption in San Mateo county for YEARS now." Hopefully, this will change.

### PLAINTIFF'S INJURY STANDING UNDER RICO § 1962

454.    Plaintiff JUSTIN S. BECK's personal standing for a civil RICO claim is established through four factors, satisfied, as Plaintiff is: (1) a "person" (2) who sustained injury (3) to his "business or property" (4) "by reason of" defendants' violation of § 1962 as shown through all of the foregoing overt acts and all other such acts as may be evidenced or shown.

455.    Plaintiff's injuries to business or property derived from overt acts, or "conduct constituting the violation" as specified, where generally, his injuries specific to: (1) § 1962(c) arising from the predicate acts detailed; (2) § 1962(a) arising from the investment of racketeering income; (3) § 1962(b) arising from the acquisition of an interest on or control over an enterprise; (4) § 1962(d) generally stems from the overt acts committed in furtherance, conspiracy. For his damages attributed to criminal conduct shown, he seeks:

A. $8,433,000 Total Past & Future Lost Earnings to Business and Property

B. $27,407,250 Total Lost Earnings Capacity to Business and Property

C. $32,667,351 Business and Property Deliberated Compromised (Merger Shares)

D. $365,000 from 2921 Deer Hollow Way, Unit 314, Fairfax, VA 22031 (Converted)

E. $5,649,297 Business and Property in March/April 2021 (International PubCo.)

F. $1,700,000 Legal Fees (Paid to Enterprise 1 and Enterprise 3+ via Enterprise 2)

G. $32,667,351 Being a Direct Result of Insurance, Bank Fraud Harming Plaintiff

H. Credit Score, Benefits, Etc. and Special Value of Certain Assets

I. IRA Value of $1,000,000 Depleted Shamefully by Racketeering Damages

456.   For his economic damages attributed to criminal conduct, he seeks at least $138 million total as shown in Orange County Superior Court in State Action 1 and State Action 2 and supported here.

457.   If this honorable Court, or a jury of his peers of non-lawyers agree, Plaintiff also seeks non-economic damages for civil rights violations under the 14th Amendment, where he has also been charged with crimes even despite his innocence being actually known by defendants charging him of the same, and each of them, and the final adjudication of material facts, in each instance causing him mental suffering and emotional distress; mental suffering (past and future); loss of enjoyment of life (past and future); inconvenience (past and future); grief (past and future); anxiety (past and future); humiliation (past and future); taking, and any other relief as may be just for any such violations and any such amounts as may be just, which he believes to be the maximum allowable under the law. If not to him, then to ROES 1-150,000 – administered by neutrals.

458.   Public damages require federal intervention for knowing violations of U.S.C. §§ 1956-1957, and federal receivership over THE STATE BAR OF CALIFORNIA and CATANZARITE LAW CORPORATION for the reasons shown and to ensure payment of Plaintiff's damages as well as restitution for other victims. Plaintiff seeks federal receivership to impose damages upon other defendants protected by the Racket, or to impose or cause to imposed liabilities upon State where subordinate, nonsovereign actors fail to pay despite the ongoing timeliness of their horizontal distributions or probability of their continued prioritization over all.

## STATUTE OF LIMITATIONS

459.   Plaintiff has suffered from a series of distinct damages to his business and property from the conduct constituting the violations of § 1962, commencing September 14, 2018, but unknown as to their criminal, single-scheme nature until January 28, 2019, upon receipt of a threatening letter, sent without standing or authority by email to Plaintiff by KJC.

460.    Plaintiff did not identify, nor could he have possibly identify previously as shown by his reasonable diligence, binding federal law for regulators from United States Supreme Court until September 2022. As soon as he understood the laws, he filed, and has already filed State Action 1 and State Action 2. Plaintiff could not have acted faster, under the circumstances.

461.    Plaintiff could not have and did not know of the pattern of racketeering activity, nor the multi-scheme nature with similar actors, participants, and methods of judicial fraud and active concealment by nonsovereign actors, and where he has further been denied discovery by nonsovereign actors on a claim of sovereignty for the conduct at issue despite his timely filing of all claims pending now in State and Federal Court as appropriate.

462.    Plaintiff mistakenly assumed that STATE BAR licensees in good standing would not be allowed to commit serial fraud and racketeering that injured him, so he could not have possibly filed this action on September 14, 2022 (as being within 4-years under even the most rigorous standards that would not apply here, the date when the Racket caused to be filed the first fraudulent case and derivative action which was not entirely understood at that time by Plaintiff).

463.    Upon learning of the various schemes used by the Racket overall, Plaintiff promptly filed this action. Defendants fraudulently concealed information needed to bring a RICO claim before now, and the Plaintiff could not have discovered all of the foregoing facts or overt acts despite his exercise of reasonable diligence before 2021 after he commenced prosecution of State Action 2 and uncovered the patterns of predicate and parallel conduct involving the Racket and ties to State Action 1.

464.    Plaintiff claims to have proven that The State Bar of California is engaged in intentional acts of fraud, oppression, corruption, legal malice without regard for injury, and/or corruption subject to GOV § 815.3 and GOV § 815.6 that causes serious injury to members of the public.

154

465.    Plaintiff claims, as a matter of law, that The State Bar of California has a duty to protect him and the public codified by enactments and according to the express intent of Legislature and if not then the United States Supreme Court in 2015.

466.    Plaintiff claims to have proven that The State Bar of California lacks capacity as a matter of fact and law, because the issues identified by the California State Auditor in 2002 are materially similar to 2022. Unfortunately, they are likely far worse, which Plaintiff claims is a keystone of corruption and thereby good cause for extraordinary relief and necessary federal intervention under the 14th Amendment to the United States Constitution and under § 1956 and § 1957 where it involves $5 billion held among IOLTAs controlled by the Racket via Enterprise 2.

467.    Plaintiff claims to have evidenced that The State Bar of California, through its licensees including public employees or elected officials and persons acting in a managerial capacity for them, have engaged in and/or enabled conduct that meets the definition of "racketeering activity" and have used the proceeds of such activity to make investments that further the interests or control of persons unknown to the public as to the use of those funds except that they are going to other lawyers, while members of the public are oppressed and disregarded as "de minimis" by the Chairman himself as to Plaintiff specifically on July 20, 2022 with GRANDT.

468.    Plaintiff claims to have evidenced that there are predicate and parallel acts meeting the definition of racketeering activity, thereby constituting a pattern.

469.    Plaintiff claims that the licensing, regulatory, and disciplinary functions of State Bar are injurious (not "protective") of the public, courts, and legal profession because the pattern of results, victims, and methods to cause injury continue and are an acute threat to continue to any person acting reasonably.

470.    Plaintiff claims that persons generally injured by State Bar or its public employees will not or cannot reasonably obtain counsel because the lawyers licensed by the State Bar are

subject to acts of fraud, oppression, legal malice without regard for injury, and corruption, too. Put simply, Plaintiff claims that few, if any licensee will sue State Bar, even though it is expressly subject to the liability sections of Government Claims Act and lacks any form of statutory immunity for the conduct at issue.

471.    Plaintiff shows The State Bar of California's deliberate, selective use of its licensing, regulatory, and disciplinary functions evidence an acute risk that does indeed exist to any attorney that takes cases such as this, previously oppressed under color of state law.

472.    Beck seeks provisional licensure from federal court and the ability to present in federal district court the case for ROES 1-150,000. He also seeks to restrain Enterprise 2 federally.

473.    Beck claims the Court can and should reasonably grant him provisional licensure to practice law under its inherent powers because you need not be a lawyer to be a Supreme Court justice, and no other lawyer will represent ROES 1-150,000 against The State Bar of California nor State of California because of the conduct shown, and the threats and implications it implies.

474.    Plaintiff reserved all rights to pursue federal rights claims in his State Action 1 and State Action 2, and the monopolies involved are now causing the potential federal question over his State Action 1 and State Action 2 claims, where GRANDT, DURAN, EDM, and KJC seek to disclaim liability, impose sovereignty and discretion, or threaten some force or remuneration that must exist based that has nothing to do with Plaintiff's claims or the harm he has suffered.

475.    Ratification of the conduct did not occur, or was not occurring with complete actual knowledge, until it was communicated on July 20, 2022, by GRANDT, DURAN, STATE BAR, and its Board of Trustees – also showing the improper purposes and concealment existing here.

476.    This action is filed, including Plaintiff's right to all claims and damages, and to federal intervention due to a threat of continuance and the veracity of evidence without discovery, and to help ROES 1-150,000 who can't help themselves, within RICO statute of limitations.

## **COUNT I**

### **RICO § 1962(c)**

477.    The allegations of ¶ 1 through ¶ 476 are incorporated here by reference.

478.    Plaintiff did suffer injuries under § 1962(c) arising from the predicate acts detailed.

479.    This Count is against Defendants KENNETH CATANZARITE, ESQ.; RICHARD FRANCIS O'CONNOR JR.; MOHAMMED ZAKHIREH; JAMES DUFFY; ELI DAVID MORGENSTERN, ESQ; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; and DOES 1-2 (the "Count I Defendant(s)").

480.    THE STATE BAR OF CALIFORNIA is an association-in-fact enterprise engaged in and whose activities affect interstate commerce. The Count I Defendant(s) are employed by or associated with the enterprise.

481.    CATANZARITE LAW CORPORATION including the registered investment advisor AEGIS ASSET MANAGEMENT, INC. and Aegis Builders, Inc. is an enterprise engaged in and whose activities affect interstate commerce. The Count I Defendant(s) are employed by or associated with the enterprise.

482.    In July 2017, O'CONNOR and ZAKHIREH did conspire and abuse the United States Securities Exchange Commission's investigatory powers to pursue their own motives.

483.    In July 2017, without regard for the truth, O'CONNOR did testify or provide information in July 2017 that resulted in an investigation of Plaintiff and finding in January 2018 that no conduct gave rise to SEC's administrative powers. Plaintiff incorporates LA-4837, and what was known by O'CONNOR and ZAKHIREH when they did this according to the 25,000 pages of evidence submitted to the United States in response to that predicate scheme.

484.    Their malicious purposes and disregard for the truth did result in the undue expense and resources of the SEC despite their actual knowledge of the falsity of their accusations.

485.    With similar methods and victims in Southern California known to STATE BAR and EDM regarding the "Corzo" and "Corbell" matter shows parallel and predicate series of fraudulent cases filed by the Racket. See JTT's role in appellate musical chairs before September 8, 2021, when he assumed "class action" counsel role for COOPER despite facts known to him.

486.   With similar methods and victims, the "Daymark Matter" is another knowingly fraudulent scheme that also uses non-judicial and judicial fraud to extort through the Racket.

487.   In January 2019, the predicate patterns of racketeering activity among the enterprise, and the bad actors associated with O'CONNOR being DUFFY, COOPER, HIGGERSON, and ZAKHIREH, converged among the Count I Defendant(s) to harm Plaintiff's business and property.

488.   These acts include STATE BAR corruption evidenced by the Thomas Girardi scandal and the instant case, historical disregard for the truth or legal tenets by the State Bar's officials and employees, plus Orange County Superior Court's 2017 "racketeering" convictions for manipulating court documents, and fraudulent accusations levied in July 2017 by ZAKHIREH and O'CONNOR that knowingly led to abuse of the United States' investigator powers (LA-4837).

489.   From September 14, 2018-January 28, 2019, as to Plaintiff, the predicate pattern of racketeering activity with similar methods culminated in a series of acts by KJC, TJO, BW, O'CONNOR, COOPER, HIGGERSON, DUFFY, and ZAKHIREH.

490.   Between January 4, 2019, and January 28, 2019, "after the formation of an alliance between Catanzarite and the O'Conn[o]r Faction [based on a threat of prosecution for securities fraud], Catanzarite embarked on a spectacularly relentless mission (inside and outside of the courtroom) to replace CTI's board members with members of the [the enterprise]. MFS/Catanzarite could not have initiated the MFS Action without the evidence and testimony provided by [Count I Defendants] of the O'Connor Faction [also defendants to a derivative action for "MFS"; and direct action for securities fraud against COOPER, O'CONNOR]. Accordingly, there was enough evidentiary support for Beck's claim Cooper, Higgerson, and Zakhireh, who were O'Connor's loyal allies, were instrumental in the maintenance of MFS Action knowing it lacked probable cause." *Beck v. Catanzarite Law Corp.*, No. G059766, 39 (Cal. Ct. App. Jul. 13, 2022)

159