491. In violation of Cal. Pen. Cod. § 523, on January 28, 2019, KJC did send a threatening letter to Plaintiff without legal authority, and without regard for the truth, with malice.

492. The scheme in January 2019 was powered by the predicate acts of the Count I Defendant(s) and they did damage Plaintiff.

493. The Count I Defendant(s) agreed to and did conduct and participate in the conduct of one or more of the affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

494. For those among Count I Defendant(s) that didn't understand what KJC was doing, they had their own improper purposes that started when O'CONNOR resigned in May 2016.

495. None of the foregoing activity by defendants was an expression of any right of petition or free speech.

496. None of the foregoing activity was subject to litigation privilege in the United States where it gave context to the deliberate schemes to defraud.

497. DURAN, STATE BAR, EDM, WILSON, and GRANDT each acted with malice to conceal in furtherance of their own motives, including the distribution of IOLTA funds derived from the unlawful activity and other predicate schemes.

498. Pursuant to and in furtherance of their fraudulent scheme, Defendant(s) committed multiple related acts violative of § 1962(c) that were enabled or furthered by their predicated activity shown, specifically **[OVERT ACTSs #1-7].**

499. Through **OVERT ACTs #1-7**, KJC, BW, and TJO designed schemes, repeatedly appeared *ultra vires* with malice, and did knowingly file false direct and derivative claims against Plaintiff without standing. Each did so knowing they could rely on EDM, STATE BAR, DURAN, the "Office of Chief Trial Counsel" under EDM protection or the "Complaint Review Unit" (Office of General Counsel) under GRANDT and DURAN protection.

500. They knew they could rely on these state actors, just like Thomas Girardi knew that he could rely on others, or wield his influence in selection of judicial officers, or otherwise politically, using other people's money because of the predicate acts pre-dating Plaintiff's harm.

501. Though it appears he may have swindled hundreds of millions through the judiciary or more and STATE BAR purports to do this with "discretion," an article published by Bloomberg on June 1, 2022 reads "Disgraced attorney Tom Girardi was disbarred Wednesday, with the California Supreme Court ordering the fallen attorney to pay $2,282,507 plus 10% interest for funds stolen from clients. The State Bar Court charged Girardi with 14 counts of violating ethics rules and California law for stealing millions of dollars from clients. Justices adopted a State Bar court order requiring him to pay $2 million to four minor children of Lion Air flight 610 crash victims. The court also required restitution to other clients, including a bankruptcy trustee, Anthem Inc., Medicare, and Garretson Resolution Group. The court ordered $5,000 in sanctions and State Bar court costs. Girardi, who according to a state probate court's order "lacks capacity to make health-care decisions," was placed on the bar's inactive roll in January. The disbarment strikes his name from the California Bar where he's been a member since 1965. The award "may be collected by the State Bar through any means permitted by law," the [State Bar] court said.

502. The preceding acts, and the Overt Acts 1-7 set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

503. The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

504. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property:

$8,433,000 Total Past & Future Lost Earnings to Business and Property; $1,000,000 IRA Depleted Shamefully by Racketeering Damages; and $365,000 from 2921 Deer Hollow Way, Unit 314, Fairfax, VA 22031

505. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count I Defendant(s)

  Violation of 18 U.S.C. 1962(c)

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count I Defendant(s)

  <u>$9,798,000</u> monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count I Defendant(s)

  State to Guarantee All Judgments Awarded Plaintiff in State/Federal Actions

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendant(s)

  <u>$29,394,000</u> monetary judgment jointly and severally for treble damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendant(s)

  <u>Attorney's fees and costs as submitted by cost memo and approved by Court</u>

- ASSIGNMENT OF RACKETEERING INVESTIGATOR, OTHER RELIEF

  42 U.S.C. § 1956 Requires Federal Receivership, Restitution, Investigations

  Federal Receivership Over STATE BAR with Audits of IOLTA Income

  Federal Receivership of Catanzarite Law Corporation for Restitution

  Federal and State Dissolution of Catanzarite Law Corporation

  SEC Investigation of AEGIS ASSET MANAGEMENT, INC. (CLC)

  Federal Disbarment Proceedings for STATE BAR, CLC Actors

  Payment by STATE to Federally Determined Victims of STATE BAR

  Permanent Federal Injunction as Court Deems Reasonable and Just

## COUNT II

## RICO § 1962(a)

506. The allegations of paragraphs ¶ 1 through ¶ 505 are incorporated herein by reference.

507. This Count is against Defendant(s) THE STATE BAR OF CALIFORNIA; CATANZARITE LAW CORPORATION; RUBEN DURAN, ESQ.; KENNETH CATANZARITE, ESQ.; LEAH WILSON, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; and CATANZARITE LAW CORPORATION (the "Count II Defendant(s)").

508. THE STATE BAR OF CALIFORNIA is an enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

509. CATANZARITE LAW CORPORATION is an enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

510. Orange County Superior Court is an enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

511. The Count II Defendant(s) used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise.

512. CATANZARITE LAW CORPORATION invested income that was derived from a pattern of racketeering activity in an interstate enterprise through prohibited "legal fees" into AEGIS ASSET MANAGEMENT, INC., real estate, property owners' associations to control the real estate in Orange County, and other protected entities among Enterprise 3+.

513. CATANZARITE LAW CORPORATION used THE STATE BAR OF CALIFORNIA'S ongoing authority, and shell corporations like MFS, straw plaintiffs like Amy Cooper, Richard Mesa, Tom Mebane, Denise Pinkerton, Renato Corzo, and Richard Carlson, to engage in the patterns of racketeering activity and invest the income derived therefrom to conceal the nature of its origins, and to avoid the payment of taxes for which it has been suspended in CA.

514. THE STATE BAR OF CALIFORNIA distributed approximately $78 million horizontally in 2020-2021 to other active market participants through WILSON and DURAN.

515. THE STATE BAR OF CALIFORNIA will distribute an estimated $155.5 million horizontally to other active market participants through WILSON and DURAN in 2022-2023.

516. While CLC and STATE BAR make these investments, members of the public like Plaintiff are suffering due to the unequal use of the protection Racket in favor of active market participants, severely injuring members of the public knowingly.

517. The racketeering activity detailed in the preceding paragraphs, including Overt Acts 1-40,960, constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

518. As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in his business and property in that the money to protect the public all goes to lawyers who are selectively protecting Count II Defendant(s) in furtherance of their own interests and protection, so no money is left to help others.

519. As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in his business and property because STATE BAR refuses to impose costs or regulate their involved peers, instead demanding that the public subsidize racketeering activity as shown while the money is instead used to protect other lawyers among Enterprise 1.

520. As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property

Credit Score, Benefits, Etc. and Special Value of IRA, Other Assets

Lost Earnings Capacity to Business and Property as Former CEO

521. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendant(s)

  Violation of 18 U.S.C. § 1962(a)

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendant(s)

  $27,407,250 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendants

  State to Guarantee All Judgments Awarded Plaintiff in State/Federal Actions

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendants

  $88,182,000 monetary judgment jointly and severally for treble damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count II Defendants

  Attorney's fees and costs as submitted by cost memo and approved by Court

- ASSIGNMENT OF RACKETEERING INVESTIGATOR, OTHER RELIEF

  42 U.S.C. § 1956 Requires Federal Receivership, Restitution, Investigations

  Federal Receivership Over STATE BAR with Audits of IOLTA Income

  Federal Receivership of Catanzarite Law Corporation for Restitution

  SEC Investigation of AEGIS ASSET MANAGEMENT, INC. (CLC)

  Federal Disbarment Proceedings for STATE BAR, CLC Actors

  Payment by STATE to Federally Determined Victims of STATE BAR

  Permanent Federal Injunction as Court Deems Reasonable and Just

**COUNT III**
**RICO § 1962(b)**

522. The allegations of paragraphs ¶ 1 through ¶ 521 are incorporated herein by reference.

523. This Count is against Defendant(s) KJC, NMC, DURAN, JTT, WILSON, EDM, GRANDT, STATE BAR, and CLC (the "Count III Defendant(s)").

524. THE STATE BAR OF CALIFORNIA is an enterprise engaged in and whose activities affect interstate commerce, which includes CATANZARITE LAW CORPORATION. The Count III Defendant(s) are employed by or associated with the enterprise.

525. CATANZARITE LAW CORPORATION is an enterprise engaged in and whose activities affect interstate commerce. The Count III Defendant(s) are employed by or associated with the enterprise.

526. Orange County Superior Court is an enterprise engaged in and whose activities affect interstate commerce. The Count III Defendant(s) are employed by or associated with the enterprise.

527. The Count III Defendant(s) acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity.

528. Specifically, the Count III Defendants' interests in and control of the enterprise allowed the Pinkerton Action to be filed without standing or probable cause on September 14, 2018.

529. The Count III Defendant(s)' interests in and control of the enterprise allowed KJC to contact COOPER, who was represented by Stephen Erigero, Esq. (CRPC 4.2) as a defendant in the Pinkerton Action and compromise the derivative Pinkerton Action without Court approval.

530. The Count III Defendant(s)' interests in and control of the enterprise allowed KJC to undertake a series of nonjudicial acts, then judicial acts, to destroy Plaintiff's business and property from 2019 through 2022.

531. The Count III Defendant(s)' interests in and control of the enterprise used a pattern of racketeering activity to file and maintain the MFS Action on January 28, 2019, then again on April 16, 2019 while the MFS Action was pending a hearing on the merits, then again on May 15, 2019 by amending the "Mesa Action" on facts known to be false; then again on May 23, 2019 for the improper purposes of placing COOPER into CTI without authority to obtain legal fees, then again against public company FinCanna Capital without authority to conceal its scheme and extort in July 2019, then again against Plaintiff's insurance carrier Scottsdale Insurance Co. in September 2019 and its underwriting financial institution Nationwide to stop his coverage.

532. The Count III Defendant(s)' interests in and control of the enterprise used a pattern of racketeering activity to extort defendants to fabricate evidence and create undue legal fees which no reasonable attorney would do. No reasonable regulator would allow it either, but they did, here.

533. The Count III Defendant(s)' interests in and control of the enterprise allow them to exculpate conflict waivers on behalf of themselves and whatever inanimate corporate entity they (as court officers engaged in fraud) insert themselves in to achieve their short- and long-term goals. Among these inanimate corporate entities is public entity defendant The State Bar of California.

534. The Count III Defendant(s)' interests in and control of the enterprise used JTT on September 8, 2021, after KJC, BW, NMC, TJO, and CLC were disqualified for violating mandatory, to "substitute" into the fraudulent "Mesa Action" in furtherance of the scheme.

535. JTT knew the facts upon which the Mesa Action was based were previously subject to the predicate, malicious scheme involving O'CONNOR, ZAKHIREH, and DUFFY from April 2017-June 2017 and before that.

536. JTT chose to get involved, because he is also KJC's personal counsel, part of CLC.

537. JTT knew that COOPER had adopted materially conflicting factual positions to support the MFS Action under KJC's threat of securities fraud prosecution and that the Mesa Action also lacked probable cause. JTT chose to continue the scheme, even after Plaintiff told him.

538. JTT knew that KJC, JTT, BW, NMC, TJO, and CLC are protected by the Racket, and that they could rely upon EDM, KJC, GRANDT, and DURAN's interests and control over the enterprise to continue the schemes to defraud. JTT chose to harm Plaintiff for his own gain.

539. JTT knew that the "class lead" Richard Mesa terminated JTT in July 2022. He may not have known that was after Plaintiff informed Mr. Mesa he had been delivering information to the Federal Bureau of Investigation and United States Attorneys' Offices around the same time.

540. DURAN, WILSON, EDM, GRANDT, and STATE BAR knew they could rely upon KJC, JTT, BW, NMC, TJO, and CLC control to further enterprise interests without regard for those persons whose business and property is affected thereby under STATE BAR's express authority.

541. The Overt Acts 1-40,960 constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

542. The Overt Acts and mandatory laws described by the Court of Appeal in G059766 incorporating sections of G058700 and G059457 demonstrate the control KJC exerts over the enterprise at issue, the implied interests if not discovered, and the damages it caused Plaintiff with the control or the interests of the Count III Defendant(s) and each of them.

543. The Overt Acts communicated on July 20, 2022, by DURAN, GRANDT, Board of Trustees of STATE BAR give context to the fraudulent schemes and deliberate misrepresentations of each.

544. The Overt Acts described on July 27, 2022, after STATE BAR was served a deposition subpoena by Plaintiff violated his 1st amendment right to petition for redress of grievances. It also violated his right to process and the right to suit under the 14th amendment.

545. The Overt Acts described on July 20, 2022, and July 27, 2022, are more examples of the control and interests that damaged Plaintiff.

546. For the conduct at issue and Overt Acts shown to and confirmed by Court of Appeal (see also CRPC 5.1 for supervisory lawyer/law firm responsibilities and CRPC 8.4 moral turpitude and aiding in crimes or fraud): "The test the court is to apply is whether 'any reasonable attorney would have thought the claim tenable ....' [Citation.] The tort of malicious prosecution also includes the act of 'continuing to prosecute a lawsuit discovered to lack probable cause.' [Citation.] In determining the probable cause issue, the same standard applies 'to the continuation as to the initiation of a suit.' [Citation.]" (*Sycamore, supra,*157 Cal.App.4th at p. 1402.) *Beck v. Catanzarite Law Corp.*, No. G059766, 35 (Cal. Ct. App. Jul. 13, 2022)

547. Ratifying, enabling, disclaiming supervisory responsibility for and "[c]ontinuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset.' [Citation.] 'A person who had no part in the commencement of the action, but who participated in it at a later time, may be held liable for malicious prosecution.' [Citations.]" (*Sycamore, supra*, 157 Cal.App.4th at p. 1398.) "A claim for malicious prosecution may also apply to a defendant who has brought an action charging multiple grounds of liability when some, but not all, of the grounds were asserted without probable cause and with malice. [Citations.]" (*Id.* at p. 1399.) *Beck v. Catanzarite Law Corp.*, No. G059766, 35-36 (Cal. Ct. App. Jul. 13, 2022)

548. Showing the control exerted and related impunity: "[i]n analyzing the issue of probable cause in a [regulatory] context, [EDM, DURAN, GRANDT] must consider both the

factual circumstances established by the evidence [delivered to them in January 2020, then "Complaint Review Unit" then per "In Re: Walker" from September 2020 through March 2021 (rejected by California Supreme Court under color of State law and statutes), and the [fraudulent cases filed by the Racket] upon which relief is sought [from Plaintiff since September 14, 2018, without standing]. (continues)

549. [Count III Defendant(s)] lack probable cause for [each of their] action[s] [as they continue to rely] upon facts which [each have] no reasonable cause to believe to be true, [and they still seek] recovery [from Plaintiff] upon [baseless prosecution by CLC actors, and defensive] legal [strategies by STATE BAR actors to avoid liability] which [are entirely] untenable [as a matter of objective law] under the facts known to [each]." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164-165.) *Beck v. Catanzarite Law Corp.*, No. G059766, 36 (Cal. Ct. App. Jul. 13, 2022) Rule 8.1115(b) as to crime/discipline exceptions.

550. It would appear these egregious abuses of the court system are good for business.

551. Showing the control and interests exerted among Count III Defendant(s), they "lacked standing to bring a shareholder derivative lawsuit [as of September 14, 2018]. Before agreeing to become an attorney of record in a case, an attorney should, at a minimum, be familiar with the client's claims as a purported shareholder, and should have made a preliminary determination about whether probable cause existed to support the asserted claims." *Beck v. Catanzarite Law Corp.*, No. G059766, 36 (Cal. Ct. App. Jul. 13, 2022)

552. An attorney with Nationwide Mr. Klass knew that the series of cases are fraudulent, but he was "solely concerned with getting [Plaintiff] released from these [still fraudulent Racket schemes that are collaterally estopped and lacked probable cause since September 14, 2018] and we will continue to pursue this course of action in accordance with our duty to defend obligations under the policy."

553. Before that email, on July 30, 2022, I asked him to report the legal fees to date (which were but one source): On Sat, Jul 30, 2022 at 11:13 AM Klass, Aaron <a.klass@nationwide.com> "$1,268,036.89 out of the $2 million policy" [paid to Enterprise 1]

554. Due to the control factors among KJC, DURAN, GRANDT as shown on July 20, 2022 by the Board of Trustees, Plaintiff received the following from Mr. Klass: "**As directed by the court** [the Complex Court CX105 on 9/22/2022 did not direct, nor does it direct, mediation or mandatory settlement conferences] the parties have tentatively scheduled a mediation on December 19th **with Judge Grey of ADR Services**. I understand that you have opted not to participate. Scottsdale understands that you may not wish to settle or relinquish your affirmative claims, nonetheless, Scottsdale respectfully requests that you attend and participate in good faith in the mediation as you have contractual duties under the insurance policy to cooperate in the defense of this claim. Regardless, I will attend the mediation on behalf of Scottsdale and I make every effort to settle this claim on a global basis, including obtaining releases from the third-party claimant parties to you. Please let me know if you have any questions." Aaron Klass, Esq. Senior Claims Specialist. Nationwide Management Liability & Specialty Claims." There exists the threat of imminent lawless action.

555. CLC, KJC, NMC, BW, TJO, and JTT know that the court did not direct the parties to have mediation, but that they could rely upon the influence and control, and their interests, in the enterprise to protect them (until now).

556. The Count III Defendant(s) have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

557. As direct and proximate result of the Count III Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff seeks his actual damages, treble damages, and attorneys' fees.

558. As direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in his business and property in that the activities destroyed an agreed, publicly announced merger known to KJC, NMC, BW, TJO and COOPER, HIGGERSON, O'CONNOR, and ZAHIREH worth $261 million for which Plaintiff seeks his portion of the previously noticed fair market value being $32,667,351 damages.

559. As direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in his business and property in that it precludes his ability to obtain reasonable insurance from financial institutions and credit, and thus his ability to conduct business or obtain property. These were also insurance schemes, and Plaintiff has been actually damaged an additional $32,667,351 as being lost opportunities converted to Racket interests, where Plaintiff is 42 years old, and thus at least the equivalent as outlined in ¶ 559 as being a reasonable basis if not a low basis.

560. As direct and proximate result of the Count III Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff seeks actual damages of $5,649,297 from 2021 as inferenced by ROA #49 in State Action 2 and his converted business and property at that time when his 14th Amendment rights were again targeted by carrying on conduct violative of 18 U.S.C. § 1961 to any person acting reasonably.

561. As direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plainitff seeks actual damages of $1,700,000 from fees, policies and other assets converted to the Racket interests.

562. As direct and proximate result of the Count III Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff seeks actual severe emotional damages, benefits, and other lifetime remuneration that he will not receive of $138,000,000.

563. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count III Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  Violation of 18 U.S.C. § 1962(b)

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  $32,667,351 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  $32,667,351 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  $5,649,297 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  $1,700,000 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  $138,000,000 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count III Defendant(s)

  $632,051,997 monetary judgment jointly and severally for treble damages

- ASSIGNMENT OF RACKETEERING INVESTIGATOR, OTHER RELIEF

  Shown Control Requires Federal Receivership, Restitution, Investigations

  Federal Receivership Over STATE BAR with Audits of IOLTA Income

  Permanent Injunction as Court Deems Reasonable and Just

  Federal and State Dissolution of Catanzarite Law Corporation

  SEC Investigation of KJC for Securities Fraud (Ca. § 25401; Fed. 10b-5)

  Federal Disbarment Proceedings for STATE BAR, CLC Actors

  Payment by STATE to Federally Determined Victims of CLC Actors

## COUNT IV

## RICO § 1962(d)

564. The allegations of paragraphs ¶ 1 through ¶ 563 are incorporated herein by reference.

565. This count is against Defendant(s) DURAN, GRANDT, EDM, WILSON, KJC, JTT, NMC, TJO, BW, COOPER, HIGGERSON, ZAKHIREH, DUFFY (the "Count IV Defendant(s)").

566. Specifically, from 2019-2022, DURAN, WILSON knowingly conspired to use or invest IOLTA income derived from a pattern of racketeering in an interstate enterprise § 1962(a), which cumulative assets purportedly rose from approximately $2 billion in assets to approximately $5 billion in assets while WILSON engaged in "private and public" "philanthropy" and "consulting" for STATE BAR after passage of AB 3249, and before "returning" to STATE BAR.

567. Specifically, EDM, BW, NMC, TJO, and JTT did conspire to acquire or maintain interests in the enterprise with KJC, CLC, STATE BAR, GRANDT, and/or DURAN through a pattern of racketeering activity in violation of § 1962(b). Each was engaging in the activity or carrying on and establishing the activity knowing of its illegal nature and origins.

568. Specifically, O'CONNOR, ZAKHIREH, DUFFY, HIGGERSON, and COOPER did conspire to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of § 1962(c) as shown through Overt Acts 1-40, and G059766, G058700, and G059457 – all final orders in the California Court of Appeal.

569. Specifically, CLC, EDM, NMC, and JTT did conspire to continue the series of fraudulent "cases" against Plaintiff with knowledge of their false nature and improper purposes.

570. As set forth above, the Count IV Defendant(s) agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).

571. The Count IV Defendant(s) have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

572. The Count IV Defendant(s) knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

573. As direct and proximate result of the Count IV Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in their business and property in that he has been knowingly denied due process under color of state law to take from and humiliate Plaintiff in order that he yield to the fraudulent schemes, where Plaintiff cannot enjoy his life, continue business, or obtain property without federal intervention as he has exhausted all of the purported remedies existing of the monopoly.

574. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count IV Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count IV Defendant(s)

  $1.282 million restitution judgment paid by STATE (emergency relief)

- JUDGMENT IN FAVOR OF ROES [1-100] AGAINST Count IV Defendant(s)

  $228,332,649 judgment jointly and severally (remaining CTI shareholders)

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count IV Defendant(s)

  State to Guarantee All Judgments Awarded Plaintiff in State/Federal Actions

- ASSIGNMENT OF RACKETEERING INVESTIGATOR, OTHER RELIEF

  Conspiracy Requires Federal Receivership, Restitution, Investigations

  Federal Receivership Over STATE BAR with Audits of IOLTA Income

  Federal Receivership of Catanzarite Law Corporation for Restitution

  Federal and State Dissolution of Catanzarite Law Corporation

  SEC Investigation of AEGIS ASSET MANAGEMENT, INC. (CLC)

  SEC Investigation of KJC as it relates to MFS, Pinkerton, Carlson, Corzo

  Federal Disbarment Proceedings for STATE BAR, CLC Actors

  Payment by STATE to Federally Determined Victims of Racket

  Permanent Federal Injunction as Court Deems Reasonable and Just

**COUNT V**

**VIOLATION OF U.S.C. § 1981**

**EQUAL PROTECTION CHALLENGE**

575. The allegations of paragraphs ¶ 1 through ¶ 574 are incorporated herein by reference.

576. Plaintiff's verified and served complaint in *Justin S. Beck v. Ruben Duran (The State Bar of California)* S276517 is incorporated by reference as if set forth fully, stricken as "premature" in California Supreme Court on September 27, 2022 yet unacknowledged by DURAN, GRANDT, nor STATE BAR, upon whose demand such request is futile.

577. Plaintiff is a citizen of the United States, where 42 U.S. Code § 1981 - Equal rights under the law holds: "**(a) Statement of equal rights** All persons within the jurisdiction of the United States shall have the same right in every State…to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings…and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other….**(c) Protection against impairment** The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Plaintiff's rights have been repeatedly abrogated under this section, as shown.

578. This count is against lawyers and law firms acting as official court officers on behalf of others: CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; RUBEN DURAN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; ELI DAVID MORGENSTERN, ESQ. and STATE OF CALIFORNIA derivatively ("Count V Defendant(s)").

579. Plaintiff had a right to equal protection under each act violative of the governing state equivalent laws defined under RICO § 1961, State Bar Act, California Rules of Professional Conduct, and the public funding received by STATE BAR.

580. Plaintiff had a right not to be extorted by Count V Defendant(s)' "discretion."

581. Before Tom Girardi's victims engaged him or his associates, they had a right to know that he was engaged in racketeering activities, and they also had a right to know that The State Bar of California's nonsovereign actors and co-conspirators were among those involved and who benefitted where Girardi's "clients" lost, and that it may have compromised the judiciary.

582. Before Tom Girardi's victims engaged him or his associates, they had a right to know that even after overwhelming evidence of their loss – he would barely be reprimanded in June 2022.

583. The victims of the Dole scheme, on whose behalf Mr. Girardi apparently advocated for improper purposes and personal gain, have a right to whatever damages and relief was swindled through their names and taken by nonsovereign actors under color of law, *ultra vires*.

584. Before ROES 1-150,000 engaged a licensee of STATE BAR, they had a right to an attorney *who at least* conformed to California Business and Professions Code § 6068.

585. Before ROES 1-150,000 engaged a licensee of STATE BAR, they had a right to know the STATE BAR's disciplinary process conceals losses or labels their monies "de minimis." U.S.C. 10 § 1921 calls it larceny or wrongful appropriation, under the United States' "interpretation."

586. Before ROES 1-150,000 were offered "Complaint Review Unit" services, they had a right to know it was Office of General Counsel for The State Bar of California, and that the Office of General Counsel was referring them to active market participants again (receiving legal aid) while the same Office of General Counsel was defending tort claims for the same conduct.

587. ROES 1-150,000 did not receive a fully informed conflict waiver under CRPC 1.7. They could not have known that active market participants were actually participating in schemes to

defraud them, with supervisory lawyers thereby responsible for it under CRPC 5.1 together with their law firm (The State Bar of California).

588. The United States "interpretation" of this for EDM, STATE BAR, DURAN, and GRANDT is called carrying on unlawful activity with intent to defraud 18 U.S.C. § 1952(a)(1) shown partially in [OVERT ACTs #1-40] + [OVERT ACTSs #160-320].

589. Plaintiff did not receive a fully informed conflict waiver from EDM who was and is purporting to help him. Plaintiff did not know that Office of Chief Trial Counsel and EDM were protecting the Racket's KJC, JTT, NMC, TJO, and BW.

590. Plaintiff did not know until 2021/2022 that Count V Defendant(s) operating through the Racket used the various functions of government unequally so that they could pursue their own improper purpose. He would have pursued his own course of legal action in January 2020 rather than waste his time with the fraudulent schemes shown operated to "protect" Plaintiff as "paramount."

591. Plaintiff did not see any prior disciplinary history for KJC in 2018 when he looked.

592. Public, courts, and legal profession have a right to know that racketeering activities are allowed under the "discretion" of regulatory lawyers, but members of the public ***prosecuted by the same lawyers*** could face life in prison for Overt Acts #1-40,960 or the conduct of Mr. Girardi in the Dole litigation scheme and related proceeds alone.

593. As part of Enterprise 2, Mr. Girardi gets "reprimanded" or "fined" while sole practice lawyers like Sanjay B. are subject to manufactured evidence (with "100%" certainty) in State Bar Court (vacuum), and the same is wielded to suit improper purposes of undisclosed "state" actors.

594. Courts, judicial officers, and litigants reasonably expect that those operating at law, or before the private forum of courts among them are not engaged in racketeering activities.

595. Before Superior Courts and Courts of Appeal took the cases shown from the Racket, the courts and judicial officers had a right to know that they lacked probable cause or standing. If

the cases Plaintiff shows "make it through" the purported protection it reveals factually what's really happening at STATE BAR if one is objectively reasonable and not subjectively "interpreting."

596. According to the 14th Amendment to the United States Constitution and its equal protection clause, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

597. The Count V Defendant(s) did impair Plaintiff under color of State law that damaged Plaintiff and his 14th Amendment rights.

598. The Count V Defendant(s) are jointly and severally liable for all damages in this count, if not under the prior sections, or in addition to the prior sections.

599. The State Bar of California, a nonsovereign agent assign, and its agents, were each under a mandatory duty imposed by the 5th and 14th Amendment to U.S. Constitution which prohibits any state from depriving any person of life, liberty, or property, without due process of law.

600. The 5th and 14th Amendments were designed to protect Plaintiff against the risk of injury or deprivation to his person, life, liberty, or property without due process of law.

601. The protections granted United States citizens equally under the 5th and 14th Amendments are the only ones repeated twice in the United States Constitution and are fundamental to human rights in a democracy. If the United States is the purported leader, this conduct must end.

602. Racketeering activities defined under RICO § 1961 were designed to prevent the specific injuries under each respective statute to Plaintiff and ROES 1-150,000.

603. RICO § 1962(a)-(d) were designed to provide civil recovery for injuries caused by violations each respective section, and as defined under 18 U.S.C. § 1961 according to plain

language, and treble damages subject to California Government Code § 815.6 as being mandatory; or § 815.3(b) where DURAN, STATE BAR, are named and did engage in the violations shown.

604. Cal. Gov. Cod. § 815.3 holds, in relevant part: "(a)… unless the elected official and the public entity are named as codefendants in the same action, a public entity is not liable to a plaintiff under this part for any act or omission of an elected official employed by or otherwise representing that public entity, which act or omission constitutes an intentional tort, including, but not limited to, harassment…and intentional infliction of emotional distress. For purposes of this section, harassment in violation of state or federal law constitutes an intentional tort, to the extent permitted by federal law. This section shall not apply to defamation." DURAN, STATE BAR, STATE, are named here. Violations of his 5th and 14th Amendment rights constitutes harassment.

605. "(b) If [DURAN] is held liable for an intentional tort [here]…the trier of fact in reaching the verdict shall determine if the act or omission constituting the intentional tort arose from and was directly related to the elected official's performance of his or her official duties [regardless of the use of proceeds or consideration, the conduct at issue did arise from his performance as communicated on July 20, 2022 by GRANDT, acting for and with him]…[in which instance] the [STATE BAR and STATE] shall be liable for the judgment…[f]or the purpose of this subdivision, employee managerial functions [of WILSON, GRANDT, and EDM] shall be deemed to arise from, and to directly relate to, [DURAN's] official duties."

606. WILSON as Executive Director acts for DURAN and Board of Trustees controlled by majority active market participants across a horizontal structure under WILSON. GRANDT acts under, by, with, and through DURAN and Board of Trustees, who did not operate separately here.

607. "(c) If the trier of fact determines that the elected official's act or omission did not arise from and was not directly related to the elected official's performance of his or her official duties, upon a final judgment, including any appeal, the plaintiff shall first seek recovery of the

judgment against the assets of the elected official [which would not be fair to Plaintiff given the control factors shown under RICO § 1962(b)]. If the court determines that the elected official's assets are insufficient to satisfy the total judgment [without discovery, Plaintiff believes Mr. Duran's assets are less than $500 million], including plaintiff's costs as provided by law, the court shall determine the amount of the deficiency and the plaintiff may seek to collect that remainder of the judgment from the public entity [this is acceptable to Plaintiff and according to a federal magistrates investigation or the federal receivership]. The public entity may pay that deficiency if the public entity is otherwise authorized by law to pay that judgment."

608. "(f) It is the intent of the [California] [STATE] Legislature [to maintain fair compensation for those persons injured by] elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort...which the public entity they represent [is liable]." Cal. Gov. Cod. 815.3 [modified to suit circumstances in line with the provision of law].

609. "(h) If any provision of this section or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable."

610. Count V Defendant(s) were a substantial factor in the deprivation of Plaintiff's rights.

611. Lawyers among Count V Defendant(s) failure at law under Cal. Bus. & Prof. Cod. § 6068 (a) was intended to protect Plaintiff's inalienable rights protected federally; and where he had a right that he not be subject to their falsities and fraud on the courts under subsection (d), and to be free of their corrupt motives of passion or interest under subsection (g), and to be free from their oppression under subsection (h), and he had a right his honor not be unreasonably slandered without good cause under subsection (f), and his honor was slandered.

612. Count V Defendant(s) did violate each of these code sections in violation of their oath at law as an officer of the court, and it did damage Plaintiff.

613. Count V Defendant(s) failure to discharge their duties or negative duties were a substantial factor in his harm, and Count V Defendants failures are finally adjudicated in Court of Appeal under G059766, G058700, G059457 and lack of capacity shown preceding in all paragraphs.

614. There are "Levels of Fighting Corruption" including "[a] second level…of reducing risks [foreseeability of harm being the greatest factor as per *Johnson* and *Rowland*; *Brown v. USA Taekwondo* CSC 2021; and special relationship doctrine]. **By definition corruption is immoral**. **It is also illegal**: no country has legalized bribery, extortion, embezzlement, fraud, or nepotism. But corruption is also a crime of calculation. [Count V Defendants] weigh the benefits and the costs of giving and taking bribes. These costs include moral costs, and the weighing takes place in individual consciences that are shaped by social values and cultural norms [not to mention the public, courts, and legal profession shown to suffer unreasonably for no clearly stated purpose for the taking under the guise of sovereignty]. But because economic calculations are present [among $5 billion at any given time], corruption will respond to changes in the benefits that can be gained from the illegal transaction [which are shown to be vast], which in turn depend on the way the system of supplying those benefits is structured [which is shown unconstitutional, here]. Corruption will also respond to the costs of the illegal transaction [being other people's money, property, due process rights, right of petition, right of free speech, right of neutral forum, regulated by co-conspirators], which in turn depend on the risks of being discovered and prosecuted [which are purportedly "discretionary"], and the penalties that result from prosecution [which are, if Mr. Girardi's case is to be trusted, less than 1% of that improperly gained – where there are apt to be more than one Mr. Girardi hiding in plain sight]. "Three Levels of Fighting Corruption" went on: "quite apart from an analysis of morals or attitudes, we can analyze systems in terms of their

vulnerability to corruption [where The State Bar of California is corrupt]. This is true in the private sector as well as in government; it is also true in NGOs [like Enterprise 3+ or the legal aid associations either defamed by this conduct or participating in it in plain sight]. Competition is less vulnerable to corruption than monopoly [where absolute power is shown to corrupt absolutely]. Clear rules of the game [which are applied unequally for personal consideration or benefit, here] are less susceptible to corruption than are systems where official discretion is paramount [which is the purported discretion afforded nonsovereign actors who lack the empathy to perform even their most basic functions, knowingly]. Systems with accountability and ample information about results are less vulnerable than systems whose lack of transparency leads readily to clandestine decisions." *Robert Klitgaard*. ROA #729, Unfair Business Practices.

615. "Corruption…[at The State Bar of California, is] characterized by the formula C = M + D – A: **corruption equals monopoly plus discretion minus accountability**." [END]

**AN ABRUPT SHIFT IN "INTERPRETATION" IS A DISTRACTION**

616. On Friday, October 7, 2022, DURAN and EDM received a copy of the instant complaint copying California Department of Justice and FBI's North County San Diego Office, also sent to Santa Ana U.S. Attorney office which exposed the Orange County Superior Court racket. The email contents from Plaintiff include "I'm excited to report the following, even though the evidence and implications are disgusting:

617. * California Supreme Court filed *Justin S. Beck v. Ruben Duran (The State Bar of California)* S276517, and all four series of exhibits citing deliberate schemes to defraud. This was on September 17, 2022. This case is not over. It's pending, even though Duran is trying to avoid it actively. [and now papering up another year-long stalled case about artificial "discretion".]

618. * CSC then struck my [federal antitrust/competition] complaint as being "premature," and they sent the requests I made to State Bar Court, Admissions, and Office of

General Counsel (to make its own antitrust determination). [Each unit is supposed to act, after which Plaintiff has a right to refile his petition, and further, notice the instant complaint].

619. * Before CX 105 and Honorable Judge Randall J. Sherman in Orange County Superior Court, whom I don't believe to be among those unlawfully influenced by the enterprises and has thus far been equitable and respectful to me, I confirmed my timely filing and blessing for my motion for summary judgment or in the alternative for summary adjudication or both on 14 issues. Each issue is material to each of you, and every Calififornian. There are no defenses to this case, much less any of the 14 issues.

620. * On January 6, 2023 (ironically), The State Bar of California and its actors will face adjudication on the merits of my case (which is already covered in three Court of Appeal rulings) for malicious prosecution of three lawsuits which the Court of Appeal determined lacked both probable cause factually and probable cause legally (plus CRPC 1.7 violations, and CCC 1507 violations, the latter causing individual liability for corporate fraud).

621. * Before C11 and Honorable Judge John C. Gastelum, whom I don't believe to be among those unlawfully influenced by the enterprises and has thus far been equitable and respectful to me, I have confirmed after two requested (by State Bar) delays February 14, 2023 for my motion for summary judgment or in the alternative for summary adjudication or both on 22 issues.

622. * I show that no state actor has immunity, the only reason our cases lack precedent is due to the monopoly over "discipline" and "regulation" which is always for the corrupt motives of passion or interest of purported employees who are operating a protection racket.

623. * Where state actors seek to influence the judges under artifice of law and the threat of "discipline" to sole practitioners who fail to play their game, and to ensure I get at least treble damages, I'm filing the attached complaint for ten causes of action in federal Court including RICO

1962(a)-(d). The record of the same is overwhelming, from STATE BAR all the way down to Orange County Superior Court and **Kenneth J. Catanzarite's uncanny similarities to Thomas Girardi as it relates to their impunity and the protection racket**." [END EMAIL CITES]

624. Approximately two hours later, The State Bar of California delivered a wire communication [juxtaposing July 20, 2022, overt acts by Duran, Grandt, Board of Trustees here].

625. [BEGIN PRESS RELEASE] "**State Bar Changes Interpretation of Statute, Signaling New Era of Transparency and Accountability**." The State Bar of California today informed the California Supreme Court that it is changing its interpretation of a statute to allow for greater transparency with respect to closed disciplinary complaints [see July 20, 2022, and "abatement" scheme/artifice; see also ROA #49 and "In RE: Walker" scheme/artifice, and the role of Office of General Counsel under "state law"]. Pursuant to this revised interpretation [after a year of sitting on the shelf], the State Bar of California further informed the Court that it intends to disclose [based upon our revolving door of employees' subjective interpretation] of statutorily authorized [hint: we influenced this] information about closed complaints against disbarred attorney Thomas Girardi" [since Plaintiff is doing that anyway, in a very public manner].

626. "In a Supplemental Brief filed with the Court [from the June 2021 case, without acknowledging the antitrust case filed S276517 for federal antitrust determinations], the State Bar announced that it has changed its position with respect to Business and Professions Code section 6086(1)(b)(2) [which is the code section upon which Plaintiff's demand on DURAN relied in May 2022, and again July 12, 202, leading to July 20, 2022 decisions communicated – striking to the similarities of Thomas Girardi and Kenneth Catanzarite]. This statute allows the Chair or Chief Trial Counsel to waive the confidentiality of otherwise confidential disciplinary records of attorneys, when warranted by the need to inform and protect the public. The State Bar had previously interpreted the statute as only permitting disclosure of pending and active cases. It is

now interpreting the statute as permitting the disclosure of information regarding closed complaints, as well [but not "abatement," which we will continue to conceal despite severe injuries known to us]."

627. "Given Mr. Girardi's disbarment [after perhaps hundreds of millions were stolen and its starting to become public, together with our active concealment of Catanzarite's conduct] and the growing publicly available information about his conduct [delivered by Beck two hours ago to me, Ruben Duran, and Eli David Morgenstern, adding the FBI and State Attorney General's office], the Chair and Chief Trial Counsel have now [conveniently] determined, in the exercise of our [non-existent, state artificed monopolistic] ["]discretion["], that release of the information is warranted for the protection of the public," said Ruben Duran, Chair of the State Bar Board of Trustees.

628. "In its Supplemental Brief, the State Bar also informed the Supreme Court that it intends to disclose information specifically authorized under the law (Section 6086.1(b)(2)) relating to its closed investigations into disbarred attorney Thomas Girardi [which will be used to either conceal Catanzarite by "discretion" or as an excuse to finally tell the public, courts, and legal profession what it should have known in 2007 about KJC, CLC, JTT, NMC, BW, and TJO]. The statute only allows the disclosure of "the fact of an investigation or proceeding, clarifying the procedural aspects and the current status, and defending the right of the licensee to a fair hearing." This disclosure will occur approximately 30 days after today's filing, unless the Court directs us otherwise." [Plaintiff notes the prior "intentions" communicated publicly and to the Auditor from 2002-2022, and the associated results from that period continuing into 2022 from objective evidence and reported in Report 2022-030].

629. "The filing of the Supplemental Brief is the latest example of the State Bar's ongoing commitment to [concealing its nature and calling it] transparency, as well as fulfilling its [enterprise] protection [goals]."

630. "In January 2022, the State Bar announced an investigation by Halpern May Gelberg LLP [which the Board of Trustees chose amongst our own active market participants as being the most capable of "working" with us] "focused on whether the State Bar's handling of past discipline complaints against Girardi was affected by his connections to or influence at the State Bar [HINT: they were affected and United States citizens were robbed, some without knowing]. Related to that ["]investigation["], the State Bar announced last week that it recently submitted to the Los Angeles County Superior Court a report of contempt and petition to enforce subpoenas with two confidential witnesses connected with the Halpern May Gelberg LLP investigation, which is ongoing." [In State Action 1 and State Action 2, however, STATE BAR purports to have no authority in trial courts and that trial courts have no authority in tort against its own attorneys.]

631. "In addition, the Board of Trustees released a five-year plan earlier this year. [After everyone else is paid, one misrepresented goal we are supposed to talk about a lot is] to protect the public by strengthening the attorney disciplinary system [which we realize is selectively use to suit one-off schemes, and ever-increasing monetary instrument needs of our Racket], adopting new standards and operational practices in processing cases [so they are now resolved faster, but not in a way that helps a complainant, who has every right to hire another one of us and we double dog dare them to challenge us], and reducing the backlog of unresolved disciplinary actions [by shredding them, letting them die on the vine, or adjusting their related data to suit us and our own]."

632. "In 2021, the Board of Trustees brought back Leah Wilson [coming off the public private partnership stage of her career] to serve as Executive Director [again], a position she held from 2017–2019 [and successfully deflected blame and oppressed for us]. And in June 2022,