George S. Cardona, formerly a federal prosecutor, was confirmed by the Senate as Chief Trial Counsel, the first such confirmation in 10 years." Mr. Cardona appears to have been among those opening genuine investigations into the conduct at it issue, as was Anand Kumar, Esq. at one time. Neither Mr. Cardona, nor Mr. Kumar, are named in this action for that reason.

633.    "See a copy of the "Supplemental Brief the State Bar filed with the California Supreme Court."

634.    This Overt Act ~ reasonably appears to be a response to the information provided by Plaintiff hours prior. If history serves correct, the next overt act will be 1) to conceal this case and its adjudicated facts/law until a Court allows its hearing on the merits; 2) justify the release of information about CLC, KJC, NMC, BW, JTT, TJO acknowledging and finally stopping "the next Girardi" from continuing the practices further.

635.    The federal question must address the Constitutional implications of this "discretion" and reject its utterance on this day in particular, and its lack of foundation in federal law. The federal question cannot allow this deliberate word to go "undecided" by California Supreme Court, where somehow "In RE: Walker" and "Complaint Review Unit" remain the only purported avenues of stopping racketeering (by design of Enterprise 2).

636.    Plaintiff alleges the "discretionary" language shown in this press release is a deliberate tactic, as is the request that the California Supreme Court not rule on the matter.

637.    Plaintiff alleges STATE BAR's licensing, regulatory, and disciplinary functions operate under artificial state laws and the subjective "interpretation" of active market participants who use the same "discretion" to take or conceal from people like Plaintiff that are not active market participants. This often happens unknowingly to clients amidst court officers and IOLTAs.

638.    Plaintiff alleges STATE BAR's licensing, regulatory, and disciplinary functions control what schools can or can't pay them, and on their respective boards, and the influence that generates under artifice of state law upon law students who are also subject to this predation.

639.    Plaintiff alleges to show that STATE BAR lacks capacity to be responsible for ten lawyers, much less 260,000; 25% of the market for legal services; or $5B among IOLTAs and the related money transmissions.

640.    Plaintiff had a right to equal protection.

641.    Plaintiff had a right of freedom from impairment to his business and property.

642.    ROES 1-150,000 had a right to equal protection.

643.    Lawyers who were disbarred, suspended, or otherwise selectively disciplined had a right to equal protection and regulation under the law. The monopolistic characteristics of these schemes should not have been levied in favor of some to the detriment of others.

644.    Count V Defendant(s) impaired Plaintiff's business and property under State law.

645.    Members of the legal profession harmed by this behavior had a right that The State Bar of California was not used for improper purposes.

646.    Each person paying STATE BAR had a right to equal regulation under the law, and equitable fee structures that did not unjustly enrich those engaged in racketeering activity.

647.    The public did not know and could not have known about the harm it was subject under artifice of state law, or that there were certain lawyers that could not be trusted in any instance who aren't disclosed on the government protection agency website.

648.    Most STATE BAR licensees didn't know that less than 1% (specifically, 700) are destroying the public, courts, and legal profession from within.

649.    Most STATE BAR licensees didn't know they were paying for racketeering activities directly, or that the public was subsidizing the activities when they weren't paying for it.

650. There exists an unlawful trust of 700 lawyers using STATE BAR for themselves.

651. The State Bar of California is an illegal trust.

652. WHEREFORE, Plaintiff requests this Court enter judgment against the Count VI

Defendant(s) as follows in favor of JUSTIN S. BECK and ROES 1-150,000:

>JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count VI Defendant(s)
>
>Violation of U.S.C. § 1981 – Equal Protection Clause
>
>JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count VI Defendant(s)
>
>Any Monetary Relief Failing to Issue Among Counts I – V, ¶ 1 - ¶ 652
>
>JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count VI Defendant(s)
>
>Order Reference to Congress Investigation of The State Bar of California
>
>JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count VI Defendant(s)
>
>Order Reference to Federal Trade Commission for 15 U.S.C. § 1 Violations
>
>JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count VI Defendant(s)
>
>Permanent Injunction Against Violating 5th or 14th Amendment Rights
>
>JUDGMENT IN FAVOR OF ROES 1-150,000 AGAINST Count VI Defendant(s)
>
>Order Discovery Reference and Appointment of Third-Party Auditor
>
>JUDGMENT IN FAVOR OF ROES 1-150,000 AGAINST Count VI Defendant(s)
>
>Appointment of Federal Receiver Under 42 U.S.C. §§ 1956-1957

## COUNTS VII – XI

## VIOLATION OF 42 U.S.C. § 1983

## MALICIOUS PROSECUTION

653.    The allegations of paragraphs ¶ 1 through ¶ 653 are incorporated herein by reference.

654.    The Counts VII through XI are against CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; RUBEN DURAN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; RICHARD FRANCIS O'CONNOR JR.; MOHAMMED ZAKHIREH; JAMES DUFFY; STATE OF CALIFORNIA; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; AMY JEANETTE COOPER; CLIFF HIGGERSON; JAMES DUFFY, ELI DAVID MORGENSTERN, ESQ.; LEAH WILSON, ESQ.; and DOES 1-10 (the "Counts VII – XI Defendant(s)").

655.    Plaintiff incorporates his operative complaint in State Action 1 [ROA #2 supplemented by [ROA #742] fully here (pp. 1-4), styled *Justin S. Beck v. Kenneth Catanzarite et al.* OCSC Case No. 30-2020-01145998.

656.    Plaintiff incorporates his operative complaint in State Action 2 [ROA #60] wherein [ROA #49] was filed by The State Bar of California in February 2022 as if it were a showing of competency or as if estopping Plaintiff's claims lying in constitutional right violations supplemented by [ROA #222] fully here (pp. 1-36) (styled *Justin S. Beck v. The State Bar of California et al.* OCSC Case No. 30-2021-01237499).

657.    Plaintiff incorporates his statement of facts p. 1-138 in State Action 2, and for summary adjudication of 14 issues, lodged at [ROA #103] in State Action 2, also known to Defendants upon its service on or around the filing date with Orange County Superior Court.

658.     Plaintiff incorporates his statement of facts p. 1-138 in State Action 1, and for summary adjudication of 22 issues, lodged at [ROA #729] in State Action 1, also known to Defendants upon its service on or around the filing date with Orange County Superior Court.

659.     Plaintiff incorporates his notice of motion and motion for summary judgment or in the alternative for summary adjudication in State Action 2 as being served upon Defendants in this action in July 2022, lodged at [ROA #107] which specifically shows the falsity of law under which various prior "immunities" have been asserted by state actor defendants governing their own profession and engaging concurrently in the conduct shown.

660.     Plaintiff incorporates his notice of motion and motion for summary judgment or in the alternative for summary adjudication in State Action 1 as being served upon Defendants in this action in September 2022, lodged at [ROA #733] which specifically addresses the elements of common law, state law, or federal law malicious prosecution on these Counts VII – XII.

661.     Plaintiff brings this cause of action under 42 U.S.C. § 1983 in accordance with the fundamental principles of *Thompson v. Clarke* (2022) which now includes Justice Ketanji Brown who foretold these problems as they relate to governmental implications, where here they are shown as to the individual constitutional implications that were previously suppressed.

662.     Counts VII – XI Defendant(s) have engaged in the malicious prosecution of Plaintiff from September 14, 2018, through present. The claims have lacked standing since inception, known to the Counts VII – XI Defendant(s), but they continue the same adjudicated claims in furtherance of their scheme.

663.     The conduct, including privity and special relationship with Plaintiff as victim, of Counts VII – XI Defendant(s) are incorporated by reference as per the Court of Appeal in *Beck v. Catanzarite Law Corp.*, No. G059766, 1 (Cal. Ct. App. Jul. 13, 2022) ("Justin S. Beck filed a malicious prosecution action against Catanzarite Law Corporation, its attorneys Kenneth J.

194

Catanzarite, Brandon Woodward, Tim James O'Keefe (collectively Catanzarite unless the context requires otherwise) and the firm's clients (Amy Jeanette Cooper, Cliff Higgerson, and Mohammed Zakhireh). He alleged some of these defendants were also liable for unfair business practices, slander of title, and intentional infliction of emotional distress (IIED). The trial court granted four special motions to strike (anti-SLAPP motion) (Code Civ. Proc., § 425.16). On appeal, Beck asserts most of his claims are not based on petitioning activity and he would be successful on the merits of his malicious prosecution action. We conclude his contentions have merit and reverse the court's orders.")

664.    42 U.S. Code § 1983 - Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

665.    Counts VII – XI Defendant(s) have violated Plaintiff's 14th Amendment rights and have deliberately disrupted the fair administration of justice for their own corrupt interests. Plaintiff incorporates again G059766 here, and its selected sections, and the JTT conduct continuing as of September 8, 2021, with the protection Racket.

666.    Plaintiff was maliciously prosecuted by Counts VII – XI Defendant(s). The malicious prosecution will continue without federal action and intervention due to the Racket.

667.    Counts VII – XI Defendant(s) are guilty of common law malicious prosecution according to any reasonable interpretation dating back to 1871. This is privately actionable now under 42 U.S.C. § 1983 and there are no immunities existing for this as Plaintiff is not a bar member.

668.    Counts VII – XI Defendant(s) have maliciously prosecuted a series of lawsuits filed or maintained without standing or probable cause commencing September 14, 2018, and continuing.

669.    Counts VII – XI Defendant(s) pursued or carried on six lawsuits for improper purposes, described by the Court of Appeal in G059766, but also shown by predicate and parallel evidence through Court of Appeal rulings that the Counts VII – XI Defendant(s) have engaged in deliberate sabotage of Plaintiff and others without regard for anyone but their own money or property.

670.    On September 14, 2018, the Pinkerton Action was filed by CLC without probable cause, without standing, for improper purposes of pursuing legal fees and taking under color of law, against Plaintiff alleging that he committed or assisted in criminal acts of securities fraud.

671.    On September 14, 2018, the Racket also filed a fraudulent derivative action without standing or probable cause, to extort and complicate to make it all seem legitimate.

672.    The use of "Denise Pinkerton as attorney in fact" to an elderly victim of KJC "Roger Root" is consistent with methods and victims of the Racket according to overwhelming evidence.

673.    Before "Denise Pinkerton as attorney-in-fact" filed the Pinkerton Action, another KJC victim Richard Carlson testified that he "did not believe he had suffered any damages" when he was solicited at his home by the Kenneth J. Catanzarite, Esq. when he wasn't seeking an attorney.

674.    The "9 putative class actions" filed for "Richard Carlson" as the lead, and the "Daymark Matter" were all filed without standing or probable cause, involving $400+ million in gross proceeds according to KJC and STATE BAR. They continue.

675.    The "Daymark Matter" is a fraudulent scheme evidenced by final orders of the 9th Circuit Court of Appeals of the United States. *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, (11th Cir. Mar. 9, 2022) ("21-12766 03-09-2022 In re: DAYMARK REALTY ADVISORS, INC., DAYMARK PROPERTIES REALTY, INC., DAYMARK RESIDENTIAL MANAGEMENT, INC., Debtors. v. GCL, LLC, INFINITY URBANCENTURY, LLC, ETIENNE LOCOH, TODD A. MIKLES, SOVEREIGN CAPITAL MANAGEMENT GROUP, LLC, et al., Defendants-Appellees. KENNETH J. CATANZARITE, Plaintiff-Appellant,")

676.    On or around January 28, 2019, the MFS Action was filed without probable cause, for improper purposes, against Plaintiff alleging similar knowingly false allegations against Plaintiff despite facts known to the Counts VII – XI Defendant(s).

677.    On or around January 28, 2019, the CTI derivative action was filed without probable cause, now monopolizing a fraudulently manufactured control dispute for Counts VII – XI Defendant(s) own purposes.

678.    Through Counts VII – XI Defendant(s), the MFS Action was filed to overtake the merger known to or at least in privity with Counts VII – XI Defendant(s), and it was predicated by nonjudicial securities fraud undertaken by KJC, a registered investment advisor, by coercing COOPER, HIGGERSON, O'CONNOR to act on his behalf through MFS, which is an inanimate corporate entity used to launder monetary instruments through CLC in violation of federal law.

679.    Through Counts VII – XI Defendant(s), on or around April 16, 2019, the Mesa Action was filed without probable cause, for improper purposes of continuing the fraudulent scheme against Plaintiff since the claims would be estopped in an evidentiary bench trial on May 1, 2019.

680.    Through Counts VII – XI Defendant(s), before May 1, 2019 and the adjudication of the false claims ("709 hearing"), Counts VII – XI Defendant(s), or were in privity of knowing, or

reasonably should have known, of the lack of factual and legal merit to each claim directed at Plaintiff. But Counts VII – XI Defendant(s) continued anyway, despite his severe harm.

681.    Through the Counts VII – XI Defendant(s), on May 1, 2019, with CLC, KJC, COOPER, O'CONNOR, and "MFS" present, an impartial Court rejected the Counts VII – XI Defendant(s) claims "with every fiber of [its] being" citing "overwhelming evidence."

682.    Forming the basis of Counts VII – XI Defendant(s) liability, together, the MFS Action and Mesa Action, and the nonjudicial fraud and fabrication of evidence supporting them, destroyed $261 million in actual shareholder value and damages (including $32,667,351 to Plaintiff as shown, known February 5, 2019 by Counts VII – XI Defendant(s), known again by Counts VII – XI Defendant(s) September 2021).

683.    Through Counts VII – XI Defendant(s), on or around September 6, 2019, the Scottsdale Action was fraudulently filed without probable cause, for the improper purposes of extorting litigants and harming Plaintiff, namely to destroy his access to defense coverage so that the Racket could take from him.

684.    Through the Counts VII – XI Defendant(s), on or around November 15, 2019, CLC, KJC, NMC, BW, and TJO were disqualified for violating mandatory law (appearing ultra vires under Cal Bus. & Prof. Cod. § 6104 and in ongoing violation of Cal. Rul. Prof. Cond. Rule 1.7(d)(3).

685.    Through the Counts VII – XI Defendant(s), after Scottsdale Action was moved to federal court, it was also dismissed, lacking merit when it was filed, and out of the markets controlled by KJC that often permit lack of merits.

686.    Through the Counts VII – XI Defendant(s), on or around January 10, 2020, CLC, KJC, NMC, BW, and TJO were disqualified again for violating mandatory law. But they knew they could rely on EDM, so they continued in concert with Counts VII – XI Defendant(s).

687.    Through the Counts VII – XI Defendant(s), on or around August 10, 2020, the Counts VII – XI Defendant(s) filed, or caused to be filed, or conspired to file, the MFS Cross Complaint so that they could continue their schemes.

688.    On or around August 10, 2020, EDM did know that the foregoing events occurred.

689.    On or around September 8, 2021, after the Court of Appeal rejected the "meritless" appeals by NMC on behalf of "CTI" which was not its client, JTT did assume the role of "class counsel" for COOPER, Richard Mesa, and Tom Mebane in a direct and derivative action.

690.    JTT knew that he was merely assuming the fraudulent schemes without standing or probable cause, just like he did in Corzo and Corbell matters in the Court of Appeal, for which he was found to have filed *ultra vires* "without authority" the petition for appeal on behalf of Corbell Partnership in collusion with KJC and TJO, and it did disqualify JTT, too. And yet the Corzo and Corbell matters continue because of the protection schemes and control of KJC.

691.    The Mesa Action and MFS Cross Complaint are both collaterally estoppped, knowingly fraudulent financial instruments that were filed and are maintained using postal and wire communications to defraud Plaintiff, the courts, Scottsdale Insurance Co. Nationwide Insurance, Denise Pinkerton, COOPER, HIGGERSON, O'CONNOR, ZAKHIREH, DUFFY.

692.    Plaintiff is the victim of a four-year, unlawful scheme involving malicious prosecution exacted upon him by the Counts VII – XI Defendant(s) and the claims have all achieved favorable termination on the merits reflecting his innocence after they were filed without factual or legal probable cause.

693.    Any claim related to the Mesa Action was settled by ZAKHIREH, O'CONNOR, and DUFFY in April 2017 before they manipulated the SEC's Janet Moser into their malicious scheme in July 2017 (LA-4837).

694.   Failing there, Counts VII – XI Defendant(s) O'CONNOR, ZAKHIREH, DUFFY, and HIGGERSON met Catanzarite upon his threat of federal securities fraud and abuse of the elderly claims, and active threat, of "bringing claims later" under the protection racket – where COOPER, ZAKHIREH, DUFFY and HIGGERSON are now in deeper than they realized.

695.   No reasonable person or attorney would file the Mesa Action, nor advocate for it, nor maintain it under the facts and law known, nor amend the Mesa Action after colluding outside the court to control two conflicting corporations in a mini-monopoly used to steal from others and pay the Racket. Counts VII – XI Defendant(s) are coordinating this action, too.

696.   Before the Mesa Action in *Beck v. Catanzarite Law Corp.*, No. G059766, 16 (Cal. Ct. App. Jul. 13, 2022) ("Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and some of its Founders (the Probst Faction) as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action; (3) it became MFS's counsel of record; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board of directors."),

697.   *Klemm v. Superior Court*, 75 Cal.App.3d 893, 898-99 (Cal. Ct. App. 1977) is instructive and shows that Counts VII – XI Defendant(s) are guilty of all five counts here, where ("Though an informed consent be obtained, no case we have been able to find sanctions [as in, allows] dual representation of conflicting interests [as here] if that representation is in conjunction

200

with a trial or hearing where there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another. [as there was on September 14, 2018, and again on January 23, 2019 O'Connor, Zakhireh, Duffy, Cooper, and Higgerson supported the fraudulent scheme with fabricated evidence, and again on January 28, 2019 when Plaintiff was sent a threatening letter that he could be prosecuted by law enforcement, from KJC, who was engaging in wire fraud and mail fraud, and again on April 16, 2019 when the Mesa Action was filed despite its falsity and conflicts with the MFS Action, and again on April 30, 2019 when the evidentiary hearing started as described in G059766, and again on May 1, 2019 when it ended as described in G059766, and again on May 15, 2019 when the Mesa Action added COOPER to continue the fraudulent scheme and ensure she was still "there" as a "plaintiff" for KJC, then JTT, but always the Racket, and again on July 2, 2019 ultra vires against FinCanna as if the Racket represented Plaintiff's company, and again on September 6, 2019 against his financial instution Scottsdale Insurance Co. which is underwritten by the financial institution Nationwide, and again on November 15, 2019 when CLC actors were disqualified for mandatory law, which law applied since September 14, 2018 to any reasonable person or attorney where the Racket lacked and has always lacked standing, and again on January 10, 2020 when CLC actors were disqualified again, and again on August 10, 2020, and again in October 2021 in the Court of Appeal, and again on October 14, 2021 when the Board of Trustees was delivered a government claim based on this scheme, and again when it was denied on November 12, 2021, even though it contained allegations of fraud and corruption involving public employees, and again on May 12, 2022 upon receipt of a public disclosure regarding the fraudulent schemes and similarities between Catanzarite and Girardi, and again on September 22, 2022 when Nicole Marie Catanzarite Woodward, Esq. attended the status conference without video but JTT did not attend despite the "class action" nature of the "Mesa Action" which is nothing but a fraudulent financial instrument lacking any

form of privilege, but State Bar nor Office of General Counsel were present for a case implicating GRANDT, DURAN, STATE BAR in fact and according to adjudicated opinions under Rule 8.1115(b) which are binding, and again on October 4, 2022 when the malicious defense of these fraudulent schemes are shown to be an acute threat to continue without federal intervention under artifice of state law violative of the equal protection clause of the 14th Amendment when GRANDT to Plaintiff's sanctions filings, reply to "demurrer"].(See *Anderson* v. *Eaton* (1930) 211 Cal. 113 [ 293 P. 788]; *Hammett* v. *McIntyre* (1952) 114 Cal.App.2d 148, 153-154 [ 249 P.2d 885]; *McClure* v. *Donovan* (1947) 82 Cal.App.2d 664, 666 [ 186 P.2d 718].) **(1)** As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed. Such representation would be per se inconsistent with the adversary position of an attorney in litigation, and common sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other. **(2)** However, if the conflict is merely potential, there being no existing dispute or contest between the parties represented as to any point in litigation, then with full disclosure to and informed consent of both clients there may be dual representation at a hearing or trial. ( *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575 [ 184 P.2d 505]; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 146-147 [ 65 Cal.Rptr. 406, 28 A.L.R.3d 368]; see *Arden* v. *State Bar* (1959) 52 Cal.2d 310 [ 341 P.2d 6].)."").

698.    Plaintiff's property has been unlawfully seized without due process of law, with full knowledge and ratification of STATE BAR, DURAN, GRANDT, EDM on July 20, 2022.

699.    Plaintiff's harm and damages are the subject of binding court orders in California that are no longer subject to appellate review. There exists evidenced beyond reasonable doubt that the schemes to defraud Plaintiff harmed him as alleged, and he is a victim of malicious prosecution.

700.     Where any among the Counts VII – XI Defendant(s) were not an actual party to the

five cases or complaints against Plaintiff as being Pinkerton Action [Count VII], MFS Action [Count

VIII], Mesa Action [Count IX], Scottsdale Action [Count X], or MFS Cross Action [Count XI] they

are each shown to have been involved as a matter of law and privity, or at least carrying on the acts.

701.     WHEREFORE, Plaintiff requests that this Court enter judgment against the Count

III Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

    Defendant(s) for each:

    [COUNT VII] Violation of 42 U.S.C. § 1983 Malicious Prosecution

    [COUNT VIII] Violation of 42 U.S.C. § 1983 Malicious Prosecution

    [COUNT IX] Violation of 42 U.S.C. § 1983 Malicious Prosecution

    [COUNT X] Violation of 42 U.S.C. § 1983 Malicious Prosecution

    [COUNT XI] Violation of 42 U.S.C. § 1983 Malicious Prosecution

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

    Defendant(s)

    $32,667,351 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

    Defendant(s)

    $32,667,351 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

    Defendant(s)

    $5,649,297 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

    Defendant(s)

203

<u>$1,700,000</u> monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

  Defendant(s)

  <u>$138,000,000</u> monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

  Defendant(s)

  Restraining Order and Vexatious Litigant Designation as Court Deems Just

## COUNT XII

### VIOLATION OF 18 U.SC. § 1981

### FEDERAL DISBARMENT

702.    The allegations of paragraphs ¶ 1 through ¶ 701 are incorporated herein by reference.

703.    This Count XII is against Office of General Counsel for THE STATE BAR OF CALIFORNIA; RUBEN DURAN, ESQ.; ELI DAVID MORGENSTERN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES OKEEFE, ESQ. NICOLE MARIE CATANZARITE WOODWARD, ESQ. and CATANZARITE LAW CORPORATION (the "Count XII Defendant(s)").

704.    The Count XII Defendant(s) have engaged in serial moral turpitude with impunity. In *Selling v. Radford*, 243 U.S. 46, 50-51, 37 S.Ct. 377, 61 L.Ed. 585 (1917), the Court held that a federal court could impose reciprocal discipline on a member of its bar based on a state's disciplinary adjudication, if an independent review of the record reveals: (1) no deprivation of due process; (2) sufficient proof of misconduct; and (3) no grave injustice would result from the imposition of such discipline. Thus, while federal courts generally lack subject matter jurisdiction

to review the state court decisions, see *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), a federal court may "examine a state court disciplinary proceeding if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court." *MacKay v. Nesbett*, 412 F.2d 846, 847 (9th Cir.1969) (citing *Theard v. United States*, 354 U.S. at 281-82, 77 S.Ct. 1274). (Id.)

705.   As a member of the public within the suspect class that each <u>Enterprise 1-3+</u> defendant agent is required to not oppress under Cal. Bus. & Prof. Cod. § 6068(h), Plaintiff is the victim of an ultra vires void default strategy of sorts among Count XII Defendant(s), much like Mr. Doe once was victim before Legislature passed AB 3249 in California, and before the United States Supreme Court decision in 2015 in *"No. 13–534" N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015); which incorporates *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315.

706.   Count XII Defendant(s) believe themselves to be above the law in state and federal court only due to the subjectively used "licensing, regulatory, and disciplinary functions" of STATE BAR, the wield they possess over the judiciary because they are controlled and managed by their peers who also disclaim responsibility for the same among each other, and that they each have absolute discretion and sovereignty and can do whatever they please. Perhaps this Court restricts them at least insofar as it might not allow the conduct at issue under the 14th Amendment and duties held under the United States Constitution for federal intervention where State fails.

707.   WHEREFORE, Plaintiff requests that this Court enter judgment against the Count XII Defendant(s):

JUDGMENT Against Counts VII – XI Defendant(s)

Disbarment or suspension in federal court of each, reported to STATE BAR.

## COUNT XIII

### VIOLATION OF 18 U.S.C. § 1956

### FEDERAL INTERVENTION AND RECEIVER

708.    The allegations of paragraphs ¶ 1 through ¶ 707 are incorporated herein by reference.

709.    This Count XIII is against THE STATE BAR OF CALIFORNIA; RUBEN DURAN, ESQ.; ELI DAVID MORGENSTERN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES OKEEFE, ESQ. NICOLE MARIE CATANZARITE WOODWARD, ESQ. and CATANZARITE LAW CORPORATION (the "Count XIII Defendant(s)").

710.    **Subsections of 18 U.S.C. § 1956** exist to ensure collection and restitution and that the federal government can disrupt corruption undertaken where it isn't clearly communicated state policy as here, where the conduct at issue also prevents a State neutral, and therefore Plaintiff requests upon his judgment or at such time it believes proper against Defendants and each of them ("Count VIII Defendant(s)") that "(3) Court [exercise] authority over [all] assets.— A court may issue a pretrial restraining order or take any other action necessary to ensure that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section. (4) Federal receiver.—**(A)** In general.—A court may appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and possession of all assets of the defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982, or a criminal sentence under section 1957 or subsection (a) of this section, including an order of restitution to any victim of a specified unlawful activity. **(B)** Appointment and authority.—A Federal Receiver described in subparagraph (A)—**(i)** may be appointed upon application of a Federal prosecutor or a Federal

or State regulator, by the court having jurisdiction over the defendant in the case; **(ii)** shall be an officer of the court, and the powers of the Federal Receiver shall include the powers set out in section 754 of title 28, United States Code; and **(iii)** shall have standing equivalent to that of a Federal prosecutor for the purpose of submitting requests to obtain information regarding the assets of the defendant— **(I)** from the Financial Crimes Enforcement Network of the Department of the Treasury; or **(II)** from a foreign country pursuant to a mutual legal assistance treaty, multilateral agreement, or other arrangement for international law enforcement assistance, provided that such requests are in accordance with the policies and procedures of the Attorney General."

711.    WHEREFORE, Plaintiff requests this Court enter judgment against the Count XIII Defendant(s) as follows:

JUDGMENT IN FAVOR OF JUSTIN S. BECK Against Counts XIII Defendant(s)

Appointment of Federal Receiver under 18 U.S.C. § 1956

## COUNT XIV

### PROVISIONAL FEDERAL BAR LICENSURE

712.    The allegations of paragraphs ¶ 1 through ¶ 711 are incorporated herein by reference.

713.     With good cause showing, and a need existing to recompense United States citizens as shown, who have been harmed, and a dire circumstance for some whose protected rights are converted to legal fees in California, Plaintiff respectfully requests the opportunity to remedy it as being a gap of justice that will otherwise go unaddressed. If not by Plaintiff, then in any other such manner as the Court deems just, but outside the procedural and financial vacuum of The State Bar of California or the reach of those 700 among Enterprise 2 and Enterprise 3+.

714.    WHEREFORE, Plaintiff request the Court order judgment in favor of Plaintiff:

JUDGMENT IN FAVOR OF JUSTIN S. BECK:

207

Provisional federal bar licensure to practice under any reasonable terms and stricture as the Court may define, or as a reviewing Court may define/agree.

ALTERNATIVE JUDGMENT IN FAVOR OF JUSTIN S. BECK:

Limited legal capacity in United States Courts to develop, file, and maintain claims on behalf of ROES 1-150,000 who cannot help themselves otherwise from the period 2012-2022.

### COUNT XIV

### VIOLATION OF 42 U.S.C. § 1983

### JUDICIAL DECEPTION & OBSTRUCTION OF JUSTICE

715.   The allegations of paragraphs ¶ 1 through paragraph ¶ 714 are incorporated herein by reference.

716.   This Count XIV is against CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; RUBEN DURAN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; RICHARD FRANCIS O'CONNOR JR.; MOHAMMED ZAKHIREH; JAMES DUFFY; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; AMY JEANETTE COOPER; CLIFF HIGGERSON; JAMES DUFFY, ELI DAVID MORGENSTERN, ESQ.; and DOES 1-10 ("Count XIV Defendant(s)")

717.   For a judicial deception claim, Plaintiff must prove that "(1) the defendant deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.' *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018)

718.   Overt Acts 1-40 shows serial judicial fraud finally adjudicated which was supported by nonjudicial fraud and falsified evidence, that did cause Plaintiff's deprivation of liberty.

719.   The Count XIV Defendant(s) have engaged in judicial fraud against Plaintiff.

208

720.     Plaintiff incorporates the reply brief in G059766 *Beck v. Catanzarite Law Corp.*, No. G059766, (Cal. Ct. App. Jul. 13, 2022) filed by KJC, TJO, BW, NMC, CLC, HIGGERSON, COOPER, MFS and ZAKHIREH as being set forth, and as being concession to judicial fraud by each of them under falsely asserted privilege or protected petitioning that each claim to be protected by the United States Constitution, which is itself obstruction of justice and fraudulent.

721.     Plaintiff had a right to be free from deliberately fabricated evidence. U.S.C. § 1983.

722.     Plaintiff had a right to liberty, but STATE BAR, GRANDT, DURAN, EDM willfully chose to protect themselves, and to protect KJC, BW, NMC, TJO, CLC, despite clear and convincing evidence that Plaintiff was suffering through a deprivation of his liberty.

723.     Plaintiff had a right to equal protection, but STATE BAR, GRANDT, DURAN, EDM willfully chose to protect themselves and the Racket, and to protect KJC, BW, NMC, TJO to conceal the fabrication of evidence that continues to cause Plaintiff suffering through his deprivation of liberty and their monopoly and control over the enterprise.

724.     Plaintiff had a right to sue, but STATE BAR, GRANDT, DURAN, EDM chose to assert artificial sovereignty, even when they actually knew of Plaintiff's harm, and they did so with personal motives unrelated to and without regard to the harm that Plaintiff was suffering, which was deprivation of his liberty.

725.     Overt Acts by STATE BAR, GRANDT, DURAN, EDM on July 20, 2022, show beyond reasonable doubt that the Racket is corrupt and acts for improper purposes, which was a deprivation of liberty to control regulation while defending claims in tort for the exact conduct at issue and the exact racketeering activities amidst the patterns.

726.     Overt Acts by KJC, NMC, CLC are shown in furtherance of the schemes (continuing) in a "Case Management Order" including the "MFS Cross Complaint" and "mediation" with a "Judge Grey" despite the deliberately fraudulent nature of, and the ongoing

fabrication of evidence supporting, the purported claims enabled by STATE BAR, GRANDT, DURAN, EDM which caused Plaintiff's ongoing deprivation of liberty in favor of Racket interests.

727.   Count XIV Defendant(s) believe themselves immune and have thus attempted to manipulate and unduly influence state judicial officers under misrepresented State law and non-existent discretion arising from their monopolistic influence "on the ground that defendants were entitled to qualified immunity" under Cal. Gov. Cod. § 815 and other code sections without regard for the United States Constitution, their duty at law, or their duty in public service. Cal. Gov. Cod. §§ 815.3(b), 815.6. 42 U.S.C. § 1981 and 42 U.S.C. §1983. *Thompson*.

728.   The California Court of Appeal "G059766" is specific to Count XIV Defendant(s) *Beck v. Catanzarite Law Corp.*, No. G059766, (Cal. Ct. App. Jul. 13, 2022) which has adjudicated, incorporating G059457 and G058700 specifically to Plaintiff, that evidence was fabricated, and that judicial and nonjudicial fraud did occur against Plaintiff, and thus Count XIV Defendant(s) have engaged in or ratified serial fabrication of evidence which did cause Plaintiff's deprivation of liberty.

729.   "Determining claims of qualified immunity…raises special problems for legal decision making. *See Kwai Fun Wong v. United States* , 373 F.3d 952, 956–57 (9th Cir. 2004). On the one hand, we may not dismiss a complaint making "a claim to relief that is plausible on its face." *Iqbal* , 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly* , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). But on the other hand, defendants are entitled to qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has emphasized that this is a low bar, explaining that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd* , 563

210

U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Indeed, "[w]hen properly applied," qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs* , 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ).

730.    Count XIV Defendant(s) who are licensees are plainly incompetent lawyers or regulators who freely violate Plaintiff's rights under artifice of State sovereignty, which is a violation of his federally protected rights that poses a threat of continuing due to the monopolistic characteristics of STATE BAR.

731.    The conduct at issue requires, and is not a matter of discretion, federal intervention.

732.    While Plaintiff's State Action 1 and State Action 2 complaints "contain[] [more than] one allegation of a harmful act that would constitute a violation of a clearly established constitutional right," just like the conduct evidenced by final court rulings in State Action 2, ROA #49, GRANDT, DURAN, EDM, and STATE BAR seek to dispose of his claims entirely under false sovereignty, immunity, through actively unlawful taking from Plaintiff.

733.    GRANDT, DURAN, EDM, and STATE BAR seek to deny Plaintiff forum by influencing judicial officers or Enterprise 1 actors with actual threat, or implied threat, of "regulation" by Enterprise 2. Plaintiff incorporates the story of DOE leading to the untimely death of Mr. Kay, the notice by Plaintiff to Mr. Geragos in September 2022, and the subsequent press release by DURAN re-directing attention away from himself, the schemes shown in this action, and again toward another active market participant which appears to be for improper purposes as may have been those functions against a Mr. Doe.

734.    GRANDT describes the 5th and 14th Amendment to the United States Constitution as being "irrelevant" in response to Plaintiff's State Action 1 and State Action 2 statement of facts in support of his motions for summary judgment or in the alternative summary adjudication on 36

different issues on two motions, specifically citing the purported authority vested in Duran, her, Morgenstern from Supreme Court, apparently extending to CLC, KJC, BW, TJO, JTT and NMC.

735.   GRANDT, STATE BAR, EDM, DURAN specifically claim they "are immune from all claims" including "any and all claims in tort" in Orange County Superior Court, which claims noticed and filed include civil rights violations under the 5th and 14th Amendments to the U.S. Constitution, claims lying in judicial fraud and nonjudicial fraud in Orange County Superior Court that has more than two predicate acts of convicted racketeering lying in judicial fraud, and here shown claims lying in malicious prosecution of five lawsuits without probable cause, recklessness evidenced by understaffing, and intentional infliction of emotional distress evidenced by at least disregard for Plaintiff if not actual malice that Plaintiff has repeatedly exposed Defendants' unlawful activity for four years (and the public, courts, and legal profession – 20+).

736.   Disposition of any single claim in State Action 1 or State Action 2 in Superior Court becomes federal question under the 5th and 14th Amendment, as Plaintiff has not thus far had equal protection, nor has he had remuneration in exchange of the unlawful taking of legal fees or his property or business interests, nor has he had a fair and neutral court where its officers (as being duly authorized TJO, DURAN, CLC, GRANDT, KJC, BW, EDM, JTT, NMC) are engaged in or ratifying racketeering activity depending on which set of facts they are propounding on the Court. This is a pattern.

737.   Violations of those 5th and 14th Amendment rights of Plaintiff are mandatory duties subject to Cal. Gov. Cod. § 815.6, and with DURAN party defendant, appropriately, in both State Action 1 and State Action 2, Cal. Gov. Cod. § 815.3 as intentional torts.

738.   Violations of 42 U.S.C. § 1983 are distinct of and "irrelevant" to Government Claims Act claims despite their notice by Plaintiff on October 14, 2021.

739.   42 U.S.C. § 1983 is a statute intended to remunerate violations of federally protected rights under the United States Constitution and thereby, actionable here in the exclusive district of federal Court. For each defendant acting officially or in privity, State is liable derivatively where Plaintiff is not a lawyer in The State Bar of California's malicious jurisdiction.

740.   "[P]laintiff[] [is] entitled to go forward" with [his] claims. *Pelletier v. Fed. Home Loan Bank of San Francisco* , 968 F.2d 865, 872 (9th Cir. 1992). But [that] decision…sheds little light on whether the government actors might ultimately be entitled to qualified immunity… and the court is presented…context for the challenged actions." *Kwai Fun Wong* , 373 F.3d at 957."

741.   "In determining whether a government official is entitled to qualified immunity, we consider two different questions: (1) whether, "[t]aken in the light most favorable to the party asserting the injury... the facts alleged show the officer's conduct violated a constitutional right"; and (2) if so, "whether the right was clearly established." *Saucier v. Katz* , 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled on other grounds by Pearson v. Callahan* , 555 U.S. 223, 236–42, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018)

742.   The Count XIV Defendant(s) have conducted more than one overt act of judicial fraud and deception against Plaintiff with fraud on the courts in that they have deliberately fabricated evidence or caused such evidence to be fabricated, or they have ratified the fabrication of knowingly fabricated evidence as communicated on July 20, 2022, and they each did so by or under actual threat and coercion, which is part of a pattern of racketeering activity used to steal from the public.

743.   Plaintiff was harmed by this conduct and pattern described above.

744.   Deliberate fabrication of evidence furthered schemes before and after September 14, 2018, to steal from others without probable cause.

745.    Deliberate fabrication of evidence furthered schemes before and after January 23, 2019, to harm Plaintiff in particular due to his ownership position and role with the company and the malice that existed from O'CONNOR, DUFFY, and ZAKHIREH.

746.    Deliberate fabrication of evidence furthered schemes before/after September 8, 2021, to harm Plaintiff in particular, when JTT assumed the role of "counsel" in the Mesa Action despite the disqualification of CLC, KJC, NMC, BW, TJO, who entered "errata" trying to cover its trails of judicial fraud.

747.    Deliberate fabrication of evidence furthered schemes in order that KJC and NMC could eventually purport to set "court ordered" mediation on December 19, 2022 with a "Judge Grey of ADR Services, Inc." where no such order from Honorable Judge Randall J. Sherman existed.

748.    Specifically, Plaintiff objected to mediation of deliberately fraudulent litigation, wire, and mail fraud when a January 6, 2023 motion for summary judgment or in the alternative for summary adjudication will try the merits of 14 issues and 4 causes of action under California law in State Action 1 for which Count XIV Defendant(s) have no response or dispute to facts other than irrelevant state privileges or immunities or procedural avoidance of merits-based hearings.

749.    Deliberate fabrication of evidence furthered schemes to defraud Scottsdale Insurance Co. and Nationwide Insurance, each of which meet the definition of financial institution, which caused Plaintiff's deprivation of liberty and constitutes bank fraud or carrying on bank fraud.

750.    Deliberate fabrication of evidence underlies every lawsuit filed without the authorization to do so against Plaintiff since September 14, 2018 in order that he concede to the unscrupulous marauder Count XIV Defendant(s) for which three specific, final Court of Appeal opinions exist that caused Plaintiff's deprivation of liberty.

214

751.    Deliberate fabrication of evidence harmed Sanjay B. with "100% certainty" according to a subject matter expert in "State Bar Court" which caused his deprivation of liberty.

752.    Upon the existence of the deliberate fabrication of evidence and the Racket's impunity, GRANDT and DURAN cite the "civil matters" as being the basis for their "abatement" by EDM in July 20, 2022, when they each know that the fraudulent schemes have improper purposes unrelated to the merits of the claims and without regard for the damages done Plaintiff.

753.    GRANDT and DURAN know that KJC, BW, NMC, TJO, JTT, CLC are among the purported untouchables, or 700 lawyers who abuse the public, courts, and legal profession for their own monetary gain and control over the enterprise engaged in racketeering activity with impunity.

754.    Supporting DURAN, GRANDT, JTT, EDM, KJC, BW, NMC, and TJO were HIGGERSON, ZAKHIREH, DUFFY, O'CONNOR, and COOPER – who fabricated evidence with actual malice or legal malice. Count XIV Defendant(s) have each and together all engaged in judicial fraud and obstruction of justice that harmed Plaintiff.

755.    Despite their malice, HIGGERSON, ZAKHIREH, DUFFY, O'CONNOR, and COOPER may lack the specialized knowledge needed that they are but pawns in an Enterprise 2 scheme in California in pursuit of corrupt motives by unethical lawyers who willingly compromise the professions and careers of ethical lawyers and democracy for personal gain.

756.    DURAN, GRANDT, JTT, EDM, KJC, BW, NMC, and TJO freely compromise the fair administration of justice and deprivation of Plaintiff's liberty.

757.    Like CLC, STATE BAR is a corrupt organization that fabricates evidence (with "100% certainty") shown in State Bar Court, according to an expert shown by Plaintiff's report.

758.    WHEREFORE, Plaintiff request the Court order judgment in favor of Plaintiff against the Count XIV Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count XIV

  Defendant(s)

  Obstruction of Justice

  Fabrication of Evidence

  Judicial Deception

  Moral Turpitude in the Practice of Law

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count XIV

  Defendant(s)

  $32,667,351 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count XIV

  Defendant(s)

  $32,667,351 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count XIV

  Defendant(s)

  $5,649,297 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

  Defendant(s)

  $1,700,000 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

  Defendant(s)

  $138,000,000 monetary judgment jointly and severally for damages

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Counts VII – XI

  Defendant(s)

  Restraining Order and Vexatious Litigant Designation as Court Deems Just

216

## COUNT XV

### VIOLATION OF 15 U.S.C. § 1

### SHERMAN ACT DEMAND FUTILITY

759.    The allegations of paragraphs ¶ 1 through ¶ 758 are incorporated herein by reference.

760.    This count is against THE STATE BAR OF CALIFORNIA, with ATTORNEY GENERAL OF THE UNITED STATES as nominal defendant.

761.    15 U.S.C. § 1 holds every combination in the form of trust, or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

762.    The State Bar of California is a combination in restraint of trade among the several States, where CLC and AEGIS alone extend to property owners' associations in Newport Beach and Orange County, to the real estate purchased and controlled through them from the racketeering activity proceeds and the Racket.

763.    Demand upon State is futile, where they cannot make determination for themselves.

764.    Demand upon State has failed, where the complaint in *Justin S. Beck v. Ruben Duran (The State Bar of California)* S276516 was even stricken by CSC as being "premature" on September 27, 2022, despite the overwhelming evidence of protectionist behavior harming others.

765.    Demand upon State has failed, where the racketeering activities at issue are "abated" and where DURAN, GRANDT, and EDM directed Plaintiff to collect evidence for them while KJC, JTT, BW, NMC, TJO and CLC actively steal from non-active market participants or extort them while placing illogical, unreasonable pressure on Plaintiff in particular. See "mediation" where other litigants are unreasonably subject to the ongoing schemes.

766.    Demand upon State has failed, where anticompetitive conduct among active market participants is difficult to discern, and State Attorney General + State Legislature are conflicted.

217

767.    The State Bar of California is illegal, with demand upon its licensees being futile.

768.    Plaintiff demands ATTORNEY GENERAL FOR THE UNITED STATES act.

769.    Failing, this count is brought in the capacity of a private attorney general for the United States as it would not fail objectively in any other profession, but for the monopolistic characteristics at issue, or for conservative or for democratic or for independent interests or for other institutions or causes unrelated to the conduct at issue or merits and without regard for the United States Constitution on a subjective basis, which was avoidable were the terms "reasonable care" such a high bar for defendants who control the rights and property of others at law, but who refuse to adhere to legal tenets of advocacy and trust as being paramount.

770.    WHEREFORE, Plaintiff request the Court order judgment in favor of Plaintiff against the Count XV Defendant(s) as follows:

- JUDGMENT IN FAVOR OF THE UNITED STATES

    Appointment of Federal Trade Commission Investigator

    Administrative Proceedings for the Institution of Fines and Restitution

## COUNT XVI

## VIOLATION OF 42 U.S.C. § 1983

### MALICIOUS DEFENSE

771.    The allegations of paragraphs ¶ 1 through ¶ 770 are incorporated herein by reference.

772.    This count is against RUBEN DURAN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; ELI DAVID MORGENSTERN, ESQ.; Office of General Counsel - THE STATE BAR OF CALIFORNIA; and DOES 1-10 with STATE OF CALIFORNIA as nominal defendant ("Count XVI Defendant(s)").

773.    This count is filed under 42 U.S.C. § 1983 as being federally actionable.

774.    On or around May 12, 2022, Plaintiff served the first set of discovery upon STATE BAR in State Action 2.

775.    On or around May 30, 2022, Plaintiff noticed his intention of moving for summary judgment or in the alternative summary adjudication, and later provided a draft statement of facts in State Action 2. The seven causes of action lack an answer and are supported by overwhelming evidence.

776.    On or around the same time, Carissa Andresen with Office of General Counsel for STATE BAR asked for an extension so the government could provide more complete answers.

777.    Plaintiff granted a 60-day extension, ultimately landing on August 9, 2022.

778.    On or around June 4, 2022, GRANDT as "Assistant General Counsel" substituted into State Action 2 for Carissa Andresen, Esq. from Office of General Counsel, and later proclaimed that State Bar to "believe discovery will not be necessary" because of their "immunity" after the extension was provided. No discovery has ever been produced.

779.    Upon receipt of the decisions communicated to Plaintiff by GRANDT and DURAN for the Board of Trustees which ratified the racketeering activity described and the harm to Plaintiff, he appropriately named GRANDT and DURAN as defendants as being a substantial factor under CACI 430 in the scams and judicial fraud – at least through ratification of a public entity defendant under CACI.

780.    Upon learning they were now appropriately named defendants in the foregoing conduct in State Action 2, GRANDT, for STATE BAR, filed an Anti-SLAPP under Cal. Cod. Civ. Proc. § 425.16 which is based upon the preservation of the United States Constitution and 1st amendment rights of petition and free speech.

781.    Using this state law intended to protect Plaintiff and those among the public subject to retaliatory actions by large organizations such as The State Bar of California, Office of General

Counsel used it to intimidate Plaintiff, made legal recommendations that he dismiss his genuine claims or face the imposition of the legal fees (pro se) for Office of General Counsel, GRANDT, DURAN, EDM, Anand Kumar, Esq., and Joy Nunley.

782.   The acts communicated by The State Bar of California were not an expression of free speech or protected petitioning. The letter on July 20, 2022 communicated the decisions of the Board of Trustees to ratify serial fraud and racketeering activities.

783.   No reasonable person or attorney would regulate conduct, while inspecial relationship with actual knowledge of Plaintiff's harm, and cite the existence of civil claims for the same conduct being the reason.

784.   No reasonable person or attorney would prevent Plaintiff a neutral forum citing artificial state operations which have no foundation in the United States to take from others.

785.   Fed. Rul. 11 is codified by Cal. Cod. Civ. Proc. § 128.7 in California, but unfortunately also "regulated" by state actors like GRANDT and DURAN who knowingly abuse the right of petition they are bound to protect over all costs as being "paramount."

786.   Plaintiff incorporates his response here to [ROA #79] at [ROA #180] in State Action 2 as being set forth fully here.

787.   No reasonable person or attorney would have filed [ROA #79] in State Action 2, or any of the defenses it cites based on sovereignty, when the conduct here is already adjudicated by Courts of Appeal as having arisen from nonjudicial fraud, leading to judicial fraud, leading to malicious prosecution, leading to intentional infliction of emotional distress that does not arise from protected activity.

788.   The schemes that harmed Plaintiff were anything but "free speech" and the conduct of GRANDT, EDM, and DURAN is regulated in this forum and the forum in which they have propounded the false claims of sovereignty and threat of further violations of his rights.

789.    GRANDT, EDM, and DURAN's speech is regulated in the private forum of courts as an objective matter, and not their subjective interpretation, at least in this Court.

790.    Plaintiff incorporates the State Bar Act and California Rules of Professional Conduct here and provides the defendants ample notice that they will be noticed in this action.

791.    Violations of law are not protected activity and the speech and conduct of lawyers are governed by the Court's rules, and not the way that EDM, GRANDT, or DURAN believe them.

792.    The malicious "anti-SLAPP" shown at [ROA #119], [ROA #128] in State Action 2 was improper and intended solely to avoid a deposition subpoena served by Plaintiff upon The State Bar of California to appear for testimony at its own address on September 9, 2022 at 9:00AM.

793.    Upon serving the "anti-SLAPP" shown at [ROA #119], [ROA #128] in State Action 2, the Count XVI Defendant(s) frivolously asserted that "discovery is stayed" due to the normal procedural rules of Cal. Cod. Civ. Proc. § 425.16 intended as an "early" screening tool against meritless lawsuits. This is not a meritless lawsuit.

794.    No reasonable person or attorney would have filed the "anti-SLAPP" shown at [ROA #119], [ROA #128] in State Action 2 except one motivated by improper purposes.

795.    Plaintiff incorporates his response here to [ROA #119] and [ROA #128] at [ROA #141] supported by [ROA #139] in State Action 2 as being set forth fully here, as federal question.

796.    The malicious "demurrer" shown at [ROA #161] in State Action 2 was improper.

797.    Plaintiff incorporates his response here to [ROA #161] at [ROA #184] in State Action 2 as being set forth fully here. Here, Duran, Grandt, concede to improper purposes.

798.    Plaintiff incorporates his motion for sanctions against Count XVI Defendant(s) here, shown at [ROA #165] in State Action 2, filed under Cal. Cod. Civ. Proc. § 128.7.

799.    Plaintiff incorporates his motion for sanctions against Count XVI Defendant(s) here, shown at [ROA #216] in State Action 2, filed under Cal. Cod. Civ. Proc. § 128.5.

800.    Plaintiff incorporates the reply filed by Count XVI Defendant(s) to [ROA #180] here which again seeks to deny Plaintiff a neutral forum entirely, and the artifice of state law cited.

801.    All claims and causes of action against Plaintiff for the foregoing matters lacked probable cause or standing to begin with, and the defense of this conduct through a protection racket is worse than the malicious prosecution itself.

802.    WHEREFORE, Plaintiff request the Court order judgment in favor of Plaintiff against the Count XVI Defendant(s) as follows:

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count XVI Defendant(s)

   Violation of 18 U.S.C. § 1983 – Malicious Defense

- JUDGMENT IN FAVOR OF JUSTIN S. BECK AGAINST Count XVI Defendant(s)

   $632,051,997 monetary judgment jointly and severally

### PLAINTIFF DEMANDS TRIAL BY JURY.

803.    For the foregoing reasons, Plaintiff request the Court order judgment in his favor.

804.    CERTIFICATION AND CLOSING. Under Fed. Rule of Civ. Proc. 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.  Tuesday, October 11, 2022, and certifies this complaint.

Justin S. Beck, Plaintiff, *In Propria Persona*