JUSTIN S. BECK
3501 ROSELLE ST.
OCEANSIDE, CA 92056
760-449-2509
justintimesd@gmail.com
*In Pro Per + Guardian Ad Litem*



FILED

JAN 09 2023

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

## UNITED STATES DISTRICT COURT

### FOR THE

### SOUTHERN DISTRICT OF CALIFORNIA

JUSTIN S. BECK, individually, and
as *guardian ad litem* to ROES 1-150,000, and
as *guardian ad litem* to U.S.A.

　　　　　　Plaintiff,

　　vs.

CATANZARITE LAW CORPORATION;
STATE OF CALIFORNIA; THE STATE BAR
OF CALIFORNIA; ORANGE COUNTY
SUPERIOR COURT; ORANGE COUNTY
DISTRICT ATTORNEY'S OFFICE; RUBEN
DURAN, ESQ.; SUZANNE CELIA GRANDT,
ESQ.; RICHARD FRANCIS O'CONNOR, JR.;
MOHAMMED ZAKHIREH; JAMES DUFFY;
KENNETH CATANZARITE, ESQ.; JIM
TRAVIS TICE, ESQ.; NICOLE MARIE
CATANZARITE WOODWARD, ESQ.;
BRANDON WOODWARD, ESQ.; TIM JAMES
O'KEEFE, ESQ.; AMY JEANETTE COOPER;
CLIFF HIGGERSON; JAMES DUFFY; ELI
DAVID MORGENSTERN, ESQ.; LEAH
WILSON, ESQ.; ROBERT GEORGE RETANA,
ESQ.; ELLIN DAVTYAN, ESQ.; JOHN C.
GASTELUM; JORGE E. NAVARETTE;
GEORGE SARGENT CARDONA, ESQ.;
ANTHONY B. SCUDDER

　　　　　　Defendants,

Case No.: **3:22-CV-01616-BAS-DDL**

**Hon. Cynthia A. Bashant**

**Courtroom: 4B (4th Flr.)**

**NO ORAL ARGUMENT UNLESS
ORDERED BY THE COURT**

***EX PARTE* APPLICATION FOR
TEMPORARY RESTRAINING ORDER**

Filed Concurrently With:

　　1) Declaration of Justin S. Beck in
　　Support of Application for Temporary
　　Restraining Order

　　2) Exhibits in Support of Application for
　　Temporary Restraining Order, Summary
　　Judgment Motion, and Trial

22-CV-1616-BAS-DDL

1  ATTORNEY GENERAL OF THE UNITED      )
2  STATES; STATE OF CALIFORNIA; UNITED )
   STATES OF AMERICA:                  )
3                                       )
           Nominal Defendants           )
4                                       )
                                        )
5  _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    22-CV-1616-BAS-DDL

1        **_EX PARTE_ APPLICATION FOR TEMPORARY RESTRAINING ORDER**

2        COME NOW Justin S. Beck in his capacity as *guardian ad litem* ("movant") to UNITED

3   STATES OF AMERICA ("U.S"), with one request individually (***Docket #7, PageID.529, 13:15***), for a

4   temporary restraining order ("TRO") with 83.3(g) decl. in support, first amended complaint as being

5   extraordinary circumstances to ensure the conduct at issue is not concealed or continued ("application").

6        The application is made on the grounds that defendants acting for The State Bar of California

7   ("STATE BAR"): RUBEN DURAN, ESQ., Chairman of Board of Trustees ("DURAN"); SUZANNE

8   CELIA GRANDT, ESQ., Assistant General Counsel ("GRANDT"); ELLIN DAVTYAN, ESQ.,

9   General Counsel ("DAVTYAN"); ROBERT GEORGE RETANA, ESQ., Assistant General Counsel

10  ("RETANA"); ELI DAVID MORGENSTERN, ESQ., Senior Trial Counsel ("MORGENSTERN");

11  LEAH WILSON, ESQ., Executive Director ("WILSON"); GEORGE SARGENT CARDONA, ESQ.,

12  Chief Trial Counsel ("CARDONA") (together "GOV. ATTORNEYS"); are actively causing <u>and</u>

13  concealing liability and irreparable harm to: 1) STATE OF CALIFORNIA ("STATE"); 2) U.S. under

14  *Bolling v. Sharpe*, 347 U.S. 497, (1954) P. 499; 3) U.S. under *N.C. State Bd. of Dental Examiners v.*

15  *Fed. Trade Comm'n*, 574 U.S. 494, (2015); 4) STATE and U.S. under California Assembly Bill 3249.

16       Specifically, GOV. ATTORNEYS are unlawfully advancing the interests of each other using

17  funds from licensees while stealing from U.S. citizens, and carrying on unquestionably criminal conduct

18  by mail and wire of 700+ CLUB including David Lira and CATANZARITE LAW CORPORATION

19  ("CLC"): KENNETH CATANZARITE, ESQ. ("KJC"); JIM TRAVIS TICE, ESQ. ("JTT"); NICOLE

20  MARIE CATANZARITE WOODWARD, ESQ. ("NMC"); BRANDON WOODWARD, ESQ ("BW");

21  TIM JAMES O'KEEFE, ESQ. ("TJO") (together, the "CATANZARITE ATTORNEYS").

22       Clear and convincing evidence shows an intercorporate and intracorporate RICO conspiracy

23  violative of 18 U.S.C. § 1962(d) and 15 U.S.C. § 1 between GOV. ATTORNEYS, CATANZARITE

24  ATTORNEYS, STATE BAR and CLC. *Webster v. Omnitron Int'l*, 79 F.3d 776, 787 (9th Cir. 1996)

25  (quoting with approval *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1998), for the proposition

26  that "intracorporate conspiracies…threaten RICO's goals of preventing the infiltration of legitimate

27  businesses by racketeers and separating racketeers from their profits.") This Court must use all its

28  powers for the U.S., if not for Plaintiff, as defendants do not care about justice, due process, or the truth.

**I.     TRO IS APPROPRIATE TO ENJOIN ONGOING, PARALLEL CONDUCT AT ISSUE**

There is no on-point case preceding this application because STATE BAR's judicial monopoly and the collateral attack present of State Bar Court described in the verified first amended complaint at ***Docket #7*** has previously kept U.S. Courts from understanding the unconstitutionality, establishment, and carrying on of attorney schemes to defraud the citizenry and U.S. under 18 U.S.C. § 371. But movant is not an attorney and has thus far evaded such collateral attack. ***DOE, Docket #7, pp. 27-40. Ex. 1.***

Movant provided written and oral notice as set out in his declaration, but this Court is authorized to issue the TRO without written or oral notice under F.R. 65(b) and (d) against STATE BAR, CLC, GOV. ATTORNEYS, and CATANZARITE ATTORNEYS, which applies further to "(2) only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule (d)(2)(A) or (B)." TRO would assist this.

The application and first amended complaint ("FAC") ***Docket #7*** and declaration in support of TRO also set out specific facts supported by documentary exhibits as proof to exceed the burden. Movant seeks that all attorney defendants adhere to the Court rules and the law. The conspiracy involves:

18 U.S.C. § 1952(a)(1) holds, in relevant part as set forth in the FAC at ***Docket #7, p. 23***:

"Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—(1) distribute the proceeds of any unlawful activity; and thereafter performs or attempts to perform—(A) an act described in paragraph (1) or (3) to [otherwise promote, manage, establish, carry on, of any unlawful activity [] shall be fined under this title, imprisoned not more than 5 years, or both; [and] (b) As used in this section (i) "unlawful activity" means [] (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title and (ii) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States." ***Ex. 1. Ex. 40.***

18 U.S.C. § 1952(a)(3) holds, in relevant part as set forth in the FAC at ***Docket #7, p. 24***:

"Whoever...uses the mail or any facility in interstate or foreign commerce, with intent to-(1) distribute the proceeds of any unlawful activity; or...(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both." ***Ex. 130, pp. 25-74 lists 204 instances of this violation.***

**(A) Specific Facts Clearly Show Immediate and Irreparable U.S. Injury, Loss, or Damage**

1. STATE BAR Actually Knew About Girardi Compromise of Judiciary in 2014, Carried it On
*Ex. 1* shows actual knowledge. *Ex. 130* shows carrying on. *Ex. 42* shows acute, ongoing harm to U.S.

2. STATE BAR Actually Knows About David Lira Now, 700+ CLUB, Yet Carries Each On
*Ex. 41* shows another RICO action. *Ex. 42* shows the harm. *Ex. 16* shows carrying on. ***Docket #7.***

3. STATE BAR Actually Knows About CATANZARITE ATTORNEYS, Yet Carries Each On
*Ex. 31, 130* actual knowledge. *Ex. 26, 94* shows carrying on. *Ex. 120* shows conspiracy. ***Docket #7.***

4. DURAN Still Delivers Materially False Statements by Wire to Defraud the Public and U.S.
*Ex. 130* shows conspiracy when compared to Lira, CATANZARITE ATTORNEYS, others shown.

5. RETANA, GRANDT, and NAVARETTE Freely Obstruct Federal Justice with Impunity
*Ex. 71* actual knowledge 11/29/22. *Ex. 55, Ex. 60, Ex. 61-68* wire fraud, obstruction, conspiracy.

6. GOV. ATTORNEYS Disregard Binding Decisional Law of United States Supreme Court
*Ex. 60* disregards *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015).

7. Defendant KJC Seeks to Unlawfully Appear for Himself and Coerced Non-Attorney Pawns
*Ex. 132* shows ANTHONY B. SCUDDER, non-attorney defendant harm, conspiracy, control.

8. Defendant RETANA Seeks to Unlawfully Appear for STATE BAR, GRANDT, WILSON
*Ex. 134* RETANA conspiracy w/WILSON, GRANDT, MORGENSTERN (inferences re: DURAN).

9. BOT, OCTC, and OGC Establish, Carry On 44 Injuries Per Day in STATE BAR Conspiracy
*Ex. 136* shows 44 injuries daily caused by unlawful activity carried by STATE BAR via mail fraud.

10. DAVTYAN Overtly Sought to Intimidate, Control Enterprise, and Conceal by Mail/Wire
*Ex. 103* RICO conspiracy proven from *Ex. 20*, control enterprise, obstruct justice, malice. ***Docket #7***

11. Enterprise Patterns of Racketeering Activity are Proven by Convictions Shown in Decl.
*Ex. 30* carried on. *Ex. 38, 39* wire fraud, manufactured evidence. *Ex. 49* "insurance fraud scheme" with
*Ex. 50* carried on. *Ex. 51* fraud, money laundering. *Ex. 52*, carried on for nearly 3-years. *Ex. 81* "sham
court documents, like CATANZARITE ATTORNEYS, OGC. *Ex. 82, 83* wire fraud carried on. *Ex. 44,*
*46* convictions, carried on, 11 felonies involving conspiracy and insurance fraud. ***Docket #7.***

12. PORA of CATANZARITE ATTORNEYS Shown by Cal. Rule of Court 8.1115(b)(1)-(2)
*Ex. 3, Ex. 5, Ex. 31, Ex. 32, Ex. 36*, carried *Ex. 26*, conspiracy, *Ex. 120*, invested, *Ex. 40. Docket #7*

**(B) Movant Certifies Notice and Extraordinary Reasons Why Notice is Not Required**

Notice was provided but F. R. 65(b)(1) holds "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an declaration or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result in the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons it should not be required."

1. Movant Delivered Notice to Defendants in Good Faith, Requested Read Receipt, and Called
Movant sent this application to every defendant and adverse party in good faith. *Decl, ¶ 3-13.*

2. Movant's Primary Requested Relief is for Defendants to Stop Breaking the Law and Rules
Adverse parties can't be prejudiced where the relief is that they obey the law and Court rules.

3. Movant Unduly Prejudiced, as State Bar's Monopoly Prevents Him from Obtaining Counsel
No attorney can represent movant, as they would destroy their career, even sent to jail. *Id. ¶ 26.*

4. Movant's Request for U.S. Marshal Service Reduces Conspiracy, Concealment, U.S. Harm
Movant is likely to prevail on claims for U.S., and no party is prejudiced by service they avoid.

5. Movant's Request for Money Judgment Against STATE is Immaterial, Owed Him Anyway
Movant likely to prevail individually, owed converted policies of $1.282 million by STATE.

6. Office of Attorney General for STATE Must Reduce Future STATE, U.S. Liability, Harm
BOT, OGC, STATE BAR have no credibility here. Sovereign must act for U.S. and STATE.

7. CATANZARITE ATTORNEYS Engage in Criminal Conduct with Impunity, Conspiracy
Causing irreparable harm to *their own clients*, each must be enjoined and disbarred, here.

## II.   ARGUMENT

**A. State Bar's Board of Trustees Prohibited from Advancing BOT, CLC, OGC Interests**

Cal. Assembly Bill No. 3249, Chapter 659, filed with Cal. SOS Sep. 21, 2018 ("AB 3249") holds in relevant part "(1) The State Bar Act…(2)…requires protection of the public to be the highest priority for the State Bar and the board of trustees in exercising their licensing, regulatory, and disciplinary functions" where movant Plaintiff is a member of the public within the protected class. ***Docket #7, PageID.412, ¶ 42.*** AB 3249 eliminated "the authorization of the board to aid in all matters that may advance the professional interests of" CATANZARITE ATTORNEYS, GOV. ATTORNEYS, CLC.

Board of trustees for STATE BAR, which controls GOV. ATTORNEYS, are prohibited from advancing the interests of CATANZARITE ATTORNEYS or CLC as they have thus far done. *Ex. 31, 130* actual knowledge. *Ex. 26, 94* shows carrying on. *Ex. 120* shows conspiracy. *Docket #7.*

**B. CRPC 1.7(d)(3) and ABA 1.7 Both Prohibit Adverse Representation Here Anyway**

1. KJC Tried to Waive Service for CLC, NMC, BW, TJO, and Non-Attorneys He Has Extorted

Part of the fraudulent scheme relies upon this "evidence," *Ex. 132, pp. 002-007*. Before that:

Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI [AMY COOPER, CLIFF HIGGERSON, ANTHONY B. SCUDDER, RICHARD FRANCIS O'CONNOR, JR., and Plaintiff] as well as a derivative action against MFS [through which it obtained private information, without standing, *Ex. 138, pp. 11-3* where Jolly Roger, Inc. was an MFS shareholder, not Root]; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action [without Court approval, while "tolling claims" to "bring later"]; (3) it became MFS's counsel of record [to avoid a motion for security by using a threat of fear and color of official right to manufacture evidence and commit securities fraud]; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) [now carried on by STATE BAR through JIM TRAVIS TICE, ESQ.] claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board[]."

*Beck v. Catanzarite Law Corp.*, No. G059766, 16 (Cal. Ct. App. Jul. 13, 2022)

In its reply, [counsel for CTI] addressed Catanzarite's assertion its representation of other clients was not adverse to CTI. "[Catanzarite] cannot ethically represent certain shareholders suing defendant/cross-complainant [CTI] in shareholder derivative actions, shareholder class actions, and making motions to appoint a receiver to control [CTI] *while at the same time* acting as legal/litigation counsel of record *for* CTI directly. Rule of Professional Conduct, rule 1.7 expressly prohibits a lawyer from so representing clients with such direct and adverse interests at the same time. When, as here, the lawyers' clients' interest are so directly adverse, the clients cannot even consent to such joint representation, because it makes the entire judicial machinery appear unfair."...the drastic measure of seeking a receivership [through HIGGERSON and COOPER] in the shareholder derivative Mesa Action was "adverse to the corporation's interests" due to the "extravagant costs." CTI argued the request was "similar to claiming 'we had to destroy the village in order to save it.'"

*Fincanna Capital Corp. v. Cultivation Tech.*,
No. G058700, 10-11 (Cal. Ct. App. Jun. 28, 2021)

5                    22-CV-1616-BAS-DDL

1    2. <u>ROBERT RETANA Tried to Waive Service for Select GOV. ATTORNEYS After AB 3249</u>

2    In an active conspiracy to conceal personal and state liability while enabling DURAN to appear

3    in a January 6, 2023, BOT meeting about STATE BAR finances without disclosing the instant action or

4    two related cases removed to federal Court on January 5, 2023 – RETANA tried to waive service as

5    described in Plaintiff's complaint at ***Docket #7, PageID.513, 1:12***. Shown in ***Ex. 134, pp. 002-007***.

6    3. <u>GOV. ATTORNEYS and CATANZARITE ATTORNEYS Can't Continue U.S. Predation</u>

7    Each are conspiring to defraud the U.S. in violation of 18 U.S.C. § 371 and 15 U.S.C § 1, here.

8
9    ""'"Normally, an attorney's conflict is imputed to the law firm as a whole on the rationale 'that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.'" [Citation.]" (*Beachcomber Management Crystal Cove, LLC, v. Superior*
10   *Court* (2017) 13    Cal.App.5th    1105,    1116 (*Beachcomber    Management*).    Accordingly,    the disqualification ruling made as to Catanzarite is binding on the associates of that firm [including **Tice**]."

11
12   *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 17 n.7 (Cal. Ct. App. Jun. 28, 2021)

13   "There are different disqualification standards for attorneys who have conflicts with former clients and those who have conflicts with current clients. As to…former clients, courts look to whether there is a

14   'substantial relationship' between the subjects of the current and the earlier proceedings. [Citations.] [¶] In contrast, there is a more stringent standard when an attorney simultaneously represents two current

15   clients with conflicting interests. Disqualification... is *mandatory* in such circumstances even though the simultaneous matters may have nothing in common. (*Flatt, supra,* 9 Cal.4th at p. 284.) "'Something

16   seems radically out of place if a lawyer sues one of the lawyer's own present clients on behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information

17   is apparently jeopardized, the client who is sued can obviously claim that the lawyer's sense of loyalty is askew.'" [Citation.]" (*Banning Ranch, supra,* 193 Cal.App.4th at pp. 911-912; see Rules Prof. Conduct

18   rule 1.7(a) & (b) [attorney may not without informed written consent "represent a client if the representation is directly adverse to another client in the same or a separate matter" or "there is a

19   significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client"].)

20
21   *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 17-18 (Cal. Ct. App. Jun. 28, 2021)

22   "In summary, courts recognize the "chief fiduciary value jeopardized" in cases involving successive representation is client confidentiality. (*M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 613.)

23   Whereas in concurrent "representation of multiple clients resulting in a conflict of interest" the "'primary value at stake'" is the attorney's duty and "the client's legitimate expectation" of loyalty, not

24   confidentiality." Catanzarite extorted information on CTI, then represented CTI, now represents MFS.

25   *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 18 (Cal. Ct. App. Jun. 28, 2021)

26   "It is noteworthy that CTI's directors who were members of the Probst Faction hired Winget to defend CTI in the three shareholder derivative actions (the [fraudulent] Pinkerton, MFS, and Mesa Actions).

27   Catanzarite does not suggest these directors lacked authority to retain Winget as CTI's corporate counsel in these lawsuits."

28
     *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 22 n.10 (Cal. Ct. App. Jun. 28, 2021)

6                              22-CV-1616-BAS-DDL

**C. KJC Does Not Care About the Truth Due to Control Acquired by PORA of Enterprise**

"In July 2011, Catanzarite substituted into five actions pending in Los Angeles Superior Court, representing a group of clients that included Ronald Weinstock. Catanzarite alleged it had a written fee agreement with these clients providing that the firm would be paid on contingency. Its compensation was to include membership interests in Newlife Sciences, LLC, at that point in the (allegedly wrongful) possession of some of the adverse parties. Catanzarite also alleged it had a lien on any recovery in the five Weinstock actions." Catanzarite filed an adversary complaint against O'Connor on behalf of Denise Pinkerton, in furtherance of this New Body scheme, too, to extort him into creating false evidence.

*Catanzarite Law Corporation v. Gordon Reese, LLP*, No. G047968, 2-3 (Cal. Ct. App. Oct. 15, 2013)

"Kenneth Catanzarite appeals the denial of relief from a judgment of the bankruptcy court. The district court affirmed the award of sanctions against Catanzarite for violating a preliminary injunction that barred "the commencement of any further actions under the same or similar facts or circumstances to" lawsuits he had filed against bankruptcy creditors. The district court also ruled that Catanzarite forfeited his opportunity to object to the amount of sanctions imposed. We affirm."

*Catanzarite v. GCL, LLC*, No. 21-12766, 1 (11th Cir. Mar. 9, 2022)

"Catanzarite, an attorney licensed in California and [carried on] to appear *pro hac vice* in the bankruptcy court, filed adversary complaints against the Daymark companies for Richard Carlson" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 2 (11th Cir. Mar. 9, 2022) "Catanzarite filed nine putative class action complaints for the Carlson plaintiffs in California and Utah courts" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 2 (11th Cir. Mar. 9, 2022) The bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the Carlson plaintiffs, *see*Fed. R. Civ. P. 65(d)(2)(B), violated the injunction by filing a civil action and lis pendens for the Looper plaintiffs "based upon TIC ownership interests in the Congress Center," which was the same subject "matter[] explicitly enjoined by the Second Preliminary Injunction Order." And the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing false and misleading statements about the Daymark bankruptcy." **Carlson wasn't seeking counsel**!

*Catanzarite v. GCL, LLC.*, No. 21-12766, 3-4 (11th Cir. Mar. 9, 2022)

"The district court ruled that, "under the plain language of Rule 65(d)(2)(B), [Catanzarite], as the attorney for the enjoined Carlson [plaintiffs], was bound by the Preliminary Injunction" and violated it by filing an action "based on similar ownership interests and the same or similar facts or circumstances."" **[pattern of racketeering activity]** *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 5 (11th Cir. Mar. 9, 2022) Catanzarite violated the injunction. The injunction expressly prohibited "the commencement of any further actions under same or similar facts or circumstances to the Subject Lawsuits." Two of the subject lawsuits involved Mikles creditors mishandling investors' tenancy-in-common interests in the Congress Center. In the complaint and lis pendens, Catanzarite repeated many of the facts and legal arguments made in the subject lawsuits.

*Catanzarite v. GCL, LLC*, No. 21-12766, 7 (11th Cir. Mar. 9, 2022)

"Catanzarite argues that he was denied due process with respect to the award to the Trustee" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 8 (11th Cir. Mar. 9, 2022) "The bankruptcy court ensured that its awards were "calibrated to the damages caused by" Catanzarite's noncompliance by limiting the award to "cover[ing] the legal bills that the **litigation abuse** occasioned." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017)"

*Catanzarite v. GCL, LLC*, No. 21-12766, 9 (11th Cir.  Mar. 9, 2022)

22-CV-1616-BAS-DDL

**D. State Bar's Office of General Counsel Deliberately Obstructs Justice with Impunity**

GOV. ATTORNEYS can't exculpate their own conflicts appearing for STATE BAR, where:

"[]Catanzarite[]…ignores the fact CTI [MFS, and The State Bar of California are not individuals] but rather [] inanimate corporate [entities] having a board of directors [or trustees] with authority to hire corporate counsel. Catanzarite's authority to represent [MFS, then CTI, and now MFS again to re-file claims while disregarding this Court, using The State Bar of California in conspiracy arises] from its relationship with the O'Connor Faction [and at least defendant ELI DAVID MORGENSTERN and Jorge Navarette of California Supreme Court who enable the crimes despite their actual knowledge thereof]."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 22-23 (Cal. Ct. App. Jun. 28, 2021)

1. RETANA and GRANDT Cannot Be Trusted Here, Either

Consistent with enterprise patterns, GRANDT and RETANA have previously defrauded a federal judge while showing reality of the unconstitutional "State Bar Court." *Ex. 2, pp. 001-014.*

2. DAVTYAN is Complicit with RETANA, GRANDT, and CATANZARITE ATTORNEYS

In conspiracy as each agree to overt acts or concealment of criminal conduct, first GRANDT reveals the unlawful unity of interests within STATE BAR among DURAN, CARDONA, WILSON, and OGC. *Ex. 120.* Then GRANDT seeks to conceal it with malice. *Docket #7, PageID.496, 1:13.*

Failing, DAVTYAN tries to intimidate Plaintiff by threatening letter delivered by postal mail and wire to defraud him, the public, U.S., and to conceal everything while concurrently seeking to control the enterprise. 18 U.S.C. §§ 1962(b) and (d). *Ex. 103. Docket #7, PageID.497, 1:23.*

**E. Attorney Defendants Charged with Felonies, Require Permission to Represent Others**

Civ. L. R. 2.2(b)(1) holds "[a]ny attorney charged with…a felony must report the charge…within fourteen (14) days to the Clerk of Court. Each of the CATANZARITE ATTORNEYS and GOV. ATTORNEYS are charged with multiple felonies, here. Under Civ. L.R. 2.2(b)(3), each being a "non-court appointed attorney charged with a felony must show cause why they should not be removed from any pending civil or criminal case due to a conflict of interest." Before any of them can appear in this case, "[i]t will be the attorney's burden to demonstrate to each judge assigned a case on which the charged attorney wishes to appear that there is no conflict and the attorney can appropriately discharge their duties to the client." This is not possible here, as the conflicts are already made manifest as above.

**F. Attorney Defendants Lack "Good Moral Character," Cannot Represent Others Here**

GOV. ATTORNEYS and CATANZARITE ATTORNEYS each lack "good moral character," and are thereby barred from "continuing membership" in this Court. Civ. R. 83.3(c)a). *Docket #7.*

**III.    RELIEF REQUESTED BY TRO, PLUS ANY OTHER RELIEF COURT DEEMS JUST**

Movant, STATE, and "United States Attorney [are] the representative not of an ordinary party to [this application, motion, and case], but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution [and civil action on behalf of the United States under federal antitrust law] is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer."

*Berger v. United States*, 295 U.S. 78, 88 (1935)

The United States has been subject to antitrust violations by STATE BAR due to its control of a RICO enterprise acquired and maintained through a pattern of racketeering activity. 18 U.S.C. § 1962(b). STATE BAR has done so in conspiracy with BOT, OGC, Girardi-Keese, CLC, CATANZARITE ATTORNEYS, GOV. ATTORNEYS, and 700+ CLUB. *Docket #7, PageID.413-4.* Through violations of confidentiality, lacking loyalties, and absolute disregard of public rights, equity, Courts, judicial officers, and the legal profession – each seek to continue their patterns in this Court.

Plaintiff has suffered for four years, and the United States has suffered for at least twenty. Plaintiff deserves $1.282 million money judgment against STATE for converted policies, and U.S. Marshals should be ordered to direct priority service of summons, complaint, and the TRO upon each of the defendants. Movant, as U.S. *guardian ad litem*, is likely to prevail on antitrust claims. Where this application is filed for U.S., no security on TRO is required. F. R. 65(c). U.S. should pay U.S. Marshals.

1. Enjoin GOV. ATTORNEYS from Representing Anyone but Themselves in this Case

2. Enjoin CATANZARITE ATTORNEYS from Representing Non-Attorneys in this Case

3. Order BOT, OGC to Notify All STATE BAR Employees, Officials, Public of FAC, TRO[1]

4. Order CATANZARITE ATTORNEYS to Notify All Their Clients and Staff of FAC, TRO[2]

5. Order STATE BAR to Prove Written Notice of TRO/FAC as Above

6. Order CATANZARITE ATTORNEYS to Prove Written Notice of TRO/FAC as Above

7. Order Attorney General for STATE to Assume/Hire Defense of STATE BAR in this Case

8. Order U.S. Marshals to Effect Priority Service of Summons, Complaint, and TRO for U.S.

9. Order Money Judgment to Justin S. Beck against STATE for Fees Converted to Enterprise

---

[1] STATE BAR, OGC, BOT have had, and have confirmed receipt of, a preservation of evidence letter since 10/14/21.
[2] Where KJC controls who says what and how, "Catanzarite does not care about the truth." Exhibit 35, pp. 002-005.

1  **IV.    CONCLUSION**

2       Obstructed in two Cal. Superior Court cases and two writ proceedings using enterprise control

3  by OGC and Governor Gavin Newsom, Plaintiff is prepared to file a motion for summary judgment

4  using 9th Circuit case law and at least 150 evidentiary exhibits, some filed here in support, but ongoing

5  avoidance of service combined with bad faith actions or tactics in RICO conspiracy are harming the

6  UNITED STATES, STATE, U.S. citizens, and movant such that he requests the Court order U.S.

7  Marshal service at U.S. expense and control its calendar in all manners to avoid prejudice to U.S.

8       For the foregoing reasons and those set forth within his declaration and his first amended

9  complaint at ***Docket #7 with Overt Acts #1-#72***, movant requests the Court provide all relief by TRO,

10  none of which requires notice, although notice was given with ample time to respond.

11       As set forth within his declaration, Plaintiff is prepared to try this case on the merits, and

12  sufficiently notices the Court that the defendants have engaged in serial abuse of due process in STATE

13  Courts using control of the enterprise at issue, namely ORANGE COUNTY SUPERIOR COURT. 18

14  U.S.C. § 1962(b). The conduct continues and will continue if TRO is not issued, and constitutional

15  violations under the Fourteenth Amendment and First Amendment are irreparable harm to citizens.

16       Every day that passes results in at least 44 more U.S. persons being subject to these ongoing

17  schemes to defraud by STATE BAR, CATANZARITE ATTORNEYS just as with Girardi-Keese, and

18  700+ CLUB carried on in deliberate violation of *N.C. State Bd. of Dental Examiners v. Fed. Trade

19  Comm'n*, 574 U.S. 494, (2015) as if it were reasonable or legal. ***Ex. 136.*** It is neither, and justice must

20  be done. The instant case affects at least $3.4 trillion in annual GDP in the UNITED STATES OF

21  AMERICA, all citizens, and every Court as well as the legal profession and democracy in perpetuity.

22  RESPECTFULLY SUBMITTED          JANUARY 8, 2023

25  Justin S. Beck, Individually

26  Movant for Temporary Restraining Order

27  *Guardian Ad Litem* to ROES 1-150,000

28  *Guardian Ad Litem* to UNITED STATES OF AMERICA