# EXHIBIT 0

Showing

18 U.S.C. Section 1962(a)-(d) Violations Harming Plaintiff

- Predicate (8/17/18)
- Predicate (9/14/18)
- Racketeering and Control (1/4/19 - 1/28/19)

Showing
Causation and Damages

Showing Actual Knowledge

EXHIBIT #0: 001
22-CV-01616-BAS-DDL

Electronically Filed by Superior Court of California, County of Orange, 12/27/2022 12:51:00 PM.
30-2020-01145998-CU-BT-CXC - ROA # 863 - DAVID H. YAMASAKI, Clerk of the Court By A. Thau, Deputy Clerk.

1  Justin S. Beck
   3501 Roselle St.
2  Oceanside, California 92056
   760-449-2509
3  justintimesd@gmail.com
   *In Pro Per*
4

5

6                IN THE SUPERIOR COURT OF CALIFORNIA

7                        COUNTY OF ORANGE

8   JUSTIN S. BECK, an individual          )  Case No: 30-2020-01145998-CU-BT-CXC
                                           )
9              Plaintiff,                   )  Judge Assigned: Honorable Randall J. Sherman
                                           )
10         v.                               )  **EXHIBITS AS EVIDENCE IN SUPPORT OF
                                           )  SUMMARY JUDGMENT AND SUMMARY
11  KENNETH CATANZARITE, ESQ., an          )  ADJUDICATION SUPPORTING
    individual; CATANZARITE LAW            )  DECLARATION OF JUSTIN S. BECK IN
12  CORPORATION, a California corporation; )  REPLY TO OPPOSITION [ROA #859]**
    MOBILE FARMING SYSTEMS, INC., a        )
13  California corporation; BRANDON         )  [Filed with Reply to Defendants' Opposition;
    WOODWARD, ESQ., an individual; AMY     )  Declaration in Support; Request for Judicial
14  JEANETTE COOPER, an individual; CLIFF  )  Notice in Support of Reply; Hereby Objecting to
    HIGGERSON, an individual; TONY SCUDDER,)  Opposition Papers as Being Overt Acts via Wire
15  an individual; JAMES DUFFY, an individual;)  Under 18 U.S.C. § 1343 with Intent to Defraud,
    MOHAMMED ZAKHIREH, an individual; TGAP )  Violative of Cal. Pen. Code § 132 and § 134 as
16  HOLDINGS, LLC, a Nevada limited liability)  Being Prepared and Offered False Evidence in
    corporation; AROHA HOLDINGS, INC., a   )  Deliberate Obstruction of Justice through RICO
17  California corporation; THE STATE OF    )  Enterprise Control under 18 § U.S.C. 1962(b)]
    CALIFORNIA, a public entity; THE STATE BAR)
18  OF CALIFORNIA, a public entity; SUZANNE )  **Hearing Date:        January 6, 2023**
    GRANDT, an individual; RUBEN DURAN, an  )
19  individual; ELI DAVID MORGENSTERN, an   )  **Time:                 10:00 AM**
    individual; NICOLE MARIE CATANZARITE    )
20  WOODWARD, ESQ., an individual           )  **Department:           CX105**
                                           )
21             Defendants,                  )  **Unlimited Civil Case**
                                           )
22                                          )  Action Filed:          May 26, 2020
                                           )
23                                          )  Pending 4DCA Writs:   G061896 and G062120
                                           )
24                                          )  Related Federal Case: 3:22-CV-01616-BAS-DDL
                                           )
25                                          )

26  ─────────────────────────

27

28
                                           i
**EXHIBITS AS EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT AND SUMMARY
ADJUDICATION SUPPORTING DECLARATION OF JUSTIN S. BECK IN REPLY TO
OPPOSITION [ROA #859]**

                                    EXHIBIT #0: 002
                                    22-CV-01616-BAS-DDL

**PROOF OF SERVICE ONLY – EXHIBITS FOLLOW**

[Proof of E-Service]

I, Justin S. Beck, the plaintiff in this action and party replying to opposition of my motion for summary

judgment at ROA #729 and ROA #733, also plaintiff in federal proceedings 3:22-CV-01616-BAS-DDL

derivatively on behalf of the United States' interests, served by electronic mail:

**EXHIBITS AS EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT AND SUMMARY ADJUDICATION SUPPORTING DECLARATION OF JUSTIN S. BECK IN REPLY TO OPPOSITION [ROA #859]**

Upon all parties and their counsel, including at the following email addresses in related cases:

tokeefe@catanzarite.com

bwoodward@catanzarite.com

ncatanzarite@catanzarite.com and denise.pinkerton@kw.com in conspiracy

jtt@tice.lawyer , jim.duffy@55@comcast.net and rmesa5671@yahoo.com and tommebane@gmail.com

kcatanzarite@catanzarite.com , bphillips@catanzarite.com and hle@catanzarite.com

ruben.duran@calbar.ca.gov and ruben.duran@bbklaw.com with eric.garner@bbklaw.com

suzanne.grandt@calbar.ca.gov and carissa.andresen@calbar.ca.gov in conspiracy

ellin.davytan@calbar.ca.gov , robert.retana@calbar.ca.gov with joan.randolph@calbar.ca.gov

AGelectronicservice@doj.ca.gov and Michael.redding@doj.ca.gov as being dutifully bound, here

Jorge.navarette@jud.ca.gov and California Supreme Court witness ines.calanoc@jud.ca.gov

Criminal.division@usdoj.gov and California Attorney General Rob Bonta rob.bonta@doj.ca.gov

rfabela@anaheim.net and todd.spitzer@da.ocgov.com RE: Anaheim Police Report 22-197470

Dated December 27, 2022

Oceanside, California

Justin S. Beck, Declarant

1

**EXHIBITS AS EVIDENCE IN SUPPORT OF SUMMARY JUDGMENT AND SUMMARY ADJUDICATION SUPPORTING DECLARATION OF JUSTIN S. BECK IN REPLY TO OPPOSITION [ROA #859]**

EXHIBIT #0: 003
22-CV-01616-BAS-DDL

EXHIBIT 1

Catanzarite Law Corporation is Furnished Proof that Jolly
Roger, Inc. was Offered CTI Shares Just Like Every Other MFS
Shareholder

Catanzarite Law Corporation Commences Fraudulent Scheme
Anyway -- Using "Denise Pinkerton" as Tertiary "Attorney-in-
Fact" for Roger Root -- Not a Shareholder of MFS nor CTI

EXHIBIT #0: 004
22-CV-01616-BAS-DDL

8/17/2018                          Cultivation Technologies, Inc. Mail - Roger Root - Jolly Roger Bus Opportunity

 **CULTIVATION**
TECHNOLOGIES, INC
WE HELP YOU GROW
                                                              Richard Probst <rick@cultivationtech.com>

## Roger Root - Jolly Roger Bus Opportunity

**Tony Scudder** <tony@cultivationtech.com>                                   Fri, Aug 21, 2015 at 10:58 AM
To: Richard O'Connor <richard@cultivationtech.com>, Justin Beck <justin@cultivationtech.com>, Richard Probst
<rick@cultivationtech.com>, Amy Cooper <amy@cultivationtech.com>
Cc: Christopher Tinen <ctinen@horwitzarmstrong.com>, Rana Foroughi <rana@cultivationtech.com>

   Roger is excited about what we are doing. Is trying to figure out a way to come up with funds for his shares.

   He has a son who has a dispensary in Aberdeen Washington.
   His sons Name is  Brent Rothwell
   360.591.9732 Cell
   360.627.9421 Dispensary

   Roger said we could use his name to see if we could connect with his son for a Washington presence.

   We need to have someone from our team call to explore.


   Best Regards,

   Tony Scudder
   Executive Vice President of Client Relations
   Cultivations Technologies Inc.
   3 Park Plaza
   Irvine, CA 92614
   Cell 714.728.3123
   Office (888) 851-9802
   tony@cultivationtech.com
   https://www.linkedin.com/in/tonyscudder1

   **E-MAIL CONFIDENTIALITY NOTICE:** This message and any attachments are intended only for the use of the
   addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended
   recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this
   communication is strictly prohibited. If you have received this communication in error, please notify us immediately by
   replying to this e-mail message or by telephone at 888-851-9802 and delete the message and any attachments from your
   system. Thank you.

EXHIBIT #0: 005
22-CV-01616-BAS-DDL

EXHIBIT 2

Securities Fraud
Wire Fraud
Extortion for Signatures
Extortion for Property
Foundational Evidence

EXHIBIT #0: 006
22-CV-01616-BAS-DDL

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS OF**
**CULTIVATION TECHNOLOGIES, INC.,**
**a California corporation**

## <u>AMENDED</u> ORGANIZATIONAL ACTS & RESOLUTIONS

Pursuant to the authority granted to the directors to take action by unanimous written consent without a meeting pursuant to Section 307(b) of the California General Corporation Law, the Directors of **CULTIVATION TECHNOLOGIES, INC.,** a California corporation (the "Corporation") do hereby consent to, adopt, ratify, confirm and approve, as of the date indicated below, the following recitals and resolutions, as evidenced by their signatures hereunder:

## <u>AMENDMENT OF ORIGINAL ORGANIZATIONAL ACTS & RESOLUTIONS</u>

**WHEREAS,** pursuant to a unanimous written consent (the "Organizational Consent") of the Board of Directors (the "Board") of the Corporation dated March 30, 2015, the Corporation enacted certain initial organizational acts on behalf of the Corporation;

**WHEREAS,** certain aspects of the Organizational Consent were made in error and need to be amended;

**WHEREAS,** the Board believes it is in the best interests of the Corporation to amend the Organizational Consent to correct the errors made therein; and

**NOW THEREFORE, IT IS HEREBY RESOLVED** that the Organizational Consent previously approved by the Board is hereby amended as set forth in this "Amended Organizational Consent." Resolutions previously approved in the Organizational Consent and not otherwise amended herein will remain in full force and effect.

## <u>ISSUANCE OF SECURITIES</u>

**WHEREAS,** the Organizational Consent purported to authorize the issuance of 28,000,000 shares of common stock of the Corporation to Mobile Farming Systems, Inc. in exchange for the contribution of certain assets and cash consideration;

**WHEREAS,** Mobile Farming Systems, Inc. failed to provide any consideration as required pursuant to the Organizational Consent and, as a result, was not issued the common stock set forth in the Organizational Consent;

**WHEREAS,** the Board deems it in the best interests of the Corporation to issue and sell shares of its common stock to its founding shareholders (the "Founders") pursuant to that certain Common Stock Purchase Agreement (a form of which is attached hereto as <u>Exhibit A</u>) in the amounts and for the consideration set forth below:

1

EXHIBIT #0: 007
22-CV-01616-BAS-DDL

| NAME OF FOUNDER | NUMBER AND CLASS OF SHARES | CONSIDERATION |
|---|---|---|
| Richard O'Connor | 2,500,000 shares of Common Stock | $2,500.00 |
| Richard Probst | 5,000,000 shares of Common Stock | $5,000.00 |
| Amy Cooper | 2,500,000 shares of Common Stock | $2,500.00 |
| TGAP Holdings, LLC | 5,500,000 shares of Common Stock | $5,500.00 |
| EM2 Strategies LLC | 2,000,000 shares of Common Stock | $2,000.00 |
| I'm Rad LLC | 3,000,000 shares of Common Stock | $3,000.00 |
| Cliff Higgerson | 1,000,000 shares of Common Stock | $1,000.00 |
| Aroha Holdings Inc. | 1,000,000 shares of Common Stock | $1,000.00 |
| Scott Unfug | 500,000 shares of Common Stock | $500.00 |

**WHEREAS**, the Board deems it to be in the best interest of the Corporation that 23,000,000 shares of its common stock be issued and sold as set forth above; and

**NOW THEREFORE, IT IS HEREBY RESOLVED**, that the officers of the Corporation is hereby authorized and instructed to issue and sell the shares of stock of the Corporation for the consideration above stated and in compliance with all the terms and conditions of Section 25102(f) of the California Corporations Code; and

**RESOLVED FURTHER**, that each of the officers of the Corporation is authorized, directed, and empowered on behalf of the Corporation and in its name to execute any other applications, certificates, agreements or any other instruments or documents, or amendments or supplements thereto, or to do and to cause to be done any and all other acts and things such officers may in their discretion deem necessary or appropriate to carry out the purposes of the foregoing resolutions; and

2

**RESOLVED FURTHER,** the prior authorization of issuance of common stock to Mobile Farming Systems, Inc. is hereby null and void in its entirety.

## INCENTIVE STOCK PLAN

**WHEREAS,** the Organizational Consent purported to authorize the adoption of an Incentive Stock Plan of up to 5,000,000 shares of common stock which shares were thereby reserved for future issuance to employees, officers, directors and/or consultants of the Corporation;

**WHEREAS,** no such Incentive Stock Plan has been formally adopted and the Board deems it in the best interest of the Corporation to cancel the Incentive Stock Plan; and

**NOW THEREFORE, IT IS HEREBY RESOLVED** that the Incentive Stock Plan is hereby canceled in its entirety.

## COMPENSATION OF DIRECTORS

**WHEREAS,** the Organizational Consent purported to grant 30,000 options to purchase common stock of the Corporation to the directors of the Corporation for services provided as directors;

**WHEREAS,** the Incentive Stock Plan has been canceled by the above resolution of the Board and no such option grants were formally made by the Corporation and the Board deems it in the best interest of the Corporation to cancel any option grants purportedly made thereby;

**RESOLVED,** that the Corporation hereby cancels any options granted under the Incentive Stock Plan, including any such options granted to the directors of the Corporation.

## OMNIBUS RESOLUTIONS

**RESOLVED,** that any of the officers of the Corporation be, and each of them hereby is, authorized (i) to prepare, execute, deliver and perform, as the case may be, such agreements, amendments, applications, approvals, certificates, communications, consents, demands, directions, documents, further assurances, instruments, notices, orders, requests, resolutions, supplements or undertaking, (ii) to pay or cause to be paid on behalf of the Corporation any related costs and expenses and (iii) to take such other actions, in the name and on behalf of the Corporation, as each such officer, in such officer's discretion, shall deem necessary and advisable to complete and effect the foregoing resolutions or to carry out the intent and purposes of the foregoing resolutions;

**RESOLVED FURTHER,** that all actions heretofore taken by the officers and directors of the Corporation with respect to the foregoing resolutions and all other matters contemplated thereby are hereby approved, adopted, ratified and confirmed.

EXHIBIT #0: 009
22-CV-01616-BAS-DDL

## COUNTERPARTS

**RESOLVED,** that this Unanimous Written Consent may be signed in as many counterparts as may be necessary, each of which so signed shall be deemed to be an original (and each signed copy sent by electronic facsimile transmission shall be deemed to be an original) and such counterparts together shall constitute one and the same instrument and notwithstanding the date of the execution shall be deemed to bear the date as set forth below.

**IN WITNESS WHEREOF,** the undersigned have set forth their hand as of this 15th day of June, 2015.

DIRECTORS:

RICHARD O'CONNOR

RICHARD PROBST

AMY COOPER

4

EXHIBIT #0: 010
22-CV-01616-BAS-DDL

# EXHIBIT "A"

EXHIBIT #0: 011
22-CV-01616-BAS-DDL

# CULTIVATION TECHNOLOGIES, INC.

## COMMON STOCK PURCHASE AGREEMENT

This Common Stock Purchase Agreement (this "Agreement") is made as of June 15, 2015 by and between Cultivation Technologies, Inc., a California corporation (the "Company"), and _____ ("Purchaser").

1.     **Sale of Stock.**     Subject to the terms and conditions of this Agreement, simultaneously with the execution and delivery of this Agreement by the parties or on such other date as the Company and Purchaser shall agree (the "Purchase Date"), the Company will issue and sell to Purchaser, and Purchaser agrees to purchase from the Company, _____ shares of the Company's Common Stock (the "Shares") at a purchase price of $0.001 per share for a total purchase price of $_____ (the "Aggregate Purchase Price").   On the Purchase Date, Purchaser will deliver the Aggregate Purchase Price to the Company and the Company will enter the Shares in Purchaser's name as of such date in the books and records of the Company or, if applicable, a duly authorized transfer agent of the Company.    The Company will deliver to Purchaser a stock certificate representing the Shares as soon as practicable following such date. As used elsewhere herein, the term "Shares" refers to all of the Shares purchased hereunder and all securities received in connection with the Shares pursuant to stock dividends or splits, all securities received in replacement of the Shares in a recapitalization, merger, reorganization, exchange or the like, and all new, substituted or additional securities or other property to which Purchaser is entitled by reason of Purchaser's ownership of the Shares.

2.     **Consideration for Shares.**    As consideration for the Shares, Purchaser will deliver the Aggregate Purchase Price by a check or wire transfer made out to the Company as payment in full of the Aggregate Purchase Price.

3.     **Investment and Taxation Representations.**   In connection with the purchase of the Shares, Purchaser represents to the Company the following:

(a)     Purchaser is aware of the Company's business affairs and financial condition and has acquired sufficient information about the Company to reach an informed and knowledgeable decision to acquire the Shares. Purchaser is purchasing the Shares for investment for Purchaser's own account only and not with a view to, or for resale in connection with, any "distribution" thereof within the meaning of the Securities Act or under any applicable provision of state law.   Purchaser does not have any present intention to transfer the Shares to any other person or entity.

(b)     Purchaser understands that the Shares have not been registered under the Securities Act by reason of a specific exemption therefrom, which exemption depends upon, among other things, the bona fide nature of Purchaser's investment intent as expressed herein.

(c)     Purchaser further acknowledges and understands that the securities must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available.   Purchaser further acknowledges and understands that the Company is under no obligation to register the securities.

(d)     Purchaser is familiar with the provisions of Rule 144, promulgated under

-1-

EXHIBIT #0: 012
22-CV-01616-BAS-DDL

the Securities Act, which, in substance, permits limited public resale of "restricted securities" acquired, directly or indirectly, from the issuer of the securities (or from an affiliate of such issuer), in a non-public offering subject to the satisfaction of certain conditions.   Purchaser understands that the Company provides no assurances as to whether he or she will be able to resell any or all of the Shares pursuant to Rule 144, which rule requires, among other things, that the Company be subject to the reporting requirements of the Exchange Act, that resales of securities take place only after the holder of the Shares has held the Shares for certain specified time periods, and under certain circumstances, that resales of securities be limited in volume and take place only pursuant to brokered transactions.   Notwithstanding this Section 3(d), Purchaser acknowledges and agrees to the restrictions set forth in Section 3(e) below.

(e)   Purchaser further understands that in the event all of the applicable requirements of Rule 144 are not satisfied, registration under the Securities Act, compliance with Regulation A, or some other registration exemption will be required; and that, notwithstanding the fact that Rule 144 is not exclusive, the Staff of the Securities and Exchange Commission has expressed its opinion that persons proposing to sell private placement securities other than in a registered offering and otherwise than pursuant to Rule 144 will have a burden of proof in establishing that an exemption from registration is available for such offers or sales, and that such persons and their respective brokers who participate in such transactions do so at their own risk.

(f)   Purchaser understands that Purchaser may suffer adverse tax consequences as a result of Purchaser's purchase or disposition of the Shares.   Purchaser represents that Purchaser has consulted any tax consultants Purchaser deems advisable in connection with the purchase or disposition of the Shares and that Purchaser is not relying on the Company for any tax advice.

4.   **Restricted Legend; Selling Restrictions.**

(a)   **Restricted Legend.**  Any stock certificate or, in the case of uncertificated securities, notice of issuance, for the Shares, shall bear the following legend (as well as any legends required by applicable state and federal corporate and securities laws):

"THE SECURITIES REFERENCED HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF.   NO SUCH SALE OR DISTRIBUTION MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933."

(b)   **Selling Restrictions.**  Commencing upon the date the Company begins publicly trading, and ending twelve (12) months after (the "Trading Restriction End Date"), the undersigned Purchaser will be restricted to selling, pledging or otherwise disposing of no more than five percent (5%) of the Shares per calendar month, either directly or indirectly until the Trading Restriction End Date. Following the Trading Restriction End Date, no further contractual trading or lock-up restrictions will remain, subject to state and federal securities laws.

5.   **No Employment Rights.**  Nothing in this Agreement shall affect in any manner whatsoever the right or power of the Company, or a parent, subsidiary or affiliate of the Company, to terminate Purchaser's employment or consulting relationship (if any), for any reason, with or without cause.

-2-

EXHIBIT #0: 013
22-CV-01616-BAS-DDL

6.       **Certain Defined Terms**.

   (a) "**Affiliate**" means an entity other than a Subsidiary which, together with the Company, is under common control of a third person or entity.

   (b) "**Consultant**" means any person, including an advisor but not an Employee, who is engaged by the Company, or any Parent, Subsidiary or Affiliate, to render services (other than capital-raising services) and is compensated for such services, and any Director whether compensated for such services or not.

   (c) "**Director**" means a member of the Board of Directors of the Company.

   (d) "**Employee**" means any person employed by the Company, or any Parent, Subsidiary or Affiliate, with the status of employment determined pursuant to such factors as are deemed appropriate by the Board of Directors of the Company in its sole discretion, subject to any requirements of applicable laws, including the Code.  The payment by the Company of a director's fee shall not be sufficient to constitute "employment" of such director by the Company or any Parent, Subsidiary or Affiliate.

   (e) "**Parent**" means any corporation (other than the Company) in an unbroken chain of corporations ending with the Company if each of the corporations other than the Company owns stock possessing 50% or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.

   (f) "**Subsidiary**" means any corporation (other than the Company) in an unbroken chain of corporations beginning with the Company if each of the corporations other than the last corporation in the unbroken chain owns stock possessing 50% or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.

7.       **Miscellaneous**.

   (a) **Governing Law**. The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of California, without giving effect to principles of conflicts of law.   For purposes of litigating any dispute that may arise directly or indirectly from this Agreement, the parties hereby submit and consent to the exclusive jurisdiction of the state of California and agree that any such litigation shall be conducted only in the courts of California or the federal courts of the United States located in California and no other courts.

   (b) **Entire Agreement**. This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof.

   (c) **Amendments and Waivers**. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the parties to this Agreement.   No delay or failure to require performance of

EXHIBIT #0: 014
22-CV-01616-BAS-DDL

any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

(d) **Successors and Assigns.**    Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives. The Company may assign any of its rights and obligations under this Agreement.    No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

(e) **Notices.**    Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when delivered personally or by overnight courier or sent by email, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page, as subsequently modified by written notice, or if no address is specified on the signature page, at the most recent address set forth in the Company's books and records.

(f) **Severability.**    If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of the Agreement shall be enforceable in accordance with its terms.

(g) **Construction.**    This Agreement is the result of negotiations between and has been reviewed by each of the parties hereto and their respective counsel, if any; accordingly, this Agreement shall be deemed to be the product of all of the parties hereto, and no ambiguity shall be construed in favor of or against any one of the parties hereto.

(h) **Counterparts.**    This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.

(i) **Electronic Delivery.**    The Company may, in its sole discretion, decide to deliver any documents related to this Agreement or any notices required by applicable law or the Company's Certificate of Incorporation or Bylaws by email or any other electronic means. Purchaser hereby consents to receive such documents and notices by such electronic delivery and agrees to participate through an on-line or electronic system established and maintained by the Company or a third party designated by the Company.

EXHIBIT #0: 015
22-CV-01616-BAS-DDL

(j)      **California Corporate Securities Law.**   THE SALE OF THE SECURITIES WHICH ARE THE SUBJECT OF THIS AGREEMENT HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND THE ISSUANCE OF THE SECURITIES OR THE PAYMENT OR RECEIPT OF ANY PART OF THE CONSIDERATION THEREFOR PRIOR TO THE QUALIFICATION IS UNLAWFUL, UNLESS THE SALE OF SECURITIES IS EXEMPT FROM QUALIFICATION BY SECTION 25100, 25102 OR 25105 OF THE CALIFORNIA CORPORATIONS CODE.   THE RIGHTS OF ALL PARTIES TO THIS AGREEMENT ARE EXPRESSLY CONDITIONED UPON THE QUALIFICATION BEING OBTAINED, UNLESS THE SALE IS SO EXEMPT.

The parties have executed this Common Stock Purchase Agreement as of the date first set forth above.

**THE COMPANY:**

CULTIVATION TECHNOLOGIES, INC.

By:_____
          (Signature)

Name:_____
Title:_____

Address:

_____

_____

**PURCHASER:**

_____
(PRINT NAME)

By:_____
          (Signature)

Name:_____
Title:_____

Address:

_____

_____

Email:

_____

-5 -

EXHIBIT #0: 016
22-CV-01616-BAS-DDL

**Subject:** Re: Let's talk today please
**Date:** Wednesday, October 10, 2018 at 4:27:56 PM Pacific Daylight Time
**From:** Amy Cooper
**To:** Rick Probst
**CC:** Justin Beck

Hi Rick,

I met with an attorney today.  He a question regarding CIT's D&O insurance policy.  Does it cover just the company or individuals as well?

Thanks,

-Amy

On Wednesday, October 3, 2018, 5:50:54 PM PDT, Rick Probst <rick@mobilefarming.com> wrote:

Hi Amy
Our D&O assigned attorney, Sam Edgerton, talked to opposing counsel today. He said it was a very good call and he made some progress toward settlement. He tried to convince Catanzarite about the financial realities of the company and that if we don't settle this quickly there won't be a company to fight for. He is optimistic that we can, in fact, get to a settlement quickly. Most likely it will be a combination of shares and some cash.
He started at $30k cash and 450k shares. It's unlikely we will end up there.
Have you come to a decision on how much you are willing to commit, on an equal basis with O'Connor and me, towards a settlement?

I'm cc'ing Justin On this email.

Regards
Rick Probst

On Oct 2, 2018, at 3:10 PM, Amy Cooper <amycooper05@yahoo.com> wrote:

Hi Rick,

I'm not sure why Larry feels that we should start at five million shares.  It would seem to me that that would become a starting point for negotiations.  As I mentioned on the phone, 10X the amount of shares Roger had seems very high.  I understand Larry feels this would expedite in settling, but am having a hard time justifying this amount.  We wouldn't be here if Roger could've gotten his act together and signed the paperwork to convert his MFS shares to CTI.  I would think that offering him 1.2 million to start would be a better jumping off point.  That's 450K for what he originally had in MFS plus 750K which is the dollar amount he's asking for.

Thoughts?

On Tuesday, October 2, 2018, 9:03:11 AM PDT, Rick Probst <rick@mobilefarming.com> wrote:

Amy
I would like to get on a call today with you and Larry and I to see if we can work out the details of a settlement offer. It would be great if you and I had a solid front that Larry could then discuss with Richards attorney.
Are you available for a call today?

Thank You

Rick Probst

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO. | FOR COURT USE ONLY |
|---|---|---|

NAME: Kenneth J. Catanzarite (SBN 113750)
FIRM NAME: CATANZARITE LAW CORPORATION
STREET ADDRESS: 2331 W. Lincoln Ave.
CITY: Anaheim     STATE: CA    ZIP CODE: 92801
TELEPHONE NO.: (714) 520-5544    FAX NO.: (714) 520-0680
E-MAIL ADDRESS: kcatanzarite@catanzarite.com
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

Plaintiff/Petitioner: Denise Pinkerton

Defendant/Respondent: Cultivation Technologies, Inc., et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: 30-2018-01018922 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☒ Without prejudice
   b. (1) ☐ Complaint   (2) ☐ Petition
       (3) ☐ Cross-complaint filed by (name):      on (date):
       (4) ☐ Cross-complaint filed by (name):      on (date):
       (5) ☐ Entire action of all parties and all causes of action
       (6) ☒ Other (specify):* Richard Francis O'Connor, II, TGAP Holdings, LLC and Scott Unfug Only from the Complaint

2. (Complete in all cases except family law cases.)
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: 01/22/2019

Kenneth J. Catanzarite

(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

(SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

(SIGNATURE)

** If a cross-complaint — or Response (Family Law) seeking affirmative relief — is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross Complainant

*(To be completed by clerk)*

4. ☐ Dismissal entered as requested on (date):
5. ☐ Dismissal entered on (date):    as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
       ☐ a copy to be conformed    ☐ means to return conformed copy

Date:     Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev Jan 1 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c): Cal. Rules of Court, rule 3.1380
www.courts.ca.gov

EXHIBIT #0: 019
22-CV-01616-BAS-DDL

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO. | FOR COURT USE ONLY |
|---|---|
| NAME: Kenneth J. Catanzarite (SBN 113750)<br>FIRM NAME: CATANZARITE LAW CORPORATION<br>STREET ADDRESS: 2331 W. Lincoln Ave.<br>CITY Anaheim          STATE: CA    ZIP CODE: 92801<br>TELEPHONE NO.: (714) 520-5544    FAX NO.: (714) 520-0680<br>E-MAIL ADDRESS: kcatanzarite@catanzarite.com<br>ATTORNEY FOR (Name):  Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

Plaintiff/Petitioner: Denise Pinkerton
Defendant/Respondent: Cultivation Technologies, Inc., et al.

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>30-2018-01018922 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a  class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☒ Without prejudice
   b. (1) ☐ Complaint   (2) ☐ Petition
      (3) ☐ Cross-complaint filed by (name):                          on (date):
      (4) ☐ Cross-complaint filed by (name):                          on (date):
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other (specify):* Richard Francis O'Connor, II, TGAP Holdings, LLC and Scott Unfug Only from the Complaint

2. (Complete in all cases except family law cases.)
   The court ☐ did ☒ did not  waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: 01/22/2019
Kenneth J. Catanzarite
_____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                                          ► _____
                                                                                                          (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of action only,    Attorney or party without attorney for:
or of specified cross-complaints only, so state and identify the parties, causes of          ☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
action, or cross-complaints to be dismissed.                                                 ☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:
                                                                                             ► _____
_____                                                                (SIGNATURE)
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                                  Attorney or party without attorney for:
** If a cross-complaint – or Response (Family Law) seeking affirmative                       ☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
relief – is on file, the attorney for cross-complainant (respondent) must sign               ☐ Cross Complainant
this consent if required by Code of Civil Procedure section 581 (i) or (j).

_____
(To be completed by clerk)
4. ☐ Dismissal entered as requested on (date):
5  ☐ Dismissal entered on (date):                            as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):


7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
         ☐ a copy to be conformed    ☐ means to return conformed copy
Date:                              Clerk, by _____, Deputy       Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. Jan. 1  2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.; Gov. Code,<br>§ 68637(c); Cal. Rules of Court, rule 3.1300<br>www.courts.ca.gov |
|---|---|---|

EXHIBIT #0: 020
22-CV-01616-BAS-DDL

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|---|

NAME: Kenneth J. Catanzarite (SBN 113750)
FIRM NAME: CATANZARITE LAW CORPORATION
STREET ADDRESS: 2331 W. Lincoln Ave.
CITY: Anaheim      STATE: CA    ZIP CODE: 92801
TELEPHONE NO.: (714) 520-5544    FAX NO.: (714) 520-0680
E-MAIL ADDRESS: kcatanzarite@catanzarite.com
ATTORNEY FOR (Name): Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

Plaintiff/Petitioner: Denise Pinkerton

Defendant/Respondent: Cultivation Technologies, Inc., et al.

| **REQUEST FOR DISMISSAL** | CASE NUMBER:<br>30-2018-01018922 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a  class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
    a. (1) ☐ With prejudice    (2) ☒ Without prejudice
    b. (1) ☐ Complaint    (2) ☐ Petition
       (3) ☐ Cross-complaint filed by (name):                    on (date):
       (4) ☐ Cross-complaint filed by (name):                    on (date):
       (5) ☐ Entire action of all parties and all causes of action
       (6) ☒ Other (specify):* Amy Jeanette Cooper and Cliff Higgerson Only from Complaint

2. (Complete in all cases except family law cases.)
    The court ☐ did ☒ did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: 01/23/2019
Kenneth J. Catanzarite
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                          ▶ _____ (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of action only.    Attorney or party without attorney for:
or of specified cross-complaints only, so state and identify the parties, causes of    ☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
action, or cross-complaints to be dismissed.    ☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:
                                                                    ▶
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                          (SIGNATURE)
** If a cross-complaint – or Response (Family Law) seeking affirmative    Attorney or party without attorney for:
relief – is on file, the attorney for cross-complainant (respondent) must sign    ☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
this consent if required by Code of Civil Procedure section 581 (i) or (j).    ☐ Cross Complainant

(To be completed by clerk)
4. ☐ Dismissal entered as requested on (date):
5. ☐ Dismissal entered on (date):                    as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
    b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
         ☐ a copy to be conformed    ☐ means to return conformed copy

Date: _____    Clerk, by _____, Deputy    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]    **REQUEST FOR DISMISSAL**    Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

EXHIBIT #0: 021
22-CV-01616-BAS-DDL

CIV-110

| Plaintiff/Petitioner: Denise Pinkerton<br>Defendant/Respondent: Cultivation Technologies, Inc., et al. | CASE NUMBER:<br>30-2018-01018922 |
|---|---|

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**
If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1.  The court waived court fees and costs in this action for *(name):*

2.  The person named in item 1 is *(check one below):*
    a. ☐  not recovering anything of value by this action.
    b. ☐  recovering less than $10,000 in value by this action.
    c. ☐  recovering $10,000 or more in value in this action.  *(If item 2c is checked, item 3 must be completed.)*

3.  ☐  All court fees and court costs that were waived in this action have been paid to the court  *(check one):*     Yes     No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶ _____

_____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY MAKING DECLARATION)

_____
(SIGNATURE)

EXHIBIT #0: 022
22-CV-01616-BAS-DDL

PROOF OF SERVICE

STATE OF CALIFORNIA      )
COUNTY OF ORANGE      )    ss:

The undersigned certifies and declares as follows:

I am over the age of 18 and not a party to this action.  My business address is 2331 West Lincoln Avenue, Anaheim, California 92801, which is in the county where the mailing described below took place.

On January 23, 2019 I served the within **REQUEST FOR DISMISSAL** by:

[ ]    (E-mail) I caused the above mentioned document to be served via PDF e-mail attachment to the parties at the e-mail addresses listed on the attached service list.

[ ]    (Mail) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope, with first class postage thereon fully prepaid, to be placed in the U.S. Mail at Anaheim, California, and certify that such envelope was placed for collection and mailing following ordinary business practices.

[ ]    (Overnight Delivery) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope to be delivered the next day by overnight courier to the addressee(s) listed on the attached service list.

[ ]    (Personal Service) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope to be delivered by hand as set forth on the attached service list.

[X]    (By OneLegal Electronic Service) I caused the above-entitled document(s) to be served through OneLegal addressed to all parties appearing on the OneLegal electronic service list for the above-entitled case. The "OneLegal Filing Receipt" page(s) will be maintained with the original document(s) in our office.

[X]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed January 23, 2019 at Anaheim, California.

_____

Typed Name: Marilyn Andalon

EXHIBIT #0: 023
22-CV-01616-BAS-DDL

## DECLARATION OF STEPHEN J. ERIGERO

I, Stephen J. Erigero, declare as follows:

1.      I am an attorney-at-law duly licensed to practice before all courts in the State of California and am a partner with the law firm of Ropers, Majeski, Kohn & Bentley, former attorneys of record for defendant Richard J. Probst in this action. I have personal knowledge of the matters set forth herein, and if called upon as a witness to testify thereto, I could and would competently do so.

2.      I represented Amy Cooper from October 18, 2018 to January 23, 2019.

3.      Neither I, nor our firm, were involved with any settlement discussions in connection with her dismissal from the [Root Case].

4.      When Ms. Cooper filed suit against Richard Probst as plaintiff, we substituted out of the case and ended our representation of Richard Probst.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November _25_, 2019.

Stephen J. Erigero

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

4835-6242-1933.1

- 1 -

WRITTEN CONSENT
OF
THE SHAREHOLDERS
OF
MOBILE FARMING SYSTEMS, INC.

The undersigned, being the majority of the shareholders of MOBILE FARMING SYSTEMS, INC., a California corporation (the "Corporation"), acting by written consent without a meeting pursuant to Section 603 of the California Corporations Code, hereby adopt the following resolutions.

WHEREAS, the persons signing this consent are the holders of a majority of the shares entitled to vote at the Corporation's shareholder meetings and on the following resolutions; and

WHEREAS, the undersigned desire to execute this Written Consent in lieu of formally holding a shareholders meeting.

NOW THEREFORE LET IT BE:

RESOLVED, that the entire Board of Directors of Corporation is hereby immediately removed and they individually and collectively shall no longer have the power to act on behalf of Corporation.

RESOLVED, that a shareholders meeting is noticed for February __, 2019 whereupon the following actions shall be taken:

　　Election of a Board of Directors.

This Written Consent may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall be deemed one instrument.

The undersigned direct that the Secretary of the Corporation file an executed copy of this Written Consent, including all counterparts, with the minutes of the proceedings of the shareholders of the Corporation.

The undersigned shareholders, being entitled to vote a majority of the outstanding shares of Corporation, entitled to vote, and each being the holder of the number of shares set forth opposite the shareholder's name below, hereby consent to and approve the foregoing.

Dated: January __, 2019

_____
Richard Francis O'Connor II
Holding 6,000,000 shares of Common

1

EXHIBIT #0: 025
22-CV-01616-BAS-DDL

Dated: January 23, 2019

_____
Denise Pinkerton for Roger Root Individually
and as Assignee of Jolly Roger Investments, Inc. F.K.A Jolly Roger, Inc.
Holding 1,475,000 shares of Common
1,625,200


Dated: January ___, 2019

_____
Douglas Scott as Successor to Margaret Muirhead Deceased
Holding 1,000,000 shares of Common and 670,000 of Preferred A shares.


Dated: January ___, 2019

_____
Richard Probst
Holding 5,500,000 shares of Common


Dated: January 23, 2019

_____
Scott Unfug
Holding 1,750,000 shares of Common


Dated: January ___, 2019

_____
Mike and Anette Bonetti
Holding 30,000 shares of Common


Dated: January ___, 2019

_____
Frank and Brenda Pestano
Holding 25,000  shares of Common


Dated: January ___, 2019

_____
Coleen Quinn
Holding 100,000  shares of Common


Dated: January ___, 2019

_____


2


EXHIBIT #0: 026
22-CV-01616-BAS-DDL

Dated: January ___, 2019

_____
Denise Pinkerton for Roger Root Individually
and as Assignee of Jolly Roger Investments, Inc. F.K.A Jolly Roger, Inc.
Holding 1,475,000 shares of Common

Dated: January 24 2019

_____
Douglas Scott as Successor to Margaret Muirhead Deceased
Holding 1,000,000 shares of Common and 670,000 of Preferred A shares.

Dated: January ___, 2019

_____
Richard Probst
Holding 5,500,000 shares of Common

Dated: January ___, 2019

_____
Scott Unfug
Holding 1,750,000 shares of Common

Dated: January ___, 2019

_____
Mike and Anette Bonetti
Holding 30,000 shares of Common

Dated: January ___, 2019

_____
Frank and Brenda Pestano
Holding 25,000  shares of Common

Dated: January ___, 2019

_____
Coleen Quinn
Holding 100,000  shares of Common

Dated: January ___, 2019

_____

2

EXHIBIT #0: 027
22-CV-01616-BAS-DDL

Edward Lindsey
Holding 125,000 shares of Common

Dated: January ___, 2019

_____
Hydroponic Investments, LLC
Holding 500,000 shares of Common

Dated: January ___, 2019

_____
Natalia Panzarini
Holding 70,000 shares of Common

Dated: January ___, 2019

_____
Grisha R. Ovanisian
Holding 107,500 shares of Common

Dated: January ___, 2019

_____
Luis Elias
Holding 700,000 shares of Common

Dated: January 23, 2019

*Janell Christiansen*
_____
Janell Christiansen
Holding 140,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Ronald Beck
Holding 2,000  shares of Preferred A shares

Dated: January ___, 2019

_____
John Broders
Holding 100,000 shares of Common

Dated: January ___, 2019

_____
Robert J. Brongo
Holding 25,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Carlos A. Calixto
Holding 500,000 shares of Common

3

Dated: January ___, 2019

_____
Nichole G. Calixto
Holding 50,000 shares of Common

Dated: January ___, 2019

_____
Richard Caruso
Holding 50,000 shares of Common

Dated: January ___, 2019

_____
Nell M. Clark
Holding 50,000 shares of Preferred B shares

Dated: January 25, 2019

*Amy Cooper*
_____
Amy Jeanette Cooper
Holding 5,000,000 shares of Common

Dated: January ___, 2019

_____
Steven L. Creps
Holding 40,000 shares of Common

Dated: January ___, 2019

_____
Chris Cummings
Holding 50,000 shares of Common

Dated: January ___, 2019

_____
John P. Devers
Holding 100,000 shares of Common

Dated: January ___, 2019

_____
Denise Dubarry-Hay
Holding 150,000 shares of Common

Dated: January ___, 2019

_____
Steven L. Creps
Holding 40,000 shares of Common

Dated: January ___, 2019

_____
Cameron Dugan
Holding 40,000 shares of Warrants

Dated: January ___, 2019

_____
Mayra Elias
Holding 300,000 shares of Common

4

EXHIBIT #0: 029
22-CV-01616-BAS-DDL

Dated: January __, 2019

_____
Nichole G. Calixto
Holding 50,000 shares of Common

Dated: January __, 2019

_____
Richard Caruso
Holding 50,000 shares of Common

Dated: January __, 2019

_____
Nell M. Clark
Holding 50,000 shares of Preferred B shares

Dated: January __, 2019

_____
Amy Jeanette Cooper
Holding 5,000,000 shares of Common

Dated: January __, 2019

_____
Steven L. Creps
Holding 40,000 shares of Common

Dated: January __, 2019

_____
Chris Cummings
Holding 50,000 shares of Common

Dated: January __, 2019

_____
John P. Devers
Holding 100,000 shares of Common

Dated: January __, 2019

_____
Denise Dubarry-Hay
Holding 150,000 shares of Common

Dated: January __, 2019

_____
Steven L. Creps
Holding 40,000 shares of Common

Dated: January 23, 2019

_____
Cameron Dugan
Holding 40,000 shares of Warrants

Dated: January __, 2019

_____
Mayra Elias
Holding 300,000 shares of Common

4

EXHIBIT #0: 030
22-CV-01616-BAS-DDL

Dated: January ___, 2019

_____
Wadui & Nelly Fattouch
Holding 20,000 shares of Common

Dated: January ___, 2019

_____
Joseph and Susan Funkey
Holding 20,000 shares of Common

Dated: January ___, 2019

_____
Ira Gains
Holding142,858  shares of Warrants

Dated: January ___, 2019

_____
Kyle J. Gerber
Holding 40,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Samuel J. Gerber
Holding 40,000 shares of Preferred A shares

Dated: January ___, 2019

_____
The J.F. Gilbert Living Trust
Holding 25,000 shares of Preferred B shares

Dated: January ___, 2019

_____
Monty and Suzanne Goodman
Holding 200,000 shares of shares of Common

Dated: January ___, 2019

_____
Micahel Gora
Holding 14,000 shares of shares of Common

Dated: January ___, 2019

_____
Mario and Emilio Gutierrez
Holding 25,000 shares of shares of Common

Dated: January ___, 2019

_____
Odey Al Halasa
Holding 75,000 shares of shares of Common

Dated: January ___, 2019

_____
Mitchell Dean Hovendick

5

Holding 300,000 shares of shares of Common

Dated: January ___, 2019

_____
Douglas Hunt
Holding 12,500 shares of Preferred B shares

Dated: January ___, 2019

_____
Bernard Kloenne
Holding 100,000 shares of shares of Common

Dated: January ___, 2019

_____
Luis F. Maxemin
Holding 5,000 shares of shares of Common

Dated: January ___, 2019

_____
Dr. Tom Mebane, individually and
on behalf of  Advanta IRA Tr FBO Tom Mebane
Holding 300,000 shares of Preferred B shares

Dated: January ___, 2019

_____
Rick Mesa
Holding 120,000 shares of Common

Dated: January ___, 2019

_____
Joseph Miano
Holding 100,000 shares of Common

Dated: January ___, 2019

_____
Ken Miller
Holding 80,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Tina Norheim
Holding 100,000 shares of Common

Dated: January ___, 2019

_____
Gordon Overby
Holding 150,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Charles G. Oxford Family Trust

6

EXHIBIT #0: 032
22-CV-01616-BAS-DDL

Holding 300,000 shares of shares of Common

Dated: January ___, 2019

_____
Douglas Hunt
Holding 12,500 shares of Preferred B shares

Dated: January ___, 2019

_____
Bernard Kloenne
Holding 100,000 shares of shares of Common

Dated: January ___, 2019

_____
Luis F. Maxemin
Holding 5,000 shares of shares of Common

Dated: January ___, 2019

_____
Dr. Tom Mebane, individually and
on behalf of Advanta IRA Tr FBO Tom Mebane
Holding 300,000 shares of Preferred B shares

Dated: January 23, 2019

_____
Rick Mesa
Holding 120,000 shares of Common

Dated: January ___, 2019

_____
Joseph Miano
Holding 100,000 shares of Common

Dated: January ___, 2019

_____
Ken Miller
Holding 80,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Tina Norheim
Holding 100,000 shares of Common

Dated: January ___, 2019

_____
Gordon Overby
Holding 150,000 shares of Preferred A shares

Dated: January ___, 2019

_____
Charles G. Oxford Family Trust

6

EXHIBIT #0: 033
22-CV-01616-BAS-DDL

Holding 300,000 shares of shares of Common

Dated: January __ , 2019

_____
Douglas Hunt
Holding 12,500 shares of Preferred B shares

Dated: January __ , 2019

_____
Bernard Kloenne
Holding 100,000 shares of shares of Common

Dated: January __ , 2019

_____
Luis F. Maxemin
Holding 5,000 shares of shares of Common

Dated: January __ , 2019

_____
Dr. Tom Mebane, individually and
on behalf of  Advanta IRA Tr FBO Tom Mebane
Holding 300,000 shares of Preferred B shares

Dated: January __ , 2019

_____
Rick Mesa
Holding 120,000 shares of Common

Dated: January __ , 2019

_____
Joseph Miano
Holding 100,000 shares of Common

Dated: January 23, 2019

_____
Ken Miller
Holding 80,000 shares of Preferred A shares

Dated: January __ , 2019

_____
Tina Norheim
Holding 100,000 shares of Common

Dated: January __ , 2019

_____
Gordon Overby
Holding 150,000 shares of Preferred A shares

Dated: January __ , 2019

_____
Charles G. Oxford Family Trust

6

Holding 25,000 shares of Preferred B shares

Dated: January __, 2019

_____
James Probst
Holding 200,000 shares of Common

Dated: January __, 2019

_____
Christopher Rod
Holding 5,000 shares of Preferred B shares

Dated: January 23, 2019

_____
Jon Schulberg
Holding 50,000 shares of Warrant

Dated: January __, 2019

_____
Jeff Ray Schunk
Holding 100,000 shares of Preferred B shares

Dated: January __, 2019

_____
Ricardo Steiner
Holding 100,000 shares of Common

Dated: January __, 2019

_____
Ginny Waters
Holding 50,000 shares of Common

7

EXHIBIT #0: 035
22-CV-01616-BAS-DDL

Holding 25,000 shares of Preferred B shares

Dated: January __, 2019

_____

James Probst
Holding 200,000 shares of Common

Dated: January __, 2019

_____

Christopher Rod
Holding 5,000 shares of Preferred B shares

Dated: January __, 2019

_____

Jon Schulberg
Holding 50,000 shares of Warrant

Dated: January 23, 2019

_____

Jeff Ray Schunk
Holding 100,000 shares of Preferred B shares

Dated: January __, 2019

_____

Ricardo Steiner
Holding 100,000 shares of Common

Dated: January __, 2019

_____

Ginny Waters
Holding 50,000 shares of Common

7

EXHIBIT #0: 036
22-CV-01616-BAS-DDL

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

NAME: Kenneth J. Catanzarite (SBN 113768)
FIRM NAME: CATANZARITE LAW CORPORATION
STREET ADDRESS: 2331 W. Lincoln Ave.
CITY: Anaheim    STATE: CA    ZIP CODE: 92801
TELEPHONE NO.: (714) 520-5544    FAX NO.: (714) 520-0680
E-MAIL ADDRESS: kcatanzarite@catanzarite.com
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: same
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

Plaintiff/Petitioner: Denise Pinkerton
Defendant/Respondent: Cultivation Technologies, Inc., et al.

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>30-2018-01018922 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice      (2) ☒ Without prejudice
   b. (1) ☐ Complaint           (2) ☐ Petition
      (3) ☐ Cross-complaint filed by (name):                          on (date):
      (4) ☐ Cross-complaint filed by (name):                          on (date):
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other (specify):* Anthony Scudder, a.k.a. Tony Scudder and Aroha Holdings, Inc. ONLY from the Complaint

2. (Complete in all cases except family law cases.)
   The court ☒ did    ☐ did not    waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: 01/04/2019
Kenneth J. Catanzarite
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _____ (SIGNATURE)

Attorney or party without attorney for:
☒ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶ _____ (SIGNATURE)

Attorney or party without attorney for:
☐ Plaintiff/Petitioner      ☐ Defendant/Respondent
☐ Cross Complainant

(To be completed by clerk)
4. ☐ Dismissal entered as requested on (date):
5. ☐ Dismissal entered on (date):                    as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed    ☐ means to return conformed copy

Date: _____    Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

EXHIBIT #0: 037
22-CV-01616-BAS-DDL

EXHIBIT 3

Original, Fraudulent Consent
Described in G059457
Evidenced in G059766

O'Connor
Zakhireh
[Duffy - Corrected by
Catanzarite from Murphy]

Securities Fraud
Wire Fraud
Conspiracy

EXHIBIT #0: 041
22-CV-01616-BAS-DDL

UNANIMOUS WRITTEN CONSENT
OF
THE SOLE SHAREHOLDER
OF
CULTIVATION TECHNOLOGIES, INC.

The undersigned, being the sole shareholder of CULTIVATION TECHNOLOGIES, INC., a California corporation (the "Corporation"), acting by unanimous written consent without a meeting pursuant to Section 603 of the California Corporations Code, hereby adopts the following resolutions.

WHEREAS, the person signing this consent is the Chief Executive Officer of the sole shareholder of the Corporation, namely MOBILE FARMING SYSTEMS, INC. ("MFS");

WHEREAS, the undersigned desires to execute this Written Consent in lieu of formally holding a shareholder meeting;

WHEREAS, MFS is the sole shareholder of Corporation having acquired and fully paid for its 28,000,000 of common stock on March 30, 2015;

WHEREAS, the  purported action on June 15, 2015 falsely contending that MFS, as the sole shareholder of Corporation, had not fully paid for all of its stock was false having been facilitated by the wrongful and self-serving conduct of RICHARD JOSEPH PROBST and JUSTIN S. BECK; and

WHEREAS, all actions by Corporation that resulted in the issuance of shares of Corporation stock and/or promissory notes on and after March 30, 2015 are a nullity, void or voidable acts.

NOW THEREFORE LET IT BE:

RESOLVED, that the entire Board of Directors of Corporation, wrongly elected by shareholders other than MFS, are hereby immediately removed and they individually and collectively shall no longer have any power to act on behalf of Corporation.

RESOLVED, that all of the Officers of Corporation are hereby immediately removed.

RESOLVED, that, with the sole exception of the fully paid 28,000,000 shares of common stock issued on March 30, 2015 to MFS, all of CORPORATION's stock, options, warrants, convertible debt, convertible notes and/or promissory notes are hereby rescinded for want of authority to have issued the same.
//
//
//
//

EXHIBIT #0: 042
22-CV-01616-BAS-DDL

RESOLVED, that the Board of Directors shall have three members who shall immediately act on behalf of Corporation, effective immediately, as follows:

RICHARD FRANCIS O'CONNOR II

DR. MO ZAKHIREH

JAMES MURPHY

RESOLVED, that the officers of the Corporation shall, effective immediately, be as follows:

| President and Chief Executive Officer | RICHARD FRANCIS O'CONNOR II |
| Treasurer and Chief Financial Officer | DR. MO ZAKHIREH |
| Secretary | JAMES MURPHY |

RESOLVED, that all signature cards for all bank accounts shall be immediately changed to be signed by both the President and Treasurer; and

RESOLVED, that all legal counsel engaged by the Corporation are hereby terminated and no further legal service contracts or services will be recognized other than as may be signed by the Mr. O'Connor as President and CEO.

RESOLVED, that the auditor for the Corporation is hereby terminated.

The undersigned directs that the Secretary of the Corporation file an executed copy of this Unanimous Written Consent with the minutes of the proceedings of the shareholders of the Corporation.

IN WITNESS WHEREOF, the undersigned shareholder has duly executed this Unanimous Written Consent as of January 23 2019.

MOBILE FARMING SYSTEMS, INC.

By:
RICHARD FRANCIS O'CONNOR II

EXHIBIT #0: 043
22-CV-01616-BAS-DDL

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                COUNTY OF ORANGE - CIVIL COMPLEX CENTER
 3                          DEPARTMENT CX105
 4
 5    MOBILE FARMING SYSTEMS, INC.,    )
                        PLAINTIFFS,    )
 6              VS.                     ) NO. 30-2019-01046904
      RICHARD JOSEPH PROBST, ET AL.,   )    CU-BT-CJC
 7                      DEFENDANTS.     )
                AND                     )
 8                                      )
      NOMINAL DEFENDANT:                )
 9    CULTIVATION TECHNOLOGIES, INC.,   )
      A CALIFORNIA CORPORATION.         )
10    _____)
11
12          HONORABLE RANDALL J. SHERMAN, JUDGE PRESIDING
13                      REPORTER'S TRANSCRIPT
                            VOLUME II
14
                        WEDNESDAY, MAY 1, 2019
15
16    APPEARANCES OF COUNSEL:
17    FOR THE PLAINTIFF:
18       CATANZARITE LAW CORPORATION
         BY:  KENNETH J. CATANZARITE, ESQ.
19
      FOR THE DEFENDANT RICHARD JOSEPH PROBST:
20       ROPERS, MAJESKI, KOHN & BENTLEY
         BY:  IVAN L. TJOE, ESQ.
21
22    FOR THE DEFENDANTS JUSTIN BECK, ROBERT KAMM, ROBERT
      BERNHEIMER, IRVING EINHORN, AND MIGUEL MOTTA:
23       O'HAGAN MEYER
         BY:  SAMUEL Y. EDGERTON, III, ESQ.
24       BY:  JOHNNY ANTWILER, ESQ.
25
                  CHERI A. VIOLETTE, CSR NO. 3584
26             OFFICIAL COURT REPORTER PRO TEMPORE
```

EXHIBIT #0: 044
22-CV-01616-BAS-DDL



```
1                        WITNESS INDEX

2                   (WEDNESDAY MAY 1, 2019)

3

4    PLAINTIFF'S WITNESS:        DIRECT CROSS REDIRECT RECROSS

5    (NONE)

6

7

8    DEFENSE WITNESSES:          DIRECT CROSS REDIRECT RECROSS

9    (NONE)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```

EXHIBIT #0: 045
22-CV-01616-BAS-DDL

```
1                    E X H I B I T S

2              (WEDNESDAY, MAY 1, 2019)

3         (ALL EXHIBITS PREMARKED FOR IDENTIFICATION

4               UNLESS OTHERWISE INDICATED)

5

6    EXHIBITS:                    FOR IDENTIFICATION   RECEIVED

7

8    58- DOCUMENT                      101

9

10   59- DOCUMENT RE: SHARES           104

11       INITIALLY ISSUED BY

12       QUICK SILVER

13

14   60- 11/03/2017 E-MAIL EXCHANGE    111

15       FROM MR. PROBST TO MS. COOPER

16       AND MR. O'CONNOR

17

18   61- 10/02/2015 PRIVATE PLACEMENT  118

19       MEMORANDUM

20

21   62- GROUP OF SIGNED SUBSCRIPTION  119

22       AGREEMENTS

23

24

25

26
```

EXHIBIT #0: 046
22-CV-01616-BAS-DDL

89

```
 1            SANTA ANA, CALIFORNIA - WEDNESDAY, MAY 1, 2019
 2                          AFTERNOON SESSION
 3                 (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN
 4       COURT:)
 5                 THE COURT:  GOOD AFTERNOON.
 6                 ALL COUNSEL:  GOOD AFTERNOON, YOUR HONOR.
 7                 THE COURT:  BACK ON THE MOBILE FARMING SYSTEM
 8       VERSUS PROBST.  DO YOU WANT APPEARANCES?
 9                 THE COURT REPORTER:  PLEASE, YOUR HONOR.
10                 MR. EDGERTON:  SAM EDGERTON FOR CERTAIN
11       DEFENDANTS WHO ARE DIRECTORS OF CTI:  ROBERT KAMM,
12       ROBERT BERNHEIMER, JUSTIN BECK, AND MIGUEL MOTTA, AND
13       IRVING EINHORN.
14                 MR. ANTWILER:  JOHNNY ANTWILER FROM O'HAGAN
15       MEYER ON THE SAME DEFENDANTS.
16                 MR. TJOE:  IVAN TJOE, ROPERS, MAJESKI FOR
17       RICHARD PROBST.
18                 MR. CATANZARITE:  KEN CATANZARITE FOR THE
19       PLAINTIFF.
20                 THE COURT:  YOU MAY BE SEATED.
21                 SO THE REASON WE ARE HERE IS FOR A CORPORATIONS
22       CODE 709 HEARING WHICH MANDATES A QUICK HEARING WITHIN
23       FIVE DAYS, SO THE SCOPE OF THIS HEARING IS ONLY GOING TO
24       BE WHAT IS MANDATED BY THE CODE TO BE EXPEDITED.  IT IS
25       NOT GOING TO INCLUDE ALL THESE OTHER THINGS THAT THE
26       PARTIES MIGHT CONSIDER RELEVANT TO THE CASE IN GENERAL.
```

EXHIBIT #0: 047
22-CV-01616-BAS-DDL

90

1    SO TO THE EXTENT --

2         WELL, OKAY.  SPECIFICALLY THIS IS ABOUT, I

3    SHOULD SAY THE CODE PRIORITY IS ABOUT TO TRY AND

4    DETERMINE THE VALIDITY OF ANY ELECTION OR APPOINTMENT OF

5    ANY DIRECTOR OF ANY DOMESTIC CORPORATION, AND THE ACTION

6    AS FILED BY A SHAREHOLDER OR A PERSON WHO CLAIMS TO HAVE

7    BEEN DENIED THE RIGHT TO VOTE.  SO THE PROPER ISSUE FOR

8    THIS COURT IS WHETHER MOBILE FARMING SYSTEMS WAS DENIED

9    THE RIGHT TO VOTE IN THIS DIRECTOR ELECTION THAT TOOK

10   PLACE AND ELECTED THESE FIVE DIRECTORS AS REFERENCED

11   YESTERDAY IN THE OPENING STATEMENTS.

12        SO TO THE EXTENT THAT DEFENDANTS FEEL THERE ARE

13   CERTAIN THINGS THAT NEED TO BE DECIDED FOR THE HEALTH OF

14   THEIR COMPANY, THAT DOESN'T GET STATUTORY PRIORITY.

15        TO THE EXTENT THAT THE PLAINTIFFS FEEL THAT

16   THERE IS SOME CHALLENGE TO SOME PREFERRED SHARE OFFERING

17   THAT WOULD REDUCE THE NUMBERS OF SHARES, THAT'S

18   IRRELEVANT TO THIS PROCEEDING.

19        THE ONLY THING THAT MATTERS IS WHETHER MOBILE

20   FARMING SYSTEMS OWNS STOCK IN CTI.  BECAUSE IF THEY DID,

21   THEN THEY HAD A RIGHT TO VOTE, AND THAT WOULD HAVE

22   CHANGED THE OUTCOME OF THE ELECTION.  AND IF THEY DIDN'T

23   HAVE THAT SHAREHOLDER RIGHT TO VOTE, THEN THE ELECTION

24   STANDS.  SO THE COURT IS ONLY GOING TO HEAR EVIDENCE WITH

25   RESPECT TO THAT PARTICULAR ISSUE.

26        AND TO THAT END, SINCE COURTS HAVE THE POWER TO,

EXHIBIT #0: 048
22-CV-01616-BAS-DDL

91

1    OR JUDGES, I SHOULD SAY, HAVE THE POWER TO CONTROL THE

2    ORDER OF EVIDENCE, THE WAY I SEE THIS AS BEING THE MOST

3    EFFICIENT WAY TO PROCEED IS FOR THE COURT TO RECEIVE

4    WRITTEN DOCUMENTATION BEFORE ANY ORAL TESTIMONY.  AND

5    THEN AFTER ALL THE DOCUMENTATION, THE COURT CAN TRY TO

6    ASSESS WHAT TESTIMONY MIGHT BE RELEVANT OR NECESSARY TO

7    DECIDE THE ISSUE AT HAND.

8         SO SINCE THIS IS NOT THE USUAL TRIAL WHERE THERE

9    IS EXHIBIT NOTEBOOKS WITH NUMBERED EXHIBITS, WHICH WOULD

10   MAKE MY LIFE EASIER AND THINGS SEEM TO BE ATTACHED TO

11   DECLARATIONS, I AM GOING TO NEED SOME HELP ALONG THE WAY

12   TO GUIDE ME TO THE RIGHT EXHIBITS.  BECAUSE BASICALLY I

13   AM GOING TO GO THROUGH THE TRIAL BRIEFS IN ORDER.  I MEAN

14   I HAVE ALREADY KIND OF DONE THAT TO NOTE WHAT THINGS I AM

15   LOOKING FOR.  AND I WANT TO SEE DOCUMENTS TO SEE WHAT

16   THEY SAY TO SEE IF (A) THEY SUPPORT WHAT IS CONTENDED,

17   AND (B) WHAT EXACTLY THEY SAY AND HOW IT IS RELEVANT TO

18   MY ISSUE TO DECIDE HERE TODAY.

19        SO I AM STARTING WITH THE DEFENDANT'S

20   BRIEF AND -- OKAY.  SO THE FIRST THING THAT LOOKS LIKE

21   DOCUMENT WORTHY IS WHEN CTI SAYS:  "MFS IS CONTENDING

22   THAT A WRITTEN UNDERTAKING BETWEEN IT AND CTI CONTROLLED

23   THIS ISSUE WHEN IT DOES NOT."

24        SO MY QUESTION WOULD BE, MR. EDGERTON, SHOW

25   ME -- WHERE IS THIS WRITTEN UNDERTAKING THAT YOU ARE

26   REFERRING TO?  I MEAN IS IT A DOCUMENT THAT IS HERE IN MY

EXHIBIT #0: 049
22-CV-01616-BAS-DDL

92

1    STACK?

2         MR. EDGERTON:  YES, IT IS.  GOOD AFTERNOON.

3         IT IS THE -- WHAT WAS MENTIONED YESTERDAY IS THE

4    ORIGINAL ACTS UNDERTAKING DATED MARCH 30TH, 2015.

5         THE COURT:  OKAY.  WELL, THAT WAS ONE OF THE

6    LATER DOCUMENTS, BUT THAT WAS NEXT ACTUALLY.  SO THAT

7    WOULD BE ATTACHED TO WHAT?

8         MR. EDGERTON:  THAT IS ATTACHED TO THE

9    DECLARATION OF RICHARD PROBST.  SO WE CAN BRING THAT OUT

10   FOR YOU IF YOU WOULD LIKE IT SEPARATE FOR THIS

11   PROCEEDING, BUT THAT IS EXHIBIT -- ONE MOMENT.  I WILL

12   TELL YOU EXACTLY THE NUMBER.  "E" AS IN EDGERTON.

13        MR. TJOE:  NO.  THE ORIGINAL ACTS?

14        MR. EDGERTON:  RIGHT.

15        MR. TJOE:  THAT IS EXHIBIT D, AS IN DAVID, TO

16   MR. PROBST'S DECLARATION, YOUR HONOR.

17        THE COURT:  OF WHAT DATE?

18        MR. TJOE:  THAT WOULD HAVE BEEN FILED APRIL

19   12TH, 2019.

20        MR. CATANZARITE:  YOUR HONOR, IF IT IS MORE

21   CONVENIENT, THERE IS A BENCH BOOK THAT HAS THAT SAME

22   DOCUMENT AS EXHIBIT 4.

23        THE COURT:  THANK YOU.  ALTHOUGH THE DECLARATION

24   WAS COPIED FOR ME, THE EXHIBITS WERE NOT, SO....

25        MR. EDGERTON:  AND WE HAVE NO OBJECTION TO THAT.

26   THE ONLY DOCUMENT WE'RE DISCUSSING IN HIS BOOK IS --

EXHIBIT #0: 050
22-CV-01616-BAS-DDL

93

1          I NEED TO TALK TO YOU ABOUT THAT.

2               -- IS ONE OF THE ACCOUNTING PREPARED DOCUMENTS,

3     BUT EVERYTHING ELSE IN HIS BOOK IS NON-OBJECTIONABLE.

4          THE COURT:  OH, AWESOME.  WHICH REMINDS ME, I

5     SHOULD HAVE MENTIONED THIS EARLIER, I THOUGHT I ASKED YOU

6     TO MEET AND -- DID I ASK YOU TO MEET AND CONFER TO SEE IF

7     YOU COULD AGREE ON ANYTHING?

8          MR. EDGERTON:  YOU DID.

9          THE COURT:  OUTCOME?

10         MR. EDGERTON:  OUTCOME IS WE ARE DOING FINE.  WE

11    WERE SCRAMBLING, OF COURSE, TO GET OUR DOCUMENTS THERE.

12    WE GAVE THEM TO MR. CATANZARITE.  WE ARE STILL NOT

13    COMPLETED IN THAT PROCESS, BUT WE WILL BE BY THE END OF

14    TODAY.  THEY ARE VERY MUCH A REPEAT.

15         THE COURT:  THAT IS KIND OF NOT WHAT I MEANT.  I

16    MEANT, IS THERE A STIPULATION THAT CERTAIN DOCUMENTS ARE

17    DEEMED RECEIVED IN EVIDENCE OR OTHERWISE PROPERLY

18    CONSIDERED BY THE COURT?

19         MR. EDGERTON:  NOT OTHER THAN WHAT I JUST

20    REFERRED TO.

21         THE COURT:  OKAY.  SINCE WE HAVE THESE NUMBERED

22    EXHIBITS, WHICH MAKES IT EASY, LET'S GO THROUGH THE ONES

23    THAT I AM REFERRING TO HERE.  SO WE'RE TALKING ABOUT

24    EXHIBIT 4, ORGANIZATIONAL ACTS AND RESOLUTIONS OF CTI,

25    CORRECT?

26         MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

EXHIBIT #0: 051
22-CV-01616-BAS-DDL

94

1            THE COURT:  SO SHOW ME THE PAGE NUMBER THAT --
2    IS THIS A WRITTEN UNDERTAKING ABOUT -- WELL, STOCK, I
3    GUESS.
4            MR. EDGERTON:  OKAY.  SO ON PAGE 4 YOU WILL SEE
5    THERE IS A "WHEREAS" CLAUSE.
6            THE COURT:  OKAY.  THE ONE THAT TALKS ABOUT
7    28,000,000 SHARES TO MFS?
8            MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.
9            THE COURT:  OKAY.  AND THIS IS DATED 3/30/15,
10   WAS IT?
11           MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.
12           THE COURT:  SO IT IS A RESOLUTION TO ISSUE STOCK
13   WITH A CONSIDERATION IN EXHIBIT A, WHICH IS THE THREE
14   THINGS MENTIONED IN THE OPENING STATEMENT.
15           MR. EDGERTON:  AND THAT IS THE STATED
16   CONSIDERATION FOR THE AGREEMENT.  THAT IS A SHIPPING
17   CONTAINER, TWO TRAILERS AND UP TO 25,000 IN CASH.
18           THE COURT:  ALL RIGHT.
19           MR. ANTWILER:  WAIT.  YOUR HONOR, IT IS ON PAGE
20   12 AS EXHIBIT A.
21           THE COURT:  I ALREADY FOUND IT.  THANK YOU.
22           MR. ANTWILER:  I AM SORRY, YOUR HONOR.
23           THE COURT:  WHICH MENTIONED WHAT THE THREE
24   THINGS WERE.
25           NOW YOU SAY JUNE 15, 2015 THIS WAS RESCINDED.
26   SO WHERE IS THAT?

95

1          MR. CATANZARITE:  I CAN GET YOU THAT.  IT IS IN

2     THE SAME BOOK.

3          MR. EDGERTON:  THAT IS ALSO IN YOUR BOOK.  LET'S

4     TAKE IT FROM YOUR BOOK IF IT IS MORE CONVENIENT.

5          MR. CATANZARITE:  IT MIGHT BE EASIER.

6          MR. EDGERTON:  YES, I THINK SO, TOO.  I THINK IT

7     IS THE VERY BOTTOM OF YOURS.

8          MR. CATANZARITE:  IS IT AT THE END?

9          MR. EDGERTON:  I WENT THROUGH YOUR BOOK LAST

10    NIGHT.

11         THE COURT:  53, INDEX SHOWS THAT DATE.

12         MR. CATANZARITE:  YES, 53.

13         MR. EDGERTON:  YOUR HONOR --

14         THE COURT:  OKAY.  WE'RE HERE.

15         MR. EDGERTON:  AND THEN THE RELEVANT PARTS IF

16    YOU NEED TO KNOW RIGHT NOW ARE ON PAGE 1 STARTING WITH

17    THE "WHEREAS" CLAUSES.

18         THE COURT:  YES, THAT IS THE WHOLE IDEA IS I

19    WANT TO LOOK AT THE RELEVANT DOCUMENTS FIRST.

20         MR. EDGERTON:  OKAY.

21         THE COURT:  SO WE HAVE GOT WRITTEN CONSENT OF

22    DIRECTORS OF CTI SIGNED ON 6/15/15.  AND IT SAYS,

23    "WHEREAS THE PROPORTION TO AUTHORIZE THE ISSUANCE OF

24    28,000,000 SHARES, FMS FAILED TO PROVIDE ANY

25    CONSIDERATION AS REQUIRED, AND SO IT WASN'T ISSUED THE

26    STOCK.  THE BOARD DEEMS IT IN THE BEST INTEREST TO SELL

EXHIBIT #0: 053
22-CV-01616-BAS-DDL

96

1    TO ITS FOUNDERS LISTED THERE.  OTHER PEOPLE" --

2         OKAY.  GOT IT.  OKAY.  YOU HAVE A STATEMENT THAT

3    STATES, "O'CONNOR'S DECLARATION IS PATENTLY FALSE

4    REGARDING HIS CLAIM THAT 28,000,000 SHARES WERE ISSUED TO

5    MFS."

6         WAS THERE ANY DOCUMENT FROM PLAINTIFF TO SUPPORT

7    THE CONTENTION THAT THE SHARES WERE ACTUALLY ISSUED?

8         MR. EDGERTON:  THE CERTIFICATE WASN'T ISSUED.

9    BUT IF YOU READ EXHIBIT 4, EXHIBIT 4 SAYS THEY WERE

10   SOLD -- THE SHARES WERE SOLD AND ISSUED.

11        I MEAN IN EXHIBIT 4, AND THE LAST PAGE OF

12   EXHIBIT 4 CONFIRMS THAT THE SHARES WERE ISSUED.  AND THE

13   TESTIMONY WOULD BE THAT THE CONSIDERATION --

14        THE COURT:  YOU HAVE ANSWERED MY QUESTION.

15   THERE IS NO ADDITIONAL DOCUMENT.

16        MR. CATANZARITE:  WELL, THERE WOULD BE EVIDENCE

17   OF CONSIDERATION PAID.

18        THE COURT:  YOU MEAN THOSE THREE REQUIREMENTS?

19        MR. CATANZARITE:  YES.

20        THE COURT:  AND THAT IS IN YOUR NOTEBOOK HERE?

21        MR. CATANZARITE:  YES.

22        THE COURT:  WHERE IS IT?

23        MR. CATANZARITE:  THE FINANCIAL STATEMENTS.

24        EXHIBIT 31, YOUR HONOR.

25        THE COURT:  OKAY, THERE.  NOW WHAT AM I LOOKING

26   AT, WHICH PAGE?

EXHIBIT #0: 054
22-CV-01616-BAS-DDL

97

1    MR. CATANZARITE:  EXHIBIT 31, FIRST PAGE -- I AM

2    SORRY, EXHIBIT 31, SECOND PAGE, PAGE 2, THERE IS A

3    REFERENCE TO SEEDLING TRAILERS.  IF YOU LOOK, YOUR HONOR,

4    THERE IS 50,740 UNDER 12/31/14.

5         THE COURT:  DID YOU REALIZE THIS IS PLAINTIFF'S

6    FINANCIAL STATEMENT, NOT DEFENDANT'S?

7         MR. CATANZARITE:  CORRECT.  BUT IF YOU LOOK AT

8    THE NEXT YEAR, THE ENTRY TO THE RIGHT COLUMN 12/31/15 THE

9    SEEDLING TRAILER IS GONE.

10        THE COURT:  IS THERE ANYTHING SHOWING WHO IT

11   WENT TO?

12        MR. CATANZARITE:  IT WENT TO AND WAS USED, THE

13   TESTIMONY WILL BE, IT WENT TO AND IT WAS USED BY CTI.

14        THE COURT:  NO, YOU ARE PREMATURE.  I AM NOT

15   INTERESTED IN OFFERS OF TESTIMONY PROOF.

16        MR. CATANZARITE:  SURE.

17        THE COURT:  I AM INTERESTED IN DOCUMENTS.

18        MR. CATANZARITE:  OKAY.

19        THE COURT:  SO NOTHING SAYING LIKE A BILL OF

20   SALE?

21        MR. CATANZARITE:  NOTHING.

22        THE COURT:  THANK YOU.  SAME ANSWER WITH RESPECT

23   TO THE OTHER ASSETS, CORRECT?

24        MR. CATANZARITE:  THERE IS ANOTHER, ON PAGE 1,

25   THERE IS A REFERENCE TO CTI EXPENSES PAID, YOUR HONOR.

26   SAME EXHIBIT --

EXHIBIT #0: 055
22-CV-01616-BAS-DDL

98

1          THE COURT:  YES.

2          MR. CATANZARITE:  -- SHOWS THAT 62,000 WAS

3    ADVANCED IN 2015.

4          THE COURT:  YES.

5          MR. CATANZARITE:  EXHIBIT 2 SHOWS --

6          THE COURT:  YOU MEAN PAGE 2 OR EXHIBIT 2?

7          MR. CATANZARITE:  EXHIBIT 2 NOW.

8          THE COURT:  YES.

9          MR. CATANZARITE:  EXHIBIT 2 SHOWS LEGAL AND

10   PROFESSIONAL FEES PAID OF 10,000 IN FEBRUARY OF 2015,

11   WHICH WERE -- I DON'T HAVE AN INVOICE, AND YOU DON'T WANT

12   TO HEAR WHAT THE ORAL TESTIMONY WOULD BE, BUT THAT WOULD

13   BE -- THAT AND THE EXPENSES INCURRED IN THE FIRST FOUR

14   MONTHS WOULD BE SUPPORTIVE OF PLAINTIFF'S POSITION THAT

15   CONSIDERATION HAD PASSED.

16          EXHIBIT 6 --

17          THE COURT:  YOU DON'T NEED TO BE REDUNDANT ON

18   THE MONEY.  DO YOU HAVE ANYTHING FOR THE OTHER TWO

19   ASSETS?

20          MR. CATANZARITE:  YES, EXHIBIT 6, YOUR HONOR.

21   EXHIBIT 6 IS A LEASE WITH PACIFIC CULTIVATORS ASSOCIATION

22   SIGNED BY MR. PROBST TO MR. O'CONNOR FOR LEASE OF A

23   TRAILER.

24          THE COURT:  4/2/15, THREE DAYS AFTER THE

25   ORIGINAL ACTS WERE SIGNED?

26          MR. CATANZARITE:  YES, YOUR HONOR.

EXHIBIT #0: 056
22-CV-01616-BAS-DDL

99

1    THE COURT:  SO IT IS IN ANTICIPATION OF

2    COMPLIANCE BY PLAINTIFF?

3        MR. CATANZARITE:  YES.

4        THE COURT:  WHICH DIDN'T HAPPEN?

5        MR. CATANZARITE:  IT DID HAPPEN.

6        THE COURT:  OKAY.

7        MR. CATANZARITE:  EXHIBIT 5, YOUR HONOR.

8        THE COURT:  WHAT ABOUT IT?

9        MR. CATANZARITE:  EXHIBIT 5, PARAGRAPH 4 --

10   EXHIBIT 4 REFERENCES THE FORMATION OF THE SUBSIDIARY,

11   THIS IS MOBILE FARMING TO BE KNOWN AS CTI.

12       THE COURT:  AND IT SAYS THEY GAVE THEM A 32 FOOT

13   SEEDING TRAILER AND 40 FOOT SHIPPING CONTAINER.

14       MR. CATANZARITE:  YES.  IN ORDER TO CAPITALIZE

15   MOBILE FARMING SYSTEMS HAS CONTRIBUTED CERTAIN ASSETS TO

16   CTI INCLUDING, IN OTHER WORDS, PAST TENSE, YOUR HONOR,

17   AND THE 40 FOOT CONTAINER.

18       THE COURT:  I DON'T SEE A DATE ON THIS LETTER.

19   IS THERE ONE?

20       MR. CATANZARITE:  I BELIEVE -- THE CONCURRENCE

21   IS IS APRIL OF 2015, YOUR HONOR.  THIS WAS SENT TO ALL

22   MOBILE FARMING SHAREHOLDERS.

23       THE COURT:  THANK YOU.

24       MR. CATANZARITE:  AND EXHIBIT 8, YOUR HONOR,

25   EXHIBIT 8 IS MAY 9TH, 2015, SECOND PARAGRAPH, QUOTE:

26   "RIGHT NOW CTI IS OWNED 100 PERCENT BY MFS, MOBILE

EXHIBIT #0: 057
22-CV-01616-BAS-DDL

100

1    FARMING, PROBST TO O'CONNOR."

2              AND EXHIBIT 7, YOUR HONOR, EXHIBIT 7, PAGE 4,

3    UNDER "CULTIVATION" -- PAGE 4 UNDER THE "CULTIVATION

4    TECHNOLOGY'S" COLUMN, YOUR HONOR, "LONG-TERM

5    LIABILITIES," THERE IS A REFERENCE TO MFS LOAN, $75,000.

6    MFS LOAN ACCRUED INTEREST 12,000, INDICATING THAT MONEY

7    HAD PASSED.  AND THE 2015 FINANCIAL STATEMENT I REFERRED

8    YOU TO CONFIRMS THIS MUCH.

9              THE COURT:  HOW IS A LOAN RELEVANT TO WHAT WE

10   HAVE BEEN TALKING ABOUT?

11             MR. CATANZARITE:  CONSIDERATION PAID UP TO

12   25,000.

13             THE COURT:  SO IF IT IS A LOAN, IT IS NOT GIVEN?

14             MR. CATANZARITE:  WELL, THEY ARE CALLING IT A

15   LOAN, BUT THAT IS WHAT THEY ARE CALLING IT.  THE EVIDENCE

16   IS OTHERWISE.

17             THE COURT:  OKAY.  THANK YOU.

18             OKAY.  THE THING ON PAGE 2 WHICH SAYS, "THE

19   ANTICIPATED AGREEMENT TO MAKE MFS A SHAREHOLDER WAS

20   RESCINDED BEFORE PERFORMANCE," THAT'S THE SAME THING YOU

21   ARE TALKING ABOUT ABOUT THE JUNE 15TH, 2015 ACTION, THAT

22   IS WHAT YOU ARE REFERRING TO THERE?

23             MR. EDGERTON:  AS FAR AS THE DOCUMENTS, YES.

24             THE COURT:  OKAY.

25             MR. EDGERTON:  HOLD ON.  LET ME CONSULT.

26             (DEFENSE COUNSEL AND CLIENTS CONFER OFF THE

EXHIBIT #0: 058
22-CV-01616-BAS-DDL

101

1    RECORD.)

2         MR. EDGERTON:  YES, THERE IS MORE, BUT IT IS

3    MORE INDIRECT.  IT IS EVERYTHING -- THE ENSUING

4    SHAREHOLDER LIST DID NOT LIST MFS, THE SHAREHOLDER, IF

5    THAT IS RELEVANT TO WHAT YOU WOULD LIKE TO SEE.

6         THE COURT:  SURE.

7         MR. EDGERTON:  OKAY.

8         THE COURT:  DO YOU HAVE AN EXHIBIT NUMBER TIED

9    TO THE PLAINTIFF BOOK?

10         MR. EDGERTON:  I DON'T THINK SO.

11         THE COURT:  DO YOU HAVE THEIR INDEX OF EXHIBITS?

12         MR. EDGERTON:  I DO IN THE BOOK.

13         THE COURT:  IF YOU CAN LOOK AT THE INDEX AND

14    TELL ME WHICH ONE IT WOULD BE.

15         MR. EDGERTON:  I WILL DO THAT RIGHT NOW.

16         THE COURT:  SO THE PLAINTIFF EXHIBIT NOTEBOOK

17    LEAVES OFF AT 57, SO WE'LL CALL IT 58.

18         MR. CATANZARITE:  WHAT IS THAT?  DO YOU HAVE AN

19    EXTRA ONE?

20         MR. EDGERTON:  YOUR HONOR, I WOULD LIKE TO

21    ADDRESS THE COURT.  FROM THIS, THERE IS A SERIES OF

22    EXHIBITS THAT REINFORCE THROUGH EXTRINSIC EVIDENCE THAT

23    MFS WAS NOT RECOGNIZED AS A SHAREHOLDER, SIGNED OFF BY

24    THE CEO, MR. O'CONNOR, AND THAT GOES TO THE SHAREHOLDER

25    CONSENTS.  THERE IS ALSO DOCUMENTS WHERE SHARE --

26         WHAT HAPPENED LATER IN THE STORY WAS THEN THERE

EXHIBIT #0: 059
22-CV-01616-BAS-DDL

102

1    WERE SHARES ON THE SWITCHOVER, AND IT HAD THE SHAREHOLDER

2    TABLE WHERE MFS WAS ABSENT, AND THAT WAS SIGNED OFF BY

3    MR. O'CONNOR.

4          NOW THAT EVIDENCE IS SOMEWHAT CUMULATIVE, AND WE

5    CAN GIVE THAT TO THE COURT, BUT IT IS SORT OF A BACKUP

6    AND REINFORCEMENT CORROBORATING EVIDENCE OF THE FACT THAT

7    THAT WAS KNOWN.

8          THE COURT:  WHAT PART OF EXHIBIT 58 AM I

9    SUPPOSED TO LOOK AT HERE?

10         THE COURT REPORTER:  I AM SORRY, YOUR HONOR --

11         THE COURT:  OKAY.  THERE IS A COURT REPORTER --

12         MR. ANTWILER:  WE WILL ANSWER YOUR QUESTION.

13         THE COURT:  -- YOU ARE TREATING THIS LIKE A

14   ROUNDTABLE MEETING, BUT IT IS A COURT HEARING.  ONE

15   PERSON SPEAKS AT A TIME, AND THE COURT REPORTER NEEDS TO

16   HEAR WHAT IS SAID.

17         MR. EDGERTON:  OKAY.  SO THE COURT IS REQUESTING

18   WHAT PART OF THE PHYSICAL EXHIBIT SHOWS THAT FACT.

19         THE COURT:  AND I THOUGHT -- I AM LOOKING FOR AN

20   EXHIBIT THAT IS ATTACHED TO THE DECLARATION, NOT THE

21   DECLARATION ITSELF, BECAUSE I DON'T REALLY CARE ABOUT,

22   YOU KNOW, WHAT SOMEBODY DECLARES UNDER PENALTY OF

23   PERJURY.  I WANT THE UNDERLYING DOCUMENT.

24         SO WHAT AM I LOOKING AT?

25         MR. EDGERTON:  IT IS EXHIBIT NUMBER 1.

26         THE COURT:  PLAINTIFFS' SECURITIES AGREEMENT?

EXHIBIT #0: 060
22-CV-01616-BAS-DDL

103

1     MR. EDGERTON:  YES.  WE CAN GIVE IT TO YOUR

2   CLERK.  WE JUST PULLED IT FROM THE DECLARATION.

3     THE COURT:  WHAT PAGE DO I WANT?

4     MR. TJOE:  YOUR HONOR, IT IS PAGE 1.  SO IT IS

5   PART OF THE SECURITIES AGREEMENT.  SUBPARAGRAPH E:  "THE

6   ISSUER MUST PROVIDE TO QUICK SILVER THE FOLLOWING

7   DOCUMENTS:  SUBPARAGRAPH E IS A COMPLETE LIST OF ISSUED

8   AND OUTSTANDING SECURITIES OF THE ISSUER INCLUDING BUT

9   NOT LIMITED TO PARAGRAPHS A, B, C, D AND E, AND WHAT WAS

10  THEREAFTER PROVIDED."

11    THE COURT:  SO WHAT PAGE IS THE LIST ON?

12    MR. TJOE:  THAT IS A SEPARATE EXHIBIT,

13  YOUR HONOR.

14    THE COURT:  OH.

15    MR. EDGERTON:  WELL, I THINK --

16    MR. ANTWILER:  YOUR HONOR, UNDER E IT REQUESTS A

17  COMPLETE LIST OF ISSUED AND OUTSTANDING SECURITIES, AND

18  AT THAT POINT --

19    THE COURT:  SO WHAT ARE YOU TALKING ABOUT, A

20  NEGATIVE INFERENCE?

21    MR. EDGERTON:  YES.

22    THE COURT:  OKAY.

23    MR. ANTWILER:  THE ONLY SHARES THAT HAVE BEEN

24  ISSUED WOULD BE THE FOUNDERS WHICH WERE ISSUED AT THAT

25  TIME THROUGH THAT SECURITIES AGREEMENT.

26    MR. EDGERTON:  YES, BUT IT IS A NEGATIVE

EXHIBIT #0: 061
22-CV-01616-BAS-DDL

104

1    INFERENCE.

2            THE COURT:  OKAY.  I AM LOOKING FOR DOCUMENTARY

3    SUPPORT FOR ALL THESE VARIOUS THEORIES.  SO IF YOU DON'T

4    HAVE A DOCUMENT ON THE SHAREHOLDER LIST, FINE.

5            MR. TJOE:  YOUR HONOR, THE NEXT DOCUMENT WOULD

6    BE 59.  IT IS THE SHARES INITIALLY ISSUED BY QUICK

7    SILVER.  IN OTHER WORDS, THE INFERENCE, IF THAT MAY BE

8    CALLED, IS THIS IS WHAT WAS ISSUED AT THE VERY BEGINNING,

9    THE VERY FIRST SHARES.

10           THE COURT:  SO PASS IT AROUND UNLESS IT IS

11   ALREADY PART OF THE NOTEBOOK.

12           MR. ANTWILER:  IT IS NOT, YOUR HONOR.

13           MR. CATANZARITE:  IS THAT THIS ONE?

14           MR. ANTWILER:  YES.

15           MR. CATANZARITE:  IT IS THIS ONE?

16           MR. ANTWILER:  CORRECT.

17           THE COURT:  SO THIS IS DATED 7/30/15, CHECKLIST

18   REMINDER.  AND YOU ARE SAYING THIS LISTS THE INITIAL

19   SHAREHOLDERS?

20           MR. TJOE:  YES.  AND IT ALSO HAS COPIES OF THE

21   INITIAL SHARES THAT WERE ISSUED STARTING OUT CERTIFICATE

22   1001.

23           THE COURT:  SO PAGE 3 LISTS EIGHT SHAREHOLDERS.

24           MR. TJOE:  CORRECT.

25           THE COURT:  NONE OF WHICH ARE THE PLAINTIFF.

26           MR. TJOE:  CORRECT, YOUR HONOR.

EXHIBIT #0: 062
22-CV-01616-BAS-DDL

105

1       THE COURT:  WHICH MAY BE CONSISTENT WITH SOME

2   OTHER PREVIOUS DOCUMENT I SAW ABOUT ISSUING SHARES TO

3   CERTAIN PEOPLE INSTEAD OF TO THE PLAINTIFF.

4       MR. TJOE:  YES, YOUR HONOR.

5       THE COURT:  YOU KNOW, THERE ARE THINGS IN THIS

6   DEFENSE BRIEF ABOUT THINGS HAPPENING, BUT IS THERE

7   ANYTHING THAT SHOWS LIKE WHO ARE THE INDIVIDUALS WITH THE

8   PLAINTIFF AT THIS TIME SUCH THAT THEIR ACTIONS CAN BE

9   IMPUTED TO THE CORPORATION?  IN OTHER WORDS, JUST BECAUSE

10  RICHARD O'CONNOR, RICHARD PROBST AND AMY COOPER ON BEHALF

11  OF CTI SAY WE ARE NOT GOING TO ISSUE STOCK TO MFS, THAT

12  DOESN'T NECESSARILY MEAN MFS AGREES.  HOWEVER, IF THOSE

13  ARE THE SAME THREE PEOPLE THAT ARE IN CHARGE OF MFS, THEN

14  THAT COULD SUPPORT AN INFERENCE THAT MFS DOES AGREE.

15      SO WHAT EVIDENCE IN WRITING IS THERE ABOUT WHO

16  IS IN CHARGE OF MFS AT THIS POINT IN TIME?

17      MR. EDGERTON:  THAT IS EASY TO PROVIDE.  THAT

18  JUST GOES TO PROOF, I WOULD THINK THAT AT THE TIME THERE

19  IS AN MFS DOCUMENT SHOWING THAT THOSE ARE THE THREE SOLE

20  BOARD MEMBERS.  AND THAT COMES FROM THE DECLARATION OF

21  RICHARD PROBST BECAUSE HE WAS THE ONE WHO PROVIDED ALL

22  THE BACKGROUND INFORMATION ON MFS.

23      THE COURT:  DID YOU JUST SAY IT IS THE SAME

24  THREE PEOPLE?

25      MR. EDGERTON:  IT IS.

26      THE COURT:  OKAY.

EXHIBIT #0: 063
22-CV-01616-BAS-DDL

106

1          MR. EDGERTON:  THAT IS UNDISPUTED, CORRECT?

2    THAT IS UNDISPUTED, RIGHT?

3          MR. CATANZARITE:  IT IS UNDISPUTED THEY ARE THE

4    SAME THREE PEOPLE, BUT THEY DID NOT ACT FORMALLY TO

5    ACKNOWLEDGE THAT MFS WAS NEVER A SHAREHOLDER.

6          THE COURT:  UNDERSTOOD.

7          MR. EDGERTON:  SO YOU HAVE THE SAME THREE

8    CONTROLLING TWO COMPANIES.

9          THE COURT:  OKAY.  MOVING RIGHT ALONG.

10          MR. EDGERTON:  YOUR HONOR, I WANTED TO MENTION

11    SOMETHING THAT I MENTIONED YESTERDAY THAT --

12          THE COURT:  NO, I DON'T WANT TO HEAR IT.

13          MR. EDGERTON:  OKAY.

14          THE COURT:  MY NUMBER 1 GOAL TODAY IS TO FINISH

15    TODAY.  WHETHER OR NOT THAT IS GOING TO HAPPEN TODAY

16    REMAINS TO BE SEEN.  BUT IT IS ALL ABOUT ME ABSORBING

17    INFORMATION.

18          MR. EDGERTON:  SURE.  BUT I JUST WANT TO ADD A

19    DOCUMENT AT SOME POINT.

20          THE COURT:  I AM GOING THROUGH YOUR TRIAL BRIEF.

21    YOU SAY O'CONNOR ALSO SIGNED OVER 50 SUBSCRIPTION

22    AGREEMENTS TO SELL CTI STOCK DIRECTLY TO MFS

23    SHAREHOLDERS.

24          MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

25          THE COURT:  IS THERE A DOCUMENT ON THAT ONE?

26          MR. EDGERTON:  YES, THERE IS.

EXHIBIT #0: 064
22-CV-01616-BAS-DDL

107

1          THE COURT:  WHILE YOU ARE LOOKING FOR THAT, THE

2   NEXT STATEMENT IS, "GREG D FILINGS AND PRIVATE PLACEMENT

3   MEMORANDUMS CONFIRM WHO THE MAJOR SHAREHOLDERS WERE.  MFS

4   WAS NEVER LISTED AS A SHAREHOLDER IN ANY OF THESE

5   DOCUMENTS."

6          SO YOU HAVE ALREADY GIVEN ME EXHIBIT 59.  SO IS

7   THERE ANYTHING THAT WOULD BE NOT REDUNDANT OF THAT THAT

8   SUPPORTS THAT ASSERTION?

9          MR. EDGERTON:  NO.  IT IS CUMULATIVE.

10          THE COURT:  OKAY.

11          MR. EDGERTON:  PERHAPS YOU ARE RIGHT.

12          THE COURT:  I MEAN THAT IS FINE, IF THERE WAS AN

13   ISSUANCE TO ANOTHER BATCH OF SHAREHOLDERS --

14          MR. EDGERTON:  RIGHT.

15          THE COURT:  -- THAT WOULD BE NONREDUNDANT.

16          MR. EDGERTON:  RIGHT.

17          THE COURT:  AND YOU SAY, "O'CONNOR REPRESENTED

18   AND WARRANTED TO THE CTI TRANSFER AGENT THAT MFS WAS NOT

19   A SHAREHOLDER OF CTI.  SEE OPTA INJUNCTION PAGE 7,

20   SECTION F."  OKAY.  SO IS THERE A DOCUMENT FOR THIS

21   STATEMENT?

22          MR. ANTWILER:  IT WOULD BE 58, YOUR HONOR.  WE

23   ALREADY MARKED.

24          MR. EDGERTON:  AND, YOUR HONOR, DO YOU HAVE 58

25   AS ONE PAGE OR THE WHOLE EXHIBIT THAT I HAVE?

26          THE COURT:  I HAVE QUICK SILVER, 12 PAGES.

EXHIBIT #0: 065
22-CV-01616-BAS-DDL

108

1        MR. EDGERTON:  OKAY.  YOU HAVE IT.

2        THE COURT:  SO WHERE DOES IT SAY FOR

3  MR. O'CONNOR THAT MFS ISN'T A SHAREHOLDER?

4        MR. ANTWILER:  IT IS THROUGH A NEGATIVE

5  INFERENCE, YOUR HONOR.

6        THE COURT:  SO WHEN YOU SAY HE REPRESENTED AND

7  WARRANTED THAT THEY WEREN'T A SHAREHOLDER, THAT IS FROM

8  HIM SAYING THESE OTHER PEOPLE ARE SHAREHOLDERS?

9        MR. ANTWILER:  HE WAS BOUND UNDER 1E THAT WE

10 DISCUSSED TO GIVE A COMPLETE LIST OF ALL SHARES ISSUED

11 AND OUTSTANDING, AND MFS WAS NOT LISTED.

12       THE COURT:  SO WHERE DID HE PROVIDE THIS LIST?

13 IS THAT THE EXHIBIT 59 LIST?

14       MR. ANTWILER:  59 IS THE ONLY THING THAT WAS

15 PROVIDED, THAT IS CORRECT, YOUR HONOR.

16       THE COURT:  I AM NOT SURE THAT THAT ANSWERED MY

17 QUESTION.

18       MR. EDGERTON:  I DON'T THINK IT DID.  IT IS NOT

19 A GOOD ANSWER.  BUT ON PAGE 1 IT'S HE IS REPRESENTING HE

20 IS ANSWERING THESE QUESTIONS AS HE IS BEING ASKED BY THE

21 TRANSFER AGENT TO ANSWER.

22       THE COURT:  PAGE 1 OF?

23       MR. EDGERTON:  OF THE QUICK SILVER DOCUMENT.

24 AND THAT IS WHAT HE IS SUPPOSED TO BE PROVIDING, AND HE

25 PROVIDES A LIST, WHICH CONSPICUOUSLY ABSENT IS MFS AS A

26 SHAREHOLDER.

EXHIBIT #0: 066
22-CV-01616-BAS-DDL

109

1        THE COURT:  AND THIS LIST IS AT PAGE 2 OF

2  EXHIBIT 59 THAT LISTS SHARES 1000 THROUGH 1007?

3        MR. TJOE:  CORRECT, YOUR HONOR.

4        MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

5        THE COURT:  IS THERE SOMETHING SAYING THIS CAME

6  FROM HIM?  I MEAN IT MAY NOT EVEN BE DISPUTED.  I JUST

7  WANT TO KNOW IF IT IS IN WRITING.

8        MR. EDGERTON:  I UNDERSTAND.

9        MR. ANTWILER:  ACTUALLY, YOUR HONOR, ON EXHIBIT

10  58, IF I MAY, IT ATTACHES EXHIBIT -- I AM SORRY.  ONE

11  MOMENT, YOUR HONOR, I THINK I CAN FIND IT.

12        MR. TJOE:  AND, YOUR HONOR, ALSO EXHIBIT 58,

13  PAGE 10, MIGHT HAVE BEEN A MISSTATEMENT THAT MR. O'CONNOR

14  SAID THIS.  BUT MS. COOPER AT PAGE 10 OF 12, YOUR HONOR,

15  I BELIEVE THAT SHE TESTIFIED -- DECLARES EFFECTIVELY

16  UNDER PENALTY OF PERJURY THAT, UNDER WHERE IT SAYS

17  TOWARDS THE BOTTOM HALF OF THE PAGE, "SHARES OF SAID

18  STOCK HAVE BEEN ISSUED," AND THERE IS NONE.

19        THE COURT:  I AM NOT SEEING THAT.

20        MR. TJOE:  SO TWO-THIRDS DOWN THE PAGE "THAT OF

21  SAID AUTHORIZED STOCK THEY ARE NOW ISSUED" --

22        THE COURT:  YES.

23        MR. TJOE:  AND THERE IS NOTHING.  NO STOCK HAD

24  BEEN INDICATED HAD BEEN ISSUED AS OF THIS DATE.

25        THE COURT:  YES.

26        MR. TJOE:  SO THAT WOULD BE INDICATIVE OF THE

EXHIBIT #0: 067
22-CV-01616-BAS-DDL

110

1    FACT THAT NO SHARES OF CTI HAVE EVER BEEN ISSUED TO MFS

2    AS OF THIS DATE.

3              THE COURT:  OH, OKAY.

4         MR. TJOE:  AS SIGNED BY MS. COOPER.

5              AND I BELIEVED THE CONFUSION IS THE INFERENCE,

6    THE NEXT PAGE, THAT IS PAGE 11 OF 12, YOUR HONOR, THIS IS

7    A CERTIFICATE OF AUTHORITY OF OFFICERS, AND THAT IS

8    SIGNED BY MR. O'CONNOR, MISS COOPER, MR. PROBST, AND I

9    DON'T THINK IT IS MUCH OF A LEAP TO SAY THAT THEY WERE

10   EFFECTIVELY VALIDATING WHAT MS. COOPER SAID ON PAGE 10 OF

11   12.

12             THE COURT:  OKAY.

13        MR. ANTWILER:  AND, YOUR HONOR, IN EXHIBIT 59

14   WHERE THE FIRST CERTIFICATES WERE ISSUED IT DOES INCLUDE

15   A COPY OF THE AMENDED ORGANIZATIONAL ACTS.

16             THE COURT:  WHICH I HAVE ALREADY LOOKED AT?

17        MR. ANTWILER:  CORRECT, YOUR HONOR.

18             THE COURT:  SO THEN YOU SAY THAT ALL BUT SIX OF

19   59 PLAINTIFF SHAREHOLDERS AGREE TO PARTICIPATE AND

20   PURCHASE STOCK IN CTI, PROBST'S DECLARATION SECTION

21   PARAGRAPH 31 IN EXHIBIT J.

22        MR. TJOE:  YES, YOUR HONOR.  EXHIBIT J TO

23   MR. PROBST'S DECLARATION IS UNFORTUNATELY NOT A VERY GOOD

24   PRINTOUT OF -- IT SUMMARIZES AND HIGHLIGHTS IN YELLOW THE

25   INDIVIDUALS THAT DID NOT PARTICIPATE IN THE FRIENDS AND

26   FAMILY ROUND.

EXHIBIT #0: 068
22-CV-01616-BAS-DDL

111

1          I CAN GIVE THE COURT CLERK WHAT I WILL MARK AS

2     EXHIBIT 60.

3              MR. CATANZARITE:  I HAVE GOT THAT ONE.

4              MR. ANTWILER:  IT IS IN HIS BINDER.

5              MR. CATANZARITE:  IT IS BLOWN-UP.

6              THE COURT:  WHAT NUMBER IS IT?

7              MR. CATANZARITE:  THERE IS A SET OF

8     SPREADSHEETS; IT IS AT 52.  WE MADE IT BIGGER.

9              MR. EDGERTON:  OH, THIS IS THE ONE THAT I WAS

10    NOT SURE ABOUT.  IS THAT JUST THE BLOWUP?

11             MR. CATANZARITE:  YES.

12             MR. EDGERTON:  OKAY.  SO I AM STIPULATING TO HIS

13    WHOLE BOOK.

14             MR. CATANZARITE:  IT IS BLOWN-UP AS AN 11-BY-17.

15    I DON'T THINK IT HAS THE YELLOW ON IT.

16             MR. EDGERTON:  SO THAT IS JUST REPLICATION?

17             MR. CATANZARITE:  YES.

18             MR. EDGERTON:  OKAY.  THAT IS FINE.

19             MR. TJOE:  SO TO THE EXTENT THAT IT IS

20    HELPFUL --

21             THE COURT:  OKAY.  SO WE HAVE GOT CTI

22    SHAREHOLDER LIST.  WE HAVE GOT FIRST 1 THROUGH 9, AND

23    THEN WE HAVE GOT 1 THROUGH 163, AND THEN YOU HAVE GOT

24    MORE ON TOP OF THAT WITH ISSUE DATES SET FORTH.  AND I

25    TAKE IT THERE IS NO PLAINTIFF ON HERE?

26             MR. TJOE:  NO, YOUR HONOR.

EXHIBIT #0: 069
22-CV-01616-BAS-DDL

112

1          MR. EDGERTON:  THAT IS CORRECT.

2          THE COURT:  OKAY.  IS THERE ANYTHING TYING THIS

3    IN TO THE PLAINTIFF TAKING THE POSITION THAT THIS IS

4    ACCURATE?

5          MR. EDGERTON:  THE PLAINTIFF IS TAKING THE

6    ADVERSE POSITION NOW THAT IT IS NOT ACCURATE, AND THAT IS

7    THE EXHIBIT THAT I WANTED TO MARK.

8          THE COURT:  THAT IS EXACTLY WHY I WANT TO SEE IF

9    THEY TOOK THE POSITION IN THE PAST THAT IT WAS ACCURATE.

10         MR. EDGERTON:  THEY DID NOT TAKE A POSITION IN

11   THE PAST THAT IT WAS ACCURATE.  THEY WENT WITH OUR

12   POSITION.  THREE-AND-A-HALF YEARS LATER IS WHEN THE

13   DISPUTE AROSE.

14         THE COURT:  I FEEL LIKE YOU ARE SAYING THE SAME

15   THING THAT I WAS SAYING.

16         MR. EDGERTON:  PROBABLY.  I JUST WANT TO MAKE

17   SURE IT IS JUST SAID THAT WAY.

18         THE COURT:  I WILL REPEAT WHAT I AM SAYING:  IF

19   YOU HAVE ADMISSIONS BY THE PLAINTIFF THAT THEY ARE NOT A

20   SHAREHOLDER, THEN THAT IS SOMETHING I WOULD WANT TO SEE.

21         SO IF A LIST OF SHAREHOLDERS THAT DOESN'T

22   INCLUDE THE PLAINTIFF IS ARGUED BY THE DEFENDANT, OKAY,

23   FINE.  BUT IF THE PLAINTIFF HAS EMBRACED THIS LIST, THEN

24   THAT IS MORE INTERESTING TO ME.

25         MR. EDGERTON:  SO IT IS EXECUTED BY

26   MR. O'CONNOR, SO A TACIT ADMISSION IS ACKNOWLEDGED BY

EXHIBIT #0: 070
22-CV-01616-BAS-DDL

113

1   HIM.

2          THE COURT:  OKAY.  WHERE DO I FIND A SIGNATURE

3   ON HERE?

4          MR. ANTWILER:  YOUR HONOR, I DON'T KNOW IF

5   IT'S -- WHICH DOCUMENT WE ARE REFERRING TO AT THE MOMENT,

6   BUT WE HAVE --

7          THE COURT REPORTER:  I AM SORRY, I DIDN'T HEAR

8   YOU.

9          THE COURT:  WHEN YOU FACE BACKWARD, NOBODY CAN

10  HEAR YOU.

11         MR. ANTWILER:  I AM SORRY, YOUR HONOR.

12         WE HAVE SUBSCRIPTION AGREEMENTS THAT ARE SIGNED,

13  WHICH WOULD GO ALONG WITH THE NEW SHARE STRUCTURE, WHICH

14  DOES NOT INCLUDE MFS THAT ARE SIGNED BY RICHARD O'CONNOR.

15         THE COURT:  OKAY.  WELL, I UNDERSTAND THAT THERE

16  IS AN ARGUMENT IN YOUR BRIEF THAT HE SHOULDN'T BE HEARD

17  TO COMPLAIN THAT OTHER PEOPLE OWN STOCK, BUT I AM NOT

18  REALLY SURE THAT IS AN ISSUE FOR THIS HEARING.  IT'S MORE

19  ABOUT DOES PLAINTIFF ITSELF OWN ANY STOCK, WHETHER

20  PLAINTIFF IS A 100 PERCENT SHAREHOLDER OR SOME LESSER

21  PERCENTAGE SHAREHOLDER?

22         SO THE FACT THAT MR. O'CONNOR AGREED THAT THERE

23  ARE THESE OTHER SHAREHOLDERS, IT CAN ONLY GO SO FAR.

24         MR. TJOE:  YOUR HONOR, IF YOU ARE JUST LOOKING

25  FOR DOCUMENTARY EVIDENCE, THERE IS AN E-MAIL EXCHANGE ON

26  MOBILE FARMING SYSTEMS' LETTERHEAD.  THIS IS BETWEEN

EXHIBIT #0: 071
22-CV-01616-BAS-DDL

114

1    MR. PROBST, MR. COOPER -- EXCUSE ME, MS. COOPER AND

2    MR. O'CONNOR.

3              THE COURT:  IF IT IS RELEVANT, I WANT TO SEE IT.

4    AND I WOULD RATHER READ IT MYSELF THAN HAVE YOU READ IT

5    TO ME.

6              MR. TJOE:  THAT IS FINE, YOUR HONOR.

7              MR. CATANZARITE, IS THIS E-MAIL PART OF YOUR

8    TRIAL EXHIBIT BINDER?

9              MR. CATANZARITE:  IS THERE A DATE?

10             MR. TJOE:  IT IS NOVEMBER 3RD, 2017.  IT WAS

11   PREVIOUSLY ATTACHED --

12             MR. CATANZARITE:  NO, WE DON'T HAVE THIS.

13             MR. TJOE:  -- PREVIOUSLY ATTACHED AS EXHIBIT L

14   TO MR. PROBST'S DECLARATION.

15             IF IT IS OKAY WITH MR. CATANZARITE, I WILL LABEL

16   THIS AS 60.

17             MR. CATANZARITE:  SURE.

18             THE COURT:  WELL, ACTUALLY IT IS NOT OKAY -- IT

19   DOESN'T HAVE TO BE OKAY WITH HIM IF IT IS MARKED, BUT

20   ONLY IF IT IS ADMITTED.  SO YOU CAN MARK IT AS EXHIBIT

21   60.

22             MR. TJOE:  IDENTIFIED, EXACTLY, YOUR HONOR.  MY

23   APOLOGIES.

24             THE COURT:  SO WE ARE CALLING THESE E-MAILS

25   DATED 11/3/17.

26             SO POINT ME TO THE INTERESTING PART.

EXHIBIT #0: 072
22-CV-01616-BAS-DDL

115

1          MR. TJOE:  SURE, YOUR HONOR.  SO BEGINNING AT

2    THE BOTTOM OF THE PAGE, THIS IS FROM MY CLIENT,

3    MR. PROBST; THIS IS ADDRESSED TO -- THIS WAS SENT TO

4    MS. COOPER AND MR. O'CONNOR.  "GUYS, WE NEED TO CLOSE THE

5    COMPANY OR POSSIBLY B.K. IT.  ITS ONLY ASSETS ARE THE

6    STOCK IT OWNS IN GROW POD SOLUTIONS AND THE NOTE FROM CTI

7    WHICH WON'T BE PAID ANY TIME SOON."

8          THE COURT:  OKAY.  SO YOUR POINT IS HE IS NOT

9    IDENTIFYING CTI STOCK AS AN ASSET OF MFS?

10         MR. TJOE:  CORRECT.  AND IF YOU FOLLOW THE REST

11   OF THE E-MAIL, NO ONE DISAGREES WITH THAT.  NO ONE

12   OBJECTS TO THAT POSITION.

13         THE COURT:  OKAY.

14         MR. ANTWILER:  YOUR HONOR, ALSO THERE ARE PPM'S

15   THAT WOULD LIST ALL SHAREHOLDERS THAT OWN FIVE OR PERCENT

16   MORE OF CTI.  MFS IS NOT LISTED, AND THEY ARE EXECUTED --

17   SOME OF THEM ARE EXECUTED BY, OR AUTHORIZED BY

18   MR. O'CONNOR.

19         THE COURT:  WELL, AT THIS POINT I BELIEVE IT IS

20   THE PLAINTIFF'S CONTENTION THAT THEY ACQUIRED STOCK AT

21   THE VERY BEGINNING.  SO THE FACT THAT THEY WEREN'T LISTED

22   ON SOME SUBSEQUENT STOCK OFFERING I DON'T THINK REALLY

23   MATTERS FOR PURPOSES OF THIS HEARING.  CORRECT?

24         MR. ANTWILER:  WELL, IT LISTED THE CURRENT

25   SHAREHOLDERS THAT OWN FIVE OR PERCENT MORE, AND IT DOES

26   NOT LIST MFS.  SO IT IS A SHOWING THAT MFS WAS NOT A FIVE

EXHIBIT #0: 073
22-CV-01616-BAS-DDL

116

1  PERCENT OR MORE SHAREHOLDER.

2          THE COURT:  OH, I THOUGHT YOU WERE LISTING IT AS

3  A LIST OF A NEW ISSUANCE AS OPPOSED TO A CUMULATIVE LIST

4  OF ALL STOCKHOLDERS OF FIVE PERCENT OR MORE.  SO YOU ARE

5  SAYING IT IS THE LATTER.  SO WHERE IS THAT?

6          MR. ANTWILER:  IT IS THE LATTER.

7          THAT IS WHAT I AM TRYING TO GATHER, YOUR HONOR.

8  I DON'T HAVE IT IN FRONT OF ME, BUT I CAN PROVIDE IT AT

9  THE FIRST AVAILABLE BREAK.

10          THE COURT:  OKAY.  OR YOU CAN KEEP LOOKING FOR

11  IT.

12          OKAY.  THEN YOU HAVE GOT A REPRESENTATION THAT

13  SINCE OCTOBER 2015 CTI RAISED OVER 3,000,000 FROM OVER 60

14  PRIVATE INVESTORS AND AN ADDITIONAL 6,000,000 IN

15  FINANCING WITH REPRESENTATIONS THAT MFS DID NOT OWN ANY

16  SHARES OF CTI STOCK.  SO THAT IS SOMETHING I MIGHT WANT

17  TO SEE IF WE CAN LABEL THAT AS A REPRESENTATION FROM THE

18  PLAINTIFF.

19          MR. EDGERTON:  SO EXTRINSICALLY THAT PROOF, A

20  LOT OF THAT IS GOING TO COME INTRINSICALLY IS WHAT --

21          WHAT IS THE BACKUP, GENTLEMEN, FOR THAT

22  DOCUMENT?

23          MR. ANTWILER:  YOUR HONOR, THAT WILL ALSO BE

24  INCLUDED ON SOME OF THE PRIVATE PLACEMENT MEMORANDUMS,

25  AND IT IS ALSO ON I THINK WOULD BE REFLECTED IN SOME OF

26  THESE SUBSCRIPTION AGREEMENTS.

EXHIBIT #0: 074
22-CV-01616-BAS-DDL

117

1    ON SOME OF THE SUBSCRIPTION AGREEMENTS IT SAYS

2  THERE IS 23,000,000 SHARES.  SO YOU CAN ONLY READ THAT IN

3  CONJUNCTION WITH THE AMENDED BECAUSE THERE IS 28,000,000

4  SHARES AS PURPORTEDLY ISSUED IS WHAT THEY ARE ARGUING.

5  SO IF THERE ARE ONLY 23,000,000 OUTSTANDING SHARES, THEN

6  NO SHARES CAN BE ISSUED TO MFS.

7    BUT THE OTHER DOCUMENTARY EVIDENCE IS THE PPM'S

8  THAT WE ARE CURRENTLY TRYING TO FIND TO PROVIDE TO

9  YOUR HONOR.

10    THE COURT:  OKAY.  THOSE AMENDED ACTS ARE COMING

11  UP AGAIN.  THAT WAS WHAT EXHIBIT?

12    MR. ANTWILER:  I THINK IT'S -- LET ME JUST

13  CONFIRM.

14    MR. CATANZARITE:  53.

15    MR. ANTWILER:  53, YOUR HONOR.

16    THE COURT:  ALL RIGHT.  I THINK WE ARE AT THE

17  POINT WHERE I WANT TO HAVE PLAINTIFF NOW POINT ANY

18  DOCUMENTS THAT THEY WISH OUT TO ME THAT SUPPORT THIS

19  PLAINTIFF OWNS STOCK INTENTION.

20    MR. EDGERTON:  CAN I JUST, THIS ONE DOCUMENT --

21    THE COURT:  WHAT IS THAT?

22    MR. EDGERTON:  -- IF IT IS APPROPRIATE?

23    SO YESTERDAY I MENTIONED THE DECLARATION ABOUT

24  MR. O'CONNOR STILL CLAIMING THAT MFS IS THE SOLE

25  SHAREHOLDER OF CTI.  AND I APOLOGIZED TO THE COURT AND

26  SAID, IT IS REALLY NOT BLACK AND WHITE IN HIS

EXHIBIT #0: 075
22-CV-01616-BAS-DDL

118

1   DECLARATION, WHICH I ANALYZED, BUT IT IS IN A SHAREHOLDER

2   CONSENT AGREEMENT THAT HE SERVED ON CTI PROCLAIMING

3   HIMSELF TO BE THE CEO OF CTI AND REPRESENTED THAT MFS IS

4   THE SOLE SHAREHOLDER.

5          SO THAT WAS SOMETHING THAT HE SERVED ON CTI IN

6   JANUARY.  SO AS LATE AS JANUARY HE WAS CLAIMING THAT MFS

7   IS THE SOLE SHAREHOLDER OF CTI, A POSITION THAT WE CLAIM

8   IS FALSE.

9          THE COURT:  OKAY.  ALL RIGHT, MR. CATANZARITE.

10         MR. EDGERTON:  WOULD YOU LIKE TO HAVE THIS?

11         THE COURT:  NO.  IT SOUNDS REDUNDANT.

12         MR. EDGERTON:  ALL RIGHT.

13         OH, WE JUST FOUND SOMETHING THAT YOU WERE

14  LOOKING FOR.

15         THE COURT:  NAMELY?

16         MR. TJOE:  ONE OF THE PPM'S, YOUR HONOR.

17         MR. ANTWILER:  WE WILL MARK THIS AS EXHIBIT 61?

18         THE COURT:  YES.

19         MR. EDGERTON:  WHAT PAGE?

20         MR. ANTWILER:  I WILL HAND THIS TO THE COURT

21  ATTENDANT.

22         MR. CATANZARITE:  IS THERE A PAGE?

23         MR. ANTWILER:  PAGE 27.

24         THE COURT:  PRIVATE PLACEMENT MEMORANDUM.

25         MR. CATANZARITE:  WHAT IS THE DATE ON IT?

26         MR. ANTWILER:  THE DATE OF THIS MEMORANDUM IS

EXHIBIT #0: 076
22-CV-01616-BAS-DDL

119

1   OCTOBER 2ND, 2015, AND IT IS LISTED ON THE BOTTOM OF THE

2   FIRST PAGE.

3             THE COURT:  PAGE WHAT?

4             MR. ANTWILER:  27, YOUR HONOR.

5             THE COURT:  SECURITY OWNERSHIP.

6             MR. ANTWILER:  AND IT IS THAT FIRST PARAGRAPH

7   AND THE BELOW TABLE WHICH IS RELEVANT.  I CAN READ IT IF

8   YOUR HONOR LIKES.

9             THE COURT:  I DON'T NEED THAT.

10            AND WHAT DO I HAVE THAT SAYS THAT THIS IS A

11  STATEMENT FROM THE PLAINTIFFS' REPRESENTATIVES?

12            MR. ANTWILER:  WE ARE -- WE HAVE AGREEMENTS THAT

13  HAVE BEEN EXECUTED BY MR. O'CONNOR.  I AM CURRENTLY JUST

14  MAKING SURE THAT EVERY REDACTION IS MADE TO ANY SOCIAL

15  SECURITY NUMBERS FOR THE INVESTORS.

16            THE COURT:  YOU ARE GETTING THIS BACK AT THE END

17  OF THE DAY PROBABLY.

18            MR. ANTWILER:  OKAY.  SO IT IS FINE IF WE SHOW

19  THAT?

20            THE COURT:  I AM NOT PUTTING IT ON THE INTERNET

21  OR FILING IT AS A DOCUMENT FOR PUBLIC VIEWING.

22            MR. ANTWILER:  IN THAT CASE WE WILL MARK AS

23  EXHIBIT 62 A GROUP OF SIGNED SUBSCRIPTION AGREEMENTS.

24  AND IF YOU WILL LOOK THROUGH SEVERAL OF THESE PAGES, YOU

25  WILL SEE RICHARD O'CONNOR'S SIGNATURE THROUGH DOCUSIGN

26  THERE ON THE BOTTOM OF EACH ONE.

EXHIBIT #0: 077
22-CV-01616-BAS-DDL

120

1    THE COURT:  SO THIS IS VARIOUS DATES IN LATE

2    2015/EARLY 2016.  AND YOU ARE SAYING THIS IS PEOPLE

3    GETTING STOCK IN CTI?

4        MR. ANTWILER:  CORRECT, YOUR HONOR.  PURSUANT TO

5    THE SUBAGREEMENT THAT WAS EXHIBIT 61, I BELIEVE.

6        THE COURT:  OKAY.  I AM NOT SURE HOW HELPFUL

7    THIS IS BECAUSE I AM NOT INTERESTED IN DETERMINING

8    WHETHER PLAINTIFF IS THE ONLY SHAREHOLDER, BUT RATHER IF

9    THEY ARE A SHAREHOLDER.

10       MR. ANTWILER:  BUT THE ONLY REASON I POINTED IT

11   OUT, YOUR HONOR, IS THAT, AS WE SAW ON PAGE 27, IT LISTS

12   ALL SHAREHOLDERS WHO OWNED FIVE PERCENT OR MORE.  MOBILE

13   FARMING SYSTEMS, THE PLAINTIFF, IS NOT LISTED, AND WE

14   HAVE O'CONNOR WHO IS AFFILIATED WITH BOTH PLAINTIFF AND

15   CTI SIGNING OFF AND ACCEPTING THOSE.

16       THE COURT:  YOU MEAN THE FACT THAT THESE PEOPLE

17   ARE GETTING STOCK?

18       MR. ANTWILER:  NOT THAT THEY ARE GETTING STOCK,

19   BUT THAT HE IS AUTHORIZING THE PPM, WHICH DOES NOT

20   REPRESENT MFS AS A FIVE PERCENT SHAREHOLDER.

21       MR. TJOE:  IF I MAY CLARIFY?

22       THE COURT:  ARE YOU TYING EXHIBIT 62 TO EXHIBIT

23   61?  IS 62 CARRYING OUT 61?

24       MR. ANTWILER:  CORRECT, YOUR HONOR.

25       THIS IS THE SIGNATURE PAGES THAT WOULD BE TIED

26   TO EXHIBIT 61.

EXHIBIT #0: 078
22-CV-01616-BAS-DDL

121

1    THE COURT:  OKAY.  THANK YOU.  OKAY.  ENOUGH

2    FROM THE DEFENDANT.  HAVE A SEAT.

3          MR. CATANZARITE, YOUR TURN TO SHOW ME DOCUMENTS

4    THAT SUPPORT ANY NOTION OF PLAINTIFF OWNING STOCK IN THIS

5    COMPANY.

6          MR. CATANZARITE:  WELL, I GAVE YOU THE --

7    I GUESS I INTERRUPTED DEFENDANTS, BUT WE GAVE YOU A LIST

8    OF -- I PROVIDED YOU WITH A LIST OF THE DOCUMENTS WE RELY

9    UPON.

10          THE COURT:  I DON'T KNOW WHAT YOU ARE REFERRING

11   TO.

12          MR. CATANZARITE:  YOU WANT ME TO GO BACK OVER

13   THEM?  I WILL.  WE BEGAN WITH 2 --

14          THE COURT:  ARE YOU TALKING ABOUT YOUR OPENING

15   STATEMENT?

16          MR. CATANZARITE:  I AM TALKING ABOUT YOU ASKED

17   FOR WHAT ADDITIONAL EXHIBITS I HAD.

18          THE COURT:  OH, THAT.  OKAY.  NO.  WHAT I MEAN

19   IS, DO YOU HAVE ANYTHING ELSE THAT YOU HAVEN'T TOLD ME

20   ABOUT TODAY?

21          MR. CATANZARITE:  NO.

22          THE COURT:  OKAY.  ALL RIGHT.  SO BASICALLY THE

23   DOCUMENTS SUPPORT THE POSITION THAT CTI HAS TAKEN THE

24   POSITION THAT MFS DOESN'T OWN STOCK.  CTI HAS DONE THAT

25   THROUGH ITS THREE DIRECTORS AS OF 2015: PROBST, COOPER

26   AND O'CONNOR, AND THOSE ARE THE THREE DIRECTORS OF MOBILE

EXHIBIT #0: 079
22-CV-01616-BAS-DDL

122

1    FARMING SYSTEMS.

2         SO EVEN THOUGH MOBILE FARMING SYSTEMS DIDN'T PER

3    SE ITSELF ADOPT THIS POSITION THAT IT DIDN'T OWN STOCK,

4    THEN THE THREE PEOPLE DID SO, WHICH FOR LACK OF A BETTER

5    TERM CONSTITUTES AN ADMISSION AGAINST INTEREST.  IF IT

6    WASN'T TRUE, THEY WOULD BE VIOLATING THEIR FIDUCIARY

7    DUTIES UP THE YING YANG TO SIGN DOCUMENTS ON BEHALF OF

8    CTI SAYING THAT MFS IS NO LONGER A STOCKHOLDER IF, IN

9    FACT, MFS WAS A STOCKHOLDER.

10        SO YOU HAVE SOME SERIOUS EXPLAINING TO DO WHY I

11   SHOULD CONCLUDE THAT MFS IS AS OF TODAY -- WELL, AS OF

12   THE DATE OF THIS CORPORATE ELECTION A SHAREHOLDER OF CTI

13   THAT WAS DENIED ITS RIGHT TO VOTE IN THIS DIRECTOR

14   ELECTION THAT IS BEING CONTESTED.

15        MR. CATANZARITE:  YOU WANT ME TO ADDRESS THAT

16   RIGHT NOW?

17        THE COURT:  YES.

18        MR. CATANZARITE:  OKAY.  SO I THINK THAT THE

19   EVIDENCE -- THE OFFER OF PROOF WOULD BE THAT THE

20   TESTIMONY WOULD BE SUCH THAT THE CONSIDERATION PASSED,

21   TRAILERS, CONTAINER PASSED, WERE USED BY CULTIVATION

22   TECHNOLOGIES AS A WHOLLY OWNED SUBSIDIARY.  THE

23   REPRESENTATION IN THE APRIL LETTER IS THAT THEY ARE A

24   WHOLLY OWNED SUBSIDIARY AND WILL BE DISTRIBUTED AS A

25   DIVIDEND AT SOME POINT IN TIME.  OKAY?  AT SOME POINT IN

26   TIME, THAT IS EXHIBIT 5.

EXHIBIT #0: 080
22-CV-01616-BAS-DDL

123

1          SO EXHIBIT 2 CONFIRMS THE AMOUNT OF MONEY SPENT.

2     EXHIBITS -- THE FINANCIAL STATEMENTS CONFIRM THAT MORE

3     THAN 29,000 -- MORE UPWARDS OF 75,000 WAS PAID ON BEHALF

4     OF -- BY MOBILE FARMING FOR THE BENEFIT OF CTI.

5          THERE IS NO DOCUMENT THAT -- THERE IS NO

6     DOCUMENT THAT SHOWS IT IS A LOAN.  IN OTHER WORDS, CTI

7     DOES NOT SIGN A NOTE THAT IT OWES MOBILE FARMING MONEY.

8     THERE IS NO WRITTEN EVIDENCE OF A NOTE.  THERE IS NO

9     MOBILE FARMING SHAREHOLDER MEETING AUTHORIZING THE LOAN

10    OF ANY MONEY.

11         THE LOAN TO MOBILE FARMING DOES NOT APPEAR --

12    DOES NOT APPEAR ON THE FINANCIAL STATEMENTS IN ANY

13    AUTHORIZED CAPACITY, MEANING IT IS NOT AUTHENTICATED BY A

14    DOCUMENT OF ANY KIND.  IT IS JUST PUT FORWARD IN A SET OF

15    RECORDS.

16         AND THE TESTIMONY WOULD BE THAT THEY WERE TOLD,

17    THAT IS, COOPER AND O'CONNOR WERE TOLD THAT YOU HAVE TO

18    DO IT THIS WAY BECAUSE OF THE FINANCIAL CONDITION OF

19    MOBILE FARMING.  SO SIGN THESE DOCUMENTS, WHICH THEY DID.

20         THE COURT:  WHICH DOCUMENTS?

21         MR. CATANZARITE:  WELL, SOME OF THE DOCUMENTS

22    THEY ARE REFERRING TO, THE SHARE ISSUANCES AND THE LIKE

23    THAT THEY ARE RELYING UPON FOR THE NEGATIVE INFERENCE.

24         THE COURT:  SO LET'S ASSUME FOR ARGUMENT SAKE

25    THAT ALL THREE OF THESE MODES OF CONSIDERATION WERE

26    CONVEYED FROM THE PLAINTIFF TO THE DEFENDANT, THEN YOU

EXHIBIT #0: 081
22-CV-01616-BAS-DDL

124

1    HAVE GOT THIS RESOLUTION REPUDIATING THE SHAREHOLDER

2    SIGNED OFF ON BY THE THREE INDIVIDUALS IN THEIR

3    REPRESENTATIVE CAPACITY FOR CTI, YES, BUT THEY ARE THE

4    THREE PRINCIPALS OF THE PLAINTIFF, WHICH GIVES YOU AN

5    ESTOPPEL ARGUMENT AMONG OTHER LEGAL ARGUMENTS AND

6    DOCTRINES THAT COULD APPLY HERE, SO WHY WOULDN'T THAT

7    SUPERSEDE THOSE PREVIOUS FACTS?

8         MR. CATANZARITE:  WELL, BASED UPON -- WELL,

9    THERE IS A COUPLE OF PROBLEMS WITH 53.  IF YOU READ 53,

10   IN PARTICULAR PAGE 4, IT PURPORTS TO BE A RESOLUTION OF

11   DIRECTORS.  BUT IF MOBILE FARMING WAS NEVER A

12   SHAREHOLDER, THERE WERE NEVER ANY DIRECTORS BECAUSE

13   MOBILE FARMING WOULD HAVE HAD TO VOTE FOR THE DIRECTORS.

14        IN OTHER WORDS, IF YOU LOOK AT EXHIBIT 4,

15   EXHIBIT 4 HAS MOBILE FARMING ADOPTING THE ACTS AND

16   RESOLUTIONS AS THE SOLE SHAREHOLDER OF CTI.  BUT IF AS

17   THEY SAY MOBILE FARMING NEVER PAID, NEVER WAS ENTITLED TO

18   ANY SHARES, NEVER WAS ISSUED ANY SHARES, THEN THERE

19   WOULDN'T BE THAT -- THAT MEETING WOULD BECOME A NULLITY.

20   AND THE ONLY PERSON THAT COULD ACT ON BEHALF OF THE

21   COMPANY IN THAT DEFAULT WOULD BE THE INCORPORATOR WHO

22   RESIGNED ON THE VERY SAME DAY.

23        AND SO THE INCORPORATOR, MR. ERIC WILLENS, DOES

24   NOT SIGN EXHIBIT 53.  IT PURPORTS TO BE SIGNED BY PEOPLE

25   WHO COULD ONLY HAVE BEEN ELECTED AS DIRECTORS BY MOBILE

26   FARMING, AND MOBILE FARMING THEY CLAIM IS NOT A

EXHIBIT #0: 082
22-CV-01616-BAS-DDL

125

```
1   SHAREHOLDER.  SO IT CAN'T BE -- THEY CAN'T RELY UPON 53
2   IF, IN FACT, THE DIRECTORS ARE NOT AUTHORIZED TO ACT ON
3   BEHALF OF THE COMPANY BECAUSE THEY WEREN'T DULY ELECTED
4   BECAUSE THEY RECANT THAT MOBILE FARMING IS NOT A
5   SHAREHOLDER.
6           IN OTHER WORDS, THEY DON'T GO BACK AND HAVE
7   WILLENS CONDUCT A NEW MEETING AND SAY THAT MOBILE FARMING
8   DIDN'T PASS THE CONSIDERATION.  I WITHDRAW MY
9   RESIGNATION.  I NOW ACT AS INCORPORATOR AND I NOW START
10  ANOTHER MEETING AND ALLOW YOU ALL TO PURCHASE SHARES.
11          THEY JUST HAVE THIS RESOLUTION THAT PURPORTS TO
12  DO SOMETHING THAT THEY ARE NOT -- THEY DON'T HAVE
13  CAPACITY TO DO.
14          THE COURT:  WHEN WAS THIS ELECTION OF DIRECTORS
15  THAT YOU ARE CHALLENGING?
16          MR. CATANZARITE:  WELL, THE LATER -- WELL, THE
17  SUBSEQUENT ACTS BY THE DIRECTORS OF THE COMPANY, BECAUSE
18  IT HAD NO SHAREHOLDERS AS OF THIS POINT OF TIME, IT COULD
19  NOT HAVE HAD DIRECTORS.
20          THE COURT:  HOW DO YOU ADDRESS THE LACHES
21  DEFENSE ARGUMENT THAT YOU WAITED TOO LONG IN THIS
22  EQUITABLE PROCEEDING TO MAKE THIS CLAIM?
23          MR. CATANZARITE:  WELL, I THINK -- LACHES IS AN
24  EQUITABLE ARGUMENT.  THE COUNTERPART INS UNCLEAN HANDS
25  THAT THE SHARE --
26          THE COURT:  I DIDN'T ASK YOU ABOUT UNCLEAN
```

EXHIBIT #0: 083
22-CV-01616-BAS-DDL

126

1    HANDS.  I ASKED YOU ABOUT LACHES, THE DELAY IN BRINGING

2    THE PROCEEDING.

3          MR. CATANZARITE:  WELL, I WOULD SAY THAT THE

4    KNOWLEDGE THAT THE SHAREHOLDERS OF MOBILE FARMING HAD NOT

5    RECEIVED THEIR 47 PERCENT OF THE INITIAL ISSUANCE OF THE

6    28,000,000 SHARES, THE LACK OF THAT KNOWLEDGE WAS NOT

7    DISCOVERED UNTIL THE LAWSUITS WERE INITIATED.

8          THE COURT:  YOU ARE SAYING THE THREE FOUNDERS

9    DIDN'T KNOW THAT MFS NEVER GOT STOCK CERTIFICATES?

10         MR. CATANZARITE:  I AM SAYING THREE FOUNDERS

11   DIDN'T KNOW THAT THE WAY THE ATTORNEYS ENDED UP ISSUING

12   THE SHARES WAS NOT IN ACCORDANCE WITH THE REPRESENTATION

13   MADE IN THE MAY 5TH LETTER TO THE SHAREHOLDERS THAT THEY

14   WOULD END UP WITH 47 PERCENT OF THOSE INITIAL SHARES.

15         THE COURT:  WHO IS "THEY"?

16         MR. CATANZARITE:  THEY MEANING MR. O'CONNOR AND

17   MR. PROBST IN WRITING THE LETTER TO THE SHAREHOLDERS.

18         THE COURT:  I DON'T CARE ABOUT THEIR PERSONAL

19   OWNERSHIP OF SHARES.  I AM ONLY REFERRING TO THE MFS

20   OWNERSHIP OF SHARES.

21         MR. CATANZARITE:  MFS, PURSUANT TO THE LETTER

22   THAT WAS ANNOUNCED TO THE SHAREHOLDERS AS STATING THAT

23   MOBILE FARMING OWNED CTI AS A SUBSIDIARY, PROMISED THAT

24   THE SHAREHOLDERS WOULD RECEIVE ON A SPINOUT OR STOCK

25   DIVIDEND WHAT AMOUNTS TO MATHEMATICALLY 13,000,000

26   SHARES; 47 PERCENT OF THE COMPANY.  IT WAS NOT DISCOVERED

EXHIBIT #0: 084
22-CV-01616-BAS-DDL

127

1    UNTIL MUCH LATER, 2018, THAT THE SHAREHOLDERS OF MOBILE

2    FARMING IN RECEIPT OF THAT STOCK DIVIDEND DID NOT END UP

3    WITH THE EQUIVALENT OF 13,000,000 SHARES.  THEY ENDED UP

4    WITH ONLY 11 PERCENT OR 4.5 MILLION SHARES.  THAT'S THE

5    DISPUTE.  THAT WAS DISCOVERED MUCH LATER.  BECAUSE THE

6    SHAREHOLDERS DIDN'T HAVE A SHARE COUNT.

7         THE MOBILE FARMING SHAREHOLDERS DIDN'T HAVE

8    KNOWLEDGE, THE NON-INSIDERS DID NOT HAVE KNOWLEDGE OF THE

9    SHARE COUNT.  SO LACHES WOULDN'T APPLY IF THERE IS NO

10   KNOWLEDGE ATTRIBUTABLE TO THESE MATERIAL FACTS.

11        THE COURT:  OKAY.  WE ARE GOING TO TAKE OUR

12   AFTERNOON RECESS UNTIL 3:15.

13        (RECESS.)

14        THE COURT:  WE ARE BACK.  NOW THAT I HAVE HAD

15   TIME TO DECOMPRESS WITH THE AFTERNOON RECESS,

16   MR. CATANZARITE, EVERY FIBER OF MY BEING SAYS THAT THE

17   FACTS ARE OVERWHELMING AGAINST YOUR POSITION IN THIS

18   CASE.  SO UNLESS YOU CAN CONVINCE ME OTHERWISE, I AM

19   PREPARED TO RULE THAT THIS ELECTION WAS VALID.

20        MR. CATANZARITE:  WELL, THE ONLY THING I CAN SAY

21   IS THAT THE SOLE DOCUMENT UPON WHICH THEY RELY IS EXHIBIT

22   53, WHICH IS WHAT YOU SAY, AND I UNDERSTAND THE POSITION

23   IS AN ADMISSION AGAINST INTEREST AGAINST MOBILE FARMING

24   BECAUSE IT IS SIGNED BY THREE PERSONS WHO WERE ALSO

25   DIRECTORS AND IN CONTROL OF MOBILE FARMING.

26        BUT AT THE SAME TIME THE EVIDENCE AT TRIAL WOULD

EXHIBIT #0: 085
22-CV-01616-BAS-DDL

128

1    BE THAT ALL OF THE CONSIDERATION PASSED, AND THE TRAILER

2    PASSED, ALL THE CONSIDERATION -- CONSIDERATION OF MONEY

3    PASSED, IN ALL MEANS PASSED, AND THAT THE SHARES WERE

4    ISSUED AND SOLD.

5          THE FACT THAT THERE IS NO CERTIFICATE DOES NOT

6    SOLVE -- DOES NOT CURE OR ERASE THAT FACT.

7          WHEN THEY SIGN ON JUNE 15TH OF 2015 THAT THE

8    CONSIDERATION DID NOT PASS, THAT IS BASED UPON THE ADVICE

9    OF COUNSEL, AND IT IS FLAT OUT WRONG, AND IT IS AGAINST

10   THE INTEREST OF MOBILE FARMING TO HAVE SIGNED IF, IN

11   FACT, MOBILE FARMING DID NOT RECEIVE THE SHARES IT WAS

12   ENTITLED TO.

13         SO I THINK THAT WHEN YOU SAY THAT IT IS AN

14   ADMISSION, IT IS NOT -- AN ADMISSION AGAINST INTEREST

15   SIGNED BY THE LAWYER WHO TELLS THEM TO SIGN IT BECAUSE

16   THIS IS THE WAY IT MUST BE DONE, THAT TYPE OF

17   EXPLANATION, IF OFFERED, AND BELIEVED BY THE COURT, AND

18   COUPLED WITH THE EVIDENCE THAT THE CONSIDERATION HAD, IN

19   FACT, PASSED SHOULD ALONE BE SUFFICIENT, YOUR HONOR, TO

20   AWARD THE 28,000,000 SHARES TO MOBILE FARMING.

21         THE COURT:  THANK YOU.

22         SO, YOU KNOW, I NOTICED IN THE OPENING STATEMENT

23   YESTERDAY MR. EDGERTON SAID THAT PLAINTIFFS WERE RELYING

24   ON A CASE FROM 1880 SOMETHING.  BUT WHEN I WAS LOOKING AT

25   THE CASE AT THE STATUTORY ANNOTATIONS UNDER 709, THERE'S

26   A CASE FROM 2009 CALLED HAAH, H-A-A-H, VERSUS KIM, 175

EXHIBIT #0: 086
22-CV-01616-BAS-DDL

129

1    CAL.APP.4TH, 45, THAT HOLDS THAT STANDING REGARDING A 709

2    CLAIM INCLUDES SOMEONE WHO HAD ENTERED INTO AN AGREEMENT

3    TO TAKE SHARES IN A CORPORATION, BUT WHO HAD NOT BEEN

4    ISSUED THOSE SHARES.

5          SO I THINK THAT IS WHAT THE PLAINTIFF IS

6    CLAIMING HERE.  BUT WE HAVE REPUDIATION OF THE AGREEMENT

7    BY PEOPLE WHO WERE THE SAME PRINCIPALS IN THE PLAINTIFF.

8    WE HAVE ACTIONS -- REPEATED ACTIONS TAKEN SUBSEQUENTLY

9    CONSISTENT WITH THE NOTION THAT PLAINTIFF WAS NOT A

10   STOCKHOLDER.  THE DELAY IN BRINGING THIS ACTION IS

11   CONSISTENT WITH THAT CONCLUSION, THAT PLAINTIFF HAS BEEN

12   OF THE VIEW THAT THEY ARE NOT A SHAREHOLDER.

13         SO THE COURT CONCLUDES THAT THE CHALLENGE

14   DIRECTOR ELECTION IS DENIED, AND THE COURT CONCLUDES THAT

15   PLAINTIFF IS NOT A STOCKHOLDER IN CTI.

16         AND DURING THE BREAK I LOOKED AT THE PRELIMINARY

17   INJUNCTION, AND IT IS ALL SEEKING TO ENJOIN THINGS UNTIL

18   THE 709 HEARING HAS BEEN HELD, WHICH IT NOW HAS BEEN.  SO

19   THE PRELIMINARY INJUNCTION IS DENIED, AND THE TRO IS

20   DISSOLVED.

21         SO I AM NOT SURE WHAT THAT DOES FOR THE CASE AS

22   A WHOLE, BUT, YOU KNOW, YOU CAN CONTINUE TO LITIGATE

23   WHATEVER IS REMAINING IN THE CASE.

24         THERE ARE ONE OR MORE RELATED CASES, WHICH I

25   GUESS AT LEAST ARE SET FOR STATUS CONFERENCES OR CMC'S

26   ALONG THE WAY, BUT THAT IS THE RULING FOR TODAY.

EXHIBIT #0: 087
22-CV-01616-BAS-DDL

130

1       LET'S HAVE AN ORDER PREPARED BY MR. EDGERTON FOR

2   THE COURT.

3       MR. EDGERTON:  WE SHALL PREPARE IT.

4       THE COURT:  AND, YOU KNOW, THE COURT WILL WAIT

5   FOR OBJECTIONS WITHIN THE STATUTORY TIME FROM

6   MR. CATANZARITE OR ANYBODY ELSE TECHNICALLY WHO CAN

7   OBJECT.

8       AND LET'S RETURN THE EXHIBITS, JOSE, WITH THEIR

9   SOCIAL SECURITY NUMBERS ON HERE, 58 THROUGH 62, AND BOTH

10  OF THESE NOTEBOOKS FROM THE PLAINTIFF.

11      IS THIS A COURTESY -- I MEAN, THIS GOES BACK TO

12  YOU.  I AM NOT SURE IF THIS IS LIKE A COURTESY COPY.

13      MR. EDGERTON:  IS IT MINE?  I THINK THAT WAS A

14  WITNESS COPY.

15      MR. CATANZARITE:  THERE WAS A BENCH BOOK AND A

16  WITNESS BOOK.

17      THE COURT:  OH, THERE IS SOMETHING, THAT THING

18  ON THE WITNESS STAND.

19      COURTROOM ATTENDANT:  YES, THAT IS THE WITNESS

20  BOOK.

21      THE COURT:  SO THEY CAN HAVE THIS BACK, TOO.

22      OKAY, THANK YOU.

23      MR. CATANZARITE:  THANK YOU.

24      MR. EDGERTON:  THANK YOU, YOUR HONOR.

25      MR. TJOE:  THANK YOU, YOUR HONOR.

26      (ADJOURNMENT TAKEN.)

EXHIBIT #0: 088
22-CV-01616-BAS-DDL

```
 1    STATE OF CALIFORNIA )
 2                       )  SS.
 3    COUNTY OF ORANGE   )
 4
 5                    REPORTER'S CERTIFICATE
 6
 7
 8          I, CHERI A. VIOLETTE, CSR NO. 3584, COURT REPORTER
 9    PRO TEMPORE, IN AND FOR THE SUPERIOR COURT OF THE STATE OF
10    CALIFORNIA, COUNTY OF ORANGE, DO HEREBY CERTIFY THAT THE
11    FOREGOING TRANSCRIPT CONSISTING OF PAGES 89 THROUGH 130 IS A
12    TRUE AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES IN THE
13    ABOVE-ENTITLED CASE.
14
15          DATED THIS 2ND DAY OF MAY,2019.
16
17
18
19
20
21
22
23
24
25    CHERI A. VIOLETTE, CSR NO. 3584
26    OFFICIAL COURT REPORTER PRO TEMPORE
```

EXHIBIT #0: 089
22-CV-01616-BAS-DDL

## A

**ABOVE-ENTITLED** 131:13
**ABSENT** 102:2 108:25
**ABSORBING** 106:16
**ACCEPTING** 120:15
**ACCOUNTING** 93:2
**ACCRUED** 100:6
**ACCURATE** 112:4,6 112:9,11
**ACKNOWLEDGE** 106:5
**ACKNOWLEDGED** 112:26
**ACQUIRED** 115:20
**ACT** 106:4 124:20 125:2,9
**ACTION** 90:5 100:21 129:10
**ACTIONS** 105:8 129:8,8
**ACTS** 92:4,13 93:24 98:25 110:15 117:10 124:15 125:17
**ADD** 106:18
**ADDITIONAL** 96:15 116:14 121:17
**ADDRESS** 101:21 122:15 125:20
**ADDRESSED** 115:3
**ADJOURNMENT** 130:26
**ADMISSION** 112:26 122:5 127:23 128:14 128:14
**ADMISSIONS** 112:19
**ADMITTED** 114:20
**ADOPT** 122:3
**ADOPTING** 124:15
**ADVANCED** 98:3
**ADVERSE** 112:6
**ADVICE** 128:8
**AFFILIATED** 120:14
**AFTERNOON** 89:2,5 89:6 92:2 127:12,15

**AGENT** 107:18 108:21
**AGREE** 93:7 105:14 110:19
**AGREED** 113:22
**AGREEMENT** 94:16 100:19 102:26 103:5 103:25 118:2 129:2 129:6
**AGREEMENTS** 3:22 106:22 113:12 116:26 117:1 119:12 119:23
**AGREES** 105:12
**AL** 1:6
**ALLOW** 125:10
**AMENDED** 110:15 117:3,10
**AMOUNT** 123:1
**AMOUNTS** 126:25
**AMY** 105:10
**ANA** 89:1
**ANALYZED** 118:1
**ANNOTATIONS** 128:25
**ANNOUNCED** 126:22
**ANSWER** 97:22 102:12 108:19,21
**ANSWERED** 96:14 108:16
**ANSWERING** 108:20
**ANTICIPATED** 100:19
**ANTICIPATION** 99:1
**ANTWILER** 1:24 89:14,14 94:19,22 102:12 103:16,23 104:12,14,16 107:22 108:4,9,14 109:9 110:13,17 111:4 113:4,11 115:14,24 116:6,23 117:12,15 118:17,20,23,26 119:4,6,12,18,22

120:4,10,18,24
**ANYBODY** 130:6
**APOLOGIES** 114:23
**APOLOGIZED** 117:25
**APPEAR** 123:11,12
**APPEARANCES** 1:16 89:8
**APPLY** 124:6 127:9
**APPOINTMENT** 90:4
**APPROPRIATE** 117:22
**APRIL** 92:18 99:21 122:23
**ARGUED** 112:22
**ARGUING** 117:4
**ARGUMENT** 113:16 123:24 124:5 125:21 125:24
**ARGUMENTS** 124:5
**AROSE** 112:13
**ASKED** 93:5 108:20 121:16 126:1
**ASSERTION** 107:8
**ASSESS** 91:6
**ASSET** 115:9
**ASSETS** 97:23 98:19 99:15 115:5
**ASSOCIATION** 98:21
**ASSUME** 123:24
**ATTACHED** 91:10 92:7,8 102:20 114:11,13
**ATTACHES** 109:10
**ATTENDANT** 118:21 130:19
**ATTORNEYS** 126:11
**ATTRIBUTABLE** 127:10
**AUTHENTICATED** 123:13
**AUTHORITY** 110:7
**AUTHORIZE** 95:23
**AUTHORIZED** 109:21 115:17

123:13 125:2
**AUTHORIZING** 120:19 123:9
**AVAILABLE** 116:9
**AWARD** 128:20
**AWESOME** 93:4

## B

**B** 3:1 91:17 103:9
**BACK** 89:7 119:16 121:12 125:6 127:14 130:11,21
**BACKGROUND** 105:22
**BACKUP** 102:5 116:21
**BACKWARD** 113:9
**BASED** 124:8 128:8
**BASICALLY** 91:12 121:22
**BATCH** 107:13
**BECK** 1:22 89:12
**BEGAN** 121:13
**BEGINNING** 104:8 115:1,21
**BEHALF** 105:10 122:7 123:3 124:20 125:3
**BELIEVE** 99:20 109:15 115:19 120:5
**BELIEVED** 110:5 128:17
**BENCH** 92:21 130:15
**BENEFIT** 123:4
**BENTLEY** 1:20
**BERNHEIMER** 1:22 89:12
**BEST** 95:26
**BETTER** 122:4
**BIGGER** 111:8
**BILL** 97:19
**BINDER** 111:4 114:8
**BLACK** 117:26
**BLOWN-UP** 111:5 111:14
**BLOWUP** 111:10
**BOARD** 95:26 105:20

EXHIBIT #0: 090
22-CV-01616-BAS-DDL

**BOOK** 92:21,26 93:3
 95:2,3,4,9 101:9,12
 111:13 130:15,16,20
**BOTTOM** 95:7
 109:17 115:2 119:1
 119:26
**BOUND** 108:9
**BREAK** 116:9 129:16
**BRIEF** 91:20 105:6
 106:20 113:16
**BRIEFS** 91:13
**BRING** 92:9
**BRINGING** 126:1
 129:10
**B.K** 115:5

---
### C
**C** 103:9
**CALIFORNIA** 1:1,9
 89:1 131:1,10
**CALL** 101:17
**CALLED** 104:8
 128:26
**CALLING** 100:14,15
 114:24
**CAL.APP.4TH** 129:1
**CAPACITY** 123:13
 124:3 125:13
**CAPITALIZE** 99:14
**CARE** 102:21 126:18
**CARRYING** 120:23
**CASE** 89:26 119:22
 127:18 128:24,25,26
 129:21,23 131:13
**CASES** 129:24
**CASH** 94:17
**CATANZARITE**
 1:18,18 89:18,18
 92:20 93:12 95:1,5,8
 95:12 96:16,19,21
 96:23 97:1,7,12,16
 97:18,21,24 98:2,5,7
 98:9,20,26 99:3,5,7
 99:9,14,20,24
 100:11,14 101:18
 104:13,15 106:3
 111:3,5,7,11,14,17

114:7,9,12,15,17
 117:14 118:9,22,25
 121:3,6,12,16,21
 122:15,18 123:21
 124:8 125:16,23
 126:3,10,16,21
 127:16,20 130:6,15
 130:23
**CENTER** 1:2
**CEO** 101:24 118:3
**CERTAIN** 89:10
 90:13 93:16 99:15
 105:3
**CERTIFICATE** 96:8
 104:21 110:7 128:5
 131:5
**CERTIFICATES**
 110:14 126:9
**CERTIFY** 131:10
**CHALLENGE** 90:16
 129:13
**CHALLENGING**
 125:15
**CHANGED** 90:22
**CHARGE** 105:13,16
**CHECKLIST** 104:17
**CHERI** 1:25 131:8,25
**CIVIL** 1:2
**CLAIM** 96:4 118:7
 124:26 125:22 129:2
**CLAIMING** 117:24
 118:6 129:6
**CLAIMS** 90:6
**CLARIFY** 120:21
**CLAUSE** 94:5
**CLAUSES** 95:17
**CLERK** 103:2 111:1
**CLIENT** 115:2
**CLIENTS** 100:26
**CLOSE** 115:4
**CMC'S** 129:25
**CODE** 89:22,24 90:3
**COLUMN** 97:8 100:4
**COME** 116:20
**COMES** 105:20
**COMING** 117:10
**COMPANIES** 106:8

**COMPANY** 90:14
 115:5 121:5 124:21
 125:3,17 126:26
**COMPLAIN** 113:17
**COMPLETE** 103:7
 103:17 108:10
**COMPLETED** 93:13
**COMPLEX** 1:2
**COMPLIANCE** 99:2
**CONCLUDE** 122:11
**CONCLUDES**
 129:13,14
**CONCLUSION**
 129:11
**CONCURRENCE**
 99:20
**CONDITION** 123:18
**CONDUCT** 125:7
**CONFER** 93:6
 100:26
**CONFERENCES**
 129:25
**CONFIRM** 107:3
 117:13 123:2
**CONFIRMS** 96:12
 100:8 123:1
**CONFUSION** 110:5
**CONJUNCTION**
 117:3
**CONSENT** 95:21
 118:2
**CONSENTS** 101:25
**CONSIDER** 89:26
**CONSIDERATION**
 94:13,16 95:25
 96:13,17 98:15
 100:11 122:20
 123:25 125:8 128:1
 128:2,2,8,18
**CONSIDERED** 93:18
**CONSISTENT** 105:1
 129:9,11
**CONSISTING**
 131:11
**CONSPICUOUSLY**
 108:25
**CONSTITUTES**

122:5
**CONSULT** 100:25
**CONTAINER** 94:17
 99:13,17 122:21
**CONTENDED** 91:16
**CONTENDING**
 91:21
**CONTENTION** 96:7
 115:20
**CONTESTED** 122:14
**CONTINUE** 129:22
**CONTRIBUTED**
 99:15
**CONTROL** 91:1
 127:25
**CONTROLLED**
 91:22
**CONTROLLING**
 106:8
**CONVENIENT**
 92:21 95:4
**CONVEYED** 123:26
**CONVINCE** 127:18
**COOPER** 3:15
 105:10 109:14 110:4
 110:8,10 114:1,1
 115:4 121:25 123:17
**COPIED** 92:24
**COPIES** 104:20
**COPY** 110:15 130:12
 130:14
**CORPORATE**
 122:12
**CORPORATION** 1:9
 1:18 90:5 105:9
 129:3
**CORPORATIONS**
 89:21
**CORRECT** 93:25,26
 94:8,11 97:7,23
 104:16,24,26 106:1
 106:24 108:15 109:3
 109:4 110:17 112:1
 115:10,23 120:4,24
 131:12
**CORROBORATING**
 102:6

3

**COUNSEL** 1:16 89:6
100:26 128:9
**COUNT** 127:6,9
**COUNTERPART**
125:24
**COUNTY** 1:2 131:3
131:10
**COUPLE** 124:9
**COUPLED** 128:18
**COURSE** 93:11
**COURT** 1:1,26 89:4,5
89:7,9,20 90:8,24
91:3,5 92:5,17,23
93:4,9,15,18,21 94:1
94:6,9,12,18,21,23
95:11,14,18,21
96:14,18,20,22,25
97:5,10,14,17,19,22
98:1,4,6,8,17,24
99:1,4,6,8,12,18,23
100:9,13,17,24
101:6,8,11,13,16,21
102:5,8,10,11,11,13
102:14,15,17,19,26
103:3,11,14,19,22
104:2,10,17,23,25
105:1,5,23,26 106:6
106:9,12,14,20,25
107:1,10,12,15,17
107:26 108:2,6,12
108:16,22 109:1,5
109:19,22,25 110:3
110:12,16,18 111:1
111:6,21 112:2,8,14
112:18 113:2,7,9,15
114:3,18,24 115:8
115:13,19 116:2,10
117:10,16,21,25
118:9,11,15,18,20
118:24 119:3,5,9,16
119:20 120:1,6,16
120:22 121:1,10,14
121:18,22 122:17
123:20,24 125:14,20
125:26 126:8,15,18
127:11,14 128:17,21
129:13,14 130:2,4,4

130:17,21 131:8,9
131:26
**COURTESY** 130:11
130:12
**COURTROOM**
130:19
**COURTS** 90:26
**CROSS** 2:4,8
**CSR** 1:25 131:8,25
**CTI** 89:11 90:20
91:21,22 93:24
95:22 97:13,25
99:11,16,26 105:11
106:22 107:18,19
110:1,20 111:21
115:6,9,16 116:13
116:16 117:25 118:2
118:3,5,7 120:3,15
121:23,24 122:8,12
123:4,6 124:3,16
126:23 129:15
**CULTIVATION** 1:9
100:3,3 122:21
**CULTIVATORS**
98:21
**CUMULATIVE**
102:4 107:9 116:3
**CURE** 128:6
**CURRENT** 115:24
**CURRENTLY** 117:8
119:13
**CU-BT-CJC** 1:6
**CX105** 1:3

---

**D**

**D** 92:15 103:9 107:2
**DATE** 92:17 95:11
99:18 109:24 110:2
114:9 118:25,26
122:12
**DATED** 92:4 94:9
104:17 114:25
131:15
**DATES** 111:24 120:1
**DAVID** 92:15
**DAY** 119:17 124:22
131:15

**DAYS** 89:23 98:24
**DECIDE** 91:7,18
**DECIDED** 90:13
**DECLARATION**
92:9,16,23 96:3
102:20,21 103:2
105:20 110:20,23
114:14 117:23 118:1
**DECLARATIONS**
91:11
**DECLARES** 102:22
109:15
**DECOMPRESS**
127:15
**DEEMED** 93:17
**DEEMS** 95:26
**DEFAULT** 124:21
**DEFENDANT** 1:8,19
112:22 121:2 123:26
**DEFENDANTS** 1:7
1:22 89:11,15 90:12
121:7
**DEFENDANT'S**
91:19 97:6
**DEFENSE** 2:8 100:26
105:6 125:21
**DELAY** 126:1 129:10
**DENIED** 90:7,8
122:13 129:14,19
**DEPARTMENT** 1:3
**DETERMINE** 90:4
**DETERMINING**
120:7
**DIRECT** 2:4,8
**DIRECTLY** 106:22
**DIRECTOR** 90:5,9
122:13 129:14
**DIRECTORS** 89:11
90:10 95:22 121:25
121:26 124:11,12,13
124:25 125:2,14,17
125:19 127:25
**DISAGREES** 115:11
**DISCOVERED** 126:7
126:26 127:5
**DISCUSSED** 108:10
**DISCUSSING** 92:26

**DISPUTE** 112:13
127:5
**DISPUTED** 109:6
**DISSOLVED** 129:20
**DISTRIBUTED**
122:24
**DIVIDEND** 122:25
126:25 127:2
**DOCTRINES** 124:6
**DOCUMENT** 3:8,10
91:21,26 92:22,26
96:6,15 102:23
104:4,5 105:2,19
106:19,25 107:20
108:23 113:5 116:22
117:20 119:21 123:5
123:6,14 127:21
**DOCUMENTARY**
104:2 113:25 117:7
**DOCUMENTATI...**
91:4,5
**DOCUMENTS** 91:15
92:6 93:2,11,16
95:19 97:17 100:23
101:25 103:7 107:5
117:18 121:3,8,23
122:7 123:19,20,21
**DOCUSIGN** 119:25
**DOING** 93:10
**DOMESTIC** 90:5
**DULY** 125:3
**DUTIES** 122:7

---

**E**

**E** 3:1 92:12 103:5,7,9
103:16
**EARLIER** 93:5
**EASIER** 91:10 95:5
**EASY** 93:22 105:17
**EDGERTON** 1:23
89:10,10 91:24 92:2
92:8,12,14,25 93:8
93:10,19,26 94:4,8
94:11,15 95:3,6,9,13
95:15,20 96:8
100:23,25 101:2,7
101:10,12,15,20

EXHIBIT #0: 092
22-CV-01616-BAS-DDL

102:17,25 103:1,15
103:21,26 105:17,25
106:1,7,10,13,18,24
106:26 107:9,11,14
107:16,24 108:1,18
108:23 109:4,8
111:9,12,16,18
112:1,5,10,16,25
116:19 117:20,22
118:10,12,19 128:23
130:1,3,13,24
**EFFECTIVELY**
109:15 110:10
**EFFICIENT** 91:3
**EIGHT** 104:23
**EINHORN** 1:22
89:13
**ELECTED** 90:10
124:25 125:3
**ELECTION** 90:4,9
90:22,23 122:12,14
125:14 127:19
129:14
**EMBRACED** 112:23
**ENDED** 126:11 127:3
**ENJOIN** 129:17
**ENSUING** 101:3
**ENTERED** 129:2
**ENTITLED** 124:17
128:12
**ENTRY** 97:8
**EQUITABLE** 125:22
125:24
**EQUIVALENT** 127:3
**ERASE** 128:6
**ERIC** 124:23
**ESQ** 1:18,20,23,24
**ESTOPPEL** 124:5
**ET** 1:6
**EVIDENCE** 90:24
91:2 93:17 96:16
100:15 101:22 102:4
102:6 105:15 113:25
117:7 122:19 123:8
127:26 128:18
**EXACTLY** 91:17
92:12 112:8 114:22

**EXCHANGE** 3:14
113:25
**EXCUSE** 114:1
**EXECUTED** 112:25
115:16,17 119:13
**EXHIBIT** 91:9 92:11
92:15,22 93:24
94:13,20 96:9,9,11
96:12,24 97:1,2,26
98:5,6,7,9,16,20,21
99:7,9,20,24,25
100:2,2 101:8,16
102:8,18,20,25
103:12 107:6,25
108:13 109:2,9,10
109:12 110:13,21,22
111:2 112:7 114:8
114:13,20 117:11
118:17 119:23 120:5
120:22,22,26 122:26
123:1 124:14,15,24
127:21
**EXHIBITS** 3:3,6 91:9
91:12 92:24 93:22
101:11,22 121:17
123:2 130:8
**EXPEDITED** 89:24
**EXPENSES** 97:25
98:13
**EXPLAINING**
122:10
**EXPLANATION**
128:17
**EXTENT** 90:1,12,15
111:19
**EXTRA** 101:19
**EXTRINSIC** 101:22
**EXTRINSICALLY**
116:19
**E-MAIL** 3:14 113:25
114:7 115:11
**E-MAILS** 114:24

**F**

F 107:20
**FACE** 113:9
**FACT** 102:6,18 110:1

113:22 115:21
120:16 122:9 125:2
128:5,6,11,19
**FACTS** 124:7 127:10
127:17
**FAILED** 95:24
**FALSE** 96:3 118:8
**FAMILY** 110:26
**FAR** 100:23 113:23
**FARMING** 1:5 89:7
90:8,20 99:11,15,22
100:1 113:26 120:13
122:1,2 123:4,7,9,11
123:19 124:11,13,15
124:17,26,26 125:4
125:7 126:4,23
127:2,7,23,25
128:10,11,20
**FEBRUARY** 98:10
**FEEL** 90:12,15
112:14
**FEES** 98:10
**FIBER** 127:16
**FIDUCIARY** 122:6
**FILED** 90:6 92:18
**FILING** 119:21
**FILINGS** 107:2
**FINANCIAL** 96:23
97:6 100:7 123:2,12
123:18
**FINANCING** 116:15
**FIND** 109:11 113:2
117:8
**FINE** 93:10 104:4
107:12 111:18
112:23 114:6 119:18
**FINISH** 106:14
**FIRST** 91:20 95:19
97:1 98:13 104:9
110:14 111:22 116:9
119:2,6
**FIVE** 89:23 90:10
115:15,25,26 116:4
120:12,20
**FLAT** 128:9
**FMS** 95:24
**FOLLOW** 115:10

**FOLLOWING** 89:3
103:6
**FOOT** 99:12,13,17
**FOREGOING**
131:11
**FORMALLY** 106:4
**FORMATION** 99:10
**FORTH** 111:24
**FORWARD** 123:14
**FOUND** 94:21 118:13
**FOUNDERS** 96:1
103:24 126:8,10
**FOUR** 98:13
**FRIENDS** 110:25
**FRONT** 116:8

**G**

**GATHER** 116:7
**GENERAL** 89:26
**GENTLEMEN**
116:21
**GETTING** 119:16
120:3,17,18
**GIVE** 102:5 103:1
108:10 111:1
**GIVEN** 100:13 107:6
**GIVES** 124:4
**GO** 91:13 93:22
113:13,23 121:12
125:6
**GOAL** 106:14
**GOES** 101:24 105:18
130:11
**GOING** 89:23,25
90:24 91:11,13
105:11 106:15,20
116:20 127:11
**GOOD** 89:5,6 92:2
108:19 110:23
**GREG** 107:2
**GROUP** 3:21 119:23
**GROW** 115:6
**GUESS** 94:3 121:7
129:25
**GUIDE** 91:12
**GUYS** 115:4

EXHIBIT #0: 093
22-CV-01616-BAS-DDL

EXHIBIT 4

Attempted Extortion by
Threatening Letter Cal.
Pen. Cod. 523

Wire Fraud

EXHIBIT #0: 101
22-CV-01616-BAS-DDL

# CATANZARITE LAW CORPORATION
## ATTORNEYS & COUNSELORS AT LAW

KENNETH J. CATANZARITE
ATTORNEY AT LAW

DIRECT DIAL:
(714) 678-2100

2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
(714) 520-5544
FACSIMILE: (714) 520-0680

E-MAIL ADDRESS:
KCATANZARITE@CATANZARITE.COM

DIRECT FAX:
(714) 399-0577

January 25, 2019

**Via U.S. Mail & Email:**
Samuel Y. Egerton, III
Jonnny L. Antwiler
O'HAGAN MEYER, LLC
4695 MacArthur Court, Ste. 210
Newport Beach, CA 92660
sedgerton@ohaganmeyer.com
jantwiler@ohaganmeyer.com

Ken Watnick
Anderson, McPharlin & Conners
707 Wilshire Blvd, Suite 4000
Los Angeles, California 90017-3623
kdw@amclaw.com

Stephen J. Erigero, Esq.
Ivan L. Tjoe, Esq.
Alan J. Hart, Esq.
Ropers Majeski Kohn & Bentley PC
445 South Figueroa St., Ste 3000
Los Angeles, CA 90071-1608
Facsimile: (213) 312-2001
Email: stephen.erigero@rmkb.com
Email: ivan.tjoe@rmkb.com
Email: alan.hart@rmkb.com

> Re:  *Denise Pinkerton v. Cultivation Technologies, Inc., et al.,* Case No. 30-2018-01018922: Meet & Confer Re CTI's Discovery Responses.
>
> **Notice by Mobile Farming Systems, Inc. ("MFS") as sole shareholder of Cultivation Technologies, Inc. ("CTI") of Actions**
>
> **Notice of MFS Shareholders that Board of Directors is Removed**

Counsel,

I write this letter to provide notice of the enclosed actions. We would like to immediately take control of the assets and operations of CTI for the benefit of the sole shareholder MFS. We have confirmation now that the share issuance on March 30, 2015 was in fact fully paid and that the shares were issued and due to MFS which is therefore the sole shareholder.

MFS will now assert all claims directly not derivatively and this firm will serve as counsel. An amended complaint is being prepared and will be circulated for possible stipulation or motion if necessary.

We would like to avoid any unnecessary disruption of corporate activity and therefore notify you that we will defer notice to all third parties until Monday January 28 in the hope that your clients will handle the transition in the interests of the shareholders. All shares issued after March 30, 2015 are a nullity, including the highly dilutive unauthorized shares issued to Messrs.

EXHIBIT #0: 102
22-CV-01616-BAS-DDL

Samuel Y. Egerton, III
Jonnny L. Antwiler
O'HAGAN MEYER, LLC
January 25, 2019
Page 2

Probst and Beck. It is our intention to offer those persons who purchased CTI shares, MFS shares after a determination of amounts of money actually invested. The new directors and officers will require turnover of:

1.    All books and records
2.    Probst and Beck to leave offices and turnover records and keys
3.    Bank accounts to be turned over
4.    Cash control to be turned over to new board
5.    Hand off of operative contracts
6.    Inventory of subsidiaries
7.    Personnel lists
8.    Office security codes and systems
9.    All computer pass codes to computer and security systems
10.   All office pass codes and security systems

This is also notice that law enforcement is looking at both MFS and CTI. We are fully cooperating with them and expect that your clients will do the same.

After you review the above please call me.

Very truly yours,

CATANZARITE LAW CORPORATION

Kenneth J. Catanzarite

EXHIBIT #0: 103
22-CV-01616-BAS-DDL

EXHIBIT 5

Actual Knowledge of Merger Valuation
Actual Knowledge of Securities Converted/Slandered
Proof that CLC is Adverse to Everyone
"Fair Market Value" = $261 million (median)

EXHIBIT #0: 104
22-CV-01616-BAS-DDL

# O'HAGAN MEYER

ATTORNEYS & ADVISORS

VIA EMAIL:

Kenneth J. Catanzarite, Esq.          kcatanzarite@catanzarite.com
Catanzarite Law Corporation
2331 W Lincoln Avenue
Anaheim, California  92801

Mr. Catanzarite:

We are in receipt of your letter and the attempted "consents" pertaining to Cultivation Technologies, Inc. ("CTI") from Friday, January 25, 2019 ("Letter") and the subsequent complaint ("New Lawsuit") in which you purport that a majority of former officers and directors ("Controlling Parties") of both CTI and Mobile Farming Systems, Inc. ("MFS") have agreed to void their previous actions conducted in their capacities as officers and directors from the period March 30, 2015 to January 25, 2019, and "renounce" their shares in CTI for which CTI received good and valuable consideration and subsequently issued stock certificates through CTI's transfer agent of record.

To summarize the two complaints filed by the Catanzarite Law Corporation, the relevant facts are as follows:

- In March 2015, the boards of MFS and CTI were both comprised of O'Connor, Cooper, and Probst at the time of CTI's formation. O'Connor, Cooper, and Probst authorized all corporate actions of MFS and CTI in 2015 on behalf of each company;

- CTI has operated since 2015 and continues to do so. MFS shareholders account for more than 50 shareholders of CTI shareholders, who purchased shares in CTI for consideration of $.01 per share;

- Ms. Pinkerton, on behalf of Mr. Root, sued O'Connor, Cooper, and Probst for abuse of the elderly and payment of illegal commissions in violation of section 15(b) of the Securities Exchange Act of 1934;

- CTI began operating in June 2015 under the direction of O'Connor, Cooper, and Probst, who, with full knowledge by MFS shareholders restructured the plan to make CTI a wholly owned subsidiary and offered CTI shares to MFS shareholders based upon their MFS positions at $.01 a share;

- Shareholders who have executed the MFS consents sent by your law firm are, in fact, bona fide shareholders of CTI, have acted on behalf of the company in voting in many instances, and have signed agreements with the company for their shares;

4695 MacArthur Court | Suite 210 | Newport Beach, CA 92660 | www.ohaganmeyer.com
Chicago • Richmond, VA • Los Angeles • Woodland Hills, CA • Washington D.C. • Boston • Philadelphia •
Wilmington, DE • Alexandria, VA

EXHIBIT #0: 105
22-CV-01616-BAS-DDL

**Ken Catanzarite**
**February 5, 2019**
**PAGE - 2 –**

- In January 2019, your firm filed a new legal Complaint, in which O'Connor and Cooper, in signing the "consents," attempt to "renounce" their shares and "undo" all activities of CTI from the period of 2015 to 2019 in favor of MFS;

- The New Lawsuit suggests that MFS should benefit from all good and valuable consideration furnished by every party subsequent to June 2015, which includes, but is not limited to:

    o $932,119 in 506(b) private placement shares sold by CTI in subscription agreements executed by O'Connor, which also represent the cap table of CTI (without any shares owned by MFS);

    o $527,000 in 506(c) private placement shares sold by CTI through subscription agreements, many of which are executed by O'Connor, which also represent the cap table of CTI (without any shares owned by MFS);

    o $1,645,000 in convertible notes; and

    o $5,959,251 provided by FinCanna Capital Corp. pursuant to multiple agreements executed between CTI and FinCanna

This letter serves as formal notice ("Notice") to Catanzarite Law Corporation and others listed above of the potential damages inflicted against CTI and its shareholders caused by the Letter, New Lawsuit and the "consents" and attempted "renouncements" as set forth above ("Direct Damages"), which includes the very same shareholders that you are either representing or soliciting for signature.

The following transactions are in process ("Transactions"), all of which are now at imminent, material risk of failing due to your actions along with other shareholders who executed the shareholder consents.

CTI is preparing disclosure documents related to the parties of these agreements so that they are not consummated without full disclosure of the additional risks now attributed by your capricious actions.

- <u>FinCanna Letter of Agreement</u>. Necessitates a payment of no less than $3,000,000 to FinCanna on or before March 31, 2019, after which FinCanna may elect to force dissolution pursuant to their General Security Agreement.

- <u>Sale of the Coachella Property for $4,000,000</u>. The proceeds from this sale go to FinCanna to reduce more than $8,000,000 in outstanding payment obligations with FinCanna. This transaction was approved by CTI shareholders in November 2018 and is presently in escrow, with a closing date slated for February 2019. This property and any proceeds are subject to a blanket security agreement with FinCanna.

Ken Catanzarite
February 5, 2019
PAGE - 3 –

- **Sale of the Colusa Property for $300,000.** A majority of the proceeds from this sale go to FinCanna to reduce more than $8,000,000 in outstanding payment obligations outstanding with FinCanna. This property and any proceeds are subject to a blanket security agreement with FinCanna.

- **Sale – Leaseback of Palm Desert Property for $1,575,000.** If CTI is unable to transition its manufacturing operations from Coachella to Palm Desert before June 30, 2019 – the company will be unable to operate or sustain itself beyond that date. CTI is in escrow pursuant to a build-to-suit, sale-leaseback which affords CTI an opportunity to transition commercial operations from Coachella to Palm Desert, but the timing is absolutely critical. This property and any proceeds are subject to a blanket security agreement with FinCanna.

- **Reverse Takeover Transaction with Public Issuer in Canada ("RTO").** CTI has been working on a transaction which may afford liquidity to CTI shareholders, but it requires significant effort and necessitates cooperation and satisfaction of numerous conditions precedent. We have attached a valuation summary detailing other public issuers in the cannabis industry which was prepared by DelMorgan & Co. of Santa Monica, California from October 2018. Note that, according to this information provided to CTI by DelMorgan & Co., comparison companies with $3M in revenue resulting from the "LTM" or last twelve months imputes a potential valuation range of $175,000,000 to $261,000,000 for CTI.

**CTI makes no warranties nor representations of its ability to close the foregoing transactions, to provide shareholder liquidity, or to achieve any valuation as a company overall should it finalize the RTO. This information is provided for reference in assessing potential of the Direct Damages inflicted by you and others.**

You have demanded in the Letter that CTI relinquish immediate control to certain parties, which CTI categorically contests as illegal.

The direct damages outlined herein are mounting. If you continue with your two lawsuits, you and those in conspiracy with you may be held responsible for all resulting damage. If you would like to have your position reviewed by a neutral party, I suggest we engage in mediation so that all your complaints pertaining to CTI and its directors be addressed immediately.

EXHIBIT #0: 107
22-CV-01616-BAS-DDL

**Ken Catanzarite**
**February 5, 2019**
**PAGE - 4 –**

If you reject this good faith request to mediate this dispute this month, we will assume that you and all parties involved in the Letter are engaged in an active conspiracy to destroy CTI. Please be reminded that FinCanna, copied hereto, may exercise its right to exert control over the company and commence liquidation of CTI if we do not meet the March 31, 2019 payment deadline.

Let's discuss next steps after the ex parte hearing tomorrow.

Sincerely,

Sam Y. Edgerton, III

EXHIBIT #0: 108
22-CV-01616-BAS-DDL

# Public Comps

| Company Name | Market Cap | Enterprise Value | LTM Revenues | LTM EBITDA | EV/Revenues | EV/EBITDA |
|---|---|---|---|---|---|---|
| Canopy Growth | $ 9,105 | $ 8,925 | 70 | (26) | 127.9x | N/A |
| Aurora Cannabis | $ 5,652 | $ 5,584 | 42 | (40) | 133.0x | N/A |
| MedReleaf | $ 2,877 | $ 2,671 | 44 | 3 | 61.2x | 1,027.8x |
| Aphria | $ 2,615 | $ 2,489 | 31 | 1 | 81.3x | 1,742.3x |
| Cronos Group | $ 1,700 | $ 1,674 | 7 | (2) | 257.0x | N/A |
| The Green Organic Dutchman Holdings | $ 1,613 | $ 1,506 | - | (19) | N/A | N/A |
| Hydropothecary | $ 953 | $ 688 | 4 | (4) | 159.0x | N/A |
| CannTrust Holdings | $ 921 | $ 911 | 26 | 22 | 35.7x | 40.7x |
| OrganiGram Holdings | $ 717 | $ 635 | 10 | (2) | 60.8x | N/A |
| Emerald Health Therapeutics | $ 570 | $ 483 | 1 | (12) | 434.8x | N/A |
| Supreme Cannabis | $ 432 | $ 384 | 5 | (7) | 72.3x | N/A |
| Newstrike Resources | $ 370 | $ 283 | - | (10) | N/A | N/A |
| Maricann Group | $ 261 | $ 235 | 3 | (28) | 87.9x | N/A |
| WeedMD | $ 196 | $ 156 | 3 | (6) | 60.0x | N/A |
| Emblem | $ 175 | $ 115 | 3 | (11) | 37.5x | N/A |
| **Sum** | **$ 28,158** | **$ 26,738** | **248** | **(141)** | **N/A** | **N/A** |
| **Mean (excl. low and high)** | **$ 1,452** | **$ 1,361** | **14** | **(9)** | **103.4x** | **1,027.8x** |
| **Median** | **$ 921** | **$ 688** | **5** | **(7)** | **81.3x** | **1,027.8x** |

**DELMORGAN & CO.**

EXHIBIT #0: 109
22-CV-01616-BAS-DDL