# EXHIBIT 2

Pages 1 - 14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

Ty Clevenger,                    )
                                 )
         Plaintiff,              )
                                 )
  VS.                            )   NO. C 17-02798 WHA
                                 )
Gregory P. Dresser, et al.,      )
                                 )
         Defendants.             )
                                 )

San Francisco, California
Thursday, July 20, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

    **BY:** **TY CLEVENGER**
    **PRO SE**

For Defendant:

    STATE BAR OF CALIFORNIA
    180 Howard Street
    San Francisco, CA 94105-1617
    **BY:** **ROBERT G. RETANA**
    **SUZANNE C. GRANDT**

Reported By:    Rhonda L. Aquilina, CSR #9956, RMR, CRR
                   Official Court Reporter

```
 1   Thursday - July 20, 2017                            8:41 a.m.
 2                        P R O C E E D I N G S
 3                              ---oOo---
 4        THE COURT:  We'll go to the State Bar case, Clevenger,
 5   17-2798.
 6        MR. RETANA:  Good morning, Your Honor.  Robert Retana
 7   and Suzanne Grandt for the State Bar of California.
 8        THE COURT:  Thank you.
 9        MR. CLEVENGER:  Good morning, Your Honor.  Ty
10   Clevenger, pro se.
11        THE COURT:  Thank you.  All right.  Whose motion is
12   this?
13        MR. RETANA:  Well, Your Honor, there's two matters on.
14   There's a motion to dismiss, and Ms. Grandt -- we've prepared
15   it as follows.  Ms. Grandt is prepared to argue the motion to
16   dismiss, and I'm prepared to argue the motion to correct the
17   record, and there was a cross-motion for discovery, so I am
18   prepared to argue that part of it.
19        THE COURT:  Well, all right.  I want -- I want you
20   all -- I'm very familiar with what happened here.  And I was
21   misled on purpose last time we were here, because it was
22   important for me to know -- it could be that Mr. Clevenger is
23   some kind of shyster and deserves to be disbarred.  I don't
24   know.  I know nothing about him.  But he brought this lawsuit
25   trying to stop what he said was a First Amendment violation
```

```
 1   that you, the State Bar, were punishing him because he wrote
 2   unflattering things about the State Bar.  I haven't read any of
 3   them.  I don't know if it's unflattering or not.
 4        It was important to me at the last hearing, and I think
 5   you were the one who was here, I said: Will he be able to take
 6   discovery in the State Bar court and raise all these issues in
 7   the State Bar court?  And you told me flat out "yes" at least
 8   three times.  Then about two weeks later we get a letter from
 9   your side saying that was false, untrue, and you wanted to
10   correct it.  Well, fine.  I'm letting you correct it.  But
11   maybe the punishment for that is he's going to get a chance to
12   take some depositions in this Court that he could use because
13   your court won't allow it.
14        Now, you can now respond.  Go ahead.
15             MR. RETANA:  Okay.  Thank you, Your Honor.
16        So first of all, first and foremost, you know, we
17   apologize to the Court for any misunderstanding.
18             THE COURT:  Any?  There was -- I don't know if it was
19   false on purpose, but it was reckless --
20             MR. RETANA:  Well --
21             THE COURT:  -- what you told me.
22             MR. RETANA:  Your Honor, I could assure you that
23   Ms. Grandt -- it was not her intention to make any false
24   statements.
25        But can I just -- there's a few things I just want to say.
```

1   **THE COURT:** Get the State Bar to look into *her*
2   conduct. Maybe my committee here in this Court, the committee
3   that we have here for admitting to practice in this Court ought
4   to look into Ms. Grandt's conduct. Maybe we'll have two
5   investigations going at once.
6   **MR. RETANA:** Well, Your Honor, the point I would like
7   to make is that there's a couple of different issues here.
8   First of all, the misstatements that were made, or inaccurate
9   statements, deal with the extent to which discovery is
10  available in the State Bar court.
11      And Ms. Grandt was remiss in not stating to the Court that
12  there are rules of procedure that require a showing of good
13  cause before Mr. Clevenger would be allowed to take the
14  discovery that he wishes.
15      There's a separate issue that arises because the -- there
16  was a letter that was sent to the General Counsel Vanessa
17  Holton by Mr. Clevenger, and in the letter he says he is
18  concerned about statements made by Ms. Grandt at the hearing
19  that he would be able to fully litigate his federal claims in
20  State Bar court, and I respond to that letter saying that the
21  statements were accurate. And what I was responding to was
22  that specific issue.
23      The issue of whether or not he can fully litigate his
24  claims in State Bar court is our good faith legal position, and
25  we maintain that position for purposes of today's hearing. So

1   the idea of whether or not he could fully litigate those claims
2   was responded to in the letter with citations to our legal
3   authority for that proposition.
4       The statements that were inaccurate amount to statements
5   that the failure to note that there's a requirement of good
6   cause before the discovery can take place. But there are in
7   fact State Bar discovery rules that permit the type of
8   discovery that were -- that was mentioned in deposition,
9   subpoenas, and so forth. But there is a requirement that the
10  Court find good cause.
11      And I think if you even look at the transcript, Ms. Grandt
12  says several times that, you know, he can make those arguments
13  to the Court. And in the Court's order the exchange that's
14  quoted on the first and second page, it concludes by saying,
15  "he can make those arguments, and some judge is going to rule
16  on it," and Ms. Grandt says "that's correct." So I think it
17  was her understanding that, you know, there was -- implicit
18  understanding that, you know, she can't -- she's not a judge,
19  she can't authorize him to take any discovery or not take any
20  discovery; it has to be subject to a finding by the State Bar
21  court. And she should have clarified that.
22      But there was no intention on Ms. Grandt's part to mislead
23  the Court, and she's apologized in her declaration. I
24  apologize again. But, you know, sometimes these are hard
25  lessons to learn. It's better to say, "I'm not sure, I need to

```
 1    check," than to give an answer to the Court when you're not a
 2    hundred percent certain.
 3         So we don't believe that it rises to the level of any sort
 4    of misconduct or bad faith or recklessness. We feel it was an
 5    error in not clarifying to the Court that there is a
 6    requirement that the Court find good faith for discovery.
 7         And I'd also like to point out that Mr. Clevenger has in
 8    fact filed a motion for discovery in the State Bar court, and
 9    he's raised the federal issues in his answer to the State Bar
10    court, so these issues --
11         THE COURT: Well, has that discovery been allowed?
12         MR. RETANA: Well, it's subject to a ruling by the
13    Court, so it hasn't been allowed. So if the discovery is not
14    allowed, his remedy is to appeal to the California Supreme
15    Court, not to conduct parallel proceedings in this Court. It
16    would violate the principles of comity. And the exclusive
17    jurisdiction for governing the conduct of attorneys is with the
18    California Supreme Court.
19         The California Supreme Court is fully competent to
20    entertain his arguments, entertain federal constitutional
21    questions, decide whether or not discovery is allowed. So the
22    fact that he has to go through that procedure doesn't violate
23    his due process rights.
24         And, you know, the fact that he's requested this discovery
25    and pointed out the issue in the State Bar court almost moots
```

```
 1   the arguments that he's making here, because they are in
 2   fact -- they are in fact being considered by the Court.
 3           MR. CLEVENGER:  Your Honor, may I respond?
 4           THE COURT:  No, not yet.
 5           MR. CLEVENGER:  Okay.
 6           THE COURT:  Why did you interrupt?
 7           MR. CLEVENGER:  Sorry, Your Honor.
 8           THE COURT:  Have you finished?
 9           MR. RETANA:  Those are the main points.
10       I'm happy to answer any questions the Court has.  But I
11   want to emphasize that we understand that we're the State Bar
12   of California, and we have to be beyond reproach in everything
13   that we do.
14       And I just want to say Ms. Grandt is a very hardworking
15   attorney.  She prepares very hard for these hearings, and I
16   think her declaration shows that it was not -- there was
17   nothing intentional.  She's apologized to the Court.  I
18   apologized to the Court.  We can have Ms. Grandt apologize
19   again.
20           THE COURT:  No, I don't need anymore apologies.
21           MR. RETANA:  But I don't think it rises to the level
22   of --
23           THE COURT:  I've got a lot of hearings.
24       All right.  Your turn.
25           MR. CLEVENGER:  Your Honor, there's been a new
```

```
 1   development.  On Friday -- he referenced the fact that I filed
 2   a motion to permit discovery, and that's true.
 3         On Friday of last week, the defendants in that case filed
 4   an opposition across the board to my request for discovery.  So
 5   I think it's a bit disingenuous --
 6         THE COURT:  Who do you want to depose?  Give me the
 7   most important person you think you should be able to depose.
 8         MR. CLEVENGER:  The Chief Trial Counsel.
 9         THE COURT:  Who is that?
10         MR. CLEVENGER:  Well, he's no longer there, Greg
11   Dresser, so the parties have changed somewhat.  And also the
12   prosecuting attorneys, your Honor.
13         THE COURT:  Why would you get the prosecuting
14   attorneys?
15         MR. CLEVENGER:  Because they're the ones in the best
16   position to know who is calling the shots on the case.
17         Also what happened on Monday of this week is a trial date
18   in the State Bar court was set for September 6th and 7th, which
19   means I've got about six weeks.  I don't even know yet if I'm
20   going to be permitted discovery in that case, so I'm getting
21   whipsawed --
22         THE COURT:  All right.  I'm going to give you one
23   two-hour deposition of Mr. Dresser --
24         MR. CLEVENGER:  Yes, Your Honor.
25         THE COURT:  -- out of this Court.  It's a sanction for
```

```
 1   what Ms. Grandt did to the Court.  I ordinarily would be
 2   inclined to grant this, the Younger abstention.
 3            MR. CLEVENGER:  Your Honor --
 4            THE COURT:  No, no, I'm not done.  This is -- it's
 5   almost unheard of to do what Mr. Clevenger wants here, and I
 6   would normally throw this case into oblivion, except Ms. Grandt
 7   misrepresented things to me and made an important difference in
 8   the ruling.
 9       I don't believe you'll get a fair hearing in the State Bar
10   court.  I think the way this thing has been presented to me,
11   that they're going to shortchange you.  You left out the fact
12   that you're opposing that discovery.
13            MR. RETANA:  Your Honor --
14            THE COURT:  Just a minute.
15       But I think you get, as a sanction, you get to depose
16   Mr. Dresser for two hours, and that's going to be it.
17       I'm sorry I can't solve every problem in life of
18   Mr. Clevenger.  But you -- there are procedures.  You can take
19   appeals.  You can do all -- maybe I'll let you take the one
20   deposition for two hours, and then because I have a feeling
21   you're going to get zero out of the State Bar court.
22       Yes?  What do you want to say?
23            MR. RETANA:  Just about the issue of the opposition.
24   We're not opposing it on the basis that he's not able to take
25   discovery in State Bar court.  It's based on the fact that he
```

```
 1  has not established good cause, because the allegations are --
 2          THE COURT:  Well, he did blogs; right?
 3          MR. RETANA:  But he's made this very same --
 4          THE COURT:  He's come before the State Bar, and then
 5  here just conveniently right after that you start to prosecute
 6  him.  All right.  So, I'm sorry, but there's enough of a theory
 7  here that it's --
 8          MR. RETANA:  But he's made these very same allegations
 9  when he was under disciplinary proceedings in the D.C. court,
10  and the D.C. court's disciplinary order was finalized a few
11  months before proceedings were initiated here.  So I don't
12  think the record as stated by Mr. Clevenger is accurate.
13          THE COURT:  Yeah, but you didn't have -- it just
14  happens to be that you elected to do reciprocal discovery --
15  reciprocal punishment, disbarment, after he wrote things that
16  are critical of the State Bar.
17          Now, I didn't just fall off a turnip truck.  I've seen
18  enough retaliation claims and know that the first thing that an
19  employee does, whenever they're about to be fired, is they do
20  something that would get retaliated, so they can say
21  retaliation.
22          So maybe what Mr. Clevenger is doing here is just a
23  gimmick, and he's pulling the wool over my eyes.  Maybe.  I'm
24  not saying I even believe any of this.  I'm just telling you
25  this.  I didn't like what Ms. Grandt did.  She misled me, and
```

led me to believe that he would get to take those depositions of the State Bar court. So I'm going to give him the deposition of Dresser. You do the subpoena, get him, two hours air time, no interruptions. If there are interruptions, then there's going to be more time. That's the only discovery that I'm allowing. Then he can use that in the State Bar court.

**MS. GRANDT:** Your Honor, if I may just add something.

You know, once again, I apologize for misrepresentations, and if you want to sanction the State Bar and me personally, you have the authority to do that. But the relief that you're giving him would be unprecedented and would allow any person to --

**THE COURT:** Well, then take it to the courts of appeal.

**MS. GRANDT:** Was is it?

**THE COURT:** Take a writ to the courts of appeal if you think that it's unprecedented. I'm trying to do the fair thing here.

**MS. GRANDT:** It would just open the door to allowing any attorney who is being prosecuted in the State Bar to run into federal court and then state that they were being discriminated against.

**THE COURT:** Well, then next time you will know, because then I'm going to say, oh, no, it's different, because last time Ms. Grandt misrepresented things to me, that's why I

```
 1  did it.
 2        MS. GRANDT:  But, Your Honor, it's our position in our
 3  papers that this Court doesn't have jurisdiction over this
 4  case.
 5        THE COURT:  Well, then take a writ.  I'm sorry.  I
 6  believe I've got enough jurisdiction to impose the sanction
 7  that I am imposing, which is that he gets to take a two-hour
 8  deposition.  And next time the State Bar will be a little bit
 9  more honest with the poor federal judge.
10     I've got so many cases to run here.  I wish I didn't have
11  this case either, you know.  But I do have the case, and I've
12  got to do the best I can in the limited time that I've got.
13  And if you don't like my answer, that's okay with me if you
14  take a writ to the court of appeals.  God bless you.  They're
15  smarter than I am.  They will fix it if I made a mistake.
16        MS. GRANDT:  And just to clarify the record, he
17  blogged about a year before the charges were brought, and about
18  four months before the charges were brought, that's when the
19  disciplinary order was initiated in D.C. in November.  So he
20  blogged about six months prior to the final order of discipline
21  in D.C.  And then four months after that D.C. order came, the
22  State Bar brought charges.
23        THE COURT:  Listen, I want to make it real clear that
24  if Mr. Clevenger ever represents to the contrary, I am in no
25  way saying that there was a First Amendment violation.  I am in
```

```
 1   no way saying that Mr. Clevenger is an honorable guy.  I am in
 2   no way saying that he doesn't deserve to be thrown out of the
 3   State Bar.  I am not doing any of that.  This is strictly
 4   because you -- I'm making this order because Ms. Grandt told me
 5   something that wasn't true, and I relied on it.  And the relief
 6   that plaintiff is going to get is very limited relief that he
 7   gets a two-hour deposition to make up for what you told me.
 8   This is -- I'm doing what I think is the fair thing to do.
 9              MR. RETANA:  So --
10              THE COURT:  So there.  That's what the ruling is.
11              MR. RETANA:  Yes, Your Honor.  So procedurally, where
12   does that leave us in terms of the motion to dismiss?
13              THE COURT:  I'm going to hold all of that in abeyance.
14   I'm not going to dismiss anything until this deposition is
15   taken.  Maybe then I will just abstain.  Abstain, not dismiss,
16   abstain.  Do you know the difference?
17              MR. RETANA:  Yes, I do, Your Honor.
18              THE COURT:  Okay.  Well, maybe I will abstain.  That's
19   why it's called a Younger abstention.
20              MR. RETANA:  Yes, sir.
21              THE COURT:  I'll wait and see how it develops over
22   there.  Maybe it develops in a fair way.  Maybe it develops in
23   an unfair way.
24              MR. RETANA:  After the deposition has been completed,
25   how do we bring this back to the Court's attention?
```

```
 1          THE COURT:  You know, after the deposition, you can
 2   revisit it, so can he.  If it turns out they deny him all
 3   discovery, maybe he can ask for two or three more depositions
 4   over here.  Maybe not.
 5          MR. CLEVENGER:  Your Honor, may I ask a quick
 6   question?
 7          THE COURT:  Yes, please.
 8          MR. CLEVENGER:  I listed some potential
 9   interrogatories.
10          THE COURT:  No.  We're not going to do that.  You've
11   got a two-hour deposition, and that's it.
12          MR. CLEVENGER:  Understood.
13          THE COURT:  Life is too short.
14          MR. CLEVENGER:  Understood.
15          THE COURT:  Life is too short.  That's it, two-hour
16   deposition of Mr. Dresser.  And it's your responsibility to
17   subpoena him, track him down, get him into the room in time,
18   and all of that stuff.
19          MR. CLEVENGER:  Understood.
20          THE COURT:  All right.  End of hearing.  Thank you.
21          MR. RETANA:  Thank you, Your Honor.
22          MR. CLEVENGER:  Thank you.
23               (Proceedings adjourned at 8:55 a.m.)
24                         ---oOo---
25
```

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Friday, July 21, 2017

_____

Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
Court Reporter