# EXHIBIT 3

Exhibit #3: 001
22-CV-01616-BAS-DDL

[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12766

Non-Argument Calendar

_____

In re:

DAYMARK REALTY ADVISORS, INC.,
DAYMARK PROPERTIES REALTY, INC.,
DAYMARK RESIDENTIAL MANAGEMENT, INC.,

                 Debtors.

_____

KENNETH J. CATANZARITE,

                 Plaintiff-Appellant,

versus

GCL, LLC,
INFINITY URBANCENTURY, LLC,
ETIENNE LOCOH,

| 2 | Opinion of the Court | 21-12766 |

TODD A. MIKLES,

SOVEREIGN CAPITAL MANAGEMENT GROUP, LLC, et al.,

                                                                       Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-61032-RS

_____

Before WILLIAM PRYOR, Chief Judge, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

    Kenneth Catanzarite appeals the denial of relief from a judgment of the bankruptcy court. The district court affirmed the award of sanctions against Catanzarite for violating a preliminary injunction that barred "the commencement of any further actions under the same or similar facts or circumstances to" lawsuits he had filed against bankruptcy creditors. The district court also ruled that Catanzarite forfeited his opportunity to object to the amount of sanctions imposed. We affirm.

    In 2018, Daymark Realty Advisors, Incorporated, Daymark Properties Realty, Incorporated, and Daymark Residential Management, Incorporated, filed separate petitions for bankruptcy

21-12766               Opinion of the Court                3

under Chapter 11 of the Bankruptcy Code, which the bankruptcy court consolidated. Catanzarite, an attorney licensed in California and admitted to appear *pro hac vice* in the bankruptcy court, filed adversary complaints against the Daymark companies for Richard Carlson and eleven other plaintiffs (the Carlson plaintiffs) and for Katherine Looper and six other plaintiffs. Those plaintiffs complained of breach of fiduciary duties and other wrongdoing in handling their investments in several properties, including their interests as tenants-in-common in the Congress Center, an office tower in Chicago, Illinois. Later, Catanzarite moved successfully to convert the bankruptcy petition to an action under Chapter 7 of the Bankruptcy Code.

Catanzarite also sued Daymark creditors, including Todd Mikles, Etienne Locoh, GCL, LLC, and other entities related to the Daymark companies (the Mikles creditors). Catanzarite filed nine putative class action complaints for the Carlson plaintiffs in California and Utah courts against various combinations of the Mikles creditors. The complaints alleged that the creditors were alter egos of and shared common control of and culpability for the Daymark companies' mishandling of investments in the Congress Center and other properties.

The Mikles creditors entered an agreement to settle their claims with the bankruptcy trustee, Chad Paiva, and obtained an injunction that stayed the nine lawsuits. *See* 11 U.S.C. § 105(a); Fed. R. Bankr. P. 7001(7). After a hearing attended by Catanzarite, the creditors, and the Trustee on August 27, 2019, the bankruptcy

| 4 | Opinion of the Court | 21-12766 |

court issued an order that "enjoin[ed] continuation of the [nine] Subject Lawsuits or the commencement of any further actions under [the] same or similar facts or circumstances to the Subject Lawsuits" for 60 days. On the Mikles creditors' motion, and after a second hearing, the bankruptcy court issued a second preliminary injunction that extended the stay to December 11, 2019.

On November 7, 2019, Catanzarite, as counsel for Katherine Looper and nine other plaintiffs (the Looper plaintiffs), filed in a California court a complaint alleging that Mikles and GCL assisted the Daymark companies to defraud investors in connection with the Congress Center and another property. Catanzarite also filed a notice of lis pendens on GCL property.

The Mikles creditors moved to enforce the injunction and to impose sanctions. The bankruptcy court held a hearing on the motion attended by the creditors, Catanzarite, and the Trustee. The Trustee testified about Catanzarite's actions, the effect on the stay, and maintaining control of the property of the estate.

The bankruptcy court granted the motion and sanctioned Catanzarite. The bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the Carlson plaintiffs, *see* Fed. R. Civ. P. 65(d)(2)(B), violated the injunction by filing a civil action and lis pendens for the Looper plaintiffs "based upon TIC ownership interests in the Congress Center," which was the same subject "matter[] explicitly enjoined by the Second Preliminary Injunction Order." And the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing false and

misleading statements about the Daymark bankruptcy. The bankruptcy court stayed the Looper action and ordered Catanzarite to reimburse the Mikles creditors and "Trustee Paiva for any actual attorneys' fees and expenses incurred in connection with" the Looper action. Although the Trustee was not a party to the motion, the bankruptcy court found "it appropriate to compensate the bankruptcy estate . . . in light of the pending settlement motion in the main bankruptcy case and the intent of the injunctive relief in this adversary proceeding—to maintain the status quo pending the hearing to consider approval of that settlement . . . ."

As directed by the bankruptcy court, the Mikles creditors and the Trustee timely filed affidavits for and redacted time records of the fees and expenses they sought as compensatory sanctions. On January 29, 2020, the Mikles creditors requested $49,020.50 in attorneys' fees, and on February 5, 2020, the Trustee requested $13,333 for similar expenses. On February 25, 2020, almost three weeks after the expiration of the seven-day deadline imposed by the bankruptcy court, Catanzarite objected to the affidavits.

The bankruptcy court denied Catanzarite's objection to the affidavits as untimely. The bankruptcy court found that Catanzarite "failed to timely object to either affidavit" or "to timely move for an extension of time to object" and that his notice of late filing "offered a variety of excuses for missing the deadline, none of which [rose] to the level of excusable neglect." The bankruptcy court awarded the full amount of attorneys' fees that the Mikles creditors requested as "incurred in connection with responding to

|  |  |  |
|---|---|---|
| 6 | Opinion of the Court | 21-12766 |

the [Looper action] and prosecuting the [motion to enforce], and . . . not excessive." As to the Trustee, the bankruptcy court found that "certain time entries include time for both main case issues as well as the pertinent issues in this adversary proceeding" and, being "unable to determine which portion of [specific] entries [were] attributable to the [Looper action] and the [motion to enforce], . . . [it] exercise[d] its discretion and award[ed] only 50% of the fees billed" on four days in December 2019. The bankruptcy court awarded the Trustee $11,639.25 in attorneys' fees.

   The district court affirmed the imposition of sanctions and the fee awards. The district court ruled that, "under the plain language of Rule 65(d)(2)(B), [Catanzarite], as the attorney for the enjoined Carlson [plaintiffs], was bound by the Preliminary Injunction" and violated it by filing an action "based on similar ownership interests and the same or similar facts or circumstances." The district court rejected Catanzarite's argument that he could engage in prohibited conduct for another client. The district court ruled that Catanzarite's "failure to object to the fee affidavit[s] and his conclusory and vague challenges to the reasonableness of the fees . . . [were] fatal to his argument" challenging the accuracy and veracity of the affidavits. The district court also ruled that the bankruptcy court did not abuse its discretion in determining the fee awards after carefully reviewing the affidavits and time records that the Mikles creditors and the Trustee submitted. The district court rejected as refuted by the record Catanzarite's argument that awarding sanctions to the Trustee violated his right to due process.

21-12766                Opinion of the Court                7

"[A]s [the] second court of review," we "examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standard of review as the district court." *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1315 (11th Cir. 2016) (quoting *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1189 (11th Cir. 2015)). We review the imposition of sanctions for abuse of discretion and related findings of fact for clear error. *Id.* Under the abuse-of-discretion standard, we must affirm "unless the [bankruptcy] court made a clear error of judgment, or has applied the wrong legal standard." *Id.* (internal quotation marks omitted). So the bankruptcy court enjoys a "a range of choice within which we will not reverse . . . even if we might have reached a different decision." *Schiavo ex. rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005).

The bankruptcy court did not err in determining that Catanzarite was bound by the injunction. Federal Rule of Civil Procedure 65 binds three categories of persons to comply with an injunction: "the parties; the parties' . . . attorneys; and other persons who are in active concert or participation" with persons in the first two categories. Fed. R. Civ. P. 65(d)(2)(B). The Rule binds an attorney to an injunction to the same extent as a party. So, as the bankruptcy court explained, Catanzarite could not "engag[e] in conduct in which [the parties,] the Carlson [plaintiffs,] themselves could not engage."

Catanzarite misinterprets Rule 65(d)(2)(B) as prohibiting attorneys only "from engaging in enjoined conduct *on behalf of an*

| 8 | Opinion of the Court | 21-12766 |
|---|---|---|

*enjoined party."* "We are not at liberty to add terms or posit an interpretation that differs from the explicit language of" a federal rule of procedure. *United States v. Orozco*, 160 F.3d 1309, 1316 (11th Cir. 1998). Rule 65(d)(2)(B) plainly bars a party's attorney from engaging in enjoined conduct regardless of his client's situation. Because Catanzarite was bound to obey the injunction, we need not address his argument that the bankruptcy court erred by ruling, in the alternative, that he was bound to the injunction by acting in concert with his clients under Rule 65(d)(2)(C).

Catanzarite violated the injunction. The injunction expressly prohibited "the commencement of any further actions under same or similar facts or circumstances to the Subject Lawsuits." Two of the subject lawsuits involved Mikles creditors mishandling investors' tenancy-in-common interests in the Congress Center. In the complaint and lis pendens, Catanzarite repeated many of the facts and legal arguments made in the subject lawsuits.

The bankruptcy court did not abuse its discretion. "Congress has empowered bankruptcy courts broadly to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, 11 U.S.C. § 105(a), including sanctions to enforce . . . [an] injunction." *In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015). The bankruptcy court sanctioned Catanzarite for the permissible purpose of compensating the Trustee and the Mikles creditors for losses caused by Catanzarite's noncompliance. *See Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986). The Trustee was entitled to compensation

21-12766          Opinion of the Court          9

even though he did not move to enforce the injunction or join the Mikles creditors' motion. The Trustee was a party in the bankruptcy case in which the injunction issued for the purpose of maintaining the status quo pending the resolution of a proposed settlement between the estate and the Mikles creditors. *See E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1514–15 (11th Cir. 1987). Catanzarite's violation of the injunction interrupted the progress of the bankruptcy case and required the Trustee and the Mikles creditors to incur expenses related to the Looper action and to the enforcement of the injunction.

Catanzarite argues that he was denied due process with respect to the award to the Trustee, but he was "given fair notice that his conduct may warrant sanctions and the reasons why" as well as "an opportunity to respond . . . and to justify his actions," *In re Mroz*, 65 F.3d 1567, 1575–76 (11th Cir. 1995). The motion to enforce outlined Catanzarite's willful disobedience of the injunction. During the hearing on the motion, the Trustee testified about the effect that Catanzarite's noncompliance had on the bankruptcy proceedings, and Catanzarite presented a defense. As the district court stated, Catanzarite "was on notice that the bankruptcy court was . . . considering whether and how [his] actions may have affected the Trustee and the estate and whether that should give rise to sanctions." And the bankruptcy court afforded Catanzarite the opportunity to object to the Trustee's affidavit and time records, but Catanzarite delayed filing a response. This process was sufficient to satisfy due process.

10              Opinion of the Court              21-12766

The bankruptcy court also did not abuse its discretion in determining the fee awards. The bankruptcy court ensured that its awards were "calibrated to the damages caused by" Catanzarite's noncompliance by limiting the award to "cover[ing] the legal bills that the litigation abuse occasioned." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted and alterations adopted). The bankruptcy court "carefully reviewed the Affidavits and time records" the Trustee and the Mikles creditors submitted and found that the fees were "incurred in connection with responding to the [Looper action] and in prosecuting" the motion to enforce the injunction. The bankruptcy court noticed an inadvertent duplication of fees by the Trustee and adjusted the amount requested to account for the error. Catanzarite contests the amounts of the awards, but he forfeited the opportunity to challenge those amounts by failing timely to object to the affidavits, *see Green v. Graham*, 906 F.3d 955, 963 (11th Cir. 2018).

We **AFFIRM** the sanctions against Catanzarite.