# EXHIBIT 14

Exhibit #14: 001
22-CV-01616-BAS-DDL



# The State Bar of California

**BOARD OF TRUSTEES**

July 13, 2022

Sent Via Email

Senator Tom Umberg, Chair
Senate Judiciary Committee
State Capitol
Sacramento, CA 95814

Assemblymember Mark Stone, Chair
Assembly Judiciary Committee
State Capitol
Sacramento, CA 95814

RE: Proposed Amendments to AB 2958 (Judiciary)

Dear Senator Umberg and Assemblymember Stone:

The State Bar Board of Trustees appreciates the robust discussion the Senate Judiciary Committee engaged in regarding Assembly Bill 2958 (AB 2958) at the hearing on June 21, 2022. We share your interest in seeing tangible improvements in the State Bar's discipline system, and we believe that concrete steps we have taken will yield significant improvements, not the least of which is the appointment—now confirmed—of George Cardona as Chief Trial Counsel.

Respectfully, however, improvement of the discipline system is not the sole mission of the State Bar. The State Bar's mission, which the Legislature codified in 2018 upon recommendations from each of your respective committees, includes efforts to increase access to, and inclusion in, the legal system. We take this aspect of our mission seriously. As we expressed at the June 21 hearing, the State Bar is deeply troubled by the amendments to AB 2958 put in the bill on June 15, which added Business and Professions Code section 6034.1. This language, as written, prevents the State Bar from continuing to explore regulatory reform efforts that we believe could have a significant impact on increasing access to legal advice for those who currently cannot afford it. The amendments essentially shut down *discussion* about topics critical to the access to representation conversation, including the unauthorized practice of law and nonattorney ownership and fee sharing.

Reflecting the discussions that we have had with both you and your staff regarding regulatory reform as an avenue for increasing access to legal representation, and the lively exchange at the June 21 hearing itself, we have drafted amendments that we believe allow for a meaningful path forward while responsibly addressing legislative concerns and ensuring meaningful accountability by the Bar to the Legislature and the Supreme Court. In brief, these amendments, attached:

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

Exhibit #14: 002
22-CV-01616-BAS-DDL

Senator Umberg and Assemblymember Stone
July 13, 2022
Page 2

- Expressly affirm our commitment that no paraprofessional licensure program or regulatory sandbox could be launched in California without explicit approval from both the Supreme Court and the Legislature;
- Prohibit advancing any proposal that would provide for a majority nonlawyer ownership, and prohibit advancing any proposal that would provide for a fee-sharing arrangement in which non-lawyers would receive a majority of the fees. These prohibitions address concerns about the possibility of "big tech" or the "big 4" or other corporations taking control over the practice of law and compromising the independent judgment of lawyers [1];
- Clarify that the target population for legal regulatory reform work includes the millions of unserved Californians who are low-income, moderate-income, or small business owners; and
- Clarify that the proposal for a paraprofessional licensure program developed by the California Paraprofessional Working Group (CPPWG), which has completed its work, will be submitted to the Supreme Court for review and approval and, if approved, will be submitted to the Legislature.

We believe that we can all agree that more is required to assist the majority of Californians who cannot access legal help when they need it. More than 12 million low-income Californians are eligible for free legal aid, but that overburdened system serves only a portion of them. In fact, fully funding legal aid would require an additional investment of over $1 billion annually. Further, an estimated 20 million Californians earn too much to qualify for free legal services, yet how many can afford to hire a market-rate attorney? Given the state's average hourly attorney rate of $400, California's nurses, teachers, and firefighters, for example, earning a collective average of $86,000 per year, would need to work nearly 10 hours to afford just one hour of attorney services. Faced with this reality, people are instead choosing to go it alone, often to disastrous results for them and their families. We have heard from many judges who decry the effects in their courtrooms and in the justice system, generally of litigants forced to represent themselves because they cannot pay for an attorney.

As we have previously stated and as is documented in the FAQ that accompanies our proposed amendments to AB 2958, we will not solve this crisis through pro bono efforts of generous California lawyers, and we will not solve it by continuing to lower the passing score required on the California bar exam. A problem of this scale requires not tinkering at the margins but new thinking and a willingness to explore structural reform.

---

[1] Speaking personally, let us add here that as licensed lawyers in California, each for more than two decades, we understand the concerns of some of our peers and colleagues who have a difficult time ceding any sort of control or influence over the profession to nonlawyers who do not take the oath that the four of us have taken, and who are not held to the rigorous strictures that provide that first and critical layer of public protection at the heart of the State Bar's mission. We do not believe, however, that reasonable minds cannot reach a well-thought-out and intelligent approach to a robust regulatory scheme, which will include training, controls, and appropriate and serious consequences for those who have harmed the public.

Senator Umberg and Assemblymember Stone
July 13, 2022
Page 3

As currently written, AB 2958 would prohibit the State Bar from engaging in critical conversations about how best to ensure that the state's legal regulatory framework helps to solve, rather than continues to hinder, access to legal representation for millions of unserved Californians. If passed in its current form, California will find itself on the sidelines, watching as other jurisdictions domestically and internationally are assessing the ways in which smart and responsible reform can address the access chasm. While we understand and appreciate longstanding concerns about the State Bar, we do not believe that by precluding conversation and analysis you are benefiting our collective constituents; instead, these amendments would ensure that they do not realize the needed benefits of thoughtful regulatory reform for years to come.

We are happy to meet with you and your staff, either in person or remotely, in hopes of coming to agreement on these amendments. Please contact either of us to let us know your availability to meet.

Sincerely,

*Ruben Duran*
Ruben Duran, Chair
Board of Trustees

*Leah J. Wilson*
Leah T. Wilson
Executive Director

cc/enc (2):   Vice-chair and members, Senate Judiciary Committee
Vice-chair and members, Assembly Judiciary Committee
Members, State Bar Board of Trustees
Margie Estrada, Chief Counsel, Senate Judiciary Committee
Alison Merrilees, Chief Counsel, Assembly Judiciary Committee
(These copyholders will receive the letter and enclosures.)

## State Bar of California Proposed Amendments to AB 2958

SEC. 3. Section 6034.1 is added to the Business and Professions Code, to read:

6034.1. (a) A committee or subcommittee of the California State Bar shall ensure that any proposal to create exploring a regulatory sandbox or the licenseing of nonattorneys as paraprofessionals shall be submitted by the Board of Trustees to both the Supreme Court and the Legislature for review and approval and shall not be implemented absent such approval. Any proposal shall do all of the following, as applicable:

(1) Prioritize protecting individuals, especially those in need of legal assistance, from unscrupulous actors, including those actors seeking to do business in the legal field, above all else.

(2) Prioritize increasing access to justice for indigent, low-income, and moderate-income personsindividuals and small businesses.

(3) Only permit Exclude non-lawyer corporate ownership of law firms and splitting to the extent lawyers retain a majority share of ownership interests and only permit fee sharing arrangements to the extent lawyers retain a majority of fees. The proposal shall also include measures to ensure the independence of professional judgment in the delivery of legal advice and related services.legal fees with nonlawyers, which has historically been banned by common law and statute due to grave concerns that it could undermine consumer protection by creating conflicts of interests that are difficult to overcome and fundamentally infringe on the basic and paramount obligations of attorneys to their clients.

(4) Respect the role that the Legislature has in regulating conduct that constitutes the unauthorized practice of law by only permitting the governing entity of a sandbox to waive specific laws pertaining to Adhere to, and not propose any abrogation of, the restrictions on the unauthorized practice of law, including, but not limited to, Sections 13405 and 16951 of the Corporations Code, without legislative approval as to the procedures and mechanisms for doing so.that the Legislature has authorized as part of the enabling statutes or subsequent amendments to such statutes.

(b) This section does not limit the State Bar's ability to provide limited practice licenses to law students and law graduates under certain conditions, and with the supervision of an active State Bar-licensed attorney.

(c) This section does not limit the examination of the use of technology to increase access to justice for <u>moderate income,</u> lower income<u>, or</u> ~~and~~ indigent persons<u>, or small businesses</u> so long as proposals <u>otherwise</u> adhere to <u>the requirements of this section.</u>, ~~and do not propose any abrogation of, the restrictions on the unauthorized practice of law, including, but not limited to, Sections 13405 and 16951 of the Corporations Code~~ <u>without legislative approval</u>.

(d) The State Bar shall not expend any funds, regardless of the source, on activities that do not meet the requirements of this section.

## STATE BAR PROPOSED AMENDMENTS TO AB 2958

### Why is the State Bar proposing amendments to Section 3 of Assembly Bill 2958, which adds Business and Professions Code section 6034.1?

B&P section 6034.1 severely restricts the Bar's ability to study the kinds of legal regulatory reforms that are necessary to meaningfully increase access to legal representation for millions of Californians who earn too much to qualify for free legal services, yet earn too little to afford the average hourly rate of a California attorney: $400.

### What would the State Bar's amendments do?

The State Bar's amendments would simply allow continued study of legal regulatory reform while also addressing key concerns expressed by legislators. The bar's amendments specifically:

1. Affirm that no paraprofessional licensure program or regulatory sandbox could be launched in California without explicit approval from both the Supreme Court and the Legislature.
2. Require that any regulatory sandbox proposal be limited to arrangements where lawyers retain a majority ownership or fee sharing interest.
3. Clarify that the target population for legal regulatory reform work includes the millions of unserved Californians who are low-income, moderate-income, or small business owners.
4. Clarify that the proposal for a paraprofessional licensure program developed by the California Paraprofessional Working Group (CPPWG) will be submitted to the Supreme Court for review and approval and, if approved, will be submitted to the Legislature.

### Why are these changes needed?

To provide the State Bar the opportunity to continue the dialogue about regulatory reform and demonstrate the merits of the proposals being studied, these proposed amendments would:

1. Assure stakeholders of the State Bar's commitment to securing Supreme Court and Legislative approval.
2. Address stated concerns about the possibility of "big tech" or corporate interests taking over the practice of law and the independent judgment of lawyers being compromised by majority non-attorney ownership structures, while still allowing for consideration of the type of investments and partnerships that are necessary to spur meaningful innovation in the delivery of legal services.
3. Expand the language in Section 3 which is solely focused on the indigent and low-income to expressly include the 20 million other Californians and small business owners who can't afford market rate legal services (currently averaging $400 per hour for an attorney).

4. To ensure that the State Bar can advance the proposal of the CPPWG to the Supreme Court given that the working group's efforts have concluded and its recommendations are finalized.

**Why is the ability to test non-lawyer ownership and fee sharing in a regulatory sandbox so important?**

Technology offers a unique opportunity to deliver "one-to-many" legal advice and services to those who cannot afford to pay an attorney for full scope representation. But under current law, attorneys who partner with investors or technology experts to build these products are prohibited from delivering legal advice. To address this challenge, legal regulatory sandboxes, where regulators can test models not allowed under current laws or rules, have or will be implemented in a number of states. Utah, for example, has admitted 43 entities with various levels of non-attorney ownership to operate in its regulatory sandbox since October of 2020. These entities offer a range of services from family law and veteran's benefits to criminal expungements and medical debt relief, and do not reflect any investment from big tech or the "Big 4" accounting firms. According to Utah's most recent report, these entities have delivered over 21,600 services to over 12,000 clients, with only nine complaints received.

Examples of such services include:

- Hello Divorce: an "easy affordable online divorce platform" which, in California, is not able to offer customers both legal advice and access to its technology platform for a flat fee because non-attorney investment was used to build its platform. In contrast, Utah consumers benefit from an integrated, more efficient model, benefiting clients in the high-need family law area, due to Hello Divorce's participation in the Utah regulatory sandbox. due to Hello Divorce's participation in the Utah regulatory sandbox.

- Xira Connect: a business operating in California which, in Utah, has introduced third-party escrow account management services for retainer fees and expenses. No funds are distributed when there is any dispute between the attorney and client, thereby preventing actual or alleged misappropriation and protecting clients from loss. Under current California statutes and rules, both third-party responsibility for fees and expenses and the fee-sharing model that sustains this service, are not allowed.

Partnering with nonlawyers can also benefit attorneys in developing virtual office and legal support services such as communication, client connections, and billing. Indeed, big law firms are investing in their own technology firms to increase their efficiency and profitability.[1] Solo and small firms and nonprofits, who serve individuals instead of corporations, do not have access to these types of services, and the individual consumer is suffering as a result.

---

[1] See https://www.law.com/legaltechnews/2022/04/08/orrick-sticks-to-initial-funding-plans-four-years-after-legal-tech-investment-launch/

A regulatory sandbox is also a vehicle for testing changes to unauthorized practice of law (UPL) provisions and other legal regulatory statutes and rules in a controlled environment. See the letter submitted by Legal Link in opposition to the language of B&P section 6034.1 for an articulation of the need to address who can deliver legal advice to benefit low- and moderate-income consumers. Creating a regulatory sandbox would also serve as an evidence-based, systematic way for the Legislature to consider such changes rather than subjecting California to potential constitutional challenges to the UPL statutes. *See Upsolve, Inc. v. James,* where the Southern District of New York recently invalidated New York's UPL restrictions on the provision of legal advice by nonlawyers on First Amendment grounds. on First Amendment grounds.

**We already have bad actors who pretend to be lawyers, won't paraprofessionals be one more of these?**

No. Paraprofessionals, if approved, will be licensed and regulated by the State Bar of California in limited and discrete practice areas. The CPPWG has developed strict standards for licensure and regulation including initial and ongoing training requirements, as well as experiential, testing, positive moral character determination, and bonding requirements, a dedicated client security fund, and a fully articulated disciplinary system. In contrast, document preparers and immigration consultants register with counties, and file a disclosure form and bond with the Secretary of State, respectively, but are *not* meaningfully regulated. Notarios are neither registered nor regulated. A paraprofessional program will increase access to affordable legal representation, not the number of bad actors.

**Why can't we focus on lowering the bar exam cut score, increasing funding for legal aid, or increasing pro bono as the solutions to the access to legal services gap?**

There are at least 20 million adult Californians who are income ineligible for free legal services yet earn too little to afford the average hourly rate of a California attorney: $400. We know from the 2019 Justice Gap Study, which has since been bolstered by other national data, that over half of this population experienced one civil legal problem in the last year, and that 85 percent of those problems were not fully addressed. The State Bar has analyzed the traditional solutions to addressing this crisis. Here's what we found:

1. If the California bar exam cut score was reduced to equate to the lowest in the United States, 1250, only 600 more lawyers would be admitted to the profession annually.
2. To meet the legal needs of those Californians who qualify for free legal services (generally <200% of FPL), we would need 13,600 *more* legal services attorneys. This represents a nearly 7-fold increase in the total number of attorneys doing this work statewide.
3. In order for pro bono services to close the access to legal services gap for those above 200% of FPL, every active licensed attorney (approximately 195,000 attorneys) would need to provide 250 hours of pro bono annually (about 6 weeks of 8-hour working

days). According to a 2017 ABA study, a majority of California attorneys (54%) do not provide a single hour of pro bono service.

**What about Tom Girardi and the known problems in the State Bar discipline system? Isn't legal regulatory reform a distraction?**

The State Bar acknowledges that there is significant room for improvement in the attorney discipline system. The Office of Chief Trial Counsel is a separate division of the State Bar from the offices that support ethics, education, and access work, and the Chief Trial Counsel (CTC) reports directly to the Board of Trustees. The CTC and the Board are actively and aggressively pursuing a comprehensive reform strategy for the attorney discipline system. Exploration of legal regulatory reform does not diminish or distract from this work. The CTC and his office are not materially engaged in regulatory reform efforts, and the board has spent minimal time on these issues; work on both the paraprofessional program and regulatory sandbox has been primarily conducted by dedicated volunteers in remote meetings.

At this juncture, the State Bar simply seeks to continue to have discussions, to study reform, and to advance proposals as they are finalized to the Supreme Court, and then the Legislature, for review and approval. We are several years away from actual implementation of any of these initiatives. During this period we are confident that the efforts of the board and the new CTC will materialize in a much-improved discipline system. Halting the bar's progress on legal regulatory reform at this juncture would not accelerate reform of the discipline system[2]. Instead, it would unnecessarily delay what will already be multi-year study and initial implementation processes and, more importantly, delay bringing affordable and accessible options for legal representation to the millions in our state in need of help.

---

[2] It should also be noted that, the Closing the Justice Gap Working Group, which is exploring a regulatory sandbox in California, has recommended that the Legislature form a new entity within the judicial branch, reporting directly to the Supreme Court, to serve as the regulator once the sandbox is established, and did not vote to recommend that the State Bar itself take on this role.