EXHIBIT
21

Exhibit 21

Electronically Filed by Superior Court of California, County of Orange, 07/18/2022 08:00:00 AM.
30-2021-01237499-CU-PN-CJC - ROA # 101 - DAVID H. YAMASAKI, Clerk of the Court By B. Brown, Deputy Clerk.

**DECLARATION IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE
SUMMARY ADJUDICATION**

1    Justin S. Beck
     justintimesd@gmail.com
2    3501 Roselle St.
     Oceanside, California 92056
3    760-449-2509

4    *In Pro Per*

5

6                  **IN THE SUPERIOR COURT OF CALIFORNIA**

7                          **COUNTY OF ORANGE**

8    JUSTIN S. BECK, an individual          )  Case No: 30-2021-01237499-CU-PN-CJC

9                    Plaintiff,             )  Judge Assigned: Honorable John C. Gastelum

10             v.                           )

11   THE STATE BAR OF CALIFORNIA, a public  )  **DECLARATION OF JUSTIN S. BECK IN
     corporation and public entity; ANAND KUMAR,  )  SUPPORT OF PLAINTIFF'S MOTION
                                            )  FOR SUMMARY JUDGMENT OR IN THE
12   an individual employee acting in an official  )  ALTERNATIVE FOR SUMMARY
     capacity; ELI DAVID MORGENSTERN, an   )  ADJUDICATION**
13   individual employee acting in an official capacity;  )
     JOY NUNLEY, an individual employee acting in  )  [Filed with Attached Evidence in Support under
14   an official capacity; THE STATE OF     )  Rule 3.1350(c)(4) as Exhibits]
     CALIFORNIA, a state and public entity; and  )
15   DOES 1-30                              )  **Hearing Date: October 4, 2022**

16                                          )  **Reservation Number: 73773752**
                    Defendants             )
17                                         )  **Time: 2:00PM**

18                                         )  Action Filed: December 21, 2021

19                                         )  Trial Date: None

20   ————————————————————         **Unlimited Civil Case**

21

22

23        1. I, Justin S. Beck, declare as follows under penalty of perjury.

24

25        2. I am over the age of 18. I am a resident of Oceanside, California. I am the plaintiff in the above-entitled

26   matter, *Justin S. Beck v. The State Bar of California, et al.* (OCSC Case No. 30-2021-01237499- CU-PN-

27   CJC).

28

-1-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

3. I am the moving party seeking summary judgment, or in the alternative, summary adjudication in this action in my favor against public agency The State Bar of California and/or State of California for the official acts of public employees or elected officials subject to the liability portions of Government Claims Act. While I do believe defendants may have engaged in acts constitutional that may be deemed "unofficial" that was also a substantial factor in my injuries, there are enough official acts to summarily award judgment in my favor in this action now and I should not be unduly prejudiced more than I have been.

4. I have personal knowledge of each fact set forth in this declaration based upon my observation of, participation in, or collection of, the matters to which I declare, excepts those matters which are therein stated on information and belief, and as to those matters, I believe it to be true and would competently testify further the bases of any such belief. If called upon, I could and would testify competently in any court or tribunal as to the truth or authenticity of any statement or writing herein or attached hereto.

5. I offer this declaration in support of my claims for money or damages and extraordinary relief against the government after my sufficient claim was denial by defendant The State Bar of California under procedures defined by The State Bar of California complaint defined Government Claims Act form, and in conformance with the Government Claims Act Section 910 and, having satisfied the claims presentation requirement, Section 905.6.

6. I offer this declaration as evidence in support of my motion for summary judgment or summary adjudication in this action pursuant to Rule 2.116(b)(1). The headers I've added below are only intended to separate sections and different sets of facts or evidence.

                    BRICK'S RULE WITHIN CCP, TRAJECTORY

1. The narrative summary provided by the Fourth District, Division Three in Bull v. Coleman the Law Corporation, et al. (G048596)is incorporated by reference as if set forth fully herein, including the cited sections of G048596, and the cited sections of G056422. The Court's summaries of facts are true in all

DECLARATION OF JUSTIN S. BRICK IN SUPPORT OF JUSTIN S. BRICK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21 E-1083
22-CV-01616-BAS-DDL

material respects as they relate to State Bar's undisputed factor in my opinion and supporting my January
2019 allegations in State Bar provided under oath and backed with court orders.

### ACTUAL KNOWLEDGE BY STATE BAR

8. I did not know that State Bar of California was a substantial factor in my harm until it's purported
"protected" procedures and actors, including Worley, Morgenstern, and Kumar acting officially,
repeatedly failed me despite overwhelming evidence of judicial fraud that the Court cited with
specificity. It was at that time that Worley, Morgenstern, and Kumar's conduct joined with that of their
licensees and stood in special relationship to me as victim, with unique control to enjoin or otherwise
restrain (fraud, refer to criminal law enforcement) the conduct of Cannabis. Here I found reports from
the auditor. I then learned that State Bar controls their licensees as a matter of law (for the reasons stated in
Brown v. USAA or in Glickman, if not the various statutory schemes shown by me at any pleadings).

9. For instance, the court earlier I first cited State Bar in January 2019 included violation of "mandatory
law." I later detailed this specific allegations under oath against in March 2021 that I was directed to send in
various offices of the State Bar under oath. First, the clerk of the Supreme Court required that I deliver
copies to State Bar (San Francisco), State Bar (Los Angeles), and for all justices of the Supreme Court. I
spent at least two thousand dollars doing this, then preparing a case for the Supreme Court myself within
60 days of receiving a letter from "Complaint Review Unit." Upon receipt, the case was apparently filed
because State Bar has evidenced the same in this action. I alleged extortion, extortion fraud, and other
acts meeting the definition of wire fraud, mail fraud, and a pattern of racketeering activity and supported
it with the same evidence upon which my various prosecutional procurement claims rely. While the
March 2021 discipline case was ultimately rejected as "untimely," State Bar actually knew of the conduct
in fact. My experience also knows how absurd State Bar's processes are, specifically prejudicial to the
public and frivolity only in itself and its licensees (as reasonable person, in my shoes, would/or could
say they felt protected by State Bar - that statement would be estoppel). To the detriment of my person
and property, I verified on the State Bar's same and further in conform to its rigorous demands in hopes

Exhibit 21: 004
22-CV-01616-BAS-DDL

that I could finally invoke Supreme Court's authority to fix the wrongs of State Bar. Even those purported "functions" failed me, and I can't imagine how many others are injured through this scheme. Even after I demand the State Bar dispose of my moot vexant cases so I can file it in the Supreme Court, it doesn't answer me. I believe that is because State Bar is shield its urgent liability in this action by doing the right thing, instead, seeking to conceal my material claims and this broader issues from legislature, the auditor, the outside auditor, the public, and most certainly a court of competent jurisdiction like this one and to a vexed government claim.

10. Again, after June 28, 2021, I provided the Court of Appeal rulings that supported my claims and "new cases" were opened by State Bar involving DOES, public employees Anand Kumar, ISI David Interpreters, and Joy Worley. This time, there were violations of mandatory law upheld by the courts of appeal – including CRPC 1.1 and RPC 5-104 violations – in all material respects confirming the conduct I alleged with specificity during September 19, 2018 through June 28, 2020.

11. Again, in or around November 2020, I provided State Bar notice that firm Terris Vierlad somehow became ensnared in the fraudulent "slates" or "derivative" actions. [Much it ensnared complaint you in about May 13, 2000] for Amy Cooper, Tim Mehner, and Richard Mehner the Coinsurable Law Corporation and its associates were disqualified, upheld by the trial court's rulings in CRPCOM (especially mandatory law that are "inextricably]" appealed by focuses].

12. Since then, I've learned State Bar actually knew that Coinsurable has engaged in judicial fraud and non-judicial fraud, increasing in scope but systematically insular methods and victims since 2007 or earlier. I've also noticed State Bar of the cumulative conduct purportedly unknown to them that they should reasonably know. Even though State Bar actually knows of my injuries, and even another series of cases that affect more than $600,000,000 in investor capital (reportedly fed by a minor plaintiff), Richard Carlson, whose relevant testimony in standing for 9 class action lawsuits filed by Coinsurable is incorporated as specified in my prior declaration], each attorney with Coinsurable has a spotless disciplinary record, and the conduct continues. I recently invoked up a case presented against an attorney

<div style="text-align:center">4</div>

DECLARATION OF JUSTIN S. BEEK IN SUPPORT OF JUSTIN S. BEEK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21:005
22-CV-01616-BAS-DDL

or "extortion" for a \$1,700 payment. I believe from this one must think everyone is stupid, or at best they rely on the belief or they lack capacity – because there appears to be evidence of disproportionate use of monopolistic characterization of operations in favor of Camscrube Law Corporation against the other case if one were to look at these two objectively against one another done in a vacuum, and one were to act reasonably (based only on the amount in question being \$1,700 that triggered enforcement vs. \$400,000,000+ according to Camscrube himself involving mentions of state and federal courts and willful violations of court orders in June 2008).

13. I believe official acts and conscious presented by me, or the results therefrom without relying upon any other evidence, constitute clear and convincing evidence of at least disregard for me and my emotions personally. I have present at least acts of judicial and non-judicial fraud, compounded accretions by un-avoidable conflict, by citing the auditor's objectively neutral reports for all times before and after September 14, 2008.

ECONOMIC + NON-ECONOMIC DAMAGES

14. In relevant part, a February 5, 2009 letter from CTI recaps damages imposed by judicial and non-judicial fraud ranging from "\$15,000,000 to \$30,000,000" importantly, this excluded on the market value of publicly issues other CTI engagement of worthless investment land. I know Government Claims Act has definitions for my damages as lost or historical lost, and this letter leaded by the declaration of Rex Lumley forms the basis of my claim for "diminution value" or "his compensation" of those damages.

15. On or about February 26, 2009 – Western Trey Capital Resources (REX Venture Issuer: WRT) issued a press release on Globe Newswire connecting its merger through a "reverse takeover" (RTO) with CTI. A copy of that press release reflects CTI's 13,292,570 shares fully diluted, where fluid was entitled to 12.6%, or 4,459,080 common shares of the deal – and the role of CTI.

16. Around the same time on behalf of CTI and in furtherance of my shareholder interests and others, as CEO of CTI, I obtained preliminary approval to list our stock on a "sheet" exchange (NBB) which was

-5-

Exhibit 21: 006
22-CV-01616-BAS-DDL

1  cause then likely to involve institutional financing to grow the business. The board and management

2  expected to capitalize on our tremendous commercial sales growth from January 1, 2008 through

3  September 30, 2008 combined with the valuation of other companies at that specific time, where I was

4  CEO. The newly licensed facility in Palm Beach, CA was projected to achieve $200M in annual revenue

5  at maturity, and losing profit would allow us to consolidate other companies leveraging our valuation and

6  stock as currency. This would have resulted in, or reasonably would have resulted in, ongoing profits and

7  other growth of my share value. Nevertheless, I'm suing only for the value of the shares and at the time

8  without factoring any such growth in my claim of damages.

9

10  12. According to the CDO of Western Troy Capital Resources, "[i]n sense they had Western Troy issued

11  its press release announcing the Letter of Intent (to merge with CTI), Western Troy received an email

12  communication from Kenneth Catanzarite, a California attorney we had had no previous contact with

13  purporting to representing CTI." Mr. A today attaches a copy of that email to his declaration, where Mr.

14  Catanzarite says "[i]t has leave and reminded Mr. O'Connor who is the CEO of MPPS and CTI and is

15  such he has not agreed to any public merger] or powder else."

16

17  18. I include the Court of Appeals description of this from Catanzarite by reference as if set forth fully

18  herein (4A:98452). Because Mr. Catanzarite made a deliberate misstatement of material fact under color

19  of law affecting $400M in shareholder value of innocent securities, I know this is not subject to California

20  Code of Civil Procedure section 48 because Mr. Catanzarite was not (lawfully) representing my counsel for

21  anyone involved - let alone MPS, CTI, or O'Connor for the reasons stated by the court in GRS5516. The

22  Court of Appeal previously said the attorneys were subject to "mandatory disqualification" in a number of

23  law cases it filed under same action in MPS, CTI, O'Connor on September 4, 2010 (Dkt), Because I am

24  prosecuting a malicious prosecution action against other defendants not subject to this action, I cannot

25  that for only other exception to litigation privilege noted by the Supreme Court (other than malicious

26  prosecution) involves attorney fraud, which seems to be captured in the essence of the definition of fraud

27  and fraudsters under CRPC 1.0 and footnote [6]. If the Courts can't stay attorney fraud, attorneys may

28  freely act on behalf of other persons, binding them as long personnel competence in cristal class.

4
DECLARATION OF JOSHUA S. BECK IN SUPPORT OF JOSHUA S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 007
22-CV-01616-BAS-DDL

18. Mr. Loseby states "The CTI-Western Troy merger would have caused CTI shares to be listed publicly on the TSXS, a senior exchange thereby providing liquidity for CTI shareholders looking to sell their CTI shares...We estimated at the time that upon completion...CTI's potential valuation ranged from $100,000,000.00 and $240,000,000.00 [which was at the low end of what these sorts of transactions]" This is important because the shareholders with whom we were merging, and indeed who were giving us control, valued the transaction in line with other public valuations just like we wanted State for increases on February 5, 2019.

20. Mr. Loseby also states "Up to this point of Grimaud's claiming BPJ to sue CTI, and O'Connor to be the CEO of both, no had found CTI's management failures. True CEO is the responsive, fully capable of continuing CTI's operations, completing the proposed merger and then supporting CTI stock price with improved operations after the merger. The relationship with CTI had been very constructive that all concerned on the Western Troy side were very excited about CTI becoming a public company."

21. On August 28, 2019 the termination of the merger was publicly announced after Colbranette Law Co reprovision accessed the role of counsel for Celdivation Technologies, Inc. suing a now internal founded accounts and lawsuits after a trial court ruled against Clemente. "with every Dior of [the] being" on May 1, 2019. The Court of Appeal's adjudicated facts and comments are incorporated by reference as to the risk State Bar actions, helped in this, which could not happen without its authority.

21. Each CTI shareholder had a right to possess at least $3.87 USD fair market value per share of the public company at most 67,392,103 shares (including those outstanding owned by Western Troy).

22. Where I owned or beneficially controlled 84-55,000 such shares, I therefore claim economic damages of $16,462,250 from this. This had unique value to me, because it would be exempt from gains as a qualified small business stock, or a based kind of long-term capital gain; but not regular income, as will be the judgment in my favor], and I believe I would have helped witness the index volume of UNM in sales to further improve the value of all CTI shareholder stock. My non-economic damages should help compensate for the based injustice, so for $12,462,250 in economic damages. I've shown are claimed.

-3-

Exhibit 21: 008
22-CV-01616-BAS-DDL

23. I use the $123,487,331.01 in actual past economic damages from that transaction as a reasonable basis for calculating other damages related to my work-loss earning capacity, damage to personal property having special value, and non-economic damages. I believe the Court or a jury could use similar concepts, because I've shown an ability to meet and grow companies, and now that ability is materially harmed in fact.

24. Between the discovery motion Disclabase filed on September 5, 2018 through the time it was shamefully depleted while I was subject to fraudulent litigation underlain by licensees overridden by State Bar - I survived primarily upon money provided me by my broker through early distributions from an inherited IRA, and sale of her condo in Northern Virginia located at 3329 Deer Hollow Way, #314, Fairfax, Virginia 22031. The value was approximately $1,200,000 in the IRA, which she inherited from my grandmother Ruth Beams, and the condo proceeds were approximately $350,000. I used this money to support me while I was not paid, my family, my boyfriend's father while he underwent chemotherapy, all while I focused on CTB's success, as reviving the judicial sanctions judicial fraud known to State Bar. I would not have lost this money, indeed would have pursued other ventures without such risk and with perhaps better result, had Bar State Bar of California not allowed judicial fraud or other harm by certain licensees to tamber the evidence. Therefore, I claim $1,550,000 net of taxes and federal taxes, because the money was in an IRA or was not subject to capital as to the sale of her condo. For these items of personal property having special value, I claim the $3,500,000 since the specificity of this economic damage had special value in me.

25. CTB owed me $200,000, which I intended to waive or convert as part of the merger transaction. I will never be paid $200,000 because CTB was destroyed by State Bar licensees. Even though I was going to convert this into stock, I'm claiming that $200,000 economic damages since I'll never be repaid this money.

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 009
22-CV-01616-BAS-DDL

26. I have "Side A" coverage and D&O coverage through CTI. I provided by [illegible] documents (s). It was a previous policy with full coverage, and is nearly depleted. This policy had special value to me, because now I can't get D&O coverage at all. That's because I have more than six Fraudulent lawsuits [illegible] as on behalf of my company and its officers and directors, all of which were enabled by [illegible] that owe the underlying by the [illegible] without reasonable mitigation. One lawsuit was even filed against my D&O insurance, without authority, on behalf of my company CTI by [illegible]. So I claim the conversion in depletion of damages of $3,700,000 of my D&O coverage personally after September 14, 2018 that was unlawfully paid to licensees.

27. Because I don't have a source of income now and all of my funds were depleted in supporting my company (CTI), my family (Elaine and his Dad) and pets (Spartacus, Smokie, Helen, and Shiloh) - my credit score has plummeted from [illegible] 700 on September 14, 2018 to a [illegible] today. It went as low as [illegible] (500 or lower) but only went up because it appears many accounts were written off as bad debt. I went from having debts in no credit card debt (e.g. having an American Express Platinum Card and its "related benefits since 2013), to having only had 7 or managed to keep with about $3,000 on an unavailable credit total and my primary checking account. I was recently served with a lawsuit in case no. 37-2022-[illegible] (Attorney Chandle, [illegible] Account, Account Name). Before the conduct underlying my complaint and my motions in this action, I had little debt or easily manageable debt and no late payments show; I'm getting sued by J.P. Morgan Chase Bank because I can't afford to pay credit cards and its not worth discussing because I'm not sure when I'm going to get paid. My credit score had particular value to me, and its difficult to quantify what the damages are. Rather than put a specific number, I'm attributing the credit score impact as an economic damage causing non-economic that exceeds the economic damages. I describe why below.

28. At the time claim that was made my allegations of defense by their insurers submitted under my oath, I had 9,506 shares of Consult World Technologies Corp. plus an agreement (authorized by independent persons, and disclosed publicly in securities documents filed under applicable law) for $550,000 annual salary with up to $225,000 bonus, and premier benefits like Global Healthcare, a 401(k) with 6% matching, and an annual review of my salary to keep at line with public CEO's. That company I started

8

DECLARATION OF JUSTIN A. BECK IN SUPPORT OF JUSTIN A. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 010
22-CV-01616-BAS-DDL

was undergoing a merger at this time in which I was the largest shareholder @ ~$30M valuation. I left the CDS risk right before the merger to current 2013, and ultimately had to sell my stock entirely at a huge loss and because I had to money to live and because I was emotionally unstable due to State Bar's acts or failure to act. During my money, we were awarded honorable mention by First Company as a "World Changing Idea," among other accolades.

26. To further describe any severe emotional distress, at the end of 2020 and beginning of 2021, I was overwhelmed with anxiety that the State court actually ruled Chiamorche's non-judicial fraud to be protected activity in 2020 (in court). Since then, the Court has overturned all rulings in my favor, but I had to represent myself in the Court of Appeal and will inevitably face further irreparable harm. Because they are protected by State Bar, I still face attorneys licensed by State Bar can freely sue the courts and pretend to act on my behalf or others against me - because that's what I've proven the State Bar allows time and time again. I have reason to be terrified, where Chiamorche has reoffended its own clients in a malicious prosecution scheme I designed. The virtual certainty of further judicial and non-judicial fraud makes it important the Court exercise jurisdiction and control over Chiamorche's Law Corporation, and demands State Bar pay me where Chiamorche is likely to sue and hide.

SEVERE EMOTIONAL DISTRESS

28. As in many founders - I dedicated my professional life to CTB in good faith from the time I was engaged as a consultant, through the day I resigned as CEO on May 18, 2019. As do many founders - this time came at the expense of family, friends, and personal time. As in many founders - I hoped to achieve commercial success and a return for the investors who enabled a vision.

29. While I was consulting for CTB in January 2014, my father William died unexpectedly in Oceanside, California down the street. I had a voicemail stating if he could take me to Wd West the night before. It grieves me to think that I'm spent 7 years of my life on CTB, or that I could have spent more time with him if not for CTB - which was destroyed by judicial and non-judicial fraud enabled by State Bar.

-9-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21-011
22-CV-01616-AGS-DDL

32. While it was CEO of CFI, my mother Christine was battling terminal cancer from my home in Oceanside, California, so it was nearby would that her illness be assisted living. She died on my birthday the same year, September 5, 2016. I still suffer from illness and grief because I wasn't there for her enough due to my CFI commitments, particularly between June and September 5, 2016 when she was rapidly deteriorating. I know she would be proud of me in standing up to defendants through this ordeal and believe she will be proud of the results.

33. Around the start of the COVID-19 pandemic, I called my friend John Eidsmoe personally to thank him, and to apologize. I wanted to thank him for being a mentor and such a source of ongoing wisdom and support to me. I needed to apologize for his ungodly being named party defendant to Evisbros litigation. At the time, I had no idea that Osinanski engaged in a similar pattern of conduct before September 14, 2016. Irv and I attended a personal conversation, but he was sick. Before we ended the call, he said "Doohi, I believe in you." It gives me such anguish to think that he died a few days later. He died while he was being sued by Osinanski Law Corporation's Kenneth J. Osinanski, SBN 115938, Brandon Woodard, SBN 286424, and Fra Ienou Of Kady, SBN 280125. He's dead now, and now he's being sued by former associate to Osinanski Law Corporation and personal counsel, Jim Travis Mee, SBN 125687. I will see he did such as made to pay for this, because the didn't deserve his brutally unnecessarily persecuted, either.

34. Before the first lawsuit was filed by Osinanski, I thought the courts were a neutral place to resolve disputes governed by law, and that The State Bar of California stood to uphold the rights of regular people. I did so thought the Rules of Professional Conduct were binding upon all licensees as of November 1, 2018 – and that they weren't I put a suggestion that was foresaged for the gain of some licensees, but not others.

35. Since September 14, 2016, I've learned that Eviabros litigation is a "weapon of coercion" enabled by The State Bar of California selectively while courts endlessly administer vain SLAPP and privilege

-8-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

EXHIBIT 21: 1012

22-CV-01616-AGS-DDL

in the same attorney" focus (believing, in deed or implied, that State Bar is doing the job). This tells me fictious licensor & contractors what the founders of our country should do, and if it "converts" the intentions of legislators into economic gain for licensees. This makes me angry and depressed for all people who are oppressed like me, especially since some of them could even do much, if anything, about it.

36. Since September 14, 2008, I've learned the State Bar knows that Culozomba has engaged in a serial acts of unjudicial conduct non-judicial denial dating back to 2005. Since September 14, 2008, I've learned that no attorney would reasonably sue State Bar as I have, or at least did so what a lot of told me. That's because they would fear the malicious exercise or abuse of State Bar's licensing, regulatory, or disciplinary functions for non-public reasons and misled as the purported immunity public employees "enjoy"

37. Since September 14, 2008, I've learned the State Bar uses its authority and monopoly for private consideration, promise of consideration, or other undue influence. I do not need discovery, State Bar, or an export because data from the Auditor proves it by at least clean and convincing. I believe an auditor, by definition, relies upon at least a preponderance of evidence (or the equivalent) to even the worst cases of proof in conducting tasks. If 100s+ of cases are disposed without discipline, 10% of cases involve private letters to dispose of actual injury, 33% or more invoke actual or implied conflicts of interest, 800,173 accounts involve an high as 20% negative balance, State Bar refuses to investigate such loss enforce 800,173 accounts violations (known as to it, and 800,173 accounts are finding State Bar through interest but did e and for symbol and predicate conduct meeting the definition of racketeering activity and State Bar is spending unethically on its hiding operations with absolutely unacceptable results. Functions of government are actually being used to further interests other than those of the public or a given complainant, and 800,173 accounts have been found to be used for money laundering, wire fraud, and mail fraud. The veracity I've shown is consistent with pretrial exemption, but certainly enough to uphold my monetary judgment for damages.

SUBSTANTIAL FACTOR, DEFENSE, IMMUNITY

-5-

DECLARATIONS OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 013
22-CV-01616-AGS-DDL

38. I believe that my damages and ongoing harm could not have happened without The State Bar of California's ongoing disregard for the public before September 14, 2018, ongoing benefit or disregard for the conduct of licensees engaged in fraud, and me specifically after September 14, 2018. I say this because I've learned that the licensees associated with Catanzarite Law Corporation have engaged in serial acts of fraud and judicial misconduct that State Bar knows is causing severe injury dating back to 2005. I've also learned this after analyzing objectively neutral conclusions (which are derived by at least a preponderance of evidence, on information and belief) from the California State Auditor, where State Bar is engaged in similar conduct in an official capacity. So, if The State Bar of California wasn't a main or direct factor in my harm after the first time it heard of this conduct, it would be unreasonable to suggest State Bar is not at least a proximate, and most certainly a *substantial* factor in all the conduct of its licensees.

39. I do not believe there to be any defense to my action against The State Bar of California, because one theory of my action is based upon State Bar's failure to perform one or more mandatory duties, where any act or series of acts were a substantial factor in my harm under Government Code 815.6. For instance, one commenter noted in *Haggis v. City of Los Angeles*, 22 Cal.4th 490, 499-0 (Cal. 2000) ("We cannot agree with the City and amici curiae that liability under section 815.6 requires that the enactment establishing a mandatory duty *itself* manifest an intent to create a private right of action, for their position is directly contrary to the language and function of section 815.6. When an enactment establishes a mandatory governmental duty and is designed to protect against the particular kind of injury the plaintiff suffered, section 815.6 provides that the public entity "is liable" for an injury proximately caused by its negligent failure to discharge the duty. *It is section 815.6, not the predicate enactment, that creates the private right of action.* If the predicate enactment is of a type that supplies the elements of liability under section 815.6 — if it places the public entity under an obligatory duty to act or refrain from acting, with the purpose of preventing the specific type of injury that occurred — then liability lies against the agency under section 815.6, regardless of whether private recovery liability would have been permitted, in the absence of section 815.6, under the predicate enactment alone. (See *Crusader Ins. Co. v. Scottsdale*

-13-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

1    *Ins. Co.* (1997) 54 Cal.App.4th 121, 125-126 [distinguishing between use of enactment directly to

2    establish private right of action, which requires legislative intent to create such a right, and use of

3    enactment to establish one or more elements of a preexisting, independent cause of action, which does

4    not require legislative intent to create a cause of action in the predicate enactment].)") I don't know how

5    I could possibly spell out more statutory schemes or causes of action to obtain my judgments.

6

7    40. I believe a recent case entitled *Brown v. USA Taekwondo* (2021) in the California Supreme Court

8    seems relevant to my case in establishing mandatory duty, if my statutory pleadings and proof somehow

9    fail to invoke such duty for liability under GOV 815.6. My point in citing *Brown* is to make clear the role

10   that State Bar plays in the conduct of its licensees, just as USAT was found to have such control over

11   Gitelman who was concurrently causing severe injury and lifelong emotional distress (at least, implied

12   under the circumstances to any reasonable person). I provide proof with this declaration that even

13   Catanzarite Law Corporation is required to obtain approval from State Bar each year to operate, and that

14   State Bar's systems failed to objectively identify that Catanzarite Law Corporation was suspended for tax

15   liens as of the date of its last "renewal" with State Bar.

16

17   41. I do not believe State Bar understands the Government Claims Act since they misinterpret the

18   "statutes" after GOV 815, and they seek immunity while avoiding or neglecting duty or liability, and

19   disclaim mandatory duty without recognizing that BPC 6001.1 itself is "not the end of it" (*Guzman*). My

20   point is that State Bar would like the Court to move all the way to immunity under 815 despite my vested

21   claim to seek judgment for my damages, or by converting my government claims based on an antiquated,

22   irrelevant decisional law from 1948 (*Walker*) or its more irrelevant successor (*Bollotin*), without

23   recognizing that enabling violations of mandatory duty would "completely eviscerate" that section GOV

24   815.6 designed as a "statute" resulting in liability in this action.  It also seems relevant that State Bar,

25   defendants, and each of them, all deny (or ignore) their duty to exercise a standard of care under the

26   specific circumstances and standing to me. My other point is that State Bar knew that members of the

27   public like me would be injured the way I was injured by its licensees – namely – by appearing corruptly

28   and willfully, without authority, to extort litigants. State Bar knew (and knows) that I was previously and

-14-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

conduct to be seriously injured. I've shown that it really doesn't matter what injury exists or what allegations are proven to State Bar – objective analysis of the auditor conclusions (e.g. those involving RICO, private letters, repeated dispositions of cases without reasonable basis of fact or law, actual involvement in actual conflicts, implied involvement in 257 or more conflict than those identified by California State Auditor between 2005-2022, misrepresentations to legislator, purchase of a $95M building when staffing plans were not meeting the needs of public protection, your documentation from 2005-2022, high turnover in key positions, whistleblower Joseph Dunn, $75,000 monthly could form to 25% of staff so currently on 2010 process is more likely than not to any person acting reasonably. The State Bar of California's licensing, regulatory, and disciplinary functions" are "uncertain" in fact to advance the personal interests of certain persons, to the direct and indirect injury of innocent members of the public. I happen to be one of those members of the public, and will not stand for this treatment.

42. More specifically, I believe State Bar's licensing, regulatory, and disciplinary functions are used to advance the direct and indirect interests of a criminal enterprise operated by or through at least 200 lawyers with RICO accounts, and that California State Auditor can identify these persons through filtering case metrics and disproportionate complaints without discipline, evidenced by the disproportionate treatment of lawyers whose cases are not documented where others are, or when the licensee frequently have cases dismissed at similar or pretrial, or that they are receiving private letters that isn't even consideration to the injured client or person, or are lawyers employed by firms with lots of complaints and no scrutiny as opposed to not employed by firms with a single complaint that is comparatively "de minimis" but specious and to present a false sense of scrutiny to the public in a scheme to defraud hiding in plain sight, or those licensees whose RICO complaints are disproportionately dismissed as "de minimis," those licensees having more then one RICO account violates with a negative balance, or firms with disproportionate amounts of dismissals to statistical mean and of course according to actual RICO account subjects related to the same lawyers and law firms and the transactions and beneficiaries evidenced by these actual bank statements (obviously not whatever such persons "say" or provide State Bar, for the avoidance of doubt). I believe any such suspicions or audits must be conducted by California State

-5-

DECLARATION OF JUSTIN A. BECK IN SUPPORT OF JUSTIN A. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

EXHIBIT 21; 1016
22-CV-01616-BAS-DDL

Auditor, or a third-party selected by State Auditor empowered from State Bar or DOES' expression that has never performed such service, the State Bar previously)

42. More specifically asserting in at least a preponderance of evidence, I believe State Bar is enacting and further investing the proceeds annually (URAF+) from a pattern of conduct meeting the definition of racketeering activity through RICO Act, which it does in violation of mandatory duty causing harm to others. While I am certainly not expert, I do not believe legislature intended [nor granted] public employees, officials, or The State Bar of California to "convict" its "lawfront" in furtherance of private interests, at least not without "paramount" regard for public duty first. As an individual non-licensee of State Bar, I adamantly object to the existence or constitutionality of any prejudicial authority to conduct or enable fraud, corruption, oppression, malice, money laundering, wire fraud, or mail fraud.

STATE BAR = SUBSTANTIAL FACTOR TEST

43. State Bar, or its violation of one or more duties through one or more employees' official acts, was a substantial factor in my harm. First, State Bar has been directly causing and enabling my harm since January 2020 while in a unique position to prevent the harm. Also, Cokmurite, and each of them, and Cokmurite Law Corporation, require the express authority of State Bar to practice law in California. There is no discretionary decision involved for one or more defendants to allow the conduct I face here subject to. Licensees into and State Bar's authority, together with the permission of the other jurisdiction, make supersumption of competence, to sue that authority to other jurisdiction pro hac vice. Rather, State Bar has statutory authority (and I believe, a duty to act, law, equity, and justice) to invoke proceedings to remove authority over the practices of Cokmurite Law Corporation. State Bar has decided to "abate" its enforcement of mandatory law in furtherance of Cokmurite's right for inherent consideration, and to the devastating detriment of my rights, money, property, and business interests. At literally every stage of my injury that continues, State Bar has either enabled the conduct (as an irrevocable condition precedent thereof to practice law, and the binding nature of general speech it private forums that accompanies it through State Bar Act and CBFP), actually participated (through accepting fees from, and

-16-

DECLARATION OF JUSTIN E. BECK IN SUPPORT OF JUSTIN E. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 917
22-CV-01616-BAS-DDL

1   being the sole agency responsible for, each of them], supervised [under CRPC 5.1, without reasonable

2   steps to mitigate], or otherwise expressly permitted Catanzarite to injure me. It would be easiest to

3   claim that State Bar is not at least a "substantial factor" in my injuries, since I believe I have proven it to

4   be the most significant factor. My case proves that State Bar is not equipped to protect the public from

5   deliberate fraud even in the face of overwhelming evidence. My case proves that the purported complaint

6   process is not sufficiently informed to even investigate fraud using the voice and mail when furnished

7   with court orders. I don't care how State Bar seeks to frame or shape a defense to my action. They have

8   evidence it is disgusting abuse of power and impunity and implacable retaliation.

9   45. I also I need to prove State Bar was a substantial factor in my injury when I've proven that State

10  Bar's violation of BPC 6001.1 or any of the single or cumulative statutory schemes pleaded [Gorman]

11  and proven involves a violation that was a substantial factor in my injury. I was injured. I believe

12  legislature intended that BPC 6104 and 1.3(8)(3) were intended to prevent the injuries I sustained based

13  on their plain language, just as BPC 6077 is intended for the avoidance of doubt that CRPC are binding

14  upon all licensees as a matter of law [and not merely ethically]. I believe State Bar's [CRPC 5.1 [under BPC

15  6075] was intended that any supervisory person also had a duty to stop, or at least act reasonably in

16  mitigation, other violations of CRPC, or State Bar Act were known to them. Instead, State Bar believes

17  [which is not supported by reasonable belief, to be clear] that it "enjoys" absolute "discretionary

18  immunity." I believe this is "biblical" and a "cover-up" of the ancient schemes used to defraud others

19  like in ongoing Attorney Misconduct Complaints in 200 Languages, Client Security Fund [that takes

20  applications only after final discipline, which cannot cover of 99% of cases never even saw a filing, thus

21  implying 99% or greater actual liabilities concealed from the public and legislature – while escalating

22  licensees for at least 5-10 years per instance], Complaint Review Unit that keeps complaints as long as

23  they want and disposes of them at an alarmingly high rate without any reasonable basis of facts or law,

24  and finally the public fraud that is "et Re: Welfs" instruction upon which State Bar incredibly relies in

25  seeking to dispose of my claims against the government. I believe these schemes are all uniquely designed

26  to purposely delay or precondition delays to destroy evidence, to delay public remedy by threat of licensees or

27  other persons unknown, to send invoices and statutes of regular 6306 this use, and to advance the owners,

28

-5-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

EXHIBIT 21 - 308
22-CV-01616-BAS-DDL

1  interests, or concurrent "protection" by State Bar licensees that are working multiple sides of the issue

2  (under B&C 6072, CRPC 1.7, CRPC 3.3) which unreasonable person or attorney would do.

3

4  46. As an objective matter, State Bar cannot reasonably prove its conduct was undertaken with a

5  reasonable degree of care and care duty, because the Fourth District Division Three seem to agree with

6  my argument contained within my verified complaint and amended complaint and/or at any of my causes

7  of action involves the word "reasonable." My point is that "reasonable" is defined as a matter of law

8  (CRPC 1.01, B&C 6072). No matter what Nunley, Kumar, Morgenstern, DOES 1-30, and State Bar

9  independently believe, their actions or inactions as it relates to my injuries are unsupported by reasonable

10  belief where they involve violations of CRPC or State Bar Act. This is an objective standard measured

11  against the conduct of a reasonably prudent attorney. As repeatedly explained by each State Bar actors

12  since January 2019 – representation of adverse parties before the same tribunal (involving an intake

13  process, or subsequently) is not objectively reasonable, and it in fact violates of mandating law that

14  involves irreparable harm. Further, the conduct (when duty is breached) an attorney acting for State Bar

15  is clearly and easily governed by the very same Rules of Professional Conduct and State Bar Act that

16  defendants seek to unscrupulously exploit for interferences of others (but not me another non compulsive

17  defendant in political and non-political fraud). We could look for fraud, bribery, or scheme (included in

18  my amended complaint to invoke State Bar's violations of duty. Each Morgenstern, Kumar, DOES

19  (attorneys), and The State Bar of California licked. I rely need to show one of them failed in their official

20  acts of government, where my act was a substantial factor in any injuries under the first cause of action.

21

22  47. After the instant action was filed, The State Bar of California Office of General Counsel cannot be approved

23  for or imputed liability would defendants (State Bar, Kumar, Nunley, Morgenstern, DOES 1-30 including

24  elected officials, alleged to have been acting in an official capacity B&C, and imputing derivative

25  damages to State of California). Because State Bar's Officers, our Board of Trustees, nor Office of

26  General Counsel can exculpate a conflict on behalf of themselves as a matter of law based upon my

27  allegations and evidence of fraud, corruption, legal malice, and oppression, The State Bar of California

28  concedes that the conduct alleged and evidenced by me was ended is an official capacity. If not, The State

---

-18-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 2 E-018
22-CV-01616-BAS-DDL

State of California has, in fact, violated CRPC 7.10(E)) in this action while concurrently supervising the judicial and non-judicial fraud thrown to it involving those attorneys associated with Catanzarite Law Corporation, and each of them under CRPC 5.1. For instance, The State Bar of California cannot be willing to indemnify those persons who were not acting officially for State Bar, or it would not have appeared for them in my action after vacating my rights to sue (particularly when my allegations included civil RICO 1962). This simplifies and streamlines the instant case, because State Bar is liable for all official conduct of its employees and elected officials – which is actually codified. While I could prove that unofficial conduct was also harmful, I shouldn't be burdened with trying to pierce the deliberately ambiguous machinations of The State Bar of California or its purulent organization not the purposefully gray zoning line between them that I believe is actually real or black, and not subject to reasonable debate.

48. Government Claims Act extends tort liability for official acts of employees and/or elected officials (§815), public employees (§815.2), or elected officials (§815.6) based on principles of CCP 1714 and built upon the doctrine of respondeat superior, or derivative liability. If it read that or stated itself under any cause of action based on negligence, or violations of mandatory duties, then the Court will find that it was a dangerous condition(§835). If State Bar not its public employees nor its elected officials nor its dangerous conditions (also inferred) were a substantial factor in my harm, then State is liable for the conduct of State Bar on the same legal premise. While I do believe, and it is supported by reasonable belief and I concede, that State of California exercised reasonable care through legislature seeking to "fix" State Bar – as evidenced through enactments and its own intent since the passage or amendments to BPC 6000.1 and its underlying statutory schemes. However, I believe these same enactments and attempts to cure State Bar's lip-actions and emotionally inflexed/conduct prove by at least preponderance of evidence the violations of State Bar for which State is liable for their's judgment under Government Claims Act. I believe this would apply to State even if State Bar is immune. I also believe any assertion or claim of immunity under the circumstances of my case to be objectively manifest as a matter of law, and offensive as a matter of public safety and civil rights.

DECLARATION OF JUSTIN A. BECK IN SUPPORT OF JUSTIN A. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

49. When I learned that State Bar was a substantial factor in my injury and the destruction of my company and its shareholder value - I sued State Bar gave me the right to pursue my claims in this Court after it denied my claims (without so much as a phone call). If this Court declines to grant my motion for summary judgment or summary adjudication or it otherwise fail to obtain my damages in this action through the Court's process, I'm prepared to try this case before a jury of my peers today and beg the Court will allways once to be heard by a jury upon the earliest possible date if my Motion for Summary Judgment or in the Alternative Summary Adjudication is not granted in my favor. If this case does see a trial by jury, I reserve the right to seek other damages from individuals for those acts which may be deemed "unofficial," and further to increase, through more reasonable formulas, my claims of economic and non-economic damages, including lost profits or other values damaged for which I have neither the time nor energy to prove further today.

50. If a neutral court does not grant me my damages in accordance with the law, I believe The State Bar of California or the adjacent alleged enterprise will remind itself as a metaphorical vampire of equity, civil rights, property, and money from capital riffles that rightly upon its production.

51. Attached to this declaration as Exhibit A is a true and correct copy of a letter proving demands actually knew they were damnifying a $265M transaction on which CTI shareholder value was $2.67 per share. To the extent this may be otherwise asserted as privileged, this letter is subject to FRTD § 996 because Camarabis's scheme and actual fraud, intent to deceive, and the use of wires and mail in furtherance of the scheme are all judicated facts now. Camarabis also corruptly asserted the role of counsel for CTI, when I was CEO. I also write to privilege personally and, in my capacity, as former CEO of CTI for purposes of proving my damages only in my personal capacity and as a shareholder, because the privilege doesn't belong to Camarabis or State Bar anyway.

52. If I've failed to show this elsewhere - Kenneth Joseph Camarabis solicited an individual "Michael Carlson" in or before [DATE] at his home. Mr. Carlson testified that he did not believe he had suffered any damages, and that he was not seeking an attorney. I believe, based on the actual testimony from Mr.

-3-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 1021
22-CV-01616-AGS-DDL

1   Carlson's deposition, that Mr. Catanzarite brought Mr. Carlson to a deposition on the false premise that
2   it was for a settlement discussion. What has followed includes vexatious spoliation ... matters under
3   "representation" Carlson filed by attorneys associated with Catanzarite. Mr. Catanzarite was repeatedly
4   admonished by state and federal courts for willful discovery violations, refusal to adhere to professional
5   standards, providing a false affidavit to the court, deliberately undermining the bankruptcy process,
6   creating a vehicle with deliberately false and misleading statements affecting at least $450,000,000 in
7   investor capital by Mr. Catanzarite's own admission involving 13,000+ actual creditors across state lines
8   – all arising from this false, or at best, unlawful plaintiff "Richard Carlson." The 14th District Court of
9   Appeals held a series of stories, including the deliberate violation of an injunction, and other emergency
10  filing. I learned the State Bar had a false-blocking data on tax violations of filed by Kenneth Catanzarite
11  in June 2008 after requesting public records. The deliberate judicial and non-judicial misstatements by
12  Mr. Catanzarite for "Richard Carlson" involving securities slaps still pertinent in my case starting with
13  "Denise Wolverton" on September 14, 2018 and others like "Fazaie Group" or "Menahem v. Cole." I
14  believe this evidence that persons at State Bar are willfully enabling this behavior for undisclosed
15  consideration, or I believe that the abuse is evidence that State Bar lacks resolution mechanic and essential
16  capacities warrant such a massive operating budget.

17

18  53. Attached to this declaration Exhibit B is a true and correct copy of the response to a recent records
19  request concerning Catanzarite Law Corporation under these sections of law applicable to entities used
20  to practice law. My point is that State Bar controls Catanzarite Law Corporation and its lawyers. They
21  couldn't have done any of this to me, nor CVI shareholders, without getting their "SBN" credentials on
22  each pleading, orders of motion, or similar papers. Catanzarite Law Corporation couldn't be used to steal
23  proceeds of its unlawful activity without State Bar's (fiscally) other stamp.

24

25  54. I've concurrently requested judicial notice of, and data attach to this declaration as Exhibit C, the
26  Court of Appeal's opinion in Beck v. Catanzarite Law Corporation (G205296). My point is that State
27  Bar knew all of these facts and law in January 2008 as it relates in one specifically and they did nothing
28  reasonable to help much less mitigate the harm. The findings of four or more courts of appeal are virtually

-24-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21 t. 022
22-CV-01616-BAS-DDL

identical to those material allegations I made in March 2021, known to State Bar. I believe any of my causes of action that are sufficiently evidenced in the Fourth District, Division Three Court of Appeal apply to the instant case and State Bar's official actors/acts. My point is that State Bar knew again in March 2021 about how it was harming me and other notable, innocent people (including Irving Einhorn, also a credible State Bar licensee and nationally recognized legal professional who served the United States Securities Exchange Commission). The ruling in my case regarding the evidence of malicious prosecution against these persons/actions specifically/the conduct that State Bar was made aware by me. Any reasonable person would agree that this is outrageous insofar as it involves me and my harm for my time onboard. State Bar is thus engaged in an act of at least legal malice in my GOW 851.5).

58. Attached to this declaration as **Exhibit B** is a true and correct copy of a summary of stock and/or warrants that are publicly accessible evidencing my prior ownership and the value of Cuentas World Technologies Corp. stock on March 2021. Within the shares themselves were damaged. I subsequently experienced loss of connection as a CEO and signed I could not act in that capacity as of April 2021, after which I lanced attention to briefing 0889590. I'll link to this case, Kenneth I Catanzarite could seek a judgment of 1+ $2200/against me for legal fees. If the timing of this is out of evidence and it talks to my capacity as CEO, I will obtain oral testimony from others in trial as to the substantial factor that State Bar played in the disruption of my personal and professional life – and the value of my stock after March 2021. I'm only claiming the fair market value without any consideration of the warrants or updating incentive detailed.

56. I was one (for twenty years or so) a USAA Federal Savings Bank member from the time I was at least 18 (1998) through sometime after September 14, 2018, USAA closed all of my accounts (checking, savings, credit card) and would not say why which gives me anxiety and is embarrassing, now that my parents and grandparents are all dead. My family had membership with USAA dating back further than I know. My dad was in the Army reserve at some point, my maternal grandfather was an officer serving the United States in World War II, my paternal grandfather William Reich also served this country and was awarded a Purple Heart and a [illegible]. My uncle was a Navy Captain, once for USS Constellation on the Bicentennial. My cousin is a Navy Seal. I believe the Newburn Negation Heil against me on

-22-
DECLARATION OF JUSTINE S. BECK IN SUPPORT OF JUSTINE S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21, 023
22-CV-01616-BAS-DDL

1 | September 14, 2018, enabled by State Farm, was the cause of my membership and accounts with USAA
2 | suddenly and embarrassingly being revoked and terminated without explanation despite my family's
3 | service to the country. It is annoying, depressing, and causes me emotional distress every time I hear
4 | commercials with Rob Gembroski or others ("W - S - A - A") talking about its exclusivity when my
5 | membership seems broken/been terminated by fraud, together with the slander of persons and conflict against
6 | me. I get to remember and feel these severe emotions anytime I hear a commercial for USAA. Before
7 | September 14, 2018, USAA treated me better than any major bank and my family housed most of our
8 | assets there. My experience is not entirely unique in this way, because I spoke with other insured
9 | defendants targeted through judicial and non-judicial fraud thrown in State Bar, and I know it impacted
10 | their ability to obtain mortgages, their family lives, their career options, and even adversely affected their
11 | life thereafter as advisors or founders because they were afraid of being sued for no reason without
12 | probable cause (or it, and was, the case here). That could not possibly happen without State Bar's
13 | authority, at that. I never got to know how it impacted Fr Kathren's family life or business affairs because
14 | he is dead now.
15 |
16 | 57. I can't afford to pay my proof cards and nowhere only remember and issue Capital One that I could
17 | keep current, and State Bar was a substantial factor in this for all the reasons I've proven by at least a
18 | preponderance and allegedly beyond any reasonable doubt. Any reasonable person would agree that my
19 | life and property has been, and will be, impacted by my credit now before and after September 14, 2018
20 | (when it was closer to 700). Now I can't obtain a mortgage, use a reasonable loan for anything, nor a
21 | reasonable credit card with benefits. Before, I had a credit card with no credit limit and a history of perfect
22 | payments. I could use my American Express Platinum Card benefits all over the world, and often did. I
23 | can't anymore. Other than my other damages cited, debts that are now closed accounts, according to my
24 | credit reports today, are:
25 |
26 | $33,497 (American Express Platinum)
27 | $4,964 (American Express Business Platinum)
28 | $8,849 (J.P. Morgan Chase)

-23-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 221: 1924
22-CV-01616-BAS-DDL

1    $18,590 (J.P. Morgan Chase)

2    $12,570 (J.P. Morgan Chase)

3    $11,566 (J.P. Morgan Chase) – Now Subject to D96 Action s.16 (July 2021)

4    $10,893 (J.P. Morgan Chase)

5    $4,568 (J.P. Morgan Chase)

6

7    38. If we (my boyfriend Ethan and I) weren't fortunate enough to have secured our house in Oceanside,

8    California before September 14, 2018 due to another venture' pursuit – we would almost certainly be

9    without a home or place to live right now since then Bos eld hand leave anything to stop Oceanside.

10   39. One of our (three) employees at CTI, a production manager named Dan working for our subsidiary,

11   rescued two kittens from underneath our CTI production facility in Glendale, California. They were

12   about 2 weeks old and abandoned by their mother (a 419 degree heat. We drove out to see Dan at his

13   home in the desert, picked them up, and nursed them into health (false illness over the week). These two

14   kittens are 'Global and 'Siskin. There were times after September 14, 2018 that I would look at my

15   boyfriend Ethan and see that cats and fear that we would be homeless, and that we couldn't keep the cats

16   in cages while we were homeless or keep them outside with coyotes. Specifically, I would unwillingly

17   envision one of them in a cage or a shelter (Siskin) and feel the anguish that I couldn't do anything about

18   it because our home was taken from us under color of law and artificial right by because Kenneth J.

19   Catanzarite. To that end, Catanzarite even used Siskin's wholly owned LLC holding our house to harass

20   him and to extort a settlement. I have also worried and been anxious that unduly would worst Spartacus

21   and Siskin because they are old and not 9% to even homes if we were displaced by because Catanzarite.

22   I still worry about these things and it causes me anxiety, but I know that I'm going to obtain a judgment

23   for my damages in this action since the government gave me a right to sue. CTI employee Dan, as well

24   as all of our other hard-working CTI employees that did nothing wrong, also lost their jobs after September

25   14, 2018 when CTI's operations wound down and its customers harassed off Jobs; fraudulently schemes to

26   control CTI in which Brian Soo was a substantial factor. The State of California also lost a tax base, as

27   did those local jurisdictions where CTI operated before the company was destroyed by Catanzarite under

28   State Bar authority, and holders of securities in CTI, FinComm, Weston Tony, and more. Each CTI

---

-25-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF PLAINTIFF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21 t 025

22-CV-01616-AGS-DDL

shareholders, like me, lost their proportionate value of CTR's merger at $3.85 per share from the exact facts underlying my case.

60. When I previously had PPO health insurance before September 19, 2018, I now have Medi-Cal this year. Although I hadn't experienced a major physical bodily injury in years unlike any described or evidenced to which State Bar was a substantial factor, I recently injured my arm falling out of an attic at home. Initial diagnosis is a loose biceps tear that may require surgery (pending MRI and consult in August 2022). I believe a surgery or alternative intervention for my diagnosis would normally occur within a week or less after an immediate MRI upon my ER visit in May 2022, however, I have not yet even consulted an MRI. After I spent ~8 hours in the emergency room the day of injury, I felt with an X-ray and referral to a surgeon that would not accept my coverage. I am so fortunate that for State of California provides me with health insurance this year or I would be without insurance, but the level of my care is certainly impacted already. I believe, or at least hope I will ultimately receive competent surgical or specialized care for this injury, but it has not been easy. The surgeon I was referred to specifically by the ER was determined to be out of network for my coverage. I believe they were easily accessible through my prior coverage. I don't seek damages for medical coverage, but the physical inconvenience will cause suffering, and it will add injury to injury insofar as it will have a materially adverse effect on earnings capacity in the near term what I am already suffering from the deliberate abuse of the justice system against me, with nobody to protect me but myself.

61. I have experienced, and will experience, mental suffering where officials and of State Bar were a substantial factor. I have experienced, and will experience, loss of enjoyment of life where officials acts of State Bar were a substantial factor. I have suffered, experienced, and will experience inconvenience where official acts of State Bar was a substantial factor. I have suffered, and will suffer, emotional grief where official acts of State Bar were a substantial factor. I have suffered, and will suffer, severe anxiety where official acts of State Bar were a substantial factor.

-3-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 026
22-CV-01616-AGS-DDL

62. I have experienced, and will experience, humiliation where official acts of State Bar were a substantial factor. For instance, many of my personalized business relationships were unduly fractured by the conduct described in G059766 where State Bar was a substantial factor. One of my best friends and mentors, Miguel Motta, is still unjustifiably a defendant in the unlawful scheme described in G059766. I haven't spoken to him since last summer after I experienced a bout of severe depression in which State Bar was a substantial factor. I have suffered violation of my purportedly inalienable rights to life, liberty, the pursuit of happiness, and property that I believe(d) to be protected by the United States Constitution and upheld together with other laws by competent persons who would reasonably seek to prevent, restrain, enjoin, or otherwise cease to enable the conduct I've experienced in fact.

63. I have experienced, and will experience, extreme personal and professional loss of consortium in which State Bar was a substantial factor. Specifically, I can't reasonably be recruited or retained as CEO of a company unless I start it because of State Bar's enabled acts. If I start a company, I do so reasonably knowing that I may not obtain the same, or any, D&O policy but for the conduct I've proven before September 14, 2018. I had great coverage from Scottsdale which has been amazing in light of the fraud in which they are also victimized. Most importantly, the acts and trauma I've proven caused adjacent distress between me and my boyfriend Brian during the last seven years. After both of my parents died in 2016 while I was helping build or leading CTI, his father received a terminal cancer diagnosis. He underwent treatment while staying at our home. State Bar was a substantial factor in the absolute disruption of our home, liberties, and happiness. After losing my parents, I experienced the acts proven in this case (by law or fact) and cited by the Court of Appeal in G059766 with actual knowledge of State Bar and other defendants. I believe State Bar has absolutely no regard for the public, so it is an affront to justice now that they pretend to protect in light of my evidence. Nobody else should have to endure what I have endured, at least not without paying through the nose (and sooner). Brian nor I should have to think about working again, much less with the same capacities we and/or I had before September 14, 2018.

64. I will file additional declarations and support for damages following the Court's acceptance of my moving papers on my motion for summary judgment or in the alternative summary adjudication. I do not

want my hearing delayed past October 4, 2022 at 2:00PM or as soon as the matter may be heard, and I

will file a separate motion before that hearing seeking this Court to establish an expedited trial date for

good cause to avoid further, unnecessary delay.

65. I believe the conduct and pattern of nativity I've evidenced is a direct and acute threat to continue,

and that it has infected and will further deteriorate our democracy without reservation by an objective,

neutral court.

66. Neither The State Bar of California nor its public employees nor its elected officials are allowed to

rob or injure persons in California or the United States – at least not without facing the liability auckuns

of Government Claims Act (GOV 810, et. seq). When there is negligence, liability is the rule, and

immunity the exception. No reasonable person would claim immunity under the circumstances of my

case, at least not in 2022. Reasonable is a defined term, where reasonably prudent is what is learned in the

"first semester of law school" and serving in these legal objectivity, I believe monetary judgment in my

case will help show State Bar what reasonable means, because they reasonably should know their conduct

is tortious, and it is unreasonable for the official acts to result in the injures.

67. I believe I have a right to seek additional damages beyond those defined in this declaration in support

of my motion for summary judgment, or in the alternative, summary adjudication until there is final

judgment in this action – but I claim to have sufficiently proven at least

<u>**$8,603,000 TOTAL PAST & FUTURE LOST EARNINGS**</u>

<u>**$25,451,526 TOTAL LOST EARNING CAPACITY**</u>

<u>**$78,665,999 TOTAL DAMAGES TO RECK PROPERTY HAVING SPECIAL VALUE**</u>

<u>**$112,820,525 TOTAL JUDGMENT FOR ECONOMIC DAMAGES**</u>

-32-

DECLARATION OF JUSTIN A. BECK IN SUPPORT OF JUSTIN A. BECK'S MOTION FOR SUMMARY
JUDGEMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 028
22-CV-01616-AGS-DDL

68. I believe non-economic damages under these circumstances support this Court's award of a multiple that meets not less than a high degree of culpability and aggravation. For that reason, I seek judgment in my favor for $694,440,249 in non-economic damages in addition to my economic damages of $138,889,049. I believe any rating of "high" culpability or aggravation is appropriate, and more so that I live in the middle of a scale that means to be reasonable under the circumstances.

$138,889,049 Non-Economic Damages Low (at 1X Economic)

$347,221,123 Non-Economic Damages Medium (at 2.5X Economic)

**$694,440,245 Non-Economic Damages High (at 5X Economic)**

$1,041,669,368 Non-Economic Damages Seven (at 7.5X Economic)

$1,388,893,690 Non-Economic Damages Extreme (at 10X Economic)

**$694,440,245 TOTAL JUDGMENT FOR NON-ECONOMIC DAMAGES**

69. While I understand punitive damages are not applicable to claims subject to a Government Claims Act, I have sued each DOES 1-50, Kumar, Morgenstern, and Nicoley in their official acts or individuals. State Bar is liable for their tortious conduct derivatively, and under GOV 8915 and GOV 8915, For those reasons, I believe the circumstances of my case require punitive damages – satisfied I need not prove who or what because the acts were official, and State Bar or State is liable. For those reasons, I seek punitive damages as a multiple of my combined economic damages ($138,889,249) and non-economic damages ($694,440,245) totaling $833,335,494. I understand that punitive or exemplary damages are reserved for those cases involving intentional tort, which appears to be codified by GOV 8915 since I've named State Bar in this action, and the intentional tort was official. In any event, I understand punitive damages judgment should be on a similar scale as the foregoing, where it is based on scale of 1X to 10X. In total, between all defendants for which State Bar and State are liable, I believe any rating of "high" culpability or aggravation is appropriate, and more so that I live in the middle of a scale that seems to be reasonable under the circumstances.

-29-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 029
22-CV-01616-BAS-DDL

$111,135,454 Punitive Damages Low (at 1X Economic/Non-Economic Total)

$2,003,238,331 Punitive Damages Medium (at 2.5X Economic/Non-Economic Total)

$4,344,072.99 Punitive Damages High (at 5X Economic/Non-Economic Total)

$6,203,006,203 Punitive Damages (High (at 1.5X Economic/Non-Economic Total)

$8,333,794.949 Punitive Damages High (at 10X Economic/Non-Economic Total)

70. I provide draft jury instructions and further details my damages at Exhibit E. I created this document.

I seek the following judgments subject to Government Claims Act liability mediums. To make sure I

wasn't being unreasonable, I looked up "what is the state of California worth as an enterprise," and it

says "$3.4 trillion" as being total GRP or gross state product should as my complaint for damages. My

judgment will not appear to cause any materially adverse effect to State of California, and State Bar has

and taken no seriously crack its engaged in any meaningful acknowledgement of my suffering. The total

judgment I seek don't approach 10% of California's value inclusing my claim for punitive damages. So

on my motion for summary judgment, I believe the court can grant me the following judgments or

monetary equivalents from State Bar and/or State of California based on my evidence and the undisputable

facts:

**$111,135,349 TOTAL JUDGMENT FOR ECONOMIC DAMAGES**

**$394,646,245 TOTAL JUDGMENT FOR NON-ECONOMIC DAMAGES**

**$4,344,072.99 TOTAL JUDGMENT FOR PUNITIVE DAMAGES**

**$8,849,853,594 TOTAL JUDGMENTS IN MY FAVOR COUNT BY COUNT**

EXECUTED

July 15, 2022 in Oceanside, California

Declarant Justin S. Beck

Plaintiff

-30-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 600
22-CV-01616-BAS-DDL

[Proof of E-Service]

I, Justin S. Beck, the plaintiff in this action and moving party, served by electronic mail:this declaration in support of my motion for summary judgment, or in the alternative, summary adjudication – and its accompanying exhibits upon defendants The State Bar of California, Anand Kumar, Joy Nunley, Eli David Morgenstern, and DOES 1-30 (each acting in an official capacity) to the Office of General Counsel for The State Bar of California:

Suzanne.Grandt@statebar.ca.gov

Ruben.Duran@bbklaw.com

Carissa.Andresen@statebar.ca.gov

I swear the foregoing to be true and correct as of this July 15, 2022 from Oceanside, California under penalty of perjury.

_____

Justin S. Beck

-30-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 031
22-CV-01616-BAS-DDL

1

[EXHIBITS FOLLOW]

2

3    **Exhibit A**    Letter to Cozumelle and Chemis Offing Exhibit in Damages to CTI Shareholders

4

5    **Exhibit B**    Public Records Request RE: Cozumelle Law Corporation

6

7    **Exhibit C**    Court Ruling in Beck v. Cozumelle Law Corporation (July 15, 2022)

8

9    **Exhibit D**    Proof of Ownership and Basis of Damages for Datalol World Technologies Corp.

10

11   **Exhibit E**    Image of Damages and Draft Buy Instructions Using CACT 2002

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-31-

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF JUSTIN S. BECK'S MOTION FOR SUMMARY
JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit 21: 1032

22-CV-01616-AGS-DDL

EXHIBITS IN SUPPORT OF MOTION FOR PRELIM

# O'HAGAN MEYER

ATTORNEYS & ADVISORS

VIA EMAIL:

Kenneth J. Catanzarite, Esq.          kcatanzarite@catanzarite.com
Catanzarite Law Corporation
2331 W Lincoln Avenue
Anaheim, California  92801

Mr. Catanzarite:

We are in receipt of your letter and the attempted "consents" pertaining to Cultivation Technologies, Inc. ("CTI") from Friday, January 25, 2019 ("Letter") and the subsequent complaint ("New Lawsuit") in which you purport that a majority of former officers and directors ("Controlling Parties") of both CTI and Mobile Farming Systems, Inc. ("MFS") have agreed to void their previous actions conducted in their capacities as officers and directors from the period March 30, 2015 to January 25, 2019, and "renounce" their shares in CTI for which CTI received good and valuable consideration and subsequently issued stock certificates through CTI's transfer agent of record.

To summarize the two complaints filed by the Catanzarite Law Corporation, the relevant facts are as follows:

- In March 2015, the boards of MFS and CTI were both comprised of O'Connor, Cooper, and Probst at the time of CTI's formation. O'Connor, Cooper, and Probst authorized all corporate actions of MFS and CTI in 2015 on behalf of each company;

- CTI has operated since 2015 and continues to do so. MFS shareholders account for more than 50 shareholders of CTI shareholders, who purchased shares in CTI for consideration of $.01 per share;

- Ms. Pinkerton, on behalf of Mr. Root, sued O'Connor, Cooper, and Probst for abuse of the elderly and payment of illegal commissions in violation of section 15(b) of the Securities Exchange Act of 1934;

- CTI began operating in June 2015 under the direction of O'Connor, Cooper, and Probst, who, with full knowledge by MFS shareholders restructured the plan to make CTI a wholly owned subsidiary and offered CTI shares to MFS shareholders based upon their MFS positions at $.01 a share;

- Shareholders who have executed the MFS consents sent by your law firm are, in fact, bona fide shareholders of CTI, have acted on behalf of the company in voting in many instances, and have signed agreements with the company for their shares;

Exhibit 21: 035
22-CV-01616-BAS-DDL

**Ken Catanzarite**
**February 5, 2019**
**PAGE - 2 –**

- In January 2019, your firm filed a new legal Complaint, in which O'Connor and Cooper, in signing the "consents," attempt to "renounce" their shares and "undo" all activities of CTI from the period of 2015 to 2019 in favor of MFS;

- The New Lawsuit suggests that MFS should benefit from all good and valuable consideration furnished by every party subsequent to June 2015, which includes, but is not limited to:

  o $932,119 in 506(b) private placement shares sold by CTI in subscription agreements executed by O'Connor, which also represent the cap table of CTI (without any shares owned by MFS);

  o $527,000 in 506(c) private placement shares sold by CTI through subscription agreements, many of which are executed by O'Connor, which also represent the cap table of CTI (without any shares owned by MFS);

  o $1,645,000 in convertible notes; and

  o $5,959,251 provided by FinCanna Capital Corp. pursuant to multiple agreements executed between CTI and FinCanna

This letter serves as formal notice ("Notice") to Catanzarite Law Corporation and others listed above of the potential damages inflicted against CTI and its shareholders caused by the Letter, New Lawsuit and the "consents" and attempted "renouncements" as set forth above ("Direct Damages"), which includes the very same shareholders that you are either representing or soliciting for signature.

The following transactions are in process ("Transactions"), all of which are now at imminent, material risk of failing due to your actions along with other shareholders who executed the shareholder consents.

CTI is preparing disclosure documents related to the parties of these agreements so that they are not consummated without full disclosure of the additional risks now attributed by your capricious actions.

- <u>FinCanna Letter of Agreement</u>. Necessitates a payment of no less than $3,000,000 to FinCanna on or before March 31, 2019, after which FinCanna may elect to force dissolution pursuant to their General Security Agreement.

- <u>Sale of the Coachella Property for $4,000,000</u>. The proceeds from this sale go to FinCanna to reduce more than $8,000,000 in outstanding payment obligations with FinCanna. This transaction was approved by CTI shareholders in November 2018 and is presently in escrow, with a closing date slated for February 2019. This property and any proceeds are subject to a blanket security agreement with FinCanna.

Ken Catanzarite
February 5, 2019
PAGE - 3 –

- Sale of the Colusa Property for $300,000. A majority of the proceeds from this sale go to FinCanna to reduce more than $8,000,000 in outstanding payment obligations outstanding with FinCanna. This property and any proceeds are subject to a blanket security agreement with FinCanna.

- Sale – Leaseback of Palm Desert Property for $1,575,000. If CTI is unable to transition its manufacturing operations from Coachella to Palm Desert before June 30, 2019 – the company will be unable to operate or sustain itself beyond that date. CTI is in escrow pursuant to a build-to-suit, sale-leaseback which affords CTI an opportunity to transition commercial operations from Coachella to Palm Desert, but the timing is absolutely critical. This property and any proceeds are subject to a blanket security agreement with FinCanna.

- Reverse Takeover Transaction with Public Issuer in Canada ("RTO"). CTI has been working on a transaction which may afford liquidity to CTI shareholders, but it requires significant effort and necessitates cooperation and satisfaction of numerous conditions precedent. We have attached a valuation summary detailing other public issuers in the cannabis industry which was prepared by DelMorgan & Co. of Santa Monica, California from October 2018. Note that, according to this information provided to CTI by DelMorgan & Co., comparison companies with $3M in revenue resulting from the "LTM" or last twelve months imputes a potential valuation range of $175,000,000 to $261,000,000 for CTI.

**CTI makes no warranties nor representations of its ability to close the foregoing transactions, to provide shareholder liquidity, or to achieve any valuation as a company overall should it finalize the RTO. This information is provided for reference in assessing potential of the Direct Damages inflicted by you and others.**

You have demanded in the Letter that CTI relinquish immediate control to certain parties, which CTI categorically contests as illegal.

The direct damages outlined herein are mounting. If you continue with your two lawsuits, you and those in conspiracy with you may be held responsible for all resulting damage. If you would like to have your position reviewed by a neutral party, I suggest we engage in mediation so that all your complaints pertaining to CTI and its directors be addressed immediately.

**Ken Catanzarite**
**February 5, 2019**
**PAGE - 4 –**

If you reject this good faith request to mediate this dispute this month, we will assume that you and all parties involved in the Letter are engaged in an active conspiracy to destroy CTI.  Please be reminded that FinCanna, copied hereto, may exercise its right to exert control over the company and commence liquidation of CTI if we do not meet the March 31, 2019 payment deadline.

Let's discuss next steps after the ex parte hearing tomorrow.

Sincerely,

Sam Y. Edgerton, III

Exhibit 21: 038
22-CV-01616-BAS-DDL

UCC FILING NGN

Free Basic California Coverage of Data

| UCC Type | Debtor Information | File Number | Secured Party Info | Status | Filing Date | Lapse Date |
|---|---|---|---|---|---|---|
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157446660253 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 04/08/2019 | 04/08/2025 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157270933906 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 03/15/2017 | 03/15/2023 |
| Notice of Federal Tax Lien | CATANZARITE LAW CORPORATION A CORPORATION - ANAHEIM, CA | 157482211929 | ISCARIO - CINCINNATI, OHIO | Active | 01/04/2019 | 01/04/2025 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157847233840 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 03/09/2019 | 03/09/2025 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157308839205 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 04/10/2013 | 04/10/2019 |
| Notice of Federal Tax Lien | CATANZARITE LAW CORPORATION A CORPORATION - ANAHEIM, CA | 157446008344 | ISCARIO - CINCINNATI, OHIO | Active | 06/22/2015 | 06/22/2025 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | U210040986040 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Terminated | 04/23/2021 | 04/23/2021 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157322491955 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 04/28/2016 | 04/28/2018 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157711008445 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 05/19/2015 | 05/19/2025 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | 157362235068 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | 05/17/2013 | 05/17/2023 |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | U210003739113 | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Terminated | 06/11/2021 | 06/11/2021 |

EXHIBIT 21-040
22-CV-01616-AGS-DDL

Preliminary Notices Summary of Data

| UCC Type | Debtor Information | File Number | Secured Party Info | Status | Filing Date | Lapse Date |
|---|---|---|---|---|---|---|
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | | |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | | |
| Notice of Federal Tax Lien | CATANZARITE LAW CORPORATION A CORPORATION - ANAHEIM, CA | | IRS OHIO - CINCINNATI, OH | Active | | |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | | |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | | |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | | |
| Notice of State Tax Lien | CATANZARITE LAW CORP, EMPLOYEES HEALTH & CATANZARITE LAW CORP, EMPLOYEES HEALTH & WELFARE PLAN TRUST - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Active | | |
| Notice of Federal Tax Lien | CATANZARITE LAW CORPORATION A CORPORATION - ANAHEIM, CA | | IRS OHIO - CINCINNATI, OH | Active | | |
| Notice of State Tax Lien | CATANZARITE LAW CORP - ANAHEIM, CA | | EMPLOYMENT DEVELOPMENT DEPARTMENT - SACRAMENTO, CA | Terminated | | |

Kenneth J. Catanzarite (SBN 113750)
kcatanzarite@catanzarite.com
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544
Fax: (714) 520-0680

Attorneys for Nonparty Amy Cooper

# IN THE SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY ORANGE

| | |
|---|---|
| JUSTIN S. BECK, an individual | Case No: 30-2021-01237499-CU-PN-CJC |
| Plaintiff, | Judge Assigned: Honorable John C. Gastelum |
| v. | **NONPARTY AMY COOPER'S OBJECTIONS TO DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS** |
| THE STATE BAR OF CALIFORNIA, a public corporation and public entity; ANAND KUMAR, an individual employee acting in an official capacity; ELI DAVID MORGENSTERN, an individual employee acting in an official capacity; JOY NUNLEY, an individual employee acting in an official capacity; THE STATE OF CALIFORNIA, a state and public entity; and DOES 1-30 | |
| Defendants. | |

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE that Non-Party Amy Cooper ("Cooper") hereby objects to

Plaintiff Justin Beck's Deposition Subpoena for Production of Business Records (hereafter

"Deposition Subpoena").

Cooper objects to the Deposition Subpoena in its entirety as the same was not served in

accordance with Code of Civil Procedure section 2020.220(b). Section 2020.220(b) requires a

deposition subpoena be personally served on the witness. Here, Plaintiff served the Deposition

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1  Subpoena to Ms. Cooper by email. (Deposition Subpoena at p. 2.) Email service is not personal

2  service. Accordingly, the Deposition Subpoena is improper and ineffective.

3        Cooper objects to the Deposition Subpoena in its entirety because it is harassing and

4  seeks to obtain discovery in violation of the stay imposed in the matter styled *Justin S. Beck v.*

5  *Kenneth Catanzarite, et al.*, OCSC Case No. 30-2020-01145998.

6        Cooper objects to the Deposition Subpoena in its entirety because it is harassing as the

7  instant case is not at issue.

8        Cooper objects to the Deposition Subpoena in its entirety as it employs vague,

9  ambiguous, overly broad and onerous special definitions and directions.

10        Cooper objects to the specific document requests as follows:

11  **<u>Business Records #1 MFS re: Mobile Farming Systems, Inc.</u>**

12  **<u>REQUEST A:</u>** Any Writing by any Person reflecting a purported relationship with Justin Beck

13  **<u>OBJECTION:</u>** Cooper objects to this request as violating Code of Civil Procedure section

14  2020.410 as failing to specify the requested documents with requisite specificity which also

15  renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

16  harassing. Cooper objects to this request as seeking the production of documents that are not

17  business records which also renders the request overly broad, unduly burdensome, oppressive

18  and harassing. Cooper objects to this request as calling for information protected by privacy,

19  confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

20  ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

21  objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper objects to

22  this request as calling for information neither relevant to the subject matter of this litigation nor

23  likely to lead to the discovery of admissible evidence at the time of trial.

24

25  **<u>REQUEST B:</u>** Any Writing reflecting an attorney-client relationship by and between MFS and:

26      I. Robert A. Bernheimer APLC

27      ii. Horwitz and Armstrong

28      ii. [sic] Catanzarite, and/or each of them

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

2   2020.410 as failing to specify the requested documents with requisite specificity which also

3   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

4   harassing. Cooper objects to this request as seeking the production of documents that are not

5   business records which also renders the request overly broad, unduly burdensome, oppressive

6   and harassing.  Cooper objects to this request as calling for information protected by privacy,

7   confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

8   ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

9   objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to

10  this request as calling for information neither relevant to the subject matter of this litigation nor

11  likely to lead to the discovery of admissible evidence at the time of trial.

12

13  **REQUEST C:**  Agreement to pay Joseph Porche commission for finding MFS investors, and

14  any Writing related thereto

15  **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

16  2020.410 as failing to specify the requested documents with requisite specificity which also

17  renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

18  harassing. Cooper objects to this request as seeking the production of documents that are not

19  business records which also renders the request overly broad, unduly burdensome, oppressive

20  and harassing.  Cooper objects to this request as calling for information protected by privacy,

21  confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

22  ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

23  objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to

24  this request as calling for information neither relevant to the subject matter of this litigation nor

25  likely to lead to the discovery of admissible evidence at the time of trial.

26

27  **REQUEST D:**  Any Writing related to the payment of $340,000, or any amount, from MFS to

28  Joseph Porche

3.

**Objections to Record Subpoena on Amy Cooper**

Exhibit 21: 045
22-CV-01616-BAS-DDL

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

2   2020.410 as failing to specify the requested documents with requisite specificity which also

3   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

4   harassing. Cooper objects to this request as seeking the production of documents that are not

5   business records which also renders the request overly broad, unduly burdensome, oppressive

6   and harassing.  Cooper objects to this request as calling for information protected by privacy,

7   confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

8   ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

9   objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to

10   this request as calling for information neither relevant to the subject matter of this litigation nor

11   likely to lead to the discovery of admissible evidence at the time of trial.

12

13   **REQUEST E:** Any agreement or Writing to pay Anthony Scudder commission for finding MFS

14   investors

15   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

16   2020.410 as failing to specify the requested documents with requisite specificity which also

17   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

18   harassing.  Cooper objects to this request as seeking the production of documents that are not

19   business records which also renders the request overly broad, unduly burdensome, oppressive

20   and harassing.  Cooper objects to this request as calling for information protected by privacy,

21   confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

22   ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

23   objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to

24   this request as calling for information neither relevant to the subject matter of this litigation nor

25   likely to lead to the discovery of admissible evidence at the time of trial.

26

27   **REQUEST F:** Any payments made by MFS to any Person in relation to finding MFS investors

28   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

4.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1    2020.410 as failing to specify the requested documents with requisite specificity which also

2    renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

3    harassing. Cooper objects to this request as seeking the production of documents that are not

4    business records which also renders the request overly broad, unduly burdensome, oppressive

5    and harassing.  Cooper objects to this request as calling for information protected by privacy,

6    confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

7    ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

8    objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper objects to

9    this request as calling for information neither relevant to the subject matter of this litigation nor

10   likely to lead to the discovery of admissible evidence at the time of trial.

11

12   **REQUEST G:** Register of payments made by MFS or any affiliate to Tony "Anthony" Scudder

13   or Aroha Holdings, Inc.

14   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

15   2020.410 as failing to specify the requested documents with requisite specificity which also

16   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

17   harassing. Cooper objects to this request as seeking the production of documents that are not

18   business records which also renders the request overly broad, unduly burdensome, oppressive

19   and harassing.  Cooper objects to this request as calling for information protected by privacy,

20   confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

21   ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

22   objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to

23   this request as calling for information neither relevant to the subject matter of this litigation nor

24   likely to lead to the discovery of admissible evidence at the time of trial.

25

26   **REQUEST H:**  Monthly P&L from June 2015 through present

27   **OBJECTION:**  Cooper objects to this request as seeking the production of documents that are

28   not business records which also renders the request overly broad, unduly burdensome, oppressive

---

5.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1 and harassing.  Cooper objects to the request as overly broad, unduly burdensome, oppressive

2 and harassing as to time.  Cooper objects to this request as calling for information protected by

3 privacy and confidentiality; and given the overbreadth of the request, insisting Cooper prepare a

4 privilege log is itself objectionable as overly broad, unduly burdensome, oppressive and

5 harassing.  Cooper objects to this request as calling for information neither relevant to the subject

6 matter of this litigation nor likely to lead to the discovery of admissible evidence at the time of

7 trial.

8

9 **REQUEST F [SIC]:**  Balance sheet featuring ~$1M debt owed by Cooper + O'Connor

10 **OBJECTION:**  Cooper objects to this request as seeking the production of documents that are

11 not business records which also renders the request overly broad, unduly burdensome, oppressive

12 and harassing.  Cooper objects to this request as calling for information protected by privacy and

13 confidentiality; and given the overbreadth of the request, insisting Cooper prepare a privilege log

14 is itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

15 objects to this request as calling for information neither relevant to the subject matter of this

16 litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

17

18 **REQUEST G [SIC]:** Derivative settlement agreement for MFS before adoption of Fraudulent

19 Consent

20 **OBJECTION:**  Cooper objects to the request as vague and ambiguous because the special

21 definition of "Fraudulent Consent" is vague and ambiguous. Cooper objects to this request to the

22 extent it seeks the production of documents that are not business records which further renders

23 the request overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to this

24 request on the grounds of privacy and confidentiality.  Cooper objects to this request as calling

25 for information neither relevant to the subject matter of this litigation nor likely to lead to the

26 discovery of admissible evidence at the time of trial.

27

28 **REQUEST H [SIC]:** All Writings underlying fraud and fraudulent acts adopted by and detailed

6.
**Objections to Record Subpoena on Amy Cooper**

1   within Fraudulent Consent

2   **OBJECTION:**  Cooper objects to the request as vague and ambiguous because the special

3   definition of "Fraudulent Consent" is itself vague and ambiguous and likewise for "fraud" and

4   "fraudulent" to the extent those are to be read with the special definitions provided (albeit not

5   capitalized). Cooper objects to this request as violating Code of Civil Procedure section 2020.410

6   as failing to specify the requested documents with requisite specificity which also renders the

7   request vague, ambiguous, overly broad, unduly burdensome, oppressive and harassing. Cooper

8   objects to this request to the extent it seeks the production of documents that are not business

9   records which also renders the request overly broad, unduly burdensome, oppressive and

10  harassing.  Cooper objects to the request to the extent it calls for information protected by

11  privacy, confidentiality, attorney-client privilege and attorney work product;  and given the

12  vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

13  itself objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper

14  objects to this request as calling for information neither relevant to the subject matter of this

15  litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

16

17  **REQUEST I:**  Officers, BOD approval for Catanzarite to file MFS Action and any Writings

18  pertaining thereto

19  **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

20  2020.410 as failing to specify the requested documents with requisite specificity which also

21  renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

22  harassing. Cooper objects to this request to the extent it seeks the production of documents that

23  are not business records which also renders the request overly broad, unduly burdensome,

24  oppressive and harassing.  Cooper objects to this request as calling for information protected by

25  privacy, confidentiality, attorney-client privilege, attorney work product; and given the

26  vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

27  itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

28  objects to this request as calling for information neither relevant to the subject matter of this

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

7.

**Objections to Record Subpoena on Amy Cooper**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1   litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

2

3   **REQUEST J:**  Purported February 2019 MFS shareholder meeting minutes and any Writings

4   pertaining thereto

5   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

6   2020.410 as failing to specify the requested documents with requisite specificity which also

7   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

8   harassing. Cooper objects to this request to the extent it seeks the production of documents that

9   are not business records which also renders the request overly broad, unduly burdensome,

10  oppressive and harassing.  Cooper objects to this request as calling for information protected by

11  privacy, confidentiality, attorney-client privilege, attorney work product; and given the

12  vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

13  itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

14  objects to this request as calling for information neither relevant to the subject matter of this

15  litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

16

17  **REQUEST K:** Engagement agreement and purported conflict waivers involving Catanzarite

18  Law  Corporation to represent MFS before or after Fraudulent Consent after filing a derivative

19  suit against MFS and Amy Cooper (see, Fraud)

20  **OBJECTION:**  Cooper objects to the request as vague and ambiguous because the special

21  definitions of "Fraudulent Consent" and "Fraud" are vague and ambiguous.  Cooper objects to

22  this request as violating Code of Civil Procedure section 2020.410 as failing to specify the

23  requested documents with requisite specificity which also renders the request vague, ambiguous,

24  overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this request to the

25  extent it seeks the production of documents that are not business records which also renders the

26  request overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this

27  request as calling for information protected by privacy, confidentiality, attorney-client privilege,

28  attorney work product; and given the vagueness, ambiguity and overbreadth of the request,

1   insisting Cooper prepare a privilege log is itself objectionable as overly broad, unduly

2   burdensome, oppressive and harassing.  Cooper objects to this request as calling for information

3   neither relevant to the subject matter of this litigation nor likely to lead to the discovery of

4   admissible evidence at the time of trial.

5

6   **REQUEST L:**  Officer, BOD approval for Catanzarite to file the MFS Cross Complaint

7   **OBJECTION:**  Cooper objects to this request to the extent it seeks the production of documents

8   that are not business records which also renders the request overly broad, unduly burdensome,

9   oppressive and harassing.  Cooper objects to this request as calling for information protected by

10  privacy, confidentiality, attorney-client privilege, attorney work product; and given the

11  vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

12  itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

13  objects to this request as calling for information neither relevant to the subject matter of this

14  litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

15

16  **REQUEST M:**  Conflict waivers from September 14, 2018 through present

17  **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

18  2020.410 as failing to specify the requested documents with requisite specificity which also

19  renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

20  harassing.  Cooper objects to this request to the extent it seeks the production of documents that

21  are not business records which also renders the request overly broad, unduly burdensome,

22  oppressive and harassing.  Cooper objects to this request as calling for information protected by

23  privacy, confidentiality, attorney-client privilege, attorney work product; and given the

24  vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

25  itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

26  objects to this request as calling for information neither relevant to the subject matter of this

27  litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

28

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

9.

**Objections to Record Subpoena on Amy Cooper**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

**REQUEST N:** MFS Shareholder list as of each: (*indicate changes in ownership from one date to the next.)*

     I. June 30, 2015

     ii. September 14, 2018

     iii. January 24, 2019

     iv. April 16, 2019

     v. May 16, 2019

     vi. August 31, 2019

     vii. January 11, 2020

     vii. May 27, 2022

**OBJECTION:** Cooper objects to this request to the extent it seeks the production of documents that are not business records which also renders the request overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this request as violating Code of Civil Procedure section 2020.410 et seq. because, as phrased, the request asks her to *create* responsive documents. Cooper objects to this request as calling for information protected by privacy and confidentiality; and given the vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this request as calling for information neither relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

**REQUEST Q:** Any communications or Writing by and between you, MFS, its officers or directors, its alleged officers or directors, and the Persons: Catanzarite, Tolled Defendants, or Accomplices.

**OBJECTION:** Cooper objects to the request as vague and ambiguous because the special definitions of "Catanzarite", "Tolled Defendants" and "Accomplices" are vague and ambiguous; and the special definitions are also overly broad and onerous. Cooper objects to this request as violating Code of Civil Procedure section 2020.410 as failing to specify the requested documents

10.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1   with requisite specificity which also renders the request vague, ambiguous, overly broad, unduly

2   burdensome, oppressive and harassing. Cooper objects to this request to the extent it seeks the

3   production of documents that are not business records which also renders the request overly

4   broad, unduly burdensome, oppressive and harassing.  Cooper objects to this request as calling

5   for information protected by privacy, confidentiality, attorney-client privilege, attorney work

6   product; and given the vagueness, ambiguity and overbreadth of the request, insisting Cooper

7   prepare a privilege log is itself objectionable as overly broad, unduly burdensome, oppressive and

8   harassing.  Cooper objects to this request as calling for information neither relevant to the subject

9   matter of this litigation nor likely to lead to the discovery of admissible evidence at the time of

10  trial.

11

12  **REQUEST R:**  Any communications or Writing by and between you and any Person related to

13  the January 2019 Acts and the Fraudulent Consent.

14  **OBJECTION:**  Cooper objects to the request as vague and ambiguous because the special

15  definition of "Fraudulent Consent" is vague and ambiguous.  Cooper objects to this request as

16  violating Code of Civil Procedure section 2020.410 as failing to specify the requested documents

17  with requisite specificity which also renders the request vague, ambiguous, overly broad, unduly

18  burdensome, oppressive and harassing. Cooper objects to this request to the extent it seeks the

19  production of documents that are not business records which also renders the request overly

20  broad, unduly burdensome, oppressive and harassing.  Cooper objects to the special definition of

21  January 2019 Acts as overly broad, vague and ambiguous.  Cooper objects to this request as

22  calling for information protected by privacy, confidentiality, attorney-client privilege, attorney

23  work product; and given the vagueness, ambiguity and overbreadth of the request, insisting

24  Cooper prepare a privilege log is itself objectionable as overly broad, unduly burdensome,

25  oppressive and harassing.  Cooper objects to this request as calling for information neither

26  relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible

27  evidence at the time of trial.

28

11.

**Objections to Record Subpoena on Amy Cooper**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1   **REQUEST S:**  Any consideration or promise of consideration to any Person made by any other

2   Person in connection with the Fraudulent Consent and January 2019 Acts. Specifically, and

3   without limiting the scope of response from Cooper, how Accomplices like James Duffy and

4   Mohammed Zakhireh previously signed binding subscription agreements with CTI, and suddenly

5   in connection with the Catanzarite Cases, accepted appointment for MFS and/or CTI on the

6   fraudulent basis that their own shares were a "nullity," and the fraudulent basis that MFS was the

7   "sole shareholder of CTI."

8   **OBJECTION:**  Cooper objects to the request as vague and ambiguous because of the special

9   definitions employed:  Cooper objects to the special definition of January 2019 Acts as overly

10  broad, vague and ambiguous.  Cooper objects to the special definition of "Fraudulent Consent"

11  as vague and ambiguous and likewise for "fraud" and "fraudulent" to the extent those are to be

12  read with the special definition provided (albeit not capitalized).  Cooper objects to the special

13  definition of "Accomplices" as vague, ambiguous, overly broad and onerous. Cooper objects to

14  this request as violating Code of Civil Procedure section 2020.410 as failing to specify the

15  requested documents with requisite specificity which also renders the request vague, ambiguous,

16  overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this request to the

17  extent it seeks the production of documents that are not business records which also renders the

18  request overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to this

19  request as calling for information protected by privacy, confidentiality, attorney-client privilege,

20  attorney work product; and given the vagueness, ambiguity and overbreadth of the request,

21  insisting Cooper prepare a privilege log is itself objectionable as overly broad, unduly

22  burdensome, oppressive and harassing.  Cooper objects to this request as calling for information

23  neither relevant to the subject matter of this litigation nor likely to lead to the discovery of

24  admissible evidence at the time of trial.

25

26  ### Business Records #2 TGAP re: TGAP Holdings, LLC

27  **REQUEST A:**  Bank records from June 2015 through present (including Bank of America)

28  **OBJECTION:**  Cooper objects to this request to the extent it seeks the production of documents

---

12.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL.: (714) 520-5544 • FAX: (714) 520-0680

1   that are not business records which also renders the request overly broad, unduly burdensome,

2   oppressive and harassing.  Cooper objects to this request as calling for information protected by

3   privacy and confidentiality; and given the overbreadth of the request, insisting Cooper prepare a

4   privilege log is itself objectionable as overly broad, unduly burdensome, oppressive and

5   harassing.  Cooper objects to this request as calling for information neither relevant to the subject

6   matter of this litigation nor likely to lead to the discovery of admissible evidence at the time of

7   trial.

8

9   **REQUEST B:**  Documentation for each transfer or transaction involving CTI shares held by

10   TGAP Holdings, LLC or its members Richard Francis O'Connor, Jr. and/or Amy Cooper

11   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

12   2020.410 as failing to specify the requested documents with requisite specificity which also

13   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

14   harassing. Cooper objects to this request to the extent it seeks the production of documents that

15   are not business records which also renders the request overly broad, unduly burdensome,

16   oppressive and harassing.  Cooper objects to this request as calling for information protected by

17   privacy, confidentiality, attorney-client privilege, attorney work product; and given the

18   vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

19   itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

20   objects to this request as calling for information neither relevant to the subject matter of this

21   litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

22

23   **REQUEST C:**  Payments made to or involving Anthony "Tony" Scudder related to CTI share

24   sales

25   **OBJECTION:**  Cooper objects to this request as violating Code of Civil Procedure section

26   2020.410 as failing to specify the requested documents with requisite specificity which also

27   renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

28   harassing. Cooper objects to this request to the extent it seeks the production of documents that

**Objections to Record Subpoena on Amy Cooper**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1  are not business records which also renders the request overly broad, unduly burdensome,

2  oppressive and harassing. Cooper objects to this request as calling for information protected by

3  privacy, confidentiality, attorney-client privilege, attorney work product; and given the

4  vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

5  itself objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper

6  objects to this request as calling for information neither relevant to the subject matter of this

7  litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

8

9  **REQUEST D:** Payments made to or involving Aroha Holdings, Inc. related to CTI share sales

10 **OBJECTION:** Cooper objects to this request as violating Code of Civil Procedure section

11 2020.410 as failing to specify the requested documents with requisite specificity which also

12 renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

13 harassing. Cooper objects to this request to the extent it seeks the production of documents that

14 are not business records which also renders the request overly broad, unduly burdensome,

15 oppressive and harassing. Cooper objects to this request as calling for information protected by

16 privacy, confidentiality, attorney-client privilege, attorney work product; and given the

17 vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

18 itself objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper

19 objects to this request as calling for information neither relevant to the subject matter of this

20 litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

21

22 **REQUEST E:** Payments made to or involving Richard Francis O'Connor, Jr. related to CTI

23 share sales

24 **OBJECTION:** Cooper objects to this request as violating Code of Civil Procedure section

25 2020.410 as failing to specify the requested documents with requisite specificity which also

26 renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

27 harassing. Cooper objects to this request to the extent it seeks the production of documents that

28 are not business records which also renders the request overly broad, unduly burdensome,

---

14.

Objections to Record Subpoena on Amy Cooper

1   oppressive and harassing.  Cooper objects to this request as calling for information protected by

2   privacy, confidentiality, attorney-client privilege, attorney work product; and given the

3   vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

4   itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

5   objects to this request as calling for information neither relevant to the subject matter of this

6   litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

7

8   **Business Records #3 CTI re: Cultivation Technologies, Inc.**

9   **REQUEST A:**  Engagement agreement with Catanzarite Law Corporation for CTI

10   **OBJECTION:**  Cooper objects to this request to the extent it seeks the production of documents

11   that are not business records which also renders the request overly broad, unduly burdensome,

12   oppressive and harassing.  Cooper objects to this request as calling for information protected by

13   privacy, confidentiality, attorney-client privilege, attorney work product; and given the

14   overbreadth of the request, insisting Cooper prepare a privilege log is itself objectionable as

15   overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to this request as

16   calling for information neither relevant to the subject matter of this litigation nor likely to lead to

17   the discovery of admissible evidence at the time of trial.

18

19   **REQUEST B:**  Officer, BOD approval for Catanzarite to file the FinCanna Cross Complaint

20   **OBJECTION:**  Cooper objects to this request to the extent it seeks the production of documents

21   that are not business records which also renders the request overly broad, unduly burdensome,

22   oppressive and harassing.  Cooper objects to this request as calling for information protected by

23   privacy, confidentiality, attorney-client privilege, attorney work product; and given the

24   vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is

25   itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

26   objects to this request as calling for information neither relevant to the subject matter of this

27   litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

28

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL.: (714) 520-5544 • FAX: (714) 520-0680

---

15.

**Objections to Record Subpoena on Amy Cooper**

**REQUEST C:**  Officer, BOD approval for Catanzarite to file the Scottsdale Action

**OBJECTION:**  Cooper objects to this request to the extent it seeks the production of documents that are not business records which also renders the request overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to this request as calling for information protected by privacy, confidentiality, attorney-client privilege, attorney work product; and given the vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to this request as calling for information neither relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

**REQUEST D:** CTI shareholder lists as of each: (*indicate changes in ownership from one date to the next.)*

     I. June 30, 2015

     ii. September 14, 2018

     iii. January 24, 2019

     iv. April 16, 2019

     v. May 16, 2019

     vi. August 31, 2019

     vii. January 11, 2020

**OBJECTION:**  Cooper objects to this request as seeking the production of documents that are not business records which also renders the request unduly burdensome, oppressive and harassing.  Cooper objects to this request as violating Code of Civil Procedure section 2020.410 et seq. because, as phrased, the request asks her to _create_ responsive documents.  Cooper objects to this request as calling for information protected by privacy and confidentiality; and given the request itself is unduly burdensome, oppressive and harassing, insisting Cooper prepare a privilege log is itself objectionable as unduly burdensome, oppressive and harassing.  Cooper objects to this request as calling for information neither relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1   **REQUEST E:** Conflict waivers from September 8, 2021 through present

2   **OBJECTION:** Cooper objects to this request as seeking the production of documents that are

3   not business records which also renders the request unduly burdensome, oppressive and

4   harassing. Cooper objects to this request as calling for information protected by privacy,

5   confidentiality, attorney-client privilege, attorney work product; and given the vagueness,

6   ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log is itself

7   objectionable as overly broad, unduly burdensome, oppressive and harassing. Cooper objects to

8   this request as calling for information neither relevant to the subject matter of this litigation nor

9   likely to lead to the discovery of admissible evidence at the time of trial.

10

11  **REQUEST F:** Any communications with Catanzarite while purporting to be an officer or

12  director of CTI.

13  **OBJECTION:** Cooper objects to this request as violating Code of Civil Procedure section

14  2020.410 as failing to specify the requested documents with requisite specificity which also

15  renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

16  harassing. Cooper objects to this request as seeking the production of documents that are not

17  business records which also renders the request unduly burdensome, oppressive and harassing.

18  Cooper objects to this request as calling for information protected by privacy, confidentiality,

19  attorney-client privilege, attorney work product; and given the vagueness, ambiguity and

20  overbreadth of the request, insisting Cooper prepare a privilege log is itself objectionable as

21  overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this request as

22  calling for information neither relevant to the subject matter of this litigation nor likely to lead to

23  the discovery of admissible evidence at the time of trial.

24

25  **REQUEST G:** Any communications with or pertaining to a relationship with Kenneth J.

26  Catanzarite and Jim Travis Tice.

27  **OBJECTION:** Cooper objects to this request as violating Code of Civil Procedure section

28  2020.410 as failing to specify the requested documents with requisite specificity which also

17.

1 renders the request vague, ambiguous, overly broad, unduly burdensome, oppressive and

2 harassing. Cooper objects to this request as seeking the production of documents that are not

3 business records which also renders the request unduly burdensome, oppressive and harassing.

4 Cooper objects to this request as calling for information protected by privacy, confidentiality,

5 attorney-client privilege, attorney work product; and given the vagueness, ambiguity and

6 overbreadth of the request, insisting Cooper prepare a privilege log is itself objectionable as

7 overly broad, unduly burdensome, oppressive and harassing.  Cooper objects to this request as

8 calling for information neither relevant to the subject matter of this litigation nor likely to lead to

9 the discovery of admissible evidence at the time of trial.

10

11 **REQUEST H:**  Manner in which you or any other Person were solicited as a Plaintiff in the

12 Mesa Action, including the method, any related Writing, and a self-prepared or validated

13 summary of the circumstances leading to your role as a purported representative class Plaintiff

14 after being sued by Catanzarite in September 2018 for securities violations and abuse of the

15 elderly.

16 **OBJECTION:**  Cooper objects to the request as vague and ambiguous as to "solicited".  Cooper

17 objects to this request as violating Code of Civil Procedure section 2020.410 as failing to specify

18 the requested documents with requisite specificity which also renders the request vague,

19 ambiguous, overly broad, unduly burdensome, oppressive and harassing. Cooper objects to this

20 request as seeking the production of documents that are not business records which also renders

21 the request unduly burdensome, oppressive and harassing.  Cooper objects to this request as

22 violating Code of Civil Procedure section 2020.410 et seq. because, as phrased, the request asks

23 her to *create* responsive documents.  Cooper objects to this request as calling for information

24 protected by privacy, confidentiality, attorney-client privilege, attorney work product; and given

25 the vagueness, ambiguity and overbreadth of the request, insisting Cooper prepare a privilege log

26 is itself objectionable as overly broad, unduly burdensome, oppressive and harassing.  Cooper

27 objects to this request as calling for information neither relevant to the subject matter of this

28 litigation nor likely to lead to the discovery of admissible evidence at the time of trial.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

18.

Objections to Record Subpoena on Amy Cooper

1  **REQUEST I:** Any Conflict by and between public entity The State Bar of California, public
2  employees acting officially for The State Bar of California, and Catanzarite, and/or each of them.
3  Specifically, and without limiting the scope of production, Cooper is requested to produce a
4  simple summary of any relationship by and between Catanzarite, and/or each of them, and any
5  Person acting in any capacity for public entity The State Bar of California or any Person acting
6  on such Person's behalf.

7  **OBJECTION:**  Cooper objects to the request as vague and ambiguous because the special
8  definition of "Conflict" is vague, ambiguous and overly broad.  Cooper objects to this request as
9  violating Code of Civil Procedure section 2020.410 as failing to specify the requested documents
10  with requisite specificity which also renders the request vague, ambiguous, overly broad, unduly
11  burdensome, oppressive and harassing. Cooper objects to this request as seeking the production
12  of documents that are not business records which also renders the request unduly burdensome,
13  oppressive and harassing.  Cooper objects to this request as calling for information neither
14  relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible
15  evidence at the time of trial. Cooper objects to this request as violating Code of Civil Procedure
16  section 2020.410 et seq. because, as phrased, the request asks her to *create* responsive
17  documents, i.e., "Cooper is requested to produce a simple summary of any relationship by and
18  between Catanzarite, and/or each of them, and any Person acting in any capacity for public entity
19  The State Bar of California or any Person acting on such Person's behalf."

20
21  Dated: June 15, 2022.                    CATANZARITE LAW CORPORATION
22                                 By:
23                                      Kenneth J. Catanzarite
                                       Attorneys for Nonparty Amy Cooper
24
25
26
27
28

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

19.
**Objections to Record Subpoena on Amy Cooper**

PROOF OF SERVICE

STATE OF CALIFORNIA    )
COUNTY OF ORANGE    )    ss:

The undersigned certifies and declares as follows:

I am over the age of 18 and not a party to this action.  My business address is 2331 West Lincoln Avenue, Anaheim, California 92801, which is in the county where the mailing described below took place.

On June 15, 2022 I served the within **NONPARTY AMY COOPER'S OBJECTIONS TO DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS** by:

[ ]    (Facsimile Transmission) I caused the above mentioned document to be served by facsimile transmission to the parties at the fax numbers listed on the attached service list.

[X ]    (Mail) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope, with first class postage thereon fully prepaid, to be placed in the U.S. Mail at Anaheim, California, and certify that such envelope was placed for collection and mailing following ordinary business practices.

[X]    (E-mail) I caused the above mentioned document to be served via PDF e-mail attachment at the e-mail addresses listed on the attached service list.

[ ]    (Personal Service) I placed a true and correct copy thereof in a sealed envelope addressed as set forth on the attached service list and caused such envelope to be delivered by hand as set forth on the attached service list.

[X]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed June 15, 2022 at Anaheim, California.

_____
Typed Name: Han B. Le

SERVICE LIST

**Plaintiff Justin Beck:**
Justine Beck (Pro Per)
3501 Roselle St.
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
(Via Email and U.S. Mail)

**Attorneys for Defendants The State
Bar of California; Anand Kumar; Eli
David Morgenstern; Joy Nunley::**
VANESSA L. HOLTON (111613)
ROBERT G. RETANA (148677)
CARISSA N. ANDRESEN (278118)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, CA 94105-1639
Tel: (415) 538-2029
Fax: (415) 538-2321
Email: carissa.andresen@calbar.ca.gov
(Via Email ONLY)

**Deposition Officer:**
Raul A. Mata
6130 Camino Real #211
Riverside, California 92509
Rmata1959@gmail.com
(Via Email ONLY)

EXHIBIT 21-104
22-CV-01616-BAS-DDL

 **The State Bar of California**

**OFFICE OF ATTORNEY REGULATION & CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105

AttorneyRegulation@calbar.ca.gov
888-800-3400

July 14, 2022

Justin Beck

RE:   Catanzarite Law Corporation
      Certificate of Registration No. 09009

Dear Mr. Beck:

Enclosed please find the requested document copies from The State Bar files of the above-referenced law corporation and limited liability partnership along with a certification to their authenticity.

The charge for a document request is ten cents per page with a minimum fee of $5.00. These documents copies are 163 pages, (including 2 page letter), therefore, the fees associated with your requests are **$16.30.**

Please make your check payable to The State Bar of California and remit your payment, along with a copy of this letter to the above address.

If you have any questions, please contact me at (415) 538-2459.

Sincerely,

Brandi Holmes
Program Supervisor
Attorney Regulation and Consumer Resources



**The State Bar**
*of California*

**OFFICE OF ATTORNEY REGULATION &**
**CONSUMER RESOURCES**

180 Howard Street, San Francisco, CA 94105

AttorneyRegulation@calbar.ca.gov
888-800-3400

THIS IS TO CERTIFY:

The undersigned is employed by The State Bar of California, Attorney Regulation and Consumer Resources.   As such, one of my responsibilities is to maintain the records relating to the certification of law corporations and limited liability partnerships by The State Bar of California.

I have this day examined the records maintained by The State Bar of California relating to the certification of "**Catanzarite Law Corporation**", Registration No. 09009.

Please note that the 2022 Annual Renewal Form is not enclosed. Once located we will forward.

Attached hereto and made a part thereof are true copies of public documents from The State Bar records of the law corporation.

Date:   July 14, 2022

*Brandi S. Holmes*

Brandi Holmes
Program Supervisor
Attorney Regulation and Consumer Resources

Exhibit 21: 066
22-CV-01616-BAS-DDL

FILE NO. 4001
(To be filled in by State Bar)

**APPLICATION**

for issuance of

**CERTIFICATE OF REGISTRATION AS A LAW CORPORATION**

RECEIVED
JAN 29 1985
LAW CORP.

1. _____Kenneth J. Catanzarite_____,

(Name of applicant)

a professional corporation, hereby requests issuance to it of a Certificate of Registration as a law corporation.

2. A. The address of applicant's principal office is:

10358 Artesia Blvd., Bellflower, CA  90706

B. The address of all other offices of applicant are:

None.

3. Applicant files herewith in support of its above request the following:

A. Copy of its articles of incorporation, certified by the Secretary of State. *(Photocopy of certified copy is not acceptable.)*

B. List of the names and addresses in alphabetical order:

(1) of each of its directors, officers and shareholders, on which is noted (a) any officer who is not an active member of the State Bar (see §13403, Corporations Code) and (b) those directors, officers and shareholders who will practice law on its behalf, and

(2) other employees of applicant who will practice law on its behalf.

C. A statement that its name or names under which it may practice law contains and is restricted to the name or to the last name of one or more of the present, prospective, or former shareholders or of persons who were associated with a predecessor person, partnership, or other organization or whose name or names appeared in the name of such predecessor organization, and that the name includes wording or abbreviations denoting corporate existence such as "Professional Corporation", "Prof. Corp.", "Corporation", "Corp.", "Incorporated", or "Inc."

D. A copy of those portions of its by-laws, or a reference to the provisions of its articles of incorporation, relating to (i) ownership of its stock pursuant to subsection (1), Section C, Rule IV, Law Corporation Rules, (ii) transfer of its stock upon occurrence of the events set forth in subsection (2) of said Section C, (iii) the placing of a legend on its share certificates pursuant to subsection (4) of said Section C and (iv) the prohibition of the distribution of income pursuant to subsection (5) of said Section C.

E. An executed copy of written agreement of guarantee required by subsection (c), Section B, Rule IV, Law Corporation Rules.

All applications, reports, statements and other documents required to be filed with the State Bar shall be signed and verified by an officer of the applicant who is an active member of the State Bar and filed at the office of the State Bar in San Francisco, California. However, copy of by-laws or excerpts thereof must be certified to by the Secretary of the applicant.

Exhibit 21: 067
22-CV-01616-BAS-DDL

incorporation and general plan of operation are such that its affairs will be conducted in compliance with the State Bar Act, the Professional Corporations Act and other applicable provisions of the Corporations Code, the Rules of Professional Conduct of The State Bar, Law Corporation Rules of the State Bar and such other law, rules and regulations as may be applicable.

G. A filing fee in the amount of two hundred dollars ($200.00).

4. It is requested that the Certificate of Registration be dated: (Please check and complete.)

(1) __X__ earliest date possible;

(2) _____ the date that the corporation will commence providing legal services. This date is intended to be

_____
(Insert date)

Executed this 24th day of _____JAN._____, 19 85 .

_____
Kenneth J. Catanzarite, A Professional Corp.
(Name of corporation)

by _____Kenneth J. Catanzarite_____
(Type name)

President
(Insert title of person executing)

_____
(Signature)

## DECLARATION

I am an officer of _____Kenneth J. Catanzarite, A Professional Corp._____, and as such make this
(Name of applicant)

declaration for and on behalf of said corporation. I have read the foregoing application and all attachments thereto and know the contents thereof, and the same are true of my own knowledge. I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on _____JAN 24th_____, 19 85 , in the

_____City of Bellflower_____,

state of California.

_____

ATTACHMENT

TO

CERTIFICATE OF REGISTRATION

3.  A.  attached

    B.  (1)    Kenneth J. Catanzarite
               10358 Artesia Blvd.,
               Bellflower, CA  90706

               Mr. Catanzarite will be the sole officer,
               director, and shareholder and will be the only
               officer and shareholder to practice law on
               behalf of the corporation.

        (2).    None

    C.        The name under which this corporation will
               practice law contains and is restricted to the
               name of the present shareholder and includes
               the words "Professional Corporation" denoting
               Corporate existence.

    D.        See Articles of Incorporation item "Fifth"

    E.        Attached

    F.        Applicant hereby declares that it is an
               existing corporation and that its
               organization, by-laws, articles of
               incorporation and general plan of operation are
               such that its affairs will be conducted in
               compliance with the State Bar Act, the
               Professional Corporations Act and other
               applicable provisions of the Corporations Code,
               the Rules of Professional Conduct of The State
               Bar, Law Corporation Rules of the State Bar and
               such other law, rules and regulations as may be
               applicable.

    G.        Enclosed

## GUARANTEE

The undersigned, being the sole shareholder of Kenneth J. Catanzarite a Professional Corporation, hereby guarantees payment by the corporation of all claims established against it by its clients for errors or omissions arising out of the practice of law not to exceed $50,000 for each claim with an aggregate maximum liability not to exceed $100,000 per calendar year; provided that any payment required to be made hereunder shall be offset by the amount paid by any insurance company providing errors or omissions insurance for the corporation or any of its shareholders.

Dated: 1/24/85

Kenneth J. Catanzarite



# State of California
## OFFICE OF THE SECRETARY OF STATE

I, *MARCH FONG EU*, Secretary of State of the State of California, hereby certify:

That the annexed transcript has been compared with the record on file in this office, of which it purports to be a copy, and that same is full, true and correct.

*IN WITNESS WHEREOF*, I execute this certificate and affix the Great Seal of the State of California this

JAN 18 1988



*March Fong Eu*

**Secretary of State**

SEC/STATE FORM CE-107

Exhibit 21: 074△ᴄᴀᴘ
22-CV-01616-BAS-DDL

1266327

ARTICLES OF INCORPORATION
OF
KENNETH J. CATANZARITE
A PROFESSIONAL CORPORATION

ENDORSED
FILED
In the office of the Secretary of State
of the State of California

JAN 1 4 1985

MARCH FONG EU, Secretary of State
Gloria J. Carroll
Deputy

I

The name of this corporation shall be:

KENNETH J. CATANZARITE, A PROFESSIONAL CORPORATION.

II

The purpose of this corporation is to engage in the profession
of law and any other lawful activities (other than the banking
or trust company business) not prohibited to a corporation
engaging in such profession by applicable laws and
regulations.  This corporation is a professional corporation
within the meaning of Part 4, Division 3, Title 1, of the
California Corporations Code.

III

The name and address in this state of the corporation's
initial agent for service of process is:

Kenneth J. Catanzarite
10358 Artesia Blvd.
Bellflower, CA  90706

IV

The corporation is authorized to issue only one class of
shares, and the total number of shares which the corporation
is authorized to issue is 1,000.

V

Shares; ownership and transfer.

(1) The shares of this corporation may be owned only by (a)
this corporation or (b) by an active member of the State Bar
who

      (i) is an employee or retired employee of this
      corporation and is not a director, officer, or
      shareholder of any other law corporation, and

Exhibit 21: 072
22-CV-01616-BAS-DDL

(ii) does not practice law except on behalf of this corporation; provided, however, a member may be a shareholder although he or this corporation acts as attorney pursuant to court order, or acts on behalf of a legal aid of similar organization, or is associated or employed as an attorney by another active member, law partnership, or law corporation.

(2)   The shares this corporation owned by a person who

(a)   dies,

(b)   ceases to be an eligible shareholder, or

(c)   becomes a disqualified person as defined in section 13041 (d) of the Corporations Code, for a period exceeding 90 days,shall be sold and transferred to the corporation or its shareholders on such terms as are agreed upon by the corporation and its shareholders.  Such sale or transfer shall occur not later than 6 months after any such death and not later than 90 days after the date he ceases to be an eligible shareholder, or 90 days after the date he becomes a disqualified person.

(3)   The corporation and its shareholders may, but need not, agree that shares sold to it by a person who becomes a disqualifed person for any reason other than disbarment may be resold to such person if and when he again becomes an eligible shareholder.

(4)   The share certificates of the corporation shall contain an appropriate legend setting forth the foregoing restrictions.

(5)   The income of this corporation attributable to its practice of law while a shareholder is a disqualified person shall not in any manner accrue to the benefit of such shareholder or his shares.

DATED: _Jan. 10_, 1985

Kenneth J. Catanzarite,
Incorporator

## DECLARATION

I hereby declare that I am the person who executed the foregoing Articles of Incorporation which execution is my act and deed.

Kenneth J. Catanzarite

# (Form B)

I.   A.   Name of Corporation *Catanzarito Law Corporation*

B.   State Bar Certificate of Registration Number: *09809*
(same as file # on cover letter)

C.   Principal Address* *10358 Artesia Blvd*
City and State *Bellflower    CA*   Zip *90706*
*(Notification to the State Bar Law Corporation Department of change of address for the corporation does not satisfy the requirement of Rule 201 of Rules of Procedure and Section I of Article I of the Rules and Regulations of the State Bar requiring notice of change of address by individual members of the State Bar which should be sent separately to the State Bar Membership Records Department.)

D.   The Corporation complies with the security for claims requirement by having on file with the State Bar a shareholders guarantee. The guarantee limit is for *50,000* per claim with an annual aggregate limit of *100,000*. All present shareholders have executed the guarantee.

DURING THE FOREGOING CALENDAR YEAR, HAS THIS LAW CORPORATION HAD ANY CHANGES RELATED TO THE FOLLOWING:

|   |   | Yes | No |
|---|---|:---:|:---:|
| E. | Articles of Incorporation? | ☐ | ☒ |
| F. | Directors, officers, shareholders, employees, entities, or other individuals practicing law on behalf of the law corporation? | ☐ | ☒ |
| G. | Bylaws (only amendments that relate to State Bar Rule IV-C need to be reported)? | ☐ | ☒ |

IF YOU RESPONDED YES TO ANY OF QUESTIONS E-G ABOVE AND HAVE NOT PREVIOUSLY REPORTED THOSE CHANGES TO THE STATE BAR, PLEASE ATTACH A STATEMENT SETTING FORTH THOSE CHANGES.

II.   Law Corporation Rule IV-B requires that the amount of shareholder guarantee shall be $50,000 per claim with an annual aggregate of $100,000, each multiplied by the number of persons practicing law on behalf of the corporation. The maximum guarantee shall not be required to exceed $500,000 for each claim and $5,000,000 for all claims during the year. If the corporation is practicing in a continuous relationship with others as a partner or associate, the limits set forth in the shareholder guarantee must be sufficient to cover all the attorneys practicing law on behalf of the partnership or association.

ON THE NEXT PAGE, PLEASE SET FORTH THE INFORMATION REQUESTED CONCERNING SHAREHOLDERS, EMPLOYEES, PARTNERS, ASSOCIATES, AND OTHERS.

Continued

RECEIVED
JAN 1 6 1986
LAW CORP.

Exhibit 21: 075
22-CV-01616-BAS-DDL

*on behalf of the corporation:*

| SHAREHOLDERS | EMPLOYEES | OTHER PERSONS |
|---|---|---|
| | | (Please indicate relationship to Law Corp., e.g. Of Counsel, etc.) |

*Kenneth J. Catan Zarite* *Kenneth J. Catanzarite* *State Bar #113750*

*Joseph Marini* *State Bar #115929*

If additional space is needed, list on an attached sheet.

**B. PARTNERS OF THE LAW CORPORATION AND OTHERS ASSOCIATED WITH THE LAW CORPORATION**

1. As of December 31, 1985, the following were partners of the law corporation, or other persons or entities *associated with the Law Corporation* and are practicing with the corporation in a continuous relationship:

| Partners or Other Persons or Entities (including Law Corporations which are partners of, or associated with your Law Corporation) | State Bar Membership No. or Law Corporation Cert. of Reg. No. (if applicable) |
|---|---|
| | |

2. Individuals or entities not listed above also practicing law on behalf of the partnership or association:

| Name | State Bar Membership No. or Law Corporation Cert. of Reg. No. (if applicable) |
|---|---|
| | |

If additional space is needed, list on an attached sheet.

**III. DECLARATION**

I am the *PRESIDENT* of *Catanzarite Law Corporation*
(name of office)                    (name of corporation)
and as such make this declaration for and on behalf of the said corporation. I have read the foregoing report and any attachments and know the contents thereof, and the same are true of my own knowledge.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on *1/15*, 1986 in the city of *Bellflower*, State of California.

Exhibit 21: 076
22-CV-01616-BAS-DDL

**GUARANTEE**

The undersigned, being the sole shareholder of Catanzarite Law
Corporation, hereby guarantees payment by the corportion of
all claims established against it by its clients for errors or
omissions arising out of the practice of law not to exceed
$100,000 for each claim with an aggregate maximum liability
not to exceed $200,000 per calendar year;  provided that any
payment required to be made hereunder shall be offest by the
amount paid by any insurance company providing errors or
omissions insurance for the corporation or any of its
shareholders.

Dated: _6/12/84_          _____
                          Kenneth J. Catanzarite



# State of California

## OFFICE OF THE SECRETARY OF STATE

I, *MARCH FONG EU*, Secretary of State of the State of California, hereby certify:

That the annexed transcript has been compared with the record on file in this office, of which it purports to be a copy, and that same is full, true and correct.

*IN WITNESS WHEREOF*, I execute this certificate and affix the Great Seal of the State of California this

MAY 0 8 1985



*March Fong Eu*

Secretary of State

SEC/STATE FORM CE-107

Exhibit 21: 078
22-CV-01616-BAS-DDL

CERTIFICATE OF AMENDMENT

OF

ARTICLES OF INCORPORATION

ENDORSED
FILED
In the office of the Secretary of State
of the State of California

APR 25 1985

MARCH FONG EU, Secretary of State
By JAMES E. HARRIS
Deputy

KENNETH J. CATANZARITE certify that:

1.   They are the president and secretary, respectively of KENNETH J.
     CATANZARITE, A PROFESSIONAL CORPORATION, a California
     Corporation.

2.   Article ................................. of the articles of
     incorporation of this corporation is amended to read as follows:
     The name of this Corporation is:
                    CATANZARITE LAW CORPORATION

3.   The foregoing amendment of articles of incorporation has been
     duly approved by the board of directors.

4.   The foregoing amendment of articles of incorporation has been
     duly approved by the required vote of shareholders in accordance
     with Section 902 of the Corporations Code.  The total number of
     outstanding shares of the corporation is 1,000.  The number of
     shares voting in favor of the amendment equaled or exceeded the
     vote required.  The percentage vote required was more than 50%.

                              KENNETH J. CATANZARITE,
                              President

                              KENNETH J. CATANZARITE,
                              Secretary

The undersigned declare under penalty of perjury that the matters set
forth in the foregoing certificate are true of their own knowledge.

Executed at ..................... on ........... .

                              KENNETH J. CATANZARITE

                              KENNETH J. CATANZARITE

GUARANTEE

The undersigned, being the sole shareholder of Catanzarite Law
Corporation, hereby guarantees payment by the corportion of
all claims established against it by its clients for errors or
omissions arising out of the practice of law not to exceed
$50,000 for each claim with an aggregate maximum liability not
to exceed $100,000 per calendar year;  provided that any
payment required to be made hereunder shall be offest by the
amount paid by any insurance company providing errors or
omissions insurance for the corporation or any of its
shareholders.

Dated: _____     _____
                                  Kenneth J. Catanzarite

## DECLARATION OF KENNETH J. CATANZARITE

The undersigned declares under penalty of perjury that the following are true:

a.  Kenneth J. Catanzarite is a director and officer of Catanzarite Law Corporation.

b.  As an officer of the Catanzarite Law Corportion, Kenneth J. Catanzarite holds the following offices:

    1) Chief Executive Officer
    2) Secretary
    3) Chief Financial Officer

c.  Address is: 10358 Artesia Blvd.
              Bellflower, CA  90706

d.  Kenneth J. Catanzarite is the sole shareholder of Catanzarite Law Corporation.

e.  The following employees are rendering legal services on behalf of Catanzarite Law Corporation.

    1) Kenneth J. Catanzarite
    2) Joseph Mancini

Executed at _____ on _____

KENNETH J. CATANZARITE

Exhibit 21: 081
22-CV-01616-BAS-DDL

# 1986 LAW CORPORATION ANNUAL REPORT
# AND 1987 RENEWAL FORM
## (Short Form)

RETURN THIS REPORT WITH THE REQUIRED ANNUAL FEE OF $50 BY MARCH 31, 1987

Name of Corporation _____ Catanzarite Law Corporation _____

State Bar Certificate Number ___ 9009 _____
(same as file # on cover letter)

Principal Address* _____ 10358 Artesia Boulevard _____

City and State _____ Bellflower, CA _____ Zip 90706 _____

*(If this constitutes a change of address, see long form Section I-C. Re: Notification to State Bar of change of address.)

I am an active member of the State Bar and the __President__ of __Catanzarite__
                                             (name of this office)            (name of corporation)

__Law Corporation__

and as such make this declaration for and on behalf of said corporation.

Check one:

☐ There have been no changes in the information required to be set forth on the Annual Report (Long Form) received herewith during the calendar year 1986. (Note: If this box is checked there is no need to complete any portions of the Long Form Annual Report or return it to the State Bar.)

☒ There have been changes during the calendar year 1986 in the information required to be set forth on the attached Annual Report (Long Form) and said changes are set forth on said Report and incorporated herein. (Note: If this box is checked, set forth on the attached Long Form Annual Report (1) the name of the corporation and its State Bar Certificate of Registration number (Questions I-A and B) and (2) any changes in the other information required to be set forth on the form. Return it to the State Bar office *with this* Short Form.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __January 27__, 1987 in the city of __Bellflower__ _____ State of California

                      Signature _____
                                  Must be executed by an active member of the
                                  State Bar who is an officer of the corporation.

**RECEIVED**

JAN 29 1987

**LAW CORP.**

PLEASE RETAIN "YELLOW" COPY OF THIS REPORT FOR REFERENCE
IN COMPLETING FUTURE ANNUAL REPORTS

Exhibit 21: 082
22-CV-01616-BAS-DDL

*3*

### (Long Form B)

I.    A.  Name of Corporation  Catanzarite Law Corporation

      B.  State Bar Certificate of Registration Number: 9009
          (same as file # on cover letter)

      C.  Principal Address*  10358 Artesia Boulevard

          City and State  Bellflower,CA                    Zip 90706

          *(Notification of a change of address for the corporate entity must be made to the Law
          Corporation office. A change of address for an individual member must be made separately
          to the State Bar Membership Records office.)

      D.  The Corporation complies with the security for claims requirement by having on file with the
          State Bar a shareholders guarantee. The gaurantee limit is for  $150,000  per
          claim with an annual aggregate limit of  300,000  . All present shareholders
          have executed the guarantee.

          DURING THE FOREGOING CALENDAR YEAR, HAS THIS LAW CORPORATION HAD ANY
          CHANGES RELATED TO THE FOLLOWING:

          |  |  | Yes | No |
          |---|---|---|---|
          | E. | Articles of Incorporation? | ☐ | ☒ |
          | F. | Directors, officers, shareholders, employees, entities, or other individuals practicing law on behalf of the law corporation? | ☒ | ☐ |
          | G. | Bylaws (only amendments that relate to State Bar Rule IV-C need to be reported)? | ☐ | ☒ |

          IF YOU RESPONDED YES TO ANY OF THE QUESTIONS E-G ABOVE AND HAVE NOT PREVIOUSLY
          REPORTED THOSE CHANGES TO THE STATE BAR, PLEASE ATTACH A STATEMENT SETTING
          FORTH THOSE CHANGES.

II.   Law Corporation Rule IV-B requires that the amount of shareholder guarantee shall be $50,000 per
      claim with an annual aggregate of $100,000, each multiplied by the number of persons practicing
      law on behalf of the corporation. The maximum guarantee shall not be required to exceed $500,000
      for each claim and $5,000,000 for all claims during the year. If the corporation is practicing in a
      continuous relationship with others as a partner or associate, the limits set forth in the shareholder
      guarantee must be sufficient to cover all the attorneys practicing law on behalf of the partnership
      or association.

      ON THE NEXT PAGE, PLEASE SET FORTH THE INFORMATION REQUESTED CONCERNING
      SHAREHOLDERS, EMPLOYEES, PARTNERS, ASSOCIATES AND OTHERS.

                                                                        **Continued**

RECEIVED

Exhibit 21: 083
22-CV-01616-BAS-DDL