# EXHIBIT
# 23

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically RECEIVED on 10/4/2021 at 3:04:50 PM

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 10/4/2021 by Debra Saporito, Deputy Clerk

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT, DIVISION THREE

| | |
|---|---|
| JUSTIN S. BECK<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CATANZARITE LAW CORPORATION, KENNETH JOSEPH CATANZARITE, BRANDON WOODWARD, TIM JAMES OKEEFE, MOHAMMED ZAKHIREH, AMY COOPER, CLIFF HIGGERSON<br><br>Defendants and Respondents | Court of Appeal No. G059766<br><br>Superior Ct. No. 30-2020-01145998 |

Appeal From Orders and Judgments
Of the Superior Court, County of Orange
Hon. Deborah Servino, Judge

**APPELLANT'S REPLY BRIEF**

Justin Beck, *In Pro Per*
3501 Roselle St.
Oceanside, CA 92056
Tel: (760) 449-2509
Appellant
E-mail: justintimesd@gmail.com

Document received by the CA Supreme Court.

Exhibit #23: 002
22-CV-01616-BAS-DDL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………....……...4-8

I.   STATEMENT OF THE CASE……………………….………………..9

     A.  The Complaint Allegations and the Injury Producing Conduct

     B.  Respondent's Anti-SLAPP Motions

II. LEGAL DISCUSSION………………………………………......…13

A. The Anti-SLAPP Statute Applies to Causes of Action that Arise from Protected Activity……………………………………...…13

B. The Trial Court Erred in Finding Respondents Conduct was Lawful Petitioning……………………………………………………………16

    1.  Beck Disputes the Malicious Prosecution Claim is Based on *Legal* Petitioning Activity……………………………...…..19

    2.  Beck Disputes Remaining Claims are Based on Constitutionally Protected Activity…………………………...19

        a.  Inentiontal Infliction of Emotional Distress Claim…20

        b.  Slander of Title Claim…………………………….20

        c.  UCL Claim…………………………………………23

        d.  Trial Court Erred in Finding Respondents' Acts Giving Rise to Liability Constitute *Lawful* Acts Protected by the First Amendment…………………..……………23

C. Beck Shows Probability of Success on the Merits, Respondents Complete Defense Fails……………………………………………34

    1.  Prima Facie Case for Malicious Prosecution Claim………..36

    2.  Prima Facie Case for UCL Claim…………………………38

Document received by the CA Supreme Court.

3.  Prima Facie Case for Slander of Title..........................39

4.  Prima Facie Case for IIED Claim.............................40

5.  Respondents Purported Complete Defense Fails............41

III. CONCLUSION...................................................................45

CERTIFICATE OF COMPLIANCE..........................................47

Document received by the CA Supreme Court.

Exhibit #23: 004
22-CV-01616-BAS-DDL

# TABLE OF AUTHORITIES

## CASES

*Whitten v. Dabney*, 171 Cal. 621,631 (1915)............................*passim*

*Kennedy v. Kennedy*, 235 Cal.App.4th 1474, 1485 (2015)................*passim*

*Flatt v. Superior Court* (1994) 9 Cal.4th 275............................*passim*

*Shen v. Miller* (2012) Cal.App.4th 48, 57-60............................*passim*

*Flatley v. Mauro*, 39 Cal.4th 299, 46 Cal. Rptr. 3d 606, 139 P.3d 2 (Cal. 2006)...........................................................*passim*

*Bertero v. National General Corp.* 13 Cal.3d at p. 43-57, 60, Fn. 5.........36

*Silberg v. Anderson* (1990) 266 Cal.Rptr. 638, 50 Cal. 3d 205, 212, 786 P.2d 365...............................................................41

*FinCanna Capital Corp. v. Cultivation Technologies, Inc.* Cal.App 4th Unpublished G058700.....................................................*passim*

*Kimmel v. Goland* (1990) 51 Cal.3d 202, 209 [271 Cal.Rptr. 191, 793 P.2d 524] .........................................................................42

*Bergstein v. Stroock & Strock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806-807).......................................................................24

Document received by the CA Supreme Court.

*Swat-Fame v. Goldstein*, 101 Cal.App.4th 613..............................37

*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863.......................37

*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047.................37

*Sierra Club Foundation v. Graham*, 72 Cal.App.4th 1135...................38

*Sangster v. Paetkau*, 68 Cal.4th 151........................................38

*Arcaro v. Silva and Silva Ent. Corp.*, 77 Cal.App.4th 152...................38

*Puryear v. Golden Bear Ins. Co.*, 66 Cal.App.4th 1188.....................38

*Leonardi v. Shell Oil Co.*, 216 Cal.App.3d 547...............................38

*Stop Youth Addiction v. Lucky Stores*, 17 Cal.4th 553, 561-567.............39

*People ex rel. Herrera v. Stender*, 212 Cal.App.4th 614, 632 (2012) .......39

*Palmer v. Zakloma* (2003) 109 Cal.App.4th 1367.............................39

*Albertson v. Raboff*, 46 Cal.2d 375...........................................42

*People v. Persolve*, 218 Cal.App.4th 1267, 1274 (2013) .....................44

Document received by the CA Supreme Court.

*Berner v. Delehanty*, 129 F3d 20, 26 (1st Cir 1997)............................14

*Sefick v. Gardner,* 164 F3d 370, 372 (7th Cir 1998) ...................…......15

*Mezibov v. Allen*, 411 F3d 712, 718 (6th Cir 2005) ............................15

## STATUTES

Cal. Bus. & Prof. Code § 6104...........................................*passim*

Cal. Bus. & Prof. Code § 17200, *et seq*..............................23, 38, 39

Cal. Rul. of Prof. Cond. § 1.01, *et seq.* .................10, 13, 30, 37, 38, 45

Cal. Rul. of Prof. Cond. § 1.7, *et seq.* ......10, 13, 16, 17, 18, 20,  23, 30, 38

Cal Rul. of Prof. Cond. § 4.2, *et seq.* ...................................13, 30, 31

Cal. Rul. of Prof. Cond. § 7.3, *et seq.* ...................................…..13, 30

Cal Rul. of Prof Cond. § 8.4, *et seq.* ...........................……......13, 30

Cal. Code of Civ. Proc. §  425.16, *et seq*...............................*passim*

Cal. Code of Civ. Proc. § 128..................................................46

Document received by the CA Supreme Court.

Exhibit #23: 007
22-CV-01616-BAS-DDL

Cal. Pen. Code § 118: Perjury...……………………………………12, 32

Cal. Pen. Code § 518: Extortion (Blackmail)……………….10, 25, 35, 45

Cal. Pen. Code § 522: Extortion (Blackmail) for Signature…..10, 25, 35, 45

Cal. Pen. Code § 523: Attempted Extortion (Blackmail)……..10, 25, 35, 45

Cal. Pen. Code § 484(a): Larceny.……………………………………….45

Cal. Corp. Code § 603(a).…………………………………....21, 23

Cal. Corp. Code § 25401.………………………………………...27, 44

Cal. Corp. Code § 1507.………………………………………….38

Cal. Civ. Code § 47, et seq.……………………………………...42

Cal. Rules of Court § 8.124(b)(1)(B).……………………………..13

First Amendment of United States Constitution……………………..*passim*

Fed. Rules of Civ. Proc., Rule 23.1(c).……………………………*passim*

Document received by the CA Supreme Court.

Exhibit #23: 008
22-CV-01616-BAS-DDL

OTHER

California Lawyers Association "Spotlight on Ethics: Unwaivable Conflicts of Interest" by Kevin Mohr (Regarding New Rule 1.7)......................17

The Structure of Modern Free Speech Doctrine: Strict Scrutiny, Intermediate Review, and "Reasonableness" Balancing. R. Randall Kelso, Elon Law Review, Vol. 8: 291............................................15, 16

Document received by the CA Supreme Court.

Exhibit #23: 009
22-CV-01616-BAS-DDL

## I. STATEMENT OF THE CASE

### A. The Complaint's Allegations and the Injury Producing Conduct

First, the Complaint allegations underlying this appeal target the "unlawful scheme" (I AA 15) conducted by defendants Catanzarite Law Corporation, Kenneth Joseph Catanzarite, Brandon Woodward, Tim James O'Keefe (together "Catanzarite") and defendants Richard O'Connor, Amy Cooper, Cliff Higgerson, Mohammed Zakhireh, James Duffy, Aroha Holdings, Inc., Tony Scudder, TGAP Holdings LLC and Mobile Farming Systems, Inc. ("MFS") (together "O'Connor Faction") that has caused liability to appellant "involving malicious prosecution and…various extra-judicial acts" (I AA 15). The unlawful scheme includes those referenced by respondents in their reply brief where Catanzarite was not authorized by law (RB 11-15), and:

> "a letter to Plaintiff [as officer of CTI] demanding that he turn over all CTI operations on the premise that MFS was the sole shareholder of CTI" (I AA 19, 32) in which Catanzarite was not authorized by law to represent MFS, CTI, nor O'Connor Faction (Appellant's Exhibits ISO Motion to Augment 117-147) ("Augment") which constitutes attempted extortion under color of official right (Cal. Pen. Code § 523),
>
> Knowingly fraudulent (I AA 25, 27, 28, 29, 30) publications and non-communicative acts slandering title to appellant's property to the MFS Action, the corporate records of MFS and CTI, and to third parties FinCanna Capital and Western Troy in which Catanzarite

Document received by the CA Supreme Court.

was not authorized by law to represent MFS, CTI, nor O'Connor Faction (Cal. Rul. of Prof. Cond. ("CRPC") 1.01(i), 1.01(h), 1.7(d)(1), 1.7(d)(3).)

unlawful settlement agreements in the Root Action that were not approved by the Court (I AA 31, 32) (Fed. Rules of Civ. Proc. 23.1)(*Whitten v. Dabney*; *Kennedy v. Kennedy* in AOB, *Shen v. Miller* and Augment, generally) ("Derivative Law") which was conclusively predicated upon extortion for property and/or signature by Catanzarite of O'Connor Faction (Cal. Pen. Code § 518, 522, 523),

Mesa Action/CTI Action (I AA 33, 34) in which Catanzarite was not authorized by law to target appellant's decisions at CTI by representing a class of shareholders including its adversary Cooper targeting appellant's duly authorized decisions at CTI and has been disqualified (Augment 117-147)(Derivative Law),

FinCanna Action (I AA 34) targeting appellant's duly authorized decisions on behalf of CTI in which Catanzarite was not authorized by law to appear corruptly and willfully *ultra vires* for CTI and has been disqualified (Augment 117-147)(Bus. & Prof. Cod. § 6104),

Scottsdale Action (I AA 19) targeting appellant's insurance coverage asset in which Catanzarite was not authorized by law to appear corruptly and willfully for CTI *ultra vires* (Augment 117-147) (Bus. & Prof. Cod. § 6104),

Page 10 of 47

Document received by the CA Supreme Court.

FAC Mesa Action/FAC CTI Action in which Catanzarite was not authorized by law while disregarding an entire class of duly authorized shares (I AA 34) created by O'Connor and Cooper, and previously settled by Zakhireh, Duffy, and O'Connor (I AA 29-30) (Bus. & Prof. Cod. § 6104),

unlawful settlement agreements and compromise in derivative actions where Catanzarite was not authorized by law (I AA 22, AA 34) predicate to unlawful petioning against appellant (Derivative Law) (Bus. & Prof. Cod. § 6104),

securities fraud (I AA 14-59 *passim*, I AA 32) where O'Connor and Cooper sold CTI shares (I AA 25, 46-49) in their duly authorized capacities for CTI, including to appellant, that they later purported to "void" (I AA 228-229) for Catanzarite in furtherance of their unlawful scheme before voting the same shares again (Augment 123, 127, 136, 137) to support competing litigation not authorized by law (Cal. Corp. Code § 25401) (Bus. & Prof. Cod. § 6104),

securities fraud where Zakhireh and Duffy who bought shares from CTI and O'Connor knowing MFS was not a shareholder of CTI (I AA 32) before Zakhireh, O'Connor, and Duffy accepted office in CTI on the basis that MFS was the only shareholder where Catanzarite would assume the unlawfully extorted role as counsel for its adversary, MFS (Cal. Corp. Code § 25401) (Bus. & Prof. Cod. § 6104),

Document received by the CA Supreme Court.

Exhibit #23: 012
22-CV-01616-BAS-DDL

perjury (AA 35) propounded on behalf of directly adverse litigant O'Connor where Catanzarite was not authorized by law (III AA 610 - 637) (Cal. Pen. Code 118 PC),

The "unlawful scheme" (AA 15) commenced on September 14, 2018 when respondents Catanzarite filed the Root Action *against* CTI, *against* appellant, *against* MFS *and against the wishes* of MFS, *against* respondent Cooper, *against* respondent Higgerson, and *against* defendants Scudder, Aroha, TGAP, and O'Connor.

The injury producing conduct is not limited to the MFS Action nor Root Action (I AA 14-59), and extends to illegal non-judicial acts by statute, and Mesa/CTI Action, Scottsdale Action, FinCanna Action, and amendments to the Mesa/CTI Action, MFS Action, and Root Action following a trial of fact under 709 (Bus. & Prof. Code 6068).

**B. Respondent's Anti-SLAPP Motions**

Respondents all filed special motions to strike appellant's Complaint under Cal. Code of Civ. Proc. section 425.16, and appellant opposed the anti-SLAPP motions as outlined by respondents' in their opening brief (RB 16-19). Judgment were entered in favor of respondents as outlined by respondents (RB 18-19). The Court ruled to strike the Complaint as SLAPP as to all respondents and all causes of action save for the claim surviving against Zakhireh for slander of title.

In doing so, the Court understandably erred in its assumption that Catanzarite was authorized by law to represent its legal adversaries against appellant (CRPC)(Derivative Law).

Document received by the CA Supreme Court.

Respecting California Rule of Court 8.124(b)(1)(B) (RB 17, caption 2), appellant did not assume filings in respondent's appendix would be "reasonably" (CRPC 1.01(h) relied upon, since respondents cannot "reasonably" rely upon unlawful filings as a matter of law. Catanzarite "reasonably should know" this, nor is Catanzarite "reasonably prudent" in its prosecution on behalf of nor defense of respondents given these "circumstances" (CRPC 1.01 *et seq.,* 1.7(d)(3), 4.2, 7.3, and 8.4).

Catanzarite cannot, as a matter of law, "reasonably believe" (CRPC 1.01(i) it could ever direct claims at appellant, nor defend respondents.

## II. LEGAL DISCUSSION

This review is de novo. Appellant maintains that Catanzarite is akin to a band of vigilante police officers lacking a badge now and for all times after September 14, 2018, seeking to hold appellant liable for the acts of its own purported clients Cooper and O'Connor while directing conclusively proven illegal conduct of defendants and respondents to this appeal.

When this Court reviews de novo what normally constitutes protected activity under Constitutional tenets, litigation privilege, privilege in communications, admissible evidence, or conduct "authorized by law," it must do so with the lens that Catanzarite is not authorized by law after adoption of CRPC in California based on case law over the country that led to CRPC 1.7(d)(3), according to Derivative Law, and according to legal definitions (CRPC 1.01) of "reasonable" as it relates to an objective standard.

## A. The Anti-SLAPP Statute Applies to Causes of Action That Arise from Protected Activity

Page 13 of 47

Document received by the CA Supreme Court.

Exhibit #23: 014
22-CV-01616-BAS-DDL

Speech Integral to Illegal Conduct Exempt from First Amendment

Section 425.16 applies to "a cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech *under the United States Constitution or the California Constitution* in connection with a public issue." Cal. Code Civ. Proc. 425.16(b)(1) (emphasis added).

Defamation including libel and slander, perjury, blackmail (also known as extortion), and solicitations to commit crimes are all exceptions to what constitutes constitutionally "protected activity." Further, cases in which freedom of speech is outweighed by an even more compelling interest are, too. Appellant's case to restrict unlawful conduct directed at him driven through reckless violations of attorney ethics rules and criminal statute without probable cause is more compelling than preserving free speech of the unlawful conductors (Catanzarite and O'Connor Faction) in a non-public forum (Orange County Superior Court, and this Court of Appeal).

Non-Public Forums like Courtrooms Reasonably Restrict Free Speech

Government restrictions on expression at a nonpublic forum will be upheld so long as they are reasonable and are not based on the speaker's viewpoint. The government has the right to prevent securities fraud, extortion, larceny, and attorney misconduct – all expressly by statute or regulation. Appellant has a right to seek damages for the unlawful conduct.

"A courthouse – and, especially, a courtroom – is a nonpublic forum." *Berner v. Delahanty*, 129 F3d 20, 26 (1st Cir 1997). "The lobby of the courthouse is not a traditional public forum or a designated forum, not a

Document received by the CA Supreme Court.

place open to the public for presentation of views." (*Sefick v. Gardner* 164 F3d 370, 372 (7th Cir 1998). "The courtroom is a nonpublic forum, *Berner*, 129 F.3d at 26, where the First Amendment rights of everyone (attorneys included) **are at their constitutional nadir**." *Mezibov v. Allen*, 411 F3d 712, 718 (6th Cir 2005).

Regulations Restrict Attorney Misconduct Under the State Bar Act and CRPC, and Statutes Expressly Restrict Respondents Criminal Conduct in Non-Public Forum Reasonably

As described herein, we have regulations and statutes enacted specifically to restrict the conduct of respondents that they assert to be protected. It is reasonable for the government to restrict blatant attorney misconduct and deceit and unauthorized legal representation in the non-public forum, and further to restrict securities fraud, larceny, perjury, extortion, and criminal conduct by statute.

Anti-SLAPP statute requires scrutiny on what constitutes Constitutionally protected activity because the conduct asserted by respondents as free speech is anything but. (The Structure of Modern Free Speech Doctrine: Strict Scrutiny, Intermediate Review, and "Reasonableness" Balancing. R. Randall Kelso, Elon Law Review, Vol. 8: 291) ("Free Speech Doctrine").

Statutory Restraint on Respondent's Purportedly Protected Speech Exists

Beyond the "base" minimum rational review of respondent's purportedly protected activity that fails the "regulation of conduct" standard and the non-viewpoint discrimination involving advocacy of illegal conduct, a prior restraint is a legal sanction that has the effect of

Document received by the CA Supreme Court.

suppressing future speech before there is a judicial finding, after appropriate proceedings, that such speech is not constitutionally protected from restraint." (Free Speech Doctrine p. 606). In other words, this Court should consider the conduct that has prior restraint when assessing the protections asserted by respondents – no court ruling is necessary to do so.

For content-neutral regulatory systems, application of the state's "ordinary 'judicial review' rules" was adequate, absent "special problems of undue delay in individual cases as the ordinance is applied." (Free Speech Doctrine p. 618). Here, respondents are precluded from illegal activity giving rise to the Complaint by regulation and statute. Respondents believe that Section 425.16 protects them because they are petitioning, but fail to address that the petitioning is unlawful under the Constitution because it is expressly carved out of Free Speech Doctrine and prior restraint exists for their illegal conduct by regulation and statute.

<u>Implications of CRPC 1.7 Upon All Allegations</u>

Respondents would like this Court to disregard its recent findings (Augment 117-147) as if they are irrelevant to this appeal. All liability from respondents "arises from" this unlawful conduct. In other words, the otherwise lawful petitioning would not exist but for its predicate unlawful conduct.

**B. The Trial Court Errred in Ruling Appellant Liability is Based on Legal Petitioning**

Updating the old rule 3-310, the new **CRPC 1.7 Conflict of Interest: Current Clients** holds that (a) a lawyer shall not…(d) represent a

Page 16 of 47

Document received by the CA Supreme Court.

client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities or relationships with another client, a former client or a third person, or <u>by the lawyer's own interests</u>.

(d) Representation is permitted under this rule only if the lawyer **reasonably believes** that the lawyer will be able to provide competent and diligent representation to each affected client; (2) **the representation is not prohibited by law**; and (3) **<u>the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal</u>**.

<u>Catanzarite is Not Authorized by Law</u>

Since September 14, 2018, ***whether or not it was disqualified and when,*** Catanzarite is not authorized by law to represent MFS (directly or derivatively), CTI (directly or derivatively), O'Connor (personally or in any capacity for the inanimate corporations CTI, MFS, nor TGAP), Cooper (personally or in any capacity for the inanimate corporations CTI, MFS, nor TGAP), Higgerson, Scudder, Aroha (personally or in any capacity for an inanimate corporation including CTI or MFS), Zakhireh or Duffy (personally or in any capacity for an inanimate corporation including CTI or MFS), or TGAP ("Catanzarite Adversaries"). In practicing law in an unauthorized capacity, Catanzarite is not entitled to attorney fees, either, starting September 14, 2018 (Augment 134-138).

<u>Interpretation by California Lawyer's Association of CRPC 1.7</u>

"It is important to recognize that [Catanzarite's representation of

Document received by the CA Supreme Court.

Catanzarite Adversaries] requires an objective belief; not the lawyer's subjective belief. "Reasonable belief" is a defined term in the rule and "when used in reference to a lawyer means that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable." CRPC 1.0.1(i). "Reasonable" itself is defined and "when used in relation to conduct by a lawyer means the conduct of a reasonably prudent and competent lawyer." CRPC 1.0.1(h). <u>"Reasonably prudent" is a term we were all introduced to in first semester law school as the epitome of an **objective standard**</u>. Finally, "belief" is also a defined term and means "that the person involved actually supposes the fact in question to be true. A person's belief may be inferred from circumstances." **In other words, [Catanzarite] cannot simply argue that [Catanarite] truly or honestly believed [Catanzarite] could provide competent representation to [Catanzarite Adversaries in the actions described in Beck's Complaint, or in defending respondents in this appeal]**. The belief necessary to satisfy the rule is that of a reasonably prudent lawyer and must be based on the facts and circumstances of the representation. Courts in other jurisdictions have reached the same conclusion in interpreting their counterparts to CRPC 1.7(d)(1).[4]

That Catanzarite has represented the Catanzarite Adversaries conclusively proves that the Catanzarite attorneys are not "reasonable" under an objective standard legally, that they are not acting "reasonably" since September 14, 2018, that they are incompetent which goes to appellant's prima facie case because they fail the objective standard of "reasonably prudent" petitioning, and they fail the objective standard of legal tenability of all claims directed at appellant (e.g., no probable cause).

Document received by the CA Supreme Court.

Unlawful representation by Catanzarite of the Catanzarite Adversaries also goes to the issue of protected activity, lawful petitioning, conduct otherwise "authorized by law" that may be subject to privilege, malice, and unlawful conduct when applying narrow exceptions to Anti-SLAPP under *Flatley v. Mauro*.

### 1. Beck Disputes the Malicious Prosecution Claim is Based on *Legal* Petioning

Appellant's case demands de novo analysis from this Court because a traditional claim for malicious prosecution assumes that Catanzarite was "authorized by law," and that the assertedly protected activity is also constitutionally protected to rely on Anti-SLAPP.

Respondents fail both parts of this test. The protected activity prong upon which Cal. Civ. Proc. Sect. 425.16 is founded is based upon the First Amendment of the United States Constitution, which expressly carves out illegal conduct, or other conduct that the government has the basis to restrict statutorily (such as blackmail, securities fraud, extortion, and larceny) or through regulation (such statutory law under the State Bar Act, or regulations like the CRPC, of Catanzarite) that do not reasonably impede the fundamental rights of free speech.

This is why the *Flatley v. Mauro* case creates narrow exceptions to Anti-SLAPP. The legislature did not seek to enable unlawful conduct of Catanzarite and O'Connor Faction.

### 2. Beck Disputes Remaining Claims Are Based on Protected Activity

Document received by the CA Supreme Court.

Exhibit #23: 020
22-CV-01616-BAS-DDL

### a. Intentional Infliction of Emotional Distress (IIED) Claim

Liability is asserted by appellant for an "unlawful scheme" directed at him on behalf of Catanzarite and O'Connor Faction. Indeed, there are no claims in the Complaint that do not involve unlawful activity by Catanzarite or the O'Connor Faction. So this claim for IIED does not "arise from" protected activity, it arises from "unlawful" activity that is predicate or foundational to otherwise protected activity.

### b. Slander of Title Claim

The trial court erred in finding that appellant's slander of title claim against Catanzarite is based upon lawful petitioining.

The issue of whether Catanzarite was disqualified in the cases underlying appellant's Complaint and whether it was authorized by law are disjunctive for purposes of ascertaining protected or privileged activity by Catanzarite and the O'Connor Faction. There was such a flurry of related litigation filed by Catanzarite on behalf of direct adversaries across several cases since September 14, 2018 its no wonder the trial court erred. "There is a more stringent standard when an attorney simultaneously represents two current clients with conflicting interests. Disqualification…is **mandatory** in such circumstances." (*Flatt, supra,* 9 Cal.4th at p. 284)

"Once a conflict has arisen between a corporation and one or more of its officers, directors or shareholders, corporate counsel may not simultaneously represent the corporation and the adverse officer, director, or shareholder." (*La Jolla Cove,* supra, 121 Cal.App.4th at 785; see Rules Prof. Conduct rule 1.7). "Thus, where a shareholder (Root) has filed an action questioning [MFS, CTI's] management or the actions of individual

Document received by the CA Supreme Court.

officers or directors [Cooper, O'Connor as to MFS and CTI, Beck as to MFS (allegedly), and CTI] such as in a shareholder derivative…corporate counsel cannot represent both the corporation and the officers, directors [O'Connor, Cooper], or shareholders [Root, O'Connor Faction] with which the corporation has a conflict of interest [extending to Zakhireh, Duffy as of January 23, 2019]." (Id. at pp. 785-786)

Thus, at all times after September 14, 2018 and in all petitioning, Catanzarite has not been authorized by law for purposes of evaluating protected activity, privilege, and illegal activity – whether or not it has been disqualified (yet) which is mandatory and automatic (Augment 117-147).

<u>No Prvilege or Justification Existed for January 23, 2019 Acts</u>

Respondents identify the elements of slander of title (RB 25, 26). It is absurd to suggest that the January 23, 2019 consent "is nothing more than a vote" (RB 26) under the facts and legal circumstances of that date. According to Cal. Corp. Code §603(a), "any <u>action</u> that may be taken at any annual or special meeting of shareholders may be taken without a meeting and without prior notice, if a consent in writing, <u>setting forth the action so taken</u>, shall be provided by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or <u>take that action</u> at a meeting at which all shares entitled to vote thereon were present and vote."

The "<u>actions so taken</u>" include purported unwinding bona fide transactions that were effected by either O'Connor, Cooper, appellant, Duffy, Zakhireh, or Higgerson as purchasers or sellers (on behalf of CTI) of CTI stock between 2015 and 2019, and purported acceptance of the roles of officers and directors in CTI by O'Connor, Zakhireh, and Duffy on the

Document received by the CA Supreme Court.

basis of MFS being its "sole shareholder."

This Court sufficiently tracked later conduct: "particularly troubling was Catanzarite's active role in helping its clients forcibly remove CTI's directors, after Catanzarite was unable to achieve this same result in the MFS Action's section 709 hearing" (Augment 141). Because it was not the subject matter on appeal in G058700, this Court did not evaluate the circumstances that purported to enable Catanzarite's authority *on behalf of MFS* on January 23, 2019. Catanzarite directed a series of "acts" to take control of MFS and CTI, and the O'Connor Faction went along with it thinking it was better than O'Connor, Cooper, and Higgerson facing the genuine claims of the Root Action against them. **This is extortion as a matter of law**.

The "acts so taken" on or around January 23, 2019 by Catanzarite and O'Connor Faction were subsequently published in unlawful litigation where Catanzarite was not authorized by law to represent MFS, and subsequently published to Western Troy and FinCanna Capital in an unauthorized capacity. So Catanzarite lacked "privilege or justification." (Manhattan Loft, RB), and the contents were false (MFS was not a shareholder of CTI, O'Connor was not the CEO of CTI). So Catanzarite relies upon Section 425.16(e)(1), failing to recognize that it was not "authorized by law" and that the "acts so taken" themselves to unwind duly **authorized** securities transactions of CTI between June 15, 2015 and January 23, 2019 by *unauthorized* officers and directors O'Connor, Zakhireh, and Duffy are not "statements," rather, criminal conduct expressly forbidden by tenets of Constiutional free speech and statute. Even if the "statement" was made in connection with protected activity, a consent is comprised of "acts so taken" underlying its statements that are not

Document received by the CA Supreme Court.

communicative (Cal. Corp. Code 603(a).)

Appellant need not address claims "in contemplation of and related to litigation over control of CTI including the hotly contested issuance of disputed preferred shares and FinCanna's involvement therein" (RB 29). Catanzarite doesn't have a horse in that race, and it *never did*. The January 23, 2019 consent was not protected nor privileged because Catanzarite was not and is not entitled to represent CTI nor its shareholders as a matter of law, and the "<u>actions so taken</u>" are criminal as a matter of law as specified herein and in AOB, generally.

### c. UCL Claim

For the same reasons cited under IIED and slander of title, any normally protected activity by Catanzarite fails because it was not authorized by law. CRPC 1.7 and 6104 violations by Catanzarite fail the first prong because the liability producing conduct is predicated upon Catanzarite's unlawful representation and other unlawful acts incorporated by reference to the UCL claim by criminal statute.

The "unlawful, unfair, or fraudulent business acts or practices" (UCL) by Catanzarite and O'Connor Faction – at its constitutional "nadir" in the nonpublic forum – is not protected.

### d. Beck Establishes Trial Court Erred in Finding the Acts Giving Rise to Respondents' Liability Constitute Lawful Petitioning Protected by the First Amendment

<u>January 2019 Acts Not Communicative, nor "Background"</u>

Respondents claim "the January 23, 2019 shareholder consent and dismissals in the Root Action are merely incidental background, or

Page 23 of 47

Document received by the CA Supreme Court.

collateral, to the injury-producing conduct which is the lawsuit and litigation-related activity." (RB 34)

Catanzarite, unauthorized by law to represent MFS derivatively as of September 14, 2018 (whether or not it was disqualified), dismissed parties that its client Root was suing derivatively for MFS and directly in January 2019: O'Connor, Cooper, Higgerson, Scudder, Aroha, TGAP. Then Catanzarite took control of the inanimate corporate entity MFS, against whom it had just served 500 discovery requests on December 21, 2018, using the acts underlying the January 23, 2019 under conclusively proven extortion (for property or signature) before taking control of the inanimate corporate entity CTI all on the declarations and signatures of the O'Connor Faction, against whom it is "tolling claims" from Root (AOB, generally).

Respondents cite "[o]nly speech or activity which amounts to criminal conduct as a matter of law takes the speech or activity out of the ambit of Section 425.16." *Bergstein v. Stroock & Strock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806-807. Respondents fail to recognize that their slandering, extortion or blackmail, securities fraud, perjury, and criminal conduct are predicate and foundational to all of the claims directed at appellant. As appellant details repeatedly, the unlawful scheme and conduct drove the unlawful litigation, not the other way around. Appellant does plead impropriety that conclusively proves the criminal conduct and attorney deceit (I AA 14-59).

### *Flatley v. Mauro* Dispositive of All Ani-SLAPP Motions by Repondents

This Court has already ruled that petitioning underlying the Complaint by respondents was technically illegal "as a matter of law" (Augment 141), noting that starting with the Root Action – Catanzarite was

Document received by the CA Supreme Court.

acting against the wishes of MFS, and against CTI. (Augment 140, citing Shen, *supra*, 212 Cal.App.4th at p. 58)

<u>Criminal Extortion Conclusively Proven (Cal. Pen. Code § 518, 522, 523)</u>

Respecting appellant's allegations of criminal extortion – this Court can "disregard the labeling of the claim" (RB 22) and get right to the conduct of respondents described in the Complaint (I AA 14-59).

Appellant is not seeking damages for *ipso facto* criminal extortion *per se*, he relies upon conclusive evidence of conduct that is "illegal as a matter of law" giving rise to his allegations, causes of action, and liability, and to demolish any purported protection under the Constitution or litigation privilege "authorized by law." Catanzarite conclusively extorted the property and/or signatures of the O'Connor Faction. They fail to address this fact in their reply brief because they can't.

Under Cal. Pen. Cod. § 518, extortion (commonly referred to as "blackmail") is a criminal offense that involves the use of force or threats to compel another person into providing money or property. Under § 522, all that is required is extortion by Catanzarite of signatures. Under § 523, all that is required is the threat of extortion under color of official right. The conclusively proven conduct meets all three of these statutes.

Here, we have Catanzarite threatening harm to Cooper, Higgerson, O'Connor, Scudder, Aroha, TGAP, and to property (CTI shares)(Augment 120). With Catanzarite acting under color of official right as an officer of the court on behalf of Root and Root's adversary MFS and CTI (which was illegal as a matter of law): Catanzarite used force and fear with the intention of making the victims (I AA 172, 176) give valuable property (shares of CTI, legal fees) or performing an official act (non-communicative acts, or

Page 25 of 47

Document received by the CA Supreme Court.

"<u>actions so taken</u>" adopted by fraudulent consent on January 23, 2019 to deprive appellant and all CTI shareholders of property, unlawful retention of Catanzarite by MFS); AND;

The force or fear involved was enough to get the victim to consent to parting with valuable property or to providing an official act (O'Connor Faction purports to unwind millions of dollars in bona fide securities transactions the day after O'Connor and TGAP, and the day that Higgerson and Cooper, are dismissed from the unlawful Root Action without court approval) (Derivative Law) (IV AA 942) AND;

The victim(s) provided something of value or performed an official act (Here, several "acts" or "<u>acts so taken</u>" were complete, and not only that, appellant is being held accountable by Catanzarite and the O'Connor Faction for the prior actions of O'Connor and Cooper as evidenced by the 709 trial transcript and <u>respondents' own reply brief</u> (RB 45).

Catanzarite threatened to accuse members of the O'Connor Faction of a crime (payment of illegal commissions violative of Florida and federal law), something each O'Connor and Cooper (Higgerson's daughter) admitted to appellant, but neatly contained within the Root Action's direct and derivative claims (I AA 124-171).

An even smaller barrier exists to conclusively prove Extortion of Signature under Cal. Pen. Code § 522, which makes it a crime to "extort a signature on any document that would create a right to property, money, or action." Notably, § 522 requires only that the victim signs the extorting document. Nothing valuable need be provided, nor need an act be performed, to be in violation. All of respondents' claims against appellant rely upon the non-communicative "<u>acts so taken</u>" adopted on January 23, 2019 bearing the signature of Richard O'Connor.

Page 26 of 47

Document received by the CA Supreme Court.

Finally, Cal. Pen. Cod. § 523 requires only the *intent* to extort property or official acts at the time the letter is sent and received. As outlined in the Complaint allegations, "Catanzarite delivered a letter demanding that Plaintiff…turn over all CTI operations, again on the unsupportable and untenable premise that MFS was CTI's sole shareholder. Such letter ignored not only Plaintiff's own beneficial rights in his CTI stock ownership, but the rights of all CTI shareholders." (I AA 19).

<u>Securities Fraud is Illegal and Conclusively Proven</u>

Appellant conclusively proves that respondents engaged in securities fraud under Cal. Corp. Code § 25401 that they adopted on January 23, 2019, a non-communicative act or "acts so taken," to prejudice appellant.

According to the January 23, 2019 consent, the actions taken by O'Connor, Zakhireh, and O'Connor on behalf of each MFS and CTI were to ratify by way of "unanimous shareholder consent" the unwinding of CTI's duly authorized securities transactions from June 15, 2015 to January 23, 2019.

The 709 transcript sufficiently shows that Catanzarite and the O'Connor Faction are making "written or oral communications which include an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" (Cal. Corp. Code 25401) on and after January 23, 2019. Here are some useful citations.

Document received by the CA Supreme Court.

THE COURT:  YOU KNOW, THERE ARE THINGS IN THIS
DEFENSE BRIEF ABOUT THINGS HAPPENING, BUT IS THERE
ANYTHING THAT SHOWS LIKE WHO ARE THE INDIVIDUALS WITH THE
PLAINTIFF AT THIS TIME SUCH THAT THEIR ACTIONS CAN BE
IMPUTED TO THE CORPORATION?  IN OTHER WORDS, JUST BECAUSE
RICHARD O'CONNOR, RICHARD PROBST AND AMY COOPER ON BEHALF
OF CTI SAY WE ARE NOT GOING TO ISSUE STOCK TO MFS, THAT
DOESN'T NECESSARILY MEAN MFS AGREES.  HOWEVER, IF THOSE
ARE THE SAME THREE PEOPLE THAT ARE IN CHARGE OF MFS, THEN
THAT COULD SUPPORT AN INFERENCE THAT MFS DOES AGREE.

SO WHAT EVIDENCE IN WRITING IS THERE ABOUT WHO
IS IN CHARGE OF MFS AT THIS POINT IN TIME?

(I AA 249)

MR. CATANZARITE:  IT IS UNDISPUTED THEY ARE THE
SAME THREE PEOPLE, BUT THEY DID NOT ACT FORMALLY TO
ACKNOWLEDGE THAT MFS WAS NEVER A SHAREHOLDER.

THE COURT:  UNDERSTOOD.

MR. EDGERTON:  SO YOU HAVE THE SAME THREE
CONTROLLING TWO COMPANIES.

(I AA 250)

Document received by the CA Supreme Court.

Page 28 of 47

Exhibit #23: 029
22-CV-01616-BAS-DDL

THE COURT:  OH, THAT.  OKAY.  NO.  WHAT I MEAN
IS, DO YOU HAVE ANYTHING ELSE THAT YOU HAVEN'T TOLD ME
ABOUT TODAY?

MR. CATANZARITE:  NO.

THE COURT:  OKAY.  ALL RIGHT.  SO BASICALLY THE
DOCUMENTS SUPPORT THE POSITION THAT CTI HAS TAKEN THE
POSITION THAT MFS DOESN'T OWN STOCK.  CTI HAS DONE THAT
THROUGH ITS THREE DIRECTORS AS OF 2015:  PROBST, COOPER
AND O'CONNOR, AND THOSE ARE THE THREE DIRECTORS OF MOBILE

(I AA 265)

SO EVEN THOUGH MOBILE FARMING SYSTEMS DIDN'T PER
SE ITSELF ADOPT THIS POSITION THAT IT DIDN'T OWN STOCK,
THEN THE THREE PEOPLE DID SO, WHICH FOR LACK OF A BETTER
TERM CONSTITUTES AN ADMISSION AGAINST INTEREST.  IF IT
WASN'T TRUE, THEY WOULD BE VIOLATING THEIR FIDUCIARY
DUTIES UP THE YING YANG TO SIGN DOCUMENTS ON BEHALF OF
CTI SAYING THAT MFS IS NO LONGER A STOCKHOLDER IF, IN
FACT, MFS WAS A STOCKHOLDER.

(I AA 266)

MR. CATANZARITE, EVERY FIBER OF MY BEING SAYS THAT THE
FACTS ARE OVERWHELMING AGAINST YOUR POSITION IN THIS
CASE.  SO UNLESS YOU CAN CONVINCE ME OTHERWISE, I AM
PREPARED TO RULE THAT THIS ELECTION WAS VALID.

Document received by the CA Supreme Court.

Page 29 of 47

SO I THINK THAT IS WHAT THE PLAINTIFF IS
CLAIMING HERE.  BUT WE HAVE REPUDIATION OF THE AGREEMENT
BY PEOPLE WHO WERE THE SAME PRINCIPALS IN THE PLAINTIFF.
WE HAVE ACTIONS -- REPEATED ACTIONS TAKEN SUBSEQUENTLY
CONSISTENT WITH THE NOTION THAT PLAINTIFF WAS NOT A
STOCKHOLDER.  THE DELAY IN BRINGING THIS ACTION IS
CONSISTENT WITH THAT CONCLUSION, THAT PLAINTIFF HAS BEEN
OF THE VIEW THAT THEY ARE NOT A SHAREHOLDER.

SO THE COURT CONCLUDES THAT THE CHALLENGE
DIRECTOR ELECTION IS DENIED, AND THE COURT CONCLUDES THAT
PLAINTIFF IS NOT A STOCKHOLDER IN CTI.

(I AA 273)

## Catanzarite Factually Violates CRPC 4.2, 1.7(d)(3), 7.3, and 8.4 in Filing the MFS Action (and All Times After)

Appellant's assertions are not "argument, overheated rhetoric, and rank speculation" (RB 36). The facts and law are conclusive. MFS was represented by Kenneth Watnick before January 23, 2019 (III AA 595). Amy Cooper was represented by Stephen Erigero on January 23, 2019 (IV AA 1073). CRPC 4.2 prohibits direct or indirect contact with represented parties. CRPC 7.3 prohibits their unlawful solicitation of the inanimate corporation, MFS, and the Catanzarite Adversaries.  CRPC 8.4 prohibits Catanzarite from the unlawful scheme (I AA 14-59) under 8.4(a)-8.4(f).

Catanzarite cannot represent MFS nor the O'Connor Faction under CRPC 1.7(d)(3) because the conflicts are unwaivable, and they can't "reasonably" rely on a waiver anyway under an objective belief (CRPC 1.01).

Document received by the CA Supreme Court.

<u>Unlawful Scheme Relies Upon Perjury by O'Connor and Extortion by</u>
<u>Catanzarite Predicated Upon CRPC 4.2 Violations</u>

      Before taking over its legal adversary MFS under color of official right through extortion of property and signatures of Catanzarite Adversaries, Catanzarite was aggressively pursuing discovery against MFS, O'Connor, and Cooper. Cooper's counsel resigned on January 23, 2019 stating "[n]either I, nor our firm, were involved with any settlement discussions in connection with her dismissal from the [Root Case] (IV AA 1073).

      Citing MFS counsel Kenneth Watnick with Anderson, McPharlin & Conners LLP (III AA 599) on January 7, 2019, in its motion for security, **Catanzarite served MFS, O'Connor, Cooper, and Probst with over 2,000 discovery requests**:

Document received by the CA Supreme Court.

- Amended Notice of Deposition of MFS with 90 categories of examination, 207 requests for production of documents and 11 requests for production of "things",
- Amended First Request for Production containing 207 requests for production of documents and 11 requests for production of "things",
- First Set of Special Interrogatories containing 70 special interrogatories,
- First Set of Request for Admissions with 69 requests for admission, and
- First Set of Form Interrogatories, with 28 form interrogatories, including Form Interrogatory No. 17.1.

(Exs. 1 through 5 to Watnick Decl.)

MFS understands that Plaintiff has propounded similar discovery requests upon Defendants Probst, O'Connor, Cooper, and all other named defendants. In total, Plaintiff has propounded approximately **two thousand (2,000)** separate written discovery requests upon just MFS and the Management Defendants. (Watnick Decl., ¶5.) MFS understands that when combined with the other named defendants, plaintiff has served in excess of **five thousand (5,000)** separate written discovery requests. (*Id.*)

Under Cal. Pen. Code 118 PC, California law defines the crime of perjury as "deliberately giving false testimony while under oath." O'Connor, unlawfully represented by Catanzarite, declared the following under penalty of perjury on March 19, 2019:

26.    As CEO of MFS I want to exercise its 28,000,000 votes and take action to set aside the Probst and Beck disputed 13,000,000 votes and its hand picked Board of Directors which rubber stamps their self serving transactions.

Catanzarite delivered the following statement on behalf of O'Connor on April 19, 2019 (IV AA 942) via email that will reasonably be permissible in trial:

"I want to be clear that neither I, Richard O'Connor, Tony Scudder nor anyone else sued in the Root Case (Cooper, Higgerson) have settled any claims with Root or anyone else. All we did was agree to toll the statute

Document received by the CA Supreme Court.

of limitations to allow claims to be brought against us later. No conflict."

O'Connor, unlawfully represented by Catanzarite, then declared under penalty of perjury to support the Mesa Action (III AA 632) on November 11, 2019:

> 5.      As Chief Executive I issued 5,000,000 Founders Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort.
>
> 6.      At no time prior to my resignation from CTI on May 5, 2016 was there ever a discussion that the executives were underpaid or that they would receive any CTI shares for services rendered.

O'Connor, unlawfully represented by Catanzarite, declared the following under penalty of perjury (III AA 615 March 19, 2019):

> 15.     As CEO and director of MFS acting on its behalf, MFS is rightfully and properly the owner as holder of 28,000,000 CTI shares of Common Stock and entitled to all of the rights, benefits and privileges of said shares, including the right to vote said shares and to not suffer dilution of nor interference with such rights. As to the consideration that CTI was to receive from MFS:

While the MFS Action was operative, O'Connor, unlawfully represented by Catanzarite declared the following under penalty of perjury on November 3, 2019 (III AA 625):

> 10.     On August 27, 2019 I appeared at the shareholders meeting and elected myself, Jim Duffy and Amy Cooper to the Board of Directors and to officer positions at CTI with my 51.15% proxies. The Probst group refuses to acknowledge our board and officers. They make this claim based upon their disputed preferred shares.

Conflicting with his March 19, 2019 statements under penalty of perjury that MFS was the sole shareholder of CTI, O'Connor claimed the following (III AA 623) on November 3, 2019:

Page 3 3 of 47

Document received by the CA Supreme Court.

4.      I sold my Cultivation Technologies, Inc. ("CTI") common shares to Mr. Jim Duffy which shares were included in his total proxy count 2,720,900 shares. I dispute that the shares sold and transferred to Jim Duffy were subject to any security agreement and have stated as much in support of my cross-complaint with Mr. Duffy. That cross-complaint requests declaratory relief against those claiming the security interest, to determine that the shares belonged to me and were transferred without notice and for consideration to him. My Arizona counsel has filed a motion to dismiss the Arizona action.

Despite prosecuting an action against appellant and CTI with Zakhireh and Duffy (III AA 731-743) (IV AA 890, 894) in June 2017 that was dismissed with prejudice (IV AA 748) regarding the preferred shares of CTI, O'Connor declared under penalty of perjury (III AA 617):

22.     I have also learned from attendance at the November 2018 shareholders meeting that the Probst and Beck led board of directors caused CTI to issue them 13,000,000 CTI preferred shares a $.01 per share with 3 times voting rights and claim to completely control CTI. The purported board of directors of CTI and its officers and legal counsel support this wrongful issuance of shares.

## C. Beck Shows Probability of Succes on the Merits

Legally, since it is proven that Catanzarite is unauthorized by law after September 14, 2018, it would support a favorable judgment to appellant in trial. It doesn't matter how many declarations Catanzarite procures from the O'Connor Faction at this stage. That is what appellant means that this Court's opinion in G058700 is "prima facie evidence."

Factually, **the trial court in the 709 hearing did more than conclude that MFS was not a stockholder of CTI.** It concluded that <u>O'Connor and Cooper knew this to be the case and were indeed responsible</u>

Document received by the CA Supreme Court.

for it and took "repeated actions" that were "consistent with the notion" (I
AA 273) that MFS knew it didn't own stock in CTI (I AA 230-285). The
doctrine of laches just underscored the facts. There was no evidence offered
by Catanzarite that appellant authorized the transactions that Catanzarite
seeks to hold appellant accountable for, not even after amended complaints
for each Root Action and MFS Action led to his dismissal following
dispositive motions (II AA 356, 363).

Appellant wasn't even an officer or director of MFS or CTI in June
2015. Indeed, each MFS and CTI are "inanimate corporate entities." So
Cooper and O'Connor went from authorizing dozens of securities
transactions in their authorized capacity for CTI upon which appellant
reasonably relied for years, raising literally millions of dollars to build a
business toward a public merger, to unwinding them in an **unauthorized
capacity** under the conclusively proven threat and color of official right via
Catanzarite on behalf of Root in January 2019 (Cal. Pen. Code § 518, 522,
523). And of course, Duffy and Zakhireh came along for the fun, *neither of
whom were ever MFS shareholders* (I AA 61).

Honorable Judge Servino failed to ascertain that MFS was an
inanimate corporate entity entering the 709 hearing, and that O'Connor,
Cooper, Higgerson, Scudder, Aroha, TGAP were acting at the behest of
Catanzarite (IV AA 942) under the fear of prosecution for Cooper and
O'Connor's alleged crimes against Root in a direct and derivative action
where Catanzarite was not authorized by law. That isn't to say the
O'Connor Faction was innocent, but appellant was and is.

Finally, respondents' argument that Section 1001(d) applied in June
2015 is also moot. If anything, it implicates purported clients O'Connor and
Cooper, not appellant. Nearly every shareholder of MFS agreed that MFS

Document received by the CA Supreme Court.

would not own CTI willfully (more than 90%) (I AA 24-28). The 709 hearing reviewed the subscription agreements of CTI signed by O'Connor and Cooper, none of which said 28,000,000 shares were outstanding to MFS (I AA 230-285). Appellant is not responsible for O'Connor and Cooper. The reason they are <u>not</u> defending these allegations should be clear to this Court. Indeed, Catanzarite and O'Connor Faction are suggesting that appellant is responsible, but they argue "Probst, O'Connor and Cooper did not control 90% of MFS' outstanding voting shares" in 2015 (RB 45). Even the original Root Action acknowledges O'Connor and Cooper's responsibility for the claims directed at appellant. This is malicious prosecution.

### 1.   Prima Facie Case for Malicious Prosecution Claim

To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608]. Actions cited by appellant in his Complaint include the Root Action, MFS Action, CTI/Mesa Action, FAC Root Action, FAC MFS Action, FinCanna Action, Scottsdale Action, and the declaratory relief claim that MFS owned CTI.

1) Appellant sufficiently proves Catanzarite and O'Connor Faction commenced or directed all actions, and that each member of the O'Connor Faction need not be a "plaintiff" to be liable for malicious prosecution. The

Page 3 6of  47

Document received by the CA Supreme Court.

declaratory relief claim that MFS owned CTI, Root Action/FAC Root Action, MFS Action/FAC MFS Action, and Scottsdale Action were terminated in favor of appellant on the merits reflecting his innocence. Additional claims from these plaintiffs toward appellant are barred by statute of limitations and collateral estoppel if prosecuted by O'Connor Faction, and they are violative of law if they are prosecuted by Catanzarite or their former employee and current attorney, Jim Travis Tice. The filing of the FinCanna Action and Mesa Action/CTI Action was not authorized by law. Neither Catanzarite (including Jim Travis Tice) nor O'Connor Faction can re-file any claims on behalf of these parties tenably. Appellant sufficiently demonstrates his innocence on merits across multiple lawsuits.

2) Each lawsuit fails objective (CRPC 1.01) probable cause on <u>at least</u> the legal basis. Facts known to respondents also mean probable cause fails on the factual basis.

3) Appellant sufficiently demonstrates actual ill will, legal malice, and/or disregard for the implications of the unlawful scheme that Catanzarite and the O'Connor Faction have directed at him.

<u>Catanzarite Fails Objective Standard for All Litigation on Legal Fulcrum</u>

"The standard for determining the probable cause element is objective, not subjective." (*Swat-Fame v. Goldstein*, 101 Cal.App.4th 613).

"[P]robable cause exists if 'any **reasonable** attorney would have thought them tenable.' [citing *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863] (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047). Existing rulings and serial violations of law and regulation prove

Page 37 of 47

Document received by the CA Supreme Court.

conclusively that Catanzarite is not "reasonable." (CRPC 1.01(i), 1.01(h), 1.7(d)(1), 1.7(d)(3).) Therefore, any claims they direct toward appellant fail the objective standard after September 14, 2018.

"Lack of probable cause may stem either from the lack of a factual foundation or the lack of a legal basis." [emphasis added]. (*Sierra Club Foundation v. Graham*, 72 Cal.App.4th 1135; *Sangster v. Paetkau*, 68 Cal.4th 151; *Arcaro v. Silva and Silva Ent. Corp.* 77 Cal.App.4th 152; *Puryear v. Golden Bear Ins. Co.*, 66 Cal.App.4th 1188; *Leonardi v. Shell Oil Co.*, 216 Cal.App.3d 547).

The original Root Action sufficiently describes the facts known to defendants upon its filing (whether or not Catanzarite agreed with them). Richard O'Connor and Amy Cooper authorized the restructuring of CTI in 2015, and the original pleading itself discloses it (I AA 126, 127, 130). It is untenable and frivolous that appellant bear the brunt of their conduct.

2.    Prima Facie Case for UCL Violations

Appellant further demonstrates these acts are violative of securities laws in the United States and California, violative of California Corporations Code section 1507, that they involve the unlawful represesentation by Catanzarite of adverse parties against appellant that this Court has already ruled upon as "conclusively" illegal, and that the "unlawful, unfair, or fraudulent business act[s] or practice[s]" giving rise to this cause of action target appellant's property, appellant's duly authorized decisions while at CTI, and appellant's insurance policy.

Appellant pleads, in addition to all other allegations, preceding the UCL cause of action and incorporated by reference (see statement of case in this brief), violations of CRPC 1.7(a) and Bus. & Prof. Code 6104 that

Document received by the CA Supreme Court.

have already been confirmed (Augmemt 117-147).

UCL provides a remedy even where the underlying statute giving rise to the claim of "unlawfulness" has no private right of action. (*Stop Youth Addiction v. Lucky Stores*, 17 Cal.4[th] 553, 561-567). So to the extent respondents believe appellant needs standing to challenge its unlawful representation of adversaries against appellant, that argument fails. Further, *People ex rel. Herrera v. Stender*, 212 Cal.App.4[th] 614, 632 (2012) finds that "rules of professional conduct governing attorneys may serve as a predicate for UCL "unlawful" action." Here, appellant has been damaged by conclusively proven unlawful acts of Catanzarite and O'Connor Faction.

Appellant pleads damages against respondents for their role, and seeks to enjoin the unlawful conduct. Respondents cannot defeat appellant's claims as a matter of law, and no purported conflict waiver or unauthorized transactions of CTI and MFS in a control dispute changes the fact that the acts are unlawful, unfair, and/or fraudulent under UCL.

3.   <u>Prima Facie Case for Slander of Title Claim</u>

While recordation of a lis pendens cannot be the subject of an abuse of process action, it may be subject of liability for slander of title (*Palmer v. Zaklama* (2003) 109 Cal.App.4[th] 1367).

Here, we have non-communicative "actions so taken" against appellant's CTI shares that act like a lis pendens against appellant's duly authorized without "privilege to do so." We have subsequent publication of the "acts" implicit to the now-fraudulent corporate records of each MFS and CTI on January 23, 2019, to the legally and factually frivolous MFS Action, with the contents indeed published to each Western Troy and

Page 39 of 47

Document received by the CA Supreme Court.

FinCanna Capital causing damages to appellant. The slander of title disrupted a merger setup by appellant valued at up to $200,000,000+ (AA 14-59) to fall apart on the knowingly false pretense and color of official right that Catanzarite was authorized by law to represent MFS, CTI, and O'Connor, and caused foreclosure by FinCanna Capital. Appellant was the CEO of CTI at the time, and the second largest shareholder. Appellant was damaged by the slander of title. The Court properly concluded Zakhireh's slander of title should survive Anti-SLAPP, but failed to recognize that Catanzarite was not authorized by law to represent MFS,  CTI, nor O'Connor – or that it had extorted that illegal role as counsel for its adversary MFS under the purported authority of its adversary O'Connor. It also failed to recognize MFS as an inanimate corporate entity, here turned into a shell to enact an unlawful scheme giving rise to appellant's claims.

The shareholder consents adopting actions of the O'Connor Faction for MFS and CTI making MFS the "sole shareholder of CTI" was obviously false, unfair, unlawful, and fraudulent. All elements are met here, and respondents can't defeat this claim as a matter of law. Even if this Court finds the January 23, 2019 publication in the MFS Action as privileged, then it was unlawful for unauthorized officers and directors O'Connor, Zakhireh, and Duffy to unwind the securities transactions of CTI from 2015 to 2019 on January 23, 2019 – including the shares owned in CTI by appellant, Zakhireh, Duffy, O'Connor, Cooper, TGAP, Aroha, and all those to whom O'Connor and Cooper sold CTI shares to through TGAP before January 23, 2019.

4.   Prima Facie Case for IIED Claim

Should this Court determine all acts alleged by appellant are

Document received by the CA Supreme Court.

protected, appellant conclusively demonstrates an "outrageous" scheme of conduct by the O'Connor Faction and Catanzarite to harm appellant involving all defendants and respondents with prima facie evidence. Beyond the incorporation of all allegations preceding this cause of action, appellant pleads "knowingly false statements" and the "unlawful scheme" made by defendants, like the non-communicative acts adopted by O'Connor, Duffy, and Zakhireh on January 23, 2019 involving attorneys who were not authorized by law – and the motivations of O'Connor, Cooper and Higgerson (AA 14-59). Further, if the Scottsdale Action, Mesa/CTI Action, and FinCanna Action facts and respondents' role don't satisfy elements of malicious prosecution, they satisfy IIED because they target appellant's conduct and rights outrageously.

The IIED claim needn't be <u>intended</u> to cause appellant emotional distress, either. All respondents at least acted with reckless disregard of the *probability* that appellant would suffer emotional distress. The conduct involving the O'Connor Faction and Catanzarite was outrageous, it caused severe emotional distress of appellant, it caused damages, and respondents cannot defeat the IIED claim as a matter of law.

    5.   <u>Respondents' Purported Complete Defense Fails</u>

<u>Litigation Privilege not applicable to malicious prosecution</u>

The litigation privilege "applies to any <u>communication</u> (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants <u>authorized by law</u>; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson*, supra, 50 Cal.3d at p. 212).

Document received by the CA Supreme Court.

"The litigation privilege of Civil Code section 47 has been interpreted to apply to virtually all torts except malicious prosecution." (*Kimmel v. Goland* (1990) 51 Cal.3d 2020, 209 [271 Cal.Rptr. 191, 793 P.2d 524].)

In addition, it does not preclude the use of privileged communications as evidence to prove malice in a malicious prosecution action." (*Albertson v. Raboff*, 46 Cal.2d 375)

Appellant shows that Catanzarite sought to settle a derivative action over the head of MFS, further contaminating all litigation in which it is involved (IV AA 877-880). Appellant also shows that Catanzarite is tolling claims against members of the O'Connor Faction and respondents to this appeal (AA IV 942-943).

Litigation privilege provides that "publications or broadcasts of information [i]n the proper discharge of an official duty" are privileged. But Catanzarite has not engaged in the discharge of an official duty since September 14, 2018, and has not been authorized by law regardless of whether they recognized their "automatic" or "per se" disqualification as "reasonably prudent" attorneys where their disqualification is "mandatory." (Augment 117-147).

<u>"Acts so taken" underlying January 23, 2019 consent not communicative</u>

Respondents misunderstand Cal. Civ. Code Sect. 47(b). Under 47(a), we know that Catanzarite and the O'Connor Faction have not conducted their unlawful scheme against appellant "in the proper discharge of an official duty." Catanzarite was not authorized by law, nor were the O'Connor Faction ever authorized to act on behalf of CTI after O'Connor and Cooper resigned in 2016 and 2015 respectively. Appellant sufficiently

Document received by the CA Supreme Court.

Exhibit #23: 043
22-CV-01616-BAS-DDL

demonstrates the carve out under Section 47(b)2, also (AOB). Respondents misunderstand appellant's argument.

As outlined in the AOB, appellant establishes that any "communication" under 47(b)(2) is carved out of privilege since it was "made in furtherance" of destruction of evidence. But the "acts so taken" were not communicative.

Our Supreme Court has addressed this topic in *Kimmel v. Goland* (1990) to bifurcate "communicative" and "noncommunicative acts" holding **"[r]ecordings made in violation of the Penal Code could hardly be said to be in furtherance of the litigation or to promote the interest of justice."**

In other words, the attachment of the January 23, 2019 acts involving all respondents to this appeal to the MFS Action, while that may constitute a privileged publication if Catanzarite were authorized by law, "does not bar recovery for injuries from tortious conduct regardless of the purpose for which such conduct is undertaken…involving **noncommunicative acts**…the illegal recording of confidential telephone conversations – for the purpose fo gathering evidence to be used in future litigation." Non-communicative "acts so taken" involving extortion, securities fraud, larceny, and unlawful representation of MFS by Catanzarite involving the O'Connor Faction are not privileged.

Privilege inapplicable to enumerated illegal conduct

Courts have reasoned that additional exceptions to litigation privilege beyond malicious prosecution must not be created unless two conditions are met: (1) the statute at issue must be "more specific than the litigation privilege," and (2) application of the privilege would render the

Page 43 of 47

Document received by the CA Supreme Court.

statute "significantly or wholly inoperable." (*People v. Persolve*, 218 Cal.App.4th 1267, 1274 (2013) ("*Persolve*").

Under Cal. Corp. Code § 25401, "it is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

Here, the January 23, 2019 <u>acts so taken</u> involving the O'Connor Faction and Catanzarite are specifically prohibited by statute since they adopt and contain "untrue statement[s]" and they "omit to state" material facts constituting securities fraud. Further, under 25540(b), "any person who willfully violates Section 25401…shall upon conviction be fined no more than ten million dollars ($10,000,000), or imprisoned pursuant to subdivision (h) of Section 1170 of the Penal Code for two, three, or five years, or be punished by both that fine and imprisonment." In other words, not only are the actions adopted on January 23, 2019 not subject to privilege, they are conclusively proven as <u>criminal</u>. MFS did not own CTI, and the omission of facts that O'Connor and Cooper were acting in their duly authorized capacity to issue shares in CTI from 2015 forward (as determined by the 709 trial) is misleading and willful. It was also conclusively extorted by Catanzarite.

Under Cal. Bus. & Prof. Code § 6104, "Corruptly or willfully and without authority appearing as attorney for a party to an action or proceeding constitutes a cause for disbarment or suspension." Specifically, the statute prohibits Catanzarite from representing CTI *ultra vires*, and prohibits the attorney deceit that led to Catanzarite's representation of MFS

Document received by the CA Supreme Court.

and other defendants of the O'Connor Faction where it fails the "reasonably prudent" attorney test (e.g., since September 14, 2018) (CRPC 1.01).

Under Cal. Pen. Code § 518, 522, and 523 governing extortion for property or signatures – Catanzarite was expressly forbidden by statute to represent O'Connor Faction members as more specifically detailed herein where it relied upon their signatures and/or property and an existing threat and/or color of official right.

Finally, Bus. & Prof. Code § 6068 holds that "it is the duty of an attorney to do all of the following: (c) To counsel or maintain those actions, proceedings, or defenses only as appear to him or her as legal or just; (d) **never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law**, and (g) not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest." Catanzarite seeks to mislead courts as a matter of practice in hopes that the facts presented to this Court fail on technical grounds. But that doesn't mean Catanzarite doesn't know the facts, that it hasn't sought to mislead the Courts, or that it is "reasonable."

If securities fraud, extortion, attorney misconduct, attorney deceit, perjury, and larceny weren't exempt from litigation privilege, the related statutes would be rendered "inoperable." (Persolve).

## III. CONCLUSION

Appellant sufficiently demonstrates that Catanzarite is not authorized by law after September 14, 2018, that the assertedly protected activity of respondents is expressly carved out of Constitutional tenets, that the liability producing conduct is not limited to litigation, that the conduct

Document received by the CA Supreme Court.

expressly forbidden by statute is not subject to litigation privilege, that all lawsuits filed by Catanzarite fail the objective standard on a legal fulcrum whether or not Catanzarite has been disqualified yet for unwaivable conflicts prejudicial to appellant, and that Catanzarite nor the O'Connor Faction can re-institute stale claims on behalf of its legal adversaries for which appellant has already demonstrated innocence.

The motions to strike should be vacated entirely, and this Court should consider ruling for judicial efficiency whether Catanzarite is entitled to legal fees after September 14, 2018 upon its de novo review under the inherent powers it possesses under Cal. Civ. Code of Proc. Section 128.

DATED: October 4, 2021
Respectfully Submitted,

By:   /s/ Justin S. Beck
Justin S. Beck, *In Pro Per*

Document received by the CA Supreme Court.

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this reply brief to the appeal uses proportionately spaced Roman font and that the text of this brief comprises 8,396 words based on the word count function provided by the Microsoft Word word-processing software used to create the document.

October 4, 2021

Respectfully submitted,

By: /s/ Justin S. Beck
Justin Beck, *In Pro Per*

Document received by the CA Supreme Court.

Exhibit #23: 048
22-CV-01616-BAS-DDL