# EXHIBIT
# 32

Exhibit #32: 001
22-CV-01616-BAS-DDL

**The State Bar**
*of California*

OFFICE OF CHIEF TRIAL COUNSEL

845 S. Figueroa Street, Los Angeles, CA 90017          213-765-1000          ctc.cpra@calbar.ca.gov

*Via e-mail only* - justintimesd@gmail.com

June 29, 2022

Justin S. Beck

RE:     Request for State Bar Records

Dear Mr. Beck:

This letter is a supplemental response to your Public Records Act request dated May 7, 2022, addressed to Assistant General Counsel Carissa Andresen and received by the State Bar of California on May 12, 2022.  You requested the following:

- Per BPC 6086.10: (c) Notwithstanding the confidentiality of investigations, the State Bar shall disclose to any member of the public so inquiring, any information reasonably available to it pursuant to subdivision (o) of Section 6068, and to Sections 6086.7, 6086.8, and 6101, concerning a licensee of the State Bar that is otherwise a matter of public record, including civil or criminal filings and dispositions."

  Please send me "any information [from State Bar, from courts in any jurisdiction, from State Bar licensees on mandatory reporting, from insurers on mandatory reporting] reasonably available to [public entity State Bar and its public employees] pursuant to subdivision (o) of Section 6068, and to Sections 6086.7, 6086.8, and 6101, concerning a licensee of the State Bar [see below] that is otherwise a matter of public record, including all judgments, orders, civil or criminal filings and dispositions related to the following:

  1) Kenneth Joseph Catanzarite

Please be advised that State Bar disciplinary complaints and investigatory records are confidential and not subject to disclosure.  (Gov. Code, § 6254 subd. (f) [Investigatory files

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Exhibit #32: 002
22-CV-01616-BAS-DDL

Justin S. Beck
June 29, 2022
Page 2

compiled by a state agency for licensing purposes are not subject to disclosure under the
California Public Records Act]; Bus. & Prof. Code, § 6086.1 subd. (b) ["[D]isciplinary
investigations … shall not be disclosed pursuant to any state law, including, but not limited to,
the California Public Records Act."].)

Without waiving said exemptions, please see the additional enclosed records.

       7) Drexel Bradshaw

State Bar disciplinary complaints and investigatory records are confidential and not subject to
disclosure.  (Gov. Code, § 6254 subd. (f); Bus. & Prof. Code, § 6086.1 subd. (b).)

Without waiving said exemptions, please see the additional enclosed records.

If you wish to discuss this matter further, I can be reached at the telephone number above.

Best regards,

Alex Hackert
Senior Trial Counsel



COURT OF APPEAL 4TH DIST DIV 3

FILED

DEC 3 0 2011

Deputy Clerk

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MIKE ALEXANDROS et al., | |
| Plaintiffs and Appellants, | G043715 (Consol. with G044362) |
| v. | (Super. Ct. No. 06CC07881) |
| JAMES A. COLE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gary L. Taylor, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Motion for sanctions. Judgment affirmed. Motion granted.

The Rosen Law Firm, Laurence M. Rosen; Catanzarite Law Corporation and Kenneth J. Catanzarite for Plaintiffs and Appellants.

Foley & Lardner, Sonia Salinas, Roger A. Lane, and Courtney Worcester for Defendants and Respondents New Enterprise Associates IV, L.P. and Spectra Enterprise Associates, L.P.

Exhibit #32: 004
22-CV-01616-BAS-DDL

DLA Piper, Robert Brownlie, Gerard A. Trippitelli, David F. Gross, and Francesca Cicero for Defendants and Respondents James A. Cole, Kevin M. Carnino, Albert Jicha, Eugene Hovanec, Gregory T. George, Robert Kohler and KOR Electronics.

*       *       *

Plaintiffs Mike Alexandros, Richard Damon, Mike Maridakis, Rick Jensen, Vincent Battaglia, James Struble, Douglas Dwyer, David Schwartz, Mike Thielen, Howard Arnold Lefevre, Dean Groce, Susan Lovern Kahaunaele, Young Lu, Charles D. Cartledge, and David Conrad are minority shareholders owning common stock in defendant KOR Electronics (KOR), a privately held company.  In 2006 they sued defendants New Enterprise Associates IV, L.P. (NEA IV), Spectra Enterprise Associates, L.P. (Spectra), and KOR's directors James Cole, Kevin Carnino, Albert Jicha, Eugene Havanec, Gregory George, and Robert Kohler for breach of fiduciary duty and related claims.

Following a bench trial, the court entered judgment in favor of defendants. It also awarded costs to defendants as the prevailing party under Code of Civil Procedure section 1032.

Plaintiffs appeal from both the judgment and the order awarding costs.  We consolidated the appeals.  (Conrad separately appeals from the order awarding attorney fees and the denial of his motion to vacate that order in consolidated case Nos. G044682 and G044457.)

Plaintiffs contend the court erred in (1) applying the business judgment rule to two interested directors (Cole and Carnino), (2) finding the independent directors were properly informed and acted in good faith, (3) requiring plaintiffs to show "control and abuse of that control" by the controlling shareholders, and (4) failing to rule on Carnino's

claim for breach of fiduciary duty as KOR's CEO and the issues of inherent unfairness, gross mismanagement, waste of corporate assets, and unjust enrichment. They also assert the court may have erroneously relied on Delaware law, California's public policy in "protect[ing] the public from fraud and deception in securities transactions" supports reversal, and if the underlying judgment is reversed so should the award of costs. Finding no error, we affirm the judgment and the award of costs.

Defendants filed a joint motion for sanctions based on plaintiffs' numerous violations of the California Rules of Court (all further rule references are to these rules) governing appendices and record citations. We grant the motion.

## FACTS

Plaintiffs rely on "the undisputed facts and the [s]uperior court's factual findings." Accordingly, the facts are taken from the statement of decision, the joint list of uncontroverted issues, and trial testimony. We construe any disputed facts and all reasonable inferences in the light most favorable to defendants as the prevailing parties. (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)

Between 1987 and 1999, "NEA IV and Spectra made venture capital investments in KOR . . . and received convertible participating preferred stock[, which among other things,] had demand registration rights, permitting it to require KOR to undertake a public offering." "[I]n late 2005, NEA IV advised [KOR's] board [it] would exercise its demand registration rights or negotiate a KOR recapitalization to buy out NEA IV." "To evaluate NEA IV's proposal, KOR's board appointed a Special Committee (Committee) of four directors [George, Jicha, Kohler, and Havanec] who owned no preferred stock, but held KOR common stock or options for common stock."

Exhibit #32: 006
22-CV-01616-BAS-DDL

Because Carnino and Spectra both owned preferred stock, and Cole was affiliated with Spectra, neither Carnino nor Cole was a member of the Committee. Nevertheless, Carnino, with his knowledge, background, and document access as KOR's CEO, carried out certain tasks for the Committee, such as preparing financial analyses and negotiating with third parties. Carnino did not participate in the Committee's decisions.

"In early 2006, on the recommendation of the . . . Committee to KOR's board of directors, KOR recapitalized by repurchasing all the shares of its preferred stock for $40.3 million cash and $9 million in promissory notes, and selling new preferred stock at $40.3 million to new NEA venture capital investment groups" (transaction). Carnino and Cole abstained from voting. In a shareholder vote, a majority of KOR's preferred stockholders and common stockholders with no preferred stock voted to approve the transaction.

Plaintiffs sued defendants, asserting direct claims for breach of fiduciary duty against KOR's board of directors, breach of fiduciary duty against NEA IV, Spectra, Cole, and Carnino in their capacities as "controlling shareholders," and constructive fraud against all defendants, as well as derivative claims on KOR's behalf (not at issue in this appeal). During trial, plaintiffs voluntarily dismissed the constructive fraud count.

The court ruled in favor of defendants on all causes of action. In its statement of decision, it noted plaintiffs' claims were all premised on the same factual basis involving breach of fiduciary duty in approving the transaction. Applying the business judgment rule, it found "the evidence shows no conflict of interest, fraud, bad faith, or gross overreaching contaminated the . . . Committee's decision. On the contrary, the evidence shows the Committee members acted appropriately, using a process that was rational and used in a good faith effort to advance corporate interests."

Exhibit #32: 007
22-CV-01616-BAS-DDL

"Faced with NEA IV's decision to conclude its investment by exercising its demand registration rights if KOR did not take it out by recapitalization, the KOR board of directors was compelled to study the alternatives and make what then appeared to be in the best business decision on what to do.  This was a delicate and controversial issue because different interests would be impacted adversely, and there were different views about the best long-range plan."

"Considering all factors, the evidence shows the . . . Committee acted diligently and independently, and its members acted in good faith.  Their testimony revealed a sincere and earnest interest in seeking to do the right thing for the long-term interests of the company and the common shareholders.  At first, they disliked the NEA IV proposal.  They viewed their task as a negotiation to buy NEA IV's demand registration rights and keep the company unsold and private, which they viewed as the best long range course.  The evidence shows, and the Court finds, the . . . Committee and its members performed their task with due care and without negligence, they made reasonable inquiry into the facts and alternatives, and they weighed the advantages and disadvantages.  They rejected [a] proposal alternative for what they found to be good and sufficient reasons.  The evidence did not show that alternatives were ignored or brushed aside, and there was no evidence of a purpose or plan to give a special deal to favored persons."

"Carnino was an interested party, being a preferred shareholder, but he was the person most familiar with the details of the business.  He was not a . . . Committee member, but he was used by the Committee to look for other options, provide data, and act as Committee secretary.  Although there might have been a better choice than to have him connected to the . . . Committee, there is no evidence his involvement tainted the Committee's work or decision.  He was the CEO with connections to possible alternatives.  His stocks interests would probably have benefited from any alternative that

was selected, and he was not a decision-maker on the Committee. To use him was within the range of reason.

"... Cole had interests which would have disqualified him from sitting on the independent ... Committee. But, there is no evidence he improperly influenced the Committee."

As to plaintiffs' breach of fiduciary duty claim against "controlling shareholders," the court ruled that "[t]o establish ... liability, control and abuse of that control must be shown." Assuming without deciding "the preferred shareholders were a controlling shareholder group, in the sense that they had the power to control certain aspects of the corporation's life," including "the lawful power to exercise 'veto' power and negotiation leverage because of the preferred shareholder rights they had" "the evidence does not show they abused that power. The evidence does not support a finding that they abused their relationship with the ... Committee, tainted its work, or improperly used their corporate rights. On the contrary, the evidence shows the ... Committee made its own independent decision about what to do."

The court concluded the Committee's decision to have KOR pay "a premium rate to retire NEA IV and chart its new course ... had an immediate stock value disadvantage to the common shareholders, but the ... Committee and full board concluded it was in the best long range interest of the company and the common stockholders. The decision making process used, and the decision that was made, were rational, in good faith, and within the range of reason. [¶] In addition to the rulings already made, the [c]ourt finds that, for the same reasons, the evidence does not support [p]laintiffs on the theories of gross mismanagement, waste of corporate assets, or unjust enrichment."

6

DISCUSSION

*1. Plaintiffs' Appeal*

    *a. Erroneous Application of Business Judgment Rule*

      *(1) General Legal Principles*

The business judgment rule "'establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest. [Citations.]' [Citation.]" (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1045.) "'"A hallmark of the business judgment rule is that a court will not substitute its judgment for that of the board if the latter's decision can be "attributed to any rational business purpose.' [Citation.]" [Citation.]" (*Ibid.*)

"An exception to the presumption afforded by the business judgment rule . . . exists in 'circumstances which inherently raise an inference of conflict of interest' and the rule 'does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest.' [Citations.] But . . . more is needed than 'conclusory allegations of improper motives and conflict of interest. Neither is it sufficient to generally allege the failure to conduct an active investigation, in the absence of (1) allegations of facts which would reasonably call for such an investigation, or (2) allegations of facts which would have been discovered by a reasonable investigation and would have been material to the questioned exercise of business judgment.' [Citation.] In most cases, 'the presumption created by the business judgment rule can be rebutted only by affirmative allegations of facts which, if proven, would establish fraud, bad faith, overreaching or an unreasonable failure to investigate material facts. [Citation.] Interference with the discretion of directors is not warranted in doubtful cases.' [Citation.]" (*Berg & Berg Enterprises, LLC v. Boyle, supra*, 178 Cal.App.4th at

7

p. 1045.) "Once it is shown a director received a personal benefit from the transaction, . . . the burden shifts to the director to demonstrate not only the transaction was entered in good faith, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. [Citations.]" (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 128.)

### (2)  Cole and Carnino

Plaintiffs contend the business judgment rule should not have been applied to Carnino and Cole because they "voted with the full board to approve the transaction" and "also participated in the negotiating process, even though they stood on both sides of the transaction." But plaintiffs' failure to provide any supporting citations to the record forfeits the argument. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [argument not supported by record citations treated as waived]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [record citations in statement of facts do not cure lack of citations in argument].) Even if not waived, the contention lacks merit.

Contrary to plaintiffs' claim, the record affirmatively shows Carnino and Cole abstained from voting on the transaction. Accordingly, they "are not subject to liability on the ground of having approved the [subject] agreement[]." (*Gaillard v. Natomas* (1989) 208 Cal.App.3d 1250, 1268.)

Plaintiffs acknowledge this but argue that under *Gaillard*, Carnino and Cole were not entitled to rely on the business judgment rule because of their participation in the negotiation process. But *Gaillard* reversed the summary judgment in the defendant's favor because there were issues of fact regarding "the nature and extent of [one defendant's] participation in the events" leading to the subject agreement's adoption, which "raise[d] . . . the inference that the agreement was not in the [corporation's] best interests . . . at the time of its adoption." (*Gaillard v. Natomas, supra*, 208 Cal.App.3d at

8

p. 1268.)  The judgment here, in contrast, occurred after a 12-day trial following which the court specifically found "no evidence [Carnino's] involvement tainted the Committee's work or decision" or that Cole "improperly influenced the Committee." Plaintiffs have not challenged these findings.

Plaintiffs maintain *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93 required Carnino and Cole, "as conflicted directors, . . . to prove . . . their transaction with KOR was inherently fair."  But that rule only applies to "[m]ajority shareholders . . . [who] use their power to control corporate activities to benefit themselves alone or in manner detrimental to the minority.  Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business. [Citations.]" (*Id.* at p. 108.)  In that event, "'the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.'" [Citation.]" (*Ibid.*)

At trial, plaintiffs' counsel conceded this standard does not apply unless interested directors "exercise control in connection with the transaction" or "use their position in connection with assisting that transaction to come to fruition."  In this case, it was unnecessary to reach the question of inherent fairness given the court's determination neither defendant had used any power or control in a manner that affected the Committee's ultimate decision to approve the transaction.

For the same reason, *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18 does not aid plaintiffs.  There, Tenzer, a member of Superscope's board of directors, helped secure a purchaser for the corporation's property and requested a 10 percent finder's fee. Tushinsky, Superscope's president, orally agreed but after the deal was consummated the

9

board denied Tenzer a finder's fee. The Supreme Court reversed the summary judgment granted in favor of Superscope.

Among other things, Superscope argued that given Tenzer's fiduciary duties as a board member any reliance on Tushinsky's promise was unreasonable. Although the Court agreed Tenzer owed fiduciary duties, it concluded triable issues of material fact precluded summary judgment: "As a corporate director, Tenzer is charged with the knowledge that any contract he entered into with his own corporation, even if valid and enforceable in all other respects, could be avoided at the corporation's option if it were determined to be unfair or unreasonable to the corporation. Thus, in order to prove that his reliance upon Tushinsky's promise was justifiable, Tenzer will be required to prove that the arrangement was fair and reasonable to the corporation. [¶] Establishing whether Tenzer's agreement with Superscope was fair and reasonable involves determination of the particular factual circumstances of the agreement, and application of the standards of fairness and good faith required of a fiduciary to these facts. These are functions mainly for the trier of facts. [Citations.]" (*Tenzer v. Superscope, Inc., supra,* 39 Cal.3d at p. 32.)

Here, in contrast, because the trier of fact determined Cole and Carnino did not participate in the transaction in any manner that affected the Committee's decision, it had no occasion to determine whether their conduct was fair and reasonable. Plaintiffs maintain that under *Tenzer*, Cole and Carnino's "fiduciary duties imposed on them a duty not to use [their additional bargaining] leverage in a way that was not inherently fair." But the court's finding shows they did not do that.

### (3) Directors on Committee

Plaintiffs argue the directors on the Committee were not entitled to the business judgment presumption because they were "not properly informed and not acting

10

in good faith." (Underscoring omitted.) They assert "[t]he directors on the [C]ommittee wrongfully abdicated their duty to inform themselves by relying on Carnino, who, as a directly interested, conflicted, preferred stockholder, was not . . . someone whom any director could 'believe[] to be reliable.'" We are not persuaded, given the findings the Committee members "performed their task with due care and without negligence, . . . ma[king] reasonable inquiry into the facts and alternatives, and . . . weigh[ing] the advantages and disadvantages," and that Carnino's actions in "look[ing] for other options, provid[ing] data, and act[ing] as Committee secretary" did not affect their evaluation.

Nor does the case plaintiffs cite, *Everest Investors 8 v. McNeil Partners* (2003) 114 Cal.App.4th 411, 430, support their claim it was "unreasonable as a matter of law" for the Committee to have Carnino assist them. Rather, as plaintiffs' acknowledge, that case merely held the business judgment rule "does not shield actions taken without reasonable inquiry . . . ." (*Ibid.*)

As to the good faith requirement, plaintiffs contend the court applied the wrong standard by limiting it "to an 'effort to advance corporate interests'" when in fact "directors, officers, and controlling shareholders owe a duty of good faith to all shareholders." (Underscoring omitted.) But none of the cases on which they rely—*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167; *Kennerson v. Burbank Amusement Co.* (1953) 120 Cal.App.2d 157, and *Remillard Brick Co. v. Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405—involve application of the business judgment rule.

The argument further lacks merit in that the court specifically found the Committee members had "a sincere and earnest interest in seeking to do the right thing for[, and based its decision on,] the long-term interests of the company *and the common shareholder*" (italics added), despite its "immediate stock value disadvantage to the" latter. Plaintiffs cite certain evidence to purportedly show the Committee members

11

"knowingly acted in bad faith in approving a transaction that they knew was not fair to the common shareholders . . . ." Such resolutions of fact were for the trial court and we will not reweigh the evidence. (*Cuiellette v. City of Los Angeles, supra,* 194 Cal.App.4th at p. 765.)

Plaintiffs also argue the court applied the wrong burden of proof in finding the Committee members "us[ed] a process that was rational and used in a good faith effort to advance corporate interests." They reason that after the directors carry their "initial burden of proving . . . the business judgment rule affirmatively applies (i.e., that the director[s have] no conflict of interest)" and plaintiffs rebut that "presumption by proving any one of the four bases for rebuttal," "the burden shifts back to the director[s] to prove inherent fairness." In their view, "the court reversed the burden of proof . . . [by] plac[ing] the burden on [p]laintiffs to prove . . . the process used was not 'rational.'" It did no such thing.

To the contrary, the court determined plaintiffs had failed to carry their burden of rebutting the business judgment presumption in "that the evidence shows no conflict of interest, fraud, bad faith, or gross overreaching contaminated the . . . Committee's . . . decision." Although it could have ended its analysis there, it went on to find "the evidence shows the Committee members acted appropriately, using a process that was rational and used in a good faith effort to advance corporate interests." In other words, defendants affirmatively showed they used a rational process, as plaintiffs contend they were obligated to do. But in no event did the court require plaintiffs to prove the process was not rational.

### b. NEA IV and Spectra

As to NEA IV and Spectra, plaintiffs assert that because the business judgment rule does not apply to shareholders, and the court found NEA IV and Spectra

Exhibit #32: 015
22-CV-01616-BAS-DDL

were controlling shareholders and "the transaction disadvantaged the common shareholders," the court erred in requiring plaintiffs to prove "'control and abuse of that control.'" Rather, they claim, once they proved control, the burden shifted to the controlling shareholders to prove "the transaction is inherently fair to the minority shareholders." We disagree.

The court assumed NEA IV and Spectra "were a controlling shareholder group, in the sense . . . they had the power to control certain aspects of [KOR's] life[,] . . . includ[ing] the lawful power to exercise 'veto' power and negotiation leverage." Even so, it found the "Committee made its own independent decision about what to do" and there is no evidence NEA IV and Spectra "abused that power [or] . . . their relationship with the . . . Committee, tainted its work, or improperly used their corporate rights." Thus, as in the case of Carnino and Cole, there was no need to establish inherent fairness because any use by NEA IV and Spectra of their asserted powers as controlling shareholders did not influence the Committee's decision. Because the court did not err in declining to reach the issue of inherent fairness as plaintiffs contend, we reject their claim the case should be remanded for a trial on damages for that reason.

### c.  Failure to Address Carnino's Breach of Fiduciary Duties as CEO

Plaintiffs argue the court erred in failing to analyze Carnino's breach of fiduciary duties in his capacity as CEO, separate from his capacity as a director and preferred stockholder, as alleged in their first cause of action for breach of fiduciary duty against KOR's officers and directors. But if there was error plaintiffs invited it by failing to litigate the issue at trial or identifying it to the court during opening or closing arguments. (*Portola Hills Community Assn. v. James* (1992) 4 Cal.App.4th 289, 294, disapproved of on other grounds in *Nahrstedt v. Lakeside Village Condominium Assn.*

13

(1994) 8 Cal.4th 361, 386 [error, if any, in not addressing issue invited where "subject . . . was not included in the stipulated facts or plaintiff's trial brief and was not presented orally during the evidentiary phase or argued to the court"].)  As such, they are "'estopped from asserting it as a ground for reversal' on appeal. [Citation.]"  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)

Moreover, plaintiffs' failure to either request a statement of decision on this issue, or specifically note, in their objections to the proposed statement of decision, the court's omission of the issue, "absolutely forecloses any consideration of it now [citation]."  (*Portola Hills Community Assn. v. James, supra*, 4 Cal.App.4th at p. 294; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 ["It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal"].)

Plaintiffs maintain Carnino is liable as a matter of law for breach of fiduciary duty in his capacity as CEO based on the court's undisputed factual findings he was the CEO and "an interested party" who was "used by the Committee to look for other options, provide data, and act as Committee secretary."  From this, plaintiffs jump to the conclusion "Carnino violated his fiduciary duties to the common shareholder . . . ."  But at most these demonstrate Carnino owed fiduciary duties as CEO.  They do not prove breach of those duties or proximate damages.  (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101 [absence of damage proximately caused by breach defeats claim for breach of fiduciary duty].)  Nor do plaintiffs cite any evidence showing Carnino proximately caused their damages by breaching his fiduciary duties as CEO.

### d.  Remaining Issues

We reject plaintiffs' remaining claims.  First, as to their contention the court erroneously "relied on Delaware law of special committees," they failed to show

14

"knowingly acted in bad faith in approving a transaction that they knew was not fair to the common shareholders . . . ." Such resolutions of fact were for the trial court and we will not reweigh the evidence. (*Cuiellette v. City of Los Angeles, supra*, 194 Cal.App.4th at p. 765.)

Plaintiffs also argue the court applied the wrong burden of proof in finding the Committee members "us[ed] a process that was rational and used in a good faith effort to advance corporate interests." They reason that after the directors carry their "initial burden of proving . . . the business judgment rule affirmatively applies (i.e., that the director[s have] no conflict of interest)" and plaintiffs rebut that "presumption by proving any one of the four bases for rebuttal," "the burden shifts back to the director[s] to prove inherent fairness." In their view, "the court reversed the burden of proof . . . [by] plac[ing] the burden on [p]laintiffs to prove . . . the process used was not 'rational.'" It did no such thing.

To the contrary, the court determined plaintiffs had failed to carry their burden of rebutting the business judgment presumption in "that the evidence shows no conflict of interest, fraud, bad faith, or gross overreaching contaminated the . . . Committee's . . . decision." Although it could have ended its analysis there, it went on to find "the evidence shows the Committee members acted appropriately, using a process that was rational and used in a good faith effort to advance corporate interests." In other words, defendants affirmatively showed they used a rational process, as plaintiffs contend they were obligated to do. But in no event did the court require plaintiffs to prove the process was not rational.

### b. *NEA IV and Spectra*

As to NEA IV and Spectra, plaintiffs assert that because the business judgment rule does not apply to shareholders, and the court found NEA IV and Spectra

were controlling shareholders and "the transaction disadvantaged the common shareholders," the court erred in requiring plaintiffs to prove "'control and abuse of that control.'" Rather, they claim, once they proved control, the burden shifted to the controlling shareholders to prove "the transaction is inherently fair to the minority shareholders." We disagree.

The court assumed NEA IV and Spectra "were a controlling shareholder group, in the sense . . . they had the power to control certain aspects of [KOR's] life[,] . . . includ[ing] the lawful power to exercise 'veto' power and negotiation leverage." Even so, it found the "Committee made its own independent decision about what to do" and there is no evidence NEA IV and Spectra "abused that power [or] . . . their relationship with the . . . Committee, tainted its work, or improperly used their corporate rights." Thus, as in the case of Carnino and Cole, there was no need to establish inherent fairness because any use by NEA IV and Spectra of their asserted powers as controlling shareholders did not influence the Committee's decision. Because the court did not err in declining to reach the issue of inherent fairness as plaintiffs contend, we reject their claim the case should be remanded for a trial on damages for that reason.

### c. Failure to Address Carnino's Breach of Fiduciary Duties as CEO

Plaintiffs argue the court erred in failing to analyze Carnino's breach of fiduciary duties in his capacity as CEO, separate from his capacity as a director and preferred stockholder, as alleged in their first cause of action for breach of fiduciary duty against KOR's officers and directors. But if there was error plaintiffs invited it by failing to litigate the issue at trial or identifying it to the court during opening or closing arguments. (*Portola Hills Community Assn. v. James* (1992) 4 Cal.App.4th 289, 294, disapproved of on other grounds in *Nahrstedt v. Lakeside Village Condominium Assn.*

(1994) 8 Cal.4th 361, 386 [error, if any, in not addressing issue invited where "subject . . . was not included in the stipulated facts or plaintiff's trial brief and was not presented orally during the evidentiary phase or argued to the court"].)  As such, they are "'estopped from asserting it as a ground for reversal' on appeal. [Citation.]" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)

Moreover, plaintiffs' failure to either request a statement of decision on this issue, or specifically note, in their objections to the proposed statement of decision, the court's omission of the issue, "absolutely forecloses any consideration of it now [citation]." (*Portola Hills Community Assn. v. James, supra,* 4 Cal.App.4th at p. 294; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 ["It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal"].)

Plaintiffs maintain Carnino is liable as a matter of law for breach of fiduciary duty in his capacity as CEO based on the court's undisputed factual findings he was the CEO and "an interested party" who was "used by the Committee to look for other options, provide data, and act as Committee secretary." From this, plaintiffs jump to the conclusion "Carnino violated his fiduciary duties to the common shareholder . . . ." But at most these demonstrate Carnino owed fiduciary duties as CEO. They do not prove breach of those duties or proximate damages. (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101 [absence of damage proximately caused by breach defeats claim for breach of fiduciary duty].)  Nor do plaintiffs cite any evidence showing Carnino proximately caused their damages by breaching his fiduciary duties as CEO.

### d.  Remaining Issues

We reject plaintiffs' remaining claims.  First, as to their contention the court erroneously "relied on Delaware law of special committees," they failed to show

the court actually did so, as no out of state authority was referenced in its statement of decision.  Their own reliance upon Delaware law and the fact plaintiffs never claimed California does not recognize special committees in the trial court also precludes them from asserting it for the first time on appeal.  (*Portola Hills Community Assn. v. James,* *supra,* 4 Cal.App.4th at p. 294.)

Second, plaintiffs cite "California's policy . . . to protect the public from fraud and deception in security transactions."  (*Hall v. Superior Court* (1983) 150 Cal.App.3d 411, 417.)  But they voluntarily dismissed their constructive fraud claim and have not shown the court's findings were inconsistent with public policy.

Third, plaintiffs assert the court committed reversible error in "failing to reach [their] claims for gross mismanagement, waste of corporate assets, and unjust enrichment."  (Capitalization, bold and underscoring omitted.)  This is belied by the statement of decision's express ruling those claims failed on the same grounds as the breach of fiduciary duty causes of action.

Plaintiffs' final argument is that if the underlying judgment is reversed so should the award of costs.  We affirm both the judgment and the costs award.

## 2. *Defendants' Motion for Sanctions*

Defendants filed a combined motion for sanctions on the grounds plaintiffs failed to comply with various Rules of Court by including in their appendix documents never admitted at trial and documents unnecessary to the appeal, the majority of which was not referenced in their briefs, and by failing to include record references for many factual statements.  Plaintiffs acknowledge their "technical rule violations" but claim they "did not cause the degree of prejudice, confusion or additional work for the clerk's office or for [defendants] as to warrant the imposition of sanctions."  We disagree.

15

a. *Appendix*

Under rule 8.124(b)(3), "[a]n appendix must not: [¶] (A) Contain documents or portions of documents filed in superior court that are unnecessary for proper consideration of the issues." Including in an "appendix . . . all of the parties' proposed trial exhibits, without any accompanying indication as to which exhibits were actually admitted in evidence" violates this rule (*Kreutzer v. City and County of San Francisco* (2008) 166 Cal.App.4th 306, 319, fn. 8, italics omitted), as does including "documents never referenced by plaintiffs" and those that are "not necessary to our determination of the issues" (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 167).

Here, plaintiffs included 76 documents in their 12-volume appendix, consisting of 2,958 pages, but only cited to 16 in their opening brief and 12 in their reply. Of those 76 documents, 39 were not admitted at trial.

Plaintiffs concede neither those 39 nonadmitted documents nor the volumes of foreign authorities lodged in the trial court were necessary to the appeal and should not have been included in the appendix, and that "they should have exercised more discretion and selected a smaller number of documents . . . ." But they ask sanctions not be imposed because although sanctions may be imposed for filing a faulty appendix (rule 8.124(g)), the Advisory Comment states such "sanctions do not depend on the degree of culpability of the filing party—i.e., on whether the party's conduct was willful or negligent—but on the nature of the inaccuracies and the importance of the documents they affect." (Advisory Com. com., 23 pt. 2 West's Ann. Codes, Rules (2006 ed.) foll. rule 8.124, p. 552.)

Plaintiffs conclusorily assert "the nature of the over-inclusiveness, while regrettably contributing to the bulk of papers filed, did not substantially hamper the [c]ourt or [defendants]," there were no inaccuracies that affected important documents,

16

and that defendants' authorities suggest their "technical violations" were not "so egregious that sanctions should be imposed." They are correct *Evans v. Centerstone Development Co., supra,* 134 Cal.App.4th 151 is the only case cited by defendants in which sanctions were awarded. They seek to distinguish *Evans* on the basis it involved violations of many rules and the prosecution of a frivolous appeal, whereas this case was meritorious and the "12-[volume] . . . [a]ppendix, though excessive, should not have hampered or caused confusion . . . ."

But here plaintiffs admit they violated several rules. They also continued to cite the excluded evidence in their reply brief even after defendants noted the error in their briefs. As for hampering, defense counsel's declarations supporting the sanctions motion state plaintiffs' deficient appendix required them to "review[] all documents submitted . . . to determine which documents were admitted trial exhibits, which documents were actually cited by [a]ppellants[] in their briefs, what additional admitted exhibits were necessary to the issues on appeal, and the selection of additional documents to be included in [r]espondents' [j]oint [a]ppendix." This is sufficient to support an award, especially given plaintiffs failure to cite any contrary evidence.

### b. *Plaintiffs' Briefs*

Rule 8.204(a)(1)(C) requires parties to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Rule8.204(a)(2)(C) also requires appellants to "[p]rovide a summary of the significant facts limited to matters in the record."

Plaintiffs' opening brief makes 39 unsupported factual statements, including full paragraphs lacking record references. Some assertions are contradicted by the record. The reply brief similarly contains 34 statements, and full paragraphs, without citations to the record.

17

Plaintiffs' counsel Laurence M. Rosen acknowledges noncompliance with these rules but claims "[t]he factual assertions in all material respects were accurate and can be supported by proper citations to the record." Because he "will be mindful of the [r]ules . . . in the future" and the violations were neither unintentional nor misleading, he states "there is no need for an imposition of monetary or other sanctions . . . ." According to him, the infractions were the fault of his "overwrought" associate who made some mistakes and the hampering of his supervision by two serious emergencies—his mother's admission to the hospital and subsequent death, and his emergency back surgery to repair two herniated discs. He asserts the reply brief "supplies a better, more focused summary and substantial additional citations to the record" and goes on to address each of the unsupported factual statements identified by defendants. These efforts "at this point [were] too little, too late. Although we are not required to plow through mounds of appendices, at times we did, and we have no doubt defendants had to expend substantial additional and unnecessary time because of this violation." (*Evans v. CenterStone Development Co.*, *supra*, 134 Cal.App.4th at p. 167.) We thus deny his request for leniency.

Plaintiffs maintain that because they "challenge[d] . . . the sufficiency of the evidence" the court's obligation to review the entire record "reduce[d] somewhat the otherwise burdensome efforts of [the] violations. But although plaintiffs assert "[t]he [statement of d]ecision is riddled with demonstrably false factual findings," the opening brief never actually claimed the evidence was insufficient to support the judgment. Even if they had, the burdens of their violations would not have been decreased.

### c. *Sanctions Amount*

The repeated violation of appellate rules, compounded by the failure to correct the infractions in the reply brief after respondents brought the deficiencies to his

Exhibit #32: 021
22-CV-01616-BAS-DDL

attention, justifies imposition of sanctions in this case. *(Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 30-31 [sanctions warranted for "unreasonable infraction of the rules" made worse by further violations in reply brief after respondents pointed out violations].) Defendants request $30,000 in monetary sanctions. Plaintiffs contend this amount is "grossly inflated" (bold and capitalization omitted) because defendants double billed for the same tasks, erroneously included time spent to prepare the respondents' appendix, needlessly "spent time in determining which factual statements were supported by admitted evidence and which documents were admitted trial documents" and "spent an inordinate amount of time preparing charts and their motion for sanctions . . . ."

Attorney fees are a common measure of sanctions payable to an opposing party. (See, e.g., *Periotti v. Torian, supra*, 81 Cal.App.4th at p. 33.) Of the $30,000 in sanctions requested by defendants, only $10,000 appears to be for attorney fees. The remaining $20,000 is for "[a] portion of the costs incurred" by defendants. We conclude a sanction of in the amount of $10,000 is appropriate in this case to compensate defendants for additional burdens imposed on it and to deter similar conduct in the future.

Defendants request the sanctions be payable by plaintiffs, their counsel, or both. Plaintiffs' attorneys should be held liable for the sanctions, as they were the ones who failed to comply with the rules of the appellate court. (See *Pierotti v. Torian, supra*, 81 Cal.App.4th at pp. 36-37.) The $10,000 sanctions award shall be payable joint and severally by plaintiffs' attorneys, Kenneth J. Catanzarite and Laurence M. Rosen, to defendants. Although we could order the sanctions be paid instead to this court, or impose additional sanctions, to defray the extra cost to taxpayers to process the appeal *(Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 885), we decline to do so. Because we did not rely on any documents that were not admitted at trial or any of the unsupported factual statements in the opening or reply briefs, we deny defendants' request to strike these items.

19

DISPOSITION

The judgment is affirmed.  The motion for sanctions is granted in the amount of $10,000.  Counsel for plaintiffs, Kenneth J. Catanzarite and Laurence M. Rosen, are ordered to pay defendants the $10,000 sanctions award jointly and severally individually without contribution from plaintiffs, within 30 days of the filing of the remittitur.  They shall provide this court with an affidavit stating they have not and will not bill their clients for any portion of the sanctions and are ordered to report the sanctions to the State Bar.  (Bus. & Prof. Code, § 6068, subd. (o)(3).)  The clerk of this court is directed to forward a copy of this opinion to the State Bar.  (Bus. & Prof. Code, § 6086.7, subd. (a)(3).)  Defendants shall recover their costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

O'LEARY, J.

20

**Arch Insurance Company**

a member of Arch Insurance Group

www.archinsurance.com

Four Embarcadero Center
Suite 2000
San Francisco, CA 94111

415 490 9700 Telephone
415 490 9600 Fax

Direct Line:  415-490-9649
Direct Fax:  415-490-9650
bengler@archinsurance.com

August 14, 2006

Cecilia M. Horton-Billard, Esq.
Office of the Chief Trial Counsel, Intake
State Bar of California
1149 South Hill Street
Los Angeles, CA  90015-2299

Re:   Insured:          Bradshaw & Associates
        Claimant:         Katherine Roberts
        Claim Number:  19408

Dear Ms. Horton-Billard:

We write in compliance with California Business and Professions Code section 6086.8 (b) to advise you of our receipt of a claim or action for damages against a member of the State Bar of California.

NOTICE OF CLAIM OR ACTION

          ___   Claim          _X_  Suit (filed on June 14, 2006)
          Title of Action:      *Katherine Roberts v. Drexel Bradshaw, et al.*
          Court Case No.:      San Francisco County Superior Court No. CGC-06-453145
          Nature of Claim:     Legal malpractice

Very truly yours,

Barbara W. Engler
Senior Claims Examiner

cc:   **PERSONAL & CONFIDENTIAL**
        Drexel A. Bradshaw, Esq.