# EXHIBIT 39

Exhibit #39: 001
22-CV-01616-BAS-DDL

## STATEMENT REGARDING FACTS AND CIRCUMSTANCES

Petitioner was a party to Alameda County Superior Court action # FF08380050. The litigation on community property division was a nightmare. Community property was not properly legally divided. In a simple community property division case, the Judge (Stephen Mark Pulido) in the treated this case as embracing all issues of family law in California. One court reporter approached Petitioner that Pulido was interested in making a library out of this case's litigation so that other judges could use it as a learning tool. At that time, Pulido was the presiding judge of family law at the Alameda County Superior Court.

During litigation, Paul Whaley Thorndal (State Bar main witness who was opposing lawyer in the family law case)) failed to realize the significance of entry of judgment, significance of appellate review completions and in particular what it means for a case <u>when certiorari is denied by highest state court and highest federal court</u>. He took it that looting of the community property was on despite termination of the proceedings in state court (final determination). Particularly, he sought to convert about $600,000 of Petitioner's equity in the family home at 701 Bodega Court, Fremont CA 94539 by filing frivolous and illegal motions. Thorndal sold Practitoner's house without him and has not paid the equity in the house worth $1.3M today.

Petitioner informs as follows:

1. There are no clients involved to which Petitioner's alleged ethical issues are directed. The principal matter is a dissolution of marriage case where Petitioner was a Respondent and was attempting to protect his home and his half of community property wrongfully taken.
2. In order to deprive Petitioner of his half of his rightful equity in his home at 701 Bodega Court, Fremont CA 94539, opposing attorney Paul Whaley Thorndal and opposing party Anupama Pathak indulged in sham litigation above and beyond the judgment of 9.30.10 entered in the family law case #FF08380050.

3. For any change of the judgment and continued litigation, the judgment of 9.30.10 had to be set aside first, which had to be done within 6 monhs under California law. Absent this set aside of the judgment, the 9.30.10 judgment is final and any litigation following it from December 2012 to later is sham litigation. The judgment of 9.30.10 has been reviewed by state's highest court and the US Supreme Court.

4. The State Bar matter resulted from this post judgment sham litigation where Petitioner remains a victim. The escrow on the house at 701 Bodega Court Fremont CA 94549 has not closed to date and the title company is still holding close to $500,000 of Petitioner's equity, present valued at $1.3M. The title company First American Title Company has since filed two interpleaders in the civil department, forcing Petitioner to accept less than his half share of his equity.

5. When Petitioner attempted to defend against this sham litigation, and pursued with complaints, State Bar opened the action, characterizing it against Petitioner, when the attempt was merely to protect the property.

6. No issue of deceit, misrepresentation, dishonesty or commission of crime are involved and the matter involves no clients whatsoever. When the alleged litigation occurred, Petitioner had not even started his law practice, which started in May 2014.

7. Since the matter does not involve practice of law, State Bar of California had no jurisdiction to discipline. Several of the charges had the five year statute of limitation expired.

8. The appeal filed by Petitioner was the first appeal by right, in a matter where to date Petitioner has not obtained his equity from his home, even to date.

9. State Bar of California had difficulty garnering witnesses. Finally they subpoenaed Paul Whaley Thorndal (opposing attorney in litigation), who was their main witness. Under rules of professional conduct , Thorndal is under obligation to be loyal to his former client Anupama Pathak. Due to pre-exisiting obligation to a former client, Thorndal could not be an objective witness. He also had motivation to convert Petitioner's equity in his family home to attorney fees

generated through sham litigation. He was a defendant in a federal case which was pending. SO that Thorndal does not get examined under oath, State Bar's counsel Robin Brune and then State Bar Court judge Patricia Elizabeth McElroy conspired to not swear witness in front of Petitioner who was present at trial. Both the Court and Brune ensured that Petitioner's lack of noting of this fact by switching witness and repeating the conduct, while Thorndal was not excused.

10. When Petitioner raised this issue in his closing brief, the Judge initially ignored it in the rulings. Attempts were made to hold hearing so Judge could somehow put in record as if this isse was litigated. Remarkably, with the same Judge's conduct at issue, the Review Dept. remanded the matter to same Judge three times. When the CD recording of the proceedings were released, low volume portions of swear-ins were inserted so that the case could just survive. Petitioner is a personal eye witness of no-swear-ins and got the CD examined whose reports are enclosed in the due process module. Expert Sean Fulop even heard sounds of turning on and off of tape recorders during the forged portions of the audio recordings.

11. Once the issue of CD forgery and commissions of crime were raised, The State Bar Court's Review Department as well as the California Supreme Court indulged in conduct to quietly protect the judicial officer Patricia Elizabeth McElroy. Likely this is so because McElroy was appointed by the California Supreme Court and had held office for over 10 years. A forgery charge of the CDs of the trial proceedings would have led to numerous lawsuits and put integrity of the State Bar Court at peril.

12. Both the State Bar Court's review Department proceeded on the case with transcripts that were not certified by the Court Reporter, after the court reporter came to know of the claimed forgery.

13. The Review Department only had Petitioner's first expert report and did not consider evidence from Petitioner's second expert witness, Professor Sean Fulop who extensively studied and concluded with 100% certainty that forgery had been committed. See due process module.

14. The California Supreme Court had appointed Patricia Elizabeth McElroy to two prior terms, did not grant certiorari in this matter and also denied Petitioner of a new trial where the CD forgery could be proven and Petitioner exonerated of all charges due to corruption of the main witness of the State Bar.