EXHIBIT 82

Exhibit #82: 001
22-CV-01616-BAS-DDL



OC

# Celebrity Lawyer Michael Avenatti Faces Years More in Prison at OC Sentencing

by **Contributing Editor**
December 4, 2022



**Michael Avenatti - Photo courtesy of a katz on Shutterstock**

Convicted attorney Michael Avenatti is expected to face years in federal prison when he is sentenced in a Santa Ana courtroom on Monday.

Federal prosecutors will seek 17 1/2 years for Avenatti for his wire- and tax-fraud scheme in Southern California. Avenatti, who is representing himself, has argued for six years.

U.S. District Judge James Selna will also decide if the punishment he hands down will run concurrent or consecutive to the five years Avenatti is serving for convictions in an extortion scheme against Nike, and for stealing from another client, adult film actress Stormy Daniels, in New York.

Avenatti argued that the six years he is recommending should run concurrent with the punishment he is already serving for the New York cases.

He made an "open plea" to resolve most of the charges against him in Santa Ana, meaning he had no guarantee what punishment prosecutors would seek. It is a rare move for defendants because they have no idea what punishment they may face.

Avenatti, who won a mistrial motion last year when Selna found prosecutors had withheld evidence the attorney was seeking to use in his trial, said he made the open plea to spare the five victims another trial, the court system the expense, and because he could not reach an agreement on a plea deal with prosecutors.

In the sentencing recommendation, federal prosecutors said Avenatti's schemes followed a "general pattern" in which he "would lie about the true terms of the settlement agreement he had negotiated for the client, conceal the settlement payments that the counterparty had made, secretly take and spend the settlement proceeds that belonged to the client, and lull the client into not complaining or investigating further by providing small `advances' on the supposedly yet-to-be-paid funds."

Prosecutors also said he was a "tax cheat," and cited his failure to pay payroll taxes after his firm acquired Tully's Coffee in bankruptcy and then obstructed the IRS when the agency attempted to collect the amount due.

Prosecutors argue Avenatti stole $12.35 million from his clients, failed to pay about $3.2 million in payroll taxes from the coffee company, and $1.6 million in payroll taxes from his law firm.

Prosecutors also make a legal argument that Avenatti, despite his guilty plea, has not taken responsibility for his crimes because he has not acknowledged culpability in more specific terms. For instance, prosecutors point to Avenatti's contesting of the restitution he owes.

Prosecutors acknowledge that Avenatti has written an apology letter to his victims, but that he "did not identify any specific conduct for which he was apologizing. Again, defendant said the bare minimum and only said it when the issue of his 'acceptance of responsibility' is being considered in connection with his sentencing. This self-serving 'apology' does not reflect an acceptance of responsibility worthy of recognition by a 2-level reduction in his offense level under (federal law)."

The prosecutors also argue that his convictions in New York federal courts should also boost his punishment.

Avenatti argued that the recommended punishment from probation officials is "dramatically and punitively higher" than other fraud and tax cases.

He painted a picture of a difficult childhood that led him to believe he had to "work hard and rely solely on himself to achieve success and contribute to society," his advisory counsel, Dean Steward, wrote in the sentencing brief.

He said he started working at 15, including at a McDonald's and in retail stores, and that when he was 17 he worked at an "athletic complex" in St. Louis, "where he managed five employees and umpired over 500 baseball games."

Avenatti had to work full time to pay for his college education and was the first in his family to earn advanced degrees. He earned a law degree from George Washington University Law School, moved to California and passed the bar on his first try and settled in Newport Beach in 2000.

Avenatti is a "loyal, loving, supportive and fun father" of his two teenage daughters and 8-year-old son, Steward wrote.

Avenatti also argued that his jailing in New York City while awaiting trial there in "horrendous conditions" should lead to a lesser sentence. He filed a claim with the government, which denied it, alleging he was placed in solitary confinement as punishment for being a prominent critic of former President Donald Trump.

During the pandemic, Selna ordered Avenatti serve under home confinement with a friend in Venice as he awaited his trials.

While in custody at Terminal Island, Avenatti has a "spotless disciplinary record, has been a model inmate, and currently has a security classification of minimum," Steward wrote.

Avenatti was also admitted into a treatment program and is active in Alcoholics Anonymous. In addition, he has been taking courses to "prepare him for a life after prison" as the suspended attorney will soon surrender his law license and will not be able to ever practice the law again.

He also argued that multiple boxes of thank-you cards and letters from former clients were destroyed by the government so he cannot use them to help him make his case for a lesser sentence.

Avenatti argued he has taken steps to show his acceptance of responsibility with the letters of apology to his victims and by relinquishing any rights he had to a private jet he purchased with money he stole from clients.

While the government argued there was no way the two cases in New York could be combined, Avenatti said they should have been. He argued that had that been done, he would not be facing the prospect of a past criminal history that would boost his exposure in the Santa Ana case.

Avenatti had no prior criminal history before his convictions in New York.

He argued federal prosecutors forced him to defend three cases on both coasts and could have combined them all into one case.

Avenatti said, "This highly unusual decision resulted from defendant's notoriety, the government's desire to have three high-profile prosecutions of defendant, and an internal 'turf' battle within the Department of Justice."

He added, "This is improper and highly prejudicial."

Avenatti quoted former Southern District of New York U.S. Attorney Geoffrey Berman's book on his efforts to work out the so-called turf battle with former Central District of California U.S. Attorney Nichola Hanna.

Avenatti said the federal prosecutors were "more concerned over who would benefit from a high-profile prosecution of defendant and avoid being 'punished' by Main Justice. These statements also undermine consistent representations from the government that Main Justice was never involved in the prosecution of defendant."

© 2022 CalNews Inc.

Proudly powered by Newspack by Automattic