EXHIBIT 121

Case 3:22-cv-01616-AGS-DDL   Document 10-82   Filed 01/09/23   PageID.2112   Page 2 of 24
Electronically Filed by Superior Court of California, County of Orange, 12/27/2022 08:00:00 AM.
30-2020-01145998-CU-BT-CXC - ROA # 857 - DAVID H. YAMASAKI, Clerk of the Court By A. Thau, Deputy Clerk.

1  Justin S. Beck
   3501 Roselle St.
2  Oceanside, California 92056
   760-449-2509
3  justintimesd@gmail.com
   *In Pro Per*
4

5

6              **IN THE SUPERIOR COURT OF CALIFORNIA**

7                      **COUNTY OF ORANGE**

8   JUSTIN S. BECK, an individual          )  Case No: 30-2020-01145998-CU-BT-CXC
9                                          )
                 Plaintiff,                )  Judge Assigned: Honorable Randall J. Sherman
10                                         )
       v.                                  )  **REPLY TO DEFENDANTS KENNETH**
11                                         )  **CATANZARITE, CATANZARITE LAW**
    KENNETH CATANZARITE, ESQ., an          )  **CORPORATION, BRANDON WOODWARD,**
12  individual; CATANZARITE LAW            )  **TIM JAMES O'KEEFE, AMY JEANETTE**
    CORPORATION, a California corporation; )  **COOPER, CLIFF HIGGERSON,**
13  MOBILE FARMING SYSTEMS, INC., a        )  **MOHAMMED ZAKHIREH, RICHARD**
    California corporation; BRANDON        )  **FRANCIS O'CONNOR, JR., JAMES DUFFY,**
14  WOODWARD, ESQ., an individual; AMY     )  **TGAP HOLDINGS, LLC, NICOLE M.**
    JEANETTE COOPER, an individual; CLIFF  )  **CATANZARITE WOODWARD AND**
15  HIGGERSON, an individual; TONY SCUDDER,)  **MOBILE FARMING SYSTEMS, INC.'S**
    an individual; JAMES DUFFY, an individual; ) **OPPOSITION TO PLAINTIFF'S MOTION**
16  MOHAMMED ZAKHIREH, an individual; TGAP )  **FOR SUMMARY JUDGMENT OR IN THE**
    HOLDINGS, LLC, a Nevada limited liability ) **ALTERNATIVE SUMMARY**
17  corporation; AROHA HOLDINGS, INC., a   )  **ADJUDICATION OR BOTH**
    California corporation; THE STATE OF    )
18  CALIFORNIA, a public entity; THE STATE BAR ) [Filed with Declaration of Justin S. Beck in
    OF CALIFORNIA, a public entity; SUZANNE )  Support of Reply; Request for Judicial Notice in
19  GRANDT, an individual; RUBEN DURAN, an )  Support of Reply; Hereby Objecting to Opposition
    individual; ELI DAVID MORGENSTERN, an  )  Papers as Being Overt Acts via Wire Under 18
20  individual; NICOLE MARIE CATANZARITE   )  U.S.C. § 1343 with Intent to Defraud Plaintiff, the
    WOODWARD, ESQ., an individual          )  Court, and all Non-Lawyer Defendants of Money
21                                         )  and Property; Further Violative of CRPC
                                           )  1.7(d)(3), BPC § 6104, Cal. Pen. Code § 132 and §
22               Defendants,               )  134 as Being Prepared and Offered False Evidence
                                           )  in Deliberate Obstruction of Justice through RICO
23                                         )  Enterprise Control under 18 § U.S.C. 1962(b)]
                                           )
24                                         )  **Hearing Date:      January 6, 2023**
                                           )
25                                         )  **Time:              10:00 AM**
                                           )
26                                         )  **Department:        CX105**
                                           )
27                                            **Unlimited Civil Case**

28                                            Action Filed:       May 26, 2020

                                              Pending 4DCA Writs:  G061896 and G062120

                                              Related Federal Case: 3:22-CV-01616-BAS-DDL

─────────────────────────────────────────────────────
                                                    i
REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

                              Exhibit #121: 002
                              22-CV-01616-BAS-DDL

TABLE OF CONTENTS

I.      INTRODUCTION

II.     LEGAL ARGUMENT

        A. This Court Has Duty and Power to Control Every Matter Pertaining to this Proceeding

            1. CCP § 128 Enables the Court to Grant Summary Judgment, Appropriately, and Enjoin

            2. Unlawful Takeover of MFS 1/23/19, Extortion to Produce "Evidence" Not Admissible

            3. Motion Relies on Plaintiff's **Verification** of Opinions; CX105 Trial Transcript 5/1/19

        B. This is Claims Act Litigation and State Bar's Enabled Lawyers are Harming *Everyone*

            1. State/State Bar Actors Served Eight Times in this Case Despite Failing to Appear

            2. Except as Provided by Statute, the Government is Immune from Tort Claims

            3. No Immunity is Available to State/State Bar/State Bar Actors After 2015

        C. California Supreme Court's Own Definition of Fraud Governs All Conduct at Issue

        D. Defendants Engage in Criminal Profiteering Activity Under Color of "Client" Advocacy

        E. The Court Cannot Even Consider the "Opposition" Files Much Less Ratify this Scheme

III.    CONCLUSION

**POS on All Parties' Counsel, Real Parties in Interest, and State/Federal Law Enforcement**

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 003
22-CV-01616-BAS-DDL

TABLE OF AUTHORITIES

<u>Cases – Federal</u>

*Berger v. United States,* ....................................................................... 5

    295 U.S. 78, 88 (1935)

*Catanzarite v. GCL, LLC,* ....................................................................13

    No. 21-12766, (11th Cir. Mar. 9, 2022)

*Forrest v. Baeza (1997),* .........................................................................9

    <u>58 Cal.App.4th 65, 76-77</u>

*Goldfarb v. Virginia State Bar,* ............................................................3

    <u>421 U.S. 773, 791,</u> <u>95 S.Ct. 2004,</u> <u>44 L.Ed.2d 572</u> (1975)

*N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* ...........3, 5

    574 U.S. 494, 505 (2015)


<u>Cases – State</u>

*Akron Bar Assn. v. Catanzarite,* .......................................................... 14

    119 Ohio St. 3d 313, 324 (Ohio 2008)

*Beachcomber Management Crystal Cove, LLC, v. Superior Court (2017)* .................... 8

    <u>13 Cal.App.5th 1105, 1116</u>

*Beck v. Catanzarite Law Corp.,* .......................................................*passim*

    No. G059766, (Cal. Ct. App. Jul. 13, 2022)

*Catanzarite Law Corporation v. Gordon Reese, LLP,* ..........................13

    No. G047968, 2-3 (Cal. Ct. App. Oct. 15, 2013)

*Corzo v. Bellehumeur,* ..........................................................................14

    No. B312676, 1 (Cal. Ct. App. Jul. 15, 2022)

*Corzo v. Parks Palmer Turner & Yemenidjian, LLP,* ...........................14

    No. B285691, 2 (Cal. Ct. App. Nov. 29, 2018)

iii

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 004
22-CV-01616-BAS-DDL

1  *Cultivation Techs. v. Duffy*, .................................................................................10-12

2        No. G059457, (Cal. Ct. App. Nov. 12, 2021)

3  *Fincanna Capital Corp. v. Cultivation Tech.*, ................................................8-10

4        No. G058700, (Cal. Ct. App. Jun. 28, 2021)

5  *Flatt v. Superior Court*, .....................................................................................8, 15

6        9 Cal.4th at p. 284

7  *M'Guinness v. Johnson* (2015) ..............................................................................8

8        243 Cal.App.4th 602, 613

9

10                              Statutes – Federal

11  18 U.S.C. § 1503 .............................................................................................*passim*

12        Obstruction of Justice – Federal Jurisdiction (3:22-CV-01616-BAS-DDL)

13  18 U.S.C. § 1505 .............................................................................................*passim*

14        Obstruction of Administrative Proceedings – Federal Jurisdiction (3:22-CV-01616-BAS-DDL)

15  15 U.S.C. § 1 ....................................................................................................3, 5

16        Sherman Act

17  18 U.S.C. § 1341 ................................................................................................ 4

18        Mail Fraud

19  18 U.S.C. § 1343 ................................................................................................ 4

20        Wire Fraud

21  18 U.S.C. § 1344 ............................................................................................*passim*

22        Bank Fraud

23  18 U.S.C. § 873 ..............................................................................................*passim*

24        Blackmail

25  18 U.S.C. § 1512(b) ........................................................................................*passim*

26        Tampering with Witnesses & Victims – Federal Jurisdiction (3:22-CV-01616-BAS-DDL)

27  18 U.S.C. § 1512(k) ........................................................................................*passim*

28        Conspiracy to Obstruct Justice (3:22-CV-01616-BAS-DDL)

    18 U.S.C. § 1951 ............................................................................................*passim*

        Interference with Commerce by Threats

iv

Exhibit #121: 005
22-CV-01616-BAS-DDL

18 U.S.C. § 1952(a)(1) ............................................................... *passim*

    Distributing Unlawful Activity Proceeds

18 U.S.C. § 1952(a)(3) ............................................................... *passim*

    Establishing or Carrying on Unlawful Activity

18 U.S.C. § 2314 ...................................................................... *passim*

    Transfer of Stolen Securities and Moneys

18 U.S.C. § 1962(a) ................................................................. 3, 4, 6

    Investing Proceeds of Racketeering in an Enterprise

18 U.S.C. § 1962(b) ................................................................. 4, 5

    Control/Attempted Control of an Enterprise through Racketeering

18 U.S.C. § 1962(c) .................................................................. *passim*

    Racketeering

18 U.S.C. § 1962(d) .................................................................. *passim*

    RICO Conspiracy

42 U.S.C. § 1983 ..................................................................... 2, 4

    Defendant, Court, and Regulator Duties Not to Violate Plaintiff's Rights Under Color of Law

18 U.S.C. § 1961(1) .................................................................. 4

    Defining "Racketeering Activity" Under Federal Law

18 U.S.C. § 1961(5) .................................................................. 4, 14

    Defining "Pattern of Racketeering Activity" Under Federal Law

18 U.S.C. § 1968 ..................................................................... 5, 6

    Racketeering Investigation Demand on U.S. in 3:22-CV-01616-BAS-DDL

Statutes – State

Cal. Gov. Cod. § 815.6 .............................................................. 3

    State/State Bar Mandatory Duties to Enjoin Defendants' Criminal Conduct Causing Public Harm

Cal. Penal Code § 186 ............................................................... 4, 5

    Racketeering

v

Exhibit #121: 006

22-CV-01616-BAS-DDL

Cal. Penal Code § 186(a)(2) ...................................................................................*passim*

Bribery (of Defendants GRANDT, MORGENSTERN and CSC's Jorge Navarrette)

Cal. Penal Code § 186(a)(6) ...................................................................................5

Extortion

Cal. Penal Code § 186(a)(13) ...................................................................................*passim*

Receiving Stolen Property

Cal. Penal Code § 186(a)(18) ...................................................................................*passim*

Violation of the Laws Governing Corp. Securities § 25541

Cal. Penal Code § 186(a)(20) ...................................................................................*passim*

Presentation of Fraudulent Ins. Claims § 550(a)(1)-(2)

Cal. Penal Code § 186(a)(20) ...................................................................................*passim*

Assisting, Conspiracy of § 550(a)(1)-(2), § 550(b)(1)-(4)

Cal. Penal Code § 118 ...................................................................................*passim*

Perjury

Cal. Penal Code § 127 ...................................................................................*passim*

Subornation of Perjury

Cal. Penal Code § 518 ...................................................................................5

Extortion

Cal. Penal Code § 522 ...................................................................................*passim*

Extortion for Signature

Cal. Penal Code § 523 ...................................................................................*passim*

Attempted Extortion by Threatening Letter

Cal. Pen. Code § 530.5 ...................................................................................5, 7

Theft of Personally Identifiable Information on and After September 14, 2018 by Catanzarite

Cal. Penal Code § 186.20(31) ...................................................................................*passim*

Catanzarite's Theft of Personally Identifiable Information to Gain Unfair Economic Advantage

Cal. Penal Code § 132 ...................................................................................2, 4, 7

Offering False Evidence (Obstruction of Justice)

Cal. Penal Code § 134 ...................................................................................2, 4, 7

Preparing False Evidence (Obstruction of Justice)

vi

Exhibit #121: 007
22-CV-01616-BAS-DDL

Cal. Penal Code § 136.1 ………………………………………………………*passim*

    Tampering with or Intimidating Witnesses to 3:22-CV-01616-BAS-DDL (Obstruction of Justice)

Cal. Penal Code § 67 and 68 ………………………………………………*passim*

    Bribery of Exec. Officer or Public Employee (GRANDT, MORGENSTERN, Navarrette)

Cal. Code Civ. Proc. § 128………………………………………………………*passim*

    Power of Court to Enjoin Defendants' Racketeering, 14th Amdt. Violations, Grant Motion Now

Cal. Rules of Court 8.1115(b) ………………………………………………2

    Unpublished Opinions as *Res Judicata*, Collateral Estoppel, Final Evidence of Defendant Crimes

Cal. Bus. & Prof. Cod. § 6077………………………………………………4

    Makes ALL California Rules of Professional Conduct Binding on Each Lawyer Defendant, Here

Cal. Bus. & Prof. Cod. § 6104………………………………………………1, 3

    Duties of State/State Bar to Restrain Lawyer Fraud, Corrupt Appearances Harming Non-Lawyers

Cal. Rul. Prof. Conduct 1.0.1 "Terminology"………………………………4

    Defining "Fraud" and "Fraudulent" for Lawyers, Lawyer Conspirators (No Scienter Needed)

Cal. Rul. Prof. Conduct 1.7(d)(3) ………………………………………*passim*

    Disqualified or Not – Opposition Papers Violate Pleaded Laws, Must Be Disregarded/Stricken

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 008
22-CV-01616-BAS-DDL

## I.    INTRODUCTION

This filing is verified by an oppressed litigant with actual knowledge of <u>facts</u>. Thankfully, his Honor is not a fool (nor *controlled* as C11), nor the Fourth District, Division Three ("4DCA") Honorable Justices, nor agents with United States Department of Justice, nor Plaintiff. As Defendants disregard all material facts citing more artificial procedures unfounded under U.S. Constitution to mislead the Court and obstruct justice, the only way this Court could deny Plaintiff's motion is if it were to set aside all of its own findings of indisputable, <u>material</u> facts, while completely disregarding 4DCA *in favor of* (e.g., ratifying) wire and insurance fraud, perjury, securities fraud, judicial deception, obstruction of justice, and Constitutional disregard by Defendants who freely violate substantive provisions of California Control of Profits of Organized Crime Act and RICO while claiming it is *their* rights being abrogated. This is preposterous, an affront to the United States and democracy itself, and fails again to see the forest for the trees. (Beck Declaration in Support of Reply to Opposition of ROA #729, #733). ("Reply Decl.")

Indeed, the *only* material fact upon which Catanzarite (et al.) seem to agree is that each should be disbarred for violating Cal. Bus. & Prof. Cod. § 6104 (shown **13,858 times**)[1], perhaps seeking a way out. State of California is liable for carrying on this racketeering, for Catanzarite and at least 700 others identified in Report 2022-030 by California State Auditor (enterprise patterns). Plaintiff has vested rights to sue the government including State of California, The State Bar of California, Orange County Superior Court, and those persons associated who apparently don't have time for their duties, here.

Building on Catanzarite's <u>only</u> valid point, this action would not exist but for The State Bar of California's deliberate disregard for public interest, ongoing enablement, and carrying on of <u>enterprise schemes to defraud</u>. Served repeatedly in this action [ROA #785-795], government actors refuse to appear in CX105 yet *control* C11 – apparently believing Catanzarite perfectly capable of doing what it does best: defrauding everyone, including his Honor, *without regard for truth*. Non-lawyer Defendants would not face this lawsuit, nor would the government face unprecedented damages, but for the carrying on of criminal conduct by active market participants purporting to regulate their peers. *The jig is up*.

---

[1] Reference is made to a "Richard Carlson," who was visited <u>at his home</u> by Mr. Catanzarite when he *wasn't seeking an attorney*, nor did he believe he suffered damages before at least 9 putative class actions for 13,858 investors were filed on his behalf in multiple jurisdictions with intent to defraud. Now, the SEC has expended resources there, too. See also "Corzo" and "Pinkerton." His Honor has been encumbered by the "Daymark Matter" for years, too also lacking standing or cause.

1

Exhibit #121: 009
22-CV-01616-BAS-DDL

## II.     LEGAL ARGUMENT

### A. This Court Has Duty and Power to Control Every Matter Pertaining to this Proceeding

1. CC P§ 128 Enables the Court to Grant Summary Judgment, Appropriately, and Enjoin

"(a) Every court shall have the power to do all of the following...(5) To control in furtherance of justice, the conduct of [Defendants], and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Cal. Code Civ. Proc. § 128. This Court's *duty* lies under the 14th Amendment's Equal Protection clause, and 42 U.S.C. § 1983. Put simply, the Court can't protect organized crime citing civil procedure and ignore the Fourth District, Division Three or the overwhelming facts which surpass the record upon which Plaintiff relied in G059766. (Reply Decl.)

2. Unlawful Takeover of MFS 1/23/19, Extortion to Produce "Evidence" Not Admissible

Despite filing a fraudulent derivative action lacking standing for non-shareholder Root, Defendants want the Court to disregard its own 709 trial and the Court of Appeal Justices findings of law on the frivolous basis that the facts don't exist and that 4D C A's findings of law are wrong. Plaintiff concedes that Catanzarite is excellent at judicial fraud and creating piles of false evidence to mislead *every* Court. But overwhelming evidence supporting Plaintiff's elements/causes, damages, and the fraudulent nature of Defendants' ongoing scheme to take money and property is shown to the Court. His *prima facie* case for malicious prosecution of three lawsuits was not defeated, and his case lies in a preponderance when his evidence is credited, and he cannot be prejudiced under the United States Constitution (at least) just because he doesn't produce perfect exhibit "compendiums" that ignore every material issue of fact and law willfully in ongoing fraud on the Court, in ongoing obstruction of justice.

3. Motion Relies on Plaintiff's **Verification** of Opinions; CX105 Trial Transcript 5/1/19

Plaintiff reviewed the code and expected these frivolous games, and therefore his case relies upon *verification* of the 709 Hearing and his *verification* of the Court of Appeal's findings in G059766. So if the Court is ignoring those findings as if it were reasonable, there is **no person** that knows the facts of these cases better than Plaintiff – the primary victim of these crimes who will not be sucked into re-litigation where Defendants have already shown to engage in serial perjury, fraud, obstruction, unanswered. Relevant to the Court's requirement to review material issues of facts and law vs. respond to minutia, *opposition papers* violate CRPC 1.7(d)(3), Cal. Penal Code §§ 132, 134, thus rendered moot.

2

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

**B. This is Claims Act Litigation and State Bar's Enabled Lawyers are Harming *Everyone***

1. State/State Bar Actors Served Eight Times in this Case Despite Failing to Appear

Plaintiff noticed this Court of the proceeding in OCSC Case No. 30-2021-01237499 during a status conference, where state actors are shown to control Judge John C. Gastelum/C11 but not his Honor/CX105, hence they have not appeared in this Court where Catanzarite seeks to defraud, conceal.

2. Except as Provided by Statute, the Government is Immune from Tort Claims

Were Plaintiff to cite a fact without reference of law or an "expert" such as he cited in ROA #729, Catanzarite would say that an expert was needed that he would bribe or extort to commit perjury. Where Plaintiff cites the Court of Appeal's findings, Catanzarite refers to immaterial minutia to defraud.

ROA #742 adds violations of mandatory duty subject of Cal. Gov. Cod. § 815.6, where BPC § 6104 is not argued as to Catanzarite, rather, as to The State Bar of California and State of California being dutifully bound to stop BPC § 6104 violations by Catanzarite actors who are *causing state liability* in this Court, now, *every day*. If the Court of Appeal found other claims against Catanzarite actors incapable of prevailing as a matter of law (e.g., 1.7(d)(3) as being UC Lviolations causing damages, requiring injunctions, restitution), **4DCA would have stricken those to serve the ends of justice, too**.

3. No Immunity is Available to State/State Bar/State Bar Actors After 2015

"Limits on state-action immunity are most essential when [California] seeks to delegate its regulatory power to active market participants [at The State Bar of California], for established ethical standards may blend with private anticompetitive motives [unjustly favoring serial racketeers] in a way difficult even for market participants [and Courts] to discern...active market participants cannot be allowed to regulate their own markets free from [liability here]." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 505 (2015). ("The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of [Catanzarite Law Corporation actors and each of them, to the detriment of non-lawyers]")" [2] *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 505 (2015)

---

[2] "State agencies are not simply by their governmental character sovereign actors for purposes of state-action immunity. See *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)" *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 505 (2015). See 15 U.S.C. § 1 and 18 U.S.C. § 1962(a)-(d) ("RICO").

3

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 011
22-CV-01616-BAS-DDL

**C. California Supreme Court's Own Definition of Fraud Governs All Conduct at Issue**

Naïve, *in pro per* Plaintiff had no idea before September 14, 2018, that lawyers were *allowed* carte blanche to commit serial fraud in California until he and other innocent people experienced it under color of Business & Professions Code and California Code of Civil Procedure, here. 42 U.S.C. § 1983.

Importantly, Cal. Bus. & Prof. Cod. § 6077 is "binding upon all licensees of the State Bar." So, *until* Catanzarite and each of its unscrupulous marauders including Jim Travis Tice are disbarred, each is bound, and have been bound for all times relevant, to California Rules of Professional Conduct 1.7(d)(3) (disqualified or not) and "Terminology" Rule 1.0.1 (November 1, 2018) which holds:

> "(d) "Fraud" or "fraudulent" means conduct that is fraudulent under the law of the applicable jurisdiction and has the purpose to deceive." *Further*, footnote "[3] [w]hen the terms "fraud" or "fraudulent" are used in these rules [and under the law of the Cal. Pen. Code § 186.2 governing "criminal profiteering activity" or "an act committed or attempted or a threat made for financial gain or advantage" such as the opposition papers, or 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1962(a)-(d) (RICO), or disregard of 42 U.S.C. § 1983 (Civil Rights)], it is not necessary that anyone has suffered damage or relied on the misrepresentation or failure to inform because requiring the proof of those elements of fraud* would impede the purpose of certain rules to prevent fraud* or avoid a lawyer assisting in the perpetration of a fraud[]."

**D. Defendants Engage in Criminal Profiteering Activity Under Color of "Client" Advocacy**

Through their "counsel," Defendants frivolously assert Plaintiff, his Honor, and 4D C Amust conform to civil procedures and rules without regard of Defendants' ongoing felony code violations, e.g., Cal. Pen. Cod. § § 132, 134 or U.S. Constitution[3]. Avoiding all material law and facts, *civil procedures cited by these criminals assumes that the attorneys are not engaged in organized crime or fraud in the first instance.* Every filing for discovery on and after September 14, 2018, constitutes felonious theft of personally identifying information to further these *schemes.* This is a *public offense.*

The following are state equivalent to 18 U.S.C. § 1961(1) and the predicate, parallel, and ongoing patterns of racketeering activity under 18 U.S.C. § 1961(5), Racketeer Influenced Corrupt Organizations Act 18 U.S.C. § 1962(a)-(d) (RICO) in *Justin S. Beck v. Catanzarite Law Corporation et al.* (3:22-CV-

---

[3] Defendant Suzanne Grandt, in OCSC's Department C11 controlled by The State Bar of California and subject of 18 U.S.C. § 1962(b) claims, *declared the United States Constitution to be "irrelevant" in California.* Defendant Grandt was served repeatedly in this action but was caught red-handed colluding with Mr. Catanzarite et al. as she manipulated Judge John C. Gastelum concurrently oppressing Plaintiff before intimidating him by threatening letters to conceal the fraudulent scheme.

---

4

Exhibit #121: 012
22-CV-01616-BAS-DDL

01616-BAS-D D L also filed on behalf of the United States interests derivatively under 15 U.S.C. § 1 and *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015) against nominal defendant United States Attorney General (where the United States must act neutral, just as California must but does not, as a sovereignty[4] and Federal Trade Commission is bound to stop anticompetitive acts of The State Bar of California, continuing with impunity via enterprise control. 18 U.S.C. § 1962(b).

Plainly, the Court can't and won't just look the other way because Defendants want conformance to civil procedures: they are engaged in *organized crime, here*, in this Court, for which they have no answer other than more forgery, perjury, obstruction of justice, preparing and offering false evidence, and ongoing defrauding of litigants' lives, liberty, property. If the Court were to accept the frivolous opposition, it would engage in actual conspiracy or ratification of these fraudulent schemes. **His Honor has been deceived for too long, where scrutiny now extends beyond these walls, appropriately.**

Criminal Profiteering under Cal. Penal Code § 186 – "California Control of Profits of Organized Crime Act" includes the following statutes violated by Defendants here as a matter of **daily practice before this Court. Each Defendant is a profiteer under State law, and racketeer under federal law.**

Criminal Profiteering under Cal. Pen. Code § 186.2 – **"Organized Crime"** definition (d) "Organized crime" means crime that is of a conspiratorial nature and that is either of an organized nature and seeks to supply illegal…services such as…that, through planning and coordination of individual efforts, seeks to conduct the illegal activities of…insurance fraud…securities fraud, insurance fraud in violation of the provisions listed in paragraph (34) of subdivision (a), grand theft, money laundering, forgery, or systematically encumbering the assets of a business for the purpose of defrauding creditors [including FinCanna, and all of Plaintiff's personally]. "Organized crime" also means false or fraudulent activities, schemes, or artifices…and the theft of personal identifying information, as defined in Section 530.5."

Criminal Profiteering Cal. Penal Code § 186(a)(6) – **"Extortion"** under Cal. Pen. Code § 518 holds "(a) Extortion is the obtaining of property or other consideration from [COOPER, HIGGERSON, SCUDDER, AROHA HOLDINGS, INC. commencing January 4, 2019[5]], with his or her consent [each

---

[4] "The United States Attorney [on behalf of United States Attorney General, assigned in 3:22-CV-01616-BAS-DDL with racketeering investigation demand under 18 U.S.C. §§ 1968] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88 (1935) The U.S. is demanded to protect its citizens, here.

[5] Under the threat of fraudulent derivative action claims by a non-shareholder Roger Root, first Scudder and Aroha Holdings are dismissed January 4, 2019, where compromise of a derivative action requires court approval, then MFS is taken over by "counsel" in continuance of their fraudulent scheme, under color of official right, and full authority of State Bar actors in conspiracy as being a "pending civil matter." Non-lawyer defendants are forced to engage in serial wire fraud and manufacturing of evidence for Catanzarite/State Bar actors thereafter, continuing in this Court and in opposition to the instant motion.

5

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 013
22-CV-01616-BAS-DDL

agreed to "renounce their CTI shares in favor of MFS" under a defined threat and color of official right], or the obtaining of an official act of a public officer [god only knows what Catanzarite actors gave defendants MORGENSTERN, GRANDT, and California Supreme Court Executive Officer Jorge Navarette[6] – but hopefully the United States ascertains it within racketeering investigation under 18 U.S.C. § 1968 pending], induced by a wrongful use of force or fear [a threat of securities fraud charges by a non-shareholder of MFS in a fraudulent derivative action, starting September 14, 2018, lacking standing or probable cause], or under color of official right [where Defendants' "counsel" is shown to flit in and out of inanimate corporate entities to accomplish their own corrupt motives and goals unrelated to the merits]. (b) For purposes of this chapter, "consideration" means anything of value[]."

Criminal Profiteering Cal. Pen. Code. § 186.2 "**Forgery**" under Cal Pen. Cod. 470 holds "(a) Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to any of the items listed in subdivision (d) is guilty of forgery. (b) Every person who, with the intent to defraud, counterfeits or forges the seal or handwriting of another is guilty of forgery. (c) Every person who, with the intent to defraud, alters, corrupts, or falsifies any record of any…instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, **is guilty of forgery.** (d) Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any[]…**request for the payment of money**…or other contract for money or other property, contract, due bill for payment of money or property, receipt for money or property[]…power of attorney…[]…or any certificate of any share, right, or interest in the stock of any corporation or association, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquittance, release or discharge of any debt, **account, suit, action, demand, or any other thing, real or personal**, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, **or any letter of attorney**, or other power to receive money, or to receive or transfer certificates of shares of stock[], or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, []or any matter described in subdivision (b)." Here the forgery all has the purpose of paying lawyers engaged in felonies. The declaration of CTI shareholder Carlos Calixto in May 2019 shown is but one example of forgery.

Criminal Profiteering Cal. Penal Code § 186(a)(13) – "**Receiving Stolen Property**" under Cal. Pen. Code § 496 holds "(a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170." Using the threat and color of official right to charge Defendants RICHARD FRANCIS O'CONNOR, JR. and AMY JEANETTE COOPER, Catanzarite took their CTI stock "renounced in favor of MFS". The State Bar of California accepts proceeds from IOLTAs of all its attorneys, including Catanzarite Law Corporation's, then invests them back to other active market participants. 18 U.S.C. § 1962(a).

---

[6] With intent to defraud and under color of law and artificial procedures, despite the harm to Plaintiff known to him, Jorge Navarette of CSC did accept accusations filed and referenced as "ROA #49" [Reply Decl.], and with intent to defraud, did use the mail facility and deliver postal communications to aid Catanzarite in these schemes, consistent with the patterns.

6

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

1  Criminal Profiteering Cal. Penal Code § 186(a)(18) – **"Securities Fraud"** Violation of the Laws
2  Governing Corp. Securities § 25541 holds "(a) Any person who willfully employs, directly or indirectly,
   any device, scheme, or artifice to defraud in connection with the offer, purchase, or sale of any security
3  or willfully engages, directly or indirectly, in any act, practice, or course of business which operates or
   would operate as a fraud or deceit upon any person in connection with the offer, purchase, or sale of any
4  security shall upon conviction be fined not more than ten million dollars ($10,000,000), or imprisoned
5  pursuant to subdivision (h) of Section 1170 of the Penal Code for two, three, or five years, or be punished
   by both that fine and imprisonment." Kenneth Catanzarite is a *registered investment advisor*, and
6  Catanzarite Law Corporation is a control person or affiliate of "Aegis Asset Management, Inc." (See
   3:22-CV-01616-BAS-DDL). So, we have an RIA in this Court committing securities fraud, pointing
7  fingers at Plaintiff and others, which could not happen but for control of a RICO enterprise and
8  anticompetitive acts in conspiracy with The State Bar of California's actors, and each of them shown.

9  Cal. Penal Code § 132 – **"Offering False Evidence"** holds "Every person who upon any trial,
10 proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as
   genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to
11 have been forged or fraudulently altered or ante-dated, is guilty of **felony**." The opposition is felonious.

12
   Cal. Penal Code § 134 – **"Preparing of False Evidence"** holds "Preparing of false or ante-dated
13 evidence (Obstruction of Justice). Every person guilty of preparing any false or ante-dated book, paper,
14 record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced
   for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry
15 whatever, authorized by law, is guilty of **felony**." The opposition is felonious.

16 Criminal Profiteering Cal. Penal Code § § 186.20(31) – "**Theft of Personally Identifying Information**"
   Theft of personally identifying information under Cal. Pen. Code § 530.5 under Cal. Pen. Code § 530.5
17 holds  "(a) Every person who willfully obtains personal identifying information, as defined in
18 subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose,
   including to obtain, or attempt to obtain,[]... services, real property...without the consent of that person,
19 is guilty of a public offense." The motions to compel seek to steal more personally identifiable
20 information in furtherance of these fraudulent schemes, which already stole information on CTI
   shareholders without standing or probable cause. Defendants' invasions of privacy are a public offense.

21 Cal. Pen. Code § 530.5 **"Public Offense Theft of Personally Identifying Information"** holds
22 "(3) Every person who, with the intent to defraud, acquires or retains possession of the personal
   identifying information, as defined in subdivision (b) of Section 530.55, **of 10 or more other persons**
23 **is guilty of a public offense**, and upon conviction therefor, shall be punished by a fine, by imprisonment
   in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant
24 to subdivision (h) of Section 1170." The MFS Cross Action in the instant case, and Mesa Action now
25 before 4DCA to strike due to its fraudulent nature, reflect defendant lists of more than ten persons who
   would not *exist but for the theft of their information under color of official right by Catanzarite et al.*
26
   Criminal Profiteering Cal. Pen. Code § 186.2 **"Profiteering Conspiracy"** holds "Conspiracy to commit
27 any of the crimes listed above, as defined in Section 182." SUZANNE GRANDT, ELI DAVID
   MORGENSTERN, RUBEN DURAN, Robert Retana, Ellin Davtyan, and Jorge Navarette are engaged
28 in this, here, and their wonton disregard of all parties and this Court's proceedings is evidence thereof.

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

**E. The Court Cannot Even Consider the "Opposition" Files Much Less Ratify this Scheme**

Whether or not KENNETH CATANZARITE, ESQ., NICOLE MARIE CATANZARITE WOODWARD, ESQ., TIM JAMES O'KEEFE, ESQ., BRANDON WOODWARD, ESQ., JIM TRAVIS TICE, ESQ., aided by SUZANNE GRANDT, RUBEN DURAN, ELI DAVID MORGENSTERN are disqualified or not and when it happened – their lawyer conduct is fraudulent. Opposition papers disregard willfully all findings of fact and law by this Court from the 709 Hearing, and from a series of Court of Appeal rulings that are *binding* here under Cal. Rules of Court 8.1115(b).

""'Normally, an attorney's conflict is imputed to the law firm as a whole on the rationale 'that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.'" [Citation.]" (*Beachcomber Management Crystal Cove, LLC, v. Superior Court* (2017) 13 Cal.App.5th 1105, 1116 (*Beachcomber Management*). Accordingly, the disqualification ruling made as to Catanzarite is binding on the associates of that firm [including **Tice**]."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 17 n.7 (Cal. Ct. App. Jun. 28, 2021)

"There are different disqualification standards for attorneys who have conflicts with former clients and those who have conflicts with current clients. As to…former clients, courts look to whether there is a 'substantial relationship' between the subjects of the current and the earlier proceedings. [Citations.] [¶] In contrast, there is a more stringent standard when an attorney simultaneously represents two current clients with conflicting interests. Disqualification... is *mandatory* in such circumstances even though the simultaneous matters may have nothing in common. (*Flatt, supra,* 9 Cal.4th at p. 284.) "'Something seems radically out of place if a lawyer sues one of the lawyer's own present clients on behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's sense of loyalty is askew.'" [Citation.]" (*Banning Ranch, supra,* 193 Cal.App.4th at pp. 911-912; see Rules Prof. Conduct rule 1.7(a) & (b) [attorney may not without informed written consent "represent a client if the representation is directly adverse to another client in the same or a separate matter" or "there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client"].)

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 17-18 (Cal. Ct. App. Jun. 28, 2021)

"In summary, courts recognize the "chief fiduciary value jeopardized" in cases involving successive representation is client confidentiality. (*M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 613.) Whereas in concurrent "representation of multiple clients resulting in a conflict of interest" the "'primary value at stake'" is the attorney's duty and "the client's legitimate expectation" of loyalty, not confidentiality." Catanzarite extorted information on CTI, then represented CTI, now represents MFS.

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 18 (Cal. Ct. App. Jun. 28, 2021)

"It is noteworthy that CTI's directors who were members of the Probst Faction hired Winget to defend CTI in the three shareholder derivative actions (the [fraudulent] Pinkerton, MFS, and Mesa Actions). Catanzarite does not suggest these directors lacked authority to retain Winget as CTI's corporate counsel in these lawsuits."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 22 n.10 (Cal. Ct. App. Jun. 28, 2021)

8

Exhibit #121: 016
22-CV-01616-BAS-DDL

1    "Catanzarite suggests its legal maneuverings, undertaken on behalf of the [extorted] O'Connor Faction,
2    actually benefitted the corporation [it destroyed]….Catanzarite maintains the Mesa Action plaintiffs'
     receivership motion would prevent corporate waste. This and similar contentions CTI benefitted from
3    Catanzarite's legal tactics are disingenuous. **This is not a case where Catanzarite [nor The State Bar
     of California or State] was comprised of neutral lawyers, hired by a cohesive board of directors.**"
4
          *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 24 (Cal. Ct. App. Jun. 28, 2021)
5    "[O]nce a conflict has arisen between a corporation and one or more of its officers, directors or
6    shareholders, corporate counsel may not simultaneously represent the corporation and the adverse
     officer, director or shareholder." (*Id.* at p. 785; see Rules Prof. Conduct rule 1.7.)"
7
          *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 25 (Cal. Ct. App. Jun. 28, 2021)
8    "We found other evidence of Catanzarite's conflicting loyalties after comparing the complaints
     Catanzarite prepared for the Mesa Action (a derivative lawsuit) with the one used for CTI in the
9    FinCanna Action"
10        *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 25 (Cal. Ct. App. Jun. 28, 2021)
11   ""[A] shareholder may only bring a derivative suit on behalf of the corporation if the corporation has
     refused to pursue the claim. In bringing the derivative action, the shareholder's attorney is
12   acting *against* the corporation's wishes."
13        *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 25-26 (Cal. Ct. App. Jun. 28, 2021)
14   "Catanzarite suggests we can ignore any conflicts arising from the concurrent representation of members
     of the O'Connor Faction and CTI because Pinkerton, Cooper, Mebane, Mesa, CTI and MFS waived any
15   conflicts…[but] Catanzarite obtained these waivers in December 2019, after the trial court's November
     hearing/ruling disqualifying Catanzarite from representing CTI.…**Catanzarite does not explain why
16   these waivers would be relevant to a *mandatory* disqualification for ongoing concurrent
     representation of clients with conflicting interests.**" Catanzarite is subject to mandatory
17   disqualification of representing all Defendants, here. State Bar's lawyers are defrauding *everyone.*
18        *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 26 (Cal. Ct. App. Jun. 28, 2021)
19   "Once again, Catanzarite ignores the problem with its dual representation in this case and that the
     **O'Connor Faction cannot waive the conflict on behalf of the inanimate corporate entity**, CTI [nor
20   MFS, nor Duran for The State Bar of California through GRANDT]. "[]multiple representation may be
21   permissible if both clients are fully informed of potential conflict and the parties consent to the
     representation.…peculiarly inapplicable to a derivative suit (Pinkerton, MFS, then Mesa Actions),
22   because the corporation must consent through the directors, who, as in the present case, are the individual
     defendants. [Citations.]" (*Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 76-77 (*Forrest*).) The directors
23   and the corporation cannot act independently of each other. (*Id.* at p. 76.)"
24        *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 27 (Cal. Ct. App. Jun. 28, 2021)
25   '[A]n inanimate corporate entity, which is run by directors who are themselves defendants in the
     [fraudulent] derivative litigation, cannot effectively waive a conflict of interest as might an individual
26   []' it would be meaningless in [MFS, CTI] derivative litigation to allow the consent of the parties
     defendant to exculpate the practice of dual representation, for most often it would be the defendant
27   directors and officers who would force the corporation's consent.' (Comment, Independent
28   Representation for Corporate Defendants in Derivative Suits (1965) 74 Yale L.J. 524, 528.)" (*Forrest,
     supra,* 58 Cal.App.4th at p. 77, capitalization and italics omitted.)"

----
                                              9
REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

                                    Exhibit #121: 017
                                    22-CV-01616-BAS-DDL

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 27 (Cal. Ct. App. Jun. 28, 2021)

"Catanzarite maintains the trial court abused its discretion in disqualifying it as counsel for the Mesa Action plaintiffs [and yet, Catanzarite attended mediation on their behalf in outright defiance of this Court and the 4DCA Justices, not to mention state and federal criminal statutes]. We note the Mesa Action plaintiffs did not file an appeal [only the fraudster "counsel" Defendants did, unsurprisingly, since all of the "clients" are being defrauded and misled to believe that Plaintiff is the wrongdoer here]. We do not know if these shareholders agreed with the court's ruling and have retained new counsel [indeed, each have *no idea* what is being done on their behalf **in furtherance of these schemes to defraud** ]...we conclude the court's ruling was correct...the same principles preventing Catanzarite from representing CTI in the FinCanna Action prevented it from representing "plaintiffs in the derivative action *on behalf of* CTI, meaning that its representation is for the benefit of CTI." (Italics added.) As discussed earlier in this opinion, the derivative action was filed *against* CTI's wishes. (*Shen, supra,* 212 Cal.App.4th at pp. 57-58.) The derivative action's "on behalf of" language signifies only a mere possibility the corporation may benefit from the litigation's outcome and should not be confused with which party holds an expectation of loyalty from Catanzarite. Thus, we disagree with the notion Catanzarite was representing CTI in the Mesa Action. Nevertheless, disqualification was appropriate."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 28-29 (Cal. Ct. App. Jun. 28, 2021)

"[W]e reject Catanzarite's argument the court abused its discretion by failing to determine whether the Probst Faction or the O'Connor Faction controlled CTI and had authority to retain counsel. Disqualification in the Mesa Action was appropriate under either scenario. If the O'Connor Faction gained control of CTI and hired Catanzarite, the firm still could not concurrently represent derivative shareholders at the same time it was representing a corporation experiencing conflict between those same derivative shareholders and others. Prosecuting the derivative action also clearly conflicts with a corporate counsel's duty to remain neutral in the derivative action. (*Shen, supra,* 212 Cal.App.4th at pp. 57-58.)"

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 29 (Cal. Ct. App. Jun. 28, 2021)

**"Catanzarite tainted all litigation involving CTI [and destroyed the company and all $261 million in value for shareholders it purports to advocate for] after purporting to represent the corporation and at the same time prosecuting a derivative shareholder action against CTI."**

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 29 (Cal. Ct. App. Jun. 28, 2021)

"Earlier this year we considered three consolidated appeals concerning Cultivation Technologies, Inc.'s (CTI) motion to disqualify the Catanzarite Law Corporation (Catanzarite), in two related cases. (*Fincanna v. Cultivation Technologies, Inc.* (June 28, 2021, G058700) [nonpub. opn.] (*Fincanna*).) We affirmed the trial court's determination **Catanzarite could not represent the following parties**: (1) CTI; (2) three CTI subsidiaries; and (3) a group of CTI shareholders bringing a derivative lawsuit (**which included James Duffy and Amy Cooper**). (*Ibid.*)" That it continues to do so doesn't make it legal.

*Cultivation Techs. v. Duffy*, No. G059457, 1 (Cal. Ct. App. Nov. 12, 2021)

"[Catanzarite] recognized this merger would [interfere with their fraudulent scheme]... took action to stop [it]...send[ing] Western Troy an e-mail [by wire] on the same day the company publicly announced the merger...falsely stated CTI's board had been replaced and the new directors disputed and objected to the merger...asserted CTI's management had not agreed to the merger described on Western Troy's Web site, especially since it was a "valueless" company. [As direct and proximate cause], Western Troy withdrew from the merger deal. [Catanzarite] sent this e-mail "with the express design and intent to

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 018
22-CV-01616-BAS-DDL

1   injure CTI [shareholders including Plaintiff] through killing the Western Troy merger." "[With intent to
2   defraud securities investors and creditors] Catanzarite, sent CTI's largest secured creditor [Fincanna], an
    e-mail stating future modifications or agreements between them must be signed by the new board
3   members (**O'Connor, Zakhireh, and the chief financial officer and secretary, Duffy**)…During the
4   same month (January 2019), Catanzarite filed a lawsuit for MFS [] seeking cancellation of CTI's shares
    (the MFS Action). MFS asserted…MFS owned CTI [which all knew and know to be false]. MFS alleged
5   the elected board refused to acknowledge the MFS shareholder's written consent removing and replacing
    them. In April 2019, the court ruled against the MFS shareholders, concluding MFS was not one of
6   CTI's shareholders and could not vote in CTI's elections.[failing, Defendants] attempted to acquire
7   control of CTI by once again executing fraudulent "written consents" removing CTI's elected board and
    replacing them with Cooper, Duffy, and O'Connor. This time the Faction attempted to oust the Probst
8   Faction via proxy votes…the May 14, 2019, written consent was "based on fraud, deceit, and trickery"
    [and] used "at least one forged proxy vote in the name of CTI shareholder Carlos Calixto in order to
9   bolster the votes they needed" to secure a majority…[]CTI alleged that Duffy, to effectuate the written
10  consent, "with actual knowledge or reckless indifference for the truth, voted 2,720,000 shares which he
    did not own and were not registered in his name . . ." 2,400,000 of those shares owned by Hintzen. "On
11  May 23, 2019, a few days after this purported board takeover, Fincanna foreclosed upon CTI's assets
    [as direct and proximate cause of the fraudulent lawyer schemes]…It filed a lawsuit against CTI. At the
12  end of August 2019, Western Troy issued a press release stating that merger plans were terminated in
13  July 2019…CTI's elected board became involved in confidential negotiations to settle Fincanna's lawsuit
    and resume their business dealings. These efforts were thwarted when Catanzarite filed a cross-
14  complaint against Fincanna and filed an answer '"on behalf of CTI, though he had no authority to do so
    from CTI." At the time Catanzarite was representing multiple parties who were suing CTI." "Indeed,
15  Catanzarite [fraud against] CTI, creating a sense of instability…sought a forced election and
    investigation into CTI's accounts (the Cooper Action) [even though CTI had already retained an auditor].
16  In addition to the MFS Action, Catanzarite filed the Mesa Action, another derivative/class action lawsuit
17  designed to stop the Probst Faction from controlling CTI [continued by Tice]. Catanzarite also filed a[]
    an action purporting to represent CTI against CTI's insurance company (the Scottsdale Action). The
18  purpose of this litigation was to **stop the insurance company from providing a defense or indemnity**
19  to [Plaintiff who is a] defendant[] in the [fraudulent] Mesa Action. In total, Catanzarite filed six lawsuits
    involving the [fraudulently schemed] shareholder dispute [lacking standing or probable cause, subject
20  to issue preclusion from G059766, and not subject to any *reasonable* debate or opposition here]." "In
21  October 2019, while Catanzarite was counsel of record for CTI in the Fincanna and Scottsdale actions,
    it filed a motion on behalf of the Mesa Action plaintiffs for the court to appoint a receiver over CTI [in
22  furtherance of the schemes to defraud].[] Soon thereafter, Catanzarite dismissed the Scottsdale Action
    but asserted it still represented CTI's subsidiaries." [Catanzarite does not care about the truth because it
23  is *unlawfully protected* by The State Bar of California for all times relevant.] "CTI filed the underlying
24  complaint against the Faction before the trial court ruled on its disqualification motions. CTI alleged,
    "[Catanzarite] actions of publishing two wholly improper [w]ritten [c]onsents, one of which included a
25  forged proxy and a representation that [Duffy] voted 2,720, 000 shares which in reality were not owned
    by him, have damaged CTI [shareholders] by causing the merger with Western Troy to fall through, and
26  causing CTI's largest creditor to foreclose on CTI's assets in ongoing litigation which CTI has not been
    able to settle due to the unauthorized [c]ross-[c]omplaint filed by [Catanzarite]." In addition, the
27  complaint alleged CTI had been damaged by Catanzarite's "manifestly unethical adverse actions taken
28  against CTI while CTI was his own client of record in pending litigation."

*Cultivation Techs. v. Duffy*, No. G059457, 3-5 (Cal. Ct. App. Nov. 12, 2021)

11

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

1    "We conclude the **published written consents do not relate to protected activity**." They are *fraud.*

2    *Cultivation Techs. v. Duffy*, No. G059457, 13-14 (Cal. Ct. App. Nov. 12, 2021)

3    "Catanzarite [wrote] Western Troy [by wire, with intent to defraud and conceal its lack of standing in
     the Pinkerton Action], warning the company it must speak with MFS's chief executive operating officer

4    because there was currently litigation about whether MFS was CTI's sole shareholder. Catanzarite
     attached a copy of the MFS complaint to the e-mail. Catanzarite stated MFS disagreed with the merger

5    and "we dispute and object to any agreement purportedly by and between Western Troy and CTI." (Bold
     and underline omitted.) Catanzarite demanded Western Troy withdraw its public notice about the merger

6    and negotiate with MFS. Finally, Catanzarite insulted Western Troy. It started the e-mail by commenting

7    it was unexpected the company did not have a receptionist to answer calls. Catanzarite noted Western
     Troy "appear[ed] to have no assets or operations of any value" and saw "no justification for Western

8    Troy shareholders with a valueless company" to be entitled to CTI's shares via the merger. Catanzarite

9    cut and pasted entries from Western Troy's Web site and called them "disturbing."

10   *Cultivation Techs. v. Duffy*, No. G059457, 15 (Cal. Ct. App. Nov. 12, 2021)

11   "[The] e-mail contained harmful statements of facts unrelated to the MFS Action....harshly questioned
     whether Western Troy was a legitimate company, calling it "valueless." The elements of the interference

12   with economic and contractual relations simply requires knowledge of the relationship/contract and
     intentional/negligent acts to disrupt the relationship causing damages. (See *Korea Supply Co. v.*

13   *Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 [intentional interference with prospective
     economic relations]; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118,

14   1126 [interference with contractual relations].)" The point: Catanzarite knew it was destroying the
     merger causing $261 million in fair market value, and had actual knowledge of that value on 2/5/19.

15   *Cultivation Techs. v. Duffy*, No. G059457, 16 (Cal. Ct. App. Nov. 12, 2021)

16   "Arguably, if the insulting portion of the e-mail was sent, without any information about the MFS

17   lawsuit, it could have had the desired effect of interfering with the merger plans....Thus, Catanzarite's
     disparaging comments may have been in connection with the lawsuit but were not relevant to an issue

18   being reviewed in the MFS Action and therefore not protected activity."

19   *Cultivation Techs. v. Duffy*, No. G059457, 16-17 (Cal. Ct. App. Nov. 12, 2021)

20   At first glance, Catanzarite's [wire communication] to Fincanna simply looks like a notification about

21   CTI's newly installed board of directors. The [wire communication] explains the new board was
     interested in working with Fincanna [while actively destroying CTI]. However, later in the e-mail

22   Catanzarite reveals MFS was litigating its right to control CTI as the sole shareholder and it attached a
     copy of the complaint to the e-mail. The remaining and largest section of the e-mail is devoted to

23   discussing statements written by Justin Beck on behalf of CTI. Catanzarite discusses Beck's suspension
     by the SEC [which investigated 25,000 pages of securities documents due to O'CONNOR and

24   ZAKHIREH's malice from July 2017 and January 2018, and found Beck's conduct did not violate his

25   prior, mutually agreed with SEC, expired injunction terms] and opines Beck's recommendations are
     suspect. While many of the statements in the e-mail are jumbled and difficult to understand, the

26   concluding paragraphs stated the purpose of the e-mail was to inform Fincanna there "is a dispute as to

27   who speaks for CTI that we seek to resolve on an expedited basis." They added, "It is our position that
     any modifications or agreements between CTI and Fincanna at this point must be signed by" the newly

28   installed officers (Zakhireh, O'Connor, and Duffy)." Defendants knew their statements to be **fraudulent.**

     *Cultivation Techs. v. Duffy*, No. G059457, 17-18 (Cal. Ct. App. Nov. 12, 2021)

     REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

     Exhibit #121: 020
     22-CV-01616-BAS-DDL

1     "In July 2011, Catanzarite substituted into five actions pending in Los Angeles Superior Court,
representing a group of clients that included Ronald Weinstock. Catanzarite alleged it had a written fee
2 agreement with these clients providing that the firm would be paid on contingency. Its compensation
was to include membership interests in Newlife Sciences, LLC, at that point in the (allegedly wrongful)
3 possession of some of the adverse parties. Catanzarite also alleged it had a lien on any recovery in the
four five Weinstock actions." Catanzarite filed an adversary complaint against O'Connor on behalf of Denise
Pinkerton, in furtherance of this New Body scheme, too, to extort him into creating false evidence.
5
    *Catanzarite Law Corporation v. Gordon Reese, LLP*, No. G047968, 2-3 (Cal. Ct. App. Oct. 15, 2013)
6 "Kenneth Catanzarite appeals the denial of relief from a judgment of the bankruptcy court. The district
7 court affirmed the award of sanctions against Catanzarite for violating a preliminary injunction that
barred "the commencement of any further actions under the same or similar facts or circumstances to"
8 lawsuits he had filed against bankruptcy creditors. The district court also ruled that Catanzarite forfeited
his opportunity to object to the amount of sanctions imposed. We affirm."
9
    *Catanzarite v. GCL, LLC*, No. 21-12766, 1 (11th Cir. Mar. 9, 2022)
10
"Catanzarite, an attorney licensed in California and [carried on] to appear *pro hac vice* in the bankruptcy
11 court, filed adversary complaints against the Daymark companies for Richard Carlson" *Catanzarite v.
GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 2 (11th Cir. Mar. 9, 2022) "Catanzarite
12 filed nine putative class action complaints for the Carlson plaintiffs in California and Utah
courts" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 2 (11th Cir. Mar.
13 9, 2022) The bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the
14 Carlson plaintiffs, *see* Fed. R. Civ. P. 65(d)(2)(B), violated the injunction by filing a civil action and lis
pendens for the Looper plaintiffs "based upon TIC ownership interests in the Congress Center," which
15 was the same subject "matter[] explicitly enjoined by the Second Preliminary Injunction Order." And
16 the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing
false and misleading statements about the Daymark bankruptcy." **Carlson wasn't seeking counsel!**
17
    *Catanzarite v. GCL, LLC.*, No. 21-12766, 3-4 (11th Cir. Mar. 9, 2022)
18
"The district court ruled that, "under the plain language of Rule 65(d)(2)(B), [Catanzarite], as the
19 attorney for the enjoined Carlson [plaintiffs], was bound by the Preliminary Injunction" and violated it
by filing an action "based on similar ownership interests and the same or similar facts or
20 circumstances."" **[pattern of racketeering activity]** *Catanzarite v. GCL, LLC (In re Daymark Realty
Advisors, Inc.)*, No. 21-12766, 5 (11th Cir. Mar. 9, 2022) Catanzarite violated the injunction. The
21 injunction expressly prohibited "the commencement of any further actions under same or similar facts
or circumstances to the Subject Lawsuits." Two of the subject lawsuits involved Mikles creditors
22 mishandling investors' tenancy-in-common interests in the Congress Center. In the complaint and lis
23 pendens, Catanzarite repeated many of the facts and legal arguments made in the subject lawsuits.

24     *Catanzarite v. GCL, LLC*, No. 21-12766, 7 (11th Cir. Mar. 9, 2022)
25 "Catanzarite argues that he was denied due process with respect to the award to the Trustee" *Catanzarite
v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 8 (11th Cir. Mar. 9, 2022) "The
26 bankruptcy court ensured that its awards were "calibrated to the damages caused by" Catanzarite's
noncompliance by limiting the award to "cover[ing] the legal bills that the **litigation abuse**
27 occasioned." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017)"

28     *Catanzarite v. GCL, LLC*, No. 21-12766, 9 (11th Cir.  Mar. 9, 2022)

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

Exhibit #121: 021
22-CV-01616-BAS-DDL

**Showing the cherished Catanzarite family tradition in defrauding the non-lawyer public** and obstructing justice as part of its **organized crime** enabled by the State and State Bar, violations under 18 U.S.C. § 1961(5), "**{¶ 1}** We must determine in this case the appropriate sanction for a lawyer who, in attempting to collect legal fees from two prospective clients, sued them for an amount he knew he had not earned and then resorted to intimidation tactics in the ensuing disciplinary proceeding."

*Akron Bar Assn. v. Catanzarite*, 119 Ohio St. 3d 313, 324 (Ohio 2008)

"The trial court sustained the demurrer without leave to amend, finding that the amended complaint was a "**sham**" pleading engineered to avoid the statute of limitations." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*, No. B285691, 2 (Cal. Ct. App. Nov. 29, 2018) "Where the record permits review, **Corzo's arguments lack merit.**" *Corzo v. Bellehumeur*, No. B312676, 1 (Cal. Ct. App. Jul. 15, 2022) And reflected by the docket in this fraudulent scheme, "In short, given the dispute between SWD and its principals, on the one hand, and Corzo, on the other, **Tice** cannot adequately represent the partnership and its general partners. Accordingly, the **motion to disqualify Tice is granted.** Further, because **Tice was without authority to file a notice of appeal on the partnership's behalf**, the notice of appeal filed by Corbell on May 11, 2021 must be, and is, dismissed. (See also Friedman et al.,Cal. Prac. Guide: Corporations (The Rutter Group 2021) ¶ 2:37.3b [entities regarded as "separate" from their owners, including partnerships, may not appear pro se].) Edmon, P.J. / Lavin, J. / Egerton, J. (06/30/2021) "Catanzarite appears to be arguing concurrent representation was possible because after the O'Connor Faction asserted control of the corporation, these shareholders effectively became insiders of the corporation. **This is twisted logic.** A shareholder only needs to file a derivative action, on the company's behalf, when the insiders who control the company refuse to do so. (*Beachcomber Management, supra*,13 Cal.App.5th at p. 1118.) By filing the derivative action, Catanzarite implicitly acknowledged its clients were outsiders with interests adverse to CTI's directors. Having sided with the O'Connor Faction early on, the appearance of impropriety compels disqualification."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 27-28 (Cal. Ct. App. Jun. 28, 2021)

"[]Catanzarite[]…ignores the fact CTI [MFS, and The State Bar of California are not individuals] but rather [] inanimate corporate [entities] having a board of directors [or trustees] with authority to hire corporate counsel. Catanzarite's authority to represent [MFS, then CTI, and now MFS again to re-file claims while disregarding this Court, using The State Bar of California in conspiracy arises] from its relationship with the O'Connor Faction [and at least defendant ELI DAVID MORGENSTERN and Jorge Navarette of California Supreme Court who enable the crimes despite their actual knowledge thereof]."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 22-23 (Cal. Ct. App. Jun. 28, 2021)

"Not surprisingly, we found no cases (and Catanzarite cites none) holding an attorney may simultaneously represent both the corporation and the [defendant] *shareholders* who are accusing the board of directors of wrongdoing. The lack of authority can be explained by the existence of well-settled legal authority holding a derivative plaintiffs' attorney does not ipso facto represent the corporation, but rather "the shareholder's attorney is acting *against* the corporation's wishes." (*Shen v. Miller* (2012) 212 Cal.App.4[th] 48, 57-60, italics added (*Shen*).) In order for a shareholder to have standing to bring a derivative action, counsel must plead the corporation refused to pursue the claim. (*Id.* at pp. 57-58.) For this reason, in a shareholder derivative suit the corporation is included as a nominal defendant because it is in conflict with the outsider shareholder about the advisability of suing. (*Id.* at p. 58.)"

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 20 (Cal. Ct. App. Jun. 28, 2021)

14

REPLY TO OPPOSITION FOR SUMMARY JUDGMENT/ADJUDICATION

"The court ruled as follows: "Catanzarite's simultaneous representation of CTI and interests adverse to CTI compel the firm's disqualification. In *Flatt v. Superior Court* (1994) 9 Cal.4th 275 (*Flatt*), the California Supreme Court held, 'Courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated.' [Citation.] The court added, 'Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or automatic one.' [Citation.] Catanzarite is representing CTI in this case, but in the pending [Mesa Action] Catanzarite is representing one faction of CTI shareholders who have an upcoming motion scheduled seeking to impose a receiver on CTI, relief that would be adverse to CTI. In the pending [Scottsdale Action], Catanzarite represents CTI yet seeks to invalidate a defense and indemnity for CTI directors in the [Mesa Action] under an insurance policy issued on CTI's behalf. A denial of coverage could put CTI on the hook for the individuals' costs of defense and/or liability.""

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 11 (Cal. Ct. App. Jun. 28, 2021)

"Alternatively, the court determined disqualification was warranted because "corporate counsel's professional duties run to the corporation, [and] counsel must refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation." It noted, "Catanzarite represents CTI's common stockholders, who are fighting with CTI's preferred stockholders in several lawsuits for CTI's control." Finally, the court explained that in light of the above rulings, "the court need not and will not reach the issue of whether Catanzarite was authorized to represent CTI in this action based on his shareholder faction allegedly being in control of CTI."

*Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 12 (Cal. Ct. App. Jun. 28, 2021)

**"Catanzarite does not care about the truth in making statements to the Court."**

(Alexandros v. Cole) – Known to The State Bar of California, ratified then carried on.

"Catanzarite did not tell the Court that his client, who was declaring bankruptcy, deeded his home to Catanzarite. **Catanzarite took the property to pay for his fees."**

(In RE Perrine) – Known to The State Bar of California, ratified then carried on.

**"The court stated that Catanzarite's case was a "sham."**

(Edwards v. Noroski) – Known to The State Bar of California, ratified then carried on.

**III. CONCLUSION**          *Kenneth Catanzarite is to Thomas Girardi is to 700 Others.*

For the foregoing reasons, and all those cited in the ignored, material facts and law in ROA #729 and #733, described repeatedly to The State Bar of California in "ROA #49" incorporated here in Reply Decl., this Court must grant Plaintiff's motion for summary judgment and summary adjudication fully. Plaintiff has a clearly established right under U.S. Constitution, and this Court has full power to control its proceedings – now with actual knowledge of these fraudulent schemes. Respectfully, *enough is enough.* December 26, 2022

UNCITED FACTS DECLARED TRUE          Justin S. Beck, Plaintiff, Moving Party, Declarant

UNDER PENALTY OF PERJURY          *Guardian Ad Litem* to Actual CTI Shareholders

15

Exhibit #121: 023
22-CV-01616-BAS-DDL

**PROOF OF SERVICE**

[Proof of E-Service]

I, Justin S. Beck, the plaintiff in this action and party replying to opposition of my motion for summary judgment at ROA #729 and ROA #733, also plaintiff in federal proceedings 3:22-CV-01616-BAS-DDL derivatively on behalf of the United States' interests, served by electronic mail:

**REPLY TO DEFENDANTS KENNETH CATANZARITE, CATANZARITE LAW CORPORATION, BRANDON WOODWARD, TIM JAMES O'KEEFE, AMY JEANETTE COOPER, CLIFF HIGGERSON, MOHAMMED ZAKHIREH, RICHARD FRANCIS O'CONNOR, JR., JAMES DUFFY, TGAP HOLDINGS, LLC, NICOLE M. CATANZARITE WOODWARD AND MOBILE FARMING SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OR BOTH**

**DECLARATION OF JUSTIN S. BECK IN SUPPORT OF REPLY TO OPPOSITION**

**[RJN and Exhibits are Forthcoming Service and Filing At Least 5-Days Prior to Hearing]**

Upon all parties and their counsel, including at the following email addresses in related cases:

tokeefe@catanzarite.com

bwoodward@catanzarite.com

ncatanzarite@catanzarite.com and denise.pinkerton@kw.com in conspiracy

jtt@tice.lawyer , jim.duffy@55@comcast.net and rmesa5671@yahoo.com and tommebane@gmail.com

kcatanzarite@catanzarite.com , bphillips@catanzarite.com and hle@catanzarite.com

ruben.duran@calbar.ca.gov and ruben.duran@bbklaw.com with eric.garner@bbklaw.com

suzanne.grandt@calbar.ca.gov and carissa.andresen@calbar.ca.gov in conspiracy

ellin.davytan@calbar.ca.gov , robert.retana@calbar.ca.gov with joan.randolph@calbar.ca.gov

AGelectronicservice@doj.ca.gov and Michael.redding@doj.ca.gov as being dutifully bound, here

Jorge.navarette@jud.ca.gov and California Supreme Court witness ines.calanoc@jud.ca.gov

Criminal.division@usdoj.gov and California Attorney General Rob Bonta rob.bonta@doj.ca.gov

rfabela@anaheim.net and todd.spitzer@da.ocgov.com RE: Anaheim Police Report 22-197470

Dated December 26, 2022

Oceanside, California

Justin S. Beck, Declarant

16

Exhibit #121: 024
22-CV-01616-BAS-DDL