EXHIBIT 122

EXHIBIT #122: 001
22-CV-01616-BAS-DDL

# BAILEY | CAVALIERI

**DARIUS N. KANDAWALLA**
E dkandawalla@baileycav.com
D 614.229.3255

September 25, 2020

Richard Probst
Cultivation Technologies, Inc.
73818 Dinah Shore Drive
Palm Desert, CA 92211
(rick@cultivationtech.com)

<u>**VIA E-MAIL and**</u>
<u>**REGULAR U.S. MAIL**</u>

Re:   Insurer:        Scottsdale Insurance Company
      Insured:        Cultivation Technologies, Inc.
      Policy No.:     EKS3206247
      Claimant:       Richard Mesa, et al.
      Claim No.:      01852071

Dear Mr. Probst:

  As you may recall, we have been retained by Scottsdale Insurance Company ("Scottsdale") to represent its interests in connection with the above-referenced matter. By letters dated November 27, 2018, February 25, 2019, July 16, 2019, July 26, 2019, and October 10, 2019 (the "Prior Correspondence"), Scottsdale provided you with its analysis of coverage under the above-referenced policy for the following matters: (1) the original and amended complaints filed in an action styled <u>Denise Pinkerton, as the attorney in fact for Roger D. Root, individually and as successor in interest to the claims of his deceased spouse Sharon K. Root, and derivatively on behalf of Mobile Farming Systems, Inc. v. Cultivation Technologies, Inc., et al.</u>, Case No. 30-2018-01018922, Superior Court of California, Orange County (the "Root Lawsuit"); (2) the original and amended complaints filed in an action styled <u>Mobile Farming Systems, Inc., directly and derivatively on behalf of Cultivation Technologies Inc. v. Richard Joseph Probst, et al.</u>, Case No. 30-2019-01046904, Superior Court of California, Orange County (the "MFS Lawsuit"); (3) the original and amended complaints filed in an action styled <u>Richard Mesa, et al. v. Richard Joseph Probst, et al.</u>, Case No. 30-2019-01064247, Superior Court of California, Orange County (the "Mesa Lawsuit"); (4) the original and amended applications for orders filed in an action styled <u>Amy Cooper, et al. v. Cultivation Technologies, Inc.</u>, Case No. 30-2019-01072443, Superior Court of California, Orange County (the "Cooper Lawsuit"); and (5) the cross-complaint filed in an action styled <u>Fincanna Capital Corp. v. Cultivation Technologies, Inc., et al.</u>, Case No. 30-2019-01072088, Superior Court of California, Orange County (the "Fincanna Cross-Complaint" or, collectively, with the Root Lawsuit, the MFS Lawsuit, the Mesa Lawsuit, and the Cooper Lawsuit, the "Prior Lawsuits"). On behalf of Scottsdale, we are now in receipt of a copy of a cross-complaint filed on August 10, 2020 (the "Cross-Complaint") in the following lawsuit (the "Lawsuit"):

Bailey Cavalieri LLC · 10 West Broad Street · Suite 2100 · Columbus, Ohio 43215-3422
P 614.221.3155   F 614.221.0479   W baileycav.com
ATTORNEYS AT LAW

EXHIBIT #122: 002
22-CV-01616-BAS-DDL

Richard Probst
September 25, 2020
Page 2


<u>Justin S. Beck v. Kenneth Catanzarite, Esq., et al.</u>, Case No. 30-2020-01145998, Superior Court of California, Orange County.

We are directing this letter to you as the authorized insurance representative of Cultivation Technologies, Inc. ("CTI" or the "Company") and the individual Insureds under Business and Management Indemnity Policy No. EKS3206247 (the "Policy"). In the event you are no longer acting on behalf of the Insureds for insurance coverage purposes, please forward a copy of this letter to the Insureds' authorized representative(s) and let us know with whom we should communicate in the future concerning this matter.

This letter sets forth Scottsdale's analysis of coverage for the Cross-Complaint under the Policy based upon the information currently known to Scottsdale. If, after reviewing this letter, you or the Insureds have any questions or concerns regarding Scottsdale's coverage position with respect to this matter, please feel free to contact us.

As an initial matter, as the Cross-Complaint arises out of the same alleged Wrongful Acts and/or Interrelated Wrongful Acts as set forth in the Prior Lawsuits, the Cross-Complaint and Prior Lawsuits constitute a single Claim under the Policy.[1] Indeed, many of the allegations in the Cross-Complaint are verbatim of those found in the Prior Lawsuits. As a result, the coverage issues and defenses identified in the Prior Correspondence are equally applicable to the Cross-Complaint and are expressly adopted and incorporated herein. Further, Scottsdale will provide the Insureds with a defense in response to the Cross-Complaint, subject to a full reservation of a rights and subject to the same terms, conditions, and limitations discussed in our Prior Correspondence.

Without waiving any of the coverage issues or defenses raised in Scottsdale's Prior Correspondence (which are all expressly incorporated herein), Scottsdale believes it is prudent to highlight and supplement certain coverage issues and defenses that may limit or potentially preclude coverage for the Cross-Complaint, based on the allegations and causes of action in that matter and based on the information currently known to Scottsdale:

<u>First</u>, the Policy's D&O Coverage Section only affords coverage for an Insured, which is defined to include CTI, any Subsidiary,[2] and their respective Directors and Officers. Insured is

---

[1] Capitalized terms, not otherwise defined herein, are intended to refer to terms as defined in the Policy and/or Scottsdale's prior coverage correspondence.

[2] Section B.11. of the Policy's General Terms and Conditions defines Subsidiary, in relevant part, to mean (a) any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by CTI, directly or indirectly; or (b) any joint venture entity in which CTI, or an entity described in a. above, has an exact fifty percent (50%) ownership of the interest of such joint venture entity and where, pursuant to a written joint venture agreement, CTI or any entity described in a. above solely controls the management and operations of such joint venture entity.

**BAILEY** | CAVALIERI

EXHIBIT #122: 003
22-CV-01616-BAS-DDL

Richard Probst
September 25, 2020
Page 3

defined at Section B.5. of the D&O Coverage Section to include the Company and its Directors and Officers. Company is defined at Section B.2. of the General Terms and Conditions to mean the Parent Company and its Subsidiaries. Directors and Officers is defined at Section B.4. of the D&O Coverage Section, as amended by Endorsement Nos. 20, 26 and 34, to mean any person who was, now is, or shall become (a) a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company; (b) a person who was, is or shall become a full-time or part-time employee of the Company; (c) the functional equivalent of directors or officers of a Company incorporated or domiciled outside the United States of America; (d) any natural person who is a leased employee or is contracted to perform work for the Company, or is an independent contractor for the Company, but only to the extent such individual performs work or services for or on behalf of the Company; (e) Employed Lawyers of the Company; and (f) a natural person member of the Scientific or Advisory Board of the Company that is indemnified by the Company pursuant to a written indemnification agreement. It is Scottsdale's understanding that you, Justin S. Beck, and Robert A. Bernheimer serve or served as members of CTI's board of directors or as officers of CTI. However, none of the other cross-defendants appears to constitute an Insured.[3] Naturally, no coverage shall be available under the Policy for any defense costs, settlement, judgment, or other sums incurred by or allocable to any uninsured entities or individuals.

Second, the Policy's D&O Coverage Section provides that Scottsdale shall only be liable by reason of a Claim for a Wrongful Act. The definition of Wrongful Act at Section B.9. of the D&O Coverage Section limits coverage to conduct by the Directors and Officers while acting in their capacity as such, or matters claimed against them solely by reason of their serving in such capacity, or while acting in their capacity as a director, officer, trustee, governor, executive director, or similar position of any Outside Entity where such service is with the knowledge and consent of the Company. Section C.1.j. of the D&O Coverage Section, as amended by Endorsement No. 13, further provides, in relevant part, that Scottsdale shall not be liable for Loss on account of any Claim for a Wrongful Act actually or allegedly committed or attempted by any of the Directors and Officers in his or her capacity as a director, officer, trustee, manager, member of the board of managers, or equivalent executive of a limited liability company or employee of, or independent contractor for or in any other capacity or position with any entity other than the Company.

The claims against Mr. Bernheimer are based on the time period prior to the time he was an "insider" of CTI. Consistent with that, in his August 19, 2020 e-mail, he states that he "had nothing at all to do with the running, management or operations of [CTI] … during [the time period alleged in the Cross-Complaint]," and did not become "more of a CTI insider" until "mid to late 2016." Accordingly, based on the information currently known to Scottsdale, no coverage is available to Mr. Bernheimer in response to the Cross-Complaint as it was not brought against

---

[3] Based on the Nevada Secretary of State's website, CTI Nevada I, LLC had its entity status revoked before the Policy was issued.

**BAILEY | CAVALIERI**

Richard Probst
September 25, 2020
Page 4

him solely in his capacity as a director, officer, employee, etc. of CTI.  That said, in the event that Mr. Bernheimer can continue to be defended by counsel assigned to his defense for the Prior Lawsuits (i.e. O'Hagan Meyer), no conflict arises between Mr. Bernheimer and Mr. Beck with respect to that representation, and his defense does not materially add to the total defense costs incurred on behalf of Mr. Beck, Scottsdale will permit O'Hagan Meyer to provide a defense to Mr. Bernheimer in response to the Cross-Complaint, subject to the right to revisit this defense arrangement in the future as warranted. Scottsdale would not be responsible for any amounts incurred by any other firm retained by Mr. Bernheimer.

Further, Scottsdale understands you and Justin Beck currently hold or previously held positions with Mobile Farming Systems, Inc. ("MFS") and/or are alleged to have acted as agents of that uninsured entity.  Indeed, the Cross-Complaint sets forth allegations against you and Mr. Beck for wrongdoing largely in those capacities.  Further, we understand that (i) you are the alleged owner/operator of uninsured cross-defendant Tow and Grow, Inc.; (ii) Mr. Beck is the alleged owner/operator of uninsured cross-defendants EM2 Strategies, LLC, I'm Rad, LLC, and Twelve Twelve, LLC; and (iii) both you and Mr. Beck are alleged owner/operators of uninsured defendant CTI Nevada, I, LLC.  No coverage is available under the Policy for any actual or alleged wrongdoing by you, Mr. Beck, or any other Insured in your capacities as directors, officers, managers, employees, owners, shareholders, or agents of MFS, Tow and Grow, Inc., EM2 Strategies, LLC, I'm Rad, LLC, Twelve Twelve, LLC, CTI Nevada, I, LLC, in your personal capacities, or in any other uninsured capacity.  Further, Scottsdale expressly reserves its right to deny coverage for any sums incurred by any individual Insured in connection with the Cross-Complaint in their capacities as shareholders or owners of CTI, in their personal capacities, or in any other uninsured capacity.

Third, Section C.1.e. of the D&O Coverage Section, as amended by Endorsement Nos. 18, 21 and 22, excludes coverage for Loss on account of any Claim brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity, any Outside Entity or any person or entity that is an owner of or joint venture participant in any Subsidiary in any respect and whether or not collusive, unless such Claim:

    i.    is brought derivatively by a securities holder of the Parent Company and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any Insured;

    ii.    is brought or maintained by any Insured in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a Claim that is covered by this Coverage Section;

    iii.    is brought or maintained by an employee of the Company who is not or was not a director or officer of the Company, including any such Claim brought or maintained under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistle-blower" provision of any law;

**BAILEY | CAVALIERI**

Richard Probst
September 25, 2020
Page 5

    iv.    is brought or maintained by any former director or officer of the Company solely in their capacity as a securities holder of the Company and where such Claim is solely based upon and arising out of Wrongful Acts committed subsequent to the date such director or officer ceased to be a director or officer of the Company and where such Claim is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the Company;

    v.    is brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator for, or creditors' committee of, the Company, or any assignee thereof; or

    vi.    is brought or maintained in a jurisdiction outside the United States of America, Canada or Australia by any Insured of the Company solely where such Company is domiciled or chartered in such foreign jurisdiction.

Based upon the information currently known to Scottsdale, Amy Cooper—who is one of the plaintiffs in the Mesa Lawsuit and the named plaintiff in the Cooper Lawsuit—and Richard O'Connor—who (as explained in our prior coverage correspondence) appears to be assisting plaintiffs in the prosecution of their claims—are both Insureds as defined in the Policy. As such, Scottsdale expressly reserves its right to deny or limit coverage to the extent that the Cross-Complaint is brought or are being maintained by, on behalf of, or at the direction of Ms. Cooper, Mr. O'Connor, or any other Insured.

<u>Fourth</u>, coverage is only available under the Policy for Claims made against the Insureds for Wrongful Acts. No coverage is available under the Policy for any affirmative claims that the Insureds may incur in connection with the prosecution of the Insureds' or any other parties' claims in the Lawsuit.

        \*   \*   \*

In addition to the foregoing, Scottsdale continues to expressly reserve all of its other rights and defenses under the Policy and available at law with respect to this matter, including but not limited to the right to deny or limit coverage for the Prior Lawsuits, the Cross-Complaint, or the Lawsuit based on any other Policy term, condition, or defense that may be applicable as additional facts come to our attention. Nothing herein shall be construed as a waiver of any rights or defenses that Scottsdale now has or hereafter may have under the Policy or at law. Scottsdale recognizes that the Insureds are similarly reserving their rights.

If you have any questions or concerns regarding anything set forth in this matter, please do not hesitate to contact us. In addition, if you or the Insureds disagree with Scottsdale's coverage position, Scottsdale invites you to provide us with any information or materials that you believe may support a contrary conclusion.

**BAILEY | CAVALIERI**

EXHIBIT #122: 006
22-CV-01616-BAS-DDL

Richard Probst
September 25, 2020
Page 6

     While we encourage you to first contact us with any questions or concerns you may have with regard to the positions expressed in this letter, you may be entitled to have your claim reviewed by the California Department of Insurance to the extent that he disagrees with any or all of the positions we have expressed herein.  Any such inquiry should be directed as follows:

> State of California Department of Insurance
> Claims Services Bureau
> 300 South Spring Street, 11th floor
> South Tower
> Los Angeles, CA 90013
> 1-800-927-4357 (calling from within CA)
> 213-897-8921 (calling from outside CA)

     Sincerely,

     BAILEY CAVALIERI LLC

     Darius N. Kandawalla

cc:   Aaron Klass, Esq. (a.klass@nationwide.com)
     Christopher Santagate (csantagate@baileycav.com)
     Robert Bernheimer (Rob@RobBernheimer.com)
     Justin Beck (justintimesd@gmail.com)

#1833437
12180.18025

**BAILEY | CAVALIERI**

EXHIBIT #122: 007
22-CV-01616-BAS-DDL

Justin S. Beck
3501 Roselle St.
Oceanside, California 92056


BAILEY CAVALIERI

**DARIUS N. KANDAWALLA**
dkandawalla@baileycav.com
614.229.3255

CC:   State of California Department of Insurance (RE Insurance Fraud by State Bar Licensees)
      Defendant The State Bar of California
      Defendant State of California (Office of the Attorney General)

July 30, 2022

**VIA EMAIL**

RE: Scottsdale Insurance Policy EKS3206247; OCSC Case No. 30-2020-01145998 (*Justin S. Beck v. Kenneth Catanzarite, Esq. et al*); OCSC Case No. 30-2021-01237499 (*Justin S. Beck v. The State Bar of California, et al*)

Counsel,

My last communication with your firm was on or around October 5, 2020.

Please see the opinion in *Justin S. Beck v. Catanzarite Law Corporation, et al.* (G059766) juxtaposed with my allegations concerning the defense under my policy of more than six lawsuits filed for and against direct adversaries without standing.

I repeatedly asserted to counsel (Samuel Edgerton and Johnny Antwiler) that this series of cases could have been resolved by early motions to strike under CCP 128.7 in 2018 – the reasons outlined by the Court of Appeal are the same ones I advanced in 2018.

I also insisted on filing a motion to disqualify/joinder of CTI's motion RE: Catanzarite again in 12/2019 – but my filing was *untimely* (by Samuel Edgerton and Johnny Antwiler), and the ability to appeal the trial court error was not presented to me by counsel (which, much like the flawed answer in the fraudulent "class action" for Mesa, has come back to harm me recently). As the Court noted, my appeal would have been successful because the violations were mandatory, unambiguous law. The Court of Appeal in G059766 also agreed that a derivative action could not be filed adverse to shareholder interests by the same law firm. I said the same thing to Samuel Edgerton and Johnny Antwiler in 2018. More recently, I asked that they ensure that I have a fraud defense filed in the Mesa Action since the action is not based on fact or law – even the lead plaintiff Richard Mesa terminated Catanzarite and Tice on July 6, 2022. I have no idea whether that fraud defense is now amended in my answer, or if it will be, to correct prior failures in my defense.

EXHIBIT #122: 008
22-CV-01616-BAS-DDL

**URGENT REQUESTS UPON SCOTTSDALE**

The following are needed urgently for judicial notice in my malicious prosecution action and in my claims against the government arising from this series of fraudulent lawsuits filed without standing, for improper purposes, with malice that my Scottsdale Insurance policy was used, and is still being used, to defend.

1)      Policy Depletion on EKS3206247

- Starting 9/14/2018 – Present (All Payments Made Against Policy) + Remaining Limit
- Starting 9/14/2018 – Present (All Payments Made for My Defense Against Policy)

2)      Underwriting Risk/Irreparable Harm to Me

- I am now unable to obtain D&O due to fraudulent litigation filed against me
- I request Scottsdale to decline a renewal or state why I am uninsurable/extreme risk

3)      Discussion with Nationwide + Bailey Cavalieri (Call Week of August 1, 2022, Requested)

- My policy "rules" in defense regarding DQ, 128.5/128.7, MSJ, demurrers as defense
- A need to proactively dispose of fraudulent cases against this policy

**NOTICE TO SCOTTSDALE**

I will not partake in *any* settlement discussion involving the actors associated with Catanzarite Law Corporation, including Jim Travis Tice. They are engaged in serial fraud as a matter of fact. I am concurrently delivering evidence to the Federal Bureau of Investigation for what I allege to be conduct meeting federal definitions of racketeering activity on behalf of or through the enterprise(s) Catanzarite Law Corporation and/or The State Bar of California.

My goal in communicating with Scottsdale is to further prove my damages (specifically, here, the depletion of my policy, the legal fees incurred on my behalf to defend fraudulent litigation, and the implications that the D&O claims have had and will have upon my life as an entrepreneur). Scottsdale should help dispose of – not answer or encourage – this deliberate scheme.

I am grateful that Scottsdale Insurance Company has stuck through this under the circumstances and believe our conversation could help reduce or eliminate further use of my/CTI's policy for payment of legal fees arising from deliberate judicial fraud undertaken by actors who have a predicate and parallel history of the same. Please do not take this letter as adversarial and thank you for your timely assistance with these matters.

Sincerely,

Justin S. Beck
760-449-2509
justintimesd@gmail.com

EXHIBIT #122: 009
22-CV-01616-BAS-DDL