EXHIBIT 128

Evidence Known to All Defendants

Electronically Filed by Superior Court of California, County of Orange, 10/09/2020 02:29:04 PM.
30-2020-01145998-CU-BT-CJC - ROA # 220 - DAVID H. YAMASAKI, Clerk of the Court By e Clerk, Deputy Clerk.

1  Richard D. McCune, State Bar No. 132124
   rdm@mccunewright.com
2  Steven A. Haskins (Bar No. 238865)
   sah@mccunewright.com
3  Jessica Becerra (Bar No.  325885)
   jb@mccunewright.com
4  **MCCUNE·WRIGHT·AREVALO, LLP**
   3281 East Guasti Road, Suite 100
5  Ontario, California 91761
   Telephone:  (909) 557-1250
6  Facsimile:  (909) 557-1275

7
   Attorneys for Plaintiff
8                    IN THE SUPERIOR COURT OF CALIFORNIA

9                            COUNTY OF ORANGE

10                                        )  Case No: 30-2020-01145998-CU-BT-CJC
11  JUSTIN S. BECK, an individual,        )
                                          )  Judge Assigned:   Honorable Deborah Servino
12              Plaintiff,                 )  Department:       C21
                                          )
13       v.                                )  **DECLARATION OF PLAINTIFF JUSTIN
                                          )  BECK IN SUPPORT OF PLAINTIFF JUSTIN
14  KENNETH CATANZARITE, ESQ., an         )  BECK'S OPPOSITION TO DEFENDANT
    individual; CATANZARITE LAW           )  CLC'S SPECIAL MOTION TO STRIKE
15  CORPORATION, a California corporation; )  PURSUANT TO SECTION 425.16 AND
    MOBILE FARMING SYSTEMS, INC., a       )  OPPOSITION TO DEFENDANT
16  California corporation; BRANDON        )  ZAKHIREH'S SPECIAL MOTION TO
    WOODWARD, ESQ., an individual; TIM JAMES )  STRIKE PURSUANT TO SECTION 425.16**
17  OKEEFE, ESQ., an individual; RICHARD  )
    FRANCIS O'CONNOR, JR., an individual; AMY )
18  JEANETTE COOPER, an individual; CLIFF )  Date: October 23, 2020
    HIGGERSON, an individual; TONY SCUDDER, )  Time: 10:00 a.m.
19  an individual; JAMES DUFFY, an individual; )  Dept:  C21
    MOHAMMED ZAKHIREH, an individual; TGAP )
20  HOLDINGS, LLC, a Nevada limited liability )  Complaint Filed:  May 20, 2020
    corporation; AROHA HOLDINGS, INC., a  )  Trial date:       February 7, 2022
21  California corporation; and DOES 1-15  )
                                          )  [Filed concurrently with Plaintiff Justin Beck's
22              Defendants.                )  Opposition to Defendant CLC's Special Motion to
                                          )  Strike Pursuant to Section 425.16; Opposition to
23                                        )  Defendant ZAKHIREH's Special Motion to Strike
                                          )  Pursuant to Section 425.16; Request for Judicial
24  _____   )  Notice]
                                          )
25  MOBILE FARMING SYSTEMS, INC., a       )
    California corporation                 )
26                                        )
                                          )
27       Cross-Complainant,                )
                                          )
28       v.                                )
                                          )

                                        -1-
   _____
   DECLARATION OF PLAINTIFF JUSTIN BECK

EXHIBIT #128: 002
22-CV-01616-BAS-DDL

Document received by the CA 4th District Court of Appeal Division 3

1   Justin S. BECK, an individual; I'M RAD, LLC, a )
2   Nevada limited liability company; EM2 )
    STRATEGIES, LLC, a Nevada limited liability )
3   company; CTI NEVADA I, LLC, a Nevada )
    limited  liability company; RICHARD J. )
4   PROBST, an individual; TOW AND GROW, )
    INC., a California corporation; ROBERT A. )
5   BERNHEIMER, an individual; ROBERT A. )
6   BERNHEIMER, INC., a California corporation; )
    LAWRENCE W. HORWITZ, an individual; )
7   JOHN R. ARMSTRONG II, an individual; )
    HORWITZ+ ARMSTRONG,  A )
8   PROFESSIONAL  LAW CORPORATION, a )
9   California corporation; TWELVE TWELVE LLC,)
    a Nevada limited liability company; WILLIAM )
10  MOORE, an individual; BRIAN MOORE, an )
11  individual and Roes 1-100, )
                                                  )
12      Cross-Defendants                          )
                                                  )
13
14  _____
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    -2-
DECLARATION OF PLAINTIFF JUSTIN BECK

EXHIBIT #128: 003
22-CV-01616-BAS-DDL

ocument received by the CA 4th District Court of Appeal Division 3.

1    I, Justin Beck, have personal knowledge of each fact set forth in this declaration based upon

2   my observation of, participation in, and recollection of, the matters and events to which I declare. I

3   could and would competently testify to each fact set forth in this declaration if called and duly sworn

4   by this Court. I certify and declare as follows:

5        1.   I am over the age of 18. I am a resident of Oceanside, California. I am the Plaintiff and a

6    Cross-Defendant in the present action.

7        2.   I offer this declaration in support of my *Opposition to Defendant CLC's Special Motion to*

8    *Strike Pursuant to Section 425.16* and *Opposition to Defendant ZAKHIREH's Special Motion to Strike*

9    *Pursuant to Section 425.16* filed concurrently herewith in this matter

10       3.   I became involved with Cultivation Technologies, Inc. ("CTI") and its three-member Board of

11   Directors, Richard Probst ("Probst"), Richard O'Connor ("O'Connor"), and Amy Cooper ("Cooper"),

12   shortly after its formation in March 2015, when I was retained as a consultant.

13       4.   I served as a CTI consultant for several months, assisting CTI with its business strategy, local

14   licensing, and setting up operations. One of my concerns as I looked at CTI's operations was that

15   O'Connor and Cooper, in particular, were using MFS and CTI as vehicles for corporate waste and

16   self-dealing. Those actions were also supported by a small but vocal number of shareholders who were

17   family, personal friends, or benefited from their actions.

18       5.   Nevertheless, I was appointed to the CTI Board in February 2016, and shortly thereafter

19   O'Connor resigned.  I then became the CEO of CTI. O'Connor's resignation was met with relief from

20   most shareholders, but those loyal to O'Connor were angry, upset and blamed me for O'Connor's

21   ouster.

22       6.   I served as an officer, CEO, director, and/or Chairman of the Board of CTI from approximately

23   March 2016 to May 2019, when I resigned out of directly caused concern for the effect of MFS'

24   malicious prosecution on myself personally and on CTI as a business concern. While I served as CEO,

25   O'Connor and his allies engaged in destroying my personal and professional reputation, finding every

26   public vehicle they could to question my legitimacy, and hamper CTI's ability to operate.

27       7.   I took over CTI during one of the greatest personal struggles of my life, as my father died

28   suddenly of a heart attack in January 2016, and my mother passed away in September of that same

-3-

DECLARATION OF PLAINTIFF JUSTIN BECK

*ocument received by the CA 4th District Court of Appeal Division 3.*

1   year. Meanwhile, I was giving all of my spare time to CTI, even as O'Connor, Cooper, and their other
2   allies continued to spuriously undermine me and CTI.

3       8.  CLC has been the attorney on record for the following cases related to this action: *Denise*
4   *Pinkerton on behalf of Roger Root v. Richard Probst, et al,* Case No. 30-2018-01018922 (the "Root
5   Action"); *Mobile Farming Systems, Inc. v. Richard Probst, et al,* Case No. 30-2019-01046904 (the
6   "MFS Action"); *Richard Mesa, et al, v. Richard Probst, et al, Case No. 30-2019-01064267* (the "CTI
7   Action").

8       9.  I have incurred damages over $900,000 and hundreds of hours of time have been invested in
9   my defense. While I was covered by a Director & Officer Insurance Policy as a result of my role as a
10  CTI officer, the coverage therein was "Side A" coverage, coverage that protects directors and officers
11  such as myself from lawsuits incurred in their individual capacity and for which they cannot be
12  indemnified by the entity itself. Because this "Side A" coverage is personal, the depletion of the
13  benefits of that policy constitute personal damages.

14      10. I have also incurred thousands of dollars in out-of-pocket costs for my defense, including
15  research fees, and fees for consultants.

16      11. In February 2019, I was acting in my capacity as CEO of CTI to negotiate a valuable merger
17  between CTI and Western Troy Capital Resources. CLC and its principal attorney, Kenneth
18  Catanzarite, communicated with officials of Western Troy, repeating MFS' claims of complete
19  ownership of CTI. Ultimately, MFS' interference in the merger caused the merger to fail, not only at
20  great cost to CTI, but to my personal and business reputation.

21      12. Similarly, in October 2019, a prominent cannabis-industry investor, FinCanna Capital
22  Corporation, announced a restructuring of its royalty agreement with CTI, resulting in a payment and
23  3.44% royalty.  When CLC and its allies began misrepresenting their ownership of CTI, I personally
24  warned them that their actions could compromise that very important structural arrangement, including
25  the security interest FinCanna had taken in CTI assets.  But when MFS continued to interfere with CTI
26  by claiming ownership of the shares, FinCanna foreclosed on CTI's assets on May 1 to prevent any
27  further damages from Defendants. The resulting restructuring of CTI's agreement with FinCanna was
28  materially harmful both to CTI and to my personal financial interests as a CTI shareholder. Moreover,

-4-

DECLARATION OF PLAINTIFF JUSTIN BECK

EXHIBIT #128: 005
22-CV-01616-BAS-DDL

Document received by the CA 4th District Court of Appeal Division 3.

1   my personal and business reputation suffered as another high-profile partnership was undermined by

2   MFS' and other Defendants' malicious lies. I resigned from CTI in May 2019, not because of any

3   wrongdoing on my part, but because CLC's harassment and the behavior of Defendants purporting to

4   take over CTI after their attempts to do so through MFS failed in the 709 Hearing, followed by their

5   new effort to take CTI via O'Connor's purported proxy vote of CTI shares on or about May 14, 2019.

6       13. CLC's continued malicious prosecution has caused me significant reputational harm.

7   Individuals have explained to me that while they personally know that I am above reproach, I cannot

8   formally join certain new business ventures because people have questions about the ongoing litigation

9   and my role in it. This is particularly true as regards start-up companies, which is my business

10   specialty, because start-ups are already inherently risky ventures.

11       14. As just one example, I had the opportunity to take significant ownership in a new startup

12   venture while the events described in the Complaint were proceeding. Despite having the right to

13   claim a far larger ownership stake of the venture, I was required to take a less than 10% ownership

14   stake such that my participation would not have to be disclosed to the general public. This precaution

15   was taken out of an abundance of caution specifically so that CLC would not pursue litigation against

16   this company. Not only has this had a material effect on my personal finances, but my reputation in the

17   marketplace has been damaged by the acts taken against me by CLC and the other Defendants.

18       15. Further, my ability to raise capital for new companies has been adversely affected, due to

19   CLC's unlawful acts. Because of the false controversy CLC's actions have stirred up regarding the

20   CTI share issuances—issuances that CLC's own clients were responsible for—I have been unable to

21   participate in capital raising activities because my potential clients fear that CLC will pursue litigation

22   against any company that I become involved in.

23       16. I have lost out on opportunities to serve as a founder, officer or director for other companies,

24   specifically cannabis or hemp companies that have since achieved success in capitalization and

25   revenue without me, due to the malicious lawsuits CLC has filed, for the same reasons.

26       17. I have also been unable to develop or market several business opportunities, particularly those

27   involving cannabis or hemp, because it has become clear that CLC will use any excuse—no matter

28   how specious—to use the judicial process to harass and destroy my business.

-5-

DECLARATION OF PLAINTIFF JUSTIN BECK

EXHIBIT #128: 006
22-CV-01616-BAS-DDL

Document received by the CA. 4th District Court of Appeal Division 3.

18. I believe that several material sell-side transactions have fallen apart because the sellers in doing their due diligence discovered the multiple lawsuits that CLC has filed against me.

19. My ability to obtain Directors and Officers Liability Insurance has been affected by Defendants' actions, a result of their false and malicious litigation campaign against me.

20. My ability to obtain D&O also affects my ability to form teams and new business ventures. If my colleagues decide to join my teams, they are joining despite these new risks directly attributed to CLC.

21. From time to time, I have inquired with third parties regarding the value and ability to sell my shares in CTI. In every case, I have been told that my shares are not saleable because of the litigation and accompanying controversies that are based on MFS' corporate statements regarding its ownership of CTI. On the other hand, Mr. O'Connor has admitted he was able to sell his CTI common shares to Mr. Duffy, one of his fellow conspirators. (RJN, Ex. W.)

22. I have lost credibility with many of my colleagues in the cannabis and hemp market due to the continuous litigation CLC has filed. I brought many credible people to invest in CTI and or serve as an officer for CTI, all of whom must endure the constant persecution of CLC and its allies.

23. In addition to the loss of business opportunities, the lawsuits brought by CLC against me have caused me great emotional distress. I have been alternatively frustrated, angry, depressed, and worried about having to fend off knowingly false accusations that have always been about O'Connor's desire to harm me. I put several years of my life into CTI, attempting to build a company against all odds despite the Defendants' sabotage, and the emotional turmoil continued to grow.  I sought and received psychiatric and holistic counseling. I also drank alcohol frequently, though recently I have been able to quit. As a result of these feelings, I have incurred severe emotional damages and significant out-of-pocket costs.

24. I received all the following documents within the normal course of my position within CTI and all documents were reviewed at the time they were received and are in the same condition in which they were received.

25. Attached as Exhibit 2 is a true and correct copy of Jolly Roger's MFS stock certificate, dated December 5, 2012.

-6-

DECLARATION OF PLAINTIFF JUSTIN BECK

Document received by the CA 4th District Court of Appeal Division 3.

1     26. Attached as Exhibit 3 is a true and correct copy of an email dated January 7, 2018 between

2 O'Connor and Miguel Motta. I was forwarded this email by Miguel Motta and I reviewed it at the time

3 it was received.

4     27. Attached as Exhibit 4 is a true and correct copy of an email dated May 3, 2017 from

5 Mohammed Zakhireh to various CTI Shareholders. I was forwarded this email by Richard Probst and I

6 reviewed it at the time it was received.

7     28. Attached as Exhibit 6 is a true and correct copy of an email dated June 7, 2017 from James

8 Duffy to Richard O'Connor. I was forwarded this email by Miguel Motta and I reviewed it at the time

9 it was received it.

10     29. Attached as Exhibit 7 is a true and correct copy of an email dated May 5, 2017 from me to

11 Amy Cooper.

12     30. Attached as Exhibit 8 is a true and correct copy of an email dated October 4, 2018 between

13 Kenneth Catanzarite and Sam Edgerton. I was forwarded this email by Sam Edgerton and I reviewed it

14 at the time it was received.

15     31. Attached as Exhibit 9 is a true and correct copy of an email dated February 26, 2019 from

16 Kenneth Catanzarite to Rex Loesby regarding an agreement between Western Troy and CTI. I was

17 forwarded this email by Rex Loesby and I reviewed it at the time it was received.

18     32. Attached as Exhibit 10 is a true and correct copy of an email dated June 17, 2017 from

19 Mohammed Zakhireh to Miguel Motta. I was forwarded this email by Miguel Motta and I reviewed it

20 at the time it was received it.

21     33. Attached as Exhibit 11 is a true and correct copy of an email dated May 1, 2017 from

22 Mohammed Zakhireh to Jim Ferguson. I was forwarded this email by to Jim Ferguson and I reviewed

23 it at the time it was received it.

24     I declare under penalty of perjury under the laws of the United States of America that the

25 foregoing is true and correct and executed on this, the 4th day of October 2020, at

26 Oceanside , California .

27

28                                        Justin Beck

DECLARATION OF PLAINTIFF JUSTIN BECK

EXHIBIT #128: 008
22-CV-01616-BAS-DDL

Document received by the CA 4th District Court of Appeal Division 3

PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO
     I am employed in the County of San Bernardino, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 3281 East Guasti Road, Ste. 100, Ontario, California 91761
     On October 9, 2020, I served the foregoing document described as DECLARATION OF JUSTIN BECK IN SUPPORT OF PLAINTIFF JUSTIN BECK'S TO OPPOSITION TO DEFENDANT CLC'S SPECIAL MOTION TO STRIKE PURSUANT TO SECTION 425.16 AND OPPOSITION TO DEFENDANT ZAKHIREH'S SPECIAL MOTION TO STRIKE PURSUANT TO SECTION 425.16 on the interested parties through their respective attorneys of record in this action, by placing a ☒ true copy or ☐ original thereof addressed as follows:

**CATANZARITE LAW CORPORATION**
**Kenneth J. Catanzarite**
**2331 West Lincoln Avenue**
**Anaheim, CA  92801**
**714-520-5544**
kcatanzarite@catanzarite.com; Becky Phillips <bphillips@catanzarite.com>
**METHOD OF SERVICE PURSUANT TO CCP SECTION 1013:**

[ ]  **(BY MAIL)**  I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing.  Under that practice, I caused such envelopes with postage thereon fully prepaid to be placed in the United States mail at Ontario, California.

[ ]  **(BY FACSIMILE)**  I caused such documents to be transmitted by facsimile to the offices of the addressee(s) to the facsimile number(s) listed above.

[ ]  **(BY PERSONAL SERVICE)**  I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

[ ]  **(BY OVERNIGHT DELIVERY)**  I caused such document to be delivered by overnight delivery to the offices of the addressee(s).

[X]  **(BY ELECTRONIC MAIL)**  (By OneLegal Electronic Service) I caused the above-entitled document(s) to be served through OneLegal addressed to all parties appearing on the OneLegal electronic service list for the above-entitled case.  The "OneLegal Filing Receipt" page(s) will be maintained with the original document(s) in our office.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on the above-referenced date at Ontario, California.

_____
ROSALINDA ROSAS

Proof of Service

**EXHIBIT #128: 009**
**22-CV-01616-BAS-DDL**

Document received by the CA 4th District Court of Appeal Division 3.

**EXHIBIT 2**

EXHIBIT #128: 010
22-CV-01616-BAS-DDL

ocument received by the CA 4th District Court of Appeal Division 3.





In District Court of Appeal Division

625,000

No. 35

# MOBILE FARMING SYSTEMS, INC.
## AUTHORIZED CAPITAL STOCK 100,000,000 COMMON SHARES – NO PAR VALUE

INCORPORATED IN THE STATE OF CALIFORNIA ON AUGUST 28, 2008

THIS CERTIFIES THAT

JOLLY ROGER, INC.
A WASHINGTON CORPORATION

*is the registered holder of* _____ *shares of*

SIX HUNDRED TWENTY FIVE THOUSAND

*the above named Corporation, transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed.*

*This* 11TH *day of* DECEMBER , 2012 .

RICHARD F. O'CONNOR, JR.
CHIEF EXECUTIVE OFFICER

RICHARD J. PROBST
PRESIDENT, SECRETARY

$0.00

EXHIBIT #128: 012
22-CV-01616-BAS-DDL



MOBILE FARMING SYSTEMS, INC.

AUTHORIZED CAPITAL STOCK: 100,000,000 COMMON SHARES – NO PAR VALUE

INCORPORATED IN THE STATE OF CALIFORNIA ON AUGUST 28, 2008

No. 37

350,000 Shares

THIS CERTIFIES THAT

JOLLY ROGER, INC.
A WASHINGTON CORPORATION

is the registered holder of

THREE HUNDRED FIFTY THOUSAND    Shares of

the above named Corporation, transferable only on the books of the Corporation by
the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by
its duly authorized officers and its Corporate Seal to be hereunto affixed.

This    5TH    day of    FEBRUARY   ,    2013   .

RICHARD F. O'CONNOR, JR.
CHIEF EXECUTIVE OFFICER

RICHARD J. PROBST
PRESIDENT, SECRETARY

$0.00

EXHIBIT #: 228-013
22-CV-01616-BAS-DDL

# EXHIBIT 3

EXHIBIT #128: 014
22-CV-01616-BAS-DDL

Document received by the CA 4th District Court of Appeal Division 3.

**Saturday, March 14, 2020 at 1:31:40 PM Pacific Daylight Time**

**Subject:** FW:

**Date:** Monday, January 7, 2019 at 10:31:19 AM Pacific Standard Time

**From:** Miguel Motta

**To:** Justin Beck

FYI.-

Miguel Motta
**Cultivation Technologies, Inc.**

@coachellapremium @coachellamanufacturing
cultivationtech.com | coachellapremium.com | coachellamanufacturing.com | coachelladistributors.com
E-MAIL CONFIDENTIALITY NOTICE: This message is for informational purposes only and does not constitute an offer or
solicitation to sell shares or securities in Cultivation Technologies, Inc. (the "Company") or any related or associated company.
Any such offer or solicitation will be made only by means of the Company's confidential Offering Memorandum and in
accordance with the terms of all applicable securities and other laws. None of the information or analyses presented are
intended to form the basis for any investment decision, and no specific recommendations are intended. Accordingly this
message does not constitute investment advice or counsel or solicitation for investment in any security. This message does not
constitute or form part of, and should not be construed as, any offer for sale or subscription of, or any invitation to offer to buy
or subscribe for, any securities, nor should it or any part of it form the basis of, or be relied on in any connection with, any
contract or commitment whatsoever. The Company expressly disclaims any and all responsibility for any direct or
consequential loss or damage of any kind whatsoever arising directly or indirectly from: (i) reliance on any information
contained in this message, (ii) any error, omission or inaccuracy in any such information or (iii) any action resulting therefrom.

**From:** Miguel Motta
**Sent:** Monday, January 7, 2019 10:31 AM
**To:** 'Richard OConnor jr' <richard@tgapholdings.com>
**Cc:** Brian H <globalcannabisindex@gmail.com>; Jim Duffy <jim.duffy55@comcast.net>
**Subject:** RE:

Hi Richard,

Good to hear from you. We are making good progress with Joe and are currently drafting a term sheet so we
can share that with the board of CTI to get their input. While I am personally encouraged with the potential
transaction with Joe, we need to make sure that the board and the shareholders are supportive of that.

Regarding your comments, please see below:

<u>Finder's Fee</u>

I encourage you to research how the SEC treats finder's fees. While I am not an attorney, my understanding is
the payment of finder's fees can only be made to licensed brokers. Otherwise it constitutes a violation under
the SEC regulations. You may find the following link helpful:

https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html

It is also my understanding that the investor (in this case Joe) can pay directly such fees, but not the company
which receives the proceeds (unless it is a licensed broker). Please don't take this as legal advice.

Regarding the payment of the disputed $75,000 with you, it is expected that a portion of the investment will
be used to reduced the financial and legal liabilities of the company. We are open to discuss the settlement of
those $75,0000 as part of the potential capital infusion into the company.

ocument received by the CA 4th District Court of Appeal Division 3.

**EXHIBIT #128: 015**

Page 1 of 3

**22-CV-01616-BAS-DDL**

CSE

CTI is actively exploring that route too. Any relevant introductions are welcome and appreciated.

Tony Sudder

From my perspective, it is Tony's right to provide his testimony and I respect that. As you know, I was not involved with the company at the time the allegations presumably happened, and therefore it is difficult for me to assess what impact, if any, Tony's testimony may have in the litigation.

Let's speak to further discuss the points above.

Miguel


Miguel Motta
**Cultivation Technologies, Inc.**

@coachellapremium @coachellamanufacturing
cultivationtech.com | coachellapremium.com | coachellamanufacturing.com | coachelladistributors.com

E-MAIL CONFIDENTIALITY NOTICE: This message is for informational purposes only and does not constitute an offer or solicitation to sell shares or securities in Cultivation Technologies, Inc. (the "Company") or any related or associated company. Any such offer or solicitation will be made only by means of the Company's confidential Offering Memorandum and in accordance with the terms of all applicable securities and other laws. None of the information or analyses presented are intended to form the basis for any investment decision, and no specific recommendations are intended. Accordingly this message does not constitute investment advice or counsel or solicitation for investment in any security. This message does not constitute or form part of, and should not be construed as, any offer for sale or subscription of, or any invitation to offer to buy or subscribe for, any securities, nor should it or any part of it form the basis of, or be relied on in any connection with, any contract or commitment whatsoever. The Company expressly disclaims any and all responsibility for any direct or consequential loss or damage of any kind whatsoever arising directly or indirectly from: (i) reliance on any information contained in this message, (ii) any error, omission or inaccuracy in any such information or (iii) any action resulting therefrom.

**From:** Richard OConnor jr <richard@tgapholdings.com>
**Sent:** Sunday, January 6, 2019 6:59 PM
**To:** Miguel Motta <miguel@cultivationtech.com>
**Cc:** Brian H <globalcannabisindex@gmail.com>; Jim Duffy <jim.duffy55@comcast.net>
**Subject:**


Miguel,

   Good evening my friend. there are three things I wanted to discuss with you. First, congratulations on what looks like a deal with Joe Kowal. He's a good guy and'm glad I could make the introduction. That being said I wanted to discuss a finder's fee. I'm not looking for anything special, just whatever is standard in a situation like this. I've done some research and there are a couple different options. I'll let you get back to me with something fair, legal and appropriate. One idea is to wrap it with the $75k and spread the cash over time with some common shares?

   Second, My new partner and I have very close business contacts, who have recently approached us indicating they have a couple of CSE listed shells, in which they would like to

Document received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 016
22-CV-01616-BAS-DDL

merge with a US based cannabis operating company.  The shells are extremely clean, strategically structured and ready for an immediate viable cannabis candidate. The group will likely infuse the new company merger with up to $1 million, depending on the merger candidate and deal structure. There will be little to no cash cost to the private candidate. We feel CTI would be a great candidate and wanted to reach out to you to see if there is an interest?  We do have have another group in mind, so please discuss with your team and let us know your thoughts as soon as you can. We will be traveling to meet with the shell group within the next two weeks and will plan to offer them the candidate of choice.

Thirdly, Tony Scudder has decided to trade his testimony for being removed from the Root lawsuit. I think we should discus off line. I just found out today. I'll be available to do whatever you need me to do.

 We have an opportunity here to unite the management of CTI with it's shareholders.

Regards, Richard
>           Looks good to me.   I would be interested.   I like it.


>           ReplyForward


*Richard F OConnor*
*Managing Partner*
*TGAP Holdings LLC*
*2 Curie Ct*
*Rancho Mirage Ca. 92270*
*760-409-6464*
*Richard@tgapholdings.com*

EXHIBIT #128: 017   Page 3 of 3
22-CV-01616-BAS-DDL

**EXHIBIT 4**

ocument received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 018
22-CV-01616-BAS-DDL

Case 3:22-cv-01616-AGS-DDL   Document 10-87   Filed 01/09/23   PageID.2191   Page 19 of 40

11/17/2019                          Gmail - FW: CTI Shareholders from DR MO ZAKHIREH!!! Urgent!!!

 Gmail                                          **Justin Beck <justintimesd@gmail.com>**

---

## FW: CTI Shareholders from DR MO ZAKHIREH!!! Urgent!!!

**Justin Beck** <justin@cultivationtech.com>                    Thu, Nov 14, 2019 at 10:07 AM
To: Miguel Motta <miguel.a.motta@gmail.com>, "justintimesd@gmail.com" <justintimesd@gmail.com>

--

Justin Beck
**Cultivation Technologies, Inc.**

@coachellapremium @coachellamanufacturing

cultivationtech.com | coachellapremium.com | coachellamanufacturing.com | coachelladistributors.com

E-MAIL CONFIDENTIALITY NOTICE: This message is for informational purposes only and does not constitute an offer or solicitation to sell shares or securities in Cultivation Technologies, Inc. (the "Company") or any related or associated company. Any such offer or solicitation will be made only by means of the Company's confidential Offering Memorandum and in accordance with the terms of all applicable securities and other laws. None of the information or analyses presented are intended to form the basis for any investment decision, and no specific recommendations are intended. Accordingly this message does not constitute investment advice or counsel or solicitation for investment in any security. This message does not constitute or form part of, and should not be construed as, any offer for sale or subscription of, or any invitation to offer to buy or subscribe for, any securities, nor should it or any part of it form the basis of, or be relied on in any connection with, any contract or commitment whatsoever. The Company expressly disclaims any and all responsibility for any direct or consequential loss or damage of any kind whatsoever arising directly or indirectly from: (i) reliance on any information contained in this message, (ii) any error, omission or inaccuracy in any such information or (iii) any action resulting therefrom.

---

**From:** Richard Probst <rprobst@profabtech.net>
**Date:** Wednesday, May 3, 2017 at 1:47 PM
**To:** Rob Bernheimer <rob@robbernheimer.com>, Miguel Motta <miguel@cultivationtech.com>,
Justin Beck <justin@cultivationtech.com>, Larry Horwitz <lhorwitz@horwitzarmstrong.com>,
James Murphy <jmurphy@horwitzarmstrong.com>
**Subject:** Fwd: CTI Shareholders from DR MO ZAKHIREH!!! Urgent!!!

We need to talk again asap.

Thank You

Rick Probst

Document received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 019
22-CV-01616-BAS-DDL

Begin forwarded message:

**From:** Bernie Kloenne <bernie@inlandenvelope.com>
**Date:** May 3, 2017 at 1:28:55 PM PDT
**To:** "rprobst@profabtech.net" <rprobst@profabtech.net>
**Subject: FW: CTI Shareholders from DR MO ZAKHIREH!!! Urgent!!!**

Rick,

Pretty serious allegations … you might want to be proactive and let Tom at the bank know about this before he finds out on his own … best, BK

**Bernard Kloenne | Inland Envelope Company**
150 North Park Ave.  Pomona, CA 91768 | ☎: 909.623.1511 Ext. 213 | ✉: 909.622.2016

**From:** Tony Scudder [mailto:tony.scudder@yahoo.com]
**Sent:** Wednesday, May 03, 2017 1:13 PM
**To:** Tony Scudder
**Subject: CTI Shareholders from DR MO ZAKHIREH!!! Urgent!!!**

Dear CTI Shareholders,

By way of brief introduction my name is Dr. Mo Zakhireh, and I am a fellow CTI shareholder. Out of concern for CTI I began to investigate the company, its CEO, its CFO and their activities since the last shareholder meeting that was held in February of 2017 in Coachella Valley California. My investigations uncovered what I believe to be a direct strategy by Justin Beck and Rick Probst to remove Founder and Ex-CEO Richard O'Connor.  I thought it very unusual at the time when I heard Richard had resigned. Richard is a friend of mine through our daughters dance school. I was the Surgeon that performed a major surgery on Richard's face a few days prior. Richard was in no condition to make any decisions as important as resigning from CTI. I personally witnessed the intense involvement of Richard and his wife in the traumatic injury to his son Trey O'Connor. It was around this time a bridge loan for 1.6 million dollars was also taken in with no real accountability for its use.

Justin Beck named himself President and CEO and then proceeded with Mr. Rick Probst the CFO to use their authority as the only two board members when the bylaws state there are supposed to be 5 board members, to issue themselves 13 or more million shares of preferred stock which then gave them majority ownership of the company and displaced our potential value, priority and dividend income position.

These highly unethical and illegal moves by current management have essentially attempted a hijacking of CTI. They have given themselves, friends and family members exorbitant salaries and preferred shares at the shareholders expense. These salaries and perks that they are enjoying to this day!  They have essentially siphoned the company dry. Tragically behind-the-scenes they have allowed the most valuable remaining asset of this company which is a 6 acre parcel in Coachella to go into almost imminent default. The date of the default on the loan to purchase the property was initially May 1st, 2017. I was forced to file a lawsuit and a "Lis-Pen-Dens" Friday April 28 to ensure that any foreclosure on our property would be stalled until we could communicate and organize the shareholders in order to file a lawsuit and to take our company back.

https://www.newcannabisventures.com/cultivation-technologies-inc-sued-for-alleged-

EXHIBIT #128: 020
22-CV-01616-BAS-DDL

Document received by the CA 4th District Court of Appeal Division 3.

fraud-insiders-self- dealing-and-gross- mismanagement/

In my original lawsuit I have asked for $100,000 in damages, but the lawsuit was only originally filed at the 11th hour with the intent of stopping the foreclosure process. **What I personally would like to see, for all our best interest, is the current team being replaced and the original 13 or more million shares that they diluted out of our company be restored. Legal effort will cost time and money. I am asking each shareholder to forward $1000 each to a special legal fund that will be set up for this urgent project.**

Please keep in mind that I am in no way a radical or litigious person. However, when I know that my rights have been trampled upon and my hard earned money has been mismanaged I reserve the right to fight and to bring responsible parties to justice! I am always available for discussion and I look forward to you joining us in this vital endeavor. Time is of the essence! Please respond to Tony Scudder at 714- 718-3123 for more info. He has agreed to coordinate our efforts.

Please find attached shareholder information obtained on behalf of all shareholders on April 24 at 9am in a meeting with Richard Probst by Tony Scudder with the help of Scott R. Carpenter of Cummins& White, LLP - Newport Beach, CA

Respectfully,

Dr. Mo Zakhireh

801-414-4009

**Sincerely,**

**Tony Scudder - Managing Director**
**CCD Resources - Aroha Holdings Inc.**
**Cell - 714.728.3123**
**Fax - 949.435.3663**



**2 attachments**

📄 **CTI Forced Disclosure 4.24.17.pdf**
5710K

📄 **WIRING INSTRUCTIONS(1).doc**
22K

EXHIBIT #128: 021
22-CV-01616-BAS-DDL

Document received by the CA 4th District Court of Appeal Division 3.

# EXHIBIT 6

EXHIBIT #128: 022
22-CV-01616-BAS-DDL

ocument received by the CA 4th District Court of Appeal Division 3.

**Subject:** Fwd: Settlement

**Date:** Wednesday, June 7, 2017 at 10:20:01 PM Pacific Daylight Time

**From:** Miguel Motta

**To:** Rob Bernheimer, Justin Beck, Richard Probst



, CA 92618

***Keep up with us!*** **LinkedIn** | **Facebook** | **Twitter**

E-MAIL CONFIDENTIALITY NOTICE: This message is for informational purposes only and does not constitute an offer or solicitation to sell shares or securities in Cultivation Technologies, Inc. (the "Company") or any related or associated company. Any such offer or solicitation will be made only by means of the Company's confidential Offering Memorandum and in accordance with the terms of all applicable securities and other laws. None of the information or analyses presented are intended to form the basis for any investment decision, and no specific recommendations are intended. Accordingly this message does not constitute investment advice or counsel or solicitation for investment in any security. This message does not constitute or form part of, and should not be construed as, any offer for sale or subscription of, or any invitation to offer to buy or subscribe for, any securities, nor should it or any part of it form the basis of, or be relied on in any connection with, any contract or commitment whatsoever. The Company expressly disclaims any and all responsibility for any direct or consequential loss or damage of any kind whatsoever arising directly or indirectly from: (i) reliance on any information contained in this message, (ii) any error, omission or inaccuracy in any such information or (iii) any action resulting therefrom.

--------- Forwarded message ----------

From: **Richard OConnor jr** <richard@tgapholdings.com>

Date: Wed, Jun 7, 2017 at 4:25 PM

Subject: Fwd: Settlement

To: miguel@cultivationtech.com

ocument received by the CA 4th District Court of Appeal Division 3.

*Richard F OConnor*
*Managing Partner*
*TGAP Holdings LLC*
*2 Curie Ct*
*Rancho Mirage Ca. 92270*
*760-409-6464*
*Richard@tgapholdings.com*

---------- Forwarded message ----------
From: **Jim Duffy** <jim.duffy55@comcast.net>
Date: Wed, Jun 7, 2017 at 3:07 PM
Subject: Settlement
To: Richard O'Connor <richard@tgapholdings.com>

Richard, I understand CTI has made you an offer to settle your claims against the company. The stockholders I represent are in agreement on several issues.

1—Justin Beck has to resign from CTI and forfeit his Common & Preferred stock.

2—Richard Probst has to resign from CTI and forfeit his Common & Preferred stock.

3—Richard O'Conner to receive $500,000.00 which includes money owed in contracts.

4—You need an accounting of all back salaries that have not been paid and need to come to an agreement for settlement.

5—Richard you need to be named Chair of the Board. No money spent over $500.00 without your approval.

6—You and Justin agree on news articles

James Duffy

---

Avast logo    This email has been checked for viruses by Avast antivirus software.
www.avast.com

Document received by the CA 4th District Court of Appeal Division 3.

**EXHIBIT 7**

Document received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 025
22-CV-01616-BAS-DDL

**Subject:** Re: Amy - from Justin @ CTI
**Date:** Friday, May 5, 2017 at 12:00:00 PM Pacific Daylight Time
**From:** Amy Cooper
**To:** Justin Beck

Thanks Justin, I will convey these points when I talk to Mo.  I got a call from Rick Mesa this am.  Apparently, he's talked to Mo and has some real concerns about CTI and wants to get my take.  Did he receive the e-mail Rana sent the other day?

Take care,

Amy

Sent from my iPhone

On May 5, 2017, at 9:27 AM, Justin S. Beck <justin@cultivationtech.com> wrote:

> Amy,
>
> Thank you for touching base yesterday.
>
> If you do speak with Dr. Zhakireh, we would appreciate you relaying your honest opinions (based upon experience) regarding:
>
> 1) Mr. O'Connor and Mr. Scudder's capacity to run CTI or any company;
>
> 2) Management's dedication to the company and capacity to run CTI or any company;
>
> 3) How litigation severely inhibits CTI purely based upon negative publicity;
>
> We sincerely hope Dr. Zhakireh comes to realize what is happening -- it is difficult to convey as he is not willing to meet with us. It isn't too late for him to drop the suit entirely, and more importantly rescind his statements to media.
>
> Although CTI is confident that we will prevail in any litigation, nobody wins if this effort continues to affect our ability to move forward.
>
> We expect to get through this as we have other hurdles.
>
> Sincerely,
>
> Justin
>
> --
> **Justin S. Beck**, Chairman of the Board
>
> **O:** (888) 851-9802  |  **C:** (760) 449-2509
> One Technology Drive, J-703   Irvine, CA  92618

Document received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 026
22-CV-01616-BAS-DDL

**E-MAIL CONFIDENTIALITY NOTICE:** This message is for informational purposes only and does not constitute an offer or solicitation to sell shares or securities in Cultivation Technologies, Inc. (the "Company") or any related or associated company. Any such offer or solicitation will be made only by means of the Company's confidential Offering Memorandum and in accordance with the terms of all applicable securities and other laws. None of the information or analyses presented are intended to form the basis for any investment decision, and no specific recommendations are intended. Accordingly this message does not constitute investment advice or counsel or solicitation for investment in any security. This message does not constitute or form part of, and should not be construed as, any

Document received by the CA 4th District Court of Appeal Division 3.

Page 2 2

**EXHIBIT 8**

Document received by the CA 4th District Court of Appeal Division 3.

**Subject:**     Fwd: CTI Financial information and settlement offer in the Root matter (Privileged)
**Date:**        Thursday, October 4, 2018 at 8:52:01 AM Pacific Daylight Time
**From:**        Sam Y. Edgerton, III
**To:**          Rob Burnheimer, Miguel Motta, Justin Beck, Irv Einhorn, Jill Johnson
**Attachments:** image001.gif, image002.png

See below. Not out of the woods yet.

Sam Edgerton

Sent from my iPhone

Begin forwarded message:

> **From:** "Sam Y. Edgerton, III" <sedgerton@fmglaw.com>
> **Date:** October 4, 2018 at 8:47:10 AM PDT
> **To:** Kenneth Catanzarite <kcatanzarite@catanzarite.com>
> **Cc:** Nikki Sachdeva <nsachdeva@fmglaw.com>
> **Subject: Re: CTI Financial information and settlement offer in the Root matter (Privileged)**
>
> Ken,
>
> I am not following your logic. There were only three Directors in place at the time at Mobile Farming when it was decided to spin off CTI. The spin off
> was fully disclosed so the argument you make that MFS shareholders were unaware will fail. All but a small number bought shares of CTI at the discounted price. Your client also signed the election to purchase but did not follow through. We are offering him the opportunity to purchase those shares now in recognition of your argument that he was unaware that he had not completed the transaction.
>
> All of your other arguments are disingenuous to that transaction and presumes, incorrectly, that MFS did not have the corporate authority to spin off CTI as a separate company.
> Moreover, your demand is personal as to Root, not derivative as to MFS, which is the nominal defendant. Did your client even ask MFS to prosecute his action as a required prerequisite to filing your complaint?
>
> Finally, the shares given to the CTI directors was done by the CTI board in full compliance of all applicable laws. Even if you are correct that these CTI shares should not have been issued to its Directors and other people working for the corporation, the shares at issue would be going back to MFS, not your client.
>
> In short, your lawsuit is veiled as a derivative suit when it is not.
>
> Please reconsider your position. Your client may be liable for vexatiously interfering in the business of CTI, where he is not a shareholder and has no standing to sue.
>
> Sam Edgerton
>
> Sent from my iPhone

Document received by the CA 4th District Court of Appeal Division 3.

On Oct 4, 2018, at 7:32 AM, Kenneth Catanzarite <kcatanzarite@catanzarite.com> wrote:

Sam: Thanks for the time yesterday I reviewed your proposal with Mr. Root's power holder. Obviously, you and the directors and officers are working from a fully informed position with all the financial information. Keep in mind that what we demand in settlement come is the main from the Founders who from our perspective should be more than willing to put this behind them. I have reviewed the matter with my client and our response is as follows:

1. The founders collectively will deliver 10,000,000 Founders shares to Root along with whatever proportionate rights to other shares they obtained as a result of that ownership. In other words they will convey as well any stock, options, warrants and/or convertible note rights and interests to Root in proportion to 10 million to the 23 million shares issued. The founders should be willing to do this because if as you say the company has no value then they should be more than wiling to convey these shares. It allows them to retain in our view 13 million shares and rights that they bought for $13,000 and had no right to in the first place. And of course conveying the 10 million shares are shares they paid only $10,000 for in full.

2. Such securities delivery to Root shall be lien free and coupled with a representation and warranty by the conveying defendant and CTI that the same are validly issued and acknowledge the transfer.

3. The Defendants will pay $600,000 to Root payable $200,000 now and the balance of $400,000 over 5 years at 8% fully amortized. Secured by the remaining 13 million Founders shares. Again they paid only $13,000 for these shares.

4. Root's designee gets a seat on the CTI board.

5. Mutual releases.

6. Confidentially.

7. Note that if we settle this among the Founders as a group they can agree to make these payments and CTI does not book this as a liability.

8. Carve out for New Body MD claims against those named defendants.

This offer shall remain open until the close of business on Friday October 5 whereupon the same if not unconditionally accepted is withdrawn.
Ken


**From:** Kenneth Catanzarite
**Sent:** Thursday, October 04, 2018 4:47 AM
**To:** 'Sam Y. Edgerton, III' <sedgerton@fmglaw.com>
**Subject:** RE: CTI Financial information and settlement offer in the Root matter (Privileged)

I will convey this to my client and get back to you.
Meanwhile attached is a complaint filed against Rana and O'Connor.
If we are to settle with them we would need to carve out these claims.
Ken

ocument received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 030
22-CV-01616-BAS-DDL

***Kenneth J. Catanzarite***
Catanzarite Law Corporation
2331 West Lincoln Avenue
Anaheim,  CA  92801
**Direct Dial: (714) 678-2100**
**Direct Fax: (714) 399-0577**
Office Phone: (714) 520-5544
Office Fax: (714) 520-0680

 AA NOTICE: This

E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential, may be legally privileged and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please: (i) notify the sender immediately that you have received the message in error; (ii) delete the message and all copies; and (iii) do not disclose, distribute or use the message in any manner. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. Thank you.

**From:** Sam Y. Edgerton, III [mailto:sedgerton@fmglaw.com]
**Sent:** Wednesday, October 03, 2018 5:04 PM
**To:** Kenneth Catanzarite <kcatanzarite@catanzarite.com>
**Subject:** FW: CTI Financial information and settlement offer in the Root matter (Privileged)

Ken,

It was nice speaking with you today. As we discussed, Cultivation Technology, Inc. ("CTI") is still a fledgling company in debt and searching for capital to continue operations.

This much is confirmed by the attachment. Consequently, I suggest that we settle all claims against the defendants in the Root matter in exchange for the CTI shares that you contend Mr. Root should have received (450,000 privately held shares of CTI) and, a cash payment of $25,000.

We can agree to disagree that your client would be entitled to anything else if victorious at trial, but this stock offer clearly puts him in a position to become a significant CTI shareholder based upon his prior investment in Mobile Farming Systems, Inc.

Time is of the essence as CTI is in danger of collapsing if new investors are not found immediately.

Please discuss with your client and get back to me tomorrow.

Thank you in advance.

**Sam Y. Edgerton, III**
**Freeman Mathis & Gary, LLP**
**2615 Pacific Coast Highway | Suite 300 | Hermosa Beach, CA 90254**
**D: 424.352.1840 | C:310.466.2012 | F: 424.350.3843**
sedgerton@fmglaw.com | www.fmglaw.com
<image002.png>
A *Corporate Counsel Magazine* "Go-To Law Firm®" for litigation
**California | Florida | Georgia | New Jersey | New York | North Carolina | Pennsylvania**
Please read this important notice and confidentially statement

P.S. See https://www.fincannacapital.com/royalty-portfolio/cultivation-

EXHIBIT #128: 031 Page 3 4
22-CV-01616-BAS-DDL

ocument received by the CA 4th District Court of Appeal Division 3.

technologies/

You can see FinCanna's secured investment for $6M.  As we discussed, it is pulling out.

---

**Total Control Panel**                                                                 Login

To:                                    Message Score: 50              High (60): Pass
kcatanzarite@catanzarite.com           My Spam Blocking Level: High   Medium (75): Pass
From:                                                                 Low (90): Pass
sedgerton@fmglaw.com
                                       Block this sender
                                       Block fmglaw.com

*This message was delivered because the content filter score did not exceed your filter level.*

Document received by the CA 4th District Court of Appeal Division 3.

# EXHIBIT 9

ocument received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 033
22-CV-01616-BAS-DDL

| | |
|---|---|
| **Subject:** | Fwd: Mobile Farming Systems, Inc. ("MFS") and Cultivation Technologies, Inc. ("CTI") |
| **Date:** | Tuesday, February 26, 2019 at 1:56:25 PM Pacific Standard Time |
| **From:** | Rex Loesby |
| **To:** | Justin Beck |
| **Attachments:** | image001.gif, 190128 Complaint.pdf, 190129 Summons.pdf |

Justin:
   The rats are popping up!  I will leave any response on this to your attorneys.  Thanks.

Rex

---------- Forwarded message ---------
From: **Kenneth Catanzarite** <kcatanzarite@catanzarite.com>
Date: Tue, Feb 26, 2019 at 1:49 PM
Subject: Mobile Farming Systems, Inc. ("MFS") and Cultivation Technologies, Inc. ("CTI")
To: Rex Loesby (rexloesby@gmail.com) <rexloesby@gmail.com>

Mr. Loesby: I just called the number on the news release for Western Troy Capital Resources ("Troy") at 303-771-9610 and note that there was no receptionist and a voice mail message with your name only and no mention of Troy.

Attached is litigation asserting that MFS is the sole shareholder of CTI. You have not consulted Mr. O'Connor who is the CEO of MFS and CTI and as such he has not agreed to any RTO such as you describe. If you would like to discuss a transaction then you need to be talking to MFS and Mr. O'Connor.

**As such we dispute and object to any agreement purportedly by and between Western Troy and CTI. Kindly withdraw your notice and engage in meaningful negotiations with Mr. O'Connor.**

I would be willing to discuss the merits of a transaction with your company but it appears to have no assets or operations of any value. If you disagree then please support your value numbers. Moreover, we see no justification for Western Troy shareholders with a valueless company to be entitled to  8,781,994 shares out of a proposed 67,392,515 or 13% of CTI for purposes of an RTO.

I also note from your website the following disturbing entry:

# Western Troy Trading to Resume & NEX Notice

**December 7, 2018, Toronto, Ontario - Western Troy Capital Resources (TSX Venture: WRY)** ("Western Troy") announced today that the securities of Western Troy will resume trading effective December 11, 2018. A trading halt has been in place since June 29, 2018 as a result of the announcement of the proposed reverse takeover (RTO) transaction with MASGLAS Peru S.A.C. As announced on December 4, the RTO transaction was terminated.

Document received by the CA 4th District Court of Appeal Division 3.

The TSX-V has informed Western Troy that is does not currently meet Continued Listing Requirements and that the TSX-V will give Western Troy three months to meet those requirements. If Western Troy is unable to bring itself into compliance by March 6, 2019, then it will be transferred to the NEX.

Quoting from the TMX Website, "NEX is a unique and separate board of TSX Venture Exchange. It provides a unique trading forum for listed companies that have fallen below TSX Venture's ongoing listing standards." More information on the NEX can be found on the TMX Website:

http://apps.tmx.com/en/nex/aboutUs/about.html

# Western Troy Capital Resources Inc.

Western Troy Capital Resources, Inc. engages in acquisition, exploration, and evaluation of properties for the mining of precious and base metals. It focuses on MacLeod Lake and Willow Creek Gold projects. The company was founded on November 8, 1989 and is headquartered in Toronto, Canada

**THE STOCK INDICATES NO VALUE**

Volume: 200 65 Day Avg. - 5.5K

OPEN: 0.00

CLOSE: 0.10

0.00 Day Low/High 0.00

DAY RANGE

0.05 52 Week Low/High 0.10

Please return my call and we can discuss this matter if you would like.

Ken

*Kenneth J. Catanzarite*
Catanzarite Law Corporation
2331 West Lincoln Avenue
Anaheim, CA 92801
**Direct Dial: (714) 678-2100**
**Direct Fax: (714) 399-0577**
Office Phone: (714) 520-5544
Office Fax: (714) 520-0680

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential, may be legally privileged and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please: (i) notify the sender immediately that you have received the message in error; (ii) delete the message and all copies; and (iii) do not disclose, distribute or use the message in any manner. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses. Thank you.

ocument received by the CA 4th District Court of Appeal Division 3.

--
Rex Loesby, CEO
Western Troy
Tel/Cell:  303-771-9610

EXHIBIT #128: 036
22-CV-01616-BAS-DDL

Page 3 of 3

ocument received by the CA 4th District Court of Appeal Division 3.

# EXHIBIT 10

EXHIBIT #128: 037
22-CV-01616-BAS-DDL

ocument received by the CA 4th District Court of Appeal Division 3.

On Thu, Jun 15, 2017 at 11:03 AM, Dr. Mo Zakhireh <drmo@csipd.com> wrote:

Dear Mr Motta,

I see that your campaign of mis- information continues. Maybe it's difficult to teach an old dog new tricks? Or perhaps this being your second language it is not your strongest virtue. Either way, please let me note that the lawsuits were not dismissed. They were voluntarily withdrawn in good faith in order to ensure the shareholders would get a fair share in seeing their hard earned moneys come to bear their fruits. Which leads me to the next point of contention.... The 12 million shares that are still illegally in your possession. Do not think that things are resolved by any means. You still have a long ways to go towards earning your over inflated salary.

Respectfully,

Mo Zakhireh, MD

(The angry Jewish Doctor from Palm Springs)

**EXHIBIT 11**

ocument received by the CA 4th District Court of Appeal Division 3.

EXHIBIT #128: 039
22-CV-01616-BAS-DDL

Begin forwarded message:

**From:** mo zakhireh <mo.zakhireh@gmail.com>
**Date:** May 1, 2017 at 4:59:10 PM PDT
**To:** Jim Ferguson <jim@govlaw.com>
**Subject: Re: Fwd: Request for Immediate Lis Pendens Expungement**

Dear Jim,

I appreciate the gravity of this situation. As a shareholder of CTI, I reserve the right to put a stop to any wrongdoing, self dealing, and mismanagement of MY hard earned money. Please tell team CTI to kiss my hairy Iranian ass. While you're at it, please let Mr Horwitz know that my friendly advice to him is to recuse himself of this case immediately.

Respectfully,

Mo Zakhireh

On May 1, 2017 1:46 PM, "mo zakhireh" <mo.zakhireh@gmail.com> wrote:
Tell him to kiss my hairy Iranian ass.