EXHIBIT 131

Showing Preservation of Evidence Letter

Showing Acceptance Imputed to The State Bar
of California, Board of Trustees, Office of
General Counsel

Showing Conspiracies and Overt Acts
Thereafter

Proving Deliberate Concealment of State
Liability, Constructive Fraud by Board of
Trustees

Showing Lack of Candor Before Every
Tribunal by GRANDT, DURAN

EXHIBIT #131: 001
22-CV-01616-BAS-DDL

 Gmail

Justin Beck <justintimesd@gmail.com>

## Statutory Request for Information from State Bar

Justin Beck <justintimesd@gmail.com>                                          Thu, May 12, 2022 at 10:36 AM
To: "Andresen, Carissa" <Carissa.Andresen@calbar.ca.gov>, "Randolph, Joan" <Joan.Randolph@calbar.ca.gov>
Cc: ruben.duran@bbklaw.com

Ms. Andresen,

Thank you for confirming my October 14, 2021 preservation of evidence letter. You should also have received the first
batch of RFAs and FROGs by e-service over the weekend (thus far, only to The State Bar of California and its PMK).

If you still determine the discovery requests to be too broad -- I'm willing to compromise with formal summaries of the
applicable INCIDENT sections within reason should they lack evidence or should it be sensitive. Let's discuss this by
phone or come back to me via email with any concerns after you've digested the RFAs and FROGs.

Please also see the attached request for "any information" known to State Bar, including summaries of the responses
requested from Catanzarite related to the Catanzarite Cases. This request is discrete of the discovery as it seems to be a
statutory right to information.

Justin

--

**Justin Beck**
**760-449-2509**

*This email is informational and planning purposes only and does not constitute an offer or solicitation to sell shares or
securities in any company (the "Company"). Any offer or solicitation will be made only by means of a confidential Offering
Memorandum and in accordance with the terms of all applicable securities and other laws. None of the information or
analyses presented are intended to form the basis for any investment decision, and no specific recommendations are
intended. Accordingly, this email does constitute investment advice or counsel or solicitation for investment in any security.
This email or its contents and attachments do not constitute or form part of, and should not be construed as, any offer for
sale or subscription of, or any invitation to offer to buy or subscribe for, any securities, nor should it or any part of it form
the basis of, or be relied on in any connection with, any contract or commitment whatsoever. The Company and Justin Beck
expressly disclaim any and all responsibility for any direct or consequential loss or damage of any kind whatsoever arising
directly or indirectly from: (i) reliance on any information contained in this email or its attachments, (ii) any error, omission
or inaccuracy in any such information or (iii) any action resulting therefrom. The Company and Justin Beck make no
warranties or representations on the ability to finalize any initiatives outlined within this email or its attachments. This
information is being provided upon request only.*

📄 **State Bar Letter for Statutory Requests.pdf**
83K

EXHIBIT #131: 002
22-CV-01616-BAS-DDL

May 12, 2022

Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC

Dear Ms. Andresen,

I write in reply (Exhibit 1) to your response to my preservation of evidence letter (Exhibit 2). As your reply comes nearly seven months after the Claim Notice was delivered in good faith on or around October 14, 2021 – hopefully you understand the wide net I initially cast which has since become narrow (Exhibit 3).

I reasonably expected you would assert privilege or confidentiality to protect your licensees, Public Employees, and The State Bar of California. Here is my position:

- "Fraud" or "fraudulent" definitions (CRPC 1.01) will govern any conduct involving State Bar licensees, whom are all bound by CRPC via BPC 6077, in this case.

- Conduct which meets the definitions of fraud or fraudulent involving State Bar licensees, including but not limited to Public Employees, may erode any form of privilege.

- If defendants choose to assert privilege in any event, I allege the burden will shift to prove Public Employees, and each of them, acted within a reasonable standard of care.

- I won't need to rely upon any assertedly privileged communications or otherwise privileged information to prove civil elements of each cause of action in my FAC.

- Respecting your reliance upon BPC 6086.1, subd. (b), BPC 6094, subd. (a), Evid. Code Section 1040 – I also know "The Chief Trial Counsel or Chair of the State Bar may waive confidentiality, but only when warranted for protection of the public."

- Chief Trial Counsel and Chair of the State Bar's response to information known to them is governed by BPC 6086.10 – in that they can choose to assign their apparent obligation to decide whether Catanzarite (and others) pose a threat to public interest.

- Specifically, while "(b) All disciplinary investigations are confidential until the time that formal charges are filed and all investigations...are confidential until the formal proceeding...instituted,"

  - "(2) **The Chief Trial Counsel or Chair of the State Bar** may waive confidentiality, but only when warranted for protection of the public...If the Chief Trial Counsel or Chair of the State Bar **for any reason declines to exercise the authority provided by this paragraph, or disqualifies himself or herself from acting under this paragraph, he or she shall designate someone to act in his or her behalf. Conduct**

EXHIBIT #131: 003
22-CV-01616-BAS-DDL

of a licensee that is being inquired into by the State Bar but that is not the subject of a formal investigation shall not be disclosed to the public," and

- o "(3) The Chief Trial Counsel or his or her designee may waive confidentiality pursuant to Section 6044.5",

- o Chief Trial Counsel and Chair of the State Bar are aware of 34 material violations of CRPC involving Catanzarite and other attorneys according to clear and convincing evidence that is publicly available, and they each have a duty to act or assign someone to act if they are conflicted when presented with such evidence.

- "(c) Notwithstanding the confidentiality of investigations, the State Bar shall disclose to any member of the public so inquiring, any information reasonably available to it pursuant to subdivision (o) of Section 6068, and to Sections 6086.7, 6086.8, and 6101, concerning a licensee of the State Bar which is otherwise a matter of public record, including civil or criminal filings and dispositions."

As such, I've delivered a statutory request (Exhibit 4) for the information known to the State Bar separate of my initial discovery requests. Please do not direct me to what is "publicly available" on your licensees when responding to my statutory request for information.

In discovery, I'm seeking information known to the State Bar about licensees who have violated the public trust. If certain information that is "publicly available" or was mandated to be reported by licensees isn't known to the State Bar about its licensees, then I will seek to prove that, in and of itself, is negligent and/or reckless. If there is evidence of serial misconduct by licensees that harms members of the public – and nobody at State Bar chose to inform the public or otherwise exercise reasonable care to reduce future harm – then that's another form of negligence I seek to establish in this case.

Through this letter, I'm formally seeking Mr. Duran as "Chair of the State Bar" pursuant to BPC 6086.10(b)(2) to either exercise authority under that section (to waive confidentiality RE: Catanzarite Cases to protect the public), or to assign someone to act on his behalf to make that decision.

I will assume such decision will be guided by BPC 6001.1; that it will not be influenced by the prosecution of my action; and will not involve any violations of CRPC 1.7 or CRPC 5.1 by the "law firm" The State Bar of California.

Sincerely,

Justin Beck

EXHIBIT #131: 004
22-CV-01616-BAS-DDL



The State Bar
*of California*

**OFFICE OF GENERAL COUNSEL**

180 Howard Street, San Francisco, CA 94105

carissa.andresen@calbar.ca.gov
415-538-2029

May 12, 2022

**Via Certified Mail and Email to: justintimesd@gmail.com**

Justin Beck
3501 Roselle Street
Oceanside CA 92056

RE:    *Justin S. Beck v. State Bar of California, et al.*
       Orange County Superior Court Case No. 30-2021-01237499-CU-PN-WJC

Dear Mr. Beck:

This letter acknowledges receipt of your May 3, 2022 email attaching an October 14, 2021 letter re Preservation of Evidence Request. The letter requests preservation of "evidence related to" fifteen identified subject matters, summarized as follows:

- Confidential information regarding specific disciplinary matters;
- Publicly available information regarding outcomes in disciplinary cases;
- Information related to alleged State Bar "interests" "that took priority over public interests" and State Bar communications pertaining thereto;
- Analyses of the "most common categories of complaints that do not result in discipline;"
- Financial information related to the attorney discipline system;
- Internal policies of the State Bar; and
- "Any and all matters or evidence reasonably related to attorney discipline that may be relevant to" complaints you filed against specific attorneys or your allegations of the State Bar's negligence and "promotion of any other interest at the State Bar above the public interest."

As described further below, your request is vague, overly broad, and seeks information that is either protected from disclosure or otherwise publicly available to you. Nevertheless, the State Bar will comply with all applicable evidence preservation requirements established by law.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

EXHIBIT #131: 005
22-CV-01616-BAS-DDL

*Beck v. State Bar*
May 12, 2022
Page 2

Any and all State Bar disciplinary investigation records are confidential unless and until disciplinary charges are filed. (Bus. & Prof. Code § 6086.1, subd. (b).) As such, the State Bar is unable to disclose any information regarding such investigations. Additionally, California law recognizes a separate and distinct privilege for communications related to a State Bar investigation. (Bus. & Prof. Code, § 6094, subd. (a).) Moreover, State Bar records of disciplinary investigations are also protected from disclosure by California's statutory official information privilege. (Evid. Code, § 1040; *Marylander v. Superior Court, supra,* 81 Cal.App.4th 1119, 1128.)

Your requests for information related to alleged "State Bar interests" are vague, ambiguous, overly broad, and appear to be based on your conclusions rather than objective descriptions. As such, your requests fail to identify with reasonable particularity the "evidence" to which you are referring and the State Bar would object to requests for such information on that basis. (Cal. Code Civ. Proc., §§ 1985, subd. (b), 2020.410, subd. (a).) (See *Calcor Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 221-22.)

Finally, some of the information identified in your request is already publicly available, including public records of attorney discipline, which can be accessed through the State Bar Court website at https://www.statebarcourt.ca.gov/.

If you wish to discuss this matter, I can be reached at 415-538-2029 or Carissa.Andresen@calbar.ca.gov.

Sincerely,

*/s/ Carissa Andresen*

Carissa Andresen
Assistant General Counsel

EXHIBIT #131: 006
22-CV-01616-BAS-DDL

Justin S. Beck
3501 Roselle St.
Oceanside, CA 92056

October 14, 2021

The State Bar of California
Office of Chief Trial Counsel
845 S. Figueroa St.
Los Angeles, CA 90017

ATTN: Anand Kumar, Supervising Attorney; Eli Morgenstern, Prosecutor; Joy Nunley,
Investigator; Complaint Review Unit; Any Evidentiary Custodians

RE:     Preservation of Evidence Request

To Whom it May Concern:

This is formal notice of my claims against The State Bar of California and its employee DOES 1-50
(together "State Bar") pursuant to the California Tort Claims Act (CTCA).

My dispute centers on not less than $15,500,000 in economic damages and a request for
injunctive relief caused by negligence of the State Bar after June 28, 2021 and other damages
before June 28, 2021, which negligence is supported by the Auditor of the State of California's
("Auditor") findings in Report Number 2020-030 and all prior reports related to the State Bar,
and proven through my personal experience that the State Bar negligently prioritizes and seeks
to promote the interests of "delinquent attorneys" rather than protect members of the public
like me as a matter of practice and policy. Employee negligence is among the circumstances that
limit sovereign immunity for the State of California, and I intend to sue absent settlement.

Negligence under California law means "the failure to use reasonable care to prevent harm to
oneself or to others." Negligence includes a failure to act when you owe a duty to another
individual. Here, employees at the State Bar owe me a duty as a member of the public according
to Bus. & Prof. Code 6001.1 where "protection of the public…shall be the highest priority for the
State Bar of California…whenever protection of the public is inconsistent with other interests
sought to be promoted, the protection of the public shall be paramount."

According to the Auditor in Report Number 2020-030: "The State Bar's Restructuring of Its Trial
Counsel's Office Has Not Fulfilled the Requirements of State Law or Addressed Our Prior
Recommendations." The Auditor's Report 2015-030 and a state law that took effect in 2016
required that the State Bar implement a workforce plan to improve its protection of the public.
Between 2015 and 2020, that plan has failed, and it has damaged me beyond repair.

EXHIBIT #131: 007
22-CV-01616-BAS-DDL

In accordance with CTCA, I have prepared the information and claim form together with evidentiary exhibits and objectively verifiable economic damages of at least $15,500,000 (fifteen million five hundred thousand dollars) for the Government Claims Program, which will be delivered to the Claims Officer and Office of the Secretary of the State Bar at 180 Howard Street, San Francisco, CA 94105 as early as Monday, October 18, 2021.

I hereby respectfully request all parties at the State Bar in possession of all potentially relevant evidence be noticed (whether such potentially relevant evidence is in paper form or exists in electronic data of any type) to preserve such potentially relevant evidence related to the following subject matters:

- Catanzarite Law Corporation, Kenneth Joseph Catanzarite, Brandon Woodward, Tim James O'Keefe, Nicole Marie Catanzarite-Woodward, and Jim Travis Tice (together "Catanzarite"), including any complaints, dispositions of complaints, disciplinary analysis, discipline, and all evidence related thereto from me or any third-party from 2010 through present.

- Any and all internal assessments, communications by and between the State Bar and the Auditor, and communications by and between State Bar employees regarding the Auditor's findings about the State Bar pertaining to attorney discipline and any or all other interests promoted by the State Bar that caused may have caused a material adverse effect to its primary duty to protect the public above such interests.

- Any and all policies and procedures related to attorney discipline including any procedural changes thereto from 2010 to present, and statistical analysis of such changes in furtherance of protecting the public interest.

- Any and all policies and procedures related to the Complaint Review Unit.

- Any and all State Bar disciplinary cases that resulted in disbarment, suspension, or disgorgement of State Bar member attorneys between 2010 and present, and the basis thereof. I understand this information may be redacted if a Court allows its use.

- Any analysis or evidence related to the State Bar's "most common categories of complaints that do not result in discipline."

- Any internal interest sought to be promoted by the State Bar that took priority over public interests, such as effectively overhauling its attorney disciplinary system from 2010 to present to comply with the law.

- All financial information related to its attorney discipline system and related costs, and all financial information related to any other interest sought to be promoted by the State Bar.

EXHIBIT #131: 008
22-CV-01616-BAS-DDL

- All communication by and between the State Bar and members of the Public Interest Task Force related to attorney discipline, and the resulting actions taken therefrom.

- All reports from the Public Interest Task Force from May 15, 2014 through present pertaining to attorney discipline or reasonably related to negligence by the State Bar.

- All communications from the Board of Trustees to employees of the State Bar related to attorney discipline and the Auditor findings related thereto.

- All internal and external communications related to my complaints against Catanzarite, including the notices I requested by the State Bar to the Public Interest Task Force.

- All details of all investigations and State Bar employee meetings, communications, and analysis related to my complaints against Catanzarite since 2019.

- All attorney discipline related to SB176 resulting in the State Bar Court's involuntary inactive enrollment of any attorney for any reason, and the related analysis on how any attorney "has caused or is continuing substantial harm to the attorney's clients or the public." I understand this information may be redacted if a Court allows its use.

- Any and all matters or evidence reasonably related to attorney discipline that may be relevant to Catanzarite, my case, and my allegations of negligence of the State Bar related to protection of the public and attorney discipline or promotion of any other interest at the State Bar above the public interest. I understand certain information may be redacted if a Court allows its use.

It is necessary to preserve all potentially relevant evidence because my significant claims center on the ongoing negligence of the State Bar before my complaints, the State Bar's negligence upon receipt thereof including notice of trial court orders and prima facie evidence that would sufficiently result in judgments against a member of the public (but, according to the State Bar, not an attorney), the State Bar's negligence in deference to Catanzarite's rights over mine and the public interest despite a Court of Appeal's findings of probative conduct sufficient to disbar them according to statute, and the State Bar's negligence in promoting other interests instead of the public interest.

Any spoliation of evidence such as concealment or destruction may entitle me to adverse inference jury instruction should my case proceed to trial. I interpret any such destruction as a violation of the State Bar's primary statutory duty. Finally, to avoid any unintentional destruction or alteration of evidence that may affect my case against the State Bar, please inform all employees of the State Bar that could have such evidence to immediately suspend any automatic document destruction or data deletion policies or practices, and ensure this notice is circulated to any and all potential or actual evidentiary custodians.

Please confirm receipt of this preservation of evidence request. Any unintentional omission from me in this list is not a waiver of my potential right to information, and I expressly reserve all rights. Feel free to contact me with any questions via email: justintimesd@gmail.com

Thank you for your cooperation.

Sincerely,

Justin S. Beck

1  Justin S. Beck
   justintimesd@gmail.com
2  3501 Roselle St.
   Oceanside, California 92056
3  760-449-2509

4  *In Pro Per*

5              **IN THE SUPERIOR COURT OF CALIFORNIA**

6                       **COUNTY OF ORANGE**

7  JUSTIN S. BECK, an individual          )  Case No: 30-2021-01237499-CU-PN-CJC
                                          )
8                    Plaintiff,           )  Judge Assigned: Honorable John C. Gastelum
                                          )
9         v.                              )
                                          )  **PLAINTIFF JUSTIN S. BECK'S SEC. 4(a)(2)**
10 THE STATE BAR OF CALIFORNIA, a public  )  **INCIDENT DEFINITION FOR SET 1 OF**
   corporation and public entity; ANAND KUMAR, ) **FORM INTERROGATORIES**
11 an individual employee acting in an official )
   capacity; ELI DAVID MORGENSTERN, an    )  **DEFINED TERMS GOVERNING**
12 individual employee acting in an official capacity; ) **INCIDENT AND REQUEST FOR**
   JOY NUNLEY, an individual employee acting in ) **ADMISSIONS SET 1**
13 an official capacity; THE STATE OF     )
   CALIFORNIA, a state and public entity; and ) **REQUEST FOR ADMISSIONS SET 1**
14                                         )  **(ATTACHMENT 1) TO DEFENDANT THE**
   DOES 1-30                              )  **STATE BAR OF CALIFORNIA**
15                                         )
                                          )
16                   Defendants           )
                                          )  **Unlimited Civil Case**
17                                         )
                                          )  [Filed concurrently with Form Interrogatories-
18                                         )  General; Requests for Admission Declaration
                                          )  Form; E-Service Notice & Declaration]
19 ─────────────────────────────────────  )

20

21

22

23

24

25     PROPOUNDING PARTY:    JUSTIN S. BECK

26     RESPONDING PARTY:     THE STATE BAR OF CALIFORNIA

27     SET NUMBER:           ONE (1)

28

---

                                    -1-
PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 011
22-CV-01616-BAS-DDL

To the person most knowable (PMK) for Defendant and Respondent The State Bar of California, a public entity, and to its attorney of record:

This supplement to FORM INTERROGATORIES-GENERAL (SET 1) from Propounding Party Justin S. Beck to Defendant and Respondent The State Bar of California defines terms governing this document and answers from Respondent, followed by a series of alleged acts or omissions that caused Injury to Plaintiff to define INCIDENT under Sec. 4(a)(2) of FORM INTERROGATORIES-GENERAL (SET 1) followed by REQUEST FOR ADMISSIONS from The State Bar of California (SET 1, No. 1-32).

The INCIDENT description for FORM INTERROGATORIES-GENERAL (SET 1) and REQUEST FOR ADMISSIONS (SET 1, No. 1-32) as well as the answers from Respondent shall utilize (whether or not capitalized, BOLDFACE, or lowercase) the following definitions.

**I. DEFINITIONS UNDER INCIDENT & REQUEST FOR ADMISSION (SET 1)**

**Definitions under CRPC 1.01 with Comments or Other California Code Sections**

**"Belief" or "believes" "firm, "law firm,"[1] "fraud" or "fraudulent,"[2] "informed consent," "informed written consent," "knowingly," "known," "knows," "partner," "reasonable" or "reasonably," "reasonable belief" or "reasonably believes," "reasonably should know," "screened," "substantial," "tribunal," "writing" or "written"** shall have the meanings ascribed to them by California Rules of Professional Conduct (CRPC) Rule 1.01 ("Terminology"), which are already binding upon all licensees of State Bar, including public employees who are licensees of State Bar or other public entities, under Business and Professions Code section 6077.

---

[1] All licensees of State Bar are bound to CRPC by BPC 6077, including public employees. State Bar meets the definition of firm or law firm, and its licensed public employees are subject to CRPC 5.1 when on notice of misconduct.

[2] Elements of "fraud" or "fraudulent" CRPC 1.01(d) are reduced for attorneys (including public employees), which would otherwise [3] "frustrate the imposition of discipline on lawyers who engage in fraudulent conduct."

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 012
22-CV-01616-BAS-DDL

"**Person**" shall have the meaning per Evidence Code section 175, where "Person" includes a natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity.

"**Writing(s)**" or "**Written**" or "**Document(s)**" shall have the meaning of "Writing" per Evidence Code section 250 where handwriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

"**Corruption**" or "**corruption**" (and "**Corrupt**" or "**corrupt**") shall have the meaning of any/each official or unofficial writing, written information, act, or omission that may constitute, according to proof in trial, fraud or systemic corruption or is otherwise proven to violate PEN 92 where "[e]very person who gives or offers to give a bribe to any judicial officer, juror, referee, arbitrator, or umpire, or to any person who may be authorized by law to hear or determine any question or controversy, with intent to influence his vote, opinion, or decision upon any matter or question which is or may be brought before him for decision" such as material transactions involving un-waivable conflicts involving State Bar licensees,  and "Corruption" shall also include any each/any Writing or systemic corruption (or endemic corruption), "which is primarily due to the weaknesses of an organization or process" and can be "contrasted with individual officials or agents who act corruptly within the system." Factors which encourage [and may be indicative of] systemic corruption [per Wikipedia on May 7, 2022] include conflicting incentives, discretionary powers; monopolistic powers; lack of transparency; low pay; and a culture of impunity.[17] Specific acts of corruption include "bribery, extortion, and embezzlement" [or other violations of law applicable to licensees] in a system where "corruption becomes [or can become] the rule rather than the exception."[18] Scholars distinguish between centralized and decentralized systemic corruption, depending on which level of state or

-3-

EXHIBIT #131: 013
22-CV-01616-BAS-DDL

1    government corruption takes place; in countries such as the Post-Soviet states both types
2    occur.[19] Some scholars argue that there is a negative duty[clarification needed] of western governments to
3    protect against systematic corruption of underdeveloped governments.[20][21]    Per R.
4    Klitgaard[26] (1998), Controlling Corruption, University of California Press, Berkeley, CA: "corruption
5    will occur if the corrupt gain is greater than the penalty multiplied by the likelihood of being caught
6    and prosecuted" and thus includes acts or omissions of State Bar licensees acting in an official or
7    unofficial capacity to violate or assist in the violation of CRPC, BPC 6001.1, or BPC 6077, or other
8    acts or omissions of State Bar that may, according to proof in trial, compromise or otherwise
9    undermine the judicial process for members of the public by State Bar or State Bar licensees.
10   Corruption shall also include any act of impunity involving State Bar and its licensees.

11

12   **"Impunity"** shall mean "exemption from punishment or loss or escape from fines".[1] In
13   the international law of human rights, it refers to the failure to bring perpetrators of human rights
14   violations to justice and, as such, itself constitutes a denial of the victims' right to justice and redress.
15   Impunity is especially common in countries that lack a tradition of the rule of law, suffer
16   from corruption or that have entrenched systems of patronage, or where the judiciary is weak or
17   members of the security forces are protected by special jurisdictions or immunities. Impunity is
18   sometimes considered a form of denialism of historical crimes.[2]

19

20   **"Malice"** shall have the meaning per CACI No. 3114.

21

22   **"Dangerous Condition"** (CACI No. 1102; Gov. Cod. § 830(a))

23

24   **"Privilege Exemption"** (EVID § 956) shall mean the exemption for any State Bar licensees or lawyers
25   (EVID § 950) including public employees under reduced elements of "fraud" or "fraudulent," where
26   "there is no privilege under this article [Lawyer-Client Privilege sections 950-962] if the services of
27   the lawyer were sought or obtained to **enable** or **aid anyone** to commit or plan to commit a crime or a
28   **fraud**."2 Plaintiff alleges this exemption to apply to all State Bar licensees, including Public

-4-

1  Employees, and that State Bar licensee enabling and/or aiding any State Bar licensee with CRPC or

2  BPC 6077 violations is, on its face, exempt from any privilege afforded by sections 950-962 of Cal.

3  Evid. Cod. as a matter of law.

4

5  **Definitions under Government Claims Act**

6  Definitions Under Government Claims Act (Gov. Cod. 810):

7

8  **"Employee"** (Gov. Cod. 810.2) includes an officer, judicial officer as defined in Section 327 of the

9  Elections Code, employee, or servant, whether or not compensated, but does not include an

10  independent contractor.

11

12  **"Employment"** (Gov. Cod. 810.4) includes office or employment.

13

14  **"Enactment"** (Gov. Cod. 810.6) means a constitutional provision, statute, charter provision, ordinance

15  or regulation.

16

17  **"Injury"** (Gov. Cod. 810.8) means death, injury to a person, damage to or loss of property, or any

18  other injury that a person may suffer to his person, reputation, character, feelings or estate, of such

19  nature that it would be actionable if inflicted by a private person.

20

21  **"Law"** (Gov. Cod. 811) includes not only enactments but also the decisional law applicable within this

22  State as determined and declared from time to time by the courts of this State and of the United States.

23

24  **"Public Entity"** includes the state, the Regents of the University of California, the Trustees of the

25  California State University and the California State University, a county, city, district, public

26  authority, public agency, and any other political subdivision or public corporation in the State.

27  *(Amended by Stats. 2010, Ch. 636, Sec. 1. (SB 1046) Effective January 1, 2011.)*

28

-5-
PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
EXHIBIT #131: 015
22-CV-01616-BAS-DDL

1     "**Public Employee**" (Gov. Cod. 811.4) means an employee of [The State Bar of California for

2     purposes of this document].

3

4     "**Regulation**" (Gov. Cod. 811.6) means a rule, regulation, order or standard, having the force of law,

5     adopted by an employee or agency of the United States pursuant to the federal Administrative

6     Procedure Act (Chapter 5 (commencing with Section 500) of Title 5 of the United States Code) or as a

7     regulation by an agency of the state pursuant to the Administrative Procedure Act (Chapter 3.5

8     (commencing with Section 11340) of Part 1 of Division 3 of Title 2).

9

10     "**Statute**" (Gov. Cod. 811.8) means an act adopted by the Legislature of this State or by the Congress

11     of the United States, or a statewide initiative act.

12

13     "**Jurisdiction Controversy**" (Gov. Cod. 811.9) relates to Plaintiff's alleged appropriate jurisdiction

14     for this action in Superior Court as per his operative First Amended Complaint and its underlying

15     CTCA Claim. If Defendant The State Bar of California or any Defendant Public Employee or Public

16     Entity object to jurisdiction or are determined by this Court or conceded by The State Bar of California

17     to be defined under this section, Plaintiff alleges it would only give rise to potential supervision of

18     their respective defense by Administrative Office of the Courts' in accordance with rules defined by

19     the Judicial Council (Gov. Cod. 811.9) where, "(a) Notwithstanding any other provision of law,

20     judges, subordinate judicial officers, and court executive officers of the superior courts are state

21     officers for purposes of Part 1 (commencing with Section 810) to Part 7 (commencing with Section

22     995), inclusive, and trial court employees are employees of the trial court for purposes of Part 1

23     (commencing with Section 810) to Part 7 (commencing with Section 995), inclusive. The Judicial

24     Council shall provide for representation, defense, and indemnification of those individuals and the

25     court pursuant to Part 1 (commencing with Section 810) to Part 7 (commencing with Section 995),

26     inclusive. The Judicial Council shall provide for that representation or defense through the county

27     counsel, the Attorney General, or other counsel. The county counsel and the Attorney General may,

28     but are not required to, provide representation or defense for the Judicial Council. The fact that a

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
EXHIBIT #131: 016
22-CV-01616-BAS-DDL

1  justice, judge, subordinate judicial officer, court executive officer, court employee, the court, the

2  Judicial Council, or the Administrative Office of the Courts is or was represented or defended by the

3  county counsel, the Attorney General, or other counsel shall not be the sole basis for a judicial

4  determination of disqualification of a justice, judge, subordinate judicial officer, the county counsel,

5  the Attorney General, or other counsel in unrelated actions. (b) To promote the cost-effective, prompt,

6  and fair resolution of actions, proceedings, and claims affecting the trial courts, the Judicial Council

7  shall adopt rules of court requiring the Administrative Office of the Courts to manage actions,

8  proceedings, and claims that affect the trial courts and involve superior courts, superior court judges,

9  subordinate judicial officers, court executive officers, or trial court employees in consultation with the

10  affected courts and individuals. The Administrative Office of the Courts' management of these

11  actions, proceedings, and claims shall include, but not be limited to, case management and

12  administrative responsibilities such as selection of counsel and making strategic and settlement

13  decisions. (c) Nothing in this section shall be construed to affect the employment status of subordinate

14  judicial officers, court executive officers, and trial court employees related to any matters not covered

15  by subdivision (a).

16

17  **"Recklessness"** means any single act of negligence in violation of any duty known to respondent

18  (general, affirmative, mandatory, special relationships) which, when viewed with other acts according

19  to proof, amounts to a higher degree of culpability than run-of-the-mill negligence or gross negligence.

20

21  **"Negligence"** shall have the meaning ascribed to it by Cal. Cod. Civ. Proc section 1714, which holds

22  that (a) Everyone is responsible, not only for the result of his or her willful acts, but also for an injury

23  occasioned to another by his or her want of ordinary care or skill in the management of his or her

24  property or person, except so far as the latter has, willfully or by want of ordinary care, brought the

25  injury upon himself or herself. The design, distribution, or marketing of firearms and ammunition is

26  not exempt from the duty to use ordinary care and skill that is required by this section. The extent of

27  liability in these cases is defined by the Title on Compensatory Relief.

28

-7-

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 017
22-CV-01616-BAS-DDL

**"Duty"** shall have the meaning ascribed to it by the California Supreme Court case *Brown vs. USA Taekwondo*, where special relationships and control factors (*Brown v. USA Taekwondo* (2019) 40 Cal.App.5th pp. 1077, 1083, 1094-1095) by State Bar over its licensees impute liability to State Bar for its own conduct, and that of Public Employees acting officially, and for the conduct of its licensees (S259216) under Government Claims Act. Applied to the instant action for purposes of illustration, Beck is akin to "Brown," State Bar licensees are like instructors who are known to be causing injury to Beck and others, "USA Taekwondo" is State Bar, where United States Olympic Committee (USOC) is State – although here, unlike Brown v. USAT, State stands in special relationship to each State Bar, public employees, State Bar licensees, and Plaintiff – and State Bar and Public Employees have certain enhanced duties to Plaintiff that allegedly surpass that of USAT's to Brown.

**"Claim Notice"** shall have the meaning ascribed to it in the operative Complaint of Plaintiff Justin Beck in this case.

**"CTCA Claim"** shall have the meaning ascribed to it in the operative Complaint of Plaintiff Justin Beck in this case.

**"Catanzarite"** shall have the meaning ascribed to it in the operative Complaint of Plaintiff Justin Beck in this case. For purposes of this document, Catanzarite shall include any attorney known to The State Bar of California from 1970 through today that is associated with Catanzarite Law Corporation or its principal Kenneth Joseph Catanzarite.

**"Catanzarite Cases"** shall mean any complaint, investigation, public, or non-public Writing involving Catanzarite from 1970-present.

**"Conflict"** shall mean any act violative of CRPC 1.7 using Terminology definitions of fraud and fraudulent for any State Bar licensee engaged in Conflict, including any licensee who is also a Public Employee, as well as relevant decisional law applied to Catanzarite Cases, State Bar operations, and

Public Employees who are State Bar licensees engaged in official functions for State Bar or its licensees involving Conflict. According to the California State Auditor in Report 2022-030, "[t]he State Bar does not appear to recognize the significance of the risk associated with dismissing a case against an attorney on the conflicts list. For one of the cases, the intake attorney documented an email exchange with his supervisor in which the supervisor acknowledged the conflict of interest but nonetheless directed the intake attorney to review the case anyway and agreed with the intake attorney's proposal to dismiss the case. In another case, the intake attorney did not document any evaluation of the conflict of interest in the case file, but in response to our questions, she provided an email from her supervisor stating that the conflict-of-interest requirements were waived and he approved closing the case….the decisions to close cases described above illustrate that the State Bar is not appropriately assessing how conflicts of interest pose a risk that staff will close cases inappropriately. Thus, it is critical that the State Bar objectively assess and document its consideration of conflicts of interest when closing a case at the intake stage against an attorney on the conflicts list….The chief trial counsel agreed with our findings and indicated management of conflicts of interest is an area where the State Bar needs much improvement. He further noted that conflict-of-interest information has not been consistently updated in its current case management system, and he is working with his staff to correct that issue."

**"Duty Violations"** shall have the meaning ascribed to it in the operative Complaint, which encompasses all material allegations involving violation of duty by public employees.

## II. INCIDENT DEFINED (SEC. 4(a)(2) of FORM INTERROGATORIES – GENERAL SET 1

INCIDENT for the form interrogatories SET 1 shall mean the four categories and underlying series of events defining INCIDENT:

1) <u>Allegedly Dangerous Premises, Recklessness + Systemic Corruption (2009-2022)</u>

EXHIBIT #131: 019
22-CV-01616-BAS-DDL

2) <u>Other Allegedly Tortious Decisions by Public Employees Acting Officially (2009-2022)</u>

3) <u>Known Injury to Persons in the Public, Courts, and Legal Profession (2009-2022)</u>

4) <u>Government Claims Act (1963-Present) + Claim of Justin Beck (2021/2022)</u>

For these four categories, examples and series of events are provided below, but are not intended to limit the specificity of respondent's answers as to other events that may reasonably related to INCIDENT involving fraud, fraudulent acts, malice, known injury to any member of the public, Conflict, Duty, and/or Duty Violations by The State Bar of California or any Public Employee whose decisions were made on behalf of The State Bar of California or whose decisions otherwise affect The State Bar of California or any Public Employee operating thereunder.  Examples and specific events to INCIDENT underlying the foregoing four categories are:

1) **<u>Allegedly Dangerous Premises + Systemic Corruption (2009-2022)</u>**

    A. Response from Auditor to State Bar Reply RE:  (2022-030)

    http://auditor.ca.gov/reports/2022-030/index.html#section6

    B. Any Act of Conflict, Negligence, Fraud, Corruption Affecting State Bar (Complaint ¶ 232)

    C. Any Dangerous Condition of State Bar Owned or Controlled Property from 2009-Present (¶ ¶ 299-314)

    D. Date and Method of Actual or Constructive Notice of Each Respective Dangerous Condition (¶ ¶ 299-314)

    E. Auditor Conclusions (2009-2022) with Material Decisions and Persons "Coordinating Branches of Government," and Operational Decisions and Persons Made in Response Thereto

    F. State Bar's Purchase of $76.6 Million Building in Los Angeles (Complaint ¶ 99)

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 020
22-CV-01616-BAS-DDL

G. Passage of Specific Statutes, CRPC, Enactments, and Regulations Guiding The State Bar of California and Public Employees' Decisions in the Exercise of Licensing, Regulatory, Disciplinary, or Policy (2009-Present)

H. Specific Potential Injury Identified to Persons in the Public, Courts, and Legal Profession Known to State Bar and Public Employees Acting Officially for State Bar by State Bar and/or State Bar Licensees through Violations of Statute, Enactment, Law, or Regulation (Otherwise Prevented or Protected by Operations of The State Bar of California and Public Employees)

I. Specific CRPC, Enactments, Regulations and Statutes Related to Each Specific Potential Injury with % Resulting from Intake, Investigation, Discipline for Each Violation (2018-Present)

J. Law Firms with Public Employees Acting Officially for State Bar; Public Employee List Per Law Firm; Associated Complaints Against Other State Bar Licensees Employed by the Same Law Firms; Related Dispositions % at Intake/Investigation/Discipline Stages.

K. Dismissed Cases/Complaints Involving Conflict from 2009-Present

L. Disclosed Conflict by Covered Persons Per BPC 6036 from 2009-Present

M. Identified by Persons, but Previously Undisclosed Conflict by Covered Persons Per BPC 6036 from 2009-Present.

N. Conflict Agreements Signed by Public Employees After November 1, 2018 and CRPC 1.7.

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 021
22-CV-01616-BAS-DDL

O. Auditor: Conflicts of Interest Involving State Bar Employees 2009-Present (Complaint p. 6, ¶ 20)

P. Auditor: "Conflict of Interest Requirements Were Waived" Case from Report 2022-030.

Q. Known Violations of BPC 6077 by Public Employees 2009-Present (Complaint p. 7-8, ¶ ¶ 34-38)

R. The State Bar of California Meets Definition of "Law Firm" or "Firm" Under CRPC 5.1 and CRPC 1.7; Implications on Fraud and Fraudulent Conduct of Public Employees Acting Officially Under 815.6, 815.3

S. Conflict, Legal Advice, and Legal Advisors Subject to Privilege Exemption from 2009-2022 (CRPC, BPC, Other Unlawful Conduct Engaged in by State Bar Licensees)

T. State Bar Becomes "Public Protection Agency" (Complaint p. 9, ¶ ¶ 34-38)

U. Catanzarite Cases (Complaint ¶ ¶ 65, 77-81)

V. Other Catanzarite Evidence Known to State Bar Before 2018 (Complaint ¶ 77)

X. Internal Notices to Public Employees of Duty by Any Person

2) **Other Allegedly Tortious Decisions by Public Employees Acting Officially (2009-2022)**

A. State Bar's Purchase of $76.6 Million Building in Los Angeles (Complaint ¶ 99)

B. California Tort Claims Act/Government Claims Act, State Bar, Public Employees

-12-

EXHIBIT #131: 022
22-CV-01616-BAS-DDL

1  C. Operational Policy Changes for Intake, Investigation (Complaint ¶ 142-160)

2

3  D. Operational Changes for State Bar to Investigate After Intake (Complaint ¶ 142-160)

4

5  F. Operational Changes for Testing Whether a Licensee's Violation is "Serious Enough"

6  (Complaint ¶ 180)

7

8  G. Operational Changes to Satisfy Intake/Investigation Burden (Complaint ¶ 178-184)

9

10  H. Intentional Acts of Fraud, Corruption and Recklessness (Complaint ¶ 29)

11

12  I. Unlawful Taking by Government Directly and by Agency (Complaint ¶ 177)

13

14  3) **Known Injury to Persons in the Public, Courts, and Legal Profession (2009-2022)**

15

16  A. Intentional Acts of Fraud, Malice, Corruption and Recklessness (Complaint ¶ 29)

17

18  B. Any Conflict Involving State Bar, Public Employees, State Bar Licensees, Law Firms

19

20  C. Other Catanzarite Evidence Known to State Bar Before 2018 (Complaint ¶ 77)

21

22  D. Knowledge of Injury to Plaintiff, Public Interest from 2009-Present (Complaint p. 4, ¶ 12)

23

24  E. Unlawful Taking by Government Directly and by Agency (Complaint ¶ 177)

25

26  F. Operational Response to Audit Report 2009-030 (Complaint ¶ ¶ 82-89)

27

28  G. Operational Response to Audit Report 2015-030 (Complaint ¶ ¶ 90-100)

-13-
PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 023
22-CV-01616-BAS-DDL

1

2      H. Operational Response to Audit Report 2021-030 (Complaint ¶ ¶ 101-115)

3

4      I. Knowledge of Kevin Mohr "Spotlight on Ethics: Un-waivable Conflicts of Interest"

5      (Complaint ¶ 134-141)

6

7      J. Operational Details: Restructuring of Chief Trial Counsel Office (Complaint ¶ 102-112)

8

9      K. Case Intake and Processing Policies, Procedures, Operations from 2009-2016 and 2016-

10     Present (After 2015-030)

11

12     L. "Abandoning a Plan to Evaluate Results" of Chief Trial Counsel Reorganization (Complaint

13     ¶ 112)

14

15     M. "Weaknesses in the State Bar's Attorney Discipline System Have Resulted in Some

16     Attorneys Not Being Held Accountable for Misconduct" (Auditor Report 2022-030)

17

18          Case Example 1 (Auditor Report 2022-030) [including first three, last three

19          complaints].

20

21          Case Example 2 (Auditor Report 2022-030) [including first three, last three

22          complaints].

23

24          Case Example 3 (Auditor Report 2022-030) [including first three, last three

25          complaints].

26

27          Complainant Deborah Breuner (Complaint ¶ 201), Licensee Kenneth Joseph

28          Catanzarite

---
-14-
PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2          Complainant Katherine Roberts, Licensee Drexel Bradshaw

3

4          Catanzarite Cases

5

6          All Similar Cases (or Third-Party Summaries with Similar Data Points)

7

8      N. "The State Bar's Weak Safeguards Have Hampered Its Ability to Prevent Repeated Client

9      Trust Account Violations"

10

11          Case Example 4 (Auditor Report 2022-030) [including first three, last three

12          complaints].

13

14          Case Example 5 (Auditor Report 2022-030) [including first three, last three

15          complaints].

16

17          Case Example 6 (Auditor Report 2022-030) [including first three, last three

18          complaints].

19

20          Case Example 7 (Auditor Report 2022-030) [including first three, last three

21          complaints].

22

23          Case Example 8 (Auditor Report 2022-030) [including first three, last three

24          complaints].

25

26          All Similar Cases (or Third-Party Summaries with Similar Data Points)

27

28          Cumulative Data Points (including De Minimis Closures), Outstanding Violations

O. Weaknesses in the State Bar's Monitoring of Its Attorney Discipline System Limit the Independence of That Monitoring

Case Example 9 (Auditor Report 2022-030) [including first three, last three complaints].

All Similar Cases (or Third-Party Summaries with Similar Data Points)

All Warnings from State, Internal, or Independent Auditor Reasonably Related (2009-Present)

P. Understaffed Licensing, Regulatory, or Disciplinary Functions (2009-Present)

Q. Acknowledgment of Understaffing at State Bar by any Public Employee (2009-Present)

4) **Government Claims Act (1963-Present) + Claim of Justin Beck (2021/2022)**

A. Claim Notice from Justin Beck to The State Bar of California (Complaint p. 3, ¶ ¶ 5-7)

B. Officer & Trustee CTCA Procedure of Justin Beck's Claim Presentation (Complaint p. 2, ¶

C. Knowledge of Injury to Plaintiff, Public Interest from 2009-Present (Complaint p. 4, ¶ 12)

D. Catanzarite Cases (Complaint ¶ ¶ 65, 77-81)

E. Other Catanzarite Evidence Known to State Bar Before 2018 (Complaint ¶ 77)

-16-

EXHIBIT #131: 026
22-CV-01616-BAS-DDL

F. *FinCanna* Opinion G058700, Trustee Analysis of "Final" Violations by State Bar Public Employees, Complaint Review Unit, Board of Trustees (Complaint ¶ ¶ 79, 185, 190)

G. Passage of New CRPC on November 1, 2018, Including CRPC 1.7 and 5.1 (Complaint ¶ ¶ 117-123)

H. CRPC 5.1/BPC 6077 Operations After Nov. 1, 2018, Guidance, Policy, and Operations in Intake and Investigation for Public Employees who are Also State Bar Licensees

I. CRPC 5.1/CRPC 1.7/BPC 6077 Operations After Nov. 1, 2018, Guidance, and Policy for Elected Officials including Board of Trustees Who Are Also State Bar Licensees

J. Pinkerton Action v. MFS, CTI, Cooper, O'Connor, Plaintiff (Complaint ¶ 124)

K. Fraudulent January 23, 2019 Securities Transactions Directed by Licensee(s) Known to State Bar (Complaint ¶ 128, Ex. F)

L. *Ultra Vires* MFS Action (Complaint ¶ 130)

M. 709 Trial and Factual/Evidentiary Conclusions from Bench (Complaint ¶ 30)

N. *Ultra Vires* Mesa Action, and *Ultra Vires* Mesa Action Amended (*Ibid.*)

O. *Ultra Vires* Amendments to Root Action and MFS Action (Ibid.)

P. *Ultra Vires* Cooper Action (*Ibid.*)

Q. *Ultra Vires* FinCanna Cross Complaint (*Ibid.*)

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
EXHIBIT #131: 027
22-CV-01616-BAS-DDL

1

R. *Ultra Vires* Scottsdale Action (*Ibid.*)

2

3

S. Beck Action (*Ibid.*) and *Ultra Vires* Defense of Tolled Defendants (*Ibid.*)

4

5

T. *Ultra Vires* MFS Cross Complaint (*Ibid.*)

6

7

U. Licensee Fraud Known to State Bar or Any Public Employee Violative of Cal. Corp. Cod.

8

25401, PC 118, PC 518 (Complaint ¶ ¶ 131-133)

9

10

V. Attempted Conversion or Conversion of CTCA Claim, Jurisdiction Dispute, Fraud,

11

Corruption, Negligence, Malice, Intentional Tort (Complaint ¶ 134-141)

12

13

W. United States Securities Exchange Commission Investigation LA-4837 (Complaint ¶ 131)

14

15

X. April 3, 2020 "Disposition" of Certain Catanzarite Cases (Complaint ¶ 180)

16

17

Y. Complaint Review Unit for Catanzarite Cases

18

19

Z. Re-Opening of Catanzarite Cases in or around June 2021

20

21

AA. Abatement of Catanzarite Cases in or around November 2022

22

23

AB. Court of Appeal Ruling in G059457, Public Employee Analysis of "Final" Violations

24

(Complaint ¶ 191)

25

26

AC. Abatement Policies for Intake and Investigation (Complaint ¶ 190-204)

27

28

-18-

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 028
22-CV-01616-BAS-DDL

AD. Internal Guidance from Board of Trustees, Officials, and Counsel on Distinguishing Operational (Not Subject to Immunity) and Policy Decisions (Subject to Applicable Immunities) (Complaint ¶¶ 205-212) After Statutory, Enactment, and Law Changes

AE. Weighing of Risks and Benefits to Protect Catanzarite (Complaint Charging Allegation)

AF. Weighing of Risks and Benefits to Public Interest to Engage in Conflict

AF. Weighing of Risks and Benefits to Harm Plaintiff and Public Interest

AG. Weighing of Risks and Benefits to Protect Plaintiff and Public Interest from Catanzarite

AH. Jurisdiction Controversy After 2018

AI. According to Ruben Duran in responding to the Auditor, "In February 2022 several reforms were initiated including issuance of a new policy outlining the circumstances in which staff should continue to pursue allegations of misconduct even if a complainant withdraws their complaint, and a clarification of office policy regarding consideration of prior closed complaints."

AJ. Operational standards for testing at intake and investigation stages whether a complaint involves misconduct of State Bar licensees or public employees that "relates to the practice of law," what "injury" has been or could be caused to "public interest" from each respective complaint, what "injury" has been or could be caused to "courts" from each respective complaint, and what "injury" has been or could be caused to "legal profession" from each respective complaint.

AK. Cases where intentional torts like moral turpitude, dishonest, fraud, corruption, intentional infliction of emotional distress, gross negligent misrepresentation, or concealment of material facts by

1  State Bar licensees or public employees affects the disciplinary process and the handling of any
2  respective complaint by State Bar.

3

4      AL. The State Bar's response addressing proposed revisions to its intake manual may not result
5  in a meaningful change to its existing policy. <u>As Figure 4 shows, one attorney had 34 cases closed</u>
6  <u>as de minimis and was ultimately disbarred based on a federal conviction of money laundering through</u>
7  <u>their client trust accounts.</u> Without additional details on the exceptions that the State Bar plans to make
8  to the approach that we recommended, it is unclear whether this policy will address this type of
9  concern and others we describe.

10

11  ⑥The statistic that the State Bar describes does not support its conclusions. Based on the State Bar's
12  statement that 22 percent of the bank reportable action matters it reviewed did not involve a negative
13  balance, it appears to be acknowledging that the remaining 78 percent of those matters did involve a
14  negative balance. Such a substantial number of bank reportable actions involving actual negative bank
15  balances is indicative of high risk and the need for more thorough investigations. In contrast, the
16  State Bar suggests that investigating these matters without considering the underlying facts and merits
17  would be a waste of limited investigative resources and is not sound public policy. However, as we
18  illustrate throughout the report, the State Bar has regularly failed to effectively assess the underlying
19  facts and merits of bank reportable actions, resulting in harm to the public. Thus, the State Bar's
20  objections to investigating bank reportable actions on a more consistent basis are unreasonable.

21

22      AM. "We disagree with the State Bar's assertion that our recommendation would
23  disproportionately require certain attorneys to take time away from their practices to gather and submit
24  documentation. Providing the information we recommend should not represent a significant
25  workload. <u>As we noted, the State Bar's Rules of Professional Conduct require attorneys to maintain,</u>
26  <u>among other things, monthly reconciliations of their client trust accounts.</u> Thus, attorneys should have
27  the required information readily available to comply with a request from the State Bar. <u>Further, as we</u>
28  <u>described, in some cases the State Bar closed complaints without contacting the attorney to obtain</u>

-20-

additional information or to provide guidance for avoiding future complaints. If the State Bar were to consistently provide information on client trust account resources to attorneys after closing each bank reportable action, as we recommended, this information may help reduce the number of bank reportable actions for all attorneys. With respect to the State Bar's disparate impact concerns, it is the responsibility of the State Bar, just like all auditees, to implement our recommendations in a manner consistent with federal and state law."

AN. "The State Bar's legal adviser reviewing the complaints against this individual asserted that the complaints related more to the attorney's poor office management than to misconduct and stated that education and outreach might be more appropriate than discipline for this attorney. However, the nature of the complaints against the attorney call into question the legal adviser's assertions."

AO. The State Bar's practices and its staff's responses to our inquiries illustrated a common theme: the State Bar is generally focused on closing cases expeditiously. This emphasis on closing cases quickly appears to be in response to criticism the State Bar has faced for the amount of time it has taken to close some cases

AP. The State Bar has long struggled to process all of the complaints that it receives each year. Audits our office issued in April 2019 and in April 2021 identified concerns about the backlog of unclosed cases. [1] According to its executive director, addressing the complaint backlog has been the most significant driving factor in the State Bar's development of performance measures and processes, in part because of the focus of our office and the Legislature on the backlog. Nevertheless, the patterns we observed suggest that staff following some of the State Bar's policies may be contributing to the large number of complaints it must address. As Case Examples 1 and 2 illustrate, the State Bar's actions have failed to prevent additional misconduct of a similar nature, leading to an increase in the volume of subsequent complaints about a specific attorney for the same misconduct. In turn, this has

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
EXHIBIT #131: 031
22-CV-01616-BAS-DDL

1   increased the State Bar's workload, which makes it more difficult for it to address its backlog and

2   fulfill its primary mission of protecting the public.

3

4         AQ. BPC 6086.10's collections under (3) The charges determined by the State Bar to be

5   reasonable costs of investigation, hearing, and review. These amounts shall serve to defray the costs,

6   other than fees for the services of attorneys or experts, of the State Bar in disciplinary proceedings, and

7   costs incurred in the administrative processing of disciplinary proceeding and in the administration of

8   the Client Security Fund" from January 1, 2019 to May 6, 2022.

9

10  **III. REQUEST FOR ADMISSIONS (ATTACHMENT 1)**

11

12  **According to the preceding definitions and the INCIDENT:**

13

14                           Defendant The State Bar of California

15

16  1) Admit that The State Bar of California currently fails to protect members of the public from

17  attorneys who violate the public trust.

18

19  2) Admit that Public Employees who are licensees of The State Bar of California are subject to

20  California Rules of Professional Conduct.

21

22  3) Admit that Public Employees acting in an official capacity for The State Bar of California have

23  engaged in Conflict violative of California Rules of Professional Conduct.

24

25  4) Admit that Public Employees of The State Bar of California have a mandatory duty to protect

26  public, courts, and legal profession codified by BPC 6001.1.

27

28

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 032
22-CV-01616-BAS-DDL

5) Admit that Public Employees of The State Bar of California have an affirmative duty to protect Plaintiff codified by BPC 6001.1.

5) Admit that Public Employees have a general duty to exercise reasonable care codified by Cal. Cod. Civ. Proc. § 1714.

6) Admit that The State Bar of California can be held liable for intentional torts of Public Employees codified by Gov. Cod. § 815.3.

7) Admit that State can be held liable derivatively or vicariously for intentional torts of The State Bar of California's Public Employees codified by Gov. Cod. § 815.3.

8) Admit that Public Employees can be held liable for intentional torts of Public Employees codified by Gov. Cod. § 815.3.

9) Admit that Plaintiff Justin Beck is a member of the public.

10) Admit that fraud/fraudulent conduct is not subject to any immunity under Government Claims Act.

11) Admit that Government Claims Act codifies liability to The State Bar of California for Injury to Plaintiff, according to proof.

12) Admit that The State Bar of California exercises control over its licensees.

13) Admit that Plaintiff as victim of Injury stands in special relationship to The State Bar of California, State Bar licensees, and Public Employees invoking an affirmative duty to protect Plaintiff.

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 033
22-CV-01616-BAS-DDL

14) Admit that The State Bar of California has received at least five complaints from members of the public.

15) Admit that The State Bar of California has received at least twenty complaints from members of the public.

16) Admit that any reasonable person would consider Catanzarite a threat to cause Injury.

17) Admit that Plaintiff is a victim of Injury.

18) Admit that Plaintiff's Injury was directly or proximately caused by The State Bar of California.

19) Admit that Plaintiff's Injury was directly or proximately caused by Public Employees.

20) Admit that Plaintiff's Injury was directly or proximately caused by Catanzarite.

21) Admit that operations for The State Bar of California from 2009-2018 enabled Catanzarite to cause Injury.

21) Admit that complaint intake operations for The State Bar of California are prejudicial to public interest.

22) Admit that investigation operations for The State Bar of California are prejudicial to public interest.

23) Admit private reproval of licensees without resolution of Injury is prejudicial to public interest.

-24-
PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
EXHIBIT #131: 034
22-CV-01616-BAS-DDL

24) Admit that operations for The State Bar of California unreasonably fail to consider or account for Injury to members of public.

25) Admit that The State Bar of California operated a Dangerous Premises from September 14, 2009 to September 14, 2018.

26) Admit that The State Bar of California knew that it operated a Dangerous Premises on September 14, 2018.

27) Admit that regulatory and discipline operations for The State Bar of California prioritized licensee protection over public interest before and during 2018.

28) Admit that regulatory and discipline operations for The State Bar of California prioritized licensee protection over public interest from January 1, 2019 to May 1, 2022.

29) Admit that The State Bar of California is not solely reliant upon Legislature for funding operations.

30) Admit that the Catanzarite Cases were not managed by Public Employees within a reasonable standard of care under the circumstances.

31) Admit that it is unreasonable for members of the public to suffer injury resulting from official decisions made by Public Employees made to protect licensees of The State Bar of California.

32) Admit that The State Bar of California can derive revenue from licensee violations of CRPC.

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 035
22-CV-01616-BAS-DDL

**DECLARATION OF ESERVICE**

I declare that: I am over the age of 18 years, and served FORM INTERROGATORIES-GENERAL, INCIDENT definition under Sec. 4(a)(2) to supplement FORM INTERROGATORIES-GENERAL with REQUEST FOR ADMISSIONS (SET 1, NO. 1-32) by email to:

Defendants The State Bar of California by eservice was delivered May 8, 2022 to the email addresses: Carissa.Andresen@calbar.ca.gov and Joan.Randolph@calbar.ca.gov .

For Defendant State of California, eservice was delivered May 8, 2022 to the email address: AGelectronicservice@doj.ca.gov.

I, Justin S. Beck, declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Date: May 8, 2022

_____
Signature

Oceanside, California

-26-
PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT #131: 036
22-CV-01616-BAS-DDL