Exhibit B
Damages

22-CV-01616-BAS-DDL

# EMPLOYMENT AGREEMENT
## CONTAKT LLC

THIS EMPLOYMENT AGREEMENT (this "Agreement") is made and entered into as of this 1st day of September 2020 ("**Effective Date**") by and between **CONTAKT LLC, a California limited liability company** (the "**Company**" or "**Employer**"), and **JUSTIN BECK, an individual** ("**Employee**"). The Company and Employee are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties.**"

## RECITALS

WHEREAS, the Company is a California limited liability company, duly organized and authorized to do business within the State of California;

WHEREAS, the Company is in the business of, among other things, developing contact-tracing software systems/applications;

WHEREAS, the Employee is an individual to be employed as the Chief Executive Officer of the Company;

WHEREAS, the Company desires that Employee be employed by the Company and render services to the Company, and Employee is willing to be so employed and to render such services to the Company, all upon the terms and subject to the conditions contained herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

1. **POSITION AND RESPONSIBILITIES**

   a. **Position.** Pursuant to this Agreement, Employee shall render services to the Company on a full-time basis or on a schedule mutually agreed upon by the Parties, holding the position of <u>Chief Executive Officer</u> ("**CEO**"). Employee shall perform such duties and responsibilities as are normally related to such position in accordance with the standards of the applicable industry and any additional duties now or hereafter assigned to Employee by the Company, including, but not limited to, the duties listed in **Exhibit "A"** (if any) attached hereto and incorporated by reference herein. Employee shall use best efforts to meet all duties in a timely fashion including any and all deadlines set by Employer. Employee shall abide by the rules, regulations, and practices as adopted or modified from time to time in the Company's sole discretion.

      **b.**    **Drug Testing Consent.** Employee understands and acknowledges that the Company is committed to providing its employees with a safe workplace, and as a result, shall comply with any drug testing set out by the Company (if so exercised by Company).

      **c.**    **Other Activities.** Except upon the prior written consent of the Company, which may be granted or withheld in the Company's sole discretion, Employee will not, while employed by the Company, (i) engage, directly or indirectly, in any other business activity (whether or not pursued for pecuniary advantage) that might interfere with Employee's duties and responsibilities hereunder or create a conflict of interest with the Company; or (ii) engage, directly or indirectly, in any other business activity or revenue stream (whether or not pursued for pecuniary advantage) presented to or identified by Employee in the same or similar businesses to those of the Company or related to or arising from the operations of the Company.

      **d.**    **No Conflict.** Employee represents and warrants that Employee's execution of this Agreement, Employee's employment with the Company, and the performance of Employee's proposed duties under this Agreement, does not and will not violate any obligations the Employee may have to any other employer, person or entity, including any obligations with respect to proprietary or confidential information of any other person or entity.

**2.**    **COMPENSATION AND BENEFITS**

      **a.**    **Base Salary.** In consideration of the services to be rendered under this Agreement, the Company shall pay Employee an annual salary at the rate of $325,000.00 USD less all applicable wage deductions ("**Base Salary**"). The Base Salary shall be paid in accordance with the Company's regularly established bi-monthly payroll practice and all applicable laws and regulations.

      **b.**    **Benefits.** In further consideration of Employee's services to Company, Company shall provide the following benefits and coverage to the Employee and his domestic partner, Brian Bargabus ("**Partner**"):

            i.    Premium medical insurance as may be selected by Employee,

            ii.    Premium dental insurance as may be selected by Employee,

            iii.    Company will match 100% of all contributions made by Employee to a 401(k) after January 1, 2021, subject to annual federal maximums.

            iv.    Any other benefits that the Company customarily provides, or mutually agreed upon by the Parties.

                  (1)    The above Subsection (iii) shall only applies to the Employee, not the Partner.

For avoidance of any doubt, Company is to provide full payment and coverage for the Employee and his Partner's medical and dental insurance.

c. **Incentive Compensation.** The Company, in addition to the benefits described herein, may offer Employee additional incentive compensation in the future so long as Employee remains employed by the Company. All incentive compensation offers will be delivered by the Company directly to Employee if such an offer will be made at all. All incentive compensation shall be subject to a vesting schedule determined by Employer. If Employment Term ends prior to a vesting date, all non-vested share and option awards shall be terminated immediately and Employee shall have no further rights or claims to such incentive compensation. The first and second incentive compensation packages for Employee are outlined below.

   i. Should the Company achieve a public listing of its share capital, or any similar transaction which results in a majority of Company becoming owned by a public company resulting in the share exchange of Company membership interests into shares listed upon a public stock exchange ("Go Public Transaction"), Employee shall earn certain performance warrants from the resulting issuer as condition to the closing of the transaction as below:

      (1) 1,000,000 (one million) 5-year (five year) warrants to buy common stock with a 5-year exercise right in the public company at a strike price of $.10 CAD (ten cents Canadian dollars), which warrants shall become vested upon the Company or its parent achieving $1,000,000 CAD (one million Canadian dollars) in cumulative revenue from Company operations ("Tier 1 Performance Warrants").

      (2) 1,000,000 (one million) 5-year (five year) warrants to buy common stock with a 5-year exercise right in the public company at a strike price of $.10 CAD (ten cents Canadian dollars), which warrants shall become vested upon the Company or its parent achieving $2,000,000 CAD (two million Canadian dollars) in cumulative revenue from Company operations ("Tier 2 Performance Warrants").

      (3) 1,000,000 (one million) 5-year (five year) warrants to buy common stock in the public company at a strike price of $.10 CAD (ten cents Canadian dollars), which warrants shall become vested upon the Company or its parent achieving $2,000,000 CAD (two million Canadian dollars) in cumulative revenue from Company operations ("Tier 3 Performance Warrants").

   ii. Should the Company achieve the Go Public Transaction, and following such Go Public Transaction, the consolidated or combined entity subsequently achieve a listing on the Nasdaq Capital Markets, the New York Stock Exchange, or the Members Exchange ("Uplisting Transaction" resulting in the "Uplisted Company"), and such listing achieves a combined value of $500,000,000 CAD (five hundred million Canadian dollars) ("Target Valuation") or greater upon its Uplisting Transaction or any time

thereafter – Employee shall have earned and shall be granted with immediate vesting the following incentives as below:

(1) 5% warrant coverage of the then-outstanding share capital of the Uplisted Company with an exercise period of 5-years (five years) upon the time of its achieving the Target Valuation ("**Tier 4 Performance Warrants**") at a strike price equal to the lower of:

(a) $4.00 CAD (four Canadian dollars), or

(b) A strike price equal to 50% (fifty percent) of the share price in the last round of capital financing to the Uplisted Company exceeding $50M CAD (fifty million Canadian dollars).

iii. The Tier 1 Performance Warrants, Tier 2 Performance Warrants and Tier 3 Performance Warrants shall all be conditions to the Go Public Transaction, and the Tier 4 Performance Warrants shall be a condition to the Uplisting Transaction.

**d.** **Annual Bonus Package.** Company shall provide Employee with an annual bonus package (up to 100% of the Base Salary) ("**Bonus**"). The Bonus shall be predicated on milestone achievements set out and approved by the Company's Board.

**e.** **Expenses; Company Card.** Upon presentation of verifiable invoices and other documentation as may be requested by the Company, the Company shall reimburse Employee for reasonable business expenses incurred in the performance of Employee's duties hereunder in accordance with the Company's expense reimbursement guidelines; provided, however, that Employee shall obtain pre-approval from the Company for any such expenses which exceeds five hundred dollars ($500).

Furthermore, Company shall provide Employee with a Company credit card or debit card for Employee's use to reimburse himself for gas and miscellaneous expenses.

**f.** **Cellular Device Allowance.** Company shall provide Employee with a monthly allowance to cover Employee's cellular device service charges. The dollar amount for such allowance shall be reviewed and approved by the Company's Board of Directors ("**Board**").

**g.** **Company Vehicle.** Company shall provide Employee with either a Company Vehicle or a monthly vehicle allowance (dollar amount to be reviewed and approved by the Board). The Company Vehicle and/or amount shall be, at a minimum, reasonable in the vehicle quality and/or dollar amount, sufficient to provide Employee with a working and quality vehicle and consistent with an executive of a company.

**h.** **Annual Increase.** The Base Salary and Bonus described herein shall be subject to annual increases as may be defined by the Board, but in no instance shall such increase be less than five perecent (5%).

  **i.**  **Bi-Annual Assessment.** The Base Salary, Bonus, Benefits, and Incentive Compensation to Employee, and Employment Term shall be evaluated every 6-months by the Board following any Go Public Transaction or Uplisting Transaction so that each are reflective of the revenue, market capitalization, and growth rate of the Company and meeting or surpassing the Base Salary, Bonus, Incentive Compensation, or Benefits of Chief Executive Offices of other companies that are similarly situated. To determine this, the Board may enlist a third-party for recommendations and assessment, or assign the Bi-Annual Assessment to a compensation committee comprised of independent directors.

  **j.**  **Directors & Officers Insurance.** As a condition to any Go Public Transaction or Uplisting Transaction, Company shall obtain directors and officers insurance covering Employee that is acceptable to Employee at his sole discretion ("D&O Policy"). Company shall retain, in trust, any such deductible applicable to the D&O Policy at all times in the event of a claim, unless Employee expressly waives such obligation of Company at his sole discretion.

**3.**  **TERM OF EMPLOYMENT**

  **At-Will Employment; Employment Term.** This is an "At-Will" employment agreement. Employee understands that Company may terminate his employment at any time for any reason or for no reason. By the same token, Company understands and agrees that Employee may terminate this Agreement with or without cause. Employee's employment shall begin from the Effective Date prescribed herein, and for two (2) years thereafter, unless otherwise terminated earlier by either Party pursuant to Section 4 of this Agreement (the "**Employment Term**").

**4.**  **TERMINATION- AT WILL EMPLOYMENT**

  **a.**  **Termination by Employee.** Employee may terminate his employment with the Company with or without cause. For termination to be effectuated for cause, the following must occur: (1) Employee must provide prompt written notice of Company's default of this Agreement, including but not limited to, Company's failure to pay Employee's Base Salary and any other act or omission that constitutes a breach of this Agreement, (2) Company fails to cure such default/breach within fifteen (15) days of notice (unless Company's breach reasonably requires more than 15 days, in which case, Company shall expeditiously use its best efforts to cure the default).

  During such cure period, Employee shall continue to diligently perform all of Employee's duties herein. In the event Company fails to cure default within the cure period, this Agreement shall automatically terminate, and Employee shall be entitled to the "Buy Out" described in Section 4(b).

  **b.**  **Termination by Company Without Cause.** Employee's employment is and will continue to be at-will. The Company has the right to terminate Employee's employment at any time, with or without cause. By signing this employment agreement, Employee expressly acknowledges that he has read this Agreement and understand what at-will means. Should the Company terminate the Employee without cause, Company shall (1) buy out and pay Employee his Base Salary for the remainder of the Employment Term, and (2) the Company shall continue to provide the benefits described in Section 2 of this Agreement for the remainder of the

Employment Term (collectively, the "**Buy Out**"). Should Company, after the Go Public Transaction or Uplisting Transaction, achieve any vesting or threshold related to Company revenue or the Target Valuation which would otherwise earn Employee any incentive compensation attached thereto according to Section 2(c) of this Agreement as may be amended from time to time during the Employment Term, Employee shall have earned such incentive compensation as if Employee were not terminated by Company during the Employment Term in addition to the Buy Out.

   **c.** **Termination by Company for Cause.** Company shall have the right to terminate this Agreement for Cause (as defined below). Notwithstanding anything to the contrary in this Agreement, in the event Company terminates Employee for Cause, Employee shall not be entitled to receive any additional benefits or compensation. Only accrued but unpaid salary shall be paid to Employee. All non-vested share and option awards granted as incentive compensation (if any) shall be terminated immediately and Employee shall have no further rights or claims to such incentive compensation.

   "**Cause**" means (i) an intentional tort (excluding any tort relating to a motor vehicle) which causes substantial loss, damage, or injury to the Company; (ii) any serious crime or intentional, material act of fraud or dishonesty against the Company that causes substantial harm to the Company's business and reputation, or (iii) any material breach of Employee's ongoing obligation not to disclose confidential information that results in substantial financial harm to the Company.

   **d.** **Termination By Death.** Employee's employment shall terminate automatically upon the Employee's death. The Company shall pay to Employee's beneficiaries or estate, as appropriate, any compensation then due and owing up through the date of Employee's death. Thereafter all obligations of the Company under this Agreement shall cease. Nothing in this Section shall affect any entitlement of Employee's heirs or devisees to the benefits of any life insurance plan or other applicable benefits.

   **e.** **Termination By Disability.** If Employee becomes eligible for the Company's long term disability benefits or if, in the sole opinion of the Company, Employee is unable to carry out the responsibilities and functions of the position held by Employee by reason of any physical or mental impairment for more than ninety consecutive days or more than one hundred and twenty days in any twelve-month period, then, to the extent permitted by law, the Company may terminate Employee's employment. The Company shall pay to Employee all compensation to which Employee is entitled up through the date of termination, and thereafter all obligations of the Company under this Agreement shall cease. Nothing in this Section 4 shall affect Employee's rights under any disability plan in which Employee is a participant.

## 5. TERMINATION OBLIGATIONS

  **a.** **Return of Property.**

   **i.** Any patents, inventions, discoveries, applications, processes, models or financial statements designed, devised, planned, applied, created, discovered or invented by Employee during the Employment Term, regardless of when reduced to writing or practice, which pertain to any aspect of the Company's or its subsidiaries' or affiliates' business as described above

shall be the sole and absolute property of the Company, and Employee shall promptly report the same to the Company and promptly execute any and all documents that may from time to time reasonably be requested by the Company to assure the Company the full and complete ownership thereof.

**ii.** All records, files, lists, including computer generated lists, drawings, documents, equipment, tangible proprietary information customer lists, documents, records, contracts, and similar items relating to the Company's business which Employee shall prepare or receive from the Company shall remain the Company's sole and exclusive property. Upon termination of this Agreement, Employee shall promptly return to the Company all property of the Company in Employee's possession. Employee further represents that Employee will not copy or cause to be copied, print out or cause to be printed out any software, documents or other materials originating with or belonging to the Company. Executive additionally represents that, upon termination of Employee's employment with the Company, Employee will not retain in Employee's possession any such software, documents or other materials.

**b.** **Resignation and Cooperation.** Upon termination of Employee's employment, Employee shall be deemed to have resigned from all offices and directorships then held with the Company, if any. Following any termination of Employee's employment, Employee shall cooperate with the Company in the winding up of Employee's pending work on behalf of the Company and the orderly transfer of Employee's work, duties, and responsibilities to other employees of the Company. Employee shall also cooperate with the Company in the defense of any action brought by any third party against the Company that relates to Employee's employment by the Company. All costs and expenses related to the third party action shall be covered by the Company.

**6.** **CONFIDENTIAL INFORMATION, NON-CIRCUMVENTION, NON-DISPARAGEMENT**

**a.** **Confidentiality.** As used in this Agreement, "**Confidential Information**" shall mean and include all information provided by Company to Employee, including but not limited to business and financial models, inventions, discoveries, improvements, developments, processes, drawings, computer software or other intellectual property, code, trade secret and other work which may be protectable by copyright, patent or trade secrecy law. Employee acknowledges that Employee will have access to proprietary Confidential Information regarding the business operations of the Company and agrees to keep all such information secret and confidential and not to use or disclose any such information to any individual or organization without the Company's prior written consent. It is hereby agreed that from time to time Employee and the Company may designate certain disclosed information as confidential for purposes of this Agreement. Employees shall not divulge, in whole or in part, any such Confidential Information to any third party without the prior consent (written or verbal) of the Company, except such Confidential Information as Employee becomes legally compelled to disclose (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process, including regulatory inquiries or otherwise). Under such circumstances, Employee shall provide Company with prompt written notice of such request and an opportunity to defend and/or attempt to limit such production.

**b.      Return of Confidential Information.** Upon Company's request, and in any event upon end of Employment Term, Employee shall return the original and any copies of the Confidential Information which he/she holds under his/her possession or control in tangible form, written or otherwise, to Company or shall certify in writing to Company that such Confidential Information has been destroyed and/or purged from its own system and files.

**c.      Non-Disclosure of Third Party Information.** Employee represents and warrants and covenants that Employee shall not disclose to the Company, or use, or induce the Company to use, any proprietary information or trade secrets of others at any time, including but not limited to any proprietary information or trade secrets of any former employer, if any; and Employee acknowledges and agrees that any violation of this provision shall be grounds for Employee's immediate termination and could subject Employee to substantial civil liabilities and criminal penalties. Employee further specifically and expressly acknowledges that no officer or other employee or representative of the Company has requested or instructed Employee to disclose or use any such third party proprietary information or trade secrets.

**d.      Non-Circumvention.** Employee shall not during the Employment Term and for a period of one (1) year thereafter: (i) utilize any Confidential Information to circumvent or compete with the Company or to cause any detriment, harm or injury to the Company or the business of the Company; or (ii) utilize any and all information lawfully furnished or disclosed to Employee by any party to circumvent or compete with the Company or to cause any detriment, harm or injury to the Company, to the business of the Company, or any affiliates of the Company. Further, Employee shall not engage in any activity which shall cause any detriment, harm or injury to the Company, to the business of the Company, or to the reputation of the Company or to permit any circumvention of or competition with the Company or the business of the Company.

**e.      Non-Disparagement.** Employee shall not, during the Employment Term and for a period of one (1) year thereafter, in any written or oral communications with any party or through any medium, whether tangible, electronic, or otherwise, criticize, ridicule or make any statement which, directly or indirectly, disparages, causes harm to, or is derogatory of the Company or its affiliates or any of their respective directors or senior officers. Employee shall not express any negative opinions of the Company, the Company's business or products, or any affiliates of the Company or their businesses or products. The provision shall be construed broadly and shall govern any statement, express or implied, made concerning the Company, the Company's business and products, or affiliates of the Company.

**f.      Damages.** Any violation by either party to this Agreement of the non-circumvention and non-disparagement provision of this Agreement shall entitle the other party to bring a legal action for appropriate equitable relief as well as damages. In addition to any other rights or remedies available at law, in equity, or by statute, the parties consent to the specific enforcement of the non-circumvention or non-disparagement provision of this Agreement through an injunction or restraining order issued by an appropriate court, without the requirement of posting a bond.

**7.      AMENDMENTS; WAIVERS; REMEDIES**

This Agreement may not be amended or waived except by a writing signed by Employee and by a duly authorized representative of the Company. Failure to exercise any right under this Agreement shall not constitute a waiver of such right. Any waiver of any breach of this Agreement shall not operate as a waiver of any subsequent breaches. All rights or remedies specified for a party herein shall be cumulative and in addition to all other rights and remedies of the party hereunder or under applicable law.

**8.  ASSIGNMENT; BINDING EFFECT**

    **a.  Assignment.**

        i.  **Employee.** The performance of Employee hereunder is personal, and Employee agrees that Employee shall have no right to assign and shall not assign or purport to assign any rights or obligations under this Agreement unless otherwise agreed to by the Company.

        ii.  **Company.** This Agreement may be assigned or transferred by the Company; and nothing in this Agreement shall prevent the acquisition, consolidation, merger, or sale of the Company or a sale of any or all or substantially all of its assets. Notwithstanding anything to the contrary herein, should the Company be acquired, or should the Company assign its rights and obligations prescribed herein, the acquiring company/third party ("**Acquiring Company**") shall assume all obligations and rights contained in this Agreement. By way of example, all references to the "Company" or the "Board" shall then be referring to the Acquiring Company and the Board of Directors for same.

    **b.  Binding Effect.** Subject to the foregoing restrictions, this Agreement shall inure to the benefit of and be binding upon each of the Parties; the affiliates, officers, managers, agents, successors and assigns of the Company; and the heirs, devisees, spouses, legal representatives and successors of Employee.

**9.  NOTICES**

All notices or other communications required or permitted hereunder shall be made in writing and shall be deemed to have been duly given if delivered: (a) by hand; (b) by a nationally recognized overnight courier service; (c) by United States first class registered or certified mail, return receipt requested, to the principal address of the other party; or (d) by electronic mail. The date of notice shall be deemed to be the earlier of: (i) actual receipt of notice by any permitted means, or (ii) five business days following dispatch by overnight delivery service or the United States Mail. Employee shall be obligated to notify the Company in writing of any change in Employee's address.

**10.  SEVERABILITY**

If any provision of this Agreement shall be held by a court to be invalid, unenforceable, or void, such provision shall be enforced to the fullest extent permitted by law, and the remainder of

this Agreement shall remain in full force and effect. In the event that the time period or scope of any provision is declared by a court of competent jurisdiction to exceed the maximum time period or scope that such court deems enforceable, then such court shall reduce the time period or scope to the maximum time period or scope permitted by law.

## 11. TAXES

All amounts paid under this Agreement (including without limitation Base Salary) shall be paid less all applicable state and federal tax withholdings and any other withholdings required by any applicable jurisdiction in accordance with Company's normal payroll procedures as may be in effect from time to time.

## 12. GOVERNING LAW; DISPUTE RESOLUTION

The Parties agree that any dispute, controversy or claim between Employee and the Company based on, arising out of or relating to Employee's employment under this Agreement shall be settled by mediation in Orange County, California. This Agreement shall be construed in accordance with the laws of the State of California without reference to the conflict of law provisions thereof.

## 13. INTERPRETATION

This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any party. Sections and section headings contained in this Agreement are for reference purposes only, and shall not affect in any manner the meaning or interpretation of this Agreement. Whenever the context requires, references to the singular shall include the plural and the plural the singular and references to the masculine pronoun shall include the feminine and the neuter, and the singular shall include the plural. This Agreement and the provisions contained herein shall not be construed or interpreted for or against any party hereto because that party drafted or caused that party's legal representative to draft any of its provisions.

## 14. OBLIGATIONS SURVIVE TERMINATION OF EMPLOYMENT

Employee agrees that any and all of Employee's obligations under this Agreement (other than Section 1) shall survive the termination of employment and the termination of this Agreement in accordance with their terms.

## 15. COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement, but all of which together shall constitute one and the same instrument.

## 16. AUTHORITY TO EXECUTE

Each Party represents and warrants that such party has the right, power and authority to enter into and execute this Agreement and to perform and discharge all of its obligations hereunder;

and that this Agreement constitutes the valid and legally binding agreement and obligation of such party and is enforceable in accordance with its terms.

## 17. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Company and Employee relating to the subject matter hereof and supersedes all prior oral and written understandings and agreements relating to such subject matter. To the extent that the practices, policies or procedures of the Company, now or in the future, apply to Employee and are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control.

## 18. EMPLOYEE ACKNOWLEDGEMENT

**EMPLOYEE ACKNOWLEDGES EMPLOYEE HAS HAD THE OPPORTUNITY TO CONSULT LEGAL COUNSEL CONCERNING THIS AGREEMENT, THAT EMPLOYEE HAS READ AND UNDERSTANDS THE AGREEMENT AND THAT THE EMPLOYMENT IS AT-WILL, THAT EMPLOYEE IS FULLY AWARE OF ITS LEGAL EFFECT, AND THAT EMPLOYEE HAS ENTERED INTO IT FREELY BASED ON EMPLOYEE'S OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS OR PROMISES OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.**

*{Space Left Intentionally Blank; Signature Page to Follow}*

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the Effective Date first written above.

**CONTAKT LLC, a California corporation**

By: _____
    *Justin Beck* (DocuSigned by)

Name: Justin Beck

Its: For LLC Manager MB Partners LLC dba Stonebright

**JUSTIN BECK, an individual**

By: _____
    *Justin Beck* (DocuSigned by)

# EXHIBIT "A"

## DESCRIPTION OF EMPLOYMENT DUTIES

Employee shall perform the following services pursuant to the terms of this Agreement, holding the position of CEO, and associated services, including but not limited to, the management and supervision of the Company, and the following (if any):