# EXHIBIT 34

Exhibit #34: 001
22-CV-01616-BAS-DDL



# The State Bar of California's Attorney Discipline Process

Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct

*April 2022*

REPORT 2022-030



22-CV-01616-BAS-DDL

 **CALIFORNIA STATE AUDITOR**
621 Capitol Mall, Suite 1200 | Sacramento | CA | 95814

 **916.445.0255** | TTY **916.445.0033**

 For complaints of state employee misconduct,
contact us through the **Whistleblower Hotline:**
**1.800.952.5665**

*Don't want to miss any of our reports? Subscribe to our email list at* 

*For questions regarding the contents of this report, please contact our* Public Affairs Office *at* 916.445.0255

This report is also available online at www.auditor.ca.gov | Alternative format reports available upon request | Permission is granted to reproduce reports

Exhibit #34: 003
22-CV-01616-BAS-DDL

**Michael S. Tilden** *Acting State Auditor*



April 14, 2022
*2022-030*

The Governor of California
President pro Tempore of the Senate
Speaker of the Assembly
State Capitol
Sacramento, California 95814

Dear Governor and Legislative Leaders:

The State Bar of California (State Bar) is responsible for protecting the public from attorneys who fail to fulfill their professional duties, and it works to meet this obligation by administering a disciplinary system that investigates and prosecutes complaints. However, our audit of the State Bar found that it failed to effectively deter or prevent some attorneys from repeatedly violating professional standards.

We found that the State Bar prematurely closed some cases that warranted further investigation and potential discipline. We reviewed files for one attorney who was the subject of 165 complaints over seven years, many of which the State Bar dismissed outright or closed after sending private letters to the attorney. Although the volume of complaints against the attorney has increased over time, the State Bar has imposed no discipline, and the attorney maintains an active license. The State Bar dismisses about 10 percent of all complaints using nonpublic measures such as private letters, which did not deter some attorneys we reviewed from continuing to engage in similar misconduct.

The State Bar failed to adequately investigate some attorneys, despite lengthy patterns of complaints against them. In one example, it closed multiple complaints alleging that an attorney failed to pay clients their settlement funds. When the State Bar finally examined the attorney's bank records, it found that the attorney had misappropriated nearly $41,000 from several clients. In another example, the State Bar closed 87 complaints spanning 20 years before it sought disbarment of an attorney due to a federal conviction for money laundering. Had the State Bar taken the pattern of complaints into account when deciding whether to request additional evidence, it might have discovered the misconduct sooner and mitigated harm to clients.

Finally, the State Bar has not consistently identified or addressed the conflicts of interest that exist between its own staff members and the attorneys they investigate. In more than one-third of the cases we reviewed, the State Bar did not document its consideration of conflicts before it closed these cases.

To remedy these weaknesses, the State Bar needs to make significant improvements to the safeguards that help ensure its staff conduct thorough investigations, and the Legislature should take additional steps to ensure the State Bar's compliance with its revised policies and procedures.

Respectfully submitted,

*Michael Til*

MICHAEL S. TILDEN, CPA
Acting California State Auditor

iv    California State Auditor Report 2022-030
      April 2022

Exhibit #34: 005
22-CV-01616-BAS-DDL

# Contents

Summary                                                                                  1

Recommendations                                                                          5

Introduction                                                                             9

**Audit Results**
Weaknesses in the State Bar's Attorney Discipline System Have Resulted
in Some Attorneys Not Being Held Accountable for Misconduct                              13

The State Bar Failed to Accurately Track or Document Its Consideration
of Some Staff Members' Potential Conflicts of Interest                                   26

The State Bar's Weak Safeguards Have Hampered Its Ability to Prevent
Repeated Client Trust Account Violations                                                 27

Weaknesses in the State Bar's Monitoring of Its Attorney Discipline
System Limit the Independence of That Monitoring                                         36

**Appendix A**
Demographic Data Pertaining to Complaints Against Attorneys                              43

**Appendix B**
Scope and Methodology                                                                    51

**Response to the Audit**
The State Bar of California                                                              53

California State Auditor's Comments on the Response From
the State Bar of California                                                              65

Exhibit #34: 006
22-CV-01616-BAS-DDL

vi | California State Auditor Report 2022-030
| April 2022

Exhibit #34: 007
22-CV-01616-BAS-DDL

# Summary

### Results in Brief

Attorneys hold significant responsibility as representatives and advisers of their clients. Clients often seek an attorney during times of crisis when they are in a particularly vulnerable situation. To protect the public from attorneys who fail to fulfill their professional responsibilities competently, the State Bar of California (State Bar) administers a disciplinary system that investigates and prosecutes complaints of professional misconduct against the more than 250,000 lawyers licensed in California. After investigating complaints, it may bring a case to the State Bar Court of California seeking discipline against an attorney. A case may be closed for reasons such as insufficient evidence; it may be resolved through a nondisciplinary measure, such as a warning letter; or it may result in discipline. To ensure that complaints of attorney misconduct are reviewed consistently, the State Bar establishes policies and processes for its staff to follow.

The State Bar closes many cases without notice to the public through certain methods, such as warning letters—which we describe as *nonpublic measures*—but it lacks clear policies on when staff should use these nonpublic measures. Cases that are confidential and not made public may not deter attorney misconduct because current and potential clients cannot find out about the behavior. Similarly, the State Bar lacks clear policies on what its staff should do when a complainant withdraws from a case, which can result in cases being closed without determining whether misconduct occurred. For example, we identified an attorney for whom the State Bar closed four cases when the clients withdrew their complaints. These cases demonstrated that the State Bar knew that multiple clients had similar complaints about the attorney not promptly distributing funds to which the clients were entitled. Had the State Bar investigated these cases, it might have found sufficient grounds for discipline and thus might have prevented further harm to the attorney's clients.

The State Bar does not proactively seek out information regarding disciplinary actions against attorneys in other jurisdictions; instead it relies on the attorneys themselves or the other jurisdictions to report the discipline to the State Bar. However, we found several examples of discipline imposed by other jurisdictions that were not communicated to the State Bar for one year or more. The American Bar Association maintains a National Lawyer Regulatory Data Bank (data bank) of discipline imposed in other jurisdictions, but the State Bar has not used it on any regular basis to proactively identify California-licensed attorneys disciplined in other jurisdictions, thereby increasing the risk that attorneys who have committed

*Audit Highlights...*

*Our audit of the State Bar's attorney discipline process found that it failed to effectively prevent attorneys from repeatedly violating professional standards.*

» *The State Bar prematurely closed some cases that may have warranted further investigation and potential discipline.*

» *It lacks clear policies on the use of nonpublic measures for closing complaints.*

  • *It dismissed many investigations by nonpublic measures, such as private warning letters to attorneys.*

» *It did not adequately investigate some attorneys with lengthy patterns of complaints.*

  • *It closed multiple complaints alleging that an attorney failed to pay clients their settlement funds because the clients withdrew their complaints, which allowed the attorney to continue misappropriating client funds.*

» *It has not consistently identified or addressed the conflicts of interest that may exist between its own staff members and the attorneys they investigate.*

  • *In more than one-third of the cases we reviewed, the State Bar did not document its consideration of conflicts before it closed complaint cases.*

» *These issues are illustrated in the State Bar's handling of client trust account violations, in which it repeatedly used nonpublic measures to close complaints.*

misconduct in other jurisdictions will continue to practice in California. Further, the State Bar's ability to analyze patterns of similar complaints is hampered because its case management system has 672 types of allegations but does not group these complaints into similar categories. Without more general categories of allegations, it can be difficult for State Bar staff to identify patterns of complaints alleging similar behavior.

Additionally, the State Bar requires its employees to complete an annual questionnaire in which they disclose personal, financial, and professional relationships they have with licensed California attorneys. However, in 11 of 30 cases we reviewed, the State Bar did not document its consideration of conflicts of interest. It is critical that the State Bar objectively assess and document its consideration of conflicts of interest when closing a case, particularly at the intake stage. The chief trial counsel agreed with our findings and indicated that management of conflicts of interest is an area where the State Bar needs much improvement. He further noted that conflict-of-interest information has not been consistently updated in its current case management system, and he is working with his staff to correct the issue.

The issues we identified are illustrated in the State Bar's handling of many complaints related to client trust accounts. These accounts hold funds paid to attorneys on behalf of a client, such as an advance fee for future services or funds received as the result of a settlement. Our review identified that the State Bar closed many client trust account complaints using nonpublic measures, sometimes without even notifying the attorney about the complaint, and that an attorney's prior history of allegations did not appear to affect the State Bar's decision to close certain client trust account cases. For example, for one attorney we reviewed, the State Bar closed 87 complaints spanning 20 years, some through nonpublic measures and some through a policy that allowed it to close certain cases without contacting the attorney for additional information because the monetary amounts involved were relatively low (a *de minimis* closing). However, the State Bar eventually sought disbarment based on this attorney's conviction in federal court for money laundering through client trust accounts.

Finally, weaknesses in the State Bar's monitoring processes diminish the value of those processes in ensuring that it is closing attorney discipline cases appropriately. It closes the majority of cases without discipline. Although it allows complainants to appeal its decisions to close complaints, relatively few complainants do so. Thus, it appears that individuals may need additional assistance in filing complaints and appeals. One option for assisting complainants with these actions would be to establish an independent ombudsperson for attorney discipline. Moreover, the State Bar uses an external

Exhibit #34: 009
22-CV-01616-BAS-DDL

reviewer to conduct a semiannual review of a selection of its closed cases to identify errors and areas for staff improvement. However, several flaws in the design of the external review process limit its independence, such as not alternating among different reviewers; having the reviewer submit its report to State Bar management instead of directly to the Board of Trustees of the State Bar; and not having the external reviewer select cases for review. All of these factors increase the risk that the review is not objective.

**Agency Comments**

The State Bar generally agreed with our findings and recommendations, with one exception. However, it asserted that it would need significant additional resources to implement the recommendations.

4 | California State Auditor Report 2022-030
  | April 2022

Exhibit #34: 011
22-CV-01616-BAS-DDL

# Recommendations

The following are the recommendations we made as a result of our audit. Descriptions of the findings and conclusions that led to these recommendations can be found in the Audit Results section of this report.

### Legislature

To improve the independence and objectivity of the semiannual review of the State Bar of California (State Bar) case files, the Legislature should require the State Bar to do the following:

- Regularly change its external reviewer.

- Have its external reviewer present its findings and recommendations, with all confidential information redacted, directly to the Board of Trustees of the State Bar (board).

- Require the State Bar to report periodically to the board on the actions it takes to address the external reviewer's recommendations.

To ensure that the State Bar implements the policy and procedure changes identified in this audit, the Legislature should require an assessment by no later than December 2023 of the State Bar's compliance with those policies and procedures.

### State Bar

To ensure that it uses nonpublic measures to close complaints only when such use is consistent and appropriate, the State Bar should revise its policies by October 2022 to define specific criteria that describe which cases are eligible to be closed using nonpublic measures and which are not eligible.

To ensure that it fulfills its duties to investigate attorney misconduct, by April 2023, the State Bar should begin monitoring compliance with its new policy for identifying the circumstances in which investigators should continue to investigate even if the complainant withdraws the complaint.

The State Bar should notify the public on its website when other jurisdictions have determined that an attorney who is also licensed in California presents a substantial threat of harm to the public.

To ensure that it identifies discipline imposed on California attorneys in other jurisdictions, the State Bar should use the American Bar Association's data bank to identify attorneys disciplined in other jurisdictions who have not reported that discipline to the State Bar.

To allow its staff to more easily identify patterns of similar complaints made against attorneys, by July 2022, the State Bar should begin using its general complaint type categorizations when determining whether to investigate a complaint.

To improve its ability to identify and prevent conflicts of interest that its staff may have with attorneys who are subjects of complaints, the State Bar should develop a process by July 2022 for monitoring the accuracy of the information in its case management system used to flag attorneys with whom its staff have declared a conflict of interest.

To ensure that State Bar staff do not inappropriately close cases against attorneys on the conflict list, the State Bar should create a formal process by October 2022 for determining whether it is able to objectively assess whether such a complaint should be closed or whether the decision should be made by an independent administrator. The State Bar should document this assessment in its case files for each case against an attorney on the conflict list.

To increase the independence and objectivity of the external review of its case files, the State Bar should amend its policies by July 2022 to do the following:

- Require its external reviewer to select the cases for the semiannual review.

- Establish formal oversight to ensure that it follows up and addresses the external reviewer's findings.

To ensure that it appropriately reviews complaints involving overdrafts and alleged misappropriations from client trust accounts, the State Bar should perform the following by July 2022:

- Discontinue its use of informal guidance for review of bank reportable actions and direct all staff to follow the policies established in its intake procedures manual (intake manual).

- Revise its intake manual to disallow *de minimis* closures if the attorney has a pending or prior bank reportable action or case alleging a client trust account violation.

Exhibit #34: 013
22-CV-01616-BAS-DDL

- Establish a monitoring system to ensure staff are following its policies for *de minimis* closures.

- When investigating client trust account-related cases and bank reportable actions not closed *de minimis*, require its staff to obtain both the bank statements and the attorney's contemporaneous reconciliations of the client trust account, and determine if the relevant transactions are appropriate.

- Require a letter with client trust account resources be sent to the attorney after the closure of every bank reportable action.

8 | California State Auditor Report 2022-030
April 2022

Exhibit #34: 015
22-CV-01616-BAS-DDL

# Introduction

## Background

The California Constitution establishes three branches of state government: the executive, legislative, and judicial branches. The judicial branch is responsible for interpreting the laws of the State and, among other functions, providing access to the courts for individuals to defend their personal and property rights, determining the guilt or innocence of those accused of violating laws, and protecting the rights of individuals. The Supreme Court of California (Supreme Court) holds the power to admit, disbar, and suspend attorneys who are considered officers of the court. Attorneys hold significant responsibility as representatives of and advisers to their clients. Clients often seek the services of an attorney during times of crisis when they are in a particularly vulnerable situation. To fulfill their role, attorneys are accorded a great degree of trust, as well as certain privileges and responsibilities: they may legally represent their clients, may hold funds on behalf of their clients, and must maintain the confidentiality of the information that their clients provide them.

Every person who is admitted and licensed to practice law in California must be a member of the State Bar of California (State Bar), except for judges currently serving in that capacity. The State Bar is a public corporation within the judicial branch. As the text box shows, state law establishes public protection as the highest priority of the State Bar. The State Bar provides this protection by, among other activities, licensing attorneys, regulating the profession and practice of law, enforcing its Rules of Professional Conduct for attorneys, and disciplining attorneys who violate rules and laws. To prevent attorney misconduct, the State Bar encourages ethical behavior through resources such as education programs and a hotline for attorneys seeking guidance on their professional responsibilities.

The State Bar is governed by the 13‑member Board of Trustees of the State Bar (board), seven of whom are attorneys appointed by the Supreme Court or the Legislature. The remaining six are members of the public who are not attorneys and who are appointed by the Legislature or the Governor. The board adopts a strategic plan with goals for meeting the State Bar's responsibilities, such as ensuring timely, fair, and appropriately resourced admission, discipline, and regulatory systems for the more than 250,000 lawyers

### The State Bar's Core Mission and Selected Responsibilities

**Core Mission**

State law establishes that "Protection of the public... shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

**Selected Functions**

- License attorneys in California.
- Enforce the Rules of Professional Conduct for attorneys.
- Discipline attorneys who violate rules and laws.
- Administer the California bar exam.

Source: State law and the State Bar's website.

Exhibit #34: 016
22-CV-01616-BAS-DDL

---

### Examples of Allegations of Professional Misconduct

The State Bar receives allegations of attorney misconduct, including the following general types:

**Failure to perform competently:** When an attorney does not perform agreed-upon services, such as appearing in court or drafting a document for the client.

**Untimely communication:** When an attorney does not promptly inform a client of decisions or circumstances that require informed consent or disclosure according to the State Bar Act or the Rules of Professional Conduct.

**Commingling of funds:** When an attorney holds certain funds received for the benefit of a client in an account that holds the attorney's own funds.

**False advertising:** When an attorney guarantees results or outcomes.

Source:  State law, the State Bar's Rules of Professional Conduct, the State Bar's intake procedures and disclosure (intake manual), a state court case, and the State Bar's 2021 annual discipline report.

---

licensed in California. The board also establishes committees composed of its own members, including a regulation and discipline committee that oversees the State Bar's management of the attorney discipline process.

### Attorney Discipline

To protect the public from attorneys who fail to fulfill their professional responsibilities competently, the State Bar administers a discipline system through which it receives, investigates, and prosecutes claims of attorney misconduct. The State Bar receives complaints from the public by mail or through an online submission form. In addition, it can initiate inquiries or investigation into attorney conduct based on information it receives from third-party sources. For example, the State Bar may open cases based on sources it terms *reportable actions*, such as a notification from a bank that an attorney's client trust account has insufficient funds. The text box identifies some major categories of professional misconduct allegations.

Two of the primary components of the State Bar's attorney discipline system are the Office of Chief Trial Counsel of the State Bar (trial counsel's office) and the State Bar Court of California (State Bar Court). For 2021 the State Bar adopted a budget of nearly $75 million for these divisions. As Figure 1 indicates, the State Bar's process for reviewing complaints of alleged attorney misconduct includes multiple levels of reviews, and it closes many complaints at the intake level. At the intake level, the trial counsel's office conducts a review to determine whether misconduct alleged in a complaint warrants an investigation. When the State Bar closes a complaint at the intake level, it informs the individual who made the complaint of the decision in writing and describes how to request an appeal of the decision or provide additional facts. From January 2010 to November 2021, more than one-third of complaints received were investigated, and slightly more than 5 percent of cases resulted in formal discipline of the attorney.

For those complaints that it does not close at the intake phase, the trial counsel's office investigates and, where appropriate, prosecutes attorneys for violations of the State Bar Act or the State Bar's Rules of Professional Conduct, which establish professional and ethical standards for attorneys to follow. The State Bar Court adjudicates the matters that the trial counsel's office files and may privately

Exhibit #34: 017
22-CV-01616-BAS-DDL

**Figure 1**
**The State Bar's Attorney Discipline Process Includes Multiple Levels of Review**

**INTAKE**

When the trial counsel's office receives a complaint, it conducts a legal review to determine whether the alleged misconduct constitutes a disciplinable violation. In doing so, the trial counsel's office may close the complaint or forward it for investigation.

**64.5%** of cases were closed during **INTAKE**.

**35.5%** of cases went to

**INVESTIGATION**

If forwarded, the trial counsel's office conducts an investigation to determine whether there is sufficient evidence to support the allegation of attorney misconduct. If so, the complaint advances to prefiling. The trial counsel's office may, at its discretion, close a case at this stage without imposing discipline, such as by issuing a warning letter.

**22.2%** of cases were closed during **INVESTIGATION**.

**13.3%** of cases went to

**PREFILING**

The trial counsel's office drafts disciplinary charges for cases that it has determined have sufficient evidence for prosecution in the State Bar Court. Either party may request an early conference before a judge to discuss a potential settlement.

**6.2%** of cases were closed during **PREFILING**.

**7.1%** of cases went to

**HEARING AND DISCIPLINE**

- The State Bar Court conducts evidentiary hearings and then renders a decision with findings and recommendations of discipline or closes the case without discipline. The State Bar Court's authority to discipline attorneys includes issuing reprovals, which can be public or private.

- In cases that warrant the imposition of suspension or disbarment, the State Bar Court recommends the appropriate disciplinary actions to the Supreme Court for review.

**1.8%** of cases were closed during **HEARING** and **DISCIPLINE** without discipline.

**5.3%** of cases were closed with

**FORMAL DISCIPLINE**

**0.5%** of cases were closed with **REPROVALS** or **RESIGNATION WITH CHARGES PENDING**
**STATE BAR COURT**

**4.8%** of cases were closed with **SUSPENSIONS** and **DISBARMENTS**
**SUPREME COURT**

Source: Analysis of the State Bar's case data, state law, the Rules of Professional Conduct, the Rules of Procedure of the State Bar, the State Bar's intake manual, and the State Bar's 2021 annual discipline report.

Note: Percentages in this figure are derived from the more than 221,000 cases that the State Bar closed between January 1, 2010, and November 10, 2021, which include cases opened in previous years.

Exhibit #34: 018
22-CV-01616-BAS-DDL

> **Examples of Potential Outcomes of the State Bar's Disciplinary Cases**
>
> **Disbarment:** A public disciplinary sanction whereby the Supreme Court orders the attorney's name to be stricken from the roll of California attorneys; during this time, the attorney is precluded from practicing law in the State.
>
> **Suspension:** A public disciplinary sanction that generally prohibits a licensee from practicing law or from presenting himself or herself as entitled to practice law for a period of time ordered by the Supreme Court. A suspension can include a period of actual suspension, stayed suspension, or both.
>
> **Reproval:** The lowest level of court-imposed discipline, wherein the State Bar Court censures or reprimands the offending attorney for misconduct. Reprovals may include conditions such as making restitution, completing probation, or completing education on subjects such as ethics or the law. Reprovals can be public or private.
>
> **Dismissal:** The disposal or closure of a disciplinary matter, for reasons such as insufficient evidence. The State Bar may close cases using methods that do not provide notice to the public, such as a warning letter. Such methods are known as *nonpublic measures.*
>
> Source:  State law, Rules of Procedure of the State Bar, the State Bar's investigation manual, and the State Bar's training material on determining the level of discipline.

or publicly reprove an attorney or, if warranted, may recommend that the Supreme Court—which makes the final decision for such discipline—suspend or disbar the attorney in question. The text box identifies some of the possible outcomes of the State Bar's disciplinary cases.

According to the clerk of the State Bar Court, in some instances, the State Bar Court chooses to place an attorney on probation for all or part of the time he or she would otherwise be suspended. The goals of attorney probation include protection of the public and rehabilitation of the attorney. Probation may include a variety of conditions, such as financial restitution or State Bar ethics school. The State Bar's Office of Probation supervises attorneys placed on probation, and when an attorney does not comply with the terms of probation, the State Bar has established three potential outcomes: close the matter without further action; revoke the probation, which may result in the attorney's suspension; or prosecute the noncompliance as a new offense, which may result in the imposition of new discipline.

The Legislature passed a law, which became effective on January 1, 2022, requiring the California State Auditor's Office to conduct an audit of the State Bar's attorney complaint and discipline process. The Legislature included this requirement in the law because the State Bar did not take action against one attorney for misconduct until recently, despite repeated allegations of this attorney's misconduct over decades.

# Audit Results

## Weaknesses in the State Bar's Attorney Discipline System Have Resulted in Some Attorneys Not Being Held Accountable for Misconduct

To assess the State Bar's attorney discipline system, we focused on key aspects of that process and determined whether the State Bar had established safeguards that are sufficient to ensure that it identifies attorney misconduct and imposes appropriate discipline. To ensure that its reviews of complaints of attorney misconduct are consistent, the State Bar must establish policies and processes for its staff to follow. However, we found that the State Bar's policies on how it should use certain methods to close cases without public notice—known as nonpublic measures—lack clarity and that it overused these methods. Until recently, the State Bar's policies did not identify the factors staff should consider when deciding whether to close cases in which an attorney has likely committed misconduct but the complainant withdraws the complaint. In addition, although the State Bar established policies for addressing misconduct by California attorneys in other jurisdictions and for addressing patterns of complaints against attorneys, its failure to develop and use tools that would help it identify these issues has led to inconsistencies and missed opportunities to inform and protect the public.

### The State Bar Prematurely Closed Some Cases That Should Have Warranted Further Investigation and Potential Discipline

The State Bar's official policy describes three primary purposes of attorney discipline: protection of the public, the courts, and the legal profession through deterrence; maintenance of the highest professional standards; and preservation of public confidence in the legal profession. However, some of the State Bar's policies lack clarity, which has resulted in its staff closing cases when further investigation would likely have better protected the public. Specifically, the State Bar closes many cases through *nonpublic measures*, such as warning letters, but it lacks clear policies on when it is appropriate for staff to use these nonpublic measures. Complaints that are closed through nonpublic measures are confidential and may have less of a deterrent effect on attorney misconduct because current and potential clients cannot find out about the behavior. Similarly, the State Bar has lacked clear policies on whether its staff should proceed with cases when a complainant withdraws the complaint, and it closed several such cases we reviewed without determining whether misconduct had occurred.

Exhibit #34: 020
22-CV-01616-BAS-DDL

Although the State Bar's policies provide general guidelines for deciding when to use nonpublic measures, the policies lack the details necessary to ensure that they are implemented consistently. The State Bar uses a number of types of nonpublic measures, which Figure 2 details. Its policy directs staff to pursue nonpublic measures only when doing so will reasonably protect against future misconduct. Nevertheless, the policy does not identify the factors that staff should consider to determine whether future misconduct is likely to occur. The policy also states that nonpublic measures should be used for minor violations that did not cause significant harm or for violations that would likely not result in the imposition of discipline. However, the policy does not define minor violations or levels of harm resulting from an attorney's conduct. The chief trial counsel stated that staff should use their experience, judgment, training, and knowledge of applicable standards to implement the policy, but we found that the State Bar's use of these measures is not achieving the intent of its policy regarding their use.

*The State Bar's use of nonpublic measures to close complaints is not providing reasonable protection against future misconduct, as its policy requires.*

The State Bar's data indicate that the use of nonpublic measures is not providing reasonable protection against future misconduct, as its policy requires. A State Bar study from July 2021 showed that a significant number of attorneys were investigated for misconduct within two years after being disciplined. It also showed that nearly 26 percent of attorneys whose cases were closed with a warning letter in 2019 had a new complaint about their professional conduct investigated by the State Bar within two years of the original case being closed. The State Bar's executive director indicated that the State Bar has taken steps to address repeated misconduct, including issuing a new policy addressing alternatives to discipline and adding information to the closing letters for reportable actions that it sends to attorneys, but its efforts to reduce recidivism are centered around a redesign of its probation process for attorneys convicted of misconduct.

Notwithstanding these steps, patterns of attorney misconduct suggest that the State Bar is overusing nonpublic measures. From 2010 to 2021, the State Bar closed more cases through nonpublic measures—a total of 22,600, or 10 percent of all case closures—than it did through public discipline, which totaled 11,200, or 5 percent of all case closures. During the same period, more than 700 attorneys each had four or more cases that the State Bar closed through nonpublic measures. Our review of a selection of cases associated with five of these attorneys determined that State Bar staff closed cases through nonpublic measures despite indications in its case files that further investigation or actual discipline may have been warranted. Of the five attorneys, four had at least one previous complaint for similar misconduct that was closed

**Figure 2**
**Nonpublic Measures That the State Bar Uses to Close Cases**



## RESOURCE LETTER

Describes resources, such as ethics training or client trust account training, along with a summary of the conduct of concern and ways to rectify it.



## DIRECTIONAL LETTER

Directs action on the part of an attorney. This can include direction to return a client file or to communicate with a client.



## WARNING LETTER

Informs an attorney of his or her ethical obligations when there is substantial evidence that he or she committed a violation that may be misconduct.



## AGREEMENT IN LIEU OF DISCIPLINE

A written agreement that may involve conditions of practice or further legal education or rehabilitation.



## PRIVATE REPROVAL

A censure or reprimand that may include conditions. Private reproval is the only nonpublic measure that the State Bar considers to be discipline.

Source: The State Bar's policy directives, website, and 2021 annual discipline report; Rules of Procedure of the State Bar; the State Bar's intake manual; State Bar discipline case files; and state law.

through nonpublic measures. In total, we reviewed 42 cases for these five attorneys and found indications that the State Bar had inappropriately closed 13 of them through nonpublic measures.

Case Example 1 demonstrates how, for one of these attorneys, the complaints against the attorney increased over time even as the State Bar closed multiple cases involving this attorney through nonpublic measures. The State Bar's legal adviser reviewing the complaints against this individual asserted that the complaints related more to the attorney's poor office management than to misconduct and stated that education and outreach might be more appropriate than discipline for this attorney. However, the nature of the complaints against the attorney call into question the legal adviser's assertions.

The cases involving this attorney that were closed using nonpublic measures not only included failing to provide settlement payments or to provide client files, but also included the attorney threatening to report another attorney to the State Bar if the other attorney did not provide requested information as well as offering to pay a complainant to withdraw a complaint made to the State Bar. Further, the State Bar's use of nonpublic measures to address complaints made against this attorney were ineffective as the number of complaints against this attorney per year have increased. This increase in cases may have resulted in further harm to the public as well as representing an additional workload for the State Bar.

In cases where complainants no longer wish to pursue their allegations, the State Bar's policies previously gave it discretion to continue the investigation but did not require that it do so, regardless of whether it already possessed evidence of misconduct. The Rules of Procedure of the State Bar allow it to investigate and prosecute misconduct at its discretion, even if a complainant asks to withdraw his or her complaint. The inconsistencies identified as a result of this audit led the State Bar to issue a policy directive in February 2022 clarifying how to proceed when a complainant withdraws the complaint or otherwise fails to cooperate in the investigation. Before this new policy, the State Bar's policies did not identify what factors should prevent it from closing a case when a complainant considers a matter resolved or withdraws the allegation, and we determined that the State Bar closed some cases even when there was evidence of misconduct. To examine the possible effects of this unclear guidance, we reviewed 33 closed cases for which the State Bar indicated that the complainant no longer wished to pursue the complaint or the attorney and complainant had resolved the issue. In seven of those cases, there was evidence of misconduct by the attorney.

*The inconsistencies identified as a result of this audit led the State Bar to issue a policy directive in February 2022 clarifying how to proceed when a complainant withdraws the complaint or otherwise fails to cooperate in the investigation.*

For example, for the attorney in Case Example 2, the State Bar closed four cases from March 2019 through August 2019 after the client in each case withdrew the complaint. A senior trial counsel at the State Bar stated that, in practice, the State Bar closes cases when the complainant withdraws the complaint, in part because

**Case Example 1**



### Case Example 1

An attorney exhibited a pattern of failing to provide settlement payments or to provide files to clients until the client complained. The State Bar closed cases against this attorney 28 times over 16 years using nonpublic measures and all of the other closed cases were closed outright. However, complaints against the attorney continued to increase. From 2014 to 2021, the attorney was the subject of 165 complaints. Despite the high number of complaints, many for similar matters, the State Bar has imposed no discipline, and the attorney still maintains an active license.

In one early case, the State Bar issued a warning letter to the attorney for failing to release a client's case file for nearly a year. However, the attorney has continued to generate complaints from other clients for this same issue. In the 11 years since the State Bar issued that warning letter, complaints have led the State Bar to issue 11 directional letters requiring the attorney to return client files.

Complaints against the attorney

Complaints closed using a nonpublic measure

Note: We changed the demographics depicted in some of our case examples to protect the confidentiality of these investigations.

the State Bar would need further evidence and testimony from the complainant to be able to prosecute a case, and it does not have an effective way of compelling cooperation from a complainant. However, the complaints against the attorney described in Case Example 2 demonstrate that closing a case because a complainant no longer wishes to pursue the complaint may not be in the public's best interest. These cases demonstrate that the

**Case Example 2**

**Case Example 2**

The State Bar closed multiple complaints that were made against an attorney over the course of about 18 months, each alleging that the attorney had failed to pay clients their settlement funds. Generally, the State Bar closed each complaint after the attorney finally paid the client, noting either that the matter was resolved between the attorney and the complainant after the client withdrew their complaint or that there was insufficient evidence to support that the attorney's conduct warranted discipline. A pattern was discernible from five complaints the State Bar received within one year alleging that the attorney's clients were not receiving settlement payments. However, the State Bar did not identify the need to examine the attorney's bank records until it had received more than 10 complaints over two years. It did not examine the records for another six months, during which time the State Bar continued to receive similar complaints.

When the State Bar finally examined the client trust account, it found that the attorney had misappropriated nearly $41,000 in total from several clients. The State Bar ultimately filed charges against the attorney stemming from these more recent complaints. After the State Bar questioned the attorney about discrepancies in the client trust account, the attorney admitted to using client funds for personal reasons.

State Bar was informed that multiple clients had complained about the attorney not promptly distributing funds the clients were entitled to, which may be sufficient grounds for discipline. Had the State Bar investigated these cases, it might have prevented further harm to the attorney's clients.

The State Bar's practices and its staff's responses to our inquiries illustrated a common theme: the State Bar is generally focused on closing cases expeditiously. This emphasis on closing cases quickly appears to be in response to criticism the State Bar has faced for the amount of time it has taken to close some cases.

Exhibit #34: 025
22-CV-01616-BAS-DDL

The State Bar has long struggled to process all of the complaints that it receives each year. Audits our office issued in April 2019 and in April 2021 identified concerns about the backlog of unclosed cases.[1] According to its executive director, addressing the complaint backlog has been the most significant driving factor in the State Bar's development of performance measures and processes, in part because of the focus of our office and the Legislature on the backlog. Nevertheless, the patterns we observed suggest that staff following some of the State Bar's policies may be contributing to the large number of complaints it must address. As Case Examples 1 and 2 illustrate, the State Bar's actions have failed to prevent additional misconduct of a similar nature, leading to an increase in the volume of subsequent complaints about a specific attorney for the same misconduct. In turn, this has increased the State Bar's workload, which makes it more difficult for it to address its backlog and fulfill its primary mission of protecting the public.

### *Weak Processes Allow Attorneys Who Committed Misconduct in Other Jurisdictions to Continue Practicing in California*

Although state law clearly sets forth expectations regarding discipline for attorneys who have committed misconduct in other jurisdictions, the State Bar's implementation of this law has not protected the public in some instances and has led to significant delays in identifying some cases of attorney discipline imposed on California attorneys in other jurisdictions. Attorneys practicing law in other jurisdictions may also be licensed by the State Bar to practice law in California. The text box shows examples of other jurisdictions. According to state law, a final determination of professional misconduct in other jurisdictions, such as a federal court or another state court, is evidence that the attorney is culpable of professional misconduct in California, with limited exceptions. When another attorney disciplinary authority, such as the state bar of another state, disciplines an attorney who is also licensed to practice in California, the State Bar's policy is to determine whether it should pursue imposing discipline on the attorney based on the discipline imposed in the other jurisdiction, a practice known as *reciprocal discipline.* Imposing reciprocal discipline helps to protect the public and maintain confidence in the legal profession by preventing attorneys who are suspended or disbarred for misconduct in one jurisdiction from practicing in California.

> **Examples of Other Jurisdictions**
>
> - Federal courts, including district courts and bankruptcy courts.
>
> - Courts of other states.
>
> - Regulatory agencies with authority to discipline attorneys, such as the U.S. Patent and Trademark Office.
>
> Source:  Federal law, State Bar intake manual, State Bar guidelines for attorney mandatory reportable actions, the U.S. Court's website, and State Bar case files.

---

[1]   *State Bar of California: It Should Balance Fee Increases With Other Actions to Raise Revenue and Decrease Costs,* Report 2018-030; and *The State Bar of California: It Is Not Effectively Managing Its System for Investigating and Disciplining Attorneys Who Abuse the Public Trust,* Report 2020-030.

Exhibit #34: 026
22-CV-01616-BAS-DDL

According to the assistant chief trial counsel who manages intake staff (intake manager), the State Bar initiates cases related to discipline in other jurisdictions in three instances: when attorneys self-report the discipline as required by state law; when the State Bar receives notifications from other jurisdictions; or when the State Bar becomes aware of the discipline through other means, such as media reports. However, as we discuss later, the State Bar's processes do not proactively identify discipline imposed by other jurisdictions.

*The State Bar does not proactively identify discipline imposed by other jurisdictions.*

From 2010 through 2021, the State Bar closed more than 700 cases relating to attorney misconduct in other jurisdictions. We reviewed 32 of those cases and identified issues with nine of them, including four for which the State Bar failed to impose public discipline even though it was aware that another jurisdiction had done so, such as in Case Example 3. In that case, before the attorney's resignation in California, the State Bar issued the attorney a warning letter instead of taking other disciplinary action on the basis that it deemed the attorney a minimal risk to the public due to their age and lack of ties with California. The State Bar's intake manager did not provide any additional rationale for the State Bar's decision to close the case. However, the attorney's age does not seem relevant, as the other jurisdiction indicated that the alleged misconduct had recently occurred—less than five years before the State Bar's decision to close the case with a warning letter. The State Bar does not consider a warning letter to be a disciplinary action, and thus its response was not reciprocal, given that the other jurisdiction ordered that the attorney be permanently prohibited from practicing law. Because the State Bar did not impose any public reciprocal discipline, the attorney has no public record of misconduct in California. Based on the attorney's history of practicing law with a suspended license and failing to comply with the agreement with the other state to resign from practice in California, the lack of public discipline by the State Bar increases the risk that this attorney could engage in similar inappropriate behavior in the future.

In another of the cases we reviewed, the State Bar did not take proactive steps to inform the public that another jurisdiction had temporarily suspended the attorney to protect the public from further misconduct while the case was being decided. Case Example 4 describes this instance. State law considers a certified copy of a final order determining that an attorney committed professional misconduct by a court or body authorized to discipline attorneys in another jurisdiction as conclusive evidence that the attorney is culpable of professional misconduct in California. Because the case in the other jurisdiction was not final until January 2022, the State Bar could not have imposed discipline before then based solely on the actions of that other jurisdiction. However, state law does allow the State Bar to initiate and conduct