EXHIBIT 142

3:22-CV-01616-BAS-DDL
EXHIBIT #142: 001

Kenneth J. Catanzarite (SBN 113750)
kcatanzarite@catanzarite.com
Nicole M. Catanzarite-Woodward (SBN 205746)
ncatanzarite@catanzarite.com
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544
Fax: (714) 520-0680

Attorneys for Plaintiffs

# IN THE SUPERIOR COURT OF CALIFORNIA
## FOR THE COUNTY ORANGE

| | |
|---|---|
| MOBILE FARMING SYSTEMS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD JOSEPH PROBST, et al., <br><br> Defendants. | Case No. 30-2019-01046904 <br><br> Assigned for All Purposes to <br> Hon. Randall Sherman <br> Dept. CX105 <br><br> **DECLARATION OF RICHARD F. O'CONNOR** |

## DECLARATION OF RICHARD F. O'CONNOR

I, Richard F. O'Connor, have personal knowledge of each fact set forth in this declaration based upon my observation of, participation in, and recollection of, the matters and events to which I declare. I could and would competently testify to each fact set forth in this declaration if called and duly sworn by this Court. I certify and declare as follows:

1. I am over the age of eighteen and a resident of Orange County, California.

2. I offer this declaration in opposition to the motion to recuse/disqualify Kenneth Catanzarite and Catanzarite Law Corporation (collectively "CLC").

3. From inception of Cultivation Technologies, Inc. ("CTI") until May 5, 2016 I was the Chief Executive Officer and a member of the three member Board of Directors with Richard Probst ("Probst") and Amy Cooper ("Cooper"). On May 5, 2016 I resigned as an officer and director of CTI.

4. From start up in March 2015 through May 5, 2016 the executives were paid from CTI without any material accruals of salary expense.

5. As Chief Executive I issued 5,000,000 Founders Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort.

6. At no time prior to my resignation from CTI on May 5, 2016 was there ever a discussion that the executives were underpaid or that they would receive any CTI shares for services rendered.

7. Attached as Exhibit "2" is an email dated April 26, 2017 from Probst on behalf of CTI to me which attached two documents a "Balance Sheet by year 2015-032017" and "ProfitandLoss by year 2015-032017". Prior to receipt of this email I spoke with Probst to discuss CTI's need to raise money for operations. I was asked to consider raising money for CTI by the sale of common shares at $1.00 per share. I asked for the financials before I would consider doing so. In my conversation with Probst just before receipt of the email he told me about the team of executives that had been engaged and stated they were being paid 50% of their salaries in cash and 50% accrued as current liabilities. Probst stated that once CTI was profitable the accrued salaries would be paid or alternatively would be paid out of proceeds of the $1.00 per

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1 | share offering.

2 |     8.    During the entire course of my conversation with Probst before receipt of the
3 | April 26, 2017 email and attachments, he never mentioned any preferred stock issuance at all nor
4 | any issuance of stock of any kind for salaries.

5 |     9.    I understand that Defendants including Probst, have taken the position that the
6 | executives were underpaid prior to January 1, 2017 and were to be paid in preferred stock. This
7 | preferred stock for services, past or future, was never mentioned to me at all. Instead it was
8 | always half cash and half accrual of salaries.

9 |     10.    In also recall from my discussion with Probst in April 2017 that CTI was not
10 | doing well. Probst made excuses but when I received the ProfitandLoss by year 2015-032017 it
11 | became clear to me that the executive performance was poor with Total Income only $82,281 in
12 | all of 2016 and for the first quarter ending March 31, 2017 Total Income only $550. In contrast to
13 | Total Income in the <u>first quarter</u> of only $550, Total Consulting Services were $404,504 and
14 | Total Expenses were $657,666 with a *Net Loss of $657,116 in the one quarter*. I refused to raise
15 | money for CTI after my financial statement review.

16 |     11.    I am the person who solicited the common stock proxies not Mr. Catanzarite. As
17 | for the Probst contention about the proxies he is in error.

18 |     12.    I sold my CTI common shares to Mr. Jim Duffy which shares were included in his
19 | total proxy count 2,720,900 shares. I dispute that the shares sold and transferred to Jim Duffy
20 | were subject to any security agreement and have stated as much in support of my cross-complaint
21 | with Mr. Duffy. That cross-complaint requests declaratory relief against those claiming the
22 | security interest, to determine that the shares belonged to me and were transferred without notice
23 | and for consideration to him. My Arizona counsel has filed a motion to dismiss the Arizona
24 | action.

25 |     13.    When I asked the transfer agent to confirm the transfer of the shares I sold to Mr.
26 | Duffy they refused because of a dispute raised by Mr. Probst and Mr. Gaines. My cross-
27 | complaint with Mr. Duffy is expected to resolve that issue.

28 | //

Document received by the CA 4th District Court of Appeal Division 3.

14. Addressing the contention that my proxy count is less than 50% of the common shares. There are 32,477,673 common shares outstanding. Ignoring the Calixto shares and including the Duffy shares (both his and the shares I transferred), I hold proxies for 16,612,602 or 51.15% of the common shares. In am familiar with the share ledger and provided financial statements. From my review, the common shareholders invested approximately $4 million and the disputed preferred shareholders invested 0%. If allowed to keep those shares the common shareholders would suffer a dilution of 35% of their equity.

15. As for the Calixto shares, which are excluded from my total share count of 16,612,602, on the day I obtained what I understood was his signature, I spoke to him on the phone and he sent his cousin to the parking lot where he had agreed to meet me. He said his cousin would bring him the proxy. The cousin took the proxy and said he would take it to Calixto and return. The cousin returned and handed me the signed proxy which I understood was signed by Calixto. I understand he claims I signed it but that is not true. In any event I have excluded his shares from the total and still have 51.15% of the total common proxies.

16. In May 2019 the November 2018 elected board of directors of CTI had resigned. Probst who had resigned himself in early 2019 was appointed by one of the elected directors before he then resigned. At that point all five elected directors had resigned. Probst then appointed Casillas and Burdick to the board. This left two vacant board seats by resignation. I then removed the three appointed members of board of directors, the entire board, based upon my 51.15% of the common shares and elected myself and Mr. Duffy to fill the two vacant by resignation seats on the board. I elected the new board and in doing so did not recognize the preferred shares because they were not validly issued because Probst himself said they had not paid for the shares.

17. The new board authorized Mr. Catanzarite to file and answer and cross-complaint in the Fincanna case to protect the interests of CTI because the Probst allies with their preferred shareholders are in conflict with the interests of CTI and its common shareholders having pledged their shares of stock to Fincanna and agreeing not to oppose but to actually assist Fincanna's liquidation of CTI's assets.

18. On August 27, 2019 I appeared at the shareholders meeting and elected myself, Jim Duffy and Amy Cooper to the Board of Directors and to officer positions at CTI with my 51.15% proxies.

19. On August 28, 2019 the common elected directors, namely myself, Cooper and Duffy, took action by written consent as reflected in the copy attached as Exhibit "3" to appoint: Richard O'Connor as Chief Financial and Chief Operating Officer, Amy Cooper as Vice President and James Duffy as President and Secretary.

20. The Probst group refuses to acknowledge our board of directors and officers. They make this claim based upon their disputed preferred shares. The common shareholders refuse to recognize the board of directors and officers that the preferred shareholders claim to have elected.

21. When I learned during the course of the 709 trial that the Scottsdale insurance policy of $3,000,000 was paying for the defense of the preferred shareholders group I looked at the Bylaws and found through the minutes no approval of a disinterested majority of shareholders nor had any undertaking been posted with CTI. Later I instructed Mr. Catanzarite to pursue by notice and litigation for the posting of an undertaking by those defendants receiving benefits under the CTI policy. I did so to protect the depleting insurance policy asset of CTI.

22. I have tried to work out a resolution of this control dispute with Mr. Probst but he refuses to allow me access to any CTI information and will not answer questions about his relationship with Fincanna. I told him we would not allow payments to Fincanna and he refused to confirm no payments were being made. I instructed Mr. Catanzarite to seek the appointment of a receiver because we are refused all access to information and I fear the liquidation of all assets to pay Fincanna the millions it claims. Mr. Probst confirmed to me that all of his shares were pledged to Fincanna and that we could trust him to negotiate for CTI. I said that was not possible and that we needed to participate. He refused.

23. In my discussions with Probst I offered a five member board interim arrangement where the common shareholders would elect two directors, the preferred shareholders would elect two directors and that the court could appoint an independent director. This would continue

5.
**Declaration of Richard F. O'Connor**
3:22-CV-01616-BAS-DDL
EXHIBIT #142: 006

1 until a decision on the validity of the issuance of the preferred shares. Probst again refused.

2   24.   As a result of this refusal I directed Mr. Catanzarite to file a motion for a receiver as what I viewed as CTI's best option to protect its remaining assets.

4   25.   I and the common shareholders believe Fincanna and the Probst preferred shareholders are liable for their actions and that no further payments nor asset transfers should be allowed to Fincanna absent court order.

7   26.   My slate of the board of directors and officers has been refused all access to the books and records of CTI and to its operations. As a result, Mr. Catanzarite has no CTI information other than what was obtained from his independent investigation, copying of the CTI minutes and related documents and that produced during the 709 trial and the TRO.

11   27.   Attached as Exhibit 11 to the Declaration of Kenneth J. Catanzarite is a true and correct copy of the November 9, 2018 Miguel Motta provided annual report: "In anticipation to our annual shareholder meeting scheduled for November 29, 2018..." There is no mention at all of the issuance of any Series A Preferred Stock in the Motta provided annual report that preceded the very first annual shareholders meeting held since inception of CTI.

16   28.   The very first time that the shareholders learned of the purported issuance of the Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were objected to as not validly issued.

19   29.   In understand that Probst and the law firm of Horwitz and Armstrong seek to remove Mr. Catanzarite from representing the shareholders of CTI and CTI itself. My shareholders reject that request and insist that Mr. Catanzarite continue to represent CTI and its shareholders.

I certify and declare under penalty of perjury under the laws of the State of California and the United States that the forgoing is true and correct.

Executed November 11, 2019 at Newport Beach, California.

*See Next Page for Signature*

Richard F. O'Connor

6.
**Declaration of Richard F. O'Connor**
3:22-CV-01616-BAS-DDB
EXHIBIT #142: 007

1  until a decision on the validity of the issuance of the preferred shares. Probst again refused.

2      24.    As a result of this refusal I directed Mr. Catanzarite to file a motion for a receiver
3  as what I viewed as CTI's best option to protect its remaining assets.

4      25.    I and the common shareholders believe Fincanna and the Probst preferred
5  shareholders are liable for their actions and that no further payments nor asset transfers should be
6  allowed to Fincanna absent court order.

7      26.    My slate of the board of directors and officers has been refused all access to the
8  books and records of CTI and to its operations. As a result, Mr. Catanzarite has no CTI
9  information other than what was obtained from his independent investigation, copying of the CTI
10  minutes and related documents and that produced during the 709 trial and the TRO.

11      27.    Attached as Exhibit 11 to the Declaration of Kenneth J. Catanzarite is a true and
12  correct copy of the November 9, 2018 Miguel Motta provided annual report "In anticipation to
13  our annual shareholder meeting scheduled for November 29, 2018…" There is no mention at all
14  of the issuance of any Series A Preferred Stock in the Motta provided annual report that preceded
15  the very first annual shareholders meeting held since inception of CTI.

16      28.    The very first time that the shareholders learned of the purported issuance of the
17  Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were
18  objected to as not validly issued.

19      29.    I understand that Probst and the law firm of Horwitz and Armstrong seek to
20  remove Mr. Catanzarite from representing the shareholders of CTI and CTI itself. My
21  shareholders reject that request and insist that Mr. Catanzarite continue to represent CTI and its
22  shareholders.

23      I declare under penalty of perjury under the laws of the State of California and
24  the United States that the foregoing is true and correct.

25  Executed November 11, 2019 at Newport [Beach]