EXHIBIT 143

3:22-CV-01616-BAS-DDL
EXHIBIT #143: 001

Electronically Filed by Superior Court of California, County of Orange, 12/27/2019 10:12:00 PM.
DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk. 30-2019-01064267-CU-MC-CXC ROA # 330

**Exhibit AA - O'Connor Perjury #4**
**State Bar Complaint Against Catanzarite Law Corporation**

Kenneth J. Catanzarite (SBN 113750)
kcatanzarite@catanzarite.com
Brandon Woodward (SBN 284621)
bwoodward@catanzarite.com
Tim James O'Keefe (SBN 290175)
tokeefe@catanzarite.com
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Tel: (714) 520-5544
Fax: (714) 520-0680

Attorneys for Plaintiffs

# IN THE SUPERIOR COURT OF CALIFORNIA

## FOR THE COUNTY ORANGE

| | |
|---|---|
| RICHARD MESA, et al., | Case No. 30-2019-01064267-CU-MC-CXC |
| Plaintiffs, | Assigned for All Purposes to |
| v. | Hon. Randall J. Sherman |
| RICHARD JOSEPH PROBST, et al., | Dept. CX105 |
| Defendants. | **DECLARATION OF RICHARD FRANCIS O'CONNOR II IN SUPPORT OF OPPOSITION TO MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL CATANZARITE LAW CORPORATION** |
| Nominal Defendant: CULTIVATION TECHNOLOGIES, INC., a California corporation. | DATE: January 10, 2020<br>TIME: 10:00 a.m.<br>DEPT: CX105 |
| | Case Filed: April 16, 2019<br>Trial Date: TBD |

**Declaration of Richard Francis O'Connor II Re: Opposition to Motion to Disqualify**

Document received by the CA 4th District Court of Appeal Division 3.

3:22-CV-01616-BAS-DDL
EXHIBIT #143: 002

# DECLARATION OF RICHARD FRANCIS O'CONNOR II

I, Richard F. O'Connor, have personal knowledge of each fact set forth in this declaration based upon my observation of, participation in, and recollection of, the matters and events to which I declare. I could and would competently testify to each fact set forth in this declaration if called and duly sworn by this Court. I certify and declare as follows:

1. I am over the age of eighteen and a resident of Orange County, California.

2. I am the Chief Executive Officer of Mobile Farming Systems, Inc. ("MFS"). I am also the Chief Financial Officer and Chief Operating Officer of Cultivation Technologies, Inc. ("CTI") having been appointed by the Board of Directors.

3. I have reviewed the Declaration of Richard Probst in support of the motion to disqualify Catanzarite Law Corporation (collectively "CLC").

4. From inception of CTI until May 5, 2016 I was the Chief Executive Officer and a member of the three member Board of Directors with Richard Probst ("Probst") and Amy Cooper ("Cooper"). On May 5, 2016 I resigned as an officer and director of CTI.

5. From start up in March 2015 through May 5, 2016 the executives were paid from CTI without any material accruals of salary expense.

6. As Chief Executive I issued 5,000,000 Founders Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort.

7. At no time prior to my resignation from CTI on May 5, 2016 was there ever a discussion that the executives were underpaid or that they would receive any CTI shares for services rendered.

8. Attached as Exhibit "16" to the declaration of Kenneth J. Catanzarite is a true and correct copy of an email dated April 26, 2017 from Probst, on behalf of CTI, to me which attached two documents a "Balance Sheet by year 2015-032017" and "Profit and Loss by year 2015-032017". Prior to receipt of this email I spoke with Probst to discuss CTI's need to raise money for operations. I was asked to consider raising money for CTI by the sale of common shares at $1.00 per share. I asked for the financials before I would consider doing so. In my conversation with Probst just before receipt of the email he told me about the team of executives

that had been engaged and stated they were being paid 50% of their salaries in cash and 50% accrued as current liabilities. Probst stated that once CTI was profitable the accrued salaries would be paid or alternatively would be paid out of proceeds of the $1.00 per share offering.

9. During the entire course of my conversation with Probst before receipt of the April 26, 2017 email and attachments, he never mentioned any preferred stock issuance at all nor any issuance of stock of any kind for salaries.

10. I understand that Probst and those supporting him have taken the position that the executives were underpaid prior to January 1, 2017 and were to be paid in preferred stock. This preferred stock for services, past or future, was never mentioned to me at all. Instead it was always half cash and half accrual of salaries.

11. I also recall from my discussion with Probst in April 20 17 that CTI was not doing well. Probst made excuses but when I received the ProfitandLoss by year 2015-032017 it became clear to me that the executive performance was poor with Total Income only $82,281 in all of 2016 and for the first quarter ending March 31, 2017 Total Income only $550. In contrast to Total Income in the first quarter of only $550, Total Consulting Services were $404,504 and Total Expenses were $657,666 with a *Net Loss 0/$657,116 in the one quarter*. I refused to raise money for CTI after my financial statement review.

12. I am the person who solicited the common stock proxies not Mr. Catanzarite. As for the Probst contention about the proxies he is in error.

13. I sold my Cultivation Technologies, Inc. ("CTI") common shares to Mr. Jim Duffy which shares were included in his total proxy count 2,720,900 shares. I dispute that the shares sold and transferred to Jim Duffy were subject to any security agreement and have stated as much in support of my cross-complaint with Mr. Duffy. That cross-complaint requests declaratory relief against those claiming the security interest, to determine that the shares belonged to me and were transferred without notice and for consideration to Mr. Duffy. My Arizona counsel has filed a motion to dismiss the Arizona action.

14. When I asked the transfer agent to confirm the transfer of the shares I sold to Mr. Duffy they refused because of a dispute raised by Mr. Probst and Mr. Gaines. My cross-

3.

**Declaration of Richard Francis O'Connor II Re: Opposition to Motion to Disqualify**

complaint is expected to resolve that issue.

15. Addressing the contention that my proxy count is less than 50% of the common shares: There are 32,477,673 common shares outstanding. Ignoring the Calixto shares and including the Duffy shares, I hold proxies for 16,612,602 or 51.15% of the common shares. In am familiar with the share ledger and provided financial statements. From my review, the common shareholders invested approximately $4 million and the disputed preferred shareholders invested $0. If allowed to keep those shares the common shareholders would suffer a dilution of 35% of their equity.

16. As for the Calixto shares, which are excluded from my total share count of 16,612,602, on the day I obtained what I understood was his signature, I spoke to him on the phone and he sent his cousin to the parking lot where he had agreed to meet me. He said his cousin would bring him the proxy. The cousin took the proxy and said he would take it to Calixto and return. The cousin returned and handed me the signed proxy which I understood was signed by Calixto. I understand he claims I signed it but that is not true. In any event I have excluded his shares from the total and still have 51.15% of the total common proxies.

17. In May 2019 the November 2018 elected board of directors of CTI had resigned. Mr. Probst who had resigned himself in early 2019 was appointed by one of the elected directors before he then resigned. At that point all five elected directors had resigned. Probst then appointed Mr. Casillas and Mr. Burdick to the board. This left two vacant board seats by resignation. I then removed the three appointed members of board of directors, the entire board, based upon my 51.15% of the common shares and elected myself and Mr. Duffy to fill the two vacant by resignation seats on the board. I elected the new board and in doing so did not recognize the preferred shares because they were not validly issued because Probst himself said they had not paid for the shares.

18. The new board authorized Mr. Catanzarite and CLC to file an answer and cross-complaint in the Fincanna Action to protect the interests of CTI because the Probst allies with their preferred shareholders are in conflict with the interests of CTI and its common shareholders having pledged their shares of stock to Fincanna and agreeing not to oppose but to

4.
**Declaration of Richard Francis O'Connor II Re: Opposition to Motion to Disqualify**

actually assist Fincanna's liquidation of CTI's assets.

19. On August 27, 2019 I appeared at the shareholders meeting and by proxy elected myself, Mr. Duffy and Ms. Cooper to the Board of Directors and to officer positions at CTI with my 51.15% proxies.

20. On August 28, 2019 the common elected directors, namely myself, Cooper and Mr. Duffy, took action by written consent to appoint myself as Chief Financial and Chief Operating Officer, Ms. Cooper as Vice President and Mr. Duffy as President and Secretary.

21. Myself, Mr. Duffy and Mrs. Cooper took action by unanimous written consent appointing Jeff Schunk, a CTI common shareholder, as Vice President, tasked with the responsibility to review conflicts of interest in the representation by Mr. Catanzarite and CLC.

22. The Probst group refuses to acknowledge our board and officers. They make this claim based upon their disputed preferred shares. The common shareholders refuse to recognize the board of directors and officers that the preferred shareholders claim to have elected.

23. When I learned during the course of the 709 trial that the Scottsdale insurance policy of $3,000,000 was paying for the defense of the preferred shareholders group I looked at the Bylaws and found through the minutes no approval of a disinterested majority of shareholders nor had any undertaking been posted with CTI. Later I instructed Mr. Catanzarite to pursue by notice and litigation the posting of an undertaking by those defendants receiving benefits under the CTI policy. I did so to protect the depleting insurance policy asset of CTI.

24. I have tried to work out a resolution of this control dispute with Mr. Probst but he refuses to allow me access to any CTI information and will not answer questions about his relationship with Fincanna. I told him we would not allow payments to Fincanna and he refused to confirm no payments were being made. I instructed Mr. Catanzarite to seek the appointment of a receiver because we are refused all access to information and I fear the liquidation of all assets to pay Fincanna the millions it claims. Mr. Probst confirmed to me that all of his shares were pledged to Fincanna and that we could trust him to negotiate for CTI. I said that was not possible and that we needed to participate. He refused.

25. In my discussions with Probst I offered a five member board interim arrangement

5.
**Declaration of Richard Francis O'Connor II Re: Opposition to Motion to Disqualify**

1 where the common shareholders would elect two directors, the preferred shareholders would
2 elect two directors and that the court could appoint an independent director. This would continue
3 until a decision on the validity of the issuance of the preferred shares. Probst again refused.

4     26. I and the common shareholders believe Fincanna and the Probst preferred
5 shareholders are liable for their actions and that no further payments nor asset transfers should be
6 allowed to Fincanna absent court order.

7     27. My slate of the board of directors and officers has been refused all access to the
8 books and records of CTI and to its operations. As a result, Mr. Catanzarite has no CTI
9 information other than what was obtained from his independent investigation, copying of the CTI
10 minutes and related documents and that produced during the 709 trial and the TRO.

11     28. Attached as Exhibit 11 to the Declaration of Kenneth J. Catanzarite is a true and
12 correct copy of the November 9,2018 Miguel Motta provided annual report: "In anticipation to
13 our annual shareholder meeting scheduled for November 29, 2018 ... " There is no mention at all
14 of the issuance of any Series A Preferred Stock in the Motta provided annual report that preceded
15 the very first annual shareholders meeting held since inception of CTI.

16     29. The very first time that the CTI shareholders learned of the purported issuance of
17 the Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were
18 objected to as not validly issued.

19     30. I have been fully informed by CLC of the finding made by the trial court in the
20 matter styled *FinCanna Capital Corp. v. Cultivation Technologies, Inc., et al.*, Orange County
21 Superior Court Case No. 30-2019-01072088 ("FinCanna Action"), of a conflict of interest as
22 concerns CLC's representation of MFS in the matter styled *Mobile Farming Systems, Inc. v.*
23 *Richard Joseph Probst, et al.*, OCSC Case No. 30-2019-01046904 ("MFS Action")and CLC's
24 representation of Cultivation Technologies, Inc. ("CTI"). I have also been advised that Horwitz
25 + Armstrong, PLC – holding itself out as representing CTI – seeks to disqualify CLC in part
26 because of this purported conflict of interest.

27     31. I have reviewed California Rules of Professional Conduct 1.7. Based upon my
28 understanding of what the FinCanna Action court identified as a conflict of interest, I, as CEO of

6.
**Declaration of Richard Francis O'Connor II Re: Opposition to Motion to Disqualify**

1  MFS, hereby waive that conflict of interest on behalf of MFS. I also, as CEO of MFS, waive any
2  conflict of interest (real or perceived, actual or potential) that may arise from CLC's
3  simultaneous representation of MFS, on the one hand, and CTI and its subsidiaries on the other.
4      32.    The loss of Mr. Catanzarite and his knowledge would be a material setback for
5  MFS which has no money to engage counsel.
6      33.    It is my view the Horwitz Firm, and those directing that firm's efforts herein,
7  simply do not want CLC to continue to act as counsel for MFS in the MFS Action and MFS
8  strenuously objects to any such effort to disqualify CLC as its counsel.
9      I certify and declare under penalty of perjury under the laws of the State of California and
10  the United States that the forgoing is true and correct.
11  Executed December 27, 2019 at _____Big Bear_____, California.

DocuSigned by:

_____
Richard Francis O'Connor II

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

7.
**Declaration of Richard Francis O'Connor II Re: Opposition to Motion to Disqualify**

Document received by the CA 4th District Court of Appeal Division 3.

3:22-CV-01616-BAS-DDL
EXHIBIT #143: 008