EXHIBIT 172

The State Bar of California
Office of Chief Trial Counsel
845 S. Figueroa Street
Los Angeles, California 90017

November 15, 2019

**RE:**   **Attorney Misconduct Complaint Against Kenneth Joseph Cantanzarite, Esq.
SBN 113750, Brandon Woodward (SBN 284621), and Tim James O'Keefe (SBN
290175)**

To Whom it May Concern:

This letter and the attachments constitute the detailed Statement of Complaint supporting the
Attorney Misconduct Complaint Form ("Complaint"), filed contemporaneously herewith,
regarding serial unethical behavior and potentially criminal misconduct of Kenneth Joseph
Catanzarite, Brandon Woodward, and Tim James O'Keefe of the Catanzarite Law Corporation in
Orange County, California (together "Catanzarite").

As of the date of this letter, Catanzarite has already been disqualified by the Orange County
Superior Court in two cases for "Catanzarite's simultaneous representation of CTI and interests
adverse to CTI." A copy of the two tentative rulings follows this letter.

## INTRODUCTION

Catanzarite has repeatedly committed serious and ongoing violations of the Rules of Professional
Conduct (the "Rules") and the Business & Professions Code (the "Code") in connection with his
purported representation of various different clients' alleged interests, all of which involve a
now-defunct company, Mobile Farming Systems, Inc. ("MFS"), and another company, Cultivation
Technologies, Inc. ("CTI"), which featured similar bases of shareholders, officers, and directors in
2015 with MFS.

Catanzarite's unethical and unprofessional conduct stems from an ongoing effort by Cantanzarite
and his law firm involving a number of lawsuits which he has initiated against CTI, its officers,
directors and shareholders purportedly on behalf of an ever-changing mix of MFS and CTI
shareholders – all of whom have adverse interests.  Incredibly enough, while the attorney-of-
record *suing* CTI, Cantanzarite corruptly, willfully, and without legal authority filed a cross
complaint on behalf of CTI, answered a complaint on behalf of CTI, and filed a complaint against
CTI's insurance carrier to in an attempt to eliminate defense coverage.

**This Complaint will demonstrate Catanzarite's overzealous activities regarding the business
affairs of CTI and MFS and the rights and obligations of their officers, directors, and
shareholders have crossed so far beyond the bounds of client advocacy and professional
conduct as to mandate immediate and serious administrative discipline.**

1

These clear and inexcusable ethical violations include, but are almost certainly not limited to:

- Concurrently representing parties with adverse interests;

- Repeated, unauthorized direct and indirect contact with parties represented by counsel in violation of Rule 4.2 of the Rules;

- Violations of Code Section 6104 for "Corruptly or willfully and without authority" filing multiple complaints without legal authority or representation to do so, including one adverse to the very same party he purports to represent;

- Solicitation of clients through apparent coercion or extortion, in violation of Rule 7.3 of the Rules;

- Filing knowingly false and fraudulent documents before the Orange County Superior Court, in violation of Rule 8.4;

- Making knowingly false representations to an Orange County Superior Court judge to inappropriately obtain a temporary restraining order which caused irreparable harm;

- Offering cash payments to shareholders in exchange for voting proxies in an ongoing takeover attempt involving clients who were apparently coerced or extorted;

- Generating or aiding in the generation of knowingly perjorous declarations on at least *four occasions*, in violation of Rule 1.2,

- "Selling out" the class or derivative interests of multiple corporations with adverse interests; and

- Settling and compromising derivative causes of action without court approval.

Please strongly consider that Catanzarite's serious ethical breaches have already altered the course of litigation to the detriment of the public and his own clients. **If Catanzarite continues to make a mockery of the Rules without inquiry or enforcement from your office, it will compromise the foundation of the California legal system and public confidence in the profession.**

As set forth in the Business & Professions Code:

**6001.1.** Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount.

We implore the Office of Chief Trial Counsel to urgently review these matters so as to protect the integrity of the California legal system, and to monitor these and any other cases in Orange County Superior Court for additional behavior from Catanzarite following this Complaint.

## STATEMENT OF FACTS

- **September 2018**

  - In September 2018, Catanzarite filed direct and derivative causes of actions purportedly on behalf of Roger Root against multiple individual defendants, MFS, and CTI in *Pinkerton v. Richard Joseph Probst, et al.*, Orange County Superior Court **Case No. 30-2018-01018922** ("Root Complaint" or "Root Case"). Roger Root was never an investor in MFS, although the complaint alleged he was. Root owned a now defunct company that separately invested in MFS. The allegations of the *Pinkerton* complaint are divided between (i) direct causes of action arising from alleged efforts by some of the individual defendants to solicit Mr. Root's investment in MFS between December 2012 and May 2013, and (ii) derivative claims on behalf of MFS arising out of the alleged use or conversion of MFS assets by others, including CTI. Catanzarite cited demand futility as the reason for not addressing the derivative concerns with the company directly.

- **October 2018**

  - Catanzarite made settlement demands on behalf of Roger Root *only*, not on behalf of the corporation, on whose behalf Catanzarite purported to bring derivative claims. These settlement demands were refused, with counsel highlighting that such demands were completely improper. While this is inadmissible for purposes of liability, it demonstrates Catanzarite's unethical use of derivative actions to advance his client's interests at the expense of the corporation (which he would also later represent), a trend that continues throughout multiple cases. Every action taken after October 4, 2018 by Catanzarite demonstrates a means to advance Root's interest, with complete disregard of the Rules **[EXHIBIT A – IMPROPER SETTLEMENT DEMANDS]**

- **November 2018**

  - On November 28, 2018, CTI held a duly-noticed shareholder meeting to vote to elect its board of directors and to approve a material transaction (i.e. the sale of real property in Coachella). **[EXHIBIT B – SHAREHOLDER MEETING NOTICE]**

- ○ Both proposed initiatives passed by shareholder vote.[1]

- ○ Notably, Amy Cooper, a CTI shareholder and a former officer and director, furnishes Richard Probst, a CTI officer and director, a proxy to vote her shares at this meeting, demonstrating her support of the company and its management in November 2018. This is important as Cooper would later become adverse to CTI under Catanzarite's apparent coercion as Catanzarite purports to toll the statute of limitations against Cooper. **[EXHIBIT C – COOPER PROXY]**

- **December 2018**

  - ○ Catanzarite starts dismissing parties from the Root case without court approval, without notice to shareholders, or disclosure of consideration or promise of consideration. **[EXHIBIT D – PORCHE DISMISSAL]**

- **January 2019**

  - ○ Catanzarite coerced multiple defendants, most of whom were *represented by counsel*, to join his apparent cause to exert control over Cultivation Technologies, Inc. in exchange for them being dismissed from the Root Case, with the threat of adding them back to the litigation if they did not cooperate with him (tolling of the statute of limitations). In addition, Catanzarite voluntarily dismissed many of these same defendants from another complaint similar to the Root Case also filed in September 2018 involving another company, New Body, in whom O'Connor and others also solicited investment from Root.

  - ○ On January 3, 2019, Catanzarite dismissed Rana Foroughi-Mobin from the Root Complaint for causes of action including derivative claims of breach of Ms. Foroughi-Mobin's alleged fiduciary duties to MFS. **[EXHIBIT E – FOROUGHI-MOBIN DISMISSAL W/ATTORNEY DETAILS]**

    - ▪ This improper dismissal constitutes a compromise of the derivative causes of action against Ms. Foroughi-Mobin without court approval, at the expense of MFS, the corporation which Catanzarite purports to represent the interests of derivatively (and later directly).

    - ▪ In addition, then-defendant Rana Foroughi-Mobin was represented by counsel, and it is factual that Catanzarite had direct or indirect unauthorized contact with Foroughi-Mobin, as counsel was not involved with and had no knowledge of her dismissal which resulted from

---

[1] This election of the CTI board was later confirmed to be valid through an order of the Orange County Superior Court on May 2, 2019 pursuant to Section 709(b) of the California Corporations Code. (EXHIBIT C)

Catanzarite's improper contact. The contact information for Ms. Foroughi-Mobin's then-attorneys is:

> Stephen J. Erigero, Esq.
> Ivan L. Tjoe, Esq.
> Alan J. Hart, Esq.
> Ropers Majeski Kohn & Bentley PC
> 445 South Figueroa St. Ste. 3000
> Los Angeles, CA 90071-1608
> Stephen.erigero@rmkb.com
> Ivan.tjoe@rmkb.com
> Alan.hart@rmkb.com

o On January 4, 2019, Catanzarite dismissed Tony Scudder and his company, Aroha Holdings, Inc. **[EXHIBIT F – SCUDDER & AROHA DISMISSAL]**

   ▪ These dismissals were also improper and constituted a compromise of conversion and other derivative causes of action against Scudder and Aroha without court approval, at the expense of MFS, the corporation which Catanzarite purports to represent the interests of derivatively.

   ▪ It appears that this dismissal was the result of Catanzarite coercing Tony Scudder, a long-time associate of defendant Richard O'Connor, to agree to be a mouthpiece and agent for Catanzarite to contact other individual defendants and enlist them to become clients of Catanzarite to sue CTI and other individuals and/or to provide shareholder proxies to attempt to wrest away control of CTI.  Scudder subsequently began contacting defendants Cooper, O'Connor, and Scott Unfug on behalf of Catanzarite – each of whom was represented by counsel at the time of improper contact.

o Then on January 22, 2019, Catanzarite dismissed defendants Richard O'Connor, TGAP Holdings LLC, and Unfug. **[EXHIBIT G – O'CONNOR, TGAP HOLDINGS, & UNFUG DISMISSAL]**

   ▪ These dismissals were also improper compromises of the derivative action without court approval, at the expense of MFS, which Catanzarite purports to represent the interests of derivatively.

   ▪ Then defendant Richard O'Connor was represented by counsel, and it is factual that Catanzarite had direct or indirect unauthorized contact with O'Connor, as counsel was not involved with and had no knowledge of these dismissals which resulted from Catanzarite's improper contact. The contact information for Mr. O'Connor's then-attorney is:

Richard Charnley, Esq.
Annie Rian, Esq.
CHARNLEY RIAN LLP
12121 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
rlc@charnleyrian.com
ar@charnleyrian.com

▪ Then-defendant TGAP Holdings, LLC was also represented by counsel, and we are informed and believe that Catanzarite also had direct or indirect unauthorized contact [apparently through Scudder] with TGAP Holdings, LLC in connection with this improper dismissal. The contact information for TGAP Holdings, LLC's then-attorney is:

Bernard Jasper, Esq.
Jasper Law
1235 N. Harbor Blvd, Ste 295
Fullerton, CA 92832-3623
ben@jasperlawfirm.com

▪ Then-defendant Scott Unfug was also represented by counsel, and we are also informed and believe that Catanzarite had direct or indirect unauthorized contact with Mr. Unfug in connection with this improper dismissal. The contact information for Mr. Unfug's then-attorney is:

Matthew Ward, Esq.
WARD LAW GROUP, PC
44-561 Village Court, Ste 121
Palm Desert, CA 92260
mward@mwardlawcorp.com

○ On January 23, 2019, Catanzarite also dismissed Amy Cooper and her father and co-defendant, Cliff Higgerson from the Root Case. **[EXHIBIT H – COOPER & HIGGERSON DISMISSAL W/ATTORNEY DETAILS]**

▪ These dismissals once again constituted an improper compromise of the derivative causes of action against these defendants without court approval, at the expense of MFS, whose derivative interests Catanzarite represents.

▪ Then-defendant Amy Cooper was represented by counsel, and it is factual that Catanzarite had direct or indirect unauthorized contact with Amy Cooper, as Ms. Cooper's counsel was not involved with and had no knowledge of her dismissals which resulted from Catanzarite's improper

contact. A declaration from Mr. Erigero is attached hereto [**EXHIBIT X - ERIGERO DECLARATION**]. The contact information for Ms. Cooper's then-attorney is:

> Stephen J. Erigero, Esq.
> Ivan L. Tjoe, Esq.
> Alan J. Hart, Esq.
> Ropers Majeski Kohn & Bentley PC
> 445 South Figueroa St. Ste. 3000
> Los Angeles, CA 90071-1608
> Stephen.erigero@rmkb.com
> Ivan.tjoe@rmkb.com
> Alan.hart@rmkb.com

- Then-defendant Cliff Higgerson was also represented by counsel, and we are informed and believe that Catanzarite had also direct or indirect unauthorized contact with Mr. Higgerson in connection with this dismissal. The contact information for Mr. Higgerson's then-attorney is:

> David M. Friedman, Esq.
> Ogloza Fortney LLP
> 535 Pacific Ave. Ste 201
> San Francisco, CA 94133
> dfriedman@oglozafortney.com

○ Now empowered, after coercing numerous defendants to join and support him by luring them with benefit of being dismissed from the cumbersome lawsuits, Catanzarite immediately directs multiple acts using "straw litigants" including former officers, directors, and shareholders of two corporations who are now *adverse to each other* (CTI and MFS).

- First, Catanzarite and former defendant O'Connor solicit proxies of MFS shareholders to remove the board of MFS – then comprised of Richard O'Connor, Amy Cooper, and Richard Probst. No shareholder meeting was held, and no unanimous consent existed. [**EXHIBIT I – MFS CONSENT TO REMOVE BOARD**]

- Second, on January 23, 2019, just one day after former defendant O'Connor is dismissed from the Root Case, Catanzarite helped O'Connor develop a knowingly false CTI shareholder consent citing MFS as "the sole shareholder of CTI" ("Fraudulent MFS Consent") [**EXHIBIT J – MFS CONSENT AS "SOLE SHAREHOLDER" OF CTI**] This purported shareholder consent was knowingly false and fraudulent because CTI operated for over three (3) years without MFS as a shareholder and O'Connor frequently

7

representing that MFS was not a shareholder for CTI, including, but not limited to, O'Connor participating in over 150 CTI securities transactions with entities and individuals other than MFS. The court would later rule that this consent was fraudulent when declaring that MFS was not a shareholder of CTI as of the November 28, 2018 election.

▪ Then, two days later on January 25, 2019, Catanzarite and former defendant O'Connor submit to CTI a purported removal of the CTI board through the Fraudulent MFS Consent. Again, it was simply not possible for O'Connor to have honestly represented that MFS was the "sole shareholder of CTI" having personally been involved in so many transactions in CTI shares with other individuals and entities, and Catanzarite was aware of these facts as well. Furthermore, the consent purports to add Dr. Mo Zakhireh and James Duffy as directors of CTI, but, like former defendant O'Connor, Dr. Zakhireh and Mr. Duffy knew that MFS was not the sole shareholder because they had been parties to multiple securities transactions between themselves and CTI and O'Connor. This is a blatant act of fraud by Catanzarite, O'Connor, Duffy, and Zakhireh – which would later be confirmed through a 709(b) hearing in May 2019 when the Court ruled that MFS is not, in fact, a shareholder of CTI. This ruling was not appealed. [NOTE: Hundreds of transactions and documents are available for your office to review to demonstrate these acts of fraud by Catanzarite, who aided Duffy/O'Connor/Zakhireh].

▪ Catanzarite and O'Connor cite within the MFS Consent that a shareholder meeting will take place in February 2019 to replace the MFS board, although no such meeting was ever duly noticed, and no meeting took place.

▪ It is likely that neither Catanzarite nor O'Connor ever intended to hold such meeting, as evidenced by Catanzarite immediately filing a new lawsuit on January 28, 2019 directly on behalf of his new purported client MFS against CTI in Orange County Superior Court, encaptioned *Mobile Farming Systems, Inc. v. Richard Joseph Probst, et al.*, **Case No. 30-2019-01046904** (the "MFS Case"). The MFS Case alleges that MFS had been a shareholder of CTI and that MFS had been denied rights to vote as a shareholder of CTI by a number of individual defendants, but not former CTI officers and directors Cooper and O'Connor whom Catanzarite had improperly and without authorization contacted while represented by counsel and dismissed from the Root Case without court approval, through an apparent act of coercion in violation of Rule 7.3.

▪ Therefore, mere days after dismissing O'Connor and Cooper from the Root Case, Catanzarite purportedly is retained by MFS and files suit on behalf of

MFS, despite MFS having no board of directors to retain him, particularly due to their removal by shareholder consent. O'Connor, who was front-and-center in the Root Case prior to his improper contact with Catanzarite while represented by counsel and his unauthorized dismissal, is now purportedly the CEO of MFS as a proxy for Catanzarite.

o Catanzarite personally contacts FinCanna Capital, the major secured creditor to CTI who has financed millions of dollars to the company, informing FinCanna that Richard O'Connor is now the CEO of CTI and they are to negotiate exclusively with him. Despite no judicial determination concerning ownership of CTI, Catanzarite wields legal theories as fact. **[EXHIBIT L – CATANZARITE EMAIL TO FINCANNA]**

   ▪ This is another act of deliberate deceit and moral turpitude by Catanzarite – who is fully aware that O'Connor's election to MFS is impossible as no shareholder meeting was ever held to vote a board into MFS, and that no judicial determination was ever made suggesting MFS is a shareholder of CTI.

   ▪ This improper contact and gross misrepresentation by Catanzarite is one of several factors that contributed to the eventual foreclosure of CTI assets by FinCanna Capital.

o Next, Catanzarite personally contacts Western Troy Capital Resources, the public company with whom CTI intended to merge, again stating with knowing falsity that Richard O'Connor is now the CEO of CTI and that Western Troy Capital Resources must negotiate with O'Connor. **[EXHIBIT M – CATANZARITE EMAIL TO WESTERN TROY]**

   ▪ This contact and gross misrepresentation by Catanzarite would be one of several factors contributing to the eventual termination of the merger with Western Troy – destroying tens or even hundreds of millions of dollars in value in CTI.

- **February 2019**

   o On February 5, 2019, CTI and the defendants in the MFS Case sent a letter warning Catanzarite of his ongoing tortious interference and its implications. The letter specifically identifies to Catanzarite transactions which are underway and are being put at risk by Catanzarite's filing of the MFS Case and contacting FinCanna and Western Troy, including a merger that would list CTI shares publicly, sale of the Coachella property (as approved by the shareholders in November 2018), sale leaseback of the Palm Desert property, and sale of a non-performing asset in Colusa. **[EXHIBIT N – LETTER TO CATANZARITE]**

- o   On February 12, 2019, Catanzarite voluntarily dismisses former defendant O'Connor from the New Body Case. **[EXHIBIT O – O'CONNOR DISMISSAL FROM NEW BODY]**

- **March 2019**

  - o   Catanzarite moves the court *ex parte* for a temporary restraining order to prevent CTI from taking further corporate action until a Corporations Code 709(b) hearing can be held to determine the rightful composition of CTI's board and recklessly claims no knowledge of any potential or pending corporate transactions, despite the fact that several were  explicitly detailed to him within the February 5, 2019 letter in 'Exhibit N.'

  - o   Catanzarite falsely declares in open court before Judge Crandall that *he had no knowledge* of any transactions underway, despite receipt of the February 5, 2019 letter in 'Exhibit N.'

  - o   Under the apparent threat of being  added back to the Root case if he does not comply with Catanzarite, Catanzarite has O'Connor sign a knowingly false and fraudulent affidavit under penalty of perjury to the court that "MFS is the sole shareholder of CTI" despite his former fiduciary role with CTI and years-long written representations in 150+ securities transactions to the contrary. This would be the first act of perjury by O'Connor, aided by Catanzarite, in violation of Rule 8.4 **[EXHIBIT K – PERJUROUS DECLARATION OF O'CONNOR #1]**

  - o   The deliberate omission of material facts by Catanzarite coupled with blatant misrepresentations to the court that he knew to be false leads to a TRO issued by Judge Crandall on March 20, 2019. This TRO would later be dissolved after a trial of fact.

- **April 2019**

  - o   Catanzarite sends an email to CTI shareholders stating that their representation of Cooper against CTI was not a conflict, because she agreed to "toll the statute of limitations" to bring claims later. **[EXHIBIT T – TOLLING STATUTE OF LIMITATIONS TO AVOID CONFLICT OR REALITY OF REPRESENTATION OF ADVERSE INTERESTS]**

  - o   In the first of several blatant attempts to eliminate counsel for defendants, Catanzarite attempts to disqualify Ohagan Meyer from all litigation through an *ex parte* application on April 9, 2019. The case law cited therein is an admission by Catanzarite of the frivolous nature of all actions filed thereafter by Catanzarite, as Catanzarite would continuously violate the Rules and Code by representing parties with adverse interests, which is an incurable conflict, or by filing on behalf of parties without legal authority (corruptly and willfully).

○ CTI's secure creditor, FinCanna, sends a notice of foreclosure on all assets to CTI, as the existence of the TRO issued after Catanzarite's misrepresentations to Judge Crandall on 3/20/19 was considered a material default in agreements between CTI and FinCanna.

○ Catanzarite files a new lawsuit *Richard Mesa, et. al. v. Richard Joseph Probst, et al.*, **Case No. 30-2019-01064267** ("Mesa Complaint") on behalf of an as-yet uncertified class of CTI shareholders. ***This complaint was filed while the MFS case was pending a 709(b) hearing – so Catanzarite is representing two corporations with adverse interests, <u>and</u> their shareholders</u>***. Like the Root Case, the Mesa Complaint alleges derivative causes of action purportedly on behalf of CTI and individual claims on behalf of shareholders.  The main thrust of the complaint alleges that certain preferred shares of CTI were invalid and that subsequent corporate actions were invalid.

○ As of the date of filing the Mesa Complaint, Catanzarite is representing MFS against CTI, CTI derivatively, and Amy Cooper as a member of a shareholder class – all while purporting to toll the statute of limitations for claims against Cooper in the Root Case after she was dismissed from that derivative action without court approval.  The named shareholder plaintiffs purportedly represented by Catanzarite are:

  ▪ Richard Mesa, a minority shareholder in **<u>both</u>** CTI and MFS,

  ▪ Amy Cooper, the former defendant in the Root Case, a large shareholder in **<u>both</u>** CTI and MFS – and former officer and director in **<u>both</u>** CTI and MFS who had previously and provided her proxy to vote in favor of the November 28, 2019 election of CTI's board until she was contacted by Catanzarite while represented by counsel without authorization and dismissed from the Root complaint without court approval of the dismissal of the derivative claims. [**<u>EXHIBIT T – EMAIL FROM CATANZARITE</u>**], and

  ▪ Tom Mebane, who is a material shareholder in **<u>both</u>** CTI and MFS

    • ***The entire uncertified class members are adverse to the interests of either CTI, MFS, or both – and Catanzarite purports to represent <u>everyone's interests</u>.***

○ The Mesa Complaint disputes a class of Preferred Series A shares issued by CTI as unauthorized – despite the fact that the creation of a class of preferred shares was a bona fide act of CTI dating since formation, by Richard O'Connor, now-plaintiff Amy Cooper, and Richard Probst in their capacities as then board members and officers of CTI ("Original CTI Board").   To be clear, O'Connor & Cooper were

instrumental as board members of CTI in creating the Preferred Series A shares that they, through Cantanzarite, now claim were improper.

o The Original CTI Board, upon formation of CTI, granted exclusive authority to the board of CTI to set out all characteristics of the Preferred Series A shares without shareholder approval – and to issue them at the discretion of the CTI board.

o On April 30, 2019, Catanzarite appears **on behalf of MFS <u>against</u> CTI** at a Corporations Code 709(b) proceeding in the MFS Case to challenge the election of CTI's board of directors in November 28, 2018 on the grounds that MFS is the sole shareholder of CTI. During this trial, Catanzarite was representing MFS directly, while purporting to represent the interests of CTI derivatively (and a class of shareholders against the company) in the Mesa Action. For these actions, Catanzarite would later be disqualified from the Mesa Action by Judge Sherman on 1/10/2020.

  ▪ After reviewing the parties' evidence Judge Sherman found that MFS was not a shareholder of CTI as of at least November 28, 2018 and thus could not have been deprived a vote at the November 28, 2018 election of CTI's board of directors.

  ▪ Accordingly, Judge Sherman dissolved the March 20, 2019 TRO and held that MFS's challenge to the election of CTI's board of directors was denied.

  ▪ **[EXHIBIT P – 709 TRANSCRIPT DAY 2]**

  ▪ **[EXHIBIT Q – JUDGE SHERMAN RULING]**

o MFS and Catanzarite do not appeal this ruling, as Catanzarite still has the conflicting Mesa Action to continue their unlawful and unscrupulous campaign to take control of CTI.

- **May 2019**

  o Because of the irreparable harm incurred upon CTI resulting from the TRO issued under false pretenses – FinCanna forecloses on all assets of CTI on May 1, 2019. While CTI contests the authority of FinCanna to do this – it is recorded.

  o In the wake of Judge Sherman's ruling Catanzarite apparently decides to orchestrate a new means by which to take over CTI against the interests of the same shareholders he purports to represent by trying to obtain enough votes to change the CTI board of directors.

- Catanzarite, utilizing parties he has previously coerced **under the threat of tolled claims in the Root Case,** begins soliciting common shareholders of CTI to provide proxies to former defendant O'Connor to vote out the current CTI board of directors notwithstanding that any votes of the common shareholders are insufficient to take any corporate act whatsoever without the vote of Preferred Series A shares, with the help of former defendant O'Connor and former defendant Scudder. These efforts are not only legally without merit but they cross over into blatantly unethical and illegal conduct and forgery.

  - We have been provided evidence that common shareholders of CTI were offered payments in exchange for their proxy **[EXHIBIT R – CALIXTO DECLARATION]**

  - When a majority of the common shareholders failed to accept payment for their proxies, we are aware of at least one instance where a fraudulently signed proxy is presented to CTI by Cantazarite purporting to represent a majority of the common shareholders **[EXHIBIT R – CALIXTO DECLARATION]**

    - The purported signer of this proxy, Carlos Calixto declares that he did not sign the proxy that was submitted and that it is a **forgery.**

  - Catanzarite also presented the knowingly false attempt of James Duffy to vote nearly 3 million shares that he does not own. Catanzarite also knows that Duffy can't vote shares he does not own based upon communications with the transfer agent for CTI. Catanzarite later files a cross complaint, on behalf of O'Connor, against the Transfer Agent for CTI – alleging that they failed to make the transfer request demanded by O'Connor. In reality, these same shares could not have been transferred to Duffy because O'Connor had already pledged them to another individual.

  - On May 16, 2019 the transfer agent told Catanzarite in writing that they would not furnish the names and addresses of shareholders to their firm, and that if they are named in litigation it would incur an immediate $15,000 penalty against CTI.

  - Catanzarite's filing of a cross complaint challenging the transfer agent for the company proves that he tallied shares for someone who was not the beneficial owner of the shares. He knew that Duffy was not the owner of record, and that CTI featured an entire class of stock he was disputing, but tallied the shares anyway <u>as if a judicial determination had been made</u>. Catanzarite knows that Duffy is not the owner of record, yet relies upon them entirely in his pleadings in attempting to exert control over the common class of stock.

- o Using the fraudulent consents and shareholder vote from less than majority of common shareholders, and significantly less than the necessary votes to constitute a majority – Catanzarite purportedly removes the entire board of CTI (again; the first attempt was through MFS acting as CTI's "sole shareholder").

    - ▪ The alleged new board is led by none other than former defendant Richard O'Connor, who has been adverse to CTI since he resigned in 2016.

    - ▪ Catanzarite then fraudulently appoints himself as counsel, or accepts fraudulent appointment as counsel, to CTI through his "straw litigant," Richard O'Connor who is coerced in violation of Rule 7.3 through a tolling agreement in the Root Case.

- o On May 15, 2019, Catanzarite amends the Mesa Complaint, but deliberately disregards the ruling of Judge Sherman within the new pleadings, continuing to maintain his false position that MFS has an interest in CTI.

- **July 2019**

    - o On July 2, 2019, Catanzarite files a cross-complaint allegedly **now representing CTI** against CTI's secure creditor, FinCanna Capital Corp. ("FinCanna") in *FinCanna Capital Corp. v. Cultivation Technologies, Inc., et al.,* Orange County Superior Court **Case No. 30-2019-01072088**. To be clear, Catanzarite filed this cross-complaint purportedly *on behalf of CTI*, even though CTI is not Catanzarite's client and neither the CEO nor the duly-elected board of CTI have authorized Catanzarite to represent the corporation (the "FinCanna Cross-Complaint"). Catanzarite simply followed a made-up paper trail trying to show that the board had unilaterally been removed by "shareholder consent" while placing O'Connor at the helm to hire him to take these actions. Catanzarite would later be disqualified from representing CTI in this action by the Orange County Superior Court.

    - o On July 23, 2019, Catanzarite filed an amended complaint in the Root Case ("Amended Root Complaint") to suit a narrative which Catanzarite fully knows to be false; *while eliminating all parties he improperly contacted while represented by counsel* – O'Connor and Cooper. In a declaration supplied to the court for the TRO on 3/20/19, O'Connor states that he visited Roger Root at his home. The amended complaint removes O'Connor, who was coerced by Catanzarite due to the tolling agreement in the Root Case.

- **September 2019**

    - o On September 11, 2019, Catanzarite filed another new lawsuit (the "Scottsdale Case") again purportedly on *behalf of CTI*, a company Cantanzarite is in litigation

against and which is not his legitimate client, against the very same directors & officers ("D&O") insurance carrier that is paying for the defense of all of the individual defendants in the Root, MFS, and Mesa Cases – including the parties who were represented by counsel during Catanzarite's improper contact. Catanzarite's complaint alleges that insurance coverage for the defense expenses of any of these individuals should not be provided because CTI's board has not authorized indemnification for these individuals. **In essence, Catanzarite is suing the key source that is providing defense against all of his improper lawsuits, and creating significant liabilities for his purported client CTI who is required to provide defense by statute.**

o Catanzarite had full access to the bylaws of CTI, having cited them previously to suit his false narrative, but fails to acknowledge both the Code regarding indemnity in California for officers and directors – and the bylaws of CTI which requires the defense of CTI officers and directors.

o This is yet another instance of unwaivable and incurable conflicts of interest, with parties adverse to one another, and reckless acts in violation of the Rules.

- **October 2019**

  o Catanzarite requests dismissal of Thom Brodeur, evidencing additional communications with represented parties. Counsel for Brodeur was not involved in these settlement communications. Catanzarite dismisses Thom Brodeur without prejudice, apparently to avoid questions from the judge or disclosures.

  o On October 11, 2019 Catanzarite files a new motion in the Mesa Case on behalf parties *adverse to CTI* to appoint a receiver over CTI in an apparent attempt to pay himself – against the interests of the corporation, its shareholders, and the interests of all parties whom he represents or purports to represent.

  o On October 16, 2019, motions to disqualify and recuse Catanzarite from representing CTI in the FinCanna Cross-complaint and the Scottsdale Case were filed on the grounds that (a) Catanzarite lacked any authority to represent CTI, (b) that he "willfully and corruptly" represented that CTI had engaged him when it hadn't, and (c) purporting to represent CTI impermissibly conflicted with his representation of clients with interests adverse to CTI. A motion was filed to disqualify Catanzarite in Scottsdale Case prior to its move to federal court.

  o On October 18, 2019, a demurrer of several of the individual defendants in the Root Case was sustained with 30 days leave to amend.

  o Catanzarite filed *ex parte* for yet another temporary restraining order and preliminary injunction hearing. Both are denied. This *ex parte* application includes

yet another act of moral turpitude by Catanzarite – aiding in the act of blatant perjury. The declaration of O'Connor contains knowingly false information, that "shareholders first learned of...preferred shares...November '18 shareholder meeting." O'Connor, Duffy, Zakhireh previously released CTI, its, officers, and directors in relation to the now-contested preferred shares in 2017. **[EXHIBIT S – OCONNOR PERJURY #2]** . In connection with your offices' investigation, CTI will prove beyond any doubt that each Catanzarite and O'Connor knew the declaration of O'Connor to be false, and that the shareholders of CTI were well aware of the Preferred Shares well before November 2018.

- **November 2019**

  - On November 11, 2019 all litigation was stayed pending the outcome of future disqualification hearings on the basis of Rule 1.7 violations by Catanzarite.

  - On November 15, 2019 – Catanzarite was disqualified in the FinCanna case. Per his own admission which the State Bar can confirm upon receipt of the transcript, Catanzarite declared in court that no conflict waiver existed in connection with the filing of lawsuits among parties with adverse interests. **[EXHIBIT T – RULING DISQUALIFYING CATANZARITE]**

- **December 2019**

  - In a reply brief filed 12/27/2019 to the disqualification motions that were pending a January 10, 2020 hearing – Catanzarite again furnishes a fraudulent and false declaration from Richard O'Connor. Each Catanzarite and O'Connor know this to be an act of perjury and blatant attempt to defraud and confuse the court. **[EXHIBIT AA – PERJURY ACT #4 BY O'CONNOR + CATANZARITE]**

- **January 2020**

  - In a January 10, 2020 hearing – Catanzarite was disqualified from prosecuting the Mesa Action for representation of parties with adverse interests. Catanzarite's objection to this is that a conflict waiver exists, which conflict waiver could NOT exist without a judicial determination that the Preferred Series A shares were not valid, if Jim Duffy were the shareholder of record to vote ~2.7M shares, and if Calixto's proxy were not forged. Catanzarite should be precluded from prosecuting any of these facts by your office, as the preclusive effect of any litigation in which Catanzarite is involved should be highly suspect given the nature of misconduct contained herein.

**ANALYSIS**

**A. THE STATE BAR SHOULD IMMEDIATELY INVESTIGATE CATANZARITE FOR SUSPENSION OR DISBARMENT FOR CORRUPTLY AND WILLFULLY FILING ACTIONS ON BEHALF OF CTI WIHTOUT AUTHORIZATION – OR FOR BEING DISQUALIFIED FOR REPRESENTING PARTIES WITH ADVERSE INTERESTS.**

Under Business & Professions Code Section 6104, "Corruptly or willfully and without authority appearing as attorney for a party to an action or proceeding constitutes a cause for **disbarment or suspension**." Catanzarite has not once, but **twice**, corruptly and willfully and without authority appeared as an attorney for CTI by filing actions in the name of CTI in Orange County Superior Court, requiring CTI to file motions to disqualify Catanzarite from those cases. In addition, Catanzarite willfully and without authority purported to represent CTI to FinCanna and Western Troy in order to improperly interfere with and/or terminate pending transactions between these companies and CTI.

It is indisputable that CTI has not authorized Catanzarite to represent CTI in any capacity and that CTI has its own authorized legal counsel. Moreover, CTI unequivocally denied that Catanzarite was authorized to represent CTI in any litigation and expressly advised Catanzarite by letter that he and his firm do not represent CTI. Thus, Catanzarite cannot argue that he misunderstood his lack of authorization or that he had a good faith belief he was legally authorized to represent CTI.

In addition, Catanzarite has no basis to argue that he mistakenly believed he was authorized to represent CTI based on a legal theory that MFS was the sole shareholder of CTI. The Orange County Superior Court's order of May 30, 2019 leaves no question that MFS is not a shareholder of CTI – let alone the sole shareholder of CTI – and that CTI's board of directors was duly elected.

There is also no basis for Catanzarite to contend that he has been authorized to represent CTI by a new board of directors as elected by a purported vote of a majority of common shareholders. Not only is this argument fatally undermined by the fact that the vote was achieved through forged proxies, improper coercion, and false statements, but there has been no legal authorization to remove CTI's current (and duly elected) board of directors. Catanzarite may claim that his "shadow" board of directors should be CTI's real board, but the legal reality is that CTI's board is comprised of the individuals elected on November 28, 2018, as upheld by the May 30, 2019 order of the Orange County Superior Court.

Furthermore, Catanzarite's filing of these actions purported on behalf of CTI is clearly "corrupt," not the least of which is because the clear aim of the Scottsdale Case is to deprive the individual defendants in the Root, MFS and Mesa Cases of adequate funding for their defense so they will be forced to capitulate to Catanzarite.

Therefore, the State Bar should immediately investigate Catanzarite's violations and determine if Catanzarite should be disbarred or only suspended – pending the appeals in the two cases from which Catanzarite was disqualifed. The evidence supporting the motions are already

fully developed and established, and the legal issues for the Court to decide are independent of the issues of suspension and/or disbarment, which are the exclusive jurisdiction of the State Bar.

### B. CATANZARITE SHOULD ALSO BE IMMEDIATELY INVESTIGATED FOR REPEATEDLY CONTACTING REPRESENTED PARTIES WITHOUT AUTHORIZATION.

Rule 4.2 of the Rules of Professional Conduct (formerly 2-100), prohibit an attorney from communicate directly or indirectly about the subject of the representation with a person* the lawyer knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.  As the comments to the Rule make clear, this rule provides essentially strict liability.   The comments provide that the rule applies "even though the represented person* initiates or consents to the communication. A lawyer must immediately terminate communication with a person* if, after commencing communication, the lawyer learns that the person* is one with whom communication is not permitted by this rule."

Central to the application of this rule is the requirement that an attorney "know" the contacted party is represented by counsel. Attorneys must be careful, however, because actual knowledge can be established from "circumstantial evidence" where an attorney has "reason to know" a party is represented by counsel, but fails to investigate or communicate with counsel before initiating contact. *See Snider v. Sup.Ct. (Quantum)* (2003) 113 Cal.App.4th 1187, at 1215-1216. Where, for example, a party has counsel of record, an attorney initiating contact with the party may be deemed to have reason to know of the representation and contact absent consent of opposing counsel may be improper. *See Abeles v. State Bar of CA* (1973) 9 Cal.3d 603, 609-610.

Moreover, it is no defense if the unauthorized communication with a represented party is through another person.  The comments state that "[t]he prohibition against communicating "indirectly" with a person* represented by counsel in paragraph (a) is intended to address situations where a lawyer seeks to communicate with a represented person* through an intermediary such as an agent, investigator or the lawyer's client."

Furthermore, where the rule applies, the required consent must come from the represented party's counsel, not the party. *See* Cal. State Bar Form.Opn. 2011-181. Thus, even if a represented party wants to communicate with an opposing attorney, the attorney may not do so without opposing counsel's consent. Attorneys must therefore be careful not only in initiating communications with a party known to be represented by counsel, but also in responding to communications initiated by that party rather than their counsel.

The evidence is clear that Catanzarite's directly and indirectly contacted defendants in the Root Case when they were represented by counsel without their counsel's authorization, including, but not limited to, former defendants in the Root Case, O'Connor, Cooper, Higgerson, Unfug, TGAP Holdings, Inc., and Foroughi-Mobin. Catanzarite knew these parties to be represented by counsel because they had counsel of record in the Root Case, and his repeated approach of opposing parties was purely intentional.  The deliberate acts of directly contacting

these defendants while represented without the authorization of counsel also should be cause for disbarment of Catanzarite pursuant to Bus. & Prof. Code, § 6106

C.       **CATANZARITE SHOULD ALSO BE INVESTIGATED FOR NUMEROUS ACTS OF MORAL TURPITUDE AND CONFLICTS OF INTEREST**

Throughout all of the litigation related to MFS and CTI, Catanzarite has repeatedly committed ethical violations and acts of moral turpitude sufficient to warrant investigation for suspension or disbarment under Code Section 6106.

Not only has Catanzarite fraudulently represented that he has authority to represent CTI and interfere in CTI's business transactions with FinCanna and Western Troy, but Catanzarite also made knowingly false representations to the Orange County Superior Court in order to improperly obtain a temporary restraining order to stop the merger with Western Troy.

Catanzarite filed the Mesa Action on 4/16/2019 with a completely different set of allegations against CTI – while concurrently representing MFS against CTI in the MFS Action, each while tolling claims against O'Connor and Cooper by Root. This is a mockery of the Rules.

Also, Catanzarite has alternatively used bribery or the threat of liability in the Root Case against numerous defendants, including, but not limited to, O'Conner and Cooper, to coerce their support for a scheme to seize control of CTI through an inadequate vote of the common shareholders. This coercion was particularly inappropriate because it occurred through settling and compromising derivative causes of action without court approval and a determination that the dismissals of these defendants were in the best interest of the corporations for whom the derivative claims were purportedly brought.

Worse still, Catanzarite went so far as to forge (or support the forgery of) the proxy of CTI shareholder Mr. Calixto after failing to obtain Mr. Calixto's signature. Even if Catanzarite did not commit this act of forgery and only aided in its commission through his common shareholder agents, it still constitutes a violation of Rule 1.2.1 "Advising or Assisting the Violation of Law" which is also another act of moral turpitude by Catanzarite.

Finally, in addition to lacking legal authority to represent CTI, the fraudulent purported representation of CTI by Catanzarite is a conflict of interest at every level, and violates:

- Rule 1.2       Advising or Assisting the Violation of Law
- Rule 1.7       Conflicts of Interest: Current Clients
- Rule 1.9       Duties to Former Clients
- Rule 4.2       Contact with a Represented Person
- Rule 7.3       Solicitation of Clients
- Rule 8.4       Misconduct

22-CV-01616-BAS-DDL
EXHIBIT #172: 020

Therefore, the State Bar should immediately investigate Catanzarite for suspension or disbarment on these additional grounds.

## **CONCLUSION**

Cumulatively, the State Bar will find:

1) Catanzarite has caused, is causing, and – **without immediate inquiry from your office** – will continue to cause substantial harm to his present and former clients;

2) Catanzarite has caused, is causing, and – **without immediate inquiry from your office** – will continue to cause substantial harm to the public;

3) Catanzarite is setting dangerous precedents through abuse of process and reckless disregard for our legal system, the Rules and the Code;

4) That there is an extremely high probability that the chief trial counsel will prevail on the merits of any disciplinary matter as outlined herein;

5) An inquiry into these matters by the State Bar should proceed on an expedited basis to protect the public, which is paramount;

6) Criminal acts have occurred involving Catanzarite, including, but possibly not limited to, fraud and at least four acts of perjury;

I will not tolerate any further form of retaliation from Catanzarite or his proxies for bringing these matters to your attention. I am a member of the public who should be shielded from these supposed officers of the court who treat their ability to practice law in California as a license to commit crimes and defraud California courts. As protection of the public is paramount for your office, please consider the implications of your disclosures to Catanzarite.

You may contact me or any of the attorneys of record for all defendants or former defendants in these cases for additional evidence of all matters contained herein. I am prepared to visit your offices to discuss this complaint immediately. It is my understanding that the normal review process will be 2-3 weeks.

Respectfully,


Justin Beck

22-CV-01616-BAS-DDL
EXHIBIT #172: 021

**TENTATIVE RULING DISQUALIFYING CATANZARITE POSTED 11/14/19**
**"Exhibit N"**

The Motion for Recusal and/or Disqualification of Catanzarite Law Corporation is granted.  The Catanzarite Law Corporation is hereby disqualified from representing Cultivation Technologies, Inc. in this action.  The court will not rule on Catanzarite's evidentiary objections because the objections are not directed at evidence that the court considers material to its disposition of this motion.

Catanzarite's simultaneous representation of CTI and interests adverse to CTI compel the firm's disqualification.  In <u>Flatt v. Superior Court</u> (1994) 9 Cal. 4th 275, the California Supreme Court held, "Courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated." <u>Id.</u> at 285.  The court added, "Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or automatic one." <u>Id.</u> at 284.  Catanzarite is representing CTI in this case, but in the pending <u>Mesa vs. Probst</u> case Catanzarite is representing one faction of CTI shareholders who have an upcoming motion scheduled seeking to impose a receiver on CTI, relief that would be adverse to CTI.  In the pending <u>CTI vs. Scottsdale Ins. Co.</u> case, Catanzarite represents CTI yet seeks to invalidate a defense and indemnity for CTI directors in the <u>Mesa vs. Probst</u> case under an insurance policy issued on CTI's behalf.  A denial of coverage could put CTI on the hook for the individuals' costs of defense and/or liability.

In <u>Truck Ins. Exchange v. Fireman's Fund Ins. Co.</u> (1992) 6 Cal. App. 4th 1050, 1057, the court held that the automatic disqualification rule applicable to concurrent representation may not be avoided by unilaterally converting a present client into a former client before the hearing on a motion for disqualification.  In the pending <u>Pinkerton vs. CTI</u> case, Catanzarite represents the plaintiffs, and the original Complaint named CTI as a defendant, although the First Amended Complaint dropped CTI as a party.  In the <u>Cooper vs. CTI</u> case, Catanzarite represented the petitioners, who sought to compel CTI to hold a shareholders meeting to elect directors.  Petitioners dismissed that action on September 13, 2019.  Catanzarite represents the plaintiffs in the <u>Mobile Farming Systems vs. Probst</u> case, in which the original Complaint alleged in ¶50 that CTI owes money to the plaintiff.  The First Amended Complaint omitted that allegation.  Thus, there are five lawsuits in which the Catanzarite firm is or was adverse to CTI, compelling the firm's disqualification.

Disqualification is also warranted based on the court's holding in <u>Goldstein v. Lees</u> (1975) 46 Cal. App. 3d 614, 622, that since corporate counsel's professional duties run to the corporation, counsel must refrain from taking part in any controversies or factional differences among shareholders as to control of the corporation.  Here, Catanzarite represents CTI's common stockholders, who are fighting with CTI's preferred stockholders in several lawsuits for CTI's control.

Based on the above ruling, the court need not and will not reach the issue of whether Catanzarite was authorized to represent CTI in this action based on his shareholder faction allegedly being in control of CTI.

The moving party is ordered to give notice of the ruling unless notice is waived.

21

22-CV-01616-BAS-DDL
EXHIBIT #172: 022

**TENTATIVE RULING DISQUALIFYING CATANZARITE POSTED 1/9/2020**

The Motions to Disqualify the Catanzarite Law Corporation in the four related cases are granted in <u>Mesa vs. Probst</u> and <u>FinCanna Capital Corp. vs. Cultivation Technologies, Inc.</u>, and denied in <u>Pinkerton vs. Cultivation Technologies, Inc.</u> and <u>Mobile Farming Systems, Inc. vs. Probst</u>.

This court previously granted a motion to disqualify the Catanzarite Law Corporation from representing CTI in the <u>FinCanna</u> case because principles prohibiting dual representation prohibit Catanzarite's simultaneous representation of CTI and interests adverse to CTI. In the <u>Mesa</u> case Catanzarite is representing the plaintiffs in a derivative action on behalf of CTI, meaning that his representation is for the benefit of CTI. Thus, the same principles that warranted Catanzarite's disqualification in the <u>FinCanna</u> case apply to the <u>Mesa</u> case and compel disqualification here.

The pending motion in the <u>FinCanna</u> case is to disqualify Catanzarite from representing three wholly-owned CTI subsidiaries, Coachella Distributors, LLC, Coachella Manufacturing, LLC and DS Gen, LLC. The court in <u>Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft</u> (1999) 69 Cal. App. 4th 223, upheld the disqualification of a law firm from representing both a corporation and its wholly-owned subsidiary, applying a "unity of interests" test. 69 Cal. App. 4th at 252-53. Here, the <u>FinCanna</u> plaintiff sued CTI and its three wholly-owned subsidiaries, alleging that plaintiff loaned CTI $5.9 million and that CTI still owes plaintiff about $4.7 million. Plaintiff's theory against the subs is that they owe CTI money and thus plaintiff is entitled to that money. Thus, the subs' liability to plaintiff is dependent on CTI owing plaintiff money, and as a result all four defendants have a unity of interest in the case. Catanzarite filed an Answer and Cross-Complaint on behalf of all four named defendants. The Cross-Complaint is based primarily on the relationship between FinCanna and CTI, with little reference to the subs, and alleges all of its causes of action jointly on behalf of all four cross-complainants, without any distinction as to any of the allegations, or in any of the six causes of action or in the prayer as to which cross-complainants are seeking what relief. Thus, all four of the defendants and cross-complainants have a unity of interest in the <u>FinCanna</u> case, warranting Catanzarite's disqualification from representing the subs, on the heels of being disqualified from representing CTI.

CTI is no longer a defendant in the <u>Pinkerton</u> case, which originally was a derivative action on behalf of Mobile Farming Systems (MFS). CTI is not a party to this case at all. Thus, CTI has no standing to seek Catanzarite's disqualification from representing an MFS shareholder against defendants other than CTI even if the allegations involve the world of CTI.

The <u>Mobile Farming Systems</u> case originally asserted derivative claims on behalf of CTI, and named CTI as a nominal defendant, but plaintiff dismissed his derivative claims in June 2019. Plaintiff then filed a First Amended Complaint in August 2019, omitting CTI as a party at all. In the meantime, however, CTI (through other counsel) filed a cross-complaint against MFS which is still pending. Although MFS alleges it was and is CTI's sole shareholder, the court ruled at a Corp. Code §709 hearing in April 2019 that MFS was not a CTI shareholder as of November 2018. Although Catanzarite represents MFS as a cross-defendant, there is no dual representation involved, and Catanzarite's disqualification from representing MFS is not warranted.

The Joinders filed by five defendants are denied. They were e-served on December 17, 2019 in the <u>Mesa</u> case and on December 18, 2019 in the <u>Pinkerton</u> and <u>MFS</u> cases, dates which were 16 and 15 court days before this hearing, but CCP §§1005(b) & 1010.6(a)(4)(B) require

22-CV-01616-BAS-DDL
EXHIBIT #172: 023

that motions be e-served at least 16 court days, plus two additional days, before the hearing. Notice was therefore insufficient. The moving parties also lack standing to seek Catanzarite's disqualification from representing the parties that firm represents.

Catanzarite's Requests for Judicial Notice are granted. However, when the court takes judicial notice of documents, it does not accept the truth of matters stated in those documents. Herrera v. Deutsche Bank National Trust Co. (2011) 196 Cal. App. 4th 1366, 1375. Catanzarite's Evidentiary Objections in the FinCanna case are overruled as to #1 and sustained as to #2. Catanzarite's Evidentiary Objections in the other three cases are not ruled on because the objections are not directed at evidence that the court considers material to its disposition of these motions.

Status Conferences are also set for today and will go forward. Counsel should be prepared to discuss whether any or all of these cases should be stayed pending Catanzarite's appeal of this court's prior ruling disqualifying the Catanzarite Law Corporation from representing CTI in the FinCanna case.

Moving counsel is ordered to give notice of the ruling in each of the four cases unless notice is waived.



22-CV-01616-BAS-DDL
EXHIBIT #172: 024