EXHIBIT 268

1     SUPERIOR COURT OF THE STATE OF CALIFORNIA

2      COUNTY OF ORANGE - CIVIL COMPLEX CENTER

3        DEPARTMENT CX105

4

5 MOBILE FARMING SYSTEMS, INC.,  )

       PLAINTIFFS,   )

6    VS.       ) NO. 30-2019-01046904

 RICHARD JOSEPH PROBST, ET AL., )  CU-BT-CJC

7     DEFENDANTS.   )

   AND       )

8            )

 NOMINAL DEFENDANT:     )

9 CULTIVATION TECHNOLOGIES, INC., )

 A CALIFORNIA CORPORATION.   )

10 ———————————————————————— )

11

12   HONORABLE RANDALL J. SHERMAN, JUDGE PRESIDING

13      REPORTER'S TRANSCRIPT

        VOLUME II

14

      WEDNESDAY, MAY 1, 2019

15

16 APPEARANCES OF COUNSEL:

17 FOR THE PLAINTIFF:

18  CATANZARITE LAW CORPORATION

  BY:  KENNETH J. CATANZARITE, ESQ.

19

 FOR THE DEFENDANT RICHARD JOSEPH PROBST:

20  ROPERS, MAJESKI, KOHN & BENTLEY

  BY:  IVAN L. TJOE, ESQ.

21

22 FOR THE DEFENDANTS JUSTIN BECK, ROBERT KAMM, ROBERT

 BERNHEIMER, IRVING EINHORN, AND MIGUEL MOTTA:

23  O'HAGAN MEYER

  BY:  SAMUEL Y. EDGERTON, III, ESQ.

24  BY:  JOHNNY ANTWILER, ESQ.

25

    CHERI A. VIOLETTE, CSR NO. 3584

26   OFFICIAL COURT REPORTER PRO TEMPORE

3:22-CV-01616-BAS-DDL  EXHIBIT #0: 044
Exhibit #268: 002  22-CV-01616-BAS-DDL

1

                              WITNESS INDEX

2                        (WEDNESDAY MAY 1, 2019)

3

4    PLAINTIFF'S WITNESS:         DIRECT CROSS REDIRECT RECROSS

5    (NONE)

6

7

8    DEFENSE WITNESSES:           DIRECT CROSS REDIRECT RECROSS

9    (NONE)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 045
Exhibit #268: 003      22-CV-01616-BAS-DDL

```
 1                      E X H I B I T S

 2                  (WEDNESDAY, MAY 1, 2019)

 3           (ALL EXHIBITS PREMARKED FOR IDENTIFICATION

 4                UNLESS OTHERWISE INDICATED)

 5

 6      EXHIBITS:                   FOR IDENTIFICATION   RECEIVED

 7

 8      58- DOCUMENT                     101

 9

10      59- DOCUMENT RE: SHARES          104

11          INITIALLY ISSUED BY

12          QUICK SILVER

13

14      60- 11/03/2017 E-MAIL EXCHANGE   111

15          FROM MR. PROBST TO MS. COOPER

16          AND MR. O'CONNOR

17

18      61- 10/02/2015 PRIVATE PLACEMENT  118

19          MEMORANDUM

20

21      62- GROUP OF SIGNED SUBSCRIPTION  119

22          AGREEMENTS

23

24

25

26
```

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 046
     Exhibit #268: 004      22-CV-01616-BAS-DDL

89

SANTA ANA, CALIFORNIA - WEDNESDAY, MAY 1, 2019

AFTERNOON SESSION

(THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

COURT:)

THE COURT:  GOOD AFTERNOON.

ALL COUNSEL:  GOOD AFTERNOON, YOUR HONOR.

THE COURT:  BACK ON THE MOBILE FARMING SYSTEM

VERSUS PROBST.  DO YOU WANT APPEARANCES?

THE COURT REPORTER:  PLEASE, YOUR HONOR.

MR. EDGERTON:  SAM EDGERTON FOR CERTAIN

DEFENDANTS WHO ARE DIRECTORS OF CTI:  ROBERT KAMM,

ROBERT BERNHEIMER, JUSTIN BECK, AND MIGUEL MOTTA, AND

IRVING EINHORN.

MR. ANTWILER:  JOHNNY ANTWILER FROM O'HAGAN

MEYER ON THE SAME DEFENDANTS.

MR. TJOE:  IVAN TJOE, ROPERS, MAJESKI FOR

RICHARD PROBST.

MR. CATANZARITE:  KEN CATANZARITE FOR THE

PLAINTIFF.

THE COURT:  YOU MAY BE SEATED.

SO THE REASON WE ARE HERE IS FOR A CORPORATIONS

CODE 709 HEARING WHICH MANDATES A QUICK HEARING WITHIN

FIVE DAYS, SO THE SCOPE OF THIS HEARING IS ONLY GOING TO

BE WHAT IS MANDATED BY THE CODE TO BE EXPEDITED.  IT IS

NOT GOING TO INCLUDE ALL THESE OTHER THINGS THAT THE

PARTIES MIGHT CONSIDER RELEVANT TO THE CASE IN GENERAL.

90

1    SO TO THE EXTENT --

2         WELL, OKAY.  SPECIFICALLY THIS IS ABOUT, I

3    SHOULD SAY THE CODE PRIORITY IS ABOUT TO TRY AND

4    DETERMINE THE VALIDITY OF ANY ELECTION OR APPOINTMENT OF

5    ANY DIRECTOR OF ANY DOMESTIC CORPORATION, AND THE ACTION

6    AS FILED BY A SHAREHOLDER OR A PERSON WHO CLAIMS TO HAVE

7    BEEN DENIED THE RIGHT TO VOTE.  SO THE PROPER ISSUE FOR

8    THIS COURT IS WHETHER MOBILE FARMING SYSTEMS WAS DENIED

9    THE RIGHT TO VOTE IN THIS DIRECTOR ELECTION THAT TOOK

10   PLACE AND ELECTED THESE FIVE DIRECTORS AS REFERENCED

11   YESTERDAY IN THE OPENING STATEMENTS.

12        SO TO THE EXTENT THAT DEFENDANTS FEEL THERE ARE

13   CERTAIN THINGS THAT NEED TO BE DECIDED FOR THE HEALTH OF

14   THEIR COMPANY, THAT DOESN'T GET STATUTORY PRIORITY.

15        TO THE EXTENT THAT THE PLAINTIFFS FEEL THAT

16   THERE IS SOME CHALLENGE TO SOME PREFERRED SHARE OFFERING

17   THAT WOULD REDUCE THE NUMBERS OF SHARES, THAT'S

18   IRRELEVANT TO THIS PROCEEDING.

19        THE ONLY THING THAT MATTERS IS WHETHER MOBILE

20   FARMING SYSTEMS OWNS STOCK IN CTI.  BECAUSE IF THEY DID,

21   THEN THEY HAD A RIGHT TO VOTE, AND THAT WOULD HAVE

22   CHANGED THE OUTCOME OF THE ELECTION.  AND IF THEY DIDN'T

23   HAVE THAT SHAREHOLDER RIGHT TO VOTE, THEN THE ELECTION

24   STANDS.  SO THE COURT IS ONLY GOING TO HEAR EVIDENCE WITH

25   RESPECT TO THAT PARTICULAR ISSUE.

26        AND TO THAT END, SINCE COURTS HAVE THE POWER TO,

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 048
Exhibit #268: 006     22-CV-01616-BAS-DDL

1  OR JUDGES, I SHOULD SAY, HAVE THE POWER TO CONTROL THE

2  ORDER OF EVIDENCE, THE WAY I SEE THIS AS BEING THE MOST

3  EFFICIENT WAY TO PROCEED IS FOR THE COURT TO RECEIVE

4  WRITTEN DOCUMENTATION BEFORE ANY ORAL TESTIMONY.  AND

5  THEN AFTER ALL THE DOCUMENTATION, THE COURT CAN TRY TO

6  ASSESS WHAT TESTIMONY MIGHT BE RELEVANT OR NECESSARY TO

7  DECIDE THE ISSUE AT HAND.

8         SO SINCE THIS IS NOT THE USUAL TRIAL WHERE THERE

9  IS EXHIBIT NOTEBOOKS WITH NUMBERED EXHIBITS, WHICH WOULD

10 MAKE MY LIFE EASIER AND THINGS SEEM TO BE ATTACHED TO

11 DECLARATIONS, I AM GOING TO NEED SOME HELP ALONG THE WAY

12 TO GUIDE ME TO THE RIGHT EXHIBITS.  BECAUSE BASICALLY I

13 AM GOING TO GO THROUGH THE TRIAL BRIEFS IN ORDER.  I MEAN

14 I HAVE ALREADY KIND OF DONE THAT TO NOTE WHAT THINGS I AM

15 LOOKING FOR.  AND I WANT TO SEE DOCUMENTS TO SEE WHAT

16 THEY SAY TO SEE IF (A) THEY SUPPORT WHAT IS CONTENDED,

17 AND (B) WHAT EXACTLY THEY SAY AND HOW IT IS RELEVANT TO

18 MY ISSUE TO DECIDE HERE TODAY.

19        SO I AM STARTING WITH THE DEFENDANT'S

20 BRIEF AND -- OKAY.  SO THE FIRST THING THAT LOOKS LIKE

21 DOCUMENT WORTHY IS WHEN CTI SAYS:  "MFS IS CONTENDING

22 THAT A WRITTEN UNDERTAKING BETWEEN IT AND CTI CONTROLLED

23 THIS ISSUE WHEN IT DOES NOT."

24        SO MY QUESTION WOULD BE, MR. EDGERTON, SHOW

25 ME -- WHERE IS THIS WRITTEN UNDERTAKING THAT YOU ARE

26 REFERRING TO?  I MEAN IS IT A DOCUMENT THAT IS HERE IN MY

92

1    STACK?

2            MR. EDGERTON:  YES, IT IS.  GOOD AFTERNOON.

3            IT IS THE -- WHAT WAS MENTIONED YESTERDAY IS THE

4    ORIGINAL ACTS UNDERTAKING DATED MARCH 30TH, 2015.

5            THE COURT:  OKAY.  WELL, THAT WAS ONE OF THE

6    LATER DOCUMENTS, BUT THAT WAS NEXT ACTUALLY.  SO THAT

7    WOULD BE ATTACHED TO WHAT?

8            MR. EDGERTON:  THAT IS ATTACHED TO THE

9    DECLARATION OF RICHARD PROBST.  SO WE CAN BRING THAT OUT

10   FOR YOU IF YOU WOULD LIKE IT SEPARATE FOR THIS

11   PROCEEDING, BUT THAT IS EXHIBIT -- ONE MOMENT.  I WILL

12   TELL YOU EXACTLY THE NUMBER.  "E" AS IN EDGERTON.

13           MR. TJOE:  NO.  THE ORIGINAL ACTS?

14           MR. EDGERTON:  RIGHT.

15           MR. TJOE:  THAT IS EXHIBIT D, AS IN DAVID, TO

16   MR. PROBST'S DECLARATION, YOUR HONOR.

17           THE COURT:  OF WHAT DATE?

18           MR. TJOE:  THAT WOULD HAVE BEEN FILED APRIL

19   12TH, 2019.

20           MR. CATANZARITE:  YOUR HONOR, IF IT IS MORE

21   CONVENIENT, THERE IS A BENCH BOOK THAT HAS THAT SAME

22   DOCUMENT AS EXHIBIT 4.

23           THE COURT:  THANK YOU.  ALTHOUGH THE DECLARATION

24   WAS COPIED FOR ME, THE EXHIBITS WERE NOT, SO....

25           MR. EDGERTON:  AND WE HAVE NO OBJECTION TO THAT.

26   THE ONLY DOCUMENT WE'RE DISCUSSING IN HIS BOOK IS --

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 050
Exhibit #268: 008     22-CV-01616-BAS-DDL

93

1    I NEED TO TALK TO YOU ABOUT THAT.

2         -- IS ONE OF THE ACCOUNTING PREPARED DOCUMENTS,

3    BUT EVERYTHING ELSE IN HIS BOOK IS NON-OBJECTIONABLE.

4         THE COURT:  OH, AWESOME.  WHICH REMINDS ME, I

5    SHOULD HAVE MENTIONED THIS EARLIER, I THOUGHT I ASKED YOU

6    TO MEET AND -- DID I ASK YOU TO MEET AND CONFER TO SEE IF

7    YOU COULD AGREE ON ANYTHING?

8         MR. EDGERTON:  YOU DID.

9         THE COURT:  OUTCOME?

10        MR. EDGERTON:  OUTCOME IS WE ARE DOING FINE.  WE

11   WERE SCRAMBLING, OF COURSE, TO GET OUR DOCUMENTS THERE.

12   WE GAVE THEM TO MR. CATANZARITE.  WE ARE STILL NOT

13   COMPLETED IN THAT PROCESS, BUT WE WILL BE BY THE END OF

14   TODAY.  THEY ARE VERY MUCH A REPEAT.

15        THE COURT:  THAT IS KIND OF NOT WHAT I MEANT.  I

16   MEANT, IS THERE A STIPULATION THAT CERTAIN DOCUMENTS ARE

17   DEEMED RECEIVED IN EVIDENCE OR OTHERWISE PROPERLY

18   CONSIDERED BY THE COURT?

19        MR. EDGERTON:  NOT OTHER THAN WHAT I JUST

20   REFERRED TO.

21        THE COURT:  OKAY.  SINCE WE HAVE THESE NUMBERED

22   EXHIBITS, WHICH MAKES IT EASY, LET'S GO THROUGH THE ONES

23   THAT I AM REFERRING TO HERE.  SO WE'RE TALKING ABOUT

24   EXHIBIT 4, ORGANIZATIONAL ACTS AND RESOLUTIONS OF CTI,

25   CORRECT?

26        MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

94

1          THE COURT:  SO SHOW ME THE PAGE NUMBER THAT --

2     IS THIS A WRITTEN UNDERTAKING ABOUT -- WELL, STOCK, I

3     GUESS.

4          MR. EDGERTON:  OKAY.  SO ON PAGE 4 YOU WILL SEE

5     THERE IS A "WHEREAS" CLAUSE.

6          THE COURT:  OKAY.  THE ONE THAT TALKS ABOUT

7     28,000,000 SHARES TO MFS?

8          MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

9          THE COURT:  OKAY.  AND THIS IS DATED 3/30/15,

10    WAS IT?

11         MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

12         THE COURT:  SO IT IS A RESOLUTION TO ISSUE STOCK

13    WITH A CONSIDERATION IN EXHIBIT A, WHICH IS THE THREE

14    THINGS MENTIONED IN THE OPENING STATEMENT.

15         MR. EDGERTON:  AND THAT IS THE STATED

16    CONSIDERATION FOR THE AGREEMENT.  THAT IS A SHIPPING

17    CONTAINER, TWO TRAILERS AND UP TO 25,000 IN CASH.

18         THE COURT:  ALL RIGHT.

19         MR. ANTWILER:  WAIT.  YOUR HONOR, IT IS ON PAGE

20    12 AS EXHIBIT A.

21         THE COURT:  I ALREADY FOUND IT.  THANK YOU.

22         MR. ANTWILER:  I AM SORRY, YOUR HONOR.

23         THE COURT:  WHICH MENTIONED WHAT THE THREE

24    THINGS WERE.

25         NOW YOU SAY JUNE 15, 2015 THIS WAS RESCINDED.

26    SO WHERE IS THAT?

95

1          MR. CATANZARITE:  I CAN GET YOU THAT.  IT IS IN

2     THE SAME BOOK.

3          MR. EDGERTON:  THAT IS ALSO IN YOUR BOOK.  LET'S

4     TAKE IT FROM YOUR BOOK IF IT IS MORE CONVENIENT.

5          MR. CATANZARITE:  IT MIGHT BE EASIER.

6          MR. EDGERTON:  YES, I THINK SO, TOO.  I THINK IT

7     IS THE VERY BOTTOM OF YOURS.

8          MR. CATANZARITE:  IS IT AT THE END?

9          MR. EDGERTON:  I WENT THROUGH YOUR BOOK LAST

10    NIGHT.

11         THE COURT:  53, INDEX SHOWS THAT DATE.

12         MR. CATANZARITE:  YES, 53.

13         MR. EDGERTON:  YOUR HONOR --

14         THE COURT:  OKAY.  WE'RE HERE.

15         MR. EDGERTON:  AND THEN THE RELEVANT PARTS IF

16    YOU NEED TO KNOW RIGHT NOW ARE ON PAGE 1 STARTING WITH

17    THE "WHEREAS" CLAUSES.

18         THE COURT:  YES, THAT IS THE WHOLE IDEA IS I

19    WANT TO LOOK AT THE RELEVANT DOCUMENTS FIRST.

20         MR. EDGERTON:  OKAY.

21         THE COURT:  SO WE HAVE GOT WRITTEN CONSENT OF

22    DIRECTORS OF CTI SIGNED ON 6/15/15.  AND IT SAYS,

23    "WHEREAS THE PROPORTION TO AUTHORIZE THE ISSUANCE OF

24    28,000,000 SHARES, FMS FAILED TO PROVIDE ANY

25    CONSIDERATION AS REQUIRED, AND SO IT WASN'T ISSUED THE

26    STOCK.  THE BOARD DEEMS IT IN THE BEST INTEREST TO SELL

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 053
Exhibit #268: 011     22-CV-01616-BAS-DDL

96

1   TO ITS FOUNDERS LISTED THERE.  OTHER PEOPLE" --

2           OKAY.  GOT IT.  OKAY.  YOU HAVE A STATEMENT THAT

3   STATES, "O'CONNOR'S DECLARATION IS PATENTLY FALSE

4   REGARDING HIS CLAIM THAT 28,000,000 SHARES WERE ISSUED TO

5   MFS."

6           WAS THERE ANY DOCUMENT FROM PLAINTIFF TO SUPPORT

7   THE CONTENTION THAT THE SHARES WERE ACTUALLY ISSUED?

8           MR. EDGERTON:  THE CERTIFICATE WASN'T ISSUED.

9   BUT IF YOU READ EXHIBIT 4, EXHIBIT 4 SAYS THEY WERE

10  SOLD -- THE SHARES WERE SOLD AND ISSUED.

11          I MEAN IN EXHIBIT 4, AND THE LAST PAGE OF

12  EXHIBIT 4 CONFIRMS THAT THE SHARES WERE ISSUED.  AND THE

13  TESTIMONY WOULD BE THAT THE CONSIDERATION --

14          THE COURT:  YOU HAVE ANSWERED MY QUESTION.

15  THERE IS NO ADDITIONAL DOCUMENT.

16          MR. CATANZARITE:  WELL, THERE WOULD BE EVIDENCE

17  OF CONSIDERATION PAID.

18          THE COURT:  YOU MEAN THOSE THREE REQUIREMENTS?

19          MR. CATANZARITE:  YES.

20          THE COURT:  AND THAT IS IN YOUR NOTEBOOK HERE?

21          MR. CATANZARITE:  YES.

22          THE COURT:  WHERE IS IT?

23          MR. CATANZARITE:  THE FINANCIAL STATEMENTS.

24  EXHIBIT 31, YOUR HONOR.

25          THE COURT:  OKAY, THERE.  NOW WHAT AM I LOOKING

26  AT, WHICH PAGE?

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 054
Exhibit #268: 012     22-CV-01616-BAS-DDL

97

1          MR. CATANZARITE:  EXHIBIT 31, FIRST PAGE -- I AM

2   SORRY, EXHIBIT 31, SECOND PAGE, PAGE 2, THERE IS A

3   REFERENCE TO SEEDLING TRAILERS.  IF YOU LOOK, YOUR HONOR,

4   THERE IS 50,740 UNDER 12/31/14.

5          THE COURT:  DID YOU REALIZE THIS IS PLAINTIFF'S

6   FINANCIAL STATEMENT, NOT DEFENDANT'S?

7          MR. CATANZARITE:  CORRECT.  BUT IF YOU LOOK AT

8   THE NEXT YEAR, THE ENTRY TO THE RIGHT COLUMN 12/31/15 THE

9   SEEDLING TRAILER IS GONE.

10         THE COURT:  IS THERE ANYTHING SHOWING WHO IT

11  WENT TO?

12         MR. CATANZARITE:  IT WENT TO AND WAS USED, THE

13  TESTIMONY WILL BE, IT WENT TO AND IT WAS USED BY CTI.

14         THE COURT:  NO, YOU ARE PREMATURE.  I AM NOT

15  INTERESTED IN OFFERS OF TESTIMONY PROOF.

16         MR. CATANZARITE:  SURE.

17         THE COURT:  I AM INTERESTED IN DOCUMENTS.

18         MR. CATANZARITE:  OKAY.

19         THE COURT:  SO NOTHING SAYING LIKE A BILL OF

20  SALE?

21         MR. CATANZARITE:  NOTHING.

22         THE COURT:  THANK YOU.  SAME ANSWER WITH RESPECT

23  TO THE OTHER ASSETS, CORRECT?

24         MR. CATANZARITE:  THERE IS ANOTHER, ON PAGE 1,

25  THERE IS A REFERENCE TO CTI EXPENSES PAID, YOUR HONOR.

26  SAME EXHIBIT --

98

1          THE COURT:  YES.

2          MR. CATANZARITE:  -- SHOWS THAT 62,000 WAS

3     ADVANCED IN 2015.

4          THE COURT:  YES.

5          MR. CATANZARITE:  EXHIBIT 2 SHOWS --

6          THE COURT:  YOU MEAN PAGE 2 OR EXHIBIT 2?

7          MR. CATANZARITE:  EXHIBIT 2 NOW.

8          THE COURT:  YES.

9          MR. CATANZARITE:  EXHIBIT 2 SHOWS LEGAL AND

10    PROFESSIONAL FEES PAID OF 10,000 IN FEBRUARY OF 2015,

11    WHICH WERE -- I DON'T HAVE AN INVOICE, AND YOU DON'T WANT

12    TO HEAR WHAT THE ORAL TESTIMONY WOULD BE, BUT THAT WOULD

13    BE -- THAT AND THE EXPENSES INCURRED IN THE FIRST FOUR

14    MONTHS WOULD BE SUPPORTIVE OF PLAINTIFF'S POSITION THAT

15    CONSIDERATION HAD PASSED.

16          EXHIBIT 6 --

17          THE COURT:  YOU DON'T NEED TO BE REDUNDANT ON

18    THE MONEY.  DO YOU HAVE ANYTHING FOR THE OTHER TWO

19    ASSETS?

20          MR. CATANZARITE:  YES, EXHIBIT 6, YOUR HONOR.

21    EXHIBIT 6 IS A LEASE WITH PACIFIC CULTIVATORS ASSOCIATION

22    SIGNED BY MR. PROBST TO MR. O'CONNOR FOR LEASE OF A

23    TRAILER.

24          THE COURT:  4/2/15, THREE DAYS AFTER THE

25    ORIGINAL ACTS WERE SIGNED?

26          MR. CATANZARITE:  YES, YOUR HONOR.

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 056
Exhibit #268: 014      22-CV-01616-BAS-DDL

99

1        THE COURT:  SO IT IS IN ANTICIPATION OF

2   COMPLIANCE BY PLAINTIFF?

3        MR. CATANZARITE:  YES.

4        THE COURT:  WHICH DIDN'T HAPPEN?

5        MR. CATANZARITE:  IT DID HAPPEN.

6        THE COURT:  OKAY.

7        MR. CATANZARITE:  EXHIBIT 5, YOUR HONOR.

8        THE COURT:  WHAT ABOUT IT?

9        MR. CATANZARITE:  EXHIBIT 5, PARAGRAPH 4 --

10  EXHIBIT 4 REFERENCES THE FORMATION OF THE SUBSIDIARY,

11  THIS IS MOBILE FARMING TO BE KNOWN AS CTI.

12       THE COURT:  AND IT SAYS THEY GAVE THEM A 32 FOOT

13  SEEDING TRAILER AND 40 FOOT SHIPPING CONTAINER.

14       MR. CATANZARITE:  YES.  IN ORDER TO CAPITALIZE

15  MOBILE FARMING SYSTEMS HAS CONTRIBUTED CERTAIN ASSETS TO

16  CTI INCLUDING, IN OTHER WORDS, PAST TENSE, YOUR HONOR,

17  AND THE 40 FOOT CONTAINER.

18       THE COURT:  I DON'T SEE A DATE ON THIS LETTER.

19  IS THERE ONE?

20       MR. CATANZARITE:  I BELIEVE -- THE CONCURRENCE

21  IS IS APRIL OF 2015, YOUR HONOR.  THIS WAS SENT TO ALL

22  MOBILE FARMING SHAREHOLDERS.

23       THE COURT:  THANK YOU.

24       MR. CATANZARITE:  AND EXHIBIT 8, YOUR HONOR,

25  EXHIBIT 8 IS MAY 9TH, 2015, SECOND PARAGRAPH, QUOTE:

26  "RIGHT NOW CTI IS OWNED 100 PERCENT BY MFS, MOBILE

100

1    FARMING, PROBST TO O'CONNOR."

2          AND EXHIBIT 7, YOUR HONOR, EXHIBIT 7, PAGE 4,

3    UNDER "CULTIVATION" -- PAGE 4 UNDER THE "CULTIVATION

4    TECHNOLOGY'S" COLUMN, YOUR HONOR, "LONG-TERM

5    LIABILITIES," THERE IS A REFERENCE TO MFS LOAN, $75,000.

6    MFS LOAN ACCRUED INTEREST 12,000, INDICATING THAT MONEY

7    HAD PASSED.  AND THE 2015 FINANCIAL STATEMENT I REFERRED

8    YOU TO CONFIRMS THIS MUCH.

9          THE COURT:  HOW IS A LOAN RELEVANT TO WHAT WE

10   HAVE BEEN TALKING ABOUT?

11         MR. CATANZARITE:  CONSIDERATION PAID UP TO

12   25,000.

13         THE COURT:  SO IF IT IS A LOAN, IT IS NOT GIVEN?

14         MR. CATANZARITE:  WELL, THEY ARE CALLING IT A

15   LOAN, BUT THAT IS WHAT THEY ARE CALLING IT.  THE EVIDENCE

16   IS OTHERWISE.

17         THE COURT:  OKAY.  THANK YOU.

18         OKAY.  THE THING ON PAGE 2 WHICH SAYS, "THE

19   ANTICIPATED AGREEMENT TO MAKE MFS A SHAREHOLDER WAS

20   RESCINDED BEFORE PERFORMANCE," THAT'S THE SAME THING YOU

21   ARE TALKING ABOUT ABOUT THE JUNE 15TH, 2015 ACTION, THAT

22   IS WHAT YOU ARE REFERRING TO THERE?

23         MR. EDGERTON:  AS FAR AS THE DOCUMENTS, YES.

24         THE COURT:  OKAY.

25         MR. EDGERTON:  HOLD ON.  LET ME CONSULT.

26         (DEFENSE COUNSEL AND CLIENTS CONFER OFF THE

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 058
Exhibit #268: 016        22-CV-01616-BAS-DDL

101

1   RECORD.)

2           MR. EDGERTON:  YES, THERE IS MORE, BUT IT IS

3   MORE INDIRECT.  IT IS EVERYTHING -- THE ENSUING

4   SHAREHOLDER LIST DID NOT LIST MFS, THE SHAREHOLDER, IF

5   THAT IS RELEVANT TO WHAT YOU WOULD LIKE TO SEE.

6           THE COURT:  SURE.

7           MR. EDGERTON:  OKAY.

8           THE COURT:  DO YOU HAVE AN EXHIBIT NUMBER TIED

9   TO THE PLAINTIFF BOOK?

10          MR. EDGERTON:  I DON'T THINK SO.

11          THE COURT:  DO YOU HAVE THEIR INDEX OF EXHIBITS?

12          MR. EDGERTON:  I DO IN THE BOOK.

13          THE COURT:  IF YOU CAN LOOK AT THE INDEX AND

14  TELL ME WHICH ONE IT WOULD BE.

15          MR. EDGERTON:  I WILL DO THAT RIGHT NOW.

16          THE COURT:  SO THE PLAINTIFF EXHIBIT NOTEBOOK

17  LEAVES OFF AT 57, SO WE'LL CALL IT 58.

18          MR. CATANZARITE:  WHAT IS THAT?  DO YOU HAVE AN

19  EXTRA ONE?

20          MR. EDGERTON:  YOUR HONOR, I WOULD LIKE TO

21  ADDRESS THE COURT.  FROM THIS, THERE IS A SERIES OF

22  EXHIBITS THAT REINFORCE THROUGH EXTRINSIC EVIDENCE THAT

23  MFS WAS NOT RECOGNIZED AS A SHAREHOLDER, SIGNED OFF BY

24  THE CEO, MR. O'CONNOR, AND THAT GOES TO THE SHAREHOLDER

25  CONSENTS.  THERE IS ALSO DOCUMENTS WHERE SHARE --

26          WHAT HAPPENED LATER IN THE STORY WAS THEN THERE

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 059
Exhibit #268: 017     22-CV-01616-BAS-DDL

102

```
 1    WERE SHARES ON THE SWITCHOVER, AND IT HAD THE SHAREHOLDER

 2    TABLE WHERE MFS WAS ABSENT, AND THAT WAS SIGNED OFF BY

 3    MR. O'CONNOR.

 4           NOW THAT EVIDENCE IS SOMEWHAT CUMULATIVE, AND WE

 5    CAN GIVE THAT TO THE COURT, BUT IT IS SORT OF A BACKUP

 6    AND REINFORCEMENT CORROBORATING EVIDENCE OF THE FACT THAT

 7    THAT WAS KNOWN.

 8           THE COURT:  WHAT PART OF EXHIBIT 58 AM I

 9    SUPPOSED TO LOOK AT HERE?

10           THE COURT REPORTER:  I AM SORRY, YOUR HONOR --

11           THE COURT:  OKAY.  THERE IS A COURT REPORTER --

12           MR. ANTWILER:  WE WILL ANSWER YOUR QUESTION.

13           THE COURT:  -- YOU ARE TREATING THIS LIKE A

14    ROUNDTABLE MEETING, BUT IT IS A COURT HEARING.  ONE

15    PERSON SPEAKS AT A TIME, AND THE COURT REPORTER NEEDS TO

16    HEAR WHAT IS SAID.

17           MR. EDGERTON:  OKAY.  SO THE COURT IS REQUESTING

18    WHAT PART OF THE PHYSICAL EXHIBIT SHOWS THAT FACT.

19           THE COURT:  AND I THOUGHT -- I AM LOOKING FOR AN

20    EXHIBIT THAT IS ATTACHED TO THE DECLARATION, NOT THE

21    DECLARATION ITSELF, BECAUSE I DON'T REALLY CARE ABOUT,

22    YOU KNOW, WHAT SOMEBODY DECLARES UNDER PENALTY OF

23    PERJURY.  I WANT THE UNDERLYING DOCUMENT.

24           SO WHAT AM I LOOKING AT?

25           MR. EDGERTON:  IT IS EXHIBIT NUMBER 1.

26           THE COURT:  PLAINTIFFS' SECURITIES AGREEMENT?
```

103

1          MR. EDGERTON:  YES.  WE CAN GIVE IT TO YOUR

2    CLERK.  WE JUST PULLED IT FROM THE DECLARATION.

3          THE COURT:  WHAT PAGE DO I WANT?

4          MR. TJOE:  YOUR HONOR, IT IS PAGE 1.  SO IT IS

5    PART OF THE SECURITIES AGREEMENT.  SUBPARAGRAPH E:  "THE

6    ISSUER MUST PROVIDE TO QUICK SILVER THE FOLLOWING

7    DOCUMENTS:  SUBPARAGRAPH E IS A COMPLETE LIST OF ISSUED

8    AND OUTSTANDING SECURITIES OF THE ISSUER INCLUDING BUT

9    NOT LIMITED TO PARAGRAPHS A, B, C, D AND E, AND WHAT WAS

10   THEREAFTER PROVIDED."

11         THE COURT:  SO WHAT PAGE IS THE LIST ON?

12         MR. TJOE:  THAT IS A SEPARATE EXHIBIT,

13   YOUR HONOR.

14         THE COURT:  OH.

15         MR. EDGERTON:  WELL, I THINK --

16         MR. ANTWILER:  YOUR HONOR, UNDER E IT REQUESTS A

17   COMPLETE LIST OF ISSUED AND OUTSTANDING SECURITIES, AND

18   AT THAT POINT --

19         THE COURT:  SO WHAT ARE YOU TALKING ABOUT, A

20   NEGATIVE INFERENCE?

21         MR. EDGERTON:  YES.

22         THE COURT:  OKAY.

23         MR. ANTWILER:  THE ONLY SHARES THAT HAVE BEEN

24   ISSUED WOULD BE THE FOUNDERS WHICH WERE ISSUED AT THAT

25   TIME THROUGH THAT SECURITIES AGREEMENT.

26         MR. EDGERTON:  YES, BUT IT IS A NEGATIVE

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 061
Exhibit #268: 019     22-CV-01616-BAS-DDL

104

1   INFERENCE.

2        THE COURT:  OKAY.  I AM LOOKING FOR DOCUMENTARY

3   SUPPORT FOR ALL THESE VARIOUS THEORIES.  SO IF YOU DON'T

4   HAVE A DOCUMENT ON THE SHAREHOLDER LIST, FINE.

5        MR. TJOE:  YOUR HONOR, THE NEXT DOCUMENT WOULD

6   BE 59.  IT IS THE SHARES INITIALLY ISSUED BY QUICK

7   SILVER.  IN OTHER WORDS, THE INFERENCE, IF THAT MAY BE

8   CALLED, IS THIS IS WHAT WAS ISSUED AT THE VERY BEGINNING,

9   THE VERY FIRST SHARES.

10       THE COURT:  SO PASS IT AROUND UNLESS IT IS

11   ALREADY PART OF THE NOTEBOOK.

12       MR. ANTWILER:  IT IS NOT, YOUR HONOR.

13       MR. CATANZARITE:  IS THAT THIS ONE?

14       MR. ANTWILER:  YES.

15       MR. CATANZARITE:  IT IS THIS ONE?

16       MR. ANTWILER:  CORRECT.

17       THE COURT:  SO THIS IS DATED 7/30/15, CHECKLIST

18   REMINDER.  AND YOU ARE SAYING THIS LISTS THE INITIAL

19   SHAREHOLDERS?

20       MR. TJOE:  YES.  AND IT ALSO HAS COPIES OF THE

21   INITIAL SHARES THAT WERE ISSUED STARTING OUT CERTIFICATE

22   1001.

23       THE COURT:  SO PAGE 3 LISTS EIGHT SHAREHOLDERS.

24       MR. TJOE:  CORRECT.

25       THE COURT:  NONE OF WHICH ARE THE PLAINTIFF.

26       MR. TJOE:  CORRECT, YOUR HONOR.

3:22-CV-01616-BAS-DDL     EXHIBIT #0: 062
Exhibit #268: 020    22-CV-01616-BAS-DDL

105

1        THE COURT:  WHICH MAY BE CONSISTENT WITH SOME

2  OTHER PREVIOUS DOCUMENT I SAW ABOUT ISSUING SHARES TO

3  CERTAIN PEOPLE INSTEAD OF TO THE PLAINTIFF.

4        MR. TJOE:  YES, YOUR HONOR.

5        THE COURT:  YOU KNOW, THERE ARE THINGS IN THIS

6  DEFENSE BRIEF ABOUT THINGS HAPPENING, BUT IS THERE

7  ANYTHING THAT SHOWS LIKE WHO ARE THE INDIVIDUALS WITH THE

8  PLAINTIFF AT THIS TIME SUCH THAT THEIR ACTIONS CAN BE

9  IMPUTED TO THE CORPORATION?  IN OTHER WORDS, JUST BECAUSE

10  RICHARD O'CONNOR, RICHARD PROBST AND AMY COOPER ON BEHALF

11  OF CTI SAY WE ARE NOT GOING TO ISSUE STOCK TO MFS, THAT

12  DOESN'T NECESSARILY MEAN MFS AGREES.  HOWEVER, IF THOSE

13  ARE THE SAME THREE PEOPLE THAT ARE IN CHARGE OF MFS, THEN

14  THAT COULD SUPPORT AN INFERENCE THAT MFS DOES AGREE.

15        SO WHAT EVIDENCE IN WRITING IS THERE ABOUT WHO

16  IS IN CHARGE OF MFS AT THIS POINT IN TIME?

17        MR. EDGERTON:  THAT IS EASY TO PROVIDE.  THAT

18  JUST GOES TO PROOF, I WOULD THINK THAT AT THE TIME THERE

19  IS AN MFS DOCUMENT SHOWING THAT THOSE ARE THE THREE SOLE

20  BOARD MEMBERS.  AND THAT COMES FROM THE DECLARATION OF

21  RICHARD PROBST BECAUSE HE WAS THE ONE WHO PROVIDED ALL

22  THE BACKGROUND INFORMATION ON MFS.

23        THE COURT:  DID YOU JUST SAY IT IS THE SAME

24  THREE PEOPLE?

25        MR. EDGERTON:  IT IS.

26        THE COURT:  OKAY.

106

1    MR. EDGERTON:  THAT IS UNDISPUTED, CORRECT?

2  THAT IS UNDISPUTED, RIGHT?

3    MR. CATANZARITE:  IT IS UNDISPUTED THEY ARE THE

4  SAME THREE PEOPLE, BUT THEY DID NOT ACT FORMALLY TO

5  ACKNOWLEDGE THAT MFS WAS NEVER A SHAREHOLDER.

6    THE COURT:  UNDERSTOOD.

7    MR. EDGERTON:  SO YOU HAVE THE SAME THREE

8  CONTROLLING TWO COMPANIES.

9    THE COURT:  OKAY.  MOVING RIGHT ALONG.

10    MR. EDGERTON:  YOUR HONOR, I WANTED TO MENTION

11  SOMETHING THAT I MENTIONED YESTERDAY THAT --

12    THE COURT:  NO, I DON'T WANT TO HEAR IT.

13    MR. EDGERTON:  OKAY.

14    THE COURT:  MY NUMBER 1 GOAL TODAY IS TO FINISH

15  TODAY.  WHETHER OR NOT THAT IS GOING TO HAPPEN TODAY

16  REMAINS TO BE SEEN.  BUT IT IS ALL ABOUT ME ABSORBING

17  INFORMATION.

18    MR. EDGERTON:  SURE.  BUT I JUST WANT TO ADD A

19  DOCUMENT AT SOME POINT.

20    THE COURT:  I AM GOING THROUGH YOUR TRIAL BRIEF.

21  YOU SAY O'CONNOR ALSO SIGNED OVER 50 SUBSCRIPTION

22  AGREEMENTS TO SELL CTI STOCK DIRECTLY TO MFS

23  SHAREHOLDERS.

24    MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

25    THE COURT:  IS THERE A DOCUMENT ON THAT ONE?

26    MR. EDGERTON:  YES, THERE IS.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 064
Exhibit #268: 022      22-CV-01616-BAS-DDL

107

1        THE COURT:  WHILE YOU ARE LOOKING FOR THAT, THE

2   NEXT STATEMENT IS, "GREG D FILINGS AND PRIVATE PLACEMENT

3   MEMORANDUMS CONFIRM WHO THE MAJOR SHAREHOLDERS WERE.  MFS

4   WAS NEVER LISTED AS A SHAREHOLDER IN ANY OF THESE

5   DOCUMENTS."

6        SO YOU HAVE ALREADY GIVEN ME EXHIBIT 59.  SO IS

7   THERE ANYTHING THAT WOULD BE NOT REDUNDANT OF THAT THAT

8   SUPPORTS THAT ASSERTION?

9        MR. EDGERTON:  NO.  IT IS CUMULATIVE.

10        THE COURT:  OKAY.

11        MR. EDGERTON:  PERHAPS YOU ARE RIGHT.

12        THE COURT:  I MEAN THAT IS FINE, IF THERE WAS AN

13   ISSUANCE TO ANOTHER BATCH OF SHAREHOLDERS --

14        MR. EDGERTON:  RIGHT.

15        THE COURT:  -- THAT WOULD BE NONREDUNDANT.

16        MR. EDGERTON:  RIGHT.

17        THE COURT:  AND YOU SAY, "O'CONNOR REPRESENTED

18   AND WARRANTED TO THE CTI TRANSFER AGENT THAT MFS WAS NOT

19   A SHAREHOLDER OF CTI.  SEE OPTA INJUNCTION PAGE 7,

20   SECTION F."  OKAY.  SO IS THERE A DOCUMENT FOR THIS

21   STATEMENT?

22        MR. ANTWILER:  IT WOULD BE 58, YOUR HONOR.  WE

23   ALREADY MARKED.

24        MR. EDGERTON:  AND, YOUR HONOR, DO YOU HAVE 58

25   AS ONE PAGE OR THE WHOLE EXHIBIT THAT I HAVE?

26        THE COURT:  I HAVE QUICK SILVER, 12 PAGES.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 065
Exhibit #268: 023      22-CV-01616-BAS-DDL

108

1          MR. EDGERTON:  OKAY.  YOU HAVE IT.

2          THE COURT:  SO WHERE DOES IT SAY FOR

3   MR. O'CONNOR THAT MFS ISN'T A SHAREHOLDER?

4          MR. ANTWILER:  IT IS THROUGH A NEGATIVE

5   INFERENCE, YOUR HONOR.

6          THE COURT:  SO WHEN YOU SAY HE REPRESENTED AND

7   WARRANTED THAT THEY WEREN'T A SHAREHOLDER, THAT IS FROM

8   HIM SAYING THESE OTHER PEOPLE ARE SHAREHOLDERS?

9          MR. ANTWILER:  HE WAS BOUND UNDER 1E THAT WE

10  DISCUSSED TO GIVE A COMPLETE LIST OF ALL SHARES ISSUED

11  AND OUTSTANDING, AND MFS WAS NOT LISTED.

12         THE COURT:  SO WHERE DID HE PROVIDE THIS LIST?

13  IS THAT THE EXHIBIT 59 LIST?

14         MR. ANTWILER:  59 IS THE ONLY THING THAT WAS

15  PROVIDED, THAT IS CORRECT, YOUR HONOR.

16         THE COURT:  I AM NOT SURE THAT THAT ANSWERED MY

17  QUESTION.

18         MR. EDGERTON:  I DON'T THINK IT DID.  IT IS NOT

19  A GOOD ANSWER.  BUT ON PAGE 1 IT'S HE IS REPRESENTING HE

20  IS ANSWERING THESE QUESTIONS AS HE IS BEING ASKED BY THE

21  TRANSFER AGENT TO ANSWER.

22         THE COURT:  PAGE 1 OF?

23         MR. EDGERTON:  OF THE QUICK SILVER DOCUMENT.

24  AND THAT IS WHAT HE IS SUPPOSED TO BE PROVIDING, AND HE

25  PROVIDES A LIST, WHICH CONSPICUOUSLY ABSENT IS MFS AS A

26  SHAREHOLDER.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 066
Exhibit #268: 024      22-CV-01616-BAS-DDL

109

1        THE COURT:  AND THIS LIST IS AT PAGE 2 OF

2   EXHIBIT 59 THAT LISTS SHARES 1000 THROUGH 1007?

3        MR. TJOE:  CORRECT, YOUR HONOR.

4        MR. EDGERTON:  THAT IS CORRECT, YOUR HONOR.

5        THE COURT:  IS THERE SOMETHING SAYING THIS CAME

6   FROM HIM?  I MEAN IT MAY NOT EVEN BE DISPUTED.  I JUST

7   WANT TO KNOW IF IT IS IN WRITING.

8        MR. EDGERTON:  I UNDERSTAND.

9        MR. ANTWILER:  ACTUALLY, YOUR HONOR, ON EXHIBIT

10  58, IF I MAY, IT ATTACHES EXHIBIT -- I AM SORRY.  ONE

11  MOMENT, YOUR HONOR, I THINK I CAN FIND IT.

12       MR. TJOE:  AND, YOUR HONOR, ALSO EXHIBIT 58,

13  PAGE 10, MIGHT HAVE BEEN A MISSTATEMENT THAT MR. O'CONNOR

14  SAID THIS.  BUT MS. COOPER AT PAGE 10 OF 12, YOUR HONOR,

15  I BELIEVE THAT SHE TESTIFIED -- DECLARES EFFECTIVELY

16  UNDER PENALTY OF PERJURY THAT, UNDER WHERE IT SAYS

17  TOWARDS THE BOTTOM HALF OF THE PAGE, "SHARES OF SAID

18  STOCK HAVE BEEN ISSUED," AND THERE IS NONE.

19       THE COURT:  I AM NOT SEEING THAT.

20       MR. TJOE:  SO TWO-THIRDS DOWN THE PAGE "THAT OF

21  SAID AUTHORIZED STOCK THEY ARE NOW ISSUED" --

22       THE COURT:  YES.

23       MR. TJOE:  AND THERE IS NOTHING.  NO STOCK HAD

24  BEEN INDICATED HAD BEEN ISSUED AS OF THIS DATE.

25       THE COURT:  YES.

26       MR. TJOE:  SO THAT WOULD BE INDICATIVE OF THE

110

1   FACT THAT NO SHARES OF CTI HAVE EVER BEEN ISSUED TO MFS

2   AS OF THIS DATE.

3            THE COURT:  OH, OKAY.

4            MR. TJOE:  AS SIGNED BY MS. COOPER.

5            AND I BELIEVED THE CONFUSION IS THE INFERENCE,

6   THE NEXT PAGE, THAT IS PAGE 11 OF 12, YOUR HONOR, THIS IS

7   A CERTIFICATE OF AUTHORITY OF OFFICERS, AND THAT IS

8   SIGNED BY MR. O'CONNOR, MISS COOPER, MR. PROBST, AND I

9   DON'T THINK IT IS MUCH OF A LEAP TO SAY THAT THEY WERE

10  EFFECTIVELY VALIDATING WHAT MS. COOPER SAID ON PAGE 10 OF

11  12.

12           THE COURT:  OKAY.

13           MR. ANTWILER:  AND, YOUR HONOR, IN EXHIBIT 59

14  WHERE THE FIRST CERTIFICATES WERE ISSUED IT DOES INCLUDE

15  A COPY OF THE AMENDED ORGANIZATIONAL ACTS.

16           THE COURT:  WHICH I HAVE ALREADY LOOKED AT?

17           MR. ANTWILER:  CORRECT, YOUR HONOR.

18           THE COURT:  SO THEN YOU SAY THAT ALL BUT SIX OF

19  59 PLAINTIFF SHAREHOLDERS AGREE TO PARTICIPATE AND

20  PURCHASE STOCK IN CTI, PROBST'S DECLARATION SECTION

21  PARAGRAPH 31 IN EXHIBIT J.

22           MR. TJOE:  YES, YOUR HONOR.  EXHIBIT J TO

23  MR. PROBST'S DECLARATION IS UNFORTUNATELY NOT A VERY GOOD

24  PRINTOUT OF -- IT SUMMARIZES AND HIGHLIGHTS IN YELLOW THE

25  INDIVIDUALS THAT DID NOT PARTICIPATE IN THE FRIENDS AND

26  FAMILY ROUND.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 068
Exhibit #268: 026          22-CV-01616-BAS-DDL

111

1          I CAN GIVE THE COURT CLERK WHAT I WILL MARK AS

2     EXHIBIT 60.

3               MR. CATANZARITE:  I HAVE GOT THAT ONE.

4               MR. ANTWILER:  IT IS IN HIS BINDER.

5               MR. CATANZARITE:  IT IS BLOWN-UP.

6               THE COURT:  WHAT NUMBER IS IT?

7               MR. CATANZARITE:  THERE IS A SET OF

8     SPREADSHEETS; IT IS AT 52.  WE MADE IT BIGGER.

9               MR. EDGERTON:  OH, THIS IS THE ONE THAT I WAS

10    NOT SURE ABOUT.  IS THAT JUST THE BLOWUP?

11              MR. CATANZARITE:  YES.

12              MR. EDGERTON:  OKAY.  SO I AM STIPULATING TO HIS

13    WHOLE BOOK.

14              MR. CATANZARITE:  IT IS BLOWN-UP AS AN 11-BY-17.

15    I DON'T THINK IT HAS THE YELLOW ON IT.

16              MR. EDGERTON:  SO THAT IS JUST REPLICATION?

17              MR. CATANZARITE:  YES.

18              MR. EDGERTON:  OKAY.  THAT IS FINE.

19              MR. TJOE:  SO TO THE EXTENT THAT IT IS

20    HELPFUL --

21              THE COURT:  OKAY.  SO WE HAVE GOT CTI

22    SHAREHOLDER LIST.  WE HAVE GOT FIRST 1 THROUGH 9, AND

23    THEN WE HAVE GOT 1 THROUGH 163, AND THEN YOU HAVE GOT

24    MORE ON TOP OF THAT WITH ISSUE DATES SET FORTH.  AND I

25    TAKE IT THERE IS NO PLAINTIFF ON HERE?

26              MR. TJOE:  NO, YOUR HONOR.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 069
Exhibit #268: 027     22-CV-01616-BAS-DDL

112

1        MR. EDGERTON:  THAT IS CORRECT.

2        THE COURT:  OKAY.  IS THERE ANYTHING TYING THIS

3  IN TO THE PLAINTIFF TAKING THE POSITION THAT THIS IS

4  ACCURATE?

5        MR. EDGERTON:  THE PLAINTIFF IS TAKING THE

6  ADVERSE POSITION NOW THAT IT IS NOT ACCURATE, AND THAT IS

7  THE EXHIBIT THAT I WANTED TO MARK.

8        THE COURT:  THAT IS EXACTLY WHY I WANT TO SEE IF

9  THEY TOOK THE POSITION IN THE PAST THAT IT WAS ACCURATE.

10        MR. EDGERTON:  THEY DID NOT TAKE A POSITION IN

11  THE PAST THAT IT WAS ACCURATE.  THEY WENT WITH OUR

12  POSITION.  THREE-AND-A-HALF YEARS LATER IS WHEN THE

13  DISPUTE AROSE.

14        THE COURT:  I FEEL LIKE YOU ARE SAYING THE SAME

15  THING THAT I WAS SAYING.

16        MR. EDGERTON:  PROBABLY.  I JUST WANT TO MAKE

17  SURE IT IS JUST SAID THAT WAY.

18        THE COURT:  I WILL REPEAT WHAT I AM SAYING:  IF

19  YOU HAVE ADMISSIONS BY THE PLAINTIFF THAT THEY ARE NOT A

20  SHAREHOLDER, THEN THAT IS SOMETHING I WOULD WANT TO SEE.

21        SO IF A LIST OF SHAREHOLDERS THAT DOESN'T

22  INCLUDE THE PLAINTIFF IS ARGUED BY THE DEFENDANT, OKAY,

23  FINE.  BUT IF THE PLAINTIFF HAS EMBRACED THIS LIST, THEN

24  THAT IS MORE INTERESTING TO ME.

25        MR. EDGERTON:  SO IT IS EXECUTED BY

26  MR. O'CONNOR, SO A TACIT ADMISSION IS ACKNOWLEDGED BY

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 070
Exhibit #268: 028      22-CV-01616-BAS-DDL

113

1    HIM.

2              THE COURT:  OKAY.  WHERE DO I FIND A SIGNATURE

3    ON HERE?

4              MR. ANTWILER:  YOUR HONOR, I DON'T KNOW IF

5    IT'S -- WHICH DOCUMENT WE ARE REFERRING TO AT THE MOMENT,

6    BUT WE HAVE --

7              THE COURT REPORTER:  I AM SORRY, I DIDN'T HEAR

8    YOU.

9              THE COURT:  WHEN YOU FACE BACKWARD, NOBODY CAN

10   HEAR YOU.

11             MR. ANTWILER:  I AM SORRY, YOUR HONOR.

12             WE HAVE SUBSCRIPTION AGREEMENTS THAT ARE SIGNED,

13   WHICH WOULD GO ALONG WITH THE NEW SHARE STRUCTURE, WHICH

14   DOES NOT INCLUDE MFS THAT ARE SIGNED BY RICHARD O'CONNOR.

15             THE COURT:  OKAY.  WELL, I UNDERSTAND THAT THERE

16   IS AN ARGUMENT IN YOUR BRIEF THAT HE SHOULDN'T BE HEARD

17   TO COMPLAIN THAT OTHER PEOPLE OWN STOCK, BUT I AM NOT

18   REALLY SURE THAT IS AN ISSUE FOR THIS HEARING.  IT'S MORE

19   ABOUT DOES PLAINTIFF ITSELF OWN ANY STOCK, WHETHER

20   PLAINTIFF IS A 100 PERCENT SHAREHOLDER OR SOME LESSER

21   PERCENTAGE SHAREHOLDER?

22             SO THE FACT THAT MR. O'CONNOR AGREED THAT THERE

23   ARE THESE OTHER SHAREHOLDERS, IT CAN ONLY GO SO FAR.

24             MR. TJOE:  YOUR HONOR, IF YOU ARE JUST LOOKING

25   FOR DOCUMENTARY EVIDENCE, THERE IS AN E-MAIL EXCHANGE ON

26   MOBILE FARMING SYSTEMS' LETTERHEAD.  THIS IS BETWEEN

114

1    MR. PROBST, MR. COOPER -- EXCUSE ME, MS. COOPER AND

2    MR. O'CONNOR.

3          THE COURT:  IF IT IS RELEVANT, I WANT TO SEE IT.

4    AND I WOULD RATHER READ IT MYSELF THAN HAVE YOU READ IT

5    TO ME.

6          MR. TJOE:  THAT IS FINE, YOUR HONOR.

7          MR. CATANZARITE, IS THIS E-MAIL PART OF YOUR

8    TRIAL EXHIBIT BINDER?

9          MR. CATANZARITE:  IS THERE A DATE?

10          MR. TJOE:  IT IS NOVEMBER 3RD, 2017.  IT WAS

11    PREVIOUSLY ATTACHED --

12          MR. CATANZARITE:  NO, WE DON'T HAVE THIS.

13          MR. TJOE:  -- PREVIOUSLY ATTACHED AS EXHIBIT L

14    TO MR. PROBST'S DECLARATION.

15          IF IT IS OKAY WITH MR. CATANZARITE, I WILL LABEL

16    THIS AS 60.

17          MR. CATANZARITE:  SURE.

18          THE COURT:  WELL, ACTUALLY IT IS NOT OKAY -- IT

19    DOESN'T HAVE TO BE OKAY WITH HIM IF IT IS MARKED, BUT

20    ONLY IF IT IS ADMITTED.  SO YOU CAN MARK IT AS EXHIBIT

21    60.

22          MR. TJOE:  IDENTIFIED, EXACTLY, YOUR HONOR.  MY

23    APOLOGIES.

24          THE COURT:  SO WE ARE CALLING THESE E-MAILS

25    DATED 11/3/17.

26          SO POINT ME TO THE INTERESTING PART.

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 072
Exhibit #268: 030      22-CV-01616-BAS-DDL

115

1          MR. TJOE:  SURE, YOUR HONOR.  SO BEGINNING AT

2    THE BOTTOM OF THE PAGE, THIS IS FROM MY CLIENT,

3    MR. PROBST; THIS IS ADDRESSED TO -- THIS WAS SENT TO

4    MS. COOPER AND MR. O'CONNOR.  "GUYS, WE NEED TO CLOSE THE

5    COMPANY OR POSSIBLY B.K. IT.  ITS ONLY ASSETS ARE THE

6    STOCK IT OWNS IN GROW POD SOLUTIONS AND THE NOTE FROM CTI

7    WHICH WON'T BE PAID ANY TIME SOON."

8          THE COURT:  OKAY.  SO YOUR POINT IS HE IS NOT

9    IDENTIFYING CTI STOCK AS AN ASSET OF MFS?

10         MR. TJOE:  CORRECT.  AND IF YOU FOLLOW THE REST

11   OF THE E-MAIL, NO ONE DISAGREES WITH THAT.  NO ONE

12   OBJECTS TO THAT POSITION.

13         THE COURT:  OKAY.

14         MR. ANTWILER:  YOUR HONOR, ALSO THERE ARE PPM'S

15   THAT WOULD LIST ALL SHAREHOLDERS THAT OWN FIVE OR PERCENT

16   MORE OF CTI.  MFS IS NOT LISTED, AND THEY ARE EXECUTED --

17   SOME OF THEM ARE EXECUTED BY, OR AUTHORIZED BY

18   MR. O'CONNOR.

19         THE COURT:  WELL, AT THIS POINT I BELIEVE IT IS

20   THE PLAINTIFF'S CONTENTION THAT THEY ACQUIRED STOCK AT

21   THE VERY BEGINNING.  SO THE FACT THAT THEY WEREN'T LISTED

22   ON SOME SUBSEQUENT STOCK OFFERING I DON'T THINK REALLY

23   MATTERS FOR PURPOSES OF THIS HEARING.  CORRECT?

24         MR. ANTWILER:  WELL, IT LISTED THE CURRENT

25   SHAREHOLDERS THAT OWN FIVE OR PERCENT MORE, AND IT DOES

26   NOT LIST MFS.  SO IT IS A SHOWING THAT MFS WAS NOT A FIVE

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 073
Exhibit #268: 031      22-CV-01616-BAS-DDL

116

1    PERCENT OR MORE SHAREHOLDER.

2            THE COURT:  OH, I THOUGHT YOU WERE LISTING IT AS

3    A LIST OF A NEW ISSUANCE AS OPPOSED TO A CUMULATIVE LIST

4    OF ALL STOCKHOLDERS OF FIVE PERCENT OR MORE.  SO YOU ARE

5    SAYING IT IS THE LATTER.  SO WHERE IS THAT?

6            MR. ANTWILER:  IT IS THE LATTER.

7            THAT IS WHAT I AM TRYING TO GATHER, YOUR HONOR.

8    I DON'T HAVE IT IN FRONT OF ME, BUT I CAN PROVIDE IT AT

9    THE FIRST AVAILABLE BREAK.

10           THE COURT:  OKAY.  OR YOU CAN KEEP LOOKING FOR

11   IT.

12           OKAY.  THEN YOU HAVE GOT A REPRESENTATION THAT

13   SINCE OCTOBER 2015 CTI RAISED OVER 3,000,000 FROM OVER 60

14   PRIVATE INVESTORS AND AN ADDITIONAL 6,000,000 IN

15   FINANCING WITH REPRESENTATIONS THAT MFS DID NOT OWN ANY

16   SHARES OF CTI STOCK.  SO THAT IS SOMETHING I MIGHT WANT

17   TO SEE IF WE CAN LABEL THAT AS A REPRESENTATION FROM THE

18   PLAINTIFF.

19           MR. EDGERTON:  SO EXTRINSICALLY THAT PROOF, A

20   LOT OF THAT IS GOING TO COME INTRINSICALLY IS WHAT --

21           WHAT IS THE BACKUP, GENTLEMEN, FOR THAT

22   DOCUMENT?

23           MR. ANTWILER:  YOUR HONOR, THAT WILL ALSO BE

24   INCLUDED ON SOME OF THE PRIVATE PLACEMENT MEMORANDUMS,

25   AND IT IS ALSO ON I THINK WOULD BE REFLECTED IN SOME OF

26   THESE SUBSCRIPTION AGREEMENTS.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 074
Exhibit #268: 032          22-CV-01616-BAS-DDL

117

1        ON SOME OF THE SUBSCRIPTION AGREEMENTS IT SAYS

2   THERE IS 23,000,000 SHARES.  SO YOU CAN ONLY READ THAT IN

3   CONJUNCTION WITH THE AMENDED BECAUSE THERE IS 28,000,000

4   SHARES AS PURPORTEDLY ISSUED IS WHAT THEY ARE ARGUING.

5   SO IF THERE ARE ONLY 23,000,000 OUTSTANDING SHARES, THEN

6   NO SHARES CAN BE ISSUED TO MFS.

7        BUT THE OTHER DOCUMENTARY EVIDENCE IS THE PPM'S

8   THAT WE ARE CURRENTLY TRYING TO FIND TO PROVIDE TO

9   YOUR HONOR.

10       THE COURT:  OKAY.  THOSE AMENDED ACTS ARE COMING

11  UP AGAIN.  THAT WAS WHAT EXHIBIT?

12       MR. ANTWILER:  I THINK IT'S -- LET ME JUST

13  CONFIRM.

14       MR. CATANZARITE:  53.

15       MR. ANTWILER:  53, YOUR HONOR.

16       THE COURT:  ALL RIGHT.  I THINK WE ARE AT THE

17  POINT WHERE I WANT TO HAVE PLAINTIFF NOW POINT ANY

18  DOCUMENTS THAT THEY WISH OUT TO ME THAT SUPPORT THIS

19  PLAINTIFF OWNS STOCK INTENTION.

20       MR. EDGERTON:  CAN I JUST, THIS ONE DOCUMENT --

21       THE COURT:  WHAT IS THAT?

22       MR. EDGERTON:  -- IF IT IS APPROPRIATE?

23       SO YESTERDAY I MENTIONED THE DECLARATION ABOUT

24  MR. O'CONNOR STILL CLAIMING THAT MFS IS THE SOLE

25  SHAREHOLDER OF CTI.  AND I APOLOGIZED TO THE COURT AND

26  SAID, IT IS REALLY NOT BLACK AND WHITE IN HIS

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 075
Exhibit #268: 033     22-CV-01616-BAS-DDL

118

1    DECLARATION, WHICH I ANALYZED, BUT IT IS IN A SHAREHOLDER

2    CONSENT AGREEMENT THAT HE SERVED ON CTI PROCLAIMING

3    HIMSELF TO BE THE CEO OF CTI AND REPRESENTED THAT MFS IS

4    THE SOLE SHAREHOLDER.

5         SO THAT WAS SOMETHING THAT HE SERVED ON CTI IN

6    JANUARY.  SO AS LATE AS JANUARY HE WAS CLAIMING THAT MFS

7    IS THE SOLE SHAREHOLDER OF CTI, A POSITION THAT WE CLAIM

8    IS FALSE.

9         THE COURT:  OKAY.  ALL RIGHT, MR. CATANZARITE.

10        MR. EDGERTON:  WOULD YOU LIKE TO HAVE THIS?

11        THE COURT:  NO.  IT SOUNDS REDUNDANT.

12        MR. EDGERTON:  ALL RIGHT.

13        OH, WE JUST FOUND SOMETHING THAT YOU WERE

14   LOOKING FOR.

15        THE COURT:  NAMELY?

16        MR. TJOE:  ONE OF THE PPM'S, YOUR HONOR.

17        MR. ANTWILER:  WE WILL MARK THIS AS EXHIBIT 61?

18        THE COURT:  YES.

19        MR. EDGERTON:  WHAT PAGE?

20        MR. ANTWILER:  I WILL HAND THIS TO THE COURT

21   ATTENDANT.

22        MR. CATANZARITE:  IS THERE A PAGE?

23        MR. ANTWILER:  PAGE 27.

24        THE COURT:  PRIVATE PLACEMENT MEMORANDUM.

25        MR. CATANZARITE:  WHAT IS THE DATE ON IT?

26        MR. ANTWILER:  THE DATE OF THIS MEMORANDUM IS

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 076
Exhibit #268: 034     22-CV-01616-BAS-DDL

119

1  OCTOBER 2ND, 2015, AND IT IS LISTED ON THE BOTTOM OF THE

2  FIRST PAGE.

3        THE COURT:  PAGE WHAT?

4        MR. ANTWILER:  27, YOUR HONOR.

5        THE COURT:  SECURITY OWNERSHIP.

6        MR. ANTWILER:  AND IT IS THAT FIRST PARAGRAPH

7  AND THE BELOW TABLE WHICH IS RELEVANT.  I CAN READ IT IF

8  YOUR HONOR LIKES.

9        THE COURT:  I DON'T NEED THAT.

10        AND WHAT DO I HAVE THAT SAYS THAT THIS IS A

11  STATEMENT FROM THE PLAINTIFFS' REPRESENTATIVES?

12        MR. ANTWILER:  WE ARE -- WE HAVE AGREEMENTS THAT

13  HAVE BEEN EXECUTED BY MR. O'CONNOR.  I AM CURRENTLY JUST

14  MAKING SURE THAT EVERY REDACTION IS MADE TO ANY SOCIAL

15  SECURITY NUMBERS FOR THE INVESTORS.

16        THE COURT:  YOU ARE GETTING THIS BACK AT THE END

17  OF THE DAY PROBABLY.

18        MR. ANTWILER:  OKAY.  SO IT IS FINE IF WE SHOW

19  THAT?

20        THE COURT:  I AM NOT PUTTING IT ON THE INTERNET

21  OR FILING IT AS A DOCUMENT FOR PUBLIC VIEWING.

22        MR. ANTWILER:  IN THAT CASE WE WILL MARK AS

23  EXHIBIT 62 A GROUP OF SIGNED SUBSCRIPTION AGREEMENTS.

24  AND IF YOU WILL LOOK THROUGH SEVERAL OF THESE PAGES, YOU

25  WILL SEE RICHARD O'CONNOR'S SIGNATURE THROUGH DOCUSIGN

26  THERE ON THE BOTTOM OF EACH ONE.

120

1          THE COURT:  SO THIS IS VARIOUS DATES IN LATE

2     2015/EARLY 2016.  AND YOU ARE SAYING THIS IS PEOPLE

3     GETTING STOCK IN CTI?

4          MR. ANTWILER:  CORRECT, YOUR HONOR.  PURSUANT TO

5     THE SUBAGREEMENT THAT WAS EXHIBIT 61, I BELIEVE.

6          THE COURT:  OKAY.  I AM NOT SURE HOW HELPFUL

7     THIS IS BECAUSE I AM NOT INTERESTED IN DETERMINING

8     WHETHER PLAINTIFF IS THE ONLY SHAREHOLDER, BUT RATHER IF

9     THEY ARE A SHAREHOLDER.

10          MR. ANTWILER:  BUT THE ONLY REASON I POINTED IT

11     OUT, YOUR HONOR, IS THAT, AS WE SAW ON PAGE 27, IT LISTS

12     ALL SHAREHOLDERS WHO OWNED FIVE PERCENT OR MORE.  MOBILE

13     FARMING SYSTEMS, THE PLAINTIFF, IS NOT LISTED, AND WE

14     HAVE O'CONNOR WHO IS AFFILIATED WITH BOTH PLAINTIFF AND

15     CTI SIGNING OFF AND ACCEPTING THOSE.

16          THE COURT:  YOU MEAN THE FACT THAT THESE PEOPLE

17     ARE GETTING STOCK?

18          MR. ANTWILER:  NOT THAT THEY ARE GETTING STOCK,

19     BUT THAT HE IS AUTHORIZING THE PPM, WHICH DOES NOT

20     REPRESENT MFS AS A FIVE PERCENT SHAREHOLDER.

21          MR. TJOE:  IF I MAY CLARIFY?

22          THE COURT:  ARE YOU TYING EXHIBIT 62 TO EXHIBIT

23     61?  IS 62 CARRYING OUT 61?

24          MR. ANTWILER:  CORRECT, YOUR HONOR.

25          THIS IS THE SIGNATURE PAGES THAT WOULD BE TIED

26     TO EXHIBIT 61.

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 078
Exhibit #268: 036        22-CV-01616-BAS-DDL

121

1          THE COURT:  OKAY.  THANK YOU.  OKAY.  ENOUGH

2     FROM THE DEFENDANT.  HAVE A SEAT.

3          MR. CATANZARITE, YOUR TURN TO SHOW ME DOCUMENTS

4     THAT SUPPORT ANY NOTION OF PLAINTIFF OWNING STOCK IN THIS

5     COMPANY.

6          MR. CATANZARITE:  WELL, I GAVE YOU THE --

7     I GUESS I INTERRUPTED DEFENDANTS, BUT WE GAVE YOU A LIST

8     OF -- I PROVIDED YOU WITH A LIST OF THE DOCUMENTS WE RELY

9     UPON.

10          THE COURT:  I DON'T KNOW WHAT YOU ARE REFERRING

11     TO.

12          MR. CATANZARITE:  YOU WANT ME TO GO BACK OVER

13     THEM?  I WILL.  WE BEGAN WITH 2 --

14          THE COURT:  ARE YOU TALKING ABOUT YOUR OPENING

15     STATEMENT?

16          MR. CATANZARITE:  I AM TALKING ABOUT YOU ASKED

17     FOR WHAT ADDITIONAL EXHIBITS I HAD.

18          THE COURT:  OH, THAT.  OKAY.  NO.  WHAT I MEAN

19     IS, DO YOU HAVE ANYTHING ELSE THAT YOU HAVEN'T TOLD ME

20     ABOUT TODAY?

21          MR. CATANZARITE:  NO.

22          THE COURT:  OKAY.  ALL RIGHT.  SO BASICALLY THE

23     DOCUMENTS SUPPORT THE POSITION THAT CTI HAS TAKEN THE

24     POSITION THAT MFS DOESN'T OWN STOCK.  CTI HAS DONE THAT

25     THROUGH ITS THREE DIRECTORS AS OF 2015:  PROBST, COOPER

26     AND O'CONNOR, AND THOSE ARE THE THREE DIRECTORS OF MOBILE

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 079
Exhibit #268: 037          22-CV-01616-BAS-DDL

122

1    FARMING SYSTEMS.

2          SO EVEN THOUGH MOBILE FARMING SYSTEMS DIDN'T PER

3    SE ITSELF ADOPT THIS POSITION THAT IT DIDN'T OWN STOCK,

4    THEN THE THREE PEOPLE DID SO, WHICH FOR LACK OF A BETTER

5    TERM CONSTITUTES AN ADMISSION AGAINST INTEREST.  IF IT

6    WASN'T TRUE, THEY WOULD BE VIOLATING THEIR FIDUCIARY

7    DUTIES UP THE YING YANG TO SIGN DOCUMENTS ON BEHALF OF

8    CTI SAYING THAT MFS IS NO LONGER A STOCKHOLDER IF, IN

9    FACT, MFS WAS A STOCKHOLDER.

10         SO YOU HAVE SOME SERIOUS EXPLAINING TO DO WHY I

11   SHOULD CONCLUDE THAT MFS IS AS OF TODAY -- WELL, AS OF

12   THE DATE OF THIS CORPORATE ELECTION A SHAREHOLDER OF CTI

13   THAT WAS DENIED ITS RIGHT TO VOTE IN THIS DIRECTOR

14   ELECTION THAT IS BEING CONTESTED.

15         MR. CATANZARITE:  YOU WANT ME TO ADDRESS THAT

16   RIGHT NOW?

17         THE COURT:  YES.

18         MR. CATANZARITE:  OKAY.  SO I THINK THAT THE

19   EVIDENCE -- THE OFFER OF PROOF WOULD BE THAT THE

20   TESTIMONY WOULD BE SUCH THAT THE CONSIDERATION PASSED,

21   TRAILERS, CONTAINER PASSED, WERE USED BY CULTIVATION

22   TECHNOLOGIES AS A WHOLLY OWNED SUBSIDARY.  THE

23   REPRESENTATION IN THE APRIL LETTER IS THAT THEY ARE A

24   WHOLLY OWNED SUBSIDARY AND WILL BE DISTRIBUTED AS A

25   DIVIDEND AT SOME POINT IN TIME.  OKAY?  AT SOME POINT IN

26   TIME, THAT IS EXHIBIT 5.

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 080
Exhibit #268: 038     22-CV-01616-BAS-DDL

123

1      SO EXHIBIT 2 CONFIRMS THE AMOUNT OF MONEY SPENT.

2  EXHIBITS -- THE FINANCIAL STATEMENTS CONFIRM THAT MORE

3  THAN 29,000 -- MORE UPWARDS OF 75,000 WAS PAID ON BEHALF

4  OF -- BY MOBILE FARMING FOR THE BENEFIT OF CTI.

5      THERE IS NO DOCUMENT THAT -- THERE IS NO

6  DOCUMENT THAT SHOWS IT IS A LOAN.  IN OTHER WORDS, CTI

7  DOES NOT SIGN A NOTE THAT IT OWES MOBILE FARMING MONEY.

8  THERE IS NO WRITTEN EVIDENCE OF A NOTE.  THERE IS NO

9  MOBILE FARMING SHAREHOLDER MEETING AUTHORIZING THE LOAN

10  OF ANY MONEY.

11      THE LOAN TO MOBILE FARMING DOES NOT APPEAR --

12  DOES NOT APPEAR ON THE FINANCIAL STATEMENTS IN ANY

13  AUTHORIZED CAPACITY, MEANING IT IS NOT AUTHENTICATED BY A

14  DOCUMENT OF ANY KIND.  IT IS JUST PUT FORWARD IN A SET OF

15  RECORDS.

16      AND THE TESTIMONY WOULD BE THAT THEY WERE TOLD,

17  THAT IS, COOPER AND O'CONNOR WERE TOLD THAT YOU HAVE TO

18  DO IT THIS WAY BECAUSE OF THE FINANCIAL CONDITION OF

19  MOBILE FARMING.  SO SIGN THESE DOCUMENTS, WHICH THEY DID.

20      THE COURT:  WHICH DOCUMENTS?

21      MR. CATANZARITE:  WELL, SOME OF THE DOCUMENTS

22  THEY ARE REFERRING TO, THE SHARE ISSUANCES AND THE LIKE

23  THAT THEY ARE RELYING UPON FOR THE NEGATIVE INFERENCE.

24      THE COURT:  SO LET'S ASSUME FOR ARGUMENT SAKE

25  THAT ALL THREE OF THESE MODES OF CONSIDERATION WERE

26  CONVEYED FROM THE PLAINTIFF TO THE DEFENDANT, THEN YOU

124

1    HAVE GOT THIS RESOLUTION REPUDIATING THE SHAREHOLDER

2    SIGNED OFF ON BY THE THREE INDIVIDUALS IN THEIR

3    REPRESENTATIVE CAPACITY FOR CTI, YES, BUT THEY ARE THE

4    THREE PRINCIPALS OF THE PLAINTIFF, WHICH GIVES YOU AN

5    ESTOPPEL ARGUMENT AMONG OTHER LEGAL ARGUMENTS AND

6    DOCTRINES THAT COULD APPLY HERE, SO WHY WOULDN'T THAT

7    SUPERSEDE THOSE PREVIOUS FACTS?

8         MR. CATANZARITE:  WELL, BASED UPON -- WELL,

9    THERE IS A COUPLE OF PROBLEMS WITH 53.  IF YOU READ 53,

10   IN PARTICULAR PAGE 4, IT PURPORTS TO BE A RESOLUTION OF

11   DIRECTORS.  BUT IF MOBILE FARMING WAS NEVER A

12   SHAREHOLDER, THERE WERE NEVER ANY DIRECTORS BECAUSE

13   MOBILE FARMING WOULD HAVE HAD TO VOTE FOR THE DIRECTORS.

14        IN OTHER WORDS, IF YOU LOOK AT EXHIBIT 4,

15   EXHIBIT 4 HAS MOBILE FARMING ADOPTING THE ACTS AND

16   RESOLUTIONS AS THE SOLE SHAREHOLDER OF CTI.  BUT IF AS

17   THEY SAY MOBILE FARMING NEVER PAID, NEVER WAS ENTITLED TO

18   ANY SHARES, NEVER WAS ISSUED ANY SHARES, THEN THERE

19   WOULDN'T BE THAT -- THAT MEETING WOULD BECOME A NULLITY.

20   AND THE ONLY PERSON THAT COULD ACT ON BEHALF OF THE

21   COMPANY IN THAT DEFAULT WOULD BE THE INCORPORATOR WHO

22   RESIGNED ON THE VERY SAME DAY.

23        AND SO THE INCORPORATOR, MR. ERIC WILLENS, DOES

24   NOT SIGN EXHIBIT 53.  IT PURPORTS TO BE SIGNED BY PEOPLE

25   WHO COULD ONLY HAVE BEEN ELECTED AS DIRECTORS BY MOBILE

26   FARMING, AND MOBILE FARMING THEY CLAIM IS NOT A

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 082
Exhibit #268: 040     22-CV-01616-BAS-DDL

125

1  SHAREHOLDER.  SO IT CAN'T BE -- THEY CAN'T RELY UPON 53

2  IF, IN FACT, THE DIRECTORS ARE NOT AUTHORIZED TO ACT ON

3  BEHALF OF THE COMPANY BECAUSE THEY WEREN'T DULY ELECTED

4  BECAUSE THEY RECANT THAT MOBILE FARMING IS NOT A

5  SHAREHOLDER.

6          IN OTHER WORDS, THEY DON'T GO BACK AND HAVE

7  WILLENS CONDUCT A NEW MEETING AND SAY THAT MOBILE FARMING

8  DIDN'T PASS THE CONSIDERATION.  I WITHDRAW MY

9  RESIGNATION.  I NOW ACT AS INCORPORATOR AND I NOW START

10  ANOTHER MEETING AND ALLOW YOU ALL TO PURCHASE SHARES.

11          THEY JUST HAVE THIS RESOLUTION THAT PURPORTS TO

12  DO SOMETHING THAT THEY ARE NOT -- THEY DON'T HAVE

13  CAPACITY TO DO.

14          THE COURT:  WHEN WAS THIS ELECTION OF DIRECTORS

15  THAT YOU ARE CHALLENGING?

16          MR. CATANZARITE:  WELL, THE LATER -- WELL, THE

17  SUBSEQUENT ACTS BY THE DIRECTORS OF THE COMPANY, BECAUSE

18  IT HAD NO SHAREHOLDERS AS OF THIS POINT OF TIME, IT COULD

19  NOT HAVE HAD DIRECTORS.

20          THE COURT:  HOW DO YOU ADDRESS THE LACHES

21  DEFENSE ARGUMENT THAT YOU WAITED TOO LONG IN THIS

22  EQUITABLE PROCEEDING TO MAKE THIS CLAIM?

23          MR. CATANZARITE:  WELL, I THINK -- LACHES IS AN

24  EQUITABLE ARGUMENT.  THE COUNTERPART INS UNCLEAN HANDS

25  THAT THE SHARE --

26          THE COURT:  I DIDN'T ASK YOU ABOUT UNCLEAN

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 083
Exhibit #268: 041          22-CV-01616-BAS-DDL

126

1   HANDS.  I ASKED YOU ABOUT LACHES, THE DELAY IN BRINGING

2   THE PROCEEDING.

3           MR. CATANZARITE:  WELL, I WOULD SAY THAT THE

4   KNOWLEDGE THAT THE SHAREHOLDERS OF MOBILE FARMING HAD NOT

5   RECEIVED THEIR 47 PERCENT OF THE INITIAL ISSUANCE OF THE

6   28,000,000 SHARES, THE LACK OF THAT KNOWLEDGE WAS NOT

7   DISCOVERED UNTIL THE LAWSUITS WERE INITIATED.

8           THE COURT:  YOU ARE SAYING THE THREE FOUNDERS

9   DIDN'T KNOW THAT MFS NEVER GOT STOCK CERTIFICATES?

10          MR. CATANZARITE:  I AM SAYING THREE FOUNDERS

11  DIDN'T KNOW THAT THE WAY THE ATTORNEYS ENDED UP ISSUING

12  THE SHARES WAS NOT IN ACCORDANCE WITH THE REPRESENTATION

13  MADE IN THE MAY 5TH LETTER TO THE SHAREHOLDERS THAT THEY

14  WOULD END UP WITH 47 PERCENT OF THOSE INITIAL SHARES.

15          THE COURT:  WHO IS "THEY"?

16          MR. CATANZARITE:  THEY MEANING MR. O'CONNOR AND

17  MR. PROBST IN WRITING THE LETTER TO THE SHAREHOLDERS.

18          THE COURT:  I DON'T CARE ABOUT THEIR PERSONAL

19  OWNERSHIP OF SHARES.  I AM ONLY REFERRING TO THE MFS

20  OWNERSHIP OF SHARES.

21          MR. CATANZARITE:  MFS, PURSUANT TO THE LETTER

22  THAT WAS ANNOUNCED TO THE SHAREHOLDERS AS STATING THAT

23  MOBILE FARMING OWNED CTI AS A SUBSIDIARY, PROMISED THAT

24  THE SHAREHOLDERS WOULD RECEIVE ON A SPINOUT OR STOCK

25  DIVIDEND WHAT AMOUNTS TO MATHEMATICALLY 13,000,000

26  SHARES; 47 PERCENT OF THE COMPANY.  IT WAS NOT DISCOVERED

3:22-CV-01616-BAS-DDL        EXHIBIT #0: 084
Exhibit #268: 042        22-CV-01616-BAS-DDL

127

1   UNTIL MUCH LATER, 2018, THAT THE SHAREHOLDERS OF MOBILE

2   FARMING IN RECEIPT OF THAT STOCK DIVIDEND DID NOT END UP

3   WITH THE EQUIVALENT OF 13,000,000 SHARES.  THEY ENDED UP

4   WITH ONLY 11 PERCENT OR 4.5 MILLION SHARES.  THAT'S THE

5   DISPUTE.  THAT WAS DISCOVERED MUCH LATER.  BECAUSE THE

6   SHAREHOLDERS DIDN'T HAVE A SHARE COUNT.

7           THE MOBILE FARMING SHAREHOLDERS DIDN'T HAVE

8   KNOWLEDGE, THE NON-INSIDERS DID NOT HAVE KNOWLEDGE OF THE

9   SHARE COUNT.  SO LACHES WOULDN'T APPLY IF THERE IS NO

10  KNOWLEDGE ATTRIBUTABLE TO THESE MATERIAL FACTS.

11          THE COURT:  OKAY.  WE ARE GOING TO TAKE OUR

12  AFTERNOON RECESS UNTIL 3:15.

13          (RECESS.)

14          THE COURT:  WE ARE BACK.  NOW THAT I HAVE HAD

15  TIME TO DECOMPRESS WITH THE AFTERNOON RECESS,

16  MR. CATANZARITE, EVERY FIBER OF MY BEING SAYS THAT THE

17  FACTS ARE OVERWHELMING AGAINST YOUR POSITION IN THIS

18  CASE.  SO UNLESS YOU CAN CONVINCE ME OTHERWISE, I AM

19  PREPARED TO RULE THAT THIS ELECTION WAS VALID.

20          MR. CATANZARITE:  WELL, THE ONLY THING I CAN SAY

21  IS THAT THE SOLE DOCUMENT UPON WHICH THEY RELY IS EXHIBIT

22  53, WHICH IS WHAT YOU SAY, AND I UNDERSTAND THE POSITION

23  IS AN ADMISSION AGAINST INTEREST AGAINST MOBILE FARMING

24  BECAUSE IT IS SIGNED BY THREE PERSONS WHO WERE ALSO

25  DIRECTORS AND IN CONTROL OF MOBILE FARMING.

26          BUT AT THE SAME TIME THE EVIDENCE AT TRIAL WOULD

128

1    BE THAT ALL OF THE CONSIDERATION PASSED, AND THE TRAILER

2    PASSED, ALL THE CONSIDERATION -- CONSIDERATION OF MONEY

3    PASSED, IN ALL MEANS PASSED, AND THAT THE SHARES WERE

4    ISSUED AND SOLD.

5         THE FACT THAT THERE IS NO CERTIFICATE DOES NOT

6    SOLVE -- DOES NOT CURE OR ERASE THAT FACT.

7         WHEN THEY SIGN ON JUNE 15TH OF 2015 THAT THE

8    CONSIDERATION DID NOT PASS, THAT IS BASED UPON THE ADVICE

9    OF COUNSEL, AND IT IS FLAT OUT WRONG, AND IT IS AGAINST

10   THE INTEREST OF MOBILE FARMING TO HAVE SIGNED IF, IN

11   FACT, MOBILE FARMING DID NOT RECEIVE THE SHARES IT WAS

12   ENTITLED TO.

13        SO I THINK THAT WHEN YOU SAY THAT IT IS AN

14   ADMISSION, IT IS NOT -- AN ADMISSION AGAINST INTEREST

15   SIGNED BY THE LAWYER WHO TELLS THEM TO SIGN IT BECAUSE

16   THIS IS THE WAY IT MUST BE DONE, THAT TYPE OF

17   EXPLANATION, IF OFFERED, AND BELIEVED BY THE COURT, AND

18   COUPLED WITH THE EVIDENCE THAT THE CONSIDERATION HAD, IN

19   FACT, PASSED SHOULD ALONE BE SUFFICIENT, YOUR HONOR, TO

20   AWARD THE 28,000,000 SHARES TO MOBILE FARMING.

21        THE COURT:  THANK YOU.

22        SO, YOU KNOW, I NOTICED IN THE OPENING STATEMENT

23   YESTERDAY MR. EDGERTON SAID THAT PLAINTIFFS WERE RELYING

24   ON A CASE FROM 1880 SOMETHING.  BUT WHEN I WAS LOOKING AT

25   THE CASE AT THE STATUTORY ANNOTATIONS UNDER 709, THERE'S

26   A CASE FROM 2009 CALLED HAAH, H-A-A-H, VERSUS KIM, 175

129

1    CAL.APP.4TH, 45, THAT HOLDS THAT STANDING REGARDING A 709

2    CLAIM INCLUDES SOMEONE WHO HAD ENTERED INTO AN AGREEMENT

3    TO TAKE SHARES IN A CORPORATION, BUT WHO HAD NOT BEEN

4    ISSUED THOSE SHARES.

5              SO I THINK THAT IS WHAT THE PLAINTIFF IS

6    CLAIMING HERE.  BUT WE HAVE REPUDIATION OF THE AGREEMENT

7    BY PEOPLE WHO WERE THE SAME PRINCIPALS IN THE PLAINTIFF.

8    WE HAVE ACTIONS -- REPEATED ACTIONS TAKEN SUBSEQUENTLY

9    CONSISTENT WITH THE NOTION THAT PLAINTIFF WAS NOT A

10   STOCKHOLDER.  THE DELAY IN BRINGING THIS ACTION IS

11   CONSISTENT WITH THAT CONCLUSION, THAT PLAINTIFF HAS BEEN

12   OF THE VIEW THAT THEY ARE NOT A SHAREHOLDER.

13             SO THE COURT CONCLUDES THAT THE CHALLENGE

14   DIRECTOR ELECTION IS DENIED, AND THE COURT CONCLUDES THAT

15   PLAINTIFF IS NOT A STOCKHOLDER IN CTI.

16             AND DURING THE BREAK I LOOKED AT THE PRELIMINARY

17   INJUNCTION, AND IT IS ALL SEEKING TO ENJOIN THINGS UNTIL

18   THE 709 HEARING HAS BEEN HELD, WHICH IT NOW HAS BEEN.  SO

19   THE PRELIMINARY INJUNCTION IS DENIED, AND THE TRO IS

20   DISSOLVED.

21             SO I AM NOT SURE WHAT THAT DOES FOR THE CASE AS

22   A WHOLE, BUT, YOU KNOW, YOU CAN CONTINUE TO LITIGATE

23   WHATEVER IS REMAINING IN THE CASE.

24             THERE ARE ONE OR MORE RELATED CASES, WHICH I

25   GUESS AT LEAST ARE SET FOR STATUS CONFERENCES OR CMC'S

26   ALONG THE WAY, BUT THAT IS THE RULING FOR TODAY.

130

```
 1          LET'S HAVE AN ORDER PREPARED BY MR. EDGERTON FOR
 2   THE COURT.
 3          MR. EDGERTON:  WE SHALL PREPARE IT.
 4          THE COURT:  AND, YOU KNOW, THE COURT WILL WAIT
 5   FOR OBJECTIONS WITHIN THE STATUTORY TIME FROM
 6   MR. CATANZARITE OR ANYBODY ELSE TECHNICALLY WHO CAN
 7   OBJECT.
 8          AND LET'S RETURN THE EXHIBITS, JOSE, WITH THEIR
 9   SOCIAL SECURITY NUMBERS ON HERE, 58 THROUGH 62, AND BOTH
10   OF THESE NOTEBOOKS FROM THE PLAINTIFF.
11          IS THIS A COURTESY -- I MEAN, THIS GOES BACK TO
12   YOU.  I AM NOT SURE IF THIS IS LIKE A COURTESY COPY.
13          MR. EDGERTON:  IS IT MINE?  I THINK THAT WAS A
14   WITNESS COPY.
15          MR. CATANZARITE:  THERE WAS A BENCH BOOK AND A
16   WITNESS BOOK.
17          THE COURT:  OH, THERE IS SOMETHING, THAT THING
18   ON THE WITNESS STAND.
19          COURTROOM ATTENDANT:  YES, THAT IS THE WITNESS
20   BOOK.
21          THE COURT:  SO THEY CAN HAVE THIS BACK, TOO.
22   OKAY, THANK YOU.
23          MR. CATANZARITE:  THANK YOU.
24          MR. EDGERTON:  THANK YOU, YOUR HONOR.
25          MR. TJOE:  THANK YOU, YOUR HONOR.
26          (ADJOURNMENT TAKEN.)
```

1    STATE OF CALIFORNIA )

2                       )  SS.

3    COUNTY OF ORANGE    )

4

5                       REPORTER'S CERTIFICATE

6

7

8           I, CHERI A. VIOLETTE, CSR NO. 3584, COURT REPORTER

9    PRO TEMPORE, IN AND FOR THE SUPERIOR COURT OF THE STATE OF

10   CALIFORNIA, COUNTY OF ORANGE, DO HEREBY CERTIFY THAT THE

11   FOREGOING TRANSCRIPT CONSISTING OF PAGES 89 THROUGH 130 IS A

12   TRUE AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES IN THE

13   ABOVE-ENTITLED CASE.

14

15           DATED THIS 2ND DAY OF MAY,2019.

16

17

18

19

20

21

22

23

24

25   CHERI A. VIOLETTE, CSR NO. 3584

26   OFFICIAL COURT REPORTER PRO TEMPORE

**A**

ABOVE-ENTITLED 131:13
ABSENT 102:2 108:25
ABSORBING 106:16
ACCEPTING 120:15
ACCOUNTING 93:2
ACCRUED 100:6
ACCURATE 112:4,6 112:9,11
ACKNOWLEDGE 106:5
ACKNOWLEDGED 112:26
ACQUIRED 115:20
ACT 106:4 124:20 125:2,9
ACTION 90:5 100:21 129:10
ACTIONS 105:8 129:8,8
ACTS 92:4,13 93:24 98:25 110:15 117:10 124:15 125:17
ADD 106:18
ADDITIONAL 96:15 116:14 121:17
ADDRESS 101:21 122:15 125:20
ADDRESSED 115:3
ADJOURNMENT 130:26
ADMISSION 112:26 122:5 127:23 128:14 128:14
ADMISSIONS 112:19
ADMITTED 114:20
ADOPT 122:3
ADOPTING 124:15
ADVANCED 98:3
ADVERSE 112:6
ADVICE 128:8
AFFILIATED 120:14
AFTERNOON 89:2,5 89:6 92:2 127:12,15

AGENT 107:18 108:21
AGREE 93:7 105:14 110:19
AGREED 113:22
AGREEMENT 94:16 100:19 102:26 103:5 103:25 118:2 129:2 129:6
AGREEMENTS 3:22 106:22 113:12 116:26 117:1 119:12 119:23
AGREES 105:12
AL 1:6
ALLOW 125:10
AMENDED 110:15 117:3,10
AMOUNT 123:1
AMOUNTS 126:25
AMY 105:10
ANA 89:1
ANALYZED 118:1
ANNOTATIONS 128:25
ANNOUNCED 126:22
ANSWER 97:22 102:12 108:19,21
ANSWERED 96:14 108:16
ANSWERING 108:20
ANTICIPATED 100:19
ANTICIPATION 99:1
ANTWILER 1:24 89:14,14 94:19,22 102:12 103:16,23 104:12,14,16 107:22 108:4,9,14 109:9 110:13,17 111:4 113:4,11 115:14,24 116:6,23 117:12,15 118:17,20,23,26 119:4,6,12,18,22

120:4,10,18,24
ANYBODY 130:6
APOLOGIES 114:23
APOLOGIZED 117:25
APPEAR 123:11,12
APPEARANCES 1:16 89:8
APPLY 124:6 127:9
APPOINTMENT 90:4
APPROPRIATE 117:22
APRIL 92:18 99:21 122:23
ARGUED 112:22
ARGUING 117:4
ARGUMENT 113:16 123:24 124:5 125:21 125:24
ARGUMENTS 124:5
AROSE 112:13
ASKED 93:5 108:20 121:16 126:1
ASSERTION 107:8
ASSESS 91:6
ASSET 115:9
ASSETS 97:23 98:19 99:15 115:5
ASSOCIATION 98:21
ASSUME 123:24
ATTACHED 91:10 92:7,8 102:20 114:11,13
ATTACHES 109:10
ATTENDANT 118:21 130:19
ATTORNEYS 126:11
ATTRIBUTABLE 127:10
AUTHENTICATED 123:13
AUTHORITY 110:7
AUTHORIZE 95:23
AUTHORIZED 109:21 115:17

123:13 125:2
AUTHORIZING 120:19 123:9
AVAILABLE 116:9
AWARD 128:20
AWESOME 93:4

**B**

B 3:1 91:17 103:9
BACK 89:7 119:16 121:12 125:6 127:14 130:11,21
BACKGROUND 105:22
BACKUP 102:5 116:21
BACKWARD 113:9
BASED 124:8 128:8
BASICALLY 91:12 121:22
BATCH 107:13
BECK 1:22 89:12
BEGAN 121:13
BEGINNING 104:8 115:1,21
BEHALF 105:10 122:7 123:3 124:20 125:3
BELIEVE 99:20 109:15 115:19 120:5
BELIEVED 110:5 128:17
BENCH 92:21 130:15
BENEFIT 123:4
BENTLEY 1:20
BERNHEIMER 1:22 89:12
BEST 95:26
BETTER 122:4
BIGGER 111:8
BILL 97:19
BINDER 111:4 114:8
BLACK 117:26
BLOWN-UP 111:5 111:14
BLOWUP 111:10
BOARD 95:26 105:20

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 090
Exhibit #268: 048          22-CV-01616-BAS-DDL

**BOOK** 92:21,26 93:3
95:2,3,4,9 101:9,12
111:13 130:15,16,20
**BOTTOM** 95:7
109:17 115:2 119:1
119:26
**BOUND** 108:9
**BREAK** 116:9 129:16
**BRIEF** 91:20 105:6
106:20 113:16
**BRIEFS** 91:13
**BRING** 92:9
**BRINGING** 126:1
129:10
**B.K** 115:5

**C**

**C** 103:9
**CALIFORNIA** 1:1,9
89:1 131:1,10
**CALL** 101:17
**CALLED** 104:8
128:26
**CALLING** 100:14,15
114:24
**CAL.APP.4TH** 129:1
**CAPACITY** 123:13
124:3 125:13
**CAPITALIZE** 99:14
**CARE** 102:21 126:18
**CARRYING** 120:23
**CASE** 89:26 119:22
127:18 128:24,25,26
129:21,23 131:13
**CASES** 129:24
**CASH** 94:17
**CATANZARITE**
1:18,18 89:18,18
92:20 93:12 95:1,5,8
95:12 96:16,19,21
96:23 97:1,7,12,16
97:18,21,24 98:2,5,7
98:9,20,26 99:3,5,7
99:9,14,20,24
100:11,14 101:18
104:13,15 106:3
111:3,5,7,11,14,17

**CENTER** 1:2
**CEO** 101:24 118:3
**CERTAIN** 89:10
90:13 93:16 99:15
105:3
**CERTIFICATE** 96:8
104:21 110:7 128:5
131:5
**CERTIFICATES**
110:14 126:9
**CERTIFY** 131:10
**CHALLENGE** 90:16
129:13
**CHALLENGING**
125:15
**CHANGED** 90:22
**CHARGE** 105:13,16
**CHECKLIST** 104:17
**CHERI** 1:25 131:8,25
**CIVIL** 1:2
**CLAIM** 96:4 118:7
124:26 125:22 129:2
**CLAIMING** 117:24
118:6 129:6
**CLAIMS** 90:6
**CLARIFY** 120:21
**CLAUSE** 94:5
**CLAUSES** 95:17
**CLERK** 103:2 111:1
**CLIENT** 115:2
**CLIENTS** 100:26
**CLOSE** 115:4
**CMC'S** 129:25
**CODE** 89:22,24 90:3
**COLUMN** 97:8 100:4
**COME** 116:20
**COMES** 105:20
**COMING** 117:10
**COMPANIES** 106:8

**COMPANY** 90:14
115:5 121:5 124:21
125:3,17 126:26
**COMPLAIN** 113:17
**COMPLETE** 103:7
103:17 108:10
**COMPLETED** 93:13
**COMPLEX** 1:2
**COMPLIANCE** 99:2
**CONCLUDE** 122:11
**CONCLUDES**
129:13,14
**CONCLUSION**
129:11
**CONCURRENCE**
99:20
**CONDITION** 123:18
**CONDUCT** 125:7
**CONFER** 93:6
100:26
**CONFERENCES**
129:25
**CONFIRM** 107:3
117:13 123:2
**CONFIRMS** 96:12
100:8 123:1
**CONFUSION** 110:5
**CONJUNCTION**
117:3
**CONSENT** 95:21
118:2
**CONSENTS** 101:25
**CONSIDER** 89:26
**CONSIDERATION**
94:13,16 95:25
96:13,17 98:15
100:11 122:20
123:25 125:8 128:1
128:2,2,8,18
**CONSIDERED** 93:18
**CONSISTENT** 105:1
129:9,11
**CONSISTING**
131:11
**CONSPICUOUSLY**
108:25
**CONSTITUTES**

122:5
**CONSULT** 100:25
**CONTAINER** 94:17
99:13,17 122:21
**CONTENDED** 91:16
**CONTENDING**
91:21
**CONTENTION** 96:7
115:20
**CONTESTED** 122:14
**CONTINUE** 129:22
**CONTRIBUTED**
99:15
**CONTROL** 91:1
127:25
**CONTROLLED**
91:22
**CONTROLLING**
106:8
**CONVENIENT**
92:21 95:4
**CONVEYED** 123:26
**CONVINCE** 127:18
**COOPER** 3:15
105:10 109:14 110:4
110:8,10 114:1,1
115:4 121:25 123:17
**COPIED** 92:24
**COPIES** 104:20
**COPY** 110:15 130:12
130:14
**CORPORATE**
122:12
**CORPORATION** 1:9
1:18 90:5 105:9
129:3
**CORPORATIONS**
89:21
**CORRECT** 93:25,26
94:8,11 97:7,23
104:16,24,26 106:1
106:24 108:15 109:3
109:4 110:17 112:1
115:10,23 120:4,24
131:12
**CORROBORATING**
102:6

Veritext Legal Solutions
866-299-5127

3:22-CV-01616-BAS-DDL
Exhibit #268: 049

EXHIBIT #0: 091
22-CV-01616-BAS-DDL

COUNSEL 1:16 89:6
100:26 128:9
COUNT 127:6,9
COUNTERPART
125:24
COUNTY 1:2 131:3
131:10
COUPLE 124:9
COUPLED 128:18
COURSE 93:11
COURT 1:1,26 89:4,5
89:7,9,20 90:8,24
91:3,5 92:5,17,23
93:4,9,15,18,21 94:1
94:6,9,12,18,21,23
95:11,14,18,21
96:14,18,20,22,25
97:5,10,14,17,19,22
98:1,4,6,8,17,24
99:1,4,6,8,12,18,23
100:9,13,17,24
101:6,8,11,13,16,21
102:5,8,10,11,11,13
102:14,15,17,19,26
103:3,11,14,19,22
104:2,10,17,23,25
105:1,5,23,26 106:6
106:9,12,14,20,25
107:1,10,12,15,17
107:26 108:2,6,12
108:16,22 109:1,5
109:19,22,25 110:3
110:12,16,18 111:1
111:6,21 112:2,8,14
112:18 113:2,7,9,15
114:3,18,24 115:8
115:13,19 116:2,10
117:10,16,21,25
118:9,11,15,18,20
118:24 119:3,5,9,16
119:20 120:1,6,16
120:22 121:1,10,14
121:18,22 122:17
123:20,24 125:14,20
125:26 126:8,15,18
127:11,14 128:17,21
129:13,14 130:2,4,4

130:17,21 131:8,9
131:26
COURTESY 130:11
130:12
COURTROOM
130:19
COURTS 90:26
CROSS 2:4,8
CSR 1:25 131:8,25
CTI 89:11 90:20
91:21,22 93:24
95:22 97:13,25
99:11,16,26 105:11
106:22 107:18,19
110:1,20 111:21
115:6,9,16 116:13
116:16 117:25 118:2
118:3,5,7 120:3,15
121:23,24 122:8,12
123:4,6 124:3,16
126:23 129:15
CULTIVATION 1:9
100:3,3 122:21
CULTIVATORS
98:21
CUMULATIVE
102:4 107:9 116:3
CURE 128:6
CURRENT 115:24
CURRENTLY 117:8
119:13
CU-BT-CJC 1:6
CX105 1:3

D
D 92:15 103:9 107:2
DATE 92:17 95:11
99:18 109:24 110:2
114:9 118:25,26
122:12
DATED 92:4 94:9
104:17 114:25
131:15
DATES 111:24 120:1
DAVID 92:15
DAY 119:17 124:22
131:15

DAYS 89:23 98:24
DECIDE 91:7,18
DECIDED 90:13
DECLARATION
92:9,16,23 96:3
102:20,21 103:2
105:20 110:20,23
114:14 117:23 118:1
DECLARATIONS
91:11
DECLARES 102:22
109:15
DECOMPRESS
127:15
DEEMED 93:17
DEEMS 95:26
DEFAULT 124:21
DEFENDANT 1:8,19
112:22 121:2 123:26
DEFENDANTS 1:7
1:22 89:11,15 90:12
121:7
DEFENDANT'S
91:19 97:6
DEFENSE 2:8 100:26
105:6 125:21
DELAY 126:1 129:10
DENIED 90:7,8
122:13 129:14,19
DEPARTMENT 1:3
DETERMINE 90:4
DETERMINING
120:7
DIRECT 2:4,8
DIRECTLY 106:22
DIRECTOR 90:5,9
122:13 129:14
DIRECTORS 89:11
90:10 95:22 121:25
121:26 124:11,12,13
124:25 125:2,14,17
125:19 127:25
DISAGREES 115:11
DISCOVERED 126:7
126:26 127:5
DISCUSSED 108:10
DISCUSSING 92:26

DISPUTE 112:13
127:5
DISPUTED 109:6
DISSOLVED 129:20
DISTRIBUTED
122:24
DIVIDEND 122:25
126:25 127:2
DOCTRINES 124:6
DOCUMENT 3:8,10
91:21,26 92:22,26
96:6,15 102:23
104:4,5 105:2,19
106:19,25 107:20
108:23 113:5 116:22
117:20 119:21 123:5
123:6,14 127:21
DOCUMENTARY
104:2 113:25 117:7
DOCUMENTATI...
91:4,5
DOCUMENTS 91:15
92:6 93:2,11,16
95:19 97:17 100:23
101:25 103:7 107:5
117:18 121:3,8,23
122:7 123:19,20,21
DOCUSIGN 119:25
DOING 93:10
DOMESTIC 90:5
DULY 125:3
DUTIES 122:7

E
E 3:1 92:12 103:5,7,9
103:16
EARLIER 93:5
EASIER 91:10 95:5
EASY 93:22 105:17
EDGERTON 1:23
89:10,10 91:24 92:2
92:8,12,14,25 93:8
93:10,19,26 94:4,8
94:11,15 95:3,6,9,13
95:15,20 96:8
100:23,25 101:2,7
101:10,12,15,20

3:22-CV-01616-BAS-DDL
Exhibit #268: 050

EXHIBIT #0: 092
22-CV-01616-BAS-DDL

102:17,25 103:1,15
103:21,26 105:17,25
106:1,7,10,13,18,24
106:26 107:9,11,14
107:16,24 108:1,18
108:23 109:4,8
111:9,12,16,18
112:1,5,10,16,25
116:19 117:20,22
118:10,12,19 128:23
130:1,3,13,24
**EFFECTIVELY**
109:15 110:10
**EFFICIENT** 91:3
**EIGHT** 104:23
**EINHORN** 1:22
89:13
**ELECTED** 90:10
124:25 125:3
**ELECTION** 90:4,9
90:22,23 122:12,14
125:14 127:19
129:14
**EMBRACED** 112:23
**ENDED** 126:11 127:3
**ENJOIN** 129:17
**ENSUING** 101:3
**ENTERED** 129:2
**ENTITLED** 124:17
128:12
**ENTRY** 97:8
**EQUITABLE** 125:22
125:24
**EQUIVALENT** 127:3
**ERASE** 128:6
**ERIC** 124:23
**ESQ** 1:18,20,23,24
**ESTOPPEL** 124:5
**ET** 1:6
**EVIDENCE** 90:24
91:2 93:17 96:16
100:15 101:22 102:4
102:6 105:15 113:25
117:7 122:19 123:8
127:26 128:18
**EXACTLY** 91:17
92:12 112:8 114:22

**EXCHANGE** 3:14
113:25
**EXCUSE** 114:1
**EXECUTED** 112:25
115:16,17 119:13
**EXHIBIT** 91:9 92:11
92:15,22 93:24
94:13,20 96:9,9,11
96:12,24 97:1,2,26
98:5,6,7,9,16,20,21
99:7,9,10,24,25
100:2,2 101:8,16
102:8,18,20,25
103:12 107:6,25
108:13 109:2,9,10
109:12 110:13,21,22
111:2 112:7 114:8
114:13,20 117:11
118:17 119:23 120:5
120:22,22,26 122:26
123:1 124:14,15,24
127:21
**EXHIBITS** 3:3,6 91:9
91:12 92:24 93:22
101:11,22 121:17
123:2 130:8
**EXPEDITED** 89:24
**EXPENSES** 97:25
98:13
**EXPLAINING**
122:10
**EXPLANATION**
128:17
**EXTENT** 90:1,12,15
111:19
**EXTRA** 101:19
**EXTRINSIC** 101:22
**EXTRINSICALLY**
116:19
**E-MAIL** 3:14 113:25
114:7 115:11
**E-MAILS** 114:24

**F**

F 107:20
**FACE** 113:9
**FACT** 102:6,18 110:1

113:22 115:21
120:16 122:9 125:2
128:5,6,11,19
**FACTS** 124:7 127:10
127:17
**FAILED** 95:24
**FALSE** 96:3 118:8
**FAMILY** 110:26
**FAR** 100:23 113:23
**FARMING** 1:5 89:7
90:8,20 99:11,15,22
100:1 113:26 120:13
122:1,2 123:4,7,9,11
123:19 124:11,13,15
124:17,26,26 125:4
125:7 126:4,23
127:2,7,23,25
128:10,11,20
**FEBRUARY** 98:10
**FEEL** 90:12,15
112:14
**FEES** 98:10
**FIBER** 127:16
**FIDUCIARY** 122:6
**FILED** 90:6 92:18
**FILING** 119:21
**FILINGS** 107:2
**FINANCIAL** 96:23
97:6 100:7 123:2,12
123:18
**FINANCING** 116:15
**FIND** 109:11 113:2
117:8
**FINE** 93:10 104:4
107:12 111:18
112:23 114:6 119:18
**FINISH** 106:14
**FIRST** 91:20 95:19
97:1 98:13 104:9
110:14 111:22 116:9
119:2,6
**FIVE** 89:23 90:10
115:15,25,26 116:4
120:12,20
**FLAT** 128:9
**FMS** 95:24
**FOLLOW** 115:10

**FOLLOWING** 89:3
103:6
**FOOT** 99:12,13,17
**FOREGOING**
131:11
**FORMALLY** 106:4
**FORMATION** 99:10
**FORTH** 111:24
**FORWARD** 123:14
**FOUND** 94:21 118:13
**FOUNDERS** 96:1
103:24 126:8,10
**FOUR** 98:13
**FRIENDS** 110:25
**FRONT** 116:8

**G**

**GATHER** 116:7
**GENERAL** 89:26
**GENTLEMEN**
116:21
**GETTING** 119:16
120:3,17,18
**GIVE** 102:5 103:1
108:10 111:1
**GIVEN** 100:13 107:6
**GIVES** 124:4
**GO** 91:13 93:22
113:13,23 121:12
125:6
**GOAL** 106:14
**GOES** 101:24 105:18
130:11
**GOING** 89:23,25
90:24 91:11,13
105:11 106:15,20
116:20 127:11
**GOOD** 89:5,6 92:2
108:19 110:23
**GREG** 107:2
**GROUP** 3:21 119:23
**GROW** 115:6
**GUESS** 94:3 121:7
129:25
**GUIDE** 91:12
**GUYS** 115:4

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 093
Exhibit #268: 051          22-CV-01616-BAS-DDL

5

**H**

**H** 3:1
**HAAH** 128:26
**HALF** 109:17
**HAND** 91:7 118:20
**HANDS** 125:24 126:1
**HAPPEN** 99:4,5
106:15
**HAPPENED** 101:26
**HAPPENING** 105:6
**HEALTH** 90:13
**HEAR** 90:24 98:12
102:16 106:12 113:7
113:10
**HEARD** 113:16
**HEARING** 89:22,22
89:23 102:14 113:18
115:23 129:18
**HELD** 129:18
**HELP** 91:11
**HELPFUL** 111:20
120:6
**HIGHLIGHTS**
110:24
**HOLD** 100:25
**HOLDS** 129:1
**HONOR** 89:6,9 92:16
92:20 93:26 94:8,11
94:19,22 95:13
96:24 97:3,25 98:20
98:26 99:7,16,21,24
100:2,4 101:20
102:10 103:4,13,16
104:5,12,26 105:4
106:10,24 107:22,24
108:5,15 109:3,4,9
109:11,12,14 110:6
110:13,17,22 111:26
113:4,11,24 114:6
114:22 115:1,14
116:7,23 117:9,15
118:16 119:4,8
120:4,11,24 128:19
130:24,25
**HONORABLE** 1:12
**H-A-A-H** 128:26

**I**

**IDEA** 95:18
**IDENTIFICATION**
3:3,6
**IDENTIFIED** 114:22
**IDENTIFYING**
115:9
**II** 1:13
**III** 1:23
**IMPUTED** 105:9
**INCLUDE** 89:25
110:14 112:22
113:14
**INCLUDED** 116:24
**INCLUDES** 129:2
**INCLUDING** 99:16
103:8
**INCORPORATOR**
124:21,23 125:9
**INCURRED** 98:13
**INDEX** 2:1 95:11
101:11,13
**INDICATED** 3:4
109:24
**INDICATING** 100:6
**INDICATIVE** 109:26
**INDIRECT** 101:3
**INDIVIDUALS** 105:7
110:25 124:2
**INFERENCE** 103:20
104:1,7 105:14
108:5 110:5 123:23
**INFORMATION**
105:22 106:17
**INITIAL** 104:18,21
126:5,14
**INITIALLY** 3:11
104:6
**INITIATED** 126:7
**INJUNCTION**
107:19 129:17,19
**INS** 125:24
**INTENTION** 117:19
**INTEREST** 95:26
100:6 122:5 127:23
128:10,14
**INTERESTED** 97:15

97:17 120:7
**INTERESTING**
112:24 114:26
**INTERNET** 119:20
**INTERRUPTED**
121:7
**INTRINSICALLY**
116:20
**INVESTORS** 116:14
119:15
**INVOICE** 98:11
**IRRELEVANT** 90:18
**IRVING** 1:22 89:13
**ISSUANCE** 95:23
107:13 116:3 126:5
**ISSUANCES** 123:22
**ISSUE** 90:7,25 91:7
91:18,23 94:12
105:11 111:24
113:18
**ISSUED** 3:11 95:25
96:4,7,8,10,12 103:7
103:17,24,24 104:6
104:8,21 108:10
109:18,21,24 110:1
110:14 117:4,6
124:18 128:4 129:4
**ISSUER** 103:6,8
**ISSUING** 105:2
126:11
**IVAN** 1:20 89:16

**J**

**J** 1:12,18 110:21,22
**JANUARY** 118:6,6
**JOHNNY** 1:24 89:14
**JOSE** 130:8
**JOSEPH** 1:6,19
**JUDGE** 1:12
**JUDGES** 91:1
**JUNE** 94:25 100:21
128:7
**JUSTIN** 1:22 89:12

**K**

**KAMM** 1:22 89:11
**KEEP** 116:10

**KEN** 89:18
**KENNETH** 1:18
**KIM** 128:26
**KIND** 91:14 93:15
123:14
**KNOW** 95:16 102:22
105:5 109:7 113:4
121:10 126:9,11
128:22 129:22 130:4
**KNOWLEDGE**
126:4,6 127:8,8,10
**KNOWN** 99:11 102:7
**KOHN** 1:20

**L**

**L** 1:20 114:13
**LABEL** 114:15
116:17
**LACHES** 125:20,23
126:1 127:9
**LACK** 122:4 126:6
**LATE** 118:6 120:1
**LAW** 1:18
**LAWSUITS** 126:7
**LAWYER** 128:15
**LEAP** 110:9
**LEASE** 98:21,22
**LEAVES** 101:17
**LEGAL** 98:9 124:5
**LESSER** 113:20
**LETTER** 99:18
122:23 126:13,17,21
**LETTERHEAD**
113:26
**LET'S** 93:22 95:3
123:24 130:1,8
**LIABILITIES** 100:5
**LIFE** 91:10
**LIKES** 119:8
**LIMITED** 103:9
**LIST** 101:4,4 103:7
103:11,17 104:4
108:10,12,13,25
109:1 111:22 112:21
112:23 115:15,26
116:3,3 121:7,8
**LISTED** 96:1 107:4

108:11 115:16,21,24
119:1 120:13
**LISTING** 116:2
**LISTS** 104:18,23
109:2 120:11
**LITIGATE** 129:22
**LOAN** 100:5,6,9,13
100:15 123:6,9,11
**LONG** 125:21
**LONGER** 122:8
**LONG-TERM** 100:4
**LOOK** 95:19 97:3,7
101:13 102:9 119:24
124:14
**LOOKED** 110:16
129:16
**LOOKING** 91:15
96:25 102:19,24
104:2 107:1 113:24
116:10 118:14
128:24
**LOOKS** 91:20
**LOT** 116:20

**M**

**MAJESKI** 1:20 89:16
**MAJOR** 107:3
**MAKING** 119:14
**MANDATED** 89:24
**MANDATES** 89:22
**MARCH** 92:4
**MARK** 111:1 112:7
114:20 118:17
119:22
**MARKED** 107:23
114:19
**MATERIAL** 127:10
**MATHEMATICA...**
126:25
**MATTERS** 90:19
115:23
**MAY,2019** 131:15
**MEAN** 91:13,26
96:11,18 98:6
105:12 107:12 109:6
120:16 121:18
130:11

**MEANING** 123:13
126:16
**MEANS** 128:3
**MEANT** 93:15,16
**MEET** 93:6,6
**MEETING** 102:14
123:9 124:19 125:7
125:10
**MEMBERS** 105:20
**MEMORANDUM**
3:19 118:24,26
**MEMORANDUMS**
107:3 116:24
**MENTION** 106:10
**MENTIONED** 92:3
93:5 94:14,23
106:11 117:23
**MEYER** 1:23 89:15
**MFS** 91:21 94:7 96:5
99:26 100:5,6,19
101:4,23 102:2
105:11,12,13,14,16
105:19,22 106:5,22
107:3,18 108:3,11
108:25 110:1 113:14
115:9,16,26,26
116:15 117:6,24
118:3,6 120:20
121:24 122:8,9,11
126:9,19,21
**MIGUEL** 1:22 89:12
**MILLION** 127:4
**MINE** 130:13
**MISSTATEMENT**
109:13
**MOBILE** 1:5 89:7
90:8,19 99:11,15,22
99:26 113:26 120:12
121:26 122:2 123:4
123:7,9,11,19
124:11,13,15,17,25
124:26 125:4,7
126:4,23 127:1,7,23
127:25 128:10,11,20
**MODES** 123:25
**MOMENT** 92:11
109:11 113:5

**MONEY** 98:18 100:6
123:1,7,10 128:2
**MONTHS** 98:14
**MOTTA** 1:22 89:12
**MOVING** 106:9

**N**

**NECESSARILY**
105:12
**NECESSARY** 91:6
**NEED** 90:13 91:11
93:1 95:16 98:17
115:4 119:9
**NEEDS** 102:15
**NEGATIVE** 103:20
103:26 108:4 123:23
**NEVER** 106:5 107:4
124:11,12,17,17,18
126:9
**NEW** 113:13 116:3
125:7
**NIGHT** 95:10
**NOMINAL** 1:8
**NONREDUNDANT**
107:15
**NON-INSIDERS**
127:8
**NON-OBJECTIO...**
93:3
**NOTE** 91:14 115:6
123:7,8
**NOTEBOOK** 96:20
101:16 104:11
**NOTEBOOKS** 91:9
130:10
**NOTES** 131:12
**NOTICED** 128:22
**NOTION** 121:4 129:9
**NOVEMBER** 114:10
**NULLITY** 124:19
**NUMBER** 92:12 94:1
101:8 102:25 106:14
111:6
**NUMBERED** 91:9
93:21
**NUMBERS** 90:17
119:15 130:9

**O**

**OBJECT** 130:7
**OBJECTION** 92:25
**OBJECTIONS** 130:5
**OBJECTS** 115:12
**OCTOBER** 116:13
119:1
**OFFER** 122:19
**OFFERED** 128:17
**OFFERING** 90:16
115:22
**OFFERS** 97:15
**OFFICERS** 110:7
**OFFICIAL** 1:26
131:26
**OH** 93:4 103:14 110:3
111:9 116:2 118:13
121:18 130:17
**OKAY** 90:2 91:20
92:5 93:21 94:4,6,9
95:14,20 96:2,2,25
97:18 99:6 100:17
100:18,24 101:7
102:11,17 103:22
104:2 105:26 106:9
106:13 107:10,20
108:1 110:3,12
111:12,18,21 112:2
112:22 113:2,15
114:15,18,19 115:8
115:13 116:10,12
117:10 118:9 119:18
120:6 121:1,1,18,22
122:18,25 127:11
130:22
**ONES** 93:22
**OPEN** 89:3
**OPENING** 90:11
94:14 121:14 128:22
**OPPOSED** 116:3
**OPTA** 107:19
**ORAL** 91:4 98:12
**ORANGE** 1:2 131:3
131:10
**ORDER** 91:2,13
99:14 130:1
**ORGANIZATION...**

Veritext Legal Solutions
866-299-5127

3:22-CV-01616-BAS-DDL
Exhibit #268: 053

EXHIBIT #0: 095
22-CV-01616-BAS-DDL

93:24 110:15
**ORIGINAL** 92:4,13
98:25
**OUTCOME** 90:22
93:9,10
**OUTSTANDING**
103:8,17 108:11
117:5
**OVERWHELMING**
127:17
**OWES** 123:7
**OWNED** 99:26
120:12 122:22,24
126:23
**OWNERSHIP** 119:5
126:19,20
**OWNING** 121:4
**OWNS** 90:20 115:6
117:19
**O'CONNOR** 3:16
98:22 100:1 101:24
102:3 105:10 106:21
107:17 108:3 109:13
110:8 112:26 113:14
113:22 114:2 115:4
115:18 117:24
119:13 120:14
121:26 123:17
126:16
**O'CONNOR'S** 96:3
119:25
**O'HAGAN** 1:23
89:14

───────────
**P**
**PACIFIC** 98:21
**PAGE** 94:1,4,19
95:16 96:11,26 97:1
97:2,2,24 98:6 100:2
100:3,18 103:3,4,11
104:23 107:19,25
108:19,22 109:1,13
109:14,17,20 110:6
110:6,10 115:2
118:19,22,23 119:2
119:3 120:11 124:10
**PAGES** 107:26

119:24 120:25
131:11
**PAID** 96:17 97:25
98:10 100:11 115:7
123:3 124:17
**PARAGRAPH** 99:9
99:25 110:21 119:6
**PARAGRAPHS**
103:9
**PART** 102:8,18 103:5
104:11 114:7,26
**PARTICIPATE**
110:19,25
**PARTICULAR** 90:25
124:10
**PARTIES** 89:26
**PARTS** 95:15
**PASS** 104:10 125:8
128:8
**PASSED** 98:15 100:7
122:20,21 128:1,2,3
128:3,19
**PATENTLY** 96:3
**PENALTY** 102:22
109:16
**PEOPLE** 96:1 105:3
105:13,24 106:4
108:8 113:17 120:2
120:16 122:4 124:24
129:7
**PERCENT** 99:26
113:20 115:15,25
116:1,4 120:12,20
126:5,14,26 127:4
**PERCENTAGE**
113:21
**PERFORMANCE**
100:20
**PERJURY** 102:23
109:16
**PERSON** 90:6 102:15
124:20
**PERSONAL** 126:18
**PERSONS** 127:24
**PHYSICAL** 102:18
**PLACE** 90:10
**PLACEMENT** 3:18

107:2 116:24 118:24
**PLAINTIFF** 1:17
89:19 96:6 99:2
101:9,16 104:25
105:3,8 110:19
111:25 112:3,5,19
112:22,23 113:19,20
116:18 117:17,19
120:8,13,14 121:4
123:26 124:4 129:5
129:7,9,11,15
130:10
**PLAINTIFFS** 1:5
90:15 102:26 119:11
128:23
**PLAINTIFF'S** 2:4
97:5 98:14 115:20
**PLEASE** 89:9
**POD** 115:6
**POINT** 103:18 105:16
106:19 114:26 115:8
115:19 117:17,17
122:25,25 125:18
**POINTED** 120:10
**POSITION** 98:14
112:3,6,9,10,12
115:12 118:7 121:23
121:24 122:3 127:17
127:22
**POSSIBLY** 115:5
**POWER** 90:26 91:1
**PPM** 120:19
**PPM'S** 115:14 117:7
118:16
**PREFERRED** 90:16
**PRELIMINARY**
129:16,19
**PREMARKED** 3:3
**PREMATURE** 97:14
**PREPARE** 130:3
**PREPARED** 93:2
127:19 130:1
**PRESIDING** 1:12
**PREVIOUS** 105:2
124:7
**PREVIOUSLY**
114:11,13

**PRINCIPALS** 124:4
129:7
**PRINTOUT** 110:24
**PRIORITY** 90:3,14
**PRIVATE** 3:18 107:2
116:14,24 118:24
**PRO** 1:26 131:9,26
**PROBABLY** 112:16
119:17
**PROBLEMS** 124:9
**PROBST** 1:6,19 3:15
89:8,17 92:9 98:22
100:1 105:10,21
110:8 114:1 115:3
121:25 126:17
**PROBST'S** 92:16
110:20,23 114:14
**PROCEED** 91:3
**PROCEEDING**
90:18 92:11 125:22
126:2
**PROCEEDINGS**
89:3
**PROCESS** 93:13
**PROCLAIMING**
118:2
**PROFESSIONAL**
98:10
**PROMISED** 126:23
**PROOF** 97:15 105:18
116:19 122:19
**PROPER** 90:7
**PROPERLY** 93:17
**PROPORTION**
95:23
**PROVIDE** 95:24
103:6 105:17 108:12
116:8 117:8
**PROVIDED** 103:10
105:21 108:15 121:8
**PROVIDES** 108:25
**PROVIDING** 108:24
**PUBLIC** 119:21
**PULLED** 103:2
**PURCHASE** 110:20
125:10
**PURPORTEDLY**

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 096
Exhibit #268: 054          22-CV-01616-BAS-DDL

**PURPORTS** 124:10 124:24 125:11
**PURPOSES** 115:23
**PURSUANT** 120:4 126:21
**PUT** 123:14
**PUTTING** 119:20

**Q**
**QUESTION** 91:24 96:14 102:12 108:17
**QUESTIONS** 108:20
**QUICK** 3:12 89:22 103:6 104:6 107:26 108:23
**QUOTE** 99:25

**R**
**RAISED** 116:13
**RANDALL** 1:12
**READ** 96:9 114:4,4 117:2 119:7 124:9
**REALIZE** 97:5
**REALLY** 102:21 113:18 115:22 117:26
**REASON** 89:21 120:10
**RECANT** 125:4
**RECEIPT** 127:2
**RECEIVE** 91:3 126:24 128:11
**RECEIVED** 3:6 93:17 126:5
**RECESS** 127:12,13 127:15
**RECOGNIZED** 101:23
**RECORD** 101:1
**RECORDS** 123:15
**RECROSS** 2:4,8
**REDACTION** 119:14
**REDIRECT** 2:4,8
**REDUCE** 90:17
**REDUNDANT** 98:17 107:7 118:11
**REFERENCE** 97:3

97:25 100:5
**REFERENCED** 90:10
**REFERENCES** 99:10
**REFERRED** 93:20 100:7
**REFERRING** 91:26 93:23 100:22 113:5 121:10 123:22 126:19
**REFLECTED** 116:25
**REGARDING** 96:4 129:1
**REINFORCE** 101:22
**REINFORCEMENT** 102:6
**RELATED** 129:24
**RELEVANT** 89:26 91:6,17 95:15,19 100:9 101:5 114:3 119:7
**RELY** 121:8 125:1 127:21
**RELYING** 123:23 128:23
**REMAINING** 129:23
**REMAINS** 106:16
**REMINDER** 104:18
**REMINDS** 93:4
**REPEAT** 93:14 112:18
**REPEATED** 129:8
**REPLICATION** 111:16
**REPORTER** 1:26 89:9 102:10,11,15 113:7 131:8,26
**REPORTER'S** 1:13 131:5
**REPRESENT** 120:20
**REPRESENTATI...** 116:12,17 122:23 126:12
**REPRESENTATI...** 116:15
**REPRESENTATIVE** 124:3

**REPRESENTATI...** 119:11
**REPRESENTED** 107:17 108:6 118:3
**REPRESENTING** 108:19
**REPUDIATING** 124:1
**REPUDIATION** 129:6
**REQUESTING** 102:17
**REQUESTS** 103:16
**REQUIRED** 95:25
**REQUIREMENTS** 96:18
**RESCINDED** 94:25 100:20
**RESIGNATION** 125:9
**RESIGNED** 124:22
**RESOLUTION** 94:12 124:1,10 125:11
**RESOLUTIONS** 93:24 124:16
**RESPECT** 90:25 97:22
**REST** 115:10
**RETURN** 130:8
**RICHARD** 1:6,19 89:17 92:9 105:10 105:10,21 113:14 119:25
**RIGHT** 90:7,9,21,23 91:12 92:14 94:18 95:16 97:8 99:26 101:15 106:2,9 107:11,14,16 117:16 118:9,12 121:22 122:13,16
**ROBERT** 1:22,22 89:11,12
**ROPERS** 1:20 89:16
**ROUND** 110:26
**ROUNDTABLE** 102:14
**RULE** 127:19

**RULING** 129:26

**S**
**S** 3:1
**SAKE** 123:24
**SALE** 97:20
**SAM** 89:10
**SAMUEL** 1:23
**SANTA** 89:1
**SAW** 105:2 120:11
**SAYING** 97:19 104:18 108:8 109:5 112:14,15,18 116:5 120:2 122:8 126:8 126:10
**SAYS** 91:21 95:22 96:9 99:12 100:18 109:16 117:1 119:10 127:16
**SCOPE** 89:23
**SCRAMBLING** 93:11
**SE** 122:3
**SEAT** 121:2
**SEATED** 89:20
**SECOND** 97:2 99:25
**SECTION** 107:20 110:20
**SECURITIES** 102:26 103:5,8,17,25
**SECURITY** 119:5,15 130:9
**SEE** 91:2,15,15,16 93:6 94:4 99:18 101:5 107:19 112:8 112:20 114:3 116:17 119:25
**SEEDING** 99:13
**SEEDLING** 97:3,9
**SEEING** 109:19
**SEEKING** 129:17
**SEEN** 106:16
**SELL** 95:26 106:22
**SENT** 99:21 115:3
**SEPARATE** 92:10 103:12
**SERIES** 101:21

3:22-CV-01616-BAS-DDL
Exhibit #268: 055

EXHIBIT #0: 097
22-CV-01616-BAS-DDL

**SERIOUS** 122:10
**SERVED** 118:2,5
**SESSION** 89:2
**SET** 111:7,24 123:14
 129:25
**SHARE** 90:16 101:25
 113:13 123:22
 125:25 127:6,9
**SHAREHOLDER**
 90:6,23 100:19
 101:4,4,23,24 102:1
 104:4 106:5 107:4
 107:19 108:3,7,26
 111:22 112:20
 113:20,21 116:1
 117:25 118:1,4,7
 120:8,9,20 122:12
 123:9 124:1,12,16
 125:1,5 129:12
**SHAREHOLDERS**
 99:22 104:19,23
 106:23 107:3,13
 108:8 110:19 112:21
 113:23 115:15,25
 120:12 125:18 126:4
 126:13,17,22,24
 127:1,6,7
**SHARES** 3:10 90:17
 94:7 95:24 96:4,7,10
 96:12 102:1 103:23
 104:6,9,21 105:2
 108:10 109:2,17
 110:1 116:16 117:2
 117:4,5,6 124:18,18
 125:10 126:6,12,14
 126:19,20,26 127:3
 127:4 128:3,11,20
 129:3,4
**SHERMAN** 1:12
**SHIPPING** 94:16
 99:13
**SHORTHAND**
 131:12
**SHOW** 91:24 94:1
 119:18 121:3
**SHOWING** 97:10
 105:19 115:26

**SHOWS** 95:11 98:2,5
 98:9 102:18 105:7
 123:6
**SIGN** 122:7 123:7,19
 124:24 128:7,15
**SIGNATURE** 113:2
 119:25 120:25
**SIGNED** 3:21 95:22
 98:22,25 101:23
 102:2 106:21 110:4
 110:8 113:12,14
 119:23 124:2,24
 127:24 128:10,15
**SIGNING** 120:15
**SILVER** 3:12 103:6
 104:7 107:26 108:23
**SIX** 110:18
**SOCIAL** 119:14
 130:9
**SOLD** 96:10,10 128:4
**SOLE** 105:19 117:24
 118:4,7 124:16
 127:21
**SOLUTIONS** 115:6
**SOLVE** 128:6
**SOMEBODY** 102:22
**SOMEWHAT** 102:4
**SOON** 115:7
**SORRY** 94:22 97:2
 102:10 109:10 113:7
 113:11
**SORT** 102:5
**SOUNDS** 118:11
**SPEAKS** 102:15
**SPECIFICALLY**
 90:2
**SPENT** 123:1
**SPINOUT** 126:24
**SPREADSHEETS**
 111:8
**SS** 131:2
**STACK** 92:1
**STAND** 130:18
**STANDING** 129:1
**STANDS** 90:24
**START** 125:9
**STARTING** 91:19

95:16 104:21
**STATE** 1:1 131:1,9
**STATED** 94:15
**STATEMENT** 94:14
 96:2 97:6 100:7
 107:2,21 119:11
 121:15 128:22
**STATEMENTS**
 90:11 96:23 123:2
 123:12
**STATES** 96:3
**STATING** 126:22
**STATUS** 129:25
**STATUTORY** 90:14
 128:25 130:5
**STIPULATING**
 111:12
**STIPULATION**
 93:16
**STOCK** 90:20 94:2
 94:12 95:26 105:11
 106:22 109:18,21,23
 110:20 113:17,19
 115:6,9,20,22
 116:16 117:19 120:3
 120:17,18 121:4,24
 122:3 126:9,24
 127:2
**STOCKHOLDER**
 122:8,9 129:10,15
**STOCKHOLDERS**
 116:4
**STORY** 101:26
**STRUCTURE** 113:13
**SUBAGREEMENT**
 120:5
**SUBPARAGRAPH**
 103:5,7
**SUBSCRIPTION**
 3:21 106:21 113:12
 116:26 117:1 119:23
**SUBSEQUENT**
 115:22 125:17
**SUBSEQUENTLY**
 129:8
**SUBSIDIARY** 99:10
 122:22,24 126:23

**SUFFICIENT** 128:19
**SUMMARIZES**
 110:24
**SUPERIOR** 1:1 131:9
**SUPERSEDE** 124:7
**SUPPORT** 91:16 96:6
 104:3 105:14 117:18
 121:4,23
**SUPPORTIVE** 98:14
**SUPPORTS** 107:8
**SUPPOSED** 102:9
 108:24
**SURE** 97:16 101:6
 106:18 108:16
 111:10 112:17
 113:18 114:17 115:1
 119:14 120:6 129:21
 130:12
**SWITCHOVER**
 102:1
**SYSTEM** 89:7
**SYSTEMS** 1:5 90:8
 90:20 99:15 113:26
 120:13 122:1,2

**T**

**T** 3:1
**TABLE** 102:2 119:7
**TACIT** 112:26
**TAKE** 95:4 111:25
 112:10 127:11 129:3
**TAKEN** 121:23 129:8
 130:26
**TALK** 93:1
**TALKING** 93:23
 100:10,21 103:19
 121:14,16
**TALKS** 94:6
**TECHNICALLY**
 130:6
**TECHNOLOGIES**
 1:9 122:22
**TECHNOLOGY'S**
 100:4
**TELL** 92:12 101:14
**TELLS** 128:15
**TEMPORE** 1:26

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 098
   Exhibit #268: 056      22-CV-01616-BAS-DDL

131:9,26
**TENSE** 99:16
**TERM** 122:5
**TESTIFIED** 109:15
**TESTIMONY** 91:4,6
96:13 97:13,15
98:12 122:20 123:16
**THANK** 92:23 94:21
97:22 99:23 100:17
121:1 128:21 130:22
130:23,24,25
**THEORIES** 104:3
**THING** 90:19 91:20
100:18,20 108:14
112:15 127:20
130:17
**THINGS** 89:25 90:13
91:10,14 94:14,24
105:5,6 129:17
**THINK** 95:6,6 101:10
103:15 105:18
108:18 109:11 110:9
111:15 115:22
116:25 117:12,16
122:18 125:23
128:13 129:5 130:13
**THOUGHT** 93:5
102:19 116:2
**THREE** 94:13,23
96:18 98:24 105:13
105:19,24 106:4,7
121:25,26 122:4
123:25 124:2,4
126:8,10 127:24
**THREE-AND-A-H...**
112:12
**TIED** 101:8 120:25
**TIME** 102:15 103:25
105:8,16,18 115:7
122:25,26 125:18
127:15,26 130:5
**TJOE** 1:20 89:16,16
92:13,15,18 103:4
103:12 104:5,20,24
104:26 105:4 109:3
109:12,20,23,26
110:4,22 111:19,26

113:24 114:6,10,13
114:22 115:1,10
118:16 120:21
130:25
**TODAY** 91:18 93:14
106:14,15,15 121:20
122:11 129:26
**TOLD** 121:19 123:16
123:17
**TOP** 111:24
**TRAILER** 97:9 98:23
99:13 128:1
**TRAILERS** 94:17
97:3 122:21
**TRANSCRIPT** 1:13
131:11,12
**TRANSFER** 107:18
108:21
**TREATING** 102:13
**TRIAL** 91:8,13
106:20 114:8 127:26
**TRO** 129:19
**TRUE** 122:6 131:12
**TRY** 90:3 91:5
**TRYING** 116:7 117:8
**TURN** 121:3
**TWO** 94:17 98:18
106:8
**TWO-THIRDS**
109:20
**TYING** 112:2 120:22
**TYPE** 128:16

---

**U**

**UNCLEAN** 125:24,26
**UNDERLYING**
102:23
**UNDERSTAND**
109:8 113:15 127:22
**UNDERSTOOD**
106:6
**UNDERTAKING**
91:22,25 92:4 94:2
**UNDISPUTED** 106:1
106:2,3
**UNFORTUNATELY**
110:23

**UPWARDS** 123:3
**USUAL** 91:8

---

**V**

**VALID** 127:19
**VALIDATING**
110:10
**VALIDITY** 90:4
**VARIOUS** 104:3
120:1
**VERSUS** 89:8 128:26
**VIEW** 129:12
**VIEWING** 119:21
**VIOLATING** 122:6
**VIOLETTE** 1:25
131:8,25
**VOLUME** 1:13
**VOTE** 90:7,9,21,23
122:13 124:13
**VS** 1:6

---

**W**

**WAIT** 94:19 130:4
**WAITED** 125:21
**WANT** 89:8 91:15
95:19 98:11 102:23
103:3 106:12,18
109:7 112:8,16,20
114:3 116:16 117:17
121:12 122:15
**WANTED** 106:10
112:7
**WARRANTED**
107:18 108:7
**WASN'T** 95:25 96:8
122:6
**WAY** 91:2,3,11
112:17 123:18
126:11 128:16
129:26
**WEDNESDAY** 1:14
2:2 3:2 89:1
**WENT** 95:9 97:11,12
97:13 112:11
**WEREN'T** 108:7
115:21 125:3
**WE'LL** 101:17

**WE'RE** 92:26 93:23
95:14
**WHITE** 117:26
**WHOLLY** 122:22,24
**WILLENS** 124:23
125:7
**WISH** 117:18
**WITHDRAW** 125:8
**WITNESS** 2:1,4
130:14,16,18,19
**WITNESSES** 2:8
**WORDS** 99:16 104:7
105:9 123:6 124:14
125:6
**WORTHY** 91:21
**WOULDN'T** 124:6
124:19 127:9
**WRITING** 105:15
109:7 126:17
**WRITTEN** 91:4,22
91:25 94:2 95:21
123:8
**WRONG** 128:9

---

**X**

**X** 3:1

---

**Y**

**Y** 1:23
**YANG** 122:7
**YEAR** 97:8
**YEARS** 112:12
**YELLOW** 110:24
111:15
**YESTERDAY** 90:11
92:3 106:11 117:23
128:23
**YING** 122:7

---

**$**

**$75,000** 100:5

---

**1**

**1** 1:14 2:2 3:2 89:1
95:16 97:24 102:25
103:4 106:14 108:19
108:22 111:22,23
**1E** 108:9

**10** 109:13,14 110:10
**10,000** 98:10
**10/02/2015** 3:18
**100** 99:26 113:20
**1000** 109:2
**1001** 104:22
**1007** 109:2
**101** 3:8
**104** 3:10
**11** 110:6 127:4
**11-BY-17** 111:14
**11/03/2017** 3:14
**11/3/17** 114:25
**111** 3:14
**118** 3:18
**119** 3:21
**12** 94:20 107:26
    109:14 110:6,11
**12TH** 92:19
**12,000** 100:6
**12/31/14** 97:4
**12/31/15** 97:8
**13,000,000** 126:25
    127:3
**130** 131:11
**13175,Signature**
    131:24
**15** 94:25
**15TH** 100:21 128:7
**163** 111:23
**175** 128:26
**1880** 128:24

_____ 2 _____

**2** 97:2 98:5,6,6,7,9
    100:18 109:1 121:13
    123:1
**2ND** 119:1 131:15
**2009** 128:26
**2015** 92:4 94:25 98:3
    98:10 99:21,25
    100:7,21 116:13
    119:1 121:25 128:7
**2015/EARLY** 120:2
**2016** 120:2
**2017** 114:10
**2018** 127:1

**2019** 1:14 2:2 3:2 89:1
    92:19
**23,000,000** 117:2,5
**25,000** 94:17 100:12
**27** 118:23 119:4
    120:11
**28,000,000** 94:7 95:24
    96:4 117:3 126:6
    128:20
**29,000** 123:3

_____ 3 _____

**3** 104:23
**3RD** 114:10
**3,000,000** 116:13
**3/30/15** 94:9
**3:15** 127:12
**30TH** 92:4
**30-2019-01046904** 1:6
**31** 96:24 97:1,2
    110:21
**32** 99:12
**3584** 1:25 131:8,25

_____ 4 _____

**4** 92:22 93:24 94:4
    96:9,9,11,12 99:9,10
    100:2,3 124:10,14
    124:15
**4.5** 127:4
**4/2/15** 98:24
**40** 99:13,17
**45** 129:1
**47** 126:5,14,26

_____ 5 _____

**5** 99:7,9 122:26
**5TH** 126:13
**50** 106:21
**50,740** 97:4
**52** 111:8
**53** 95:11,12 117:14,15
    124:9,9,24 125:1
    127:22
**57** 101:17
**58** 3:8 101:17 102:8
    107:22,24 109:10,12
    130:9

**59** 3:10 104:6 107:6
    108:13,14 109:2
    110:13,19

_____ 6 _____

**6** 98:16,20,21
**6,000,000** 116:14
**6/15/15** 95:22
**60** 3:14 111:2 114:16
    114:21 116:13
**61** 3:18 118:17 120:5
    120:23,23,26
**62** 3:21 119:23 120:22
    120:23 130:9
**62,000** 98:2

_____ 7 _____

**7** 100:2,2 107:19
**7/30/15** 104:17
**709** 89:22 128:25
    129:1,18
**75,000** 123:3

_____ 8 _____

**8** 99:24,25
**89** 131:11

_____ 9 _____

**9** 111:22
**9TH** 99:25

Veritext Legal Solutions
866-299-5127

3:22-CV-01616-BAS-DDL          EXHIBIT #0: 100
    Exhibit #268: 058          22-CV-01616-BAS-DDL