FILED

FEB 0 6 2023

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   Justin S. Beck
2   3501 Roselle St.,
    Oceanside, CA 92056
3   760-449-2509
    justintimesd@gmail.com
4   *In Propria Persona*

5

6   **IN THE UNITED STATES DISTRICT COURT**
    **FOR THE**
    **SOUTHERN DISTRICT OF CALIFORNIA**

7

8   JUSTIN S. BECK, individually, and for U.S.    )    Case No.: 3:22-CV-01616-BAS-DDL
                                                   )
9              Plaintiffs,                         )    Judge:         Hon. Cynthia A. Bashant
                                                   )    Courtroom:     12B (12th Floor)
10   vs.                                           )    Hearing Date:  April 3, 2023
                                                   )
11   CATANZARITE LAW CORPORATION;                  )    NO ORAL ARGUMENT UNLESS
12   STATE OF CALIFORNIA; THE STATE BAR )            ORDERED BY THE COURT
     OF CALIFORNIA; ORANGE COUNTY              )
13   SUPERIOR COURT; ORANGE COUNTY            )      **NOTICE OF MOTION AND MOTION**
     DISTRICT ATTORNEY'S OFFICE; RUBEN )            **FOR SUMMARY JUDGMENT**
14   DURAN, ESQ.; SUZANNE CELIA                   )
15   GRANDT, ESQ.; RICHARD FRANCIS               )    **[COUNT III ONLY]**
     O'CONNOR, JR.; MOHAMMED                     )
16   ZAKHIREH; JAMES DUFFY; KENNETH             )    Filed concurrently with:
     CATANZARITE, ESQ.; JIM TRAVIS TICE,        )
17   ESQ.; NICOLE MARIE CATANZARITE             )       Memorandum in Support
18   WOODWARD, ESQ.; BRANDON                      )
     WOODWWARD, ESQ.; TIM JAMES                  )       Declaration of Justin S. Beck in Support
19   O'KEEFE, ESQ.; AMY JEANETTE                  )
20   COOPER; CLIFF HIGGERSON; JAMES             )       Exhibits in Support of Elements
     DUFFY; ELI DAVID MORGENSTERN,             )
21   ESQ.; LEAH WILSON, ESQ.; ROBERT            )
     GEORGE RETANA, ESQ.; ELLIN                  )
22   DAVTYAN, ESQ.; JOHN C. GASTELUM;          )
     JORGE E. NAVARETTE; GEORGE                 )
23   SARGENT CARDONA, ESQ.; ANTHONY B. )
24   SCUDDER                                       )
               Defendants,                         )
25                                                 )
     UNITED STATES ATTORNEY GENERAL; )
26   UNITED STATES OF AMERICA                     )
                                                   )
27             Nominal Defendants                  )
28                                                 )

                                           i                    3:22-CV-01616-BAS-DDL

TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………..…………..…iii

SUMMARY JUDGMENT MOTION……………………………………………………….…,…1

I.     INTRODUCTION TO MEMORANDUM OF POINTS AND AUTHORITIES

II.    LEGAL STANDARD……………………………………………………………..3

III.   CLAIMS & ELEMENTS FOR SUMMARY JUDGMENT (OR ADJUDICATION)….…..4

COUNT III: ACQUIRED INTERESTS IN OR CONTROL OF AN ENTERPRISE

THROUGH A PATTERN OF RACKETEERING ACTIVITY – 18 U.S.C. § 1962(b)

A. Indictable Predicate Acts Used to Obtain or Maintain Control of RICO Enterprise………….…..6

B. Racketeering is Open-Ended, Shows Acute Threat of Continuing Harm to Beck, U.S……………6

(1) The State Bar of California, Orange County Superior Court, and…………………………7

Catanzarite Law Corporation are an Associated-in-Fact Enterprise

with Individual Defendants ("Enterprise").

(2) The Enterprise engaged in or had some effect on interstate commerce. ………………....7

(3) Grandt, Retana, Duran, Cardona, Morgenstern, Davtyan, Catanzarite, ………………..9

and Navarette Used a Pattern of Racketeering Activity to Acquire or Maintain,

Directly or Indirectly, Interests in or Control of the Enterprise.

(4) Injuries to Beck's business and property caused by the 18 U.S.C. § 1962(b) ……………..23

violations.

IV.   CONCLUSION…………………………………………………………………….25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

**Cases – State**

Beck v. Catanzarite Law Corp., .................................................................17
    No. G059766, (Cal. Ct. App. Jul. 13, 2022)

Kimmel v. Goland, ......................................................................................2
    51 Cal.3d 202, 204 (Cal. 1990)

People v. Persolve, .....................................................................................2
    218 Cal.App.4th 1267, 1274 (2013)

Wirin v. Parker, ..........................................................................................2
    48 Cal.2d 890, 89 (Cal. 1957)

**Statutes & Rules – State**

Cal. Evid. Cod. § 956...................................................................................2
    Crime/Fraud Exception to Attorney-Client Privilege & Work Product

Cal. Cod. Civ. P. § 47(b) .............................................................................2
    Litigation Privilege Not Applicable to Racketeering

Cal. Cod. Civ. P. § 425.16.........................................................................10
    State Anti-SLAPP Law Used to Suppress First Amendment Right of Petition

Cal. R. Ct. 8.1115(b)(1)-(2) .........................................................................1
    Reliance Upon Unpublished Opinion

Cal. R. Prof. Cond. 1.0.1(d)[3] ....................................................................1
    Definition, and Reduced Elements, for Attorney Fraud/Fraudulent Conduct

Cal. R. Prof. Cond. 1.7(d)(3) ...............................................................*passim*
    Un-waivable Conflicts

**Cases – Federal**

Abraham v. Singh, .....................................................................................10
    480 F.3d 351, 357 (5th Cir. 2007)

Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n, ................23
    176 F.3d 315, 329 (6th Cir. 1999)

iii                                    3:22-CV-01616-BAS-DDL

1   Alexander Grant & Co. v. Tiffany Indus., Inc., ...................................................23

2        770 F.2d 717, 719 (8th Cir. 1985)

3   Allwaste, .................................................................................................6

4        65 F.3d at 1528

5   Anderson v. Liberty Lobby, Inc., ....................................................................3

6        477 U.S. 242, 248, 255-56 (1986)

7   Andrews Farms v. Calcot, Ltd., .....................................................................4

8        527 F. Supp. 2d 1239, 1256 (E.D. Cal. 2007)

9   Bolling v. Sharpe, ......................................................................................25

10       347 U.S. 497, 498-99 (1954)

11  Boyle v. United States, ..........................................................................passim

12       556 U.S. 938, 945-46 (2009)

13  Bui v. Nguyen, ...........................................................................................5

14       712 Fed. Appx. 606, 609 (9th Cir. 2017)

15  Celotex Corp. v. Catrett, ..............................................................................3

16       477 U.S. 317, 322-23 (1986)

17  Cincinnati Gas & Elec. Co. v. General Elec. Co., ...............................................4

18       656 F. Supp. 49, 85 (S.D. Ohio 1986)

19  Crowe v. Henry, .......................................................................................23

20       43 F.3d 198, 205 (5th Cir. 1995)

21  Curley v. United States, ...............................................................................5

22       130 F.1 (1st Cir. 1904)

23  Diaz v. Gates, ..........................................................................................23

24       420 F.3d 897 (9th Cir. 2005)

25  Durland v. United States, .............................................................................5

26       161 U.S. 306, 16 S. Ct. 508, 40 L.Ed. 709 (1896),

27  Fed. Info. Sys., Corp. v. Boyd, .....................................................................10

28       753 F. Supp. 971, 977 (D.D.C. 1990)

H.J., Inc., .................................................................................................................6

    492 U.S. at 240 (1989)

Ikuno v. Yip, ......................................................................................................4, 6, 10

    912 F.2d 306, 310 (9th Cir. 1990)

Lewis v. Lhu, .............................................................................................................23

    696 F. Supp. 723, 727 (D.D.C. 1988)

In re Grand Jury Subpoena, .......................................................................................2

    419 F.3d 329, 335 (5th Cir. 2005)

Knight, .......................................................................................................................3

    804 F.2d at 11-12

Lies v. Farrell Lines, Inc., .........................................................................................3

    641 F.2d 765, 769 n.3 (9th Cir. 1981)

Lightning Lube, Inc. v. Witco Corp., ........................................................................10

    4 F.3d 1153, 1190 (3d Cir. 1993)

Litton Industries v. Lehman Bros. Kuhn Loeb Inc., ..................................................3

    709 F. Supp. 438, 442 (S.D.N.Y. 1989)

McNally v. United States, ..........................................................................................5

    483 U.S. 350, (1987)

Medallion Television Enters., Inc. v. SelecTV of Cal., Inc., .....................................6

    833 F.2d 1360, 1363 (9th Cir. 1987)

N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n, ...........................*passim*

    574 U.S. 494, 505 (2015)

Parker v. Brown, .......................................................................................................12

    317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315

Quarles v. General Motors Corp., ..............................................................................3

    758 F.2d 839, 840 (2d Cir. 1985) (per curium)

Rodriguez v. Inglewood Unified School Dist. ...........................................................25

    (1986) 186 Cal.App.3d 707

*Sedima, S.P.R.L.* v. *Imrex Co., Inc.,* .................................................................4, 6

    473 U.S. 479, 495 (1985)

*Sever* v. *Alaska Pulp Corp.,* .................................................................................5

    978 F.2d 1529, 1534 (9th Cir. 1992)

*Smagin* v. *Yegiazaryan,*.......................................................................................24

    37 F.4th 562 (9th Cir., June 10, 2022)

*Sutliff, Inc.* v. *Donovan Co.,* .............................................................................10

    727 F.2d 648, 653 (7th Cir.)

*United States* v. *Jacobson,* ..................................................................................4

    691 F.2d 110, 112-13 (2d Cir. 1982)

*United States* v. *Murphy,* ...........................................................................*passim*

    768 F.2d 1518 (7th Cir. 1985)

*United States* v. *Weaver,* .....................................................................................5

    860 F.3d 90, 94 (2d Cir. 2017)

*Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.,* ...................................................5

    No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993) judgment aff'd, 20 F.3d 771

(7th Cir. 1994)

*Waste Mgmt. of Louisiana, L.L.C.* v. *River Birch, Inc.,* .....................................2

    920 F.3d 958, 964-73 (5th Cir. 2019), cert. denied, 140 S. Ct. 628, 205 L. Ed. 2d 390

    (2019

*Waste Mgmt. of La.* v. *River Birch, Inc.,* ............................................................2

    CIVIL ACTION NO: 11-2405 SECTION: "J"(4), 3 (E.D. La. Jun. 4, 2020)

*Wilcox* v. *First interstate Bank,* ...........................................................................5

    815 F.2d 522, 531-32 (9th Cir. 1987)

### Federal – Statutes

15. U.S.C. § 1..................................................................................*passim*

    Sherman Act

18 U.S.C. § 1341……………………………………………………………………1, 2, 5

Mail Fraud

18 U.S.C. § 1343……………………………………………………………………1, 2, 5

Wire Fraud

18 U.S.C. § 1961…………………………………………………………………...4, 5

Racketeering Statutes

18 U.S.C. § 1961(4) ……………………………………………………………*passim*

Enterprise Definition

18 U.S.C. § 1961(5) ………………………………………………………………...5

Pattern of Racketeering Activity Definition

18 U.S.C. § 1962(b) ……………………………1, 4, 6, 10, 11, 13, 14, 16, 18, 19, 22, 24

Acquired Interests In or Control of an Enterprise via Pattern of Racketeering Activity

18 U.S.C. § 1968………………………………………………………………….24

Civil Investigative Demand, Procedures for U.S. Attorney General

**Federal – Rules & Regulations**

Fed.R.Civ.P. 56……………………………………………………………………1, 2

Summary Judgment

Fed.R.Civ.P. 56(a) ………………………………………………………………1, 2

Summary Judgment Grounds

Fed.R.Civ.P. 56(b) ………………………………………………………………1, 2

Summary Judgment at Commencement of Action

Fed.R.Civ.P. 56(a)(1)(A) ………………………………………………………1, 2

No Genuine Dispute to Facts Can Exist to Deny Summary Judgment or Adjudication

Fed.R.Civ.P. 56(e)(2) ……………………………………………………………1, 2

Assertions of Fact on Summary Judgment Motion and Disputes

Fed.R.Civ.P. 56(h) ………………………………………………………………1, 2

Bad Faith Declarations or Affidavits Opposing Summary Judgment or Adjudication

Fed.R.Civ.P. 65.................................................................................................24

     Injunctive Relief

## <u>Other Authorities</u>

U.S. Department of Justice Archives 1988.......................................................25

     Public Corruption is Not a Victimless Crime

## SUMMARY JUDGMENT MOTION

COME NOW Plaintiff Justin S. Beck individually ("plaintiff" or "Beck"), who moves for summary judgment on Count III—Violation of 18 U.S.C. § 1962(b) (Docket #7, pp. 122-26; PageID.522-6) pursuant to Fed. R.Civ.P.56. ("motion"). F.R.Civ.P.56(b) allows "a party to file a motion for summary judgment at any time until 30 days after the close of discovery."[1]

The motion is made on the grounds that Beck's claims cannot be defeated as a matter of law. F.R.Civ.P.56(a). Each fact set forth herein cannot be genuinely disputed. F.R.Civ.P.56(c)(1)(A). Beck surpasses a preponderance of the evidence for each individual defendant and each element against Suzanne Celia Grandt, Esq. ("Grandt"), Robert George Retana, Esq. ("Retana"), Ruben Duran, Esq. ("Duran"), George Sargent Cardona, Esq. ("Cardona"), Kenneth Catanzarite, Esq. ("Catanzarite"), Ellin Davtyan, Esq. ("Davtyan") Eli David Morgenstern, Esq. ("Morgenstern"), and Jorge E. Navarette ("Navarette"). Beck surpasses a preponderance against enterprise defendants The State Bar of California ("State Bar"), Orange County Superior Court ("OCSC") and Catanzarite Law Corporation ("CLC"). State of California ("State") is liable on principles of *respondeat superior* and Cal. Gov. Cod. § 815.6, and because it assigned sovereignty to active market participants in regulation after 2015. Beck includes a declaration to support under F.R.Civ.P.56(c)(4). Any opposition to adjudicative facts would be made in bad faith in accordance with F.R.Civ.P.56(h) and further violate 18 U.S.C. § 1341 or §1343. California Rules of Court, Rule 8.1115 subsection (a) holds "except as provided in (b), an opinion of a California Court of Appeal…that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action." Subsection (b) holds "an unpublished opinion may be cited or relied on: or (2) When the opinion is relevant to a criminal or disciplinary action because it states the reasons for a decision affecting the same defendant or respondent in another such action." This action is for civil relief for criminal conduct.

Respectfully Submitted February 5, 2023 by Justin S. Beck

---

[1] Committee Notes on Rules-2009 Amendment cites "the new rule [56] allows a party to move for summary judgment at any time, even as early as the commencement of the action." "If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due."

## I.      INTRODUCTION TO MEMORANDUM OF POINTS AND AUTHORITIES

"It is elementary that public officials must themselves obey the law." Wirin v. Parker, 48 Cal.2d 890, 89 (Cal. 1957). Rule 1.0.1 Terminology (Rule Approved by the [California] Supreme Court, Effective November 1, 2018) subsection (d) "'Fraud' or 'fraudulent' means conduct that is fraudulent under the law of the applicable jurisdiction and has a purpose to deceive. In footnote [3] "When the terms "fraud" or "fraudulent" are used in these rules, it is not necessary that anyone suffered damages or relied upon the misrepresentation or failure to inform because requiring the proof of those elements of fraud* would impede the purpose of certain rules to prevent fraud* or avoid a lawyer assisting in the perpetration of a fraud*[]." Here, the jurisdiction is the United States: the law is 18 U.S.C. § 1341 and 18 U.S.C § 1343.

Cal. Evid. Cod. § 956 holds "(a) There is no privilege [] if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." California case law holds "[i]n this case, we are called upon to determine whether the privilege…shields a person from liability for [racketeering activity]…section 47(2) precludes recovery for tortiously inflicted injury resulting from publications or broadcasts made during the course of judicial and quasi-judicial proceedings, but [not] from tortious conduct regardless of the purpose for which such conduct is undertaken." Kimmel v. Goland, 51 Cal.3d 202, 204 (Cal. 1990). See People v. Persolve, 218 Cal.App.4th 1267, 1274 (2013) (holding that the litigation privilege does not apply to alleged violations of certain state and federal unfair debt collection statutes); see Action Apartment Ass'n, Inc. v. City of Santa Monica, at 1246 (the litigation privilege does not apply to criminal prosecution of perjury, false reporting, and attorney deceit because the statutes at issue are "more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege.") ""Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity." In re Grand Jury Subpoena, 419 F.3d 329, 335 (5th Cir. 2005)" Waste Mgmt. of La. v. River Birch, Inc., CIVIL ACTION NO: 11-2405 SECTION: "J"(4), 3 (E.D. La. Jun. 4, 2020) Each overt communication in this case is exempt from privilege.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed.R.Civ.P.56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981). ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim…") Material facts in this case are adjudicated already or indisputable.

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.[2]

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact…,the court may…consider the fact undisputed." Fed.R.Civ.P. 56(e)(2). Furthermore, "Rule 56[(a)][3] mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. **Beck incorporates Docket #15 as if it were set forth fully, here, in support.**

---

[2] "The State Bar of California knows, and the Court is noticed as it relates to any responsive documents to this motion, that "Catanzarite does not care about the truth making statements to the Court." (Ex. 34, p. 4) The mere existence of disputed factual issues, however, is not enough to defeat a motion for summary judgment. Knight, 804 F.2d at 11-12; Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curium)" Litton Industries v. Lehman Bros. Kuhn Loeb Inc., 709 F. Supp. 438, 442 (S.D.N.Y. 1989). State Bar and Catanzarite would need to unwind their own wires and mail, here.

[3] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary judgment standard expressed in former subdivision (c), changing only one word—genuine "issue" becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

**III.    CLAIMS & ELEMENTS FOR SUMMARY JUDGMENT (OR ADJUDICATION)**

**COUNT III: ACQUIRED INTERESTS IN OR CONTROL OF AN ENTERPRISE**

**THROUGH A PATTERN OF RACKETEERING ACTIVITY – 18 U.S.C. § 1962(b)**

This motion is filed by plaintiff Justin S. Beck for summary judgment or adjudication on Count III for violation of 18 U.S.C. § 1962(b) against individual defendants Grandt, Retana, Duran, Cardona, Catanzarite, Davtyan, Navarette, and enterprise defendants State Bar, OCSC, and CLC each imputing liability to State. "RICO prohibits the acquisition or maintenance of an interest in an enterprise engaged in interstate commerce through a pattern of racketeering activity." Federal Information Systems, Corp. v. Boyd, 753 F. Supp. 971, 974 (D.D.C. 1990). § 1962(b). State Bar, OCSC, and CLC (together "Enterprise") are associated-in-fact as it relates to Beck's damages for all times relevant (**Docket #7**). The Enterprise is controlled or maintained though the patterns of racketeering activity directed at Beck's businesses and property or to keep Beck from his due judgments on the merits, and the patterns show a threat of continuing against Beck and other members of the public. (See Document 15, PageID.2760-82, related showings; .e.g. OCSC is an enterprise United States v. Murphy, 768 F.2d 1518 (7th Cir. 1985)

To have standing to assert a claim under the majority view, the plaintiff must allege that his or her injury stems not from the defendant's predicate acts, but from the defendants' acquisition or maintenance of an interest in, control over, the pertinent enterprise. Andrews Farms v. Calcot, Ltd. 527 F. Supp. 2d 1239, 1256 (E.D. Cal.2007) (recognizing that to state § 1962(b) claim, plaintiff must allege that (1) defendant's activity led to its control of RICO enterprise, and (2) control resulted in injury to plaintiff). Like § 1962(a), most courts have ruled that § 1962(b) does not require the defendant to be separate from the enterprise.  In Ikuno, the Ninth Circuit relied on Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F. Supp. 49, 85 (S.D. Ohio 1986), a case where a party was found to have control under § 1962(b) where it had voting rights and was directly involved in management.  Ikuno, 912 F.2d at 310. See also United States v. Jacobson, 691 F.2d 110, 112-13 (2d Cir. 1982) (finding lease could be used to control enterprise). Orange County Superior Court is an enterprise. United States v. Murphy.

**A. Indictable Predicate Acts Used to Obtain or Maintain Control of RICO Enterprise**

To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479,

1    495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate
2    act.") Predicate acts must be proven by a preponderance of the evidence. See Wilcox v. First interstate
3    Bank, 815 F.2d 522, 531-32 (9th Cir. 1987).

4           Among the indictable predicate acts listed in 18 U.S.C. § 1961, criminal mail and wire fraud
5    under 18 U.S.C. §§ 1341 and 1343 involves: (1) a scheme based on an intent to defraud; and (2) the use
6    of the mails or wires to further that scheme. United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017);
7    Bui v. Nguyen, 712 Fed. Appx. 606, 609 (9th Cir. 2017). A scheme to defraud encompasses "acts of
8    artifice   or   deceit   which   are   intended   to   deprive   [Beck]   of   his   property   or   money."
9    Vicom, Inc. v. Harbridge Merch. Servs., Inc., No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993),
10   *judgment aff'd*, 20 F.3d 771 (7th Cir. 1994). A pattern is defined as "at least two acts of racketeering
11   activity" within ten years of each other. 18 U.S.C. § 1961(5). Proving two predicate acts is necessary
12   condition for finding a violation, but may not be sufficient. To establish a "pattern of racketeering
13   activity," the predicate acts must be both "related" and "continuous." Id.; Sever, 978 F.2d at 1529.

14          Citing the "Mail and Wire Fraud" subsection of DOJ Archives (1988) "Why Public Corruption
15   is Not a Victimless Crime": ("The federal mail fraud statute, 18 U.S.C. § 1341, prohibits the use of the
16   mails to execute "any scheme or artifice to defraud, or for obtaining money or property by means of
17   false of fraudulent pretenses, representations, or promises."" McNally v. United States, 483 U.S. 350,
18   (1987) "McNally held that the mail fraud stat[ute] is "limited in scope to the protection of property
19   rights." Id. at 2881. But as the opinion itself suggests, property also includes a broad spectrum of
20   "rights." Beck's harm and rights controlled involve more than his directly targeted property and
21   business, here. ("As stated in Curley v. United States, 130 F.1 (1st Cir. 1904) (cited with approval in
22   McNally), the word (defraud) in legal acceptation refers to rights, as well as to property and money."
23   Id. at 11.) When interpreting what property rights are, the McNally Court stated: Durland v. United
24   States, 161 U.S. 306, 16 S. Ct. 508, 40 L.Ed. 709 (1896), the first case in which this Court construed the
25   meaning of the phrase "any scheme or artifice to defraud," held that the phrase is to be interpreted
26   broadly insofar as property rights are concerned[.] McNally, at 2879-80.") (State Bar, Retana, Grandt,
27   Duran, Davtyan, Navarette, and Morgenstern will undoubtedly assert that their acts were not part of a
28   fraudulent scheme...but if they weren't – truly, why did they engage in them against Beck with malice?)

**B. Racketeering is Open-Ended, Shows Acute Threat of Continuing Harm to Beck, U.S.**

Our U.S. Supreme Court holds that a pattern requires two acts plus "something more." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, ___ — ___, 109 S.Ct. 2893, 2897-900, 106 L.Ed.2d 195 (1989), discussing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), That "something more" is "continuity plus relationship." Federal Information Systems, Corp. v. Boyd, 753 F. Supp. 971, 975 (D.D.C. 1990) "The "relationship" requirement is met by the common purpose of harming plaintiffs' business and plaintiff" Beck's interests. "The "continuity" requirement is met by the fact that the events took place over a number of years, and threatens to extend into the future, and that there are a number of victims of and methods to defendants' predicate acts." Id. at 971, 976. (where predicate acts of Catanzarite Law Corporation show a threat of continuing, as do those of The State Bar of California approximately 44 times per day, as do those through Orange County Superior Court). **Docket #7, #10, #15**. Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J., Inc., 492 U.S. at 240 (1989). (Here, all the conduct benefits attorneys and harms Beck, the broader public, courts, legal profession, and national insurance industry using similar methods of non-judicial or judicial fraud, bank fraud against insurers, prosecution or defense lacking objective probable cause involving directly adverse parties in the same or substantially related matters – all involving State Bar, CLC, and their actors).

Relatedness of the alleged or proven predicate acts is rarely an issue. See Medallion Television Enters., Inc. v. SelecTV of Cal., Inc., 833 F.2d 1360, 1363 (9th Cir. 1987) (finding alleged predicate acts to be related when all were directed toward inducing plaintiff to obtain certain rights.) Open-ended continuity shows via "predicate acts that specifically threaten repetition or that become a regular way of doing business." Allwaste, 65 F.3d at 1528; see, e.g., Ikuno v. Yip, 912 F.2d 306, 308 (9th Cir. 1990) Here, the racketeering activity constitutes wire fraud or mail fraud directed at Beck, his business, property, rights, or interests. It shows an acute threat of continuing against Beck, but also harming $3.63 trillion in interstate commerce, the entire United States insurance industry, and approximately 44 persons per day. (Ex. 136, p. 2, Document 15-29, PageID.3248). To succeed on this 18 U.S.C. § 1962(b) claim, Beck must prove each element by a preponderance of the evidence.

6

3:22-CV-01616-BAS-DDL

(1) **The State Bar of California, Orange County Superior Court, and Catanzarite Law Corporation are an Associated-in-Fact Enterprise with Individual Defendants ("Enterprise").**

As set forth within Beck's motion for summary judgment at ***Docket #15*** (Document 15, pp. 3-23, PageID.2760-80), the defendants to this 18 U.S.C. § 1962(b) claim are associated in fact through a series of predicate acts under 18 U.S.C. § 1962(c) leading to their infiltration, maintenance of, or control of a RICO enterprise as it relates to Beck's harm and the United States' interests: State Bar, OCSC, and CLC (together the "Enterprise"). Beck shows Catanzarite filed six lawsuits for and against adverse parties before the same OCSC using CLC (Ex. 311, p. 2-40, Document 15-76, PageID.3653-91). State Bar became expressly subject to Government Claims Act as of January 1, 2019, through amendment to Business and Professions Code 6094(a) (Ex. 222, p. 2; AB 3249, embodying federal antitrust laws, effective January 1, 2019). Using the form provided by The State Bar of California, Beck presented claims to State Bar's Board of Trustees ("BOT") on or around October 14, 2021 with a preservation of evidence letter to State Bar (Ex. 131, p. 2, Document 10-89, PageID.2288). Beck received a claim denial letter by mail dated November 12, 2021. (Ex. 187, Document 15-45, PageID.3363). Beck filed suit promptly in OCSC within 6-months (Ex. 335, pp. 2-3, Document 15-94, PageID.3785-6), and Beck's case here is based upon continuing damages, related facts, and circumstances involving control of the Enterprise that has prevented Beck from neutral adjudication and judgments for his damages.

(2) **The Enterprise engaged in or had some effect on interstate commerce.**

State Bar BOT knew Thomas V. Girardi and Girardi Keese compromised the California judicial system and State Bar itself since 2014 but concealed it from the public (Ex. 1, Document 15-2, Girardi is mentioned 18 times, "Perceived Girardi Keese Influence at the Bar" at p. 22, PageID.2823, "frequency with which Girardi's firm has surfaced in matters we investigated is striking." Ibid.). ("Girardi surfaced in an extremely unusual meeting with Craig Holden before he was elected as Bar president...when Holden attended the meeting, Girardi showed up, suggesting that the "power broker" on whose support Holden's election depended was in fact Girardi. Ibid.) ("Dunn chose Girardi's partner Howard Miller to be an emissary for the Mongolia trip." Ibid.) (In emails we reviewed on other topics, we noted that Miller was being consulted on matters related to A.B. 1515, a bill concerning client trust accounts." Id. at p. 23) Only after a RICO case was filed by Edelson PC, an Illinois professional corporation, v. David

1   Lira et al., Docket No. 3:22-CV-03977 (Ex. 41, Document 10-45), and after a Federal Judge in Illinois

2   issued an order on November 2, 2022 in which Girardi's conduct is described as "unquestionably

3   criminal" (Ex. 42, Document 10-46) did The State Bar of California own up to its protection schemes

4   of Thomas V. Girardi: On November 3, 2022, an "Open Letter Regarding the State Bar's Thomas V.

5   Girardi" announced "the State Bar of California is releasing information…over the past 40

6   years…involving…Thomas V. Girardi" and that its "public protection mission is the guiding light for

7   all that [the State Bar does]." (Ex. 278, p. 2, Document 15-69, PageID.3526). (this statement from Duran

8   was overtly fraudulent) Edelson PC of Illinois had to negotiate remuneration for Thomas V. Girardi of

9   California's "unquestionably criminal" (Ex. 42, p. 4, Document 10-46, PageID.1946) conduct through

10   an insurance carrier to pay international clients (Id. at p. 2, PageID.1945).

11       In OCSC, Beck declares his "Verified Complaint" and the TRO shows some of Catanzarite's

12   serial schemes to defraud the non-lawyer public. (Ex. 36, p. 3, ¶ 3, Document 10-37, PageID.1453).

13   Exhibit Q (Id. at p. 5, ¶ 14, PageID.1455) shows Catanzarite's fraud in United States Bankruptcy Court

14   (Id. at pp. 8-14, Page ID.1458-64) later culminating in "$49,020.50" in sanctions (Id. at p. 32,

15   PageID.1482) and "$11,639.25" in sanctions (Ibid.); Exhibit X (Ex. 36, p. 6, ¶ 20, Document 10-37,

16   PageID.1456) and cites Catanzarite's fraud related in OCSC imputing "$13,600" imputed to Catanzarite

17   or his ran-and-capped "client" Richard Carlson (Ex. 36, p. 6, ¶ 20, Document 10-37, PageID.1456).

18       For CLC in OCSC and across state lines, "Telephonic deposition of RICHARD CARLSON" on

19   Wednesday, February 12th, 2020 (Ex. 36, p. 67, Document 10-37, PageID.1517) with appearance by

20   "Catanzarite Law Corporation" and "Kenneth J. Catanzarite" reveals startling realities of this parallel

21   "Daymark Matter" scheme: "Q. [] So did you [Richard Carlson] have any knowledge or understanding

22   as to what purpose or the reason why Mr. Catanzarite was making a house call to you prior to the time

23   that he showed up at your home? A. I just can't remember that far back. I'd have to say no." (showing

24   that Catanzarite visited Carlson at his home when he wasn't seeking counsel) "Q. Prior to the time that

25   you spoke to Mr. Windfield and Mr. Catanzarite, did you have any knowledge or information that would

26   have led or caused you to believe that you had any damages or any claims against any of the parties that

27   you have sued in each of these lawsuits that we have looked at during your testimony today? A. No, I

28   didn't, but I think Ty Windfield did. Either Ty or Ken. And that – so they got together on that to start

1  with." (Ex. 36, p. 144, Lines 1:15, Document 10-38, PageID.1594) (showing Richard Carlson did not

2  believe he had suffered damages, and was not seeking an attorney, before 9 putative class actions were

3  filed on his behalf across the country). "Q. Paragraph 36, you [Richard Carlson] allege, "defendants,

4  and each of them, knowingly and willfully conspired, joined, and participated with each other in the

5  conduct...with each other defendant for the conduct herein alleged for the damages suffered by

6  plaintiffs. Do you see that? A: Yes, I do. Q. Okay. And you had no factual grounds for making" (Ex. 36,

7  p. 250, Lines 13:22, Document 10-39, PageID.1700) "the allegation in Paragraph 36 of your complaint,

8  correct? **A. I did not**." (Ex. 36, p. 251, Lines 1:2, Document 10-40, PageID.1701) "THE WITNESS

9  [Richard Carlson]: I don't have facts, but it looks like somebody should have facts on that." BY MR.

10  KIBLER: Q. You would think, right? A. It's pretty straightforward, but I don't have them. Q. Who

11  would have them? Let me withdraw the question and ask a broader one. As to all of the allegations that

12  you and I just looked at and all of the allegations that are in your complaint, who would I go to [] ask

13  what the factual basis and the reasonable grounds are for making these allegations against my client? A.

14  I'm not sure I guess to our attorney or -- Q. Sir, you're the named plaintiff. If you can't answer the

15  question as to the reasonable grounds that you had for suing my client for **several hundred million**

16  **dollars**, who should I ask for what those reasonable grounds are? **A. I just don't know. Sorry.** Q. Have

17  you ever heard the term "malicious prosecution" before? (Id. at p. 254, Lines 1:25) (Catanzarite asserts

18  these questions involving hundreds of millions of dollars of fraudulent claims filed by his firm to be

19  "harassing." (Id. at p. 256, Line 20:22), just like the scheme targeting Beck using Pinkerton and then the

20  extorted, inanimate entities MFS then CTI. Carlson's "claims" were cooked up showing Catanzarite's

21  control of the Enterprise. (Ex. 36, pp. 66-271, Document 10-37 through Document 10-40, PageID.1517-

22  1721). In OCSC "Richard Carlson" shows expungement of a fraudulent *lis pendens* financial instrument

23  June 11, 2021, filed by Catanzarite. (Id. at p. 272-3, Document 10-40, PageID.1722-3). The same Court,

24  and same day "Mobile Farming Systems, Inc. v. Probst 2019-01046904" the docket says "MFS's

25  attorney [CLC] wasn't duly hired by MFS." (Id. at p. 290, PageID.1726). (MFS counsel role, extorted)

26  (3) **Grandt, Retana, Duran, Cardona, Morgenstern, Davtyan, Catanzarite, and Navarette Used a**

27  **Pattern of Racketeering Activity to Acquire or Maintain, Directly or Indirectly, Interests in or**

28  **Control of the Enterprise.**

1    Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993) ("[T]he plaintiff must

2    establish that the interest or control of the RICO enterprise by the person is as a result of racketeering.")

3    Abraham v. Singh, 480 F.3d 351, 357 (5th Cir. 2007) The 9th Circuit Court has followed the 7th holding

4    the type of control required by the Grandt, Retana, Duran, Cardona, Morgenstern, Davtyan, Catanzarite,

5    and Navarette over one or more aspects of the Enterprise "'need not be formal control'" and 'need not

6    be the kind of control that is obtained, for example, by acquiring a majority of the stock of a

7    corporation.'" Ikuno v. Yip, 912 F.2d 306, 310 (9th Cir. 1990) (quoting Sutliff Inc. v. Donovan Co., 727

8    F.2d 648, 653 (7th Cir.) Defendant Catanzarite's extortion to force corporate actions using the Enterprise

9    by wire constitute attempt to control within the meaning of Section 1962(b) (same for Davtyan, Grandt

10    seeking Enterprise control). Fed. Info. Sys., Corp. v. Boyd, 753 F.Supp. 971, 977 (D.D.C. 1990).

11    **a. Suzanne Celia Grandt, Esq. ("Grandt") Racketeering Activity 18 U.S.C. § 1962(b))**

12    1. Grandt is Promoted within Enterprise 4-Days After Defrauding Federal Judge

13    Grandt's interests in or control of the Enterprise was acquired by defrauding federal judge Hon.

14    William Alsup about State Bar Court providing due process (Ex. 2, pp. 2-14, Document 15-3,

15    PageID.2837-51); e.g., "Ms. Grandt told me something that wasn't true, and I relied on it"), which led

16    to Grandt's "internally" announced promotion and salary raise four days later to Assistant General

17    Counsel which USD School of Law Center for Public Interest Law executive director Robert Fellmeth

18    determined was not a "sterling example of meritorious reward." (Ex. 285, p. 2). So Grandt obtained

19    Enterprise control from fraud, and State Bar's collateral "State Bar Court" schemes.

20    2. Grandt Conspires w/Andresen by Wire to Deny Beck Due Process, Continue Scheme

21    After receiving Beck discovery requests May 2022, Andresen wires for 60-day extension (Ex.

22    135, pp. 2-14); Grandt assumed counsel in OCSC for Morgenstern and State Bar to assert control over

23    the Enterprise and defraud Beck (Ibid.). Grandt asserted no discovery would be produced after Beck

24    granted the extension on the basis of immunities that did not meet Beck's lawsuit (Id. at p. 8). Using her

25    Enterprise control, Grandt asserted by wire State Bar would need discovery from Beck (Ex. 286, p. 11,

26    Lines 13:15 stating "discovery is stayed" because of frivolous "Anti-SLAPP" filed 7-months into

27    proceeding) despite overtly denying Beck discovery four times. (e.g., Ex. 135, p. 8; Ex. 287, pp. 2-5

28    with SPROGS from pp. 6-36; Ex. 290, Document 15-72, PageID.3585-96 deposition subpoena).

3:22-CV-01616-BAS-DDL

1              3. <u>Grandt Wrote Beck by Postal Mail and Wire Controlling the Enterprise July 20, 2022</u>

2       A party is found to have control under 18 U.S.C. § 1962(b) where it was directly involved in

3 management. On July 20, 2022, showing control, Grandt refused to stop Catanzarite with malice: "As

4 Chair...Duran declines to waive confidentiality...such waiver is not warranted for protection of the

5 public...[because] you have a pending lawsuit against the State Bar." (Ex. 26, p. 3) Using control, other

6 "matters have been abated and as such, have not been closed. They remain as open matters...the

7 Complaint Review Unit [Office of General Counsel] does not have authority...to review the abated

8 matters...as the Office of Chief Trial Counsel explained to you in its November 22, 2021, letter

9 [controlling the Enterprise], it has abated and will take no further action on these matters until resolution

10 of the related pending civil matters because those matters "involve substantially the same misconduct

11 that is at issue in the State Bar matters.")

12             4. <u>Grandt Defrauds Judge John C. Gastelum in OCSC to Control the Enterprise</u>

13       Beck researched, prepared, and filed for summary judgment and summary adjudication on July

14 18, 2022 in OCSC Case No. 30-2021-01237499, which defeated every purported immunity of State Bar,

15 but John C. Gastelum ignored those because of Grandt's control over the Enterprise (Ex. 19, pp. 2-34)

16 and Duran's control as Chairman over judicial appointments or advancements for John C. Gastelum

17 (Ex. 252, pp. 2-4, Document 15-61, PageID.3432-4) Grandt's fraudulent filing in OCSC claims "all

18 information concerning disciplinary investigations are confidential within the Office of Chief Trial

19 Counsel." (Ex. 282, p. 16, Lines 25:27). "Duran is the Chair of the State Bar Board of Trustees" (Id. at

20 p. 17, Line 15). "Grandt and Andresen are Assistant General Counsel...[Duran, Grandt, and Andresen

21 do not] work in the Office of Chief Trial Counsel." [these statements intended to defraud; were patently

22 fraudulent submitted by wire, as shown in Ex. 120, pp. 2-12, Document 15-27, PageID.3196-3206]

23                 5. <u>Grandt Seeks to Control the Enterprise by Wire</u>

24       Grandt sought to control the Enterprise again December 7, 2022 (Ex. 120, p. 2, PageID.3196

25 ("you received an email...inform us immediately if you have disseminated this record to any third

26 parties.") Once more, Grandt asserts the Enterprise's fraudulent scheme is somehow privileged. (Ibid.)

27      **b. Robert George Retana, Esq. ("Retana") Racketeering Activity 18 U.S.C. § 1962(b)**

28           1. <u>Retana Removed or Ignored (4) Volumes of Exhibits from Beck's Antitrust Petition</u>

1   Beck filed antitrust petition S276517 with four volumes of exhibits, served on Office of General

2   Counsel, Ruben Duran [DOJ, FTC] (Ex. 68, p. 2, Document 15-20, PageID.3144 "Ms. Calanoc, thank

3   you for the call today...the petition for review was served on the Office of General Counsel...as well as

4   its Board of Trustees...All parties were thus served the petition and the exhibit files marked [1 to 3] and

5   then [4 of 3] with a verification.") The proof of service binder reflects the same. (Ex. 70, pp. 2-5,

6   Document 15-21, PageID.3146-9). September 27, 2022, California Supreme Court struck Beck's

7   petition as "premature" (Ex. 28, p. 2, Document 15-9, PageID.2912), then sent to Retana, through Joan

8   Randolph, conspiring with Enterprise members to defraud (Ex. 60, p. 9, Document 15-16, PageID.3005).

9   2. Retana Drafted, then Delivered by Wire, Fraudulent Antitrust Determination 2022-001

10   On October 17, 2022, Beck received "Antitrust Determination 2022-0001" after four volumes

11   of exhibits were removed from S276517, which determination ignores United States Supreme Court

12   decisional law (Ex. 60, pp. 1-140, Document 15-16, PageID.2998-3136, e.g. Beck's allegations

13   "gratuitous" Id. at p. 3, PageID.2999 as Retana ignores binding U.S. law and his duty at law). Ignoring

14   binding United States Supreme Court decisional law in N.C. State Bd., Retana cited stale case law Parker

15   v. Brown , 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (Id. p. 4, PageID.3000) because Retana knew he

16   maintained Enterprise control with other defendants, so he didn't care. California Supreme Court docket

17   reflects Beck's actual petition and four volumes of exhibits, removed by Retana or Grandt to make

18   fraudulent "determination." (Ex. 65, p. 2, Document 15-19, PageID.3142)

19   3. Retana Delivered Jorge E. Navarette the Fraudulent Antitrust Determination

20   October 17, 2022, Retana delivered Jorge Navarette a wire communication (Ex. 305, p. 2,

21   Document 15-75, PageID.3646), "VIA EMAIL TO JORGE.NAVARRETE@JUD.CA.GOV

22   "Requestor has 60 days from October 17th to file a Petition for Review...Sincerely, Robert G. Retana")

23   Exercising control of the Enterprise, a fake case is commenced on behalf of Beck in California Supreme

24   Court on a petition Beck **did not file**, based on a record that was altered by Office of General Counsel,

25   S276939 (Ex. 63, p. 2, Document 15-18, PageID.3140) On November 29, 2022, Beck warned State Bar,

26   Duran, Grandt of potential obstruction of federal proceedings (Ex. 71, p. 2-3, Document 15-22,

27   PageID.3151). One day later, fraudulent "En Banc" decision is stamped by Navarrete November 30,

28

1 | 2022, in a California Supreme Court case Beck did not authorize based on manipulated records from
2 | Retana, Grandt that willfully ignored binding U.S. law (Ex. 61, p. 2, Document 15-17, PageID.3138).

3 |         4. Retana Waived Service for Adverse Grandt, Wilson, Morgenstern, and State Bar

4 |       Exercising control over the Enterprise, Retana overtly stepped in to waive service for adverse
5 | parties on November 30, 2022 (Grandt, Docket #20, Morgenstern, Docket #21, Wilson, Docket #23,
6 | State Bar, Docket #24). Beck sought service by U.S. Marshal to avoid Enterprise control issues shown,
7 | but the Court did not rule on the TRO (Document #10, pp. 1-12, PageID.562-73). To avoid the genuine
8 | TRO issue cited by Beck, Davtyan, Retana, and Tsai asserted State Bar, Duran, Grandt, Wilson, and
9 | Morgenstern had been served (Document 13, PageID.2528 "The current deadline...to respond to the
10 | First Amended Complaint...is either January 18, 2023...or January 30, 2023... Respectfully Submitted,
11 | Ellin Davtyan, Robert G. Retana.../s/Charles Tsai") Beck filed for summary judgment on Counts I, II,
12 | and VI on those parties served expecting this bad faith (Docket #15), so Tsai, Retana, and Davtyan now
13 | fraudulently assert they aren't served to avoid merits-based adjudication in continuance of the fraudulent
14 | schemes using Enterprise control. (Ex. 336, pp. 2-3) These predatory practices are nothing new to Beck.

15 |     **c. George Sargent Cardona, Esq. ("Cardona") Racketeering Activity 18 U.S.C. § 1962(b)**

16 |         1. Chief Trial Counsel Cardona Controls 44 Acts of Fraud by Wire and Mail Every Day
17 |       Cardona's Enterprise control was acquired and is maintained through ~44 acts of wire fraud and
18 | mail fraud against innocent members of the public harmed by his lawyers each day in his capacity as
19 | Chief Trial Counsel for State Bar (Ex. 136, p. 2, Document 15-29, PageID.3248). California State
20 | Auditor concluded in April 2022 that Cardona's office "does not address the significant failures of its
21 | investigative process that [the auditor] identified." (Ex. 34, Document 15-10 generally showing utter
22 | disregard of public interest continuing; Ex. 246, p. 10, Document 15-59, PageID.3418). "State Bar has
23 | regularly failed to effectively assess the underlying facts and merits...resulting in harm to the public...."
24 | (Ibid.) "[I]t is the responsibility of the State Bar, just like all auditees, to implement our
25 | recommendations in a manner consistent with federal and state law." (Id at p. 11)

26 |         2. Cardona Accepts Fraudster Catanzarite "Facts" as True, Ignores Violations of Law
27 |       May 19, 2022, using the wire to control the Enterprise, Cardona colluded with and corroborated
28 | materially false statements from Andresen or Catanzarite that ignored Court orders in their possession

1    Counsel (Ex. 120, pp. 2-12, Document 15-27, PageID.3196-206) which were "carefully reviewed" by

2    his office and Morgenstern (Ex. 173, pp. 2, Document 15-37, PageID.3320) "From: Cardona, George

3    George.Cardona@calbar.ca.gov Sent: Wednesday, May 25, 2022 7:41 AM To: Duran, Ruben

4    Ruben.Duran@calbar.ca.gov Cc: Andresen, Carissa Carissa.Andresen@calbar.ca.gov; Wilson, Leah

5    Leaht.Wilson@calbar.ca.gov Subject: FW: Clarity on Requests/Formal Request to Mr. Duran as Board

6    of Trustees of The State Bar of California…"With thanks to Carissa [who ignored the Court of Appeal

7    and trial court rulings entirely in favor of Catanzarite's fraudulent stories, or "State Bar relied on the

8    attorney's narrative", Id. at PageID.3419], set out below is a summary of where we are with respect to

9    Mr. Beck's various complaints and lawsuits. As set out at the end, we do not see any basis for a waiver

10   of confidentiality. If you agree, OGC (which is handling Mr. Beck's pending lawsuit against the State

11   Bar) can specifically respond to his numbered requests in his May 19 email to you. Hope this helps. Let

12   us know if you need anything else." (Ex. 120, p. 3) (Again, this conduct is absurd, repeated about 44

13   times per day, defrauding United States citizens through active market fraud in active collusion).

14           3. Cardona's Office "Re-Assigns" Case for Nicole Marie Catanzarite-Woodward, Esq.

15           On August 12, 2022, an injury notice related to Nicole Marie Catanzarite Woodward, Esq. of

16   Catanzarite Law Corporation was "reassigned" but civil Government Claims Act defendant "Senior

17   Trial Counsel Eli Morgenstern will continue as the legal advisor." (Ex. 191). Cardona knew that

18   Morgenstern was a defendant in civil litigation but didn't care because he knew that he controlled or

19   maintained an interest in the Enterprise through a pattern of racketeering activity guised as "protection"

20   of the public, and that Morgenstern could ensure that Catanzarite would be protected, too. (just like

21   Thomas V. Girardi enjoyed for forty years as a wealthy, white, privileged, corrupt lawyer).

22   **d. Eli David Morgenstern ("Morgenstern") Racketeering Activity 18 U.S.C. § 1962(b)**

23           1. Senior Trial Counsel Involved in 44 Acts of Fraud by Wire and Mail Every Day

24           Morgenstern's Enterprise control was acquired through approximately 44 acts of wire fraud and

25   mail fraud each day as Senior Trial Counsel for The State Bar of California (Ex. 136, p. 2, Document

26   15-29, PageID.3238).

27           2. Morgenstern Defrauds Beck Using Control of the Enterprise April 3, 2020

28

                                          14                          3:22-CV-01616-BAS-DDL

1   Beck delivered detailed notice of injuries to State Bar with evidentiary exhibits. (Ex. 172, pp. 2-

2   24, Document 15-36, PageID.3296-3318). Beck received postal mail from Morgenstern controlling the

3   Enterprise on April 3, 2020, ignoring all facts and law, in which it was asserted the fraudulent scheme

4   to which Beck and other members of the public was "not serious enough" for "State Bar Court." (Ex.

5   173, pp. 2-4, Document 15-37, PageID.3320-22). Whether or not Morgenstern was bribed by

6   Catanzarite, the letter is fraudulent when compared to Beck's notices of injury and the cited exhibits.

7               3. <u>Civil Defendant Morgenstern Refuses to Recuse from Catanzarite Cases</u>

8         *Sunday evening* before Grandt's *ex parte* hearing August 22, 2022 in OCSC to move Beck's duly

9   noticed motion for summary judgment (Ex. 19, pp. 2-34), a case against Catanzarite (Ex. 192, pp. 2-4)

10  was assigned to Amy Yarbrough and (defendant) Eli David Morgenstern "further review." Beck wrote

11  the "investigator" Amy Yarbrough that Morgenstern was a party defendant with actual conflict, to which

12  she replied "received" but she didn't "have any say over whether Mr. Morgenstern is assigned" (Ex.

13  193). (Morgenstern controls the Enterprise overtly to protect CLC and Catanzarite's schemes to defraud)

14              3. <u>Civil Defendant Morgenstern "Abates" November 22, 2021 to Control Enterprise</u>

15        Beck filed with "Complaint Review Unit," not realizing it was also Office of General Counsel

16  conspiring with Office of Chief Trial Counsel (Ex. 176, pp. 2-4, Document 15-39, PageID.3339-41).

17  "Complaint Review Unit" delivered postal mail to Beck (Ibid.), concealing and ignoring all material

18  facts, and continuing legal arguments for Catanzarite two days after Catanzarite filed the fraudulent

19  "MFS Cross Action" (Ex. 150, pp. 2-49, Document 15-34, PageID.3285-7) which had already been

20  adjudicated and rejected "with every fiber of [Court's] being" (Ex. 268, p. 43, Document 15-67,

21  PageID.3507 Lines 16:17, May 1, 2019) citing the "repeated actions" of O'Connor and Cooper. (Id. at

22  p. 45, PageID.3509, Lines 6:10) "Complaint Review Unit" (OGC) also sent a lead generation tool to

23  pay more lawyers (Ex. 176, Document 15-39, Ex. 177 Document 15-40, Ex. 178, Document 15-41).

24        In September 2021, after CTI counsel delivered evidence that Catanzarite had willfully destroyed

25  a $261 million merger in Canada (with shares going to U.S. shareholders as a foreign private issuer),

26  Morgenstern "abated" November 22, 2021 (Ex. 295, pp. 2-3) after sending CTI counsel an email that

27  the harm caused needed to be determined first (after destroying $261 million in value) (Ex. 294, pp. 2-

28  3). In other words, Morgenstern used control over the Enterprise to help Catanzarite finish "burning

3:22-CV-01616-BAS-DDL

everyone's house down before the fire department could respond." ("the pending civil matters charge Mr. Catanzarite and other attorneys within the Catanzarite Law Corporation with committing additional, potential acts of professional conduct…the evidence "adduced" in the related civil matter(s) will aid the State Bar in its: (i) investigation of Mr. Catanzarite's conduct with respect to his representation of CTI; and (ii) potential prosecution of Mr. Catanzarite in State Bar Court. (See Rules Proc. of State Bar, rule 5.50(B)(4)") (Ex. 295, p. 2) "Again, the harm caused by Mr. Catanzarite's violation of the conflict rules, as well as his other alleged misconduct, is an issue in pending litigation." (Id. at p. 3).

4. Morgenstern Defrauds Beck Again Using Control of Enterprise October 31, 2022

"The State Bar has decided to close your complaint against Kenneth Catanzarite [October 31, 2022]…State Bar cannot proceed with disciplinary charges unless we can present evidence and testimony in court, sufficient to prove by clear and convincing evidence that the attorney has committed a violation of the State Bar Act or the Rules of Professional Conduct." (Ex. 296, p. 2) These letters are the same delivered to State Bar's victims of Girardi scams for forty years. (Ex. 278, Document 15-69).

**e. Kenneth Catanzarite ("Catanzarite") Racketeering Activity 18 U.S.C. § 1962(b)**

1. "Pending Civil Matters" Filed by Catanzarite Conflict with Each Other Against Beck

Catanzarite knows exactly how to control the Enterprise: file fraudulent lawsuit, steal information, file more fraudulent lawsuits (Ex. 311, pp. 2-40, Document 15-76, PageID.3653-91) using stolen information to make the claims appear legitimate, collude with Morgenstern, Andresen, or Grandt with the blessing of Duran and Wilson that they are "pending civil matters" in OCSC (Ex. 120, Document 15-27), just like State Bar participated with Thomas V. Girardi for forty years.

Because Catanzarite knows that Morgenstern (Ex. 173, p. 2, not "serious enough", Document 15-37, PageID.3320) Cardona, Duran, Grandt will accept Catanzarite's ongoing fraud even in the face of Court orders (Ex. 120, pp. 1-12, Document 15-27, PageID.3195-206) – Catanzarite has no reason to stop his fraudulent schemes against Beck or others. "a reasonable attorney may not have found the Pinkerton Action claims tenable…when the factual allegations of the Pinkerton Action and the MFS Action are compared in an objective manner, no reasonable attorney would conclude both had merit. Simply stated, one action was based on the factual premise CTI's board members improperly renounced the Subsidiary Promise, leaving MFS *without any* CTI shares, and the other was based on the factual

premise MFS *currently owned* 100 percent of CTI's shares, rendering any other CTI stock certificates worthless." (Ex. 311, pp. 2-40, Document 15-76, PageID.3653-91) Beck v. Catanzarite Law Corp., No. G059766, 37 (Cal. Ct. App. Jul. 13, 2022) "The lack of probable cause [fraud]...was further demonstrated by evidence Catanzarite filed multiple lawsuits while unethically representing clients with conflicting interests. For good reason, it is difficult to apply the "reasonable attorney" test when...the attorneys initiating the cases violated multiple rules of professional conduct...no reasonable attorney would agree to act as corporate counsel of MFS while at the same time representing shareholders in a derivative lawsuit against that corporation. Yet this is exactly what happened when Catanzarite filed the MFS Action while also litigating the Pinkerton Action. We conclude...[Catanzarite] and litigants knew the claims in one or both lawsuits were [fraudulently schemed]." (Ex. 311, pp. 2-40, Document 15-76, PageID.3653-91) Beck v. Catanzarite Law Corp., No. G059766, 37-38 (Cal. Ct. App. Jul. 13, 2022)

These lawsuits are a weapon of extortion using control of the Enterprise to file claims for parties lacking objective probable cause against Beck, just as with Richard Carlson who didn't believe he suffered damages when he was visited at his home by Catanzarite. Normally, a Court would strike them on its own, but not for those among the Enterprise in OCSC. "The rule is aptly stated in Pueblo de Taos v. Archuleta, 64 F.2d 807, 812 as follows: "It is strongly urged that if a trial court may not dismiss with prejudice an action brought merely for vexation, that the process of the court cannot be protected from abuse; that where the mere pendency of the action seriously impairs property rights, counsel may continue to use the pendency of the action as a weapon of extortion by refiling the case *ad infinitum.* Houston v. City and County of San Francisco (C.C.Cal.) 47 F. 337. The court is not powerless, for it has wide disciplinary powers over counsel and litigants who attempt to abuse its process." Estate of King, 121 Cal.App.2d 765, 774 (Cal. Ct. App. 1953) (see also Stephen Slesinger, Inc. v. Walt Disney Co., 155 Cal.App.4th 736, (Cal. Ct. App. 2007) holding court had inherent authority to dismiss case for misconduct during discovery that included stealing confidential documents and altering them to delete confidentiality notations to create false impression they were not confidential).

### 2. The Ongoing Scheme to Defraud Beck and Others Using Enterprise Control

Beck v. Catanzarite Law Corp., No. G059766, 40 (Cal. Ct. App. Jul. 13, 2022) ("MFS Action was initiated and maintained as part of a larger scheme [against Beck]...After...the court rule[d] MFS

was not CTI's shareholder [Ex. 268, p. 45, Document 15-67 "the Court concludes [MFS] is not a stockholder of CTI"], the parties did not immediately dismiss the lawsuit. **Instead, Catanzarite filed more lawsuits and began acting as corporate counsel of both MFS and CTI** [Ex. 311, pp. 2-40, Document 15-76, PageID.3653-91]. It can be inferred O'Connor, Cooper, Higgerson, and Zakhireh continued to authorize and support Catanzarite's [fraud] to reallocate CTI's shares to MFS and oust [Beck] from CTI's board.") (Catanzarite controls the enterprise through competing, fraudulent cases).

### 3. Appearing Here for Extorted Defendants-Turned-Clients to Control Enterprise

To prevent Beck from fair hearings, just as he always does in OCSC, Catanzarite appeared on February 3, 2023 in this Court on behalf of parties he sued through CLC for securities fraud, and against whom he is "tolling claims" to "bring later" so "no conflict." (Ex. 313, pp. 2- Document 15-77, PageID.3693-4). (This is extortion to produce evidence and wire fraud, continuing).

### 4. Enterprise Control via Fake Case Maintenance using Proxy Jim Travis Tice

When Catanzarite, CLC, and its cronies were disqualified from representing adverse interests in OCSC (Ex. 138, pp. 2-7), Catanzarite didn't care because he just placed his proxy Jim Travis Tice into one of the fake lawsuits on September 8, 2021 to hold innocent litigants hostage (Ex. 338, pp. 2-5). Tice, Catanzarite do this as a practice to defraud the public using inanimate entities or straw litigants. (Request for Judicial Notice of Adjudicative Facts #14-20, Docket #12, Document 12, PageID.2490-92)

### f. Jorge E. Navarette ("Navarette") Racketeering Activity 18 U.S.C. § 1962(b)

#### 1. Overt September 29, 2020, Postal Mail to Beck for "In RE: Walker" Scheme

After "Complaint Review Unit" (Office of General Counsel) ratified Catanzarite's schemes again using control over the Enterprise, Beck noticed California Supreme Court which Jorge Navarette replied September 29, 2020, with the "In RE Walker" scheme to defraud. (Ex. 182, p. 2-10, Document 15-42, PageID.3349-57). (This scheme was *designed* by active market participant regulators to defraud the public, delay public rights and equity through procedural artifice, and steal money and property if one is objective. It is State Bar's job to stop Catanzarite's ongoing schemes to defraud, not Beck's.)

#### 2. Overt Postal Mail After Timely Notice, Artifices to Defraud Beck in March 2021

Beck conformed to the onerous demands of Navarette over several months then Beck received another letter from Jorge Navarette March 22, 2021, exerting Enterprise control, to defraud Beck and

continue Catanzarite's schemes: "The court has directed that the accusation...be returned to you unfiled, and on this date." (Ex. 183, p. 2, Document 15-43) On February 14, 2022, involved in the overt acts of May 19, 2022, with Duran, Grandt, Wilson, and Cardona in advocating for Catanzarite's false stories (Ex. 120, pp. 1-12, Document 15-27, PageID.3195-206) – Carissa Andresen filed in OCSC (Ex. 179, pp. 2-3) Beck's "unfiled" accusation from 2021 as if it were dispositive of State Bar's duty to protect Beck and others or to stop the serial fraud shown by overwhelming evidence (Ex. 179, pp. 5-61).

### 3. Jorge E. Navarette Overtly Defrauds Beck and the United States

California Supreme Court clerk and Executive Officer Jorge E. Navarette, violating federal antitrust laws October 17, 2022, while exercising control over the Enterprise, filed an antitrust petition on Beck's behalf without Beck's authorization (Ex. 67 fraudulent CSC docket entry; Ex. 305, p. 2, Document 15-75, PageID.3646 for Retana letter to Navarette that Beck "has 60 days to file a petition" and Id. at p. 5, 6PageID.3650 "State Bar rejects that S276939 was filed by OGC without authority") Beck's case was S276517, it was manipulated by Retana as above and frivolous "determination," and Navarette filed it with Retana or others in California Supreme without authority from Beck. Navarette's conduct with Retana led to fraudulent "En Banc" decision, which decision and petition ignored binding decisional law of the highest Court in the United States using Enterprise control, and it defrauded Beck as well as the United States' interests, $3.63 trillion in commerce. (Ex. 61, p. 2, Document 15-17, PageID.3138).

**g. Ellin Davtyan, Esq. Pattern of Racketeering Activity 18 U.S.C. § 1962(b)**

1. Davtyan is General Counsel -- All of Retana, Grandt's Acts of Control are Her Acts

Davtyan is General Counsel for the Enterprise, and thus in charge of underlings Retana, Grandt, and Tsai – shown in caption and signed in waiving service to this case (Docket #13). The foregoing acts of racketeering by Retana, Grandt's control of the Enterprise under 18 U.S.C. § 1962(b) are hers, too.

2. December 15, 2022, Davtyan Seeks to Control Enterprise After Beck Refuses Grandt

Between May 19, 2022 and May 25, 2022, Andresen, Cardona, Duran, Wilson communicate about Beck to control the Enterprise (Ex. 120, pp. 1-12, Document 15-27, PageID.3195-206) which Grandt tried to conceal under color of law and to control the enterprise (Ibid.) Davtyan stepped in to in two acts (one wire, one mail) to conceal Grandt's disclosures and fraud as above (Ex. 120, pp. 2-3): "As

1  we have already informed you...you received an email containing communication that is confidential

2  and privileged...you have no right to share or retain the State Bar's privileged

3  communications...identify all persons to whom you have distributed the communication and destroy

4  any copies in your possession. Sincerely, Ellin Davtyan." (Ex. 186, p. 2) (continuing the scheme, also

5  seeking to control the Enterprise)

6    3. Beck Requested Records on Fraudulent Antitrust Petition Filed Without his Authority

7  Davtyan (Ex. 305, p. 7, Document 15-75, PageID.3651) maintains "State Bar rejects that

8  S276939 was filed by OGC without authority." (Id. at p. 6, PageID.3650, "Request No. 5"). (Beck did

9  not authorize anyone to file this petition on his behalf, and it did defraud the United States, the public,

10  and Beck because State Bar is an illegal trust) (Beck Declaration in Support, p. 2, ¶ 2) ("Beck Decl.").

11    **g. Ruben Duran, Esq. Pattern of Racketeering Activity**

12    1. Chairman Duran Controls 44 State Bar Schemes to Defraud by Mail/Wire Daily

13  Using the wire and mail about 44 times per day from its postal facilities in Los Angeles and San

14  Francisco (Ex. 136, Document 15-29, PageID.3248), Duran controls the entire Enterprise through BOT

15  (Ex. 219). Duran coordinates and controls fraudulent Enterprise schemes actively with Cardona, Grandt,

16  Wilson (Ex. 120, pp. 2-12, Document 15-27, PageID.3196-3206).

17    2. Chairman Duran Conceals Materiality of Government Claims from State Auditor

18  Due to Duran's control of the Enterprise, California State Auditor Report 2022-030 April 2022,

19  makes no reference to material liability that Beck's cases present against State Bar (Ex. 34, pp. 2-76,

20  Document 1-35, PageID.1371-45). Duran knew he could defraud Beck using OCSC via Grandt as above

21  or obstruct OCSC proceedings using control of judicial appointments (Ex. 252, Document 15-61; Ex.

22  227, Document 15-27) before delivering Beck his claim denial letter (Ex. 187, Document 15-187).

23    3. Chairman Duran Conceals Materiality of Government Claims from Governor Newsom

24  Not even the Office of Governor Newsom possessed full disclosure of the claims filed by Beck

25  on behalf of the U.S. or ROES 1-150,000 as of January 8, 2023 (Ex. 239, pp. 2-3, Document 15-57,

26  PageID.3405-6). (Beck's claims impute liability to State of California as a matter of law for its actors,

27  but Duran is accustomed to using "State Bar Court" to stop Enterprise threats by attorneys).

28

1          5. <u>Chairman Duran Controls  Fraudulent Schemes of the Enterprise with Malice</u>

2          Because Beck chose to sue The State Bar of California in Government Claims Act litigation,

3     Chairman Duran chose to allow Catanzarite Law Corporation schemes to defraud Beck and others with

4     actual knowledge. "Via U.S. Mail and email to : <u>justintimesd@gmail.com</u>" responding to "May 19 and

5     July 12, 2022 emails to the Chair of the State Bar Board of Trustees, Ruben Duran. Mr. Duran has

6     referred this matter for he Office of General Counsel for response...As Chair of the Board of Trustees,

7     Mr. Duran declines to waive confidentiality...such waiver is not warranted for protection of the

8     public...[because] claims regarding attorney misconduct...have been heavily litigated...and you have a

9     pending lawsuit against the State Bar in which you repeat your claims." (<u>Document #15</u>; <u>PageID.2772</u>)

10    (<u>Ex. 26, p. 3, Document 15-8, PageID.2908-10</u>). When Duran directed Suzanne Grandt to write this

11    letter, he actually knew of several parallel schemes to defraud the public unrelated to Beck. ("You are

12    aware of at least 34 violations of CRPC based on clear and convincing evidence consisting of final court

13    orders that explicitly describes serial misconduct in California courts and through abuse of *pro hac vice*

14    privileges using The State Bar of California credentials in other jurisdiction. Attached is a declaration

15    filed in January 2022 containing serial violations (by final order of Courts of Appeal, Federal

16    Bankruptcy Court, and California Supreme Court) of CRPC known to The State Bar of California, you

17    [Carissa Andresen] (SBN 278118), Mr. Morgenstern (SBN 190560), Mr. Kumar...Mr. Duran (SBN

18    197780), and the Complaint Review Unit." <u>Ex. 120, p. 10</u>). (Using control of the Enterprise with Grandt,

19    Duran defrauded Beck and other members of the public willfully, with malice, here).

20          6. <u>Overt Appointment of Three Justices Presiding Over OCSC to Control Enterprise</u>

21          The State Bar of California controls not only public rights and equity through Office of General

22    Counsel and Office of Chief Trial Counsel with Board of Trustees in a unity of unlawful interests and

23    trust after 2015 (<u>Ex. 120, pp. 1-12, Document 15-27, PageID.3195-206</u>), Duran as Chairman also

24    controls the judiciary itself through Board of Trustees. (<u>Ex. 252, pp. 2-4, Document 15-61,</u>

25    <u>PageID.3432-4</u>)

26          To control the Enterprise, Beck's rights and to prevent him from fair and neutral adjudication

27    against the government, three Court of Appeal justices were nominated, recommended, or confirmed

28    overtly on specific dates, which Justices preside over Orange County Superior Court proceedings

1  (Document 15, citations). This is a matter of interest to the United States, not just Beck's interests or

2  ROES 1-150,000. Duran overtly obstructs justice using racketeering activity against the public he is

3  bound to protect, which is unconscionable. (Ex. 252, Document 15-61 showing control by the BOT

4  where Duran is Chair; Ex. 227, Document 15-27 showing State Bar's role in placing Associate Justice

5  Sanchez two days before Beck's denial of government claim letter November 12, 2021, Ex. 187,

6  Document 15-45; Ex. 230, Document 15-53 showing State Bar's role in placing Associate Justice

7  Motoike May 2, 2022 on Beck's filing of first amended complaint in OCSC; Ex. 231, Document 15-54

8  showing State Bar's role in placing Associate Justice Delaney when Beck sought summary judgment in

9  OCSC August 8, 2022 then October 11, 2022 when OCSC's John C. Gastelum sustained demurrer

10  without leave to amend without any legal basis to do so) Office of Governor had "no records," so this

11  was Duran as Chair. (Ex. 239, p. 3, "no records"). (beyond any reasonable doubt mathematically, these

12  overt appointments were not coincidences in light of the overwhelming, cumulative evidence violative

13  of 18 U.S.C. § 1962(b) shown by Beck without even one iota of discovery – which discovery Beck never

14  expects to receive due to Enterprise control).

15              7. Duran Controls the Enterprise with Malice, Impunity, and Ongoing Fraud

16              "I speak on behalf of the Board of Trustees…we take our statutory mission to protect the public

17  seriously," and "we can never let something like this this to happen again." (Ex. 278, p. 2, Document

18  15-69, PageID.3526) (While Duran made that statement overtly using the wire, Duran was engaged in

19  the foregoing conduct and intended to defraud the public due to his control over the Enterprise.

20  Objectively, at least by a preponderance, Duran does not care about the public, only State Bar attorneys).

21              Shown in Los Angeles Times reporting (e.g., Ex. 17). ("As Tom Girardi skated, California State

22  Bar went after Black attorneys", Ex. 277, pp. 2-24; including Anyanwu concerning a $4,000 trust

23  account discrepancy; "I was an easy target for them and an easy prey," said Anyanwu who was helping

24  a group of people experiencing homelessness in Los Angeles on contingency. "The State Bar has

25  repeatedly failed to police prominent and wealthy members of the legal community" Id. at p. 3 like

26  Catanzarite and Girardi) State Bar carried on the racketeering activity of Caucasian attorneys associated

27  with Catanzarite for years, knowing it was engaged in fraudulent schemes (Ex. 31, p. 6; "$15,243.43"

28  sanctions in Case No. 18-23750, p. 7; "$11,639.25" in Case No. 19-01291, p. 8; "49,020.50" in sanctions

3:22-CV-01616-BAS-DDL

in Case No. 19-01291, p.9; "Via Certified Mail" "Report of Kenneth J. Catanzarite" regarding "plaintiff" Richard Carlson who did not believe he had suffered damages before 9 putative class actions were filed "on behalf of 13,800 plus" investors after being visited at his home when he wasn't seeking an attorney; Catanzarite, admitting to more waste defrauding the U.S.: "The Securities & Exchange Commission has filed an amicus opposition brief") (Ex. 188, "I had a call phone call today with a lawyer named Matt Kinley out of Long Beach…Since 2015, he has represented a client that has been sued by Catanzarite in a manner very similar to the way Catanzarite has operated in [Beck's] situation….that case involved a partnership dispute [that Jim Travis Tice also continued in Court of Appeal], and like here, Catanzarite started filing lawsuits and papers claiming to be representing the partnership" and to "coordinate with Matt…to get your complaints put before the bar.")

(4) **Injuries to Beck's business and property caused by the 18 U.S.C. § 1962(b) violations.**

("[P]laintiffs must show that their injuries were 'proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity.") (quoting Crowe v. Henry, 43 F.3d 198, 205 (5th Cir. 1995); Advoc. Org. for Patients & Providers v. Auto Club. Ins. Ass'n, 176 F.3d 315, 329 (6th Cir. 1999). The control and attempted control maintained over enterprise defendants OCSC, State Bar, and CLCL by Grandt, Retana, Duran, Cardona, Catanzarite, Davtyan, Navarette slandered Beck (Beck Decl. ¶ 3), his career earnings capacity in perpetuity (Id. at ¶ 4), his startup Contakt World Technologies Corp. (Id. at ¶ 5), his media career opportunities with Will Ferrell (Id. at ¶ 6), his judgments in OCSC related to his ownership in a $261 merger with a Canadian issuer held in the U.S. (Id. at ¶ 7), entries of default and default money judgments against State of California in OCSC which refused to appear (Id. at ¶ 8), and his ability to develop other business and property of similar like and kind for not less than 25-years. (Id. at ¶ 9). Alexander Grant & Co. v. Tiffany Indus., Inc., 770 F.2d 717, 719 (8th Cir. 1985) (injury to reputation as national accounting firm compensable under RICO); Lewis v. Lhu, 696 F. Supp. 723, 727 (D.D.C. 1988 (damages for reputation of telecommunications consultant caused by "smear campaign" recoverable under RICO); Diaz v. Gates, 420 F.3d 897 (pecuniary loss due to false imprisonment was a discrete "injury to business or property" that was not derivative of personal injuries; rejecting defendant's argument that a RICO cause of action

1   was only available to remedy injuries to business or property interests targeted directly by defendants'

2   predicate acts).

3       Catanzarite used Enterprise control to willfully destroy Beck's business, property, and rights.

4   (Ex. 203, pp. 169-71) DelMorgan banker valuation slide. (Ex. 203, p. 180). Draft of merger agreement

5   in Canada, which shares Beck would hold in the U.S. (Ex. 276, pp. 2-71). Beck seeks $32,667,351 from

6   the Canadian issuer. Beck shows a third-party valuation, confirmation of causation. (Ex. 33). Beck seeks

7   $32,667,351 as being a reasonable basis in a similar transaction that will not occur but for the violations

8   for the remainder of Beck's career. Beck seeks $5,649,297 from his business and property value in 2021

9   in Contakt World Technologies Corp. Beck seeks $1,700,000 from fees, policies, and converted assets.

10   Beck seeks $138,889,249 in other lifetime remuneration he won't receive. If for any reason any form of

11   damages above fail on the bases he claims, then Beck seeks the same amount of damages as being the

12   judgments that were compromised in State Court that would have been issued Beck on the merits but

13   for the control over the RICO Enterprise shown. Smagin v. Yegiazaryan, 37 F.4th 562 (9th Cir., June

14   10, 2022). State of California should have a default money judgment already, but OCSC refused to enter

15   any form of default due to Enterprise control. (Beck Decl. ¶ 8). If for any reason any form of damages

16   fail as above, then Beck seeks them for proving Count VI as being antitrust violations (Docket #15).

17       Beck's claims cause liability to The State Bar of California and State of California because each

18   had a mandatory or negative duty under 18 U.S.C. § 1962(b) and Cal. Gov. Cod. § 815.6:

19         Cal. Gov. Cod. §815.6. Added by Stats. 1963, Ch. 1681. "Where a public entity is under a
20         mandatory duty imposed by an enactment that is designed to protect against the risk of a particular
      kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure
21         to discharge the duty unless the public entity establishes that it exercised reasonable diligence to
      discharge the duty." (Pleaded at Docket #7, PageID.413)

22
23       As pleaded at Docket #7, PageID.524-6, supported ***Docket #14*** with exhibits in support and in

24   his declaration (Beck Decl.), Beck seeks money judgment in the amount $210,683,999 in damages and

25   $632,051,997 in treble damages jointly and severally against Grandt, Retana, Duran, Cardona, Davtyan,

26   Morgenstern, Catanzarite, Navarette, OCSC, State Bar, and State. Beck seeks permanent injunctive

27   relief under F.R.Civ.P. 65. Beck seeks a racketeering investigation under 18 U.S.C. § 1968 on behalf of

28   himself, and on behalf of the United States as it relates to $3.63 trillion in interstate commerce, and to

help quantify damages caused by State Bar to ROES 1-150,000 who cannot help themselves.

IV.    **CONCLUSION**

"The statutes that provide for liability [against the government and its actors] do not need to be part of the Government Claims Act, and do not need to provide specifically on their face that they apply to public entities." See, <u>Rodriguez v. Inglewood Unified School Dist.</u> (1986) 186 Cal.App.3d 707. The State Bar of California and State of California are liable in this action under Cal. Gov. Cod. § 815.6.

"[D]iscrimination may be so unjustifiable as to be violative of due process." <u>Bolling v. Sharpe,</u> 347 U.S. 497, 498-99 (1954). "In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government" to restrain racketeering by state actors and those working with them without clearly articulated policy. (<u>Id</u>.) The United States must act if State fails.

"If left unchecked, [corruption] poses a powerful threat to democratic society. It erodes public confidence in the institutions of government. [Corruption] distorts the democratic process that it is supposed to fairly resolve competing meritorious claims to limited resources on a rational basis—almost always to the detriment of the most disadvantaged members of society. This undermines the legitimacy of government and short-circuits the hope of those who have not prevailed or benefited that there is someone in government who will faithfully serve, rather than sellout, their interest." (<u>Ex. 279, p. 4, from William F. Weld, Asst. AG, Feb. 1988 US DOJ</u>) The State Bar of California is corrupt, beyond repair.

Beyond Beck, about 44 times per day (<u>Ex. 136, Document 15-29, PageID.3248</u>), the interests of United States citizens are being sold out in favor of corrupt lawyers who abuse the public trust in California, and across the United States using California's authority via pro hac vice admittance. (e.g., <u>Ex. 42 for Girardi, Griffin, and Lira, Ex. 3 for Catanzarite</u>) This is Enterprise control, too.

Beck requests this Court enter summary judgment on Count III, or summary adjudication, money judgments for his damages. He requests the Court order pre-trial conference and jury trial as quickly as practicable because Beck does not expect to receive any form of reliable discovery from the actors engaged in the conduct at issue unless it is forced by the United States as nominal defendant – because The State Bar of California does not care about the public, and it certainly does not care about Beck.

Respectfully Submitted,

February 6, 2023

Justin S. Beck, *In Propria Persona*

25

3:22-CV-01616-BAS-DDL

1

## **PROOF OF SERVICE**

2       I, Justin S. Beck, hereby declare: that I am over the age of eighteen years, and I am a

3  party to this action and acting in propria persona, and that my address is 3501 Roselle St., Oceanside, CA 92056. February 6, 2023, I served one copy of

4  the following documents:

5      **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT [COUNT III]; DECLARATION OF JUSTIN S. BECK IN SUPPORT OF MOTION**

6  **FOR SUMMARY JUDGMENT [COUNT III]; MEMORANDUM IN SUPPORT; EXHIBITS IN SUPPORT OF ELEMENTS**

7

8

9      Participants in the case who are registered CM/ECF users will be served.

10    **BY ELECTRONIC MAIL by personally transmitting a true copy thereof via an**

11  **electronic mail service connected to the internet, addressed to the email addresses:**

12  kcatanzarite@catanzarite.com      And a Copy By Mail:

13  charles.tsai@calbar.ca.gov      State of California      Judicial Council

14  eli.morgenstern@calbar.ca.gov   Office of Attorney General  455 Golden Gate Ave.
      1300 "I" Street         San Francisco, CA 94102

15  suzanne.grandt@calbar.ca.gov   Sacramento, CA 95814

16  ruben.duran@calbar.ca.gov     The State Bar of California   Jorge E. Navarette
                        350 McCallister St

17  AGelectronicservice@doj.ca.gov  Office of General Counsel  San Francisco, CA 94102
      180 Howard Street

18  amycooper05@yahoo.com      San Francisco, CA 94105

19  chhiggerson@gmail.com       Catanzarite Law Corporation

20  jim.duffy55@comcast.net      2331 W. Lincoln Ave.
                        Anaheim, CA 92801

21  mo.zakhireh@gmail.com

22  jorge.navarette@jud.ca.gov    jtt@tice.lawyer   todd.spitzer@da.ocgov.com

23  ellin.davtyan@calbar.ca.gov   robert.retana@calbar.ca.gov  george.cardona@calbar.ca.gov

24      I declare under penalty of perjury under the laws of the State of California that

25  the foregoing is true and correct.

26      FEBRUARY 6, 2023

                          Justin S. Beck

27

28