EXHIBIT 276



**MERGER AGREEMENT**

**among**

**WESTERN TROY CAPITAL RESOURCES, INC., AND**

**WRY SUB, INC. AND**

**CULTIVATION TECHNOLOGIES, INC.**

**MAY __, 2019**

Deleted: MARCH

## Table of Contents

Article I. Definitions ..... 1
Article II. Business Combination ..... 9
Section 2.01 Agreement to Merge. ..... 9
Section 2.02 WRY Asset Transfer and WRY Agreements ..... 9
Section 2.03 Private Placement and Exemption for Other Company Shareholders ..... 9
Section 2.04 NEO Listing Statement, Delisting from TSXV and WRY Meeting ..... 10
Section 2.05 Company Reorganization ..... 11
Section 2.06 WRY Reorganization ..... 12
Section 2.07 Merger Events ..... 12
Section 2.08 Share Certificates ..... 12
Section 2.09 Resulting Issuer ..... 13
Section 2.10 Merged Corporation ..... 13
Section 2.11 Fractional Shares ..... 14
Section 2.12 Dissenting Shares ..... 14
Section 2.13 Effect of Merger ..... 15
Section 2.14 Filing of Articles of Merger and Plan of Merger ..... 15
Section 2.15 U.S. Tax Treatment ..... 15
Section 2.16 Canadian Tax Election ..... 16
Section 2.17 Post-Merger Reorganization ..... 16
Article III. Representations and Warranties of WRY and Subco ..... 16
Section 3.01 Organization and Good Standing ..... 17
Section 3.02 Consents, Authorizations, and Binding Effect ..... 17
Section 3.03 Litigation and Compliance ..... 18
Section 3.04 Public Filings; Financial Statements ..... 19
Section 3.05 Taxes ..... 20
Section 3.06 Pension and Other Employee Plans and Agreement ..... 20
Section 3.07 Labor Relations ..... 20
Section 3.08 Contracts, Etc. ..... 20
Section 3.09 Absence of Certain Changes, Etc. ..... 20
Section 3.10 Subsidiaries ..... 21
Section 3.11 Capitalization ..... 21
Section 3.12 Environmental Matters ..... 22
Section 3.13 License and Title ..... 22

Deleted: 11
Deleted: 11
Deleted: 14
Deleted: 16
Deleted: 16
Deleted: 18
Deleted: 19
Deleted: 19
Deleted: 20
Deleted: 21

DRAFT

Section 3.14 Indebtedness ....22
Section 3.15 Undisclosed Liabilities ....22
Section 3.16 Due Diligence Investigations....23
Deleted: 22
Section 3.17 Brokers and Finders....23
Deleted: 22
Section 3.18 Anti-Bribery Laws....23
Deleted: 22
Section 3.19 Investment Company Status ....23
Section 3.20 No Bad Actor Disqualifications....23
Section 3.21 No Other Representations and Warranties ....24
Deleted: 23
Article IV. Representations and Warranties of the Company....24
Deleted: 23
Section 4.01 Organization and Good Standing....24
Deleted: 23
Section 4.02 Consents, Authorizations, and Binding Effect ....24
Section 4.03 Litigation and Compliance ....25
Section 4.04 Financial Statements....26
Deleted: 25
Section 4.05 Taxes....26
Section 4.06 Brokers....27
Deleted: 26
Section 4.07 Anti-Bribery Laws....27
Deleted: 26
Section 4.08 Subsidiaries....27
Section 4.09 Capitalization....27
Section 4.10 Investment Company Status ....28
Section 4.11 Foreign Private Issuer Status ....28
Section 4.12 Exemption from Registration ....28
Section 4.13 Title to Assets....29
Deleted: 28
Section 4.14 No Bad Actor Disqualifications....29
Section 4.15 No Other Representations and Warranties; United States Federal Laws ....29
Article V. Survival of Representations and Warranties....30
Deleted: 29
Section 5.01 No Survival of Representations and Warranties....30
Deleted: 29
Article VI. Covenants of the Company....30
Deleted: 29
Section 6.01 Necessary Consents ....30
Deleted: 29
Section 6.02 Ordinary Course Operations ....30
Deleted: 29
Section 6.03 Non-Solicitation....31
Deleted: 30
Section 6.04 All Other Action ....31
Deleted: 30
Article VII. Conditions to Obligations of Parties....31
Section 7.01 Conditions for the Benefit of WRY and Subco ....31
Section 7.02 Conditions for the Benefit of the Company....32
Deleted: 31
Section 7.03 Mutual Conditions ....33
Deleted: 32

DRAFT

Article VIII. Closing ....................................................................................................34 Deleted: 33
Section 8.01 Time of Closing ..........................................................................................34 Deleted: 33
Section 8.02 Company Closing Documents ....................................................................34 Deleted: 33
Section 8.03 WRY Closing Documents ..........................................................................34 Deleted: 33
Article IX. Termination..................................................................................................35 Deleted: 34
Section 9.01 Effect of Termination ..................................................................................35 Deleted: 34
Article X. General.........................................................................................................35 Deleted: 34
Section 10.01 Further Actions ..........................................................................................35 Deleted: 34
Section 10.02 Entire Agreement........................................................................................35
Section 10.03 Descriptive Headings..................................................................................36 Deleted: 35
Section 10.04 Notices ........................................................................................................36 Deleted: 35
Section 10.05 Governing Law ..........................................................................................37 Deleted: 36
Section 10.06 Successors and Assigns ..............................................................................37 Deleted: 36
Section 10.07 Public Disclosure and Confidential Information........................................37 Deleted: 36
Section 10.08 Expenses ....................................................................................................37 Deleted: 36
Section 10.09 Remedies....................................................................................................37
Section 10.10 Waivers and Amendments..........................................................................38 Deleted: 37
Section 10.11 Illegalities..................................................................................................38 Deleted: 37
Section 10.12 Currency ....................................................................................................38 Deleted: 37
Section 10.13 Counterparts................................................................................................38 Deleted: 37
Section 10.14 Time of Essence..........................................................................................38 Deleted: 37

DRAFT

DRAFT

## Article I. Definitions

**1.1 Definitions.** In this Agreement (including the preamble, recitals and each Schedule hereto), the following terms have the meanings ascribed thereto as follows:

"**Advisers**" when used with respect to any Person, shall mean such Person's directors, officers, employees, representatives, agents, counsel, accountants, advisers, engineers, and consultants.

"**Affiliate**" has the meaning specified in the OBCA.

"**AIF**" means an annual information form in the form prescribed by *National Instrument 51-102 Continuous Discloser Form 51-102F2 Annual Information Form*, which shall be filed on SEDAR concurrent or after the Effective Date.

"**Agreement**" means this Agreement and any instrument supplemental or ancillary hereto; and the expressions "**Article**", "**Section**", and "**Subsection**" followed by a number means and refer to the specified Article, Section or Subsection of this Agreement.

"**Applicable Securities Laws**" means applicable securities legislation, securities regulation and securities rules, and the policies, notices, instruments and blanket orders having the force of law, in force from time to time.

"**Articles of Merger and Plan of Merger**" means the articles of merger and plan of merger, copies of which are attached hereto as Schedule "C", to be filed with the California Department of State to effect the Merger.

"**Associate**" has the meaning ascribed to such term in the OBCA.

"**BCBCA**" means the *Business Corporations Act* (British Columbia).

"**Breaching Party**" has the meaning given to the term in Subsection 9.1(b).

"**Business Day**" means any day, other than a Saturday, Sunday or statutory holiday in Toronto, Ontario or in the State of California.

"**Business Combination**" means the completion of the steps set out in Article 2 of this Agreement, including the Merger, on the basis set out in this Agreement resulting in the reverse takeover of WRY by the Company.

"**Canadian Resident Shareholder**" means a beneficial holder of shares of the Company who, for purposes of the *Income Tax Act* (Canada), is either resident in Canada or a "**Canadian partnership**".

"**Canadian Securities Laws**" means all applicable securities Laws in Canada and the respective rules and regulations made thereunder, together with applicable published policy statements, instruments, orders and rulings of the securities regulatory authorities in such applicable jurisdictions having the force of law.

"**CGCL**" means the California *General Corporation Law* under the California *Corporations Code*.

"**Class A Compressed Shares**" means the class of shares in the capital of the Resulting Issuer having the terms set forth in Schedule "B".

"**Code**" means the United States *Internal Revenue Code of 1986*, as amended.

**EXHIBIT "A"**

**ARTICLES**

**ARTICLES OF INCORPORATION
OF
CULTIVATION TECHNOLOGIES, INC.**

The undersigned, being Justin Beck, the Chief Executive Officer, President, and Richard Probst, the Secretary and Chief Financial Officer, respectively of the Surviving Entity, Cultivation Technologies Inc., on completion of merger with WRY Sub, Inc. do certify the Articles of the Surviving Entity pursuant to the Corporation Law of the State of California is as follows:

**Deleted:**

**ARTICLE I**

The name of this corporation is CULTIVATION TECHNOLOGIES, INC.

**ARTICLE II**

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**ARTICLE III**

The name and address of this corporation's initial agent for service of process is:

Robert A. Bernheimer
45025 Manitou Drive, Suite 3
Indian Wells, California 92210

**Deleted:** a

**ARTICLE IV**

This corporation is authorized to issue one Hundred Thousand (100,000) shares of Common Stock.

**ARTICLE V**

1) The corporation is authorized to indemnify the directors and officers of the corporation to the fullest extent permissible under California law.
2) This Corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporation Cord) through bylaw provisions, agreements with agents, vote of shareholders or disinterested directors or otherwise, in excess of indemnification otherwise permitted by Section 317 of the California Corporation Code, subject only to applicable limits set forth in Section 204 of the California Corporation Code with respect to the corporation and its shareholders.

ARTICLE VI





DRAFT

The entity street address and mailing address of CULTIVATION TECHNOLOGIES INC., is 1 Technology Drive, Suite J703, Irvine, CA 92618

Commented [JB 5]: Rick to add Palm Desert address.

IN WITNESS WHEREOF, the undersigned has executed these Articles of Incorporation on ____, 2019, at Newport Beach California.

______________________________

[Name of Signatory]



**SCHEDULE "D"**

**Section 4.03 Litigation and Compliance**

***Denise Pinkerton as Attorney-in-Fact for Roger Root* v. *Cultivation Technologies, Inc.*** *et al, Case No. 30-2018 – 01018922 – Superior Court of California*

The complaint asserts claims on behalf of investor Roger Root, derivatively on behalf of Mobile Farming Systems, Inc. ("**MFS**"). Root, a resident of Florida, invested over US$400,000 in MFS stock and was told by MFS representatives, including directors and officers Richard Probst, Richard O'Connor and Amy Cooper, that MFS owned CTI as a subsidiary. The lawsuit contends that MFS is the sole shareholder of CTI as of March 30, 2015 and that CTI directors and officers breached fiduciary duties to MFS as its shareholder including that CTI stock sales and other actions on and after June 30, 2015 are improper. Root also asserts individual claims for securities fraud. The Company denies these claims and intends to vigorously defend itself against this action.

***Mobile Farming Systems, Inc.* v. *Richard Probst*** *et al, Case No. ________, Superior Court of California.*

**Commented [JB 6]:** James to up date including the judicial determination made on Wednesday and the third related filing.

DRAFT