1  ELLIN DAVTYAN (238608)
2  General Counsel
   ROBERT G. RETANA (148677)
3  Deputy General Counsel
   CHARLES TSAI (266480)
4  Assistant General Counsel
5  OFFICE OF GENERAL COUNSEL
   THE STATE BAR OF CALIFORNIA
6  845 S. Figueroa Street
7  Los Angeles CA 90017
   Tel: (213) 765-1000
8  Fax: (415) 538-2321
9  Email: charles.tsai@calbar.ca.gov

10 Attorneys for Defendants The State Bar of California; Ruben Duran; Suzanne
11 Cecilia Grandt; Eli David Morgenstern; Leah Wilson; Ellin Davtyan; Robert
12 Retana; George Cardona

13              UNITED STATES DISTRICT COURT
14             SOUTHERN DISTRICT OF CALIFORNIA

15 JUSTIN S. BECK, individually, and as        Case No.   3:22-cv-01616-BAS-DDL
   guardian ad litem to ROES 1-150,000,
16                                              **STATE BAR DEFENDANTS'**
17         Plaintiff,                           **REQUEST FOR JUDICIAL**
                                                **NOTICE IN SUPPORT OF**
18 v.                                           **MOTION TO DISMISS FIRST**
                                                **AMENDED COMPLAINT**
19
   CATANZARITE LAW                              [*Motion to Dismiss First Amended*
20 CORPORATION; THE STATE BAR                   *Complaint and Proposed Order filed*
   OF CALIFORNIA; RUBEN DURAN,                  *concurrently herewith*]
21 ESQ.; SUZANNE CECILIA
   GRANDT, ESQ.; RICHARD                        HEARING DATE:  March 27, 2023
22 FRANCIS O'CONNOR, JR.
   MOHAMMED ZAKHIREH; JAMES                     **NO ORAL ARGUMENT UNLESS**
23 DUFFY; STATE OF CALIFORNIA;                  **ORDERED BY THE COURT**
   KENNETH CATANZARITE, ESQ.;
24 JIM TRAVIS TICE, ESQ.; NICOLE
   MARIE CATANZARITE                            The Honorable Cynthia A. Bashant
25 WOODWARD, ESQ.; BRANDON
   WOODWARD, ESQ.; TIM JAMES
26 O'KEEFE, ESQ.; AMY JEANETTE
   COOPER; CLIFF HIGGERSON;
27 JAMES DUFFY; ELI DAVID
   MORGENSTERN, ESQ.; LEAH
28 WILSON, ESQ.; ROBERT GEORGE

RETANA, ESQ.; ELLIN DAVTYAN, ESQ.; JOHN C. GASTELUM; JORGE E. NAVARETTE; GEORGE SARGENT CARDONA, ESQ.; and ANTHONY B. SCUDDER,

      Defendants.

**TO PLAINTIFF, IN PRO PER, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that pursuant to Federal Rule of Evidence 201, Defendants the State Bar of California ("State Bar"), Ruben Duran, Suzanne Grandt, Eli Morgenstern, Leah Wilson, Ellin Davtyan, Robert Retana, and George Cardona hereby request that this Court take judicial notice of the following documents in support of the State Bar defendants' motion to dismiss Plaintiff's First Amended Complaint for Damages & Extraordinary Relief ("FAC") as to all claims against the State Bar defendants.

1. Plaintiff's First Amended Complaint for Damages & Injunctive Relief, filed May 2, 2022, in the matter of *Beck v. The State Bar of California, et al.*, Case Number 30-2021-01237499, a true and correct copy of which is attached hereto as Exhibit 1. Exhibit 1 is a public record of the Orange County Superior Court.

2. Defendants Ruben Duran, Carissa Andresen, and Suzanne Grandt's Notice of Demurrer and Demurrer to Plaintiff's First Amended Complaint, filed August 22, 2022, in the matter of *Beck v. The State Bar of California, et al.*, Case Number 30-2021-01237499, a true and correct copy of which is attached hereto as Exhibit 2. Exhibit 2 is a public record of the Orange County Superior Court.

3. Notice of Ruling Regarding Defendants the State Bar of California, Anand Kumar, Eli Morgenstern, and Joy Nunley's Demurrer to First Amended Complaint, filed October 13, 2022, in the matter of *Beck v. The State Bar of California, et al.*, Case Number 30-2021-01237499, a true and correct copy of which is attached hereto as Exhibit 3. Exhibit 3 is a public record of the Orange County Superior Court.

4. Minute Order, dated January 6, 2023, in the matter of *Beck v. The State Bar of California, et al.*, Case Number 30-2021-01237499, a true and

correct copy of which is attached hereto as Exhibit 4.  Exhibit 4 is a public record of the Orange County Superior Court.

5.   Order Remanding Action and Denying as Moot IFP Request, dated January 12, 2023, in the matter of *Beck v. The State of California et al.*, Case Number 8:23-cv-00022-FWS-ADS, a true and correct copy of which is attached hereto as Exhibit 5.  Exhibit 5 is a public record of the United States District Court Central District of California.

6.   Letter to Orange County Superior Court dated January 12, 2023, in the matter of *Beck v. The State of California et al.*, Case Number 8:23-cv-00022-FWS-ADS, a true and correct copy of which is attached hereto as Exhibit 6.  Exhibit 6 is a public record of the United States District Court Central District of California.

7.   Order on Request to Proceed In Forma Pauperis, dated January 25, 2023, in the matter of *Beck v. Catanzarite et al.*, Case Number 8:23-cv-00018-JVS-DFM, a true and correct copy of which is attached hereto as Exhibit 7.  Exhibit 7 is a public record of the United States District Court Central District of California.

8.   Letter to Orange County Superior Court dated January 26, 2023, in the matter of *Beck v. Catanzarite et al.*, Case Number 8:23-cv-00018-JVS-DFM, a true and correct copy of which is attached hereto as Exhibit 8.  Exhibit 8 is a public record of the United States District Court Central District of California.

9.   Plaintiff's Complaint for Damages & Injunctive Relief, filed January 30, 2023, in the matter of *Beck v. The State Bar of California, et al.*, Case Number 23-cv-0164-MMA-DEB, a true and correct copy of which is attached hereto as Exhibit 9.  Exhibit 9 is a public record of the United States District Court Southern District of California.

10. Supreme Court of California, Administrative Order 2017-09-20, State Bar Antitrust Policy, filed September 26, 2017, a true and correct copy of which is attached hereto as Exhibit 10.  Exhibit 10 is a public record of the Supreme Court of California.

Rule 201 of the Federal Rules of Evidence authorizes a court to take judicial notice of a fact that is not subject to reasonable dispute because the fact "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  "A trial court may presume that public records are authentic and trustworthy."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999).

"[C]ourt orders and filings are proper subjects of judicial notice."  *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087 (C.D. Cal. 2015); see also, e.g., *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 955 n.3 (9th Cir. 2011) (taking judicial notice of petition for writ of mandamus and orders filed in Los Angeles Superior Court); *Louis v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1156 n.4 (C.D. Cal. 2006) (taking judicial notice of Los Angeles Superior Court order granting motion for judgment on the pleadings).

Accordingly, for the foregoing reasons, this Court should take judicial notice of Exhibits 1 through 10.

///
///
///
///
///
///
///

1    Dated: February 10, 2023         Respectfully submitted,

2

3                                          ELLIN DAVTYAN
                                         General Counsel

4                                          ROBERT G. RETANA
                                         Deputy General Counsel

5                                          OFFICE OF GENERAL COUNSEL
                                         THE STATE BAR OF CALIFORNIA

6

7                                  By: */s/ CHARLES TSAI*

8                                          CHARLES TSAI
                                         Assistant General Counsel

9

10                                          Attorneys for Defendants The State Bar
                                         of California; Ruben Duran; Suzanne

11                                          Cecilia Grandt; Eli David Morgenstern;
                                         Leah Wilson; Ellin Davtyan; Robert

12                                          Retana; George Cardona

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE FOR MOTION TO DISMISS FAC          3:22-cv-01616-BAS-DDL

# EXHIBIT 1

Exhibit 1
Page 1

Electronically Filed by Superior Court of California, County of Orange, 05/02/2022 08:00:09 AM.
30-2021-01237499-CU-PN-CJC - ROA # 60 - DAVID H. YAMASAKI, Clerk of the Court By Randi Baker, Deputy Clerk.
Case 3:22-cv-01616-AGS-DDL Document 12 Filed 12/23/22 PageID.422 Page 8 of 230

Justin S. Beck
justintimesd@gmail.com
3501 Roselle St.
Oceanside, California 92056
760-449-2509

*In Pro Per*

## IN THE SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE

JUSTIN S. BECK, an individual

              Plaintiff,

    v.

THE STATE BAR OF CALIFORNIA, a public
corporation and public entity; ANAND KUMAR,
an individual employee acting in an official
capacity; ELI DAVID MORGENSTERN, an
individual employee acting in an official capacity;
JOY NUNLEY, an individual employee acting in
an official capacity; THE STATE OF
CALIFORNIA, a state and public entity; and
DOES 1-30

              Defendants

    )
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 30-2021-01237499-CU-PN-CJC

Judge Assigned: Honorable John C. Gastelum

**PLAINTIFF JUSTIN S. BECK'S FIRST
AMENDED COMPLAINT FOR DAMAGES
& INJUNCTIVE RELIEF**

1) Negligence (Violation of Mandatory
Duties Imposed by GC 815.6; CCP 1714;
BPC 6001.1; BPC 6104)

2) Negligence (Reckless Violation of CCP
1714 under GC 815.3; GC 815; GC 815.2;
BPC 6001.1)

3) Negligence (Duty Violation of GC 815;
GC 815.2; GC 815.6; CCP 1714; BPC
6001.1)

4) Negligence (Injunctive Relief Under GC
814; BPC 6001.1)

5) Premises Liability (GC 834, et. seq.)

6) Intentional Infliction of Emotional Distress
(GC 815.3; GC 815; GC 815.2)

7) Conversion (GC 815.3; GC 815; GC
815.2)

**DEMAND FOR JURY TRIAL**

**Unlimited Civil Case**

[Filed concurrently with Declaration of Plaintiff
Justin S. Beck for First Amended Complaint; E-
Service Notice]

1       Plaintiff JUSTIN S. BECK ("Plaintiff" or "Beck") files this first amended complaint for

2 damages and injunctive relief ("FAC" or "Complaint") against public entity The State Bar of

3 California ("State Bar"); public employee or official Anand Kumar ("Kumar") acting in an official

4 capacity; public employee or official Eli David Morgenstern ("Morgenstern") acting in an official

5 capacity; public employee Joy Nunley ("Nunley") acting in an official capacity; public entity State of

6 California ("State"); and Does 1 through 30 ("Doe" or "Does") whose true names and capacities are as

7 yet unknown (where any individual defendant(s) will be referenced with State Bar together as

8 "Defendants"), seeking damages and injunctive relief, hereby alleging as follows:

9 <div align="center">**NATURE OF ACTION**</div>

10    1.  This action seeks relief expressly provided by statute for injury and other intentional torts

11 underlying Plaintiff's CTCA Claim presented per Gov. Cod. Section 910 against public entity State

12 Bar, public employees of State Bar known to Plaintiff, DOES including officials of State Bar, public

13 employees of State Bar, and other DOES, each acting in an official capacity for State Bar or other

14 public entities according to proof and subject to Gov. Cod. Sections 810, 814, 815, 815.3 and 815.6.

15    2.  Plaintiff alleges that counsel and State Bar staff who are making decisions pertaining to this

16 action are compromised. State Bar must recuse itself from the instant action, or State must assume

17 defense of this action, as a matter of law.  According to Michael S. Tilden, CPA – State Bar already

18 "failed to consistently address conflicts of interest between its staff and the attorneys it investigates."

19 State Bar thus allegedly lacks capacity to defend an action under CTCA and its own CRPC 1.7(d)(3).

20    3.  This action alleges negligence, fraud, corruption in violation of a general duty, affirmative

21 duty, statutory duty, special duty to protect, and/or mandatory duty that has caused Plaintiff's severe

22 injury and CTCA Claim, and the operation of a knowingly dangerous premises by State Bar which

23 causes an unacceptable, unreasonable, sufficiently noticed risk of severe injury to members of public.

24    4.  While expressly reserving his "paramount" rights and Defendants' obligations for his damages,

25 Plaintiff's claims for money or damages subject to CTCA against the State Bar as a public entity and

26 the State Bar's public employees were formally submitted to the State Bar in accordance with

27 Government Code section 910 subsections (a)-(f) to the State Bar Government Claims Office by

28 Plaintiff on or about October 18, 2021 through the State Bar's Government Tort Claim form.

**CLAIM PROCESS PRIOR TO ACTION**

5.  The purpose of Plaintiff's CTCA Claim was "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." (See, *Phillips v. Desert Hospital Dist.*, 49 Cal.3d 699, 705 (1989) quoting *City of San Jose v. Superior Court,* 12 Cal.3d 447, 455 (1974). A CTCA claim is sufficient if there is some compliance with all the statutory requirements and the claim discloses sufficient information to enable the public entity to investigate the merits of the claim so as to settle the claim, if appropriate. (*Id.* at pp. 456-457). The CTCA claim does not have to enumerate the specific causes of action or contain the detail and specificity required of a pleading." (See, Stockett, 34 Cal.4th at 446).

6.  As per *Gov. Cod. § 910*, Plaintiff formally noticed Defendants of his claims for damages and injunctive relief against the government on or about October 14, 2021 ("Claim Notice") under California Tort Claims Act codified by California Government Code sections 810 through 996.6 ("CTCA", or "Government Claims Act," or "Government Claims Act of 1963") while expressly reserving all rights to claims that are not allegedly not subject to CTCA.. Plaintiff also delivered a preliminary list of evidence to preserve for impending discovery. Defendants State Bar, Morgenstern, Kumar, and Nunley failed to respond or even acknowledge original Plaintiff's Claim Notice and preservation of evidence letter.

7.  Defendants do not dispute that Plaintiff filed a "sufficient," timely claim with State Bar using the form at its website: https://www.calbar.ca.gov/Portals/0/documents/forms/misc/Govt-Claim-Form.pdf in accordance with *Gov. Cod. § 910*, which included a "general description of the indebtedness, obligation, injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim" per *Gov. Cod. § 910* (d). Plaintiff included with specificity the objectively verifiable range of damages (requested by State Bar) and the basis for computations upon which his claim relied, and even introduced the statutory bases for his claims in good faith by furnishing a draft complaint for damages and injunctive relief ("CTCA Claim").

8.  According to *Gov. Cod..§ 810.8*, "'injury' means death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person." Plaintiff incorporates

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 4

this definition by reference within this Complaint for all injuries and damages alleged. On information and belief, Plaintiff thereon alleges he has suffered injury imputing compensatory, special, and punitive damages as outlined in his CTCA Claim as a direct, proximate, or legal result of Defendants' alleged negligent, unlawful, or corrupt acts or omissions for all times relevant.

9.  Known to State Bar, in the documents accompanying his CTCA Claim form to supplement sections 14-16 was "CLAIMANT'S INJURIES FROM STATE BAR NEGLIGENCE & COMPUTATION OF DAMAGES IN SUPPORT OF CLAIM" respecting Plaintiff's "specific damage or injury" subject to CTCA.

10. Plaintiff's CTCA Claim resulted in no phone call or request for information from Plaintiff, and Plaintiff will request all records pertaining to its disposition as to the conflicts of interest and adherence to procedure by State Bar. Per Plaintiff's formally denied CTCA Claim and according to proof in trial, "[t]he total economic damages before June 28, 2021 are $13,800,000 to $31,200,000, and total non-economic damages [before] June 28, 2021 are $13,800,000 to $31,200,000. The total economic damages after June 28, 2021 are $15,500,000 to $32,900,000, and total non-economic damages after June 28, 2021 are $15,500,500 to $65,800,000" while Plaintiff expressly reserved all rights to seek other damages, including intentional tort claims.

11. Through this action, Plaintiff now seeks at least $163,100,000 as being the fair market value, or maximum someone would have paid at the time for his unduly impaired personal property and with special damages, plus punitive or exemplary damages, as well as extraordinary and injunctive relief to protect public, courts, and to preserve confidence in the legal profession.

12. Plaintiff intends to prove that State Bar, its officials and/or employees, and State Bar licensees after 2018 when State Bar became a government protection agency knew at all times relevant that Plaintiff and other members of the public were suffering severe injury and emotional distress, but repeatedly violated their respective duties to protect or act reasonably in violation of public trust, BPC 6001.1, and their own CRPC where attorneys are bound under BPC 6077, illustrating an outrageous pattern and dereliction of public duty.

13. Plaintiff alleges "[t]he rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the

wrong and only uncertain in respect of their amount" P. 282 U.S. 562 and "[w]here the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty. It is enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." P 282 U.S. 563

14. Plaintiff further alleges punitive damages that are alleged are jointly or severally actionable in Superior Court of California under CTCA against individual defendants who are either not defined as public entities or public employees under CTCA, or whose acts and omissions preclude them from relying upon any immunity otherwise provided by CTCA, or whose acts and omissions preclude them from relying upon State Bar, DGS, or State for indemnification, and further alleges that State, DGS, and/or State Bar are liable for intentional torts under Gov. Cod. 815.3 since State, DGS, and State Bar are also defendants in this action with Morgenstern, Nunley, Kumar, and DOES.

15. According to Gov. Cod. section 945.4: "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board…"

16. In responding to his CTCA Claim by letter dated November 12, 2021, State Bar Claims Officer Sarah L. Cohen stated "notice is hereby given that as of this date, the State Bar of California rejected the claim you presented to the State Bar of California on or about October 18, 2021. WARNING SUBJECT TO CERTAIN EXCEPTIONAL EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE THIS NOTICE WAS PESONALLY DELIVERED OR DEPOSITED IN THE MAIL TO FILE A COURT ACTION ON THIS CLAIM. SEE GOVERNMENT CODE SECTION 945.6."

17. Upon receipt and denial of his CTCA Claim according to *Gov. Cod. 911*, "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section

910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

18. Plaintiff thereon alleges Defendants, and each of them, have waived any defense as to the sufficiency of Plaintiff's CTCA Claim based upon a defect or omission as presented, and that triable issues of fact exist that have caused injury to Plaintiff, directly or proximately caused by Defendants.

19. Plaintiff will seek summary judgment for violations of mandatory duties and negligence based on the allegedly clear and convincing evidence from California Auditor for all times relevant: https://www.bsa.ca.gov/reports/agency/8, for which Plaintiff will seek judicial notice.

20. To reduce further public waste, Plaintiff seeks a speedy trial by jury for all causes of action post summary judgment motion and requires minimal discovery to meet his burden of proof as to all causes of action assuming State Auditor is afforded access to, or can confirm, allegations by Plaintiff. Plaintiff intends to rely upon personal experience, written and oral testimony from California State Auditor Elaine Howle and Acting Auditor Michael S. Tilden and their respective staffs, State Bar officials or staff, attorneys who have violated the public trust, members of the public who have been affected by acts of alleged corruption, fraud, un-waivable conflicts of interest, and systemic failure without regard for all or select members of the public. Plaintiff will also seek written or oral testimony from attorneys involved in the formation of the new California Rules of Professional Conduct 1.7, and especially case law and committee comments in forming section (d)(3), the legal implications upon public, courts, and legal profession concerning conflicts, definitions under CRPC, and un-waivable conflicts under any circumstance. Plaintiff alleges that CRPC 1.7 went "live" in 2018 "with a focus on the rule as a disciplinary standard," and that it now meets a national standard under ABA.

21. Plaintiff seeks the support from State and California State Auditor to compel or manage records underlying Plaintiff's allegations of attorney misconduct including licensees acting in an official capacity for State Bar, and to seek restitution for those damages it deems appropriate in order to preserve the public, courts, and legal profession.

22. Plaintiff seeks to prove through clear and convincing evidence, on behalf of himself as Plaintiff and on behalf of the public, that malice, oppression, and/or fraud of a "government protection agency"

is unfairly impacting the lives of Californians, families, businesses, crowded Court dockets, the California economy, indeed, the United States and other states where State Bar attorneys who willfully violate the public trust are free to abuse their "good standing" California State Bar credentials to conduct official court business – which is not sustainable, nor is it fair to ethical attorneys. This flaw likely exists through the myriad changes of State Bar's role, but it must be fixed.

23. Plaintiff intends to amend this Complaint, and thereon his claims pursuant to *Gov. Cod. § 910.6* before judgment with additional facts including other decisions relating to the same transaction or occurrence which gave rise to Plaintiff's CTCA Claim as they are discovered, and the related alleged breaches of mandatory, affirmative duty, or general duties to protect Plaintiff that cause damages and injury, and further evidence of intentional torts against Plaintiff.

## **STATE OF CALIFORNIA**

24. As of this FAC, Wikipedia states "the economy of State of California has a $3.4 trillion gross state product (GSP) as of 2021. If California were a sovereign nation (2021), it would rank as the world's fifth largest economy, ahead India and behind Germany." https://en.wikipedia.org/wiki/Economy_of_California

25. California features a diverse population of about 39.24 million people as of 2021. California is a global superpower for cultural, economic, and social evolution. People and businesses rely upon a fair and impartial court in California and the United States as a pillar of democracy and right, which is a fundament of freedom. Indeed, individuals in the United States have a constitutional right to due process of law, and a general right to life liberty and property.

26. The courts have a strong history of keeping a fair democracy, but for the conduct of some that goes outrageously unmitigated in recent history. Courts are official places with impartial resolution of disputes, including crimes – and certainly no place for moral turpitude.

27. When a Californian receives a service notice (which usually involves a State Bar licensee), it usually creates fear, disruption, and strife within the lives, families, work, business relationships, mental health, and overall well-being of a person. This is a price we pay for democracy, but such a price paid by members of the public assumes the matter underlying such official court business is reasonable, just, and not corrupt nor filed for improper purposes, or filed without authority of law.

Indeed, Californians are required to act with particularity and detail in response to official court business.

28. On information and belief, California courts, within the fifth largest economy in the world, are becoming compromised by a minority – and incredibly injurious – list of alleged criminals who are unreasonably protected by State Bar, DOES, and other defendants and who are, in agency, threatening democracy through acts of fraud, oppression, un-waivable conflict, or unknown influence or consideration.

## OVERVIEW AND BACKGROUND

29. Since its inception in 1927, defendant The State Bar of California has been subject to statutory, law, and enactments that change State Bar, employees, and officials acting under direction of the same. In 1960, the State Bar was added to the California Constitution.

30. As of this FAC, State Bar's website reads "The State Bar of California licenses more than 266,000 attorneys to practice law in California, with 190,000 licensed attorneys on active status."

31. Attorneys licensed by State Bar regularly conduct practice in other states by using their credentials from State Bar *pro hac vice*. Plaintiff furnished examples of this involving one State Bar license in federal bankruptcy court involving Kenneth Joseph Catanzarite. (Decl. ISO TRO/OSC)

32. Californians rely upon attorneys to represent them and their interests in court fairly and without fraud, corruption, or un-waivable conflict. Californians reasonably assume that attorneys are not representing them without their consent (BPC 6104). Californians rely upon State Bar to hold attorneys accountable, not through protection of attorneys, but through an advocate of their interests when an attorney has violated their rights under license of State Bar (BPC 6001.1).

33. Formerly serving the administration of justice, on information and belief, between 2011 and 2018, State Bar's statutory and operations shifted entirely from that of a quasi-government agency and labor union hybrid (before 2011) to that of a public protection agency, where its affirmative and/or mandatory duty exists: "[p]rotection of the public shall be the highest priority for The State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (*Cal. Bus. & Prof. Code § 6001.1*)

34. Plaintiff will request judicial notice of the Oxford English definition, which Lexico.com shows as of FAC, of "paramount" to mean "**more important than anything else; supreme**."

35. Plaintiff will request judicial notice of all comments or committee pertaining to the Legislative intent of *Bus. & Prof. Code 6001.1* and changes to State Bar's role and duties for all times relevant.

36. Plaintiff is a member of the public in California. specifically, a member of the protected class that the State Bar and its public employees or officials exist to "protect" above any interest.

37. Plaintiff respectfully alleges that he, this Court, State Bar, the Legislature, and State have a duty to resolve this action and the broader issues underlying it with the resolve and strength that has allowed California to emerge from the pandemic, and that State use its authority to protect public, courts, and legal profession, to resolve claims at least after 2018 when State Bar became a government protection agency, and to create bonds or other financing mechanisms, or to employ restitution actions, and thus "re-start" the State Bar's systems of licensing, regulatory, and discipline functions so those attorneys who are ethical and who do uphold the foundation of our justice system with integrity are not unduly prejudiced by unscrupulous marauders that use the State Bar's conflicts and the allegedly arrogant assumption of immunity for all acts and omissions, however injurious or derelict,  to inflict intentional harm or with reckless disregard of the obvious harm to society. Failure to address this will result in an ever-increasing lack of public trust of courts and legal profession, thus eroding the judiciary arm of government in the United States over time, and thus, the world.

## LANDMARK CASES & LEGAL HISTORY PRECEDING INSTANT ACTION

38. Before CTCA passed in 1963 and more than fifty years before its statutory and operational role changed between 2011 and 2018, State Bar was challenged by non-attorney members of the public in at least two separate actions that are irrelevant to the instant action insofar as they involve disciplinary proceedings of attorneys, and not government claims under CTCA: *Walker* and *Bollotin*. After both of those cases, the Supreme Court's decision in *Muskopf* led to the California Tort Claims Act or Government Claims Act of 1963, and later our Supreme Court would define special relationships that impute liability and duty among third-parties involving control positions in 2021.

39. The role, duties, and accountability of State Bar and other Defendants changed entirely since *Walker* and *Bollotin*, which Plaintiff alleges renders any judicial proceeding prior to 2011 or 2018 respectively pertaining to State Bar licensing, regulatory, or discipline functions and/or the prior duty imposed upon Defendants moot or stale (to the extent such findings before 2011 or 2018 are prejudicial to Plaintiff, and/or public interest, in this case).

40. In 2011, State Bar's statutory priority and core mission changed through amendments to *Bus. and Prof. Code section 6001.1,* which Plaintiff alleges creates an unambiguous mandatory duty and affirmative duty to protect the public that is not subject to any discretion as it is not directive, nor does it leave room for doubt as to Legislative intent. There *is* mandatory duty in BPC 6001.1.

41. Where State Bar and its employees acting in their official capacities previously served to "promote the improvement of the administration of justice," State Bar and its employees now serve in "protection of the public" as a matter of law when "exercising licensing, regulatory, and disciplinary functions" through the public entity and through the policy or operational decisions of public employees and/or officials on behalf of State Bar.

42. In or around 2018, Plaintiff alleges the California Lawyer's Association would assume many functions of State Bar that were focused on development of attorneys, with State Bar assuming the role of government protection agency along with the passage of an ABA-modeled California Rules of Professional Conduct in 2018 ("CRPC"). The new CRPC took effect on November 1, 2018, when "the rules of professional conduct adopted by the board when approved by the Supreme Court, are binding upon all licensees of the State Bar." (*Bus. & Prof. Cod. § 6077*). Again, Plaintiff alleges the word "binding" to mean that it is not subject to discretion of any licensee of the State Bar (including, and especially those public employees who are also State Bar licensed attorneys tasked with protection of the public under Bus. & Prof. code 6001.1, or tasked with the Catanzarite Cases), and that protection of the public shall be "paramount" when exercising licensing, regulatory, or disciplinary functions under this section, too.

43. On information and belief, Plaintiff thereon alleges that former State Bar President Michael Colantuono, during his speech after taking the oath of office for State Bar President on September 7, 2017, claimed "we are no longer the leading advocate for the legal profession in California. We are no

longer a professional association, or as is typically called in Sacramento, a trade association….**We are a public agency that exists to regulate the legal services industry for the benefit of the people of California. We are a public protection agency**."

IN RE: WALKER (1948)

44. Decades before this speech, *Walker* first established precedent so members of the public like Plaintiff could bring attorney discipline actions to the Supreme Court. Plaintiff notes that the instant action is for damages and injunctive relief under CTCA or separately actionable claims. The Supreme Court of California's specific findings as they relate to the instant case, is *In Re; Walker, 32 Cal.2d 488*.

THE COURT.

Claudia Louise Walker has filed an "Accusation for Disbarment" charging alleged unprofessional conduct against four attorneys-at-law. She seeks to have this court exercise, without prior recommendation from the Board of Governors of The State Bar, the disciplinary powers set forth in sections 6100 to 6118 of the Business and Professions Code. We have concluded that this proceeding should be dismissed without prejudice and, as this appears to be the first proceeding of this nature which has been filed in this court or any other court **since the adoption of the State Bar Act (Stats. 1927, ch. 34; now Bus. & Prof. Code, § 6000 et seq.), [and before the California Tort Claims Act of 1963], we deem it appropriate to state the reasons for such dismissal.**

**Prior to the adoption of the State Bar Act**, proceedings seeking disciplinary action against members of the bar could be instituted only in the courts. With the adoption of that act, an entirely new procedure for instituting such disciplinary proceedings was adopted, which procedure is now set forth in sections 6075 to 6087 of the Business and Professions Code. While it is specified that the new procedure shall "provide a complete alternative and cumulative method of hearing and determining accusations against members of the State Bar" (§ 6075), and that nothing in said sections "**shall be construed as limiting or altering the powers of the courts of this State to disbar or discipline members of the bar as this power existed prior to the enactment of Chapter 34 of the Statutes of 1927, relating to the State Bar of California" (§ 6087)**, such new

procedure has, since 1927, been generally accepted as the normal procedure for the hearing of all accusations against members of the bar. Rules of procedure have been adopted under the authority of section 6086, and an orderly and efficient method has been established for conducting hearings in disciplinary proceedings. After such hearings the Board of Governors of The State Bar has "the power to **[32 Cal.2d 490]** recommend to the Supreme Court the disbarment or suspension from practice of members" (§ 6078).

[1] Under the above-mentioned sections 6100 to 6118, this court obviously has the same powers which it previously possessed independently to entertain disciplinary proceedings despite possible duplication between such proceedings and others instituted before The State Bar, but we are of the view that as a matter of policy this court should not exercise those powers unless and until the accuser has followed the normal procedure by first invoking the disciplinary powers of The State Bar. (Bus. & Prof. Code, §§ 6075-6087.) More specifically, we believe it proper to dismiss an accusation filed in this court unless it appears from the accusation: (1) that the accuser has set forth specific charges which, if proved, would constitute grounds for disciplinary action; (2) that the same specific charges have been previously presented in written form to The State Bar for the purpose of invoking its disciplinary powers; and (3) that following such presentation to The State Bar, it has arbitrarily failed or refused to grant a hearing on such specific charges or has arbitrarily failed or refused, after a hearing, to take appropriate action.

[2] It appears from the accusation herein that in 1939, the accuser's mother instituted proceedings as the result of which the accuser was committed to the Stockton State Hospital. The alleged unprofessional conduct of the named members of the bar consisted of alleged acts or omissions on their part in connection with the proceedings resulting in her commitment, or in connection with her guardianship proceedings, or in connection with her subsequent efforts to have the record of the commitment expunged or to obtain financial redress. The only allegations with respect to any attempt to follow the normal procedure by first invoking the disciplinary powers of The State Bar are as follows:

"That affiant has on several occasions in the past interviewed the Secretary of the State Bar Association and after explaining the situation involved was informed by him that he could take no

action, that in December 1947 a Subcommittee Hearing was held on one item and the Subcommittee did not even take the trouble to make notes or to comparatively study the statements made on which to base a sound conclusion, and at that time the Secretary of the State Bar Association recommended against a hearing concerning Attorney Melvin Belli mentioned herein, and that for this reason **[32 Cal.2d 491]** affiant is filing this accusation direct with the Supreme Court of the State of California.

Assuming that the accuser has set forth in the accusation specific charges which, if proved, would constitute grounds for disciplinary action, it is clear that the quoted allegations are wholly insufficient to show either that the same specific charges have been previously presented in written form to The State Bar for the purpose of invoking its disciplinary powers or that, following such presentation, The State Bar has arbitrarily failed or refused to grant a hearing on such specific charges, or has arbitrarily failed or refused, after a hearing, to take appropriate action. The vague allegations of the accusation concerning some form of interviews with the secretary of The State Bar, and concerning some form of hearing held by a subcommittee "on one item" fall far short of the showing which should be required of the accuser when seeking independently to invoke the disciplinary powers of this court.

It is therefore ordered that the accusation be dismissed without prejudice.


### BOLLOTIN V. CALIFORNIA STATE PERS. BD. (1955)

45. The second case for reference is *Bollotin*, where "Plaintiff Sarah Bollotin appealed "from all Orders, Rulings, Decisions and Judgments…that embraced orders made in two separate actions: (1) An action against the state personnel board to review a decision which had affirmed the action of a civil service examining board; (2) an action against a number of attorneys whom plaintiff had successively retained to represent her, also against the State Bar and two of its officers. The State Bar of California and Jerold E. Weil and Jack A. Hayes, officers of the State Bar, were made parties defendant by the second amended complaint. Plaintiff therein alleged she had complained to the Grievance Committee of the State Bar concerning the conduct of certain of her former attorneys. She sought damages for alleged denial of her demands and failure to accord her an opportunity to appear

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 14

1  before the Grievance Committee of the State Bar. The general demurrer of these three defendants was

2  sustained with leave to amend. The third amended complaint made the allegations somewhat more

3  specific but still showed no basis for a cause of action for damages. This time the demurrer was

4  sustained without leave to amend and the action as to these defendants was dismissed without

5  prejudice. We find no error and no abuse of discretion in that ruling. [**1] A failure, if any, of the State

6  Bar officials to perform their duty in the initiation and conduct of a disciplinary proceeding

7  would not create a cause of action for damages in plaintiff's favor. The law [in 1955, before the

8  California Tort Claims Act of 1963 and well before the State Bar's role changed to that of

9  government protection agency] does not provide in that manner for the enforcement of the

10  performance of duty by public officers.** [2] It does accord to the individual the right to invoke

11  disciplinary action against an attorney in the Supreme Court, upon a proper showing that "The State

12  Bar has arbitrarily failed or refused to grant a hearing on such specific charges, or has arbitrarily failed

13  or refused, after a hearing, to take appropriate action." (In re Walker, 32 Cal. 2d 488, 491 [196 P.2d

14  882].) Plaintiff chose not to pursue that remedy. She has not the alternative remedy of an action

15  against the State Bar for damages for asserted dereliction of duty. This disposition of this issue does

16  not, of course, carry an inference that the State Bar officials have been negligent in their duty. Indeed,

17  **plaintiff's allegations tend to indicate a lack of understanding by her of the nature of a**

18  **disciplinary proceeding and a failure upon her part to cooperate in the preliminary investigation**

19  **which the State Bar rules prescribe**."

20  46. Plaintiff alleges that *Walker* paved the way to bring proceedings to the Supreme Court

21  concerning attorney discipline hearings, but that such proceedings have nothing to do with the duties

22  of public officials, public employees, and public entities as defined under CTCA whose potential

23  liabilities have since been imposed by the California Tort Claims Act and other enactments as

24  specified herein.

25  <u>MUSKOPF V. CORNING HOSPITAL DISTRICT (1961)</u>

26  47. After *Walker* and *Bollotin*, a landmark ruling in *Muskopf v. Corning Hospital Dist* (55 C.2d

27  211; 11 Cal.Rptr. 89, 359 P.2d 457) ("*Muskopf*") shaped future claims against the government. On

28  information and belief, Plaintiff alleges thereon that *Muskopf* made ministerial and operational

decisions the subject of viable claims in tort not subject to any form of immunity, and that *liability is the rule* for negligence in claims against the government and its employees. Citing the most important rulings in *Muskopf*:

"[1] State of California---Liability.---**The rule of governmental immunity from tort liability must be discarded as <u>mistaken and unjust</u>**.

[5] State of California—Liability—The rule of governmental immunity for tort is an anachronism, without rational support, and has existed only by the force of inertia. It does not actually exist [yet, until the Government Claims Act following *Muskopf*] but has become riddled with exceptions both legislative and judicial, and the **<u>exceptions operate so illogically as to cause serious inequality</u>**."

[11] Id-Liability-In formulating "rules" and "exceptions" relating to governmental immunity from liability, it should be borne in mind that **<u>when there is negligence the rule is liability, immunity is the exception</u>**.

[12] Id—Liability—Abrogation of governmental immunity from liability does not mean that the state is liable for all harms that result from its activities. Both the state and individuals are free to engage in many activities that result in harm to others so long as such activities are not tortious.

[13] Id—Liability—Although it 'is not a tort for Government to govern' and basic policy decisions of government within constitutional limitations are therefore necessarily non-tortious, <u>it does not follow that the state is immune from liability for torts of its agents</u>. <u>Once it is determined that the state through its agents has committed a tort</u>, <u>it must meet its obligations therefore</u>."

<u>CALIFORNIA TORT CLAIMS ACT OF 1963</u>

48. Legislation was ultimately passed leading to Government Code § 810-996.6 as amended. Select statute, law, and enactments are cited in this Complaint under the same definitions provided in CTCA to support liability for Plaintiff's CTCA Claim against Defendants, and each of them.

Gov. Cod. 815 holds "**Except as otherwise provided by statute**: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with

Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person. *(Added by Stats. 1963, Ch. 1681.)*

Gov. Cod. 815.2 further holds "(a) **A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee** or his personal representative. (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability. *(Added by Stats. 1963, Ch. 1681.)*

815.3 further holds: "(a) Notwithstanding any other provision of this part, **unless the elected official and the public entity are named as codefendants in the same action**, a public entity is not liable to a plaintiff under this part for any act or omission of an elected official employed by or otherwise representing that public entity, which act or omission constitutes an intentional tort, including, but not limited to, harassment, sexual battery, and **intentional infliction of emotional distress**. For purposes of this section, harassment in violation of state or federal law constitutes an intentional tort, to the extent permitted by federal law. This section shall not apply to defamation. (b) If the elected official is held liable for an intentional tort other than defamation in such an action, the trier of fact in reaching the verdict shall determine if the act or omission constituting the intentional tort arose from and was directly related to the elected official's performance of his or her official duties. If the trier of fact determines that the act or omission arose from and was directly related to the elected official's performance of his or her official duties, the public entity shall be liable for the judgment as provided by law. For the purpose of this subdivision, employee managerial functions shall be deemed to arise from, and to directly relate to, the elected official's official duties. However, acts or omissions constituting sexual harassment shall not be deemed to arise from, and to directly relate to, the elected official's official duties. (c) If the trier of fact determines that the elected official's act or omission did not arise from and was not directly related to the elected official's performance of his or her official

duties, upon a final judgment, including any appeal, the plaintiff shall first seek recovery of the judgment against the assets of the elected official. If the court determines that the elected official's assets are insufficient to satisfy the total judgment, including plaintiff's costs as provided by law, the court shall determine the amount of the deficiency and the plaintiff may seek to collect that remainder of the judgment from the public entity. The public entity may pay that deficiency if the public entity is otherwise authorized by law to pay that judgment. (d) To the extent the public entity pays any portion of the judgment against the elected official pursuant to subdivision (c) or has expended defense costs in an action in which the trier of fact determines the elected official's action did not arise from and did not directly relate to his or her performance of official duties, the public entity shall pursue all available creditor's remedies against the elected official in indemnification, including garnishment, until the elected official has fully reimbursed the public entity. (e) If the public entity elects to appeal the judgment in an action brought pursuant to this section, the entity shall continue to provide a defense for the official until the case is finally adjudicated, as provided by law. (f) It is the intent of the Legislature that elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort not directly related to their official duties committed for which the public entity they represent may also be liable, while maintaining fair compensation for those persons injured by such conduct. (g) This section shall not apply to a criminal or civil enforcement action brought on behalf of the state by an elected district attorney, city attorney, or Attorney General. (h) If any provision of this section or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable.

*(Added by Stats. 1994, Ch. 796, Sec. 1. Effective January 1, 1995.)*

**Gov. Cod. 815.6 holds "**Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

**Gov. Cod. 820.8** holds "except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

**Gov. Cod. 840** holds: "Except as provided in this article, a public employee is not liable for injury caused by a condition of public property where such condition exists because of any act or omission of such employee within the scope of his employment. The liability established by this article is subject to any immunity of the public employee provided by statute and is subject to any defenses that would be available to the public employee if he were a private person. *(Added by Stats. 1963, Ch. 1681.)*

**Gov. Cod. 840.2** holds: An employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) The dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee and the employee had the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous condition; or (b) The employee had the authority and it was his responsibility to take adequate measures to protect against the dangerous condition at the expense of the public entity and the funds and other means for doing so were immediately available to him, and he had actual or constructive notice of the dangerous condition under Section 840.4 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition. *(Added by Stats. 1963, Ch. 1681.)*

**Gov. Cod. 840.4** holds: (a) A public employee had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 840.2 if he had actual personal knowledge of the existence of the condition and knew or should have known of its dangerous character. (b) A public employee had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 840.2

1   only if the plaintiff establishes (1) that the public employee had the authority and it was his
2   responsibility as a public employee to inspect the property of the public entity or to see that
3   inspections were made to determine whether dangerous conditions existed in the public property, (2)
4   that the funds and other means for making such inspections or for seeing that such inspections were
5   made were immediately available to the public employee, and (3) that the dangerous condition had
6   existed for such a period of time and was of such an obvious nature that the public employee, in the
7   exercise of his authority and responsibility with due care, should have discovered the condition and its
8   dangerous character. *(Added by Stats. 1963, Ch. 1681.)*

9

10   **Gov. Cod. 840.6** holds: (a) A public employee is not liable under subdivision (a) of Section 840.2 for
11   injury caused by a dangerous condition of public property if he establishes that the act or omission that
12   created the condition was reasonable. The reasonableness of the act or omission that created the
13   condition shall be determined by weighing the probability and gravity of potential injury to persons
14   and property foreseeably exposed to the risk of injury against the practicability and cost of taking
15   alternative action that would not create the risk of injury or of protecting against the risk of injury.
16   (b) A public employee is not liable under subdivision (b) of Section 840.2 for injury caused by a
17   dangerous condition of public property if he establishes that the action taken to protect against the risk
18   of injury created by the condition or the failure to take such action was reasonable. The reasonableness
19   of the inaction or action shall be determined by taking into consideration the time and opportunity the
20   public employee had to take action and by weighing the probability and gravity of potential injury to
21   persons and property foreseeably exposed to the risk of injury against the practicability and cost of
22   protecting against the risk of such injury. *(Added by Stats. 1963, Ch. 1681.)*

23

24   **42 U.S. Code § 1983** holds: "Every person who, under color of any statute, ordinance, regulation,
25   custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be
26   subjected, any citizen of the United States or other person within the jurisdiction thereof to the
27   deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be
28   liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,

except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)

### DUTY, SPECIAL RELATIONSHIP TEST, THIRD-PARTY LIABILITY
### CLARIFIED  VIA BROWN V. USA TAEKWONDO (S259216) APRIL 2021

49. On April 1, 2021, another decision impacting the instant action defined how some or all Defendants are liable for the conduct of State Bar and State Bar licensees (and not only State Bar's own acts or omissions, which are also the subject of the CTCA Claim and this action) due to special relationship tests and unambiguous statute defining "protection."

50. The Court concluded the following about special relationships in this opinion:

    a. "First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect."

    b. "A special relationship between the defendant and the victim is one that "gives the right to expect" protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that "entails an ability to control [the third party's] conduct."

### PLAINTIFF, DEFENDANTS, AND CATANZARITE STAND IN SPECIAL
### RELATIONSHIPS INVOKING DUTY TO PROTECT; BPC 6001.1 SEPARATELY
### INVOKES; ALL IMPUTING THIRD PARTY LIABILITY TO STATE BAR AS A
### MATTER OF LAW

51. On information and belief, Defendants The State of California ("State") and Department of General Services ("DGS") are alleged indemnitors or otherwise derivatively liable for the tortious conduct of, and payors of, for, or on behalf of other Defendants under the CTCA – particularly where

1   Plaintiff alleges corruption and liability imposed by State Bar official conduct. Plaintiff alleges State

2   and DGS are appropriately named in this amended Complaint, where they stand in a special

3   relationship under California Tort Claims Act with State Bar as a public entity and Defendants as

4   public employees, and further, are now sufficiently noticed of alleged unlawful conduct by State Bar,

5   agents or licensees of State Bar, negligence, recklessness, corruption and violations of general, special,

6   statutory, affirmative duty to protect, or mandatory duties of State Bar and public employees.

7   52. Each State, DGS, and The State Bar of California are a "public entity" covered by the CTCA.

8   53. Defendants, and each of them, are in a control position over attorneys including Catanzarite

9   which causes Plaintiff to rely upon Defendants, where enactment(s) allegedly impose a "paramount"

10   duty to protect Plaintiff, and that the control position for State Bar, Nunley, Kumar, Morgenstern, and

11   DOES is evident where they exercise operational decisions controlling attorneys licensed by State Bar

12   in the daily exercise of "licensing, regulatory, and disciplinary functions" for all times relevant.

13   54. Plaintiff alleges Defendants, and each of them, owe him at least a "general" duty to exercise

14   reasonable care in the course of all decisions made that have damaged Plaintiff, and that this exists as a

15   per statute under *Cal. Civ. Cod. 1714* which is expressly carved out of Gov. Cod. 815, 815.2, 815.7.

16   55. Plaintiff alleges that Defendants, and each of them, owe him an enhanced duty of "protection,"

17   and that statute expressly places Plaintiff's rights over Defendants, and over their licensees including

18   those associated with Catanzarite, as a matter of law.

19   56. Plaintiff alleges that he is a victim with proven injury beyond any reasonable doubt standing in

20   special relationships among Defendants, Catanzarite attorneys, indemnitors for damages of Defendants

21   conduct as the case may be, and that Defendants have had and continue to have a unique, indeed

22   "paramount," duty to Plaintiff that enhances exponentially the duty upon the State Bar after 2018

23   beyond a general duty, and moreso after Plaintiff noticed Defendants of Catanzarite's conduct, and

24   further upon each instance thereof, and further upon filing this action. Where the State Bar is

25   statutorily bound to protect Plaintiff and public interest, so to are "the rules of professional conduct

26   adopted by the board when approved by the Supreme Court, are binding upon all licensees of the State

27   Bar" (*Bus. & Prof. Cod. § 6077*) as of November 1, 2018 including Kumar, Morgenstern, and those

28

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 22

DOES who are among the licensees of State Bar acting as public employees in an official capacity for State Bar to protect the public.

57. The State Bar of California exercises control over its official agents or licensees, who then act as **officials** of the Court. The State Bar of California is thus allegedly liable for and in control of its licensed attorneys in agency with licensees, in circumstances evidencing negligent operational decisions, corruption, intentional torts like intentional emotional distress by public officials where State Bar, State are named as defendants (Gov. Cod. 815.6), and each State Bar, State, and DGS are a public entity covered by the CTCA.

58. Catanzarite, licensees of State Bar, and each of them, are allegedly "controlled by the principal" State Bar or its attorneys, and State Bar is controlled by State, other Defendants were acting in their official capacity as public employees, and all Defendants are alleged to work (legally and proximately) in concert or agency with and distinctly of Catanzarite or other State Bar licensees to cause damages, injuries, and violations of law and statute, that State Bar, Nunley, Morgenstern, Kumar, and DOES, inclusive, do so without regard for the same as to Plaintiff's damages and injuries, and that Plaintiff and public members rely upon Defendants to protect him, which means that Defendant public entities are all allegedly liable for the conduct of their licensees and public employees as a matter of law where Plaintiff is entitled to protection, and Plaintiff is paramount.

59. On information and belief, Plaintiff alleges that the Supreme Court case in 2021 of *Brown v. USA Taekwondo* is instructive, where USA Taekwondo owes Brown a duty (which findings were recently discovered by Plaintiff) due to control factors by and between USAT and its instructors. Unfortunately, on information and belief, Plaintiff alleges that State Bar and public employees associated therewith exercise State Bar's influence on the global economy and state GSP to benefit certain licensees (including employees and elected officials) who violate the public trust while pretending it does not operate in a control position, under a mandatory and affirmative duty to protect the public, and that its licensing, regulatory, and discipline functions directly and proximately impact the right and interests of members of the public in California and the lives of people all over the world.

## DEFENDANTS HAVE A DUTY TO PLAINTIFF

60. On information and belief, Plaintiff thereon alleges that just as USAT owes Brown a duty through the regulation of its instructors due to the control inherent thereby, so, too, do Defendants owe Plaintiff a duty under all of the following tests relevant to this action:

    a.  A general duty of care involving all operational decisions under Cal. Cod. Civ. Proc. 1714 and CTCA, which requires proof in trial that all operational decisions were reasonable and in line with such duty by Defendants to achieve any form of immunity, and where immunity is not afforded to decisions unrelated to coordinating branches of government.

    b.  An enhanced duty of care in the exercise of its licensing, regulatory, and discipline functions upon receipt of each communication from Plaintiff or any third-party supported by credible evidence that Defendants' agents and licensees are knowingly harming Plaintiff, public, courts, and legal profession.

    c.  A duty to protect Plaintiff and public interest imposed by special relationships by and between State Bar, Catanzarite and each of them, and Plaintiff.

    d.  A mandatory duty of care under BPC 6001.1 or BPC 6077 as per Gov. Cod. 815.6 requiring Defendants to prove that the operational decisions giving rise to Plaintiff's claims were all "exercised reasonable diligence to discharge the duty" through triable facts and where individual immunities are not available for government employees, and where State Bar, State, or DGS are allegedly liable for intentional torts conducted by elected officials acting in their official capacity as per Gov. Cod. 815.3.

    e.  A duty to pay Plaintiff fair compensation for intentional torts including but not limited to intentional infliction of emotional distress may be imposed among DOES per Gov. Cod. 815.3 where it is the expressed intent of "Legislature that elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort not directly related to their official duties committed for which the public entity they represent may also be liable, **while maintaining fair compensation for those persons injured by such conduct**" because Plaintiff's action is filed against State Bar and DOES as "codefendants in the same action (Gov. Cod. 815.3)."

## RELEVANT DEFINITIONS UNDER CTCA IN THIS ACTION

61. The CTCA contains specific definitions relevant to this action detailed below as amended:

**810.** (a) Unless the provision or context otherwise requires, the definitions contained in this part govern the construction of this division. (b) This division may be referred to as the Government Claims Act. *(Amended by Stats. 2012, Ch. 759, Sec. 5. (AB 2690) Effective January 1, 2013.*

**810.2.**"Employee" includes an officer, judicial officer as defined in Section 327 of the Elections Code, employee, or servant, whether or not compensated, but does not include an independent contractor. *(Amended by Stats. 1994, Ch. 923, Sec. 30. Effective January 1, 1995.)*

**810.4.** "Employment" includes office or employment. *(Added by Stats. 1963, Ch. 1681.)*

810.6. "Enactment" means a constitutional provision, statute, charter provision, ordinance or regulation. *(Added by Stats. 1963, Ch. 1681.)*

810.8. "Injury" means death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person. *(Added by Stats. 1963, Ch. 1681.)*

811."Law" includes not only enactments but also the decisional law applicable within this State as determined and declared from time to time by the courts of this State and of the United States. *(Added by Stats. 1963, Ch. 1681.)*

811.2."Public entity" includes the state…public authority, public agency, and any other political subdivision or public corporation in the State. *(Amended by Stats. 2010, Ch. 636, Sec. 1. (SB 1046) Effective January 1, 2011.)*

811.4. "Public employee" means an employee of a public entity. *(Added by Stats. 1963, Ch. 1681.)*

811.8. "Statute" means an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act. *(Added by Stats. 1963, Ch. 1681.)*

811.9. (a) Notwithstanding any other provision of law, judges, subordinate judicial officers, and court executive officers of the superior courts are state officers for purposes of Part 1 (commencing with Section 810) to Part 7 (commencing with Section 995), inclusive, and trial court employees are employees of the trial court for purposes of Part 1 (commencing with Section 810) to Part 7 (commencing with Section 995), inclusive. The Judicial Council shall provide for representation, defense, and indemnification of those individuals and the court pursuant to Part 1 (commencing with Section 810) to Part 7 (commencing with Section 995), inclusive. The Judicial Council shall provide for that representation or defense through the county counsel, the Attorney General, or other counsel. The county counsel and the Attorney General may, but are not required to, provide representation or defense for the Judicial Council. The fact that a justice, judge, subordinate judicial officer, court executive officer, court employee, the court, the Judicial Council, or the Administrative Office of the Courts is or was represented or defended by the county counsel, the Attorney General, or other counsel shall not be the sole basis for a judicial determination of disqualification of a justice, judge, subordinate judicial officer, the county counsel, the Attorney General, or other counsel in unrelated actions. (b) To promote the cost-effective, prompt, and fair resolution of actions, proceedings, and claims affecting the trial courts, the Judicial Council shall adopt rules of court requiring the Administrative Office of the Courts to manage actions, proceedings, and claims that affect the trial courts and involve superior courts, superior court judges, subordinate judicial officers, court executive officers, or trial court employees in consultation with the affected courts and individuals. The Administrative Office of the Courts' management of these actions, proceedings, and claims shall include, but not be limited to, case management and administrative responsibilities such as selection of counsel and making strategic and settlement decisions. (c) Nothing in this section shall be construed to affect the employment

status of subordinate judicial officers, court executive officers, and trial court employees related to any matters not covered by subdivision (a). *(Amended by Stats. 2005, Ch. 706, Sec. 16. Effective January 1, 2006.)*

830.  As used in this chapter: (a) "Dangerous condition" means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used. (b) "Protect against" includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition. (c) "Property of a public entity" and "public property" mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.

*(Added by Stats. 1963, Ch. 1681.)*

62. According to Gov. Cod. 811 "Public entity…includes…any…public corporation in the State." State Bar is appropriately named here as defendant under CTCA.

## **PARTY IDENTIFICATION**

63. Plaintiff Justin S. Beck is a resident of California with a personal address of 3501 Roselle St., Oceanside, CA 92056 and member of the public who submitted the CTCA Claim. Plaintiff has at various times learned of alleged negligence and corruption at State Bar involving public entity State Bar and public employees acting in an official capacity for State Bar. Plaintiff has at various times between 2020 and present, submitted formal complaints and correspondence to The State Bar of California and various public employees acting in their official capacity for State Bar with specific allegations of unlawful conduct by State Bar and State Bar licensees supported by trial court orders, opinions from the Court of Appeal, Auditor reports, and evidentiary exhibits against State Bar licensees associated with Catanzarite Law Corporation, and received case numbers from certain

1  Defendants, as well as other correspondence, respecting Defendants' ministerial and operational
2  decisions related thereto.

3  64. Defendant The State Bar of California ("State Bar") is a public entity, and "is a public
4  corporation [subject to California Tort Claims Act]. It has perpetual succession and…may…be sued."
5  (*Cal. Bus. & Prof. Code § 6001*). The State Bar operates two allegedly dangerous premises for the
6  State Bar known by Plaintiff that have contributed as a direct or proximate cause to Plaintiff injuries,
7  with each dangerous premises alleged to be in sufficiently noticed dangerous condition since at least
8  2009 by the California State Auditor, are located at 180 Howard Street, San Francisco, CA 94105 and
9  Los Angeles at 845 South Figueroa Street, Los Angeles, CA 90017 ("Allegedly Dangerous
10 Premises"). The State Bar are alleged to be liable directly, derivatively, or vicariously for
11 compensatory damages and injunctive relief, indemnified, directly, or derivatively imputed to the State
12 and/or DGS. State Bar is alleged to be liable derivatively for any acts of itself, its employees, its
13 elected officials, involving any acts of negligence in operational decisions or any form of corruption as
14 so alleged under Gov. Cod. 815.3 and 815.6 where a mandatory duty is deemed violated.

15 65. Defendant Eli David Morgenstern ("Morgenstern") is a public employee who, for all times
16 relevant to Plaintiff's claims, was and is acting in an official capacity for the government through a
17 series of operational and ministerial decisions. Morgenstern is an individual and alleged resident of the
18 State of California, State Bar #190560, with an alleged business address of 845 S. Figueroa St., Los
19 Angeles, CA 90017 according to the State Bar's website and his corresponding attorney profile.
20 Morgenstern is "Senior Trial Counsel" for the State Bar, in the Office of Chief Trial Counsel. On
21 information and belief, Plaintiff alleges Morgenstern was and is assigned to State Bar Case Numbers
22 21-O-12371 (Kenneth Catanzarite), 21-O-05698 (Nicole Catanzarite-Woodward), 21-O-11976 (Jim
23 Travis Tice), 21-O-01012 (Kenneth Catanzarite), 20-O-01013 (Brandon Woodward), and 20-O-01014
24 (Tim James O'Keefe) (the State Bar Case numbers, investigations, correspondence, and related
25 operational decisions thereto shall be referenced together as the "Catanzarite Cases"). On information
26 and belief, Morgenstern owes Plaintiff a general duty under CCP 1714, an affirmative duty to protect
27 Plaintiff under BPC 6001.1, and a mandatory duty to Plaintiff imposed by enactments under GC 815.6.
28 On information and belief, Morgenstern has assumed a special and enhanced duty to Plaintiff as a

1   licensee of the State Bar who is tasked with "protection of the public…in the exercise of [his]
2   licensing, regulatory, and disciplinary functions," and where BPC 6077 holds "the rules of
3   professional conduct adopted by the board, when approved by the Supreme Court [November 1,
4   2018], are binding upon all licensees of the State Bar" including Morgenstern.

5   66. Defendant Anand Kumar ("Kumar") is an individual and alleged resident of the State of
6   California, State Bar #261592, with a business address of 845 S. Figueroa St., Los Angeles, CA 90017
7   according to the State Bar's website and his corresponding attorney profile. On information and belief
8   for all times relevant, Plaintiff alleges Kumar was and is acting in an official capacity for the
9   government through a series of operational and ministerial decisions. Kumar was and is "Supervising
10  Attorney" for the State Bar, in the Office of Chief Trial Counsel. On information and belief, Plaintiff
11  alleges Kumar was and is assigned to and/or manages or managed Morgenstern and the Catanzarite
12  Cases. On information and belief, Kumar owes Plaintiff a general duty under CCP 1714, an
13  affirmative duty to protect Plaintiff under BPC 6001.1, and a mandatory duty to Plaintiff imposed by
14  enactments under GC 815.6. On information and belief, Kumar has assumed a special and enhanced
15  duty to Plaintiff as a licensee of the State Bar who is tasked with "protection of the public…in the
16  exercise of [his] licensing, regulatory, and disciplinary functions" and where BPC 6077 holds "the
17  rules of professional conduct adopted by the board, when approved by the Supreme Court [November
18  1, 2018], are binding upon all licensees of the State Bar" including Kumar.

19  67. Defendant Joy Nunley ("Nunley") is an individual and alleged resident of the State of
20  California, with an alleged business address of 845 S. Figueroa St., Los Angeles, CA 90017.  On
21  information and belief for all times relevant, Plaintiff alleges Nunley was and is acting in an official
22  capacity for the government through a series of operational and ministerial decisions. Nunley is a
23  "Special Investigator" for the State Bar, in the Office of Chief Trial Counsel. On information and
24  belief, Nunley was and is managed by Morgenstern, and was or is assigned to the Catanzarite Cases.
25  On information and belief, Kumar owes Plaintiff a general duty under CCP 1714, an affirmative duty
26  to protect Plaintiff under BPC 6001.1, and a mandatory duty to Plaintiff imposed by enactments under
27  GC 815.6.

28

68. Defendant State of California ("State") is a public entity under CTCA, and alleged indemnitor of State Bar, and is allegedly liable for all claims subject to the California Tort Claims Act, having vicarious, direct, derivative, or other liability from special relationships and is further alleged to have authority and obligation in making payments or resolving claims on behalf of State public entities, public employees, agents, independent contractors, employees, elected officials, and licensees. State's liability is allegedly codified by Gov. Cod. 815, 815.3, 815.6, and CTCA generally. On information and belief, State must intervene in defending, assigning defense of, or settling the instant action and CTCA Claim because Plaintiff alleges that State Bar and public employees, officials, and licensees associated with State Bar have engaged in intentional acts of fraud, corruption and recklessness, or at least un-waivable conflicts and unreasonable ministerial acts, and are thus imputing additional damages to State, public, courts, legal profession.

69. Plaintiff is currently unaware of the true names and capacities of Defendant Does 1 through 30 inclusive, except Plaintiff alleges each of Defendant Does 1 through 30 to be public employees, acting in employment, or nominated, or elected officials of State Bar subject go Gov. Cod. 815.3 and Gov. Cod. 815.6, whose primary purpose are each to protect the public, and where DOES include attorneys licensed by State Bar, where BPC 6077 holds "the rules of professional conduct adopted by the board, when approved by the Supreme Court [November 1, 2018], are binding upon all licensees of the State Bar" including DOES. Plaintiff alleges Defendant Does 1 through 30, inclusive, are responsible in some manner for the conduct and damages described in this complaint. Plaintiff will amend this complaint to show the true names and capacities of Defendant Does 1 through 30 when they become known. Plaintiff alleges DOES includes officials who have committed intentional torts, alleged as intentional infliction of emotional distress, conversion, trespass to chattels, and violations of U.S.C. Section 1983 in this action, subject Gov. Cod. 815.3.

70. Plaintiff alleges that certain Defendants have, by way of special relationships and affirmative duties that also involved "non-public" communications and unknown consideration or promises of consideration, "co-operated" with its member or licensed attorneys by enabling their behavior in a supervisory capacity (*See, Michel v. Smith* (1922) 188 Cal. 199; but see *Rodriguez v. County of L.A.* (2014) 2014 US Dist LEXIS 183381, or acting in agency with licensees through operational

1  decisions, and are "not entitled to immunity…because plaintiffs' evidence show[s] that all of the
2  supervising defendants either saw or heard [Plaintiff] being [damaged] and that they saw the injuries
3  caused by [Defendants' negligent acts or omissions]." Plaintiff further alleges special relationships
4  exist per our Supreme Court in 2021 imputing liability to State Bar for Catanzarite under *Brown v.*
5  *USAT* (2021).

6  **JURISDICTION AND VENUE**

7  71. Jurisdiction is proper in this Court because this action is brought under Article III, section 5, of
8  California's Constitution provides that: "suits may be brought against the state in such manner and in
9  such courts as shall be directed by law" and [t]he state's Tort Claims Act was enacted in
10  implementation of this constitutional provision. Under the act the Legislature has prescribed the time
11  and manner of filing claims against the state, and the conditions under which it may be sued. (*City of*
12  *L.A. v. County of L.A*., 9 Cal. 2d 624, 629 [72 P.2d 138, 113 A.L.R. 370]; *Stanley v. City and County*
13  *of San Francisco*, 48 Cal. App. 3d 575, 580 [121 Cal. Rptr. 842]; *Yasunaga v. Stockburger*, 43 Cal.
14  App. 2d 396, 401 [111 P.2d 34].) A valid condition of the act is that "recovery will be denied where
15  legal action is not brought against the state within the period prescribed by the statute ...." **[67 Cal.**
16  **App. 3d 812]** (*Stanley v. City and County of San Francisco*, supra, p. 579; *Chas. L. Harney, Inc. v.*
17  *State of California*, 217 Cal. App. 2d 77, 90 [31 Cal. Rptr. 524].)

18  72. Jurisdiction is proper in this Court because Plaintiff furnished Defendants with a sufficient
19  claim under CTCA, the claim was denied on or about November 12, 2021, Defendants have waived
20  their right to object to the sufficiency of Plaintiff's claims under Gov. Cod. 911, and Plaintiff filed this
21  action in December 2021 promptly after his CTCA Claim was denied.

22  73. Jurisdiction is proper in this Court because Plaintiff allegations center upon defendants who are
23  defined under CTCA, including "public entity," "employee," "public employee."

24  74. Jurisdiction is proper in this Court pursuant to Article VI, section 10 of the California
25  Constitution, which grants the Superior Court "original jurisdiction in all cases except those given by
26  statute to other trial courts."

27  75. Jurisdiction is proper in this Court because Defendants, and each of them, are all persons,
28  corporations, or associations that are a citizen or entity of the State of California, and/or have

sufficient minimum contacts in the State to warrant exercising jurisdiction. Each Defendant is in California and can be found in California, and each Defendant conducts their business in California pertaining to this action.

76. Venue is proper in the Superior Court for the County of Orange, pursuant to Code of Civil Procedure §§ 395 and 395.5, because one or more instances of wrongful conduct occurred, and continue to occur, in this county.

### <u>CHARGING ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

- Defendants, and each of them, have an affirmative duty to protect Plaintiff and public interest as a matter of law insofar as it involves official duties performed by State Bar "in the exercise of…licensing, regulatory, and discipline functions" under BPC 6001.1.

- Defendants, and each of them, have an enhanced affirmative duty to protect Plaintiff when on notice of injury caused by agents, licensees, or persons under control of State Bar under *Brown v. USAT* (2021).

- State, State Bar, and DGS are liable in some manner for any injury to Plaintiff caused by State Bar, State Bar employees, public employees, and persons standing in special relationship with State Bar under its control, including Catanzarite, Kumar, Morgenstern, and DOES.

- Plaintiff, individually, and with a public interest standing, is entitled to extraordinary relief based upon the evidence from California State Auditor and his own personal experience.

- State Bar and DOES have created an unreasonable risk of injury to Plaintiff through a series of negligent operational decisions that evidence a higher degree of culpability, or recklessness.

- State Bar and DOES have understaffed and under-resourced licensing, regulatory, and discipline functions in a manner which has caused injury to Plaintiff and public interest.

- Defendants, and each of them, have had sufficient notice that members of the public, including and specifically Plaintiff, would suffer injury of the type that statutes, enactments, and law including BPC 6001.1, CRPC, BPC 6104, BPC 6077 were each and together intended to prevent, and that the breaches of their duties have caused injury to Plaintiff.

- State Bar, Kumar, Nunley, Morgenstern, DOES, and each of them, have undertaken to come to the aid of Plaintiff through the Catanzarite Cases and BPC 6001.1 invoking an affirmative duty to protect, and in doing so by way of acts or omissions involving the conscious weighing of advantages and disadvantages, have deliberately failed to protect Plaintiff from known and unknown injuries through the operational decisions undertaken.

- State Bar and DOES know that its entire licensing, regulatory, and disciplinary system is broken due to a series of negligent operational decisions that conflict with statutory duties, but fails to address the issues due to un-waivable conflicts that it is concurrently bound to enforce, which is not sustainable.

- State Bar and DOES have engaged in fraud and/or corruption, and that the public, courts, and legal profession are at an acute risk of further injuries without extraordinary relief and imposition of liability in this action as a matter of public policy. Plaintiff relies upon April 2022 Auditor findings: 022-030 ("The State Bar of California's Attorney Discipline Process")

- "An affirmative [for Defendants] duty to protect [Plaintiff] may also arise if, for example, the Legislature imposes one by statute [CTCA Claim, BPC 6001.1, BPC 6104, BPC 6077]." (See *Hoff. V. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 938; Rest.3d Torts, supra, § 38). Defendants, and each of them, are bound by other Enactments (810.6) and Law (811) defined under CTCA that were designed to prevent against injury of the type that Plaintiff has endured, and that Plaintiff will amend his Complaint underlying his CTCA Claim as they are learned, and that such Enactments, statutes, and Law may further impute liability to Defendants.

- Plaintiff seeks a trial by jury of any facts that are in dispute as to Plaintiff's allegations, the reasonableness of conduct under any specific duty, fraud, or corruption alleged by Plaintiff.

## STATE BAR LICENSEE/AGENT CATANZARITE EXAMPLE

77. Apart from its own tortious conduct, on information and belief, State Bar has overwhelming, clear and convincing evidence related to the instant action and unrelated to the instant action for all times relevant that the following attorneys (and others) are an objective, acute threat to the public, the courts, and the legal profession and that they have caused immense waste of public resources and

damages to public, courts, and legal profession. For reasons not known to Plaintiff before discovery – which,, on information and belief, Plaintiff alleges include corruption, violation of mandatory duties, violation of general duties, and outrageous disregard for public interest– State Bar, Nunley, Kumar, Morgenstern, and DOES offer "protection" to attorneys associated with Catanzarite Law Corporation ("CLC") and other attorneys who are known to be dangerous, with at least reckless disregard for Plaintiff's injury and emotional harm:

**Kenneth Joseph Catanzarite** (State Bar #113750) ("KJC"), CLC's purported principal, who is also a registered investment advisor under jurisdiction of the United States Securities Exchange Commission (CRD #1193073) with Aegis Asset Management, Inc. (CRD #305008), and an alleged CPA. As of this FAC, Plaintiff has furnished court orders amounting to clear and convincing evidence of 34 acts of willful violations of CRPC, known to State Bar, Morgenstern, Nunley, Kumar, and DOES, involving moral turpitude by KJC and attorneys associated with Catanzarite Law Corporation:

**Brandon Woodward** (State Bar #284621) ("Woodward"), an associate of CLC who appears on pleadings, notices of motion, and similar papers filed by CLC related to the instant action.

**Tim James O'Keefe** (State Bar #290175) ("O'Keefe"), an associate of CLC who appears on pleadings, notices of motion, and similar papers filed by CLC related to the instant action. O'keefe was listed as the primary contact when CLC sued MFS, CTI, O'Connor, Cooper, and others in 2018.

**Nicole Marie Catanzarite Woodward** (State Bar #205746) ("Catanzarite Woodward"), an associate of CLC who appears on pleadings, notices of motion, and similar papers or in appellate hearings related to the instant action.

**Jim Travis Tice** (State Bar #153867) ("Tice," or when referenced with the foregoing State Bar members, CLC, and any others identified during discovery working in concert with CLC, together "Catanzarite"), who concedes to being a former associate of CLC, previously represented KJC, and corruptly assumed the role of counsel in the Mesa Action defined herein on or about September 8,

1    2021 after CLC was disqualified from representing CTI, CTI subsidiaries, and CTI shareholders by the

2    trial court and Court of Appeal in G058700/FinCanna, and concedes to work currently as a sole

3    practitioner on a case with KJC/CLC in a case in Colorado set for trial in 2022, for which no ethics

4    wall could allegedly exist reasonably under the circumstances after CLC disqualification and CLC's

5    continued representation of Tolled Defendants including Cooper, and worked in another case

6    involving representation by KJC/CLC where Tice was disqualified as counsel in which the Court of

7    Appeal concluded: "[i]n short, given the dispute between SWD and its principals, on the one hand, and

8    Corzo, on the other, Tice cannot adequately represent the partnership and its general partners.

9    Accordingly, the motion to disqualify Tice is granted. Further, because Tice was without authority to

10   file a notice of appeal on the partnership's behalf, the notice of appeal filed by Corbell on May 11,

11   2021 must be, and is, dismissed." (Third Appellate District Case No. B312676). Plaintiff provides a

12   copy-paste of the docket:

| 06/30/2021 | Motion granted appeal dismissed. | [Excerpt only of court's disposition - See full order for full discussion ] |
| | | In short, given the dispute between SWD and its principals, on the one hand, and Corzo, on the other, Tice cannot adequately represent the partnership and its general partners. Accordingly, the motion to disqualify Tice is granted. Further, because Tice was without authority to file a notice of appeal on the partnership's behalf, the notice of appeal filed by Corbell on May 11, 2021 must be, and is, dismissed. (See also Friedman et al.,Cal. Prac. Guide: Corporations (The Rutter Group 2021) ¶ 2:37.3b [entities regarded as "separate" from their owners, including partnerships, may not appear pro se].) |
| | | Edmon, P.J. / Lavin, J. / Egerton, J. |
| | | Anaheim, CA 92801 |
| | | Tim James Okeefe |
| | | Catanzarite Law Corporation |
| | | 2331 W Lincoln Ave |
| | | Anaheim, CA 92801 |
| Corbell Partnership : Plaintiff and Appellant | | Jim Travis Tice |
| | | Law Office of Jim Travis Tice |
| | | 38 Sorrento |
| | | Irvine, CA 92614 |

27   78. On information and belief, Plaintiff thereon alleges that Catanzarite, and each of them,

28   regularly conduct themselves as good-standing members or licensees of the State Bar in California and

     other jurisdictions through willful deceit of judicial officers, willful deceit of parties including their

1     own clients, extortion or coercion, subornation of perjury, perjury, fraud, securities fraud, other willful

2     violations of Attorney Rules, and criminal conduct expressly violative of statute because they know

3     State Bar negligently investigates, indeed negligently enforces in favor of their attorney members or

4     licensees, Attorney Rules, with the State Bar thereby allegedly entrusting and cooperating with the

5     same violations either willfully or by way of special relationships before, during, and after the conduct

6     alleged herein.

7       79. Since September 14, 2018 through an unlawful scheme trying to wrest control of CTI and

8     harass Plaintiff, Catanzarite filed at least "six lawsuits while <u>simultaneously</u> representing two

9     corporations [against each other], three corporate subsidiaries, and a group of minority shareholders of

10     both corporations" (*See, FinCanna v. Cultivation Technologies, Inc.* (June 28, 2021, G058700)

11     [nonpub. opn.] ("*FinCanna*") amidst a list of directly adverse parties.

12

13     **<u>Catanzarite is Enabled and Emboldened to Violate Attorney Rules by State Bar's Systemic Failures</u>**

14     **<u>Prior to Catanzarite Cases According to California State Auditor</u>**

15

16       80. On information and belief, Plaintiff alleges Defendants fail to "defend [the Courts'] integrity

17     against unscrupulous marauders" like Catanzarite, placing "at risk the very fundament of the judicial

18     system" (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th, 762) ("*Slesinger*").

19     Plaintiff relies upon the California State Auditor ("Auditor") conclusions in making this allegation,

20     which is further reflected in his personal experience in the Catanzarite Cases which Plaintiff alleges to

21     meet the threshold of outrageous conduct by Defendants without regard for Plaintiff's emotional harm.

22       81. Plaintiff alleges the Auditor's findings from the following reports to be evidence of public

23     waste and corruption that requires extraordinary injunctive relief, and cumulative evidence of

24     Plaintiff's allegations underlying his CTCA Claim:

25

26                 ***State Bar of California Audit Report 2009-030***

27       82. More than ten years ago on July 21, 2009, the Auditor released its report entitled "<u>State Bar of</u>

28     <u>California: It Can Do More to Manage Its Disciplinary System and Probation Processes Effectively</u>

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit 1
Page 36

1   and to Control Costs."

2   83. The Auditor's key findings in the fact sheet, attached hereto as <u>EXHIBIT A</u>, are as follows:

3   84. "It **does not track its discipline costs by key disciplinary function** and thus, **cannot**

4   **determine how efficiently it operates or what impact salary increases or policy changes have on**

5   **each function**."

6   85. "The **total costs for its disciplinary system have increased by 30** percent or $12 million from

7   2004 to 2008—outpacing both inflation and growth in the State Bar's active membership—**while the**

8   **number of inquiries that the State Bar opened declined.**"

9           a.  "The investigation **processing time has increased from an average of 168 days in**

10                **2004 to 202 days in 2007**."

11  86. "**Information it reports annually regarding case processing time and backlog of**

12  **disciplinary cases is misleading**. Its methodology for calculating its average processing time has led

13  to understating the average processing time, and its approach to determining the backlog has resulted

14  in **incomplete and inconsistent information from year to year**."

15  87. "The number of attorney disciplinary cases the probation office monitors has grown nearly 10

16  percent in the five-year period ending 2008, yet the number of probation deputies was only recently

17  increased by one."

18  88. "**It still needs to fully implement recommendations made in a consultant's report, in the**

19  **periodic audits conducted by its internal audit and review unit, and in our 2007 audit.**"

20  89. To summarize Auditor findings from this report, Plaintiff alleges the State Bar lacks

21  accountability and transparency, spends more on salaries while achieving less, and fails to implement

22  recommendations to improve its disciplinary functions from the Auditor as well as parties contracted

23  to support it.

24

25                           *State Bar of California Audit Report 2015-030*

26  90. On June 18, 2015, the Auditor released its report entitled "<u>State Bar of California: It Has Not</u>

27  <u>Consistently Protected the Public Through Its Attorney Discipline Process and Lacks Accountability</u>."

28  91. The Auditor's key findings in the fact sheet <u>EXHIBIT B</u> are as follows:

92. "To reduce its 2010 excessive complaint backlog of over 5,000 cases to just over 1,700 cases in 2011, the **State Bar frequently settled cases** and may have been **too lenient and allowed some attorneys whom it otherwise might have disciplined more severely—or even disbarred—to continue practicing law**."

      a.  "The years the State Bar focused its efforts on decreasing its backlog, the State Bar settled over 1,500 cases—more than in any of the other four years in our audit period."

      b.  "The **level of discipline the State Bar recommended as part of some of these settlements was inadequate**—of the 27 cases the California Supreme Court returned to it for further examination, the State Bar increased the level of discipline it recommended in 21 cases, including five disbarments."

      c.  "The **information the State Bar submits to the Legislature** in its Annual Discipline Report **is problematic**—the **State Bar continues to report fewer cases than the law permits despite the similar concern we raised in our 2009 audit**."

93. "The **State Bar's efforts to align its staffing with its mission have fallen short**. It shifted staffing resources, employed contractors, and authorized a significant amount of overtime to reduce its backlog in 2011, but **discontinued those operational changes shortly thereafter and its backlog has again begun to increase—by 25 percent since 2011**."

94. "**Despite spending $76.6 million to purchase a building in Los Angeles**, the State Bar did not perform a cost-benefit analysis before receiving board approval for the purchase. Further, in a report to the Legislature just four months prior to purchasing the building, the **State Bar underestimated the total cost by *more than $50 million***."

95. "Over the last six years, the amount the State Bar collected from annual membership fees exceeded its operational costs. In fact, the excess funds would be sufficient to cover between four and nine months of the State Bar's operations—which is between two and seven months more than general best practices dictate." Plaintiff alleges **this overage could easily have been used to improve its attorney disciplinary system**, and that the **State Bar possesses full control over its cash flows to adjust membership fees to accomplish its "Core Mission" had its cash flows been insufficient** to do so. On information and belief, the State Bar still recklessly promotes other interests than those of

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 38

the public, rather than sufficiently protect the public from delinquent attorneys who abuse the public.

96. To summarize Auditor findings from 2015, on information and belief, Plaintiff alleges the State Bar is sufficiently (indeed, overly) funded, continues to lack accountability and transparency, misleads the public and Legislature with its operations and reporting, fails to police its member attorneys sufficiently to protect the public according to its "Core Mission," compromises the quality of its disciplinary processes in favor of the quantity thereof in favor of attorney members against public interest, willfully understaffs its disciplinary functions which Plaintiff alleges is reckless, and seeks to promote other interests like the purchase of allegedly dangerous premises that vastly exceed approved costs without requisite approval rather than focus on improving its objectively deficient attorney disciplinary system.

97. On June 18, 2015, in a cover letter for Audit Report 2015-030 addressing the Governor of California, President pro Tempore of the Senate, and Speaker of the Assembly, State Auditor Elaine M. Howle concluded as follows:

98. "Although the State Bar succeeded in decreasing the backlog by 66 percent within a year, it may have **compromised** the severity of the **discipline imposed on attorneys**…to reduce its backlog, the **State Bar allowed some attorneys whom it otherwise might have disciplined more severely— or even <u>disbarred</u>—to continue practicing law, placing the public at risk**."

99. "**Instead of focusing its resources on improving its discipline system—such as engaging in workforce planning to ensure it had sufficient staffing—it instead spent $76.6 million to purchase and renovate a building in Los Angeles in 2012**." On information and belief, Plaintiff alleges this $76.6 million building, or premises, to be the primary dangerous location where Defendants allegedly negligent disciplinary functions are performed.

100.     On information and belief, Plaintiff alleges Catanzarite, and each of them, are among the attorneys who should have been disbarred before September 14, 2018 or at least from the Catanzarite Cases, but the State Bar allows them to continue practicing law, placing the public at risk.

### *State Bar of California Auditor Report 2021-030*

101.     On April 29, 2021, the Auditor released its report entitled "The State Bar of California: It Is Not Effectively Managing Its System for Investigating and Disciplining Attorneys Who Abuse the Public Trust." The Auditor's key findings in the fact sheet for Report 2020-030 attached hereto as EXHIBIT C are as follows:

102.     "In 2016 the **State Bar reorganized its discipline system** for investigating and prosecuting attorney misconduct, but its actions **did not satisfy all of the relevant statutory requirements or audit recommendations**, and some results have been negative."

103.     "Case **processing times in investigative phase for attorney discipline cases increased by 56 percent** and the **backlog of unresolved cases increased by 87 percent**, **which increases potential harm to the public since attorneys continue to practice law while their cases are pending**."

104.     "The **State Bar appears to be disciplining attorneys at a dramatically lower rate for reasons it cannot adequately explain**—the total **number of cases that resulted in discipline declined by 54 percent**.

    a.  It **does not measure the performance of its discipline system** staff against benchmarks, which has **hampered its ability to detect problems in its discipline system**.

    b.  The **State Bar omitted some required information such as certain types of cases from its caseload metrics** and certain past data needed for year-to-year comparisons in its 2019 disciplinary report to the Legislature, and the statutory deadline for the report limits the Legislature's time to review it before making license fee decisions.

    c.  The State Bar **entered into multimillion dollar agreements without adequately justifying the vendor it selected** to administer the bar exam."

105.     To summarize Auditor findings from 2021, on information and belief, Plaintiff alleges the State Bar continues to lack accountability and transparency despite being on notice of its deficiencies and the dangerous conditions of its premises, misleads the public and Legislature with its operations and reporting, fails to police its member attorneys sufficiently to protect the

1   public in accordance with its "Core Mission," is taking longer to meet its prior results with statistically

2   inferior results, and its restructuring of attorney discipline systems actually made things *worse* after a

3   decade of purported tweaks and Auditor findings of inadequacy. So, on information and belief,

4   Plaintiff alleges the State Bar negligently caused their already flawed system of attorney discipline to

5   cause more public harm between 2015 and 2020, thus further enabling attorneys "who abuse the

6   public trust" like Catanzarite. Plaintiff alleges their reckless understaffing continues through all times

7   relevant.

8       106.    In issuing report 2020-030, State Auditor Elaine M. Howle concluded in a letter to

9   lawmakers "**the state bar's reorganization of its discipline system has <u>neither satisfied its</u>**

10  **<u>statutory</u> requirements <u>nor improved the efficiency or effectiveness of its discipline system</u>**."

11      107.    "The State Bar is also disciplining attorneys at a dramatically lower rate for reasons it

12  cannot adequately explain. From 2015 through 2019, **the total number of cases that resulted in**

13  **discipline**—including reprovals, suspensions, and disbarments—**declined by 54 percent**."

14      108.    "The increase in the backlog and the time to complete investigations, despite the

15  decline in discipline, indicate that the **State Bar's reorganization has not improved its efficiency or**

16  **effectiveness**."

17      109.    "The **backlog increased 87%**--from nearly 1,500 cases at the end of December 2015 to

18  almost 2,800 cases at the end of June 2020, the audit found. During the same period, the **time to**

19  **investigate cases increased 56%**."

20      **110.    "These delays allow attorneys under investigation to continue practicing law while**

21  **their cases are pending, increasing the potential for harm to the public."** Plaintiff notes that

22  subjectively similar conclusions were constructively noticed by the Auditor a full five years earlier.

23      111.    In 2015, 16,885 cases were closed with 864 lawyers (or 5%) disciplined. In 2019, only

24  399 lawyers (or 3%) were disciplined of the 15,738 cases closed.

25      112.    The audit also found the State Bar couldn't assess the effectiveness of its changes

26  because it "**abandoned a plan to evaluate the results of their reorganization between 2015 and**

27  **2020**." The Auditor has recommended or sufficiently noticed a need for benchmarking the State Bar's

28  disciplinary system since at least 2009.

1

2

3

4

5

113.     According to report 2021-030, the State Bar's revenue in 2020 was approximately $211.9 million. Where the State Bar's primary duty is to protect the public, its revenue in 2020 was equivalent to approximately five hundred thirty-one thousand dollars ($531,000) for each State Bar case closed with discipline in 2019, or just over thirteen thousand dollars ($13,000) per case closed overall.

6

7

8

**Table 1**
**The State Bar's Discipline of Attorneys Declined Significantly From 2015 Through 2019**

9

10

11

12

| YEAR | TOTAL CASES CLOSED | CASES CLOSED WITH DISCIPLINE | PERCENT OF CASES CLOSED WITH DISCIPLINE |
|------|-------------------|------------------------------|------------------------------------------|
| 2015 | 16,885 | 864 | 5% |
| 2016 | 16,139 | 776 | 5 |
| 2017 | 14,729 | 530 | 4 |
| 2018 | 15,674 | 418 | 3 |
| 2019 | 15,738 | 399 | 3 |

Source:  Analysis of the State Bar's case data from 2015 through 2019.

13

14

15

16

114.    From                                                December   2015 and June 2020, the State Bar's backlog of cases also increased dramatically while its duration of investigation increased, too after reforming its allegedly negligent disciplinary system.

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Figure 3**

**The State Bar's Backlog of Cases Increased by 87 Percent From December 2015 Through June 2020**



Source:  Analysis of the State Bar's case data.

Note:  Although the backlog increased overall, the number of cases in the backlog declined near the end of each year. According to the special assistant, this decline was likely due to a focus on reducing the backlog by the mandated backlog reporting date.

**Figure 4**

**The Average Duration of the State Bar's Investigations Has Increased by More Than 50 Percent From 2015 Through 2020**



Source:  Analysis of the State Bar's data from 2015 through June 2020.

115.     According to the Auditor, the State Bar was **deficient across all three categories in its**

adherence to reporting on its discipline system.

116.        **Out of forty-five (45) total topics, only nineteen (19) met statutory reporting requirements.** Plaintiff alleges this to be a complete failure at 42%, or an "F."

**Table 2**
**The State Bar's 2019 Discipline Report Omitted Required Information About Its Discipline System**

| STATUTORILY REQUIRED TOPICS | REPORTING REQUIREMENTS | | | NUMBER OF REQUIREMENTS MET |
|---|---|---|---|---|
| | DATA FOR THE PREVIOUS CALENDAR YEAR* | SIMILAR INFORMATION FOR THE PREVIOUS THREE YEARS* | ACCURATE AND COMPLETE DATA DESCRIPTIONS* | |
| Backlog of cases within the discipline system | X | X | X | 0 |
| Number of inquiries and complaints and their disposition | X | X | X | 0 |
| Matters self-reported by licensees | ✓ | ✓ | X | 2 |
| Matters reported by other sources, including outside organizations | X | X | X | 0 |
| Complaint handling and disposition processing times as specified | X | X | X | 0 |
| Disciplinary charges and formal disciplinary outcomes | X | X | X | 0 |
| Other matters, such as interim suspensions, admonitions, and agreements in lieu of discipline | ✓ | ✓ | X | 2 |
| Former attorneys engaged in the unauthorized practice of law | X | ✓ | X | 1 |
| Non-attorneys engaged in the unauthorized practice of law | X | ✓ | X | 1 |
| Client Security Fund's condition and payouts | ✓ | X | ✓ | 2 |
| Accounting of the discipline system cost by function | ✓ | X | ✓ | 2 |
| Disposition of attorney felony allegations† | X | ✓ | X | 1 |
| Investigations of improper demand letters related to construction-related accessibility claims† | ✓ | ✓ | ✓ | 3 |
| Insurance fraud investigations† | ✓ | ✓ | ✓ | 3 |
| Alleged violations of requirements related to lawyers selling financial products to elders and dependent adults† | ✓ | ✓ | X | 2 |
| **Number of topics that met this requirement** | **7 out of 15** | **8 out of 15** | **4 out of 15** | |

Source: State law, the State Bar's 2018 and 2019 discipline reports, and interviews with State Bar staff.

\* State law requires the State Bar to include multiple metrics or measures for many of the discipline report topics. If the State Bar failed to meet the reporting requirement for any of the metrics or measures, we designated it as not having met the requirement for the related topic.

† State law does not establish that the discipline report must include similar information for the previous three years or accurate and complete data descriptions for these topics. Nevertheless, these requirements represent best practices, and for that reason, we assessed whether the State Bar's discipline report included this information.

**New CRPC Rule 1.7 Replaces Old Rule 3-310 (For the Avoidance of Doubt), Focused on the Function of the Rule as a Disciplinary Standard**

117.     Before November 1, 2018 and along with revisions to State Bar's statutory duty under BPC 6001.1, the Commission for the Revision of the Rules of Professional Conduct ("Commission") evaluated [then-]current rule 3-310 (Avoiding the Representation of Adverse Interests) "**with a focus on the function of the rule as a disciplinary standard**." (*See, CRPC/Rule 1.7 Executive Summary*, EXHIBIT D) Members of the Commission include Kevin Mohr, who is, on information and belief, an ethics expert and professor at Western State College of Law and a founder of California Lawyers Associations' Ethics Committee.

118.     Within the Commission's comments and recommendation, "by incorporating the provisions in Model Rule 1.7(b)(1)-(3) concerning **unconsentable conflicts** into proposed paragraph (d), the proposed rule will **move this important concept into the black letter** rather than relegate it to two separate Discussion paragraphs in the current rule (See, rule 3-310, Discussion paragraphs 2 and 10).

119.     On November 1, 2018, the California Rules of Professional Conduct were adopted by the California Supreme Court including new CRPC 1.7, which now resembles the national standard under the American Bar Association, thereby replacing old rule 3-310. The State Bar is, on information and belief, an administrative arm of the California Supreme Court.

120.     CRPC 1.7 holds that "a lawyer shall not (d) represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities with another client, a former client, or a third person, or by the lawyer's own interests. (d) Representation is permitted under [CRPC 1.7] only if the lawyer complies with paragraphs (a), (b), and (c), and (d) **the lawyer reasonably believes that the lawyer will be able to provide competent <u>and</u> diligent representation to each affected client** (2) **the representation is not prohibited by law**; <u>and</u> (3) **the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.**"

121.     Specifically, CRPC 1.7 incorporates this language for the avoidance of doubt that an attorney cannot accept representation of adverse parties in the same or related matters or matters in

1  which the attorneys' judgment is objectively compromised. Indeed, such representation would be

2  "absurd," (*FinCanna*), "unthinkable," (*Klemm*) and not objectively supported by "reasonable

3  belief." (CRPC 1.01)

4  122.    The "focus on the function of the rule as a disciplinary standard" by the

5  Commission resulted in the State Bar Court Rules of Procedure standard for one violation of

6  CRPC 1.7(d)(3): "**actual suspension when a lawyer violates rule 1.7…or other law prohibiting**

7  **an attorney from simultaneously representing conflicting interests**." (*See, Discipline*

8  *Standards, 2.5(b)* revised May 17, 2019)

9  123.    "**A greater sanction is appropriate in cases where there is serious harm to the**

10  **client, the public, the legal system, or the profession and where the record demonstrates that**

11  **the lawyer is unwilling or unable to conform to ethical responsibilities**." (*See, Discipline*

12  *Standards, 1.7(b)*.)

13

14  **Catanzarite's Unlawful Campaign Amidst Direct Adversaries Violative of Attorney Rules**

15  124.    In special relationship with other Defendants and compounding injuries caused by

16  Defendants, licensees of State Bar with Catanzarite's campaign of alleged serial violations of

17  Attorney Rules underlying Defendants' conduct commenced on September 14, 2018 when it filed

18  inherently conflicted claims directly and derivatively in an action styled *Denise Pinkerton v.*

19  *Cultivation Technologies, Inc., et al*, (OCSC No. 30-2018-01018922) ("Pinkerton Action").

20  125.    A press release issued by Catanzarite Law Corporation on October 4, 2018 heralded

21  CLC's case *against* CTI, O'Connor, Cooper, and others while listing "Tim James O'Keefe" as the

22  primary contact for the case. That press release is attached as EXHIBIT E.

23  126.    Per the text of the press release: "[t]he complaint asserts claims on behalf of

24  investor Roger Root, derivatively on behalf of Mobile Farming Systems, Inc. ('MFS')…[and]

25  individual claims for securities fraud."

26  127.    State Bar licensees in apparent good standing "Catanzarite filed this lawsuit

27  [Pinkerton Action]…individually and derivatively on behalf of MFS…[and] asserted CTI, Probst,

28  O'Connor, Cooper, and others [including Higgerson, Cooper's father, and Plaintiff] involved with

-45-

1 CTI engaged in fraud, conversion, breach of fiduciary duty, conspiracy, fraudulent concealment, and

2 theft of trade secrets." (*FinCanna*) "In bringing the derivative action [for MFS], the [non]-

3 shareholder's [Pinkerton/Root] attorney [Catanzarite] is acting against the corporation's [MFS]

4 wishes." (*Shen v. Miller*, 212 Cal.App.4th 48, 150 Cal. Rptr. 3d 783 (Cal. Ct. App. 2012) at p. 58).

5   128.   As of September 14, 2018 and all times thereafter through the date of Plaintiff's lawsuit

6 against Defendants, Catanzarite, CLC, and Denise Pinkerton as attorney-in-fact for Roger Root are

7 objectively adverse parties to MFS (whom they were suing as nominal defendant before CLC

8 corruptly assumed the role of counsel for MFS in January 2019 after serving MFS with discovery),

9 CTI (whom they were suing before CLC corruptly assumed the role of counsel in May 2019 using

10 non-judicial shareholder consents after failing an evidentiary trial), and all defendants of the Pinkerton

11 Action, including: Richard Francis O'Connor II ("O'Connor"), Amy Jeanette Cooper ("Cooper"),

12 Cooper's father Cliff Higgerson ("Higgerson"), Anthony "Tony" Scudder ("Scudder"), Aroha

13 Holdings, Inc. ("Aroha"), TGAP Holdings, LLC ("TGAP") (together "Tolled Defendants").

14   129.   The Pinkerton Action, was just the first among Catanzarite's "six lawsuits while

15 ***simultaneously* representing two corporations, three corporate subsidiaries, and a group of**

16 **minority shareholders of both corporations**. Specifically, the corporate entities are the following:

17 (1) MFS, the plaintiff in the MFS Action, (2) CTI, the cross-complainant and defendant in the

18 FinCanna Action, (3) CTI subsidiaries, the cross-complainants in the FinCanna Action, and (4) CTI,

19 the plaintiff in the Scottsdale Action. The minority shareholders groups include members of the

20 O'Connor Faction as follows: (1) Pinkerton, a MFS shareholder and plaintiff in the Pinkerton Action;

21 (2) Mesa, Cooper, Mebane and a class action of shareholders, all plaintiffs in the Mesa Action; (3)

22 Cooper and Mebane, who are MFS/CTI shareholders and plaintiffs in the Cooper Action." (*FinCanna*,

23 p. 17) (emphasis added)

24   130.   Besides the Pinkerton Action, the other lawsuits filed by Catanzarite, which Plaintiff

25 alleges to be "sham pleadings" all known to Defendants containing numerous Attorney Rules

26 violations including BPC 6068, include:

27

28 *Mobile Farming Systems, Inc. v. Cultivation Technologies, Inc. et al.* (OCSC No. 30-2019-01046904)

1   ("MFS Action"), where Catanzarite assumed the role of counsel for MFS after suing and serving MFS

2   with discovery, which action "sought cancellation of CTI's shares" on the premise that "no CTI

3   shareholders, other than MFS shareholders, had any valid stock or voting rights" (*FinCanna*, p. 5)

4   which would be tried by fact through a 709 hearing on April 30, 2019 ("709 hearing") and rejected

5   citing "overwhelming" evidence with "every fiber of [the Court's] being."

6

7   *Mesa, et al. v. Probst, et al.* (OCSC No. 30-2019-01064267) ("Mesa Action") which Catanzarite filed

8   on April 16, 2019 while the 709 hearing was pending seeking to cancel all CTI shares, instead seeking

9   to "join MFS in a consolidated action with [the MFS Action]." (*FinCanna*, p. 7) This action was

10  amended after the trial court concluded that MFS was not a shareholder of CTI "with every fiber of

11  [its] being" on May 1, 2019, and after FinCanna Capital initiated foreclosure proceedings on CTI

12  citing the "upheaval" caused by State Bar licensees associated with Catanzarite, including non-judicial

13  acts of alleged extortion and securities fraud involving State Bar licensees associated with Catanzarite

14  and Tolled Defendants allegedly enabled by Defendants.

15

16  *Cooper, et. al. v. Cultivation Technologies, Inc.* (OCSC No. 30-2019-01072443) ("Cooper Action"),

17  which "requested the court direct CTI to (1) hold a shareholder's meeting to elect a board of directors"

18  and "(4) order CTI to pay the costs for...the suit."

19

20  *FinCanna v. Cultivation Technologies, Inc. et al.* (OCSC No. 30-2019-01072088) ("FinCanna Cross

21  Complaint"), which was filed on behalf of CTI (after suing CTI, and after assuming the role of counsel

22  for MFS concurrently in violation of BPC 6104 and CRPC 1.7(d)(3)) and not authorized by its board

23  of directors in alleged violation of Business and Professions Code section 6104.

24

25  *Cultivation Technologies, Inc., v. Scottsdale Insurance Company* (OCSC No. 30-2019-01096233)

26  ("Scottsdale Action") also filed by Catanzarite purporting to represent CTI in violation of BPC 6104.

27  This fraudulent action sought to stop insurance coverage for Plaintiff and others as an alleged means

28  of extorting settlement in the preceding actions by Catanzarite, in "good standing" with State Bar.

-47-

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit 1
Page 48

*Beck v. Catanzarite, et. al.* (OCSC 30-2020-01145998) ("Beck Action") in which Catanzarite filed the "MFS Cross Complaint" on behalf of MFS while it was appealing its right to represent CTI after it was disqualified. The Beck Action was filed against Catanzarite and Tolled Defendants by Plaintiff after the State Bar refused to investigate, much less enforce, Attorney Rules against Catanzarite in 2020 citing the need for "final rulings" of Attorney Rules violations.. Catanzarite now purports to defend Tolled Defendants and MFS in the Beck Action, MFS as cross-complainant seeking 28,000,000 shares of CTI *again*, with James Duffy as CEO of MFS after Duffy purportedly assumed officer and director roles for CTI on each January 23, 2019 and August 2019 in other cases filed by Catanzarite under separate *factual circumstances* in furtherance of the alleged "sham" pleadings that Defendants allegedly enable. State Bar and its licenses are violating Plaintiff's protected rights which are actionable under US Section 1983.

131.     As one glaring example of Catanzarite's moral turpitude in special relationship to Defendants underlying these actions, "on January 23, 2019, a few days before Catanzarite filed a shareholder derivative action involving CTI shareholders, Catanzarite dismissed several defendants from the Pinkerton Action, including CTI and members of the O'Connor Faction (O'Connor and Cooper)." This knowingly fraudulent consent is attached as <u>EXHIBIT F</u> and was allegedly extorted by Catanzarite in exchange for signatures and property of Tolled Defendants that Catanzarite was suing for securities fraud. Plaintiff seeks civil or criminal enforcement by the United States Securities Exchange Commission or appropriate State agency against Richard O'Connor, Mohammed Zakhireh, James Duffy, and Kenneth Joseph Catanzarite for willful violations of Cal. Corp. Code § 25401 and restitution for State for damages underlying this action, as appropriate.

132.     The court did not approve of any settlement of the derivative claims filed by Catanzarite on behalf of Roger Root for MFS on September 14, 2018, heralded by Catanzarite by press release on October 4, 2018, where "dismissal of a derivative claim requires court approval" (*Kennedy v. Kennedy*, 235 Cal.App.4th 1474, 1475 (2015) to prevent collusion, also codified by Federal Rules of Civil Procedure 23.1. "The settlement of a derivative action presents unusually strong incentives toward settlement and a **significant potential for collusion in settlement at the expense of the corporation and its shareholders**." (*See, YIP v. ZIA*, 2007 Cal.App. Unpub. LEXIS 3243, at *39

1  (Apr. 24, 2007). On information and belief, Plaintiff thereon alleges that KJC explicitly relied

2  upon O'Connor to manufacture evidence for him in exchange of tolling actual securities law

3  violations by O'Connor and Cooper, and O'Connor was even granted residence at a home in

4  Orange County owned by KJC as part of the consideration to engage in perjury and securities

5  fraud for him. Catanzarite did so, on information and belief, because it knew from experience that

6  State Bar, Morgenstern, Nunley, Kumar, and DOES doesn't do anything to protect the public, and

7  that they would instead protect the State Bar licensees no matter the damages, risk to public,

8  courts, or legal profession, or emotional damages to Plaintiff.

9       133.    All actions filed or maintained by State Bar licensees with Catanzarite rely upon

10  alleged non-judicial acts taken by Catanzarite, Tolled Defendants including O'Connor and Cooper,

11  and others like James Duffy and Mohammed Zakhireh that Plaintiff alleges involves Catanzarite's

12  perjury and/or subornation of perjury, extortion for signature, extortion for property, attempted

13  extortion by threatening letter, securities fraud, dishonesty, misrepresentation to judicial officers,

14  and willful violations of Attorney Rules. Evidence for these allegations was furnished to the

15  Defendants by Plaintiff in the Catanzarite Cases as further outlined herein. Plaintiff alleges,

16  however, that none of this cumulative evidence is necessary for disbarment of Catanzarite and each

17  of them for CRPC 1.7 violations alone according to mandatory enactments, had Defendants acted

18  with any reasonable standard of care under the circumstances, and where they are bound to

19  "protect" and have no discretion to promote other interests in the exercise of their licensing,

20  regulatory, and discipline functions to make a decision which is adverse to public interest.

**California Lawyers Association Article Published by Ethics Expert Kevin Mohr Addresses CRPC 1.7, Allegedly Undermines Defendants Handling of Instant Action, Catanzarite, and Conflicts**

24       134.    In an online article published by California Lawyers Association (CLA) entitled

25  "Spotlight on Ethics: Unwaivable Conflicts of Interest," author Kevin Mohr indirectly addresses

26  the reasonable standard of Defendants' conduct where State Bar licensees Catanzarite's

27  representation violative of Attorney Rules for all times after September 14, 2018.

28       135.    Author Kevin Mohr is "a professor at Western State College of Law, Irvine,

-49-

California and a founding member of the CLA's Ethics Committee. He served as a consultant to the State Bar's Rules Revision Commission, which drafted the new Rules of Professional Conduct approved by the Supreme Court effective November 1, 2018."

136.     Citing the article and applying the circumstances in question, "[i]t is important to recognize that [State Bar licensees Catanzarite's representation of all parties on and after September 14, 2018, including non-MFS/non-CTI shareholder Roger Root, MFS derivatively, CTI derivatively, Tolled Defendants, Duffy, Zakhireh, Mesa, Mebane, MFS corporation, CTI corporation, CTI subsidiaries, any MFS or CTI officer, director, or shareholder (actual or theorized)] and also [State Bar's board, officials, staff, or counsel to defend the CTCA Claim or dispose of attorney complaints involving public chattels, rights, freedoms, and democracy] requires an objective belief, not [State Bar licensees Catanzarite's, nor Joan Rudolph, nor Carissa Andresen, nor Morgenstern, nor Kumar's] subjective belief. 'Reasonable belief' is a defined term in the rule and "when used in reference to a lawyer means that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.' CRPC 1.01(i) 'Reasonable' itself is a defined term and "when used in relation to conduct by a lawyer means the conduct of a reasonably prudent and competent lawyer." CRPC(h) 'Reasonably prudent is a term we are all introduced to in the first semester of law school as the epitome of an objective standard.' Finally, 'belief' is also a defined term and means 'that the person involved actually supposes the fact in question to be true. A person's belief may be inferred from circumstances.'" (*See, California Lawyers Association Article by Kevin Mohr,* EXHIBIT G)

137.     "In other words, [State Bar, Catanzarite] cannot simply argue that [State Bar, Catanzarite] *truly or honestly believed* [State Bar, Catanzarite] could provide competent representation to [all parties on and after September 14, 2018 as to Catanzarite, or State Bar and other Defendants as of Claim Notice]. The belief necessary to satisfy the rule is that of a reasonably prudent lawyer and must be based on the facts and circumstances of the representation. Courts in other jurisdictions have reached the same conclusion in interpreting their counterparts to CRPC 1.7(d)(1)." (*Id.*)

138.     Citing case law in Mr. Mohr's article applied to the Catanzarite Cases, "[i]n an adversarial system whose integrity and effectiveness depends in large part on parties being represented by loyal advocates similarly knowledgeable and skilled, permitting the same to advance directly

adverse positions in a contested matter before a tribunal would be, in Klemm's words, "**unthinkable**." (*See*, *Klemm*, 75 Cal.App.3d at 899) ("*Klemm*").

139.     Plaintiff alleges that Defendants fail the reasonable standard of care, because they unreasonably permit Catanzarite to partake in "unthinkable" and "absurd" representation and defer to Catanzarite's rights over Plaintiff and public interest when bound by BPC 6001.1.

140.     Plaintiff alleges that State Bar, Morgenstern, Nunley, Kumar, and DOES fail the reasonable standard of care and CRPC 1.7 when they take actions or fail to take actions that impute liability to the State and cause harm to members of the public, courts, and legal profession.

141.     Plaintiff alleges that State Bar, Morgenstern, Nunley, Kumar, and DOES fail the reasonable standard of care and CRPC 1.7 when they demurrer to Plaintiff's CTCA Claim by trying to convert Plaintiff's rights to sue the government into an attorney discipline action, when this action is about injury caused by Defendants, and Plaintiff requires a Court of competent jurisdiction to conclude this case that does not involve the same parties involved in the alleged acts of fraud, corruption, negligence, and intentional tort.

### State Bar Court Standards to Enforce Attorney Rules by Enactments

142.     On information and belief, Plaintiff alleges there are mandatory enactments of policy in place beyond those embodied in Attorney Rules and Business and Professions Code section 6001.1 to prevent the type of injuries to Plaintiff proximately caused by Defendants under Gov. Cod. 815, 815.2, 815.3, and 815.6. Plaintniff alleges these enactments are enforced under BPC 6001.1 in "the exercise of licensing, regulatory, and discipline functions."

143.     According to Rules of Procedure of the State Bar of California (June 1, 2021) (the "State Bar Court Rules"), the Standards for Attorney Sanctions for Professional Misconduct (the "Discipline Standards") "help fulfill the **primary purposes of discipline**, which include: (a) **protection of the public, the courts, and the legal profession**; (b) **maintenance of the highest professional standards**; and (c) **preservation of public confidence in the legal profession**." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law..

144. According to the Discipline Standards, "the following sanctions may be imposed upon a finding of misconduct: (a) disbarment; (b) actual suspension; (c) stayed suspension; (d) public reproval; (e) private reproval; (f) any interim remedies or other final discipline authorized by the Business and Professions Code." (*State Bar Court Rules § 1.3 Degrees of Sanctions*). Decisional law upholds other remedies, such as disgorgement of attorney fees, where non-technical violations of Rule 1.7 are warranted for adverse representation of multiple parties in related cases. To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

145. "Aggravating circumstances may include (a) a prior record of discipline; (b) **multiple acts of wrongdoing**; (c) **a pattern of misconduct**; (d) **intentional misconduct**, **bad faith**, or **dishonesty**; (e) **misrepresentation**; (f) **concealment**; (g) overreaching; (h) **uncharged violations of the Business and Professions Code or the Rules of Professional Conduct**; (j) **significant harm to the client, the public, or the administration of justice**." (*State Bar Court Rules § 1.5 Aggravating Circumstances*) To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

146. Under State Bar Court Rules section 1.7 Determination of Appropriate Sanctions, "(a) If a lawyer commits **two or more acts of misconduct** and the [Discipline] Standards specify different sanctions for each act, **the most severe sanction <u>must</u> be imposed**" and "(b) a **greater sanction is appropriate in cases where there is serious harm to the client, the public, the legal system, or the profession and where the record demonstrates that the lawyer is unwilling or unable to conform to ethical responsibilities**." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

147. Under State Bar Court Rules section 2.5 Representation of Adverse Interests and Conflicts of Interest, "(a) **[a]ctual suspension is the presumed sanction when a lawyer violates rule 1.7**, subparagraphs (a), (b), and (d) of the Rules of Professional Conduct, or other law prohibiting an attorney from simultaneously representing conflicting interests and causes significant harm to any of the clients" and (b) [a]ctual suspension is the presumed sanction when a lawyer either violates rule 1.9(a) or 1.9(b) of the Rules of Professional Conduct and causes significant harm to the former client."

148.     Under State Bar Court Rules section 2.9 Frivolous Litigation, "(a) **[a]ctual suspension is the presumed sanction when a lawyer counsels or maintains a frivolous claim**" and "**disbarment is appropriate if the misconduct demonstrates a pattern**." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

149.     Under State Bar Court Rules section 2.11 Moral Turpitude, Dishonesty, Fraud, Corruption, or Concealment, "**disbarment or actual suspension is the presumed sanction for an act of moral turpitude, dishonesty, fraud, corruption, intentional or grossly negligent misrepresentation, or concealment of a material fact**. The degree of sanction depends on the magnitude of the misconduct; the extent to which the misconduct harmed or misled the victim, which may include the adjudicator; the impact on the administration of justice, if any; and the extent to which the misconduct related to the practice of law." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

150.     Under State Bar Court Rules section 2.12 Violation of Oath or Duties of an Attorney, "(a) **[d]isbarment or actual suspension is the presumed sanction for disobedience or violation of a court or tribunal order related to the lawyer's practice of law**, the attorney's oath, or the duties required of an attorney under Business and Professions Code 6068, subdivisions (a)(b)d)(e)(f), or (h), and rule 3.4 (f) of the Rules of Professional Conduct. To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

151.     Under State Bar Court Rules section 2.18 Violation of Other Article 6 Statutes, which are codified under State Bar Act, "**disbarment or actual suspension is the presumed sanction for any violation of a provision of Article 6** of the Business and Professions Code, not otherwise specified in these [Discipline] Standards." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

152.     "**Corruptly or willfully and without authority appearing as attorney for a party** to an action or proceeding constitutes a cause for **suspension or disbarment**" under

Business and Professions Code section 6104, upheld by CRPC. To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

153.     "**A willful disobedience or violation of an order of the court** requiring him to do or forbear an act connected or in the court of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitutes causes for **disbarment or suspension**" under Business and Professions Code section 6103, upheld by CRPC. To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

154.     "The **commission of any act involving moral turpitude, dishonesty, or corruption**, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for **disbarment or suspension**" under Business and Professions Code section 6106, upheld by CRPC. To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

155.     Under State Bar Court Rules section 2.21 Conduct Prejudicial to the Administration of Justice, "**[d]isbarment or actual suspension** is the presumed sanction for conduct that is **prejudicial to the administration of justice** in violation of rule 8.4(d) of the Rules of Professional Conduct. The degree of sanction depends on the magnitude of the misconduct, the extent to which the misconduct harmed the victim or the administration of justice, and the extent to which the misconduct related to the lawyer's practice of law." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law. On information and belief, State Bar, Morgenstern, Kumar, and DOES are engaging in conduct under this section on behalf of State Bar in an official capacity,.

156.     State Bar Court Rule section 5.225 "**authorize the transfer of an attorney to involuntary inactive enrollment**" which applies to proceedings under Business and Professions Code section 6007(c)(2), which holds that "The State Bar Court may order the involuntary inactive enrollment of an attorney if it finds, based on all the available evidence, including affidavits: (A) **The attorney has caused or is causing substantial harm to the attorney's clients or the public.** (B) **There is a reasonable probability that the chief trial counsel will prevail on the merits of the**

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 55

**underlying disciplinary matter, and that the attorney will be disbarred**." To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law.

157.    The standard under which the State Bar operates in State Bar Court to enforce Attorney Rules is one of "**clear and convincing**[1]" evidence, which according to the Supreme Court, means "the evidence is highly and substantially more likely to be true than untrue." (*Colorado v. New Mexico*, 467 U.S. 310 (1984).) To the extent this involves "licensing, regulatory, and discipline functions," Defendants are bound to BPC 6001.1 as a matter of law, and Plaintiff alleges this evidentiary standard to involve unlawful taking by State Bar, and injurious to Plaintiff and public, to require such a burden of proof prior to an *investigation*. Plaintiff alleges this burden of evidence to be corruptly utilized by State Bar, Morgenstern, Nunley, Kumar, and DOES in favor of disfavor of all or certain licensees standing in special relationship with State Bar.

158.    In summary, the State Bar Court Rules and Discipline Standards are the policy decisions enacted to guide operational decisions for Defendants, expressly detailing conduct that <u>must</u> result in actual suspension or disbarment for one violation or disbarment for multiple violations balanced by aggravating and/or mitigating circumstances involving one or multiple violations.

159.    Plaintiff alleges Catanzarite and other licensees of State Bar have engaged in multiple willful violations of Attorney Rules known to Defendants that are each severely prejudicial to the administration of justice, public interest, and the legal profession related to Catanzarite's practice of law for which "actual suspension or disbarment" is the Discipline Standard for <u>one violation</u>, and for which the same Attorney Rules and Discipline Standards are enacted to protect against injuries resulting therefrom.

160.    On information and belief, when viewed together with the Auditor findings, case studies, and Catanzarite Cases, State Bar's disregard for Plaintiff's rights reasonably calls into question the legitimacy of civil due process and the fundament of our judicial system in California

---

[1] This is, on its face, a violation of public trust when members of the public are held to a lower evidentiary standard in the same courts in which State Bar licensees operate.

which allegedly involves violations of federally protected rights under Section 1983 that are actionable under Gov. Cod. 815.3 as intentional infliction of emotional distress, and violation of mandatory duties under Gov. Cod. 815.6.

161.    **On May 1, 2019**, known to State Bar, Morgenstern, Nunley, Kumar, and DOES and even after passage of the new CRPC 1.7(d)(3), **State Bar licensees associated with Catanzarite were simultaneously and/or concurrently representing** the following parties before the same tribunal in a fraudulently conceived "dispute" between MFS and CTI:

Denise Pinkerton as attorney-in-fact for Roger Root in the Pinkerton Action, who was neither a CTI nor MFS shareholder, against MFS derivatively, CTI directly, while tolling derivative and direct claims against Tolled Defendants O'Connor, Cooper, Higgerson to 'bring later' including abuse of the elderly and federal securities violations against O'Connor and Cooper;

MFS directly against CTI in the MFS Action, seeking to *unwind* all securities transactions using the "apparently coerced" (CRPC 7.3) signature of O'Connor, the settlement agreement involving the Tolled Defendants in exchange of their property and signatures (Cal. Pen. Code 518, 522, 523) and the non-judicial acts of January 23, 2019 that Plaintiff alleges constitute felony securities fraud and extortion by Catanzarite;

CTI derivatively in the MFS Action, on the knowingly false basis that MFS was CTI's sole shareholder and subsidiary – which claim was based on the allegedly extorted shareholder consent signed by Tolled Defendant O'Connor on January 23, 2019 to unwind and render void three years and millions of dollars in securities transactions under Catanzarite's threat;

A purported class of CTI shareholders and CTI derivatively in the Mesa Action, seeking to "join" the MFS Action while the MFS Action sought to cancel all CTI shares at the same time – all via Catanzarite simultaneously (CRPC 1.7, definition of reasonable) through another sham pleading;

Richard O'Connor as the purported CEO of each "inanimate corporate entity" (*FinCanna*) MFS and

CTI, who alternatively claimed all CTI shares to be void and issued under "false pretenses," or insteadthat he sold [the same] shares to James Duffy, in each case under penalty of perjury allegedly suborned by Catanzarite. James Duffy would later assume officer director roles of each MFS and CTI under various factual circumstances upon which Catanzarite unreasonably relied to support its lawsuits.

Plaintiff alleges this adverse representation to be obviously prejudicial to public interest for which Discipline Standards are primarily enacted, and Defendants role is to stop this behavior. Plaintiff alleges that any reasonable person acting with even scant care would see the same thing, under the circumstances.  But the misconduct known to Defendants did not stop here, exceeding a pattern of outrageous conduct taken with reckless disregard for Plaintiff's interests, and evidencing fraud and corruption at State Bar involving DOES.

### State Bar Court Cases Also Support Disbarment of Catanzarite, Other Attorneys

162.     On information and belief, Plaintiff alleges some improper motive inherent to State Bar, Kumar, Nunley, Morgenstern, and DOES' operational decisions must exist – because the allegations and evidence known to them exceed other State Bar Court cases involving disbarment.

163.     Catanzarite and attorneys underlying auditor reports show they "lack basic understanding of the most fundamental responsibilities of an attorney as embodied in the provisions of the Business and Professions Code and the Rules of Professional Conduct" (*See, In the Matter of Shinn* (Review Dept. 1992) 2 Cal. State Bar Ct. Rptr. 96) ("*Shinn*"). In *Shinn*, **one violation** of Business and Professions Code section 6104 resulted in **disbarment** when attorney **filed suit on behalf of client without consent**. Here, Catanzarite has appeared on behalf of non-client CTI "corruptly and willfully and without authority" at least three times and poses a significant threat to the public and legal profession with their State Bar credentials. A pattern exists as to Tice, who was not only found to violate CRPC 1.7 where the "motion to disqualify Tice [was] granted" but "[f]urther, because **Tice was without authority to file a notice of appeal** on the partnership's behalf [Business and Professions § 6104], the notice of appeal filed by Corbell on May 11, 2021 must be, and is, dismissed." (Second Appellate District Case No. B312676)

164.        Plaintiff alleges that Catanzarite, State Bar, Morgenstern, Kumar, and DOES are "motivated by spite and vindictiveness" and clearly act "unreasonably" (See *Sorenson v. State Bar*, 52 Cal.3d 1036, 1043 (1991) ("*Sorenson*"). According to *Sorensen*, **one infraction of Business and Professions code 6068** merits one year suspension of Catanzarite attorneys. Catanzarite is culpable in maintaining and/or filing not less than five actions that violate section 6068, and all were purportedly reviewed carefully by Defendants, where Defendants continue to protect their licensees.

165.        "One common circumstance in State Bar Court disciplinary proceedings under § 6068, sub. (c), is the presence of prior court rulings that support culpability" (*See In the Matter of Kinney* (Review Dept. 2014) 5 Cal. State Bar Ct. Rptr. 360) ("*Kinney*"). "However, the language of § 6068, subdivision (c), does not require such rulings as a requisite to establishing culpability. We have also found unmeritorious or frivolous filings are evidence of maintaining an unjust action under § 6068, subdivision (c)" (*See*, *In the Matter of Kinney*, supra, 5 Cal. State Bar Ct. Rptr. at p. 365; see also *In the Matter of Lais* (Review Dept. 2000) 4 Cal State Bar Ct. Rptr. 112, 1128 [frivolous appeal violated § 6068, subd. (c), **as attorney pursued relitigation of law decided in prior case**]; *In the Matter of Varakin* (review Dept 1994) 3 Cal. State Bar Ct. Rptr. 179, 187 [**filing baseless and vexatious litigation violates § 6068**, subdivision (c)]).

166.        Plaintiff thus alleges that all litigation filed by Catanzarite related to the Catanzarite Cases violates Business and Professions Code section 6068, evidenced by the amended Pinkerton Action, the amended MFS Action, and the MFS Cross Complaint which featured pleadings that contradicted an evidentiary trial of fact resulting in a binding court order that was not appealed, or a "prior ruling" that "supports culpability" (See, *Kinney, Id).* The Mesa Action's sham pleading was filed on April 16, 2019 while Catanzarite simultaneously sought to unwind all CTI shares via the MFS Action, and the Mesa Action was amended using signatures of shareholders that Catanzarite claimed had given their stock to MFS on or around January 23, 2019, with O'Connor as proxy who also claimed under penalty of perjury that all shares of CTI were void and issued under "false pretenses." But Catanzarite, on information and belief, knows it can use the legal system as a good standing licensee, and they (as well as other attorneys) violate the public trust and use the court system as a weapon of extortion that goes unregulated and underappreciated as to the extent of harm and damages.

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 59

167.     For instance, notwithstanding the case studies reflected in reports from April 2022 by the Acting Auditor, State Bar licensees associated with Catanzarite are "culpable in [at least] eight matters representing a wide range of professional conduct" including "making misrepresentations to judges and clients, harassing a client for his own gain, disregarding a client's confidences, [and] taking [adverse interests] against [multiple clients]. (*See, Ainsworth v. State Bar*, 762 P. 2d. 431, Cal. Supreme Court, 1988).

168.     In another case where an attorney attempted to "shuffle stock" to corruptly assume the role of counsel as did Catanzarite to support the MFS Action, Mesa Action amendment, FinCanna Cross Complaint, and Scottsdale Action, the State Bar will find that Catanzarite has **no valid retainer agreement,** or that any such agreement conflicts with the duly authorized acts of CTI which he knows exist, Catanzarite's duty of loyalty, was obtained through alleged extortion under color of official right for MFS or CTI, and/or that no valid retainer of Catanzarite can possibly exist where it violates Rule 1.7 and other fundamental Attorney Rules regarding directly adverse representation (*See*, *Arden v. State Bar*, 43 Cal. 3d 713, 725). Unfortunately, on information and belief, State Bar is actually disposing of complaints regarding conflicts of interest, through the official acts of DOES conflicted attorneys charged with imposing discipline.

169.     Other precedent exists showing Defendants are allegedly reckless in their failures to act in the Catanzarite Cases as an example. In *Haynes*, the Bar suspended the attorney and upheld the Hearing Department findings of violations of former Rules of Professional Conduct and provisions of the Act, including Bus. & Prof Code § 6103 (violating a court order), § 6104 (appearing for a party without authority), and § 6106 (moral turpitude) (*In the Matter of Haynes* (2020), Not Published Case No. 16-J-17208, State Bar Court of California Review Dept. (February 11, 2020). In *Regan* (*Matter of Regan* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 844, 854), **the Bar found a § 6104 violation when an attorney continued to pursue appeal on behalf of clients who expressly told attorney they did not want to pursue it. Tice was found to have done this in concurrent violation of CRPC 1.7 this year, and Catanzarite Cases contain at least three other instances involving CLC. Thus, a pattern of misconduct exists to any person acting reasonably under the circumstances in the Catanzarite Cases.**

170.     Respecting Catanzarite's ongoing representation of adverse parties before the same tribunal and the damages to anyone it represents, California courts have long "drawn a line between cases involving **serious ethical violations such as conflicts of interest**, **in which compensation is prohibited**, and technical violations or potential conflicts, in which compensation may be allowed." (*See Sheppard, Mullin, Richter & Hampton, LLP v. J-M. Mfg. Co*. 244 Cal.App.4th at 590, 617, emphasis added). Every day that passes is damaging Catanzarite's own purported clients.

171.     Disgorgement is reserved for those cases in which the **attorney violated "a rule that proscribed the very conduct for which compensation was sought, i.e., the rule prohibiting attorneys from engaging in conflicting representation** or accepting professional employment adverse to the interests of a client or former client without the written consent of both parties." (*See Huskinson & Brown*, 32 Cal. 4th at 463 citing *Jeffry v. Pounds* (1977) 67 Cal.App.3d 6 and *Goldstein v. Lees* (1975) 46 Cal.App3d 614).

172.     Applying a two-part test developed in *Huskinson & Brown* and *Mardirossian Assoc., Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, (1) the [A]ttorneys ethical breach was one which "permeated" his entire relationship with the clients [in the Pinkerton Action, the MFS Action, the Mesa Action, the FinCanna Cross Complaint, the Scottsdale Action, the MFS Cross Complaint, and the Beck Action] and (2) the trial court's "**express findings of undue influence and breaches of fiduciary duty**" demonstrated the attorney had engaged in **egregious misconduct** warranting the denial of his requested fees (*See, Fair v. Bakhtiari* (2011) 194 Cal.App.4th 1135, emphasis added). Indeed "permeated," the Court of Appeal concluded that "**Catanzarite tainted all litigation involving CTI** after purporting to represent the corporation and at the same time prosecuting a derivative shareholder action against CTI" (*FinCanna*, p. 30), and Catanzarite did the same thing with MFS before that. To prevent a multiplicity of judicial proceedings and further irreparable harm, Plaintiff seeks injunctive relief in this action where Defendants are alleged to willfully fail.

173.     "Where a lawyer accepts employment **actually adverse to a client or former client**, **actual suspension** is the presumed sanction if the lawyer fails to obtain informed written consent, breaches the duty of confidentiality, and causes significant harm to the client." (*See State Bar of Cal., Rules of Proc., Rule 2.5(a)*.) Every filing by Catanzarite violates the rights of all parties and wastes

1   precious resources of the Courts and the same parties, because Catanzarite is not entitled to
2   attorney fees where serious CRPC violations exist, and the conflicts are not waivable.

3   174.    As Plaintiff furnished Defendants with this clear and convincing evidence, State
4   Bar still entrusts Catanzarite to harm members of the public, the courts, and the legal profession
5   willfully without regard for the damages or emotional harm. Catanzarite has operated in violation
6   of this since September 14, 2018, and Plaintiff alleges Catanzarite learned this from prior cases
7   using the same "legal tactics," enabled by the State Bar's broken attorney discipline system that
8   financially favors Catanzarite's misconduct over ethical conduct. Indeed, on information and
9   belief, Plaintiff alleges that KJC has amassed a personal fortune using these legal tactics,
10  continuously pushing the line without fear of retribution, and when Catanzarite can use the mere
11  pendency of legal actions as a "weapon of extortion" while the State Bar defers to their rights over
12  public interest, there is no reason for attorneys to stop the "legal tactics" but its own conscience.

13  175.    Plaintiff provided State Bar with exhaustive evidence and repeatedly communicated
14  with Defendants about his claims and allegations. Plaintiff was never invited to provide testimony
15  nor the opportunity to further support his allegations. Defendants made the deliberate decision to
16  allow the conduct instead, which Plaintiff alleges is violative of their Core Mission, statute under
17  Business and Professions Code §6001.1, Attorney Rules, and Discipline Standards that exist to
18  prevent the injuries that Plaintiff endured, and that no reasonable person would do this under the
19  circumstances. Plaintiff is not "de minimis," and will not allow others to be treated as they are.

20  176.    Plaintiff is informed and believes, and thereon alleges, that Defendants place the
21  public interest and Plaintiff's interests "last," behind Defendants, behind Catanzarite's, and
22  certainly not "paramount" by any definition.

23  177.    State Bar has engaged in unlawful taking from members of the public.  Plaintiff was
24  even asked to do Defendants' work for them by compiling more "adduced" evidence in a letter
25  from Morgenstern, at Plaintiff's expense and prejudice, despite the damages already inflicted upon
26  him including severe emotional distress, which is not within Defendants' reasonable standard of
27  care and allegedly strikes to the authenticity of the State Bar's entire system of attorney discipline,
28  on information and belief. State Bar also takes from members of the public through their licensees.

1

**State Bar Complaint with Specific Allegations Supported by Clear and Convincing Evidence**

2

178.     Evidencing a pattern of fraud, corruption, undue influence, outrageous conduct, and

3 negligence underlying this Complaint, Attorney Rules violations by Catanzarite that Plaintiff alleges

4 he has either conclusively proven with clear and convincing evidence in the Catanzarite Cases, or

5 provided probable cause therefore by conclusively proven evidence of allegations supporting "actual

6 suspension" to the State Bar formally for purposes of protecting Plaintiff and the public interest to

7 investigate all allegations, include, but are not limited to:

8
Rule 1.7 violations (representation of adverse interests before the same tribunal, for which Catanzarite
9
has already been disqualified at least three times by the trial court through equitable relief, upheld by
10
the Court of Appeal, and Tice was also disqualified in an unrelated case this year)
11

12
Rule 4.2 violations (contact with parties represented by counsel, upon which several actions filed or
13
maintained by Catanzarite rely as to Cooper and MFS, evidenced by a sworn declaration of prior
14
counsel for Cooper who was not involved in unlawful settlements directed by Catanzarite) (EXHIBIT
15
U)
16

17
Rule 7.3 violations (improper solicitation of clients for attorney's pecuniary gain)
18

19
Rule 8.4 violations (misconduct, including violations of State Bar Act)
20

21
State Bar Act 6104 violations (appearing corruptly and willfully without authority at least three times,
22
for which suspension or disbarment is the statutory remedy, which is proven by Court of Appeal
23
rulings pertaining to Catanzarite's legal capacity to advocate pleadings for its legal adversaries, which
24
Tice was also found to have violated by the Court of Appeal as specified herein)
25

26
State Bar Act 6077 violations (willful violations of CRPC)
27

28
State Bar Act 6103 violations (willful violations of court orders, inc. Court of Appeal, including

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 63

ongoing representation of adverse parties after trial court orders and Court of Appeal rulings) (EXHIBIT W) (EXHIBIT X)

State Bar Act 6106 violations (acts of moral turpitude, dishonesty, and corruption) (EXHIBIT F)

State Bar Act 6068 violations (frivolous actions filed or maintained)

Cal. Pen. Code 518 violations (extortion/blackmail for property, namely stock via unlawful settlements of derivative actions that were not authorized by the Court) (EXHIBIT F)

Cal. Pen. Code 522 violations (extortion/blackmail for signature on legal documents and/or property, namely from Tolled Defendants unlawfully dismissed from compromised derivative actions without court approval while tolling claims against them to "bring later" under color of official right) (EXHIBIT F)

Cal. Pen. Code 523 violations (attempted extortion/blackmail by threatening letter, namely threatening Plaintiff under color of official right to relinquish control of his company CTI in connection with unprivileged and unprotected acts of alleged securities fraud, extortion for signature or property, Rule 1.7(d)(3) violations, and Rule 4.2 violations) (EXHIBIT F)

Cal. Pen. Code 118 violations (perjury and/or subornation of perjury, Plaintiff will request judicial notice)

Cal. Pen. Code 470 violation (forgery or aiding in forgery in connection with Catanzarite's direction of and "direct role" within a shareholder dispute to pursue its corrupt motive of passion or interest) (EXHIBIT V)

Cal. Corp. Code 25401 violations (securities fraud or aiding securities fraud, where KJC is a registered

investment advisor under jurisdiction of the SEC and such alleged securities fraud was, on information and belief, to be willful and thereby constitutes an alleged felony) (EXHIBIT F) and

Various decisional law violations (specific examples including compromise of derivative actions without court approval, directing a control dispute between two corporations among shareholders while purporting to represent the same adverse corporations against each other and/or Plaintiff, and automatic/mandatory disqualification of Catanzarite for adverse representation which compromises its duty of loyalty, confidentiality, and/or other core tenets of attorney advocacy which any reasonable attorney ought to forbear) (EXHIBIT M)

179.     Plaintiff further alleges that Catanzarite's Attorney Rules violations enabled by Defendants involve criminal conduct by parties under duress who were allegedly coerced or extorted by Catanzarite whom Catanzarite *now purports to represent*, additional damages to hundreds of shareholders of a public company FinCanna Capital, and disruption of a valuable tax base for the City of Coachella and State of California from an emerging company (CTI) by destroying CTI's operations through Attorney Rules violations without probable cause.

**State Bar Negligently Responds to Catanzarite Cases**

180.     In response to the first complaint (from Plaintiff) respecting Catanzarite Cases in or around January 2020, the State Bar wrote to Plaintiff on or about April 3, 2020 "[t]his letter is to inform you of the disposition of your complaint against Messrs. Catanzarite, Woodward, and Okeefe…the State Bar cannot proceed with disciplinary charges unless we can present evidence and testimony in court, sufficient to prove by clear and convincing evidence that the attorneys have committed a violation of the State Bar Act or the Rules of Professional Conduct. The **violation must be underline{serious enough} to support both a finding of culpability and the imposition of professional discipline**…**you further reported that the Orange County Superior Court has granted motions to disqualify the attorneys**…the attorneys have filed appeals…and the appeals are pending….there are no final orders disqualifying the attorneys…we invite you to file a new complaint against the attorneys, once all of the disqualification orders become final." (EXHIBIT H)

181.     The State Bar made no reference to Plaintiff's other allegations that Plaintiff supported by alleged prima facie evidence, including violations of Business and Professions Code § 6104 for which actual suspension or disbarment is the remedy and three violations exist, extortion for signature and/or property, or securities fraud and extortion by Catanzarite which Plaintiff alleges are felonies conducted willfully and enabled by Defendants.

182.     Plaintiff replied to the State Bar on or around June 1, 2020, rejecting the disposition of Plaintiff's complaint against licensees associated with Catanzarite, alleging the use of Catanzarite's State Bar credentials "as a weapon of extortion against the public." Plaintiff cited the State Bar's duty to him as a member of the public, asked legitimate questions of the State Bar's process that were never answered, and cited the damages to himself and others at the hands of Catanzarite through its Attorney Rules violations.

183.     The Complaint Review Unit confirmed the State Bar would not act on August 12, 2020 (EXHIBIT I). "The State Bar Court is authorized to impose or recommend disciplinary sanctions **only if there is clear and convincing evidence to establish that the attorney has committed a violation of the Rules of Professional Conduct or the State Bar Act**," that Plaintiff specifically "allege[d] that [Catanzarite] engaged in misconduct that included concurrently representing parties with adverse interests, improperly contacting represented parties, soliciting clients through apparent coercion or extortion, making false or fraudulent filings and representations to the Orange County Superior Court, and offering cash payments to shareholders to secure votes," and that Plaintiff could start a new complaint when the trial court orders became "final" through the Court of Appeal.

184.     Plaintiff prepared exhaustive formal accusations and case law citations against Catanzarite for the Supreme Court according to the *Walker* case, answered multiple requests of the clerk to produce additional copies with great expense to Plaintiff, and ultimately his cases were rejected by the Supreme Court clerk as untimely. Plaintiff alleges any policy that requires members of the public who have been unduly harmed by California attorneys and the State Bar's negligence to prepare a case for the Supreme Court in 60 days of the Complaint Review Unit's "review" is illogical, unfair, and violative of Business and Professions Code section 6001.1 as an arbitrary

bureaucratic process compounding a fundamentally broken system of attorney discipline in California. Plaintiff further alleges that any disposition of any complaint for attorney discipline is discrete of this action, which is for money and damages under CTCA, and other money, damages, and relief not subject to CTCA.

**Court of Appeal Issues "Final" Rulings Regarding Catanzarite in G058700**

185.     Again reflecting the failures of State Bar, on June 28, 2021, the Court of Appeal made its "final" ruling through G058700 (*FinCanna*) which the State Bar claimed was its threshold to finally enforce Attorney Rules against Catanzarite. The Court of Appeal concluded that the appeal itself (for Catanzarite to represent CTI) "lack[ed] merit," which Plaintiff alleges the State Bar reasonably should have known if it carefully reviewed Plaintiff's correspondence and Catanzarite's conduct in the Catanzarite Cases within the standard of care of a reasonable person under the circumstances.

186.     Nevertheless, the Defendants opened a new "investigation" on or around June 30, 2021 after Plaintiff submitted an additional complaint based on the "final" ruling. Kumar confirmed this "investigation" in correspondence with Plaintiff, and that Morgenstern and Nunley were assigned to the "investigation" and potential "prosecution."

187.     Beyond the lack of merit of Catanzarite's appeal of its disqualification, the Court of Appeal reached several important conclusions reflecting Defendants' allegedly willful, reckless, and outrageous disregard for Plaintiff and public interest via the *FinCanna* opinion.

188.     The entirety of the Court of Appeal's discussion in G058700 (pp. 17-31) (UNDERLINE EXHIBIT M) is incorporated herein by reference, further applied to Catanzarite's legal capacity to represent *any party* other than Denise Pinkerton after September 14, 2018 including MFS, CTI, and the Tolled Defendants, the implications upon Catanzarite's practice of law and the legal profession as a matter of public interest, and the State Bar's ongoing deference to Catanzarite's rights over Plaintiffs' and other innocent defendants in these actions who are unduly prejudiced by Attorney Rules violations enabled by Defendants.

189.     Plaintiff alleges the Court of Appeal's conclusions would be obvious to any person acting reasonably under the circumstances, specifically one whose primary duty is protection of the

public who had received and "carefully reviewed" Plaintiff's allegations against Catanzarite supported by trial court orders, such as Defendants.

190.      Citing *FinCanna* in G058700:

"[A]ll the facts relevant to the issue of [Catanzarite's] disqualification were undisputed.  There was **no need for the court to prematurely consider and resolve other factual disputes**," thereby "rending many causes of action moot before trial." (*Id*. at p. 23)

"Irrespective of the "nature of the lawsuits, **involving parties with conflicting interests**, and a corporation with adversarial directors [Catanzarite's role in these lawsuits] supported **mandatory disqualification as a matter of law**" (*Id*. at p. 25)

"Due to the undisputed contentious nature of their dispute, **it would be absurd to suggest [Catanzarite] could simultaneously represent these two factions of shareholders**. Similarly, there was no need to determine which faction controlled CTI to disqualify Catanzarite for simultaneously purporting to act as corporate counsel while pursuing a derivative action filed against the corporation." (*Id*. at 24) Recall, the same circumstances apply to MFS since September 14, 2018, although that was not the topic of the Court of Appeal's review in G058700 (*FinCanna*).

"**Catanzarite improperly took sides in a shareholder dispute** by filing the Scottsdale Action to promote the interests of [Tolled Defendants and others in alleged collusion] by **stopping CTI's insurance company from providing a defense or indemnity** to [Plaintiff and others] in the Mesa Action" (*Id*. at p. 22) Catanzarite did the same thing with MFS by dismissing the Tolled Defendants without court approval in an unauthorized settlement agreement in January 2019 that involved alleged extortion and securities fraud.

**Catanzarite's "contentions" that its "purported" clients "benefited from Catanzarite's legal tactics are disingenuous"** (*Id.* at p. 25)

1   Catanzarite relies upon "**twisted logic**" (*Id*. at p. 28) in representing adverse parties, and the Tolled

2   Defendants "**cannot waive the conflict** on behalf of the inanimate corporate entity, CTI [nor MFS],"

3   (*Id*. at p. 28)

4

5   The Court of Appeal questions how Catanzarite's post-dated conflict waivers signed by Tolled

6   Defendants "would be relevant to a mandatory disqualification for **ongoing concurrent**

7   **representation of clients with conflicting interests**" (*Id*. at p. 27), and

8

9   "[i]t would be meaningless in derivative litigation to allow the consent of the parties defendant to

10  exculpate the practice of dual representation, for most often it would be officers and directors [here,

11  also Tolled Defendants] who would force the corporation's consent." Comment, Independent

12  Representation for Corporate Defendants in Derivative Suits (1965) 74 Yale L.J. 524, 528.) (*Forrest v.*

13  *Baeza* (1997) 58 Cal.App.4th at p. 77)

14

15  Catanzarite's conduct was "**plainly disloyal to the corporation** [CTI]," (*FinCanna*) and now

16  Catanzarite is representing MFS again despite appearing for CTI corruptly and willfully.

17

18  "**Catanzarite tainted all litigation involving CTI** after purporting to represent the corporation and at

19  the same time prosecuting a derivative shareholder action against CTI." (*FinCanna*, p. 30) As

20  Defendants are aware, Catanzarite did the same with MFS. As such, the Court of Appeal affirmed "the

21  court's orders, disqualifying Catanzarite from representing CTI, CTI Subsidiaries, and the group of

22  shareholder plaintiffs in the Mesa Action." (*FinCanna,* p. 31).

23

24  "Particularly troubling was **Catanzarite's active role in helping its clients forcibly remove CTI's**

25  **directors, after Catanzarite was unable to achieve this same result in the MFS Action's section**

26  **709 hearing**" (*FinCanna* p. 25) and through the alleged securities fraud and extortion for signature

27  and property of Tolled Defendants on January 23, 2019 involving Catanzarite when its standing to

28  pursue the Pinkerton Action was challenged.

**Court of Appeal Issues Cumulative, Clear and Convincing "Final" Evidence of Attorney Rules Violations By Catanzarite in *CTI v. Duffy* G059457**

191.     "Earlier this year [in FinCanna] we considered three consolidated appeals concerning Cultivation Technologies, Inc.s' (CTI) motion to disqualify the Catanzarite Law Corporation (Catanzarite) in two related cases. We affirmed the trial court's determination that Catanzarite could not represent the following parties: (1) CTI; (2) three CTI subsidiaries; and (3) a group of CTI shareholders bringing a derivative lawsuit (which included James Duffy and Amy Cooper). (*Cultivation Technologies, Inc. v. James Duffy, et al.* (November 12, 2021, G059457) [nonpub. opn.] ("*CTI v. Duffy*"). Catanzarite continues to represent Duffy and Cooper, in alleged violation of trial court and Court of Appeal orders, willfully. Catanzarite continues to represent Tolled Defendants from a derivative action as if that were reasonable, too.

192.     Citing CTI v. Duffy in G059457:

"**Catanzarite inserted itself as corporate counsel while at the same time conspiring with a faction of shareholders seeking to oust elected board members**." (*Id*.) Catanzarite did the same thing with MFS in January 2019 after serving MFS with "over 500" discovery requests, and Tolled Defendants and MFS with "over 5,000" total discovery requests.

"**Violations of the State Bar Rules of Professional Conduct [are] not constitutionally protected**. Catanzarite's disqualification was mandatory because it was simultaneously representing clients with conflicting interests. **It is improper for Catanzarite to now suggest this unethical conduct is somehow protected petitioning activity**." (*Id.* at p. 11)

Respecting the January 23, 2019 shareholder consent (EXHIBIT F) in which Catanzarite caused O'Connor to sign a fraudulent document claiming MFS to be CTI's sole shareholder under "apparent extortion or coercion" (CRPC 7.3(b)(2) and later Catanzarite's "active role" in helping its clients remove CTI's directors in May 2019, **"[w]e conclude the published written consents do not relate to protected activity,"** (*Id.* at p. 14)

**State Bar Continues to Defer to Catanzarite Without Regard to Plaintiff and Public Interest**

193.     On November 22, 2021, Plaintiff received another letter from the State Bar. (EXHIBIT J)

194.     "The State Bar of California has decided to abate the matters…based on the factors outlined in rule 5.50 of the Rules of Procedure of the State Bar…there are pending civil matter(s) which involve substantially the same misconduct that is at issue in the State Bar matters…**the evidence 'adduced' in the related civil matter(s) will aid the State Bar** it its (i) investigation of Mr. Catanzarite's misconduct…and potential prosecution of Mr. Catanzarite in State Bar Court….We were also guided by Standard 2.5(a)…which provides that the harm caused to an attorney's client is a significant factor in determining the appropriate level of discipline for a violation of the conflict rules…**We will take no further action on your complaints at this time**."

**195.     By the date of this letter on November 22, 2021, Catanzarite had caused more than one hundred million dollars ($100,000,000+) and up to two hundred fifty million dollars or more ($250,000,000+) in damages to its purported client CTI and/or its shareholders, depleted much of CTI's insurance policy defending actions filed or maintained by Catanzarite in violation of Attorney Rules in concert with State Bar while standing in special relationship to Plaintiff, and CTI has recently noticed its shareholders of dissolution and winding up. Catanzarite's conduct is also allegedly imputing crimes including felonies upon Tolled Defendants and others like securities fraud and perjury – the same parties that it is expressly forbidden by Attorney Rules to represent in the first place.**

**196.     Catanzarite's conduct has allegedly compromised the legal profession, and Defendants failure to act is allegedly further compromising the fundament of our judicial system. The undisclosed consideration to DOES beyond license fees to State Bar is unknown.**

197.     In relying upon State Bar Rules of Procedure 5.50 of the Rules of Procedure of the State Bar to "abate" its enforcement of Attorney Rules even prior to a "proceeding" after informing Plaintiff in 2020 that it would act upon a Court of Appeal's "final" ruling, the State Bar arbitrarily and negligently, on information and belief, failed to weigh the obvious prejudice to parties, witnesses, and the legal profession in delaying such a proceeding under State Bar Rules of Procedure 5.50 (B)(7).

Further, the State Bar opened no *proceeding*, and instead abated the *investigation* without regard for Plaintiff or public interest, which Plaintiff alleges to be negligent operational decisions **purporting to uphold the law**.

198.     Plaintiff alleges Defendants act with legal malice because Plaintiff has refused to accept their alleged negligence and recklessness, and because the State Bar defers to their attorney members in violation of enactments designed to prevent injury to Plaintiff and public interest. On information and belief, this is allegedly corrupt where Defendants are on notice of their failures according to the Auditor, and such a clear and convincing list of flagrant Attorney Rules violations and failures in licensing, regulatory, and discipline functions existed to any reasonable person.

199.     Plaintiff respectfully alleges the "abatement" decision amounts to the State Bar concluding that its licensees with Catanzarite, and others who violate the public trust, get to rob all the proverbial banks before they can be stopped by the State Bar, or that Plaintiff's proverbial house needs to burn down entirely before they can put the fire out following his 911 calls. Plaintiff alleges Defendants' deliberate failure to act may be in retaliation for his preservation of evidence letter, on information and belief, and in any event, it violates the duty of care, statutory duty to protect, and may involve fraud, corruption, or undue influence.

200.     Abatement of investigations and delayed enforcement of Attorney Rules allows Catanzarite to abuse the public interest and Plaintiff's protected rights, using the "pendency of …action[s] as a weapon of extortion by refiling…case[s] ad infinitum" (*Estate of King* (1953) 121 Cal.App.2d 765). Where more than "six lawsuits" (*FinCanna*) exist while Catanzarite "simultaneously" (*FinCanna*) represents virtually all sides of the disputes it manufactured, *there will always be* "pending civil matters" if Defendants refuse to stop it through allegedly negligent and reckless ministerial decisions.

201.     On information and belief, Plaintiff alleges that Catanzarite attorneys should have been disbarred prior to September 14, 2018 for similar conduct as alleged in this complaint in other cases of which Plaintiff has been made aware by third parties where the State Bar also took no action. Thus, a pattern exists of Defendants' allegedly willful conduct and it does not align with policy. Plaintiff will seek judicial notice and evidence of Deborah Breuner's story.

202.     As of the date of this complaint, Catanzarite is still trying to extort a settlement from Plaintiff and others to corruptly assume the role of counsel for CTI again, which it has already been disqualified from assuming by the trial court and Court of Appeal, and which no reasonable attorney or law firm would do unless it knew the State Bar would negligently and recklessly enforce Attorney Rules in deference to its members, licensees, and agents against public interest and in breach of mandatory duties. All evidence relevant to the conduct of Catanzarite for all times relevant will be added to this Complaint, including the conduct that continues involving alleged insurance fraud.

203.     As of the date of this complaint, Catanzarite is still representing Tolled Defendants that it is suing in the Pinkerton Action while it tolls claims against them (as the derivative settlement was never approved by the court), while filing declarations from the same parties under penalty of perjury containing materially false statements of fact that conflict with each other, which no reasonable attorney or law firm would do unless it was financially beneficial and Catanzarite knew the State Bar would continue its allegedly negligent, reckless operational decisions.

204.     As of the date of this complaint, Catanzarite is still representing James Duffy and Amy Cooper within CTI's "tainted" (*FinCanna*) litigation, which the Court of Appeal says Catanzarite "could not represent" (*CTI v. Duffy*), and the "inanimate entity" (*FinCanna*) MFS with James Duffy as CEO. Plaintiff alleges this would not happen, but for Defendants negligence, including outrageous conduct that amount to willful operational decisions without regard for Plaintiff's emotional harm and damages

**Defendants Are Not Immune from Liability in this Action**

205.     Under Government Code § 815(a), "a public entity in California is not liable for a tortious injury caused by an act or omission of a public entity or public employee or any other person, except as otherwise provided by statute." As previously alleged, Business and Professions Code section 6001.1 supersedes this and any other statute expressly, holding Plaintiff interests as "paramount."

**Law Imposes Liability for Some or All Acts Underlying CTCA Claim**

206.     As set forth herein, Plaintiff alleges Defendants acts or omissions that damaged Plaintiff and public interest are not "basic policy decisions…to coordinate branches of government" (*See, Johnson v. State* (1968) 69 Cal.2d 782), nor do they result "from the employee's exercise of discretion, but from negligence in performing it after having made the discretionary decision to do so." (*See, McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 261).  In this case, Plaintiff alleges that the decisions made were actually unlawful under BPC 6001.1 and other mandatory enactments, the breach of which are not discretionary decisions, nor in the realm of reasonable decisions, for State Bar, Morgenstern, Nunley, Kumar, and DOES.

207.     Defendants' acts or omissions in this case also results from "operational issues" (*See, Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 899, 911-912) by Defendants "purporting to apply the law" (*See, Gillian v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1051), "negligent performance" (*See, Robinson v. Solano County* (9th Cir. 2002) 278 F.3d 1007, 1016) of their statutory duties and allegedly outrageous rubber stamping of Attorney Rules violations or "failure to take protective measures to deter" (*See, Doe 1. v. City of Murrieta* (2002) 102 Cal.App.4th 899, 911-912) State Bar, Kumar, Morgenstern, Nunley, and State Bar licensees Catanzarite's "exploitation" (*Ibid*.) of Plaintiff, Catanzarite's clients, the public, the courts, and the legal profession.

208.     "A public entity and its employees are immune from liability for an injury caused by enacting or failing to enact laws, or by failing to enforce any law." (*Gov. Code §§ 818.2, 821*). However, Plaintiff alleges Defendants are liable for Plaintiff's damages because his allegations involve Defendants "breach of a mandatory duty" to protect him and public interest above any other interest, and his claims are "not barred by these immunities because a nondiscretionary act [is] alleged." (*See, Guzman v. County of Monterey* (2009) 178 Cal.App.4th 983), and "this immunity applies only in connection with discretionary activities, and not in connection with mandatory duties under Gov. Code section 815.6 (*See, Walt Rankin & Associates v. City of Murrieta* (2000) 84 Cal.App.4th 605).

**Plaintiff Alleges Defendants Have No Immunity Where Overriding Business and Professions Code 6001.1 Holds Plaintiff Claims as "Paramount," Other Law Constitutes "Other Interests"**

209.     Plaintiff alleges that any conflicting decisional or statutory limitation of liability or damages or application of statutory or decisional limitation in his case against Defendants would unduly prejudice Plaintiff as a member of the public, and would not place Plaintiff interests as "paramount."

210.     Plaintiff alleges Defendants are harming the public by repeatedly rubber-stamping and authorizing Attorney Rules that are conclusively "unthinkable," "unreasonable," "not protected petitioning activity," "unethical," "disingenuous," "plainly disloyal" to clients, "legal tactics" constituting "violations of the Rules of Professional Conduct" that rely upon "twisted logic" of State Bar licensees associated with Catanzarite that are not supported by "reasonable belief" since September 14, 2018, and Catanzarite knows, on information and belief, the State Bar will continue to protect Catanzarite, and disregard Plaintiff's "paramount" rights no matter the evidence, damages to Plaintiff, or ongoing risks to constitutional rights that State Bar, DOES, and Catanzarite represent.

211.     Plaintiff will seek testimony from the Acting State Auditor and former Auditor concerning all matters pertaining to this action to avoid further public waste by State Bar to the extent Plaintiff can limit discovery and hasten this action to jury trial.

212.     Plaintiff incorporates by reference to this Complaint all exhibits to his original complaint in ROA #2, as well as the findings of Michael S. Tilden, CPA, Acting State Auditor, for Report 2022-030, and the associated letter to the Governor. Those documents follow and Plaintiff will seek judicial notice of this evidence, and seek all prior documentation associated with Catanzarite through public records or through California State Auditor's impartial observance, to support this action and reduce expenses associated with discovery imputed to the government in this action.

COMMITMENT
INTEGRITY
LEADERSHIP

*April 14, 2022*
**Report 2022-030**
**FACT SHEET**

**Michael S. Tilden**, CPA *Acting State Auditor*

CONTACT: *Public Affairs Office* | *(916) 445-0255*

# The State Bar of California's Attorney Discipline Process
*Weak Policies Limit Its Ability to Protect the Public From Attorney Misconduct*

## Background

The Legislature established the State Bar of California in 1927 as an arm of the California Supreme Court that oversees the legal profession. Its mission is to protect the public by licensing and regulating attorneys and to enhance the administration of justice. The State Bar administers a disciplinary system that investigates allegations and prosecutes complaints against attorneys who violate rules and laws. With 250,000 licensed attorneys in the State, it is vitally important that clients can trust the State Bar to fully address their complaints of attorney misconduct. Nevertheless, our audit found that the State Bar failed to effectively deter or prevent attorneys from repeatedly violating professional standards.

## Key Findings

- It closed many cases of potential misconduct through confidential processes that are not available to the public.
  - » It dismissed as much as 10 percent of all investigations through nonpublic measures, such as issuing private warning letters to attorneys.
- It closed multiple complaints related to trust accounts in which attorneys hold clients' funds.
  - » It did not consistently follow its own formal guidance for reviewing certain types of complaints related to those trust accounts, and its weak safeguards hampered its ability to detect repeated violations.
  - » It closed some complaints because clients withdrew those complaints, even when it had evidence of misconduct.
- It failed to consistently address conflicts of interest between its staff and the attorneys it investigates.
  - » In more than one-third of the cases we reviewed, the State Bar did not document how it addressed potential conflicts before it closed complaint cases.
  - » It allowed staff members to review and close complaints against attorneys even though it knew that someone in its organization had a conflict of interest with the attorney.

## Key Recommendations

- The State Bar needs to make significant improvements to the safeguards that help ensure that its staff thoroughly investigate complaints of attorney misconduct.
  - » It should revise its policies to define specific criteria for which cases are and are not eligible to be closed using nonpublic measures.

- » It should implement a method of monitoring its investigators' compliance with its new policy regarding cases in which a complainant withdraws the complaint.
- » It should begin using its general categorization of complaint types in its case assessment process so that it can identify potential patterns of misconduct.
- » It should create a formal process for determining whether its staff is able to objectively assess cases and document this assessment in its case files when conflicts exist.



**One Case We Reviewed**

An attorney was the subject of 28 complaints over a five-year period, one of which was initiated after a bank notified the State Bar that the attorney failed to maintain funds that were received for a client in a client trust account. Over this period, 10 of the 28 complaints involving the attorney alleged client trust account violations. At the time the State Bar reviewed the violation reported by the bank, the attorney had two other disciplinary matters open, one of which alleged a client trust account violation. Although State Bar intake staff noted the open investigations in their review of the violation reported by the bank, they did not forward the complaint to be investigated by the staff who were investigating the other open complaints. Instead, the State Bar closed the complaint as *de minimis*.

*Case Example*

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit 1
Page 76

**FIRST CAUSE OF ACTION**

**NEGLIGENCE (Violation of Mandatory Duties Under GC 815.6)**

**Based on California Law**

**PLAINTIFF against STATE BAR, STATE**

213.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

214.     According to Gov. Cod. 815.6, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to prevent against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." *(Added by Stats. 1963, Ch. 1681.)*

215.     In all operational decisions underlying Plaintiff's preceding and following allegations, Plaintiff alleges State Bar through its authorized employees, agents, or licensees was and "is under a mandatory duty imposed by [BPC 6001.1] that is designed to protect against the risk of a kind of injury [CTCA Claim and other damages], [so State Bar] is liable for [CTCA Claim] proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

216.     In all decisions underlying Plaintiff's preceding and following allegations, Plaintiff alleges State Bar through its authorized employees, agents, or licensees was and "is under a mandatory duty imposed by [U.S.C. Section 1983] that is designed to protect against the risk of a kind of injury [to pursue civil remedies for civil rights violations against the government] [so State Bar] is liable for [CTCA Claim and other damages] proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

217.     Following denial of his CTCA Claim, Plaintiff brings this cause of action for negligence (per se) against public entity State Bar under Gov. Cod. 815.6 for alleged violations of mandatory duties involving State Bar, Kumar, Morgenstern, Nunley, and DOES' official licensing, regulatory, and discipline functions, and public entity State or public entity DGS as directly, derivatively, vicariously, or otherwise liable for public entity State Bar or its public employees under

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 77

CTCA.

218.     Plaintiff alleges BPC 6001.1 is an enactment that imposes mandatory duty on State Bar and its public employees and officials acting in its capacity for any and all exercises of "licensing, regulatory, and discipline functions," that BPC 6001.1 is backed by express intent of Legislature, and that BPC 6001.1 when read with other enactments like BPC 6104, CRPC, BPC 6077 which involve "the exercise of licensing, regulatory, and discipline functions," creates additional mandatory duties upon Defendants, in any instance to exercise reasonable care (without violating BPC 6001.1, which is not subject to discretion), in the exercise of Defendants' exercise of official licensing, regulatory, and discipline functions for State Bar.

219.     Plaintiff alleges "Section 1983 (Civil action for deprivation of rights) of Title 42 of the United States Code (42 U.S.C. § 1983)…provides [Plaintiff] a right to sue *state* government employees and others acting "under color of state law" for civil rights violations." And that such violations are intentional torts under Gov. Cod. 815.3. Section 1983 does not provide civil rights; it is a means to enforce civil rights that already exist. To the extent Section 1983 does not give rise to a mandatory duty for Defendants under Cal. Gov. Cod. 815.3 or 815.6, Plaintiff will pursue a separate action in another forum, and asserts this cause of action under Gov. Cod. 815.6 on the basis of violations of mandatory dutie and negligence per se imposed by BPC 6001.1, CRPC, BPC 6077, and/or BPC 6104 instead.

220.     Plaintiff alleges public entity State Bar under Gov. Cod. 815.6 is bound by mandatory duty, not discretion, under Business & Professions Code section 6001.1 when "exercising their licensing, regulatory, and disciplinary functions," which includes CRPC, BPC 6077, and BPC 6104. For all such decisions, "[w]henever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." *(Amended by Stats. 2018, Ch. 659, Sec. 3. (AB 3249) Effective January 1, 2019.)*

221.     Plaintiff alleges BPC 6001.1, BPC 6104, CRPC, BPC 6077, and Section 1983 were all intended to prevent against the type of injury sustained by Plaintiff, and that Defendants failed to exercise reasonable care in the performance of their respective duties. Plaintiff alleges legislative intent of these enactments support his legal theory of negligence and duties imposed

and will seek judicial notice of all comments or proceedings pertaining to the intent of BPC 6001.1, BPC 6104, CRPC, and BPC 6077.

222.     In addition to the preceding allegations, the following official acts of public employees or elected officials acting for State Bar involving alleged negligence per se of State Bar or its public employees or elected officials that have caused damages and injury to Plaintiff per his CTCA Claim include the following (together, "Duty Violations"), subject to amendment before judgment, in that the preceding allegations and these Duty Violations allegedly do not involve exercise of reasonable care, and have each and together contributed to Plaintiff's damages:

223.     Plaintiff alleges the State Bar, through its licensing, regulatory, and disciplinary functions, fails to protect the public, including Plaintiff.

224.     Plaintiff alleges that State Bar and DOES engage in official transactions including licensing, regulatory, and discipline functions that are expressly forbidden by CRPC 1.7(d)(3) and decisional law, and thus neither State Bar nor DOES can be trusted by State to enforce the same CRPC, and that enforcement thereof is vital to preserve democracy, the public, courts, and legal profession.

225.     Plaintiff alleges the State Bar, through its licensing regulatory and disciplinary functions, unreasonably enables attorneys who violate the public trust to conduct extortion, attempted extortion, perjury, subornation of perjury, fraud, securities fraud, and willful violations of CRPC to the direct and ongoing prejudice of Plaintiff, public, courts, and legal profession.

226.     Plaintiff alleges the State Bar, through its licensing regulatory and disciplinary functions, corruptly serves State Bar, State Bar licensees including Catanzarite, Kumar, Morgenstern, Nunley, and DOES – not public interest – after 2011 and 2018 in violation of law.

227.     Plaintiff alleges the State Bar and DOES, including licensees of State Bar, deliberately conceal material facts to Legislature including conflicts of interest barred by CRPC, BPC 6077, law, regulation, enactment, or statute in the exercise of their licensing, regulatory, and disciplinary functions, and Plaintiff incorporates the Auditor findings from 2009 through present, the Tom Girardi case, and the Catanzarite Cases, by reference.

228.     Plaintiff alleges the State Bar's licensing, regulatory, and disciplinary functions

prioritize the rights and protection of unethical attorneys over public interest, and that State Bar and DOES use this power over public and Plaintiff for unknown gain, exerting or having previously exerted control over licensees who act as *bona fide* Court officials in the world's fifth largest economy, even when they have a well-documented history of unlawful conduct.

229.    Plaintiff alleges the State Bar's licensing, regulatory, and disciplinary functions are *operated* in a manner which unreasonably subjects attorney licensing, regulation, and discipline to corruption and undue protection of delinquent attorneys who abuse the public trust.

230.    Plaintiff alleges the State Bar is engaged in unlawful taking from Plaintiff and other members of the public, where State Bar's role is to protect, and State Bar requires members of the public to achieve State Bar's extraordinary burden of proof on behalf of State Bar before its public employees commence proceedings or adhere to duties imposed by BPC 6001.1 and the civil protections afforded under U.S. Constitution under USC Section 1983. In making this allegation, Plaintiff incorporates Morgenstern's November 2021 request for Plaintiff to gather "adduced" evidence for State Bar, even after Plaintiff has endured unreasonable injury and suffering, known to State Bar, Morgenstern, Nunley, Kumar, and DOES.

231.    Plaintiff alleges State Bar, DOES, and Morgenstern engage in unlawful taking by permitting licensees of State Bar to steal from, cheat, mislead, and harm members of the public.

232.    Plaintiff alleges appointed or elected officials with State Bar have engaged in corruption with unknown beneficiaries, and that the Tom Girardi and Catanzarite Cases' history is cumulative evidence therefore, as well as the April 14, 2022 Report 2022-030 Fact Sheet from Michael S. Tilden and the associated "case study" evidencing corruption and un-waivable conflicts involving official acts of State Bar subject to CTCA.

233.    Plaintiff alleges the Girardi and Catanzarite Cases were and/or are being handled in a manner which directly conflicts with mandatory duties imposed upon State Bar by BPC 6001.1, CRPC, 6077, and other enactments intended to prevent the injuries to Plaintiff these State Bar licensees are causing to public, courts, and legal profession.

234.    Plaintiff alleges State Bar and DOES have failed to respond reasonably in a manner aligned with its statutory duty after 2011 and 2018, and within all policy and operational decisions,

related to findings of the California State Auditor for all times relevant.

235.	Plaintiff alleges the licensing, regulatory, and discipline functions of State Bar are willfully operated in a manner which directly conflicts with mandatory duties and affirmative duties imposed upon State Bar.

236.	Plaintiff alleges that counsel for State Bar, and or DOES decision makers upon receipt of Claim Notice, DOES decision makers upon receipt of CTCA Claim, DOES decision makers upon denial of Plaintiff's CTCA Claim, and through acting with reckless disregard for the implications of the instant action, or the potential consequences for State.

237.	"In California, negligence per se is not a separate cause of action but is the application of an evidentiary presumption." (*See, Quiroz v. Seventh Avenue Center*, 140 Cal. App. 4th 1256, 1285-86 (Cal. 2006). In California, there are four elements required to establish a viable negligence per se theory: (1) the defendant violated a statute or regulation; (2) the violation caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect. (*See, Alejo v. City of Alhambra*, 75 Cal.App.4th 1180, 1184-1185 (Cal.App. 1999).)

238.	Plaintiff alleges public entity State Bar and under Gov. Cod. 815.6 is bound by mandatory duty to exercise reasonable care in upholding not only BPC 6001.1 in the exercise of all licensing, disciplinary, and regulatory functions, but also under this enactments, other enactments like CRPC or specifically BPC 6104, which holds "[c]orruptly or willfully and without authority appearing as attorney for a party to an action or proceeding constitutes a cause for disbarment or suspension."

239.	Plaintiff alleges public entity State Bar and licensees of State Bar are bound under Gov. Cod. 815.6 by mandatory duty under Bus. & Prof. Cod. 6077, where "[t]he rules of professional conduct adopted by the board, when approved by the Supreme Court, **are binding upon all licensees of the State Bar**." In other words, State Bar licensed attorneys do not have capacity to dispose of complaints involving clients of their firm, or under any test of CRPC 1.7(d)(3).

240.	Plaintiff alleges State Bar has allowed, and is allowing, Catanzarite, to repeatedly abrogate BPC 6104, and that the violations known may involve insurance fraud by Catanzarite in

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 81

agency with State Bar, who has an affirmative duty to protect Plaintiff and public interest.

241.     Plaintiff alleges State Bar is liable under Gov. Cod. 815.6 for State Bar, State Bar licensees, and public employees acting in their official capacity for State Bar for negligence per se because: (1) State Bar violated Bus. & Prof. Code section 6001.1 through the Duty Violations; (2) the violation caused Plaintiff's injury (CTCA Claim); (3) the injury to Plaintiff resulted from official conduct of public employees or licensed agents of State Bar, and other conduct invoking an affirmative duty to protect Plaintiff when standing in special relationship to Catanzarite and Plaintiff that *Bus. & Prof. Cod. section 6001.1* was designed to prevent the injury sustained by Plaintiff; and (4) Plaintiff is a member of the public. (*See, Alejo v. City of Alhambra*, 75 Cal.App.4th 1180, 1184-1185 (Cal.App. 1999).

242.     Plaintiff alleges State Bar is liable under Gov. Cod. 815.6 for State Bar and public employees acting in their official capacity for State Bar for negligence per se because: (1) State Bar violated Bus. & Prof. Code section 6001.1 and 6104; and/or 6077, and/or CRPC, through the Duty Violations, and (2) the violations caused Plaintiff's injury per CTCA Claim, here allowing licensees Catanzarite to appear corruptly and willfully, without authority, on behalf of direct adversaries before the same tribunal after Nov. 1, 2018, or on behalf of non-client entities corruptly to Plaintiff's prejudice via un-waivable conflicts already determined by Court of Appeal; (3) the injury underlying Plaintiff's CTCA claim resulted from official conduct of public employees or licensed agents of State Bar standing in special relationship to Defendants, Catanzarite and Plaintiff that *Bus. & Prof. Cod. section 6001.1*, and/or *6104*, and/or 6077, and/or CRPC were designed to prevent the injury sustained by Plaintiff; and (4) Plaintiff is a member of the public. (*See, Alejo v. City of Alhambra*, 75 Cal.App.4th 1180, 1184-1185 (Cal.App. 1999).)

243.     Damages sought by Plaintiff from Defendants for negligence per se are based upon CTCA Claim, the sufficiency of which was not denied by Defendants, and subject to proof in trial. Plaintiff has suffered "injury" as defined in CTCA as a direct and proximate cause of Defendants' alleged mandatory acts or omissions. As outlined in his CTCA Claim, damages endured by Plaintiff include past and future economic losses as well as pain and suffering caused by Defendants' negligence, where Plaintiff has endured and will continue to endure mental suffering,

loss of enjoyment of life, inconvenience, anxiety, humiliation, and emotional distress as a direct and proximate cause of State Bar's negligence and the foregoing acts, and other acts involving operational decisions that are subject to discovery. Plaintiff's career as an entrepreneur will be forever unduly impaired, thus reducing or restricting his capacity to earn profits or earnings from new ventures that will be reduced in scope or cease to exist. Plaintiff owns or controls approximately 12.6% of CTI, which was undergoing a merger worth one hundred million to two hundred fifty million dollars or greater ($100M to $250M+) based on objectively verifiable third-party analyses, where he was also Chief Executive Officer and a founder. Plaintiff did not receive 12.6% of stock in the merger due to Defendants, thereby suffering loss of 12.6% of the merger's value owned by Plaintiff, directly or proximately caused by Defendants. Plaintiff has endured more than one million dollars in legal fees defending actions where State Bar licensees were subject to mandatory disqualification by Law, which would not have occurred but for Defendants' alleged negligence, which was paid by Plaintiff's personal collateral source and "Side A" coverage while Plaintiff gathered "adduced" evidence for Morgenstern by request. Plaintiff's ability to obtain Directors & Officers insurance is unduly compromised in perpetuity by Defendants, who allegedly enabled, by way of control and special relationships, Catanzarite to sue his insurance carrier corruptly and willfully, without authority, also in violation of statute that exists to protect Plaintiff and public interest and failed to act reasonably upon notice thereof. Plaintiff has lost wages, bonuses, fringe benefits that would have been obtained if Defendants' negligence did not occur. Plaintiff will lose other wages, bonuses, fringe benefits, social security, and at least similar value of ownership of future ventures evidenced by the merger by and between CTI and Western Troy ($100M to $250M+ with 12.6% ownership) that failed due to Defendants plus other damages for the rest of his career. Plaintiff has endured and will continue to endure medical expenses from Defendants' negligence for his mental health and wellbeing. Accordingly, Plaintiff seeks compensatory damages from all Defendants, jointly and separately, consisting of sixty-four million one hundred thousand dollars ($64,100,000) in economic damages and additional non-economic damages which are difficult to ascertain but were "sufficiently" detailed within his CTCA Claim, and Defendants have waived their right to object to the sufficiency of Plaintiff's claim as per *Gov. Cod. § 911*.

1

2      244.     Plaintiff intends to move for summary judgment on this cause of action for

3   $161,000,000 in economic and non-economic damages according to proof, relying upon evidence

4   known to Defendants and licensees associated with Catanzarite, and other evidence obtained from

5   or existing by California State Auditor in the initial stages of discovery.

6

7                              **SECOND CAUSE OF ACTION**

8                              **NEGLIGENCE (RECKLESSNESS)**

9   **VIOLATIONS OF GC 815/815.2/815.3/815.6/CCP 714/BPC 6001.1/CRPC/BPC 6104**

10                             **Based on California Law**

11                             **PLAINTIFF against ALL DEFENDANTS**

12

13      245.     The preceding allegations are incorporated by reference and re-alleged as if fully set

14   forth herein.

15      246.     Plaintiff brings this cause of action against all Defendants in accordance with the

16   preceding theories of statutory bases for liability under CTCA.

17      247.     Plaintiff brings this cause of action for negligence with a higher degree of

18   culpability ("recklessness") against State Bar, Kumar, Nunley, Morgenstern, and DOES under

19   Gov. Cod. 815, 815.2, 815.3, 815.6, CCP 1714, CRPC, BPC 6001.1, BPC 6077, and BPC 6104 for

20   recklessness involving State Bar, Kumar, Morgenstern, Nunley, and DOES' in the course of its

21   operational decisions made within official licensing, regulatory, and discipline functions, alleging

22   public entity State Bar to be responsible for intentional torts of public officials for violating

23   mandatory duties imposed by GC 815.3 or GC 815.6, and further alleging public entity State or

24   public entity DGS as directly, derivatively, vicariously, or otherwise liable for public entity State

25   Bar or State Bar public employees under CTCA.

26      248.     Plaintiff alleges State Bar, Kumar, Nunley, Morgenstern, DOES were "aware of the

27   probable dangerous consequences of [their] conduct, and that [they] "willfully and deliberately

28   failed to avoid those consequences" (*See, Taylor v. Superior Court of Los Angeles County* (1979)

24. Cal. 3d 890, 896).

249.　　Plaintiff alleges State Bar, Kumar, Nunley, Morgenstern, DOES are liable for incremental punitive or exemplary damages beyond his compensatory, economic and non-economic damages and injury as public employees of the State Bar (*See, Austin v. Regents of University of California* (1979) 89 Cal.Ap.3d 354).

250.　　Plaintiff alleges that State Bar, Kumar, Nunley, Morgenstern, DOES willful pattern of the Duty Violations, and as further alleged herein for recklessness, the pattern and operational decisions in violation of duties give rise to his claims for intentional tort under GC 815.3 and 815.6 in that the pattern is outrageous and occurs without regard for the damages and harm to Plaintiff, Plaintiff's emotional state, public, courts, and legal profession.

251.　　Plaintiff alleges Defendants acted or failed to act not only with negligence, but with an "extreme departure from the ordinary standard of conduct" or "want of even scant care." (*See, Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1185-1186, *Colich & Sons v. Pacific Bell* (1988) 198 Cal.App.3d 1225, 1240, *Kearl v. Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1052-1053, 236).

252.　　Plaintiff alleges State Bar, Kumar, Nunley, Morgenstern, DOES have engaged in recklessness that caused him damages and injury as outlined in the foregoing allegations and the Duty Violations and CTCA Claim, but with a higher degree of culpability than run-of-the-mill negligence or gross negligence.

253.　　"Recklessness refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur. Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action…with knowledge of the serious danger to others involved in it." (*See, Delany v. Baker* (1999) 20 Cal.4th 23 [82 Cal.Rptr.2d 610, 971 P.2d 98]).

254.　　"[T]he term 'recklessness' requires that the defendant have knowledge of a high degree of probability that dangerous consequences will result from his or her conduct and acts with deliberate disregard of that probability or with a conscious disregard of that probability or with a conscious

disregard of the probable consequences." (*See, Conservatorship of Gregory v. Beverly Enterprises, Inc.* (2000) 80 Cal.App.4th 514, 521 [95 Cal.Rptr.2d 336].)

255.      Plaintiff alleges State Bar, Kumar, Nunley, Morgenstern, DOES have engaged in recklessness because they each had knowledge of a high degree of probability that dangerous consequences will result from his or her Duty Violations to Plaintiff and other members of the public by (a) failing to make reasonable operational decisions in response to changes in statutory duty for State Bar and public employees acting in their official capacity for State Bar (*Bus. & Prof. Cod. 6001.1*); (b) failing to make reasonable operational decisions in response to findings of the California State Auditor that notice several dangerous conditions and the risk of severe injury from State Bar premises to any reasonable person; (c) failing to exercise a reasonable duty of care, indeed, want of even scant care, within the operational decisions involving the Tom Girardi and Catanzarite Cases; (d) by consciously disregarding (after weighing the risks and benefits) the serious danger attorneys like Catanzarite pose to public interest, the courts, the legal profession, Plaintiff and delinquent attorneys' own "clients;" (e) through Defendants' negligent operational decisions as alleged, where Defendants are aware that their licensed agents with Catanzarite have already caused, together with Defendants as alleged in special relationships with Plaintiff as victim, more than one hundred million dollars ($100,000,000) in damages under Defendants' control, and Plaintiff alleges that government licensee or agents associated with Catanzarite have directed or engaged its clients in criminal acts including felonies that are known to State Bar, Nunley, Kumar, Morgenstern, and DOES, but that each of them unreasonably use their positions of authority over Plaintiff to protect Catanzarite, and not public interest, outrageously, in violation of law, and in violation of their mandatory or affirmative duty to protect, and that this is but a symptom of State Bar's flawed pattern of negligent operational decisions; (f) that State Bar and DOES failed to align its staffing with its mission, and that State Bar discontinued operational changes that improved capacity, has engaged in understaffing, and has willfully abandoned plans to benchmark attorney discipline systems to cover up its negligence, recklessness, and corruption; (g) that State Bar has failed to sufficiently fix the conditions of its licensing, regulatory, and discipline systems in the face of overwhelming evidence that State Bar fails to protect public

1   interest, and that public interest relies upon State Bar to protect; (h) that DOES have failed to design or
2   implement a reasonable system of licensing, regulation, and discipline through a series of negligent,
3   reckless, and/or corrupt operational decisions that systemically fail to protect the public, including
4   Plaintiff, amidst a series of conflicted transactions for all times relevant, and if not for this, Plaintiff
5   would not have suffered any damages; (i) that State Bar has willfully and recklessly ignored the law,
6   enactments, and duties imposed by Catanzarite Cases, and that this evidences systemic recklessness
7   together with the Auditor findings from 2009 to present and Tom Girardi case;; (j) that State Bar does
8   not understand CTCA or its history applied to Defendants, and has operated as if it State Bar and
9   public employees serving State Bar are immune from any and all liability resulting from any and all
10  decisions, including those involving operational negligence, gross negligence, corruption, and
11  violations of general, mandatory, affirmative, and special duties to protect, and that this reckless
12  assumption was discarded as "mistaken as unjust" since 1961 in California.

13      256.     "The trier of fact should decide whether a knowing pattern and practice of understaffing
14  in violation of applicable regulations amounts to recklessness." (*See, Fenimore v. Regents of*
15  *University of California* (2016) 245 Cal.App.4th 1339, 1349) [200 Cal.Rptr.3d 345].) On information
16  and belief, for all times relevant, Defendants have engaged in a knowing pattern and practice of
17  understaffing in violation of Bus. & Prof. Cod. 6001.1 and CRPC in staffing its licensing, regulatory,
18  and disciplinary functions, and adjusting its operations to conform with Bus. & Prof. Cod. § 6001.1.
19  Plaintiff alleges sufficient funds to operate an effective licensing, disciplinary, and regulatory system
20  exist, that Defendants are factually aware with sufficient notice of their alleged knowing pattern and
21  practice of understaffing, are factually aware of the dangers inherent based on formal reports to
22  Legislature and the California State Auditor, and indeed that State Bar has the capacity to increase
23  cash flows were their funding insufficient upon such sufficient notice from the Auditor but have not
24  done so through their operational decisions that are not based on policy.

25      257.     For negligence with a high degree of culpability or recklessness, Plaintiff seeks
26  $161,000,000 plus an additional $161,000,000 in special damages according to proof ($322,000,000
27  total) under Gov. Cod. 815.6 and/or Gov. Cod. 815.3.

28      258.     Plaintiff alleges that the intent of legislature is that Plaintiff is paid "fair compensation"

for intentional torts like intentional infliction of emotional distress evidenced by recklessness, and that DOES includes officials covered by GC 815.3, and that the recklessness is an intentional tort against Plaintiff that State Bar is liable for, and that Legislature intended Plaintiff to be compensated fairly.

259.     Plaintiff alleges the reckless acts or omissions alleged by Kumar, Morgenstern, and DOES would have given, or does give, rise to a cause of action against the employees for negligence, recklessness, and intentional tort, thus the State Bar is allegedly liable for compensatory damages derivatively for all injuries proximately caused by Kumar, Morgenstern, Nunley, and DOES under Gov. Code § 815, 815.2, 815.3, and 815.6 when acting in their official capacity, and punitive damages.

260.     Where California law allows for recovery of punitive damages in instances of clear and convincing evidence of malice, malice includes "despicable conduct which is carried on by the defendant and conscious disregard of the rights or safety of others." (*Cal. Civ. Code 3294(c)(1)*.) Plaintiff alleges that the Catanzarite Cases, Tom Girardi case, and Auditor report 2022-030 released April 2022 are evidence of despicable conduct that has damaged Plaintiff, and that the conduct is outrageous and involves reckless disregard for Plaintiff, public, courts, legal profession by a government protection agency tasked solely with the opposite mandate.

261.     Plaintiff alleges the foregoing conduct in the Duty Violations, Catanzarite Cases, and understaffing of attorney discipline functions, to be despicable, conscious disregard by Defendants for the rights or safety of others that they are dutifully bound to protect, and that statutes, enactments, and law are in place to prevent the kind of injuries sustained by Plaintiff.

262.     Plaintiff alleges that no reasonable person or attorney charged with protection of the public as its highest priority would recklessly enable attorneys who abuse the public trust, and/or do so when standing in special relationship with members of the public like Plaintiff, and/or do so when compromised by an un-waivable conflict of interest, or allow damages to Plaintiff's emotional harm and to public interest.

263.     Plaintiff alleges punitive damages are an appropriate deterrent in the interests of public, courts, and legal profession for State and public interest.

264.     Plaintiff alleges that violations of CRPC 1.7(d)(3) by State Bar, Kumar, Morgestern, Rudolph, Andresen, and State Bar officials/employees are independently outrageous, and the evidence is already clear and convincing from the California State Auditor that State Bar, as a whole, operates outrageously and without regard for the implications of its actions or failures to act, and the same conduct of the licensees that act in agency under control of State Bar.

265.     For punitive damages attributed to negligence with a high degree of culpability, or recklessness, Plaintiff seeks the maximum amount permitted by law under the circumstances as a multiple of compensatory and special damages for recklessness of $322,000,000, which Plaintiff alleges to be 10X the total of compensatory damages or economic and non-economic damages awarded, according to proof.

## THIRD CAUSE OF ACTION

## NEGLIGENCE (VIOLATIONS OF GC 815/GC 815.2/CCP 1714/BPC 6001.1)

## Based on California Law

## PLAINTIFF against ALL DEFENDANTS

266.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

267.     Plaintiff brings this cause of action for negligence against Defendants under Gov. Cod. 815, GC 815.2, GC 815.3, GC 815.6, BPC 6001.1, CRPC, BPC 6077, and CCP 1714.

268.     "The basic elements of a negligence action are: (1) The defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4) the plaintiff was damaged. (*See, Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.3d 137, 863 P.2d 207].)

269.     Plaintiff alleges Defendants State Bar, Nunley, Kumar, Morgenstern, and DOES owe Plaintiff a general duty to exercise reasonable care under *Cal. Cod. Civ. Proc. 1714* for all times

relevant, and a mandatory, affirmative, or special duty to protect Plaintiff under BPC 6001.1, when exercising their licensing, regulatory, and discipline functions (Brown v. USAT).

270.     Plaintiff alleges Defendants also owe Plaintiff an affirmative or mandatory duty to protect that is enhanced upon each instance of *prima facie* violations of law by State Bar licensees under State Bar control based on the special relationship standing between the parties, and the reliance of Plaintiff upon Defendants to protect.

271.     Plaintiff alleges the Duty Violations that directly or proximately caused his injury involve Defendants' "negligent performance of [Defendants'] duties (*See, Robinson v. Solano County* (9th Cir. 2002) 278 F.3d 1007, 1016), which do not involve "basic policy decision[s]" rather "operational decision[s] by [Defendants] purporting to apply the law," (*See, Gillian v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1051), and an ongoing "failure…to take protective measures to deter [State Bar, Morgenstern, Nunley, Kumar, Catanarite's] exploitation [of Plaintiff, public interest, and the legal profession which does] not involve the exercise of discretion." (*See, Doe 1 v. City of Murietta* (2002) 102 Cal.App.4th 899, 911-912)

272.     Plaintiff further alleges the decisions of Defendants to allow attorneys who are known to pose a threat to Plaintiff, public, courts, and legal profession, and the Duty Violations, are not reasonable because State Bar licensees stand in special relationship with State Bar, and some licensees "known to be incompetent [does] not give rise to immunity because there was negligence at the operational level (i.e. ministerial act), rather than at the planning level of decision-making." (*See, Holman v. State of California* (1975) 53 Cal.App.3d 317)

273.     Plaintiff alleges Defendants are not immune from liability resulting from negligent operational decisions made in an official capacity under CTCA.

274.     Plaintiff alleges that State Bar, Nunley, Kumar, Morgenstern, and DOES were each or together involved in the Duty Violations that caused the injury and CTCA Claim.

275.     For negligence per se and general negligence as per first cause of action, Plaintiff seeks $161,000,000 in total damages, and an additional $161,000,000 in economic and non-economic damages according to proof ($322,000,000 total) under Gov. Cod. 815.6 and/or Gov. Cod. 815.3 for recklessness as per the second cause of action.

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 90

1

2                          **FOURTH CAUSE OF ACTION**

3        **NEGLIGENCE (INJUNCTIVE RELIEF GOV. COD. 814, CCP 526(A)**

4                          **Based on California Law**

5                      **PLAINTIFF against All DEFENDANTS**

6

7        276.        Preceding allegations are incorporated by reference and re-alleged as if set forth fully

8   herein.

9        277.        Plaintiff brings this cause of action for negligence against State Bar, Kumar, Nunley,

10  Morgenstern, and DOES, seeking extraordinary and injunctive relief under Gov. Cod. 814, which

11  holds: "nothing in this part affects liability based on contract or the right to obtain relief other than

12  money or damages against a public entity or public employee."

13       278.        To the extent authorized by law, Plaintiff also brings this cause of action for injunctive

14  and extraordinary relief in the capacity of a private attorney general and reserves all rights to pursue a

15  federal whistleblower *qui tam* or equivalent action on the basis of corruption at State Bar evidenced by

16  State Auditor Fact Sheet 2022-030, incorporated by reference.

17       279.        Plaintiff also brings this cause of action for negligence against DGS and State under the

18  same statute (seeking "relief other than money or damages against" Defendants) to ensure any relief

19  afforded Plaintiff and public interest under this cause of action is given effect to State Bar, Kumar,

20  Nunley, Morgenstern, and DOES through whatever necessary acts and further assurances may be

21  required under the circumstances by and between State, DGS, and State Bar, and for good cause

22  shown that State Bar lacks capacity to perform its primary statutory duty per BPC 6001.1, or if State

23  can give effect to, or assist in bringing to Legislature, this action.

24       280.        Plaintiff seeks this relief according to proof of recklessness, fraud, oppression, or

25  malice impacting State Bar, Nunley, Morgenstern, Kumar, and DOES objective capacity to act in the

26  interest of public, courts, and legal profession.

27       281.        Plaintiff seeks a court order enjoining State Bar, Kumar, Nunley, Morgenstern, and

28  DOES from violating BPC § 6001.1 for good cause shown.

282. Plaintiff seeks to order State Bar and its public employees to take steps which conform to its statutory duty under BPC 6001.1, policies, and procedures to protect the public from further irreparable harm for good cause shown, and to face consequences for failures to do so.

283. Plaintiff seeks Legislative investigation and oversight assigned by California or the United States, involving unconflicted parties serving public interest, concerning prima facie corruption and violations of law by State Bar, DOES, and Catanzarite. Plaintiff requests this investigation serve public, courts, and legal profession, not State Bar, and that such investigation and associated oversight and conclusions be guided by BPC 6001.1.

284. Plaintiff seeks a court order for independent analysis by the same committee or an assign of that committee as to the specific ethics and Duty Violations alleged by Plaintiff as to State Bar, Kumar, Nunley, Morgenstern, and Catanzarite, and that State seeks remuneration from any parties who have conducted themselves unlawfully, to recover damages associated with this action in restitution to State.

285. Plaintiff seeks appropriations by Legislature on behalf of other members of the public harmed by State Bar, Catanzarite, and DOES according to evidentiary findings of the California State Auditor, and that the California State Auditor or other committee administer the program with Plaintiff (not State Bar nor its employees). To sustain the public trust, sanctity of courts, and legal profession , Plaintiff seeks for those affected whatever amount the Legislature or State determines will resolve injury for the associated timeframe agreed.

286. Plaintiff seeks a license to practice law from State Bar of California, and the approval to administer such public claims on behalf of members of the public who have been unduly damaged by State Bar through Plaintiff's newly established law firm that will serve to "support greater access to, and inclusion in, the legal system" by employing underserved populations, including students from HBCU's, with advisement by an appropriate agency of State such as DFPI. To the extent this is unreasonable to State Bar, Plaintiff alleges that he understands the fundamentals of law and importance of legal ethics better than the State Bar, Nunley, Kumar, Morgenstern, who purport and are obligated to protect Plaintiff and public interest, but are alleged to, and Plaintiff seeks to prove, have repeatedly failed to do so to protect others.

287.     According to Cal. Cod. of Civ. Proc. 526(a) "an injunction may be granted in the following cases: (1) when it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continue of the act complained of, either for a limited period or perpetually. (2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action. (3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action and tending to render the judgment ineffectual. (4) When pecuniary compensation would not afford adequate relief. (5) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief. (6) Where the restraint is necessary to prevent a multiplicity of judicial proceedings."

288.     Plaintiff, as a member of the public, is allegedly entitled to the injunctive relief demanded. Plaintiff and public interest have endured injury and suffering that no reasonable person should endure, and the suffering is directly attributed to violations of mandatory duties or affirmative duties to protect. The continuance of the State Bar's and DOES alleged acts and omissions will produce waste for public interest and Plaintiff, indeed, more public members will be unduly prejudiced as a direct and proximate cause of State Bar and public employees acting in their official capacity for State Bar. Without the requested relief, great, irreparable harm will also be caused Plaintiff, public interest, and public confidence in the legal profession, indeed the "fundament of our judicial system." State Bar, Kumar, Nunley, Morgenstern, and DOES' failure to protect Plaintiff and public interests are a violation of federally protected fundamental rights, and compensatory and/or punitive damages to Plaintiff alone will be ineffectual to stop State Bar, Morgenstern, Nunley, Kumar, and DOES from allegedly violating their mandatory or affirmative duty, thereby allowing Defendants to continue promoting other interests than those of the public, in violation of BPC 6001.1.

289.     Injunctive relief is also proper, because a judgment to Plaintiff in this action would not provide adequate relief to the broader public injured by State Bar, which Plaintiff alleges is entitled to the relief according to statute based on evidence beyond any reasonable doubt that State Bar fails to

protect public, and extraordinary relief is necessary to protect public from attorneys who violate the public trust, and from State Bar. It would be extremely difficult to ascertain the amount of compensation that would be due the public as adequate relief for the alleged negligence and/or fraud and/or corruption from 2009 through present, and the restraint of injunctive relief requested is necessary to prevent a multiplicity of proceedings against State Bar.

290.    Finally, without the injunctive relief, Defendants will allegedly continue to abrogate BPC § 6001.1, and State Bar licensees like Catanzarite will continue Attorney Rules violations under an ongoing, unlawful veil of protection offered by State Bar using public funds, unreasonably.

291.    Plaintiff prays for this relief, or an alternative determined by State, Legislature, or this Court, or agency of the United States, to preserve the future of the people and public, courts, and legal profession in California that State Bar has objectively failed to serve reasonably through the official acts of its employees or officials.

## FIFTH CAUSE OF ACTION

## PREMISES LIABILITY (GC 835, GC 840, GC 815.3, CCP 1714, BPC 6001.1)

## Based on California Law

## PLAINTIFF against DEFENDANTS STATE BAR, STATE, DGS

292.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

293.    Plaintiff incorporates by reference the definition of "injury" under CTCA underlying Plaintiff's CTCA Claim for premises liability.

294.    Plaintiff alleges all premises occupied by the State Bar are in dangerous condition that places Plaintiff and the public at serious risk of "injury," which is a defined term under CTCA. Plaintiff alleges he was injured and damaged resulting from dangerous premises owned, leased, or maintained by the State Bar in which its licensing, regulatory, and disciplinary functions are carried out through operational decisions, that there was a foreseeable risk of injury, and that Plaintiff was injured because Defendants, and each of them, failed to act reasonably to stop or

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 94

prevent the injury. Plaintiff alleges that the dangerous condition was caused by negligent acts or omissions, and/or that the dangerous condition was sufficiently noticed.

295.    Plaintiff alleges State, State Bar, and DGS to be directly, vicariously, or derivatively liable for premises liability to Plaintiff for his injury under Gov. Cod. 835.

296.    Plaintiff alleges that Kumar, Nunley, Morgenstern, and DOES are liable for their negligent acts or omissions as provided under Gov. Cod. 840, et. seq.

297.    Plaintiff alleges the "$76.6 million building" owned by the State Bar in Los Angeles, where Morgenstern, Nunley, Kumar, DOES engage in the allegedly negligent and reckless acts or omissions, to be among the dangerous premises that injured Plaintiff, which building the State Bar purchased for $50 million or more over budget, "instead of focusing its resources on improving its discipline system – such as engaging in workforce planning to ensure it had sufficient staffing" according to the Auditor.

298.    Plaintiff alleges his injury does not result from a design flaw codified by Government Code § 830.6, because the premises were designed in a manner to protect the public above any other interest, but Defendants fail to keep the premises safe with their operational decisions that Plaintiff alleges are negligent and reckless, and for which State Bar, State, and DGS are allegedly liable.

299.    Government Code section 835 holds that "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) the public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." Except as provided in this article, a public employee is not liable for injury caused by a condition of public property where such condition exists because of any act or omission of such employee within the scope of his employment. The liability established by this article is subject to any immunity of the public employee provided by statute and is subject to any defenses that would be available to the public employee if he

1    were a private person.

2        300.        An employee of a public entity is liable for injury caused by a dangerous condition

3    of public property if the plaintiff establishes that the property of the public entity was in a

4    dangerous condition at the time of the injury, that the injury was proximately caused by the

5    dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind

6    of injury which was incurred, and that either:

7        301.        (a) The dangerous condition was directly attributable wholly or in substantial part to

8    a negligent or wrongful act of the employee and the employee had the authority and the funds and

9    other means immediately available to take alternative action which would not have created the

10   dangerous condition; or

11       302.        (b) The employee had the authority and it was his responsibility to take adequate

12   measures to protect against the dangerous condition at the expense of the public entity and the

13   funds and other means for doing so were immediately available to him, and he had actual or

14   constructive notice of the dangerous condition under Section 840.4 a sufficient time prior to the

15   injury to have taken measures to protect against the dangerous condition.

16       303.        (a) A public employee had actual notice of a dangerous condition within the

17   meaning of subdivision (b) of Section 840.2 if he had actual personal knowledge of the existence

18   of the condition and knew or should have known of its dangerous character.

19       304.        (b) A public employee had constructive notice of a dangerous condition within the

20   meaning of subdivision (b) of Section 840.2 only if the plaintiff establishes (1) that the public

21   employee had the authority and it was his responsibility as a public employee to inspect the

22   property of the public entity or to see that inspections were made to determine whether dangerous

23   conditions existed in the public property, (2) that the funds and other means for making such

24   inspections or for seeing that such inspections were made were immediately available to the public

25   employee, and (3) that the dangerous condition had existed for such a period of time and was of

26   such an obvious nature that the public employee, in the exercise of his authority and responsibility

27   with due care, should have discovered the condition and its dangerous character.

28       305.        *(Added by Stats. 1963, Ch. 1681.)*

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 96

306.     (a) A public employee is not liable under subdivision (a) of Section 840.2 for injury caused by a dangerous condition of public property if he establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury.

307.     (b) A public employee is not liable under subdivision (b) of Section 840.2 for injury caused by a dangerous condition of public property if he establishes that the action taken to protect against the risk of injury created by the condition or the failure to take such action was reasonable. The reasonableness of the inaction or action shall be determined by taking into consideration the time and opportunity the public employee had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury. *(Added by Stats. 1963, Ch. 1681)*

308.     Plaintiff alleges that the premises occupying the Office of the Chief Trial Counsel for the State Bar and any licensing, regulatory, and disciplinary functions for the State Bar carried out by public employees under employment by State Bar, including Kumar, Morgenstern, Nunley, and DOES were "in a dangerous condition at the time of the injury." Plaintiff further alleges the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that [both]: (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; [and] (b) the public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

309.     Plaintiff alleges the State Bar under Section 835.2 "had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to: (1) whether

the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weight against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property, (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition."

310.     Plaintiff alleges each Auditor report from 2009 through present, namely Report 2009-030, Report 2015-030, Report 2020-030, and Report 2022-030 constitute actual constructive notice providing the State Bar with actual knowledge that were each and together of such obvious nature that the State Bar should have exercised due care in improving its licensing, regulatory, and disciplinary functions in a manner that protects and prioritizes public interest to make its premises safe.

311.     Plaintiff alleges the State Bar premises for all licensing, regulatory, and discipline functions are in obvious disrepair and risk injury to the public it is required to protect above any interest, and that a decade or longer constitutes more than sufficient actual notice of the dangerous conditions to State Bar.

312.     Plaintiff alleges the premises of the Office of the Chief Trial counsel and all functions of the State Bar's licensing, regulatory, and discipline functions were in a dangerous condition based on conclusions from the California State Auditor, Plaintiff's injuries were caused, in part, by the dangerous condition because his experience was preceded by systemic failures of State Bar to perform its statutory obligations and priorities, the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred upon Plaintiff based on Legislative intent in adopting BPC 6001.1 and Supreme Court and State Bar adopting new CRPC effective November 1, 2018, and negligent or wrongful acts or omission of State Bar employees within the scope of their employment created the dangerous conditions for which State Bar is allegedly liable. The State Bar had actual or constructive notice of the dangerous condition,

namely, that their attorney discipline systems "plac[ed] the public at risk," that the State Bar failed to benchmark its attorney discipline system which made it difficult to "**determine how efficiently it operates**" (Report 2009-030), and even more than ten years later, *still* did "**not measure the performance of its discipline system**" (Report 2021-030), and even abandoned a plan to benchmark the attorney discipline system, all thereby failing to take measures to protect against the dangerous condition. Plaintiff alleges this to be legally akin to willfully allowing members of the public to enter a premises owned or controlled by the State Bar that the State Bar was on notice was going to crumble at any moment and cause injury or death. Plaintiff alleges an unsafe building with a cracked foundation will fall and injure just as a knowingly flawed attorney discipline system that allegedly enables or at least does not take reasonable steps to inhibit alleged extortion and other "unthinkable" conduct will cause serious harm and injury.

313.     Plaintiff has suffered injury as defined by CTCA, including anxiety, worry, shock, mental distress, emotional harm, emotional trauma, humiliation, and shame as a direct and/or proximate result of the dangerous conditions of the State Bar's premises, and seeks compensatory damages for injuries including garden variety emotional distress and severe emotional distress caused by the State Bar's dangerous premises, all according to proof.

314.     Accordingly, Plaintiff seeks compensatory damages from all Defendants, consisting of sixty-four million one hundred thousand dollars ($64,100,000) in economic damages and additional non-economic damages, according to proof, for premises liability.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Violation of GC 815.3, GC 815.6
### Based on California Law
### PLAINTIFF against DEFENDANTS

315.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

316.     The instant action is filed against public entity State, public entity DGS, and public entity State Bar respecting his CTCA Claim, along with individual employees acting in their allegedly official capacity in Kumar, Nunley, Morgenstern, and DOES.

317.     According to Gov. Cod. 815.3(a), "Notwithstanding any other provision of this part, **unless the elected official and the public entity are named as codefendants in the same action**, **a public entity is not liable to a plaintiff under this part for any act or omission of an elected** **official employed by or otherwise representing that public entity, which act or omission** **constitutes an intentional tort**, including, but not limited to, harassment, sexual battery, and **intentional infliction of emotional distress**. For purposes of this section, **harassment in** **violation of state or federal law constitutes an intentional tort, to the extent permitted by** **federal law**. This section shall not apply to defamation. (b) **If the elected official is held liable for** **an intentional tort other than defamation in such an action, the trier of fact in reaching the** **verdict shall determine if the act or omission constituting the intentional tort arose from and** **was directly related to the elcted official's performance of his or her official duties**. **If the** **trier of fact determines that the act or omission arose from and was directly related to the** **elected official's performance of his or her official duties, the public entity shall be liable for** **the judgment as provided by law**. For purposes of this subdivision, employee managerial functions shall be deemed to arise from, and to directly relate to, the elected official's duties. However, acts or omissions constituting sexual harassment shall not be deemed to arise from, and to directly relate to, the elected official's duties. (c) (c) If the trier of fact determines that the elected official's act or omission did not arise from and was not directly related to the elected official's performance of his or her official duties, upon a final judgment, including any appeal, the plaintiff shall first seek recovery of the judgment against the assets of the elected official. If the court determines that the elected official's assets are insufficient to satisfy the total judgment, including plaintiff's costs as provided by law, the court shall determine the amount of the deficiency and the plaintiff may seek to collect that remainder of the judgment from the public entity. The public entity may pay that deficiency if the public entity is otherwise authorized by law to pay that judgment. (d) To the extent the public entity pays any portion of the judgment against

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 100

the elected official pursuant to subdivision (c) or has expended defense costs in an action in which the trier of fact determines the elected official's action did not arise from and did not directly relate to his or her performance of official duties, the public entity shall pursue all available creditor's remedies against the elected official in indemnification, including garnishment, until the elected official has fully reimbursed the public entity. (e) If the public entity elects to appeal the judgment in an action brought pursuant to this section, the entity shall continue to provide a defense for the official until the case is finally adjudicated, as provided by law. **(f) It is the intent of the Legislature that elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort not directly related to their official duties committed for which the public entity they represent may also be liable, <u>while maintaining fair compensation for those persons injured by such conduct.</u>** (g) This section shall not apply to a criminal or civil enforcement action brought on behalf of the state by an elected district attorney, city attorney, or Attorney General. (h) If any provision of this section or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable. *(Added by Stats. 1994, Ch. 796, Sec. 1. Effective January 1, 1995.)*

318.    Plaintiff alleges that fair compensation for intentional torts includes his compensatory and special damages of $161,000,000 plus punitive or exemplary damages to the maximum amount and multiple permitted under the law under the circumstances, and that State, DGS, or State Bar are liable to Plaintiff therefore where the acts were made in an official capacity for State Bar.

319.    Plaintiff asserts this cause of action against all State and DGS as vicariously, derivatively, or directly liable for State Bar and public employees, against State Bar and DOES under Gov. Cod. 815.3, et. seq., and against DOES, Kumar, Nunley, and Morgenstern individually.

320.    "**A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant** with…**reckless disregard of the probability of causing, emotional distress**; (2) the **Plaintiff's suffering severe or extreme emotional distress**; and (3) **actual and proximate causation of the emotional distress by the defendant's outrageous conduct**.' A defendant's conduct is 'outrageous' when it is so 'extreme as to

exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" (Hughes v. Pair (2009) 46 Cal.4th 1035, 1050-1051 [95 Cal.Rptr.3d 636, 209 P.3d 963].

321.     Plaintiff alleges individual, non-public entity Defendants Kumar, Morgenstern, Nunley, and DOES have engaged in intentional infliction of emotional distress against Plaintiff which has caused Plaintiff severe emotional distress over a period of time and directly and/or proximately caused by them. The disregard by Kumar, Morgenstern, Nunley, DOES, and State Bar licensees after 2018 for Plaintiff's and other members of the public suffering, anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame inflicted is reprehensible.

322.     Plaintiff grieves for his mentor, Irving Einhorn, who served on the board of his company while parties now working with State Bar licensees Catanzarite to defraud judicial officers previously abused the United States Securities Exchange Commission's investigatory powers maliciously, then later engaged in acts of securities fraud for which the State Bar and SEC have clear and convincing evidence of Cal. Corp. Cod. § 25401 violations backed by court orders involving State Bar licensee Kenneth Joseph Catanzarite, and "clients" of Catanzarite acting under undue influence, Richard O'Connor, Mohammed Zakhireh, and James Duffy (LA-4837).

323.     Plaintiff grieves for his parents, whom he lost in building the company he founded, and the time he could have spent with them instead of the company allegedly destroyed by State Bar, Kumar, Morgenstern, Nunley, DOES, and Catanzarite under a veil of "protection."

324.     Plaintiff alleges that all public employees acting in an official capacity for State Bar are bound to all duties to Plaintiff imposed by CCP 1714, special relationship, circumstance, and by enactments under BPC 6001.1 "in the exercise of their licensing, regulatory, and discipline functions."

325.     Plaintiff alleges that State Bar, Kumar, Morgenstern, Nunley, and DOES conduct caused him to suffer severe emotional distress including shame for himself and for the public, courts, and legal profession as per the Duty Violations, and previously in the Catanzarite Cases, and that no reasonable person should endure this pattern of behavior from officers of the Court, nor from parties who are bound to protect Plaintiff.

326.     Plaintiff has and continues to experience shock and anguish where State Bar, even after such an overwhelming volume of evidence and even Court of Appeal findings of utter disregard for duty of loyalty, public, courts, and legal profession, continues to protect attorneys with Catanzarite, and other attorneys who violate the public trust.

327.     Plaintiff has and continues to suffer severe anxiety and depression, for which he is now medicated, resulting from the implications of State Bar, Kumar, Morgenstern, Nunley, DOES, and Catanzarite's conduct – where his fundamental rights of life, liberty, and property have been repeatedly abrogated, and that some nefarious influence or consideration may be involved, which causes Plaintiff yet further anguish that his rights are treated as subordinate to such schemes.

328.     Plaintiff alleges that State Bar, Kumar, Morgenstern, Nunley, and DOES' conduct was and continues to be outrageous, in that a reasonable person would regard it as falling outside the bounds of decency, indeed no reasonable person or attorney would prosecute or authorize prosecution of Plaintiff when standing in such special relationship to parties, or allow licensed attorneys to appear corruptly and willfully, without probable cause or standing or authority, on behalf of members of the public, and no reasonable person or attorney tasked to protect the public would allow it for any period of time, let alone its continuance; that Kumar, Morgenstern, Nunley, and DOES' acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred as per the Catanzarite Cases and this action's allegations and evidence; that Plaintiff suffered severe emotional distress, indeed, at one time considered to take his own life, and that Kumar, Morgenstern, Nunley, and DOES conduct, as outlined in the preceding allegations and Duty Violations, was a substantial factor in causing Plaintiff's severe emotional distress, because they each and together stood and stand in special relationship to Plaintiff imposed by statute, general duty, special duty, enhanced duty, or mandatory duty that imputes not only liability to Plaintiff for Kumar, Morgenstern, Nunley, and DOES' acts or failures to act in the exercise of their operational decisions guided by unambiguous enactment to protect in BPC 6001.1, but also for those acts and omissions related to their "licensing, regulatory, and discipline functions" involving licensees associated with Catanzarite before, during, and after the Catanzarite Cases.

329.     Plaintiff alleges that Kumar, Morgenstern, Nunley, and DOES' conduct was outrageous

in that a reasonable person would regard it as falling outside the bounds of decency. Factors that go into determining whether Defendants' conduct was outrageous include, but are not limited to: whether Defendants abused a position of authority or a relationship that gave Defendants' the real or apparent power to affect Plaintiff's interests, whether Defendants knew that the Plaintiff was particularly vulnerable to emotional distress, and whether the defendant knew that his or her conduct will likely result in emotional harm (CACI 1602).

330.     Here, Kumar, Morgenstern, Nunley, and DOES abused their respective positions of authority involving the "exercise of licensing, regulatory, and discipline functions" of a government protection agency State Bar, with a real <u>and</u> apparent power to affect public interest and Plaintiff's injury as outlined in his CTCA Claim, and before, during, and after the Catanzarite Cases.

331.     Plaintiff alleges that the Duty Violations and preceding allegations, all factual inferences reasonably made thereby before discovery and subject to amendment as additional facts are learned underlying the CTCA Claim, are evidence of outrageous conduct that Plaintiff should not reasonably endure, and a reasonable person guided by BPC 6001.1, under the circumstances, would regard any or all of the conduct as falling outside the bounds of decency.

332.     Plaintiff alleges that the Duty Violations are supported by conclusions of the California Auditor from 2009-2022, when viewed with BPC 6001.1, and together offer clear and convincing evidence that State Bar is liable for the intentional infliction of emotional distress to Plaintiff under Gov. Cod. 815.3, and Plaintiff alleges that the Legislature intended State Bar to protect Plaintiff as per BPC 6001.1, that Plaintiff alleges the Legislature would agree that Defendant's severe emotional distress was directly and/or proximately caused by Kumar, Morgenstern, Nunley, and DOES in agency with State Bar licensees, and that Defendants fail to protect public interest and Plaintiff, and that Legislature intends Plaintiff to be fairly compensated per Gov. Cod. 815.3 for intentional torts.

333.     Plaintiff alleges that his distress is so substantial or long-lasting that no reasonable person should be expected to bear it (*See, Hughes v. Pair* (2009) 46 Cal.4th 1035).

334.     In further establishing Defendants "outrageous" conduct, Plaintiff again relies upon

the Attorney Rules definition of "reasonable" under CRPC 1.01 and an article published by Kevin Mohr for California Lawyers Association, and State Bar, Kumar, Nunley, Morgenstern, and DOES' repeated failure to protect the public from "unthinkable" conduct that led to passage of CRPC 1.7(d)(3).

335.    Plaintiff alleges that no reasonable person should be expected to bear the ongoing Attorney Rules violations of unreasonable attorneys who can use the mere pendency of legal actions as weapons of extortion against Plaintiff, nor should Plaintiff bear the ongoing failures to act by Defendants who act or fail to act in deference to unreasonable attorneys whom the Court of Appeal calls "unethical," or whom the trial court rules against with "every fiber of [its] being" citing "overwhelming" evidence known to the same attorneys before a bench trial, for which a history of "sham" pleadings exist that suggest a pattern of misleading judicial officers by "advocates."

336.    Plaintiff alleges it to be outrageous that he is not able to obtain directors and officer's insurance because State Bar licensees including Morgenstern and Kumar have thoroughly violated CRPC and fundamental tenets of advocacy and loyalty, supported by Court of Appeal conclusions in G058700, where State Bar licensees in purported good standing even filed a fraudulent lawsuit against Plaintiff's insurance carrier without authority on behalf of a non-client to destroy Plaintiff's rights and coverage, which would not have happened but for DOES' official or unofficial acts under Gov. Cod. 815.3 imputing liability to State Bar, State, and DGS for Plaintiff's injury.

337.    Plaintiff alleges it to be outrageous that he is answering claims from attorneys who are unfit and/or incompetent, and who are knowingly violating Attorney Rules, while the attorneys are representing parties they have allegedly colluded with and extorted to Plaintiff's prejudice, and where the attorneys have already been determined "disqualified as a matter of law" in any event.

338.    Plaintiff alleges it to be outrageous that members of the public need to respond to court proceedings commenced or maintained by State Bar licensees who knowingly violate the public trust, but State Bar allows the conduct and "abates" enforcement in order to unlawfully force members of the public to conduct their duties on their behalf and at their expense, which is unreasonable, unjust, and amounts to unlawful taking.

339.    Plaintiff alleges that Kumar, Nunley, Morgenstern, and DOES have abused their

position of authority and affirmative duty to protect Plaintiff, here, the prioritizing of attorney licensees who have conclusively proven to "violate the public trust," and the failure to warn the public of attorneys who violate the public trust, and the real and apparent power to affect Plaintiff's interests through the Duty Violations and continued failure to enforce BPC 6001.1 in the exercise of their licensing, regulatory, and discipline functions.

340.    Plaintiff alleges it to be outrageous that members of the public are not aware of the history of State Bar members like Tom Girardi, Catanzarite, and Richard Medina, or that these attorneys are free to lie, cheat, and steal to the direct prejudice of public, courts, and legal profession, and that they only have to answer it in extreme circumstances – and in those cases, many years after they have harmed an exponentially increased amount of members of the public – before they protect anyone but themselves and/or their licensees.

341.    Plaintiff alleges Kumar, Nunley, Morgenstern, and DOES knew that Plaintiff was particularly vulnerable to emotional distress based on communications to Defendants, and that Defendants knew their conduct would likely result in emotional harm to Plaintiff. Plaintiff communicated his vulnerability, and it could be inferred from the circumstances to any reasonable person acting with a standard duty of care, especially one whose duty by statute is to "protect," which Plaintiff alleges was and continues to be outside the bounds of human decency under the circumstances.

342.    Plaintiff alleges foregoing allegations and Duty Violations were each and all reckless, and that Defendants have acted or failed to act with reckless disregard. California law holds Defendants have acted with reckless disregard when Defendants know that emotional distress will probably result from his or her conduct, or Defendants give little or no thought to the probable effects of his or her conduct. It is not necessary that Defendants acted with malicious or evil purpose. **It is enough that he or she engaged in outrageous conduct without considering the probable consequences**. (*See, KOVR-TV v. Superior Court* (1995) 31 Cal.App.4th 1023; CACI 1603).

343.    Plaintiff alleges that certain DOES have acted or failed to act and did so with "evil purpose" in all instances of Duty Violations where corruption, undue influence, or conflict of

interest violative of CRPC 1.7 is proven by trial involving official acts of State Bar, and Plaintiff alleges Kumar, Nunley, Morgenstern, and DOES act at least outrageously and recklessly without regard for the impact of their alleged negligence, conduct, acts, or failures to act upon Plaintiff as so alleged and this constitutes at least legal malice or indifference to Plaintiff's emotional harm, and/or actual malice in instances where decisions were made by DOES that were corrupt, where such decisions impacted the Duty Violations, and such decisions give rise to actionable claims outside CTCA, or actionable claims under CTCA with liability imposed to State Bar, State, and/or DGS (Gov. Cod. 815.3)

344.     Plaintiff alleges that State Bar and DOES, based on clear and convincing evidence, have operated with indifference and legal malice as to public interest since at least 2009, and indifference, legal, and actual malice to Plaintiff for all times relevant. Plaintiff alleges that discovery will serve to demonstrate actual malice, but that legal malice is already satisfied.

345.     For this cause of action, Plaintiff alleges he is entitled to compensatory damages according to proof in trial, special damages, as well as punitive damages, for intentional infliction of emotional distress under Gov. Cod. 815.3. Plaintiff seeks fair compensation for his compensatory and special damages totaling $161,000,000, and the maximum allowable under the law for punitive or exemplary damages, which Plaintiff alleges to be 10X his compensatory and special damages of $161,000,000.

346.     Plaintiff reserves all rights to pursue a separate federal, civil action under 42 U.S. Code 1983 against Defendants for State Bar, Kumar, Nunley, Morgenstern, and DOES' alleged civil rights violations, including but not limited to deprivation of life, liberty, and property without due process of law underlying the Duty Violations, and other protected rights of Plaintiff, based upon overwhelming, clear and convincing evidence furnished to State Bar supported by final Court of Appeal rulings.

## SEVENTH CAUSE OF ACTION

## CONVERSION

### Violation of GC 815.3, GC 815.6, BPC 6001.1, GC 814

### Based on California Law

### PLAINTIFF against DEFENDANTS

347.     The preceding allegations are incorporated by reference and re-alleged as if set forth fully herein.

348.     This cause action for conversion is brought against individual defendants Kumar, Nunley, Morgenstern, and DOES under Gov. Cod. 815.3 as an intentional tort where State Bar, State, and DGS are also named defendants and allegedly liable for conversion as an intentional tort performed as official acts of government under that section.

349.     Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, <u>the tort consists in the breach of an absolute duty</u>; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. The basis of a conversion action rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action. (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th, 1383, 1387). Here, Plaintiff alleges

350.     Plaintiff alleges conversion as an intentional tort subject to GC 815.3 imputing liability to State Bar or to individual defendants as the case may be according to proof as to their capacity at the time of such decisions involving the Duty Violations, Personal Property, and public funding of State Bar after its statutory duty changed.

351.     Plaintiff alleges a conspiracy to convert some or all of the Personal Property by and between State Bar, Kumar, Nunley, Morgenstern, DOES, and Catanzarite for the benefit of any or each of them, where each participant in the wrongful act is allegedly responsible for damages as a joint tortfeasor irrespective of whether or not he or she was a direct actor and regardless of the degree of their activity. On information and belief, due to the special relationship by and between State Bar, public employees acting under BPC 6001.1 and State Bar licensees after 2018, State Bar must independently seek restitution against its licensees to avoid further prejudice to Plaintiff.

352.     It is well settled in California that shares of corporate stock are subject to an action in conversion and it is not necessary that possession of the certificate evidencing title be disturbed.

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 108

1   Instead, it is sufficient that there is interference with the owner's free and unhampered right to

2   disposed of property without limitations imposed by strangers to the title. (*Applied Medical Corp. v.*

3   *Thomas* (2017) 10 Cal.App.5th 927, 938). Here, State Bar, Kumar, Nunley, Morgenstern, DOES, and

4   others acting in agency under principal State Bar have interfered with the Personal Property including

5   stock in CTI, Western Troy, warrants owned by Plaintiff, stock owned by Plaintiff in other companies,

6   and Plaintiff's IRA and inheritance through conversion.

7        353.    Conversion of Plaintiff's assets includes money in the bank and future money in the

8   bank, where "the law applicable to conversion of personal property applies to instruments, which

9   includes certificates of deposit." (*Fong v. East West Bank* (2018) 19 Cal.App.5th 224, 232-233).

10       354.    Plaintiff claims that official acts of State Bar, Kumar, Nunley, Morgenstern, and DOES

11  wrongfully exercised control over and thus converted 1) Plaintiff's life, liberty, and property protected

12  by the United States and California Constitutions; and/or 2) Plaintiff's time, money, energy, and

13  emotional toll without immediate remuneration to perform investigatory functions for State Bar and

14  Morgenstern; and/or 3) Plaintiff's policy instruments to pay State Bar licensees, and thus State Bar

15  fees, in defending Catanzarite who is acting unlawfully in agency with principal State Bar; and/or 4)

16  Plaintiff's right to 12.6% of his stock in Western Troy Capital Resources at the valuation estimated by

17  more than one third-party; and/or Plaintiff's right to profits from CTI based upon the growth trajectory

18  of the company at the time it was converted; and/or 5) Plaintiff's right to future profits, benefits, and

19  incremental value of future endeavors that are now converted; and/or 6) future directors and officers

20  insurance policies and instruments converted in that they are now unattainable or are unreasonable,

21  and thus the impact upon Plaintiff's life liberty and property as an entrepreneur in other ventures in

22  perpetuity, because State Bar licensees actually sued his insurance carrier by appearing corruptly and

23  willfully on behalf of Plaintiff's company to sever his coverage; 7) the salary and benefits that were

24  unduly disrupted by State Bar, Kumar, Nunley, Morgenstern, and DOES' dereliction of duty to

25  Plaintiff and public interest; 8) Plaintiff's IRA and inheritance was unfairly depleted and converted;

26  and/or 9) Plaintiff's right to licensing, regulatory, and disciplinary functions performed in his

27  protection; and/or 10) Plaintiff's CTCA Claim and this action; and/or 11) other personal, or other kind

28  of property that is not real property, subject to amendment of this Complaint (each or together

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 109

1  Plaintiff's "Personal Property").

2  355.      Where the first element of conversion is Plaintiff's ownership or right to possession
3  of the property at the time of the conversion (*Cerra v. Blackstone* (1985) 172 Cal.App.3d 604,
4  609). Neither legal title nor absolute ownership of the property is necessary. A party need only
5  allege he is entitled to immediate possession at the time of conversion. The fact that plaintiff
6  regained possession of the converted property does not prevent him from suing for damages for the
7  conversion." (Enterprise Leasing Corp. v. Shugart Corp. (1991) 231 Cal.App.3d 737, 748).

8  356.      In its most narrow construction, the word **property** (and Personal Property as
9  defined) could mean a physical object such as an automobile or a parcel of land. Applying the term
10 broadly extends property to every form of interest that is capable of being transferred and enjoyed,
11 including intangible creations and developments of the mind. The California Supreme Court
12 in *Ponsonby v. Sacramento Suburban Fruit Lands Co*. ("Ponsonby") explained that, "when
13 unqualified, the term is sufficiently comprehensive to include every species of estate, both real and
14 personal, whether choate or inchoate." (*Ponsonby v. Sacramento Suburban Fruit Lands Co*. (1930)
15 210 Cal. 229, 232.)  The Court further added, "in its proper sense property includes everything
16 which goes to make up one's wealth or estate." (Id.) The California Code of Civil Procedure
17 classifies property as either 1) Real or immovably, or 2) Personal or movable. (Cal. Civ. Code §
18 657.)".

19 357.      For the first element, Plaintiff was entitled to immediate possession to the Personal
20 Property at the time each item was converted. The Personal Property includes stock certificates,
21 insurance policies, Plaintiff's IRA, and other instruments converted and as per the Rasmussen test,
22 there is an interest capable of precise definition; that it was and is capable of exclusive possession
23 or control; and Plaintiff has established or will establish legitimate claim to exclusivity of his
24 Personal Property that was converted. Plaintiff alleges that State Bar has attempted to wrongfully
25 dispose of his CTCA Claim by unlawfully converting this action away from a Court of competent
26 jurisdiction, and that Defendants are bound to CTCA, and that such disposition would violate
27 Plaintiff's rights further.

28 358.      Defendant State Bar and DOES acting in an official capacity for State Bar

1   substantially interfered with Plaintiff's property by knowingly or intentionally (a) taking possession of

2   the foregoing Personal Property; and/or (b) preventing Plaintiff from having access to the Personal

3   Property; and/or (c) destroying the personal property through the Duty Violations and other acts

4   alleged involving fraud, corruption, oppression, conflicts, or other unknown influence or beneficiaries;

5   and/or (d) refusing to return the Personal Property through the Duty Violations and other acts or

6   omissions, even after Plaintiff repeatedly asserted his rights thereto and the obligations of State Bar,

7   Nunley, Kumar, Morgenstern, DOES imposed by law, and the clear and convincing injurious conduct

8   of licensees acting with State Bar, where any, each, or all instances have prevented Plaintiff from

9   having access to his Personal Property at the time of conversion.

10   359.    Plaintiff did not consent to any conversion of all or any of his Personal Property.

11   Indeed, some of it was even converted by fraudulent and manufactured consent that deceived judicial

12   officers from the trial court to Court of Appeal, all known to State Bar, Kumar, Nunley, Morgenstern,

13   and DOES.

14   360.    Plaintiff was harmed (injury) as set forth in the preceding allegations and generally

15   described in the CTCA Claim, the sufficiency of which was accepted by State Bar. Plaintiff alleges the

16   fair market value of the Personal Property was at least $163,000,000 at the time of its conversion.

17   361.    Plaintiff suffered further emotional distress growing out of the conversion of his

18   Personal Property (Hensley v. San Diego Gas & Electric Co. (2017) 7Cal.App.5th 1337, 1358).

19   362.    Plaintiff also suffered the value of interest and valuation of securities and instruments

20   from 2018 to 2022 from the time of conversion (Cal. Civ. Proc. Cod. §3336).

21   363.    The Personal Property, to Plaintiff, also had tremendous personal value. Indeed,

22   Plaintiff's grandmother and mother provided him with an inheritance that was shamefully depleted as

23   a direct and proximate cause of conversion. Plaintiff lost time with his mother who was dying of

24   cancer in 2016 in order to build CTI, and this time with Plaintiff's mother was unlawfully converted

25   by "official court business" filed by State Bar licensees acting without authority. Plaintiff lost his

26   parents while building CTI in 2016, indeed, lost time with other friends and the opportunity to pursue

27   other ventures from 2015 through present and thereafter. Plaintiff lost a friend and mentor in Irving

28   Einhorn, who served on the board of his company, who died as a defendant in one case that was filed

1  unlawfully and in violation of CRPC, known to State Bar, Nunley Morgenstern, and DOES', and
2  that Plaintiff seeks 2X the value of his Personal Property upon proving each or together a wilful
3  wrongdoer acting in conversion at any time relevant or based on the pattern of recklessness and
4  outrageous conduct taken without regard for Plaintiff or public interest due to the personal value of
5  his Personal Property. (Cal. Civ. Proc. Cod. 3356; *Kimes v. Grosser* (2011) 195 Cal.App.4[th] 1556).
6  Thus, Plaintiff seeks $322,000,000 in total compensatory and special damages for conversion of
7  the Personal Property due to its personal significance (2X the fair market value of $166,000,000).

8     364.     Defendant State Bar, Kumar, Nunley, Morgenstern, and DOES were a substantial
9  factor in causing Plaintiff's injury. But for them, Plaintiff's Personal Property and each item of
10  would not have been converted. Plaintiff alleges that willful acts of fraud, oppression, corruption,
11  and dereliction of duty were involved in the conversion of each or all Personal Property, according
12  to proof in trial, which supports his claim for additional punitive and exemplary damages.

13     365.     As an intentional tort and under the outrageous circumstances upon proving by
14  clear and convincing evidence that one or more defendants acted with oppression, fraud, or malice
15  during the course of government business actionable under CTCA, under Gov. Cod. 815.3 in
16  conversion, Plaintiff seeks the maximum extent of punitive and exemplary damages for conversion
17  of the Personal Property allowable under the law from State Bar, Kumar, Nunley, Morgenstern,
18  and DOES, which Plaintiff alleges to be 10X his total compensatory and special damages adjusted
19  for personal significance of $322,000,000.

20     366.     Injunctive relief is also requested against State Bar under conversion per Gov. Cod.
21  814 as specifically requested under Plaintiff's cause of action for negligence – where Plaintiff
22  requests, as a matter of public interest and on behalf of the public, for a State, Legislative or
23  Governor-imposed solution to remunerate those members of the public who have been known to
24  be unduly harmed and injured by State Bar licensees acting in bad faith with known conflicts of
25  interest, in violation of the public trust, with unknown beneficiaries as to the consideration or
26  promise of consideration associated therewith, to the detriment of the public, courts, legal
27  profession, and unacceptable risk to our current and future democracy. Plaintiff again requests a
28  resolution to claims underlying each of the wrongfully disposed or wrongfully "abated"

complaints, and that the CRPC and BPC 6001.1 are finally imposed upon State Bar through all necessary acts and further assurances as may be necessary, in a manner that protects from this sort of public taking, fraud, and oppression. Plaintiff respectfully requests the opportunity to administer this "fund" through State Bar licensure and a firm employing and partnering minority or underrepresented groups in furtherance of BPC 6001.1, and due appropriation or instrument from State in furtherance of State Bar's actual mission and mandate to avoid a multiplicity of proceedings, and brings this cause of action in the capacity of a private attorney general to the extent this is permitted by law and this Court, or otherwise by State, Legislature, or a Court of competent jurisdiction.

367.     Plaintiff requests his personal State Bar licensure and approval of a newly formed law corporation upon conclusion of a trial of fact in this action resulting in a jury finding of intentional tort by any defendant to this action, and for the opportunity to legally administer claims from members of the public who have knowingly and unreasonably endured injury, and that State defines a claims procedure administered financially by State controller and/or California State Auditor that is approved by State Legislature and State Governor. Plaintiff respectfully suggests that such a program as "State Bar's Public Protection Fund" is necessary to restore or maintain public trust in the courts and legal profession – and is necessary because the allegations, if proven, involve unlawful taking from private citizens involving a government protection agency as of November 2018. To the extent fixing this was previously restrained amidst a pandemic or due to the State Bar's role as a quasi-government agency, it is now a worthwhile objective for this Honorable Court, our Honorable Justices in the Court of Appeal, the Honorable Justices of our Supreme Court, and our honorable leaders in all branches of government to resolve to preserve the republic, and to enhance judicial efficiency in the near term.

## **CONCLUSION**

For these reasons, Plaintiff respectfully requests all relief to which he is entitled by law according to the preceding allegations and claims for compensatory, special, economic, non-economic, and punitive or exemplary damages and demands for a jury trial for all causes of action and all facts so triable.

Plaintiff respectfully requests that State toll all claims for injury to members of the public who

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Exhibit 1
Page 113

have submitted complaints to State Bar after November 1, 2018 supported by evidence of damages/injury, and that State define terms and procedure for remuneration for members of the public of their losses upon conclusion of or during the proceedings of this action.

Plaintiff respectfully requests the injunctive or extraordinary relief outlined under Gov. Cod. 814 upon a trial by jury and finding of corruption, fraud, malice, or oppression, and intends to notify lawmakers and State leadership of this action should it aid in the resolution of Plaintiff's claims or otherwise serve the interests of justice in this action for public interest.

Plaintiff respectfully asserts that it is unjust, indeed unlawful, and outrageous, for any person to regard another's property as "*de minimis*" as have State Bar, Nunley, Morgenstern, Kumar, and DOES – often for unknown reasons, and with a significant percentage involving un-waivable conflicts of interest (State Auditor 2022) that they are bound to *enforce*, and surely not *breach*. To think that State Bar as a government protection agency is in the driver seat of judicial machinery in the fifth largest economy of the world, and that State Bar continues to act as alleged, and further in defense of or in favor of attorneys who violate the public trust to the direct and ongoing prejudice of public, courts, and legal profession, is an injustice that must be addressed quickly and resolutely. Plaintiff intends to seek a legislative vehicle and make a proposal to leadership during the 2022 session in furtherance of individual rights as outlined.

Plaintiff respectfully asserts an injustice to public interest where unscrupulous attorneys can freely file civil or criminal actions without probable cause or with only a modicum of probable cause, conduct themselves in court on *behalf of others thereby binding those persons*, indeed where they can even file or maintain actions on behalf of parties without their consent, but the same attorneys, who are known to violate the public trust, are somehow beyond reproach for the government protection agency charged exclusively with and in control of all licensing, regulatory, and discipline functions of the same actors, and not even a Court of Appeal finding of serial misconduct will sway them.

Plaintiff asserts the State Bar must impose a point-based system, investigated according to a higher degree of diligence and lower standard of evidence than one would regulate civil or criminal conduct, and that such a system is reasonably implemented using modern technology. How else can attorney, who themselves have committed felonious acts or moral turpitude, represent another, and

bind them in a court of law? When the attorney acts for members of the public, they do so under much lower evidentiary thresholds than "clear and convincing" evidence. Members of the public, for misdemeanors or crimes, are investigated, indeed searched or seized or arrested, based on *probable cause*. How is the legal profession regulated as if it were a mom-and-pop business, and not as if it has long-term, resounding, life changing implications upon the daily and long-term lives, chattels, real property, personal property, and function of democracy?

Plaintiff respectfully asserts an injustice to liberty and the legal profession that a small percentage of attorneys can cause such pollution and carnage to the profession and courts, and thus affect the lives of innocent citizens for the benefit of State Bar, and thereby affecting the majority of attorneys who act as true advocates with integrity to democracy and the judiciary.

Indeed, where those fraudulent court actions are maintained against innocent people, State Bar purports to need "clear and convincing evidence" to commence its *investigations*, and even then, in the case of Plaintiff, it disregards the harm and injury for unknown reasons and conflict through delay or disposition of misconduct – no matter its scale, with reckless disregard for Plaintiff and public interest.

Unfortunately, a minority of attorneys like those disposing of material injury under un-waivable conflicts at State Bar, Catanzarite, Girardi, and other DOES who act unlawfully or corruptly, or defendants who have acted in unreasonable violation of duty to public interest and Plaintiff, would get away with such breaches of public trust for years and years, and maybe, just maybe, State Bar would protect members of the public (depending on the conflicts and some other consideration unknown) down the road – if anyone remembers how much it resulted in injury to life, liberty, and property of private citizens – and even then, only if those citizens scream loudly enough for long enough. These unfortunate torts and injustices will become the future of the courts and legal profession if they aren't solved in California, now, no matter one's political leanings.

Dated: May 1, 2022                          Respectfully Submitted,

By:

JUSTIN S. BECK

*In Pro Per*

PLAINTIFF JUSTIN S. BECK FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Exhibit 1
Page 115

# EXHIBIT 2

Exhibit 2
Page 116

Electronically Filed by Superior Court of California, County of Orange, 08/22/2022 03:59:00 PM.
30-2021-01237499-CU-PN-CJC - ROA # 161 - DAVID H. YAMASAKI, Clerk of the Court By A. Dang, Deputy Clerk.
230
Case ... Page ... 123 of

1   ELLIN DAVTYAN (238608)
    General Counsel
2   ROBERT G. RETANA (148677)
    Deputy General Counsel
3   SUZANNE C. GRANDT
    Assistant General Counsel (304794)
4   OFFICE OF GENERAL COUNSEL
    THE STATE BAR OF CALIFORNIA
5   180 Howard Street
    San Francisco, CA 94105-1639
6   Tel: (415) 538-2381
7   Fax: (415) 538-2321
    Email: suzanne.grandt@calbar.ca.gov
8

9   Attorneys for Defendants The State Bar of California; Anand Kumar;
10   Eli David Morgenstern; Joy Nunley; Ruben Duran; Carissa Andresen; Suzanne Grandt

11   **Exempt from Filing Fees Pursuant to Government**
    **Code Section 6103**
12

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                 COUNTY OF ORANGE

15

16   JUSTIN S. BECK, an individual,         Case No.  30-2021-01237499-CU-PN-CJC

17                          **DEFENDANTS RUBEN DURAN,**
                           **CARISSA ANDRESEN, AND SUZANNE**
18                          **GRANDT'S NOTICE OF DEMURRER**
                         **AND DEMURRER TO PLAINTIFF'S**
19        Plaintiff,               **FIRST AMENDED COMPLAINT**

20   v.                            DATE:    January 17, 2023
                           TIME:    2:00 p.m.
21                          DEPT:    C11
                         JUDGE:   JOHN C. GASTELUM
22   THE STATE BAR OF CALIFORNIA, a
    public corporation; ANAND KUMAR, an
23   individual; ELI DAVID MORGENSTERN,    Action Filed:   December 21, 2021
    an individual; JOY NUNLEY, an individual;  Trial Date:     None
24   and DOES 1 -20,

25                           Reservation No. 73830622
       Defendants.
26

27

28

---

Defendants' Notice of Demurrer and Demurrer to Complaint        (30-2021-01237499-CU-PN-CJC)

Exhibit 2
Page 117

<div align="center">**NOTICE OF DEMURRER**</div>

**TO EACH PARTY AND TO THE COUNSEL OF RECORD FOR EACH PARTY:**

  **YOU ARE HEREBY NOTIFIED THAT** that on **January 17, 2023, at 2:00 p.m.**, or as soon thereafter as may be heard, in Department C11 of the above-mentioned Court, located at 700 Civic Center Drive, Santa Ana, California, 92701, Defendants RUBEN DURAN, CARISSA, ANDRESEN, and SUZANNE GRANDT will demur to Plaintiff Justin Beck's ("Plaintiff") First Amended Complaint filed on May 22, 2022.

  The Demurrer will be based on this Notice, the grounds set forth in the below Demurrer, the accompanying Memorandum of Points and Authorities, the pleadings in this action, and upon such other and further pleadings, papers, and arguments as may be presented to the Court at the hearing on this matter.

<div align="center">**DEMURRER**</div>

  **NOTICE IS HEREBY GIVEN that on January 17, 2023, at 2:00 p.m.**, or as soon thereafter as the matter may be heard in Department C11 of this Court, located at 700 Civic Center Drive, Santa Ana, California, 92701, Defendants RUBEN DURAN, CARISSA ANDRESEN and SUZANNE GRANDT will and hereby does demur to Plaintiff's Complaint pursuant to Code of Civil Procedure § 430.10 and § 430.30. This demurrer is made on the following grounds:

<div align="center">Demurrer to First Cause of Action – Negligence (Breach of Mandatory Duty)</div>

  1.  The Superior Courts lack subject matter jurisdiction over the Complaint as it pertains only to attorney admission and disciplinary matters, which are within the inherent and exclusive jurisdiction of the California Supreme Court. (Code Civ. Proc., § 430.10(a).)

  2.  The State Bar's general immunity bars this cause of action because the State Bar, as a public entity, and its employees and officials are entitled to immunity against suits in tort (Gov. Code, § 815) and Business and Professions Code, section 6001.1 does not create a mandatory duty because it does not require that a particular action be taken or not taken nor affirmatively impose a duty and provide implementing guidelines (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898).

3.   The State Bar's licensing immunity bars this cause of action because the State Bar and its employees and officials are immune from claims arising from their official licensing functions. (Gov. Code, §§ 818.4, 821.2.)

4.   Immunity for discretionary acts bars this cause of action because the State Bar's employees and officials are immune from claims arising from the exercise of their discretion. (Gov. Code, § 820.2.)

5.   Immunity for failure to enforce the law bars this cause of action because the State Bar's employees and officials are immune from claims arising from any failure to enforce the law. (Gov. Code, § 821.)

6.   The Complaint does not contain any facts that establish negligence. (Code Civ. Proc., § 430.10(e).)

<u>Demurrer to Second Cause of Action – Negligence (Recklessness)</u>

1.   The Superior Courts lack subject matter jurisdiction over the Complaint as it pertains only to attorney admission and disciplinary matters, which are within the inherent and exclusive jurisdiction of the California Supreme Court. (Code Civ. Proc., § 430.10(a).)

2.   The State Bar's general immunity bars this cause of action because the State Bar, as a public entity, and its employees and officials are entitled to immunity against suits in tort (Gov. Code, § 815) and Business and Professions Code, section 6001.1 does not create a mandatory duty because it does not require that a particular action be taken or not taken nor affirmatively impose a duty and provide implementing guidelines (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898).

3.   The State Bar's licensing immunity bars this cause of action because the State Bar and its employees and officials are immune from claims arising from their official licensing functions. (Gov. Code, §§ 818.4, 821.2.)

4.   Immunity for discretionary acts bars this cause of action because the State Bar's employees and officials are immune from claims arising from the exercise of their discretion. (Gov. Code, § 820.2.)

Defendants' Notice of Demurrer and Demurrer to Complaint                    (30-2021-01237499-CU-PN-CJC)

Exhibit 2
Page 119

5.   Immunity for failure to enforce the law bars this cause of action because the State Bar's employees and officials are immune from claims arising from any failure to enforce the law. (Gov. Code, § 821.)

6.   The Complaint does not contain any facts that establish negligence or recklessness. (Code Civ. Proc., § 430.10(e).)

<u>Demurrer to Third Cause of Action – Negligence</u>

1.   The Superior Courts lack subject matter jurisdiction over the Complaint as it pertains only to attorney admission and disciplinary matters, which are within the inherent and exclusive jurisdiction of the California Supreme Court. (Code Civ. Proc., § 430.10(a).)

2.   The State Bar's general immunity bars this cause of action because the State Bar, as a public entity, and its employees and officials are entitled to immunity against suits in tort (Gov. Code, § 815) and Business and Professions Code, section 6001.1 does not create a mandatory duty because it does not require that a particular action be taken or not taken nor affirmatively impose a duty and provide implementing guidelines (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898).

3.   The State Bar's licensing immunity bars this cause of action because the State Bar and its employees and officials are immune from claims arising from their official licensing functions. (Gov. Code, §§ 818.4, 821.2.)

4.   Immunity for discretionary acts bars this cause of action because the State Bar's employees and officials are immune from claims arising from the exercise of their discretion. (Gov. Code, § 820.2.)

5.   Immunity for failure to enforce the law bars this cause of action because the State Bar's employees and officials are immune from claims arising from any failure to enforce the law. (Gov. Code, § 821.)

6.   The Complaint does not contain any facts that establish negligence. (Code Civ. Proc., § 430.10(e).)

Defendants' Notice of Demurrer and Demurrer to Complaint                (30-2021-01237499-CU-PN-CJC)
Exhibit 2
Page 120

<u>Demurrer to Fourth Cause of Action – Negligence (Injunctive Relief)</u>

1.   The Superior Courts lack subject matter jurisdiction over the Complaint as it pertains only to attorney admission and disciplinary matters, which are within the inherent and exclusive jurisdiction of the California Supreme Court. (Code Civ. Proc., § 430.10(a).)

2.   The Complaint does not contain any facts that establish negligence. (Code Civ. Proc., § 430.10(e).)

<u>Demurrer to Sixth Cause of Action [1]– Intentional Infliction of Emotional Distress</u>

1.   The Superior Courts lack subject matter jurisdiction over the Complaint as it pertains only to attorney admission and disciplinary matters, which are within the inherent and exclusive jurisdiction of the California Supreme Court. (Code Civ. Proc., § 430.10(a).)

2.   The State Bar's general immunity bars this cause of action because the State Bar, as a public entity, and its employees and officials are entitled to immunity against suits in tort (Gov. Code, § 815) and Business and Professions Code, section 6001.1 does not create a mandatory duty because it does not require that a particular action be taken or not taken nor affirmatively impose a duty and provide implementing guidelines (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898).

3.   The State Bar's licensing immunity bars this cause of action because the State Bar and its employees and officials are immune from claims arising from their official licensing functions. (Gov. Code, §§ 818.4, 821.2.)

4.   Immunity for discretionary acts bars this cause of action because the State Bar's employees and officials are immune from claims arising from the exercise of their discretion. (Gov. Code, § 820.2.)

5.   Immunity for failure to enforce the law bars this cause of action because the State Bar's employees and officials are immune from claims arising from any failure to enforce the law. (Gov. Code, § 821.)

6.   The Complaint does not contain any facts that establish intentional infliction of emotional distress. (Code Civ. Proc., § 430.10(e).)

---

[1] Plaintiff's Fifth Cause of Action is not asserted against Defendants Duran, Grandt or Andresen.

4

<u>Demurrer to Seventh Cause of Action – Conversion</u>

1.  The Superior Courts lack subject matter jurisdiction over the Complaint as it pertains only to attorney admission and disciplinary matters, which are within the inherent and exclusive jurisdiction of the California Supreme Court. (Code Civ. Proc., § 430.10(a).)

2.  The State Bar's general immunity bars this cause of action because the State Bar, as a public entity, and its employees and officials are entitled to immunity against suits in tort (Gov. Code, § 815) and Business and Professions Code, section 6001.1 does not create a mandatory duty because it does not require that a particular action be taken or not taken nor affirmatively impose a duty and provide implementing guidelines (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898).

3.  The State Bar's licensing immunity bars this cause of action because the State Bar and its employees and officials are immune from claims arising from their official licensing functions. (Gov. Code, §§ 818.4, 821.2.)

4.  Immunity for discretionary acts bars this cause of action because the State Bar's employees and officials are immune from claims arising from the exercise of their discretion. (Gov. Code, § 820.2.)

5.  Immunity for failure to enforce the law bars this cause of action because the State Bar's employees and officials are immune from claims arising from any failure to enforce the law. (Gov. Code, § 821.)

6.  The Complaint does not contain any facts that establish conversion. (Code Civ. Proc., § 430.10(e).)

Dated: August 22, 2022

Respectfully submitted,
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA

By: */s/ SUZANNE C. GRANDT*
SUZANNE C. GRANDT

Attorneys for Defendants
The State Bar of California; Anand Kumar; Eli David Morgenstern; Joy Nunley, Ruben Duran, Carissa Andresen, and Suzanne Grandt

**PROOF OF SERVICE**

I, Joan Randolph, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of San Francisco, that my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

On August 22, 2022, I served a copy of:

**DEFENDANTS RUBEN DURAN, CARISSA ANDRESEN AND SUZANNE GRANDT'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

on the parties listed below:

Justin S. Beck
3501 Roselle Street
Oceanside CA 92056
Plaintiff in Pro Per

☒ **By first class mail** by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid and placing the envelope in the office's daily mail processing center for mailing in the United States mail at San Francisco, California.

☐ **By facsimile machine** by personally transmitting a true copy thereof via an electronic facsimile machine to the facsimile number listed below.

☐ **By electronic mail** by personally transmitting a true copy thereof via an electronic mail service connected to the internet, addressed to the email address listed above.

☐ **By UPS** overnight delivery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California on August 22, 2022.

/s/ *Joan Randolph*
Joan Randolph

# EXHIBIT 3

Exhibit 3
Page 124

Electronically Filed by Superior Court of California, County of Orange, 10/13/2022 19:53:00 AM.
30-2021-01237499-CU-PN-CJC - ROA # 227 - DAVID H. YAMASAKI, Clerk of the Court By E. efflinguser, Deputy Clerk.
Case 30-2021-01237499-CU-PN-CJC - ROA # 227 - DAVID H. YAMASAKI, Clerk of the Court By E. efflinguser, Deputy Clerk. Page 131 of 230

1
ELLIN DAVTYAN (238608)
General Counsel
2
ROBERT G. RETANA (148677)
Deputy General Counsel
3
SUZANNE C. GRANDT (304794)
Assistant General Counsel
4
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
5
180 Howard Street
San Francisco, CA 94105-1639
6
Tel: (415) 538-2381; Fax: (415) 538-2321
7
Email: suzanne.grandt@calbar.ca.gov
8
9
Attorneys for Defendants The State Bar of California; Anand Kumar;
Eli David Morgenstern; Joy Nunley; Ruben Duran; Carissa Andresen; Suzanne Grandt
10
**Exempt from Filing Fees Pursuant to Government
Code Section 6103**
11

12
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF ORANGE
13

14
JUSTIN S. BECK, an individual,

15
        Plaintiff,

16
v.

17
THE STATE BAR OF CALIFORNIA, a
public corporation; ANAND KUMAR, an
18
individual; ELI DAVID MORGENSTERN,
an individual; JOY NUNLEY, an individual;
19
RUBEN DURAN, an individual; CARISSA
ANDRESEN, an individual; SUZANNE
20
GRANDT, an individual; and DOES 4 -20,

21
        Defendants.

22

23

24

25

26

27

28

CASE NO.  30-2021-01237499-CU-PN-CJC

ASSIGNED FOR ALL PURPOSES TO:
JUDICIAL OFFICER JOHN C. GASTELUM
DEPARTMENT C11

**NOTICE OF RULIING RE:
DEFENDANTS THE STATE BAR OF
CALIFORNIA, ANAND KUMAR, ELI
DAVID MORGENSTERN, and JOY
NUNLEY'S DEMURRER TO FIRST
AMENDED COMPLAINT**

HEARING DATE:      October 11, 2022
HEARING TIME:      2:00 p.m.
Reservation No.:    73819560
ACTION FILED:      December 21, 2021
TRIAL DATE:        None

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         NOTICE IS HEREBY GIVEN that the hearing on State Bar Defendants' Demurrer to First

3    Amended Complaint came on for hearing on October 11, 2022, in Department C-11 of the above-

4    captioned Court, the Honorable John C. Gastelum presiding. Suzanne C. Grandt, Assistant General

5    Counsel for the State Bar of California, appeared for Defendants the State Bar of California, Anand

6    Kumar, Eli Morgenstern, and Joy Nunley. Plaintiff Justin Beck appeared *in pro per*.

7         The Court issued a tentative ruling at approximately 3:00 p.m., on October 10, 2022. At the

8    hearing, after hearing arguments by both parties, the Court adopted the tentative ruling as its order. A

9    true and correct copy of the Court's tentative ruling is attached hereto as Exhibit "A." Counsel for

10   Defendant THE STATE BAR OF CALIFORNIA was ordered to give notice.

11        Pursuant to the Court's final ruling on the State Bar of California's Demurrer to the First

12   Amended Complaint:

13        1.    State Bar Defendants' Demurrer is sustained without leave to amend.

14        Defendant The State Bar of California was ordered to give notice in this regard as prevailing

15   party.

16

17   Dated: October 13, 2022                    Respectfully submitted,

18                                              OFFICE OF GENERAL COUNSEL
                                                THE STATE BAR OF CALIFORNIA

19

20                                              By: */s/ Suzanne C. Grandt*
                                                Suzanne C. Grandt, Attorneys for Defendants

21                                              The State Bar of California; Anand Kumar;
                                                 Eli David Morgenstern; Joy Nunley; Ruben Duran;

22                                              Carissa Andresen; Suzanne Grandt

23

24

25

26

27

28

1

Notice of Ruling                    Exhibit 3                Case No. 30-2021-01237499-CU-PN-CJC
                                    Page 126

# EXHIBIT A

Exhibit 3
Page 127

Case 8:22-cv-01616-AGS-DDL   Document 31-1   Filed 02/10/23   PageID.4353   Page 134 of 230

## TENTATIVE RULINGS

## DEPT C-11

### Judge John C. Gastelum

The court will hear oral argument on all matters at the time noticed for the hearing, **unless the Court has stated that the matter is off calendar**. Do not call the department to verify if you should appear or not. Please read below for the information.  If you would prefer to submit to the Court's tentative without oral argument, advise all counsel first to find out if all parties are submitting and then moving party is to telephone the clerk at (657)622-5211 with the status of all parties. If the moving party has submitted the matter and there are no appearances by any party at the hearing, the tentative ruling will be the final ruling. Rulings are normally posted on the Internet by 4:30 p.m. on the day before the hearing.  Generally, motions will not be continued or taken off calendar after the tentative has been posted. **The moving party shall give notice of the ruling**.

### October 11, 2022
### 2:00 PM

### PLEASE TAKE NOTICE THAT UNLESS OTHERWISE SPECIFIED,
### ALL APPEARANCES BEFORE JUDGE GASTELUM IN
### DEPARTMENT C11 WILL BE BY ZOOM ONLY;
### NO PERSONAL APPEARANCES IN COURT WILL BE ALLOWED

### *All appearances will be through ZOOM*.
Click here: https://www.occourts.org/media-relations/civil.html

If you want a transcript, you must provide your own telephonic court reporter

| # | Case Name | Tentative |
|---|-----------|-----------|
| 1 | **Grabowski vs. Grabowski**<br><br>**00CC143665** | Motion - Other<br><br>Tentative Ruling:  Plaintiff/Cross-Defendant Laurence Grabowski ("Laurence") for an order deeming his Application for and Renewal of Judgment (the "Application") as filed on May 20, 2022 on the grounds that the Application was timely filed and the Court Clerk's rejection is immaterial.<br><br>The Application was submitted for filing on May 20, 2022. (Declaration of Jesus Hinojosa, ¶ 2.)  On the following Monday, May 23, 2022, counsel for Laurence learned the Application had been rejected.  (*Id*., ¶¶ 4-6.)  The reason for the rejection as stated on the rejection form was because "Amounts listed in Section #5a-h cannot be left blank. An amount must be entered. If no amount applies, $0.00 must be entered." (*Id*., Ex. 4.)  The Application, as submitted, left Section 5(a)-(g) blank.  Section 5(h) states that the total renewed judgment is for $2,400,000.00. (*Id*., Ex. 2.)  Review of the Application shows it was otherwise properly filled out and signed.<br><br>The Court finds *Rojas v. Cutsforth* (1998) 67 Cal.App.4th 774, instructive.  There, the clerk rejected a complaint mailed for filing because the locally required declaration for court assignment was unsigned and the summons had the address of the wrong court branch.  (*Id*., at p. 775.)  As a result of the rejection, the defendant was granted summary judgment on the statute of limitations. (*Ibid*.)  The clerk had mailed the rejection to counsel |

Exhibit 3
Page 128

after receiving the documents on November 7, 1996, but counsel did not receive the notice of rejection until November 27, 1996. (*Id.*, at p. 776.)

The appellate court reversed the judgment with instructions to deem the complaint filed on November 7, 1996. (*Id.*, at p. 778.) The court noted the lack of a signature on the properly completed form could not have presented any significant impediment to the fulfillment of the form's purpose, which was to aid the clerk in determining to which division the case should be assigned. (*Id.*, at p. 777.) The court stated that denying the plaintiff "her cause of action for lack of a signature makes a mockery of judicial administration." (*Ibid.*) It further noted there was no authority in support of the proposition that the clerk may refuse to file the complaint if the summons contains the incorrect address. (*Ibid.*)

Here, as in *Rojas*, it appears the failure of Laurence to fill in $2,400,000.00 at line 5(a) and $0.00 at lines 5(b)-(g) does not impede the fulfillment of the form's purpose, which is to provide all the information necessary to compute the amount of the judgment as renewed. Laurence filled in at line 5(h) that the total renewed judgment is for $2,400,000.00, the original amount of the judgment in his favor. Because there is no difference from the original judgment and the total renewed judgment, the indication that the total renewed judgment is for $2,400,000.00 is sufficient.

In Opposition, Defendant Patrick Grabowski, Sr. ("Patrick") argues Laurence's assertion that he is owed $2.4 million is incorrect because he must pay a number of sums under the Judgment before that amount is owed to him and Laurence has never attempted to pay all of the money he owes to Patrick. The Court rejects this argument for two reasons.

First, Laurence correctly points out this is a postjudgment motion subject to California Rules of Court, Rule 3.2231. (See Rule 3.221(a) ["any postjudgment motion except for a motion for attorney's fees and costs is governed by this rule."].) Thus, Patrick's Opposition was due within five days of service of the moving papers, which were served on 5-27-22 by mail. Patrick did not file the Opposition until 9-28-22. Therefore, Patrick's Opposition is untimely.

Second, Patrick's opportunity to challenge the renewal of the judgment is through the filing of a motion to vacate or modify the renewal, not through any opposition to the instant Motion. (See Code Civ. Proc., § 683.170.)

Given the above, the Court GRANTS the Motion. Laurence's Application is deemed as filed on May 20, 2022.

The deadline for any motion to vacate or modify the renewal shall be 30 days from the date of this Order.

Laurence to give notice.

| 2 | **Kitts vs. Katherman Kitts & Co. LLP** | Motion to Quash Service of Summons |
|---|---|---|

Exhibit 3
Page 129

| 3 | 17-00902238 | Ruling: *Off Calendar* – no hearing will be held.   Moving parties dismissed from case on 8-9-22.<br><br>Clerk to give notice. |
|---|---|---|
| 3 | Buck vs. Garruba<br><br>19-01086744 | Motion for Bifurcation<br><br>Tentative Ruling:  Plaintiff, Paul Buck's Motion for Bifurcation is GRANTED. However, the issues are modified as follows.<br><br>Plaintiff moves for an order bifurcating the equitable causes of action, or certain issues therein, from the legal causes of action and issues, for determination by this Court rather than by a jury, including bifurcating the Firth Cause of Action for Enforcement of Equitable Servitude; the Fourth Cause of Action for Declaratory Relief; and /or two equitable issues:  (1)  Whether an equitable servitude exists over Defendant Garruba's property that prohibits structures and vegetation over 17 feet high, and, if so, whether Plaintiff Buck can enforce the equitable servitude; and (2) Whether Plaintiff Buck can enforce a height restriction condition of approval imposed by the City of San Clemente on the Broadmoor project, including homes on Calle Delicada.<br><br>Plaintiff cites Code of Civil Procedure sections 598, 1048(b), and this Court's inherent authority to control the litigation before it under Code of Civil Procedure section 128(a)(3).<br><br>It is undisputed that three causes of action remain at issue in the First Amended Complaint ("FAC"):  (1) the First Cause of Action for Enforcement of an Equitable Servitude, (2) the Third Cause of Action for Nuisance, and (3) the Fourth Cause of Action for Declaratory Relief.<br><br>Defendants, Angelo Garruba and Lisa Garruba do not contest that that certain issues within the First and Fourth Causes of Action should be bifurcated and should be tried first as a court trial. It also appears that the parties agree that the resolution of the equitable causes of action and/or issues would promote the ends of justice and serve economy and efficiency in handling the case. Thus, the dispute before the Court is what the equitable issues from the First and Fourth Causes of Action should be.<br><br>Both parties' proposals as to the issues appear to be too narrowly framed. The Court modifies the issues to be bifurcated and tried first by way of a bench trial as follows:<br><br>1.  Whether Plaintiff Paul Buck has an enforceable, equitable servitude over Defendants Angelo and Lisa Garruba's property in the form of the height restriction prohibiting structures and vegetation over 17 feet high.<br><br>2.  Assuming Plaintiff has an equitable, enforceable servitude in the form of the height restriction prohibiting structures and vegetation over 17 feet high, whether Plaintiff Paul Buck has standing to enforce said equitable servitude.<br><br>**Plaintiff's Requests for Judicial Notice**<br>The Court GRANTS Plaintiff's Requests for Judicial Notice for four documents, including Plaintiff's First Amended Complaint; the |

Exhibit 3
Page 130

3/14

Court's tentative ruling on Plaintiff's Notice of Motion and Motion for Court Trial or Bifurcation of Equitable Issues entered on or about May 5, 2022; the Notice of Entry of Judgment or Order on Demurrer filed in this action; and the Minutes Finalized for Defendants' Motion for Summary Judgment and/or Adjudication filed in this action, pursuant to Evidence Code section 452(d), but declines to take notice of truth of hearsay statements therein. (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.)

**Defendants' Request for Judicial Notice**
The Court GRANTS Defendants' Request for Judicial Notice of two documents consisting of the Master CC&Rs of Broadmoor Community HOA, and Supplemental CC&Rs of Broadmoor Community HOA, as public records under Evidence Code section 452(h), but declines to take judicial notice of the truth of the matter stated therein. (*Herrera v. Deutsche Bank Nat'l Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.)

Plaintiff to give notice.

| 4 | Shainman vs. Getac, Inc.<br><br>20-01125066 | Motion -- Other<br><br>Ruling:  *Off Calendar* – no hearing will be held.   Plaintiff Scott Shainman ("Plaintiff") moves for an order sealing unredacted copies of his Opposition to Defendants' Amended Motion for Summary Judgment, Response and Separate Statement, Declaration, and Exhibits A, B, D, F, G, H, I, J, L, M, N, O, P, Q, S, U, V, X, Z, AA, and CC, filed in opposition to Defendants' Motion for Summary Judgment/Adjudication on the grounds that these documents contain information which may be protected by the attorney-client privilege, attorney work product privilege, or are otherwise marked by the parties as confidential and subject to the protective order dated February 4, 2021.<br><br>The evidence presented supports the findings as required by California Rules of Court, Rule 2.550(d).<br><br>The Motion was initially set for hearing on September 6, 2022 and the Court continued the hearing to this date due to Plaintiff's failure to file a redacted, public version of his Opposition.  Plaintiff filed the redacted version on September 6, 2022.  (See ROA 450.)<br><br>Thus, the Court GRANTS the **unopposed** Motion to Seal.   No appearances required.<br><br>Plaintiff to give notice. |
| --- | --- | --- |
| 5 | Luu vs. Calderon<br><br>20-01160593 | Motion to Dismiss<br><br>Tentative Ruling:   Defendant Canales Transportation, LLC's (formerly sued as DOE 6) Motion to Dismiss is DENIED as follows.<br><br>The Court does not find Plaintiff unreasonably delayed in filing the DOE Amendment and finds any claims of prejudice to Defendant CANALES may be alleviated by a short trial continuance.<br><br>The Court, however, CONTINUES trial from 1-23-2023 to 4-17-2023, Dept. C11, at 9 am, to allow Defendant additional time to |

|   |   |   |
|---|---|---|
|   |   | conduct discovery prior to participating in trial. |
|   |   | Moving Party is to give notice. |
| 6 | **Davis vs. Fidelity National Title Co**<br><br>**20-01124755** | (1) Demurrer to Amended Complaint (?AC) (2) Motion to Strike<br><br>Ruling: (1-2) *Off Calendar* – no hearing will be held. The Demurrer to Plaintiff Jamie Davis' Third Amended Complaint filed by Defendant, First American Title Company, Inc. ("First American") is CONTINUED to a date to be determined by the Court. The Motion to Strike Portions of Plaintiff's Third Amended Complaint filed by Defendant, First American is CONTINUED to a date to be determined by the Court. Clerk to give notice.<br><br>"If, upon review of a declaration under [Code of Civil Procedure] section 430.41, subdivision (a)(3), a court learns no meet and confer has taken place, or concludes further conferences between counsel would likely be productive, it retains discretion to order counsel to meaningfully discuss the pleadings with an eye toward reducing the number of issues or eliminating the need for a demurrer, and to continue the hearing date to facilitate that effort." (*Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 356.)<br><br>While there are emails dated September 9, 2021, and September 14, 2021, indicating that First American requested Plaintiff's availability to meet and confer regarding Plaintiff's Third Amended Complaint, there is no specification as to a demurrer and/or motion to strike. (Declaration of Lori Hershorin, ¶ 22 Ex. 1 to Hershorin Decl.) It also appears First American's attempts consisted of only emails, with no attempt by other means to reach Plaintiff, such as by telephone.<br><br>In addition, First American does not dispute that it advised it would not file and serve a responsive pleading until First American is properly served. (Ex. 1 to Hershorin Decl.; email dated August 27, 2021.) Nor does it dispute that it sent an email dated October 14, 2021, that it intended to file a Motion to Quash Service of Plaintiff's Third Amended Complaint. (Ex. 3 to Davis Decl.) However, it then appears that First American instead initially filed the instant demurrer and motion to strike on 10-21-21, and re-filed said motions on 6-2-22. (Reply Hershorin Decl., ¶¶ 17, 21.)<br><br>Moreover, the reply does not address Plaintiff's email dated September 27, 2022 wherein she discussed meeting and conferring about First American's reasons for demurrer and motion to strike. (Exs. 4 and 5 to Davis Decl.) First American also does not dispute it did not respond to Plaintiff's emails dated September 26, 2022, or September 27, 2022.<br><br>Thus, it appears to the Court that no meet and confer occurred before the instant demurrer and motion to strike were filed or while they were pending.<br><br>The Court ORDERS Plaintiff and First American's counsel to meet and confer in person, by zoom or video remote technology, or over the telephone and to meaningfully discuss the Third Amended Complaint and the arguments raised in the demurrer |

|   |   | and motion to strike with an eye toward reducing the number of issues or eliminating the need for a demurrer and/or motion to strike.

First American's counsel to file and serve a declaration no later than nine (9) court days before the hearing date describing the parties' meet and confer efforts, and specifying what issues have been resolved, or remain for the Court to resolve. If no declaration is timely filed, the Court will construe this to mean that the issues have been resolved and will take the demurrer off-calendar.

No other filings will be permitted.

First American to give notice. |
|---|---|---|
| **7** | **Superior Construction vs. HGIH2 Anaheim Resort, LLC**

**20-01171107** | Motion for Leave to File Amended Cross-Complaint

Ruling:  *Off Calendar* per MP – no hearing will be held. |
| **8** | **Kneeshaw vs. City of Orange**

**20-01170026** | Motion for Summary Judgment and/or SAI

Tentative Ruling:  Defendants CITY OF ORANGE and JOSEPH LOSCH ("City"), move for summary judgment or in the alternative, summary adjudication in their favor, indicating:
1. The City is immune from liability based upon design immunity set forth in Government Code Sections 830.6. 2. The City is immune from liability based upon sign immunity set forth in Government Code Sections 830.4 and 830.8.
3. Plaintiffs cannot establish the elements of a dangerous condition of public property.
4. Plaintiffs cannot establish the elements to support their negligence claim.
5. Plaintiffs cannot establish the elements to support a violation of the California Public Records Act (Government Code Section 6250, et seq.)

Motion is DENIED in its entirety.

Initially, the Court notes a ***staggering*** amount of documents were filed as to this motion. (**3,450 pages)**. Each Plaintiff (Bardales and Kneeshaw) has filed their own opposition, which accounts for the bulk of the documents; Defendants' motion and reply documents are also voluminous, at **975 pages total**.

Additionally, in their separate statement of facts, Defendants set forth 192 facts, of which only about 10 facts are undisputed by Plaintiffs. Plus, Plaintiff Kneeshaw submits additional facts 1-579. Plaintiff Bardales submits additional facts 1-193. Given the sheer volume of evidence and contested facts, it appears triable issues of material fact exist.

Also, although close, the notice of motion and separate statement **are not verbatim**.  (CRC, Rule 3.1350(b).)   Failure to comply with the separate statement requirement constitutes ground for denial of the motion, in the court's discretion.  (Code Civ. Proc., § |

437c(b)(1).) However, in this instance, the Court opts to proceed to the merits.

**Issue 1:** The City is immune from liability based upon design immunity set forth in Government Code section 830.6.

Plaintiffs plead all the problems with the subject road(s) at Complaint¶19.A.-H.

Pursuant to Government Code section 835(b), "a public entity is liable for injury proximately caused by a dangerous condition of its property if the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and the public entity had actual or constructive notice of the condition a sufficient time before the injury to have taken preventive measures." (*Cornette v. Department of Transp.* (2001) 26 Cal.4th 63, 68.)

Defendants argue the affirmative defense of design immunity. That is, under Government Code section 830.6, the public entity may escape such liability by raising the affirmative defense of "design immunity." A public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design. (*Cornette v. Department of Transp*. (2001) 26 Cal.4th 63, 69.)

As to the first element, it appears Defendant may rely on the pleadings. (*Fuller v. Department of Transp.* (2001) 89 Cal.App.4th 1109, 1114 - Defendant "relied on plaintiffs' pleadings to establish the necessary assertion of causation.") However, in arguing that Defendant may rely on the pleadings, Defendant fails to address the actual alleged dangerous condition decedent encountered on the day of the accident. Rather, Defendant skips ahead to the 2nd element.

As to the 2nd element, Defendant sets forth at UMF No. 4 that at the time of the incident, the Prospect/Collins curve and the intersection of East Collins and Roberto Street was designed and constructed consistent with plans prepared and approved by a licensed civil engineer authorized on behalf of the City of Orange in **1991**, except for a modification to provide additional warning signs for the curve and the Roberto intersection.

However, both Plaintiffs partially dispute fact No. 4.

Plaintiff Kneeshaw argues the City has completely omitted anything about the actual 25 mph posted advisory speed as testified by Sun, Fascenelli and Learmouth, and instead mistakenly assumes 30 mph was the posted advisory speed on June 5, 2019. (PAMF 570.) It assumes an intersection sign was posted below a flashing light when the evidence by Sun, Learmouth and Fascenelli shows that said warning sign was missing for years. (PAMF 574, 575.)

As such, it is not abundantly clear Defendant has sustained its burden to establish the first two elements as it is unclear if it has explained the dangerous condition and approved signage,

Exhibit 3
Page 134

posting, etc. on the date of the accident. Even if Defendant did adequately sustain its burden of establishing the first two elements of the affirmative defense, the first two elements are questions for the jury. (See *Hernandez v. Department of Trans.* (2003) 114 Cal.App.4th 376, 383 [first two of three elements of design immunity are questions of fact for jury; only last element, concerning reasonableness of design, is question of law for court]; 30 Lincoln L. Rev. 25 [design immunity in median barrier case].)

Further, Plaintiff Kneeshaw argues a failure to warn of a trap can constitute independent negligence, regardless of design immunity. In *Cameron v. State of California* (1972) 7 Cal.3d 318, 328, the Court held  passive negligence is independent of the negligent design. The Court relied on *Flournoy*, which held design immunity is not a defense if the injuries are caused, at least in part, by negligent acts or omissions of the public entity that are independent of the plan or design. (*Flournoy v. California* (1969) 275 Cal.App.2d 806, 814.)

To that end, Plaintiff Kneeshaw submits the declaration of expert Edward Ruzak who opines, "These factors of speed, curvature, and line of sight created a trap not reasonably apparent to motorists driving westbound on Collins Ave. (like the subject driver) and motorists making a left-hand turn from Roberto onto Collins Ave." (Ruzak Decl.¶12). (PAMF 565) Also, Plaintiff Bardales submits the evidence of private citizen William Grauten's correspondence to City in August of 2016, where he not only complained about the dangerousness of the curve, but he also noted the concrete barrier and guardrail gave the impression of a mini racetrack." He believed the situation served as a trap for people to go faster. (PMF 46, Ex.25; Ex.19 (Grauten deposition) at 42:8-21)

Also, there are triable issues of material fact regarding the reasonableness of the plan as Plaintiff Bardales' expert traffic engineer Allen Bourgeois opined that from a professional civil and traffic engineering standard, City did not provide a reasonably designed and approved plan set. (PMF 20)

Finally, there are triable issues of material fact as to whether or not, to the extent design immunity ever existed, it was lost. In *Cornette v. Department of Transp.* (2001) 26 Cal.4th 63 the Supreme Court held that where triable issues of material fact are presented, plaintiff has right to jury trial as to issue of whether public entity has lost its design immunity from liability for injury proximately caused by dangerous condition of its property. Here, Plaintiff Bardales presents evidence that the traffic on the road has increased significantly since 1991 (PMF 76, 77; Ex.16 (OR02323); Ex.35 (OR2348-2349; Ex.26 (Cameron deposition) at 10:18-11:1; Ex.57 (Learmouth deposition) at 20:2-14; 22:8-16))and the Defendant was aware of the dangerous condition for which it sought federal funding (PMF 59, 60; Ex.34 (HSIP application, OR02356-02400) at OR02370, 02400; Ex.3 (Sun deposition) at 14:21- 15:12; Ex.5 (Allenbach deposition) at 17:24-18:7; Ex.34 (HSIP application) at OR02357, 2358, 2359.).

As such, motion is denied as to Issue 1.

Exhibit 3
Page 135

**Issue 2:** The City is immune from liability based upon sign immunity set forth in Government Code sections 830.4 and 830.8.

**Gov. Code, § 830.4**

> A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code.

**Gov. Code, § 830.8**

> Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.

However, as *Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, explains:

> Section 830.4 exempts from the definition of "dangerous condition" found in section 830, subdivision (a)[4] a condition resulting "merely" from failure to provide regulatory traffic controls or definitive roadway markings. It implicitly confers a limited immunity from injury liability on a public entity if that failure is the *only* basis for fixing such liability. Where, however, the dangerous condition of public property exists for reasons *other than or in addition to* the "mere[]" failure to provide such controls or markings, the public entity is liable for injury therefrom if the conditions of its liability under section 835 are otherwise met.[5]

> Section 830.8 was intended to prevent "the imposition of [public entity] liability based on the failure to provide traffic regulatory or warning signals or devices [*other than as described*] in Section 830.4, but liability may exist for failure to provide such a signal or device where the condition constitutes a trap to a person using the street or highway with due care." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 830.8, p. 289; Deering's Ann. Gov. Code (1982) § 830.8, p. 245 italics added; see *Black* v. *County of Los Angeles* (1976) 55 Cal.App.3d 920, 932-933 [127 Cal.Rptr. 916];[6] *Dahlquist v. State of California* (1966) 243 Cal.App.2d 208, 213 [52 Cal.Rptr. 324].)

A public entity, thus, loses its limited immunity under section 830.8 and is liable for injury where its failure to provide traffic regulatory or warning signals, *of a type other than those described in section 830.4*, constitutes a concealed trap for those exercising due care, assuming the conditions of its liability under section 835 are otherwise met. (*Kessler v. State of California* (1988) 206 Cal.App.3d 317, 321-322 [253 Cal.Rptr. 537].)

(*Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1535–1537.)

Here, traffic controls and marking are not the only basis for Plaintiff's arguments for liability. (See Complaint ¶ 19. ) Also, as set forth above, Plaintiffs have provided expert testimony that conditions on the road created a "trap". As such, there are triable issues of material fact as to whether this immunity applies.

Motion is denied as to Issue 2.

**Issue 3:** Plaintiffs cannot establish the elements of a dangerous condition of public property.

Here, Defendants essentially argue that had decedent not been speeding, the road would not have been dangerous. However, the issue of speed seems to be part of the dangerous condition itself. Furthermore, simply because Decedent may have also been negligent in speeding, does not necessarily negate Defendants' negligence.  (See *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 977 where the city was liable for the dangerous condition on its property even though the danger would not have existed but for the privately owned trapdoor mechanism that had been temporarily installed in the city-owned stage.)

Defendants also note a lack of similar accidents at the location of the subject incident does not support a finding of a dangerous condition of roadway or notice of such a dangerous condition, if it existed. (UMF 106-113)

Yet, the Defendant's own facts establish that combined reports indicate there were 47 collisions from October 1, 2000 to the subject collision.  (See UMF 106.) Interestingly, Defendants do not cite back to 1991 when the City apparently obtained design approval for the road. Also, the subject collision reports do not include all the neighbor complaints, which also put the Defendant on notice. Whether there was sufficient notice should go to the jury.

Motion is denied as to Issue 3.

**Issue 4:** Plaintiffs cannot establish the elements to support their negligence claim.

In the 2nd COA for Negligence, Plaintiffs plead that "Defendant LOSCH, the Defendant City…so negligently, carelessly and recklessly, owned, operated, maintained and entrusted the aforementioned 2007 Seagrave Marauder II motor vehicle and directly and proximately caused a collision with the motor vehicle

Exhibit 3
Page 137

operated by Decedent and as a direct and proximate result thereof, Decedent was killed." (Complaint¶33.)

The essential elements of a cause of action for negligence are: (1) the defendant's legal duty of care toward the plaintiff, (2) the defendant's breach of duty- the negligent act or omission; (3) injury to the plaintiff as a result of the breach-**proximate or legal cause**; and (4) damage to the plaintiff. (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 141).

Here, it appears Defendants are attacking the element of causation. That is, Defendants appear to argue that because a) Defendant Losch had the right of way, b) the motorcycle was in an extreme lean-to position, and c) decedent was speeding; that the combination of *decedent's conduct caused the collision.*

However, there appears to be triable issues of fact as to what actually transpired to the extent that causation should go to a jury. Defendants suggest Defendant Losch was making a left hand turn from East Collins to Roberto street, and "quickly tried to maneuver the fire engine towards the left of the intersection to avoid the collision hoping that the motorcyclist would travel behind the fire engine, but the motorcyclist headed to the right and directly towards them." (UMF No. 162.)

However, this account (UMF No. 162) is heavily disputed. Plaintiffs dispute fact No. 162, stating "Losch turned the fire engine left from eastbound Collins onto Roberto, clearing all lanes of travel on Collins, and then stopped the fire engine in the southbound (opposing) lane of Roberto where it **sat facing the wrong way**. The fire engine remained stopped for 1 to 5 minutes, **and then Losch reversed it**, backing it up onto Collins without any spotter, and continued backing it up until **the fire engine was sitting across both the number 2 and number 1 lanes of Collins at a right angle, directly in the path of the motorcyclist.** The motorcyclist made an evasive maneuver to the right, but crashed into the passenger side door of the Fire Engine." This fact is supported by Ex.52 (Pope deposition) at 12:20-13:10; 13:21-14:3; 14:12-20; 15:1-4; 19:20-24; 63:8-19; 63:24-64:7; 64:14-19; Ex.53 (L. Turner deposition) 30:25-31:18; 33:7-21; 34:15-35:3; 35:13-16; 37:20-38:6; Ex.62; Ex.54 (R. Turner deposition) at 31:13-32:11; 36:1-8; 36:23- 37:20; Ex.63; Ex.55 (Rhoads deposition) at 33:6-9; 33:16-23; 34:19-35:1; 35:15-18; 50:18-51:5; 128:19-129:2; 130:7-17; 154:13-155:12; Ex.58 (Stein deposition) at 64:8-19; Ex.61 (Peck declaration) at ¶¶12,13, 18 -21).

There being a triable issue of material fact as to what transpired, causation should go to the jury.

Motion is denied as to Issue 4.

**Issue 5:** Plaintiffs cannot establish the elements to support a violation of the California Public Records Act (Govt. Code, Section 6250, et seq.)

Defendant argues because the CHP was the agency authorized to produce the traffic collision report to Plaintiffs, not the City of Orange Police Department—it cannot be liable for Violation of the California Public Records Act---apparently conceding it did not

Exhibit 3
Page 138

turn over the document as requested. However, this argument fails to address the entire cause of action, which suggests there were 12 records requests and not all were complied with. (See Complaint ¶41.)

Indeed, Plaintiff Bardales includes PAMF No. 115 which states, The City of Orange did not produce documents with citizen complaints and other Traffic Engineering records in response to Plaintiffs' CPRA requests. Avina Declaration (Ex.1 to Plaintiff Kneeshaw's Compendium of Exhibits) at ¶¶8, 9; Kneeshaw Compendium at Grauten Depo. Ex.1, Cameron Depo. Ex.3, Allenbach Depo. Ex.2, and Sun Depo Ex. 1).

As Defendant only addressed a part of the cause of action (failure to produce the traffic collision report), and not the failure to produce the other requests, it has not sustained its burden.

Motion is denied as to Issue 5.

**EVIDENTIARY OBJECTIONS:**

*Plaintiff Bardales Evidentiary Objections (ROA 66):*
1-3. Sustain; 4. Overrule. 5. Sustain.

*Plaintiff Bardales' Objection to evidence submitted in reply (ROA 92):* Sustain

*Defendants' Evidentiary Objections (ROA 84) (71 pages worth of objections, and 104 objections):*
1-2. Overrule
2-8. Not material
9-11. Overrule
12.-15. Not material.
16. Overrule
17-18. Not material
19.22. Overrule
23. Sustain
24.30. Overrule
31. Sustain
32-54. Overrule
55. Sustain
56. Overrule
57. Sustain
58.70. Overrule
71. Sustain
72. -78.Overrule
79.-81. Sustain
82.-88. Overrule
89. Sustain
90. Sustain
91. Overrule
92. Not material
93. Overrule
94. Not material
95. -103. Overrule
104. Not material

Plaintiff to give notice.

| 9 | Beck vs. State of California | Demurrer to First Amended Complaint (FAC) |
|---|---|---|
| | 21-01237499 | Tentative Ruling:  Defendants The State Bar of California, Anand Kumar, Eli David Morgenstern, and Joy Nunley's Demurrer to the FAC is SUSTAINED WITHOUT LEAVE TO AMEND. |
| | | The court lacks jurisdiction over the claims asserted in the FAC as they are under the exclusive jurisdiction of the Supreme Court of California.  (*Bollotin v. California State Personnel Bd*. (1955) 131 Cal.App.2d 197, 200 ["A failure, if any, of the State Bar officials to perform their duty in the initiation and conduct of a disciplinary proceeding would not create a cause of action for damages in plaintiff's favor.  The law does not provide in that manner for the enforcement of the performance of duty by public officers.  It does accord to the individual the right to invoke disciplinary action against an attorney in the Supreme Court, upon a proper showing that 'The State Bar has arbitrarily failed or refused to grant a hearing on such specific charges, or has arbitrarily failed or refused, after a hearing, to take appropriate action.'"]; *Obrien v. Jones* (2000) 23 Cal.4th 40, 48 [holding that the Supreme Court of California "retain[s] [its] preexisting powers to regulate and control the attorney admission and disciplinary system, including the State Bar Court, at every step."]; *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1710, as modified on denial of reh'g (Feb. 6, 2008).) |
| | | Moving parties to give notice. |
| 10 | Burke vs. Kamryn Whitney Court Reporting | Demurrer to Complaint |
| | 21-01225035 | Ruling:  *Off Calendar* – no hearing will be held.   Continued to 11-8-2022, Dept. C11 at 2 pm. |
| | | Clerk to give notice. |
| 11 | Johnson vs. General Motors LLC | (1) Demurrer to Complaint (2) Motion to Strike (3) **CMC** |
| | 22-01253766 | Ruling: (1-3) *Off Calendar* as MOOT– no hearing will be held. First Amended Complaint filed, 9-28-22. |
| | | CMC continued to 3-6-2023, Dept. C11, at 8:45 am. |
| | | MP to give notice. |
| 12 | Delgado vs. Suzuki Motor of America | Demurrer to Complaint |
| | 22-01249947 | Ruling:  *Off Calendar* – no hearing will be held.   Defendant Suzuki Motor America, Inc. ("Defendant") demurs to Complaint of Plaintiffs Jose Gerardo Arce Delgado; Jose Martin Arce Delgado; Margarita Virginia Partida; The Estate of Jonathan Partida; Jonathan Partida Soto; Kelcy Soto; Alfredo Lemus Herrera; The Estate of Manuela Ontiveros Pasos; Alfredo Lemus Ontiveros; Andres Lemus Ontiveros; Edgar Lemus Ontiveros; and Cintia Guadalupe Lemus Ontiveros ("Plaintiffs"). |
| | | As an initial matter, the Court notes Defendant has satisfied the meet and confer requirement prior to filing the Demurrer.  A party filing a demurrer is required to meet and confer in person or by telephone with the party who filed the pleading subject to the demurrer and file a declaration stating the means by which the |

Exhibit 3
Page 140

meet and confer took place, pursuant to Code of Civil Procedure Section 430.41. Defense counsel met and conferred with Plaintiffs' counsel by telephone on April 5, 2022.

The Court construes Plaintiffs' failure to oppose the Demurrer as an abandonment of the claims or an admission the Demurrer has merit. (See *Herzberg v. County of Plumas* (2005) 133 Cal. App. 4th 1, 20 [failure to oppose issue raised in demurrer deemed abandonment of the issue].)

Although the Demurrer is **unopposed**, the Court finds Plaintiffs should be given an opportunity to cure the defects in the Complaint that were raised in the Demurrer. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)

Accordingly, Defendant's **unopposed** Demurrer to the Complaint is SUSTAINED with 20 days' leave to amend.

Defendant to give notice.

Exhibit 3
Page 141

**PROOF OF SERVICE**

1

2          I, Joan Randolph, hereby declare: that I am over the age of eighteen years and am not a party

3    to the within above-entitled action, that I am employed in the City and County of San Francisco, that

4    my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

5          On October 13, 2022, I served a copy of:

6    **NOTICE OF RULIING RE: DEFENDANTS THE STATE BAR OF CALIFORNIA,**
     **ANAND KUMAR, ELI DAVID MORGENSTERN, and JOY NUNLEY'S DEMURRER TO**
7    **FIRST AMENDED COMPLAINT**

8    on the parties listed below:
     Justin S. Beck
9    3501 Roselle Street
     Oceanside CA 92056
10   Email: justintimesd@gmail.com
     Pro Per
11

12   ☒    **By first class mail** by placing a true copy thereof in a sealed envelope with postage    thereon

13          fully prepaid and placing the envelope in the office's daily mail processing center for mailing

14          in the United States mail at San Francisco, California.

15   ☐    **By facsimile machine** by personally transmitting a true copy thereof via an electronic

16          facsimile machine to the facsimile number listed below.

17   ☒    **By electronic mail** by personally transmitting a true copy thereof via an electronic mail

18          service connected to the internet, addressed to the email address listed above.

19   ☐    **By UPS** overnight delivery.

20          I declare under penalty of perjury under the laws of the State of California that the foregoing

21   is true and correct.

22          Executed at San Francisco, California on October 13, 2022.

23
                                   /s/ *Joan Randolph*
24                                 Joan Randolph

25

26

27

28

---
Proof of Service                    Exhibit 3                Case No. 30-2021-01237499-CU-PN-CJC
                                    Page 142

# EXHIBIT 4

Exhibit 4
Page 143

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 01/06/2023                    TIME: 09:32:00 AM           DEPT:  C11
JUDICIAL OFFICER PRESIDING: John C. Gastelum
CLERK: H. Bradley
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: J. Hinojosa

CASE NO: **30-2021-01237499-CU-PN-CJC**    CASE INIT.DATE: 12/21/2021
CASE TITLE: **Beck vs. The State Bar of California**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Professional Negligence

EVENT ID/DOCUMENT ID: 73918926
**EVENT TYPE:** Chambers Work

**APPEARANCES**

There are no appearances by any party.

The Court, having been notified by counsel for Plaintiff Justin S. Beck, that this case has been removed to Federal Court, hereby orders this case suspended.  All reporting requirements are vacated.  All future hearings currently set in this department are hereby vacated.

The case is reassigned to the Omnibus Calendar.

The Motion for Preference set for 01/10/2023 at 2:00 PM in Department C11 is vacated.

The Demurrer to Amended Complaint set for 01/17/2023 at 2:00 PM in Department C11 is vacated.

The Motion for Sanctions set for 01/24/2023 at 2:00 PM in Department C11 is vacated.

The Motion to Strike Complaint set for 02/14/2023 at 2:00 PM in Department c11 is vacated.

The Motion for Summary Judgment and/or Adjudication set for 02/14/2023 at 2:00 PM in Department C11 is vacated.

The Motion for Sanctions set for 03/28/2023 at 2:00 PM in Department C11 is vacated.

Court orders Clerk to give notice.

# EXHIBIT 5

Exhibit 5
Page 145

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No.: 8:23-cv-00022-FWS-ADS                   Date: January 12, 2023
Title: Justin S. Beck v. The State Bar of California *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Melissa H. Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: ORDER REMANDING ACTION [1] AND DENYING AS MOOT IFP REQUEST [2]**

The court is in receipt of Plaintiff Justin S. Beck's ("Plaintiff") Notice of Removal and Request to Proceed *In Forma Pauperis*. (Dkts. 1, 2.) The Complaint asserts twelve causes of actions including for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, against various defendants. (*See generally* Dkt. 1.)

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* "The text of § 1441(a) specifically limits the ability to remove to the 'defendant or the defendants,' and contains no language allowing mistakenly omitted parties, wrongly excluded parties, or any other type of non-defendant to remove an action to federal court." *Sharma v. HSI Asset Loan Obligation Tr. 2007-1 by Deutsche Bank Nat'l Tr. Co.*, 23 F.4th 1167, 1170 (9th Cir. 2022). Thus, "[o]nly *defendants* may remove a case to federal court." *Aref v. Holmgren*, 976 F.2d 736, 736 (9th Cir. 1992) (unpub. disp.) (emphasis in original).

In this case, the court observes that the Notice of Removal includes a declaration from Plaintiff stating that he is the "Plaintiff in this action, and in OCSC Case No. 30-2020-01145998." (Dkt. 1 at 6, Beck Decl. ¶ 1.) Thus, Plaintiff may not remove his case to federal

---

**CIVIL MINUTES – GENERAL**                                                            1

Exhibit 5
Page 146

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:23-cv-00022-FWS-ADS                    Date: January 12, 2023
Title: Justin S. Beck v. The State Bar of California *et al.*

court because "[o]nly *defendants* may remove a case to federal court." *Aref*, 976 F.2d at 736
(9th Cir. 1992) (emphasis in original); *see also Sharma*, 23 F.4th at 1170 (a non-defendant may
not remove a case to federal court). Therefore, because Plaintiff may not remove the underlying
action filed in Orange County Superior Court, Case No. 30-2020-01145998, the court concludes
that removal is improper and **REMANDS** the action. The court also **DENIES AS MOOT**
Plaintiff's Request to Proceed *In Forma Pauperis*. The clerk is directed to close this case.

Initials of Deputy Clerk:  mku

_____

# EXHIBIT 6

Exhibit 6
Page 148



# United States District Court
**Central District of California**
# Office of the Clerk

**Cristina M. Squieri Bullock**
Chief Deputy of Administration
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Kiry K. Gray**
District Court Executive / Clerk of Court
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Sara Tse Soo Hoo**
Chief Deputy of Operations
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

January 12, 2023

  Orange County Superior Court – Central Justice Center
  700 Civic Center Drive West
  Santa Ana, CA 92701

Re:  Case Number:  _____8:23−cv−00022−FWS−ADS_____
       Previously Superior Court Case No.  _____30−02021−01237499_____
       Case Name:  _____Justin S. Beck v. The State Bar of California et al_____

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on _____1/12/2023_____, the above−referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to the location shown below. Thank you for your cooperation.

United States Courthouse
255 East Temple Street, Suite TS134
Los Angeles, CA 90012

Respectfully,

Clerk, U.S. District Court

By:  _/s/ Jenny Lam_
       Deputy Clerk
       (Jenny_Lam@cacd.uscourts.gov)

*Encls.*
*cc: Counsel of record*

Receipt is acknowledged of the documents described above.

Clerk, Superior Court

By: _____

_____
Date

_____
Deputy Clerk

G−17 (02/19)   LETTER OF TRANSMITTAL − REMAND TO SUPERIOR COURT

Exhibit 6
Page 145

# EXHIBIT 7

Exhibit 7
Page 150

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Justin S. Beck

v.                                    PLAINTIFF(S)

Kenneth Catanzarite, et al.

                                      DEFENDANT(S)

| CASE NUMBER |
| --- |
| 8:23-cv-00018-JVS-DFM |

**ORDER ON REQUEST TO PROCEED**
***IN FORMA PAUPERIS***
**(NON-PRISONER CASE)**

The Court has reviewed the Request to Proceed *In Forma Pauperis* (the "Request") and the documents submitted with it. On the question of indigency, the Court finds that the party who filed the Request:

☐ is not able to pay the filing fees.   ☒ is able to pay the filing fees.

☐ has not submitted enough information for the Court to tell if the filer is able to pay the filing fees. This is what is missing:

**IT IS THEREFORE ORDERED** that:

☐ The Request is GRANTED.

☐ Ruling on the Request is POSTPONED for 30 days so that the filer may provide additional information.

☐ The Request is DENIED because the filer has the ability to pay.

☒ As explained in the attached statement, the Request is DENIED because:

☒ The District Court lacks ☐ subject matter jurisdiction ☒ removal jurisdiction.
☐ The action is frivolous or malicious.
☐ The action fails to state a claim upon which relief may be granted.
☐ The action seeks monetary relief against defendant(s) immune from such relief.

**IT IS FURTHER ORDERED** that:

☐ Within 30 days of the date of this Order, the filer must do the following:

If the filer does not comply with these instructions within 30 days, this case will be DISMISSED without prejudice.

☐ As explained in the attached statement, because it is absolutely clear that the deficiencies in the complaint cannot be cured by amendment, this case is hereby DISMISSED ☐ WITHOUT PREJUDICE ☐ WITH PREJUDICE.

☒ This case is REMANDED to state court as explained in the attached statement.

January 25, 2023
_____
Date

_____
United States District Judge

The court is in receipt of Plaintiff Justin S. Beck's ("Plaintiff") Notice of Removal and Request to Proceed In Forma Pauperis (Dkts. 1, 2), as well as his First Amended Complaint (Dkt. 7). The First Amended Complaint asserts seven causes of actions, including for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., against various defendants. (See generally Dkt. 7.)

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Id. "The text of § 1441(a) specifically limits the ability to remove to the 'defendant or the defendants,' and contains no language allowing mistakenly omitted parties, wrongly excluded parties, or any other type of non-defendant to remove an action to federal court." Sharma v. HSI Asset Loan Obligation Tr. 2007-1 by Deutsche Bank Nat'l Tr. Co., 23 F.4th 1167, 1170 (9th Cir. 2022). Thus, "[o]nly defendants may remove a case to federal court." Aref v. Holmgren, 976 F.2d 736, 736 (9th Cir. 1992) (unpub. disp.) (emphasis in original).

It is apparent from the Notice of Removal that Plaintiff is the Plaintiff in this action, as well as in Orange County Superior Court Case Nos. 30-2020- 01145998 and 30-2021-01237499. (Dkt. 1 at 1-2, 5-6; Dkt. 3 at 1-2, 5.) Plaintiff may not remove his case to federal court because "[o]nly defendants may remove a case to federal court." Aref, 976 F.2d at 736 (9th Cir. 1992) (emphasis in original); see also Sharma, 23 F.4th at 1170 (a non-defendant may not remove a case to federal court). Therefore, the Court concludes that removal is improper and REMANDS the action to the Orange County Superior Court.

Exhibit 7
Page 152

*(attach additional pages if necessary)*

# EXHIBIT 8

Exhibit 8
Page 153



# United States District Court
### Central District of California
## Office of the Clerk

**Cristina M. Squieri Bullock**
Chief Deputy of Administration
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Kiry K. Gray**
District Court Executive / Clerk of Court
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Sara Tse Soo Hoo**
Chief Deputy of Operations
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

January 26, 2023

Superior Court of CA County of Orange, Central Justice Center
700 Civic Center Drive West
Santa Ana, 92701

Re:  Case Number: _____ 8:23−cv−00018−JVS−DFM _____
   Previously Superior Court Case No. _____ 30−02020−01145998−CU−BT−CJC _____
   Case Name: _____ Justin S. Beck et al v. Kenneth Catanzarite et al _____

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on _____ 01/25/2023 _____, the above−referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to the location shown below. Thank you for your cooperation.

United States Courthouse
411 West Fourth St., Room 1053
Santa Ana, CA 92701−4516

Respectfully,

Clerk, U.S. District Court

By: _/s/ Lori Muraoka_
   Deputy Clerk
   lori_muraoka@cacd.uscourts.gov

*Encls.*
*cc: Counsel of record*

Receipt is acknowledged of the documents described above.

Clerk, Superior Court

By: _____

_____
Date

_____
Deputy Clerk

G–17 (02/19)  LETTER OF TRANSMITTAL REMAND TO SUPERIOR COURT

Exhibit 8
Page 154

# EXHIBIT 9

Exhibit 9
Page 155

1  JUSTIN S. BECK
2  3501 ROSELLE ST.
   OCEANSIDE, CA 92056
3  760-449-2509
4  justintimesd@gmail.com
   *In Pro Per*
5
6

**FILED**

Jan 30 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ melodyq          DEPUTY

7            IN THE UNITED STATES DISTRICT COURT

8                        FOR THE

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  JUSTIN S. BECK,                      Case No.:  **'23 CV 0164 MMA DEB**

12            Plaintiff,                 **Judge Assigned:**

13       vs.                             COMPLAINT FOR DAMAGES &
                                         INJUNCTIVE RELIEF
14
                                         [COUNT I]    **18 U.S.C. § 1962(c)**
15  STATE OF CALIFORNIA; THE STATE       (RICO) RACKETEERING
    BAR OF CALIFORNIA; SUZANNE
16  GRANDT; RUBEN DURAN; ELI DAVID       [COUNT II]   **18 U.S.C. § 1962(c)**
    MORGENSTERN; KENNETH                 (RICO) RACKETEERING
17  CATANZARITE,
                                         [COUNT III]   **18 U.S.C. § 1962(a)**
18                                       (RICO) INVESTING PROCEEDS OF
           Defendants,                   RACKETEERING IN AN ENTERPRISE
19
                                         [COUNT IV]   **18 U.S.C. § 1962(b)**
20  UNITED STATES ATTORNEY GENERAL;      (RICO) ACQUIRED INTERESTS IN OR
    UNITED STATES OF AMERICA             CONTROL OF AN ENTERPRISE
21                                       THROUGH A PATTERN OF
                                         RACKETEERING ACTIVITY
22           Nominal Defendants
                                         [COUNT V]    **18 U.S.C. § 1962(b)**
23                                       (RICO) ACQUIRED INTERESTS IN OR
                                         CONTROL OF AN ENTERPRISE
24                                       THROUGH A PATTERN OF
                                         RACKETEERING ACTIVITY
25
                                         [COUNT VI]   **42 U.S.C. § 1983**
26                                       FOURTEENTH AMENDMENT—DUE
                                         PROCESS—STATE CREATED DANGER
27
                                         [COUNT VII]   **42 U.S.C. § 1983**
28                                       FIRST AMENDMENT—"CITIZEN"
                                         PLAINTIFF

                            1                        23-CV-00018-JVS-DFM

Exhibit 9
Page 156

COMPLAINT

Plaintiff JUSTIN S. BECK ("plaintiff" or "Beck") for his complaint against defendants STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; SUZANNE GRANDT; ELI DAVID MORGENSTERN; KENNETH CATANZARITE; (together "defendants"); and nominal defendants UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA; alleges as follows:

SUMMARY

1. Plaintiff is an entrepreneur and executive who derives his money, business, and property by way of founding companies, mergers, and acquisitions.

2. Defendants have engaged in an unlawful, fraudulent scheme against plaintiff involving overt acts by wire and mail designed to convert his money, business, and property, harass and vex plaintiff, or to cover up the scheme under color of state law.

3. The fraudulent scheme targeting the plaintiff's money, business and property involves malicious prosecution of various lawsuits lacking objective probable cause.

4. The fraudulent scheme is predicated upon and continued through interests or control over the California judiciary acquired through a pattern of racketeering activity.

5. The fraudulent scheme involves ongoing, extra-judicial acts designed to harm plaintiff, his reputation, to willfully damage the value of his material financial interests, to prevent plaintiff from life, liberty, and happiness, and to restrain plaintiff from achieving fair and neutral adjudication of his genuine claims on their merits.

6. Plaintiff has been actually damaged in his business, property, and person, including through violation of his clearly established, federally protected constitutional rights.

7. Plaintiff has further been damaged in his prospective money, business and property, and his right to be free of impairment from attorney schemes to defraud him.

8. Plaintiff seeks his damages, treble damages, punitive damages, and injunctive relief. Business and property damage includes $32.67 million in stock of one issuer in a merger, $5.67 million in another, and career damage for not less than 25 years.

9. Plaintiff seeks United States intervention against The State Bar of California for cause.

23-CV-00018-JVS-DFM

Exhibit 9
Page 157

<center>HISTORY OF THE STATE BAR OF CALIFORNIA</center>

10. According to Wikipedia on January 14, 2022, "The State Bar of California is California's official attorney licensing agency.[2] It is responsible for managing the admission of lawyers to the practice of law, investigating complaints of professional misconduct, prescribing appropriate discipline, accepting attorney-member fees, and financially distributing sums paid through attorney trust accounts to fund nonprofit legal entities. It is directly responsible to the Supreme Court of California, however, its Trustees are now appointed by the Supreme Court, the California Legislature, and Governor of California.[3] All attorney admissions are issued as recommendations of the State Bar, which are then routinely ratified by the Supreme Court.[4] Attorney discipline is handled by the State Bar Office of Chief Trial Counsel, which acts as prosecutor before the State Bar Court of California.[5]"

11. For all times relevant, THE STATE BAR OF CALIFORNIA was controlled by active market participants in regulation of active market participants after 2015.

12. For all times relevant, THE STATE BAR OF CALIFORNIA lacked active supervision by STATE OF CALIFORNIA after 2015 as defined by antitrust law.

<center>JURISDICTION AND VENUE</center>

13. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 under the Racketeer Influenced Corrupt Organizations Act ("RICO") for 18 § 1962(a)-(d) claims.

14. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 15 for private right of action for antitrust violations under the Sherman Act and Clayton Act.

15. This Court has subject matter jurisdiction due to a compromised judicial system in California under 15 U.S.C. § 1 and *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015).

16. This Court has original jurisdiction over constitutional claims under 42 U.S.C. § 1983 as being federal question under 28 U.S.C. § 1331 where each arise from abuse of control over the California state judicial system by The State Bar of California.

<center>3</center>                                             23-CV-00018-JVS-DFM

Exhibit 9
Page 158

17. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because defendants do business in this district and are each subject to personal jurisdiction in this district, where process may be served in any judicial district of the United States per 18 U.S.C. § 1965(b), when required by the ends of justice. Nationwide service of process confers personal jurisdiction over a defendant in any judicial district where each defendant has contacts with the United States.

<div align="center">PARTY IDENTIFICATION</div>

18. Plaintiff JUSTIN S. BECK ("Beck" or "plaintiff") is an individual United States citizen, entrepreneur, and member of the public among the protected class of citizenry lacking equal protection under the law by The State Bar of California and California judicial system according to the Fourteenth Amendment of the United States Constitution. Plaintiff is a person with a principal place of residence and business at 3501 Roselle St., Oceanside, California, 92056. Plaintiff beneficially owned or controlled 8,435,000 of CTI stock for all times relevant: 4,935,000 common shares and 3,500,000 Preferred Series A shares. Plaintiff had a right to own 8,435,000 shares individually in CTI's agreed merger with Western Troy Capital Resources on the senior "NEO" Stock Exchange. In March 2021, Plaintiff owned or had rights to 4,549,609 Subordinate Voting Shares in Contakt World Technologies Corp. ("CW"), 45,496 Compressed Shares in CW equivalent to 4,549,600 Subordinate Voting Shares in CW, 1,800,000 Subordinate Voting Share Warrants with a strike price of $.10 CAD and public valuation of $.80 CAD in March 2021 per Subordinate Voting Share, and a right to warrants to acquire an additional 2.5% of shares upon listing CW on a senior stock exchange like NASDAQ. Plaintiff developed certain intellectual property, provisional patents, USPTO applications, and software for healthcare between 2020 and 2021 during which National Health Expenditure grew 2.7% to $4.3 trillion and accounted for 18.3% of Gross Domestic Product in the United States. Plaintiff hosted and co-produced "Truth in Health" with iHeartMedia, among the top podcasts in the United States at that time, earning (2) "AVA Awards" and a "Webby Award" nomination. Before March 2021, plaintiff's company and technology received Honorable Mention as a "World

<div align="center">4</div>

<div align="right">23-CV-00018-JVS-DFM</div>

Exhibit 9
Page 159

Changing Idea" by Fast Company. Before March 2021, Plaintiff's company and technology received a Gold "BIG Innovation Award" as well as (2) "Stevie Awards" in American business. Plaintiff is a layman, non-attorney, never admitted to any bar.

19. Defendant THE STATE OF CALIFORNIA ("State"), a sovereign entity among the United States and culpable person, is subject of plaintiff's denied government claims, and vested rights to sue. State is liable for itself, nonsovereign The State Bar of California, public employees, elected officials, and its court officers under Government Claims Act as provided by statute, including but not limited to those specified in this complaint. The economy for the State is the largest in the United States, with a $3.63 trillion gross state product as of 2022, making it the largest, global sub-national economy.

20. Defendant THE STATE BAR OF CALIFORNIA ("State Bar"), a non-sovereign public entity controlled by active market participants in regulation for all times relevant, and culpable person, is subject of plaintiff's denied government claims, and vested right to sue. The State Bar of California and those working for it or authorized by it cause liability to State on principles of *respondeat superior*, as provided by statute, and because State has assigned its sovereignty to active market participants in regulation. State Bar is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

21. Defendant KENNETH CATANZARITE, ESQ. ("KJC"), an individual and culpable person, is an attorney established and carried on by THE STATE BAR OF CALIFORNIA, with a principal place of business being 2331 W. Lincoln Ave., Anaheim, California, 92801 with SBN #113750. KJC is an enterprise engaged in, or whose activities affect, interstate commerce.

22. Defendant SUZANNE GRANDT ("Grandt"), an individual and culpable person, is an attorney established and carried on by THE STATE BAR OF CALIFORNIA, with a principal place of business being 180 Howard Street, San Francisco, California 94105 with SBN #304794. Grandt is Assistant General Counsel within the Office of General Counsel of State Bar ("OGC"). OGC is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

Exhibit 9
Page 160

23. Defendant RUBEN DURAN ("Duran"), an individual and culpable person, is an attorney established and carried on by THE STATE BAR OF CALIFORNIA, with a principal place of business being 2855 E. Guasti Road, Ontario, California with SBN #197780. Duran is Chairman of the Board of Trustees for State Bar ("BOT"). BOT is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

24. Defendant ELI DAVID MORGENSTERN ("Morgenstern"), an individual and culpable person, is an attorney established and carried on by THE STATE BAR OF CALIFORNIA, with a principal place of business being 845 S. Figueroa, Los Angeles, 90017 with SBN #190560. Morgenstern is Senior Trial Counsel within Office of Chief Trial Counsel of State Bar ("OCTC"). OCTC is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

25. Defendant UNITED STATES ATTORNEY GENERAL ("USAG") has a duty to the United States of America, and to all citizens of the United States, amidst $3.63 trillion in interstate commerce adversely affected by the conduct at issue.

26. Defendant UNITED STATES OF AMERICA ("USA") is a sovereign country which has a duty to all citizens of USA, and to each of its states including State of California, amidst $3.63 trillion in interstate commerce adversely affected by the conduct at issue. If State refuses, USA has a duty to all persons harmed by State Bar through reverse incorporation (14th into 5th Amendment to U.S. Constitution).

## RACKETEERING ACTIVITY AT ISSUE

**27.**            **MAIL FRAUD – 18 U.S.C. § 1341**

"There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited)." [DOJ Archives]

6                         23-CV-00018-JVS-DFM

Exhibit 9
Page 161

**28.**                    **WIRE FRAUD – 18 U.S.C. § 1343**

"The elements of wire fraud under Section 1343 directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (*citing United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994) (wire fraud is identical to mail fraud statute except that it speaks of communications transmitted by wire); *see also, e.g.*, *United States v. Profit*, 49 F.3d 404, 406 n. 1 (8th Cir.) (the four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used) (*citing* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1341 (West 1994)), *cert. denied*, 115 S.Ct. 2289 (1995); *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994) (two elements comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme); *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994) (essential elements of wire fraud are: (1) a scheme to defraud and (2) the use of, or causing the use of, interstate wire communications to execute the scheme), *cert. denied*, 115 S.Ct. 193 (1995); *United States v. Cassiere*, 4 F.3d 1006 (1st Cir. 1993) (to prove wire fraud government must show (1) scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in scheme with intent to defraud, and (3) use of interstate wire communications in furtherance of scheme); *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.").

29. More succinctly here in the 9th Circuit: "Criminal mail and wire fraud involves: (1) a scheme based on an intent to defraud; and (2) the use of the mails or wires to further that scheme." *United States v. Weaver*, 860 F. 3d 90, 94 (2nd Cir. 2017); *Bui v. Nguyen*, 712 Fed. Appx. 606, 609 (9th Cir. 2017)

23-CV-00018-JVS-DFM

Exhibit 9
Page 162

OPEN ENDED AND CLOSED-ENDED STATE BAR SCHEMES TO DEFRAUD

30. Racketeering activity in this case involves open-ended and closed-ended schemes with similar perpetrators among The State Bar of California enterprise.

31. Racketeering activity in this case involves similar methods of using protection of public entity The State Bar of California, materially false statements of The State Bar of California Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel actors by mail and wire, and the use of California's judicial system supported by mail and wire communications in furtherance of the schemes.

32. Racketeering activity in this case involves similar beneficiaries being the perpetrators engaged in overt acts and The State Bar of California enterprise itself.

33. Racketeering activity in this case involves similar victims being the non-attorney public, issuers of securities, and insurance carriers who are unwillingly forced to underwrite The State Bar of California enterprise schemes to defraud nationally.

34. Racketeering activity in this case involves similar victims being the United States itself, where The State Bar of California enterprise is the only one controlling an entire judicial system and $3.63 trillion in U.S. GDP, and further admitting members of The State Bar of California enterprise *pro hac vice* to defraud citizens and businesses of their money and property in other states.

35. Racketeering activity in this case is supported or driven by conspiracy among The State Bar of California enterprise and coerced persons, adverse representation of parties before the same tribunal or in the same or similar matters to monopolize due process rights, assuming the role of "counsel" for inanimate entities through the exculpation of conflict waivers among The State Bar of California enterprise and coerced persons, disregard of conflicts of interest policies necessary for a sustainable democracy, and general disregard of public interest in favor The State Bar of California enterprise actors with malice.

36. Attorney trust accounts are used to launder the undue profits of attorneys in most instances.

37. Racketeering activity in this case shows an acute threat of continuing by State Bar, CLC, KJC, Duran, Morgenstern, and Grandt.

| | |
|---|---|
| 1 | <center>PATTERN OF RACKETEERING ACTIVITY</center> |
| 2 | 38. "The heart of any RICO complaint is the allegation of a pattern of racketeering." *Agency* |
| 3 | *Holding Corp. v. Mulley-duff & Assoc., Inc*. 483 U.S. 143, 154 (l 987). |
| 4 | 39. A "pattern of racketeering activity" under 18 U.S.C. § 1961(5) requires at least two acts of |
| 5 | racketeering activity, one of which occurred after the effective date of this chapter and the |
| 6 | last of which occurred within ten years after the commission of a prior act of racketeering |
| 7 | activity. |
| 8 | 40. Using the postal mail and wire communications with intent to defraud in 2007, The State |
| 9 | Bar of California enterprise's "Catanzarite did not tell the Court that his client…deeded his |
| 10 | home to Catanzarite [who] took the property to pay for his fees, but did not tell the Court |
| 11 | about this…'Given the gravity of Catanzarite's non-disclosure, the court will deny all fees |
| 12 | to Catanzarite for legal services." [**Exhibit 35, p. 4**] |
| 13 | 41. Using the postal mail and wire communications with intent to defraud in 2011, The State |
| 14 | Bar of California enterprise's "Catanzarite violated court rules by making statements to the |
| 15 | court without any proof…Catanzarite does not care about the truth in making statements |
| 16 | to the Court." [**Exhibit 35, p. 4**] |
| 17 | 42. Using the postal mail and wire communications with intent to defraud in 2013, The State |
| 18 | Bar of California enterprise's Catanzarite "was punished 'for saying one thing, then |
| 19 | switching his story. The court stated that Catanzarite's case was a "sham."' [**Exhibit 35,** |
| 20 | **p. 4**] |
| 21 | 43. From 2010 through 2021 using postal mail letters and wire communications with intent to |
| 22 | defraud in favor of The State Bar of California enterprise, "State Bar closed more cases |
| 23 | through nonpublic measures—a total of 22,600, or 10 percent of all case closures—than it |
| 24 | did through public discipline, which totaled 11,200, or 5 percent of all case closures. |
| 25 | During the same period, more than 700 attorneys each had four or more cases that the State |
| 26 | Bar closed through nonpublic measures." [**Exhibit 34**]. |
| 27 | 44. On July 20, 2017, addressing The State Bar of California enterprise and OGC enterprise |
| 28 | constituents Suzanne Grandt and Robert Retana, a federal judge says: |

<center>9</center> <div align="right">23-CV-00018-JVS-DFM</div>

Exhibit 9
Page 164

1   "THE COURT: Get the State Bar to look into [Grandt's] conduct. Maybe
2   my committee here in this Court, the committee that we have here for admitting to
3   practice in this Court ought to look into Ms. Grandt's conduct. Maybe we'll have
    two investigations going at once."

4   "THE COURT: And next time the State Bar will be a little bit more honest
5   with the poor federal judge…I'm making this order because Ms. Grandt told me
6   something that wasn't true, and I relied on it." [**Exhibit 2**]

7   45. On Friday, September 22, 2017, it was announced by United States Department of Justice
8       that "Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in
9       Federal Prison for Racketeering Offense Stemming from Bribery Scheme to 'Fix' Criminal
10      Cases and Traffic Charges" after pleading guilty to one count of conspiring to violate the
11      federal Racketeer Influenced and Corrupt Organizations Act (RICO). [**Exhibit 13**].

12  46. Reviewing The State Bar of California enterprise's Thomas V. Girardi's corruption of the
13      California judiciary as well as compromise of The State Bar of California enterprise by
14      active market participants, an "investigation began on August 26, 2014 in response to a
15      July 31, 2014 Report of Improper Activity from the Bar's Chief Trial Counsel" citing a
16      "disturbing lack of transparency at the highest levels within the organization." [**Exhibit 1**].

17  47. Using the wire with intent to defraud on January 24, 2022 with actual knowledge of
18      [**Exhibit 1**], "The State Bar of California's Board of Trustees announced today that it has
19      been conducting an additional investigation into whether the State Bar's handling of past
20      discipline complaints against former licensee Thomas V. Girardi was affected by Girardi's
21      connections to or influence at the State Bar."

22  48. On November 2, 2022, Judge Thomas M. Durkin in United States District Court for the
23      Northern District of Illinois Eastern Division *In Re Lion Air Flight JT 610 Crash*, Case No.
24      18 C 7686 wrote the "Court alerted the U.S. Attorney for this district to the facts of this
25      case when this motion was filed because Girardi's conduct is unquestionably criminal" and
26      a "stain on the legal profession." [**Exhibit 42**]

27  49. Using the wire with intent to defraud on November 3, 2022, an "Open Letter Regarding
28      the State Bar's Thomas V. Girardi Disclosure" was delivered by The State Bar of

                                    10                    23-CV-00018-JVS-DFM

Exhibit 9
Page 165

1  California enterprise citing "irreparable harm to hundreds of his clients. We can never
2  allow something like this to happen again," said Duran. "Over the past 40 years, the State
3  Bar opened 205 [notices of injury and theft we enabled for] Girardi [and used the wire and
4  postal mail to close or 'abate' them]. Of the 205 [notices of injury and theft], approximately
5  120 involved allegations related to client trust [wire fraud]." [plaintiff edits]

50. Using the wire and postal mail with intent to defraud, Girardi of The State Bar of California
enterprise obtained a $500 million fraudulent judgment pertaining to the Dole Fruit
Company. (*In Re Girardi*, 611 Fed.3d 1027, 1039-1040)

51. Using the wire and postal mail with intent to defraud, Girardi of The State Bar of California
enterprise stole more than $120 million in connection with the Gutierrez class action.
(*Guttierez v. Girardi*, (2011) 194 Cal.App.4th 925).

52. On December 1, 2015, Orange County's Stephen Young Kang of The State Bar of
California enterprise was indicted on 25-counts including wire fraud and money
laundering. [**Exhibit 51**].

53. On September 21, 2018, after being carried on for nearly three years after a two- count
wire fraud conviction, The State Bar of California enterprise disbarred Stephen Young
Kang. [**Exhibit 52**].

54. "Catanzarite Law Corporation, Kenneth J. Catanzarite and Tim J. O'Keefe for Plaintiffs
and Appellants." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*, No. B285691, (Cal.
Ct. App. Nov. 29, 2018) "The trial court [found] finding that the amended complaint was
a "sham" pleading.[] Was it? Yes. We agree with the trial court that Corzo's amended
complaint was a sham pleading." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*,
No. B285691, 2 (Cal. Ct. App. Nov. 29, 2018)

55. Using the postal mail and wire communications with intent to defraud Bank of America,
"DENISE PINKERTON, individually, and as attorney in fact for Roger Root" appeared
with Kenneth Catanzarite and Catanzarite Law Corporation as counsel. *Pinkerton v. Bank
of Am., N.A.*, Case No. 5:19-cv-374-Oc-32PRL, (M.D. Fla. Nov. 26, 2019)

11                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 166

56. On October 4, 2022, Matthew Charles Elstein of The State Bar of California enterprise "Sentenced to More than 3 Years in Prison for Conning Clients via Sham Court Documents" after he "pleaded guilty to one count of wire fraud" in November 2021. [**Exhibit 81**].

57. On December 5, 2022, a Los Angeles Times article announces that Michael Avenatti of The State Bar of California enterprise "pled guilty to four counts of wire fraud" in Orange County. [**Exhibit 83**]

58. On June 16, 2020, using "Certified Mail Return Receipt" to OCTC, a "Report of Kenneth J. Catanzarite" cites a complaint filed "on behalf of 13,800 plus adversely affected investors" [**Exhibit 31, pp. 10-14**] without disclosing that Mr. Carlson testified that he did not believe he had suffered any damages, nor was he seeking an attorney, when Mr. Catanzarite visited him at his home. 9 putative class actions were filed on his behalf anyway by Kenneth Catanzarite and Catanzarite Law Corporation, and the United States Securities Exchange Commission has wasted resources on this scheme.

59. On March 9, 2022, the 11th Circuit Court of Appeals concludes the reality of Mr. Catanzarite's scheme in *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, (11th Cir. Mar. 9, 2022) affirming sanctions against "Catanzarite for violating a preliminary injunction that barred "the commencement of any further actions under the same or similar facts or circumstances to" lawsuits he had filed against bankruptcy creditors." *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 1 (11 th Cir. Mar. 9, 2022) "Catanzarite, an attorney licensed in California and admitted to appear *pro hac vice* in the bankruptcy court, filed adversary complaints against the Daymark companies for Richard Carlson" *(Id. at p. 2)* and "bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the Carlson plaintiffs, *see* Fed. R. Civ. P. 65(d)(2 )(B), violated the injunction by filing a civil action and lis pendens" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 3 (11 th Cir. Mar. 9, 2022) "and "the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing false and misleading

23-CV-00018-JVS-DFM

Exhibit 9
Page 167

statements" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 3-4 (11 th Cir. Mar. 9, 2022)

<u>INJURY PRODUCING, OVERT ACTS OF RACKETEERING</u>

60. **[OVERT ACT]**: For Beck, all was going well with his career until Catanzarite filed a complaint using the wire in Orange County Superior Court, with intent to defraud on 9/14/2018 at 12:36:59 PM in September 2018 for Denise Pinkerton with actual knowledge it was false. Pinkerton claimed to be acting as attorney in fact for Root, individually and as successor in interest to the claims of his deceased spouse (Sharon Root). The complaint alleged the Roots owned common stock in a company called Mobile Farming Systems, Inc. ("MFS") and that the lawsuit was also a shareholder derivative action on behalf of MFS." ("Pinkerton Action") Roger Root was not a shareholder of MFS, and MFS had been defunct for years. Roger Root's company, Jolly Roger, Inc. or Jolly Rogers Investments, Inc. had been offered shares in a company called Cultivation Technologies, Inc. but declined to purchase shares in 2015.

61. Parties witnessing this overt act include Clarissa Bustamante, Deputy Clerk, Orange County Superior Court, Judge Geoffrey T. Glass, and all named defendants.

62. **[OVERT ACT]** Overtly using the wire on Thursday, October 4, 2018 at 7:32AM PDT, with intent to defraud plaintiff, Kenneth Catanzarite did message from the address kcatanzarite@catanzarite.com       Samuel   Y.   Edgerton,   III   at   the   address sedgerton@fmglaw.com with the subject line: "Re: CTI Financial Information and settlement offer in the Root Matter (Privileged)" as follows:

Exhibit 9
Page 168

On Oct 4, 2018, at 7:32 AM, Kenneth Catanzarite <kcatanzarite@catanzarite.com> wrote:

Sam: Thanks for the time yesterday I reviewed your proposal with Mr. Root's power holder. Obviously, you and the directors and officers are working from a fully informed position with all the financial information. Keep in mind that what we demand in settlement come is the main from the Founders who from our perspective should be more than willing to put this behind them. I have reviewed the matter with my client and our response is as follows:

1. The founders collectively will deliver 10,000,000 Founders shares to Root along with whatever proportionate rights to other shares they obtained as a result of that ownership. In other words they will convey as well any stock, options, warrants and/or convertible note rights and interests to Root in proportion to 10 million to the 23 million shares issued. The founders should be willing to do this because if as you say the company has no value then they should be more than wiling to convey these shares. It allows them to retain in our view 13 million shares and rights that they bought for $13,000 and had no right to in the first place. And of course conveying the 10 million shares are shares they paid only $10,000 for in full.

2. Such securities delivery to Root shall be lien free and coupled with a representation and warranty by the conveying defendant and CTI that the same are validly issued and acknowledge the transfer.

3. The Defendants will pay $600,000 to Root payable $200,000 now and the balance of $400,000 over 5 years at 8% fully amortized. Secured by the remaining 13 million Founders shares. Again they paid only $13,000 for these shares.

4. Root's designee gets a seat on the CTI board.

5. Mutual releases.

6. Confidentially.

7. Note that if we settle this among the Founders as a group they can agree to make these payments and CTI does not book this as a liability.

8. Carve out for New Body MD claims against those named defendants.

This offer shall remain open until the close of business on Friday October 5 whereupon the same if not unconditionally accepted is withdrawn.

Ken

14                                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 169

63. **[OVERT ACT]** Overtly using the Business Wire press release service and wire with intent to defraud, which was distributed further by Associated Press, on October 4, 2018 at 7:07AM with parties to the communication being any internet user:

**Orange County-Based Catanzarite Law Corporation Files a Lawsuit against Cultivation Technologies, Inc. Contesting Stock Ownership, Breaches of Fiduciary Duty and Director and Officer Misconduct**

ANAHEIM, Calif.--(BUSINESS WIRE)--Oct 4, 2018--On September 14, 2018, Catanzarite Law Corporation filed a lawsuit against Cultivation Technologies, Inc. ("CTI"), its shareholders, directors, officers and others. The matter styled *Denise Pinkerton, an individual as attorney in fact for Roger D. Root, et al. vs. Cultivation Technologies, Inc., et al.* was filed in the Orange County Superior Court as Case No. 30-2018 01018922. A copy of the complaint can be accessed at www.ctilitigation.com.

The complaint asserts claims on behalf of investor Roger Root, derivatively on behalf of Mobile Farming Systems, Inc. ("MFS"). Root, a resident of Florida, invested over $400,000 in MFS stock and was told by MFS representatives, including directors and officers Richard Probst, Richard O'Connor and Amy Cooper, that MFS owned CTI as a subsidiary. The lawsuit contends that MFS is the sole shareholder of CTI as of March 30, 2015 and that CTI directors and officers breached fiduciary duties to MFS as its shareholder including that CTI stock sales and other actions on and after June 30, 2015 are improper. Root also asserts individual claims for securities fraud. For further information, contact Catanzarite Law Corporation.

CONTACT: Catanzarite Law Corporation Timothy J. O'Keefe

Telephone: (714) 520-5544 Facsimile: (714) 520-0680

Email: tokeefe@catanzarite.com

Exhibit 9
Page 170

64. **[OVERT ACT]** Overtly using the wire and Orange County Superior Court, with intent to
defraud, on December 13, 2018, Catanzarite dismissed Porche, and in early January it
dismissed Mobin, two of the primary wrongdoers named in the Pinkerton Action. Parties
to the communications include all litigants, Orange County Superior Court clerks, and any
person accessing the court records from within or outside the State of California.

65. **[OVERT ACT]** Overtly using the wire, with intent to defraud, KJC did make contact with
represented and unrepresented parties directly and indirectly and did compromise the
fraudulent derivative Pinkerton Action without Court approval in violation of F. R. Civ. P.
23.1(c) and California decisional laws intended to prevent collusion. KJC actually knew
that Roger Root didn't own shares in MFS nor CTI, but he didn't care because he was
protected by State Bar just like Thomas V. Girardi and could use the courts as he pleased.

66. **[OVERT ACT]** Overtly using the wire on December 21, 2018, after actual MFS counsel
Kenneth Watnick was retained to defend the fraudulent derivative action filed by
Pinkerton, KJC did deliver approximately 5,000 discovery requests *against* O'Connor,
Cooper, with about 500 *against* MFS derivatively seeking private information.

67. **[OVERT ACT]** Overtly using the wire, with intent to defraud after KJC made direct or
indirect contact with unrepresented and represented parties to compromise the fraudulent
derivative Pinkerton Action, then Catanzarite set in motion his corporate takeover scheme
using the signatures and property of coerced defendants to the Pinkerton Action.

68. **[OVERT ACT]** Overtly using the wire and the threat of fear to obtain signatures and
property under color of official right, with intent to defraud using Orange County Superior
Court and protection of State Bar, on January 4, 2019, CLC and KJC dismissed Scudder
and Aroha from the Pinkerton Action without Court approval.

69. **[OVERT ACT]** Overtly using the wire in response to a motion for security filed by MFS
to post bond concerning the fraudulent derivative action on January 7, 2019, KJC did
revive the entity Jolly Rogers Investments, Inc. seeking to conceal a lack of standing in
the Pinkerton Action after the entity had been dissolved from May 2015 through January

Exhibit 9
Page 171

17, 2019. Parties to the communication include the Secretary of State of Washington as well as any internet user.

70. **[OVERT ACT]** Overtly using the wire and the threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court and protection of State Bar, on January 22, 2019, KJC dismissed O'Connor, TGAP Holdings, LLC, and Scott Unfug.

71. **[OVERT ACT]** Overtly using the wire and threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court and protection of State Bar, KJC did, the following day, Catanzarite dismissed Cooper and Higgerson on January 23, 2019.

72. **[OVERT ACT]** Overtly using the wire and threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court and protection of State Bar, KJC did direct, and it was directed, that O'Connor and Cooper used their MFS shareholder votes to reconstitute the MFS board of directors. MFS hired KJC as corporate counsel under the threat of fear.

73. **[OVERT ACT]** Overtly using the wire and threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court, KJC did direct, and it was directed, on January 23, 2019, O'Connor executed a unanimous written consent of the sole shareholder of CTI (2019 Consent), stating he was CEO of MFS and had authority to act by unanimous written consent without a meeting to adopt several resolutions. The first resolution stated MFS was the sole shareholder of CTI and O'Connor, in his capacity as CEO, could issue the written consent stating MFS fully paid for 28,000,000 shares of CTI common stock in March 2015. The next resolution stated the Amended Acts contained the false contention MFS "had not fully paid for all of its stock [was] facilitated by the wrongful and self-serving conduct" of Beck. Accordingly, all actions, issuance of shares, and promisors were void or voidable acts. In essence, the written consent sought to unwind three years of CTI's corporate acts.

17                                                23-CV-00018-JVS-DFM

Exhibit 9
Page 172

74. O'Connor participated in at least 158 securities transactions involving CTI shares before January 23, 2019 in an authorized capacity for CTI, personally, or through TGAP Holdings, LLC to sell CTI shares for personal profits. KJC and O'Connor knew the 2019 Consent was fraudulent, but KJC knew The State Bar of California enterprise would protect him, just like Thomas V. Girardi and about 700 attorneys.

75. **[OVERT ACT]** Overtly using the mail and wire with intent to defraud plaintiff by threatening letter and color of official right to obtain signatures and property, KJC did deliver plaintiff the following two-page letter on January 25, 2019:

**CATANZARITE LAW CORPORATION**
ATTORNEYS & COUNSELORS AT LAW
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
(714) 520-5544
FACSIMILE: (714) 520-0680

KENNETH J. CATANZARITE
ATTORNEY AT LAW
DIRECT DIAL:
(714) 678-2100

E-MAIL ADDRESS
KCATANZARITE@CATANZARITE.COM
DIRECT FAX:
(714) 399-0577

January 25, 2019

**Via U.S. Mail & Email:**
Samuel Y. Egerton, III
Jonny L. Antwiler
O'HAGAN MEYER, LLC
4695 MacArthur Court, Ste. 210
Newport Beach, CA 92660
segerton@ohaganmeyer.com
jantwiler@ohaganmeyer.com

Ken Watnick
Anderson, McPharlin & Conners
707 Wilshire Blvd, Suite 4000
Los Angeles, California 90017-3623
kdw@amclaw.com

Stephen J. Erigero, Esq.
Ivan L. Tjoe, Esq.
Alan J. Hart, Esq.
Ropers Majeski Kohn & Bentley PC
445 South Figueroa St., Ste 3000
Los Angeles, CA 90071-1608
Facsimile: (213) 312-2001
Email: stephen.erigero@rmkb.com
Email: ivan.tjoe@rmkb.com
Email: alan.hart@rmkb.com

Re:     *Denise Pinkerton v. Cultivation Technologies, Inc., et al.*, Case No. 30-2018-01018922: Meet & Confer Re CTI's Discovery Responses.

Notice by Mobile Farming Systems, Inc. ("MFS") as sole shareholder of Cultivation Technologies, Inc. ("CTI") of Actions

Notice of MFS Shareholders that Board of Directors is Removed

Counsel,

I write this letter to provide notice of the enclosed actions. We would like to immediately take control of the assets and operations of CTI for the benefit of the sole shareholder MFS. We have confirmation now that the share issuance on March 30, 2015 was in fact fully paid and that the shares were issued and due to MFS which is therefore the sole shareholder.

MFS will now assert all claims directly not derivatively and this firm will serve as counsel. An amended complaint is being prepared and will be circulated for possible stipulation or motion if necessary.

We would like to avoid any unnecessary disruption of corporate activity and therefore notify you that we will defer notice to all third parties until Monday January 28 in the hope that your clients will handle the transition in the interests of the shareholders. All shares issued after March 30, 2015 are a nullity, including the highly dilutive unauthorized shares issued to Messrs.

18

23-CV-00018-JVS-DFM

Exhibit 9
Page 173

1

2

3

4

5

6

7   Samuel Y. Egerton, III
    Jonny L. Antwiler
8   O'HAGAN MEYER, LLC
    January 25, 2019
9   Page 2

    Probst and Beck. It is our intention to offer those persons who purchased CTI shares, MFS shares
10  after a determination of amounts of money actually invested. The new directors and officers will
    require turnover of:
11  1.      All books and records
    2.      Probst and Beck to leave offices and turnover records and keys
    3.      Bank accounts to be turned over
12  4.      Cash control to be turned over to new board
    5.      Hand off of operative contracts
13  6.      Inventory of subsidiaries
    7.      Personnel lists
14  8.      Office security codes and systems
    9.      All computer pass codes to computer and security systems
    10.     All office pass codes and security systems
15
        This is also notice that law enforcement is looking at both MFS and CTI. We are fully
16  cooperating with them and expect that your clients will do the same.

17      After you review the above please call me.

            Very truly yours,
18
            CATANZARITE LAW CORPORATION
19
            Kenneth J. Catanzarite
20

21

22

23

24

25

26

27

28

                                    19                          23-CV-00018-JVS-DFM

Exhibit 9
Page 174

76. [**OVERT ACT**] Using the wire with intent to defraud plaintiff in Orange County Superior Court, using the manufactured evidence of January 23, 2019 and assumption of "counsel" for the inanimate corporate entity MFS, KJC did on January 28, 2019, file the MFS Action. The claims were brought "derivatively on behalf of its wholly owned subsidiary [n]ominal [d]efendant [CTI]." It named as defendants CTI's board of directors including Beck, CTI attorneys and several entities. CTI was named as a nominal defendant. MFS raised nine causes of action and sought declaratory relief and a permanent injunction. MFS asserted it was entitled to file a derivative action because it organized CTI and acquired 28,000,000 shares of CTI common stock, and therefore, CTI was its wholly owned subsidiary. KJC and CLC knew that MFS was not a shareholder of CTI. According to the MFS Action complaint, showing signatures and property obtained by KJC under color of official right, KJC did state:

> 56.     Founders O'Connor, Cooper, TGAP, Cliff Higgerson, Aroha Holdings, Inc. and Scott Unfug have agreed to renounce their Founders' Shares in favor of MFS.

77. [**OVERT ACT**] Using the wire with intent to defraud plaintiff February 20, 2019 "Catanzarite wrote a lengthy e-mail to Western Troy, warning the company it must speak with MFS's chief executive operating officer [the extorted, O'Connor] because there was currently litigation about whether MFS was CTI's sole shareholder. Catanzarite attached a copy of the MFS complaint to the e-mail. Catanzarite stated MFS disagreed with the merger and "we dispute and object to any agreement purportedly by and between Western Troy and CTI." (Bold and underline omitted.) Catanzarite demanded Western Troy withdraw its public notice about the merger and negotiate with MFS. Finally, Catanzarite insulted Western Troy. It started the e-mail by commenting it was unexpected the company did not have a receptionist to answer calls. Catanzarite noted Western Troy "appear[ed] to have no assets or operations of any value" and saw "no justification for Western Troy shareholders with a valueless company" to be entitled to CTI's shares via the merger.

23-CV-00018-JVS-DFM

Exhibit 9
Page 175

78. **[OVERT ACT]** Using the wire with intent to defraud plaintiff and CTI's creditor where each were defrauded, KJC did also email CTI's creditor. At first glance, Catanzarite's e-mail simply looks like a notification about CTI's newly installed board of directors. The e-mail explains the new board was interested in working with CTI's creditor. However, later in the e-mail Catanzarite reveals MFS was litigating its right to control CTI as the sole shareholder and it attached a copy of the complaint to the e-mail. The remaining and largest section of the e-mail is devoted to slandering Beck.

79. **[OVERT ACT]** Overtly, using the wire, with intent to defraud through Orange County Superior Court and protection of the State Bar, KJC did file and did obtain a temporary restraining order under false pretenses through judicial fraud. For instance, suborned under penalty of perjury to support the TRO, KJC did extort the signature of O'Connor on March 19, 2019 who declared:

"As CEO and director of MFS acting on its behalf, MFS is rightfully and properly the owner as holder of 28,000,000 CTI shares of Common Stock and entitled to all of the rights, benefits and privileges of said shares, including the right to vote said shares and to not suffer dilution of nor interference with such right." And he did sign it on March 19, 2019 at Newport Beach, California in knowing furtherance of the scheme and it was submitted by wire to Orange County Superior Court. Before this, O'Connor participated in 158 securities transactions in CTI stock for millions of dollars. [**Exhibit #170**]

80. **[OVERT ACT]** Overtly, using the wire, with intent to defraud, and to steal personally identifiable information of CTI shareholders in furtherance of his scheme under color of official right of the fraudulently obtained TRO, KJC did obtain a list of all CTI shareholders through extortion veiled as "discovery" on behalf of MFS while seeking to *unwind* all CTI shares in a declaratory relief hearing on behalf of MFS scheduled for April 30, 2019, finishing on May 1, 2019.

81. **[OVERT ACT]** KJC did obtain the list of CTI shareholders under color of official right dated March 25, 2019, so he could continue his scheme where he knew the 709 hearing

21                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 176

1    would fail on the merits, but he knew he could rely upon State Bar's ongoing protection of

2    his fraudulent scheme no matter what, just like Thomas V. Girardi could for forty years.

82. **[OVERT ACT]** Overtly, using the wire with intent to defraud and steal personally identifiable information to continue the scheme through Orange County Superior Court on April 9, 2019, KJC did file a motion to disqualify plaintiff's counsel for conflicts while engaging in the very conduct he complained of, or in the alternative sought to eliminate plaintiff's defense coverage under color of official right. For instance, in support of the motion, KJC did submit by wire the following statement in furtherance of the scheme under penalty of perjury:

> I, Kenneth J. Catanzarite, have personal knowledge of each fact set forth in this declaration based upon my observation of, participation in, and recollection of, the matters and events to which I declare. I could and would competently testify to each fact set forth in this declaration if called and duly sworn by this Court. I certify and declare as follows:
>
> 1.   I am licensed to appear before this Court and the courts of the State of California.
>
> 2.   I am a principal attorney at Catanzarite Law Corporation and lead counsel for Plaintiff Mobile Farming Systems, Inc., directly and derivatively on behalf of Cultivation Technologies, Inc. in this above-entitled action. As counsel for Plaintiff I am readily familiar with the files in this case.

83. **[OVERT ACT]** Overtly, using the wire with intent to defraud, using the stolen information on CTI shareholders acquired under color of official right while seeking to *unwind all CTI shares* on behalf of MFS after purporting to do so through non-judicial fraud of O'Connor, Duffy, and Zakhireh on January 23, 2019, "Catanzarite filed the Mesa Action in April 2019 for Richard Mesa and a *putative class* of MFS shareholders who also purchased CTI shares. The complaint was framed as both a class action and a shareholder derivative action filed "on behalf of" CTI. The complaint asserted the class of MFS/CTI shareholders wanted to consolidate their lawsuit with MFS's derivative action "and to among other relief, recognize the ownership and control of CTI" by MFS's ownership of 28,000,000 shares, 5,000,000 "Friends &Family CTI shares," and 3,000,000 CTI shares issued pursuant to the 2015 PPM.

<div align="center">22</div>

<div align="right">23-CV-00018-JVS-DFM</div>

Exhibit 9
Page 177

84. [**OVERT ACT**] Overtly, using the wire with intent to defraud in furtherance of the scheme showing the coercion of O'Connor, Scudder, Cooper, Higgerson and threat of fear under color of official right to provide signatures and property, in knowing furtherance of the scheme, "Han Le" from the email address hle@catanzarite.com on April 19, 2019 at 2:27:53 PM PDT with "CC: Kenneth Catanzarite kcatanzarite@catanzarite.com , Beck Phillips bphillips@catanzarite.com , Jennifer Weaver jweaver@catanzarite.com , Richard O'Connor richard@tgapholdings.com " as follows:

**From:** Han Le <hle@catanzarite.com>
**Date:** April 19, 2019 at 2:27:53 PM PDT
**Cc:** Kenneth Catanzarite <kcatanzarite@catanzarite.com>, Becky Phillips <bphillips@catanzarite.com>, Jenifer Weaver <jweaver@catanzarite.com>, "Richard O'Connor (Richard@tgapholdings.com)" <Richard@tgapholdings.com>
**Subject: MFS SHAREHOLDERS - DO NOT SIGN CONSENT DOCUMENT JUST SENT BY POBST-- SUPPLEMENTAL EMAIL**

Dear Shareholders:

**Supplement to Email**

I want to be clear that neither I, Richard O'Connor, Tony Scudder nor anyone else sued in the Root Case or the Mobile Farming Case have settled any claims with Root or anyone else. All we did was agree to toll the statute of limitations to allow claims to be brought against us later. No conflict. Instead we are working together in the best interests of Mobile Farming and Cultivation Technologies.

There is no conflict as they contend. Instead **the conflict identified is those named Defendants taking the 17,000,000 Series A Preferred Shares with 3 times voting to your common shares, for $0, control of the company and their undisclosed compensation. That is the conflict. They want to keep that against your interest and we seek to cancel those shares and secret compensation arrangements. THEY COULD HAVE SETTLED THIS CASE BY AGREEMING TO CANCEL THEIR PREFERRED SHARES AND CONTROL AND SALARIES--- *YOU NEED TO KNOW THAT THEY REFUSED. THAT IS WHY WE HAVE THIS DISPUTE.***

**The consent form should not be signed.** It does not allow you to reject the proposal so any signature would approve their request which I say is against the interests of Mobile Farming and Cultivation Technologies shareholders. If you have any questions feel free to call my cell at 760-409-6464.

Richard O'Connor
Director and Officer

23                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 178

85. After the opportunity to present evidence in a trial of fact on May 1, 2019, with KJC, O'Connor, and Cooper present seeking to unwind all shares of CTI in a 709 trial challenging CTI's valid election in November 2018 on the basis that MFS was entitled to vote 28,000,000 shares that didn't exist and showing who was responsible for that (Cooper and O'Connor):

```
14          THE COURT:  WE ARE BACK.  NOW THAT I HAVE HAD
15    TIME TO DECOMPRESS WITH THE AFTERNOON RECESS,
16    MR. CATANZARITE, EVERY FIBER OF MY BEING SAYS THAT THE
17    FACTS ARE OVERWHELMING AGAINST YOUR POSITION IN THIS
18    CASE.  SO UNLESS YOU CAN CONVINCE ME OTHERWISE, I AM
19    PREPARED TO RULE THAT THIS ELECTION WAS VALID.
20          MR. CATANZARITE:  WELL, THE ONLY THING I CAN SAY
21    IS THAT THE SOLE DOCUMENT UPON WHICH THEY RELY IS EXHIBIT
22    53, WHICH IS WHAT YOU SAY, AND I UNDERSTAND THE POSITION
23    IS AN ADMISSION AGAINST INTEREST AGAINST MOBILE FARMING
24    BECAUSE IT IS SIGNED BY THREE PERSONS WHO WERE ALSO
25    DIRECTORS AND IN CONTROL OF MOBILE FARMING.
```

```
6     CLAIMING HERE.  BUT WE HAVE REPUDIATION OF THE AGREEMENT
7     BY PEOPLE WHO WERE THE SAME PRINCIPALS IN THE PLAINTIFF.
8     WE HAVE ACTIONS -- REPEATED ACTIONS TAKEN SUBSEQUENTLY
9     CONSISTENT WITH THE NOTION THAT PLAINTIFF WAS NOT A
10    STOCKHOLDER.  THE DELAY IN BRINGING THIS ACTION IS
11    CONSISTENT WITH THAT CONCLUSION, THAT PLAINTIFF HAS BEEN
12    OF THE VIEW THAT THEY ARE NOT A SHAREHOLDER.
13          SO THE COURT CONCLUDES THAT THE CHALLENGE
14    DIRECTOR ELECTION IS DENIED, AND THE COURT CONCLUDES THAT
15    PLAINTIFF IS NOT A STOCKHOLDER IN CTI.
```

24                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 179

86. [**OVERT ACTS**] Overtly, using the wires in a series of acts with intent to defraud in furtherance of the scheme using protection of State Bar, just like Thomas V. Girardi, and just like others convicted of wire fraud amongst The State Bar of California enterprise for submitting "sham" court documents shown:

"[o]n or about May 6, 2019, I began receiving calls, text messages, and voicemails from Anthony Scudder ("Scudder") requesting that I execute a document…to facilitate replacement of CTI management [under different factual pretenses than January 23, 2019]. On or about May 8, 2019…I spoke with…Kenneth J. Catanzarite of Catanzarite Law Corporation…Catanzarite explained to me [by wire communication/cellular phone] the purpose…was to remove the board of directors of CTI through an action by majority written consent [by mail and/or wire] of the shareholders of CTI ("Shareholder Consent") [among whom MFS was notably not one and hasn't been; but here not even claimed by the Racket despite the ongoing, knowingly fraudulent 'MFS Action' and 'Pinkerton Action' and 'Mesa Action']. Following our conversation, Catanzarite sent me the Proxy and requested my signature…I explained to Scudder that I did not want to get involved and declined to execute the Proxy. On May 10, 2019, Richard O'Connor ("O'Connor") sent me text messages and voicemails offering me $5,000 to execute the Proxy; which I declined. On May 14, 2019, I was provided a copy of the Shareholder Consent dated as of May 14, 2019, executed by O'Connor as proxy holder for certain CTI shareholders with a register of purported proxies attached…Page 28 of the Shareholder Consent is a forged Proxy authorizing O'Connor to vote my shares." [**Exhibit #210**]

87. [**OVERT ACTS**] Overtly, using the wire in Orange County Superior Court, with intent to defraud, KJC appearing on behalf of directly adverse parties again purporting to advocate: "One month later, Catanzarite amended the Mesa Action complaint to add Cooper and Tom Mebane as plaintiffs and FinCanna as a defendant. Catanzarite also changed the nature of the action to focus on unraveling CTI's financial dealings with its primary creditor and declare CTI's actions and contracts void. The shareholder no longer wished to join the MFS Action or seek recognition of MFS's controlling stock shares over CTI.

88. Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and some of its Founders (the Probst Faction) as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI

Exhibit 9
Page 180

1    Founders to dismiss them from the derivative Pinkerton Action without court approval; (3)

2    he became MFS's counsel of record; (4) Catanzarite filed a derivative shareholder lawsuit

3    for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed

4    by other people claiming to be MFS shareholders; and (5) after filing

5    two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa

6    Action) claiming to represent a different set of outsider shareholders, i.e., a class of

7    derivative shareholders willing to join in the MFS Action but also independently seeking

8    damages from CTI, its current shareholders, and board of directors.

89. [**OVERT ACTS**] Overtly, using the wire in Orange County Superior Court, with intent to

    defraud, KJC working with BW, TJO and appearing *ultra vires* Catanzarite next filed two

    lawsuits **as CTI's corporate counsel** (the Creditor Action and Scottsdale Action). The

    Scottsdale Action is noteworthy in that Catanzarite demanded that CTI's insurance

    company stop providing a defense or indemnify Beck other defendants in the Mesa Action.

90. This overt act against his insurance carrier, and others in cumulative, have caused

    irreparable harm to Beck in that he has been unable to obtain insurance coverage with

    fraudulent claims presented against him for more than four years, continuing. It has

    destroyed Beck's career as a CEO.

91. [**OVERT ACT**] Overtly, using the wire in knowing furtherance of the scheme to extort a

    settlement under color of official right, on Wednesday, July 10, 2019 at 10:01 AM "From:

    Becky Phillips [mailto:bphillips@catanzarite.com]" delivered a wire communication for,

    and copying, "CC: Kenneth Catanzarite kcatanzarite@catanzarite.com" an email

    "Subject: Cultivation Technologies, Inc. – Confidential Settlement Negotiations –

    Evidence Code §§ 1152 and 1154" without regard for the fraud and crime exceptions of

    Evidence Code § 956, reading: "Mr. Edgerton, Please see the attached settlement

    negotiations/agreement for your client(s) if there is an interest. This proposal, if not

    accepted, shall expire at 5:00 p.m. Thursday, July 19, 2019….Very truly yours, Becky

    Phillips for Kenneth J. Catanzarite" "Legal Assistant" "Catanzarite Law Corporation"

    "2331 West Lincoln Avenue, Anaheim, CA 92801" "Direct Dial: (714) 678-2108"

Exhibit 9
Page 181

"Direct Fax: (714) 399-0589" "Office Phone: (714) 520-5544" "Office Fax: (714) 520-0680" to which my defense counsel, Sam Y. Edgerton, III Partner of law firm Ohagan Meyer wrote back to "To: 'Kenneth Catanzarite' kcatanzarite@catanzarite.com "[b]ecause of the obvious fraud issue regarding your purported representation of CTI, this is not a protected settlement communication."

92. [**OVERT ACTS**] Overtly, using the wire even after a Court in trial of fact rejected the cooked up claims and sham, wired documents "with every fiber of [its] being," KJC was undeterred because he knew he could rely upon protection of State Bar just like Thomas V. Girardi knew he could for forty years.

"In July 2019, Catanzarite filed first amended complaints (FAC) in the Pinkerton Action and the MFS Action. It removed all derivative action claims made on behalf of MFS and CTI. Catanzarite claimed to be MFS's and CTI's corporate counsel. (See *FinCanna, supra,* G058700 [description of Catanzarite's six lawsuits].) *Beck v. Catanzarite Law Corp.,* No. G059766, 16-17 (Cal. Ct. App. Jul. 13, 2022) "However, the record shows that when Catanzarite learned MFS lacked standing to bring a derivative suit on CTI's behalf, it did not dismiss the lawsuits. Catanzarite filed FACs instead." *Beck v. Catanzarite Law Corp.*, No. G059766, 32 (Cal. Ct. App. Jul. 13, 2022)

93. [**OVERT ACT**] Overtly, using the wire in Orange County Superior Court, with intent to defraud and to conceal its schemes, KJC did suborn perjury by affidavit (while "tolling claims" against O'Connor on behalf of MFS derivatively as "sole shareholder" of CTI) from O'Connor on November 4, 2019 seeking to avoid disqualification which directly conflicted with the March 19, 2019 declaration asserting MFS was the sole shareholder of CTI. [**Exhibit #141**]

94. [**OVERT ACT**] Overtly, using the wire in Orange County Superior Court, with intent to defraud and to conceal its schemes, KJC did suborn perjury by affidavit (while "tolling claims" against O'Connor on behalf of MFS derivatively as "sole shareholder" of CTI) from O'Connor on November 11, 2019:

5. As Chief Executive I issued 5,000,000 Founders Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort.

27

23-CV-00018-JVS-DFM

Exhibit 9
Page 182

95. **[OVERT ACT]** Overtly, using the wire in Orange County Superior Court, with intent to defraud and to conceal its schemes, KJC did suborn perjury by affidavit (while "tolling claims" against O'Connor on behalf of MFS derivatively as "sole shareholder" of CTI) from O'Connor on December 27, 2019.

Regarding Calixto's sworn statement (Ex. 210) May 17, 2019 [**Exhibit #143, p. 4**]

> 12. I am the person who solicited the common stock proxies not Mr. Catanzarite. As for the Probst contention about the proxies he is in error.

Regarding the non-judicial acts in furtherance of schemes [**Exhibit #143, p. 6**]

> 19. On August 27, 2019 I appeared at the shareholders meeting and by proxy elected myself, Mr. Duffy and Ms. Cooper to the Board of Directors and to officer positions at CTI with my 51.15% proxies.
>
> 20. On August 28, 2019 the common elected directors, namely myself, Cooper and Mr. Duffy, took action by written consent to appoint myself as Chief Financial and Chief Operating Officer, Ms. Cooper as Vice President and Mr. Duffy as President and Secretary.
>
> 21. Myself, Mr. Duffy and Mrs. Cooper took action by unanimous written consent appointing Jeff Schunk, a CTI common shareholder, as Vice President, tasked with the responsibility to review conflicts of interest in the representation by Mr. Catanzarite and CLC.

Despite suing CTI and Beck from April – June 2017 about it with Zakhireh, Duffy:

> 29. The very first time that the CTI shareholders learned of the purported issuance of the Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were objected to as not validly issued.

96. **[OVERT ACT]** After plaintiff delivered notice to State Bar with specificity, exhaustive injury documentation showing serial fraud, perjury, representation of directly adverse parties, extortion for signatures and property [**Exhibit #172**], plaintiff did receive postal mail intending to defraud from Joy Nunley on behalf of her "Senior Trial Counsel Eli Morgenstern," who did defraud plaintiff and did unlawfully protect KJC, CLC, and its associate attorneys Brandon Woodward and Tim James O'Keefe on April 3, 2020. [**Exhibit #173**] Nunley and Morgenstern knew their letter was frivolous but sent it anyway.

97. **[OVERT ACT]** Plaintiff delivered notice again of his injuries and the serial fraud, sham court documents, and wire communications from KJC and CLC. On August 10, 2020, using the wire in Orange County Superior Court, with intent to defraud and continue the scheme, in conspiracy with State Bar and Morgenstern, the "MFS Cross Action" was filed against plaintiff which was just a regurgitation of the same cooked up claims that the Court rejected with "every fiber of [its] being" on May 1, 2019. KJC, BW, TJO, and CLC didn't care, because they knew they could rely on Morgenstern and The State Bar enterprise to protect them, just like Thomas V. Girardi knew he could for forty years.

98. **[OVERT ACT]** Where plaintiff delivered notice by postal mail to the "Complaint Review Unit" before understanding it was also Office of General Counsel for State Bar who also defends tort claims against itself and The State Bar of California enterprise, and also makes antitrust determinations for itself frivolously, plaintiff did receive another postal mail letter August 12, 2020 literally two days after the "MFS Cross Action" was filed by wire with intent to defraud. [**Exhibit 176**] Office of General Counsel knew the letter was frivolous, and Office of General Counsel did intend to defraud Beck, and Beck was defrauded again.

99. Plaintiff later realized the purpose of these postal mail communications was not only to protect The State Bar of California enterprise's schemes to defraud members of the public including plaintiff, any client of CLC, KJC, and any client of Thomas V. Girardi or Girardi-Keese, but it was *also* to generate leads for lawyers as part of an unlawful trust in restraint of trade. [**Exhibit 177**]

100. **[OVERT ACT]** Incredulous that the conduct was still carried on by State Bar, Morgenstern, and "Complaint Review Unit" (Office of General Counsel) – plaintiff delivered notice to California Supreme Court that he needed a neutral hearing to present the case. Using the postal mail with intent to defraud plaintiff from its mail facility in San Francisco, Jorge E. Navarette did send plaintiff a letter on September 29, 2020 with an ambiguous case law from 1948 that had nothing to do with the conduct at issue ("In Re: Walker" scheme to defraud the public). [**Exhibit #182**] And again, Beck was defrauded by postal mail through the designed schemes.

23-CV-00018-JVS-DFM

Exhibit 9
Page 184

101.     [**OVERT ACT**] Overtly, on July 20, 2022, using the wire with intent to defraud plaintiff and to protect KJC and CLC who were protected just like Thomas V. Girardi was for forty years, Grandt on behalf of Duran did deliver plaintiff a letter stating that the conduct of KJC and CLC did not give rise to The State Bar of California's duties to inform the public. Grandt knew the basis of this decision was not the merits, but the fact that plaintiff chose to sue The State Bar of California on behalf of himself, and with public interest standing. But Grandt didn't care, because she knew The State Bar of California controlled the entire judiciary in California, so she sent the letter anyway to Beck, who was defrauded.

102.     [**OVERT ACT**] After preparing a case for California Supreme Court, delivering it within the arbitrary, criminal-protecting timeline of 60-days, Jorge E. Navarette did ask that it be reformatted and did ask that he send the case to The State Bar of California Office of General Counsel, The State Bar of California Office of Chief Trial Counsel, and to send a copy to each of the California Supreme Court Justices. After back and forth by postal mail, Jorge E. Navarette did send plaintiff a postal mail letter intending to defraud him on March 22, 2021 stating that the case had been rejected not on the merits, but due to the criminal-protecting 60-day timeline during which plaintiff did provide a case. Navarette knew that KJC, BW, TJO, NMC, and CLC were among the protected attorneys, just like Thomas V. Girardi, and so he did defraud plaintiff by postal mail stating the case was "returned unfiled." And plaintiff was defrauded and experienced an emotional breakdown from which he has yet to recover with the cumulative foregoing acts of fraud and malice.

[**Exhibit 179**] [**Exhibit 182**] [**Exhibit 183**]

103.     [**OVERT ACT**] On February 14, 2022, Carissa Andresen with The State Bar of California enterprise in Office of General counsel did file the "unfiled" case as if it were

6.     Attached hereto as Exhibit A is a true and correct copy of the March 18, 2021 Accusation of Justin Beck Against an Attorney, filed by Petitioner in California Supreme Court Case No. S267752.

30                                        23-CV-00018-JVS-DFM

Exhibit 9
Page 185

1      dispositive of The State Bar of California's duties to stop their criminal conduct, and even

2      though Navarette said it was "returned unfiled."

3      104.    [**OVERT ACT**] On September 21, 2022, through September 26, 2022, plaintiff did

4      file an antitrust petition in California Supreme Court after understanding the unlawful unity

5      of interests within The State Bar of California and protection schemes that did and do

6      defraud the public. Using the wire, with intent to defraud, plaintiff did receive a postal mail

7      letter from Navarette that plaintiff's petition S276517 was "stricken" as premature.

8      California Supreme Court directed that his petition be reviewed and determined by the

9      unlawful trust itself: The State Bar of California enterprise without regard of *N.C. State*

10     *Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (201 5) or 15 U.S.C. § 1.

11     [**Exhibit 28**]

12     105.    [**OVERT ACT**] On October 17, 2022, using the wire with intent to defraud plaintiff

13     and the United States, Office of General Counsel for The State Bar of California enterprise

14     working with Grandt did deliver plaintiff "Antitrust Determination 2022-001" after

15     removing four volumes of exhibits, 1,000+ pages of probative antitrust evidence, and

16     ignoring *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (201 5)

17     or 15 U.S.C. § 1 while citing stale case law *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307,

18     87 L.Ed. 315 and conceding to the improper purposes of the determination being plaintiff's

19     suits against State Bar. [**Exhibit #60**] Plaintiff's actual petition is shown, plus proofs of

20     service. [**Exhibits #5 5  through #5 9**]

21     106.    [**OVERT ACT**] Using the wire, with intent to defraud plaintiff and the United

22     States, California Supreme Court clerk Jorge E. Navarette working with Office of General

23     Counsel's Robert Retana did obstruct and manipulate plaintiff's filings in TrueFiling and

24     remove exhibits from the docket in S276517.

25     107.    [**OVERT ACT**] Using the wire, with intent to defraud plaintiff, the public, and the

26     United States, Robert Retana of Office of General Counsel did deliver a wire

27     communication on October 17, 2022 to Jorge E. Navarette citing the fraudulent "Antitrust

28     Determination 2022-001" which was made without regard of the United States Supreme

31                              23-CV-00018-JVS-DFM

Exhibit 9
Page 186

1    Court, and was made after manipulating plaintiff's antitrust petition and exhibits, and was

2    made after California Supreme Court directed Office of General Counsel to make an

3    antitrust determination for itself while it was also defending tort claims against itself.

4    **[Exhibits #63 through #68]**

5    108.    **[OVERT ACT]** Using the wire, with intent to defraud plaintiff, the public, and the

6    United States, Jorge E. Navarette did start a new antitrust case without plaintiff's

7    authorization, which case was commenced in California Supreme Court under case number

8    S276939 using a manipulated record, which case did result in a fraudulent "En Banc"

9    decision by California Supreme Court on November 30, 2022. **[Exhibit #61]**

10   109.    **[OVERT ACT]** Using the wire, with intent to defraud plaintiff, Grandt did

11   inadvertently deliver evidence of the unlawful unity of interests existing by and between

12   Board of Trustees Ruben Duran, Executive Director Leah Wilson, Office of Chief Trial

13   Counsel George Cardona, Office of General Counsel Suzanne Grandt, and the malicious

14   basis for their decisions regarding the criminal conduct to which plaintiff has been subject

15   as plaintiff's decision to sue The State Bar of California. The wire communication shows

16   that Kenneth Catanzarite propounded patently false statements using the wire to Carissa

17   Andresen, who in turn regurgitated the false attorney statements despite court orders

18   proving the falsity, and even though The State Bar of California had a preservation of

19   evidence letter dated October 14, 2021 confirmed by Andresen on May 12, 2022, and it

20   did harm and defraud plaintiff once more. **[Exhibit #120]**

21   110.    **[OVERT ACT]** Overtly using the postal mail and wire, after plaintiff rejected the

22   false claims of "privilege" asserted to fraudulently conceal the scheme, Ellin Davtyan of

23   Office of General Counsel did threaten plaintiff, and Ellin Davtyan did seek to control the

24   enterprise on December 15, 2022, under color of state law. **[Exhibit #103]**

25   111.    **[OVERT ACT]** Overtly using the wire, plaintiff received document production

26   from a public records request on January 13, 2023, where Davtyan or Office of General

27   Counsel frivolously asserted that they actually had a right to file an antitrust petition in

28

Exhibit 9
Page 187

1  California Supreme Court that was not authorized by plaintiff, which petition did defraud

2  plaintiff, the public, and the United States.

3  112.     **[OVERT ACT]** Showing the acute threat of continuing schemes to defraud using

4  the judicial system, using the wire with intent to defraud litigants or insurance carriers and

5  a federal court [**Exhibit #202 juxtaposed with August 27, 2019 acts**], James Duffy is

6  being used as a straw plaintiff against entities owned or controlled by Jeffrey Schunk by

7  CLC. Neither Duffy nor Schunk would be known to CLC or KJC but for the fraudulent

8  schemes to steal information through "discovery" under color of law commencing

9  September 14, 2018, using protection of The State Bar of California enterprise, Office of

10  Chief Trial Counsel, Office of General Counsel, and Board of Trustees for The State Bar

11  of California – just like Thomas V. Girardi enjoyed for forty years.

12  113.     "Catanzarite does not care about the truth when making statements to the Court."

13  This Court cannot trust one word or filing from CLC nor KJC, either and plaintiff notices

14  the Court that it can't reasonably trust State Bar, either.

15  <u>INJURY STANDING UNDER RICO</u>

16  114.     Plaintiff is: (1) a "person" (2) who sustained injury (3) to his "business or property"

17  (4) "by reason of" defendants' violation of § 1962.

18  115.     Plaintiff's injuries to business and property arise from (1) § 1962(c) from predicate

19  acts detailed; (2) § 1962(a) arising from investment of racketeering income in an interstate

20  enterprise; (3) § 1962(b) arising from acquisition of an interest in or control over an

21  interstate enterprise; (4) arising from overt acts committed in furtherance of schemes to

22  defraud plaintiff in conspiracy.

23  116.     Plaintiff seeks his damages, treble damages, and attorney fees for his § 1962 claims

24  as follows for business and property:

25  117.     $1,282,000 immediate judgment against State for converted policies

26  118.     $8,433,000 total past and future lost earnings to business and property

27  119.     $27,407,250 total lost earnings capacity to business and property

28  120.     $32,667,351 business and property deliberately compromised (merger destroyed)

Exhibit 9
Page 188

121.  $365,000 from real estate proceeds used to endure predicate conduct

122.  $5,649,297 business and property destroyed in March 2021/April 2021

123.  $32,667,351 future business and property (reasonable basis) from conduct

124.  $25,000,000 future business and property (reasonable basis) from conduct

125.  $1,000,000 inherited IRA shamefully depleted to endure predicate conduct

126.  Plaintiff seeks his damages, non-economic damages, and punitive damages for his claims under 42 U.S.C. § 1983 and 15 U.S.C. § 1 on these bases:

127.  $138,889,249 for damages as above as an alternative or cumulative

128.  $138,889,249 for pain, suffering, inconvenience, and oppression

129.  $138,889,249 for severe emotional distress leading to a seizure in Dec. 2022

130.  $138,889,249 for loss of consortium and inability to marry

131.  $138,889,249 for becoming disenfranchised, losing trust in State government

132.  $138,889,249 for severe grief, losing his parents and a mentor building CTI

133.  $138,889,249 for loss of enjoyment of life, consideration of suicide

134.  $138,889,249 for humiliation, losing friends and colleagues

135.  $138,889,249 for loss of 20% of his left arm due to Grandt, State Bar delays

136.  $138,889,249 for ratifying KJC, BW, TJO, CLC, NMC conduct pre-9/14/18

137.  $138,889,249 for ratifying KJC, BW, TJO, CLC, NMC conduct post-9/14/18

138.  This action was filed within the RICO statute of limitations. Plaintiff did not identify, nor could he have previously the deliberate schemes to defraud him despite his diligence, nor the active concert among State actors. All claims are filed in a timely manner.

Exhibit 9
Page 189

1

2

3                                    **COUNT I**

4                                  **RACKETEERING**

5                            **Violation of 18 U.S.C. § 1962(c)**

6       139.      The allegations of paragraphs ¶ 1 through ¶ 136 are incorporated herein by reference

7                 as if they were set forth fully.

8       140.      To recover under 18 § 1962(c), plaintiff must prove (1) conduct, (2) of an enterprise,

9                 (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing

10                injury to plaintiff's business and property by the conduct constituting the violation. See

11                *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)

12      141.      Plaintiff did suffer injuries resulting from violation of 18 U.S.C. § 1962(c).

13      142.      This Count I is against Defendants THE STATE BAR OF CALIFORNIA and

14                STATE OF CALIFORNIA ("Count I Defendant(s)").

15      143.      MOBILE FARMING SYSTEMS, INC. is an enterprise engaged in and whose

16                activities affect interstate commerce. The Count I Defendant(s) are employed by or

17                associated with the enterprise.

18      144.      Prior to September 14, 2018, KJC and CLC did engage in a pattern of racketeering

19                activity enabled and carried on by The State Bar of California, its Office of Chief Trial

20                Counsel, and its Office of General Counsel.

21      145.      Duffy, Zakhireh, and O'Connor did sue or conspire to sue plaintiff and CTI "on

22                behalf of 92 shareholders" of CTI concerning the Preferred Series A shares of CTI which

23                they did settle on or around June 13, 2017, before January 23, 2019.

24      146.      With intent to defraud and malign plaintiff, Zakhireh and O'Connor did conspire to

25                defraud the United States Securities Exchange Commission in July 2017 without regard

26                for the truth, and the SEC and plaintiff were defrauded in pursuit of Zakhireh and

27                O'Connor's malice against plaintiff. KJC and CLC used this malice to extort O'Connor,

28

                                              35                        23-CV-00018-JVS-DFM

Exhibit 9
Page 190

1    Zakhireh, Duffy, Cooper, Higgerson and others to produce evidence that KJC and CLC

2    knew was false or manufactured to suit the scheme to defraud Beck and others.

3    147.    O'Connor and Cooper did use the wire to pay $340,000 in illegal commissions to

4    Joseph Porche through MFS out of an investment in MFS securities of approximately

5    $450,000 by Jolly Roger Investments, Inc. or Jolly Roger, Inc. years before plaintiff ever

6    met O'Connor and Cooper in April 2015.

7    148.    On September 14, 2018, KJC and CLC did file the derivative "Pinkerton Action"

8    against MFS with intent to defraud through Orange County Superior Court. KJC knew the

9    claims to be false, but knew he could rely upon State Bar to protect him, just like Thomas

10   V. Girardi knew for forty years.

11   149.    On December 13, 2018, KJC did dismiss Joseph Porche, who did receive $340,000

12   in illegal commissions from O'Connor and Cooper via MFS, from the Pinkerton Action.

13   150.    Between December 13, 2018, and January 23, 2019, KJC did make direct or indirect

14   contact with unrepresented and represented parties defendant to the direct and derivative

15   Pinkerton Action, and it was compromised without Court approval.

16   151.    To obtain the property or other consideration from Cooper, Higgerson, and

17   O'Connor with their consent, under color of official right on behalf of MFS derivatively

18   and directly against them for securities fraud charges as KJC was "working with law

19   enforcement," Cooper, Higgerson, and O'Connor did provide their signatures and property

20   to MFS for KJC induced by a wrongful use of fear.

21   152.    Cooper, Higgerson, and O'Connor did provide their signatures and property to

22   MFS, KJC and CLC using the wire with intent to defraud plaintiff, and to conceal the

23   unlawful conduct of Cooper and O'Connor related to MFS and Joseph Porche.

24   153.    With intent to defraud plaintiff in continuance of their malicious purposes for all

25   times relevant, Duffy and Zakhireh did agree to non-judicial acts by wire with KJC in

26   furtherance of the scheme between January 4, 2019, and January 23, 2019.

27   154.    On January 23, 2019, O'Connor, Duffy, and Zakhireh did agree to unwind millions

28   of dollars in actual CTI securities transactions using MFS under KJC threat "working with

36                                        23-CV-00018-JVS-DFM

Exhibit 9
Page 191

1   law enforcement," in order that KJC could take control of MFS to conceal a lack of
2   standing for the derivative Pinkerton Action against MFS.

3   155.   The preceding acts, including the overt acts set forth above, constitute a pattern of
4          racketeering activity pursuant to 18 U.S.C. § 1961(5).

5   156.   The Count I Defendant(s) have directly and indirectly conducted and participated
6          in the conduct of the enterprise's affairs through the pattern of racketeering activity
7          described above, in violation of 18 U.S.C. § 1962(c).

8   157.   As direct and proximate cause of State assigning its sovereignty to active market
9          participants in regulation at State Bar, KJC and CLC were enabled and carried on to
10         conduct racketeering activity described above. State was thus a substantial factor.

11  158.   As direct and proximate cause of State Bar protecting CLC and KJC despite their
12         patterns of racketeering activity just like Thomas V. Girardi was protected, KJC and CLC
13         were enabled to conduct racketeering activity described above. State Bar was thus a
14         substantial factor, and State is responsible for State Bar on principles of *respondeat*
15         *superior*.

16  159.   As direct and proximate cause of the Count I Defendant(s) racketeering activities,
17         plaintiff lost actual and prospective business, property, and money.

18  160.   As direct and proximate result of the Count I Defendant(s) racketeering activities
19         and violations of 18 U.S.C. § 1962(c), plaintiff has been injured in his business and
20         property for which plaintiff seeks his damages, treble damages, and attorney's fees:

21  161.   $8,433,000 total past and future lost earnings to business and property

22  162.   $1,000,000 inherited IRA shamefully depleted, used to endure racketeering

23  163.   $365,000 from proceeds of real property used to endure racketeering

24  164.   WHEREFORE, plaintiff requests this Court enter judgment as follows:

25  165.   JUDGMENT in favor of plaintiff JUSTIN S. BECK against defendants THE
26         STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA.

37                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 192

166.    MONEY JUDGMENT in favor of JUSTIN S. BECK against THE STATE BAR

OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for $9,798,000

damages.

167.    MONEY JUDGMENT in favor of JUSTIN S. BECK against THE STATE BAR

OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for $29,394,000

treble damages.

168.    PERMANENT INJUNCTIVE RELIEF as Court deems just.

38                                        23-CV-00018-JVS-DFM

Exhibit 9
Page 193

**COUNT II**

**RACKETEERING**

**Violation of 18 U.S.C. § 1962(c)**

169.     The allegations of paragraphs ¶ 1 through ¶ 166 are incorporated herein by reference as if they were set forth fully.

170.     Plaintiff did suffer injuries resulting from violation of 18 U.S.C. § 1962(c).

171.     This Count II is against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count II Defendant(s)").

172.     The State Bar of California is an enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

173.     Duran was initially appointed to the Board of Trustees of the enterprise in 2018 by Assembly Speaker of the State of California, Anthony Rendon.

174.     On Thursday, August 10, 2017, "University of San Diego (USD) School of Law Center for Public Interest Law (CPIL) executive director Professor Robert C. Fellmeth was quoted in Los Angeles Daily Journal article that reported on the State Bar promotion of an attorney [Grandt] whom a federal judge recently accused of intentionally misleading him during a hearing." Grandt did intentionally mislead the judge about State Bar Court.

175.     "The agency's promotion of Suzanne Grandt, a lawyer in the bar's Office of General Counsel, was announced internally four days after U.S. District Judge William Alsup wrote in an order that he was considering sanctioning the bar because of "inaccuracies in attorney Grandt's statements." [**Exhibit 2**]

176.     Grandt and Duran were each appointed due to their *willingness* to defraud Courts or the public with impunity.

39                                        23-CV-00018-JVS-DFM

Exhibit 9
Page 194

177. Eli David Morgenstern, Office of Chief Trial Counsel, and Office of General Counsel have known before September 14, 2018, and continue to know and freely enable through overt acts of mail fraud and wire fraud, the racketeering activity of KJC and CLC.

178. The preceding acts, including the overt acts set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

179. The Count II Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

180. As direct and proximate cause of the Count II Defendant(s) racketeering activity, plaintiff lost actual and prospective business, property, and money.

181. As direct and proximate result of the Count II Defendant(s) racketeering activity, plaintiff has been injured in his business and property for which plaintiff seeks his damages, treble damages, injunctive relief, and attorney's fees as an alternative to any relief failing in Count I. Beck's ability to conduct business and obtain property is severely compromised due to the Count II Defendant(s) racketeering activity.

182. WHEREFORE, plaintiff requests this Court enter judgment as follows:

183. JUDGMENT in favor of plaintiff JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA.

184. MONEY JUDGMENT in favor of plaintiff JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for all amounts of money failing in Count I as an alternative.

185. PERMANENT INJUNCTIVE RELIEF as Court deems just.

40                                      23-CV-00018-JVS-DFM

Exhibit 9
Page 195

**COUNT III**

**INVESTING OR USING PROCEEDS OF RACKETEERING**

**ACTIVITY IN AN INTERSTATE ENTERPRISE**

**Violation of 18 U.S.C. § 1962(a)**

186.     The allegations of paragraphs ¶ 1 through ¶ 183 are incorporated herein by reference as if they were set forth fully.

187.     18 U.S.C. § 1962(a) prohibits a person from investing in an enterprise any income derived from a pattern of racketeering activity.

188.     This Count III is against defendants RUBEN DURAN, THE STATE BAR OF CALIFORNIA and STATE OF CALIFORNIA (the "Count III Defendant(s)").

189.     The Count III Defendant(s) used or invested income derived from a pattern of racketeering activity in an interstate enterprise.

190.     The State Bar of California is an enterprise engaged in and whose activities affect interstate commerce. The Count III Defendant(s) are employed by or associated with the enterprise.

191.     The State Bar of California is an association-in-fact enterprise engaged in and whose activities affect interstate commerce. The Count III Defendant(s) are employed by or associated with the enterprise.

192.     The State Bar of California established, carried on, received income through IOLTAs, then used and invested income from its licensees, a portion of which was derived from the pattern of racketeering activity described above, to pay Duran, Morgenstern, and Grandt their salaries and each did injure plaintiff.

193.     State of California used and invested income from the taxpayer public, including the licensees and entities they control engaged in a pattern of racketeering activity, and

41                                                   23-CV-00018-JVS-DFM

Exhibit 9
Page 196

1    invested it in The State Bar of California, who invested or will invest it back to The State

2    Bar of California enterprise while plaintiff and the public suffer.

3    194.    For instance, on July 13, 2022, by wire "The State Bar of California announced

4    today that this year's $308 billion State Budget will furnish more than $105 million in

5    funding for access to justice efforts through the State Bar, supporting legal aid

6    organizations...This supplements the more than $50.5 million in funds the State Bar plans

7    to distribute for similar assistance from Interest on Lawyers' Trust Accounts

8    (IOLTA) earnings in 2023…The funding comes from state General Fund dollars as well

9    as $20 million in federal homeless prevention funds."

10   195.    Similarly, "In the 2021 –22 state budget, the State Bar of California received a

11   record amount, nearly $110 million, in similar funding" which it invested back into The

12   State Bar of California enterprise while plaintiff was suffering injuries, and with actual

13   knowledge of plaintiff's injuries.

14   196.    Just like Office of General Counsel/"Complaint Review Unit" is used to generate

15   leads to pay lawyers as above, and to cause artificial demand for legal services while the

16   public suffers, so too do these parallel investments create leads for The State Bar of

17   California enterprise as the July 13, 2022, wire reads: "For a list of free legal aid providers

18   for low-income Californians, please go to LawHelpCa.org."

19   197.    The State Bar of California used or invested in excess of $1 billion dollars while

20   Beck and the public suffered 2018-2022, as Duran complained of a "lack of resources."

21   198.    Duran refuses to impose discipline or costs on racketeers controlled by and through

22   The State Bar of California, and thus seeks to impose the costs on taxpayers so that The

23   State Bar of California enterprise is free to defraud the public with Duran's permission.

24   199.    Plaintiff was not offered legal aid to sue The State Bar of California, Duran,

25   Morgenstern, or Grandt where he is a "low-income Californian" because of The State Bar

26   of California enterprise. Indeed, *because* plaintiff sued each, the racketeering activity was

27   concealed, carried on, and furthered with malice and artificial discretion while Duran made

28

Exhibit 9
Page 197

1    false statements by wire to defraud plaintiff, the public, and to defraud the United States

2    who provided $20 million in 2022.

3    200.    Plaintiff was not offered legal aid to defend against the criminal conduct of CLC

4    and KJC because they are each protected by State Bar, Office of Chief Trial Counsel, and

5    Office of General Counsel through investments made in Duran, Grandt, and Morgenstern.

6    201.    The preceding acts, including the overt acts set forth above, constitute a pattern of

7    racketeering activity pursuant to 18 U.S.C. § 1961(5).

8    202.    The Count III Defendant(s) have used or invested income derived from a pattern of

9    racketeering activity in violation of 18 U.S.C. § 1962(a).

10    203.    As direct and proximate cause of Count III Defendant(s) violation of 18 U.S.C. §

11    1962(a), plaintiff suffered injuries to his actual and prospective business and property.

12    204.    As direct and proximate result of the use or investment of racketeering income,

13    plaintiff suffered by way of his credit score, mounting debt he cannot pay, benefits he lost

14    or will not receive, special value of his IRA he lost, and other assets. Plaintiff also lost

15    earning capacity to his business and property which would not have happened but for the

16    use and investments made. For instance, had the investments been made in salaries for

17    persons who did not choose to carry on or engage in ongoing criminal conduct like Duran,

18    Grandt, or Morgenstern have chosen to do, the conduct would not have occurred. Plaintiff

19    is only 42 years old and will be damaged for the rest of his life.

20    205.    As direct and proximate result of the Count III Defendant(s) violations of 18 U.S.C.

21    § 1962(a), plaintiff has been injured in his actual and prospective business and property

22    and seeks his damages, treble damages, attorney's fees, and injunctive relief:

23    206.    $25,000,000 converted credit score, benefits, special IRA value, other assets.

24    207.    $27,407,250 lost earnings capacity to business and property as former CEO.

25    208.    WHEREFORE, plaintiff requests that this Court enter judgment against the Count

26    III Defendant(s) as follows:

27

28

43                                          23-CV-00018-JVS-DFM

Exhibit 9
Page 198

209.     JUDGMENT in favor of plaintiff JUSTIN S. BECK against defendants THE STATE BAR OF CALIFORNIA and STATE OF CALIFORNIA for violation of 18 U.S.C. § 1962(a).

210.     MONEY JUDGMENT in favor of JUSTIN S. BECK against RUBEN DURAN, THE STATE BAR OF CALIFORNIA and STATE OF CALIFORNIA jointly and severally for damages in the amount of $52,407,250.

211.     MONEY JUDGMENT in favor of JUSTIN S. BECK against RUBEN DURAN, THE STATE BAR OF CALIFORNIA and STATE OF CALIFORNIA jointly and severally for treble damages in the amount of $157,221,750.

212.     PERMANENT INJUNCTION as Court deems just.

Exhibit 9
Page 199

COUNT IV

**ACQUIRED INTERESTS IN OR CONTROL OF AN ENTERPRISE**

**THROUGH A PATTERN OF RACKETEERING ACTIVITY**

**Violation of 18 U.S.C. § 1962(b)**

213.     The allegations of paragraphs ¶ 1 through ¶ 210 are incorporated herein by reference as if they were set forth fully.

214.     18 U.S.C. § 1962(b) prohibits a person from using a pattern of racketeering activity to acquire or maintain interests in or control over an enterprise.

215.     This Count IV is against defendants KENNETH CATANZARITE; CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA ("Count IV Defendant(s)").

216.     The Count IV Defendant(s) racketeering activity led to control of or interests in an enterprise, and those interests or that control resulted in injury to plaintiff.

217.     Mobile Farming Systems, Inc. is an enterprise engaged in and whose activities affect interstate commerce. The Count IV Defendant(s) are employed by or associated with the enterprise.

218.     KJC and CLC did use the pattern of racketeering activity described above before January 23, 2019, to assume control of MFS by extortion to force corporate actions, and to maintain control of MFS under color of state law to harm Beck.

219.     State Bar did know previously of the pattern of racketeering activity described above with similar methods, victims, and beneficiaries but chose to carry it on.

45                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 200

220.     State did know previously of the State Bar's ongoing refusal to protect the public, but it chose to allow State Bar to engage in the conduct under color of law.

221.     For all times relevant, State had a legal duty to Beck and to the United States under 15 U.S.C. § 1 and *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (201 5) but chose to enable the racketeering activity above anyway.

222.     State had negative mandatory duty under Gov. Cod. § 815.6 under Sherman Act and 15 U.S.C. § 1, but failed to exercise reasonable care, and did damage Beck.

223.     The preceding acts, including the overt acts set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

224.     The Count IV Defendant(s) have directly and indirectly acquired or maintained interest in or control of an enterprise through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

225.     As direct and proximate cause of Count IV Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff has been injured in his actual and prospective business and property.

226.     As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. § 1962(b), a $261 million merger in which plaintiff was CEO and within which he was entitled $32,667,351 was destroyed together with the company CTI.

227.     As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. § 1962(b), plaintiff has been injured for $32,667,351 as being a reasonable basis and equivalent amount that he will not receive for similar ownership for other businesses.

228.     As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. § 1962(b), plaintiff has been damaged in other actual and prospective business opportunities. Plaintiff is only 42 years old, and his actual and prospective business and property will be damaged for the rest of his life.

229.     As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. § 1962(b), MFS is still controlled by CLC, KJC, and State Bar even though that control was acquired and is maintained through a pattern of racketeering activity, and even after the

Exhibit 9
Page 201

1   fraudulent claims propounded filed by CLC and KJC for MFS using those interests in or

2   control of MFS were rejected on May 1, 2019, by the trial Court "with every fiber of [its]

3   being."

4   230.    As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. §

5           1962(b), adjudication of plaintiff's claims are repeatedly compromised and delayed

6           through artificial State procedures enabling criminal conduct through MFS, State Bar, and

7           Orange County Superior Court.

8   231.    As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. §

9           1962(b), plaintiff has been injured in his business and property in that he experienced an

10          emotional breakdown and resigned from a health technology company he started after

11          Jorge E. Navarrete and California Supreme Court defrauded him under color of state law

12          in March 2021 which caused him $5,649,297 in damages, and further tainted his ability

13          to develop business and obtain property.

14  232.    As direct and proximate result of the Count IV Defendant(s) violation of 18 U.S.C.

15          § 1962(b), Beck lost an opportunity offered to him to work with an A-List celebrity to

16          produce a podcast in 2021.

17  233.    As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. §

18          1962(b), plaintiff seeks actual damages of $1,700,000 from fees, policies, and converted

19          assets paid to The State Bar of California enterprise.

20  234.    As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. §

21          1962(b), plaintiff seeks other lifetime remuneration he will not receive of $138,889,249 in

22          business and property.

23  235.    As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. §

24          1962(b), plaintiff seeks his damages, treble damages, and injunctive relief.

25  236.    WHEREFORE, plaintiff requests this Court enter judgment against Count IV

26          Defendants as follows:

27

28

Exhibit 9
Page 202

237.     JUDGMENT in favor of plaintiff JUSTIN S. BECK against KENNETH CATANZARITE; CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 18 U.S.C. § 1962(b).

238.     MONEY JUDGMENT in favor of plaintiff JUSTIN S. BECK against KENNETH CATANZARITE; CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for damages in the amount of $210,683,999.

239.     MONEY JUDGMENT in favor of JUSTIN S. BECK against KENNETH CATANZARITE; CATANZARITE LAW CORPORATION; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for treble damages in the amount of $632,051,997.

240.     PERMANENT INJUNCTION against the maintenance of any interest in or control of MFS by Count IV Defendant(s) or any person associated or acting in concert with them including Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James O'Keefe, Eric V. Anderton or Jim Travis Tice, and each of them, and such other relief as the Court deems just.

48                                          23-CV-00018-JVS-DFM

Exhibit 9
Page 203

COUNT V

**ACQUIRED INTERESTS IN OR CONTROL OF AN ENTERPRISE**

**THROUGH A PATTERN OF RACKETEERING ACTIVITY**

**Violation of 18 U.S.C. § 1962(b)**

241.     The allegations of paragraphs ¶ 1 through ¶ 239 are incorporated herein by reference as if they were set forth fully.

242.     This Count V is against defendants RUBEN DURAN, ELI DAVID MORGENSTERN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count V Defendant(s)").

243.     The State Bar of California is an enterprise engaged in and whose activities affect $3.63 trillion in interstate commerce, which enterprise includes Board of Trustees, Office of General Counsel, Office of Chief Trial Counsel, and 286,000 living licensees, of whom nearly 197,000 are on active status.

244.     For all times relevant, Ruben Duran acquired or maintained interests in or control of The State Bar of California enterprise through Board of Trustees by engaging in (directly or indirectly) a pattern of mail fraud and wire fraud against the non-attorney public, and through carrying on the unlawful activity of The State Bar of California enterprise.

245.     For all times relevant, Suzanne Grandt acquired or maintained interests in or control of The State Bar of California enterprise through Office of General Counsel by engaging

49                                   23-CV-00018-JVS-DFM

Exhibit 9
Page 204

1    in a pattern of mail fraud and wire fraud, and through carrying on the unlawful activity of

2    The State Bar of California enterprise.

3    246.    For all times relevant, Eli David Morgenstern acquired or maintained interests in or

4    control of The State Bar of California enterprise through Office of Chief Trial Counsel by

5    engaging in a pattern of mail fraud and wire fraud, and through carrying on the unlawful

6    activity of The State Bar of California enterprise.

7    247.    For all times relevant, State of California lacked direct supervision of State Bar, and

8    the racketeering activity described above was conducted unequally, and there was no

9    clearly articulated State policy which allowed the racketeering activity.

10   248.    The preceding acts, including the overt acts set forth above, constitute a pattern of

11   racketeering activity pursuant to 18 U.S.C. § 1961(5).

12   249.    The Count V Defendant(s) have directly and indirectly acquired or maintained

13   interest in or control of an enterprise through a pattern of racketeering activity described

14   above, in violation of 18 U.S.C. § 1962(b).

15   250.    As direct and proximate cause of Count V Defendant(s) violation of 18 U.S.C. §

16   1962(b), plaintiff has been injured in his actual and prospective business and property.

17   251.    As direct and proximate result of Count V Defendant(s) violation of 18 U.S.C. §

18   1962(b), plaintiff has been damaged in his business and property as set forth in all

19   preceding paragraphs and therefore seeks his damages, treble damages, attorney's fees, and

20   injunctive relief.

21   252.    WHEREFORE, plaintiff requests this Court enter judgment against the Count V

22   Defendant(s):

23   253.    JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN;

24   ELI DAVID MORGENSTERN; SUZANNE GRANDT; THE STATE BAR OF

25   CALIFORNIA; and STATE OF CALIFORNIA for violation of 18 U.S.C. § 1962(b).

26   254.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN

27   DURAN; ELI DAVID MORGENSTERN; SUZANNE GRANDT; THE STATE BAR OF

28

50                          23-CV-00018-JVS-DFM

Exhibit 9
Page 205

1    CALIFORNIA; and STATE OF CALIFORNIA in the amount equal to any amount failing

2    in the preceding paragraphs and Counts I through Count IV as an alternative.

3    255.    PERMANENT INJUNCTION as the Court deems just.

11                              **COUNT VI**

12             **FOURTEENTH AMENDMENT—DUE PROCESS**

13                        **STATE CREATED DANGER**

14                      **Violation of 42 U.S.C. § 1983**

15    256.    The allegations of paragraphs ¶ 1 through ¶ 253 are incorporated herein by reference

16    as if they were set forth fully.

17    257.    This Count VI is against defendants RUBEN DURAN; SUZANNE GRANDT; ELI

18    DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF

19    CALIFORNIA (the "Count VI Defendant(s)").

20    258.    This Count VI is for violation of 42 U.S.C. § 1983 which provides:

21    Every person who, under color of any statute, ordinance, regulation, custom, or
      usage, of any State or Territory or the District of Columbia, subjects, or causes to
22    be subjected, any citizen of the United States or other person within the
      jurisdiction thereof to the deprivation of any rights, privileges, or immunities
23    secured by the Constitution and laws, shall be liable to the party injured in an
      action at law, suit in equity, or other proper proceeding for redress, except that in
24    any action brought against a judicial officer for an act or omission taken in such
      officer's judicial capacity, injunctive relief shall not be granted unless a
25    declaratory decree was violated or declaratory relief was unavailable. For the
26    purposes of this section, any Act of Congress applicable exclusively to the District
      of Columbia shall be considered to be a statute of the District of Columbia.
27

28

                                        51                    23-CV-00018-JVS-DFM

Exhibit 9
Page 206

259. In the 9th Circuit, "[i]t is well settled that a "person" subject to liability can be an individual sued in an individual capacity (*see Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)) or in an official capacity (*see Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)). A "person" subject to liability can also be a local governing body (*see Waggy v. Spokane County*, 594 F.3d 707, 713 (9th Cir. 2010).

260. This Count VI is brought against RUBEN DURAN, SUZANNE GRANDT, and ELI DAVID MORGENSTERN acting individually and in their official capacity, where THE STATE BAR OF CALIFORNIA is controlled by active market participants in regulation due to STATE OF CALIFORNIA's decisions.

261. RUBEN DURAN, SUZANNE GRANDT, and ELI DAVID MORGENSTERN each deprived plaintiff of particular rights under the United States Constitution.

262. In this case, Duran, Grandt, and Morgenstern deprived plaintiff of his rights under the Fourteenth Amendment to the Constitution when each ratified the serial schemes to defraud by mail and wire involving State Bar, KJC, and CLC, and thereby placed the plaintiff into further danger through affirmative acts.

263. Under the Fourteenth Amendment, plaintiff has the constitutional right to be free from a government employee affirmatively placing plaintiff in a position of actual, particularized danger (or in a situation of actual, particularized danger that is more dangerous than the position that the plaintiff already faced) if the government employee acted with deliberate indifference to a known or obvious danger.

264. In order to prove Duran, Grandt, and Morgenstern deprived the plaintiff of this Fourteenth Amendment right, the plaintiff must prove the following by a preponderance of the evidence: (1) the defendants committed an affirmative act; (2) the affirmative act placed the plaintiff in a position of an actual, particularized danger by creating or exposing the plaintiff to a danger that he would not have otherwise faced; (3) the defendant acted with deliberate indifference to a known or obvious danger; and (4) the affirmative act that created that actual, particularized danger caused injury to the plaintiff that was foreseeable.

52

23-CV-00018-JVS-DFM

Exhibit 9
Page 207

265.   In this context, "deliberate indifference" means that the defendants disregarded a known or obvious consequence of their actions. In other words, the defendant must have known that something was going to happen to plaintiff but ignored the risk and still exposed the plaintiff to that risk.

266.   Duran, Grandt, and Morgenstern each committed an affirmative act, and each did know that something was going to happen to plaintiff but they ignored the risk.

267.   The affirmative act of Duran, Grandt, and Morgenstern placed plaintiff in a position of an actual, particularized danger by creating or exposing the plaintiff to a danger that he would not otherwise have faced.

268.   Duran, Grandt, and Morgenstern acted with deliberate indifference to the known and obvious danger.

269.   The affirmative act that created the actual, particularized danger caused injury to the plaintiff that was foreseeable.

270.   As direct and proximate cause of Duran, Grandt, and Morgenstern violating plaintiff's clearly established constitutional rights, and State Bar's deliberate disregard of plaintiff, plaintiff was actually damaged, and he seeks special damages caused by the violation of his particular rights.

271.   $138,889,249 for actual damages and future damages as set forth above

272.   $138,889,249 for pain, suffering, inconvenience, and oppression

273.   $138,889,249 for severe emotional distress leading to a seizure in Dec. 2022

274.   $138,889,249 for loss of consortium and inability to marry

275.   $138,889,249 for becoming disenfranchised, losing trust in State government

276.   $138,889,249 for severe grief, losing his parents and a mentor building CTI

277.   $138,889,249 for loss of enjoyment of life, consideration of suicide

278.   $138,889,249 for humiliation, losing friends and colleagues

279.   $138,889,249 for loss of 20% of left arm due to surgery delays due to Grandt

280.   $138,889,249 for ratifying KJC, BW, TJO, CLC, NMC conduct pre-9/14/18

281.   $138,889,249 for ratifying KJC, BW, TJO, CLC, NMC conduct post-9/14/18

1    282.    Plaintiff also seeks punitive damages equal to the maximum amount permissible

2    under the law but not less than $138,889,249 and up to $1,388,892,490.

3    283.    WHEREFORE, plaintiff requests this Court enter judgment against the Count VI

4    Defendant(s):

5    284.    JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN;

6    SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF

7    CALIFORNIA; and STATE OF CALIFORNIA for violation of 42 U.S.C. § 1983.

8    285.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN

9    DURAN, SUZANNE GRANDT, ELI DAVID MORGENSTERN, THE STATE BAR OF

10   CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for damages of

11   $138,889,249.

12   286.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN

13   DURAN, SUZANNE GRANDT, ELI DAVID MORGENSTERN, THE STATE BAR OF

14   CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for special damages

15   of not less than $138,889,249 and up to $1,388,892,490.

16   287.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN

17   DURAN, SUZANNE GRANDT, ELI DAVID MORGENSTERN, THE STATE BAR OF

18   CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for punitive damages

19   of not less than $138,889,249 and up to $1,388,892,490.

20   288.    PERMANENT INJUNCTION as the Court deems just.

21

22

23

24

25

26

27

28

54                              23-CV-00018-JVS-DFM

Exhibit 9
Page 209

**COUNT VII**

**FIRST AMENDMENT—"CITIZEN" PLAINTIFF**

**Violation of 42 U.S.C. § 1983**

289.     The allegations of paragraphs ¶ 1 through ¶ 288 are incorporated herein by reference as if they were set forth fully.

290.     This Count VII is against RUBEN DURAN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count VII Defendant(s)").

291.     Under the First Amendment, a citizen has the right to petition the government and access the courts. To establish the Count VII Defendant(s) deprived the plaintiff of this First Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

292.     (1 ) The plaintiff was engaged in a constitutionally protected activity; (2 ) the Count Defendant(s) actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3 ) the plaintiff's protected activity was a substantial and motivating factor in the defendant's conduct.

293.     (1 ) Plaintiff's petitioning against the Count VII Defendant(s) was protected under the First Amendment, and therefore, the first element requires no proof.

294.     (2 ) The Count VII Defendant(s) actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

23-CV-00018-JVS-DFM

Exhibit 9
Page 210

295.      (3) The plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct.

296.      As direct and proximate cause of Count VII Defendant(s) violating plaintiff's clearly established constitutional rights, plaintiff was actually damaged, and he seeks special damages caused by the violation of his particular rights for any amount failing in Count I through Count VI.

297.      Plaintiff also seeks punitive damages equal to the maximum amount permissible under the law but not less than $138,889,249 and up to $1,388,892,490.

298.      WHEREFORE, plaintiff requests this Court enter judgment against the Count VII Defendant(s):

299.      JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 42 U.S.C. § 1983.

300.      MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for damages equal to any amount failing Counts I through Count VI as an alternative.

301.      MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for special damages for any amount failing Count VI as an alternative.

302.      MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for punitive damages for any amount failing Count VI as an alternative.

303.      PERMANENT INJUNCTION as the Court deems just.

23-CV-00018-JVS-DFM

Exhibit 9
Page 211

**PLAINTIFF DEMANDS TRIAL BY JURY**

304.　　For the foregoing reasons, plaintiff requests the Court enter judgment in his favor as set forth above.

305.　　Plaintiff requests this Court act *Sua sponte* to restrict or enjoin the conduct at issue so that it does not contaminate this proceeding or cause further harm to plaintiff, the public, or the United States amidst $3.63 trillion interstate commerce – including but not limited to the appointment of non-partisan or bi-partisan racketeering investigator(s) under 18 U.S.C. § 1968 as a matter of public interest.

306.　　CERTIFICATION AND CLOSING. Under F. R. Civ. P. 11, by signing below, I certify to the best of my knowledge, information, and believe that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law, or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support[]; and (4) the complaint otherwise complies with the requirements of Rule 11.

JANUARY 28, 2023

Certified and Verified as True　　　　JUSTIN S. BECK, as individual plaintiff

*In Propria Persona*

57　　　　　　　　　　　　23-CV-00018-JVS-DFM

Exhibit 9
Page 212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

58                                    23-CV-00018-JVS-DFM

Exhibit 9
Page 213

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JUSTIN S. BECK | STATE OF CALIFORNIA |

(b) County of Residence of First Listed Plaintiff **SAN DIEGO**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **SACRAMENTO**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**FILED**
Jan 30 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/melodyq DEPUTY

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
IN PRO PER

Attorneys *(If Known)*
OFFICE OF ATTORNEY GENERAL

**'23 CV 0164 MMA DEB**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1962 (RICO); 15 U.S.C. 15 (ANTITRUST)
Brief description of cause:
RACKETEERING; ANTITRUST (SHERMAN ACT/CLAYTON ACT); CIVIL RIGHTS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $2 BILLION

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE CYNTHIA A. BASHANT
DOCKET NUMBER 3:22-CV-01616-BAS-DDL

DATE 1/30/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Exhibit 9
Page 214

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS143263
Cashier ID: jmart
Transaction Date: 01/30/2023
Payer Name: Justin Stearns Beck
------------------------------------
CIVIL FILING FEE- NON-PRISONER
  For: Justin Stearns Beck
  Case/Party: D-CAS-3-23-CV-000164-001
  Amount:       $402.00
------------------------------------
CREDIT CARD
  Amt Tendered:  $402.00
------------------------------------
Total Due:      $402.00
Total Tendered: $402.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.

Exhibit 9
Page 215

# EXHIBIT 10

Exhibit 10
Page 216

SUPREME COURT
FILED

SEP 2 6 2017

Jorge Navarrete Clerk

Deputy

ADMINISTRATIVE ORDER 2017-09-20

# IN THE SUPREME COURT OF CALIFORNIA

## EN BANC

## STATE BAR ANTITRUST POLICY

## PREAMBLE

The California Supreme Court has the inherent authority to regulate the practice of law in this state. The State Bar of California is the administrative arm of the Supreme Court for attorney licensing, regulation, and discipline. The State Bar acts under the authority and at the direction of the Supreme Court in these matters. The Supreme Court's authority over the State Bar includes the authority to review State Bar actions for antitrust issues and impacts on competition. The Supreme Court, in the exercise of its inherent authority, may conduct a de novo review and may modify or reject any policy or action of the State Bar relating to the regulation of the practice of law, including any that may implicate antitrust and competition issues.

Antitrust laws are designed to promote vigorous and fair competition in the marketplace of competitors and to provide consumers with the best combination of price and quality. The antitrust laws are set forth in the Sherman Act, Federal Trade Commission Act, the Clayton Act, and the Robinson-Patman Act, among other statutes. These laws prohibit anticompetitive activities, including price fixing, attempts to monopolize, and other unreasonable restraints on trade. Unless

1

Exhibit 10
Page 217

otherwise lawfully mandated by the California Legislature or the California Supreme Court, the State Bar must take no action in violation of the antitrust laws.

Although focused on private conduct, antitrust laws may apply to public entities under certain circumstances. When the action complained of is that of a sovereign arm of the state (such as a state legislature or a state Supreme Court acting in a legislative capacity), the state as a sovereign may enjoy immunity from the antitrust laws, notwithstanding any impact on competition. (*N.C. State Bd. of Dental Exam'rs v. FTC* (2015) __ U.S. __, __ [135 S.Ct. 1101, 1110]; *Hoover v. Ronwin* (1984) 466 U.S. 558, 567-568.)

The State Bar is a public licensing and regulatory entity that acts under the authority lawfully delegated to it by the sovereign arms of the State of California: the Supreme Court and the Legislature. The United States Supreme Court has held that, under certain circumstances, state licensing entities or boards must prove two elements before they may invoke the state action doctrine: first, the challenged restraint has been adopted pursuant to clearly articulated state policy; and second, the policy is being actively supervised by a state official (or state agency) that is not a participant in the market that is being regulated. (*N.C. State Bd. of Dental Exam'rs v. FTC*, *supra*, 135 S.Ct. at p. 1110; see also Fed. Trade Com., FTC Staff Guidance on Active Supervision of State Regulatory Boards Controlled by Market Participants (Oct. 2015) <https://www.ftc.gov/system/files/attachments/competition-policy-guidance/active_supervision_of_state_boards.pdf.> [as of Sept. 20, 2017].)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

<div align="center">2</div>

Exhibit 10
Page 218

## ORDER

Pursuant to this court's authority over the State Bar, the court hereby orders the State Bar's adherence to the antitrust policy and guidelines below.

### I. ANTITRUST POLICY

The State Bar must conform to the highest standards of conduct and promote the principles of fair and open competition in all of its policies and actions in pursuit of its overarching public protection mission. Actions of the State Bar that have the effect of advancing the interests of attorneys without a clear benefit to the public must be scrutinized closely for potential antitrust violations. This antitrust policy is intended to assist in the identification and analysis of potential antitrust issues and the compliance with antitrust laws by all employees, entities, and committees that comprise the State Bar. Given the important public mission of the State Bar to enforce and uphold the law, the identification and analysis of any potential antitrust issue must be robust.

It is the responsibility of the State Bar Office of the General Counsel (OGC) to monitor antitrust issues for the State Bar. If any person has a question as to whether a proposed or current State Bar course of action implicates antitrust concerns, the matter should be submitted to OGC. OGC must analyze the matter thoroughly and determine whether the action implicates antitrust concerns. OGC's determinations may be reviewed de novo by the California Supreme Court in accordance with the Supreme Court's procedures. Any action determined by OGC to implicate antitrust concerns may not be implemented unless the Supreme Court determines the action may proceed.

### II. GUIDELINES FOR IDENTIFYING AND ADDRESSING POTENTIAL ANTITRUST ISSUES AT THE STATE BAR

#### A. Actions that Have Anticompetitive Effects May Implicate the Antitrust Laws

The threshold inquiry in antitrust analysis is whether an action has an effect that could impact competition or could be an unreasonable restraint of trade in the market for legal services. Unreasonable restraints on trade generally: raise prices; reduce output; diminish quality; limit choice; or create, maintain, or enhance market power. Anticompetitive practices may arise when a state empowers a group of active market participants to decide who can participate in its market and on what terms.

3

Exhibit 10
Page 219

If the action or proposed action does not affect competition or has only a de minimis impact, the antitrust laws are not implicated. Courts have held that individualized decisions on admissions or discipline do not impact overall competition in the market to sufficiently raise antitrust concerns. A number of the State Bar's public protection programs have no foreseeable impact on competition in the market for legal services, e.g., the Client Security Fund (compensation of victims), the Lawyer Assistance Program (counseling services for attorneys), and the Commission on Judicial Nominees Evaluation (advisory role to the Governor).

## B. The Role of the California Supreme Court Must Be Analyzed

### 1. California Supreme Court as Final Decision Maker

The California Supreme Court enjoys immunity from the antitrust laws when it acts in its sovereign legislative capacity, such as when it adopts the Rules of Professional Conduct. (*Bates v. State Bar of Arizona* (1977) 433 U.S. 350, 360.) Where the State Bar makes only recommendations to the Supreme Court, and the Supreme Court makes the final decision after the opportunity for a de novo review of the recommendation, the actions are those of the state and may be immune from the antitrust laws, notwithstanding any impact on competition. (See, e.g., Supreme Court Order Approving Modifications to the Cal. Bar Exam, S232907, Mar. 16, 2016.)

The California Supreme Court often exercises its inherent authority to modify or disapprove proposed rules recommended by the State Bar. (See, e.g., Supreme Court Order re Request for Approval of Amends. to Rule 5-110 and Rule 5-220 of the Rules of Professional Conduct of the State Bar of Cal., S239387, May 1, 2017 [granting in part request for approval of recommended amendments to the Rules of Professional Conduct; denying in part and remanding to State Bar to develop further recommendations].)

### 2. Actions and Decisions of the State Bar

If an action of a regulatory agency such as the State Bar has a potential anticompetitive effect, and is not an action of the Supreme Court or the Legislature acting as sovereign, closer analysis will be required. Under these circumstances antitrust immunity is available only if the regulatory entity's action is subject to *active state supervision* and is undertaken pursuant to a *clearly articulated state policy*.

(a) **Active State Supervision**: Federal Trade Commission staff has issued nonbinding advisory guidelines stating that the following factors should

4

Exhibit 10
Page 220

be considered in determining whether the active supervision requirement is met:

    (i)    Whether the state supervisor of the regulatory entity has obtained the information necessary for a proper evaluation of the action approved by the regulatory entity.

    (ii)    Whether the state supervisor has evaluated the substantive merits of the regulatory entity's action and assessed whether it comports with the standards established by the Supreme Court or the Legislature.

    (iii)    Whether the state supervisor has issued a written decision approving, modifying, or disapproving the regulatory entity's action and explaining the reasons and rationale for such decision.

(b) **Clearly Articulated State Policy**: When undertaking action that may be anticompetitive, the regulatory entity must also act pursuant to a clearly articulated state policy of the Supreme Court or Legislature to displace competition.

Example: A state bar could be in violation of the antitrust laws if it acts in an anticompetitive manner outside of a clearly articulated state policy. In *Goldfarb v. Virginia State Bar* (1975) 421 U.S. 773, the Virginia State Bar took action to enforce a minimum fee schedule for lawyers that had not been authorized by the Virginia Supreme Court. The Virginia Supreme Court had not supervised this anticompetitive action, nor was there any clearly articulated statutory or court policy authorizing enforcement of the fee schedule. The United States Supreme Court held the Virginia State Bar's actions constituted illegal price fixing and were not immune from the antitrust laws.

(c) **Detailed Statute or Rule of Court**: The active state supervision and clearly articulated state policy requirements are met when the applicable statute or Rule of Court is so detailed and prescriptive as to remove the regulatory entity's discretion. The detailed legislation or court rule itself articulates the policy and satisfies the supervision requirement. (98 Ops.Cal.Atty.Gen. 12 (2015).)

Example: The State Bar is required by law to place on inactive status attorneys who fail to comply with mandatory continuing legal education requirements. (Bus. & Prof. Code, § 6070, subd. (a); Cal. Rules of Court, rule 9.31(d).) Although the State Bar's actions to remove these

attorneys from practice temporarily may impact competition, such actions are only a ministerial activity to enforce the statute and likely would not violate the antitrust laws.

## C. State Bar Personnel Must Report Potential Antitrust Violations Immediately

### 1. Sensitive Topics

Actions such as collusion among attorneys to fix prices, limit market entry, or otherwise limit competition, whether or not under the auspices of the State Bar, violate the antitrust laws. Meetings convened by the State Bar often involve groups of attorneys who may be considered competitors in the marketplace under the antitrust laws, and discussions in such meetings of price or costs, such as prevailing hourly billing rates and associate or staff salaries, may implicate antitrust concerns. The State Bar may not take actions that have an anticompetitive effect on the marketplace unless authorized by law.

### 2. Mandatory Reporting

State Bar personnel must comply with the antitrust laws and must immediately report to OGC potential antitrust violations, including but not limited to potential violations caused by actions of the State Bar or the Board of Trustees. In the event OGC reviews a current or proposed action, program, or policy decision and opines there is no potential antitrust violation, OGC remains obligated to forward its analysis to the California Supreme Court, which may choose whether to review the action, program, or policy decision as it deems appropriate.

## D. Potential Antitrust Violations Reported by Members of the Public

Any member of the public may report a potential antitrust violation to the State Bar. The State Bar's determinations on reports of potential antitrust violations brought by members of the public are subject to review by the California Supreme Court in accordance with the Supreme Court's procedures. (Cal. Rules of Court, rule 9.13(d), (e).)

//
//
//
//
//
//
//

6

Exhibit 10
Page 222

This order is final forthwith.

CANTIL-SAKAUYE
_Chief Justice_

CHIN, J.
_Associate Justice_

CORRIGAN, J.
_Associate Justice_

LIU, J.
_Associate Justice_

CUÉLLAR, J.
_Associate Justice_

KRUGER, J.
_Associate Justice_

_Associate Justice_

7

Exhibit 10
Page 223

## DECLARATION OF SERVICE

I, Charles Tsai, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of Los Angeles, that my business address is The State Bar of California, 845 S. Figueroa Street, Los Angeles CA 90017.

On February 10, 2023, following ordinary business practice, I filed via the United States District Court, Southern District of California electronic case filing system, the following:

**STATE BAR DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Participants in the case who are registered CM/ECF users will be served.
*See the CM/ECF service list.*

I served the following party, not a registered CM/ECF user, by U.S. Mail as follows:

Justin S. Beck
3501 Roselle Street
Oceanside CA 92056

***In Pro Per Plaintiff***

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Los Angeles, California on February 10, 2023.

/s/ *Charles Tsai*
Charles Tsai