FILED

FEB 1 3 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___DM___ DEPUTY

1 | Justin S. Beck
2 | 3501 Roselle St.,
   | Oceanside, CA 92056
3 | 760-449-2509
4 | justintimesd@gmail.com
5 | *In Propria Persona + Guardian Ad Litem*

6 | **IN THE UNITED STATES DISTRICT COURT**
7 | **FOR THE**
   | **SOUTHERN DISTRICT OF CALIFORNIA**
8

9 | JUSTIN S. BECK, individually, and as )    Case No.: <u>3:22-CV-01616-BAS-DDL</u>
   | guardian ad litem for ROES 1-150,000, and as )
10 | guardian ad litem for for U.S.A        )    Honorable Cynthia A. Bashant
   | )
11 |        Plaintiffs,      )    Hearing Date: March 27, 2023
   | )
12 | )
   |     vs.              )    NO ORAL ARGUMENT UNLESS
13 |                           )    ORDERED BY THE COURT
   | CATANZARITE LAW CORPORATION; )
14 | STATE OF CALIFORNIA; THE STATE BAR )    **PLAINTIFF'S REQUEST FOR JUDICIAL**
   | OF CALIFORNIA; ORANGE COUNTY    )    **NOTICE OF ADJUDICATIVE FACTS IN**
15 | SUPERIOR COURT; ORANGE COUNTY   )    **OPPOSITION TO MOTION TO DISMISS**
16 | DISTRICT ATTORNEY'S OFFICE; RUBEN )    **AND IN SUPPORT OF CROSS MOTION**
   | DURAN, ESQ.; SUZANNE CELIA      )    **TO STIRKE STATE BAR DEFENDANTS'**
17 | GRANDT, ESQ.; RICHARD FRANCIS    )    **MOTION TO DISMISS**
   | O'CONNOR, JR.; MOHAMMED       )
18 | ZAKHIREH; JAMES DUFFY; KENNETH   )    Filed concurrently with:
19 | CATANZARITE, ESQ.; JIM TRAVIS TICE, )
   | ESQ.; NICOLE MARIE CATANZARITE    )     Cross Motion to Strike Motion to Dismiss
20 | WOODWARD, ESQ.; BRANDON       )
21 | WOODWWARD, ESQ.; TIM JAMES     )     Memorandum in Opposition to Motion
   | O'KEEFE, ESQ.; AMY JEANETTE      )
22 | COOPER; CLIFF HIGGERSON; ELI DAVID )     Memorandum in Support of Cross Motion
   | MORGENSTERN, ESQ.; LEAH WILSON,   )
23 | ESQ.; ROBERT GEORGE RETANA, ESQ.; )     Proposed Order to Strike Motion to Dismiss
24 | ELLIN DAVTYAN, ESQ.; JOHN C.      )
   | GASTELUM; JORGE E. NAVARETTE;    )
25 | GEORGE SARGENT CARDONA, ESQ.;   )
   | ANTHONY B. SCUDDER          )
26 |           Defendants,     )
27 |                               )
   | UNITED STATES ATTORNEY GENERAL; )
28 | UNITED STATES OF AMERICA      )
   |         Nominal Defendants      )

                                    1             8:22-CV-01616-BAS-DDL

<u>REQUEST FOR JUDICIAL NOTICE OF ADJUDICATIVE FACTS</u>

TO DEFENDANTS, UNITED STATES, AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Evidence 201, Plaintiff Justin S. Beck individually hereby requests that this Court take judicial notice of the following documents in opposition of the State Bar Defendants' motion to dismiss Plaintiff's First Amended Complaint for Damages & Extraordinary Relief ("FAC") as to all claims against the State Bar Defendants, and in support of the Plaintiff's cross motion to strike the motion to dismiss.

1. Plaintiff's motion for summary judgment in Orange County Superior Court Case No. 30-2021-01237499, a true and correct copy of which is on the record of this Court at Document #26-3, also attached. Exhibit 19 is a public record of the Orange County Superior Court, filed July 18, 2022, and scheduled for October 4, 2022, which was before the demurrer hearing October 11, 2022, before it was moved to accommodate The State Bar of California.

2. The First Amended Complaint of Plaintiff in 3:23-CV-0164-MMA-DEB, a true and correct copy of which is attached as Exhibit 340. Exhibit 340 is a public record of the U.S. District Court for the Southern District of California.

3. An "En Banc" decision on an antitrust petition that the Plaintiff did not file nor authorize to be filed in California Supreme Court, a true and correct copy of which is attached as Exhibit 61. Exhibit 61 is a public record of the California Supreme Court and is already on the record in this case at Document #15-17.

4. The Plaintiff's motion for summary judgment on Count I, Count II, Count VI, a true and correct copy of which is filed as the lead document in Docket #15 as Document #15, with all evidence cited on the record in this case in support. This motion was filed before the State Bar Defendants filed a motion to dismiss at Docket #31.

5. The Plaintiff's motion for summary judgment on Count III, a true and correct copy of of which is filed as the lead document in Docket #26 as Document #26, with all evidence cited on the record in this case in support. This motion was filed before the State Bar Defendants filed a motion to dismiss at Docket #31.

8:22-CV-01616-BAS-DDL

6. California Business and Professions Code § 6094(a), a true and correct copy of which is filed with Legislature and is attached as Exhibit #222, which shows State Bar Defendants are expressly subject to Government Claims Act as of January 1, 2019, and is already on the record in this case at Document #26-18.

Rule 201 of the Federal Rules of Evidence authorizes a court to take judicial notice of a fact that is not subject to reasonable dispute because the fact "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b). "A trial court may presume that public records are authentic and trustworthy." Gillbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999).

The Court should take judicial notice of all records in Docket #10, Docket #15, and Docket #26 of this Court as they are incorporated by reference as well as those matters cited. This Court should take judicial notice of facts #1-#64 Document #12, which request was not opposed by State Bar Defendants and was also filed before the State Bar Defendants motion to dismiss at Docket #31.

Respectfully Submitted,

February 12, 2023,

Justin S. Beck, *In Propria Persona*

Justin S. Beck, *Guardian Ad Litem*

3

8:22-CV-01616-BAS-DDL

# EXHIBIT
# 19

Exhibit #19: 001
22-CV-01616-BAS-DDL

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Justin S. Beck
3501 Roselle St.
Oceanside, California 92056
760-449-2509

*In Pro Per*

**IN THE SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ORANGE**

| | |
|---|---|
| JUSTIN S. BECK, an individual | Case No: 30-2021-01237499-CU-PN-CJC |
| Plaintiff, | Judge Assigned: Honorable John C. Gastelum |
| v. | **NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION** |
| THE STATE BAR OF CALIFORNIA, a public corporation and public entity; ANAND KUMAR, an individual employee acting in an official capacity; ELI DAVID MORGENSTERN, an individual employee acting in an official capacity; JOY NUNLEY, an individual employee acting in an official capacity; THE STATE OF CALIFORNIA, a state and public entity; and DOES 1-30 | **Date: October 4, 2022** |
| | **Reservation Number: 73773752** |
| | **Time: 2:00PM** |
| | **Unlimited Civil Case** |
| Defendants | Action Filed: December 21, 2021 |
| | Trial Date: None |

-1-

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit #19: 002
22-CV-01616-BAS-DDL

1   **TO EACH PARTY AND TO COUNSEL OF RECORD FOR EACH PARTY:**

2       **YOU ARE HEREBY NOTIFIED THAT** on October 4, 2022 at 2:00 PM, in Department C11 of this

3   Court, located at Central Justice Center, 700 W. Civic Center Blvd., Santa Ana, California, 92701 or as soon

4   thereafter as the matter will be heard, plaintiff Justin S. Beck ("Beck" or plaintiff) will move the Court, pursuant

5   to Code of Civil Procedure section 437c in accordance with Rule 3.1350, for summary judgment in favor of

6   plaintiff Justin S. Beck and against defendants The State Bar of California and State of California, and for costs

7   of suit incurred herein and such other relief as may be just ("Motion"). This Motion is made on the grounds that:

8

9   1) State Bar waived any defense to this action predicated upon Beck's procedural adherence to Government

10  Claims Act claims presentation or filing requirements. Beck filed a sufficient government claim with State Bar

11  that was denied under GOV 910 in November 2021, vesting his right to sue. Beck filed this action in December

12  2021 based on the material facts and allegations underlying his denied claim within the requisite timeframe under

13  GOV 945.6 and updated his complaint as additional facts were learned on or around May 2, 2022, which is the

14  operative complaint (FAC) upon which this Motion is based. [ROA #60]

15

16  2) Beck suffered injuries in fact that continue, including severe emotional distress, and damages to his person and

17  property that are now further evidenced by [final] adjudicated facts and law relevant to this case (including

18  evidence of legal malice in at least three actions) (G059766). Beck pleads, proves defendants' "substantial factor"

19  in his harm, *and* substantial factor in defendants' violation of one or more enactments designed to prevent similar

20  injury to Beck because Court rulings in 2019 known to State Bar in January 2020 relied upon the same burdens

21  of proof. Beck also pleads and proves the special relationship existing by and between State Bar, Beck, and

22  Catanzarite, and the unique position necessitating due care under those specific circumstances.

23

24  3) Beck pleads, proves <u>all</u> seven causes of action, with liability "otherwise provided" by statue (GOV 815, 815.2,

25  815.3, 815.6, 835) yet he needs to prove only <u>one</u> cause of action (1st, 2nd, 3rd, 5th, 6th, or 7th) by a preponderance

26  of evidence to award summary judgment in Beck's favor under Government Claims Act, and one cause of action

27  (2nd, 6th, or 7th) by clear and convincing evidence (815.3) to award summary judgment in Beck's favor in

28  intentional tort against individuals, where State and State Bar are liable under Government Claims Act.

-2-
**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 003
22-CV-01616-BAS-DDL

1    4) There is no defense to this action, because one or more mandatory duties were violated (GOV 815.6) that were

2    a substantial factor in Beck's harm (for which no immunity exists), there is no immunity for intentional tort (GOV

3    815.3), and Beck shows why State Bar's claim of immunity are misplaced and unjust where they always involve

4    reasonable* "exercise" of any "function" that were each and together a substantial factor in Beck's harm. Beck's

5    material facts (Material Facts) show disregard of Beck, and a lack of capacity. Specifically, Beck shows how the

6    decisions (namely, official operational acts that aren't subject to any codified immunity) underlying his injuries

7    were negligent (at minimum), extremely negligent (more likely), corrupt or oppressive or fraudulent or legally

8    malicious, more likely than not implying consideration or promise of consideration to public employee lawyers*,

9    or otherwise negligent and reckless beyond reasonable doubt according to actual knowledge by State Bar and the

10    actual authority under which Catanzarite, and each of them operate as of this Motion. (Beck Decl., generally) In

11    all instances, defendants are a "substantial factor" or even heightened "condition precedent" and worse sometimes

12    an "enabling factor" even when they know of Beck's injury (CRPC 5.1) but usually the *greatest* factor.

14    5) Beck is entitled to monetary judgment for his economic and non-economic damages against defendants The

15    State Bar of California and State of California because all conduct upon which liability is based on this Motion

16    was undertaken officially, and it was at least a substantial factor in harming Beck.

18    6) Beck is entitled to monetary judgment for his punitive damages against *individual* defendants DOES 1-30, Eli

19    David Morgenstern, Joy Nunley, and Anand Kumar in his favor against defendant The State Bar of California

20    and State of California on principles of *respondeat superior* and GOV 815.3 (official acts only).

22    In the alternative, plaintiff Justin S. Beck will move the Court (defined herein for convenience as the "Motion"

23    together with the motion for summary judgment) for an order adjudicating the following ISSUE [1]-[22]:

25    **ISSUE [1]:** GENERAL DUTY OWED BECK

27    **ISSUE [2]:** MANDATORY DUTY OWED BECK

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit #19: 004
22-CV-01616-BAS-DDL

**ISSUE [3]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR VIOLATION OF MANDATORY DUTY TO BECK UNDER GOV 815.6 [1st CAUSE OF ACTION DISPOSAL]

**ISSUE [4]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR NEGLIGENCE VIOLATIVE OF GOV 815 AND/OR GOV 815.2, GOV 815.3, GOV 815.6, WITH A HIGH DEGREE OF CULPABILITY [2nd CAUSE OF ACTION DISPOSAL]

**ISSUE [5]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR OFFICIAL NEGLIGENCE VIOLATIVE OF GOV 815/GOV 815.2 [3rd CAUSE OF ACTION DISPOSAL]

**ISSUE [6]:** JUDGMENT IN FAVOR OF JUSTIN S. BECK FOR PROVISIONAL LAWYER LICENSURE UNDER GOV 814 PURSUANT TO CCP 128 [4th CAUSE OF ACTION DISPOSAL]

**ISSUE [7]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR DANGEROUS CONDITION OF PUBLIC PROPERTY UNDER GOV 835 [5th CAUSE OF ACTION DISPOSAL]

**ISSUE [8]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER GOV 815 AND GOV 815.3 [6th CAUSE OF ACTION DISPOSAL]

**ISSUE [9]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR CONVERSION UNDER GOV 815, GOV 815.2, GOV 815.3, AND/OR GOV 815.6 [7th CAUSE OF ACTION DISPOSAL]

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit #19: 005
22-CV-01616-BAS-DDL

1    **ISSUE [10]**: THERE IS NO DEFENSE TO THIS ACTION FOR DEFENDANT THE STATE BAR OF

2    CALIFORNIA

3

4    **ISSUE [11]**: IMMUNITY UNDER GOV 815 NOT APPLICABLE TO INSTANT ACTION

5

6    **ISSUE [12]**: IMMUNITY UNDER GOV 818.2 NOT APPLICABLE TO INSTANT ACTION

7

8    **ISSUE [13]**: IMMUNITY UNDER GOV 818.4 NOT APPLICABLE TO INSTANT ACTION

9

10    **ISSUE [14]**: IMMUNITY UNDER GOV 820 NOT APPLICABLE TO INSTANT ACTION

11

12    **ISSUE [15]**: IMMUNITY UNDER GOV 820.2 NOT APPLICABLE TO INSTANT ACTION

13

14    **ISSUE [16]**: IMMUNITY UNDER GOV 820.4 NOT APPLICABLE TO INSTANT ACTION

15

16    **ISSUE [17]**: IMMUNITY UNDER GOV 820.8 NOT APPLICABLE TO INSTANT ACTION

17

18    **ISSUE [18]**: IMMUNITY UNDER GOV 821 NOT APPLICABLE TO INSTANT ACTION

19

20    **ISSUE [19]**: IMMUNITY UNDER GOV 821.2 NOT APPLICABLE TO INSTANT ACTION

21

22    **ISSUE [20]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE

23    STATE BAR OF CALIFORNA AND STATE OF CALIFORNIA FOR HIS ECONOMIC DAMAGES

24

25    **ISSUE [21]**: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE

26    STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR HIS NON-ECONOMIC DAMAGES

27

28

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 006
22-CV-01616-BAS-DDL

1    ISSUE [22]: JUDGMENT IN FAVOR OF PLAINTIFF JUSTIN S. BECK AGAINST DEFENDANTS THE
2    STATE BAR OF CALIFORNIA AND STATE OF CALIFORNIA FOR PUNITIVE DAMAGES ARISING
3    FROM INDIVIDUAL DEFENDANTS ACTING OFFICIALLY
4
5    Plaintiff Justin S. Beck therefore seeks an order that the final judgment in this action shall, in addition to any
6    matters determined at trial, award judgment as established by such adjudication.
7          The Motion will be based on this notice, the attached memorandum in support, the separate statement of
8    undisputed material facts, the declaration of Justin S. Beck filed with this motion, the files and records in this
9    action, and any further evidence or argument that the Court may properly receive at or before the hearing.
10
11         DATE: July 17, 2022
12
                                                    _____
13                                                  By Justin S. Beck, plaintiff and moving party
                                                    *In Pro Per*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit #19: 007
22-CV-01616-BAS-DDL

1

**TABLE OF AUTHORITIES**

2

CASES CITED IN MATERIAL FACTS OR MOTION OR FAC

3    *Alejo, supra,* 75 Cal.App.4th at p. 1194

4    *Brown v. USA Taekwondo* (2019) 40 Cal.App.5th 1091 (*Brown*)

5    *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204 (*Brown v. USAT*)

6    *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059

7    *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 76-77 (*Forrest*)

8    *Rodriquez v. Inglewood Unified School District* (1986) 186 Cal.App.3d 707 No. 68809.) (*Rodriguez*)

9    *Guzman v. County of Monterey,* 46 Cal.4th 887, 209 P.3D 89, 95 Cal.Rptr.3D 183 (*Guzman*)

10    *Hoff v. Vacaville Unified School Dist.* (19 Cal.4th 925 (Cal. 1998) (*Hoff*)

11    *Kimes v. Grosser* (2011) 195 Cal.App.4th 1556)

12    *Knutson, supra,* 25 Cal.App.5th at p. 1094

13    *Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 646

14    *Ramos v. County of Madera* (1971) 4 Cal.3d 685, 695

15    *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619 (*Regents*)

16    *Johnson v. County of Los Angeles* (1983) 143 Cal.App.3d 298, 307-308 [191 Cal. Rptr.704] (*Johnson*)

17    *Tarasoff v. Regents of University of California, supra,* 17 Cal.3d at p. 435 (*Tarasoff*)

18    *Michel v. Smith* (1922) 188 Cal. 199

19    *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 462

20    *Ponsonby v. Sacramento Suburban Fruit Lands Co.* (1930) 210 Cal. 229, 232

21    *Ramos v. County of Madera* (1971) 4 Cal.3d 685, 695

22    *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619

23    *Rodriguez v. County of L.A.* (2014) 2014 US Dist LEXIS 183381

24    *Saben, Earlix & Associat es v. Fil et* (2005) 134 Cal.App.4th 1024, 1032

25    *Stanley, supra,* 35 Cal.App.4th at p. 1087.)

26    *Thompson v. County of Alameda, supra,* 27 Cal.3d at p. 755)

27    *Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.A pp3d 639, 646

28    *Washington, supra,* 38 Cal.A pp4th at pp. 895-896; Gov. Code, § 815

-7-

Exhibit #19: 008
22-CV-01616-BAS-DDL

| | |
|---|---|
| 1 | CODES (US) |
| 2 | Title 15 U.S.C § 1 (Sherman Act) |
| 3 | Title 18 U.S.C § 1962 (RICO) |
| 4 | Title 10 U.S.C. § 921 – Art. 121 (Larceny) |
| 5 | |
| 6 | CODES (CALIFORNIA) |
| 7 | CCP 437c, et seq. (Motion Bases) |
| 8 | RULE 3.3150, et seq. (Motion Rules) |
| 9 | BPC 6001.1 (Protection of Beck is Paramount) |
| 10 | BPC 6077 (CRPC Binding on All Licensees) |
| 11 | BPC 6094 (State Bar Subject to GOV 810, et. seq) |
| 12 | CRPC 1.01 (Terminology) |
| 13 | CPRC 5.1 (Supervisory Lawyers) |
| 14 | CRPC 1.7 (Conflicts of Interest) |
| 15 | CRPC 1.9 (Duties to Former Clients) |
| 16 | CRPC 8.4 (Moral Turpitude Including Fraud) |
| 17 | BPC 6104 (Appearing Corruptly and Willfully, without Authority) |
| 18 | BPC 6106 (Dishonesty and Corruption) |
| 19 | GOV 810, et seq. (Liability Sections of Instant Action) |
| 20 | GOV 814 (Relief Other than Money or Damages) |
| 21 | GOV 815 (State Bar and State) |
| 22 | GOV 815.2 (Based on CCP 1714 and Reasonable Care) |
| 23 | GOV 815.3 (Intentional Tort with State Bar and DOES in Same Action Defendants) |
| 24 | GOV 815.6 (Liability for Violation of Mandatory Duty) |
| 25 | GOV 818.2 (Inapplicable or Irrelevant Immunity) |
| 26 | GOV 818.4 (Inapplicable or Irrelevant Immunity) |
| 27 | GOV 820 (Inapplicable or Irrelevant Immunity) |
| 28 | GOV 820.2 (Inapplicable or Irrelevant Immunity) |

-8-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 009
22-CV-01616-BAS-DDL

1   GOV 820.4 (Inapplicable or Irrelevant Immunity)

2   GOV 820.8 (Inapplicable or Irrelevant Immunity)

3   GOV 821 (Inapplicable or Irrelevant Immunity)

4   GOV 821.2 (Inapplicable or Irrelevant Immunity)

5   GOV 835 (Dangerous Condition of Public Premises Liability)

6                              OTHER AUTHORITIES

7   CACI No. 430 2022 ("Substantial Factor")

8   Cal. Law Revision Com. com. to Gov. Code, § 818.2

9   4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 555, p. 2822

10   Prosser, Law of Torts [3d ed. 1964] at pp. 332-333.

11   Rest.3d Torts, supra, § 40, com. h, pp. 42–43.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 010
22-CV-01616-BAS-DDL

1    I.      INTRODUCTION

2    II.     SUMMARY OF RELEVANT FACTS TO DISPOSE OF MOTION

3        A. Beck Noticed State Bar of His Injuries in January 2020 Under Oath [ROA #49]

4        B. Beck Noticed State Bar Again in March 2021 Under Oath [ROA #49]

5        C. Adjudicated Facts/Law Prove Beck's Harm, Undermine State Bar "Protection" (G059766)

6    III.    LEGAL DISCUSSION

7        A. Multiple Legal Theories Support Summary Judgment in Beck's Favor

8            1. Violations of Mandatory Duty Substantial Factor in Beck's Injury

9            2. Negligence (High Culpability/Understaffing) Also Substantial Factor

10           3. Negligence in Violation of Other Duties Also Substantial Factor

11           4. Beck's Refined Request for Relief is Reasonable Under GOV 814

12           5. Dangerous Conditions of State Bar Premises Also Substantial Factor

13           6. State Bar Substantial Factor in Beck's Severe Emotional Distress

14           7. State Bar Substantial Factor in Conversion of Beck's Personal Property

15       B. Beck is Entitled to Judgment for Money and Damages in his Favor as a Matter of Law

16           1. Beck is Entitled to Judgment for Compensatory Damages

17               i. Economic Damages

18               ii. Non-Economic Damages

19           2. Beck is Entitled to Punitive Damages Against Individuals

20               i. Official Acts were Intentionally Tortious to Beck

21       C. There Is No Defense to this Action for State Bar or State

22   IV.     CONCLUSION

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit #19: 011
22-CV-01616-BAS-DDL

## I.    INTRODUCTION

Do public employees have a general duty to exercise reasonable care? Do State Bar officials and employees have a duty to act when they know* of licensee fraud* supported by court orders or credible evidence? What about when evidence of a pattern exists, including conduct meeting the definition of "racketeering activity," like securities, mail or wire fraud, larceny, extortion, or money laundering? What about for violating mandatory law designed to prevent specific injury? Can State Bar be held liable if its actors are a substantial factor in a persons' severe emotional distress? Is State Bar a substantial factor in licensee conduct, generally? The answer to each these questions is unambiguously *yes*.

Plaintiff's statement of undisputed material facts ("Material Facts") in support of plaintiff's motion for summary judgment, or in the alternative, summary adjudication accompanying this motion prove *beyond* a preponderance of evidence that before Beck's injury was sustained starting September 14, 2018 (*Beck v. Catanzarite Law Corporation, et al.* G059744 [July 13, 2021]) ("G059766") – The State Bar of California knew* or reasonably should have known* that Beck's injury would happen to someone, because it was already happening to others from 2002-2022 according to audits (Beck RJN 1 ISO, Ex. 3-24). State Bar possessed clear and convincing evidence of a pattern similar conduct involving public employees (to employ safeguards ([ROA #93] Beck RJN 1 Ex. 234, p. 465) against abuse of public authority) (*Id.* at p. 465) and involving Catanzarite (to take steps in reasonable mitigation for serial fraud* known* to State Bar dating back to 2007 or earlier) (Material Facts, p. 31-52)

On notice of fraud (Beck Decl. ISO, Ex. A, p. 33) in interstate and foreign securities backed by final rulings in Courts of Appeal summarized in G059766, and in *Perrine* Material Facts, p. 31, and in *Alexandros v. Cole* )*Id.* at p. 32), and in *Edwards v. Noroski* (*Ibid*.), and regarding nine class actions filed on behalf of Richard Carlson involving "$437,315,000" in gross proceeds affecting "13,858" investors *(Id.* at p. 33), and Renato Corzo (*Ibid*.), and Denise Pinkerton (G059766), State Bar still protects Catanzarite. Judgment on this Motion is appropriate in favor of Beck. Beck is entitled to judgment for "fair compensation" (economic, non-economic damages), and separate judgment for punitive damages against State Bar and State of California for conduct of individual defendants acting in an official capacity (*repondeat superior*) in intentional tort (GOV 815.2 or GOV 815.3). In alternative to summary judgment, summary adjudication followed by swift jury trial is requested by plaintiff.

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 012
22-CV-01616-BAS-DDL

## II.   SUMMARY OF RELEVANT FACTS TO DISPOSE OF MOTION

A. Beck Noticed State Bar of His Injuries in January 2020 Under Oath [ROA #49]

B. Beck Noticed State Bar Again in March 2021 Under Oath [ROA #49]

C. Adjudicated Facts/Law Prove Beck's Harm, Undermine State Bar "Protection" (G059766)

## III.   LEGAL DISCUSSION

This case is ready for summary judgment on this Motion because it is based on questions of law, or facts of law, and the case has no defense. Many of the tortious acts proven by Beck involve employee licensees of State Bar (aka – lawyers* acting for the government), and this Court can determine where they have failed and harmed Beck as a matter of law. As for the rest (non-licensees), the results speak for themselves, and they too are bound by BPC 6001.1 insofar as any enactment relates to CRPC or the State Bar Act, as amended. (Material Facts, 1st Issue p. 4-10 and 2nd Issue p. 10-21, "Duty" or "duty")

"Substantial factor [CACI 430] causation is the correct causation standard for an intentional breach of [public] duty…" (*Knutson, supra,* 25 Cal.App.5th at p. 1094.) under "…the legal malpractice standard of causation to [Beck's claims]….The court cited The Rutter Group's treatise on professional responsibility to equate causation for legal malpractice with causation for all breaches of fiduciary duty: ' "The rules concerning causation, damages, and defenses that apply to lawyer negligence actions . . . also govern actions for breach of [public] duty." ' This statement of the law is correct, however, only as to claims of breach of [public] duty [in exercising public functions] arising from negligent conduct." (*Knutson, supra,* 25 Cal.App.5th at p. 1094, internal citations omitted.)

Insofar as there is any dispute to Beck's indisputable facts, "[e]xpert testimony is not required…where the attorney conduct is a matter beyond common knowledge." (*Stanley, supra,* 35 Cal.App.4th at p. 1087, internal citations omitted.) There is evidence that The State Bar of California itself lacks an understanding of Government Claims Act, or the on-point cases preceding this.

To summarize substantial factor, causation, and conduct of licensees who are defendants to this action (where State Bar is liable directly, and State is liable derivatively): **State Bar is at least a substantial factor in virtually all public chattels, monies, rights, and titles in California insofar as it involves a licensee or entity licensee in any manner.** State Bar is a substantial factor in the same

-12-

1   within interstate or foreign jurisdictions (Beck Decl., Ex. B, pp. 37, 222). To claim otherwise would

2   frustrate the very duty undertaken by a lawyer* for another person* and would reasonably* restrict any

3   capacity for such lawyer* to make decisions or representations on behalf of another person* before any

4   tribunal*. More importantly, if State Bar weren't a substantial factor in lawyer conduct, then the capacity

5   of a lawyer* for another would accord with such triviality and materiality *only*. But that is not the case,

6   here, either. State Bar has more duties than Beck can fit on these pages, under the circumstances.

7   (Material Facts) State Bar wastes an awful lot of money (Material Facts, generally citing auditor and

8   results of operations) if it is not at least a "substantial factor" in lawyer* conduct. (Material Facts, p. 17)

9       Where State Bar owes a duty, the standard of care (for Beck's claims in tort against licensed

10  defendants in this action acting officially) are judged in fact according to law (*Stanley*), including CRPC,

11  State Bar Act, and their own procedures cited by Beck as statutory schemes relevant under *Guzman*

12  (BPC 6001.1, and thereafter). The Court will find <u>*overwhelm ing*</u> evidence of violations to Beck, cited

13  as part of a statutory scheme (*Guzm an*) conducted officially for The State Bar of California (Material

14  Facts, p. 21-59), that each and together were at least a substantial factor in Beck's injuries and harm.

15  Due to control factors inherent to State Bar, licensees, and public – State Bar is the *only* common

16  denominator in public injury caused by lawyers* under its umbrella (Beck Decl., Ex. B, p. 37-228). In

17  other words, State Bar is "condition precedent," not only "substantial factor". Substantial* is itself

18  defined for a lawyer by CRPC (Material Facts, p. 23). The authority of a lawyer* to give effect to a

19  transaction involving money, property, chattels, rights (under a presumption of competence, namely,

20  under control of State Bar) is material to <u>any person acting reasonably</u>. (*Id.* at p. 23, see also G059766)

21      "The scope of an [State Bar employee or official] attorney's [public or affirmative] duty may be

22  determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes

23  and general principles relating to other fiduciary relationships, all help define the duty component of the

24  [public, mandatory, or general] duty which an attorney [acting on behalf of State Bar and public interest]

25  owes to [the public, generally] and [an injured person whose equity and rights are under their actual or

26  apparent control, as with Beck].' " (*Stanley, supra,* 35 Cal.App.4th at p. 1087.)

27      ***More On Public Employees + Public Entity Duties***

28

---

-13-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 014
22-CV-01616-BAS-DDL

1    Before diving deeper on "mandatory duty" for State Bar to Beck, he respectfully requests the Court
2    consider "*Guzm an v. County of Monterey*, 46 Cal.4th 887, 209 P.3D 89, 95 Cal.Rptr.3D 183 ("*Guzm an*")
3    "This [first] requirement does not specify…mandatory duty. **But that is not the end of it**." The Court
4    aptly held in *Guzm an*: "We have no difficulty concluding…mandatory duties" under GOV 815.6.

5    Mandatory duty to Beck (Material Facts, p. 10-21) is everywhere you look before and after
6    September 14, 2018 (G059766) in this action when his injury started accruing, and State Bar repeatedly
7    failed to act reasonably based on the *results* (Beck Decl. generally, see also Ex. B and G059766).
8    Licensees of State Bar are bound to CRPC by BPC 6077 and the scope of their duty (and the
9    reasonableness of their conduct, as a matter of law) can be judged thereby in this Court using Beck's
10   case law – presented in his complaint, his amended complaint, and on this Motion.

11

12   **A. Multiple Legal Theories Support Summary Judgment in Beck's Favor**

13   "In California, governmental tort liability must be based on statute." (*Washington, supra*, 38
14   Cal.App.4th at pp. 895-896; Gov. Code, § 815.)

15       1. Violations of Mandatory Duty Substantial Factor in Beck's Injury

16   Government Code section 815.6 is one statute to impose liability for Beck's injury (Material Facts,
17   Issue #3, p. 21-59), which provides "[w]here a public entity is under a mandatory duty imposed by an
18   enactment that is designed to protect against the risk of a particular kind of injury, the public entity is
19   liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public
20   entity establishes that it exercised reasonable diligence to discharge the duty." An "enactment" includes
21   "a constitutional provision, statute, charter provision, ordinance or regulation." (GOV § 810.6.)] (e.g.
22   5th and 14th US Constitution).

23   Beck was injured in fact [ROA #49] (G059766) – namely, attorneys with a history of fraud*
24   appeared corruptly and willfully, without authority, filing six lawsuits for and against adverse parties
25   before the same tribunal commencing September 14, 2018 to the ongoing harm of Beck (Beck Decl.,
26   Ex. D, pp. 229-270) (G059766). This fraudulent judicial and non-judicial conduct destroyed aspects of
27   Beck's life, his company, and all shareholder value associated therewith ($261M+) (Beck Decl. ISO
28   MSJ or SA, p. 7, ¶ 20-23, and Ex. A) while causing him severe emotional distress in fact and lifelong

-14-
**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 015
22-CV-01616-BAS-DDL

1   injury (Beck Decl. ISO, p. 3, ¶ 9, p. 5, ¶ 12, p. 10-12, ¶ 30-37). The Court will find one or more

2   mandatory duties that were breached. (Material Facts, Issue #3, p. 21-59)

3        In interpreting an enactment pleaded for Beck's 1st cause of action, the "first task . . . is to ascertain

4   the intent of the Legislature [AB 3249] [or, those involved in the 5th and 14th Amendments to US

5   Constitution] so as to effectuate the purpose of the law," [BPC 6001.1] and "[i]n determining such intent,

6   a court must look first to the words of the statute themselves, giving to the language its usual, ordinary

7   import and according significance ([ROA #93] Beck RJN 1 [Ex 25]) [e.g. "paramount" (*Id.* at p. 538)

8   "function" (*Id.* at p. 540) "exercise" (*Id.* at p. 539) if possible, to every word, phrase and sentence in

9   pursuance of the legislative purpose. . . The words . . . must be construed in context, keeping in mind the

10  statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized,

11  both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Em ployment &*

12  *Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) ("*Dyna-Med*") Beck incorporates relevant text of

13  AB 3249, including the plain words "requires" (Material Facts, p. 14) and "prohibits" (Material Facts,

14  p. 27, see also AB 3249) beyond the plain language of BPC 6001.1 , BPC 6077 and CRPC cited. Under

15  *Guzm an*, which is sound, State Bar's lack of reasonable care and violation of mandatory duties are

16  abundant to any reasonable* lawyer*, and certainly this Court. Beck needs to prove but one violation

17  by a preponderance, and this Motion can be granted summarily.

18       Beck provides indisputable facts in support of this Motion constituting *not less* than a *legal*

19  preponderance of evidence proving all three elements of his "per se" negligence claim met (Material

20  Facts, Issue #3, p. 21-59). State Bar violated (as a whole, or through one or more acts, where any was a

21  substantial factor in Beck's injury) BPC 6001.1, BPC 6104, BPC 6077 + CRPC 1.7 and/or 5.1

22  (G059766). A trial by jury should not be necessary to support judgment in his favor and an award of

23  economic damages and non-economic damages on this Motion. BPC 6001.1 is intended to stop injury

24  to the public inflicted by State Bar or its licensees, "but that is not the end of it." (*Guzm an*) Each statute

25  and enactment cited by Beck (BPC 6001.1, BPC 6104, BPC 6077 + CRPC 1.7 and/or 5.1 is intended to

26  stop a specific behavior of licensees from injuring him based on the plain language.

27       If somehow State Bar convinces this Court that a statutory scheme as a whole presented by Beck

28  (*Guzm an*), and the accompanying legislative intent (AB 3249) taking effect as of at least January 1,

-15-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

2019 do not impose *any* mandatory duty to him that was violated by State Bar under GOV 815.6 – the "substantial factor" test (for all causes of action) and/or "special relationship" test (control of licensees, actual knowledge of injury, foreseeability of harm to Beck specifically, *Rowland* factors) <u>all</u> weigh in Beck's favor.

### *Mandatory Duties Exist Under Enactments, <u>or</u> Affirmative Duties to Protect Beck*

The Court in *Hoff* provides helpful analysis on Beck's point of mandatory duty through enactment <u>or</u> special relationship [unlike Hoff, Beck is a member of the public and not outside the protection of State Bar]. A more recent, on-point decision unrelated to Government Claims Act shows how mandatory duties can arise beyond one invoked by enactment [e.g., common law violations of a duty invoked by special relationship or affirmative duty to protect would be at least negligent under GOV 815/815.2/815.3, or 815.6 – and the "substantial factor" test is the only burden of proof beyond duty breach and injury here.] While common law is not the subject of this action, the imposition of liability is based on "substantial factor" insofar as it involves violation of a statute, or otherwise. (*Brown* and *Brown v. USAT*)

On April 1, 2021, the California Supreme Court instructed all lower courts to use a two-part analysis to determine if a defendant owed a duty of care to protect a plaintiff harmed by a third party. Cited by Beck to further illustrate the special relationship and unique control possessed by State Bar, in *Brown v. USA Taekwondo* (2021) – the Supreme Court agreed that USAT owed Brown a duty due to control factors similar to those between State Bar and Catanzarite. Brown was harmed by Gitelman [instructor for USAT, akin to Catanzarite and public employees under control of State Bar with Beck as victim]. The Court confirmed *Rowland* factors came after the first test (special relationship). Gitelman was under control of USAT, as evidenced by factors similar to the instant case as to State Bar, its public employees and elected officials, its licensees, and especially Catanzarite. (Beck Decl., Ex. B)

Unlike *Brown* and *Brown v. USAT,* this case, imputes liability to State under Government Claims Act GOV 815 / 815.2 / 815.3 / 815.6 / and/or 835 on a far simpler analysis of only "substantial factor" (Material Facts, p. 17, Citing CACI 430 (2022) where a reasonable person would consider to have <u>contributed</u> to Beck's harm, separately because State controls State Bar through the Legislature, or

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 017
22-CV-01616-BAS-DDL

1  derivatively where State is liable for State Bar (*respondeat superior*). So Beck has to prove by a

2  preponderance of evidence that State Bar was a substantial factor.

3      Beck asserts that any reasonable* person would agree that State Bar is a "substantial factor" in

4  <u>virtually all conduct of its licensees</u>. Pretty much any stone you turn over proves or implies actual control

5  by State Bar over its licensees, which any reasonable* person would agree is a substantial factor in any

6  instance or case because any control is more than just something that has "<u>contributed</u>" (CACI 430) and

7  even under licensee defendants definition of substantial* (Material Facts, p. 24, citing CRPC 1.01(l),)

8  any reasonable person would consider control to be substantial "when used in reference to degree or

9  extent means a material matter of clear and weighty importance." (*Ibid*.)

10      Evidence of control (by State Bar over licensee defendants acting officially under CRPC 5.1) starts

11  where licensees need the express authority from State Bar to practice law in California, and the budget

12  used by State Bar in "exercising its licensing, regulatory, and disciplinary functions." (BPC 6001.1)

13  More evidence of control exists through improper "private letters" (Material Facts, p. 42) to an attorney

14  with 165 complaints over 7 years (*Ibid*.), or "State Bar dismisses about 10 percent of complaints using

15  nonpublic measures such as private letters" (*Ibid*.) or involve "de minimis" closures which later result

16  in "federal conviction for money laundering." sent to those licensees causing public injury without even

17  notifying the injured (*Id*. at p. 54), evidence of waiving material conflict by State Bar's public employees

18  or elected officials causing public injury in an alarming 1/3rd or more of cases (*Id*. at p. 74), the actual

19  ability of State Bar to regulate (e.g. BPC 6077, CRPC, State Bar Act, ~$100M+ annually spent) its

20  licensees when they are proven to inflict public harm and pose a threat for future harm, the legislative

21  intent and "required" language of AB 3249 and the entire statutory scheme thereunder (*Guzman*), and

22  the actual control State Bar possesses over both the licensees who are charging the public legal fees

23  under implied competency, and the public who are damaged by licensees frequently, without reasonable

24  mitigation (CRPC 5.1), and often under *actual conflict* of interest known to State Bar (Material Fact,s

25  p. 74). The point is this: could Catanzarite Law Corporation conduct its ongoing schemes to defraud*

26  without State Bar? **Nope**. [ROA #49], (G059776), (Beck Decl., Ex. B)

27      To prove violation of one or more mandatory duties, Beck must prove through a preponderance of

28  evidence: 1. That public entity The State Bar of California violated Business and Professions Code §

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

6001.1 [or] Licensees working officially on behalf of The State Bar of California violated Business and Professions Code § 6077 and California Rules of Professional Conduct 5.1 (or 1.7) [or] That individual public employees or elected officials acting for State Bar violated the civil rights of Justin Beck protected by the 5th or 14th Amendments of the United States Constitution through unlawful taking and/or depriving him of life, liberty, and property through undue process; [and, with one of these satisfied, also] 2. That Justin Beck was harmed; and 3. That The State Bar of California's failure to perform its duty under any or each of these respective sections was a substantial factor in causing Justin Beck's harm.

Beck proves more than one violation (Material Facts, Issue #3, p. 21-59) that was a substantial factor (Material Facts, p. 17, citing CACI No. 430 (2022).) in his harm (Beck Decl. ISO, generally, and see specifically p. 2-12 ¶ 7-37, Ex. A Warning to Licensees, Ex. B Catanzarite Law Corporation is Suspended, Ex. C G059766, Ex. D Other Property Damages).

Having sufficiently proven by a preponderance of evidence under GOV 815.6, where at least one violation was a substantial factor in Beck's injuries – Beck is entitled to summary judgment on this action in his favor, or in the alternative, summary adjudication on this 1st cause of action as a matter of law with liability under GOV 815.6.

### 2. Negligence (High Culpability/Understaffing) Also Substantial Factor

State Bar's public employee defendants Morgenstern, Kumar, Nunley, and DOES acted with "recklessness" on behalf of State Bar if any one of them knew it was highly probable that [their] respective conduct would cause harm to Beck (Material Facts, p. 2-92), and each or any of them knowingly disregarded this risk. (*Ibid*.) [ROA #49] Statement Under Oath, (G059766)

"Recklessness" is more than just the failure to use reasonable care. Liability in this cause of action comes under GOV 815, 815.2, or 815.3. Negligence with high culpability, another way to meet a cause of action pleaded by Beck, can also be proven through civil rights violations to Beck under 5th and 14th amendments as violation of mandatory duty under GOV 815.3 or GOV 815.6 for understaffing (*Fenimore v. Regents of University of California* (2016) 245 Cal.App.4th 1339, 1349) [200 Cal.Rptr.3d 345].) (Material Facts, p. 105)

Exhibit #19: 019
22-CV-01616-BAS-DDL

This is a cumulative or alternate theory for Beck to recover his damages (Material Facts p. 130-133). If the Court determines that State Bar somehow acted with reasonable* care in exercising its mandatory duties to Beck (Material Facts, Issue 2, Issue 3), then the Court will find sufficient evidence of understaffing before September 14, 2018 and civil rights violations to Beck specifically (G059766) as well as other conduct or lack thereof undertaken with at least disregard to Beck by defendants (G059766) that caused Beck emotional harm(Beck Decl., p. 10-12, ¶ ¶ 29-37), to uphold judgment in Beck's favor. The Court will also find, where no reasonable mind could differ, that the conduct in question generally involving State Bar from 2002-2022 is outrageous as a *body of work* (Beck RJN 1 ISO, Ex. 3-24).

As an alternate or cumulative theory to the highly probable risk their conduct would injure Beck, and the disregard of Beck's injury for this 2nd cause of action – Beck claims that The State Bar of California and individual defendants Eli David Morgenstern, Joy Nunley, Anand Kumar, and DOES (1-30) acting officially for The State Bar of California violated his civil rights. To establish this claim, Justin Beck must prove: 1. That defendants intentionally or without regard for the emotional harm of Justin Beck did: allow ongoing abuse of the judicial system by licensees in violation of Beck's rights under the 5th and/or 14th Amendment to the United States Constitution [or] failed to take reasonable steps to mitigate harm to Beck after actual knowledge of his injury, [or] with deliberate indifference, unlawfully take legal fees and various personal property from Justin Beck without just compensation [or] corruptly utilize official licensing, regulatory, and discipline functions of The State Bar of California for personal benefit, motive, passion, or interest [and, with at least one of the above proven,] all of the following: 2. That individual defendant public employees were each acting officially or purporting to act officially for The State Bar of California, in the performance of each of each or any of their official duties, and 3. That any individual defendants' conduct violated Justin Beck's rights, including those protected by the 5th and 14th Amendments to the United States Constitution, which holds that he not "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation," 4. That Justin Beck was "deprived of life, liberty, or property without due process of law" [or] one or more items of Beck's "private property was taken for public use, without just compensation" 5. At least one of the individual defendants' acting for State Bar

-19-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 020
22-CV-01616-BAS-DDL

1    [Morgenstern, Nunley, Kumar, DOES] conduct was a substantial factor in causing Justin Beck's harm
2    or damages to property having special value. (Material Facts, Issues 1-22)
3        Having sufficiently proven by a preponderance of evidence in support of this claim for recklessness
4    based on high probability and disregard to Beck [and/or] recklessness evidenced by understaffing, or
5    harassment (GOV 815.3) or civil rights violations under GOV 815.6, GOV 815.2, or GOV 815.3 – Beck
6    asserts he is entitled to summary judgment or adjudication on this 2nd cause of action as a matter of law.
7
8        3. <u>Negligence in Violation of Other Duties Also Substantial Factor</u>
9        If State Bar is not liable to Beck for violating mandatory duties to Beck, or by its recklessness and/or
10   civil rights violations to Beck – public employees **at least** owe Beck a duty to exercise reasonable care
11   under GOV 815/815.2.
12       A violation of any duty results in liability to State Bar insofar as the acts were taken in an official or
13   purportedly official public capacity, which is the case here (Beck Decl. ISO, p. 18, ¶ 47) and any single
14   act by any single actor were a substantial factor (Material Facts, p. 17) in Beck's injury. (Beck Decl.
15   ISO, generally) The conduct of public employees or elected officials were, in fact, a substantial factor
16   in Beck's injury before/after September 14, 2018 (Material Facts, p. 31-51) (G059766) – where no
17   reasonable* mind could differ.
18       After *Walker* (1948) and *Bollotin* (1955) (each regarding attorney discipline, not government tort as
19   with the instant case) – a landmark ruling in *Muskopf v. Corning Hospital District* (55 C.2d 211; 11
20   Cal.Rptr. 89, 359, P.2d 457) ("*Muskopf*") was clear "[i]n formulating 'rules' and 'exceptions' relating
21   to governmental immunity from liability [here, what became the "liability" sections of GOV 815, 815.2,
22   815.3, 815.6, and 835], it should be borne in mind that **when there is negligence, the rule is liability,**
23   **immunity is the exception**." *Muskopf* led to Government Claims Act (1963), which of course was after
24   *Walker* and after *Bollotin* [yes, the law does provide for such liability, today].
25       "The effect of [GOV 815.2] is to incorporate 'general standards of tort liability as the primary basis
26   for *respondeat superior* liability of public entities....[t]hus, in a cause of action for negligence, the
27   existence and extent of an entity's vicarious liability under [GOV 815.2, sub. (a)] will be determined by
28   the scope of the duty legally attributed to its employees." "A public employee is liable for negligence

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION

Exhibit #19: 021
22-CV-01616-BAS-DDL

1  'to the same extent as a private person.' (GOV 820)." (*Hoff v. Vacaville Unfied School Dist.*, 19 Cal.4th

2  925 (1998).)

3     In other words, does State Bar have a duty to protect the public from attorney misconduct through

4  the exercise of reasonable care? Yes. Might it extend, under certain circumstances where the greatest

5  issue is foreseeability of harm (*Brown v. USAT* 2021) to the conduct of its public employees? What

6  about the licensees over which it has [monopolistic] control? The statute says yes to all, where even the

7  purported immunity on the "back end" of GOV 815 and GOV 815.2 holds "except as otherwise provided

8  by statute, a public employee is not liable for an injury caused by the act or omission of another person.

9  **Nothing in this section exonerates a public employee from liability for injury proximately caused**

10  **by his own negligent or wrongful act or omission.**" (GOV 820.8)

11     Should the public expect protection from the State Bar, or at least reasonable care, when on notice

12  of injury? Indeed – people less fortunate than Beck demand it. *How else will the protection of free speech*

13  *be balanced with the reasonably regulated speech in the private forum of Courts? Are regular (non-*

14  *lawyer) persons allowed to lie, cheat, steal, and conduct ongoing schemes to defraud? Why aren't*

15  *lawyers, whose speech is actually proffered on behalf of others, subject to a greater standard when there*

16  *are lawyers like Catanzarite? Why is Catanzarite specfically allowed to lie, cheat, steal, and continue*

17  *to defraud innocent people?*

18     The statutes and law governing civil rights, Anti-SLAPP in California CCP § 425.16, litigation

19  privilege under CCP § 47, attorney-client privilege exemptions under EVID § 956, the disfavored

20  [common law] tort of malicious prosecution requiring "final determination" (G059766) and the

21  materially injurious implications of a "post-trial" fraud defense **all require due care exercised by The**

22  **State Bar of California in "exercising its licensing, regulatory, and disciplinary functions."** Courts

23  have an expectation of competency when they receive filings from a licensee…and it should go without

24  saying that The State Bar of California is required to uphold its side of the bargain and AB 3249's

25  passage "eliminate[d] the authorization" of State Bar to aid Catanzarite (Material Facts, p. 4)

26     Less than 5% of intakes saw discipline from 2012-2022 (Beck RJN 1 ISO, Ex. 3-24) (Beck Decl. p.

27  12). Worse, even in the most severe cases where State Bar wakes up and smells the roses decaying on

28  the floor of its $76M building, discipline rarely (*if ever*) accommodates actual injury to public, courts,

-21-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 022
22-CV-01616-BAS-DDL

1   and legal profession. No, apparently, State Bar licensees can commit larceny and fraud for years, and
2   members of the public need to retain another State Bar licensee to seek their damages. Even worse still,
3   "discipline" or "regulatory" functions take a year to ten years to resolve (by design or results, matters
4   not). So, if an attorney is corrupt, they will abuse this system (Material Facts, p. 31-51) (G059766), and
5   people are **suffering** (Beck Decl., p. 10-12) – in substantial* numbers that show no signs of receding
6   (Material Facts, p. 52-59). They are **suffering** because State Bar is negligent and infected with corruption
7   (Material Facts, p. 21, 52-59). One expert on corruption says its based on a simple formula, and that
8   formula objectively spells disaster for our future in California, which is purportedly among the largest
9   economies in the world if it were itself a country involving $3.4 trillion in gross state product ([ROA
10  #60] FAC p. 7, ¶ 24).

11      So, to establish a claim for negligence under the liability sections of Government Claims Act for
12  which State Bar [and/or State] is liable – Beck must prove: 1. That <u>any</u> public employee, elected official,
13  or State Bar, or State was negligent through official or purportedly official acts of State Bar; 2. That
14  Beck was harmed; 3. That the overall conduct, series of acts, or any single act of a public employee or
15  elected official acting on behalf of State Bar was a substantial factor in causing Beck's harm.

16      Having sufficiently proven by a preponderance of evidence in support of his prior claim for
17  violations of mandatory duties and/or recklessness in the 1st and 2nd causes of action, each sufficiently
18  prove garden variety negligence if not mandatory duties or intentional tort – therefore Beck asserts he
19  is entitled to summary judgment on this action, or summary adjudication on this 3rd cause of action as a
20  matter of law with liability under GOV 815 and/or GOV 815.2.

21

22      4. <u>Beck's Refined Request for Relief is Reasonable Under GOV 814</u>

23      "The Court's paramount concern should be to preserve public trust in the scrupulous administration
24  of justice and the integrity of the Bar." (*Calif. Self-insurers' Security Fund v. Superior Court* (2018) 19
25  Cal.App.5th 1065, 1071).

26      Beck seeks a single form of relief under GOV 814 (Material Facts, p. 93-94) and subjects himself to
27  this Court's available powers on this Motion (even if it denies the request entirely). Beck believes it vital
28  to preserve public trust that he be provided provisional licensure to practice law in California under the

---

-22-
**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 023
22-CV-01616-BAS-DDL

1    Court's inherent powers codified by Cal. Cod. Civ. Proc. 128, under reasonable terms and stricture

2    which he presents in his proposed judgment.

3        Beck's provisional licensure is requested from this Court or by referral to the Supreme Court on the

4    conditions that, for a period of 5-years, 1) he be allowed to represent, file and try cases within [Superior

5    Courts or Supreme Court] as a complete alternative to State Bar attorney misconduct complaints or

6    client security fund applications, thereby replacing *In RE: Walker*, 2) and that he be allowed to represent,

7    file, and try cases involving attorney malpractice, malicious prosecution, or fraud in any California

8    Court, and 3) for any other representation (not subject to 1 or 2), a State Bar licensee appears on all

9    agreements, attorney-client work product, and all court filings involving Beck's representation, and 4)

10   that any attorney discipline accusation against him be filed directly to Supreme Court without State Bar.

11       Beck's licensure is requested to transition to "regular" licensure conditioned upon a hearing before

12   the Supreme Court after 5-years and approval of the Supreme Court alone (not State Bar). Beck believes

13   he can serve a dire need for "access" that existing State Bar licensees are unlikely to meet out of fear by

14   serving only those lacking access to neutral courts and serve to restrain the abuses proven by him on this

15   Motion and evidenced through [ROA #49] and G059766.

16

17       5. Dangerous Conditions of State Bar Premises Also Substantial Factor

18       If State Bar's violation of mandatory duty, negligence with high degree of culpability, or negligence

19   in violation of reasonable standard of care to Beck were not a substantial factor in Beck's injury and

20   harm – then it was caused by a dangerous condition of State Bar's premises that State Bar had actual

21   knowledge of.  Emotional distress (Beck Decl., p. 10-12) constitutes an "injury" (GOV 810.8) under

22   Government Claims Act.

23       It was reasonably foreseeable to State Bar that Beck would never visit State Bar's premises, or if he

24   did, such visit would be a fraction of time compared to other reasonably foreseeable interactions with

25   Beck that would not result in his physical presence there. (Material Facts, p. 94-100). It was reasonably

26   foreseeable to State Bar that injuries arising from its normal, day-to-day operations would almost

27   certainly be "any other injury that a person may suffer to his person, reputation, character, feelings or

28   estate, of such nature that it would be actionable if inflicted by a private person." (*Ibid*.)

-23-
**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

1   A "visit" to the premises (physically) would only be necessary after or while frustrating all

2   administrative or judicial remedies, or for litigation pursuant to Government Claims Act after injury

3   (*Ibid*). And thus, Beck advances the (sound) theory that a dangerous condition of State Bar's property

4   is different than one of a school, for instance. And that any reasonable person would agree: State Bar's

5   premises is in a dangerous condition that has been sufficiently noticed for long enough (10+ years) (*Ibid*)

6   (Beck RJN 1 Ex. 3-24)

7   Where a school protects its students physical and emotional well-being on premises with limited

8   exception (Material Facts, p. 18-19) (citing *Hoff* and *Tarasofff*), State Bar protects individuals' (and

9   explicitly, the public's) life, liberty, property under an expectation that State Bar will protect others from

10   the dangers that would be so clearly obvious to any reasonable person: attorneys engaged in fraud will

11   most certainly cause "other injury that a person may suffer to his person, reputation, character, feelings

12   or estate." State Bar takes unique *possession* of these specific characteristics of a person when it accepts

13   *intake* of a complaint. (*Ibid*.) (*Brown v. U SAT*(2021).)

14   If the Court finds that reasonable care was indeed exercised by State Bar as to his negligence claims

15   before September 14, 2018 on this Motion, then State Bar's property created a substantial risk of Beck's

16   injury when it was used with due care in a reasonably foreseeable manner. Whether the property is in a

17   dangerous condition is to be determined without regard to whether Beck exercised or failed to exercise

18   reasonable care in use of the property. (CACI 1102)." The Auditor said that State Bar's operations posed

19   a threat to the public, and Beck is a member of the public: Audit Report **2015**-030, "[i]nstead of focusing

20   its resources on improving its discipline system—such as engaging in workforce planning to ensure it

21   had sufficient staffing—**it instead spent $76.6M to purchase and renovate a building [premises] in**

22   **Los Angeles in 2012…Delays [in intake, investigation, etc.] allow attorneys under investigation to**

23   **continue practicing law while their cases are pending, increasing the potential for harm [injury]**

24   **to the public**." (Material Facts, p. 59-79)

25

26   6. <u>State Bar Substantial Factor in Beck's Severe Emotional Distress</u>

27   Even if State Bar is found not to have violated mandatory duties, acted with reckless disregard of

28   public injury, understaffed, or violated Beck's civil rights, or violated a reasonable standard of care –

-24-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE**
**ALTERNATIVE FOR SUMMARY ADJUDICATION**

Beck proves one or more acts or omissions and actors among Anand Kumar, Eli David Morgenstern, Joy Nunley, and DOES 1-30, acting officially for The State Bar of California under Government Code 815, 815.2, 815.3 caused him to suffer severe emotional distress (Beck Decl., p. 10-12,  Beck did in fact suffer severe emotional distress and damages for which State Bar is or was a substantial factor. (Beck Decl. pp. 10-12, ¶ ¶ 30-37).

To establish this claim, Justin Beck must prove all the following: 1. That any one of Anand Kumar, Eli David Morgenstern, Joy Nunley, or DOES 1-30's conduct was <u>outrageous</u>. 2. That Anand Kumar, Eli David Morgenstern, Joy Nunley, or DOES 1-30 acted with reckless disregard of the probability that Justin Beck would suffer emotional distress, knowing that Justin Beck was present when the conduct occurred; 3. That Justin Beck suffered severe emotional distress; and 4. Anand Kumar, Eli David Morgenstern, Joy Nunley, or DOES 1-30 conduct was a substantial factor in causing Justin Beck's severe emotional distress. Beck incorporates G059766 by reference, juxtaposed with [ROA #49].

Beck's severe emotional distress can be implied by the circumstances just like legal malice (G059766) and his testimony alone (Beck Decl. pp. 10-12, ¶ ¶ 30-37) is sufficient proof according to a recent case *Knutson v. Foster*, 25 Cal.App.5th 1075, 1078-79 (Cal. Ct. App. 2018) "we hold that in a case such as this, where the plaintiff's emotional distress consisted of anxiety, [fear of ongoing lawyer* fraud and its implications], shame, a sense of betrayal, and a continuing impact on personal relationships, the testimony of the plaintiff alone is sufficient to support emotional distress damages. [Beck's sworn declaration (Beck Decl. ISO MSJ or SA, generally), and prior information under oath delivered to State Bar in March 2021 prove] stress and extra pressure that made [living, working] an emotionally painful activity, that [he] felt shamed and betrayed when [he] learned about [Catanzarite's prior conduct, and State Bar's disregard for his injury, and injury to others]. (Beck Decl. p. 10-12)

In March 2021 while in special relationship to Beck after repeated notices to State Bar between January 2020 and March 2021 (Beck Decl, generally), he filed formal allegations under oath [ROA #49] to State Bar, wherein he "presented his allegations…as acts of moral turpitude or fraud by [Catanzarite] under oath of Beck, pursuant to the [State Bar Act]. (BPC 6106) All the filing proves is actual knowledge by State Bar of Beck's injury in 2021, and further, outrageous conduct with disregard for the same – here Beck's severe emotional distress. (Beck Decl. ISO pp. 10-12, ¶ ¶ 30-37).

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 026
22-CV-01616-BAS-DDL

1    On page 9 of 53 [ROA #49], for instance, Beck says under oath to State Bar in March 2021:
2    "[Catanzarite] has been disqualified twice by a trial court for purporting to represent directly adverse
3    parties before the same tribunal against [Beck], and [Catanzarite is] under investigation by [State Bar]
4    for similar conduct in another unrelated case [Corzo]. Worse, [Catanzarite] assumed representation of a
5    corporate entity [MFS, CTI] without permission of the entity itself...[Catanzarite] has attempted to
6    appear on virtually every side of a pending control dispute that it manufactured in the face of known
7    contradictory facts and has compromised alleged derivative actions [Fed. 23.1(c)] by colluding with
8    various parties [inc. Amy Cooper] to settle those claims in return for manufactured evidence after
9    making contact with represented parties." These allegations are now supported by "final" evidence
10   beyond reasonable doubt known to State Bar, cited by Beck (e.g. G058700 which upheld *m andatory*
11   *law*, and other Catanzarite cases (2007-2022) affecting more than 13,800 investors and SEC resources
12   (Beck Decl. p. 21).

13   On or around June 28, 2021, the Court of Appeal concluded Catanzarite violated more than one
14   ***mandatory law***, including CRPC 1.7 and BPC 6104, where it "filed six lawsuits while simultaneously
15   representing two corporations, three corporate subsidiaries, and a group of minority shareholders of both
16   corporations" in a 12-month period. They were all sham (fraudulent*) pleadings or amended pleadings
17   filed or advocated by Kenneth J. Catanzarite, Jim Travis Tice, Brandon E. Woodward, Tim James
18   O'Keefe, and/or Nicole Marie Catanzarite Woodward (FAC p. 46-48, ¶ 130) (G058700). The same
19   associated attorneys have undertaken similar fraud* dating back to at least 2007, known to State Bar.
20   (Material Facts, p. 31-51)

21   Having sufficiently proven by clear and convincing evidence in support of this claim for intentional
22   infliction of emotional distress – Beck asserts he is entitled to summary judgment on this 6th cause of
23   action as a matter of law for intentional infliction of emotional distress under GOV 815.3.

24   Having sufficiently proven by clear and convincing evidence in support of this claim for intentional
25   infliction of emotional distress – Beck asserts he is entitled to judgment in his favor for punitive damages
26   against individual defendants acting officially for State Bar, as a multiple of 1X to 10X his total
27   combined economic and non-economic damages, and that State Bar and State are liable therefore
28   (Material Facts, Issue #20)

-26-

Exhibit #19: 027
22-CV-01616-BAS-DDL

7. <u>State Bar Substantial Factor in Conversion of Beck's Personal Property</u>

Beck claims that State Bar, through its public employees, licensees, and elected officials, wrongfully exercised control over items of Beck's personal property. Beck claims that all of his economic damages and non-economic damages fall in this category if the other causes of action somehow fail, but he discretely identifies property and values in supporting his damage claims (Beck Decl. ISO MSJ or SA Ex. [A] 33-36, Ex. [B], Ex. [D] p. 271-278 and Ex. [E] CACI Draft pp. 283-285).

Beck proves the property referenced in his pleadings and the associated evidence (including adjudicated facts and law) are sufficient to uphold civil judgment in his favor. Some items had special value, which Beck generally describes in his declaration and the draft jury instructions (Beck Decl. ISO MSJ or SA Ex. [D] p. 271-278 and Ex. [E] CACI Draft pp. 283-285)

**B. Beck is Entitled to Judgment for Money and Damages in his Favor as a Matter of Law**

    1. Beck is Entitled to Judgment for Compensatory Damages

        i. Economic Damages (Material Facts, Issue #20)

        ii. Non-Economic Damages (Material Facts, Issue #21)

    2. Beck is Entitled to Punitive Damages Against Individuals

        i. Official Acts were Intentionally Tortious to Beck  (Material Facts, Issue #22)

**C. There Is No Defense to this Action for State Bar or State**

While defendants' claim of "immunity" is moot in this action for other reasons described by Beck (Material Facts, Issues #10-#19) and known to the Court, State Bar would have this Court believe that its public employees and/or elected officials are somehow *authorized* to participate in, permit, ratify, not act reasonably to mitigate, or even facilitate "conduct" that meets the definition of "racketeering activity" (namely wire fraud, securities fraud, mail fraud, money laundering, and larceny) that cause serious public injury known to them.

But Beck defeats each immunity and each affirmative defense, and a trial may prove a waste of time that serves to further conceal – not reveal – the injuries similar to Beck (Beck Decl., generally). There

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 028
22-CV-01616-BAS-DDL

1    are one or more acts that were a substantial factor (CACI No. 430) in Beck's injuries resulting in

2    damages (Beck Decl. Ex. [A] 33-36, Ex. [B], Ex. [D] p. 271-278 and Ex. [E] CACI Draft pp. 283-285).

3    The acts were either in violation of mandatory duties (GOV 815.6) intentionally tortious (GOV 815.3)

4    – or they were negligent within operational decisions lacking reasonable care (for which no immunity

5    exists) – or they involved fraud, legal malice, corruption, or oppression of Beck and others at least to a

6    civil degree of certainty on this Motion. There is simply no defense to this action for State Bar and/or

7    State as a matter of law.

8

9    <u>CRPC Definition of Reasonable* Governs All Public Licensee Conduct</u>

10       Because some claims rest on the exercise of reasonable care (and not "blanket Immunity" as

11    proposed by State Bar), Beck notes that the legal definition of "reasonable*" and "reasonable belief*"

12    is tested under an *objective* standard. That means that this Court can easily determine if State Bar's

13    conduct is, in fact (law), reasonable* or supported by reasonable belief*. Acts that violate CRPC 1.7,

14    CRPC 5.1, or other enactments cited by Beck are not supported by reasonable belief (<u>objectively</u>). Nor

15    is continued malicious prosecution of people without legal counsel. (G059766)

16       "In a tort action against a public entity [State Bar] [State], the question of duty is a threshold issue.

17    The next question is whether any statutory immunity applies to bar plaintiffs' negligence cause of action.

18    (*Davids on v. City of Westminster* (1982) 32 Cal.3d 197, 202.)  [State Bar] contends that it is immune

19    under Government Code sections [815] [820] [821] [821.2].  None of these immunities is applicable."

20    Beck also shows why 818.2, 820.4, 818.4, and 820.8 fail (Material Facts, Issues #10-19)

21       For instance, "Government Code section 818.2 provides that a public entity "is not liable for an

22    injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." This section

23    was intended to provide immunity for legislative and quasi-legislative action [e.g. policy decisions] and

24    to protect the exercise of discretion by law enforcement officers in carrying out their duties [in the

25    exercise of these functions, their conduct is governed by a reasonable standard of care, and may arise to

26    mandatory duty]. (See Cal. Law Revision Com. com. to Gov. Code, § 818.2.)  The <u>companion section</u>

27    [emphasis added] Government Code section 821, extends the same immunity to the public employee.

28    To apply these sections to immunize [State Bar] from liability for breach of a mandatory duty "would

-28-

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION**

1    completely eviscerate Government Code section 815.6 which specifically provides for liability of the

2    public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public

3    enactment." (*Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059; see also *Alejo*, *supra*, 75

4    Cal.App.4th at p. 1194.)"

5        "Government Code section 820.4 extends immunity to a public employee "for his [or her] act or

6    omission, <u>exercising due care</u> [emphasis added], in the execution or enforcement of any law. . . ." This

7    statute does not warrant dismissal of plaintiffs' negligence claims because there is a <u>question of fact</u>

8    [that can be decided on this Motion; emphasis added] as to whether [State Bar] exercised "due care" in

9    reviewing and responding to [specific notice of Beck's injuries and/or irreparable harm to him and

10   others] (See *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 462.)

11       "The immunity provided by Government Code section 818.4 pertains to injuries caused by the public

12   entity's "issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend

13   or revoke, any permit, license, certificate, approval, order, or similar authorization where the public

14   entity or an employee of the public entity is authorized by enactment to determine whether or not such

15   authorization should be issued, denied, suspended or revoked." Government Code section 821.2 extends

16   the same immunity to the public employee. **These sections do not apply here because there was no**

17   **discretionary licensing decision** [emphasis added]. The wrongful act was the failure to comply with

18   the duty to review misconduct, fraud, and injury reported to State Bar, and to exercise reasonable

19   licensing, regulatory, and disciplinary functions guided by BPC 6001.1 (overall, and upon each

20   operational decision, and especially those involving CRPC 1.7 or BPC 6104 violations]...to [order

21   involuntary inactive enrollment, and/or exercise control over Catanzarite Law Corporation for good

22   cause shown; and/or to commence expedited hearings; and/or to mitigate or enjoin the conduct under its

23   control until such time a hearing may occur; and/or to enforce the misconduct proven by clear and

24   convincing evidence dating back to 2005; and/or suspend and/or disbar for "one violation" as per the

25   standards].

26       Finally, Government Code section 820.8, which provides that a public employee "is not liable for

27   an injury caused by the act or omission of another person" is inapplicable because the injury is shown

28   to have been caused by the public employee's negligence. Indeed, Government Code section 820.8

NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE FOR SUMMARY ADJUDICATION

1   concludes, "**Nothing in this section exonerates a public employee from liability for injury**
2   **proximately caused by his own negligent or wrongful act or omission**."

3

4   **IV. CONCLUSION**

5   Beck is entitled to his economic damages and non-economic damages on one or more theories, and
6   punitive damages against individuals acting officially for State Bar. (Beck Decl., Ex. E) (Material Facts,
7   Issues 20-22)

8   Cal. Cod. Civ. Proc. Section 437c provides "(a) (1) A party may move for summary judgment in an
9   action or proceeding if it is contended that the action has no merit or that there is no defense to the action
10  or proceeding." Section 437c, subdivision (c) holds "summary judgment shall be granted if all the papers
11  submitted show that the moving party is entitled to a judgment as a matter of law" as here to Beck.

12  Section 437c, subdivision (m)(1) says "[a] summary judgment entered under this section is an
13  appealable judgment as in other cases." However, "[t]he order granting the motion is not itself a
14  judgment. [Beck] must prepare a proposed judgment, serve it upon opposing counsel and submit it to
15  the judge for signature and filing." (*Id.*, § 10:330; see also *Saben, Earlix & Assoc ates v. Fil et* (2005)
16  134 Cal.App.4th 1024, 1032). Beck includes this with his moving papers on this Motion.

17  Rule 3.1350(b) of the California Rules of Court says, in relevant part, "[i]f summary adjudication is
18  sought...alternative to the motion for summary judgment, the specific cause of action, affirmative
19  defense, claims for damages, or issues of duty must be stated specifically in the notice of motion and be
20  repeated, verbatim, in the separate statement of undisputed material facts." Beck conforms to this section
21  (citing Issues # 1-22, verbatim) and requests an expedited trial by jury if there are any issues of triable
22  fact remaining, assuming that Beck failed to achieve a burden of proof on any other theory on this
23  Motion to award summary judgment and thereby render such trial unnecessary. "The Court's paramount
24  concern should be "to preserve in the scrupulous administration of justice and the integrity of the Bar."
25  (*Calf. Self-insurer's Securit y Fund. V Superior Court* (2018) 19 Cal.App.5th 1065, 1071). This Court
26  should exercise any power it has to prevent further injury to public, courts, and legal profession.

27  Beck prepared a draft "written order...unless expressly waived." (Rule 3.1312(a).) Beck furnishes
28  the Court with an editable document (.docx or Microsoft® Word) under Section 437c, subdivision (g)

-30-
**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE**
**ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 031
22-CV-01616-BAS-DDL

so the Court may "specify the reasons for the court's determination." Similarly, if the court denies the motion, it must "specifically refer to the evidence proffered in support of and in opposition to the motion which indicates that a triable controversy exists." (*Ibid*.)

Dated <u>July 17, 2022</u>
Oceanside, California

Respectfully Submitted,

Justin S. Beck, plaintiff and moving party
*In Pro Per*

---

**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

Exhibit #19: 032
22-CV-01616-BAS-DDL

1

[Proof of E-Service]

2

3   I, Justin S. Beck, the plaintiff in this action and moving party, served by electronic mail:

4

5   Notice of Motion and Motion of Plaintiff for Summary Judgment or In the Alternative Summary

6   Adjudication, Declaration of Justin S. Beck in Support of Plaintiff's Motion for Summary Judgment or

7   In the Alternative Summary Adjudication; Separate Statement of Undisputed Material Facts In Support

8   of Plaintiff's Motion for Summary Judgment or In the Alternative Summary Adjudication; and Proposed

9   Order Granting Motion for Summary Judgment (or Summary Adjudication) upon defendants The State

10  Bar of California, Anand Kumar, Joy Nunley, Eli David Morgenstern, and DOES 1-30 (each acting in

11  an official capacity) to the Office of the General Counsel for The State Bar of California:

12

13  Suzanne.Grandt@statebar.ca.gov

14  Ruben.Duran@bbklaw.com

15  Carissa.Andresen@statebar.ca.gov

16

17  Upon defendant State of California, who is jointly and severably liable derivatively for State Bar:

18

19  AGelectronicservice@doj.ca.gov

20

21  Dated July 17, 2022

22  Oceanside, California

23

24  Respectfully Submitted,

25

26

27  Justin S. Beck, plaintiff and moving party

28  *In Pro Per*

-1-

**PROOF OF ELECTRONIC SERVICE ONLY**

Exhibit #19: 033
22-CV-01616-BAS-DDL

EXHIBIT 61

Exhibit #61: 001
22-CV-01616-BAS-DDL

SUPREME COURT
FILED

State Bar Antitrust Determination 2022-0001

NOV 3 0 2022

Jorge Navarrete Clerk

S276939

Deputy

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

JUSTIN S. BECK, Petitioner,

v.

RUBEN DURAN, Respondent;

STATE BAR OF CALIFORNIA, Real Party in Interest.

---

The petition for review is denied.

**CANTIL-SAKAUYE**

*Chief Justice*

Exhibit #61: 002
22-CV-01616-BAS-DDL

EXHIBIT 222



STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

**State of California**

**BUSINESS AND PROFESSIONS CODE**

**Section 6094**

---

6094.  (a)  Communications to the State Bar relating to lawyer misconduct or disability or competence, or any communication related to an investigation or proceeding and testimony given in the proceeding are privileged, and no lawsuit predicated thereon may be instituted against any person. The State Bar and officers and employees are subject to the rules governing liability of public entities, officers, and employees specified in Division 3.6 (commencing with Section 810) of Title 1 of the Government Code.

Nothing in this subdivision limits or alters the privileges accorded communications to the State Bar or testimony given in investigations or proceedings conducted by it or the immunities accorded complainants, informants, witnesses, the State Bar, its officers, and employees as existed prior to the enactment of this section. This subdivision does not constitute a change in, but is cumulative with the existing law.

(b)  Upon application by the State Bar and notice to the appropriate prosecuting authority, the superior court may grant immunity from criminal prosecution to a witness in any State Bar proceeding.

(Amended by Stats. 2018, Ch. 659, Sec. 83.  (AB 3249)  Effective January 1, 2019.)

Exhibit 340

1  JUSTIN S. BECK
   3501 ROSELLE ST.
2  OCEANSIDE, CA 92056
3  760-449-2509
   justintimesd@gmail.com
4  *In Pro Per*

5

6

**FILED**

FEB 0 2 2023

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7

8  ## IN THE UNITED STATES DISTRICT COURT

9  ## FOR THE

   ## SOUTHERN DISTRICT OF CALIFORNIA

10 JUSTIN S. BECK,

11              Plaintiff,              Case No.: 23-CV-0164-MMA-DEB

12     vs.                             Judge Assigned: Hon. Michael M. Anello

13                                     FIRST AMENDED COMPLAINT FOR
                                       DAMAGES & INJUNCTIVE RELIEF
14 STATE OF CALIFORNIA; THE STATE BAR
   OF CALIFORNIA; SUZANNE GRANDT;      [COUNT I]  18 U.S.C. § 1962(c)
15 RUBEN DURAN; ELI DAVID              (RICO) RACKETEERING
   MORGENSTERN; KENNETH CATANZARITE,
16                                     [COUNT II]  18 U.S.C. § 1962(a)
                                       (RICO) INVESTING PROCEEDS OF
17              Defendants,            RACKETEERING IN AN ENTERPRISE

18 UNITED STATES ATTORNEY GENERAL;     [COUNT III]  18 U.S.C. § 1962(b)
   UNITED STATES OF AMERICA            (RICO) ACQUIRED INTERESTS IN OR
19                                     CONTROL OF AN ENTERPRISE THROUGH
                                       A PATTERN OF RACKETEERING ACTIVITY
20              Nominal Defendants
                                       [COUNT IV]  18 U.S.C. § 1962(b)
21                                     (RICO) ACQUIRED INTERESTS IN OR
                                       CONTROL OF AN ENTERPRISE THROUGH
22                                     A PATTERN OF RACKETEERING ACTIVITY

23                                     [COUNT V]  42 U.S.C. § 1983
                                       FOURTEENTH AMENDMENT—DUE
24                                     PROCESS—STATE CREATED DANGER

25                                     [COUNT VI]  42 U.S.C. § 1983
                                       FIRST AMENDMENT—"CITIZEN"
26                                     PLAINTIFF

27                                     [COUNT VII]  15 U.S.C. § 15
                                       ANTITRUST – PRIVATE RIGHT OF ACTION
28

                                    1

                                                    23-CV-0164-MMA-DEB

## COMPLAINT

Plaintiff JUSTIN S. BECK ("plaintiff" or "Beck") for his first amended complaint for damages and injunctive relief against defendants STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; KENNETH CATANZARITE; (together "defendants"); and nominal defendants UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA; alleges as follows:

### SUMMARY

1. Plaintiff is an entrepreneur and executive who derives his money, business, and property by way of founding companies, mergers, and acquisitions.

2. Defendants have engaged in an unlawful, fraudulent scheme against plaintiff involving overt acts by wire and mail designed to convert or take his money, business, and property, harass, and vex plaintiff, or to cover up the scheme under color of state law.

3. The fraudulent scheme targeting the plaintiff's money, business and property involves malicious prosecution of various lawsuits lacking objective probable cause and antitrust violations.

4. The fraudulent scheme is predicated upon and continued through interests or control over the California judiciary acquired through a pattern of racketeering activity.

5. The fraudulent scheme involves ongoing, extra-judicial acts designed to harm plaintiff, his reputation, to willfully damage the value of his material financial interests, to prevent plaintiff from life, liberty, and happiness, and to restrain plaintiff from achieving fair and neutral adjudication of his genuine claims on their merits. Other U.S. citizens are being harmed similarly.

6. Plaintiff has been actually damaged in his business, property, and person, including through violation of his clearly established, federally protected constitutional rights.

7. Plaintiff has further been damaged in his prospective money, business and property, and his right to be free of impairment from attorney schemes to defraud him.

8. Plaintiff seeks his damages, treble damages, punitive damages, pre-judgment interest, and injunctive relief. Business and property damage includes $32.67 million in stock of one issuer in a merger, $5.67 million in another, and equivalent career damage for not less than 25 years.

9. Plaintiff seeks United States intervention against The State Bar of California for cause.

2

23-CV-0164-MMA-DEB

## HISTORY OF THE STATE BAR OF CALIFORNIA

10. According to Wikipedia on January 14, 2022, "The State Bar of California is California's official attorney licensing agency. It is responsible for managing the admission of lawyers to the practice of law, investigating complaints of professional misconduct, prescribing appropriate discipline, accepting attorney-member fees, and financially distributing sums paid through attorney trust accounts to fund nonprofit legal entities. It is directly responsible to the Supreme Court of California, however, its Trustees are now appointed by the Supreme Court, the California Legislature, and Governor of California.[3] All attorney admissions are issued as recommendations of the State Bar, which are then routinely ratified by the Supreme Court. Attorney discipline is handled by the State Bar Office of Chief Trial Counsel, which acts as prosecutor before the State Bar Court of California."

11. For all times relevant, THE STATE BAR OF CALIFORNIA was controlled by majority of active market participant Board of Trustees in regulation of active market participants after 2015.

12. For all times relevant, THE STATE BAR OF CALIFORNIA lacked active supervision by STATE OF CALIFORNIA after 2015 as defined by federal antitrust laws.

## HISTORY OF THE GOVERNMENT CLAIMS ACT OF 1963 IN CALIFORNIA

13. In 1961, the California Supreme Court in *Muskopf v. Corning Hospital District* (1961) 55 Cal.2d 211 "discarded as mistaken and unjust" the concept of sovereign immunity holding "when there is negligence, the rule is liability, immunity is the exception."

14. *Muskopf* led to Government Claims Act of 1963, which expressly provide sections of liability in this case for judgments against The State Bar of California and State of California in favor of Beck:

Cal. Gov. Cod. § 815 provides "(a) Except as provided by statute: a) A public entity is not liable for an injury, whether such injury rises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

15. Statute is "otherwise provided" by:

Cal. Gov. Cod. § 815.2, which holds "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause

3

23-CV-0164-MMA.-DEB

of action against that employee or his personal representative. (b) Except as provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity."

16. Statute is "otherwise provided" for intentional tort or criminal conduct by:

"Cal. Gov. Cod. § 815.3 (a) Notwithstanding any other provision of this part, unless the elected official and the public entity are named as codefendants in the same action, a public entity is not liable to a plaintiff under this part for any act or omission of an elected official employed by or otherwise representing that public entity, which act or omission constitutes an intentional tort, including, but not limited to, harassment, sexual battery, and intentional infliction of emotional distress. For purposes of this section, harassment in violation of state or federal law constitutes an intentional tort, to the extent permitted by federal law. This section shall not apply to defamation. (b) If the elected official is held liable for an intentional tort other than defamation in such an action, the trier of fact in reaching the verdict shall determine if the act or omission constituting the intentional tort arose from and was directly related to the elected official's performance of his or her official duties. If the trier of fact determines that the act or omission arose from and was directly related to the elected official's performance of his or her official duties, the public entity shall be liable for the judgment as provided by law. For the purpose of this subdivision, employee managerial functions shall be deemed to arise from, and to directly relate to, the elected official's official duties....(c) If the trier of fact determines that the elected official's act or omission did not arise from and was not directly related to the elected official's performance of his or her official duties, upon a final judgment, including any appeal, the plaintiff shall first seek recovery of the judgment against the assets of the elected official. If the court determines that the elected official's assets are insufficient to satisfy the total judgment, including plaintiff's costs as provided by law, the court shall determine the amount of the deficiency and the plaintiff may seek to collect that remainder of the judgment from the public entity. The public entity may pay that deficiency if the public entity is otherwise authorized by law to pay that judgment. (d) To the extent the public entity pays any portion of the judgment against the elected official pursuant to subdivision (c) or has expended defense costs in an action in which the trier of fact determines the elected official's action did not arise from and did not directly relate to his or her performance of official duties, the public entity shall pursue all available creditor's remedies against the elected official in indemnification, including garnishment, until the elected official has fully reimbursed the public entity. (e) If the public entity elects to appeal the judgment in an action brought pursuant to this section, the entity shall continue to provide a defense for the official until the case is finally adjudicated, as provided by law. (f) It is the intent of the Legislature that elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort not directly related to their official duties committed for which the public entity they represent may also be liable, while maintaining fair compensation for those persons injured by such conduct...(h) If any provision of this section or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable."

4

23-CV-0164-MMA-DEB

17. Statute is "otherwise provided" by:

Cal. Gov. Cod. § 815.6, which holds "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

18. *Rodriguez v. Inglewood Unified School District* (1986) 186 Cal.App.3d 707 clarifies "[t]he statutes that provide for liability do not need to be part of the Government Claims Act, and do not need to provide specifically on their face that they apply to public entities."

19. 18 U.S.C. § 1962(a)-(c) apply to all defendants in this action, and violations of these sections by Suzanne Grandt, Ruben Duran, and Eli David Morgenstern within the scope of their employment provide for liability to The State Bar of California and State of California for judgments to Beck.

20. Beck was and is in special relationship to State of California, The State Bar of California, Ruben Duran, Suzanne Grandt, and Eli David Morgenstern as victim of ongoing schemes to defraud him – where each had actual knowledge of the schemes but chose to ratify them and carry them on with at least indifference or actual malice as to the harm it caused Beck.

21. Beck was and is among the protected class of citizenry that the statutes outlined herein were intended to protect from specific types of injuries, and Beck did suffer injuries.

22. Violations of 18 U.S.C. § 1962(a)-(d) do not have any associated immunities available by statute, and criminal conduct by Ruben Duran, Suzanne Grandt, and Eli David Morgenstern constitutes intentional torts under Cal. Gov. Cod. § 815.3 giving rise to State Bar and State liability.

23. The State Bar of California and State of California have negative duty under Cal. Gov. Cod. § 815.6 not to engage in violations of 18 U.S.C. § 1962(a)-(d) through their officials or employees.

24. Violations of 18 U.S.C. § 1962(a)-(d) would have and do give rise to causes of action against Ruben Duran, Eli David Morgenstern, and Suzanne Grandt because the associated acts or omissions would have apart from Cal. Gov. Cod. § 815.2.

25. 15 U.S.C. § 1 was designed to protect the public from particular kinds of injury related to antitrust violations, and The State Bar of California and State of California each failed to discharge their duties and cannot show they exercised reasonable diligence to discharge the duty after 2015.

5

23-CV-0164-MMA-DEB

26. 15 U.S.C. § 1 causes mandatory duty to The State Bar of California within the meaning of Cal. Gov. Cod. § 815.6, and it failed to exercise reasonable care because it repeatedly violated 15 U.S.C. § 1 through official acts of its elected officials, officers, and employees.

27. There are no immunities available for violating federal antitrust laws where The State Bar of California was majority-controlled by active market participants in the same industry it regulates.

28. There are no immunities available for violating RICO statutes, because that would "completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment," *Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059; see also *Alejo*, 75 Cal.App.4th at p. 1194.

29. The State Bar of California, Ruben Duran, Eli David Morgenstern, and Suzanne Grandt are named together in this action with State of California, and violations of RICO statutes are intentional torts under Cal. Gov. Cod. § 815.3. State of California is liable for each of them, here.

30. The State Bar of California, Ruben Duran, Eli David Morgenstern, and Suzanne Grandt are named together in this action with State of California, and constitutional violations under 42 U.S.C. § 1983 constitute intentional torts within the meaning of Cal. Gov. Cod. § 815.3.

31. Beck has permission to sue California government under Government Claims Act, and Legislature's express intent is that Beck be paid his damages, as it relates to 11th Amendment of U.S. Constitution. Beck is also a citizen of California bringing this action for cause, in good faith.

## JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 under the Racketeer Influenced Corrupt Organizations Act ("RICO") for 18 § 1962(a)-(d) claims.

33. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 15 for private right of action for antitrust violations under the Sherman Act and Clayton Act.

34. This Court has subject matter jurisdiction due to a compromised judicial system in California under *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015).

6

23-CV-0164-MMA-DEB

35. This Court has original jurisdiction over constitutional claims under 42 U.S.C. § 1983 as being federal question under 28 U.S.C. § 1331 where each arise from abuse of control over the California state judicial system by one or more aspects of The State Bar of California.

36. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because defendants do business in this district and are each subject to personal jurisdiction in this district, where process may be served in any judicial district of the United States per 18 U.S.C. § 1965(b), when required by the ends of justice. Nationwide service of process confers personal jurisdiction over a defendant in any judicial district where each defendant has contacts with the United States.

## PARTY IDENTIFICATION

37. Plaintiff JUSTIN S. BECK ("Beck" or "plaintiff") is an individual United States and California citizen, entrepreneur, and member of the public among the protected class of citizenry lacking equal protection under the law by The State Bar of California and California judicial system according to the Fourteenth Amendment of the United States Constitution. Plaintiff is a person with a principal place of residence and business at 3501 Roselle St., Oceanside, California, 92056. Plaintiff beneficially owned or controlled 8,435,000 of CTI stock for all times relevant: 4,935,000 common shares and 3,500,000 Preferred Series A shares. Plaintiff had a right to own 8,435,000 shares individually in CTI's agreed merger with Western Troy Capital Resources on the senior "NEO" Stock Exchange in Canada, which shares would be held in the U.S. as a foreign private issuer. In March 2021, Plaintiff owned or had rights to 4,549,609 Subordinate Voting Shares in Contakt World Technologies Corp. ("CW"), 45,496 Compressed Shares in CW equivalent to 4,549,600 Subordinate Voting Shares in CW, 1,800,000 Subordinate Voting Share Warrants with a strike price of $.10 CAD and public valuation of $.80 CAD in March 2021 per Subordinate Voting Share, and a right to warrants to acquire an additional 2.5% of shares upon listing CW on a senior stock exchange like NASDAQ. Plaintiff developed certain intellectual property, provisional patents, USPTO applications, and software for healthcare between 2020 and 2021 during which National Health Expenditure grew 2.7% to $4.3 trillion and accounted for 18.3% of Gross Domestic Product in the United States. Plaintiff's intellectual property was compromised due to the conduct at issue. Plaintiff hosted and co-produced "Truth in Health" with iHeartMedia,

among the top podcasts in the United States at that time, earning (2) "AVA Awards" and a "Webby Award" nomination. Plaintiff was to produce and host another season with A-List celebrity Will Ferrell as creative director which was also compromised by the conduct at issue. Before March 2021, plaintiff's company and technology received Honorable Mention as a "World Changing Idea" by Fast Company. Before March 2021, Plaintiff's company and technology received a Gold "BIG Innovation Award" as well as (2) "Stevie Awards" in American business. After March 2021, CW was also compromised and destroyed by the conduct at issue. Plaintiff is a layman, non-attorney, never admitted to any bar.

38. Defendant THE STATE OF CALIFORNIA ("State"), a sovereign entity among the United States and culpable person, is subject of plaintiff's denied government claims, and vested rights to sue. State is liable for itself, nonsovereign assignee The State Bar of California, public employees, elected officials, and its court officers under Government Claims Act as provided by statute, including but not limited to those specified in this complaint. The economy for the State is the largest in the United States, with a $3.63 trillion gross state product as of 2022, making it the largest, global sub-national economy.

39. Defendant THE STATE BAR OF CALIFORNIA ("State Bar"), a non-sovereign public entity controlled by active market participants in regulation for all times relevant, and culpable person, is subject of plaintiff's denied government claims, and vested right to sue. The State Bar of California operates postal mail and wire facilities from 845 S. Figueroa Ave, Los Angeles, 90017 and 180 Howard Street, San Francisco, CA 94105 through which it conducts a pattern of racketeering activity by mail and wire approximately 44 times per day and 16,000 times per year. The State Bar of California and those working for it or authorized by it cause liability to State on principles of *respondeat superior*, as provided by statute, and because State has assigned its sovereignty to nonsovereign The State Bar of California and its active market participants in regulation of their peers. State Bar is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce, also affecting foreign commerce through banking and money transmissions to and from China and Taiwan through the "Leadership Bank Program:" American Continental Bank, Bank of the Orient, New Omni Bank, N.A., CTBC Bank Corp.

8

23-CV-0164-MMA-DEB

40. Defendant KENNETH J. CATANZARITE, ESQ. ("KJC"), an individual and culpable person, is an attorney established and carried on by State Bar through annual dues paid, with a principal place of business being 2331 W. Lincoln Ave., Anaheim, California, 92801 with SBN #113750. KJC is the CEO of Catanzarite Law Corporation ("CLC"), whose associated-in-fact attorneys licensed by State Bar include Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James Okeefe, Jim Travis Tice, Eric V. Anderson, and key employees Becky Phillips and Han Le. KJC is an enterprise engaged in, or whose activities affect, interstate commerce.

41. Defendant SUZANNE GRANDT ("Grandt"), an individual and culpable person, is an attorney established and carried on by State Bar receiving payment from racketeering activity, with a principal place of business being 180 Howard Street, San Francisco, California 94105 with SBN #304794. Grandt is Assistant General Counsel within the Office of General Counsel of State Bar ("OGC"). Grandt is sued in her personal capacity for alleged crimes, torts, and constitutional violations against Beck and in her official capacity for acts undertaken officially on behalf of and through State Bar. OGC is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

42. Defendant RUBEN DURAN ("Duran"), an individual and culpable person, is an attorney established and carried on by State Bar receiving payment from racketeering activity, with a principal place of business being 2855 E. Guasti Road, Ontario, California with SBN #197780. Duran is sued in his personal capacity for alleged crimes, torts, and constitutional violations against Beck and his official capacity for acts undertaken officially on behalf of and through State Bar and for the private law firm Best Best & Krieger. Duran is Chairman of the Board of Trustees for State Bar ("BOT"). BOT is an enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

43. Defendant ELI DAVID MORGENSTERN ("Morgenstern"), an individual and culpable person, is an attorney established and carried on by State Bar receiving payment from racketeering activity, with a principal place of business being 845 S. Figueroa, Los Angeles, 90017 with SBN #190560. Morgenstern is Senior Trial Counsel within Office of Chief Trial Counsel of State Bar ("OCTC"). Morgenstern is sued in his personal capacity for alleged crimes and intentional torts against Beck,

9

23-CV-0164-MMA-DEB

1  and in his official capacity for acts undertaken on behalf of and through State Bar. OCTC is an

2  enterprise engaged in, or whose activities affect, $3.63 trillion in interstate commerce.

3  44. Defendant UNITED STATES ATTORNEY GENERAL ("USAG") has a duty to the United States

4  of America, and to all citizens, amidst $3.63 trillion in interstate commerce adversely affected.

5  45. Defendant UNITED STATES OF AMERICA ("USA") is a sovereign country which has a duty

6  to all citizens of USA, is not an ordinary party to this proceeding, and whose duty extends to each

7  of its states including State of California, amidst $3.63 trillion in interstate commerce adversely

8  affected by the conduct at issue. If State refuses, USA has a duty to all persons harmed by State

9  Bar through reverse incorporation (14th into 5th Amendment to U.S. Constitution).

## RACKETEERING ACTIVITY AT ISSUE

46.
### MAIL FRAUD – 18 U.S.C. § 1341

"There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited)." [DOJ Archives]

47.
### WIRE FRAUD – 18 U.S.C. § 1343

"The elements of wire fraud under Section 1343 directly parallel those of the mail fraud statute, but require the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (*citing United States v. Ames Sintering Co.*, 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994) (wire fraud is identical to mail fraud statute except that it speaks of communications transmitted by wire); *see also, e.g., United States v. Profit*, 49 F.3d 404, 406 n. 1 (8th Cir.) (the four essential elements of the crime of wire fraud are: (1) that the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that the defendant did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used) (*citing* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1341 (West 1994)), *cert. denied*, 115 S.Ct. 2289 (1995); *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994) (two elements comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme); *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994) (essential elements of wire fraud are: (1) a scheme to defraud and (2) the use of, or causing the use of, interstate wire communications to execute the scheme), *cert. denied*, 115 S.Ct.

10

23-CV-0164-MMA-DEB

193 (1995); *United States v. Cassiere*, 4 F.3d 1006 (1st Cir. 1993) (to prove wire fraud government must show (1) scheme to defraud by means of false pretenses, (2) defendant's knowing and willful participation in scheme with intent to defraud, and (3) use of interstate wire communications in furtherance of scheme); *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.").

48. More succinctly here in the 9th Circuit: "Criminal mail and wire fraud involves: (1) a scheme based on an intent to defraud; and (2) the use of the mails or wires to further that scheme." *United States v. Weaver*, 860 F. 3d 90, 94 (2nd Cir. 2017); *Bui v. Nguyen*, 712 Fed. Appx. 606, 609 (9th Cir. 2017)

OPEN ENDED AND CLOSED-ENDED STATE BAR SCHEMES TO DEFRAUD

49. Racketeering activity in this case involves open-ended and closed-ended schemes with similar perpetrators among The State Bar of California enterprise.

50. Racketeering activity in this case involves similar methods of using protection of public entity The State Bar of California, materially false statements of The State Bar of California Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel actors by mail and wire, and the use of California's judicial system supported by mail and wire communications in furtherance of the schemes.

51. Racketeering activity in this case involves similar beneficiaries being the perpetrators engaged in overt acts and The State Bar of California enterprise itself.

52. Racketeering activity in this case involves similar victims being the non-attorney public, issuers of securities, and insurance carriers who are unwillingly forced to underwrite The State Bar of California enterprise schemes to defraud nationally.

53. Racketeering activity in this case involves similar victims being the United States itself, where The State Bar of California enterprise is the only one controlling an entire judicial system and $3.63 trillion in U.S. GDP, and further admitting members of The State Bar of California enterprise *pro hac vice* to defraud citizens and businesses of their money and property in other states.

54. Racketeering activity in this case is supported or driven by conspiracy among The State Bar of California enterprise and coerced persons, adverse representation of parties before the same tribunal or in the same or similar matters to monopolize due process rights, assuming the role of "counsel" for inanimate entities through the exculpation of conflict waivers among The State Bar

11

23-CV-0164-MMA-DEB

of California enterprise and coerced persons, disregard of conflicts of interest policies necessary for a sustainable democracy, and general disregard of public interest in favor The State Bar of California enterprise actors with malice.

55. Attorney trust accounts are used to launder the undue profits of attorneys in most instances.

56. The majority of State Bar, BOT, OGC, and OCTC's daily activities constitute mail and wire fraud. Each overt act is misrepresented to help the public, but in reality, each overt act delays, estops, restricts, reduces, eliminates, harms, slanders, or destroys the rights, equity, money, property, and good will of the public that the State Bar is bound by law to protect above all else, overtly.

57. Racketeering activity in this case shows an acute threat of continuing by State Bar, CLC, KJC, Duran, Morgenstern, Grandt, OCTC, OGC, and BOT.

### PATTERN OF RACKETEERING ACTIVITY

58. "The heart of any RICO complaint is the allegation of a pattern of racketeering." *Agency Holding Corp. v. Mulley-duff & Assoc., Inc.* 483 U.S. 143, 154 (1987).

59. A "pattern of racketeering activity" under 18 U.S.C. § 1961(5) requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity.

60. Using the postal mail and wire communications with intent to defraud in 2007, The State Bar of California enterprise's "Catanzarite did not tell the Court that his client...deeded his home to Catanzarite [who] took the property to pay for his fees, but did not tell the Court about this...'Given the gravity of Catanzarite's non-disclosure, the court will deny all fees to Catanzarite for legal services." **[Exhibit 35, p. 4]**

61. Using the postal mail and wire communications with intent to defraud in 2011, The State Bar of California enterprise's "Catanzarite violated court rules by making statements to the court without any proof...Catanzarite does not care about the truth in making statements to the Court." **[Exhibit 35, p. 4]**

62. Using the postal mail and wire communications with intent to defraud in 2013, The State Bar of California enterprise's Catanzarite "was punished 'for saying one thing, then switching his story. The court stated that Catanzarite's case was a "sham."'" **[Exhibit 35, p. 4]**

12

23-CV-0164-MMA-DEB

63. From 2010 through 2021 using postal mail letters and wire communications with intent to defraud members of the public in favor of The State Bar of California enterprise, "State Bar closed more cases through nonpublic measures—a total of 22,600, or 10 percent of all case closures—than it did through public discipline, which totaled 11,200, or 5 percent of all case closures. During the same period, more than 700 attorneys each had four or more cases that the State Bar closed through nonpublic measures." [**Exhibit 34**].

64. On July 20, 2017, addressing The State Bar of California enterprise and OGC enterprise constituents Suzanne Grandt and Robert Retana, a federal judge says:

"THE COURT: Get the State Bar to look into [Grandt's] conduct. Maybe my committee here in this Court, the committee that we have here for admitting to practice in this Court ought to look into Ms. Grandt's conduct. Maybe we'll have two investigations going at once."

"THE COURT: And next time the State Bar will be a little bit more honest with the poor federal judge…I'm making this order because Ms. Grandt told me something that wasn't true, and I relied on it." [**Exhibit 2**]

65. On Friday, September 22, 2017, it was announced by United States Department of Justice that "Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in Federal Prison for Racketeering Offense Stemming from Bribery Scheme to 'Fix' Criminal Cases and Traffic Charges" after pleading guilty to one count of conspiring to violate the federal Racketeer Influenced and Corrupt Organizations Act (RICO). [**Exhibit 13**].

66. Reviewing The State Bar of California enterprise's Thomas V. Girardi's corruption of the California judiciary as well as compromise of The State Bar of California enterprise by active market participants, an "investigation began on August 26, 2014 in response to a July 31, 2014 Report of Improper Activity from the Bar's Chief Trial Counsel" citing a "disturbing lack of transparency at the highest levels within the organization." [**Exhibit 1**].

67. Using the wire with intent to defraud on January 24, 2022, with actual knowledge of [**Exhibit 1**], "The State Bar of California's Board of Trustees announced today that it has been conducting an additional investigation into whether the State Bar's handling of past discipline complaints against former licensee Thomas V. Girardi was affected by Girardi's connections to or influence at the State Bar."

13

23-CV-0164-MMA-DEB

68. On November 2, 2022, Judge Thomas M. Durkin in United States District Court for the Northern District of Illinois Eastern Division *In Re Lion Air Flight JT 610 Crash*, Case No. 18 C 7686 wrote the "Court alerted the U.S. Attorney for this district to the facts of this case when this motion was filed because Girardi's conduct is unquestionably criminal" and a "stain on the legal profession." [**Exhibit 42**]

69. Using the wire with intent to defraud on November 3, 2022, an "Open Letter Regarding the State Bar's Thomas V. Girardi Disclosure" was delivered by The State Bar of California enterprise citing "irreparable harm to hundreds of his clients. We can never allow something like this to happen again," said Duran. "Over the past 40 years, the State Bar opened 205 [notices of injury and theft we enabled for] Girardi [and used the wire and postal mail to close or 'abate' them]. Of the 205 [notices of injury and theft], approximately 120 involved allegations related to client trust [wire fraud]." [plaintiff edits]

70. Using the wire and postal mail with intent to defraud, Girardi of The State Bar of California enterprise obtained a $500 million fraudulent judgment pertaining to the Dole Fruit Company. (*In Re Girardi*, 611 Fed.3d 1027, 1039-1040)

71. Using the wire and postal mail with intent to defraud, Girardi of The State Bar of California enterprise stole more than $120 million in connection with the Gutierrez class action. (*Guttierez v. Girardi*, (2011) 194 Cal.App.4th 925).

72. On December 1, 2015, Orange County's Stephen Young Kang of The State Bar of California enterprise was indicted on 25-counts including wire fraud and money laundering. [**Exhibit 51**].

73. On September 21, 2018, after being carried on for nearly three years after a two- count wire fraud conviction, The State Bar of California enterprise disbarred Stephen Young Kang. [**Exhibit 52**].

74. "Catanzarite Law Corporation, Kenneth J. Catanzarite and Tim J. O'Keefe for Plaintiffs and Appellants." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*, No. B285691, (Cal. Ct. App. Nov. 29, 2018) "The trial court [found] finding that the amended complaint was a "sham" pleading.[] Was it? Yes. We agree with the trial court that Corzo's amended complaint was a sham pleading." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*, No. B285691, 2 (Cal. Ct. App. Nov. 29, 2018)

14

23-CV-0164-MMA-DEB

75. Using the postal mail and wire communications with intent to defraud Bank of America, "DENISE PINKERTON, individually, and as attorney in fact for Roger Root" appeared with Kenneth Catanzarite and Catanzarite Law Corporation as counsel. *Pinkerton v. Bank of Am., N.A.*, Case No. 5:19-cv-374-Oc-32PRL, (M.D. Fla. Nov. 26, 2019)

76. On October 4, 2022, Matthew Charles Elstein of The State Bar of California enterprise "Sentenced to More than 3 Years in Prison for Conning Clients via Sham Court Documents" after he "pleaded guilty to one count of wire fraud" in November 2021. [**Exhibit 81**].

77. On December 5, 2022, a Los Angeles Times article announces that Michael Avenatti of The State Bar of California enterprise "pled guilty to four counts of wire fraud" in Orange County. [**Exhibit 83**]

78. On June 16, 2020, using "Certified Mail Return Receipt" to OCTC, a "Report of Kenneth J. Catanzarite" cites a complaint filed "on behalf of 13,800 plus adversely affected investors" [**Exhibit 31, pp. 10-14**] without disclosing that Mr. Carlson testified that he did not believe he had suffered any damages, nor was he seeking an attorney, when Mr. Catanzarite visited him at his home. 9 putative class actions were filed on his behalf anyway by Kenneth Catanzarite and Catanzarite Law Corporation, and the United States Securities Exchange Commission has wasted resources on this scheme.

79. On March 9, 2022, the 11th Circuit Court of Appeals concludes the reality of Mr. Catanzarite's scheme in *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, (11th Cir. Mar. 9, 2022) affirming sanctions against "Catanzarite for violating a preliminary injunction that barred "the commencement of any further actions under the same or similar facts or circumstances to" lawsuits he had filed against bankruptcy creditors." *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 1 (11th Cir. Mar. 9, 2022) "Catanzarite, an attorney licensed in California and admitted to appear *pro hac vice* in the bankruptcy court, filed adversary complaints against the Daymark companies for Richard Carlson" (*Id. at p. 2*) and "bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the Carlson plaintiffs, *see* Fed. R. Civ. P. 65(d)(2)(B), violated the injunction by filing a civil action and lis pendens" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 3 (11th

15

23-CV-0164-MMA-DEB

Cir. Mar. 9, 2022) and "the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing false and misleading statements" *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 3-4 (11th Cir. Mar. 9, 2022)

80. On February 1, 2023, Thomas V. Girardi was indicted by federal grand juries Illinois and in California on wire fraud charges related to $18 allegedly stolen from clients who had suffered catastrophic injuries or tragic deaths of loved ones.

<u>INJURY PRODUCING, OVERT ACTS OF RACKETEERING</u>

81. [**OVERT ACT**]: For Beck, all was going well with his career until KJC filed a complaint against him using the wire in Orange County Superior Court, with intent to defraud on 9/14/2018 at 12:36:59 PM in for Denise Pinkerton with actual knowledge it was false. The "client" Pinkerton claimed to be acting as attorney in fact for Root, individually and as successor in interest to the claims of his deceased spouse (Sharon Root). The complaint alleged the Roots owned common stock in a company called Mobile Farming Systems, Inc. ("MFS") and that the lawsuit was also a shareholder derivative action on behalf of MFS. ("Pinkerton Action") Roger Root was not a shareholder of MFS, and MFS had been defunct for years. Roger Root's company, Jolly Roger, Inc. or Jolly Rogers Investments, Inc. had been offered shares in a company called Cultivation Technologies, Inc. ("CTI") but declined to purchase shares in 2015. Before filing the Pinkerton Action, KJC actually knew that Roger Root declined to purchase CTI shares, but filed the complaint against Beck anyway.

82. Parties witnessing this overt act include Clarissa Bustamante, Deputy Clerk, Orange County Superior Court, Judge Geoffrey T. Glass, and all named defendants including defendants-turned-extorted clients Amy Jeanette Cooper, Richard Francis O'Connor, Jr., and Cliff Higgerson.

16

23-CV-0164-MMA-DEB

83. **[OVERT ACT]** Overtly using the wire on Thursday, October 4, 2018 at 7:32AM PDT, with intent to defraud plaintiff, Kenneth Catanzarite did message from the address kcatanzarite@catanzarite.com Samuel Y. Edgerton, III at the address sedgerton@finglaw.com with the subject line: "Re: CTI Financial Information and settlement offer in the Root Matter (Privileged)" as follows – seeking to unwind all CTI shares of MFS at the same time:

On Oct 4, 2018, at 7:32 AM, Kenneth Catanzarite <kcatanzarite@catanzarite.com> wrote:

Sam: Thanks for the time yesterday I reviewed your proposal with Mr. Root's power holder. Obviously, you and the directors and officers are working from a fully informed position with all the financial information. Keep in mind that what we demand in settlement come is the main from the Founders who from our perspective should be more than willing to put this behind them. I have reviewed the matter with my client and our response is as follows:

1. The founders collectively will deliver 10,000,000 Founders shares to Root along with whatever proportionate rights to other shares they obtained as a result of that ownership. In other words they will convey as well any stock, options, warrants and/or convertible note rights and interests to Root in proportion to 10 million to the 23 million shares issued. The founders should be willing to do this because if as you say the company has no value then they should be more than willing to convey these shares. It allows them to retain in our view 13 million shares and rights that they bought for $13,000 and had no right to in the first place. And of course conveying the 10 million are shares they paid only $10,000 for in full.

2. Such securities delivery to Root shall be lien free and coupled with a representation and warranty by the conveying defendant and CTI that the same are validly issued and acknowledge the transfer.

3. The Defendants will pay $600,000 to Root payable $200,000 now and the balance of $400,000 over 5 years at 8% fully amortized. Secured by the remaining 13 million Founders shares. Again they paid only $13,000 for these shares.

4. Root's designee gets a seat on the CTI board.

5. Mutual releases.

6. Confidentially.

7. Note that if we settle this among the Founders as a group they can agree to make these payments and CTI does not book this as a liability.

8. Carve out for New Body MD claims against those named defendants.

This offer shall remain open until the close of business on Friday October 5 whereupon the same if not unconditionally accepted is withdrawn.

Ken

84. **[OVERT ACT]** Overtly using the Business Wire press release service and wire with intent to defraud, which was distributed further by Associated Press, on October 4, 2018 at 7:07AM with parties to the communication being any internet user:

23-CV-0164-MMA-DEB

**Orange County-Based Catanzarite Law Corporation Files a Lawsuit against Cultivation Technologies, Inc. Contesting Stock Ownership, Breaches of Fiduciary Duty and Director and Officer Misconduct**

ANAHEIM, Calif.--(BUSINESS WIRE)--Oct 4, 2018--On September 14, 2018, Catanzarite Law Corporation filed a lawsuit against Cultivation Technologies, Inc. ("CTI"), its shareholders, directors, officers and others. The matter styled *Denise Pinkerton, an individual as attorney in fact for Roger D. Root, et al. vs. Cultivation Technologies, Inc., et al.* was filed in the Orange County Superior Court as Case No. 30-2018 01018922. A copy of the complaint can be accessed at www.ctilitigation.com.

The complaint asserts claims on behalf of investor Roger Root, derivatively on behalf of Mobile Farming Systems, Inc. ("MFS"). Root, a resident of Florida, invested over $400,000 in MFS stock and was told by MFS representatives, including directors and officers Richard Probst, Richard O'Connor and Amy Cooper, that MFS owned CTI as a subsidiary. The lawsuit contends that MFS is the sole shareholder of CTI as of March 30, 2015 and that CTI directors and officers breached fiduciary duties to MFS as its shareholder including that CTI stock sales and other actions on and after June 30, 2015 are improper. Root also asserts individual claims for securities fraud. For further information, contact Catanzarite Law Corporation.

CONTACT: Catanzarite Law Corporation Timothy J. O'Keefe

Telephone: (714) 520-5544 Facsimile: (714) 520-0680

Email: tokeefe@catanzarite.com

85. **[OVERT ACT]** Overtly using the wire and Orange County Superior Court, with intent to defraud, on December 13, 2018, Catanzarite dismissed Porche, and in early January it dismissed Mobin, two of the primary wrongdoers KJC named in the Pinkerton Action. Parties to the communications include all litigants, Orange County Superior Court clerks, and any person accessing the court records from within or outside the State of California.

18

23-CV-0164-MMA-DEB

86. **[OVERT ACT]** Overtly using the wire, with intent to defraud, KJC did make contact with represented and unrepresented parties directly and indirectly and did compromise the fraudulent derivative Pinkerton Action without Court approval in violation of F. R. Civ. P. 23.1(c) and California decisional laws intended to prevent collusion. KJC actually knew that Roger Root didn't own shares in MFS nor CTI, but he didn't care because he was protected by State Bar just like Thomas V. Girardi was for forty years before he was indicted. KJC knew he could use the courts as he pleased because State Bar controlled the judiciary, and KJC was protected by State Bar just like Girardi.

87. **[OVERT ACT]** Overtly using the wire on December 21, 2018, after actual MFS counsel Kenneth Watnick was retained to defend the fraudulent derivative Pinkerton Action, KJC did deliver approximately 5,000 discovery requests *against* O'Connor, Cooper, and other defendants with about 500 *against* MFS derivatively seeking to steal private data to continue the scheme.

88. **[OVERT ACT]** Overtly using the wire, with intent to defraud after KJC made direct or indirect contact with unrepresented and represented parties to compromise the fraudulent derivative Pinkerton Action, Catanzarite set in motion his corporate takeover scheme using the signatures and property of coerced defendants Richard Francis O'Connor, Jr., Amy Jeanette Cooper, Cliff Higgerson, Aroha Holdings, Inc. (Tony Scudder) and an ongoing threat of fear under color of official right of "working with law enforcement."

89. **[OVERT ACT]** Overtly using the wire and the threat of fear to obtain signatures and property under color of official right, with intent to defraud using Orange County Superior Court and protection of State Bar, on January 4, 2019, CLC and KJC dismissed Scudder and Aroha from the Pinkerton Action without Court approval in violation of F.R.Civ.P. 23.1(c).

90. **[OVERT ACT]** Overtly using the wire in response to a motion for security filed by MFS' actual counsel to post bond regarding the fraudulent derivative action January 7, 2019, KJC did revive the defunct entity Jolly Rogers Investments, Inc. to conceal a lack of standing in the Pinkerton Action after the entity had been dissolved from May 2015 through January 17, 2019. Parties to the communication include the Secretary of State of Washington as well as any internet user.

19

23-CV-0164-MMA-DEB

91. **[OVERT ACT]** Overtly using the wire and the threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court and protection of State Bar, on January 22, 2019, KJC dismissed O'Connor, TGAP Holdings, LLC, and Scott Unfug.

92. **[OVERT ACT]** Overtly using the wire and threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court and protection of State Bar, the following day, KJC dismissed Cooper and Higgerson on January 23, 2019 so they could start producing false evidence for KJC in exchange of their cooperation while claims were tolled against them.

93. **[OVERT ACT]** Overtly using the wire and threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court and protection of State Bar, KJC did direct, and it was directed, that O'Connor and Cooper used their MFS shareholder votes to reconstitute the MFS board of directors. MFS hired KJC, who was "working with law enforcement," as corporate counsel under the threat of fear.

94. **[OVERT ACT]** Overtly using the wire and threat of fear to obtain signatures and property under color of official right, with intent to defraud plaintiff using Orange County Superior Court, KJC did direct, and it was directed, on January 23, 2019, O'Connor executed a unanimous written consent of the sole shareholder of CTI (2019 Consent), stating he was CEO of MFS and had authority to act by unanimous written consent without a meeting to adopt several resolutions. The first resolution stated MFS was the sole shareholder of CTI and O'Connor, in his capacity as CEO, could issue the written consent stating MFS fully paid for 28,000,000 shares of CTI common stock in March 2015 which he knew to be false. The next resolution stated the Amended Acts contained the false contention MFS "had not fully paid for all of its stock [was] facilitated by the wrongful and self-serving conduct" of Beck. Accordingly, all actions, issuance of shares, and promisors were void or voidable acts. In essence, the written consent sought to unwind three years of CTI's corporate acts, many of which Mr. O'Connor participated in himself.

95. Before January 23, 2019, O'Connor participated in at least 158 securities transactions involving CTI shares in an authorized capacity, or personally to sell shares (or through TGAP Holdings,

20

23-CV-0164-MMA-DEB

LLC) for more than $2,000,000 in personal profits, on information and belief, to third parties. KJC and O'Connor knew the 2019 Consent was fraudulent, but KJC knew State Bar would protect him, just like it protected and aided Thomas V. Girardi and about 700 corrupt attorneys 2010-2021.

96. **[OVERT ACT]** Overtly using the mail and wire with intent to defraud plaintiff by threatening letter using color of official right to obtain signatures and property, KJC did deliver plaintiff the following two-page letter "Via U.S. Mail & Email" on January 25, 2019:

**CATANZARITE LAW CORPORATION**
ATTORNEYS & COUNSELORS AT LAW
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
(714) 520-5544
FACSIMILE: (714) 520-0680

KENNETH J. CATANZARITE
ATTORNEY AT LAW
DIRECT DIAL
(714) 678-4100

EMAIL ADDRESS:
KCATANZARITE@CATANZARITE.COM
DIRECT FAX:
(714) 399-0577

January 25, 2019

**Via U.S. Mail & Email**
Samuel Y. Egerton, III
Jonny L. Antwiler
O'HAGAN MEYER, LLC
4695 MacArthur Court, Ste. 210
Newport Beach, CA 92660
segerton@ohaganmeyer.com
jantwiler@ohaganmeyer.com

Ken Wshick
Anderson, McPharlin & Conners
707 Wilshire Blvd, Suite 4000
Los Angeles, California 90017-3623
kdw@amclaw.com

Stephen J. Erigero, Esq.
Ivan L. Tjoe, Esq.
Alan J. Hart, Esq.
Ropers Majeski Kohn & Bentley PC
445 South Figueroa St., Ste 3000
Los Angeles, CA 90071-1608
Facsimile: (213) 312-2001
Email: stephen.erigero@rmkb.com
Email: ivan.tioa@rmkb.com
Email: alan.hart@rmkb.com

Re:   *Denise Pinkerton v. Cultivation Technologies, Inc., et al.,* Case No. 30-2018-01018922: Meet & Confer Re CTI's Discovery Responses.

**Notice by Mobile Farming Systems, Inc. ("MFS") as sole shareholder of Cultivation Technologies, Inc. ("CTI") of Actions**

**Notice of MFS Shareholders that Board of Directors is Removed**

Counsel,

I write this letter to provide notice of the enclosed actions. We would like to immediately take control of the assets and operations of CTI for the benefit of the sole shareholder MFS. We have confirmation now that the share issuance on March 30, 2015 was in fact fully paid and that the shares were issued and due to MFS which is therefore the sole shareholder.

MFS will now assert all claims directly not derivatively and this firm will serve as counsel. An amended complaint is being prepared and will be circulated for possible stipulation or motion if necessary.

We would like to avoid any unnecessary disruption of corporate activity and therefore notify you that we will defer notice to all third parties until Monday January 28 in the hope that your clients will handle the transition in the interests of the shareholders. All shares issued after March 30, 2015 are a nullity, including the highly dilutive unauthorized shares issued to Messrs.

21

23-CV-0164-MMA-DEB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Samuel Y. Egerton, III
Jeremy L. Antwiler
O'HAGAN MEYER, LLC
January 25, 2019
Page 2

Probst and Beck. It is our intention to offer those persons who purchased CTI shares, MFS shares after a determination of amounts of money actually invested. The new directors and officers will require turnover of:

1. All books and records
2. Probst and Beck to leave offices and turnover records and keys
3. Bank accounts to be turned over
4. Cash control to be turned over to new board
5. Hand off of operative contracts
6. Inventory of subsidiaries
7. Personnel lists
8. Office security codes and systems
9. All computer pass codes to computer and security systems
10. All office pass codes and security systems

This is also notice that law enforcement is looking at both MFS and CTI. We are fully cooperating with them and expect that your clients will do the same.

After you review the above please call me.

Very truly yours,

CATANZARITE LAW CORPORATION

Kenneth J. Catanzarite

97. **[OVERT ACT]** Using the wire with intent to defraud plaintiff in Orange County Superior Court,

using the manufactured evidence of January 23, 2019, and assumption of the extorted role of

22

23-CV-0164-MMA-DEB

"counsel" for the inanimate corporate entity MFS, KJC did on January 28, 2019, file the MFS Action. The claims were brought "derivatively on behalf of its wholly owned subsidiary [n]ominal [d]efendant [CTI]." It named as defendants CTI's board of directors including Beck, CTI attorneys and several entities. CTI was named as a nominal defendant. MFS raised nine causes of action and sought declaratory relief and a permanent injunction. MFS asserted it was entitled to file a derivative action because it organized CTI and acquired 28,000,000 shares of CTI common stock, and therefore, CTI was its wholly owned subsidiary. KJC knew that MFS was not a shareholder of CTI. According to the MFS Action complaint and in admission of obtaining signatures and property obtained by KJC under color of official right, KJC did state:

> 56.    Founders O'Connor, Cooper, TGAP, Cliff Higgerson, Aroha Holdings, Inc. and Scott Unfug have agreed to renounce their Founders' Shares in favor of MFS.

98. [OVERT ACT] On February 5, 2019, Catanzarite received details on actual securities transactions in CTI and the pendency of a merger valued $176 million to $240+ million. Using the wire with intent to defraud plaintiff February 20, 2019 "Catanzarite wrote a lengthy e-mail to Western Troy, warning the company it must speak with MFS's chief executive operating officer [the extorted, O'Connor] because there was currently litigation about whether MFS was CTI's sole shareholder. Catanzarite attached a copy of the MFS complaint to the e-mail. Catanzarite stated MFS disagreed with the merger and "we dispute and object to any agreement purportedly by and between Western Troy and CTI." (Bold and underline omitted.) Catanzarite demanded Western Troy withdraw its public notice about the merger and negotiate with MFS. Finally, Catanzarite insulted Western Troy. It started the e-mail by commenting it was unexpected the company did not have a receptionist to answer calls. Catanzarite noted Western Troy "appear[ed] to have no assets or operations of any value" and saw "no justification for Western Troy shareholders with a valueless company" to be entitled to CTI's shares via the merger.

99. [OVERT ACT] Using the wire with intent to defraud plaintiff and CTI's creditor where each were defrauded, KJC did also email CTI's creditor. At first glance, Catanzarite's e-mail simply looks like a notification about CTI's newly installed board of directors. The e-mail explains the new

23-CV-0164-MMA-DEB

board was interested in working with CTI's creditor. However, later in the e-mail Catanzarite reveals MFS was litigating its right to control CTI as the sole shareholder and it attached a copy of the complaint to the e-mail. The remaining and largest section of the e-mail is devoted to slandering Beck under the auspices that Catanzarite was working for others, and not himself.

100.    **[OVERT ACT]** Overtly, using the wire, with intent to defraud through Orange County Superior Court and protection of the State Bar, KJC did file and did obtain a temporary restraining order under false pretenses through judicial fraud. For instance, suborned under penalty of perjury to support the TRO, KJC did extort the signature of O'Connor on March 19, 2019 who declared: "As CEO and director of MFS acting on its behalf, MFS is rightfully and properly the owner as holder of 28,000,000 CTI shares of Common Stock and entitled to all of the rights, benefits and privileges of said shares, including the right to vote said shares and to not suffer dilution of nor interference with such right." And he did sign it on March 19, 2019 at Newport Beach, California in knowing furtherance of the scheme and it was submitted by wire to Orange County Superior Court. Before this, O'Connor participated in 158 securities transactions in CTI stock for millions of dollars. **[Exhibit #170]**

101.    **[OVERT ACT]** Overtly, using the wire, with intent to defraud, and to steal personally identifiable information of CTI shareholders in furtherance of his scheme under color of official right of the fraudulently obtained TRO, KJC did obtain a list of all CTI shareholders through extortion veiled as "discovery" on behalf of MFS while seeking to *unwind* all CTI shares in a declaratory relief hearing on behalf of MFS scheduled for April 30, 2019, finishing on May 1, 2019.

102.    **[OVERT ACT]** Using the fraudulently obtained TRO from Orange County Superior Court, KJC did steal the list of CTI shareholders under color of official right dated March 25, 2019, so he could continue his scheme where he knew the 709 hearing would fail on the merits, but he knew he could rely upon State Bar's ongoing protection of his fraudulent scheme no matter what, just like Thomas V. Girardi could for forty years.

23-CV-0164-MMA-DEB

103.    **[OVERT ACT]** Overtly, using the wire with intent to defraud and extort settlements of others in order to continue the scheme through Orange County Superior Court on April 9, 2019, KJC did file a motion to disqualify plaintiff's counsel for conflicts while engaging in the very conduct he complained of, or in the alternative sought to eliminate plaintiff's defense coverage under color of official right. For instance, in support of the motion, KJC did submit by wire the following statement in furtherance of the scheme under penalty of perjury:

> I, Kenneth J. Catanzarite, have personal knowledge of each fact set forth in this declaration based upon my observation of, participation in, and recollection of, the matters and events to which I declare. I could and would competently testify to each fact set forth in this declaration if called and duly sworn by this Court. I certify and declare as follows:
>
> 1.    I am licensed to appear before this Court and the courts of the State of California.
>
> 2.    I am a principal attorney at Catanzarite Law Corporation and lead counsel for Plaintiff Mobile Farming Systems, Inc., directly and derivatively on behalf of Cultivation Technologies, Inc. in this above-entitled action. As counsel for Plaintiff I am readily familiar with the files in this case.

104.    **[OVERT ACT]** Overtly, using the wire with intent to defraud, using the stolen information on CTI shareholders acquired under color of official right while seeking to *unwind all CTI shares* on behalf of MFS after purporting to do so through non-judicial fraud of O'Connor, Duffy, and Zakhireh on January 23, 2019, "Catanzarite filed the Mesa Action in April 2019 for Richard Mesa and a *putative class* of MFS shareholders who also purchased CTI shares. The complaint was framed as both a class action and a shareholder derivative action filed "on behalf of" CTI. The complaint asserted the class of MFS/CTI shareholders wanted to consolidate their lawsuit with MFS's derivative action "and to among other relief, recognize the ownership and control of CTI" by MFS's ownership of 28,000,000 shares, 5,000,000 "Friends &Family CTI shares," and 3,000,000 CTI shares issued pursuant to the 2015 PPM.

23-CV-0164-MMA-DEB

105.  [OVERT ACT] Overtly, using the wire with intent to defraud in furtherance of the scheme showing the coercion of O'Connor, Scudder, Cooper, Higgerson and threat of fear under color of official right to provide signatures and property, in knowing furtherance of the scheme, "Han Le" from the email address hle@catanzarite.com on April 19, 2019 at 2:27:53 PM PDT with "CC: Kenneth Catanzarite kcatanzarite@catanzarite.com , Beck Phillips bphillips@catanzarite.com , Jennifer Weaver jweaver@catanzarite.com , Richard O'Connor richard@tgapholdings.com " as follows:

From: Han Le <hle@catanzarite.com>
Date: April 19, 2019 at 2:27:53 PM PDT
Cc: Kenneth Catanzarite <kcatanzarite@catanzarite.com>, Becky Phillips <bphillips@catanzarite.com>, Jenifer Weaver <jweaver@catanzarite.com>, "Richard O'Connor (Richard@tgapholdings.com)"
<Richard@tgapholdings.com>
Subject: MFS SHAREHOLDERS - DO NOT SIGN CONSENT DOCUMENT JUST SENT BY POBST-- SUPPLEMENTAL EMAIL

Dear Shareholders:

Supplement to Email

I want to be clear that neither I, Richard O'Connor, Tony Scudder nor anyone else sued in the Root Case or the Mobile Farming Case have settled any claims with Root or anyone else. All we did was agree to toll the statute of limitations to allow claims to be brought against us later. No conflict. Instead we are working together in the best interests of Mobile Farming and Cultivation Technologies.

There is no conflict as they contend. Instead the conflict identified is those named Defendants taking the 17,000,000 Series A Preferred Shares with 3 times voting to your common shares, for $0, control of the company and their undisclosed compensation. That is the conflict. They want to keep that against your interest and we seek to cancel those shares and secret compensation arrangements. THEY COULD HAVE SETTLED THIS CASE BY AGREEING TO CANCEL THEIR PREFERRED SHARES AND CONTROL AND SALARIES--- YOU NEED TO KNOW THAT THEY REFUSED. THAT IS WHY WE HAVE THIS DISPUTE.

The consent form should not be signed. It does not allow you to reject the proposal so any signature would approve their request which I say is against the interests of Mobile Farming and Cultivation Technologies shareholders. If you have any questions feel free to call my cell at 760-409-6464.

Richard O'Connor
Director and Officer

26

23-CV-0164-MMA-DEB

106.     After the opportunity to present evidence in a trial of fact on May 1, 2019, with KJC, O'Connor, and Cooper present seeking to unwind all shares of CTI in a 709 trial challenging CTI's valid election in November 2018 on the basis that MFS was entitled to vote 28,000,000 shares that didn't exist and showing who was responsible for that (Cooper and O'Connor):

14     THE COURT:  WE ARE BACK.  NOW THAT I HAVE HAD
15 TIME TO DECOMPRESS WITH THE AFTERNOON RECESS,
16 MR. CATANZARITE, EVERY FIBER OF MY BEING SAYS THAT THE
17 FACTS ARE OVERWHELMING AGAINST YOUR POSITION IN THIS
18 CASE.  SO UNLESS YOU CAN CONVINCE ME OTHERWISE, I AM
19 PREPARED TO RULE THAT THIS ELECTION WAS VALID.
20     MR. CATANZARITE:  WELL, THE ONLY THING I CAN SAY
21 IS THAT THE SOLE DOCUMENT UPON WHICH THEY RELY IS EXHIBIT
22 53, WHICH IS WHAT YOU SAY, AND I UNDERSTAND THE POSITION
23 IS AN ADMISSION AGAINST INTEREST AGAINST MOBILE FARMING
24 BECAUSE IT IS SIGNED BY THREE PERSONS WHO WERE ALSO
25 DIRECTORS AND IN CONTROL OF MOBILE FARMING.

6 CLAIMING HERE.  BUT WE HAVE REPUDIATION OF THE AGREEMENT
7 BY PEOPLE WHO WERE THE SAME PRINCIPALS IN THE PLAINTIFF.
8 WE HAVE ACTIONS -- REPEATED ACTIONS TAKEN SUBSEQUENTLY
9 CONSISTENT WITH THE NOTION THAT PLAINTIFF WAS NOT A
10 STOCKHOLDER.  THE DELAY IN BRINGING THIS ACTION IS
11 CONSISTENT WITH THAT CONCLUSION, THAT PLAINTIFF HAS BEEN
12 OF THE VIEW THAT THEY ARE NOT A SHAREHOLDER.
13     SO THE COURT CONCLUDES THAT THE CHALLENGE
14 DIRECTOR ELECTION IS DENIED, AND THE COURT CONCLUDES THAT
15 PLAINTIFF IS NOT A STOCKHOLDER IN CTI.

27

23-CV-0164-MMA-DEB

107.    **[OVERT ACTS]** Overtly, using the wires in a series of acts with intent to defraud in furtherance of the scheme using protection of State Bar, just like Thomas V. Girardi, and just like others convicted of wire fraud amongst The State Bar of California enterprise for submitting "sham" court documents shown:

"[o]n or about May 6, 2019, I began receiving calls, text messages, and voicemails from Anthony Scudder ("Scudder") requesting that I execute a document...to facilitate replacement of CTI management [under different factual pretenses than January 23, 2019]. On or about May 8, 2019...I spoke with...Kenneth J. Catanzarite of Catanzarite Law Corporation...Catanzarite explained to me [by wire communication/cellular phone] the purpose...was to remove the board of directors of CTI through an action by majority written consent [by mail and/or wire] of the shareholders of CTI ("Shareholder Consent") [among whom MFS was notably not one and hasn't been; but here not even claimed by the Racket despite the ongoing, knowingly fraudulent 'MFS Action' and 'Pinkerton Action' and 'Mesa Action']. Following our conversation, Catanzarite sent me the Proxy and requested my signature...I explained to Scudder that I did not want to get involved and declined to execute the Proxy. On May 10, 2019, Richard O'Connor ("O'Connor") sent me text messages and voicemails offering me $5,000 to execute the Proxy; which I declined. On May 14, 2019, I was provided a copy of the Shareholder Consent dated as of May 14, 2019, executed by O'Connor as proxy holder for certain CTI shareholders with a register of purported proxies attached...Page 28 of the Shareholder Consent is a forged Proxy authorizing O'Connor to vote my shares." **[Exhibit #210]**

108.    **[OVERT ACTS]** Overtly, using the wire in Orange County Superior Court, with intent to defraud, KJC appearing on behalf of directly adverse parties again purporting to advocate: "One month later, Catanzarite amended the Mesa Action complaint to add Cooper and Tom Mebane as plaintiffs and FinCanna as a defendant. Catanzarite also changed the nature of the action to focus on unraveling CTI's financial dealings with its primary creditor and declare CTI's actions and contracts void. The shareholder no longer wished to join the MFS Action or seek recognition of MFS's controlling stock shares over CTI."

109.    Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and [Beck] as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the derivative Pinkerton Action without court approval; (3) he became MFS's counsel of record; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having

23-CV-0164-MMA-DEB

1  lawsuits filed by other people claiming to be MFS and CTI shareholders; and (5) after filing

2  two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action)

3  claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders

4  willing to join in the MFS Action but also independently seeking damages from CTI, its current

5  shareholders, and board of directors.

6  110.     [OVERT ACTS] Overtly, using the wire in Orange County Superior Court, with intent to

7  defraud, KJC working with BW, TJO and appearing *ultra vires* Catanzarite next filed two lawsuits

8  as CTI's corporate counsel (the Creditor Action and Scottsdale Action). The Scottsdale Action

9  is noteworthy in that Catanzarite demanded that CTI's insurance company stop providing a defense

10  or indemnify Beck other defendants in the Mesa Action.

11  111.     This overt act against his insurance carrier, and others in cumulative, have caused

12  irreparable harm to Beck in that he has been unable to obtain insurance coverage with fraudulent

13  claims presented against him for more than four years, continuing. It has destroyed Beck's career

14  as a CEO rendering him unemployable as an executive in most instances.

15  112.     [OVERT ACT] Overtly, using the wire in knowing furtherance of the scheme to extort a

16  settlement under color of official right, on Wednesday, July 10, 2019 at 10:01 AM "From: Becky

17  Phillips [mailto:bphillips@catanzarite.com]" delivered a wire communication for, and copying,

18  "CC: Kenneth Catanzarite kcatanzarite@catanzarite.com" an email "Subject: Cultivation

19  Technologies, Inc. – Confidential Settlement Negotiations – Evidence Code §§ 1152 and 1154"

20  without regard for the fraud and crime exceptions of Evidence Code § 956, reading: "Mr.

21  Edgerton, Please see the attached settlement negotiations/agreement for your client(s) if there is

22  an interest. This proposal, if not accepted, shall expire at 5:00 p.m. Thursday, July 19,

23  2019....Very truly yours, Becky Phillips for Kenneth J. Catanzarite" "Legal Assistant"

24  "Catanzarite Law Corporation" "2331 West Lincoln Avenue, Anaheim, CA 92801" "Direct

25  Dial: (714) 678-2108" "Direct Fax: (714) 399-0589" "Office Phone: (714) 520-5544" "Office

26  Fax: (714) 520-0680" to which my defense counsel, Sam Y. Edgerton, III Partner of law firm

27  Ohagan Meyer wrote back to "To: 'Kenneth Catanzarite' kcatanzarite@catanzarite.com

28

29

23-CV-0164-MMA-DEB

"[b]ecause of the obvious fraud issue regarding your purported representation of CTI, this is not a protected settlement communication."

113. **[OVERT ACTS]** Overtly, using the wire even after a Court in trial of fact rejected the cooked-up claims and sham, wired documents "with every fiber of [its] being," KJC was undeterred because he knew he could rely upon protection of State Bar just like Thomas V. Girardi knew he could for forty years.

"In July 2019, Catanzarite filed first amended complaints (FAC) in the Pinkerton Action and the MFS Action. It removed all derivative action claims made on behalf of MFS and CTI. Catanzarite claimed to be MFS's and CTI's corporate counsel. (See *FinCanna, supra,* G058700 [description of Catanzarite's six lawsuits].) *Beck v. Catanzarite Law Corp.,* No. G059766, 16-17 (Cal. Ct. App. Jul. 13, 2022) "However, the record shows that when Catanzarite learned MFS lacked standing to bring a derivative suit on CTI's behalf, it did not dismiss the lawsuits. Catanzarite filed FACs instead." *Beck v. Catanzarite Law Corp.,* No. G059766, 32 (Cal. Ct. App. Jul. 13, 2022)

114. **[OVERT ACT]** Overtly, using the wire in Orange County Superior Court, with intent to defraud and to conceal its schemes, KJC did suborn perjury by affidavit (while "tolling claims" against O'Connor on behalf of MFS derivatively as "sole shareholder" of CTI) from O'Connor on November 4, 2019 seeking to avoid disqualification which directly conflicted with the March 19, 2019 declaration asserting MFS was the sole shareholder of CTI. **[Exhibit #141]**

115. **[OVERT ACT]** Overtly, using the wire in Orange County Superior Court, with intent to defraud and to conceal its schemes, KJC did suborn perjury by affidavit (while "tolling claims" against O'Connor on behalf of MFS derivatively as "sole shareholder" of CTI) from O'Connor on November 11, 2019:

5. As Chief Executive I issued 5,000,000 Founders Shares when CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to the startup effort.

116. **[OVERT ACT]** Overtly, using the wire in Orange County Superior Court, with intent to defraud and to conceal its schemes, KJC did suborn perjury by affidavit (while "tolling claims" against O'Connor on behalf of MFS derivatively as "sole shareholder" of CTI) from O'Connor on December 27, 2019.

30

23-CV-0164-MMA-DEB

Regarding Calixto's sworn statement (Ex. 210) May 17, 2019:

> 12. I am the person who solicited the common stock proxies not Mr. Catanzarite, As for the Probst contention about the proxies he is in error.

Regarding the non-judicial acts in furtherance of schemes:

> 19. On August 27, 2019 I appeared at the shareholders meeting and by proxy elected myself, Mr. Duffy and Ms. Cooper to the Board of Directors and to officer positions at CTI with my 51.15% proxies.

> 20. On August 28, 2019 the common elected directors, namely myself, Cooper and Mr. Duffy, took action by written consent to appoint myself as Chief Financial and Chief Operating Officer, Ms. Cooper as Vice President and Mr. Duffy as President and Secretary.

> 21. Myself, Mr. Duffy and Mrs. Cooper took action by unanimous written consent appointing Jeff Schunk, a CTI common shareholder, as Vice President, tasked with the responsibility to review conflicts of interest in the representation by Mr. Catanzarite and CLC.

Despite suing CTI and Beck from April – June 2017 about it with Zakhireh, Duffy:

> 29. The very first time that the CTI shareholders learned of the purported issuance of the Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were objected to as not validly issued.

117.    [OVERT ACT] After plaintiff delivered notice to State Bar with specificity, exhaustive injury documentation showing serial fraud, perjury, representation of directly adverse parties, extortion for signatures and property [Exhibit #172], plaintiff did receive postal mail intending to defraud from Joy Nunley on behalf of her "Senior Trial Counsel Eli Morgenstern," who did defraud plaintiff and did unlawfully protect KJC, CLC, and its associate attorneys Brandon Woodward and Tim James O'Keefe on April 3, 2020. [Exhibit #173] Nunley and Morgenstern knew their letter was frivolous and that State Bar's postal mail scheme was fraudulent but sent it anyway. Each told plaintiff the fraud exacted upon him was "not serious enough" for "State Bar Court," which they knew or reasonably should have known to be false.

23-CV-0164-MMA-DEB

118.    **[OVERT ACT]** Plaintiff delivered notice again of his injuries and the serial fraud, sham court documents, and wire communications from KJC. On August 10, 2020, using the wire in Orange County Superior Court, with intent to defraud and continue the scheme, in conspiracy with State Bar and Morgenstern, the "MFS Cross Action" was filed against plaintiff which was just a regurgitation of the same cooked up claims that the Court rejected with "every fiber of [its] being" on May 1, 2019. KJC didn't care, because he knew he could rely on Morgenstern and The State Bar enterprise to protect him, just like Thomas V. Girardi knew he could for forty years before he was indicted on wire fraud charges.

119.    **[OVERT ACT]** Where plaintiff delivered notice by postal mail to the "Complaint Review Unit" before understanding it was also Office of General Counsel for State Bar who also defends tort claims against itself and The State Bar of California enterprise, and also makes antitrust determinations for itself frivolously, plaintiff did receive another postal mail letter August 12, 2020 literally two days after the "MFS Cross Action" was filed by wire with intent to defraud. **[Exhibit 176]** Office of General Counsel knew the letter was frivolous, and Office of General Counsel did intend to defraud Beck, and Beck was defrauded yet again by The State Bar of California's schemes.

120.    Plaintiff later realized the purpose of these postal mail communications was not only to protect The State Bar of California enterprise's schemes to defraud members of the public including plaintiff, any client of CLC, KJC, and any client of Thomas V. Girardi or Girardi-Keese, but it was *also* to generate leads for lawyers as part of an unlawful trust in restraint of U.S. commerce **[Exhibit 177]**.

121.    **[OVERT ACT]** Incredulous that the conduct was still carried on by State Bar, Morgenstern, and "Complaint Review Unit" (Office of General Counsel) – plaintiff delivered notice to California Supreme Court that he needed a neutral hearing to present the case. Overtly using postal mail with intent to defraud plaintiff from its mail facility in San Francisco, Jorge E. Navarette did send plaintiff a letter on September 29, 2020, with an ambiguous case law from 1948 that had nothing to do with the conduct at issue ("In Re: Walker" scheme to defraud the public). **[Exhibit #182]** And again, Beck was defrauded by postal mail through the designed schemes.

23-CV-0164-MMA-DEB

122.     [OVERT ACT] Overtly, on July 20, 2022, using the wire with intent to defraud plaintiff and to protect KJC and CLC who were protected just like Thomas V. Girardi was for forty years, Grandt on behalf of Duran did deliver plaintiff a letter stating that the conduct of KJC did not give rise to The State Bar of California's duties to inform the public. Grandt knew the basis of this decision was not the merits, but the fact that plaintiff chose to sue The State Bar of California on behalf of himself, and with public interest standing. But Grandt didn't care, because she knew The State Bar of California controlled the entire judiciary in California, so she sent the letter anyway to Beck on behalf of Duran, and Beck was defrauded once more by The State Bar of California's schemes.

123.     [OVERT ACT] After preparing a case for California Supreme Court, delivering it within the arbitrary, criminal-protecting timeline of 60-days, Jorge E. Navarette did ask that it be reformatted and did ask that he send the case to The State Bar of California Office of General Counsel, The State Bar of California Office of Chief Trial Counsel, and to send a copy to each of the California Supreme Court Justices. After back and forth by postal mail including various requests fulfilled by Beck, Jorge E. Navarette did send plaintiff a postal mail letter intending to defraud him on March 22, 2021 stating that the case had been rejected not on the merits, but due to the criminal-protecting 60-day timeline during which plaintiff did provide a case. Navarette knew that KJC, Brandon Woodward, Tim James O'Keefe, and CLC were among the protected attorneys, just like Thomas V. Girardi before he was indicted on wire fraud charges, and so Jorge E. Navarette did choose to defraud plaintiff by postal mail stating the case was "returned unfiled." And plaintiff was defrauded and experienced an emotional breakdown from which he has yet to recover with the cumulative foregoing acts of fraud and malice.

**[Exhibit 179] [Exhibit 182] [Exhibit 183]**

124.     [OVERT ACT] On February 14, 2022, Carissa Andresen with The State Bar of California enterprise in Office of General counsel did file in Orange County Superior Court the "unfiled" Supreme Court case delivered Beck by postal mail as if it were dispositive of The State Bar of California's duties to stop their own criminal conduct or that of KJC's, and even though Navarette said the case was "returned unfiled" to Beck by postal mail.

33

23-CV-0164-MMA-DEB

6.      Attached hereto as Exhibit A is a true and correct copy of the March 18, 2021 Accusation of Justin Beck Against an Attorney, filed by Petitioner in California Supreme Court Case No. S267752.

125.      [OVERT ACT] On September 21, 2022, through September 26, 2022, plaintiff did file an antitrust petition in California Supreme Court after understanding the unlawful unity of interests within The State Bar of California and protection schemes that did and do defraud the public. Using the wire, with intent to defraud, plaintiff did once more receive a postal mail from Navarette that plaintiff's petition S276517 was "stricken" as premature. California Supreme Court directed that Beck's federal, antitrust petition be reviewed and determined by the unlawful trust itself: The State Bar of California enterprise without regard of *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015) or 15 U.S.C. § 1. [**Exhibit 28**]

126.      [OVERT ACT] On October 17, 2022, overtly using the wire with intent to defraud plaintiff and the United States, Office of General Counsel for The State Bar of California enterprise working with Grandt did deliver plaintiff "Antitrust Determination 2022-001" after removing four volumes of exhibits, 1,000+ pages of probative antitrust evidence, and ignoring *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015) or 15 U.S.C. § 1 while citing stale case law *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 and conceding to the improper purposes of the determination being plaintiff's suits against State Bar. [**Exhibit #60**]

127.      [OVERT ACT] Overtly using the wire, with intent to defraud plaintiff and the United States, California Supreme Court clerk Jorge E. Navarette working with Office of General Counsel's Robert Retana did obstruct and manipulate plaintiff's filings in TrueFiling and remove exhibits from the docket in S276517.

128.      [OVERT ACT] Overtly using the wire, with intent to defraud plaintiff, the public, and the United States, Robert Retana of Office of General Counsel did deliver a wire communication on October 17, 2022 to Jorge E. Navarette citing the fraudulent "Antitrust Determination 2022-001" which was made without regard of the United States Supreme Court, and was made after manipulating plaintiff's antitrust petition and exhibits. [**Exhibits #63 through #68**]

34

23-CV-0164-MMA-DEB

129.     [OVERT ACT] Overtly using the wire, with intent to defraud plaintiff, the public, and the United States, Jorge E. Navarette did start a new antitrust case without plaintiff's authorization, which case was commenced in California Supreme Court under case number S276939 using a manipulated record, which case did result in a fraudulent "En Banc" decision by California Supreme Court on November 30, 2022 in conspiracy with Navarette. [**Exhibit #61**]

130.     [OVERT ACT] Overtly using the wire, Grandt did inadvertently deliver evidence of the unlawful unity of interests existing by and between State Bar Board of Trustees Ruben Duran, Executive Director Leah Wilson, Office of Chief Trial Counsel George Cardona, Office of General Counsel Suzanne Grandt, and the malicious basis for their decisions regarding the concealment of criminal conduct to which plaintiff has been subject as being plaintiff's decision to sue The State Bar of California. The wire communications also show that Kenneth Catanzarite propounded patently false statements using the wire to Carissa Andresen, who in turn regurgitated the false attorney statements despite court orders proving their falsity, and even though The State Bar of California had a preservation of evidence letter dated October 14, 2021 confirmed by Andresen on May 12, 2022, and it did harm and defraud plaintiff once more. [**Exhibit #120**]

131.     [OVERT ACT] Overtly using the postal mail and wire, after plaintiff rejected the false claims of "privilege" asserted to fraudulently conceal the scheme, Ellin Davtyan of Office of General Counsel did threaten plaintiff, and Ellin Davtyan did seek to control the enterprise on December 15, 2022, under color of state law by demanding all recipients to whom Beck had forwarded the evidence. [**Exhibit #186**]

132.     [OVERT ACT] Overtly using the wire, plaintiff received document production from a public records request on January 13, 2023, where Davtyan or Office of General Counsel frivolously asserted that they rejected Beck's contention that Office of General Counsel did not have a right to file an antitrust petition in California Supreme Court that was not authorized, which antitrust petition did defraud plaintiff, the public, and the United States.

133.     [OVERT ACT] Showing the acute threat of continuing schemes to defraud using the judicial system, using the wire with intent to defraud litigants or insurance carriers and a federal court in Michigan [**Exhibit #202 juxtaposed with August 27, 2019 acts**], James Duffy is being

35

23-CV-0164-MMA-DEB

used as a straw plaintiff against entities owned or controlled by Jeffrey Schunk by CLC. Neither Duffy nor Schunk would be known to KJC and the law corporation CLC where KJC is CEO, but for the fraudulent schemes to steal information through "discovery" under color of law commencing September 14, 2018, using protection of The State Bar of California enterprise, Office of Chief Trial Counsel, Office of General Counsel, and Board of Trustees for The State Bar of California – just like Thomas V. Girardi enjoyed for forty years.

134.    "Catanzarite does not care about the truth when making statements to the Court." This Court cannot trust one word or filing from CLC nor KJC, either and plaintiff notices the Court that it can't reasonably trust State Bar, Duran, Morgenstern, nor Grandt, either.

## INJURY STANDING UNDER RICO

135.    Plaintiff is: (1) a "person" (2) who sustained injury (3) to his "business or property" (4) "by reason of" defendants' violation of § 1962.

136.    Plaintiff's injuries to business and property arise from (1) § 1962(c) from predicate acts detailed; (2) § 1962(a) arising from investment of racketeering income in an interstate enterprise; (3) § 1962(b) arising from acquisition of an interest in or control over an interstate enterprise; (4) arising from overt acts committed in furtherance of schemes to defraud plaintiff in conspiracy.

137.    Plaintiff seeks his damages, treble damages, pre-judgment interest, and attorney fees for his § 1962 claims as follows for at least the following business and property:

138.    $1,282,000 immediate judgment against State for converted policies

139.    $8,433,000 total past and future lost earnings to business and property

140.    $27,407,250 total lost earnings capacity to business and property

141.    $32,667,351 business and property deliberately compromised (merger destroyed)

142.    $365,000 from real estate proceeds used to endure predicate conduct

143.    $5,649,297 business and property destroyed in March 2021/April 2021

144.    $32,667,351 future business and property (reasonable basis) from conduct

145.    $25,000,000 future business and property (reasonable basis) from conduct

146.    $1,000,000 inherited IRA shamefully depleted to endure predicate conduct

36

23-CV-0164-MMA-DEB

147.  Plaintiff seeks his damages, non-economic damages, and punitive damages for his claims under 42 U.S.C. § 1983 and 15 U.S.C. § 1 on these bases:

148.  $138,889,249 for damages as above as an alternative or cumulative

149.  $138,889,249 for pain, suffering, inconvenience, and oppression

150.  $138,889,249 for severe emotional distress leading to a seizure in Dec. 2022

151.  $138,889,249 for loss of consortium and inability to marry

152.  $138,889,249 for becoming disenfranchised, losing trust in State government

153.  $138,889,249 for severe grief, losing his parents and a mentor building CTI

154.  $138,889,249 for loss of enjoyment of life, consideration of suicide

155.  $138,889,249 for humiliation, losing friends and colleagues

156.  $138,889,249 for loss of 20% of his left arm due to Grandt, State Bar delays

157.  $138,889,249 for ratifying KJC, BW, TJO, CLC, NMC conduct pre-9/14/18

158.  $138,889,249 for ratifying KJC, BW, TJO, CLC, NMC conduct post-9/14/18

159.  This action was filed within the RICO statute of limitations. Plaintiff did not identify, nor could he have previously the deliberate schemes to defraud him despite his diligence, nor the active concert among State actors. All claims are filed in a timely manner.

23-CV-0164-MMA-DEB

## COUNT I

### RACKETEERING

### Violation of 18 U.S.C. § 1962(c)

160. The allegations of paragraphs ¶ 1 through ¶ 159 are incorporated herein by reference as if they were set forth fully.

161. To recover under § 1962(c), plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. See *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

162. Plaintiff did suffer injuries resulting from violation of 18 U.S.C. § 1962(c).

163. This Count I is against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count I Defendant(s)").

164. KJC is an enterprise engaged in and whose activities affect interstate commerce. The Count I Defendant(s) are employed by or associated with the KJC enterprise.

165. The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the KJC enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

166. For instance, before September 14, 2018, KJC did engage in a pattern of racketeering activity enabled and carried on through wire fraud and mail fraud by The State Bar of California, its Office of Chief Trial Counsel, and its Office of General Counsel which were controlled by Board of Trustees.

167. For instance, before January 23, 2019, Duffy, Zakhireh, and O'Connor did sue or conspire to sue plaintiff and CTI "on behalf of 92 shareholders" concerning the Preferred Series A shares of CTI which they did settle on or around June 13, 2017 (proving each knew their acts on or around January 23, 2019 to be fraudulent, which acts were directed by KJC).

38

23-CV-0164-MMA-DEB

168.    For instance, Zakhireh and O'Connor did defraud or conspire to defraud the United States Securities Exchange Commission in July 2017 without regard for the truth, and the SEC and plaintiff were defrauded in pursuit of Zakhireh and O'Connor's malice against plaintiff.

169.    For instance, KJC did use their malice against Beck and a threat of "working with law enforcement" to extort O'Connor, Zakhireh, Duffy, Cooper, Higgerson and others to produce evidence that KJC knew was false or manufactured to suit KJC's scheme to defraud Beck and others using the Court.

170.    For instance, O'Connor and Cooper did use the wire to pay $340,000 in illegal commissions to Joseph Porche through MFS out of an investment in MFS securities of approximately $450,000 by Jolly Roger Investments, Inc. or Jolly Roger, Inc. years before plaintiff ever met O'Connor and Cooper in April 2015. KJC did use this information to extort O'Connor, Cooper, and Higgerson, too.

171.    For instance, on September 14, 2018, KJC did file the derivative "Pinkerton Action" for a non-shareholder against MFS and Beck with intent to defraud through Orange County Superior Court. KJC knew the claims against Beck to be false, and that Roger Root was not a shareholder of MFS nor CTI, but KJC knew he could rely upon State Bar to protect him by wire and postal mail, just like Thomas V. Girardi knew for forty years before he was indicted on wire fraud charges.

172.    For instance, on December 13, 2018, KJC did dismiss Joseph Porche from the Pinkerton Action. Joseph Porche did receive $340,000 in illegal commissions from O'Connor and Cooper via MFS.

173.    For instance, between December 13, 2018, and January 23, 2019, KJC did make direct or indirect contact with unrepresented and represented parties' defendant to the direct and derivative Pinkerton Action, and the derivative action was compromised without Court approval.

174.    To obtain the property or other consideration from Cooper, Higgerson, and O'Connor with their consent, under color of official right on behalf of MFS derivatively and directly against them for securities fraud charges as KJC was "working with law enforcement," Cooper, Higgerson, and O'Connor did provide their signatures and property to KJC induced by a wrongful use of fear.

39

23-CV-0164-MMA-DEB

175.    KJC did pay annual dues to State Bar he derived from a pattern of racketeering activity, and State Bar did accept them, then use them.

176.    Duran was initially appointed to the Board of Trustees of The State Bar of California enterprise, which was and is associated with KJC, in 2018 by Assembly Speaker of the State of California, Anthony Rendon.

177.    On Thursday, August 10, 2017, "University of San Diego (USD) School of Law Center for Public Interest Law (CPIL) executive director Professor Robert C. Fellmeth was quoted in Los Angeles Daily Journal article that reported on the State Bar promotion of an attorney [Grandt] whom a federal judge recently accused of intentionally misleading him during a hearing." Grandt did intentionally mislead the judge about State Bar Court, which is unconstitutional.

178.    "The agency's promotion of Suzanne Grandt, a lawyer in the bar's Office of General Counsel, was announced internally four days after U.S. District Judge William Alsup wrote in an order that he was considering sanctioning the bar because of "inaccuracies in attorney Grandt's statements." [**Exhibit 2**] State Bar should have been sanctioned, because it freely engages in fraud.

179.    Grandt and Duran were each appointed due to their willingness to defraud Courts or the public with impunity, including through carrying on the conduct of the KJC enterprise.

180.    Eli David Morgenstern, Office of Chief Trial Counsel, and Office of General Counsel have known before September 14, 2018, and continue to know and freely enable through overt acts of mail fraud and wire fraud, the racketeering activity of the KJC enterprise.

181.    The preceding acts, including the overt acts set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

182.    As direct and proximate cause of the Count I Defendant(s) racketeering activity, plaintiff lost actual and prospective business, property, and money.

183.    As direct and proximate cause of State assigning its sovereignty to active market participants in regulation at State Bar, the KJC enterprise was enabled and carried on to conduct racketeering activity described above. State was thus a substantial factor which had a mandatory duty under Cal Gov. Cod. § 815.6 not to engage in racketeering against Beck, or in the alternative, State had a mandatory duty not to allow the racketeering against Beck but did so anyway.

23-CV-0164-MMA-DEB

184.     As direct and proximate cause of Morgenstern, Duran, or Grandt of State Bar acting officially under Cal. Gov. Cod. § 815.2, the KJC enterprise was enabled and carried on by wire and postal mail to defraud Beck and others.

185.     As direct and proximate cause of State Bar protecting the KJC enterprise despite its patterns of racketeering activity just like Thomas V. Girardi was protected, the KJC enterprise was enabled to conduct racketeering activity described above. State Bar was thus a substantial factor, and State is responsible for State Bar, Duran, Grandt, and Morgenstern on principles of *respondeat superior*.

186.     As direct and proximate result of the Count I Defendant(s) racketeering activities and violation of 18 U.S.C. § 1962(c), plaintiff has been injured in his business and property for which plaintiff seeks his damages, treble damages, injunctive relief, pre-judgment interest, and attorney's fees. Beck's ability to conduct business and obtain property is severely compromised due to the Count I Defendant(s) racketeering activity, which will affect Beck for not less than 25-years.

187.     WHEREFORE, plaintiff requests this Court enter judgment as follows:

188.     $8,433,000 total past and future lost base earnings to business and property

189.     $1,000,000 inherited IRA shamefully depleted, used to endure racketeering

190.     $365,000 from proceeds of real property used to endure racketeering

191.     WHEREFORE, plaintiff requests this Court enter judgment as follows:

192.     JUDGMENT in favor of plaintiff JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 18 U.S.C. 1962(c).

193.     MONEY JUDGMENT in favor of JUSTIN S. BECK against RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for $9,798,000 damages plus interest.

194.     MONEY JUDGMENT in favor of JUSTIN S. BECK against RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for $29,394,000 treble damages plus interest.

195.     PERMANENT INJUNCTIVE RELIEF as Court deems just to restrain the racketeering of Count I Defendants and the KJC enterprise under 18 U.S.C. 1964(a) and F.R.Civ.P. 65.

41

23-CV-0164-MMA-DEB

**COUNT II**

**INVESTING OR USING PROCEEDS OF RACKETEERING**

**ACTIVITY IN AN INTERSTATE ENTERPRISE**

**Violation of 18 U.S.C. § 1962(a)**

196. The allegations of paragraphs ¶ 1 through ¶ 195 are incorporated herein by reference as if they were set forth fully.

197. 18 U.S.C. § 1962(a) prohibits a person from investing in an enterprise any income derived from a pattern of racketeering activity.

198. This Count II is against defendants RUBEN DURAN, THE STATE BAR OF CALIFORNIA and STATE OF CALIFORNIA (the "Count II Defendant(s)").

199. The State Bar of California, a nonsovereign public entity, is an enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

200. The State Bar of California, consisting of legal aid organizations staffed by licensees, and active and non-active licensees including approximately 700 identified by California State Auditor in Report 2022-030, is an association-in-fact enterprise engaged in and whose activities affect interstate commerce. The Count II Defendant(s) are employed by or associated with the enterprise.

201. The Count II Defendant(s) used or invested income derived from a pattern of racketeering activity in an interstate enterprise.

202. For instance, The State Bar of California established, carried on, received income through IOLTAs, then used and invested income from its licensees, a portion of which was derived from the pattern of racketeering activity described above, to pay Duran, Morgenstern, and Grandt their salaries and each did injure plaintiff.

203. For instance, State of California used and invested income from the taxpayer public, including the licensees and entities they control engaged in a pattern of racketeering activity, and invested it in The State Bar of California, who invested or will invest it back to The State Bar of California enterprise horizontally to other active market participants regulating themselves, while plaintiff and the public suffer.

42

23-CV-0164-MMA-DEB

204.     For instance, on July 13, 2022, by wire "The State Bar of California announced today that this year's $308 billion State Budget will furnish more than $105 million in funding for access to justice efforts through the State Bar, supporting legal aid organizations...This supplements the more than $50.5 million in funds the State Bar plans to distribute for similar assistance from Interest on Lawyers' Trust Accounts (IOLTA) earnings in 2023...The funding comes from state General Fund dollars as well as $20 million in federal homeless prevention funds."

205.     For instance, "In the 2021 –22 state budget, the State Bar of California received a record amount, nearly $110 million, in similar funding" which it invested back into The State Bar of California enterprise while plaintiff was suffering injuries, and with actual knowledge of plaintiff's injuries.

206.     Just like Office of General Counsel/"Complaint Review Unit" is used to generate leads to pay lawyers as above, and to cause artificial demand for legal services while the public suffers from protectionist behavior of active market participants, so too do these parallel investments create leads for The State Bar of California enterprise as the July 13, 2022, wire reads: "For a list of free legal aid providers for low-income Californians, please go to LawHelpCa.org."

207.     The State Bar of California used or invested in excess of $1,058,800,000 (one billion fifty eight million eight hundred thousand dollars) while Beck and the public suffered between 2018-2022, as Duran complained by wire of a "lack of resources" and Morgenstern fraudulently asserted by mail that Beck's harm was "not serious enough" for "State Bar Court."

208.     Duran refuses to impose discipline or costs on racketeers controlled by and through The State Bar of California, and thus seeks to impose the costs on taxpayers so that The State Bar of California enterprise is free to defraud the public with Duran's permission and active concealment.

209.     Plaintiff was not offered legal aid to sue The State Bar of California, Duran, Morgenstern, or Grandt where he is a "low-income Californian" *because* of The State Bar of California enterprise. Indeed, *because* plaintiff sued each, the racketeering activity was concealed, carried on, and furthered with malice and artificial discretion while Duran made false statements by wire to defraud plaintiff, the public, and to defraud the United States who provided $20 million in 2022.

43

23-CV-0164-MMA-DEB

210.     Plaintiff was not offered legal aid to defend against the criminal conduct of KJC because KJC and his associates Nicole Marie Catanzarite Woodward, Brandon Woodward, Jim Travis Tice, and Eric V. Anderton aided by Becky Phillips and Han Le at CLC are protected by State Bar, Office of Chief Trial Counsel, and Office of General Counsel through investments made in Duran, Grandt, and Morgenstern similarly to the manner in which Thomas V. Girardi was unlawfully protected and carried on for forty years before Mr. Girardi was indicted on wire fraud charges.

211.     The preceding acts, including the overt acts set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

212.     The Count II Defendant(s) have used or invested income derived from a pattern of racketeering activity in violation of 18 U.S.C. § 1962(a).

213.     As direct and proximate cause of Count III Defendant(s) violation of 18 U.S.C. § 1962(a), plaintiff suffered injuries to his actual and prospective business and property.

214.     As direct and proximate result of the use or investment of racketeering income, plaintiff suffered by way of his credit score, mounting debt he cannot pay, benefits he lost or will not receive, opportunities converted to attorney schemes, special value of his IRA he lost, and other assets. Plaintiff also lost earning capacity to his business and property which would not have happened but for the use and investments made. For instance, had the investments been made in salaries for persons who did not choose to carry on or engage in ongoing criminal conduct like Duran, Grandt, or Morgenstern have chosen to do, the conduct would not have occurred. Plaintiff is only 42 years old and will be damaged for the rest of his life and career, not less than 25 years.

215.     As direct and proximate result of the Count III Defendant(s) violations of 18 U.S.C. § 1962(a), plaintiff has been injured in his actual and prospective business and property and seeks his damages, treble damages, pre-judgment interest, attorney's fees, and injunctive relief:

216.     $25,000,000 converted credit score, benefits, special IRA value, other assets.

217.     $27,407,250 lost earnings capacity to business and property as former CEO.

218.     WHEREFORE, plaintiff requests that this Court enter judgment against the Count II Defendant(s) as follows:

44

23-CV-0164-MMA-DEB

219.     JUDGMENT in favor of plaintiff JUSTIN S. BECK against defendants RUBEN DURAN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 18 U.S.C. § 1962(a).

220.     MONEY JUDGMENT in favor of JUSTIN S. BECK against RUBEN DURAN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for damages in the amount of $52,407,250 plus interest.

221.     MONEY JUDGMENT in favor of JUSTIN S. BECK against RUBEN DURAN; THE STATE BAR OF CALIFORNIA and STATE OF CALIFORNIA jointly and severally for treble damages in the amount of $157,221,750 plus interest.

222.     PERMANENT INJUNCTION as Court deems just to restrain the investment of racketeering proceeds by Count II Defendants under 18 U.S.C. 1964(a) and F.R.Civ.P. 65.

45

23-CV-0164-MMA-DEB

# COUNT III

## ACQUIRED INTERESTS IN OR CONTROL OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY

### Violation of 18 U.S.C. § 1962(b)

223. The allegations of paragraphs ¶ 1 through ¶ 222 are incorporated herein by reference as if they were set forth fully.

224. 18 U.S.C. § 1962(b) prohibits a person from using a pattern of racketeering activity to acquire or maintain interests in or control over an enterprise.

225. This Count III is against defendants KENNETH CATANZARITE; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA ("Count III Defendant(s)").

226. Mobile Farming Systems, Inc. is an enterprise engaged in and whose activities affect interstate commerce. The Count III Defendant(s) are employed by or associated with the enterprise.

227. The Count III Defendant(s) racketeering activity led to control of or interests in the MFS enterprise, and those interests or that control resulted in injury to plaintiff.

228. KJC did use the pattern of racketeering activity described above before January 23, 2019, to assume control of the MFS enterprise by extortion to force corporate actions, and to maintain control of the MFS enterprise under color of state law and civil procedure to harm Beck.

229. State Bar did know previously of the pattern of racketeering activity described above with similar methods, victims, and beneficiaries but chose to carry it on without regard of the non-attorney public it is bound by law to protect.

230. State did know previously of the State Bar's ongoing refusal to protect the public, but it chose to allow State Bar to engage in the conduct anyway and refused to actively supervise it.

231. For all times relevant, State had a legal duty to Beck and to the United States under 15 U.S.C. § 1 and *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015) but chose to enable the racketeering activity above anyway and it did harm Beck and the U.S.

232. State had negative mandatory duty under Gov. Cod. § 815.6 under Sherman Act and 15 U.S.C. § 1, but failed to exercise reasonable care, and damaged Beck through the MFS enterprise.

46

23-CV-0164-MMA-DEB

233.     The preceding acts, including the overt acts set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

234.     The Count III Defendant(s) have directly and indirectly acquired or maintained interest in or control of an enterprise through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

235.     As direct and proximate cause of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff has been injured in his actual and prospective business and property.

236.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), a $261 million merger in which plaintiff was CEO and within which he was entitled $32,667,351 in median share value was destroyed together with the company CTI.

237.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff has been injured for $32,667,351 as being a reasonable basis and equivalent amount that he will not receive for similar ownership for other businesses.

238.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff has been damaged in other actual and prospective business opportunities. Plaintiff is only 42 years old, and his actual and prospective business and property will be damaged for the rest of his life and career, and not less than 25 years of similar transactions.

239.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), MFS is still controlled by CLC, KJC, and State Bar even though that control was acquired and is maintained through a pattern of racketeering activity, and even after the fraudulent claims against Beck filed by CLC and KJC for MFS using those interests in or control of MFS were rejected on May 1, 2019, by the trial Court "with every fiber of [its] being."

240.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), adjudication of plaintiff's claims are repeatedly compromised and delayed through artificial State procedures enabling criminal conduct through MFS, State Bar, and Orange County Superior Court.

47

23-CV-0164-MMA-DEB

241.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff has been injured in his business and property in that he experienced an emotional breakdown and resigned from a health technology company he started after Jorge E. Navarrete and California Supreme Court defrauded him under color of state law in March 2021 which caused him $5,649,297 in damages, and further tainted his ability to develop business and obtain property.

242.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff has been injured in his business and property in that he lost an opportunity to work with creative director Will Ferrell, further tainting his ability to develop business and obtain property.

243.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff seeks actual damages of $1,700,000 from fees, policies, and converted assets paid to The State Bar of California enterprise.

244.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff seeks other lifetime remuneration he will not receive of $138,889,249 in business and property over the course of 25-years.

245.     As direct and proximate result of Count III Defendant(s) racketeering activity and violation of 18 U.S.C. § 1962(b), plaintiff seeks his damages, treble damages, pre-judgment interest, and injunctive relief.

246.     WHEREFORE, plaintiff requests this Court enter judgment against Count IV Defendants as follows:

247.     JUDGMENT in favor of plaintiff JUSTIN S. BECK against KENNETH CATANZARITE; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 18 U.S.C. § 1962(b).

248.     MONEY JUDGMENT in favor of plaintiff JUSTIN S. BECK against KENNETH CATANZARITE; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for damages in the amount of $210,683,999 plus interest.

48

23-CV-0164-MMA-DEB

249.     MONEY JUDGMENT in favor of JUSTIN S. BECK against KENNETH CATANZARITE; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for treble damages in the amount of $632,051,997.

250.     PERMANENT INJUNCTION against the maintenance of any interest in or control of MFS by Count III Defendant(s) or any person associated or acting in concert with them including Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James O'Keefe, Eric V. Anderton or Jim Travis Tice, and each of them, and such other relief as the Court deems just under 18 U.S.C. § 1964(a) and F.R.Civ.P. 65.

23-CV-0164-MMA-DEB

**COUNT IV**

**ACQUIRED INTERESTS IN OR CONTROL OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY**

**Violation of 18 U.S.C. § 1962(b)**

251.     The allegations of paragraphs ¶ 1 through ¶ 250 are incorporated herein by reference as if they were set forth fully.

252.     This Count IV is against defendants RUBEN DURAN; ELI DAVID MORGENSTERN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count IV Defendant(s)").

253.     The State Bar of California is an enterprise engaged in and whose activities affect $3.63 trillion in interstate commerce, which enterprise includes Board of Trustees, Office of General Counsel, Office of Chief Trial Counsel, and 286,000 living licensees, of whom nearly 197,000 are on active status.

254.     The Count IV Defendant(s) racketeering activity led to control of or interests in The State Bar of California enterprise, and those interests or that control resulted in injury to plaintiff.

255.     For all times relevant, Ruben Duran acquired or maintained interests in or control of The State Bar of California enterprise through Board of Trustees by engaging in (directly or indirectly) a pattern of mail fraud and wire fraud against the non-attorney public, and through carrying on the unlawful activity of The State Bar of California enterprise, MFS enterprise, and KJC enterprise.

256.     For all times relevant, Suzanne Grandt acquired or maintained interests in or control of The State Bar of California enterprise through Office of General Counsel by engaging in a pattern of mail fraud and wire fraud against the non-attorney public, and through carrying on the unlawful activity of The State Bar of California enterprise, MFS enterprise, and KJC enterprise.

257.     For all times relevant, Eli David Morgenstern acquired or maintained interests in or control of The State Bar of California enterprise through Office of Chief Trial Counsel by engaging in a pattern of mail fraud and wire fraud against the non-attorney public, and through carrying on the unlawful activity of The State Bar of California enterprise, MFS enterprise, and KJC enterprise.

50

23-CV-0164-MMA-DEB

258.     For all times relevant, State of California lacked direct supervision of State Bar, and the racketeering activity described above was conducted unequally in favor of attorneys and of detriment to the non-attorney public, and there was no clearly articulated State policy which allowed the racketeering activity to favor The State Bar of California enterprise.

259.     The preceding acts, including the overt acts set forth above, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

260.     The Count IV Defendant(s) have directly and indirectly acquired or maintained interest in or control of The State Bar of California enterprise, MFS enterprise, or KJC enterprise through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

261.     As direct and proximate cause of Count IV Defendant(s) violation of 18 U.S.C. § 1962(b), plaintiff has been injured in his actual and prospective business and property.

262.     As direct and proximate result of Count IV Defendant(s) violation of 18 U.S.C. § 1962(b), plaintiff has been damaged in his business and property as set forth in all preceding paragraphs and therefore seeks his damages, treble damages, attorney's fees, pre-judgment interest, and injunctive relief.

263.     WHEREFORE, plaintiff requests this Court enter judgment against the Count IV Defendant(s):

264.     JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN; ELI DAVID MORGENSTERN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 18 U.S.C. § 1962(b).

265.     MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN; ELI DAVID MORGENSTERN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA in the amount equal to any amount failing in the preceding paragraphs and Counts I through Count III as an alternative.

266.     PERMANENT INJUNCTION as the Court deems just from acquiring or maintaining any interest in or control of The State Bar of California enterprise, MFS enterprise, or KJC enterprise through a pattern of racketeering activity, and divestiture thereof by each of the Count IV defendants under 18 U.S.C. § 1964(a) and F.R.Civ.P. 65.

23-CV-0164-MMA-DEB

**COUNT V**

**FOURTEENTH AMENDMENT—DUE PROCESS**

**STATE CREATED DANGER**

**Violation of 42 U.S.C. § 1983**

267.　　The allegations of paragraphs ¶ 1 through ¶ 266 are incorporated herein by reference as if they were set forth fully.

268.　　This Count V is against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count V Defendant(s)").

269.　　This Count VI is for violation of 42 U.S.C. § 1983 which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

270.　　In the 9th Circuit, "[i]t is well settled that a "person" subject to liability can be an individual sued in an individual capacity (*see Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)) or in an official capacity (*see Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)). A "person" subject to liability can also be a local governing body (*see Waggy v. Spokane County*, 594 F.3d 707, 713 (9th Cir. 2010).

271.　　This Count V is brought against RUBEN DURAN; SUZANNE GRANDT; and ELI DAVID MORGENSTERN acting individually and in their official capacity, where THE STATE BAR OF CALIFORNIA is controlled by active market participants in regulation due to STATE OF CALIFORNIA's decisions and ratification.

272.　　RUBEN DURAN; SUZANNE GRANDT; and ELI DAVID MORGENSTERN each deprived plaintiff of particular rights protected under the United States Constitution.

52

23-CV-0164-MMA-DEB

273.    In this case, Duran, Grandt, and Morgenstern deprived plaintiff of his rights under the Fourteenth Amendment to the Constitution when each ratified the serial schemes to defraud by mail and wire involving State Bar, KJC, and MFS, and thereby placed the plaintiff into further danger through affirmative acts.

274.    Under the Fourteenth Amendment, plaintiff has the constitutional right to be free from a government employee affirmatively placing plaintiff in a position of actual, particularized danger (or in a situation of actual, particularized danger that is more dangerous than the position that the plaintiff already faced) if Duran, Grandt, and Morgenstern acted with deliberate indifference to a known or obvious danger to Beck.

275.    In order to prove Duran, Grandt, and Morgenstern deprived Beck of this Fourteenth Amendment right, Beck must prove the following by a preponderance of the evidence: (1) the defendants committed an affirmative act; (2) the affirmative act placed the plaintiff in a position of an actual, particularized danger by creating or exposing the plaintiff to a danger that he would not have otherwise faced; (3) the defendant acted with deliberate indifference to a known or obvious danger; and (4) the affirmative act that created that actual, particularized danger caused injury to the plaintiff that was foreseeable.

276.    In this context, "deliberate indifference" means that the defendants disregarded a known or obvious consequence of their actions. In other words, the defendant must have known that something was going to happen to plaintiff but ignored the risk and still exposed the plaintiff to that risk.

277.    Duran, Grandt, and Morgenstern each committed an affirmative act, and each did know that something was going to happen to plaintiff but they ignored the risk.

278.    The affirmative act of Duran, Grandt, and Morgenstern placed plaintiff in a position of an actual, particularized danger by creating or exposing the plaintiff to a danger that he would not otherwise have faced.

279.    Duran, Grandt, and Morgenstern acted with deliberate indifference to the known and obvious danger.

53

23-CV-0164-MMA-DEB

280. The affirmative act that created the actual, particularized danger caused injury to the plaintiff that was foreseeable.

281. As direct and proximate cause of Duran, Grandt, and Morgenstern violating Beck's clearly established constitutional rights, and State Bar's deliberate disregard of Beck, Beck was actually damaged, and he seeks special damages caused by the violation of his particular rights.

282. $138,889,249 for actual damages and future damages as set forth above

283. $138,889,249 for pain, suffering, inconvenience, and oppression

284. $138,889,249 for severe emotional distress leading to a seizure in Dec. 2022

285. $138,889,249 for loss of consortium and inability to marry

286. $138,889,249 for becoming disenfranchised, losing trust in State government

287. $138,889,249 for severe grief, losing his parents and a mentor building CTI

288. $138,889,249 for loss of enjoyment of life, consideration of suicide

289. $138,889,249 for humiliation, losing friends and colleagues

290. $138,889,249 for loss of 20% of left arm due to surgery delays due to Grandt's acts

291. $138,889,249 for ratifying KJC and CLC conduct pre-9/14/18

292. $138,889,249 for ratifying KJC and CLC conduct post-9/14/18

293. Plaintiff also seeks punitive damages equal to the maximum amount permissible under the law but not less than $138,889,249 and up to $1,388,892,490.

294. WHEREFORE, plaintiff requests this Court enter judgment against the Count VI Defendant(s):

295. JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; ELI DAVID MORGENSTERN; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 42 U.S.C. § 1983.

296. MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, ELI DAVID MORGENSTERN, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for damages of $138,889,249 plus interest.

23-CV-0164-MMA-DEB

297.     MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, ELI DAVID MORGENSTERN, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for special damages of not less than $138,889,249 and up to $1,388,892,490 plus interest.

298.     MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, ELI DAVID MORGENSTERN, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for punitive damages of not less than $138,889,249 and up to $1,388,892,490 plus interest.

299.     PERMANENT INJUNCTION as the Court deems just.

55

23-CV-0164-MMA-DEB

## COUNT VI

### FIRST AMENDMENT—"CITIZEN" PLAINTIFF

#### Violation of 42 U.S.C. § 1983

300.    The allegations of paragraphs ¶ 1 through ¶ 299 are incorporated herein by reference as if they were set forth fully.

301.    This Count VI is against RUBEN DURAN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA (the "Count VI Defendant(s)").

302.    Under the First Amendment, a citizen has the right to petition the government and access the courts. To establish the Count VI Defendant(s) deprived the plaintiff of this First Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

303.    (1) The plaintiff was engaged in a constitutionally protected activity; (2) the Count VI Defendant(s) actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the plaintiff's protected activity was a substantial and motivating factor in the defendant's conduct.

304.    (1) Plaintiff's petitioning against the Count VI Defendant(s) was protected under the First Amendment, and therefore, the first element requires no proof.

305.    (2) The Count VI Defendant(s) actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

306.    (3) The plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct.

307.    As direct and proximate cause of Count VI Defendant(s) violating plaintiff's clearly established constitutional rights, plaintiff was actually damaged, and he seeks special damages caused by the violation of his particular rights for any amount failing in Count I through Count VI.

308.    Plaintiff also seeks punitive damages equal to the maximum amount permissible under the law but not less than $138,889,249 and up to $1,388,892,490.

309.    WHEREFORE, plaintiff requests this Court enter judgment against the Count VI Defendant(s):

23-CV-0164-MMA-DEB

310.    JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA for violation of 42 U.S.C. § 1983.

311.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN; SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for damages equal to any amount failing Counts I through Count VI as an alternative.

312.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT; THE STATE BAR OF CALIFORNIA; and STATE OF CALIFORNIA jointly and severally for special damages for any amount failing Count VI as an alternative.

313.    MONEY JUDGMENT in favor of JUSTIN S. BECK against defendants RUBEN DURAN, SUZANNE GRANDT, THE STATE BAR OF CALIFORNIA, and STATE OF CALIFORNIA jointly and severally for punitive damages for any amount failing Count VI as an alternative.

314.    PERMANENT INJUNCTION as the Court deems just.

57

23-CV-0164-MMA-DEB

# COUNT VII

## ANTITRUST (PRIVATE RIGHT OF ACTION)

### Violation 15 § U.S.C. 15

315.     The allegations of paragraphs ¶ 1 through ¶ 314 are incorporated herein by reference as if they were set forth fully.

316.     This Count VII is against STATE OF CALIFORNIA (the "Count VII Defendant") directly and on behalf of UNITED STATES OF AMERICA derivatively for injunctive relief against The State Bar of California through UNITED STATES ATTORNEY GENERAL.

317.     In *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 448 (1993), the Supreme Court held: "The purpose of the [Sherman] Act is not to protect [attorneys] from the working of the market; it is to protect the public from the failure of the market." Per the California Supreme Court, "[a]lthough focused on private conduct, antitrust laws may apply to public entities under certain circumstances." The judicial market and machinery in California has failed the public interest.

318.     "The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of [Duran, Wilson, Grandt, Girardi, Girardi-Keese, Catanzarite, or Catanzarite Law Corporation]"). *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)

319.     15 U.S.C. § 15 holds that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

320.     It was forbidden for State to assign State Bar, controlled by an active market participant Board of Trustees led by Duran for all times relevant, to regulate an industry of its peers.

321.     It was forbidden by State Bar and Board of Trustees to regulate active market participants after 2015 through a majority active market participant comprised Board of Trustees.

322.     The purpose of federal antitrust laws as they relate to $3.63 trillion in interstate commerce controlled by The State Bar are to protect the public, not to protect attorneys.

58

23-CV-0164-MMA-DEB

323. Beck was injured by the antitrust violations described above, and State is liable as it failed to exercise reasonable care under Gov. Cod. § 815.6, where 15 U.S.C. § 1 and *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015) cause mandatory duty.

324. The public was and is being injured by the antitrust violations described above, and USAG and USA have a duty to intervene where The State Bar of California refuses to be governed, and refuses to conform to federal antitrust laws.

325. WHEREFORE, plaintiff requests this Court enter judgment against the Count VII Defendant:

326. JUDGMENT in favor of JUSTIN S. BECK against defendant STATE OF CALIFORNIA for violation of 15 U.S.C. § 15.

327. JUDGMENT in favor of UNITED STATES OF AMERICA against The State Bar of California for violation of 15 U.S.C. § 1.

328. MONEY JUDGMENT in favor of JUSTIN S. BECK against defendant STATE OF CALIFORNIA jointly and severally for damages equal to any amount failing Counts I through Count VI as an alternative.

329. EXTRAORDINARY RELIEF in favor of UNITED STATES OF AMERICA for intervention against The State Bar of California for antitrust violations, and racketeering investigation under 18 U.S.C. § 1968 to identify all those persons causing harm, and all those persons harmed by the conduct so they may be remunerated. The citizens harmed by this conduct lack a neutral forum due to the conduct at issue, and each are due as a fundamental right in USA.

330. EXTRAORDINARY RELIEF in favor of UNITED STATES OF AMERICA citizens identified by USAG or racketeering investigator as being harmed by the antitrust violations through reverse incorporation of the Fourteenth Amendment into the Fifth Amendment.

331. PERMANENT INJUNCTION against The State Bar of California violating federal antitrust laws in regulation.

332. PERMANENT INJUNCTION for State of California to provide ongoing, active supervision and control through California State Auditor and an independent, non-active market participant function unaffiliated with The State Bar of California with federal oversight.

59

23-CV-0164-MMA-DEB

## PLAINTIFF DEMANDS TRIAL BY JURY

333.   For the foregoing reasons, plaintiff requests the Court enter judgment in his favor as set forth above.

334.   Plaintiff requests this Court act *Sua sponte* to restrict or enjoin the conduct at issue so that it does not contaminate this proceeding or cause further harm to plaintiff, the public, or the United States amidst $3.63 trillion interstate commerce – including but not limited to the appointment of non-partisan or bi-partisan racketeering investigator(s) under 18 U.S.C. § 1968 as a matter of public interest.

335.   CERTIFICATION AND CLOSING. Under F. R. Civ. P. 11, by signing below, I certify to the best of my knowledge, information, and believe that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law, or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support[]; and (4) the complaint otherwise complies with the requirements of Rule 11.

February 1, 2023

Certified and Verified as True

JUSTIN S. BECK, as individual plaintiff

*In Propria Persona*

60

23-CV-0164-MMA-DEB