UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN S. BECK,<br><br>                     Plaintiff,<br><br>   v.<br><br>CATANZARITE LAW CORPORATION, *et al.*,<br><br>                    Defendants. | Case No. 22-cv-1616-BAS-DDL<br><br>**ORDER:**<br><br>**(1) DISMISSING AMENDED COMPLAINT (ECF No. 7);**<br><br>**(2) TERMINATING TRO APPLICATION (ECF No. 10);**<br><br>**(3) TERMINATING SUMMARY JUDGMENT MOTIONS (ECF Nos. 15, 26);**<br><br>**(4) TERMINATING REQUESTS FOR ENTRY OF DEFAULT AND EARLY NEUTRAL EVALUATION CONFERENCE (ECF Nos. 27–28);**<br><br>**(5) TERMINATING MOTION TO DISMISS (ECF No. 31); and**<br><br>**(6) GRANTING LEAVE TO AMEND** |

Plaintiff Justin S. Beck ("Beck"), who is proceeding *pro se*, filed his 157-page Amended Complaint on January 3, 2023. (*See generally* Am. Compl., ECF No. 7.) That pleading asserts, *inter alia*, claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), the Sherman Act, and 42 U.S.C. § 1983 against the United States of America, the State of California and several of its instrumentalities and officials, and a private law firm and its attorneys. Beck brings this action on behalf of not only himself but also the United States of America and 150,000 unnamed plaintiffs as their purported "*guardian ad litem*." (*Id.*)

After reviewing Plaintiff's Amended Complaint and the relevant legal authority, the Court *sua sponte* **DISMISSES** Beck's Amended Complaint for failure to comply with Federal Rule of Civil Procedure ("Rule") 8, for lack of standing under Rule 12(b)(1), and for failure to state a claim pursuant to Rule 12(b)(6). Accordingly, the Court also **TERMINATES AS MOOT** Beck's pending application for a temporary restraining order (TRO App., ECF No. 10), his two motions for summary judgment (First Mot. for Summ. J., ECF No. 15; Second Mot. for Summ. J., ECF No. 26), and his requests for judicial notice and for an early neutral evaluation conference (ECF Nos. 28, 29). The Court also **TERMINATES AS MOOT** Defendant State Bar of California's motion to dismiss. (MTD, ECF No. 31). Finally, the Court **GRANTS** Beck another opportunity to file a Second Amended Complaint that is compliant with Rule 8 and that addresses the deficiencies identified herein.

## I. BACKGROUND

Beck commenced this action *pro se* when he filed his 227-page Complaint on October 19, 2022 (Compl., ECF No. 1), at which time he also moved to proceed *in forma pauperis* (IFP App., ECF No. 2). But before this Court could address Beck's IFP Application and conduct the requisite pre-answer screen of the Complaint pursuant to 28 U.S.C. § 1915(e)(2), Beck paid the $402 filing and administrative fee. Moreover, Beck filed a slightly truncated—but still diffuse—157-page Amended Complaint containing 743 separately enumerated paragraphs. (*See* Am. Compl.)

Beyond its prolixity, the Amended Complaint is unfocused, rambling, and replete with stream-of-consciousness diatribes, making it nearly impossible to follow. As best the Court can tell, Beck alleges that he served as President and Chief Executive Officer of Cultivation Technologies, Inc. ("CTI") from approximately 2015 through 2019. (*See, e.g.*, Am. Compl. ¶ 238.) Beck appears to claim that during his tenure at CTI, a group of purported CTI shareholders filed derivative securities actions in California state court naming Beck as a defendant. (*See id.*) Defendant Catanzarite Law Corporation and its attorneys ("CLC Defendants") represented the CTI shareholders in these derivative actions.[1] (*See id.* ¶ 239.) Beck avers the actions prosecuted by the purported CTI shareholders, counseled by the CLC Defendants, alleged *inter alia*, that CTI and its leadership—including Beck—had "engaged in fraud, conversion, breach of fiduciary duty, conspiracy, fraudulent concealment, and theft of trade secrets." (*Id.* ¶¶ 6, 240.)

Beck alleges these derivative securities actions were "fraudulent," "lack[ed] standing" and "probable cause," and were filed with the intent to extract a settlement from Beck (*See id.* ¶¶ 4, 239, 603; *see also id.* ¶ 624 ("Plaintiff has been injured in his business and property in that . . . he has been subject to repeated overt acts of fraud, perjury, subornation of perjury in order that he yield to the fraudulent schemes, where Plaintiff cannot enjoy his life, continue any business, or obtain property without federal intervention[.]").) The Amended Complaint suggests that the derivative securities actions spearheaded by the CLC Defendants led to a U.S. Securities Exchange Commission investigation into CTI and injury to Beck's "business and property." (*Id.* ¶ 240.)

Beck appears to allege he filed disciplinary complaints against three CLC Defendants with Defendant State Bar of California ("State Bar") in 2020, arising out of the CTI derivative securities actions. (Am. Compl. ¶¶ 319–20, 323–24.) However, Beck avers the State Bar, through its officials and employees, improperly declined to investigate his

---

[1] The individual Defendants alleged to be associated with Defendant Catanzarite Law Corporation are Kenneth Catanzarite, Nicole Woodward, Jim Tice, Brandon Woodward, and Tim O'Keefe. (Am. Compl. ¶ 78.)

claims. (*Id.* ¶ 322 (alleging State Bar fraudulently "delay[ed]" vindication of Beck's rights by refusing to "proceed" with his disciplinary complaints because the "violations" identified therein purportedly were insufficiently serious).)

In 2020, Beck filed a lawsuit against the CLC Defendants in Orange County Superior Court for malicious prosecution (*see* Am. Compl. ¶¶ 238–354 (citing *Justin S. Beck v. Catanzarite Law Corporation et al.*, OCSC Case No. 30-2020-01145998 ("Malicious Prosecution Action"))), and in 2021 filed a second lawsuit in Orange County Superior Court against the State Bar and certain of its officials and employees under California's Government Claims Act (*see id.* ¶ 370 (citing *Justin S. Beck v. State Bar of California et al.*, OCSC Case No. 30-2021-01237499 ("Government Claims Act Action"))). The latter alleged the State Bar, through its officials and employees, improperly closed and/or failed to pursue Beck's claims against Catanzarite Law Corporation attorneys in violation of the State Bar's duty to protect the public.[2] (*See* Government Claims Act Action Complaint ¶¶ 2, 142–61, 166, 178–83, 193–94, Ex. 1 to Req. for Judicial Not., ECF No. 31-1.)[3] The Government Claims Act Action also alleges that the State Bar is liable for the conduct of its licensees who it failed to adequately investigate and discipline for purported attorney misconduct, including the CLC Defendants. (*Id.* ¶¶ 55–58.)

The Honorable John C. Gastelum was assigned the Government Claims Act Action. (Am. Compl. ¶ 372.) As best the Court can tell, Judge Gastelum denied Beck all relief sought in that action and dismissed Beck's case with prejudice after approximately one year of litigation. (*See id.* ¶ 372 (alleging Judge Gastelum "was appointed to carry on the enterprise schemes to defraud, and he deliberately ignored Beck's clearly established

---

[2] The Court takes judicial notice of Beck's Government Claims Act Action. *See* Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[3] Plaintiff appears to have sought unsuccessfully the removal of both actions to the Central District of California. *See Justin S. Beck v. State Bar of California*, 8:23-cv-0022-FWS-ADS (C.D. Cal. filed Jan. 5, 2023).

rights" by denying Beck's request for a preliminary injunction); *id.* ¶ 375 (alleging Judge Gastelum improperly dismissed Beck's initial complaint); *id.* ¶ 438 (alleging Judge Gastelum "protect[ed] the enterprise, without regard [for] [Beck's] due process rights in furtherance of the schemes to defraud," by moving a hearing date); *id.* ¶ 454 (alleging Judge Gastelum "inten[ded] to defraud [Beck], conceal material state liability, and protect the enterprise under the color of law" by sustaining the defendant's demurer without leave to amend); *id.* ¶ 455 (alleging Judge Gastelum intentionally defrauded Beck by ruling on the defendant's demurrer before Beck's "motion for summary judgment and [the] more than one thousand pages of evidence, not to mention the entire pleadings upon which his Government Claims Act [Action] is based").)[4]

On January 3, 2023, Beck filed his Amended Complaint, which consists of twelve causes of action: Counts I through IV are RICO claims; Counts V, VII, VIII, X, and XI are Section 1983 claims; Count VI is a Sherman Act claim; and Count IX is a claim for a federal receiver. (Am. Compl. ¶¶ 543–743.) The Amended Complaint lists as Defendants the CLC Defendants, the United States, the State of California, the State Bar and certain of its officers and employees,[5] the Orange County Superior Court, Judge Gastelum, and Jorge Navarrete, the Clerk of the California Supreme Court. (*See id.* ¶¶ 47–74.) As best the Court can tell, Beck's theory of the case is that the CLC Defendants maliciously prosecuted shareholder derivative actions against CTI, and that the State Bar, its employees and officials, and Judge Gastelum have conspired in unlawful activities with the CLC Defendants to violate his rights—and the rights of the public at large—by failing to hold CLC accountable for its purported misconduct. (Am. Compl. ¶ 6 (alleging Defendants are

---

[4] Beck appears to have sought an appeal from Judge Gastelum's dismissal of the Government Claims Act Action, but his petition to the California Supreme Court was denied. (*See* Am. Compl. ¶¶ 470–71.) )

[5] The individual Defendants who are employees of the State Bar include: Ruben Duran, Chair of the State Bar's Board of Trustees; Leah Wilson, Executive Director of the State Bar; George Cardona, Chief Trial Counsel of the State Bar; Eli Morgenstern, an employee in the State Bar's Office of Chief Trial Counsel; Ellin Davtyan, General Counsel of the State Bar; Robert Retana, Deputy General Counsel of the State Bar; and Suzanne Grandt, Associate General Counsel of the State Bar. (Am. Compl. ¶¶ 63–73.)

engaged in an "unlawful scheme" that "may be the longest, most harmful scandal in United States of America['s] history, surpassing that of Enron and Watergate combined"). He alleges this scheme is made possible by the State Bar's purported monopoly over the judiciary and the practice of law within the State of California. (*See id.* ¶¶ 8, 13–14.)

Beck asserts claims on behalf of not only himself but also the United States and "ROES 1–150,000" as their supposed "*guardian ad litem*." (Am. Compl. ¶¶ 41–42.) As relief, Beck seeks, *inter alia*, billions of dollars in damages and permanent injunctions against the State Bar, enjoining it from: "performing any proceedings or being used to delay any proceedings by Office of General Counsel or Office of Chief Trial Counsel for any reason"; "making any antitrust determination for itself or any of its operations, officials, or employees"; "assigning [the] Office of General Counsel from making antitrust determinations"; "defending tort claims against itself or its individual actors lying in fraud or corruption"; "delivering postal mail or wire communications for the 'In Re: Walker' scheme to defraud U.S. Citizens"; and "performing any function related to attorney discipline." (Am. Compl. ¶ 686; *see also id.* (requesting that Defendant State Bar of California's attorney-discipline functions "be referred to a Federal receiver until such time that a process adhering to the United States Constitution is enacted").)

## II. LEGAL STANDARD

### A. Rule 8

The law mandates that even *pro se* complaints must, at minimum, comply with pleading requirements delineated by Rule 8. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1178–79 (9th Cir. 1996) (concluding that a court may dismiss a *pro se* litigant's complaint for noncompliance with Rule 8); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure.").[6] To comply with Rule 8, a pleading must contain "a short and plain

---

[6] The Ninth Circuit indicated in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), that Rule 8 continues to be a basis for dismissal independent from Rule 12(b)(6) even after *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See George v. Grossmont*

statement showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), and each allegation therein "must be simple, concise, and direct," *see* Fed. R. Civ. P. 8(d)(1). Courts have described the standard enunciated at Rule 8 as the "fair-notice" standard, which merely requires that a pleading "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Middleton v. United States*, No. 10-CV-6057 (HFB)(ETB), 2012 WL 394559, at *2 (E.D.N.Y. Feb. 7, 2012) (opining "fair notice" requires a complaint to "define the nature of the case" and enable the defendant "to answer and prepare for trial" (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005))).

Rule 8 is "not meant to impose a great burden upon a plaintiff." *Dura Pharms.*, 544 U.S. at 347. Dismissal under Rule 8 typically is reserved for "those instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.'" *Hearns v. San Bernadino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2007) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 2008)). As the Ninth Circuit has observed:

> [p]rolix , confusing complaints . . . impose unfair burdens on litigants and judges . . . . Defendants are . . . put at risk that . . . plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all and that res judicata affects of settlement or judgment will be different from what they reasonably expected . . . . The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. [Sh]e then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case[s] who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

---

*Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-cv-0424-BAS-DDL, 2022 WL 17330467, at **13–14 (S.D. Cal. Nov. 28, 2022) (analyzing Ninth Circuit case law following *Twombly* and *Iqbal* and finding those precedents make clear failure to abide by Rule 8 is a basis for dismissal in and of itself).

*McHenry*, 84 F.3d at 1179–80; *accord Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting the statement of a claim "should be short because '[u]necessary prolixity in pleadings places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage'" (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969))).

District courts possess inherent authority to dismiss *sua sponte* a pleading that fails to comply with Rule 8. *See Hearns*, 530 F.3d at 1131 (holding that a pleading may be dismissed *sua sponte* for failure to satisfy Rule 8); *see also Robert v. First Haw. Bank*, 172 F.3d 58 (9th Cir. 1999) (Mem.) (upholding district court's *sua sponte* Rule 8 dismissal); *Wolfe v. Yellow Cab Co-op., Inc.*, 880 F.2d 417 (9th Cir. 1989) (same); *accord Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (similar).

**B.   Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by the Constitution or a statute, which is not to be expanded by judicial decree." *Id.* "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. A court must *sua sponte* dismiss an action over which it lacks subject-matter jurisdiction. *See Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." (emphasis added)).

**C.   Rule 12(b)(6)**

Rule 12(b)(6) authorizes dismissal of a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d

1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Serv.*, 813 F.2d 986, 991 (9th Cir. 1997); *see also Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim[.]" (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1357 at 593 (1969))); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637–38 (9th Cir. 1988) (instructing courts may dismiss *sua sponte* a pleading that fails to state a claim under Rule 12(b)(6) without giving plaintiff notice of its intention to dismiss and an opportunity to respond if "[p]laintiff[] cannot possibly win relief" (quoting *Wong*, 642 F.3d at 362)).

## III. ANALYSIS

While Beck is afforded special solicitude on account of his *pro se* status, he still is required to submit a pleading that complies with Rule 8 to pursue the instant action. His 157-page Amended Complaint falls far short of the fair-notice standard delineated by that Rule. Far from "simple, concise, and direct," *see* Fed. R. Civ. P. 8(d)(1), the Amended Complaint is disjointed and replete with lengthy excerpts from various state and federal statutes, repetitive conclusory allegations of wrongdoing (including against nonparties to this action) that employ a mishmash of unintelligible legal jargon, and protracted digressions that appear to have little bearing on any legal claims Beck may be asserting.

None of the Amended Complaint's 743 separately enumerated paragraphs exhibits a "short and plain statement showing that [he] is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Despite its labyrinthian prolixity, the Amended Complaint still is devoid of cogent factual details that "present a story that holds together" about the subject matter of the instant case. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). And despite listing some cognizable causes of action, the Amended Complaint is bereft of non-conclusory allegations that show how each Defendant's conduct was actionable thereunder and how

Beck himself was injured by such conduct.[7] *Cf. Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) (describing the "well-settled" practice of dismissing pursuant to Rule 8(a)(2) a complaint that "names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff"). Defendants and this Court have already spent too much time trying to draw blood from a stone. This Court is busy enough without having to parse through Beck's rambling and unintelligible diatribe to helplessly assemble for Beck a "short and plain statement" of his claims—something Rule 8 obligated Beck to do in the first instance. Thus, Beck's Amended Complaint warrants dismissal under Rule 8. *See Cafasso*, 637 F.3d at 1059 (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," while noting that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations"); *McHenry*, 84 F.3d at 1178—80 (upholding Rule 8(a) dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

Even to the extent this Court can decipher the Amended Complaint, it is immediately apparent that Beck's pleading is fundamentally flawed. Indeed, this Court either lacks subject-matter jurisdiction over Beck's claims or Beck's claims are unsupported by any "cognizable legal theory" and, thus, warrant dismissal under Rule 12(b)(1) and 12(b)(6), respectively.

//
//

---

[7] Shortly before this Order issued, the State Bar filed a motion pursuant to Rule 8, Rule 12(b)(1), and Rule 12(b)(6) to dismiss the Amended Complaint. (*See* ECF No. 31.) That motion has no effect upon the Court's independent determination that the Amended Complaint's allegations do not come close to complying with Rule 8. Moreover, the State Bar's motion only confirms this Court's conclusion that the Amended Complaint precludes an intelligible response; in its motion, the State Bar pieces together what it believes to be Beck's theory of the case against it principally by relying upon the allegations in Beck's Government Claims Act Action—of which it seeks judicial notice —as opposed to the allegations actually set forth in the Amended Complaint in the instant action.

### A. *Guardian ad Litem* Claims

As mentioned above, Beck brings this action on behalf of the United States and 150,000 unnamed plaintiffs as their purported "*guardian ad litem*."[8] (Am. Compl. ¶¶ 41–42.) Although 28 U.S.C. § 1654 confers litigants with a statutory right to "conduct their own cases personally" in federal court, "[i]t is well-established that the privilege to represent oneself *pro se* . . . is personal to the litigant and does not extend to other parties or entities," *see Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). Hence, Section 1654 prohibits Beck from litigating claims on behalf of others *pro se*, no matter his claimed basis for doing so.[9] *See, e.g.*, *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 2008).

Accordingly, to the extent Beck seeks to assert claims on behalf of anyone besides himself, those claims are dismissed with prejudice as to Beck and without prejudice as to nonparties to this action.

### B. The *Rooker-Feldman* Doctrine

Since the U.S. Supreme Court, not lower federal courts, has appellate jurisdiction over state court judgments, federal district courts are without jurisdiction to hear direct appeals from the judgment of state courts. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). This doctrine, known as the *Rooker-Feldman* doctrine, "bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also

---

[8] The lone reference to "*guardian ad litem*" in the Federal Rules of Procedure appears in Rule 17(c), which enables a federal court to appoint a *guardian ad litem* to "sue or defend on behalf of a minor or an incompetent person." Fed. R. Civ. P. 17(c). This Court has not appointed any *guardian ad litem* in this action and the Amended Complaint is bereft of any allegations supporting Beck's claimed *guardian ad litem* status. Moreover, Rule 17(c) does not provide private litigants with a general right to sue *qui tam* on behalf of United States. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (interpreting 28 U.S.C. § 1654 and concluding *pro se* litigants are not authorized to pursue actions on behalf of the United States).

[9] As mentioned *supra* note 8, Beck's assertion he is entitled to represent the United States and 150,000 unnamed plaintiffs as their "*guardian ad litem*" is nonsensical. But putting aside the propriety of that assertion, *guardian ad litem* status "does not alter the principle embodied in § 1654 that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel." *Berrios v. N.Y. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).

over the '*de facto* equivalent' of such an appeal." *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)). "It is forbidden *de facto* appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.'" *Id.* at 778 (quoting *Noel*, 341 F.3d at 1163).

"If the federal constitutional claims presented to the district court are 'inextricably intertwined' with the state court's judgment, then [the plaintiff] is essentially asking the district court to review the state court's decision, which the district court may not do." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001). "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." *Id.* at 1030; *see also Cooper*, 704 F.3d at 779 ("[W]e have found claims inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." (citation and internal quotations omitted)).

Conversely, the *Rooker-Feldman* doctrine does not bar claims that the state court judgment was obtained by extrinsic fraud. *Kougasian v. TMSL*, 359 F.3d 1136, 1140 (9th Cir. 2004). "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* (citing *Noel*, 341 F.3d at 1164).

Here, it appears Beck—through his RICO and Section 1983 claims—is seeking to challenge Judge Gastelum's disposition of Beck's Government Claims Act Action. And that he is attempting to bypass the *Rooker-Feldman* bar by asserting each of Judge Gastelum's decisions in that Action adverse to Beck were borne from fraud. But Beck's labyrinthian yet conclusory allegations of fraud fall well short of Rule 8's requirements, let alone the heightened pleading standard applicable to allegations of fraud under Rule 9(b). Indeed, the Amended Complaint merely labels what otherwise appear to be ordinary

conduct as fraudulent, without any explanation as to why. (*See, e.g.*, Am. Compl. ¶ 716 ("Defendant(s) deliberate fabrication of evidence and concealment of truth did cause Plaintiff's deprivation of liberty"); *id.* ¶ 727 ("Where Plaintiff had a clearly established right to recover damages, and where he provided proof beyond a reasonable doubt of his accusations, . . . Defendant(s) used color of state law, artificial procedures, and active concealment to harm Plaintiff or to further their own goals."); *id.* ¶ 729 ("STATE OF CALIFORNIA deliberately obstructed Plaintiff's Government Claims Act litigation.").) This is patently insufficient to overcome the *Rooker-Feldman* bar. *See, e.g.*, *Scarlett v. Resol Group LLC*, No. 5:14-cv-5512-EJD, 2015 WL 1009829, at *4 (N.D. Cal. Mar. 5, 2015) ("[C]onclusory allegations do not constitute the type of extrinsic fraud required to invoke the limited exception to *Rooker-Feldman*[.]"); *Chen v. U.S. Liability Ins. Co.*, No. SACV 16-266-R (AJW), 2017 WL 11634059, at *6 (C.D. Cal. Mar. 13, 2017) (similar).

Simply put, the instant action appears to be, in part, an effort to re-litigate the Government Claims Act Action in federal court on the basis of Beck's belief that case was wrongly decided. That Beck alleges it was not only wrongly decided but also fraudulently decided on the part of Judge Gastelum, whom he is also suing, does not change the fact that this is a *de facto* appeal of, and inextricably intertwined with, the state court decision and barred by the *Rooker-Feldman* doctrine. Accordingly, to the extent Beck seeks to challenge the Government Claims Act Action—or any other the other California state court actions referred to in the Amended Complaint—this Court lacks subject-matter jurisdiction over such claims.

C.   **Beck's Claims Against the United States**

Although derived from a different source than the Eleventh Amendment, *see* 5 Kenneth Davis, Administrative Law Treatise 6–7 (2d ed. 1984) (explaining the principle of sovereign immunity of the United States is borne from English law), the principle that the United States may not be sued unless it consents to suit is equally long-standing and well-established, *see Cohens v. Virginia*, 19 U.S. 264, 411–42 (1821) ("The universally received opinion is that no suit can be commenced or prosecuted against the United

States[.]")."It is axiomatic that the United States can only be sued to the extent that it has waived its sovereign immunity." *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1991) (citing *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987)). "It is likewise well settled that a waiver of the government's sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* at 1107 (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1983)).

Beck asserts two claims against the United States: one under the Sherman Act and one for violation of his due process rights under Section 1983. The United States has not consented to suit for money damages under the Sherman Act. *See U.S. Postal Serv. v. Flamingo Indus. Ltd.*, 540 U.S. 736, 745 (2004) (concluding the Shearman Act does not operate as a waiver of sovereign immunity). And Section 1983 does not provide a basis for suit against the federal government. *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 ("Lest there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, § 1983 precludes liability in federal government actors."). Accordingly, both Beck's claims against the United States warrant dismissal under Rule 12(b)(6).[10]

### D.     Eleventh Amendment Immunity

The Eleventh Amendment bars federal jurisdiction over suits by individuals against a State and its instrumentalities, unless either the State consents to waive its sovereign immunity or Congress abrogates it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (quoting *Emps. v. Mo. Public Health & Welfare Dep't*, 411 U.S. 279, 280 (1973) (Marshall, J., concurring)). To

---

[10] There is some disagreement among the circuits as to whether Rule 12(b)(1) or Rule 12(b)(6) is the appropriate mechanism for disposing of a claim on the basis of sovereign immunity. However, in the Ninth Circuit, sovereign and sovereign-state immunity are appropriately analyzed under either Rule 12(b)(1) or 12(b)(6). *See Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 927 n. 2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." (citing *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015)).

overcome this bar, the State's consent or Congress's intent must be "unequivocally expressed." *Pennhurst*, 465 U.S. at 99.

Beck seeks over one billion dollars in damages from Defendants State of California, the Orange County Superior Court, and the State Bar. These Defendants enjoy Eleventh Amendment immunity. *See Hirsh v. Justices of Supreme Ct. of State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) ("The Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association and Bar Court." (citing *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985))); *Simmons v. Sacramento Cty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against [a California Superior Court] because such suits are barred by the Eleventh Amendment." (citing *Will v. Mich. Dep't of Sate Police*, 491 U.S. 58, 70 (1989))).

Hence, the question becomes whether California has unequivocally expressed its consent to be sued in federal court, or whether Congress has waived California's immunity from suit, as to each of Beck's claims. As mentioned above, Plaintiff principally asserts claims under the RICO Act, the Sherman Act, and Section 1983 for purported violation of his due process rights. Defendant State of California and its instrumentalities retain immunity from these claims. Although California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court. *See BV Eng'g v. Univ. of Cal., Los Angeles*, 858 F.2d 1394, 1396 (9th Cir. 1988); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution does not constitute a waiver of California's Eleventh Amendment immunity). Nor did Congress intend for the RICO Act, the Sherman Act, or Section 1983 to abrogate States' Eleventh Amendment immunity. *See Productions & Leasing v. Hotel Conquistador*, 573 F. Supp. 717, 720 (D. Nev. 1982), *aff'd*, 709 F.2d 21 (9th Cir. 1983) ("Without a clear showing that Congress intended abrogation of the Eleventh Amendment governmental immunity, this Court will not infer that the RICO Act deprives the State[] of its protection."); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 873–74 (9th Cir. 1987) (holding the Eleventh

Amendment bars claims brought under the Sherman Act against a State and its instrumentalities (citing *Parker v. Brown*, 317 U.S. 341, 351 (1943))); *Will*, 491 U.S. at 68 ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]").

Beck raises identical claims against various Defendants who are officers of the State Bar, a judge of the Orange County Superior Court, and the Clerk of the California Supreme Court. Although the Amended Complaint does not explicitly state so, Beck appears to be suing these individuals in their official capacities. Accordingly, the Eleventh Amendment bars Beck's claims against these individual Defendants, too. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").

Because a claim against defendants who are absolutely immune from suit lacks a "cognizable legal theory," Beck's claims against the State of California, the State Bar, the Orange County Superior Court, and their respective officers and employees are subject to dismissal under Rule 12(b)(6).[11] *See Johnson*, 534 F.3d at 1121.

### E. Judicial Immunity

As a general matter, "a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (collecting authorities); *see also Bradley v. Fisher*, 13 Wall. 335, 347 (1872) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his [or her] own convictions, without apprehension of personal consequences to [him- or herself]."). Judicial immunity applies to suits against defendants in both their official *and* individual capacities. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004). A judge does not lose absolute immunity merely because the action he or she took was in error, done maliciously, or in excess of his or her authority. *See Mireles*, 502 U.S. at 11–12; *Stump v. Sparkman*, 435 U.S. 349, 355–56

---

[11] *See supra* note 10.

(1978). "A judge loses absolute immunity only when he [or she] acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature." *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988).

Because the Amended Complaint is bereft of any intelligible allegation that suggests Judge Gastelum "act[ed] in the clear absence of all jurisdiction or perform[ed] an act that is not judicial in nature," Beck's claims against Judge Gastelum fail to overcome the absolute immunity to which he is entitled. *See Schucker*, 846 F.2d at 1204. Accordingly, to the extent Beck seeks to pursue claims arising out of his unsuccessful prosecution of the Government Claims Act Action against Judge Gastelum, those claims are barred by judicial immunity. *See Mireles*, 502 U.S. at 11–12.

### F.    Quasi-Judicial Immunity

Furthermore, "[c]ourt clerks have absolute quasi-judicial immunity from damages . . . when they perform tasks that are an integral part of the judicial process." *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1390 (9th Cir. 1987). As mentioned above, the Amended Complaint names Jorge Navarrete as a Defendant; Navarrete is the Clerk of the California Supreme Court. The factual basis of Beck's claims against Navarrete appears to be predicated upon the fact Navarrete filed a certiorari denial in the Government Claims Act Action. (*See* Am. Compl. ¶ 469 ("With an intent to defraud using the wire and postal mail, on November 30, 2022, [Navarrete] did deliver an 'En Banc' decision from [the] California Supreme Court on the petition that Plaintiff did not file.").) One cannot conceive of a duty more integral to the judicial process for which a clerk of court is responsible than filing court orders. Accordingly, Navarrete's quasi-judicial immunity bars Beck's claims against him.

### G.    Section 1983 Claims Against CLC Defendants

To prevail on a Section 1983 claim, a plaintiff "must show (1) that [d]efendants deprived [him or] her of a right secured by the Constitution or laws of the United States and (2) that, in doing so, Defendants acted under color of state law." *Jensen v. Lane Cty.*, 222 F.3d 570, 574 (9th Cir. 2000) (citation omitted). "[T]he statute supports a claim only

when the alleged injury is caused by 'state action' and not by a merely private actor, against whom tort remedies may be sought in a state court." *Id.* at 574. Because the CLC Defendants are purely private actors and do not act under color of state law, they are not subject to suit under Section 1983. *See, e.g.*, *Polk Cty. v. Doddson*, 673 F.2d 266, 268 (9th Cir. 1982). Accordingly, Beck fails to state a Section 1983 claim against any CLC Defendant.

## IV.  LEAVE TO AMEND

"Unless it is absolutely clear that no amendment can cure the defect . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *accord Cuoco v. Moritsugu*, 222 F.3d 99, 112 (opining courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999))). Although the Court is doubtful that Beck can allege facts to state a valid claim, in light of the special solicitude afforded to *pro se* litigants, the Court **GRANTS** Beck 60 days to file a Second Amended Complaint that complies with Rule 8 and addresses all the deficiencies identified in this Order.

In the Second Amended Complaint, Beck must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended pleading. Essentially, the Second Amended Complaint must intelligibly inform Defendants—and this Court—who violated his federally protected rights, what facts show that his federally protected right were violated, when such violation occurred, where such violation occurred, and why Plaintiff is entitled to relief.

**This Court strongly encourages Beck to limit any Second Amended Complaint to 35 pages or less**. **Because a Second Amended Complaint will replace, not supplement, the Amended Complaint, any facts or claims Beck wishes to maintain must be included in the Second Amended Complaint**.

* * * *

Having concluded that leave to amend is warranted, the Court next addresses the voluminous summary judgment motions and other filings with which Beck has inundated this Court and the Clerk's office since submitting his Amended Complaint. He has filed a 1,799-page motion for a temporary restraining order (TRO App., ECF No. 10 filed Jan. 9, 2023), a 40-page Request for Judicial Notice (RJN, ECF No. 12 filed Jan. 13, 2023), a 190-page document entitled "Declared Computation of Damages" (Decl., ECF No. 14 filed Jan. 30, 2023), an 852-page motion for summary judgment on Counts I, II, and VI only (First Summ. J. Mot., ECF No. 15 filed Jan. 30, 2023), a 303-page motion for summary judgment on Count III only (Second Summ. J. Mot., ECF No. 26 filed Feb. 6, 2023); a three-page Request for Entry of Default (ECF No. 27 filed Feb. 6, 2023); and a 13-page Request for an Early Neutral Evaluation Conference (ECF No. 28 filed Feb. 9, 2023).[12] Beck cannot maintain these motions and filings without first filing an operative complaint that complies with the floor set by Rule 8's pleading requirements. *See e.g.*, *R.J. Reynolds Tobacco Co. v. Becerra*, No. 20-CV-1990-CAB-WVG, 2021 WL 3472697 (S.D. Cal. Aug. 6, 2021) (opining preliminary injunction request must be denied as moot where operative complaint was dismissed); *Aliff v. Vervent, Inc.*, No. 20-cv-697-DMS-AHG, 2022 WL 3588322, at *2 (S.D. Cal. Aug. 22, 2022) (concluding that a summary judgment motion must be linked to allegations and claims in an operative complaint). Accordingly, these motions and filings are **TERMINATED AS MOOT**. (ECF Nos. 10, 12, 14, 15, 26, 27, 28.)

**This Court will not consider any motion of Beck's without first ensuring there is a complaint on file in this matter that complies with Rule 8.** *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) ("A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel and for other litigants." (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936))).

//

---

[12] Plaintiff also appears to have filed on January 30, 2023 a nearly identical suit in this district, *see Justin S. Beck v. State of California, et al.*, No. 23-cv-164-MMA-DEB (S.D. Cal.).

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES WITHOUT PREJUDICE** the Amended Complaint pursuant to Rule 8, Rule 12(b)(1), and Rule 12(b)(6). Accordingly, the Court **TERMINATES AS MOOT** Beck's TRO Application (ECF No. 10), two Motions for Summary Judgment (ECF Nos. 15, 26), and Requests for Judicial Notice and Entry of Default (ECF Nos. 27–28). The Court also **TERMINATES AS MOOT** Defendant State Bar of California's motion for an extension of time to answer the Amended Complaint (ECF No. 13) and its motion to dismiss (ECF No. 31).

The Court further **GRANTS** Beck an opportunity to amend his pleading to comply with Rule 8 and cure the deficiencies noted above and **ORDERS** Beck to file a Second Amended Complaint **by no later than April 17, 2023**.

IT IS SO ORDERED.

DATED: February 14, 2023

Hon. Cynthia Bashant
United States District Judge