1   Justin S. Beck
2   3501 Roselle St.,
    Oceanside, CA 92056
3   760-449-2509
    justintimesd@gmail.com
4   *In Propria Persona*

FILED

MAR 27 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ CAV ___ DEPUTY

5

6   **IN THE UNITED STATES DISTRICT COURT**
    **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

7

8   JUSTIN S. BECK,                                    )   Case No.: 3:22-CV-01616-AGS-DDL
                                                       )
9               Plaintiff,                             )
                                                       )   Judge:      Hon. Andrew G. Schopler
10          vs.                                        )
                                                       )
11  CATANZARITE LAW CORPORATION;                       )   **RICO CASE STATEMENT &**
12  STATE OF CALIFORNIA; THE STATE BAR                 )   **SUPPLEMENT TO SECOND AMENDED**
    OF CALIFORNIA; ORANGE COUNTY                       )   **COMPLAINT FOR DAMAGES &**
13  SUPERIOR COURT; ORANGE COUNTY                      )   **INJUNCTIVE RELIEF**
    DISTRICT ATTORNEY'S OFFICE; RUBEN                  )
14  DURAN, ESQ.; SUZANNE CELIA                         )   [COUNT X] 15 U.S.C. § 15
    GRANDT, ESQ.; RICHARD FRANCIS                      )
15  O'CONNOR, JR.; MOHAMMED                            )
    ZAKHIREH; JAMES DUFFY; KENNETH                     )
16  CATANZARITE, ESQ.; JIM TRAVIS TICE,                )
17  ESQ.; NICOLE MARIE CATANZARITE                     )
    WOODWARD, ESQ.; BRANDON                            )
18  WOODWWARD, ESQ.; TIM JAMES                         )
    O'KEEFE, ESQ.; AMY JEANETTE                        )
19  COOPER; CLIFF HIGGERSON; ELI DAVID                 )
    MORGENSTERN, ESQ.; LEAH WILSON,                    )
20  ESQ.; ROBERT GEORGE RETANA, ESQ.;                  )
21  ELLIN DAVTYAN, ESQ.; JOHN C.                       )
    GASTELUM; JORGE E. NAVARETTE;                      )
22  GEORGE SARGENT CARDONA, ESQ.;                      )
    ANTHONY B. SCUDDER                                 )
23                                                     )
                                                       )
24              Defendants,                            )
                                                       )
25  UNITED STATES ATTORNEY GENERAL;                    )
26  UNITED STATES OF AMERICA                           )
                                                       )
27              Nominal Defendants                     )
                                                       )
28                                                     )

3:22-CV-01616-AGS-DDL                  1        RICO CASE STATEMENT

**[COUNT X] 15 U.S.C. § 15, RICO CASE STATEMENT & SUPPLEMENT TO SECOND**

**AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**

**COUNT X—ANTITRUST 15 U.S.C. § 15**

1. The allegations of the Second Amended Complaint, Docket #37, paragraphs 1 through 259 are incorporated by reference.

2. This Count is against Defendant The State Bar of California ("Count X Defendant").

3. 15 U.S.C. § 15 holds "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

4. Plaintiff is a person who has been damaged in his business and property by way of violation of *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015) which is binding on The State Bar of California.

5. California Supreme Court Order 2017-09-20 clearly states that actions of The State Bar of California which advance the interests of attorneys without a clear benefit to the public must be closely examined for antitrust violations.

6. There was no clearly articulated policy to subject Plaintiff to the conduct above, nor was there active state supervision over The State Bar of California's operational conduct harming Plaintiff.

7. Plaintiff alleges, for all times relevant, The State Bar of California has deliberately advanced the personal interests of Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Nicole Marie Catanzarite Woodward, Jim Travis Tice; and personal and official interests of Ruben Duran, Suzanne Grandt, Eli David Morgenstern, Leah Wilson, Robert Retana, Elli Davtyan, and George Cardona without clear benefit to the public, to direct and ongoing detriment of Plaintiff.

8. Plaintiff alleges The State Bar of California deliberately compromised an antitrust petition to exhaust state remedies in California Supreme Court to defraud Plaintiff and the United States.

9. WHEREFORE, Plaintiff requests this Court enter judgment against Count X Defendant for any amount failing award from Count I - IV in actual/treble damages to his business and property.

HISTORICAL CONTEXT ON RELEVANT LAW & THE STATE BAR OF CALIFORNIA

10. In 2015 *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015), the United States Supreme Court "reaffirmed that a state regulatory board" controlled by majority of active market participants such as The State Bar of California "is not the sovereign." Defendants to this case ignore this binding law and its implications on each of them.

11. In a March 10, 2023 press release, The State Bar of California revealed two investigative reports detailing illegal payments of $1 million from Thomas V. Girardi to employees of The State Bar of California, gifts and other items of value to staff and leadership, relatives of The State Bar of California staff employed by Girardi's firm (Girardi-Keese), improper involvement of Office of Chief Trial Counsel staff in matters assigned to outside conflict counsel, Executive Director ghostwriting decisions in matters assigned to outside conflict counsel, and various "unethical and unacceptable behavior." It is alleged this conduct continues, even in this Court.

12. The March 10, 2023, press release from The State Bar of California asserts "many steps to reform the agency" and its "many safeguards that serve both to prevent unethical or corrupt behavior."

HISTORICAL CONTEXT ON CATANZARITE LAW CORPORATION

13. Public records produced by The State Bar of California to Plaintiff, Plaintiff's research, and Plaintiff's experience, reveal Catanzarite Law Corporation actors to engage in a pattern of non-judicial and judicial fraud, manufactured claims to defraud non-attorneys using the Court system.

14. Catanzarite Law Corporation's current and historical attorney actors include Kenneth J. Catanzarite, Jim Travis Tice, Brandon Woodward, Nicole Marie Catanzarite Woodward, Tim James O'Keefe, and Eric V. Anderton. Its current or recent non-attorney staff include Becky Phillips, Han Le, and Jennifer Weaver.

15. On information and belief, Kenneth J. Catanzarite of Catanzarite Law Corporation is allegedly bribing staff of The State Bar of California (including, but not limited to Eli David Morgenstern and Suzanne Grandt) in a manner similar to Girardi. Plaintiff alleges Duran and State Bar leadership are fully aware of this but continue to publish false statements to conceal corruption.

**CONTEXT PRECEDING CATANZARITE/STATE BAR SCHEME V. PLAINTIFF**

16. Richard Francis O'Connor, Jr., Amy Jeanette Cooper, and Richard Probst were majority shareholders, board members, and officers in a company Mobile Farming Systems, Inc. ("MFS") which raised capital from about 50 investors but ultimately failed to execute its business strategy of producing hydroponic vegetable gardens which it intended to sell by infomercial. Cliff Higgerson, Amy Cooper's father, also loaned MFS $500,000 before the company wound down.

17. Recognizing the company failed, O'Connor, Cooper, and Probst decided to form a new company Cultivation Technologies, Inc. ("CTI") in 2015. Originally, CTI was envisioned as a subsidiary of MFS, but O'Connor, Cooper and Probst decided in their duly authorized capacities for MFS that CTI would be separate, and that MFS would wind down and cease operations in June 2015.

18. Between 2012 and 2013 long before meeting Plaintiff, O'Connor and Cooper's payment of $340,000 in illegal commissions from funds invested in MFS were paid to an individual named Joseph Porche from an investment of approximately $450,000 by Jolly Roger, Inc. or Jolly Rogers Investments, Inc. in MFS. This illegal payment would later form the basis by which Kenneth J. Catanzarite, an allegedly corrupt licensee of The State Bar of California who bribes staff as did Girardi and remains protected by State Bar's Board of Trustees, would allegedly extort O'Connor and Cooper to produce false evidence under a threat of "law enforcement."

19. Cultivation Technologies, Inc. ("CTI"), whose officers and directors as of June 2015 were Richard Francis O'Connor, Amy Jeanette Cooper, and Richard Probst, issued the first 23,000,000 shares of CTI to its designated co-founders, among them Cooper, Probst, O'Connor, Anthony B. Scudder, Cliff Higgerson, and Scott Unfug, and two companies then-controlled by Plaintiff. O'Connor declared issuance to Plaintiff was "for contributions to the startup effort."

20. CTI retained a transfer agent and issued the first 23,000,000 shares of CTI in July 2015.

21. In good faith despite failure of MFS, O'Connor, Cooper, and Probst offered every one of the fifty or so MFS shareholders stock in CTI, where each accepted that offer except for a shareholder that was apparently deceased, and Jolly Roger, Inc. or Jolly Rogers Investments, Inc. Roger Root, principal of Jolly Roger, communicated with Anthony B. Scudder that he "supported what CTI was doing" and declined the offer to buy stock in CTI in August 2015.

22. Between June 2015 through September 14, 2018, CTI raised approximately $10,000,000 in private and institutional capital, fully complying with United States securities laws.

23. Amy Jeanette Cooper resigned from CTI in or around October 2015, and Richard Francis O'Connor resigned in or around February 2016. Thereafter, he bore a grudge against Plaintiff.

24. CTI's agreement with Anthony B. Scudder, who performed investor relations for CTI through Aroha Holdings, Inc., was terminated after O'Connor's resignation in or around February 2016. The board of CTI appointed Plaintiff CEO in or around March 2016.

25. Plaintiff led formation of a management team including experts in international agriculture (former Bayer Crop Sciences executive Miguel Motta) and an independent director, Irving M. Einhorn, Esq. former head of the United States Securities Exchange Commission Los Angeles, California branch.

26. With help from Scudder, O'Connor privately sold many of his shares in CTI, on information and belief, for more than $2,000,0000. (For Catanzarite, he would later say the shares didn't exist.)

27. CTI built a $6,000,000 revenue run rate in its first year of commercial operations between January 2018 and September 2018. It engaged investment banker, DelMorgan & Co., to raise $25,000,000 and execute an M&A and growth strategy, and to seek a public merger with a Canadian company to go public.

28. With approximately $6,000,000 revenue run rate, DelMorgan & Co. provided valuation guidance median of $261 million for CTI's shareholder base (if public in Canada).

**CATANZARITE & STATE BAR SCHEME COMMENCES AGAINST PLAINTIFF**

29. In or around August 2018, CTI counsel was contacted by Kenneth J. Catanzarite on behalf of a "Denise Pinkerton" as purported "attorney-in-fact" for Roger Root. Catanzarite asserted Root had not been offered shares in CTI, which CTI proved to be false by delivering the August 2015 email from Scudder showing the conversation he had with Mr. Root wherein Root declined, on behalf of Jolly Roger, Inc. or Jolly Rogers Investments, Inc., to participate in CTI.

30. Despite this, Catanzarite filed a fraudulent derivative action for non-shareholder of MFS and non-shareholder of CTI, Roger Root, using "Denise Pinkerton" on September 14, 2018. The same case alleged securities fraud, elder abuse by O'Connor and Cooper ("Pinkerton Action").

31. The derivative Pinkerton Action was filed against Plaintiff, CTI, MFS, Higgerson, Scudder, Unfug, Motta, and others. The September 14, 2018, case asserted MFS to be the sole shareholder of CTI, which Catanzarite knew was false but allegedly knew he could rely on bribery of public employees and witnesses. Catanzarite also knew that Root was neither a shareholder of CTI nor MFS but filed a fraudulent derivative action anyway as if he had standing to pursue it.

32. On October 4, 2018, Catanzarite emailed CTI counsel demanding 10,000,000 shares of CTI and a seat on the board. This made no sense, because Jolly Roger, Inc. or Jolly Rogers Investments, Inc. was offered 450,000 shares in August 2015 but declined and Catanzarite asserted MFS was sole shareholder of CTI. The Court of Appeal would later agree that if MFS was the sole shareholder of CTI, then Catanzarite would not want shares of CTI that purportedly did not exist.

33. On January 4, 2019, Catanzarite dismissed Scudder and Aroha Holdings, Inc. from the false case.

34. Sometime between January 4, 2019, and January 23, 2019, Catanzarite made contact with Amy Jeanette Cooper (represented by counsel; counsel was not involved), Cliff Higgerson (who had demurred challenging the lack of standing to file a derivative action), and others. Using the threat of securities fraud and elder abuse against Cooper and O'Connor, each performed a series of non-judicial acts through shareholder consents to assert – for the first time – that MFS had been the shareholder of CTI all along. If this were true, O'Connor had participated in 158 different securities transactions between June 2015 and January 23, 2019, that he knew were fraudulent.

35. In exchange for producing non-judicial fraud asserting MFS was "sole shareholder," O'Connor, Cooper, Higgerson were dismissed from the false Pinkerton Action as Catanzarite was tolling claims to "bring later." Each "agreed to renounce" their CTI shares "in favor of MFS."

36. The Court did not authorize compromise of the false derivative action filed against MFS.

37. Using the manufactured evidence, to conceal a lack of standing in the Pinkerton Action, Catanzarite took control of MFS as "counsel" (while he was suing the company, after serving 500 discovery requests against MFS and 5,000 total against O'Connor, Cooper, MFS, Plaintiff, and others) and filed a direct action against Plaintiff and CTI asserting once more that MFS was "sole shareholder" of CTI. He knew this to be false, but demanded a trial of fact to test this theory. Catanzarite was suing MFS, now also purporting to be MFS counsel at the same time.

38. Concurrently, Plaintiff identified a merger candidate in Canada, Western Troy Capital Resources, to capitalize on CTI's success and achieve the estimated $261 million value per DelMorgan & Co. guidance. CTI would list on the NEO Stock Exchange (a Senior Exchange), and planned to complete the transaction by Summer 2019. Shares would be held in the U.S.

39. CTI and Plaintiff delivered evidence to Catanzarite Law Corporation and its "clients" that their conduct was a direct threat to cause $261 million damages; each continued the scheme anyway.

40. Two weeks before a trial of fact Catanzarite demanded to test the false claim that MFS was the sole shareholder of CTI, Catanzarite filed yet another conflicting lawsuit on behalf of CTI shareholders directly and derivatively (that purportedly did not exist) on April 16, 2019.

41. A trial of fact on May 1, 2019, concluded by rejecting Catanzarite's cooked up claims "with every fiber of [Court's] being." Court aptly stated if MFS were a shareholder as contested by Catanzarite, O'Connor and Cooper would have "violated their fiduciary duties up the ying yang" to sell shares of CTI for three years, had MFS been a shareholder of CTI without disclosing it.

42. Undeterred, Catanzarite contacted CTI shareholders after May 1, 2019, with O'Connor, one of whom (Calixto) declared they were bribed for $5,000 to provide proxy and obtained yet another fraudulent shareholder consent w/forged Calixto's signature. Recognizing that Catanzarite would destroy CTI and the merger, Plaintiff resigned from the company May 14, 2019.

43. Subsequently, as he was suing the company after taking over MFS, Catanzarite Law Corporation assumed the role of counsel for CTI itself to cover up his fraudulent scheme.

44. As aptly stated by Court of Appeal, "[t]hus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and some of its Founders (the Probst Faction) as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action [but did not obtain court approval to compromise the false derivative action; see F.R.Civ. 23.1(c)]; (3) it became MFS's counsel of record; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) claiming to represent a different set

of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board of directors." *Beck v. Catanzarite Law Corp.*, No. G059766, 16 (Cal. Ct. App. Jul. 13, 2022) [This is a fraudulent scheme.]

45. Seeking to stop Plaintiff's defense coverage, Catanzarite used his fraudulently assumed role as CTI counsel to sue Scottsdale Insurance Co. on September 6, 2019, so Plaintiff would yield to the scheme.

46. In November 2019, Plaintiff informed The State Bar of California of the serial non-judicial and judicial fraud to which he had been subject. Plaintiff showed that Catanzarite Law Corporation had been disqualified for assuming the role of counsel for *non-clients*, and for representing directly adverse parties *against each other* in the same or related cases as if that were reasonable.

47. Joy Nunley, working with Eli David Morgenstern, told Plaintiff the scheme was "not serious enough" on April 3, 2020 using State Bar's postal mail facility and U.S. mail. Plaintiff had a right to good faith, honest services in government – it is alleged The State Bar of California's mail schemes are designed to defraud the public within the definition of 18 U.S.C. § 1346.

48. Through counsel, Plaintiff filed malicious prosecution case 30-2020-01145998 in Orange County Superior Court against Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Cliff Higgerson, Tony Scudder, Aroha Holdings, Inc., Amy Jeanette Cooper, TGAP Holdings, LLC (the entity Cooper and O'Connor held CTI shares in before selling all of them, and then claimed the same shares did not exist to suit Catanzarite's fraudulent scheme).

49. Plaintiff informed "Complaint Review Unit" that The State Bar of California had erred in its conclusions that the fraud to which Plaintiff was subject was "not serious enough." Plaintiff then learned Office of General Counsel is "Complaint Review Unit," who is concurrently regulating attorneys while acting as civil defense law firm in this Court. Office of General Counsel *also* protects allegedly corrupt attorneys like Catanzarite, and colludes with Office of Chief Trial Counsel and Board of Trustees despite telling the Court otherwise (outlined herein).

50. Using this protection, Catanzarite re-filed the same fraudulent claims for the company MFS once more on August 10, 2020 against Plaintiff – the same claims that were rejected "with every fiber of [Court's] being" wherein it was determined that O'Connor and Cooper were responsible for the claims directed against Plaintiff by Catanzarite. MFS is just a shell for Catanzarite schemes.

51. The trial court errantly granted four Anti-SLAPP orders in late 2020 in Plaintiff's case, which Plaintiff appealed. The Court of Appeal reversed all orders finding Plaintiff achieved a prima facie case for at least three counts of malicious prosecution – namely – that the Pinkerton Action filed September 14, 2018, MFS Action filed January 28, 2019, and Scottsdale Action filed September 6, 2019 had been filed without probable cause, achieved favorable termination reflecting Plaintiff's innocence, and that each were filed with malice against Plaintiff.

**PLAINTIFF'S OTHER COMPANY DESTROYED**

52. In 2020, Plaintiff formed a new company, Contakt LLC, which developed award-winning software in healthcare technology and patents. The company was awarded honorable mention as "World Changing Idea" from Fortune magazine, and it won a "BIG Innovation Award." Once more, Plaintiff assembled a world-class team to monetize it, adding a commercial expert with $1 billion in sales who led LexisNexis Risk in Brazil, and a renowned pharmaceutical executive.

53. Plaintiff's company agreed to a reverse merger transaction and raised approximately $3,000,000 USD at a valuation of approximately $30,000,000 USD. As CEO, Plaintiff was granted stock warrants, and his issued position was worth approximately $5.67 million as of March 2021.

54. Plaintiff hosted and co-produced "Truth in Health" with iHeartMedia, which became one of the leading podcasts in the United States. It was nominated for a prestigious "Webby Award." Plaintiff was offered the opportunity to work with Creative Director, A-List Celebrity Will Ferrell, to produce a new show thereafter which would feature Plaintiff as host and co-producer.

55. During this period, Plaintiff prepared exhaustive evidentiary documentation of Catanzarite's fraudulent scheme, and communicated by mail with Jorge E. Navarette of California Supreme Court. Navarette provided instructions to Plaintiff on how to ensure Catanzarite's conduct could be properly presented to California Supreme Court. Plaintiff met the various demands of Navarette between September 2020 and March 2021, including re-formatting the "accusation" and sending copies all over California – to The State Bar of California, to Office of Chief Trial Counsel, to each California Supreme Court Justice, spending thousands of dollars.

56. On or around March 22, 2021, Plaintiff received postal mail from Navarette that his "accusation" had been "returned unfiled" because it was filed "late." Navarette knew this was not true.

57. Plaintiff later learned via public records requests from the period 2010 through 2022, only .008% of "accusations" succeeded – specifically 14 out of 1,732 filed during that period. Worse, Plaintiff's was purportedly "unfiled," although The State Bar of California would later use the "accusation" against Plaintiff in Government Claims Act litigation as if it somehow was probative evidence that Plaintiff had exhausted his remedies to stop Catanzarite's serial fraud against the public.

58. Indeed, on information and belief, the only consistent function of The State Bar of California's schemes by mail and wire: pay attorneys and defraud non-attorneys of money and property.

**PLAINTIFF FILES GOVERNMENT CLAIMS ACT LITIGATION**

59. Plaintiff began to research what he alleges to be complete corruption of The State Bar of California evidenced by State Auditor reports from 2002-2021, and other related conduct of Kenneth J. Catanzarite and Catanzarite Law Corporation actors which allegedly shows the firm defrauds litigants and Courts as a practice, and steals houses from its own clients.

60. Plaintiff uncovered manipulation of Court records in Orange County Superior Court in cases involving Catanzarite, for which clerks were later convicted of RICO conspiracy.

61. On September 8, 2021, after Catanzarite Law Corporation was disqualified *for the fourth time* in the scheme targeting Plaintiff, and it was upheld by the Court of Appeal – Jim Travis Tice, former personal counsel for Kenneth J. Catanzarite and former associate of Catanzarite Law Corporation – assumed the role of counsel in one of the fraudulent cases. Specifically, Amy Jeanette Cooper was purportedly a "class action" lead now represented by Tice but she had propounded materially conflicting facts in 2019 to support the Catanzarite scheme. Amy Jeanette Cooper went from supporting claims that Mobile Farming Systems, Inc,. was the sole shareholder of CTI, to becoming a "class" lead as claims are tolled against her by Catanzarite for elder abuse and securities fraud. (this is not run of the mill "litigation activity." Cooper is acting under defined threat which Catanzarite does not dispute. Catanzarite's "litigation activity" relies upon coercion and manufactured evidence that he knows is materially false, fraudulent).

62. On information and belief, Tice knew the scheme was fraudulent, and he had previously participated in similar schemes with Catanzarite which Plaintiff will evidence in this Court.

63. Plaintiff researched Government Claims Act and learned that The State Bar of California and its actors became expressly subject to California Government Code § 810, et. seq. as of January 1, 2019, through passage of AB 3249, Chapter 659. Plaintiff alleges this occurred after United States Supreme Court clarified market participant regulators are "not the sovereign."

64. Despite United States Supreme Court's binding decisional law and FTC guidance, Plaintiff alleges The State Bar of California has not changed its ways to conform to federal antitrust laws because it allegedly controls the judiciary in California and believes itself above the law.

65. Plaintiff delivered a preservation of evidence letter to The State Bar of California on October 14, 2021, and Government Claims Act forms seeking his damages due to The State Bar of California's alleged corruption, fraud, negligence, and violations of law.

66. Plaintiff's claim was denied November 10, 2021, vesting his rights to sue the government.

67. Plaintiff alleged bribery by Kenneth J. Catanzarite of Eli David Morgenstern, negligence, violation of mandatory duties, and intentional infliction of emotional distress in filing on December 21, 2021, in Orange County Superior Court Case No. 30-2021-01237499. Plaintiff alleges to be the first ever to file Government Claims Act litigation against The State Bar of California (attorneys are subject to improper use of its functions detailed herein).

68. It is now admitted by The State Bar of California that its employees have accepted astronomical bribes by another attorney, Girardi, who was aided by The State Bar of California for forty years.

69. When Plaintiff sued The State Bar of California and later State of California which refuses to appear in Superior Court despite repeated service in Orange County Superior Court Case No. 30-2020-01145998 and 30-2021-01237499, Plaintiff alleges public employees and elected officials of The State Bar of California and State of California embarked on a spectacularly relentless mission to conceal public corruption and defraud Plaintiff. Specifically, Plaintiff alleges each to be involved in the schemes, or they would resolve government claims amicably.

70. Plaintiff alleges overt acts in retaliation by Ruben Duran, Eli David Morgenstern, Suzanne Grandt, and The State Bar of California *because* Plaintiff exercised his right to petition the government for redress of grievances. On July 20, 2022, Grandt acting for Duran admits that The State Bar of California would not stop Catanzarite's fraud *because* Plaintiff sued State Bar.

71. Plaintiff informed local law enforcement of Court orders related to and unrelated to Plaintiff involving Catanzarite Law Corporation. Anaheim Police Department informed Plaintiff it did not accept online reports for attorney fraud, racketeering (only every other crime). Plaintiff visited the Anaheim PD station, filed a police report, but they refused to investigate.

72. Plaintiff visited Orange County District Attorney's office, which refused to meet with him, and said that it would not review without investigation by Anaheim Police Department.

73. Plaintiff alleges local law enforcement in Orange County, specifically Anaheim Police Department, Anaheim City Attorney's Office, and Orange County District Attorney's Office, to be either involved and bribed, or complicit, in the ongoing schemes to defraud the public by Catanzarite Law Corporation and The State Bar of California.

74. On information and belief, a local corruption probe is already underway in Orange County targeting City Attorney's Office, which produced public records detailing their knowledge of Catanzarite Law Corporation's fraudulent schemes related to, and, unrelated to Plaintiff.

75. Plaintiff informed intent to arrest KJC, Anaheim PD threatened Plaintiff immediately by phone.

### RICO CASE STATEMENT

76. The alleged unlawful conduct is in violation of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(d).

77. The defendants are Catanzarite Law Corporation, State of California, The State Bar of California, Orange County Superior Court, Orange County District Attorney's Office, Ruben Duran, Esq., Suzanne Celia Grandt, Esq., Richard Francis O'Connor, Jr., Mohammed Zakhireh, James Duffy, Kenneth Catanzarite, Esq., Jim Travis Tice, Esq., Nicole Marie Catanzarite Woodward, Esq., Brandon Woodward, Esq., Tim James O'Keefe, Esq., Amy Jeanette Cooper, Cliff Higgerson, Eli David Morgenstern, Esq., Leah Wilson, Esq., Robert George Retana, Esq., Elli Davtyan, Esq., John C. Gastelum, Esq., Jorge E. Navarette, George Sargent Cardona, Esq., Anthony B. Scudder, United States Attorney General (for 18 U.S.C. § 1968 demand), and United States of America (for 14th into 5th and pending Federal Tort Claims Act notice).

78. The alleged wrongdoers, including some of the defendants listed above, are as follows, with the alleged misconduct of each wrongdoer:

**State Bar Court**. It is alleged this nonsovereign entity is used as a collateral attack either to delay non-attorney rights, equity, and money in favor of allegedly criminal conduct – or to suit the corrupt motives of passion or interest as may be directed by Office of General Counsel and Board of Trustees. State of California is the only State with such an entity, where Courts in other States have various means to reduce public harm without delay caused by State Bar Court.

**Girardi & Keese**. This entity is allegedly among the corrupt law firms in California that used and commingled operations with The State Bar of California, Executive Director, Office of General Counsel, Board of Trustees, Office of Chief Trial Counsel, State Bar Court, California Supreme Court, and other government functions to defraud the public and enrich themselves. An investigation that began on August 26, 2014, by Munger Tolles & Olsen cites a "five-layer chess game" involving "State Bar leadership" that was "failing to adhere to basic principles of governance." The report cites a trip to Mongolia by Joseph Dunn, Bar employee Thomas Layton, and former State Bar President Howard Miller of the Girardi & Keese law firm in January 2014. On information and belief, this report was deliberately concealed from the public, and Board of Trustees, Office of General Counsel, and Executive Director know and were involved with compromising the California judicial system. On information and belief, this trip to Mongolia was predicate to the State Bar Leadership Bank program for which funds were and are being laundered by State Bar's Board of Trustees in China and Taiwan. The 2014 report was allegedly concealed from the public, as it cites Girardi 18 times. The report specifically cites "Perceived Girardi Keese Influence at the Bar." On November 2, 2022, Federal Judge Thomas M. Durkin in a Memorandum Opinion and Order called Mr. Girardi's conduct "unquestionably criminal."

**Office of General Counsel**. This law firm within the nonsovereign entity The State Bar of California is alleged to coordinate, conceal, and protect 700+ Club constituents. This law firm: provides frivolous legal opinions to enable State Bar Enterprise's allegedly criminal conduct, is "Complaint Review Unit" to conceal and continue allegedly criminal conduct from facilities engaged in interstate commerce, makes "antitrust determinations" for itself and allegedly criminal conduct of State Bar Enterprise, acts as civil defense law firm, as here, while regulating the same conduct (which is a material conflict), and takes actions on behalf of Duran himself.

1    ACTS Law. One individual alleges in writing to the Plaintiff that "When Girardi [Keese]
2    was put into bankruptcy, we retained ACTS law firm. Kim Archie told us a lot of Girardi clients
3    are being retained by Acts law. But after signing with Acts law we weren't told that 8 former
4    Girardi Keese lawyers worked with the firm! Acts law was Girardi 2.0 we later found out that
5    Robert Finnerty was just covering up the Girardi fraud."

6    Pillar Law Group. This entity is allegedly among the corrupt law firms in California that
7    used and commingled operations with The State Bar of California, Executive Director, Office of
8    General Counsel, Board of Trustees, Office of Chief Trial Counsel, State Bar Court, California
9    Supreme Court, and other government functions to defraud the public and enrich themselves

10   Catanzarite Law Corporation. This entity is allegedly among the corrupt law firms in
11   California that use and commingle operations with The State Bar of California, Executive
12   Director, Office of General Counsel, Board of Trustees, Office of Chief Trial Counsel, State Bar
13   Court, California Supreme Court, and other government functions to defraud the public. The
14   entity is allegedly engages in non-judicial fraud and bribery to file fraudulent litigation  using
15   State Bar Enterprise protection to extort settlements, obstruct justice, maliciously prosecute, and
16   obtain fraudulent judgments. It is alleged this entity is an affiliate of Aegis Asset Management,
17   Inc. a registered investment advisor which is alleged to launder racketeering profits of
18   Catanzarite Law Corporation and 700+ Club. It is alleged that this entity is used to launder
19   financial instruments like fraudulent court judgments acquired through a pattern of racketeering
20   activity, and to establish property owners associations to control real estate acquired through a
21   pattern of racketeering activity in Orange County, California for Kenneth J. Catanzarite.

22   Nicole Marie Catanzarite Woodward. This individual is an officer of Catanzarite Law
23   Corporation and alleged daughter of Kenneth J. Catanzarite. She appeared in several appeals
24   targeting the Plaintiff's rights or decisions which Court of Appeal considered "meritless" and
25   part of a "scheme." This individual is allegedly involved in the ongoing schemes to defraud the
26   Plaintiff by mail and wire, and malicious prosecution of the Plaintiff without objective probable
27   cause, using non-judicial fraud, who benefits from ongoing, undue protection of State Bar
28   Enterprise and bribes. This individual is an alleged member of the 700+ Club described herein.

<u>Tim James Okeefe.</u> This individual is an associate of Catanzarite Law Corporation. He appears on pleadings, notices of motion, and similar papers in conduct allegedly targeting the Plaintiff. He is also purporting to representing James Duffy in a federal case against an entity owned or controlled by Jeffrey Schunk, where he would not know Mr. Duffy or Mr. Schunk but for the alleged racketeering activity commencing September 14, 2018, involving Catanzarite Law Corporation and stolen information. This individual is allegedly involved in the ongoing schemes to defraud the Plaintiff by mail and wire, malicious prosecution of the Plaintiff without objective probable cause, using non-judicial fraud, who benefits from ongoing, undue protection of State Bar Enterprise and bribes. As of July 13, 2022, the Court of Appeal in California concluded that three cases were filed without objective probable cause, with malice, against the Plaintiff that achieved favorable termination reflecting the lack of merits to all claims against the Plaintiff. The same findings cite non-judicial conduct that the Court deemed was not protected and involved non-judicial fraud. This individual is an alleged member of the 700+ Club described herein. Plaintiff intends to evidence parallel cases related to a Renato Corzo and a Corbell Partnership which involve musical chairs amidst Catanzarite Law Corporation and Jim Travis Tice. Tice was disqualified by Court of Appeal, and found to have filed an appeal without authority for Corbell Partnership. Again, it is alleged these are fraudulent <u>schemes</u>.

<u>Brandon Woodward</u>. This individual is an associate of Catanzarite Law Corporation. He appears on pleadings, notices of motion, and similar papers in conduct allegedly targeting the Plaintiff. He is also allegedly the husband of Ms. Catanzarite-Woodward. This individual is allegedly involved in the ongoing schemes to defraud the Plaintiff by mail and wire, malicious prosecution of the Plaintiff without objective probable cause who benefits from the ongoing, undue protection of State Bar Enterprise. As of July 13, 2022, the Court of Appeal in California concluded that three cases were filed without objective probable cause, with malice, against the Plaintiff that achieved favorable termination reflecting the lack of merits to all claims against the Plaintiff. The same findings cite non-judicial conduct that the Court deemed was not protected and involved non-judicial fraud.

1       Eric V. Anderton. This individual is an associate of Catanzarite Law Corporation. He is

2    alleged to be a "back up" when Kenneth J. Catanzarite, Brandon Woodward, and Tim James

3    O'Keefe are eventually disqualified for representing adverse interests in the same or substantially

4    related matters in order to defraud litigants and Courts using their patterns and bribery of public

5    employees.. This individual is an alleged member of the 700+ Club described herein.

6       Jim Travis Tice. This individual is a purported former associate of Catanzarite Law

7    Corporation, used as a proxy for Kenneth J. Catanzarite when Mr. Catanzarite, Mr. Anderton,

8    Mr. Woodward, or Ms. Catanzarite-Woodward are disqualified by trial courts or Courts of

9    Appeal to continue fraudulent schemes to extort litigants and banks through straw litigants. Mr.

10   Tice assumed the role of counsel in Orange County Superior Court Case No. 30-2019-01164267,

11   allegedly with actual knowledge that all of the claims therein were and are fraudulent. Mr. Tice

12   did the same thing in Court of Appeal in a series of parallel, fraudulent cases related to "Corbell

13   Partnership" and "Renato Corzo" for which Mr. Tice was disqualified and found to have filed

14   an appeal *without authority*. This is not run of the mill "litigation activity." Mr. Tice was used

15   as a straw litigant related to a Noroski in 2013, after the trial court concluded the case filed was

16   a "sham" according to public records disclosed to the Plaintiff by State Bar. (Matthew Charles

17   Elstein of The State Bar of California was convicted of wire fraud for submitting "sham court

18   documents.") This individual is an alleged member of the 700+ Club described herein.

19      Becky Phillips. This individual is a key employee of Catanzarite Law Corporation. Ms.

20   Phillips is alleged to send postal mail and wire communications underlying all allegedly

21   fraudulent schemes of Catanzarite Law Corporation and Kenneth J. Catanzarite.

22      Han Le. This individual is a key employee of Catanzarite Law Corporation. Ms. Le is

23   alleged to aid, abet, and conspire with other Catanzarite Law Corporation actors to defraud

24   Courts and innocent litigants. She sent an email on behalf of Richard Francis O'Connor and

25   Kenneth J. Catanzarite in which it was admitted that Catanzarite was tolling fraudulent claims

26   from a derivative action lacking standing, that was compromised without Court approval, as

27   O'Connor, Cooper, Higgerson, and Scudder produced knowingly false, non-judicial evidence in

28   exchange of their cooperation and Catanzarite was threatening his wield of "law enforcement."

1    <u>Denise Pinkerton</u>. This individual is an alleged straw litigant who is "in on it," or she has

2    no idea what is filed on her behalf, or the basis for such claims. On information and belief, a

3    parallel scheme to defraud Bank of America through Catanzarite Law Corporation exists or did

4    exist. Ms. Pinkerton is purported "attorney-in-fact" for a "Roger Root." Roger Root was

5    principal in Jolly Rogers Investments, Inc. when it invested in Mobile Farming Systems, Inc. in

6    or around 2012. It is unknown if Ms. Pinkerton even knows Mr. Root, or if she is his attorney-

7    in-fact except for the representations of Mr. Catanzarite, who allegedly does not care about the

8    truth when making statements to the Court due to State Bar Enterprise alleged protection racket.

9    <u>Jolly Rogers Investments, Inc</u>. Jolly Roger, Inc. or Jolly Rogers Investments, Inc.

10    invested approximately $450,000 in Mobile Farming Systems, Inc. in or around 2012, years

11    before Plaintiff ever met Richard Francis O'Connor, Jr. or Amy Jeanette Cooper (in April 2015).

12    This entity was dissolved from May 2015 through January 17, 2019, according to Washington

13    Secretary of State records. After Mobile Farming Systems, Inc. actual counsel filed a motion to

14    post a security bond challenging the standing of Catanzarite Law Corporation to file derivative

15    claims for a non-shareholder on January 7, 2019, Jolly Roger was reinstated January 17, 2019,

16    using the wire, and its address was changed to that of Catanzarite Law Corporation at 2331 W.

17    Lincoln Ave., Anaheim, CA 92801. Its agent was changed to Kenneth J. Catanzarite.

18    <u>Mobile Farming Systems, Inc</u>. This entity was inoperable from around March 2015

19    through January 23, 2019. This entity was sued derivatively by Catanzarite Law Corporation

20    commencing September 14, 2018, by a non-shareholder, Denise Pinkerton for Roger Root. Other

21    parties sued without standing or objective probable cause derivatively were Plaintiff, Richard

22    Francis O'Connor, Jr., Amy Jeanette Cooper, Richard Francis O'Connor, Jr., Cliff Higgerson,

23    and Anthony B. Scudder. Mobile Farming Systems, Inc. received approximately 500 discovery

24    requests, amidst approximately 5,000 total discovery requests upon other defendants, from

25    Catanzarite Law Corporation and Kenneth J. Catanzarite on December 21, 2018, according to

26    Mobile Farming Systems, Inc. ("MFS") actual counsel Kenneth Watnick who was engaged to

27    defend the false derivative action. MFS was taken over by Catanzarite Law Corporation's

28    Kenneth J. Catanzarite, to cover up the lack of standing to file a derivative action, between

January 4, 2019, and January 23, 2019, through overt acts of alleged non-judicial extortion of Richard Francis O'Connor, Jr. and Amy Jeanette Cooper who were charged directly with securities fraud charges by Mr. Catanzarite through Denise Pinkerton. In or around the same time, the MFS address was changed to that of Catanzarite Law Corporation. According to Catanzarite Law Corporation on January 28, 2019, in a pleading, O'Connor, Higgerson, Cooper, and Scudder ("O'Connor Faction") "agreed to renounce" their duly authorized and issued shares of Cultivation Technologies, Inc. ("CTI") "in favor of MFS" under the threat of securities fraud charges filed through Denise Pinkerton. This MFS entity was then used as an alleged shell to conduct fraudulent litigation using manufactured claims, where MFS was first sued by Catanzarite Law Corporation, and then Catanzarite Law Corporation attorneys purported to advocate for it using the "renounced" property of O'Connor Faction, and the exculpation of purported conflict waivers by the same persons. Catanzarite Law Corporation purports to be tolling claims against O'Connor Faction presently so they be brought "later" so "no conflict." The compromise of the derivative action was never approved by the Court (See F.R.Civ.P.23.1(c).) After seeking to unwind all shares of CTI while advocating for other shareholders under different factual pretenses on May 1, 2019, the trial Court rejected the MFS claims filed "with every fiber of [its] being." Rather than dismiss the claims, Catanzarite Law Corporation just filed amended complaints, disregarded all facts, and continued the fraudulent scheme because its attorneys allegedly knew bribery of Morgenstern and public employees would allow their continuance – just like Girardi and Girardi-Keese did for forty years.

Richard Francis O'Connor, Jr. In or around 2012 or 2013, O'Connor allegedly caused MFS to transfer $340,000 in illegal commissions to a Joseph Porche who sold securities for MFS. These funds came from Jolly Roger Investments, Inc. or Jolly Roger, Inc. Mr. O'Connor was CEO of CTI and a founder of the company from June 2015 until he resigned in May 2016. O'Connor is purportedly now an officer and director of MFS, with the same address as Catanzarite Law Corporation. Plaintiff's records show Mr. O'Connor participated in approximately 158 securities transactions involving the sale or transfer of CTI shares between June 2015 and January 23, 2019. On information and belief, Mr. O'Connor personally sold more

than $2,000,000 in CTI stock, or through TGAP Holdings, LLC, and concealed it from the IRS and Courts. On January 23, 2019, Mr. O'Connor signed a "Unanimous Consent of the Sole Shareholder of CTI" on behalf of MFS as the "sole shareholder" which purported to unwind all duly authorized corporate acts of CTI under the alleged extortion of Kenneth J. Catanzarite to force corporate actions, purporting to unwind shares he sold, too Mr. O'Connor then proceeded to conduct at least four overt acts of perjury under ongoing alleged threats of Mr. Catanzarite "working with law enforcement" that conflicted with each other to support Mr. Catanzarite's alleged scheme to defraud the Plaintiff, Courts, and innocent litigants using protection of State Bar staff obtained through bribery. Mr. O'Connor allegedly occupied a home owned by Mr. Catanzarite in Orange County in exchange of producing false evidence to support the scheme.

Amy Jeanette Cooper. This individual was President of MFS, had extra-marital affairs with Mr. O'Connor, and allegedly cooperated with Mr. O'Connor to transfer $340,000 in illegal commission to a Joseph Porche who sold securities for MFS in 2012 and 2013. These funds came from Jolly Rogers Investments, Inc. or Jolly Roger, Inc. Ms. Cooper allegedly knew this to be illegal, and this act would form the basis of cooperating with Mr. Catanzarite in January 2019 under his threat of "working with law enforcement." Ms. Cooper was President of CTI, then, under completely false pretenses, aided in the removal of the CTI board of directors through non-judicial fraud under Mr. Catanzrite's threat of securities fraud and elder abuse allegations. Ms. Cooper knew her acts in January 2019 were fraudulent, but allegedly believed the risk of working with Mr. Catanzarite was less than the risk of her being "caught" for paying of illegal commissions to Mr. Porche under Mr. Catanzarite's threat. Court of Appeal found prima facie evidence of malicious prosecution of three lawsuits by Ms. Cooper against the Plaintiff using MFS and involving Mr. Catanzarite. More importantly, Court of Appeal identified the non-judicial fraud in January 2019 was not protected litigation activity. (Indeed, it involved numerous predicate acts as described herein).

Cliff Higgerson. This individual loaned MFS $500,000, but the company failed. Mr. Higgerson accepted in June 2015 the offer to purchase 1,000,000 shares of CTI and thereby became a founder. According to Mr. Catanzarite, Mr. Higgerson agreed to "renounce" his CTI

shares "in favor of MFS" -- allegedly to save his daughter from Mr. Catanzarite's threat of "working with law enforcement" and his own status as defendant to a fraudulent derivative action lacking standing. Mr. Higgerson filed a demurrer in January 2019 to the derivative action before he allegedly colluded with Ms. Cooper (his daughter) in exchange of their dismissals from the case filed by Ms. Pinkerton and promise to produce false evidence to suit Mr. Catanzarite's fraudulent scheme. Court of Appeal found prima facie evidence of malicious prosecution of three lawsuits by Higgerson against the Plaintiff using MFS and involving Mr. Catanzarite.

Anthony B. Scudder. This individual was investor relations for CTI. He spoke with Roger Root in August 2015, and provided evidence that Mr. Root declined the offer to purchase CTI shares but "supported what [CTI] was doing." Mr. Catanzarite was provided evidence of this prior to September 14, 2018. Nevertheless, Mr. Catanzarite -- through Ms. Pinkerton as "attorney-in-fact" for "Roger Root" (not Jolly Roger) filed claims on September 14, 2018 in Orange County Superior Court asserting that Mr. Root was never offered shares in CTI, and that MFS was the sole shareholder of CTI, which Mr. Catanzarite knew to be false on the face of the pleading alone. Mr. Scudder was also sued by Catanzarite Law Corporation commencing September 14, 2018. According to Mr. O'Connor's emails, Mr. Scudder agreed to "trade his testimony" in exchange of his dismissal from the derivative claims, which dismissal occurred on January 4, 2019 without court approval (F.R.Civ. 23.1(c).) Mr. Scudder later agreed to settle with Plaintiff related to his malicious prosecution and RICO allegations, however, Mr. Catanzarite had obtained a $13,000 judgment in Orange County Superior Court for legal fees on behalf of Mr. Scudder through alleged abuse of "Anti-SLAPP" in California despite Plaintiff showing his likelihood of prevailing on at least three counts of malicious prosecution charges. Nevertheless, Mr. Scudder was then allegedly extorted by that judgment and forced to reject the settlement for Mr. Catanzarite's corrupt motives of passion or interests unrelated to his defendant-turned-client, Mr. Scudder. On information and belief, Mr. Scudder knew Catanzarite was protected by State Bar Enterprise and part of a criminal enterprise, so Mr. Scudder feared that more than the charges alleged by Plaintiff. Mr. Scudder confirmed to the Plaintiff by phone that Mr. Catanzarite made a practice of bribery and is an alleged "powerful criminal."

1          <u>Jorge E. Navarette</u>. This individual is the California Supreme Court Executive Officer,

2    Clerk, and Deputy. Mr. Navarette filed, or caused to be filed, a fraudulent antitrust petition on

3    behalf of the Plaintiff in California Supreme Court on October 18, 2022, that was not authorized

4    (Case No. S276939). After November 29, 2022 notice of potential obstruction of federal

5    proceedings including antitrust allegations delivered United States Department of Justice, Mr.

6    Navarette obtained, or manufactured, an "En Banc" decision on the fraudulent antitrust petition

7    that Plaintiff did not file nor authorize (S276939), with a rubber-stamp signature of Chief Justice

8    Cantil-Sakauye on November 30, 2022 that was delivered by mail to Plaintiff. Before the

9    antitrust petition, Mr. Navarette also sent postal mail to the Plaintiff related to the alleged

10   "accusation" scheme to defraud operated by Cal. Supreme Court to protect "700+ Club" and

11   screen for them. Specifically, Mr. Navarette is alleged to review accusations against State Bar

12   attorneys and ensure California Supreme Court does not hear such accusations by sending postal

13   mail intending to defraud members of the public and protect 700+ Club constituents. Plaintiff

14   later identified through public records requests that .008% of "accusations" succeeded (14 out

15   of 1,732 from 2010 – 2022). Notably, Plaintiff's "accusation" that was "returned unfiled" by

16   Navarette – later used by Carissa Andresen to defraud Orange County Superior Court in February

17   2022 as if estopping duty to curtail Catanzarite's fraud – was not listed as being filed. On

18   information and belief, "accusations" are another fraudulent scheme of State Bar Enterprise to

19   pay lawyers, protect State Bar Enterprise, and defraud the public of good faith honest services.

20          <u>Leah Wilson</u>. This individual is the Executive Director for The State Bar of California.

21   Ms. Wilson is alleged to coordinate with Board of Trustees, Office of General Counsel, and

22   Office of Chief Trial Counsel to protect the 700+ Club, which allegedly includes Catanzarite

23   Law Corporation and Girardi-Kees actors. Ms. Wilson is alleged to have setup the "Leadership

24   Bank Program" which controls and possesses money laundering capacity for up to $5 billion at

25   any given time within interest only lawyer trust accounts (IOLTA) through China and Taiwan.

26   The banks allegedly used for international money laundering include American Continental

27   Bank, CTBC Bank Corp., New Omni Bank, and Bank of the Orient. This individual is an alleged

28   member of the 700+ Club described herein, who works primarily with Ruben Duran.

Tani Cantil-Sakauye. This individual is the 28th chief justice of the State of California and alleged member of the 700+ Club outlined herein, also alleged participant in Girardi-Keese enterprise conduct and enablement thereof.

Ellin Davtyan. This individual is General Counsel for The State Bar of California as of July 2022. Ms. Davtyan is alleged to lead an office of approximately 20-attorneys within Office of General Counsel whose primary purposes are to oppress pro se litigants, provide frivolous legal opinions to excuse The State Bar of California's illegal conduct, and to coordinate obstruction of justice to protect State Bar Enterprise and the 700+ Club within State and Federal Courts in California. Ms. Davtyan sent a threatening letter with intent to defraud the Plaintiff and control the enterprise on December 15, 2022, after Ms. Grandt inadvertently confirmed Plaintiff's allegations that Executive Director, Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel communicate internally to allegedly defraud members of the public in favor of allegedly corrupt attorneys including those associated with Catanzarite Law Corporation led by Mr. Catanzarite. Ms. Davtyan is also alleged to provide legal guidance with intent to protect attorneys overtly despite The State Bar of California's statutory role as a public protection agency, and binding federal antitrust laws. This individual is an alleged member of the 700+ Club described herein recruited by Duran to protect State Bar Enterprise interests.

Robert George Retana. This individual is Assistant General Counsel for The State Bar of California and plays a key role for State Bar Enterprise. Mr. Retana is alleged to work primarily with Suzanne Grandt to preserve State Bar Enterprise interests, protect 700+ Club members, to defraud Courts, and to obstruct justice. His collaboration with Grandt on July 20, 2017 to defraud Federal Judge William Alsup is shown herein. Following the Plaintiff's filing to exhaust state remedies in an antitrust petition that was stricken (S276517) on September 27, 2022 by a rubber-stamp of Chief Justice Cantil-Saukauye, on October 17, 2022, Mr. Retana wired "Antitrust Determination #2022-001" to Plaintiff after removing or ignoring four full volumes of evidentiary exhibits from S276517, citing *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 legislative immunity, and overtly ignoring implications of *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015). Mr. Retana's legal opinion calls the

Plaintiff's antitrust allegations "gratuitous" after being assigned by California Supreme Court to make an antitrust determination for his own conduct, Office of General Counsel, Office of Chief Trial Counsel, and Board of Trustees majority-controlled by active market participants. Mr. Retana frivolously asserts operational conduct, including fraud and corruption, to be legislative in character. Mr. Retana informed Jorge E. Navarette by emailed letter that the Plaintiff had "60-days" to request California Supreme Court to review the obstructed petition and determination filed by Mr. Retana. Instead, Jorge E. Navarette filed the knowingly obstructed petition on October 18, 2022, that Plaintiff did not authorize, nor did he file, created a new case number S276939, and obtained a fraudulent "En Banc" decision in a case that should not have existed in the first place. This individual is an alleged member of the 700+ Club described herein.

Charles Tsai. This individual was Deputy Attorney General in the Executive Branch of California Government in December 2022. After the Plaintiff delivered a public records request concerning disclosures to the auditor and Governor made by The State Bar of California as to material State liability on December 8, 2022 (where State of California continues its refusal to appear despite physical and electronic service in Superior Court), California Department of Justice confirmed it would produce records on January 3, 2023, by letter. As set forth herein concerning Suzanne Grandt, when Plaintiff caught her in in overt acts of alleged fraud, Mr. Tsai overtly transitioned from the Executive Branch as Deputy Attorney General of California to Office of General Counsel of Judicial Branch entity The State Bar of California between December 8, 2022, and January 5, 2023, with alleged intent to defraud Plaintiff and obstruct this case and the related case to conceal public corruption. Tsai may have communicated directly with Honorable Bashant. This individual is an alleged member of 700+ Club described herein.

Jose Lopez, Jr. This individual was convicted of RICO conspiracy violations, announced by United States Department of Justice in September 2017. Mr. Lopez was an Orange County Superior Court Clerk who was found to have manipulated or "fixed" more than 1,000 cases. On information and belief, Mr. Lopez is not alone, and cases involving other 700+ Club members are routinely manipulated, "fixed," or obstructed as may be directed by The State Bar of California's Office of General Counsel in Orange County Superior Court. Mr. Catanzarite or

others associated with Catanzarite Law Corporation allegedly fixed cases cited online by Deborah Breuner Davis, also known to The State Bar of California. This RICO conviction (and bribery by Girardi of State Bar leadership and staff admitted by The State Bar of California March 10, 2023) serve as indisputable evidence of alleged compromise of Orange County Superior Court, where it is alleged that Office of General Counsel, Suzanne Grandt, and Charles Tsai are conspiring to obstruct the Plaintiff's claims act litigation and trial court cases to protect Stat Bar Enterprise and 700+ Club constituents associated with Catanzarite Law Corporation through Judge John C. Gastelum and with clerks.

Thomas V. Girardi. This individual was allegedly protected by State Bar Enterprise for forty years, and he compromised the entire judicial system through seeding of judges, corruption of State Bar Court, and as outlined in 2014 by a report allegedly concealed by Board of Trustees from the public – by controlling aspects of The State Bar of California for personal gain. Mr. Girardi's alleged fingerprints remain in The State Bar of California, Judicial Council, Superior Courts, and other corrupt law firms and this allegedly shows this Court cannot summarily reject Plaintiff's genuine claims as if they were not credible as Office of General Counsel sincerely hopes. The State Bar of California, on March 10, 2023, admitted Girardi paid $1 million to public employees as he defrauded hundreds of members of the public using protection of The State Bar of California leadership and staff. According to a press release from U.S. Attorney's Office, Central District of California, "Thomas Vincent Girardi has been indicted by a federal grand jury" and "is charged with five counts of wire fraud." This individual is an alleged member of the 700+ Club described herein. The Plaintiff possesses an amicus filed by a Phillip Kay in Federal Court alleging with specificity the improper use of The State Bar of California for corrupt interests. As Plaintiff alleged before filing this case, The State Bar of California confirmed Plaintiff's allegations that Girardi paid employees to assist him in defrauding the public.

David Lira. This individual is still allegedly protected by State Bar Enterprise, and was among key staff of Girardi-Keese. Mr. Lira is also cited by Judge Thomas Durkin on November 2, 2022, as conspiring with staff and Mr. Girardi to defraud non-attorneys. This individual is an alleged member of the 700+ Club described herein.

1        Keith Griffin. This individual is still allegedly protected by State Bar Enterprise, and was

2    among key staff of Girardi-Keese. Mr. Griffin is also cited by Judge Thomas Durkin on

3    November 2, 2022, as conspiring with staff and Mr. Girardi to defraud clients. This individual

4    is an alleged member of the 700+ Club described herein.

5        John K. Trotter. This individual is allegedly tied with the Girardi-Keese aspects of the

6    700+ Club, also former Presiding Justice of the California Court of Appeal, Fourth Appellate

7    District, Division Three (Orange County). Plaintiff received public records showing direct links

8    between Mr. Trotter and Mr. Girardi. Mr. Trotter is one of the founding members of JAMS.

9        James Towery. This individual was once president of State Bar, then later Chief Trial

10   Counsel. Towery allegedly used this role to recruit corrupt attorneys to create aspects of State

11   Bar Enterprise. On information and belief, Towery is a key member of the enterprise, now a

12   judge in Superior Court of Santa Clara County in Silicon Valley. Mr. Towery is allegedly

13   referenced, although not named, as among those aiding Girardi in the reports disclosed by The

14   State Bar of California on March 10, 2023. Plaintiff alleges Towery to lead State Bar Enterprise,

15   currently. Plaintiff will produce witnesses and documentary evidence during this proceeding.

16       Todd Spitzer. The Orange County District Attorney's Office led by Todd Spitzer is

17   subject of a United States Department of Justice Report on Civil Rights Violations issued

18   October 13, 2022. The Plaintiff notified his office of the alleged criminal conduct to which

19   Plaintiff and others have been subject since 2018 by Catanzarite et al., which they refused to

20   investigate on the basis that racketeering offenses are not in their jurisdiction. Plaintiff was

21   instructed to file a police report with Anaheim, which was purportedly "put in the system."

22   Plaintiff requested a meeting with someone and was not even let inside the building in Orange

23   County. This individual is an alleged member of the 700+ Club described herein.

24       Hailyn Chen. Hailyn Chen is among Board of Trustees for The State Bar of California.

25   On information and belief, she was appointed to preserve non-existent privilege to conceal Board

26   of Trustees' actual knowledge of Thomas V. Girardi's compromise of The State Bar of

27   California and California judicial system. Ms. Chen allegedly coordinates obstruction of any

28   compromise to State Bar Enterprise interests with Office of General Counsel through direct *ex*

*parte* communication with judicial officers, She is Co-Managing partner of Munger, Tolles & Olsen, the firm that conducted investigation into compromise of The State Bar of California in 2014 by Thomas V. Girardi, Howard Miller, and others and the "five-layer chess game" alleged which led to the investigative report. This individual is an alleged member of the 700+ Club described herein.

Lawrence J. Dal Cerro. This individual was assigned to investigate Hailyn Chen, Suzanne Grandt, Ruben Duran, George Cardona, Leah Wilson, Eli Morgenstern, and Robert Retana on Plaintiff's demand, although no such investigation occurred (per the patterns). It is alleged this individual colludes with Office of General Counsel and Board of Trustees to conceal the conduct at issue under color of State law, where a January 13, 2023, letter to the Plaintiff says original case no. 3:22-CV-01616 was remanded, but that was inaccurate and indicates collusion. This individual is an alleged member of the 700+ Club described herein.

BBMP. "BBMP" is "Bench, Bar, Media, and Police" which has met mostly in secret in Santa Clara County for decades to discuss State Bar Enterprise business and case rigging. On information and belief, a similar meeting exists in Orange County, California although there exist fewer details currently. Plaintiff will notice BBMP operations with specificity if it pleases the Court, U.S. Attorney General, or the United States through investigative reporters furnishing information to Plaintiff. It is alleged BBMP uses public dollars for private benefit.

**79. The alleged victims, other than the Plaintiff, are as follows:**

Deborah Breuner Davis. Ms. Davis is a former client of Catanzarite Law Corporation according to Plaintiff's information and belief. Mr. Catanzarite placed a loan against her Colorado home for legal services in the amount of $120,000 from Catanzarite Law Corporation, and then allegedly foreclosed on the home valued at $1.2 million to steal it with intent to defraud her. To allegedly conceal the gains from illegal debt for legal services, Mr. Catanzarite transferred the $1.2+ million home to a Robert Valusek in 2017 for the price of $99,500.

Donald & Rose Williams. These individuals are alleged to have fully disclosed their injuries to the nonsovereign entity The State Bar of Califronia, but as victims of the alleged 700+ Club, they were deliberately mistreated as being a matter of "discretion" of The State Bar of

California, Office of General Counsel, under purported authority of State of California. They lost their home as a result of this purported "State" activity.

Chima Anyanwanu. This individual was targeted by State Bar Enterprise related to 16 homeless people evicted from an encampment who didn't have money for a retainer. For a five-week delay related to a $4,000 payment, his license to practice was suspended for 30-days and he was placed on probation for 2-years as Girardi and Catanzarite schemes ran wild with impunity. According to the LA Times, "The State Bar has repeatedly failed to police prominent and wealthy members of the legal community, most notably Tom Girardi, who misappropriated millions of dollars from clients over decades...The bar has historically trained its firepower on individuals without the money, firm backing or political connections to put up a fight, and those lawyers are disproportionately Black men, like Anyanwu."

Todd Mikles. Mr. Mikles is a victim, similarly to the Plaintiff, of a scheme to defraud involving the mail and wire, through a series of knowingly fraudulent lawsuits predicated on non-judicial fraud. In Mr. Mikles case, Mr. Catanzarite visited a Richard Carlson at his home. Mr. Carlson testified February 12, 2020, that he did not believe he had suffered damages and was not seeking an attorney. When asked by opposing counsel why Mr. Carlson was the lead plaintiff in 9 putative class actions filed across the country for hundreds of millions of dollars, Mr. Catanzarite said these questions were harassing. Suzanne Grandt, Charles Tsai, and Ruben Duran are aware of this scheme to defraud. It is cited in Plaintiff's motion in a related case before Charles Tsai's alleged obstruction of justice. It is also subject of not less than 19 Court of Appeal rulings in Mr. Catanzarite's allegedly relentless pursuit of fraudulent judgments, extorted settlements, and deliberate obstruction of justice for personal gain unrelated to merit.

Sanjay Bhardwaj. Mr. Bhardwaj is a victim of alleged manufacturing of evidence in State Bar Court. Plaintiff possesses expert testimony showing a Judge McElroy presiding over proceedings involving an alleged 700+ Club member Paul Thorndal. Mr. Bhardwaj was disbarred, on information and belief, because he is a sole practitioner and minority – among the regular targets alleged for State Bar Enterprise as it conceals its criminal nature. McElroy is alleged member of Girardi sphere of influence according to evidence in possession of Plaintiff,

1   namely an amicus brief filed by Phil Kay which is allegedly corroborated by cumulative evidence
2   including public admissions by The State Bar of California of corruption March 10, 2023.

3      Deborah DeAnda. Ms. DeAnda is an alleged victim of Girardi's sphere of influence,
4   members of 700+ Club, and a John K. Trotter who was a once appellate justice who transitioned
5   to mediation. She was allegedly threatened and coerced as part of a broader fraudulent scheme
6   to take her interests in a law firm, where an alleged 700+ Club member John Restaino said "we
7   own this court" referring to Orange County Superior Court.

8      Brian Bargabus. Mr. Bargabus is an alleged victim of the exact conduct at issue, residing
9   with Plaintiff, also possessing vested rights to sue State of California agency The State Bar of
10  California for which State of California is liable. Mr. Bargabus is a key witness to obstruction of
11  justice by Mr. Tsai, Office of General Counsel actors, fraud by Duran, and the ongoing fraudulent
12  schemes by Mr. Catanzarite of the Plaintiff with predicate acts detailed herein.

13     ROES 1-150,000. ROES 1-150,000 are, on information and belief, the estimated number
14  of U.S. citizens and businesses who sought public protection from The State Bar of California
15  from 2010-2021 but were defrauded by mail and wire of honest services within the meaning of
16  18 U.S.C. § 1346 by the "public protection agency" through one or both of The State Bar of
17  California's mail facilities affecting interstate commerce with malice, as it overtly protected
18  700+ Club members. It is alleged that actors associated with The State Bar of California seek to
19  defraud the public and deliberately protect attorneys, particularly "700+ Club" which allegedly
20  includes Mr. Girardi, Mr. Catanzarite, and those associated with them. For instance, on
21  December 22, 2019, one "Former Investigator" for State Bar of California (Former Employee)
22  is quoted: "I was an investigator in the OCTC [Office of Chief Trial Counsel]. **The idea is NOT**
23  **to investigate attorney misconduct but to draft memo after memo in an effort to make it**
24  **look as if there had actually been an investigation.** Nor is it designed to discipline attorneys.
25  Last year, out of 15,000 complaints made to the State Bar, only 25 got an actual hearing. WTF!
26  As far as management goes, WHAT MANAGEMENT? The term slave drivers is more
27  appropriate. I don't know what it's like to work in other areas of the State Bar but OCTC is for
28  all intents a purposes a fraudulent enterprise. OCTC is horrible place to work for an honest

1    person. Finally, as far as attorney positions it's a great place to work if you don't want to practice

2    law. On any given day half the attorney offices are empty."

3        United States. The conduct at issue allegedly defrauds the United States in violation of

4    18 U.S.C. § 371. Beyond the harm to Courts and innocent defendants sued under knowingly

5    fraudulent pretenses, or whose money is stolen, Plaintiff is informed by law students subject to

6    similar predation as Plaintiff has experienced by other staff bound by duty to help and protect

7    them. Where The State Bar of California affects approximately 20% of the United States market

8    for legal services and controls approximately $3.63 trillion in interstate commerce, the effect on

9    the United States cannot be underestimated. It is alleged that The State Bar of California is an

10   unlawful trust, but it is not capable of being penetrated without federal intervention because the

11   unlawful trust controls the entire judicial system in California, and even may obstruct the Federal

12   judiciary. In one manner, the United States underwrites student loans for law school; The State

13   Bar of California allegedly defrauds the U.S. through its alleged corrupt monopoly on the same.

14       44 United States Persons, daily. Plaintiff alleges that the deliberate fraud conducted by

15   The State Bar of California, some of which is alleged in the predicate acts outlined herein, occurs

16   44 times per day at minimum and comprises fraudulent schemes under 18 U.S.C § 1346. This

17   number is based on the number of persons who allegedly inform The State Bar of California of

18   their harm, who are subject to the predatory practices by mail and wire, negligence, and

19   deliberate protection of 700+ Club members and other attorneys who defraud the public as a

20   practice with commingled operations by and between the allegedly corrupt attorneys' practices,

21   Office of General Counsel, Office of Chief Trial Counsel, Executive Director, and Board of

22   Trustees. No other State has "State Bar Court." It is alleged that these 44 United States Persons

23   would not be harmed but for the abuse of sovereignty and alleged systemic corruption that State

24   Bar Enterprise has caused and will cause without federal intervention.

25   **80. A description of the pattern of racketeering activity or collection of unlawful debts alleged**

26   **for each RICO claim is as follows. Where the predicate offenses of wire fraud and mail**

27   **fraud are involved, the "circumstances constituting fraud or mistake are stated with**

28   **particularity" including the time, place, and substance of the alleged misrepresentations,**

**and the identify of persons to whom and by whom the alleged misrepresentations were made.**

    a. <u>List the alleged predicate acts and the specific statutes that were allegedly violated.</u>

    **PREDICATE ACT #1.** On June 14, 2022, "via email only" to the Plaintiff at justintimesd@gmail.com it was disclosed by "Office of Chief Trial Counsel" from ctc.cpra@calbar.ca.gov addressed to "Justin S. Beck" signed by "Alex Hackert" that "In Re Perrine (2007) Catanzarite did not tell the Court that his client, who was declaring bankruptcy, deeded his home to Catanzarite. In bankruptcy, the person declaring bankruptcy cannot sell or give away without telling the Court. Catanzarite took the property to pay for his fees, but did not tell the Court about this, violating this strict rule. The Court took away all of Catanzarite's fees: "Given the gravity of Catanzarite's non-disclosure, the court will deny all fees to Catanzarite for legal services rendered to Perrine to the petition date due to its failure to comply with Section 329(a) and Rule 2016(b). Catanzarite was ordered to give back either his fees, or the property he took." These acts allegedly violated 18 U.S.C. § 1503 in that they were intended by Kenneth Catanzarite to obstruct justice, and they did obstruct justice, and they are carried on by State Bar Enterprise from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

    **PREDICATE ACT #2.** On June 14, 2022, "via email only" to the Plaintiff at justintimesd@gmail.com it was disclosed by "Office of Chief Trial Counsel" from ctc.cpra@calbar.ca.gov addressed to "Justin S. Beck" signed by "Alex Hackert" that "Catanzarite violated court rules by making statements to the court without any proof. The court said: "But here plaintiffs [Catanzarite] admit they violated several rules. They also continued to cite the excluded evidence in their reply brief even after defendants noted the error in their briefs.' The Court pointed out that Catanzarite's brief made 39 unsupported factual statements, and paragraphs lacking references. Some statements were completely incorrect. **Catanzarite does not care about the truth making statements to the Court.** The Court said "Kenneth J. Catanzarite and Laurence M. Rosen are ordered to pay defendants the $10,000 sanctions

award…" These acts were by State Bar Enterprise from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #3.** On June 14, 2022, "via email only" to the Plaintiff at justintimesd@gmail.com it was disclosed by "Office of Chief Trial Counsel" from ctc.cpra@calbar.ca.gov addressed to "Justin S. Beck" signed by "Alex Hackert" that "In this case that is ongoing, the Court punished Catanzarite for saying one thing, then switching his story. **The court stated that Catanzarite's case was a "sham."** First, Catanzarite claimed that the dental practice run by Dr. Noroski and Dr. Schneider should give back money to patients who had been treated at the dental office, but did not say anything was wrong with the dentistry. Then, Catanzarite realized he had no case, because the plaintiffs who were former plaintiffs had their depositions and said they were happy with Dr. Noroski and happy with Dr. Schneider. (See attached.) The plaintiffs dropped out and Catanzarite had no case. Catanzarite asked to file an amended complaint and now said that the dental services were bad. The Court punished Catanzarite $14,000 for wasting everyone's time." These acts were by State Bar Enterprise from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #4.** On April 14, 2022, Michael S. Tilden, CPA as Acting California State Auditor wrote the Governor of California and issued Report 2022-030. The details allegedly disclose systemic corruption of The State Bar of California violative of 18 U.S.C. § 1346 (as it pertains to the public's right to honest services compared to The State Bar of California's entire operations) through **~150,000+ overt acts from 2010-2022**, money laundering convictions violative of 18 U.S.C. § 1956, utter disregard for public interest in favor of attorneys in virtually all instances, and statistical anomalies related to "700 attorneys." On information and belief, this is the "700+ Club," and it includes Mr. Catanzarite, attorneys associated with his firm Jim Travis Tice, Nicole Marie Catanzarite Woodward, Tim James

Okeefe, Brandon Woodward, and Mr. Girardi, attorneys associated with his firm including Keith Griffin and David r. Lira, and public employee defendants to this case working with them.

**PREDICATE ACT #5.** On July 20, 2017, Honorable William H. Alsup in No. C 17-02798 WHA says: "Get the State Bar to look into [Suzanne Grandt's] conduct. Maybe my committee here in this Court, the committee that we have for admitting to practice in this Court ought to look into Ms. Grandt's conduct…And next time the State Bar will be a little bit more honest with the poor federal judge…**Ms. Grandt told me something that wasn't true, and I relied on it.**" These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. In exchange for allegedly defrauding this federal judge, Suzanne Grandt was promoted to Assistant General Counsel for The State Bar of California, with her promotion announced internally four days later after engaging in this conduct. It is alleged this promotion by State Bar Enterprise engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #6.** On Friday, September 22, 2017, it was announced that Orange County Superior Court clerk Jose Lopez, Jr. was sentenced to over 11 years in federal prison for racketeering offense, violation of 18 U.S.C. § 1962(d), for a bribery scheme fixing cases. At least 1,000 cases were affected, and it is alleged that other Orange County Superior Court clerks are bribed by Kenneth J. Catanzarite and influenced by The State Bar of California's Office of General Counsel. It is alleged that Suzanne Grandt previously, and Charles Tsai currently, communicate with Judge John C. Gastelum with intent to defraud Plaintiff and to obstruct justice. It is alleged that Grandt and Tsai seek to make it appear to this Court as if it is Plaintiff being vexatious despite the overwhelming record of fraud to which he is subject, and others are subject, including actual convictions of wire fraud in Orange County, and RICO by a Clerk in the Court.

**PREDICATE ACT #7.** Thomas V. Girardi allegedly compromised the entire judicial system in California including The State Bar of California and its Board of Trustees as presently constructed led by Ruben Duran and Hailyn Chen. With actual knowledge of MTO's report in

which Mr. Girardi is named 18 times from 2014, and the "five layer chess game" involving State Bar's management as alleged in the MTO investigation, Ruben Duran used the wire on Monday, January 24, 2022 and disseminated through "Office of Communications": "The State Bar of California's Board of Trustees announced today that it has been conducting an additional investigation into whether the State Bar's handling of past discipline complaints against former licensee Thomas V. Girardi was affected by Girardi's connections to or influence at the State Bar. The investigation is intended to identify actions by anyone with ties to the State Bar that may constitute malfeasance in how discipline complaints against Girardi were handled. "The State Bar Board leadership and staff take very seriously the immense harm done by Thomas Girardi to innocent victims," said Ruben Duran, Board Chair. "We have been proactively doing everything in our power to learn from the past and do better in the future to prevent harms like this from recurring." It is alleged that Mr. Duran intended to defraud the public, give a false sense of security, and to conceal the true nature of The State Bar of California's operations— including the protection of attorneys engaged in serial fraud like Kenneth J. Catanzarite. This overt act using the wire allegedly violated 18 U.S.C. § 1343 in that it used the wire, with intent to defraud the public and any internet user, and to conceal constructively Duran's and Board of Trustees' involvement in alleged criminal activity including international money laundering. When Mr. Duran made these statements, he was allegedly concealing the harm to Plaintiff, and carrying on the criminal conduct of 700+ Club to take money and property from the public and deprive honest services under 18 U.S.C. § 1346 as a fraudulent scheme. It is alleged, for more than ten years by State Bar Enterprise, these acts engaged in interstate commerce from facilities located at 845 S. Figueroa Ave, Los Angeles, CA 90017 and 180 Howard St. San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #8**. On November 2, 2022, Federal Judge Thomas M. Durkin in No. 18 C 7686 describes "when attorney Thomas Girardi stole some of the money five of his clients were owed." The order describes "Girardi drafted a letter to one of the clients stating the following: I got enough of the problem taken care of so we were able to release 50% of the

settlement." And "a similar letter to another client stated: We made an agreement with Boeing that all of the cases would be resolved" and another "claiming that Girardi was "dealing with the head of the IRS" regarding the supposed tax issue." "Before sending the letters, Girardi's secretary shared them with Griffin and Lira." These letters allegedly violated 18 U.S.C. 1341 in that they were sent with intent to defraud by mail, or they allegedly violated 18 U.S.C. 1343 in that they were sent using the wire. It is alleged similar conduct is undertaken by Kenneth J. Catanzarite which he seeks to allegedly defraud this court as being "litigation activity." On February 1, 2023, it was announced by U.S. Attorney's Office, Northern District of Illinois that Mr. Girardi was indicted on wire fraud charges, alleged violations of 18 U.S.C. § 1343 and Mr. Lira was indicted on wire fraud charges, alleged violation of 18 U.S.C. § 1343.

**PREDICATE ACT #9.** On November 3, 2022, Ruben Duran again used the wire to disseminate through Board of Trustees and The State Bar of California on the internet to every user accessing it, that "Over the past 40 years, the State Bar opened 205 [injury notices] about Girardi." Duran says "I speak on behalf of the entire Board of Trustees when I say that we want the public to know that we take our statutory mission to protect the public seriously. As articulated in our new strategic plan, the public protection mission is the guiding light in all that we do. Moreover, meaningful change begins with a culture that values transparency and accountability, principles the Board of Trustees and State Bar leadership hold central to our decision making." This press release dated November 3, 2022, distributed by Board of Trustees and Ruben Duran allegedly violated 18 U.S.C. § 1343 in that it intended to defraud as part of a scheme to protect the enterprise. The intent of this press release, particularly as Mr. Duran was concealing the conduct at issue, and with actual knowledge that he and Board of Trustees established and carried on Mr. Girardi knowingly, was intended to defraud the public and provide a false sense of security that The State Bar of California had somehow changed its ways. In reality, Mr. Duran allegedly made this announcement only because the Federal Judge Thomas M. Durkin concluded that Mr. Girardi's conduct was "unquestionably criminal." It is alleged that Mr. Girardi stole more than one billion dollars using his corruption of the California judicial system, paying State Bar Enterprise. It is alleged that Mr. Catanzarite is similar to Mr. Girardi,

1   and that he obstructs justice and steals with full knowledge of Board of Trustees. These acts were

2   alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa

3   Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility

4   in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

5       **PREDICATE ACT #10**. It is alleged that Girardi of State Bar Enterprise obtained a

6   $500 million fraudulent judgment related to the Dole Fruit Company. This matter is described

7   *In re Girardi*, 611 Fed.3d 1027, 1039-1040. This was announced July 13, 2010, and involves

8   Walter J. Lack and Paul A. Traina, other alleged members of the 700+ Club. For one or more

9   public employees of The State Bar of California and by State Bar Enterprise, this allegedly

10  violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce,

11  including the mail, with intent to commit or facilitate unlawful activity.

12      **PREDICATE ACT #11**. "Over a period of about 10 years, GK negotiated settlements

13  with most of the defendants in the Lockheed Action on behalf of Gutierrez and other plaintiffs

14  in that action. "Gutierrez's allegations in this action is that GK misappropriated part of the

15  settlement funds paid by the settling defendants for the benefit of Gutierrez and other class

16  members. " *Gutierrez v. Girardi*, 194 Cal.App.4th 925, 927928. These overt acts are alleged to

17  have violated 18 U.S.C. § 1343 in that they intended to deceive and defraud, and that public

18  employees of The State Bar of California and State Bar Enterprise knowingly carried these on,

19  too under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce,

20  including the mail, with intent to commit or facilitate unlawful activity.

21      **PREDICATE ACT #12**. On November 12, 2015, Stephen Young Kang of State Bar

22  Enterprise pled guilty to and was convicted of two counts of violating title 18 U.S.C. § 1343.

23      **PREDICATE ACT #13**.   "11-29-2018 RENATO CORZO et al., Plaintiffs and

24  Appellants, v. PARKS PALMER TURNER & YEMENIDJIAN, LLP et al., Defendants and

25  Respondents. Catanzarite Law Corporation, Kenneth J. Catanzarite and Tim J. O'Keefe for

26  Plaintiffs and Appellants." *Corzo v. Parks Palmer Turner & Yemenidjian, LLP*, No. B285691,

27  (Cal. Ct. App. Nov. 29, 2018) (Renato Corzo and his partnership sued the partnership's

28  accountants for malpractice and breach of fiduciary duty. Defendant accountants filed a demurrer

arguing that the lawsuit was barred by the statute of limitations. The trial court agreed. Corzo asked for and received leave to amend his complaint. Corzo's next complaint included new facts he believed tolled the statute of limitations. Defendants demurred again. The trial court sustained the demurrer without leave to amend, finding that the amended complaint was a "sham" pleading engineered to avoid the statute of limitations. Was it? Yes. We agree with the trial court that Corzo's amended complaint was a **sham pleading**. Because Corzo has not demonstrated he can amend the pleading to state a viable cause of action not barred by the applicable statute of limitations, we affirm the trial court's dismissal of the amended complaint with prejudice.) These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property as part of a fraudulent scheme, and one or more public employees of The State Bar of California by State Bar Enterprise carried these on, too under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343 violations.

**PREDICATE ACT #14.** This case is before the Court on Plaintiffs Denise Pinkerton individually, and as attorney in fact for Roger Root's Motion for Remand. (Doc. 13). Defendant Bank of America, N.A. responded in opposition, (Doc. 16), and Plaintiffs replied, (Doc. 22). This case was originally filed in state court by Plaintiffs, Florida citizens, alleging two counts against Bank of America—breach of contract and negligence. (Doc. 1-3). Bank of America removed the case to this Court, invoking its diversity jurisdiction. (Doc. 1). Less than a month after removal and five days after Bank of America answered, Plaintiffs filed a First Amended Complaint, (Doc. 12), and the Motion to Remand, (Doc. 13), on the same day. The First Amended Complaint's sole purpose is to add an additional defendant and cause of action— misrepresentation against Defendant Curt Radlein, a Florida citizen. (Doc. 12). Although the original complaint includes numerous alleged conversations Pinkerton had with named Bank of America employees, it did not list Radlein. (Doc. 1-3). Plaintiffs argue that Radlein is now properly (not fraudulently) joined because Bank of America cannot prove an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." (Doc. 22 at 2

(quotation marks omitted) (quoting <u>McDonal v. Abbott Labs.</u>, 408 F.3d 177, 185 (5th Cir. 2005)). Bank of America argues that the Court should dismiss the claim against Radlein and deny the motion to remand under the balancing test announced in <u>Hensgens v. Deere & Co.</u>, 833 F.2d 1179, 1182 (5th Cir. 1987). *Pinkerton v. Bank of Am., N.A.*, Case No. 5:19-cv-374-Oc-32PRL, (M.D. Fla. Nov. 26, 2019) These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property using the wire, and that State Bar carried these on, too. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice, and one or more public employees of The State Bar of California by State Bar Enterprise allegedly violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Pinkerton and Catanzarite were manipulating their pleadings to defraud Bank of America within the meaning of 18 U.S.C. § 1344, not because of any truth to their allegations which they knew, and consistent with Mr. Catanzarite's patterns to defraud members of the public, banks, and Courts with fraudulent schemes.

**PREDICATE ACT #15.** On October 4, 2022, Matthew Charles Elstein of State Bar Enterprise was "Sentenced to More than 3 years in Prison for Conning Clients via Sham Court Documents" after he "pleaded guilty to one count of wire fraud" in November 2021. Elstein was a licensed California attorney from December 1994 until the State Bar of California ordered him inactive in March 2019. From June 2015 to July 2018, Elstein engaged in a scheme to defraud his clients by falsely claiming he obtained favorable legal resolutions for them, when in fact the favorable resolutions had never been obtained. These acts did violate 18 U.S.C. § 1343 because Mr. Elstein was convicted. It is alleged that these patterns of "sham court documents" are not dissimilar to the matters of practice of Mr. Catanzarite, carried on by The State Bar of California by State Bar Enterprise. It is alleged Elstein would also call this "litigation activity" much as Mr. Catanzarite allegedly seeks to defraud Plaintiff and this Court that his fraud, and the fraud of his

colleague defendants, is somehow protected in the United States. Attorney fraud is neither protected activity nor is it subject of litigation privilege.

**PREDICATE ACT #16.** For the matter commencing with a visit by Kenneth Joseph Catanzarite to Richard Carlson's home, who became the lead plaintiff despite testifying that he did not believe he suffered damages and was not seeking an attorney: On June 16, 2020, "Report of Kenneth J. Catanzarite SBN: 113750" was delivered by postal mail "Via Certified Mail Return Receipt" to "Office of Chief Trial Counsel, Intake" which "Enclosed are three Reports of Judicial Sanctions and one Report of Discipline. These reports arise out of my client representation in hotly contested matters cases styled In Re Daymark Realty Advisors, Inc. (Case No. 18-23750), In Re Daymark Residential Management, Inc. (Case No. 18-23751), and In Re Daymark Properties Reality, Inc. (Case No. 18-23752)...in the United States Bankruptcy Court for the Southern District of Florida, where we represent directly, and by proposed classes, 14,000 adversely affected investors...The key figure in the fraud is Todd A. Mikles." These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property using the wire leading to the Court decisions communicated, and that State Bar carried these on, too. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. Kenneth J. Catanzarite knew the entire series of cases were filed commencing with a visit to Richard Carlson's home, who did not believe he had suffered damages according to his February 12, 2020 testimony, and was not seeking an attorney. Kenneth J. Catanzarite filed 9 putative class actions on his behalf anyway and intended to defraud Courts, then Office of Chief Trial Counsel by mail. State Bar Enterprise knew the scheme was fraudulent, too, but knew that Kenneth J. Catanzarite was among the protected attorneys and the 700+ Club, so they didn't do anything, and still refuse to do anything despite the ongoing harm to innocent members of the public. This letter, in addition to evidencing 18 U.S.C. § 1343 as alleged wire fraud and 18 U.S.C. § 1503 as alleged obstruction of justice, was also allegedly violative of 18 U.S.C. § 1341 in that it was delivered by certified mail, and intended to defraud, and it intended to take money and property

from Todd Mikles through a pattern of racketeering activity. For public employees Eli David Morgenstern, Suzanne Grandt, Ruben Duran, Ellin Davtyan, Robert Retana, George Cardona, Charles Tsai, Hailyn Chen, and any others who know of this pattern, each overt act is alleged to have violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to facilitate unlawful activity. Each has actual knowledge of these fraudulent schemes but carry them on willfully.

**PREDICATE ACT #17.** Related to that letter from June 16, 2020, showing the threat of continuing fraud: "Kenneth Catanzarite appeals the denial of relief from a judgment of the bankruptcy court. The district court affirmed the award of sanctions against Catanzarite for violating a preliminary injunction that barred "the commencement of any further actions under the same or similar facts or circumstances to" lawsuits he had filed against bankruptcy creditors. The district court also ruled that Catanzarite forfeited his opportunity to object to the amount of sanctions imposed. We affirm. In 2018, Daymark Realty Advisors, Incorporated, Daymark Properties Realty, Incorporated, and Daymark Residential Management, Incorporated, filed separate petitions for bankruptcy under Chapter 11 of the Bankruptcy Code, which the bankruptcy court consolidated. Catanzarite, an attorney licensed in California and admitted to appear *pro hac vice* in the bankruptcy court, filed adversary complaints against the Daymark companies for Richard Carlson and eleven other plaintiffs (the Carlson plaintiffs) and for Katherine Looper and six other plaintiffs. Those plaintiffs complained of breach of fiduciary duties and other wrongdoing in handling their investments in several properties, including their interests as tenants-in-common in the Congress Center, an office tower in Chicago, Illinois. Later, Catanzarite moved successfully to convert the bankruptcy petition to an action under Chapter 7 of the Bankruptcy Code. Catanzarite also sued Daymark creditors, including Todd Mikles, Etienne Locoh, GCL, LLC, and other entities related to the Daymark companies (the Mikles creditors). Catanzarite filed nine putative class action complaints for the Carlson plaintiffs in California and Utah courts against various combinations of the Mikles creditors. The complaints alleged that the creditors were alter egos of and shared common control of and culpability for the Daymark companies' mishandling of investments in the Congress Center and

other properties. The Mikles creditors entered an agreement to settle their claims with the bankruptcy trustee, Chad Paiva, and obtained an injunction that stayed the nine lawsuits. *See* 11 U.S.C. § 105(a); Fed.R.Bankr.P. 7001(7). After a hearing attended by Catanzarite, the creditors, and the Trustee on August 27, 2019, the bankruptcy court issued an order that "enjoin[ed] continuation of the [nine] Subject Lawsuits or the commencement of any further actions under [the] same or similar facts or circumstances to the Subject Lawsuits" for 60 days. On the Mikles creditors' motion, and after a second hearing, the bankruptcy court issued a second preliminary injunction that extended the stay to December 11, 2019. On November 7, 2019, Catanzarite, as counsel for Katherine Looper and nine other plaintiffs (the Looper plaintiffs), filed in a California court a complaint alleging that Mikles and GCL assisted the Daymark companies to defraud investors in connection with the Congress Center and another property. Catanzarite also filed a notice of lis pendens on GCL property. The Mikles creditors moved to enforce the injunction and to impose sanctions. The bankruptcy court held a hearing on the motion attended by the creditors, Catanzarite, and the Trustee. The Trustee testified about Catanzarite's actions, the effect on the stay, and maintaining control of the property of the estate. The bankruptcy court granted the motion and sanctioned Catanzarite. The bankruptcy court ruled that Catanzarite, as counsel for and in active concert with the Carlson plaintiffs, *see* Fed. R. Civ. P. 65(d)(2)(B), violated the injunction by filing a civil action and lis pendens for the Looper plaintiffs "based upon TIC ownership interests in the Congress Center," which was the same subject "matter[] explicitly enjoined by the Second Preliminary Injunction Order." And the bankruptcy court stated that it earlier had sanctioned Catanzarite for creating a website containing false and misleading statements about the Daymark bankruptcy. The bankruptcy court stayed the Looper action and ordered Catanzarite to reimburse the Mikles creditors and "Trustee Paiva for any actual attorneys' fees and expenses incurred in connection with" the Looper action. Although the Trustee was not a party to the motion, the bankruptcy court found "it appropriate to compensate the bankruptcy estate . . . in light of the pending settlement motion in the main bankruptcy case and the intent of the injunctive relief in this adversary proceeding-to maintain the status quo pending the hearing to consider approval of that settlement . . . ." As directed by

the bankruptcy court, the Mikles creditors and the Trustee timely filed affidavits for and redacted time records of the fees and expenses they sought as compensatory sanctions. On January 29, 2020, the Mikles creditors requested $49,020.50 in attorneys' fees, and on February 5, 2020, the Trustee requested $13,333 for similar expenses. On February 25, 2020, almost three weeks after the expiration of the seven-day deadline imposed by the bankruptcy court, Catanzarite objected to the affidavits. The bankruptcy court denied Catanzarite's objection to the affidavits as untimely. The bankruptcy court found that Catanzarite "failed to timely object to either affidavit" or "to timely move for an extension of time to object" and that his notice of late filing "offered a variety of excuses for missing the deadline, none of which [rose] to the level of excusable neglect." The bankruptcy court awarded the full amount of attorneys' fees that the Mikles creditors requested as "incurred in connection with responding to the [Looper action] and prosecuting the [motion to enforce], and . . . not excessive." As to the Trustee, the bankruptcy court found that "certain time entries include time for both main case issues as well as the pertinent issues in this adversary proceeding" and, being "unable to determine which portion of [specific] entries [were] attributable to the [Looper action] and the [motion to enforce], . . . [it] exercise[d] its discretion and award[ed] only 50% of the fees billed" on four days in December 2019. The bankruptcy court awarded the Trustee $11,639.25 in attorneys' fees. The district court affirmed the imposition of sanctions and the fee awards. The district court ruled that, "under the plain language of Rule 65(d)(2)(B), [Catanzarite], as the attorney for the enjoined Carlson [plaintiffs], was bound by the Preliminary Injunction" and violated it by filing an action "based on similar ownership interests and the same or similar facts or circumstances." The district court rejected Catanzarite's argument that he could engage in prohibited conduct for another client. The district court ruled that Catanzarite's "failure to object to the fee affidavit[s] and his conclusory and vague challenges to the reasonableness of the fees . . . [were] fatal to his argument" challenging the accuracy and veracity of the affidavits. The district court also ruled that the bankruptcy court did not abuse its discretion in determining the fee awards after carefully reviewing the affidavits and time records that the Mikles creditors and the Trustee submitted. The district court rejected as refuted by the record Catanzarite's argument that awarding

sanctions to the Trustee violated his right to due process. "[A]s [the] second court of review," we "examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standard of review as the district court." *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1315 (11th Cir. 2016) (quoting *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1189 (11th Cir. 2015)). We review the imposition of sanctions for abuse of discretion and related findings of fact for clear error. *Id.* Under the abuse-of-discretion standard, we must affirm "unless the [bankruptcy] court made a clear error of judgment, or has applied the wrong legal standard." *Id.* (internal quotation marks omitted). So the bankruptcy court enjoys a "a range of choice within which we will not reverse . . . even if we might have reached a different decision." *Schiavo ex. rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005). The bankruptcy court did not err in determining that Catanzarite was bound by the injunction. Federal Rule of Civil Procedure 65 binds three categories of persons to comply with an injunction: "the parties; the parties' . . . attorneys; and other persons who are in active concert or participation" with persons in the first two categories. Fed.R.Civ.P. 65(d)(2)(B). The Rule binds an attorney to an injunction to the same extent as a party. So, as the bankruptcy court explained, Catanzarite could not "engag[e] in conduct in which [the parties, ] the Carlson [plaintiffs, ] themselves could not engage." Catanzarite misinterprets Rule 65(d)(2)(B) as prohibiting attorneys only "from engaging in enjoined conduct *on behalf of an enjoined party*." "We are not at liberty to add terms or posit an interpretation that differs from the explicit language of" a federal rule of procedure. *United States v. Orozco*, 160 F.3d 1309, 1316 (11th Cir. 1998). Rule 65(d)(2)(B) plainly bars a party's attorney from engaging in enjoined conduct regardless of his client's situation. Because Catanzarite was bound to obey the injunction, we need not address his argument that the bankruptcy court erred by ruling, in the alternative, that he was bound to the injunction by acting in concert with his clients under Rule 65(d)(2)(C). Catanzarite violated the injunction. The injunction expressly prohibited "the commencement of any further actions under same or similar facts or circumstances to the Subject Lawsuits." Two of the subject lawsuits involved Mikles creditors mishandling investors' tenancy-in-common interests in the Congress

1    Center. In the complaint and lis pendens, Catanzarite repeated many of the facts and legal

2    arguments made in the subject lawsuits.

3         The bankruptcy court did not abuse its discretion. "Congress has empowered bankruptcy

4    courts broadly to issue any order, process, or judgment that is necessary or appropriate to carry

5    out the provisions of the Bankruptcy Code, 11 U.S.C. § 105(a), including sanctions to enforce .

6    . . [an] injunction." *In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015). The bankruptcy court

7    sanctioned Catanzarite for the permissible purpose of compensating the Trustee and the Mikles

8    creditors for losses caused by Catanzarite's noncompliance. *See Local 28, Sheet Metal Workers'*

9    *Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986). The Trustee was entitled to compensation even

10   though he did not move to enforce the injunction or join the Mikles creditors' motion. The

11   Trustee was a party in the bankruptcy case in which the injunction issued for the purpose of

12   maintaining the status quo pending the resolution of a proposed settlement between the estate

13   and the Mikles creditors. *See E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1514-15 (11th

14   Cir. 1987). Catanzarite's violation of the injunction interrupted the progress of the bankruptcy

15   case and required the Trustee and the Mikles creditors to incur expenses related to the Looper

16   action and to the enforcement of the injunction. Catanzarite argues that he was denied due

17   process with respect to the award to the Trustee, but he was "given fair notice that his conduct

18   may warrant sanctions and the reasons why" as well as "an opportunity to respond . . . and to

19   justify his actions," *In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995). The motion to enforce

20   outlined Catanzarite's willful disobedience of the injunction. During the hearing on the motion,

21   the Trustee testified about the effect that Catanzarite's noncompliance had on the bankruptcy

22   proceedings, and Catanzarite presented a defense. As the district court stated, Catanzarite "was

23   on notice that the bankruptcy court was . . . considering whether and how [his] actions may have

24   affected the Trustee and the estate and whether that should give rise to sanctions." And the

25   bankruptcy court afforded Catanzarite the opportunity to object to the Trustee's affidavit and

26   time records, but Catanzarite delayed filing a response. This process was sufficient to satisfy due

27   process. The bankruptcy court also did not abuse its discretion in determining the fee awards.

28   The bankruptcy court ensured that its awards were "calibrated to the damages caused by"

Catanzarite's noncompliance by limiting the award to "cover[ing] the legal bills that the litigation abuse occasioned." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (internal quotation marks omitted and alterations adopted). The bankruptcy court "carefully reviewed the Affidavits and time records" the Trustee and the Mikles creditors submitted and found that the fees were "incurred in connection with responding to the [Looper action] and in prosecuting" the motion to enforce the injunction. The bankruptcy court noticed an inadvertent duplication of fees by the Trustee and adjusted the amount requested to account for the error. Catanzarite contests the amounts of the awards, but he forfeited the opportunity to challenge those amounts by failing timely to object to the affidavits, *see Green v. Graham*, 906 F.3d 955, 963 (11th Cir. 2018). *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766, 1-9 (11th Cir. Mar. 9, 2022)

These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive others for money or property using the wire as described, and that public employees willfully carried these on in alleged violation of 18 U.S.C § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Rule 8.1115(b) of the California Rules of Court allow reliance upon unpublished opinions as evidence of 18 U.S.C. § 1343 violations. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. Kenneth J. Catanzarite knew the entire series of cases were filed commencing with a visit to Richard Carlson's home, who did not believe he had suffered damages according to his February 12, 2020 testimony, and was not seeking an attorney. Kenneth J. Catanzarite filed 9 putative class actions on his behalf anyway and intended to defraud others using the straw litigant, Richard Carlson, just as with Denise Pinkerton against Plaintiff. State Bar Enterprise knew the scheme was fraudulent, too, but knew that Kenneth J. Catanzarite was among the protected attorneys and the 700+ Club, so they didn't do anything, and still refuse to do anything despite the ongoing harm to innocent members of the public as allegedly bribed public employees using the government for private benefit.

**PREDICATE ACT #18**. Using the wire at 12:36:59 PM for Denise Pinkerton in Orange County Superior Court, Mr. Catanzarite and Catanzarite Law Corporation filed "(1) The Pinkerton Action. *Denise Pinkerton v. Cultivation Technologies, Inc., et al.,* OCSC No. 30-2018-01018922. Catanzarite filed this lawsuit on September 14, 2018, on behalf of an elderly woman (via an attorney in fact) who invested all her retirement savings in MFS shares. This shareholder, individually and derivatively on behalf of MFS, asserted CTI, Probst, O'Connor, Cooper, and others involved with CTI, engaged in fraud, conversion, breach of fiduciary duty, conspiracy, fraudulent concealment, and theft of trade secrets. In addition to damages, this derivative action demanded the cancellation of CTI stock certificates, an injunction preventing the sale of CTI stock, an injunction forcing CTI to stop using MFS's trade secrets, and the payment of punitive damages and attorney fees. For this lawsuit, CTI attorney of record was Winget, Spadafora, Schwartzberg LLP (Winget). On January 23, 2019, a few days before Catanzarite filed a shareholder derivative action involving CTI shareholders, Catanzarite dismissed several [derivative] defendants from the Pinkerton Action [without court approval, see F.R.Civ.P.23.1(c)} including CTI and members of the O'Connor Faction (O'Connor and Cooper). It also deleted causes of action for misappropriation of trade secrets, unfair competition, and declaratory relief against CTI. In August 2019, Catanzarite amended the complaint to remove all shareholder derivative causes of action on behalf of MFS [without court approval]. Thus, the only defendants remaining were members of the Probst Faction (Probst, Justin Beck, I'm Rad, LLC, Robert Kamm, Robert Bernheimer, Irving Einhorn, and Miguel Motta). *Fincanna Capital Corp. v. Cultivation Tech.,* No. G058700, 3 (Cal. Ct. App. Jun. 28, 2021) Witnesses include Clarissa Bustamante, Deputy Clerk, Orange County Superior Court, Judge Geoffrey T. Glass, and all named defendants including those allegedly extorted to produce evidence: Amy Jeanette Cooper, Richard Francis O'Connor, and Cliff Higgerson. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to defraud others for money or property using the wire and a fraudulent scheme, and that State Bar carried these on, too. Kenneth J. Catanzarite knew that Roger Root was not a shareholder of MFS nor of CTI. He also knew Roger Root lacked standing, and that Roger Root had been offered shares of CTI because Plaintiff

1    provided proof based on email from August 2015 from Anthony B. Scudder. Mr. Catanzarite did
2    not care, because he knew he could use the Courts as he pleased, that he controlled Orange
3    County Superior Court through State Bar Enterprise and alleged bribes, and he could defraud
4    Plaintiff with intent, who was defrauded. For public employees Eli David Morgenstern, Suzanne
5    Grandt, Ruben Duran, Ellin Davtyan, Robert Retana, George Cardona, Charles Tsai, Hailyn
6    Chen, and any others who know of this pattern, each overt act is alleged to have violated 18
7    U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the
8    mail, with intent to facilitate unlawful activity. Each has actual knowledge of these fraudulent
9    schemes but carry them on willfully.

10          **PREDICATE ACT #19**. On Thursday, October 4, 2018, Kenneth J. Catanzarite did use
11    the wire at 7:32AM PDT from address kcatanzarite@catanzarite.com and emailed Plaintiff
12    through his counsel Samuel Y Edgerton, III at the address sedgerton@fmglaw.com seeking to
13    settle claims he knew were fraudulent. "Given the Roots' settlement request for CTI shares, it is
14    reasonable to infer Catanzarite and his clients knew only those shares had value and also
15    understood those shares were available because MFS did not own 100 percent of CTI. Under
16    these circumstances, a reasonable attorney may not have found the Pinkerton Action claims
17    tenable." *Beck v. Catanzarite Law Corp.*, No. G059766, 37 (Cal. Ct. App. Jul. 13, 2022) This
18    overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for
19    money or property using the wire as part of a fraudulent scheme.

20          **PREDICATE ACT #20**. Also on Thursday, October 4, 2018, at 7:07AM it was
21    announced by wire that "Catanzarite Law Corporation filed a lawsuit against Cultivation
22    Technologies, Inc. ("CTI"), its shareholders, directors, officers, and others...The complaint
23    asserts claims on behalf of investor Roger Root, derivatively on behalf of Mobile Farming
24    Systems, Inc...Root also asserts individual claims for securities fraud." Parties to this wire
25    communication were every user of the internet, and it was delivered by Catanzarite Law
26    Corporation with contact information listed for Timothy J. O'Keefe with the email
27    tokeefe@catanzarite.com as directed by Mr. Catanzarite's allegedly fraudulent scheme. Mr.
28    Catanzarite was using the wire to take money and property from Plaintiff and others, and knew

that Roger Root had been granted an offer to buy CTI shares but didn't care. He knew he could use the wire to defraud without fear because he was protected among the 700+ Club, just like Thomas V. Girardi was. He knew this wire communication would also place pressure on Cooper and O'Connor, whom he would later allegedly extort to produce evidence to force corporate actions under the threat of "working with law enforcement." This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive and defraud others for money or property using the wire. This overt act also laid the foundation for alleged extortion for signatures and property under California Penal Code 518 PC, which meets the definition of racketeering activity under 18 U.S.C. § 1961(1).

**PREDICATE ACT #21.** Sometime in January 2019, it is alleged that Kenneth J. Catanzarite used the wire to contact Amy Jeanette Cooper who was represented by counsel Stephen Erigero. According to the sworn declaration of Amy Jeanette Cooper's actual counsel Stephen Erigero, neither he nor his firm were involved in compromise of the derivative Pinkerton Action, and his firm terminated their representation of Ms. Cooper on January 23, 2019. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme. This overt act allegedly constitutes extortion for signatures and property under California Penal Code 518 PC, which meets the definition of racketeering activity under 18 U.S.C. § 1961(1).

**PREDICATE ACT #22.** Kenneth Watnick, actual counsel for MFS says on January 7, 2019 "On December 21, MFS retained counsel. Upon being retained, MFS's counsel contacted [Pinkerton's] counsel to introduce himself and request a service list. In response, [Catanzarite] advised that he had or was serving discovery on MFS. Specifically, on December 21, [Pinkerton/Catanzarite] served discovery which contained over 500 separate requests for testimony, documents, and information…MFS understands that [Pinkerton/Catanzarite] has propounded similar discovery requests upon Defendants Probst, O'Connor, Cooper, and all other named defendants. In total, [Pinkerton/Catanzarite] has propounded approximately two thousand (2,000) separate written discovery requests upon just MFS and the Management Defendants…MFS understands that when combined with the other named defendants [including

Plaintiff], [Pinkerton/Catanzarite] has served in excess of five thousand (5,000) separate written discovery requests." Mr. Catanzarite was allegedly using these "discovery" requests to defraud everyone by wire in violation of 18 U.S.C. § 1343 with intent to extort private information so he could file more knowingly fraudulent (not only baseless) lawsuits that relied upon non-judicial fraud within his fraudulent scheme. He knew he could rely upon State Bar Enterprise to protect him and alleged bribery of public employees, just like Thomas V. Girardi enjoyed for forty years.

**PREDICATE ACT #23.** Where Mr. Catanzarite knew he was caught filing fraudulent "sham court documents" without standing for a non-shareholder, and that Pinkerton and Root were not shareholders of MFS nor CTI, he knew he would have to take over MFS through non-judicial fraud and extortion of corporate actions. And so he did. First, using the wire on January 17, 2019, Mr. Catanzarite re-instated the entity Jolly Rogers Investments, Inc. which had been administratively dissolved in May 2015. Because the lack of standing was so evidenced on January 17, 2019, he set in motion the scheme to take over MFS by extorting corporate actions under the threat of "working with law enforcement." Parties to the filing include Washington Secretary of State, and any internet user reviewing public records of Jolly Rogers Investments, Inc. Mr. Catanzarite used the wire to change the address of Jolly Rogers Investments, Inc. to his firm's address, consistent with his patterns. He used the threat of securities fraud charges against Cooper and O'Connor, who in turn worked with Higgerson, and leveraged the malice existing of Duffy and Zakhireh against Plaintiff, to commit a series of overt acts by "consent." This overt act to revive Jolly Rogers Investments, Inc. is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme.

**PREDICATE ACT #24.** Mr. Catanzarite used the wire or caused the wire to be used in Orange County Superior Court, to dismiss Anthony B. Scudder and Aroha Holdings, Inc. through e-filing transaction 2747866 at 02:38:58 PM on January 3, 2019. Mr. Catanzarite allegedly intended to compromise the fraudulent derivative case against Mobile Farming Systems, Inc. through Denise Pinkerton in the first of several steps to take over MFS. Parties to the communication include any internet user, the assigned Judge, and the Orange County Superior Court Clerk as well as the Plaintiff who was a party defendant to the scheme. This overt

act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme.

**PREDICATE ACT #25.** Mr. Catanzarite used the wire or caused the wire to be used in Orange County Superior Court, to dismiss Richard Francis O'Connor, II, TGAP Holdings, LLC, and Scott Unfug through e-filing transaction 3751199 at 03:48:28 PM on January 22, 2019. Mr. Catanzarite allegedly intended to compromise the fraudulent derivative case against Mobile Farming Systems, Inc. without Court approval through Denise Pinkerton in continuance of the scheme. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme.

**PREDICATE ACT #26.** Mr. Catanzarite used the wire or caused the wire to be used in Orange County Superior Court, to dismiss Amy Jeanette Cooper and Cliff Higgerson through e-filing transaction 1583344 at 04:35:18 PM on January 23, 2019. Mr. Catanzarite allegedly intended to compromise the fraudulent derivative case against Mobile Farming Systems, Inc. without Court approval through Denise Pinkerton in continuance of the scheme. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

**PREDICATE ACT #27.** Between various communications allegedly intending to defraud between January 22, 2019 and January 25, 2019, Mr. Catanzarite used the wire or caused the wire to be used and obtained through non-judicial conduct "Written Consent Of The Shareholders of Mobile Farming Systems, Inc." which "immediately removed" the board of directors which was signed by "Richard Francis O'Connor II" and dated "January ___, 2019." Other parties to the communications include: "Denise Pinkerton" who signed on "January 23, 2019," "Scott Unfug" who signed "January 23, 2019," "Douglas Scott" who signed "January 24, 2019," "Janell Christiansen" who signed "January 23, 2019," "Amy Jeanette Cooper" who signed "January 25, 2019, "Douglas Hunt," who signed "January ____, 2019," "Rick Mesa" who signed "January 23, 2019," "Ken Miller" who signed "January 23, 2019" and "Jeff Ray Schunk" who signed "January 23, 2019." It is alleged that these acts were extorted within the meaning of Cal. Pen. Cod. 518 PC in that Mr. O'Connor and Ms. Cooper's signatures were needed, they

provided them with their property (which they "agreed to renounce in favor of MFS") who were threatened with securities fraud allegations by Pinkerton and the color of official right to file a fake derivative case against Mobile Farming Systems, Inc. by Mr. Catanzrite. Each overt act to obtain signatures are alleged to have violated 18 U.S.C. § 1343 in that each intended to deceive others for money or property using the wire as part of a scheme. Specifically, Mr. O'Connor, Ms. Cooper, and Mr. Catanzarite knew that CTI had operated for years, and that MFS was not a shareholder at all much less the sole shareholder. But Mr. Catanzarite allegedly knew he could use the Courts to defraud as he pleased because he is among the 700+ Club, just like Thomas V. Girardi. These overt acts for signatures and property allegedly meet the definition of extortion under California Penal Code 518 PC where the conduct was directly caused by Catanzarite's threat of "law enforcement" against O'Connor and Cooper for securities fraud and elder abuse, which meets the definition of racketeering activity under 18 U.S.C. § 1961(1).

**PREDICATE ACT #28**. After removing the board of directors and placing Mr. O'Connor at the helm of the inanimate corporate entity MFS on "January ___, 2019" Mr. O'Connor executed "Unanimous Written Consent as of January 23, 2019" on behalf of "Mobile Farming Systems, Inc." as "Sole Shareholder" of CTI. Mr. O'Connor knew beyond any reasonable doubt that this was not true because Mr. O'Connor authorized the first and many subsequent securities transactions of CTI himself as CEO, then through private sales of stock for which he was paid allegedly more than $2,000,000. Nevertheless, this consent on January 23, 2019, appointed himself as "President and Chief Executive Officer," James Duffy (an actual CTI shareholder) as "Secretary," and Mohammed Zakhireh (an actual CTI shareholder) as "Treasurer and Chief Financial Officer." The Court of Appeal would later conclude these acts to be fraudulent in *Beck v. Catanzarite Law Corp.*, No. G059766, 38 (Cal. Ct. App. Jul. 13, 2022) ("Beck also presented evidence Catanzarite and the O'Conner Faction created a mutually beneficial alliance. In exchange for their dismissal from the Pinkerton Action, these former defendants agreed to help opposing counsel file a different lawsuit against CTI and the Probst Faction (which included Beck). Beck's evidence suggested these CTI shareholders agreed to create and support a false story about MFS's ownership of CTI, revive MFS by reconfiguring its

board of directors, and then use MFS as a litigation tool to sabotage CTI and its board members. In addition to providing testimony that MFS owned CTI, the O'Connor Faction members publicly renounced their CTI stock shares. O'Connor executed the 2019 Consent, without objection from his cohorts, which rendered worthless all their CTI stocks. As pointed out by Beck, all of this anti-CTI activity, following their dismissals from the Pinkerton Action, was highly suspect especially when one considers their actions and business dealings as CTI board members and shareholders from 2015 to 2019. ") It is alleged that these acts were extorted within the meaning of Cal. Pen. Cod. 518 PC in that Mr. O'Connor and Ms. Cooper's signatures were needed, they provided them with their property (which they "agreed to renounce in favor of MFS") who were threatened with securities fraud allegations by Pinkerton and the color of official right to file a fake derivative case against Mobile Farming Systems, Inc. by Mr. Catanzrite. Each overt act to obtain signatures are alleged to have violated 18 U.S.C. § 1343 in that each intended to deceive others for money or property using the wire as part of a fraudulent scheme. The Court of Appeal agreed this conduct was **non-judicial** and it was not protected activity. Specifically, Mr. O'Connor, Mr. Duffy, Dr. Zakhireh, and Mr. Catanzarite knew that CTI had operated for years, and that MFS was not a shareholder at all much less the sole shareholder. But Mr. Catanzarite allegedly knew he could use the Courts to defraud as he pleased because he is among the 700+ Club, just like Thomas V. Girardi.

**PREDICATE ACT #29**. Via "U.S. Mail & Email" on "January 25, 2019," Catanzarite Law Corporation and Kenneth J. Catanzarite did send to the Plaintiff, copying Stephen J. Erigero, Ivan L. Tjoe, Alan J. Hart, and Ken Watnick a letter ""Notice by Mobile Farming Systems, Inc. ("MFS") as sole shareholder of Cultivation Technologies, Inc. ("CTI") of Actions" and "Notice of MFS Shareholders that Board of Directors is Removed." Signed by Mr. Catanzarite, "This is also notice that law enforcement is looking at both MFS and CTI. We are fully cooperating with them and expect that your clients will do the same." It is alleged that 700+ Club uses control of the enterprise and The State Bar of California through district attorneys like Todd Spitzer, or U.S. Attorney's unnamed, to aid in any given scheme of 700+ Club or The State Bar of California. Mr. Catanzarite knew the letter to Plaintiff, which professed "We would like to

immediately take control of the assets and operations of CTI for the benefit of the sole shareholder MFS," was fraudulent but Mr. Catanzarite did not care because he knew he was protected by the enterprise. It is alleged that this letter violated 18 U.S.C. § 1341 in that it was sent by mail intending to defraud as part of a scheme against Plaintiff, and violated 18 U.S.C. § 1343 in that it was also delivered by wire intending to defraud as part of a scheme against Plaintiff.

**PREDICATE ACT #30**. Using the wire at 03:51:51 PM in Orange County Superior Court through e-filing transaction 158488, Mr. Catanzarite filed, or caused to be filed: (2) The MFS Action. *Mobile Farming Systems, Inc. v. Cultivation Technologies, Inc., et al.*, OCSC No. 30-2019-01046904. Catanzarite filed this lawsuit in January 28, 2019, for MFS and "derivatively on behalf of its wholly owned subsidiary [n]ominal [d]efendant [CTI]." MFS asserted it was entitled to file a derivative action because it organized CTI and acquired 28,000,000 shares of CTI common stock, and therefore, CTI was its wholly owned subsidiary. The complaint asserted MFS contributed assets to CTI (a seedling trailer and a shipping container) and paid start-up costs. MFS sought cancellation of CTI's shares as well as any "insider loans and transactions." It alleged CTI owed MFS "$75,007.24 plus accrued interest of $12,444.29" (MFS's start-up loan) and other damages to be proven at trial. (Underline omitted.) The complaint sought attorney fees, punitive damages, and interest. The lawsuit was based on the premise that no CTI shareholders, other than MFS shareholders, had any valid stock or voting rights. This complaint also asserted the Probst Faction violated Corporations Code section 1507 by "preparing, signing and circulating false minutes, issuing securities, transacting business with insiders, [and] borrowing money from insiders and records relating to CTI." MFS requested that the court enjoin the Probst Faction from operating CTI until the court held a section 709 hearing "to determine the rightful ownership of CTI, its appropriate [b]oard of [d]irectors, and executive structure. The court initially granted a temporary restraining order (TRO). According to Probst, the TRO was financially devastating for CTI because "CTI's operations ground to a halt" for several months. Probst declared, "CTI did not have access to its working capital and... key customers became aware of the TRO and refused to continue to place orders and the cash flow began to severely

1    suffer." The court dissolved the TRO in May 2019, after holding a <u>section 709</u> hearing. The court
2    determined MFS was not a CTI shareholder and could not challenge the election of CTI's
3    directors. In August 2019, the same day Catanzarite amended the Pinkerton Action to be a direct
4    rather than derivative action, Catanzarite also transformed the MFS Action into a direct action.
5    The first amended complaint (FAC) omitted CTI as a party and alleged only direct claims against
6    members of the Probst Faction for breach of fiduciary duty, conversion, misappropriation of
7    trade secrets, and unfair competition. *Fincanna Capital Corp. v. Cultivation Tech.*, No.
8    G058700, 4-5 (Cal. Ct. App. Jun. 28, 2021) Moreover, when the factual allegations of the
9    Pinkerton Action and the MFS Action are compared in an objective manner, no reasonable
10   attorney would conclude both had merit. Simply stated, one action was based on the factual
11   premise CTI's board members improperly renounced the Subsidiary Promise, leaving
12   MFS *without any* CTI shares, and the other was based on the factual premise MFS *currently*
13   *owned* 100 percent of CTI's shares, rendering any other CTI stock certificates worthless.

14   The lack of probable cause for maintaining the two lawsuits was further demonstrated by
15   evidence Catanzarite filed multiple lawsuits while **unethically representing clients with**
16   **conflicting interests.** For good reason, it is difficult to apply the "reasonable attorney" test when
17   there is evidence the attorneys initiating the cases violated multiple rules of professional conduct.
18   For example, no reasonable attorney would agree to act as corporate counsel of MFS while at
19   the same time representing shareholders in a derivative lawsuit against that corporation. Yet this
20   is exactly what happened when Catanzarite filed the MFS Action while also litigating the
21   Pinkerton Action. We conclude the concurrent representation of directly adverse parties creates
22   a strong inference the attorneys and litigants knew the claims in one or both lawsuits were
23   untenable." *Beck v. Catanzarite Law Corp.*, No. G059766, 37-38 (Cal. Ct. App. Jul. 13, 2022)
24   *Beck v. Catanzarite Law Corp.*, No. G059766, 37-38 (Cal. Ct. App. Jul. 13, 2022) ("Given the
25   Roots' settlement request for CTI shares, it is reasonable to infer Catanzarite and his clients knew
26   only those shares had value and also understood those shares were available because MFS did
27   not own 100 percent of CTI. Under these circumstances, a reasonable attorney may not have
28   found the Pinkerton Action claims tenable. Moreover, when the factual allegations of the

Pinkerton Action and the MFS Action are compared in an objective manner, no reasonable attorney would conclude both had merit. Simply stated, one action was based on the factual premise CTI's board members improperly renounced the Subsidiary Promise, leaving MFS *without any* CTI shares, and the other was based on the factual premise MFS *currently owned* 100 percent of CTI's shares, rendering any other CTI stock certificates worthless. ") ") It is alleged that this overt act by Catanzarite, O'Keefe, and Woodward each violated 18 U.S.C. § 1343 in that the wire communication above was intended to deceive others for money or property using the wire as part of a scheme. O'Keefe, Woodward, and Catanzarite then use the pendency of the MFS Action to schedule a 709 trial ("709 Trial") in which they sought to unwind all shares of CTI under knowingly false pretenses which was scheduled for April 30, 2019.

**PREDICATE ACT #31.** As planned to capture $261 million in value of shares which would be held in the U.S., CTI announced it would merger with a Canadian issuer Western Troy Capital Resources where shareholders of CTI would receive shares of the Canadian issuer, and hold them in the US, as a "foreign private issuer." Plaintiff alleges the transaction was valued at approximately $261 million, and that the Plaintiff's share was $32.67 million. Using the wire on February 26, 2019, Kenneth Catanzarite used the email address kcatanzarite@catanzarite.com to Rex Loesby at the email address rexloesby@gmail.com with a Subject: "Mobile Farming Systems, Inc. ("MFS") and Cultivation Technologies, Inc." wherein Mr. Catanzarite said: "Mr. Loesby: I just called the number on the news release for Western Troy Capital Resources ("Troy") at 303-771-9610 and note that there was no receptionist and a voice mail message with your name only and no mention of Troy. Attached is litigation asserting that MFS is the sole shareholder of CTI. You have not consulted with Mr. O'Connor who is the CEO of MFS and CTI and as such he has not agreed to your RTO [reverse takeover] such as you describe. If you would like to discuss a transaction then you need to be talking to MFS and Mr. O'Connor. As such we dispute and object to agreement purportedly by and between Western Troy and CTI. Kindly withdraw your notice and engage in meaningful negotiations with Mr. O'Connor. I would be willing to discuss the merits of a transaction with your company but it appears to have no assets or operations of any value. If you disagree then support your value numbers. Moreover,

we so no justification for Western Troy shareholders with a valueless company to be entitled to 8,781,994 shares out of a proposed 67,392,515 or 13% of CTI for purposes of an RTO." Plaintiff alleges Mr. Catanzarite intended to disrupt the merger under false pretenses, because he knew MFS was not a shareholder of CTI, and he knew that Mr. O'Connor was not the CEO of CTI. This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme.

**PREDICATE ACT #32.** Using the wire at 04:00:12 PM in Orange County Superior Court in continuance of a fraudulent scheme through e-filing transaction 2784758, Catanzarite, O'Keefe, and Woodward filed or caused to be filed: (3) The Mesa Action. *Mesa, et al. v. Probst, et al.,* OCSC No. 30-2019-01064267. They filed this shareholder derivative class action on April 16, 2019 they knew to be fraudulent, and Jim Travis Tice would later assume and advocate. The complaint asserted the "nature of [the] action" was on behalf of shareholders owning both MFS and CTI shares seeking to "join MFS in a consolidated action with [the MFS Action] and to among other relief, recognize the ownership and control of CTI as held by" four groups of shareholders. (Capitalization and bold omitted.) These shareholder groups included MFS (holding 28, 000, 000 CTI shares), as well as any MFS shareholders who purchased CTI shares in various offerings. The complaint expressly excluded shares held by Probst Faction members, their attorneys, agents, or affiliates. Richard Mesa initiated the lawsuit in three capacities: (1) individually as a "shareholder of both" MFS and CTI shares; (2) in a representative capacity on behalf of over 100 similarly situated shareholders; and (3) derivatively on behalf of CTI. The Mesa Action asserted nine causes of action against the Probst Faction and CTI as a nominal defendant. Identical to allegations in the MFS Action, the Mesa Action sought to enjoin the Probst Faction from operating CTI until there could be an expedited section 709 hearing. In addition to damages, the class sought punitive damages and attorney fees. One month later, Catanzarite amended the complaint to add Cooper and Tom Mebane as plaintiffs and FinCanna as a defendant. More significantly, the complaint's "nature of the action" changed. The class members no longer sought to join the MFS Action or seek recognition of MFS's controlling shares over CTI. Instead, the Mesa Action plaintiffs sought to declare the current CTI directors'

meetings and actions void. In particular, the class sought to unravel CTI's financial dealings with FinCanna, who had just foreclosed on CTI's properties. The FAC included two new causes of action, as well as allegations the Probst Faction wrongfully liquidated CTI's assets and that FinCanna should not have initiated foreclosure proceedings. The FAC asserted FinCanna "claims ownership of the extraction facility and CTI's employees have effectively become [FinCanna] employees." Furthermore, it maintained CTI shareholders "have suffered a total loss of their share value of not less than $5,000,000 and millions more in business opportunities...." CTI's attorney of record, Winget, filed an answer asserting the plaintiffs lacked standing or were not qualified to maintain a derivative lawsuit on CTI's behalf. In October 2019, the Mesa Action plaintiffs filed a motion requesting the court appoint a receiver for CTI. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 5-6 (Cal. Ct. App. Jun. 28, 2021) It is alleged that Mr. Catanzarite filed the Mesa Action because he knew the 709 Trial would fail factually, because he knew there existed overwhelming evidence that his claims were fraudulent and false since he had extorted corporate actions of MFS to make them appear real. It is alleged that this overt act by Catanzarite, O'Keefe, and Woodward violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme.

**PREDICATE ACT #33.** Using calls, texts, and voicemails seeking to control CTI through other false pretenses than on January 23, 2019 as above, with intent to defraud, Mr. Catanzarite did contact or cause to be contacted Carlos Calixto "on or about May 6, 2019." Mr. Catanzarite sought to bribe Mr. Calixto for his signature under separate factual pretenses than January 23, 2019 and allegedly offered $5,000 for Mr. Calixto's vote. The series of calls, texts, and voicemails cited by Calixto each are alleged to have violated 18 U.S.C. § 1343 in that each intended to deceive others for money or property using the wire as part of a scheme.

**PREDICATE ACT #34.** With intent to defraud, on March 19, 2019, Richard Francis O'Connor II signed an affidavit before Jonathan Patrick, Notary Public, Orange County, Commission #2187299 from Newport Beach, California. Therein, Mr. O'Connor declares "I am familiar with Roger Root and his wife Sharon having met them in Florida related to the MFS stock purchases...As CEO and director of MFS acting on its behalf, MFS is rightfully and

properly the owner as holder of 28,000,000 CTI shares of Common Stock and entitled to all of the rights, benefits and privileges of said shares, including the right to vote said shares and to not suffer dilution of nor interference with such rights." With intent to defraud in furtherance of his scheme, it is alleged this affidavit was extorted by Mr. Catanzarite for purposes of obtaining a temporary restraining order under knowingly false pretenses in Orange County Superior Court. Mr. O'Connor had personally participated in an alleged 158 securities transactions involving CTI shares, and he knew that MFS was not a shareholder of CTI because O'Connor made it so. With intent to defraud, Mr. Catanzarite did file this affidavit from Mr. O'Connor on March 19, 2019, at 02:55:15 PM through e-filing transaction 2774681 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme. It is also alleged that obtaining this signature was under color of official right within the meaning of Cal. Pen. Cod. § 522 PC. Mr. Catanzarite did obtain a TRO under false pretenses by deceiving the Court, because he knew that MFS was not a shareholder of CTI. Indeed, Mr. Catanzarite used the TRO to obtain a list of CTI shareholders under false pretenses and used it to file the Mesa Action on behalf of CTI shareholders on April 16, 2019.

**PREDICATE ACT #35**. With intent to defraud, using the wire at 05:50:16PM in Orange County Superior Court through e-filing transaction 1626667, Mr. Catanzarite filed, or caused to be filed (4) The Cooper Action. *Cooper, et al., v. Cultivation Technologies, Inc.,* OCSC No. 30-2019-01072443. On May 23, 2019, Catanzarite filed an action directly against CTI on behalf of two CTI shareholders (Cooper and Mebane), who were members of the O'Connor Faction. The previous day, FinCanna had filed a breach of contract action against CTI and CTI Subsidiaries and requested a receivership. The Cooper Action requested the court direct CTI to (1) hold a shareholder's meeting to elect a board of directors; (2) deliver an annual report; (3) appoint an accountant to conduct an audit; and (4) order CTI to pay the costs for an investigation, audit, and costs of the suit. Winget, on behalf of CTI filed an opposition, asserting a shareholder meeting was scheduled for August 2019. *Fincanna Capital Corp. v. Cultivation Tech.,* No. G058700, 6-7 (Cal. Ct. App. Jun. 28, 2021) It is alleged that this overt act by Mr. Catanzarite violated 18

U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme.

**PREDICATE ACT #36**. With intent to defraud, using the wire at 12:34:40 PM in Orange County Superior Court through e-filing transaction 4986452, Mr. Catanzarite filed, or caused to be filed: "(5) The FinCanna Action Cross-complaint. *FinCanna v. Cultivation Technologies, Inc., et al.*, OCSC No. 30-2019-01072088. As mentioned, in May 2019, FinCanna filed a breach of contract action against CTI and CTI Subsidiaries. On July 2, 2019, Catanzarite filed a cross-complaint on behalf of CTI and CTI Subsidiaries against FinCanna and three of its directors. Large sections of the cross-complaint appear to have been cut and pasted from the Mesa Action complaint. Catanzarite purported to represent CTI and its subsidiaries [**the company he was also suing**]. In Probst's declaration, prepared to oppose the section 709 request in the Mesa Action, he explained Catanzarite's actions in the FinCanna Action created confusion and harm. He noted Catanzarite filed a cross-complaint and propounded discovery against CTI's "primary secured lender" without telling CTI's board "and during a time when FinCanna has not yet served their complaint on CTI due to ongoing settlement negotiations." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7 (Cal. Ct. App. Jun. 28, 2021) It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. Mr. Catanzarite filed a cross complaint for a non-client, which he knew he was not legally authorized to do, but he knew he could rely upon alleged bribery of Morgenstern and other public employees as he allegedly had for more than a decade.

**PREDICATE ACT #37**. With intent to defraud Plaintiff and the financial institution Scottsdale Insurance Co., using the wire at 04:25:11 PM in Orange County Superior Court through e-filing transaction 41009836, Mr. Catanzarite filed, or caused to be filed: (6) The Scottsdale Action. *Cultivation Technologies, Inc., v. Scottsdale Insurance Company*, OCSC No. 30-2019-01096233. On September 6, 2019, Catanzarite filed this declaratory relief action **purporting to represent CTI**. In this lawsuit, CTI demanded that its insurance company, Scottsdale, stop providing a defense or indemnity to the [Plaintiff] in the Mesa Action. The

complaint asserted Scottsdale "refused to communicate with the officers and directors elected by the common shareholders of CTI and who are of the position that only they and their elected officers and directors speak for CTI." In the complaint, CTI sought the court's declaration of its rights under the insurance policy and orders forbidding Scottsdale from providing a defense "unless and until the vote of the disinterested common shareholders of CTI [was] obtained." We note that immediately before filing the Scottsdale Action, Catanzarite amended the complaints in the first two derivative actions transforming them into direct actions against individuals who were part of the Probst Faction (the Pinkerton and MFS Actions). Additionally, after filing the Scottsdale Action, Catanzarite dismissed the Cooper Action on September 13, 2019. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7-8 (Cal. Ct. App. Jun. 28, 2021) It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. It is alleged that this overt act also violated 18 U.S.C. § 1344 in that Scottsdale Insurance Co. meets the definition of a financial institution, and Mr. Catanzarite did intend to defraud the financial institution.

  **PREDICATE ACT #38**. With intent to defraud, conflicting with the factual declaration of March 19, 2019, by affidavit that MFS owned all shares of CTI, on November 4, 2019, Richard Francis O'Connor II signed an affidavit before Douglas Desjardins, Notary Public, Orange County, Commission #2140086, from Oceanside, California. Therein, Mr. O'Connor declares: "I sold my Cultivation Technologies, Inc. ("CTI") common shares to Mr. Jim Duffy which shares were included in his total proxy count 2,720,900." With intent to defraud, Mr. Catanzarite did file this sham court document affidavit from Mr. O'Connor on November 4, 2019, at 02:49:56 PM through e-filing transaction 3852632 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme, here, seeking to appoint a receiver under false pretenses. It is also alleged that obtaining this signature was under color of official right within the meaning of Cal. Pen. Cod. § 522 PC and 18 U.S.C. § 1961(1).

1    **PREDICATE ACT #39**. With intent to defraud, once more conflicting with the factual

2    declaration of March 19, 2019, by affidavit that MFS owned all shares of CTI, on November 11,

3    2019, Richard Francis O'Connor II signed a declaration from Newport Beach, California.

4    Therein, Mr. O'Connor declares: "As Chief Executive, I issued 5,000,000 Founder Shares when

5    CTI was formed at $.001 per share to each of Probst and Justin Beck for their contributions to

6    the startup effort…The very first time that the shareholders learned of the purported issuance of

7    the Preferred Stock was at that November 29, 2018 shareholders meeting where the shares were

8    objected to as not validly issued." With intent to defraud, Mr. Catanzarite did file this declaration

9    from Mr. O'Connor on November 12, 2019, at 11:20:48 AM through e-filing transaction

10   2858641 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite

11   violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the

12   wire as part of a fraudulent scheme, here, seeking to avoid mandatory disqualification for

13   representation of adverse interests in the same or substantially related matters. It is also alleged

14   that obtaining this signature was under color of official right within the meaning of Cal. Pen.

15   Cod. § 522 PC and 18 U.S.C. § 1961(1).

16   **PREDICATE ACT #40**. Plaintiff has a right to good faith, honest services under 18

17   U.S.C § 1346. On November 15, 2019, Plaintiff delivered details and evidence of the allegedly

18   fraudulent scheme of Kenneth J. Catanzarite and his associates with Catanzarite Law

19   Corporation to The State Bar of California by mail using forms that The State Bar of California

20   provided to the Plaintiff using the wire at www.calbar.ca.gov . Using the mail in which they said

21   the schemes of Catanzarite were "not serious enough" for "State Bar Court," it is alleged that Eli

22   David Morgenstern and Joy Nunley delivered a letter April 3, 2020, intending to defraud Plaintiff

23   from The State Bar of California's facility engaged in interstate commerce located at 845 S.

24   Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any

25   facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful

26   activity. Mr. Morgenstern and The State Bar of California allegedly knew that Mr. Catanzarite

27   was among the 700+ Club, and that Mr. Catanzarite was free to use Orange County Superior

28   Court or any Federal Court to conduct schemes to defraud members of the public, so Mr.

Morgenstern sent Beck the letter from the mail facility to facilitate the unlawful activity. It is alleged Mr. Morgenstern has been bribed by Mr. Catanzarite, and potentially by Mr. Girardi on information and belief. It is alleged that this letter also violated 18 U.S.C. § 1341 in that was delivered by mail as part of a fraudulent scheme of Mr. Catanzarite, and as part of a fraudulent scheme of The State Bar of California to deny members of the public good faith honest services within the meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #41**. With intent to defraud, once more conflicting with the factual declaration of March 19, 2019, by affidavit that MFS owned all shares of CTI, on December 27, 2019, Richard Francis O'Connor II signed a declaration from Big Bear, California. Therein, Mr. O'Connor declares: "I am Chief Executive Officer of Mobile Farming Systems, Inc. ("MFS"). I am also the Chief Financial Officer and Chief Operating Officer of Cultivation Technologies, Inc. ("CTI") having been appointed by the Board of Directors." With intent to defraud, Mr. Catanzarite did file this sham court document declaration from Mr. O'Connor on December 30, 2019, at 10:12:17 PM through e-filing transaction 1703017 in Orange County Superior Court. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a fraudulent scheme, here, seeking to avoid mandatory disqualification for representation of adverse interests in the same or substantially related matters. It is also alleged that obtaining this signature was under color of official right within the meaning of Cal. Pen. Cod. § 522 PC and 18 U.S.C. § 1961(1).

**PREDICATE ACT #42**. With intent to defraud, on August 10, 2020, using the wire at 02:57:28 in e-filing transaction number 3926850 for MFS in Orange County Superior Court, Mr. Catanzarite and Catanzarite Law Corporation filed the "MFS Cross Action" in Orange County Superior Court Case No. 30-2020-01145998 which is a malicious prosecution case in which the Plaintiff has shown a likelihood of prevailing on three counts for the filing of the Pinkerton Action, MFS Action, and Scottsdale Action in G059766. It is alleged that Mr. Catanzarite made contact with Office of General Counsel or Office of Chief Trial Counsel who are shown to coordinate decisions to allegedly defraud the public with malice, and that Mr. Catanzarite either bribed or in the alternative threatened them to continue his fraudulent scheme. The claims of

MFS had already been rejected "with every fiber of [the Court's] being" on May 1, 2019 but it allowed Mr. Catanzarite to start asking for discovery from Beck, and to file false claims against other innocent people, which had previously been used to continue his scheme (see "5,000" discovery requests when Mr. Catanzarite was actually suing MFS, December 21, 2018). The Court of Appeal has concluded the claims directed at the Plaintiff lacked objective probable cause, and that they were part of a "takeover scheme." It is alleged that this MFS Cross Action was a deliberate act of fraud and extortion to provide cover that the issue was somehow a "pending civil matter" and not part of a fraudulent scheme involving Kenneth J. Catanzarite and State Bar Enterprise. It is alleged that this overt act by Mr. Catanzarite violated 18 U.S.C. § 1343 in that it intended to deceive others for money or property using the wire as part of a scheme. It is alleged that this overt act also violated 18 U.S.C. § 1344 in that Scottsdale Insurance Co. meets the definition of a financial institution, and Mr. Catanzarite did intend to defraud the financial institution. It is alleged that this act was also attempted extortion for signatures or property from Plaintiff within the meaning of Cal. Pen. Cod. § 523, where the mere pendency of these ongoing, fraudulent (not only frivolous) lawsuits are intended to take money or property from Plaintiff under color of official right. Here, Mr. Catanzarite sued MFS, then took the company over in January 2019 using the exculpation of parties' defendant to a fake derivative case, then started filing claims for MFS while it was separately prosecuting claims against MFS derivatively.

**PREDICATE ACT #43.** On August 12, 2020, with intent to defraud, Plaintiff received postal mail from The State Bar of California's Office of General Counsel ("Complaint Review Unit") located at the mail facility 180 Howard St. San Francisco, CA 94105 engaged in interstate commerce stating that it had decided to allow the alleged criminal conduct directed by Kenneth J. Catanzarite against Plaintiff, and the letter did recommend the retention of more attorneys directing Plaintiff to use the wire to do so through an attorney referral service. It is alleged this letter violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Office of General Counsel for The State Bar of California allegedly knew that Mr. Catanzarite was among the 700+ Club, and that he was free to use Orange County Superior Court or any Federal Court to conduct

1    schemes to defraud members of the public, so Office of General Counsel sent the Plaintiff the

2    letter from the mail facility to facilitate the unlawful activity. It is alleged that this letter also

3    violated 18 U.S.C. § 1341 in that it used the mail as part of a fraudulent scheme of Mr.

4    Catanzarite, and as part of a fraudulent scheme of The State Bar of California to deny members

5    of the public good faith honest services within the meaning of 18 U.S.C. § 1346.

6        **PREDICATE ACT #44**. On November 10, 2021, after receiving the Plaintiff's

7    Government Claims Act forms and supporting documentation on or around October 18, 2021,

8    and a preservation of evidence letter dated October 14, 2021, using some form of wire

9    communication among Board of Trustees and the Commission on Judicial Appointments

10   controlled by Board of Trustees, Ruben Duran allegedly directed that Associate Justice Maurice

11   Sanchez be recommended and then appointed to the Fourth District, Division Three. Mr. Duran

12   intended that this, which was the first of three overt nominations and then appointments on exact

13   dates of Plaintiff's Government Claims Act litigation, would ensure Board of Trustees or Office

14   of General Counsel could interfere with any appellate proceedings related to the Plaintiff's

15   Government Claims Act litigation occurring in Orange County. Mr. Duran allegedly knew that

16   Plaintiff had a mounting record of fraud and corruption involving Mr. Catanzarite and The State

17   Bar of California, and that Mr. Duran needed to take extra precautions to protect interests of

18   State Bar Enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that

19   they intended to exert or maintain control of the enterprise through a pattern of racketeering

20   activity. These overt acts allegedly violated 18 U.S.C. § 1952(a) which punishes the use of any

21   facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful

22   activity. Witnesses to these overt acts allegedly include: Addam Hoffman, Justin A. Palmer,

23   Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia,

24   Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston,

25   Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey

26   Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins,

27   Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren

28   C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda,

1    Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J.

2    Yraceburn.

3        **PREDICATE ACT #45**. On November 12, 2021, delivered by U.S. mail from Sarah L.

4    Cohen, Claims Officer for The State Bar of California "RE: Claim of Justin Beck," "notice is

5    hereby given that as of this date, the State Bar of California rejected the claim you presented to

6    the State Bar of California on or about October 18, 2021." Ruben Duran, as Chair of the Board

7    of Trustees, had to make decisions related to this in accordance with Government Claims Act,

8    and Hailyn Chen allegedly was involved. When Plaintiff received this letter at his home address,

9    Mr. Duran allegedly knew he could control State Bar Enterprise in Orange County Superior

10   Court, and that the letter was intended to defraud Plaintiff of money and property, and Mr. Duran

11   had no intentions of the Plaintiff receiving fair proceedings so long as the matter was heard

12   within any California Court controlled by Board of Trustees and Office of General Counsel

13   within State Bar Enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in

14   that they intended to exert or maintain control of the enterprise through a pattern of racketeering

15   activity. It is alleged that this letter also violated 18 U.S.C. § 1341 in that it used the mail as part

16   of a fraudulent scheme where The State Bar of California, Ruben Duran, and Suzanne Grandt

17   would misrepresent to Orange County Superior Court that each were immune from all acts, any

18   reason. It is alleged these acts sought to deny Plaintiff good faith honest services within the

19   meaning of 18 U.S.C. § 1346.

20       **PREDICATE ACT #46**. On December 21, 2021, Plaintiff commenced Government

21   Claims Act litigation against The State Bar of California alleging serial fraud, corruption,

22   negligence, and intentional infliction of emotional distress. On information and belief, it was the

23   first case ever filed against The State Bar of California by a member of the public with a vested

24   claim denial and right to sue after Business & Professions Code § 6094(a) became law January

25   1, 2019. Judicial Officer Honorable Richard Lee was assigned. On January 18, 2022, at 1:59:56

26   PM, the Plaintiff filed an ex parte application in Orange County Superior Court in Case No. 30-

27   2021-01237499 which included a series of Court Orders allegedly proving beyond reasonable

28   doubt that Mr. Catanzarite was engaged in serial fraud and that Plaintiff was entitled to relief.

On information and belief, Office of General Counsel or Board of Trustees used the wire with intent to defraud, and direct Orange County Superior Court that Honorable Richard Lee recuse, and that Honorable Judge John C. Gastelum assume the role as Judge so that the Plaintiff's Government Claims Act litigation could be obstructed under the direction of Office of General Counsel and Board of Trustees to protect State Bar Enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. It is alleged these acts sought to deny Plaintiff good faith honest services within the meaning of 18 U.S.C. § 1346. It is alleged these overt acts violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #47.** With intent to defraud on February 14, 2022, a "Declaration of Carissa N. Andresen" was filed in Orange County Superior Court using the wire. Attached was an attempted case that Plaintiff sought to file in California Supreme Court against Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe targeting the alleged fraudulent scheme after mailers from Morgenstern April 3, 2020 and Office of General Counsel August 12, 2020. Before Andresen filed this, Jorge E. Navarette informed the Plaintiff by mail in March 2021 that this "accusation" was "returned unfiled" and yet it was now filed by Andresen to defraud Plaintiff further in Government Claims Act litigation. Andresen knew the case was supported by overwhelming evidence and that it was purportedly "unfiled," but she also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, and that Mr. Catanzarite was among those attorneys protected by The State Bar of California for State Bar Enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Members of the public, including Plaintiff, have a right to honest services from government actors within the meaning of 18 U.S.C. § 1346, and to be free of bribery and corruption. On information and belief, "Supreme Court Accusations" are intended as procedural waste to defraud the public in favor of The State Bar of California enterprise and members of the 700+ Club. No reasonable attorney would file this in

support of allegations that it was Plaintiff acting in bad faith, or that he was not entitled to relief, but Andresen did. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity. Plaintiff later confirmed these "accusations" are allegedly part of fraudulent schemes, because only 14 out of 1,732 "accusations" (.008%) were granted from 2010 – 2022 – and Plaintiff's was not even listed as being filed despite Andresen's claim that it somehow estopped Plaintiff's rights or relieved The State Bar of California of its duty to stop Catanzarite Law Corporation actors, who are allegedly just like Girardi-Keese actors.

**PREDICATE ACT #48.** On May 2, 2022, the Plaintiff's first amended complaint in Orange County Superior Court Case No. 30-2021-01237499 was accepted at 08:00AM. The same day with intent to defraud, allegedly using the wire through coordination between Suzanne Grandt and Ruben Duran, "Justice Joanne Motoike was nominated to the 4th District Court of Appeal, Division 3, by Governor Gavin Newsom…She was rated "exceptionally well qualified" for the position by the Commission on Judicial Nominees Evaluation of the State Bar of California." It is alleged that Board of Trustees deliberately made this recommendation to obstruct the Plaintiff's Government Claims Act litigation, where Honorable Associate Justice Maurice Sanchez was appointed two days prior to Plaintiff's denied claim letter November 12, 2021. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. These overt acts allegedly violated 18 U.S.C. § 1346 where Plaintiff has a right to good faith honest services of government free of corruption and bribery. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel,

Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J. Yraceburn.

**PREDICATE ACT #49**. With intent to defraud and conceal Government Claims Act litigation from auditors in furtherance of the schemes, on May 19, 2022, from Ruben Duran at the email ruben.duran@bbklaw.com (his private law firm) sent at 11:03 AM to George Cardona at the email George.cardona@calbar.ca.gov, Leah Wilson at the email leaht.wilson@calbar.ca.gov, "I would like a briefing on this when you have an opportunity, please. Thanks. Ruben" This email was in response to the Plaintiff's formal request on May 19, 2022 at 9:54 AM delivered to Carissa Andresen at the email carissa.andresen@calbar.ca.gov, Ruben Duran at the email ruben.duran@calbar.ca.gov, Joy Nunley at the email joy.nunley@calbar.ca.gov, Joan Randolph at the email joan.randolph@calbar.ca.gov, Anand Kumar at the email anand.kumar@calbar.ca.gov, Kenneth Catanzarite at the email kcatanzarite@catanzarite.com, Brandon Woodward at the email bwoodward@catanzarite.com, Tim James O'Keefe at the email tokeefe@catanzarite.com, and Nicole Marie Catanzarite-Woodward at the email ncatanzarite@catanzarite.com with the Subject: "Clarity on Requests/Formal Request to Mr. Duran as Board of Trustees of The State Bar of California." Therein, the Plaintiff cites the special relationship doctrine where Plaintiff is knowingly harmed and in special relationship to each actor for The State Bar of California. He cites California Rules of Professional Conduct 5.1 which makes The State Bar of California as law firm "responsible" for each Kenneth J. Catanzarite and his associates. Therein, it is shown that Office of Chief Trial Counsel (George Cardona), Executive Director (Leah Wilson), Board of Trustees (Ruben Duran), and Office of General Counsel (Carissa Andresen) **do coordinate decisions related to public rights and equity, with malice.** Specifically, Mr. Cardona cites the Plaintiff's Government Claims Act litigation as being somehow connected with his duty as Chief Trial Counsel to stop the alleged serial schemes to defraud targeting Plaintiff and targeting other members of the public independently of Plaintiff. Specifically, Mr. Cardona's internal narrative reflects that of Mr. Catanzarite unreasonably and not the Court orders that explicitly detail the

alleged criminal conduct in possession of The State Bar of California – the attorney allegedly engaged in serial fraud. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of State Bar Enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Plaintiff has a right to good faith honest services in government without corruption or bribery, but the foregoing actors deprived him of that right willfully within the meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #50**. With intent to defraud on Tuesday, May 31, 2022 using the wire at 1:38 PM, Carissa Andresen from the email carissa.andresen@calbar.ca.gov delivered to the Plaintiff the following: "Mr. Beck, I left you a voicemail this morning. I would like to discuss with you your discovery requests in this matter. Specifically, I would like your agreement to an extension of time for the State Bar to provide its responses to your first set of RFAs and your first set of Form Interrogatories. I will be going on an extended leave and this matter will be transferred to another attorney in our office. An extension would allow new counsel sufficient time to review the facts of the case and your discovery requests, get appropriate responses from the correct individuals within the State Bar, and confer with you if necessary. Let me know if you agree. Thank you." It is alleged that Ms. Andresen knew Ms. Grandt would assume the role of counsel, and that Ms. Andresen intended to defraud the Plaintiff by email to continue the scheme. Specifically, it is alleged she knew that Ms. Grandt would deny any discovery, and that she would further seek to prevent the Plaintiff from fair hearings or neutral adjudication, even though she knew that Plaintiff had a right to discovery, that he alleged fraud and corruption, and that he had a vested right to sue The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. Plaintiff had a right to good faith honest services without

corruption or bribery, but Andresen helped Grandt deny him of that right with intent to defraud. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #51.** With intent to defraud on June 2, 2022, at 02:09:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, working with Suzanne Grandt, Carissa Andresen of Office of General Counsel filed ROA #79 witnessed by David H. Yamasaki, Clerk of the Court, and Anh Dang, Deputy Clerk and Judge John C. Gastelum. Therein, Ms. Grandt allegedly defrauded Judge John C. Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to sue from The State Bar of California. Grandt knew she was taking over the case after Andresen emailed with intent to defraud Plaintiff, and Office of General Counsel controlled the California judiciary with Board of Trustees, which makes all recommendations of judicial appointments. Grandt intended to defraud Judge John C. Gastelum to provide decisions that were not supported by law, and he was defrauded to provide a decision that was not supported by law October 11, 2022. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. These acts allegedly violated 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, with intent to commit or facilitate unlawful activity. These acts allegedly intended to control Orange County Superior Court enterprise through Judge John C. Gastelum within the meaning of 18

U.S.C. § 1962(b) as part of a pattern of racketeering activity. Plaintiff had a right to good faith honest services from government without corruption or bribery, but Grandt allegedly denied Plaintiff of that right knowingly within the meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #52**. With intent to defraud on June 28, 2022 using the wire at 2:39 PM, Suzanne Grandt from the email Suzanne.grandt@calbar.ca.gov delivered the following to the Plaintiff justinimesd@gmail.com , and copied Joan Randolph at the email joan.randolph@calbar.ca.gov: "Mr. Beck, You had previously agreed to extend the deadlines to all discovery until August 9, 2022. I have attached the email chain reflecting this agreement (with redactions of the portion reflect internal attorney work product.) I am now asking for further extension until after the demurrer hearing as we expect discovery to be unnecessary, or at the very least significantly narrowed, by the ruling on the State Bar's demurrer. To that end, it is premature to file a motion for summary adjudication as the State Bar has not even filed an answer in this matter, and has no obligation to do so until after a decision on the demurrer. Accordingly, we recommend waiting until after a decision on the State Bar's demurrer to engage in discovery and file a summary judgment motion. Best, Suzanne." This overt act is alleged to have violated 18 U.S.C. § 1343 in that it intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. Plaintiff had a right to good faith honest services from government without corruption or bribery, and Grandt allegedly deprived Plaintiff of those rights within the meaning of 18 U.S.C § 1346. This overt act is alleged to have violated 18 U.S.C. § 1962(b) in that it intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity. This act was alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. Specifically, it is alleged Ms. Grandt knew that The State Bar of California controlled Orange County Superior Court and Judge John C. Gastelum, and that she could procure "sustained demurrer without leave to amend" using case law from 2000 applied to lawyers, even though Plaintiff is a member of the public with vested right to sue The State Bar of California using a statute from January 1, 2019, with no case

precedent. It is alleged this wire communication proves that Ms. Andresen's request for extension was not to obtain answers, it was to deliberately defraud the Plaintiff who had a right to good faith honest services.

**PREDICATE ACT #53.** With intent to defraud and provide a façade of "feel good" conduct to conceal systemic corruption, and to distribute proceeds of unlawful activity to State Bar Enterprise, on July 13, 2022, using the wire to disseminate a press release to the general public through Office of Communications (barcomm@calbar.ca.gov) "State Bar Secures More than $105 Million in Legal Aid Assistance" was announced "that this year's $308 billion State Budget will furnish more than $105 million in funding for access to justice efforts through State Bar…This supplements the more than $50.5 million in funds the State Bar plans to distribute for similar assistance from Interest on Lawyers' Trust Accounts (IOLTA) earnings in 2023." "Whenever we speak about funds of this magnitude, it is easy to lose sight of the fact that each dollar spent represents profound change in the lives of the people our legal aid partners assist, said Leah Wilson, State Bar Executive Director." It is alleged that these funds are prioritized as being paid to lawyers horizontally while The State Bar of California enterprise knowingly defrauds members of the public. It is alleged these funds are derived through a pattern of racketeering activity, at least in part, and that The State Bar of California accepts proceeds of this unlawful activity from IOLTAs (knowing some of it was derived from racketeering) and then distributes it to conceal its nature. The same press release states that "$20 million" comes from "federal homeless prevention funds." It is alleged that LawHelpCa.org is used to create artificial demand for legal services, while the public suffers from the ongoing deliberate concealment of racketeering activity by Leah Wilson, Ellin Davtyan, Suzanne Grandt, George Cardona, Ruben Duran, Robert Retana, Eli David Morgenstern.. It is alleged that The State Bar of California uses IOLTA and attorney trust accounts to launder money in favor of The State Bar of California enterprise and 700+ Club. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive the public using the wire as part of a fraudulent scheme. The readers of this press release have a right to good faith, honest services in government without corruption or bribery, and the general public was allegedly deprived of that right within the

meaning of 18 U.S.C. § 1346. These overt acts are alleged to have violated 18 U.S.C. § 371 in that they defrauded the United States of $20 million. These overt acts are alleged to have violated 18 U.S.C. § 1962(a) in that they intended to invest, and will invest, the proceeds of racketeering activity in an interstate enterprise. These acts were alleged to take place from a facility engaged in interstate commerce located at either 845 S. Figueroa Ave, Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. These overt acts are alleged to violate 18 U.S.C. § 1956 in that it involves the promotion, carrying on of specified unlawful activity, and it is intended to conceal or disguise the nature, location, source, ownership, or control of funds derived from illegal activity. These overt acts are alleged to violate 18 U.S.C. § 1957 in that some were derived from fraudulent judgments allegedly procured by Girardi-Keese and Catanzarite Law Corporation actors, and then to violate 18 U.S.C. § 1960 where The State Bar of California and Ruben Duran do not possess a money transmitter license.

**PREDICATE ACT #54.** With intent to defraud on July 20, 2022, "Via U.S. Mail and email to: justintimesd@gmail.com" Ms. Grandt did send a "letter" responding "to [Plaintiff's] May 19 and July 12, 2022, emails to the Chair of the State Bar Board of Trustees. Mr. Duran has referred this matter to the Office of General Counsel for response." Therein, Ms. Grandt describes the reasons that The State Bar of California would not disclose to the public their actual knowledge, much like Mr. Girardi's schemes, that Mr. Catanzarite was engaged in several schemes to defraud members of the public (e.g., Richard Carlson who did not believe he had suffered any damages before 9 putative class actions were filed on his behalf, when he wasn't seeking an attorney). Ms. Grandt concedes to the improper purposes of this decision being that the Plaintiff was suing The State Bar of California (malice). Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have

violated 18 U.S.C. § 1341 and 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire and mail as part of a fraudulent scheme. Plaintif had a right to good faith honest services in government without corruption or bribery, but was denied that right within the meaning of 18 U.S.C. § 1346. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity.  These acts were alleged to take place from a facility engaged in interstate commerce located at either 845 S. Figueroa Ave, Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #55.** August 8, 2022, the Plaintiff attempted to file for summary judgment in Orange County Superior Court Case No. 30-2020-01145998 after the Court of Appeal issued a ruling in G059766 July 13, 2022, concluding that the Plaintiff made a prima facie case for the malicious prosecution of three lawsuits driven by Mr. Catanzarite's allegedly fraudulent scheme against Plaintiff. The same day allegedly using the wire through coordination between Suzanne Grandt and Ruben Duran with intent to defraud as each were concealing material state liability from California State Auditor and MGO (third-party auditor), "Thomas A. Delaney was nominated to the California Court of Appeal, Fourth Appellate District, Division Three, by Governor Gavin Newsom, and was confirmed by unanimous vote of the Commission on Judicial Appointments on October 11, 2022." These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. Plaintiff had a right to good faith, honest services in government without corruption or bribery, but Duran or Grandt allegedly deprived Plaintiff of that right within the meaning of 18 U.S.C. § 1346. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss,

Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C. Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda, Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J. Yraceburn.

**PREDICATE ACT #56**. With intent to defraud on August 18, 2022, at 02:29:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, Suzanne Grandt filed ROA #136 to "continue the hearing on Plaintiff's Summary Judgment Motion" witnessed by David H Yamasaki, Clerk of the Court, by B. Romney, Deputy Clerk and Judge John C. Gastelum, directed at Plaintiff. Despite alleging corruption and fraud, Ms. Grandt continues to assert that Plaintiff cannot state a claim in any manner, even though he had a vested right to sue The State Bar of California and even though The State Bar of California has since publicly conceded to its own corruption on March 10, 2023. Within this wire communication, Ms. Grandt allegedly defrauded Judge John C. Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to sue from The State Bar of California and the cases cited predated January 1, 2019, when Government Claims Act expressly applied to The State Bar of California. Ms. Grandt knew the filing was 5-months late. Ms. Grandt asserted Superior Court of California did not have jurisdiction to hear the Plaintiff's Government Claims Act litigation, even though it was the proper forum according to Government Claims Act. Ms. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments to protect State Bar Enterprise. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive and defraud Plaintiff of money or property using the wire as part of a fraudulent scheme. Plaintiff had a right to good faith, honest

services from Grandt without corruption or bribery, but Grandt denied Plaintiff that right within the meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #57**. With intent to defraud on August 22, 2022, at 02:50:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, Suzanne Grandt, Ruben Duran, and Carissa Andresen through Suzanne Grandt of Office of General Counsel filed ROA #161 witnessed by David H. Yamasaki, Clerk of the Court, and Anh Dang, Deputy Clerk, and Judge John C. Gastelum directed at Plaintiff. Therein, Ms. Grandt allegedly defrauded Judge John C. Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to sue from The State Bar of California. Ms. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California among 700+ Club. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme. Plaintiff had a right to good faith, honest services from Grandt without corruption or bribery, but Grandt denied Plaintiff that right within meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #58**. With intent to defraud on August 22, 2022, at 02:50:00 PM using the wire in Orange County Superior Court Case No. 30-2021-01237499-CU-PN-CJC, Suzanne Grandt, Ruben Duran, and Carissa Andresen through Suzanne Grandt of Office of General Counsel filed ROA #150 witnessed by David H. Yamasaki, Clerk of the Court, and Anh Dang, Deputy Clerk, and Judge John C. Gastelum, directed at Plaintiff. Therein, Ms. Grandt says "Defendant Duran is the Chair of the Board of Trustees...Defendants Grandt and Andresen are Assistant General Counsel who have appeared on behalf of the State Bar Defendants in this action...None of these new Defendants work in the Office of Chief Trial Counsel and therefore none would have been involved in the handling of any attorney discipline complaint." When Ms. Grandt delivered this statement with intent to defraud the Court and Plaintiff, she knew that

1    Ruben Duran, Leah Wilson, Carissa Andresen, and George Cardona had coordinated decisions
2    related to the Plaintiff and Mr. Catanzarite from May 19, 2022, to May 25, 2022. Ms. Grandt
3    specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from
4    obtaining his money judgments. Grandt also knew The State Bar of California was carrying on
5    serial fraud of Kenneth J. Catanzarite in several parallel series of cases, but she knew that Mr.
6    Catanzarite was among those attorneys protected by The State Bar of California through alleged
7    bribery like Girardi. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they
8    intended to deceive and defraud Plaintiff of money or property using the wire as part of a
9    fraudulent scheme. Plaintiff had a right to good faith, honest services from Grandt without
10   corruption or bribery, but Grandt denied Plaintiff that right within meaning of 18 U.S.C. § 1346.

11        **PREDICATE ACT #59**. After identifying Federal antitrust laws for regulators, the
12   Plaintiff filed an antitrust petition in California Supreme Court styled *Justin S. Beck v. Ruben*
13   *Duran (The State Bar of California)* which was assigned a case number S276517. The Plaintiff
14   included four volumes of exhibits, citing *N.C. State Bd. of Dental Examiners v. Fed. Trade*
15   *Comm'n*, 574 U.S. 494, (2015), and served it on Ruben Duran, Suzanne Grandt, the United States
16   Department of Justice, and the Federal Trade Commission. With intent to defraud Plaintiff and
17   to further enterprise interests, Jorge E. Navarette or Chief Justice Cantil-Sakauye delivered the
18   Plaintiff an order striking the antitrust petition as being "premature" dated September 27, 2022.
19   It is alleged that Office of General Counsel was then frivolously assigned to make an antitrust
20   determination for itself in violation of Federal antitrust laws. It is alleged that Office of General
21   Counsel makes decisions for Board of Trustees as set forth on July 20, 2022, it retains public
22   rights and equity so that allegedly corrupt lawyers can continue schemes to defraud as set forth
23   on May 19, 2022 through May 25, 2022 in acting as "Complaint Review Unit," that it acts as the
24   civil defense law firm for The State Bar of California for public/private actor Duran while it
25   concurrently regulates conduct giving rise to liability thus making it an impossible conflict
26   violative of due process against members of the public namely Plaintiff, that it also defends
27   individual private/public actors like Ruben Duran against allegations of fraud and corruption,
28   and that it appears in State Bar Court proceedings and to prosecute or defend Client Security

Fund. Put simply, it is alleged that Office of General Counsel is a racket-within-a-racket that defrauds the public with malice, and that it is frivolous for it to make a federal antitrust determination for itself by any measure. Nevertheless, it is alleged that this is one tool of many through which Office of General Counsel maintains control of State Bar Enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control State Bar Enterprise and Orange County Superior Court enterprise through a pattern of racketeering activity. These acts were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa Ave, Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #60.** With intent to defraud on October 11, 2022, Suzanne Grandt appeared before Honorable Judge John C. Gastelum using the wire through the "Zoom" application in Orange County Superior Court at 2:00 PM. Ms. Grandt requested in that hearing that the Court dismiss all claims filed by the Plaintiff, who had a vested right to sue the government under Government Claims Act. With intent to defraud and deny Plaintiff good faith services in government within the meaning of 18 U.S.C. § 1346. Ms. Grandt told the Court that Plaintiff would "keep adding parties with no relation to the facts" which she knew was not true, because the Plaintiff had alleged illegal coordination between Office of General Counsel, Board of Trustees, and Office of Chief Trial Counsel to defraud the public. Ms. Grandt later inadvertently disclosed this to be true as alleged. It is alleged that Ms. Grandt intended to defraud the Court and Plaintiff with these statements, and that she did defraud the Court through false assertions of law and fact to obtain a "sustained demurrer without leave to amend" using her alleged control over Orange County Superior Court enterprise. In the decision, the Court cites a case from 2000 which applies to attorneys and not Government Claims Act litigation, even though Plaintiff's claims were lying in fraud and corruption under Government Claims Act statutes that did not apply to the defendants Suzanne Grandt, Ruben Duran, The State Bar of California, Eli David Morgenstern, Anand Kumar, Carissa Andresen, and Joy Nunley until January 1, 2019, and Plaintiff is not an attorney. It is alleged that Judge John C. Gastelum catered

to the direction of Ms. Grandt not based upon law or fact, but based on the alleged control of the Orange County Superior Court enterprise for which Honorable John C. Gastelum was placed to obstruct Plaintiff's genuine claims in January 2022. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that Ms. Grandt's use of the wire to appear while making deliberately false statements intended to deceive and defraud Plaintiff of money or property using the wire. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity.

**PREDICATE ACT #61.** With intent to defraud Plaintiff and to continue concealment of material state and personal liability from auditors, on October 11, 2022, it is alleged that Suzanne Grandt used the wire to communicate John C. Gastelum's illegal decision to "sustain demurrer without leave to amend" to Ruben Duran or others working on their behalf on the basis of Suzanne Grandt's materially false representations and control of Orange County Superior Court enterprise. *The same day*, "Justice Thomas A. Delaney was confirmed by unanimous vote of the Commission on Judicial Appointments on October 11, 2022" to the Fourth District, Division Three. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff and defraud him of money or property using the wire as part of a fraudulent scheme. Plaintiff had a right to good faith, honest services in government without corruption or bribery, but Grandt, Duran, or others associated with State Bar Enterprise deprived Plaintiff of that right within the meaning of 18 U.S.C. § 1346. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of Orange County Superior Court enterprise through a pattern of racketeering activity. Witnesses to these overt acts allegedly include: Ruben Duran, Addam Hoffman, Justin A. Palmer, Daniel L. Allender, Ugochi L. Anaebere-Nicholson, Caley R. Anderson, Matthew Barnachia, Andre R. Bollinger, Aundrea J. Brown, Julie S. Choe, Jamie Crook, Frine C. Eger-Gelston, Jeffrey El-Hajj, Noemi Nunez Esparaza, Tara C. Doss, Diana A. Garrido, Winnifred Gin, Stacey Guillory, Hon. Brenda Harbin-Forte (Ret.), Pamela Hemann, Theresa Hurley, Mack A. Jenkins, Jeanine Kraybill, Chhaya Malik, Meghan McMeel, Sandra A. Mori, Agustin D. Orozco, Loren C.

1    Penaloza, T. Peter Pierce, Judith Reif, Francesca Serrano, David J. Sutton, Ryan R. Tacorda,

2    Hon. Randa M. Trapp (Ret.), Corey R. Weber, Jaime E. Wrage, Donal W. Yoo, and Michael J.

3    Yraceburn.

4         **PREDICATE ACT #62**. Between October 13, 2022, and October 17, 2022, Plaintiff

5    filed a writ petition (G061896) in the Fourth District, Division Three. At the time, Plaintiff had

6    yet to discover the overt appointments of Honorable Sanchez, Honorable Motoike, and

7    Honorable Delaney by The State Bar of California and Office of Governor who were appointed

8    on very specific dates to allegedly obstruct his proceedings. (Plaintiff will seek expert testimony

9    on the mathematical probability of these appointments to show they were not a coincidence).

10   The Plaintiff included 9 volumes of exhibits, and then separately judicially noticed more volumes

11   of exhibits, including wire fraud convictions, Orange County District Attorney's Office being

12   subject of a Civil Rights investigation disclosed October 13, 2022, a racketeering conviction of

13   an Orange County Superior Court Clerk for related activity, and the overt appointments of

14   Honorable Sanchez, Honorable Motoike, and Honorable Delaney. The FBI and United States

15   Department of Justice received, and downloaded, probative evidence backing Plaintiff's

16   allegations of public corruption. Parties to the communications include Mack Jenkins, the Public

17   Corruption Unit lead for U.S. Attorney's Office in Los Angeles, and Lindsey Dotson within that

18   office. Other parties include Criminal.Division@usdoj.gov and Antitrust.Division@usdoj.gov .

19   Incredibly, no actor associated with The State Bar of California or State of California

20   downloaded the writ petition or exhibits served by TrueFiling. It is alleged they were directed,

21   and specifically knew, State Bar Enterprise controlled the proceedings, or they would have

22   opposed the petition. Plaintiff sought disposition of the errant decision to "sustain demurrer

23   without leave to amend" his Government Claims Act case in 30-2021-01237499. It is alleged

24   that U.S. Attorneys Mr. Jenkins and Ms. Dotson are subject to the same wrongful use of State

25   Bar Enterprise against them, so they carried on and allowed the corrupt conduct. It is alleged that

26   Ruben Duran, Suzanne Grandt, or Robert Retana had ex parte communications with Honorable

27   Sanchez, Honorable Motoike, or Honorable Delaney and that they were directed to dispose, or

28   caused to be disposed of, the Plaintiff's writ petition which was not supported by fact or law.

Without explanation, on December 28, 2022, the writ petition was rejected. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the enterprise through a pattern of racketeering activity. Plaintiff had a right to good faith, honest services in government without corruption or bribery, but Plaintiff was denied that right by Duran, Grandt, or others working for State Bar Enterprise who directed these freshly minted Court of Appel justices with alleged intent to defraud Plaintiff using the wire within the meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #63**. With intent to defraud on October 13, 2022, "Via U.S. Mail and Email: justintimesd@gmail.com" using Office of General Counsel, Ms. Grandt sent Plaintiff a letter stating "I am not a party to this action" in 30-2020-01145998. Ms. Grandt refused to produce discovery on that basis, even though The State Bar of California only accepts electronic service, and she was served multiple times as she was appearing in 30-2021-01237499. It is alleged Ms. Grandt specifically intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining his money judgments. Grandt also knew The State Bar of California was carrying on serial fraud of Kenneth J. Catanzarite in several parallel series of cases, and that 30-2020-01145998 already had a favorable Court of Appeal ruling in which it was shown that Plaintiff was likely to prevail on three counts of malicious prosecution, but she knew that Mr. Catanzarite was among those attorneys protected by The State Bar of California among 700+ Club. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive Plaintiff of money or property using the wire as part of a fraudulent scheme, and 18 U.S.C. § 1341 using the mail. Plaintiff had a right to good faith, honest services from Grandt without corruption or bribery, but Grandt denied Plaintiff of those services within the meaning of 18 U.S.C. § 1346.

**PREDICATE ACT #64**.   With intent to defraud and conceal felony antitrust violations of The State Bar of California on October 17, 2022, Joan Randolph from the email joan.randolph@calbar.ca.gov as "Legal Secretary" in "Office of General Counsel" from the mail facility 180 Howard Street, San Francisco, CA 94105 delivered to Plaintiff "Antitrust Determination 2022-001" from "Office of General Counsel" which is allegedly drafted by

Robert George Retana. First, the letter reflects a determination made after deliberately obstructing or removing four volumes of probative antitrust evidence from Plaintiff's authorized case, S276517 *Justin S. Beck v. Ruben Duran (The State Bar of California)*. As under binding decisional law of the United States Supreme Court and FTC Guidance, "The Plaintiff alleges "OGC and the BOT Board each lack direct oversight in regulation despite being controlled by a majority of active market participants" and that "State Bar is not operated in a manner consistent with public statements made by the Chairman of the Board of Trustees…This Court must review because the horizontal trade of law, namely lawyer[s] controlling $3.4 trillion gross state product cannot govern themselves as a matter of law." The "determination" cites Parker v. Brown (1943) 317 U.S. 341, 350-51, but ignores the direction of *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015).The "determination" delivered to Plaintiff deliberately ignored federal antitrust laws and called Plaintiff's allegations "gratuitous" after being assigned to make a federal antitrust decision for itself and peers. It is alleged that this letter and determination intended to defraud the Plaintiff, and the United States because Office of General Counsel knows that it operates, and The State Bar of California operates, in ongoing violation of federal antitrust laws every day but that State Bar Enterprise control allows it. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that Mr. Retana's use of the wire while making deliberately false statements of fact and law intended to deceive and defraud Plaintiff and the United States of money or property using the wire as part of a fraudulent scheme. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of the Orange County Superior Court enterprise proceedings through a pattern of racketeering activity, and were alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) by State Bar Enterprise which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #65**. With intent to defraud and continue felony antitrust violations under color of State authority, also on October 17, 2022, Robert Retana from 180 Howard Street, San Francisco, CA 94105 and the email Robert.retana@calbar.ca.gov delivered "VIA EMAIL

TO JORGE.NAVARETTE@JUD.CA.GOV" to Jorge E. Navarette, Supreme Court Clerk and Executive Officer, Supreme Court of California, 350 McAllister Street, San Francisco, CA 94102-4797 "State Bar Antitrust Determination 2022-0001" in which it is stated that "Requestor has 60 days from October 17th to file a Petition for Review pursuant to Rule 9.13 of the California Rules of Court." Mr. Retana signs as "Deputy General Counsel." It is alleged that Mr. Retana sent this letter to Jorge E. Navarette with intent that a new case be filed, unbeknownst to the Plaintiff (and petitioner in S276517), and that Mr. Retana intended to defraud the Plaintiff and the United States to continue felony antitrust violations by State Bar Enterprise. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that Mr. Retana's use of the wire while making deliberately false statements of fact and law intended to deceive and defraud Plaintiff and the United States of money or property using the wire as part of a fraudulent scheme. This overt act is alleged to have violated 18 U.S.C. § 1343 in that Mr. Retana knew the entire determination was false in that it was based upon a manipulated record which removed four volumes of exhibits from the Plaintiff's actual petition to California Supreme Court (S276517). This overt act is alleged to have violated 18 U.S.C. § 1962(b) in that Mr. Retana intended to exert or maintain control of State Bar Enterprise and Orange County Superior Court enterprise through a pattern of racketeering activity, and was alleged to take place from a facility engaged in interstate commerce located at 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity.

**PREDICATE ACT #66.** With intent to defraud and continue felony antitrust violations for personal and State Bar Enterprise benefit, on October 18, 2022, using the wire, Jorge E. Navarette, in California Supreme Court for "Petitioner: Justin S. Beck" filed "Petition for review" using the obstructed case files from Robert George Retana from S276517 and created a new case that the Plaintiff did not authorize, nor did he file (S276539). Plaintiff was not given this "60-days," Navarette stole that opportunity from Plaintiff. Further, it is alleged Mr. Navarette used the wire or caused the wire to be used to remove exhibit volumes from S276517 in TrueFiling, which is the service used by California Supreme Court and Court of Appeal for

service and record/register of actions keeping. These overt acts are alleged to have violated 18 U.S.C. § 1343 in that they intended to deceive as part of a fraudulent scheme. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that Mr. Navarette intended to exert or maintain control of State Bar Enterprise and Orange County Superior Court enterprise through a pattern of racketeering activity, and was alleged to take place from a facility engaged in interstate commerce by State Bar Enterprise located at 350 McAllister Street, San Francisco, CA under 18 U.S.C. § 1952(a) which punishes the use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. It is alleged that Mr. Navarette defrauded not only the Plaintiff, but defrauded California Supreme Court and the United States where State of California, The State Bar of California, and California Supreme Court affect approximately **$3.63 trillion in interstate commerce**.

**PREDICATE ACT #67**. On October 19, 2022, after the Plaintiff identified what is an alleged pattern of racketeering and control over the entire California judicial system by The State Bar of California which precludes any fair forum in Superior Court or any reviewing Court, he filed the instant federal case styled Justin S. Beck v. Catanzarite Law Corporation et al. (3:22-CV-01616-BAS-DDL). Plaintiff alleges the need for U.S. intervention where discrimination is so unjustified against non-lawyers, that it necessitates reverse incorporation of the Fourteenth Amendment into the Fifth Amendment. The State Bar of California, since filing the instant case, has admitted to its own corruption and bribery of its public employees as alleged by Plaintiff. Plaintiff filed for two motions for summary judgment, but Charles Tsai misled the Court which struck Plaintiff's first amended complaint directing him to file a second amended complaint.

**PREDICATE ACT #68**. On December 29, 2022, unnamed persons within California Department of Justice regarding Public records Act Request; DOJ PRA 2022-02717 sent information by email to justintimesd@gmail.com from "Public Records Coordinator" acting for "Rob Bonta Attorney General." It clearly stated, "the Department's response [concerning disclosures, no appearances in Orange County Superior Court], will be due on January 3, 2023."

**PREDICATE ACT #69**. With intent to obstruct justice, defraud Plaintiff for State Bar Enterprise interests, protect Catanzarite Law Corporation and its 700+ Club constituents, after

December 29, 2022, Charles Tsai as Deputy Attorney General from the Executive Branch overtly transitioned to Office of General Counsel for the Judicial Branch to defend 3:22-CV-01616-BAS-DDL. It is alleged that Mr. Tsai did so with specific intent to obstruct justice, and to protect the criminal conduct from discovery. And Mr. Tsai did allegedly obstruct justice in 3:22-CV-01616-BAS-DDL, ex parte communications with Honorable Cynthia A. Bashant in order that a massive record of probative evidence be terminated or ignored—and that it be made to seem as if it were Plaintiff acting in bad faith, or in the alternative, That Mr. Tsai made material misrepresentations to Honorable Cynthia A. Bashant of the merits of the Plaintiff's case. And it worked, where Honorable Cynthia A. Bashant was somehow directed or caused to order terminated two motions for summary judgment while ignoring all probative evidence of alleged crimes involving the enterprise constituents, and it is alleged that Charles Tsai's mission to obstruct justice through the wholly improper influence or ex parte communications with Honorable Cynthia A. Bashant was complete. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of State Bar Enterprise and Orange County Superior Court enterprise through a pattern of racketeering activity, and were alleged to take place from a facility engaged in interstate commerce located at 845 S. Figueroa St., Los Angeles, CA 90017 or 180 Howard Street, San Francisco, CA 94105 under 18 U.S.C. § 1952(a) which punishes the State Bar Enterprise use of any facility in interstate commerce, including the mail, with intent to commit or facilitate unlawful activity. These acts allegedly violated 18 U.S.C. § 1503 in that they were intended to obstruct justice, and they did obstruct justice. It is alleged that Mr. Tsai's conduct was similar to Suzanne Grandt's with Honorable John C. Gastelum through ex parte communications or coercion and deliberate compromise of the fair administration of justice to retaliate against the Plaintiff for filing good faith Government Claims Act litigation which threatened State Bar Enterprise and 700+ Club constituents.

**PREDICATE ACT #70.** On February 2, 2023, under different legal theories where it is alleged Kenneth J. Catanzarite is an enterprise in a related case under 18 U.S.C. § 1962(c), and that 15 U.S.C. § 15 creates a private right of action for pursuing antitrust claims in U.S. District Court against State of California (whereas this case now pleads against The State Bar of

California as non-sovereign regulator)—Plaintiff filed the first amended complaint in the related action in good faith. It is alleged that the California Superior Court system was and is compromised. It is alleged that this matter is of national importance, and that it is not partisan. It is alleged that an urgent need exists for U.S. intervention that is discrete of Plaintiff's desire to obtain his damages, and to achieve fair and neutral adjudication of his claims on their merits without being compromised by an alleged pattern of racketeering activity, including the alleged obstruction of justice by Mr. Tsai and Office of General Counsel for The State Bar of California. Plaintiff filed these cases against State of California as a non-diverse Plaintiff with vested rights to sue, where State of California refuses to appear in Superior Court of California due to alleged control of State Bar Enterprise and Orange County Superior Court enterprise and State Bar Enterprise's corrupt influence on all conduct of State to conceal it.

On February 14, 2023, Honorable Cynthia A. Bashant in 3:22-CV-01616-BAS-DDL terminated a temporary restraining order, two meticulously prepared motions for summary judgment, a request for entry of default, and a request for neutral evaluation conference together as Charles Tsai misled the Court concerning an evidentiary record supporting all allegations described herein. The Plaintiff spent approximately 250 hours preparing these records in good faith, including the opposition to the motion to dismiss and all related immunities now propounded once more as if that were reasonable. Within those documents, the Plaintiff noticed the Court of a motion for summary judgment in Orange County Superior Court Case No. 30-2021-01237499 which was allegedly obstructed by Suzanne Grandt through ex parte communications with Honorable Judge John C. Gastelum. On February 15, 2023, at 11:11AM one day after coercing Honorable Cynthia A. Bashant, the Plaintiff received from Orange County Superior Court a rejection notice of Order 6172307 of: Notice of Motion, Notice of Confirmation of Filing, Separate Statement, Notice of Confirmation of Filing, and Declaration in Support. It is alleged that Charles Tsai, upon achieving his alleged mission with Honorable Cynthia A. Bashant to obstruct justice in violation of 18 U.S.C. § 1503 to defraud Plaintiff and this Court, instructed Orange County Superior Court to reject these previously accepted filings from July 18, 2022, to conceal their existence, too and control Orange County Superior Court enterprise.

Cumulatively, these acts are alleged to have violated 18 U.S.C. § 1962(b) in that they continued the control or maintenance of Orange County Superior Court enterprise and State Bar Enterprise through a pattern of racketeering activity. It is alleged the intent of these acts is to prevent Plaintiff from fair adjudication on the merits, and to conceal criminal conduct of State Bar Enterprise through Charles Tsai. (Now, defendant Robert Retana is defending the instant case despite the material conflicts and California Rules of Professional Conduct 1.7(d)(3), as Kenneth J. Catanzarite represents others the Court of Appeal already disqualified him from representing, and Ruben Duran's private law firm Best Best & Krieger represents Duran's alleged conspirators or persons acting under Duran's indirect or direct control being Jorge E. Navarette, Judge John C. Gastelum, and Orange County Superior Court).

**PREDICATE ACT #71**. On February 15, 2023, Trevor Rabena, Program Analyst, for Department of General Services delivered a letter to the Plaintiff to his address at 3501 Roselle St. Oceanside, CA 92056. Despite the presentation of claims against State of California for failing to properly supervise The State Bar of California under federal antitrust laws leading to compromise of his allegedly due judgments under Government Claims Act, Mr. Rabena says "California State Bar" "is not within the jurisdiction of the Government Claims Program." It is alleged that Mr. Rabena knew this was self-evidence of the antitrust violations of which the Plaintiff complains in good faith, where it appears The State Bar of California enterprise does indeed control State of California through a pattern of racketeering activity in violation of antitrust laws and 18 U.S.C. § 1962(b). It is alleged that Charles Tsai or others within Office of General Counsel ensured this letter was sent to the Plaintiff so that The State Bar of California could continue to obstruct this proceeding, Superior Court proceedings, and proceedings in any reviewing Court of California to ensure that the facts and evidence in possession of the Plaintiff would be suppressed and that the Plaintiff would not be granted a neutral hearing on the merits in any instance. These overt acts are alleged to have violated 18 U.S.C. § 1962(b) in that they intended to exert or maintain control of State Bar Enterprise and Orange County Superior Court enterprise through a pattern of racketeering activity. This allegedly violated 18 U.S.C. § 1341 in that the letter was intended to deprive Plaintiff of good faith, honest government services without

corruption or bribery within the meaning of 18 U.S.C. § 1346. This act allegedly violated 18 U.S.C. § 1503 in that it was intended to obstruct justice, and it did obstruct justice. State of California allegedly abuses its sovereignty, and The State Bar of California is not a sovereign under the Eleventh Amendment according to the United States Supreme Court and FTC.

CRIMINAL CONVICTIONS

18 U.S.C. § 1343

Matthew Charles Elstein. 1 Count ('sham court documents')

Michael Avenatti. 4 Counts (for 'litigation activity')

Stephen Young Kang. 2 Counts (for 'litigation activity')

18 U.S.C. § 1962(d)

Jose Lopez, Jr. 1 Count (Orange County Superior Court clerk)

CIVIL LITIGATION RESULTING IN JUDGMENTS

Anthony B. Scudder (Derivative Defendant of Catanzarite-Turned-Coerced-Client)

Case No. 30-2020-01145998

$13,000 owed by Plaintiff under California "Anti-SLAPP"

*In re: Daymark Realty Advisors, Inc., et al.*

Case No. 18-23750

$15,253.43 as compensatory sanctions against Catanzarite

*Catanzarite v. Todd A. Mikles, et al.*

Case No. 20-61032-CIV-SMITH

$11,639.25 as sanction against Catanzarite

*In re: Daymark Realty Advisors, Inc., et al., Todd A. Mikles, et al. v. Richard Carlson*

Case No. 18-23750-SMG

$11,639.25 sanction confirmed against Catanzarite

$49,020.50 to the Mikles Plaintiffs ordered as sanctions against Catanzarite

$11,639.25 to the Trustee ordered as sanctions against Catanzarite

*Edwards v. Noroski,*

Case 11-510638 (2013)

$13,874.85 + $1,200 as sanctions against Catanzarite for sham court documents

*Alexandros v. Cole*

G043715 (2011)

$10,000 sanction against Catanzarite for sham court documents

*In RE Perrine,*

369 B.R. 571 (2007)

$30,000 or refund of fees against Catanzarite for stealing client's home

**e. Describe how the predicate act forms a pattern of racketeering activity; and**

Perpetrators of the predicate acts are among or associated with State Bar Enterprise before September 14, 2018, in Orange County, California often involving Orange County Superior Court. The enterprise can be the Court system itself. *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985). More than two convictions exist already for wire fraud in violation of 18 U.S.C. § 1343, thereby constituting a pattern of racketeering activity. Some convictions involve "sham court documents" and case fixing by Orange County Superior Court clerks. Catanzarite seeks to paint non-judicial and judicial fraud as "litigation activity" even though similar, related conduct has previously resulted in wire fraud convictions against California attorneys.

More than two predicate non-judicial acts targeted the Plaintiff as of January 23, 2019. More than two predicate judicial "sham court documents" targeted Plaintiff, too.

**f. State whether the alleged predicate acts related to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.**

1) **Common Plan #1.** For the Catanzarite Law Corporation enterprise, it is alleged that the plan consists of bribing public employees of The State Bar of California, Anaheim Police Department, Orange County District Attorney's Office, filing fraudulent cases that lack legal standing or probable cause predicated upon non-judicial fraud and the ongoing protection of The State Bar of California and law enforcement, then calling it "litigation activity" as if it were protected speech. Examples of impunity supporting this allegation are provided In Re Perrine, Alexandros v. Cole, Edwards v. Noroski, Richard Carlson as a lead plaintiff in 9 putative class actions when he did not believe he had suffered damages nor did he seek an attorney when he

was visited *at his home* by Mr. Catanzarite, and then Denise Pinkerton as "attorney-in-fact" for a Roger Root, who was not a shareholder but commenced a campaign of fraudulent cases for which the register of actions is in the thousands targeting the Plaintiff. After the first knowingly fraudulent case is manufactured through sham court documents and filed, discovery is propounded with intent to defraud litigants and their counsel, leading to private information to which Mr. Catanzarite and his associates are allegedly not entitled, thereby causing or enabling more fraudulent litigation under color of official right. Sham declarations are provided under penalty of perjury (often extorted) that *conflict with each other*, as if each case or filing were a vacuum unrelated to its related cases or filings. This plan is supported by deliberate indifference, active concealment, or bribery by or of Office of Chief Trial Counsel, Office of General Counsel, and Board of Trustees for The State Bar of California. It is alleged this plan is consistent with that of the Girardi-Keese law firm. It is alleged that Courts and judges are selected for these schemes according to their willingness to permit conduct without striking it for fraud, or by *ex parte* communications involving actual exchange of consideration. It is alleged Court clerks aid in this process by communicating with State Bar Enterprise and Catanzarite Law Corporation enterprise in Orange County Superior Court. It is alleged this plan is evidenced by public records requests reflecting actual knowledge of State Bar Enterprise, and its refusal to mitigate public harm over more than a decade, and the impunity with which the Catanzarite Law Corporation enterprise conducts itself against innocent members of the public with intent to defraud.

2) **Common Plan #2**. For the Catanzarite Law Corporation enterprise in targeting Plaintiff, it is alleged the plan consists of taking money and property from the Plaintiff through non-judicial fraud supporting judicial fraud, taking the merger valued at $261 million, by any means through ongoing protection of, bribery or coercion of, and collusion with State Bar Enterprise. Not less than six cases were filed on behalf of directly adverse parties for this fraudulent scheme supported by knowingly false and fabricated evidence and alleged bribery of Eli David Morgenstern and later Suzanne Grandt. This is not "litigation activity" if it involves deliberate attorney fraud, as most cases from Catanzarite do. Attorney fraud is not protected in the United States, nor are violations of RICO subject to litigation privilege under California law.

3) **Common Plan #3**. For the State Bar Enterprise and State of California, it is alleged the common plan is to prevent the Plaintiff from fair or neutral forums to conceal the systemic public corruption of State Bar Enterprise and bribery schemes. Plaintiff is alleged to be the first to file Government Claims Act litigation against The State Bar of California and has already shown a series of Court of Appeal decisions supporting allegations of at least three counts of malicious prosecution and not less than four mandatory disqualifications affecting the Catanzarite Law Corporation enterprise; it is alleged that Plaintiff constitutes a direct and ongoing threat to the interests of the criminal conduct of Office of General Counsel, Office of Chief Trial Counsel, Board of Trustees, and the Catanzarite Law Corporation enterprise – as well as the links to each of these and the 700+ Club. To evidence this common plan, it is alleged that the efforts to stop Plaintiff from obtaining judgments in a neutral forum to which he is allegedly entitled are greater than the efforts for the State of California and The State Bar of California to resolve them amicably on their merits as is the duty of the government (the government is not an ordinary party.) Plaintiff will show The State Bar of California – including its Chairman of the Board of Trustees – have engaged in deliberate fraud on Courts and members of the public. This common plan is part of a pattern of racketeering activity where The State Bar of California owes the public good faith, honest services, but instead public employees and elected officials use The State Bar of California to enrich themselves and their peers with impunity. State Bar Enterprise seeks to suppress its own corruption to keep the "gravy train" going for *individuals*.

4) **Common Plan #4**. Prevent decisional law from disrupting racketeering activity and corruption of State Bar Enterprise and State of California. The United States Supreme Court clarified The State Bar of California is not a sovereign actor in 2015, although it allegedly uses this guise to defraud Courts and to conduct racketeering with commingled operations among allegedly corrupt lawyers and law firms, as well as the IOLTA and client trusts through which they are alleged to launder money, and public employees. It is alleged the conduct affects Medicare and Medicaid, and involved pandemic funds, as well as Chinese banks listed herein. Because State Bar Enterprise is responsible for monitoring the conduct of itself including its own alleged money laundering, also for making antitrust determinations for itself as if that were legal

it is alleged that lawyers have thus far been reticent to challenge it, which is why the Courts have never seen a case such as this. It is alleged that The State Bar of California purports to operate as being under the sovereign authority of State of California, however, such conduct would need to be undertaken as if it were that of the State of California itself. If that were the case, State of California is a direct and proximate threat to the United States as it is abusing its sovereignty for unlawful taking from the public, which is unconscionable and illegal. It is alleged this plan is continued through deliberate obstruction of justice to prevent Federal Courts of competent jurisdiction from making decisional law that will stop State Bar Enterprise from these practices. Conduct of Charles Tsai is evidence, who transitioned from California Deputy Attorney General to Office of General Counsel, and continuously casts Plaintiff as being vexatious despite overwhelming evidence of corruption known to Tsai and a preservation of evidence letter.

**81. Describe in detail the alleged "enterprise" for each RICO claim.**

COUNT I.    18 U.S.C. § 1962(c) Enterprise Description

(a) The Catanzarite Law Corporation enterprise allegedly consists of Kenneth J. Catanzarite, Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James O'keefe, Eric V. Anderton, Jim Travis Tice, Becky Phillips, Han Le, unnamed persons within Orange County District Attorney's Office (through bribery or extortion), unnamed persons within Anaheim Police Department (through bribery or extortion), unnamed persons within Anaheim City Attorney's Office (through bribery or extortion), Aegis Asset Management, Inc. (CRD No. 305008), David M. Piller, Aegis Properties, Inc., Parkgate Center LP, 2331 W. Lincoln Ave., Anaheim, CA 92801, Kim Catanzarite, Ellen C. Catanzarite Living Trust, 354 Hazel Dr., Corona Del Mar, 92625, property owners associations in Orange County to control real estate allegedly acquired through a pattern of racketeering activity and unlawful debts, Eli David Morgenstern, Ruben Duran, Suzanne Grandt, other persons within Office of General Counsel, Office of Chief Trial Counsel, and Board of Trustees similarly situated to Ruben Duran, Suzanne Grandt, and Eli David Morgenstern, and one or more banks holding IOLTA and trust accounts used to allegedly transfer proceeds by and between the foregoing persons derived from criminal conduct.

Beyond the foregoing core constituents of the Catanzarite Law Corporation enterprise, it is alleged the foregoing persons engage in bribery and extortion of witnesses or straw litigants and clerks, where the Catanzarite Law Corporation enterprise is associated presently with Mobile Farming Systems, Inc., Amy Jeanette Cooper, James Duffy, Anthony B. Scudder, Richard Francis O'Connor, II, Cliff Higgerson, Denise Pinkerton, Richard Carlson, and Renato Corzo.

(b) Catanzarite Law Corporation uses the Courts and its network of public and private actors and the guise of "litigation activity" or "protected activity" to file knowingly fraudulent documents in State and Federal Courts with intent to defraud litigants, its own clients, and insurance companies. Then Catanzarite Law Corporation allegedly invests illegal proceeds obtained through fraudulent schemes into real estate or trusts to conceal the nature of proceeds.

During the schemes, by assuming the role of counsel for parties like Tony Scudder, Richard O'Connor, Amy Cooper, Cliff Higgerson, James Duffy, Mohammed Zakhireh – each are then forced to capitulate to Catanzarite Law Corporation schemes because they are represented by Catanzarite Law Corporation and thus subject to arbitrary legal fees or any whim where it is alleged Catanzarite controls aspects of law enforcement, is "tolling claims" in a compromised (fraudulent) derivative action and securities fraud and elder abuse charges while people produce false evidence under that threat, and Catanzarite Law Corporation can take houses or other assets using control of Courts aided by State Bar Enterprise. On information and belief, Catanzarite Law Corporation lacks retainer agreements for most "clients" and uses the pendency of legal fees to carry on parallel schemes to defraud. An elderly James Duffy, for instance, is now being used to sue an entity associated with Jeff Schunk in Michigan. The Court of Appeal upheld disqualification of Catanzarite Law Corporation from representing any CTI shareholder, but Catanzarite Law Corporation is representing CTI shareholder Duffy against CTI shareholder Schunk's entity – and CTI shareholders in this Court – with ongoing impunity. In this fashion, Catanzarite Law Corporation controls the narrative for fraudulent claims (which many litigants don't understand; the claims come from Kenneth J. Catanzarite and not the client), and by defending or denying allegations where Catanzarite Law Corporation is often defending its own fraudulent schemes concurrent to actors perpetrating the same schemes, as here.

The alleged Catanzarite Law Corporation enterprise functions with the individual Kenneth Joseph Catanzarite at its core, who is alleged to coordinate all operations including the bribery or extortion of witnesses, public employees and law enforcement, ex parte communications or collusion with Court clerks including within Orange County Superior Court, direct contact with Office of General Counsel and Office of Chief Trial Counsel to conceal and further fraudulent litigation for State Enterprise and Catanzarite Law Corporation enterprise, including through coordination with Eli David Morgenstern and Suzanne Grandt. Becky Phillips, Jennifer Weaver, and Han Le provide office support services. Joan Randolph within Office of General Counsel coordinates collusion by and between State Bar Enterprise and the Catanzarite Law Corporation enterprise. It is alleged that Kenneth Joseph Catanzarite, allegedly in a similar manner to Thomas V. Girardi in Los Angeles Superior Court and Los Angeles, has corrupted Orange County Superior Court, Orange County District Attorney's Office, and the City of Anaheim. It is alleged Mr. Catanzarite's knowledge of the intricacies and actors engaged in public corruption places leverage upon all actors, who are forced to continue conduct of the enterprise. It is alleged Mr. Catanzarite assumes the role of counsel for inanimate corporate entities or defendants under the guise of assistance, or that fraud is "protected" or subject to "privilege," at which time the enterprise can use the pendency of actions and the threat of law enforcement or imposing legal fees as a weapon of extortion to produce false evidence, take property, and destroy non-lawyer lives through a public and private network of conspirators.

It is alleged that Catanzarite Law Corporation is used to create inanimate corporate entities, assume control of entities including all communications as agent, and to use those entities to file fraudulent litigation to extort insurance companies using sham court documents. It is alleged that Aegis Asset Management, Inc. is used to garner private information concerning investors, which is in turn used to file fraudulent litigation involving securities under the guise of and on the purported credibility of Mr. Catanzarite's registered investment advisor status and "good standing" with The State Bar of California.. It is alleged that real estate primarily in Orange County, California is acquired through the racketeering activities, and then Catanzarite Law Corporation is used to create legal structures like property owners associations to conceal

the gains and control the assets. It is alleged that State Bar Enterprise similarly controls all lawyers, including DA's and in select instances U.S. Attorneys, in collusion.

(c) The Count I defendants Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are employees, officers, or directors of the alleged Catanzarite Law Corporation enterprise.

(d) The Count I defendants Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are associated-in-fact with the alleged Catanzarite Law Corporation enterprise. In this case, each have appeared on the face of wire communications detailed in predicate acts as sender.

(e) It is alleged that defendants Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are members of the Catanzarite Law Corporation enterprise, which is part of a larger enterprise which the Plaintiff refers to as the alleged 700+ Club which operates with State Bar Enterprise using public entity The State Bar of California to defraud the public under the guise of sovereignty from California.

(f) It is alleged defendants Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are members of State Bar Enterprise and the 700+ Club enterprise as well as Catanzarite Law Corporation enterprise. It is alleged Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are perpetrators in overt acts of Catanzarite Law Corporation enterprise in that they appear on fraudulent papers and sham court documents, also passive instruments in their materially false statements by mail and wire regarding the Catanzarite Law Corporation enterprise in furtherance of fraudulent schemes. Tim James O'Keefe and Brandon Woodward are alleged, from time to time, to suffer as victims of historical Catanzarite Law Corporation enterprise schemes and the ongoing alleged criminal conduct of Kenneth J. Catanzarite in that some schemes predate Woodward and O'Keefe roles allegedly commencing after 2010. It is alleged historical compromise of The State Bar of California by Catanzarite Law Corporation and Girardi-Keese allegedly affect them in that Woodward and O'Keefe are forced to continue the schemes to defraud of Kenneth J. Catanzarite and Catanzarite Law Corporation. It is alleged the knowledge of Mr. Catanzarite of the 700+ Club and other State Bar Enterprise schemes to defraud the public, insurance companies, and the United States places a threat to all other

members of State Bar Enterprise, thereby allowing and ensuring the continuance of the enterprise conduct through leadership of The State Bar of California currently. If not for this, The State Bar of California would have allegedly disbarred each years ago in accordance with its public duty. This is shown by the selective way The State Bar of California disciplines sole practice minority attorneys with minor violations where Catanzarite Law Corporation actors have allegedly engaged in thousands of violations of California Rules of Professional Conduct.

COUNT II.    18 U.S.C. § 1962(c) Enterprise Description

(a) State Bar Enterprise allegedly consists of: the non-sovereign entity, The State Bar of California, Office of General Counsel, Office of Chief Trial Counsel, Board of Trustees, Commission on Judicial Nominees Evaluation, Client Security Fund, Judicial Council, Superior Courts, Courts of Appeal, Supreme Court, District Attorney's Offices, City Attorney's Offices, California Crime Victim's Bureau, the postal mail facilities located at 180 Howard St., San Francisco, CA 94105 and 845 S. Figueroa St., Los Angeles, CA 90017, State Bar Court, LawHelpCA.org legal aid organizations, American Continental Bank attorney trust accounts, Bank of America attorney trust accounts, Bank of the Orient trust attorney trust accounts, Chase Business attorney trust accounts, Citibank attorney trust accounts, City First Bank attorney trust accounts, CommerceWest Bank attorney trust accounts, CTBC Bank Corp. attorney trust accounts, First Bank attorney trust accounts, LendingClub Bank attorney trust accounts, New Omni Bank attorney trust accounts, Poppy Bank attorney trust accounts, Signature Bank-NY attorney trust accounts, Wells Fargo Bank attorney trust accounts, Ellin Davtyan, Suzanne Grandt, Robert George Retana, Charles Tsai, Todd Spitzer, Hailyn Chen, Jorge E. Navarette, Joan Randolph, Kenneth Joseph Catanzarite, Nicole Marie Catanzarite Woodward, Thomas V. Girardi, David Lira, Walter Lack, Gloria Allred, Joseph Chora, Lisa Bloom, James Towery, Brandon Woodward, Tim James O'Keefe, Eric V. Anderton, Jim Travis Tice, Girardi-Keese, Catanzarite Law Corporation, and others among 700+ Club. The 700+ Club was identified through statistical anomalies by California State Auditor Report 2022-030. 700 attorneys each had at least 4 notices of injury disposed of by The State Bar of California through private letters, and more than 700 attorneys who were disciplined in other jurisdictions did not result in any

form of public protection. It is alleged this statistical anomaly is significant, and that The State Bar of California enterprise operates for 700+ Club to defraud insurers and non-attorneys.

(b) General Description. It is alleged State Bar Enterprise operates primarily for the benefit of 700+ Club, and that it uses its operations to conceal the racketeering activity of each of its members under color "discretion" and the purported State authority vested in the non-sovereign entity The State Bar of California, Board of Trustees, Office of General Counsel, Office of Chief Trial Counsel, public employees, elected officials, and commingled operations by and between the 700+ Club. It is alleged State Bar Court and District Attorney's Offices are used as a collateral attack to any compromise of the enterprise – where charges can be drafted by Office of Chief Trial Counsel or DA where prosecution of any lawyer can commence in State Bar Court to suit schemes to suit political or economic motivations for private benefit without regard for truth or public harm. It is alleged The State Bar of California's design with State Bar Court allows it to wield the power of U.S. Attorney's Offices in California because of this unique structure that exists in no other State.

This unique structure allegedly renders State Bar Enterprise virtually impenetrable because it also controls judicial recommendations, which are primarily appointed by Office of Governor using recommendations of State Bar Enterprise, which is shown to be corrupt. This alleged unity of unlawful interests lacks separation of powers, and it is alleged that corruption = monopoly – accountability.

To simply state the operations, 700+ Club members are enabled to do whatever they want, to whoever they want, using the California judicial system and fraudulent schemes. Insurance companies bear the brunt nationally. Families are torn apart for profit. State law is codified to enable attorney schemes to defraud, where Legislature is also composed of or controlled by State Bar Enterprise. For instance, "Anti-SLAPP" law purporting to preserve the right of free speech is used as a weapon to dissuade litigants from opposing 700+ Club's attorney fraud – where maliciously prosecuted cases lying in non-judicial fraud can actually result in fees to the perpetrators (see Anthony B. Scudder judgment in Orange County Superior Court despite the predicate acts of alleged wire fraud and mail fraud underlying the same judgment). It is

alleged that State Bar Enterprise wields the threat of Anti-SLAPP against pro se litigants to prevent good faith Government Claims Act litigation in Superior Courts against the government.

It is alleged that the "Leadership Bank Program" setup by Leah Wilson is established for money laundering capacity among IOLTA accounts and attorney trust accounts which are also regulated by State Bar Enterprise without active state or federal supervision. It is alleged that Office of General Counsel controls the judiciary through ex parte communications with Judges with Board of Trustees, whose careers rely upon State Bar Enterprise approval and collusion.

The functions of The State Bar of California below are allegedly all compromised by public corruption for private benefit. Where members of the public have a right to honest good faith services within the definition of 18 U.S.C. § 1346 – each of the following are allegedly used to protect attorneys and enrich public and private attorney actors who purport to be sovereign (despite United States Supreme Court's binding decisional law, and Federal Trade Commission's express guidance that The State Bar of California is "not the sovereign.").

1) <u>Attorney Misconduct Complaint</u>. It is alleged that Attorney Misconduct Complaint is a fraudulent scheme run by State Bar Enterprise approximately 44 times per day within the meaning of 18 U.S.C. § 1346.. It is alleged that former staff for The State Bar of California confirm that the intent of these mailers and wire communications are not to help any person – it is to protect the attorneys subject of the complaints. It is alleged this procedure allows State Bar Enterprise to screen for complaints against the 700+ Club to protect them with intent to defraud. It is alleged that more than 1/3rd of all notices of injury from the public submitted through this process are subject of material conflicts of interest that harm the public and protect attorneys engaged in fraud, theft, and racketeering. It is alleged State Bar Enterprise "cherry-picks" small practice, sole practice, and minority attorneys to make an example of so that they can justify their funding and conceal the true operations of State Bar Enterprise. This function is used for alleged taking under purported authority and discretion of State of California.

2) <u>Abatement</u>. It is alleged that "abatement" is used as a tool to conceal 700+ Club schemes to defraud the public with the aid of State Bar Enterprise actors, e.g. Eli David

Morgenstern now and Tom Layton previously. When an attorney is going to cause reputational damage to The State Bar of California, or if there is a protected member in the alleged protection racket among the 700+ Club, those files are placed into "abatement." The 700+ Club members allegedly know how to achieve this: make it appear as if it a fraudulent scheme is still a "pending civil matter," even if the key issues are adjudicated as with the Plaintiff. With abatement, no matter the harm, Eli David Morgenstern and other staff require members of the public to endure serial violations of law until attorneys like Kenneth J. Catanzarite are done with someone (which rarely, if ever, happens). For instance, Kenneth Joseph Catanzarite has shown to be engaged in serial fraud by Court orders unrelated to Plaintiff and targeting Plaintiff. His prosecution is in "abatement" because Eli David Morgenstern is allegedly bribed like Tom Layton was, George Cardona, Suzanne Grandt, and Ruben Duran are being sued – therefore it suits these public servants engaging in material conflicts to allow the schemes to continue. Once more, this function is used for alleged taking under purported authority and discretion of State of California.

3) <u>Complaint Review Unit</u>. This procedure is another function of alleged mail fraud and wire fraud within the meaning of 18 U.S.C, § 1346. The process is run by Office of General Counsel, which is also in charge of making antitrust determinations, deciding what public records to disclose, and notably: civil defense law firm for State Bar Enterprise and its individual actors, public and private. This allegedly creates a vacuum of conflict whereby Complaint Review Unit is used to protect 700+ Club, and Office of General Counsel coordinates decisions with Office of Chief Trial Counsel, Executive Director, and Board of Trustees to protect attorney schemes to defraud, particularly for 700+ Club. Once more, this function is used for alleged taking under purported authority and discretion of State of California.

4) <u>Client Security Fund</u>. This function is allegedly misrepresented to the public within the meaning of 18 U.S.C. § 1346. Notably, in most or all instances, reimbursement from this fund requires the attorney to have been disciplined, which only occurred in approximately 5% of cases from 2010-2021 according to the California State Auditor but allegedly only results in suspension or disbarment in less than 1% of cases which is allegedly the threshold to allow an application to process. This means the actual liabilities of Client Security Fund are approximately

10X to 100X or greater than represented by State Bar Enterprise. Further, it is alleged that Client Security Fund applications are another mechanism by which State Bar Enterprise can protect 700+ Club schemes by screening the applications. Client Security Fund, much like every other function, is controlled by Board of Trustees led by public/private actor Ruben Duran. The fund is also limited in that it allegedly caps reimbursement at $100,000 and requires that the attorney have been actually engaged to provide services. If, as with Mr. Catanzarite, the attorney assumes representation of an inanimate corporate entity *without authority*, there is no such paperwork. If the attorney is engaged in fraud or money laundering using IOLTAs or trust accounts as with the alleged 700+ Club, such paperwork will not be consistent with the activity occurring. It is alleged that Office of General Counsel also litigates for Client Security Fund, expanding on the incurable conflicts that allegedly defraud the public every day favoring corrupt lawyers.  Once more, this function is used for alleged taking under purported authority and discretion of State of California.

5) Commission on Judicial Nominees Evaluation. This function is allegedly used to suit the corrupt motives of passion or interest of State Bar Enterprise actors through Board of Trustees or Office of General Counsel direction. For instance, it is alleged that three Court of Appeal justices were recommended on exact dates related to the Plaintiff's Government Claims Act litigation in Orange County Superior Court: November 10, 2021; May 2, 2022; August 8, 2022; October 11, 2022 in order to ensure obstruction of the cases lacking disclosure to State Auditor or third-party auditor, MGO. It is alleged this commission operates at the "pleasure" of Board of Trustees, much like all functions of The State Bar of California under public/private actor Ruben Duran, Chairman, and Partner for Best Best & Krieger.

6) Office of General Counsel. It is alleged that Office of General Counsel plays a central role in most attorney schemes to defraud and obstruction of justice for State Bar Enterprise. It is alleged Office of General Counsel coordinates with Board of Trustees and judicial officers to obstruct any compromise to State Bar Enterprise – allegedly with Orange County Superior Court and Honorable John C. Gastelum, then allegedly with Court of Appeal Justices Honorable Sanchez, Motoike, and Delaney, and now more recently allegedly with Honorable Cynthia A. Bashant through Charles Tsai. Office of General Counsel also provides frivolous legal opinions

to enable illegal conduct. By way of example, Office of General Counsel coordinated a fraudulent antitrust petition with Jorge E. Navarette leading to an "En Banc" decision as outlined herein. Plaintiff did not authorize the petition, and the "Antitrust Determination 2022-001" disregarded federal law, asserted operational conduct to be legislative which is absurd, and it deliberately ignored or removed four volumes of evidentiary exhibits to defraud Plaintiff, the United States, and California Supreme Court. Office of General Counsel is alleged to contain among the worst actors of State Bar Enterprise, selected for their willingness to defraud Courts. In support of this allegation, Plaintiff offers Suzanne Grandt's promotion for defrauding Federal Judge William Alsup with Robert Retana as shown July 20, 2017 by Court order.

       7) LawHelpCA.org and Legal Aid Association of California. It is alleged that this function is used to create artificial demand for legal services that can be funded by State and justify more funding to lawyers distributed by The State Bar of California to ensure it "lacks resources." It is alleged this function was accelerated when The State Bar of California was forced to shift its operations from that of a labor-union/regulator hybrid in 2019 after federal antitrust laws in 2015: *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015). Using this function and the attorneys controlled by State Bar Enterprise and the non-profits operated thereunder, it is alleged that State Bar Enterprise prioritizes payment to lawyers, horizontally, over reimbursements to Client Security Fund by a multiple of 10X or greater. It is alleged State Bar Enterprise prioritizes funding to legal aid providers over the enforcement of known schemes to defraud, such as those outlined in the instant case, those of Girardi-Keese related to David R. Lira and Keith Griffin now, and uses the "cover" of "Diversity, Equity, and Inclusion" programs or public good to cover up the schemes and allow racketeering activity of State Bar Enterprise while The State Bar of California "lacks resources." A portion of funding sent to LawHelpCA.org organizations factually come from racketeering activity, because all interest pooled in IOLTAs is distributed to them, and some IOLTAs are shown to have convictions for money laundering, wire fraud, and tax evasion. It is alleged this function is used for money laundering, and that some proceeds from State of California and the Federal government used to fund it are sent to State Bar Enterprise actors who also regulate oversight.

8) <u>Certified Lawyer Referral Services Directory</u>. It is alleged that the Attorney Misconduct Complaint and Complaint Review Unit's other purpose is to deliver leads to the Certified Lawyer Services Directory. On each postal mail letter delivered to the public from its commerce facilities to members of the public are given arguments on behalf of the attorneys allegedly engaged in fraud or crimes, and then they are referred to engage yet another lawyer to help them through this lead generation tool. It is alleged that this is another source of revenue to State Bar Enterprise, and that it is used to create artificial demand for legal services to justify more funding to The State Bar of California from the State budget to distribute horizontally to Legal Aid Association of California.

9) <u>IOLTA and Client Trust Accounts</u>. It is alleged that IOLTA and Client Trust Accounts are the primary means by which 700+ Club and public/private actors launder money and conceal their activity. It is alleged that IOLTA and Client Trust Accounts are solely regulated by State Bar Enterprise constituents who are engaged in alleged racketeering activity. It is alleged that the funds transfers are concealed as being "privileged" information. It is alleged that Leah Wilson or other functions of "ombuds" and purported confidentiality are further used to conceal money laundering among State Bar Enterprise. It is alleged that California Crime Victims Bureau and ombuds within District Attorney's Offices throughout State of California are also used to screen for and conceal attorney schemes to defraud the public, and ensure they are further concealed through an endless vacuum of referral and "lack of jurisdiction." For instance, it is alleged that Anaheim does not accept fraud allegations through their online portal – such allegations and evidence must be hand delivered in person. It is alleged that the "Leadership Bank Program" constituents in China and Taiwan are used for international money laundering through these accounts and that there exist approximately $5 billion in balances among IOLTAs at any given time. It is alleged Howard Miller of Girardi-Keese helped shape legislation concerning client trust accounts, and that Girardi-Keese actors have since been indicted on wire fraud charges. It is alleged Ruben Duran was instrumental in creating the "Client Trust Account Protection Program," which relies upon self-governance of attorneys allegedly engaged in money laundering for State Bar Enterprise.

10) <u>State Bar Court</u>. It is alleged that State Bar Court's design allows The State Bar of California, through its concurrent control of District Attorney's Offices using similar mechanisms, to conceal its schemes to defraud and stop any attorney who seeks to compromise State Bar Enterprise. It is alleged this means that pro se litigants are thus the only means by which State Bar Enterprise can be stopped without federal intervention (with limited exception), which is why State Bar Enterprise has thus far evaded such intervention and enforcement. It is alleged State Bar Court is subservient to members of the political branches since the allegedly unconstitutional decision "In re Rose" which is allegedly designed to mislead Courts and conceal State Bar Enterprise conduct as being the discretion of the State of California under color of law.

(c) Suzanne Grandt, Ruben Duran, Robert Retana, Eli David Morgenstern, Ellin Davtyan, George Cardona are each an employee, officer, or director of State Bar Enterprise component The State Bar of California (which is difficult to distinguish from State Bar Enterprise in that it is allegedly corrupted entirely for private benefit). Duran is also Chairman of the Board of Trustees, and as the managing partner of Best Best & Krieger private law firm in Ontario, California, also the city attorney for the cities of Ontario and Fontana, general counsel to the Oxnard Harbor District, Crescent City Harbor District, and board counsel to SCAG (Southern California Association of Governments). On information and belief, State Bar Enterprise may include direct or indirect elements of human trafficking through harbor districts. It is alleged that Duran is among the most powerful people in the United States in that there exists no objective scrutiny over his conduct, and he propounds immunities in Courts that are not afforded to the President of the United States as if Duran were completely above the law (as here, filing motion to dismiss as if he were not subject to RICO, civil rights, or antitrust scrutiny). It is alleged that Mr. Duran controls $3.63 trillion in interstate commerce, and that he was selected by Assembly Speaker Anthony Rendon in 2018 due to Duran's willingness to defraud the public and conceal State Bar Enterprise operations. Jorge E. Navarette, The State Bar of California and State of California are not employees, officers, or directors of State Bar Enterprise.

It is alleged that non-sovereign entity, The State Bar of California, is a front for criminal conduct of State Bar Enterprise commingled with the government functions of State of

California, where Charles Tsai's conduct is evidence, and State of California refuses to appear in Superior Court proceedings forcing Plaintiff to sue here. It is alleged that The State Bar of California, as a non-sovereign entity controlled by majority of active market participants in the same industry it regulates amidst $3.63 trillion in interstate commerce, lacks state action immunity invocation under federal antitrust laws according to United States Supreme Court and Federal Trade Commission (the conduct at issue in this case is not "legislative", nor is illegal conduct enabled by California lawful per U.S. Supreme Court). It is alleged that this feature renders State of California liable on principles of *respondeat superior*, and under Cal. Gov. Cod. § 815.6 as being mandatory duty. It is alleged that State of California nor The State Bar of California will provide express permission to sue in Federal Court (preferring forums under State Bar Enterprise control), although such permission is implied in that State of California and The State Bar of California are using sovereignty of United States to steal from United States citizens under color of law, and State Bar Enterprise schemes defraud federal programs and the United States insurance industry. It is alleged this distinction of sovereign character is easy to identify – is Thomas V. Girardi's or Kenneth J. Catanzarite's conduct an act of the State? Is Duran as Chairman in retaliating against Plaintiff for suing the government an act of the State? Is Duran, as Best Best & Krieger partner and city attorney for harbor districts, an act of the State? No. Are those individuals allegedly harmed by State Bar Enterprise conduct, purportedly undertaken with State authority, remunerated by the State? Not yet, but they should be where the purported sovereignty and discretion of State Bar Enterprise using the Superior Courts, which sovereignty is derived from United States, was used to allegedly steal from the non-lawyer public for forty years by Girardi and continues for defendants here. It is alleged that these practices are self-evident as it relates to the Catanzarite Law Corporation enterprise, which it casts as somehow being protected or litigation activity, much like Girardi-Keese did for forty years.

(d) Each of the Count II defendants are associated with State Bar Enterprise.

(e) It is alleged Duran, Grandt, Cardona, Morgenstern, Retana, Davtyan, Cardona, and Navarette are members of the enterprise. It is alleged that State Bar Enterprise and State of California are members of the enterprise itself, in that the lines among it are for obscured by

State Bar Enterprise control over the judicial system, the 700+ Club, and the collateral attack present at all times through District Attorney's, U.S. Attorney's, and State Bar Court to enterprise threats. The State Bar of California as a non-sovereign public entity subject to Government Claims Act, lacking state action immunity, is allegedly liable, and causing liability to State of California which has allegedly abused its sovereignty vested by the United States rendering the Eleventh Amendment moot (specifically, for non-diverse Plaintiff). Legislature for State of California, for instance, was to audit Board of Trustees' active concealment and alleged obstruction of Government Claims Act litigation, which audit commenced through Assemblymember Laurie Davies. It is alleged this audit was deliberately obstructed by State Bar Enterprise, showing no active supervision exists.

(f) For defendant Ruben Duran as Chairman of Board of Trustees, Ellin Davtyan as General Counsel, and George Cardona as Chief Trial Counsel, each are an alleged perpetrator for State Bar Enterprise as a principal in all alleged racketeering activity. For Robert Retana and Suzanne Grandt, each show predicate acts in obstruction of justice (July 20, 2017), and each have allegedly acted to defraud Courts and Plaintiff in furtherance of the schemes (Grandt in Orange County Superior Court, Retana in California Supreme Court). Davtyan has directly participated in alleged intimidation of Plaintiff after Grandt disclosed evidence of internal corruption and collusion. Navarette is an alleged perpetrator conducting normal operations, and then alleged criminal operations for 700+ Club and Office of General Counsel which operates at direction of Duran and Board of Trustees. Morgenstern is an alleged perpetrator in that he is accepting bribes from Kenneth J. Catanzarite in a manner similar to Layton from Girardi (which The State Bar of California admitted on March 10, 2023). Mr. Duran is alleged perpetrator as Chairman of the Board of Trustees, which controls Office of General Counsel, Executive Director, and Office of General Counsel as well as the Commission on Judicial Nominee Evaluation. Grandt, Duran, Retana, Morgenstern, Davtyan, Retana, Cardona, and Navarette are each an alleged passive participant in all conduct of the 700+ Club in that The State Bar of California accepts funding from IOLTAs and from State of California, some of which is derived from a pattern of racketeering activity which each know and accept proceeds from. Grandt,

Duran, Retana, Morgenstern, Davtyan, Retana, Cardona, and Navarette are each also an alleged victim of the historical conduct of the 700+ Club in that each are forced to conceal the true operations the State Bar Enterprise as it has allegedly corrupted The State Bar of California beyond repair and certain aspects of State of California. It is alleged that corruption of The State Bar of California as a non-sovereign public entity now causes corrupt control of State of California government itself. The State Bar of California is a perpetrator through Board of Trustees, Office of General Counsel, Office of Chief Trial Counsel, and 700+ Club commingled with government functions of State of California. State of California is a perpetrator through attorneys within government positions like Charles Tsai who transitioned from Deputy Attorney General in Executive Branch to Office of General Counsel in Judicial Branch to allegedly obstruct this proceeding, and through the various State agencies, and through the Court system itself. State of California is a passive participant in that it refuses to place active supervision over The State Bar of California as defined by federal antitrust laws and FTC guidance after 2015. State of California is a passive participant in that it benefits from the alleged fraud against the United States government through the conduct of State Bar Enterprise against national insurance carriers, student loan programs, Medicare, and through the appearance by State Bar Enterprise constituents pro hac vice in 49 other States.

COUNT III.   18 U.S.C. § 1962(a) Enterprise Description

(a) Legal Aid Association of California ("LAAC") is a 501(c)(3) nonprofit organization consisting of "the statewide membership organization of legal services nonprofits." LAAC allegedly consists of 1) legitimate legal aid entities and active market participants associated in fact with The State Bar of California and 2) illegitimate legal aid entities and active market participants associated in fact with The State Bar of California accepting payments and laundering money for State Bar Enterprise and 700+ Club under the guise of public good.

(b) LAAC is allegedly used to create false demand for legal services through lead generation by The State Bar of California's other illegal conduct using the mail and wire. Where the public has a right to honest services in government (18 U.S.C. § 1346), State Bar allegedly uses its operations for lawyer leads and schemes. For instance, 700+ Club is allegedly causing

problems that LAAC purports to solve. Rather than address the problems, State Bar Enterprise pays lawyers horizontally to address them using State or federal funds as it "lacks resources" to address alleged racketeering. LAAC "does three things: 1. Advocates for more money for legal services in the state budget [which are consistently prioritized above all by State Bar Enterprise], better laws for legal services organizations and their clients, and more effective policies and procedures through both the State Bar and the Judicial Council. 2. Trains legal aid providers in person and online. 3. Creates community for our member organizations, helping colleagues from around the state to share best practices, resources, and litigation strategies. Finally, LAAC offers benefits to our members to help them operate more efficiently so they are able to better serve their clients. In addition, LAAC often collaborates with the Judicial Council and The State Bar of California, Office of Legal Services to serve the California legal services community." This is done even though The State Bar of California is expressly forbidden by law to advance the interests of licensees after January 1, 2019 through passage of AB 3249, Ch. 659 which codified federal antitrust laws. It is alleged this organization is used to pay horizontally so The State Bar of California can claim it "lacks resources" to stop racketeering of 700+ Club. This allows The State Bar of California to provide a façade of "public good" while it is alleged to deliberately defraud the public through State Bar Enterprise operations, as shown in this case.

(c) Ruben Duran, Chairman of The State Bar of California, Partner for Best Best & Krieger, and City Attorney for harbor districts, allegedly acted as principal in investment activity in that he knows attorneys are engaged in racketeering activity through IOLTAs, but accepts the proceeds from that activity as Chairman of The State Bar of California and re-invests it horizontally to private lawyers in order to conceal the nature and origin of funds – and to ensure The State Bar of California "lacks resources" to stop alleged racketeering of State Bar Enterprise.

(d) Ruben Duran, Chairman of The State Bar of California, is associated with LAAC in that he is principal in the investment schemes in representations to Legislature and California State Auditor about State Bar Enterprise operations, and because he is approving the horizontal distribution of funds as Chairman (usually working with Leah Wilson). Ruben Duran, as

Chairman of the Board of Trustees, also presides over every licensee of The State Bar of California as a control person.

(e) Ruben Duran is separate from the LAAC enterprise, but a control person for every licensee operating thereunder in that he possesses regulatory power over each through Board of Trustees. The State Bar of California is separate but also combined with LAAC because the attorneys of LAAC pay The State Bar of California and LAAC relies upon The State Bar of California for its funding and advancement.

(f) Ruben Duran is a perpetrator, passive instrument, and victim of the alleged racketeering activity as detailed above. The State Bar of California is a perpetrator, passive instrument, and victim of the alleged racketeering activity as detailed above.

COUNT IV.   18 U.S.C. § 1962(b).

(a) The Orange County Superior Court. enterprise allegedly consists of Orange County Superior Court, clerks operating therein acting at direction of Count IV defendants, Ruben Duran, Eli David Morgenstern, George Cardona, Suzanne Grandt, Robert Retana, Jorge Navarette, Ellin Davtyan, Judge John C. Gastelum in Department C11, Catanzarite Law Corporation, Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Jim Travis Tice, Nicole Marie Catanzarite Woodward, and Tim James O'Keefe.

(b) The Orange County Superior Court enterprise operates with its stated public purposes as part of the Superior Court system of California – except in those instances where 700+ Club members, Catanzarite Law Corporation enterprise, and State Bar Enterprise who have allegedly compromised the court system operate. In those instances, certain staff of Orange County Superior Court work for one or more enterprise and receive cash, IOLTA, or CTA compensation sub rosa (which is regulated by State Bar Enterprise without any federal or state supervision). As evidence, there exist RICO convictions for "fixing cases" by Orange County Superior Court clerks. Plaintiff will show similar "fixing" for Catanzarite Law Corporation enterprise unrelated to Plaintiff. As another example, Honorable Richard Lee recused himself on or around January 18, 2022, after Plaintiff filed court orders showing serial fraud by Kenneth J. Catanzarite and Plaintiff's probability of succeeding on the merits by TRO in OCSC Case No. 30-2021-

01237499 at the alleged direction of State Bar Enterprise persons. On information and belief, this recusal was directed by Office of General Counsel to place Judge John C. Gastelum, who was willing to act at the *ex parte* direction of Office of General Counsel to defraud Plaintiff who has genuine claims against the Government. Gastelum was placed to ignore Government Claims Act which became binding as of at least January 1, 2019, through Cal. Bus. & Prof. Cod. § 6094(a) against all public employees and elected officials associated with The State Bar of California, and for Gastelum to continue the false narrative that somehow The State Bar of California and its entire staff, in any capacity, were immune from all civil or criminal allegations for any reason based on stale decisions applied to lawyers from the year 2000. Other staff of Orange County Superior Court enterprise historically, have allegedly "fixed cases" with the Catanzarite Law Corporation enterprise in a manner similar to Girardi-Keese actors, in each case working with members of State Bar Enterprise and sometimes judicial officers that were bribed. In some instances, judges are sought who will allow fraud without acting on their own volition. Fraudulent cases are filed reliant upon sham court documents and ex parte communications or clerk bribery and "case fixing" ensure removal of probative evidence from the record (as with Plaintiff's papers accepted July 18, 2022 for summary judgment allegedly removed February 15, 2023 from Judge John C. Gastelum's ROA #101-#111 in Orange County Superior Court in Plaintiff's case, at the direction of Charles Tsai or Suzanne Grandt after Tsai deliberately misled Honorable Cynthia A. Bashant in this Court to terminate motions for summary judgment at Docket #15, Docket #26). In all instances, the purpose of the Orange County Superior Court enterprise's illegal conduct is to defraud litigants, insurance companies, and judicial officers to enrich allegedly corrupt public and private lawyers associated with State Bar Enterprise, 700+ Club, and Catanzarite Law Corporation enterprise under guise of "litigation activity" or "protected activity" even though conduct allegedly relies on public corruption and serial non-judicial and judicial fraud.

(c) None of the Count IV Defendants are officers, directors, or employees of the Orange County Superior Court enterprise, however, Jorge E. Navarette is an officer and employee of associated California Supreme Court as Chief Executive Officer and Clerk.

(d) Each of the Count IV Defendants are associated with the Orange County Superior Court Enterprise.

(e) Orange County Superior Court enterprise is an enterprise defendant against whom Plaintiff has vested rights and permission to sue as of December 22, 2022. The other Count IV defendants Duran, Morgenstern, Cardona, Grandt, Retana, Navarette, Davtyan, and Gastelum are members of the Orange County Superior Court enterprise with continuing conduct in Case No. 30-2021-01237499, Case No. 30-2020-01145998, and deliberate compromise of an antitrust petition to exhaust state remedies under federal antitrust laws S276517 replaced with a fraudulent case S276939 October 18, 2022 in California Supreme Court related to and citing the Orange County Superior Court enterprise cases and anticompetitive conduct related thereto. The State Bar of California and State of California against whom Plaintiff has vested rights and permission to sue are alleged to have respondeat superior liability as provided by statutes Cal. Gov. Cod. §§§ 815.2 (public employee conduct), 815.3 (intentional torts or crimes of elected officials), or 815.6 (mandatory duty to public entities) for violations of 18 U.S.C. § 1962(b), here.

(f) It is alleged that Duran, Morgenstern, Grandt, Retana, Navarette, and Gastelum are each perpetrators, passive instruments, and victims of the alleged racketeering activity. Each have taken direct or intentional acts in or related to Orange County Superior Court enterprise with alleged intent to defraud Plaintiff. Each are passive instruments in the ongoing State Bar Enterprise conduct and Catanzarite Law Corporation conduct through Orange County Superior Court enterprise. Each are victims of historical corruption of State Bar Enterprise by persons similarly situated, and by Catanzarite Law Corporation enterprise through Orange County Superior Court enterprise for more than a decade. It is alleged Cardona is a passive instrument of the alleged racketeering activity for his operational decisions in May 2022 that were made with malice. Orange County Superior Court enterprise is a passive instrument for the allegedly corrupt conduct of Catanzarite Law Corporation enterprise, State Bar Enterprise, and Gastelum.

COUNT V.    18 U.S.C. § 1962(d) RICO Conspiracy.

(a) Catanzarite Law Corporation enterprise, State Bar Enterprise, Orange County Superior Court enterprise, and 700+ Club enterprise are each detailed above.

(b) Catanzarite Law Corporation enterprise, State Bar Enterprise, Orange County Superior Court enterprise, and 700+ Club enterprise are each detailed above.

(c) Nicole Marie Catanzarite Woodward, Ruben Duran, Suzanne Grandt, Leah Wilson, John C. Gastelum, and George Cardona are each officers, directors, or employees of one or more enterprise as specified above. Anthony B. Scudder, Richard Francis O'Connor, II, Cliff Higgerson, Amy Jeanette Cooper, Mohammed Zakhireh, James Duffy and Jim Travis Tice are not presently officers, directors, or employees of any enterprise listed above (although Tice was previously under the employ of Catanzarite Law Corporation but now acts as a proxy for Kenneth J. Catanzarite by alleged design as if he were not part of Catanzarite Law Corporation enterprise).

(d) Each of the Count V Defendant(s) are associated with Catanzarite Law Corporation enterprise, State Bar Enterprise, Orange County Superior Court enterprise, and 700+ Club enterprise.

(e) Nicole Marie Catanzarite Woodward, Ruben Duran, Suzanne Grandt, Leah Wilson, John C. Gastelum, and George Cardona are alleged members of each enterprise. The State Bar of California, and allegedly corrupt persons associated with State of California like Charles Tsai are alleged to be part of one or more enterprises as set forth above or members of the enterprise. Anthony B. Scudder, Richard Francis O'Connor, II, Cliff Higgerson, Amy Jeanette Cooper, Mohammed Zakhireh, James Duffy and Jim Travis Tice are current members of Catanzarite Law Corporation enterprise.

(f) Nicole Marie Catanzarite Woodward, Ruben Duran, Suzanne Grandt, Leah Wilson, John C. Gastelum are each alleged perpetrators for one or more enterprise listed above, also passive instruments, and victims in the historical corruption of State Bar Enterprise. Anthony B. Scudder, Richard Francis O'Connor, II, Cliff Higgerson, Amy Jeanette Cooper, Mohammed Zakhireh, and James Duffy are each alleged passive instruments for criminal conduct (to make it appear as client "advocacy"), and now victims of Catanzarite Law Corporation enterprise and State Bar Enterprise. Jim Travis Tice is an alleged perpetrator, passive instrument, and victim.

82. **State and describe in detail whether plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

COUNT I.    18 U.S.C. § 1962(c).

It is alleged that Catanzarite Law Corporation enterprise pattern of racketeering activity is part of and related to State Bar Enterprise, but also with its own distinct schemes and victims in consolidated operations using the Superior Courts and primarily Orange County Superior Court enterprise. As it relates to the Plaintiff, it is alleged that he is a victim of State Bar Enterprise's historical schemes to defraud the public through bribery by corrupt lawyers like Kenneth J. Catanzarite and Thomas V. Girardi to curry favors through judicial officers, law enforcement, and active market participant regulators of The State Bar of California and U.S. Securities and Exchange Commission, and that the Catanzarite Law Corporation enterprise is but one of several prominent components of State Bar Enterprise like Girardi-Keese. It is alleged Superior Courts and reviewing courts in California operate in two fashions: 1) as a mechanism to defraud the public by any means with active ex parte collusion for those among 700+ Club, State Bar Enterprise, and corrupt law firms like Girardi-Keese and Catanzarite Law Corporation; or in the alternative, 2) "normally" for proceedings which do not involve "made" attorneys and public employees aiding their fraudulent schemes.

COUNT II.    18 U.S.C. § 1962(c).

It is alleged that State Bar Enterprise racketeering activity has merged into one corrupt entity using public entity The State Bar of California, Superior Courts, and State of California as a front for criminal conduct of attorneys protected by regulation and law enforcement of the same persons as above.

COUNT III.    18 U.S.C. § 1962(a).

It is alleged that Legal Aid Association of California accepts proceeds from racketeering activity as a mechanism to conceal the nature and origin of some funds through IOLTA and CTA within The State Bar of California's "Leadership Bank Program" which involves legitimate activity while concealing illegal activity with intent to defraud. Approximately $5 billion in average daily balances exist, and State Bar Enterprise is somehow responsible for all oversight.

It is alleged these investments allow Ruben Duran and Leah Wilson to publicly claim they are fulfilling their public protection roles through public good, although it is alleged the

1    purpose of these parallel investment schemes is to ensure and conceal continued criminal

2    conduct of State Bar Enterprise without state or federal supervision to conceal *sub rosa*

3    compensation. It is further alleged the prioritized parallel distribution of these funds by active

4    market participant Duran compared to the carnage of attorneys like Thomas V. Girardi and

5    Kenneth J. Catanzarite is self-evidence of self-dealing, anticompetitive behavior, and Plaintiff

6    alleges any objective scrutiny by United States Attorney General on Plaintiff's racketeering

7    investigation demand will reveal systemic corruption and ongoing money laundering.

8         On information and belief, up to 78% of IOLTA accounts contained within public notices

9    of injury had a negative balance in 2021, but Ruben Duran deliberately defrauded the California

10   State Auditor by asserting randomized account audits were better than addressing known

11   "misappropriation." It is alleged Leah Wilson ensures, and has previously ensured, IOLTA and

12   CTA account complaints are closed quickly without inquiry or through "private letters" to

13   conceal money laundering. Plaintiff will notice this evidence from California State Auditor files.

14        It is alleged Ruben Duran and Leah Wilson are conspiring to use IOLTA and CTAs for

15   money laundering of State Bar Enterprise, and that LAAC is intended as a public facing

16   mechanism to conceal this conduct together with "Attorney Misconduct Complaint," "Complaint

17   Review Unit," "Supreme Court Accusations," "Client Security Fund," "Ombuds," "Public Trust

18   Liaison," "California Crime Victim's Bureau," and DA "Victim Rights Liaison" where each

19   serve to ensure attorney fraud and money laundering for State Bar Enterprise are protected and

20   concealed from federal intervention through regulation by the persons involved in racketeering.

21   Each purports to lack authority over the other in a corrupt, public-harming merry-go-round.

22        <u>COUNT IV.   18 U.S.C. § 1962(b).</u>

23        It is alleged that the pattern of racketeering activity Orange County Superior Court

24   enterprise are separate – where the operations depend entirely on the involvement of lawyers or

25   parties in the proceedings (often irrespective of merits or the law). Certain judges and clerks aid

26   fraudulent schemes of Catanzarite Law Corporation enterprise, State Bar Enterprise, 700+ Club

27   enterprise wherever there exists an allegedly corrupt lawyer or public employee as party or

28   counsel. In other instances, Orange County Superior Court enterprise operates "normally."

COUNT V.   18 U.S.C. § 1962(d).

It is alleged the racketeering activity and related conspiracy targeting Plaintiff have merged into one entity for purposes of defrauding Plaintiff and Courts of competent jurisdiction. Each person has their own motivations by agreeing to one or more overt acts. State Bar Enterprise seeks to prevent exposure of its systemic corruption by propounding materially false statements of fact and law to conceal it and oppress Plaintiff. State Bar Enterprise also seeks to prevent exposure of Catanzarite Law Corporation enterprise, which is compared to Girardi-Keese, at a time when it has already conceded to its own systemic corruption and bribery schemes March 10, 2023. Catanzarite Law Corporation enterprise seeks to prevent State Bar Enterprise from disbarring its attorneys which allegedly should have been done at least a decade ago just like Girardi-Keese actors. Catanzarite Law Corporation enterprise, by continuing to represent parties that it was disqualified from representing in the same or substantially related matters, seeks to control the false narrative of defendants Scudder, O'Connor, Cooper, Higgerson, Zakhireh, and Duffy to prevent them from revealing the truth and to keep any from damaging State Bar Enterprise and Catanzarite Law Corporation enterprise conduct. State Bar Enterprise seeks to prevent a Court from decisional law aligning with federal antitrust laws in 2015, or Government Claims Act in 2019, where each expressly subject each defendant to this case to civil and criminal claims. Historically, on information and belief, protectionist behavior in regulation and collusion have prevented Courts from deciding the obvious: The State Bar of California, regulating active market participants among their peers, is not the sovereign, and its actors are subject to claims.

83. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.**

COUNT I.   18 U.S.C. § 1962(c).

It is alleged that Catanzarite Law Corporation enterprise conducts racketeering activity as a matter of practice, and that the racketeering activity targeting the Plaintiff is not isolated or unique except in the Plaintiff's intention to stop it through good faith State and Federal litigation. It is alleged most, if not all, usual activity of Catanzarite Law Corporation involves racketeering.

COUNT II.   18 U.S.C. § 1962(c).

It is alleged that State Bar Enterprise conducts racketeering activity as a matter of practice, and that the racketeering activity targeting the Plaintiff is not isolated or unique except in the Plaintiff's novelty of obtaining permission to sue the government, and Plaintiff's damages. The racketeering activity differs from other operations in that public employees select sole practitioners or attorneys who fail to adhere to direction of State Bar Enterprise by exercising "licensing, regulatory, and discipline" functions to make an example and make it appear as if The State Bar of California serves a legitimate purpose. It is alleged this pattern can easily be identified through an objective lens by reviewing reports from the California State Auditor from 2002-2022, and by reviewing the conduct at issue and the related impunity of State actors like Charles Tsai, Ruben Duran, and Suzanne Grandt seeking to conceal it. For example, The State Bar of California is telling this Court it is immune from RICO, civil rights, and antitrust scrutiny as if that were reasonable. Not even the President of the United States is above the law.

COUNT III.   18 U.S.C. § 1962(a).

It is alleged that Legal Aid Association of California conducts racketeering activity selectively in that it has legitimate "public good" operations, and that its staff may or may not be entirely aware of the purpose of all non-profits operating thereunder. It is alleged Legal Aid Association of California is under control of Ruben Duran and Leah Wilson, together with the "Leadership Bank Program," and that all functions of The State Bar of California operate to enable concealment of money laundering and other racketeering activity of public employees, corrupt law firms, corrupt elected officials, some among Legislature, and State Bar Enterprise.

COUNT IV.   18 U.S.C. § 1962(b).

It is alleged that Orange County Superior Court enterprise conducts racketeering activity for State Bar Enterprise and Catanzarite Law Corporation enterprise as a matter of practice. Because The State Bar of California controls nomination and advancement of judicial officers in most instances, judges have to operate according to corrupt motives of passion or interest, as with Judge John C. Gastelum. As set forth above, racketeering activities differ from other daily activities based entirely on the parties, lawyers, or public employees involved – *not the merits*.

COUNT V.    18 U.S.C. § 1962(d).

The racketeering activity involving this Count is unique in that active market participant public employees, elected officials, and public entities are acting in an unlawful unity of interests with private attorneys and law firms with incurable conflicts of interest toward one common goal: oppress and suppress the Plaintiff by any means to conceal racketeering activity.

Office of General Counsel has gone so far as to make it appear as if Plaintiff is being vexatious, despite the overwhelming evidence already filed in this Court and the public concession on March 10, 2023 that The State Bar of California and California Courts are compromised by public employee bribery schemes.

Office of General Counsel allegedly knows Catanzarite Law Corporation attorneys are criminals, and that Plaintiff is a victim of criminal conduct. Because Ellin Davtyan, Robert Retana, Suzanne Grandt of Office of General Counsel are acting as counsel and are official and individual defendants who are "in on it," it serves no purpose for them to disbar Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Nicole Marie Catanzarite Woodward, or Jim Travis Tice. This is allegedly why U.S. Supreme Court clarified that regulators are "not the sovereign." It is difficult for active market participants to discern their own protectionist behavior. Because Ruben Duran has recently made public statements with Ellin Davtyan that The State Bar of California is somehow "reformed" under Duran's leadership and control, it serves Ruben Duran to suppress this proceeding, conceal liability from State and outside auditors, and defraud this Court and Plaintiff by any means – even deliberate fraud on the Court.

As for the non-attorney defendants, they are merely pawns in an ongoing chess game of alleged systemic corruption involving one or more enterprise functions. Catanzarite Law Corporation enterprise needs these non-attorneys to assert the schemes are somehow "litigation activity" or "protected" as if on behalf of "clients" despite their ongoing reliance on serial judicial and non-judicial fraud. **O'Connor, Cooper, Higgerson, and Scudder are *defendants* to Catanzarite Law Corporation enterprise schemes including securities fraud and elder abuse charges.** They are somehow now *clients* of Catanzarite Law Corporation enterprise as the firm tolls fraudulent derivative claims to produce evidence that lacked standing to begin with.

**84. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

COUNT I.     18 U.S.C. § 1962(c).

The alleged Catanzarite Law Corporation enterprise has, on information and belief, amassed a fortune worth hundreds of millions of dollars in real estate and businesses primarily for Kenneth J. Catanzarite with some interests held by Nicole Marie Catanzarite Woodard, Tim James O'Keefe, Brandon Woodward, and Jim Travis Tice allegedly acquired through a pattern of racketeering activity and unlawful debts.

COUNT II.    18 U.S.C. § 1962(c).

The alleged State Bar Enterprise, on information and belief, controls the entire judicial system in California from Superior Court, to Court of Appeal, to Supreme Court through the various functions described above to suit one-off and continuing schemes to defraud which in turn allow *sub rosa* compensation through IOLTA and CTA.

State Bar Enterprise controls $3.63 trillion in interstate commerce under the purported discretion and authority of State of California without active state or federal supervision. It is alleged State Bar Enterprise controls State of California, the world's largest sub-national economy – not the other way around. Plaintiff will show evidence of this during this proceeding where it is alleged State Bar Enterprise deliberately interfered with its own audit through California Legislature. Using this control and the corrupt use of State Bar Court, allegedly corrupt public employees and elected officials, State Bar Enterprise members benefit financially and politically. On information and belief, Governor Gavin Newsom accepted proceeds from Girardi-Keese racketeering activity and used it to become elected. Similarly, it is alleged members of Legislature have received proceeds of racketeering activity which was used to further gain control of State of California. (For the record, Plaintiff voted for Governor Newsom in 2018 and previously supported now-Attorney General Rob Bonta when he was an Assemblymember. Plaintiff is now disenfranchised as he alleges State Bar Enterprise has corrupted State of California systemically. Plaintiff's allegations rise above politics, as this case affects virtually every family in California, and every citizen of the United States).

COUNT III.   18 U.S.C. § 1962(a).

Legal Aid Association of California benefits from the alleged pattern of racketeering in that it receives funding from State of California and the United States government to perform "public good" as it concurrently is alleged to be used to conceal proceeds of racketeering through IOLTA distributions to The State Bar of California sent to Legal Aid Association of California. In this manner, Legal Aid Association of California appears to be "protecting the public" but in reality, it is allegedly used to suck all resources out of The State Bar of California which in turn allows Ruben Duran and Leah Wilson to assert it "lacks resources" to stop racketeering.

To put it simply, it is alleged Legal Aid Association of California is a money laundering tool used to make it seem like The State Bar of California is conforming to federal antitrust laws. State Bar Enterprise is the beneficiary, and Legal Aid Association of California is among several alleged "fronts" for racketeering activity to conceal State Bar Enterprise conduct.

COUNT IV.   18 U.S.C. § 1962(b).

Orange County Superior Court benefits from the alleged pattern of racketeering in that it receives ongoing payments derived from conduct of Catanzarite Law Corporation enterprise and other allegedly corrupt law firms. It benefits Orange County Superior Court enterprise to allow fraudulent schemes with thousands of ROA entries because each filing results in fees. For the most part, however, Orange County Superior Court enterprise is a passive instrument for conduct of State Bar Enterprise, Catanzarite Law Corporation enterprise, allegedly corrupt public employees, allegedly corrupt elected officials, and allegedly corrupt law enforcement in Anaheim Police Department and Orange County District Attorney's Office.

COUNT V.   18 U.S.C. § 1962(d).

Catanzarite Law Corporation enterprise benefits from the racketeering activity targeting Plaintiff by State Bar Enterprise because assistance by State Bar Enterprise reduces liability to its allegedly corrupt lawyers and clients acting under its control. State Bar Enterprise benefits from the racketeering activity targeting Plaintiff by Catanzarite Law Corporation enterprise because State Bar Enterprise endeavors to conceal its own alleged corruption. Orange County Superior Court enterprise conduct benefits each for the same reasons to conceal alleged crimes.

**85. Describe the effect of the enterprise on interstate or foreign commerce.**

   COUNT I. 18 U.S.C. § 1962(c).

   The Catanzarite Law Corporation enterprise affects interstate commerce through the depletion of the Plaintiff's insurance policy by Scottsdale Insurance Co. by $1.268 million, and through the filing of 9 putative class actions on behalf of the elderly "client" Richard Carlson who did not believe he had suffered damages, when he wasn't seeking an attorney, when he was visited at his home by Mr. Catanzrite according to Mr. Carlson's February 2020 sworn testimony. These cases have resulted in 19 or more Court of Appeal rulings, allegedly extorted settlements under knowingly false pretenses, and rulings in U.S. Bankruptcy Courts showing serial fraud and "sham court documents." Catanzarite Law Corporation enterprise, working with State Bar Enterprise through Orange County Superior Court enterprise, also allegedly destroyed a $261 million merger with a Canadian issuer, and another company started by Plaintiff in the healthcare field worth approximately $30 million at the time it was destroyed in 2021.

   COUNT II. 18 U.S.C. § 1962(c).

   The State Bar Enterprise affects interstate commerce through its allegedly corrupt control of $3.63 trillion in U.S. GDP as outlined above. The State Bar Enterprise affects interstate commerce further through its factual control of Catanzarite Law Corporation enterprise, depletion of the Plaintiff's insurance policy by Scottsdale Insurance Co. by $1.268 million by non-judicial and judicial fraud, and through its enablement of filing of 9 putative class actions on behalf of the elderly "client" for Catanzarite Law Corporation enterprise, Richard Carlson, who did not believe he had suffered damages, when he wasn't seeking an attorney, when he was visited at his home by Mr. Catanzarite according to Mr. Carlson's February 2020 sworn testimony. These cases have resulted in 19 or more Court of Appeal rulings, allegedly extorted settlements under knowingly false pretenses, and rulings in U.S. Bankruptcy Courts showing serial fraud and "sham court documents." Catanzarite Law Corporation enterprise, working with State Bar Enterprise through Orange County Superior Court enterprise, also allegedly destroyed a $261 million merger with a Canadian issuer, and another public company started by Plaintiff in the healthcare field worth approximately $30 million at the time it was destroyed in 2021.

COUNT III.   18 U.S.C. § 1962(a).

Legal Aid Association of California enterprise investments allegedly affect interstate and international commerce in that they involve transfer of money to and from Chinese and Taiwanese banks amidst at $5 billion in daily balances at any given time in IOLTAs through State Bar "Leadership Bank Program" setup by Leah Wilson.

Legal Aid Association of California enterprise investments allegedly affect interstate and foreign commerce in that the investments are used to ensure State Bar Enterprise conduct can continue without objective scrutiny to allow alleged racketeering as Ruben Duran and Leah Wilson make public statements related to "public good" or "diversity, equity, and inclusion."

COUNT IV.   18 U.S.C. § 1962(b).

The Orange County Superior Court enterprise affects interstate commerce through the depletion of the Plaintiff's insurance policy by Scottsdale Insurance Co. by $1.268 million, and through the filing of 9 putative class actions on behalf of the elderly "client" Richard Carlson who did not believe he had suffered damages, when he wasn't seeking an attorney, when he was visited at his home by Mr. Catanzarite according to Mr. Carlson's February 2020 sworn testimony – where some of those fraudulent cases were filed in Orange County Superior Court. These cases have resulted in 19 or more Court of Appeal rulings, allegedly extorted settlements under knowingly false pretenses, and rulings in U.S. Bankruptcy Courts showing serial fraud and "sham court documents." Catanzarite Law Corporation enterprise, working with State Bar Enterprise through Orange County Superior Court enterprise, also allegedly destroyed a $261 million merger with a Canadian issuer, and another public company started by Plaintiff in the healthcare field worth approximately $30 million at the time it was destroyed in 2021.

COUNT V.   18 U.S.C. § 1962(d).

State Bar Enterprise through its alleged stranglehold on the judicial system by corruption allegedly controls $3.63 trillion in U.S. GDP, and its admittance of 700+ Club members pro hac vice across state lines allegedly affects commerce in 49 states who are subject to the allegedly predatory practices, bribery of public employees including law enforcement, and racketeering activity of Catanzarite Law Corporation, 700+ Club and State Bar Enterprise shown above.

Further, it is alleged the same corruption shown above allegedly affects and controls a large percentage of the national market for legal education. Where it is alleged State Bar Enterprise is systemically corrupt and commingled with State of California, this is allegedly defrauding the United States as underwriter for student loans for legal services controlled by the same alleged racketeering activity.

**86. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following: (a) state who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt; and (b) describe the use or investment of such income.**

(a) The State Bar of California received annual income from IOLTA of its associated-in-fact active market participant attorneys, some of whom were convicted of wire fraud, and some of whom were engaged in racketeering activity which has yet to be convicted or discovered.

(b) The State Bar of California used the IOLTA income, some of which was derived from a pattern of racketeering activity and invested it in Legal Aid Association of California. In turn, Legal Aid Association of California invested proceeds of racketeering activity into non-profits providing legal services, after which active market participant attorneys were paid standard or slightly sub-standard fees for their legal services by members of the public or funded by taxpayers and IOLTA distributions. It is alleged some of these non-profits and some of these transfers of funds were used to enrich public employees and elected officials based upon Ruben Duran's refusal to investigate trust accounts with negative balances, and the contention (which California State Auditor called "unreasonable") that investigating misappropriation would consume too many resources (Report 2022-030 responses and retort from Michael Tilden).

**87. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition of maintenance of any interest in or control of the alleged enterprise.**

Ruben Duran acquired informal control over Orange County Superior Court enterprise in becoming Chairman of Board of Trustees concurrently with his role as Partner of Best Best & Krieger and city attorney for harbor districts. "Appointed by the State Bar Board of Trustees," each member serves at "the pleasure of" the Board of Trustees for the "Commission on Judicial Nominees Evaluation." which "assists the governor in the judicial selection process."

Ruben Duran, as Chairman of Board of Trustees, acquired informal control over Orange County Superior Court enterprise upon disposition of Plaintiff's Government Claims Act forms November 10, 2021, and through his control over Office of General Counsel, Office of Chief Trial Counsel, Executive Director, and judicial nominee evaluation.

Eli David Morgenstern acquired informal control over Orange County Superior Court enterprise in his control over Catanzarite Law Corporation enterprise conduct from November 15, 2019 through present. Morgenstern has placed serial fraud in "abatement" by alleged design.

George Cardona acquired informal control over Orange County Superior Court enterprise conduct through his decision making with malice, and his illegal coordination with Office of General Counsel, Board of Trustees, and Office of Chief Trial Counsel to protect Catanzarite Law Corporation enterprise in May 2022 evidenced by his wire communications.

Suzanne Grandt acquired informal control over Orange County Superior Court enterprise through Office of General Counsel in Orange County Superior Court Case No. 30-2021-01237499 by first colluding with Andresen to delay discovery of corruption on May 31, 2022, then making decisions for Board of Trustees on July 20, 2022 with malice to protect State Bar Enterprise and Catanzarite Law Corporation enterprise communicated by mail and wire (on the basis that Plaintiff was suing The State Bar of California, Grandt chose to protect attorneys engaged in serial fraud and misconduct, and admitted the same).

Suzanne Grandt, Eli David Morgenstern, and Ruben Duran acquired informal control over Judge John C. Gastelum in Orange County Superior Court enterprise on June 2, 2022 by propounding materially false statements of fact and law on "demurrer"" as if Plaintiff could not even state a claim, which she, Duran and Morgenstern allegedly knew was fraudulent and intended to control and conceal enterprise conduct through control of Gastelum.

Suzanne Grandt and Ruben Duran maintained control over Orange County Superior Court enterprise by refusing to appear for a duly noticed deposition served July 26, 2022, for The State Bar of California to appear September 9, 2022 at its own address to answer questions concerning public corruption and fraud – and by filing a frivolous anti-SLAPP motion 5-months late in response without any showing of protected activity, threatening Plaintiff with legal fees.

Suzanne Grandt maintained control over Orange County Superior Court enterprise by filing an ex parte application for hearing August 22, 2022 to move Plaintiff's motion for summary judgment (ROA #101-#111) using the knowingly late and defective "Anti-SLAPP" filing as the basis.

Eli David Morgenstern maintained control over Orange County Superior Court enterprise by refusing to recuse from disciplinary matters pertaining to Catanzarite Law Corporation enterprise despite his material conflict as a civil defendant for allegedly accepting bribes, indeed, by transferring all cases related thereto to himself so he could control them under alleged bribery by Kenneth J. Catanzarite and collusion with other public employees and elected officials.

Robert Retana worked with Jorge E. Navarette to maintain control over Orange County Superior Court enterprise through the obstruction of an antitrust petition to exhaust state remedies styled *Justin S. Beck v. Ruben Duran (The State Bar of California)* S276517. First, Robert Retana removed or ignored four volumes of probative evidence which included proceedings in Orange County Superior Court enterprise cited in the antitrust case which were subject of an October 14, 2021 preservation of evidence letter. Next, Retana delivered Plaintiff on October 17, 2022 "Antitrust Determination 2022-0001" reflecting the manipulated case files, and Retana frivolously asserted The State Bar of California's operational acts were legislative in character, which he allegedly knew was false and intended to protect State Bar Enterprise interests by controlling Orange County Superior Court enterprise conduct which was anticompetitive on its face. Retana allegedly intended to defraud Plaintiff and the United States, where he cited Supreme Court Administrative Order 2017-09-20 – which expressly states that conduct of The State Bar of California that advances attorney interests (for Duran, Morgenstern, Cardona, Retana, Davtyan, Catanzarite, Catanzarite-Woodward, Woodward, O'Keefe, Tice) without a clear benefit to public (Plaintiff) must be closely scrutinized for antitrust violations. Instead, Retana allegedly deliberately ignored binding decisional law and FTC guidance, and instead cited case law from 1943. Then, Navarette or someone working at the direction of Office of General Counsel, Duran, or Navarette removed four volumes of exhibits from TrueFiling to conceal the evidence and basis for Plaintiff's allegations.

1       Robert Retana worked with Jorge E. Navarette to maintain control over Orange County

2    Superior Court enterprise by delivering a letter October 17, 2022 citing the manipulated records

3    and knowingly frivolous "Antitrust Determination 2022-0001," asserting Plaintiff was somehow

4    responsible for policing The State Bar of California's anticompetitive behavior that furthered

5    active market participant Duran, Morgenstern, Cardona, Retana, Davtyan, Catanzarite,

6    Catanzarite-Woodward, Woodward, O'Keefe, and Tice interests without any benefit to Plaintiff.

7    Retana clearly stated in that letter to Navarette that Plantiff had "60-days" to request review,

8    which Plaintiff intended to file (although Plaintiff maintains is also frivolous; it is not Plaintiff's

9    job to police The State Bar of California's protectionist behavior).

10       Jorge E. Navarette then maintained control over Orange County Superior Court

11    enterprise by accepting the letter from Retana dated October 17, 2022, confirming Plaintiff had

12    60-days to request review of the decision and to highlight the deliberate alleged fraud of Retana

13    in making "Antitrust Determination 2022-0001" by removal of four volumes of exhibits and

14    ignorance of binding decisional law from United States Supreme Court declaring The State Bar

15    of California is "not the sovereign." Next, Jorge E. Navarette – <u>not after 60-days, but after one</u>

16    <u>day</u> on October 18, 2022, created a new fraudulent case that was not authorized by Plaintiff, as

17    if it were filed by Plaintiff, in California Supreme Court under Case No. S2276939 without even

18    informing Plaintiff.

19       Finally, to complete Retana and Navarrete's allegedly fraudulent conduct to control

20    Orange County Superior Court enterprise, in response to Plaintiff's November 29, 2022

21    informing each that they may be found guilty of obstructing justice violative of 18 U.S.C. § 1503

22    with knowledge of the instant case and a petition to the United States Congress, Navarrete

23    obtained or manufactured an "En Banc" decision that was made upon the fraudulent antitrust

24    petition that Plaintiff did not authorize, which petition did not include the four volumes of

25    exhibits, and was made on the frivolous "Antitrust Determination 2022-001" which deliberately

26    ignored federal antitrust laws and all evidence in Orange County Superior Court.

27       As Chairman of Board of Trustees which controls the Commission on Judicial Nominee

28    Evaluation and thus the advancement of careers for all judges in California, Duran is alleged to

1    have caused nomination and then appointment of Associate Justices Maurice Sanchez, Joanne
2    Motoike, and Thomas A. Delaney on exact dates of Plaintiff's litigation to control Orange
3    County Superior Court enterprise and protect State Bar Enterprise. If not through depositions,
4    Plaintiff intends to seek expert testimony on the mathematical probability that these justices
5    would be nominated or appointed on November 12, 2021, May 2, 2022, August 8, 2022, and
6    October 11, 2022, respectively if not to deliberately obstruct reviewing Court decisions
7    pertaining to State Bar Enterprise in Orange County Superior Court. Plaintiff alleges Duran,
8    Grandt, Retana, or Hailyn Chen later directed Fourth District, Division Three to dispose of writ
9    petitions G061896/G062120 on December 28, 2022, and further, that State Bar employees and
10   elected officials were directed not to view service of the writ petitions and probative evidence in
11   TrueFiling. Plaintiff intends to show the same writ petitions were served on United States
12   Department of Justice and the FBI, who downloaded the evidence according to proof.

13          To control Orange County Superior Court enterprise or to seek control thereof within the
14   meaning of 18 U.S.C. § 1962(b), Ellin Davtyan sent Plaintiff a threatening letter on December
15   15, 2022, by mail and wire which sought destruction of evidence inadvertently delivered by
16   Suzanne Grandt on December 8, 2022 to Plaintiff confirming allegations. Davtyan sought a list
17   of all persons who had received the evidence, which Plaintiff refused to destroy citing the
18   crime/fraud exception, which evidence shows collusion between Office of Chief Trial Counsel,
19   Board of Trustees, and Office of General Counsel to protect Catanzarite Law Corporation
20   enterprise with malice. Specifically, Cardona details that Plaintiff was seeking discovery and
21   suing The State Bar of California, and therefore, the probative evidence of serial fraud by
22   Catanzarite Law Corporation in at least three parallel schemes and other public records from
23   2007-2020 did not give rise to The State Bar of California's duty to inform the public of these
24   schemes and the harm. Notably, Ruben Duran, Suzanne Grandt, and Eli David Morgenstern
25   fraudulently asserted to Judge John C. Gastelum – which he relied upon – that everything within
26   Office of Chief Trial Counsel is confidential in Office of Chief Trial Counsel. On information
27   and belief, Plaintiff's evidence shows deliberate fraud on the Court, much like Grandt had
28   defrauded William Alsup July 20, 2017, leading to her promotion to Assistant General Counsel.

1    To control Orange County Superior Court enterprise, Ruben Duran, Suzanne Grandt, or
2    others among State Bar Enterprise allegedly caused Richard Lee to recuse from Orange County
3    Superior Court Case No. 30-2021-01237499 on January 18, 2022 after Plaintiff filed a temporary
4    restraining order. It is alleged Judge John C. Gastelum was placed in the case with intent to
5    defraud Plaintiff and to ensure Gastelum would agree to illegal reliance on stale case law applied
6    to attorneys from 2000 without regard for Government Claims Act after January 1, 2019, or
7    Federal antitrust laws after 2015, which are binding on all public employee regulators.

8    To control Orange County Superior Court enterprise, Suzanne Grandt, Eli David
9    Morgenstern, and Ruben Duran once more denied Plaintiff discovery on October 13, 2022,
10   delivered in September 2022, after each were named and served in Orange County Superior
11   Court Case No. 30-2020-01145998. The State Bar of California only accepts electronic service,
12   and each were served several times, but allegedly intended to defraud Plaintiff because it is
13   alleged, they did not wield the same power and control over Judge Randall J. Sherman in Orange
14   County Superior Court as they do over Judge John C. Gastelum. To further this control, Charles
15   Tsai told Honorable Cynthia A. Bashant in this Court that each were not served, but Tsai
16   allegedly knew this too was fraudulent and false and intended to make Plaintiff appear vexatious.

17   To control Orange County Superior Court enterprise, State Bar Enterprise allegedly
18   directed State of California not to appear in Orange County Superior Court Case No. 30-2021-
19   01237499 or Orange County Superior Court Case No. 30-2020-01145998. State of California
20   has been physically served in each case, and electronically served at least seven other times.

21   To control Orange County Superior Court enterprise, State Bar Enterprise allegedly
22   instructed clerks in Orange County Superior Court to deny any requests for default by State of
23   California despite its repeated service and despite Plaintiff's repeated attempts to obtain defaults.

24   To maintain control of Orange County Superior Court enterprise in February 2023, State
25   Bar Enterprise members allegedly instructed Department of General Services of California to
26   assert Plaintiff's claims against State of California were not proper upon notice, even though
27   they lie in Plaintiff's allegation that State of California refuses to place active supervision on The
28   State Bar of California in conformance with federal antitrust laws after 2015.

88. **If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following: (a) state who is employed by or associated with the alleged enterprise, and (b) state whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c).**

COUNT I.    18 U.S.C. § 1962(c).

(a) Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe are employed by or associated with Catanzarite Law Corporation enterprise.

(b) The same entity is not both the allegedly liable person and the alleged enterprise under 18 U.S.C. § 1962(c).

COUNT II.    18 U.S.C. § 1962(c).

(a) Suzanne Grandt, Ruben Duran, Robert Retana, Eli David Morgenstern, Ellin Davtyan, George Cardona, and Jorge E. Navarette are employed by or associated with State Bar Enterprise.

(b) The same entity is not both the allegedly liable person and the alleged enterprise under 18 U.S.C. § 1962(c). It is alleged and pleaded, however, that Cal. Gov. Cod. § 815.2 and Cal. Gov. Cod. § 815.3 cause liability to The State Bar of California and State of California for the conduct of public employees under California law on principles of *respondeat superior*.

89. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.**

1) Anthony B. Scudder communicated with Roger Root in August 2015 and offered him shares of Cultivation Technologies, Inc.

2) In June 2015, in an organization consent signed by Richard Francis O'Connor, Jr. and Amy Jeanette Cooper as a majority of the Cultivation Technologies, Inc. board of directors, signed official acts of Cultivation Technologies, Inc. to issue its original 23,000,000 shares. Mobile Farming Systems, Inc. was not among the shareholders, which was the express intent of O'Connor and Cooper stated on the face of the acts each signed in their duly authorized capacity for CTI in June 2015.

3) Anthony B. Scudder through his entity Aroha Holdings, Inc. received 1,000,000 shares of Cultivation Technologies, Inc. in 2015. He knew MFS was not a shareholder of CTI, nor was MFS the "sole shareholder" of CTI because he received shares of CTI.

4) Cliff Higgerson acquired 1,000,000 shares of CTI in 2015. He knew Mobile Farming Systems, Inc. had failed and that it was the express intent of Mobile Farming Systems, Inc. to unwind and cease operations as of June 2015.

5) In July 2015, Amy Jeanette Cooper and Richard Francis O'Connor, Jr. retained a transfer agent for CTI which issued the first 23,000,000 shares of the company. Mobile Farming Systems, Inc. was not issued shares because the company had ceased operations. Cooper and O'Connor were officers and directors of Mobile Farming Systems, Inc., and intended that the company cease operations. Plaintiff witnessed the same as did every MFS shareholder.

6) Every MFS shareholder was offered shares in CTI in good faith, although it was not required, it was the express intent of Amy Jeanette Cooper and Richard Francis O'Connor, Jr. to offer shareholders of the failed company MFS shares of CTI in good faith. Every shareholder accepted the offer recognizing MFS had failed, save one allegedly deceased person and Jolly Roger, Inc. who was offered and declined as evidenced by August 2015 email from Scudder.

7) Richard Francis O'Connor, Jr. participated in 158 securities transactions involving the sale or transfer of Cultivation Technologies, Inc. stock before January 23, 2019. Many of these transactions were aided by Anthony B. Scudder. Some were private transactions, and involved the entity TGAP Holdings, LLC which held shares between Amy Jeanette Cooper and Richard Francis O'Connor, Jr. On information and belief, Richard Francis O'Connor, Jr. made $2,000,000 or more selling CTI shares before January 23, 2019.

8) Mohammed Zakhireh, Richard Francis O'Connor, Jr., and James Duffy sued and then settled claims against Plaintiff and CTI on the basis of their own CTI shareholder status in June 2017. At no time was MFS mentioned to be a shareholder of CTI, indeed, the company MFS had ceased operations and was an afterthought.

9) Mohammed Zakhireh and James Duffy each acquired shares of CTI from the company directly through private placement memorandums before January 23, 2019.

10) Mohammed Zakhireh and James Duffy each acquired shares of CTI from Richard Francis O'Connor, Jr. in private transactions before January 23, 2019.

11) Anthony B. Scudder aided O'Connor in selling CTI shares privately.

12) Based on alleged intent to defraud United States Securities Exchange Commission and malice against Plaintiff, Mohammed Zakhireh and Richard Francis O'Connor, Jr. caused an investigation by the SEC against Plaintiff and CTI in July 2017. The investigation concluded January 2018, with no finding of wrongdoing, after the SEC reviewed approximately 25,000 pages of securities documents (LA-4837). No documents listed Mobile Farming Systems, Inc. as a shareholder, and many of the documents were signed by Cooper and O'Connor as principal.

13) When Kenneth J. Catanzarite contacted counsel for CTI in August 2018 for Denise Pinkerton as purported "attorney-in-fact" for Roger Root, he was provided indisputable evidence that CTI had operated for three years under the structure defined by Richard Francis O'Connor, Jr. and Amy Jeanette Cooper in their duly authorized capacities – and that Jolly Roger was offered shares of CTI, but Roger Root declined whereas nearly every MFS shareholder accepted.

14) With actual knowledge Roger Root was not a shareholder of MFS or CTI, Catanzarite Law Corporation, Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe filed a derivative action against Plaintiff, MFS, and CTI on September 14, 2018, and direct action for securities fraud and elder abuse allegations *against Cooper and O'Connor.*

15) With actual knowledge Roger Root was not a shareholder of MFS or CTI, Kenneth J. Catanzarite demanded 10,000,000 shares of CTI that he also asserted did not exist on October 4, 2018. This demand was made on Plaintiff, *O'Connor, and Cooper.*

16) Kenneth J. Catanzarite served *5,000 discovery requests* on or around December 21, 2018 including 500 against MFS, on defendants to the derivative "Pinkerton Action" even though he knew Roger Root was not a shareholder of MFS nor was he a shareholder of CTI.

17) Without Court approval, Kenneth J. Catanzarite dismissed parties from the false derivative action between January 4, 2019 through January 23, 2019. Mr. Catanzarite, according to a declaration from Ms. Cooper's counsel, made contact with represented party Cooper to negotiate settlement of the false derivative action without Court approval. (F.R.Civ.P.23.1(c).)

18) Catanzarite Law Corporation revived Jolly Rogers Investments, Inc., a Washington company, on January 17, 2019, which had been administratively dissolved in May 2015. All agent information and addresses were changed to Catanzarite Law Corporation of Anaheim, CA.

19) Despite knowledge that Roger Root is not and has never been a shareholder of MFS nor CTI, Catanzarite Law Corporation has never amended any pleading to reflect Jolly Rogers Investments, Inc. or Jolly Roger, Inc. because Catanzarite Law Corporation intends to defraud.

20) To conceal a lack of standing to pursue derivative claims and despite suing the Mobile Farming Systems, Inc. at the same time, Catanzarite Law Corporation actors used the pendency of securities fraud charges and elder abuse against O'Connor and Cooper to obtain their signatures and property on or around January 23, 2019.

21) With actual knowledge it was fraudulent, Richard Francis O'Connor, Jr., James Duffy, and Mohammed Zakhireh purported to become the officers and directors of Cultivation Technologies, Inc. on January 23, 2019, through **a non-judicial shareholder consent** of "sole shareholder" Mobile Farming Systems, Inc. Each O'Connor, Duffy, and Zakhireh had participated in securities transactions of CTI before that date as above.

22) While Catanzarite Law Corporation was suing Mobile Farming Systems, Inc., it took over the company between January 23, 2019, and January 28, 2019 and assumed the role of counsel for the inanimate entity MFS using the exculpation of conflict waivers for parties defendant O'Connor and others who were threatened with securities fraud and elder abuse charges.

23) While Catanzarite Law Corporation was suing Cultivation Technologies, Inc. asserting Mobile Farming Systems, Inc. was the sole shareholder of the company and that all shares – including those owned by Zakhireh, Duffy, and O'Connor that had been issued for years and even sold privately were a "nullity" – a class action was filed on April 16, 2019 on behalf of shareholders who purportedly did not exist. (Tice would later advocate this false action.)

24) After the trial court rejected the manufactured claims of Catanzarite Law Corporation on May 1, 2019 "with every fiber of [Court's] being" citing "repeated actions" of O'Connor and Cooper between June 2015 and January 23, 2019 showing MFS was not a shareholder of CTI, Catanzarite Law Corporation just re-filed the same manufactured claims against Plaintiff in three separate actions through more sham court documents while purporting to represent O'Connor and Cooper as officers and directors of CTI. It used evidence provided by O'Connor and Cooper.

25) While asserting Mobile Farming Systems, Inc. was still the sole shareholder of CTI after a trial of fact concluded this was materially false, Catanzarite Law Corporation assumed the role of counsel for CTI using the vote of shareholders it alleged did not exist.

26) While corruptly and willfully appearing on behalf of a non-client without authority, CTI, Catanzarite Law Corporation sued Scottsdale Insurance Co. seeking to stop Plaintiff's defense coverage so Plaintiff would capitulate to the fraudulent scheme.

27) With knowledge of Catanzarite Law Corporation's fraudulent scheme and despite court orders mandating disqualification as a matter of law [for which two violations are subject to disbarment of Kenneth J. Catanzarite, Brandon Woodard, and Tim James O'Keefe per CRPC 1.7(d)(3)], Eli David Morgenstern delivered mail to Plaintiff on April 3, 2020 that the conduct was "not serious enough," to allegedly deny Plaintiff good faith and honest services in government within the meaning of 18 U.S.C. § 1346. Morgenstern is alleged to have been bribed by Kenneth J. Catanzarite as well as Thomas V. Girardi, on information and belief.

28) To ensure the continuance of the scheme, on August 10, 2020, Catanzarite Law Corporation filed a cross complaint on behalf of the client it was also suing (MFS) in Orange County Superior Court Case No. 30-2020-01145998 which was just the regurgitation of the same fabricated claims from MFS that had been tried and rejected with "every fiber of [Court's] being" on May 1, 2019. Two days later, Office of General Counsel ("Complaint Review Unit") delivered Plaintiff mail that it was a "pending civil matter." On information and belief, this is a tried-and-true tactic of State Bar Enterprise – engaging in non-judicial and judicial fraud but refiling the same in conspiracy with Office of General Counsel to defraud non-attorneys despite federal antitrust laws express prohibition on this behavior by active market participants.

29) At direction of Jorge E. Navarette, and numerous communications by mail, Plaintiff prepared an "Accusation" in California Supreme Court evidencing serial violations of California Rules of Professional Conduct, where one such violation results in suspension, and more than one, disbarment for Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe. With alleged intent to defraud, Navarette denied Plaintiff good faith honest services and said Plaintiff had not filed in time. Plaintiff later learned .008% of these filings were successful over 10+ years.

30) Nicole Marie Catanzarite Woodward appeared in Court of Appeal challenging the fraudulent representation by Catanzarite Law Corporation of CTI which led to the firm's disqualification. The Court of Appeal agreed the conduct was undertaken without authority, it was not only meritless. Four disqualification orders were ultimately upheld, which orders expressly forbid Catanzarite Law Corporation's Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Nicole Marie Catanzarite Woodward, or Tim James O'Keefe from representing CTI shareholders. In this Court despite this clear order from Court of Appeal, Kenneth J. Catanzarite is appearing for CTI shareholders in direct defiance of Court of Appeal, as usual, for Scudder, O'Connor, Higgerson, Cooper, Zakhireh, and Duffy.

31) On September 8, 2021, with knowledge that Amy Jeanette Cooper had appeared May 1, 2019, in trial on the basis that Mobile Farming Systems, Inc. was the "sole shareholder" of CTI which she knew to be fraudulent, Jim Travis Tice appeared for Amy Jeanette Cooper in the knowingly fraudulent "class action" filed April 16, 2019, by Catanzarite Law Corporation.

32) Jim Travis Tice was informed by Plaintiff that the United States Securities Exchange Commission had previously been manipulated by O'Connor and Zakhireh to investigate CTI and Plaintiff in July 2017, and the claims Tice was advocating were not only frivolous – they were fraudulent and part of a scheme. (Plaintiff will evidence records from SEC LA-4837 to prove.)

33) Plaintiff later learned Jim Travis Tice has previously served as personal counsel for Kenneth J. Catanzarite in "State Bar Court" dating back to 1998, and that Jim Travis Tice was a former associate for Catanzarite Law Corporation who left the firm but is used as a proxy after Catanzarite Law Corporation is inevitably disqualified in Superior Courts for representing adverse parties or appearing without authority as they did against Plaintiff. Nevertheless, Tice continued the scheme with actual knowledge that his "class" claims for Amy Jeanette Cooper were not only frivolous, but they were also knowingly fraudulent continuance of Catanzarite Law Corporation's scheme. Plaintiff will evidence the same, as well as the SEC's review, and Tice's actual knowledge thereof.

34) The State Bar of California received a preservation of evidence letter dated October 14, 2021. The receipt of this letter was confirmed by Carissa Andresen in May 2022.

1        35) Plaintiff received denial of his Government Claims Act forms, which California code

2  shows involves the denial of Board of Trustees, whose chairman was Ruben Duran November

3  10, 2021, when Plaintiff was delivered a claim denial letter.

4        36) On January 24, 2022, Ruben Duran is quoted in a press release that Thomas V.

5  Girardi's compromise of The State Bar of California was being investigated. On information and

6  belief, Ruben Duran knew of a 2014 investigation by MTO where Girardi's name was mentioned

7  18 times, specifically calling on Board of Trustees to act against Girardi-Keese. With knowledge,

8  persons similar situated to Duran, and then later Duran, continued the conduct and allegedly

9  participated in the proceeds of Girardi-Keese through IOLTA or CTA directly or indirectly.

10        37) Chairman (and private lawyer) Duran, Executive Director Leah Wilson, and Chief

11  Trial Counsel George Cardona communicated by wire between May 19, 2022, and May 25,

12  2022, about Plaintiff's known harm and the serial fraud of Catanzarite Law Corporation shown

13  by Court orders. "With special thanks to Carissa," Cardona disseminated a story internally

14  among these persons that reflected the narrative of Catanzarite Law Corporation – not the Court

15  orders detailing the conduct, instead calling them "unpublished" as if that made them irrelevant.

16  In April 2022, the California State Auditor admonished The State Bar of California for accepting

17  attorney stories rather than rely on evidence, which Duran said had been addressed. On

18  information and belief, Duran repeatedly intends to defraud California State Auditor, and Duran

19  was allegedly placed at the helm of State Bar Enterprise to protect is alleged criminal nature.

20        38) After receiving notice of several parallel schemes shown by Court orders, as well as

21  the theft of its own client's house on at least two occasions, Plaintiff demanded The State Bar of

22  California make public what it knew about Catanzarite Law Corporation on May 19, 2022, and

23  July 12, 2022.

24        39) Duran assigned this decision to Suzanne Grandt, who was concurrently acting as civil

25  defense counsel for the alleged unity of interests between Catanzarite Law Corporation

26  enterprise and State Bar Enterprise to defraud members of the public. On July 20, 2022, Suzanne

27  Grandt delivered mail to Plaintiff on behalf of Duran, confirming decisions were based on malice

28  that Plaintiff was suing The State Bar of California (without regard for public interest).

40) Plaintiff learned of federal decisional law binding on all regulators, and that he could file a petition with California Supreme Court to challenge anticompetitive conduct by regulators through a petition to exhaust state remedies. Plaintiff prepared a petition and included four volumes of exhibits, also citing the conduct which had transpired in Orange County Superior Court Case No. 30-2021-01237499, wherein it was misrepresented that Grandt, Duran, Morgenstern, The State Bar of California, and other employees were not subject to Government Claims Act. All of this was subject of the October 14, 2021, preservation of evidence letter.

41) On September 27, 2022, an order striking Plaintiff's petition and four volumes of exhibits were sent to Plaintiff by mail from Navarette. The order was rubber-stamped by Chief Justice Cantil-Sakauye. Incredibly, California Supreme Court assigned Office of General Counsel to make an antitrust determination for itself.

42) Retana ignored the allegations, conduct in Orange County Superior Court Case No. 30-2021-01237499 and removed or ignored all four volumes of exhibits in S276517. With only the face of the obstructed petition filed by Plaintiff S276517, Retana made "Antitrust Determination 2022-001" for himself and his peers without regard for federal law. Retana asserted the mere existence of California Supreme Court Administrative Order 2017-09-20 – which expressly forbids anticompetitive acts by The State Bar of California to help attorneys – somehow made every operational act of The State Bar of California legislative.

43) On November 3, 2022, Ruben Duran admitted The State Bar of California knew Thomas V. Girardi had caused "irreparable harm" to hundreds of members of the public, and that The State Bar of California was at fault for this. At the same time, Duran was concealing the instant case and other cases in Orange County Superior Court. Plaintiff alleges this concealment evidence deliberate disregard for Government Claims Act, deliberate disregard for United States law applied to regulators, and/or it evidences Ruben Duran's knowledge that he controls the judiciary and would inevitably oppress and suppress Plaintiff's right of petition using his control. Plaintiff alleged previously, and continues to allege, that Kenneth J. Catanzarite is just like Thomas V. Girardi, but because that problem is so acute, Ruben Duran will use any means to conceal it because Catanzarite knows of the broader State Bar Enterprise.

44) On July 12, 2022, Leah Wilson and Ruben Duran wrote Senator Thomas Umberg requesting more money from California State Budget to horizontally distribute to attorneys -- and that protection of the public was not the only priority of The State Bar of California.

45) On July 13, 2022, Leah Wilson is quoted in a press release from the State Bar Enterprise that it had received allocation of $105 million from California's taxpayers to distribute horizontally to other lawyers through Legal Aid Association of California. The same press release highlights "more than $50.5 million in funds the State Bar plans to distribute" from IOLTA earnings in 2023. On information and belief, some of this $150.5 million will be delivered sub rosa to Duran, Wilson, and others associated with State Bar Enterprise. On information and belief, Plaintiff alleges Duran and Wilson know some money from IOLTA comes from racketeering activity, but each choose to invest the money horizontally to conceal the nature of the funds. Plaintiff alleges Wilson setup the "Leadership Bank Program" following a visit by State Bar Enterprise leadership in 2014 to Mongolia, after which a number of banks were added from China and Taiwan for IOLTA.

46) Between September 2022 and October 2022 under Duran's leadership, Board of Trustees, then California Supreme Court, approved the "Client Trust Account Protection Program." On information and belief, this program is intended to enable more money laundering, where it relies almost entirely upon self-regulation by attorneys holding client funds without state or federal supervision which is allegedly required at this point.

47) On March 10, 2023, The State Bar of California announced the results of two investigations (from self-selected investigators, including a white collar defense firm) in which it was disclosed that public employees accepted more than $1 million in bribes, were employed by Girardi-Keese, or accepted gifts to aid in the schemes of Girardi-Keese.

48) Plaintiff has alleged, and it continues to be concealed, that Catanzarite Law Corporation bribes staff of The State Bar of California, specifically Eli David Morgenstern and potentially Suzanne Grandt. Plaintiff alleges this denies him of good faith, honest services in government within the meaning of 18 U.S.C. § 1346. Plaintiff alleges this is concealed because Kenneth J. Catanzarite does not have "dementia" as does Thomas V. Girardi, purportedly.

49) On February 28, 2023, at 5:00 PM, Lisa Atwood, Legal Secretary of Ruben Duran's private law firm Best Best & Krieger,  emailed Plaintiff at justintimesd@gmail.com from lisa.atwood@bbklaw.com "Mr. Beck, please see the attached waivers of service of summons sent to you on behalf of the Superior Court of California, County of Orange, Hon. John C. Gastelum, Judge of the Superior Court, and Jorge E. Navarette, Clerk/Executive Officer of the California Supreme Court. Mr. Matthew Green will be representing the Defendants in this matter."

50) On February 28, 2023, at 7:30 PM, Plaintiff wrote from justintimesd@gmail.com to lisa.atwood@bbklaw.com, matthew.green@bbklaw.com, Corey Amundson of United States Department of Justice Public Integrity Section ("PIN") at corey.amundson@usdoj.gov, antitrust.complaints@usdoj.gov, and antitrust@ftc.gov :

**Justin Beck** <justintimesd@gmail.com>                          ✉ Feb 28, 2023, 7:30 PM   ☆   ↩   ⋮
to Lisa, Matthew, bcc: corey.amundson, bcc: antitrust.complaints, bcc: antitrust ▾

Ms. Atwood & Mr. Green,

Thank you for sending these waivers.

1) Can you confirm you are waiving service for the second amended complaint? It was accepted 2/27/23. I've attached a copy.

2) Are you representing Mr. Navarette and Mr. Gastelum in both their individual capacities and their official capacities?

Please see the RICO Case Statement in the related case which is also now before Honorable Cynthia A. Bashant (3:22-CV-0164-BAS-DDL). I don't expect to file another unless the Court requests it.

It is odd to see BB&K representing these parties when the cases involve alleged anticompetitive conduct in regulation under 15 U.S.C. Section 15 and *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, (2015). I trust and hope that we can work together in a manner more amicably than I have experienced with the Office of General Counsel and Board of Trustees for The State Bar of California, and that your firm has conflict walls in accordance with the law related to Ruben Duran, Partner of BB&K's Ontario office and in his capacity as Chairman of Board of Trustees.

Respectfully,

Justin S. Beck

51) On March 1, 2023, at 10:31 AM, from Ruben Duran's private law firm Best Best & Krieger, confirming his private law firm would be representing the persons allegedly under his control and in conspiracy with him in his personal and public capacity, matthew.green@bbklaw.com copying lisa.atwood@bbklaw.com wrote Plaintiff to the email justintimesd@gmail.com : "We

[Ruben Duran's private law firm]  are representing Judge Gastelum and Mr. Navarrette in any capacities in which they have been named in the action."

**90. Describe the alleged injury to business or property.**

1) Plaintiff is a former CEO whose salary was $325,000 in his last position before benefits and bonuses or annual increases. It is alleged the racketeering activity has destroyed his career and ability to earn this business or obtain property with this income for a period of 25-years, thereby $8,433,000 distinct of standard increases with experience and growth.

2) Plaintiff is alleged to have depleted his inherited IRA in the amount of $1,000,000 to endure predicate acts of alleged racketeering by Catanzarite Law Corporation enterprise and State Bar Enterprise.

3) Plaintiff is alleged to have sold and used the proceeds of real estate in the amount of $365,000 to endure predicate acts of alleged racketeering by the Catanzarite Law Corporation enterprise and State Bar Enterprise.

4) A Canadian merger (U.S. held property) worth approximately $261 million was allegedly destroyed with intent to defraud by Catanzarite Law Corporation enterprise and State Bar Enterprise conduct, and the Plaintiff's proportionate share thereof being $32.67 million.

5) The equivalent value of at least one similar transaction as outlined above being $32.67 million is alleged to have been lost due to racketeering activity and related "smear campaign."

6) Plaintiff, as a former CEO now un-employed due to the schemes, lost all incremental earnings capacity based on the trajectory of his career between 2019 and 2021 – and the proximate cause of the alleged racketeering activity upon his earnings capacity in business and property. The Plaintiff seeks $27,407,250 as being the incremental bonus and compensation, and the average salary of a CEO in San Diego, as being what he will not realize over the course of 25-years as a direct and proximate result of the alleged racketeering activity.

7) Plaintiff seeks $25,000,000 as being the detrimental effect on his credit, benefits, and the special value of his inherited IRA that was depleted to endure the alleged racketeering activity which will further inhibit Plaintiff's ability to earn business and acquire property. Plaintiff is uninsurable (D&O) because of ongoing, fraudulent non-judicial conduct supporting fraudulent

lawsuits filed and maintained by Catanzarite Law Corporation enterprise and deprivation of good faith honest services by State Bar Enterprise under 18 U.S.C. § 1346.

8) Plaintiff's insurance policy with Scottsdale Insurance Co. as third-party beneficiary has been depleted for at least $1.268 million as of July 2022, continuing. The Plaintiff incurred other legal fees in Orange County Superior Court in the malicious prosecution action Case No. 30-2020-01145998. Plaintiff expects to retain counsel in this action and related case and will seek all legal fees associated therewith, and any others according to proof incurred against his policy and through his prior or future counsel.

9) Plaintiff seeks $5,649,297 being the actual value of securities in March 2021 in Contakt World Technologies Corp. when the alleged racketeering activity caused him to resign from that company and commit to resolving his claims in Court without which he cannot continue his career. At the same time, the Plaintiff was to produce and host a show with celebrity Will Ferrell, which was allegedly destroyed as a result of the control of the enterprise and the related inhibition on the Plaintiff's ability to do business or obtain property in perpetuity.

10) Plaintiff seeks other judgments to which he was allegedly entitled but deprived of through the predicate acts and control over Orange County Superior Court enterprise via racketeering activity damage to his person, business, property, and psyche as being $138,889,249 which is the cumulative amount of economic damages he shows 1X sought over the course of 25-years.

**91. Describe the causal relationship between the alleged injury and the violation of the RICO statute.**

For 18 U.S.C. § 1962(c), it is alleged the predicate acts of non-judicial fraud directly caused the Plaintiff's loss of past income, and his ability to earn future income. Plaintiff had to use his $1 million IRA and proceeds from his mother's $365,000 condo because his income stopped as direct and proximate cause of the alleged racketeering activity targeting him. Catanzarite Law Corporation enterprise conduct deliberately destroyed the Western Troy Capital Resources merger and Plaintiff's proportionate value of $32.67 million. Catanzarite Law

Corporation and State Bar Enterprise conduct destroyed Plaintiff's opportunity to work with Will Ferrell in 2021, and his other health technology company, and the share value of $5.67 million.

For 18 U.S.C, § 1962(c), it is alleged the predicate acts of non-judicial fraud and judicial fraud directly compromised Plaintiff's ability to resolve his Government Claims Act litigation on the merits in Orange County Superior Court before Judge John C. Gastelum or by writ, and thereby the non-economic damages of at least 1X $138,889,249, which he will not receive because of the predicate acts. Had the predicate acts by State Bar Enterprise and the deprivation of Plaintiff's access to good faith, honest services in government within the meaning of 18 U.S.C. § 1346 not deliberately compromised by State Bar enterprise actors – Plaintiff would have received judgments in Orange County Superior Court or settlements from State of California on the merits. Plaintiff alleges Orange County Superior Court enterprise went so far as to remove Plaintiff's showings of damages and his filed motion for summary judgment papers from the record on February 15, 2023 without cause at the alleged direction of Charles Tsai, Ruben Duran, or Suzanne Grandt with intent to defraud Plaintiff of the same money and property.

For 18 U.S.C. § 1962(a), it is alleged that, had State Bar Enterprise used its IOLTA income, investments from State of California taxpayers, or federal funding to stop its own corruption and racketeering activity by State Bar Enterprise and Catanzarite Law Corporation enterprise, Plaintiff would not suffer damages. Had State Bar Enterprise actors not consistently prioritized attorney payments to Legal Aid Association of California over the public interest, Plaintiff would not have suffered damages. Had public employees and elected officials acting for State of California and The State Bar of California not prioritized personal gain, undisclosed compensation, and alleged money laundering involving IOLTA, CTA, Plaintiff would not have been damaged under 18 U.S.C. § 1962(c).

For 18 U.S.C. § 1962(b), control over Orange County Superior Court enterprise was allegedly used to restrict him from obtaining his economic and  non-economic damages of $138,889,249 against public employees where The State Bar of California, Suzanne Grandt, Ruben Duran, and Eli David Morgenstern refused to appear in Case No. 30-2020-01145998, State of California refuses to appear in that case and Case No. 30-2021-01237499, and Plaintiff

alleges he defeated all purported immunities and defenses as a matter of law so State Bar Enterprise used control of Orange County Superior Court enterprise to "fix" the case.

For 18 U.S.C. § 1962(d), conspiracy to commit alleged crimes caused all violations of 18 U.S.C. § 1962(a), (b), and (c). For instance, if Kenneth J. Catanzarite had not extorted Richard Francis O'Connor, Jr. and Amy Jeanette Cooper for signatures and property under a threat of securities fraud and elder abuse allegations in January 2019, Kenneth J. Catanzarite, Brandon Woodward, and Tim James O'Keefe could not have assumed control over Mobile Farming Systems, Inc. in January 2019. Had Kenneth J. Catanzarite not conspired with Mohammed Zakhireh and James Duffy through non-judicial fraud to agree to the January 23, 2019 shareholder consent – which each knew to be fraudulent --- the scheme could not have continued. Without the fraudulent scheme and conspiracy to prevent Plaintiff from achieving his money judgments against the government, State of California would appear in Superior Court but refuses to do so. Without the fraudulent schemes and Ruben Duran's agreement with Office of General Counsel, John C. Gastelum would not have been appointed on January 18, 2022 to allegedly defraud Plaintiff under direction of Office of General Counsel. Without alleged conspiracy to defraud Plaintiff and the United States, Plaintiff's antitrust petition to exhaust state remedies would not have resulted in the frivolous "Antitrust Determination 2022-001" or subsequently resulted in the filing of an antitrust petition without Plaintiff's authority in California Supreme Court. Had Supreme Court Justices been properly informed by Robert Retana of the anticompetitive conduct to which Plaintiff is subject, California Supreme Court would have exercised its duty to stop it in Orange County Superior Court.

Put simply, all of the racketeering activity at issue in this case is predicated on fraudulent schemes and the agreement of overt acts that were not judicial to support the fraudulent judicial activity. For all times relevant, Plaintiff was denied honest services per 18 U.S.C. § 1346.

**92. List the damages sustained by reason of the violation of 18 U.S.C. § 1962, indicating the amount for which each defendant is allegedly liable.**

$43,736,000 damages jointly and severally against Kenneth J. Catanzarite, Tim James O'Keefe, and Brandon Woodward for violation of 18 U.S.C. § 1962(c).

1    $131,208,000 treble damages jointly and severally against Kenneth J. Catanzarite, Tim

2    James O'Keefe, and Brandon Woodward for violation of 18 U.S.C. § 1962(c).

3    Not less than $90,723,898 damages jointly and severally against Suzanne Grandt, Ruben

4    Duran, Robert Retana, Eli David Morgenstern, Ellin Davtyn, George Cardona, Jorge Navarette,

5    The State Bar of California (Cal. Gov. Cod. § 815.2 or Cal. Gov. Cod. § 815.3), and State of

6    California (respondeat superior) for violation of 18 U.S.C. § 1962(c).

7    Not less than $272,171,694 treble damages jointly and severally against Suzanne Grandt,

8    Ruben Duran, Robert Retana, Eli David Morgenstern, Ellin Davtyn, George Cardona, Jorge

9    Navarette, The State Bar of California (Cal. Gov. Cod. § 815.2 or Cal. Gov. Cod. § 815.3), and

10   State of California (*respondeat superior*) for violation of 18 U.S.C. § 1962(c).

11   Any amount failing 18 U.S.C. § 1962(c) award as above against Ruben Duran, The State

12   Bar of California (Cal. Gov. Cod. § 815.2 or Cal. Gov. Cod. § 815.3), and State of California

13   (*resondeat superior*) for violation of 18 U.S.C. § 1962(a).

14   $138,889,249 damages jointly and severally against Ruben Duran, Eli David

15   Morgenstern, George Cardona, Suzanne Grandt, Robert Retana, Jorge Navarette, Ellin Davtyn,

16   John C. Gastelum, Orange County Superior Court, The State Bar of California (Cal. Gov. Cod.

17   § 815.2 or Cal. Gov. Cod. § 815.3), and State of California (*respondeat superior*) for violation

18   of 18 U.S.C. § 1962(b).

19   $416,667,747 treble damages jointly and severally against Ruben Duran, Eli David

20   Morgenstern, George Cardona, Suzanne Grandt, Robert Retana, Jorge Navarette, Ellin Davtyan,

21   John C. Gastelum, Orange County Superior Court, The State Bar of California (Cal. Gov. Cod.

22   § 815.2 or Cal. Gov. Cod. § 815.3), and State of California (*respondeat superior*) for violation

23   of 18 U.S.C. § 1962(b).

24   $13,482.18 damages jointly and severally against Anthony B. Scudder, Richard Francis

25   O'Connor, Jr., Cliff Higgerson, Amy Jeanette Cooper, Mohammed Zakhireh, James Duffy, Jim

26   Travis Tice, Eli David Morgenstern, Ruben Duran, Suzanne Grandt, Leah Wilson, John C.

27   Gastelum, George Cardona, The State Bar of California (Cal. Gov. Cod. § 815.2 or Cal. Gov.

28   Cod. § 815.3), and State of California (*respondeat superior*) for violation of 18 U.S.C. § 1962(d).

$40,446.54 treble damages jointly and severally against Anthony B. Scudder, Richard Francis O'Connor, Jr., Cliff Higgerson, Amy Jeanette Cooper, Mohammed Zakhireh, James Duffy, Jim Travis Tice, Eli David Morgenstern, Ruben Duran, Suzanne Grandt, Leah Wilson, John C. Gastelum, George Cardona, The State Bar of California (Cal. Gov. Cod. § 815.2 or Cal. Gov. Cod. § 815.3), and State of California (*respondeat superior*) for violation of 18 U.S.C. § 1962(d).

Any damages, up to $273,349,147 as above, and any treble damages, up to $820,047,441 as above, failing award for 18 U.S.C. § 1962(a)-(c) as above, against Anthony B. Scudder, Richard Francis O'Connor, Jr., Cliff Higgerson, Amy Jeanette Cooper, Mohammed Zakhireh, James Duffy, Jim Travis Tice, Eli David Morgenstern, Ruben Duran, Suzanne Grandt, Leah Wilson, John C. Gastelum, George Cardona, The State Bar of California (Cal. Gov. Cod. § 815.2 or Cal. Gov. Cod. § 815.3), and State of California (*respondeat superior*) for violation of 18 U.S.C. § 1962(d).

**93. List all other federal causes of action, if any, and provide the relevant statute numbers.**

COUNT VI—Cal. Gov. Cod. § 815.6 (Violation of Mandatory Duty, Fourteenth, U.S.)

COUNT VII—Cal. Gov. Cod. § 815.3 (IIED)

COUNT VIII—42 U.S.C. § 1983 (Retaliation/1st Amendment/Citizen Plaintiff)

COUNT IX—42 U.S.C. § 1983 (Judicial Deception)

COUNT X—15 U.S.C. § 15 (Antitrust, Private Right of Action)

**94. List all pending state claims, if any.**

It is difficult to ascertain how the Plaintiff will proceed with his two pending Superior Court actions where they are alleged to be obstructed and further inhibited from fair hearings in any reviewing court due to alleged control of the Orange County Superior Court enterprise and alleged compromise of any review of those proceedings subsequent to Plaintiff naming the government in both Superior Court cases and now naming Orange County Superior Court as an alleged enterprise defendant. For this reason, Plaintiff invokes supplemental jurisdiction in this court under 28 U.S.C. § 1367 for Cal. Gov. Cod. § 815.3, and Cal. Gov. Cod. § 815.6 causes of

action and Plaintiff relies upon Cal. Gov. Cod. § 815.2 for causing liability to The State Bar of California and State of California for violation of RICO as set forth above.

Nevertheless, Plaintiff's claims are pending as follows in Superior Court:

Malicious prosecution

California Government Code § 815.6

California Government Code § 815.2

California Government Code § 815.3

Unfair Business Practices

Intentional Infliction of Emotional Distress

Negligence

**95. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.**

1) Plaintiff alleges corruption of State Bar Enterprise discretely of his own harm and damages and alleges the need for federal intervention for cause. Plaintiff alleges the Thomas V. Girardi matter, which was allegedly concealed from the public as the damages were done, is akin to the Kenneth J. Catanzarite matter in that the damages are concealed from the public by active market participants led by Duran as the problem is acutely threatening the public.

2) Plaintiff has pending claims under Federal Tort Claims Act, the status of which he will advise this Court of promptly upon their settlement, disposition, or vesting of suit. Plaintiff will supplement his claims or file a new case. In any event, Plaintiff alleges United States has a duty to protect Plaintiff from public corruption in California known to the United States, and to restrain alleged violations of RICO and antitrust laws by regulators in California.

3) Non-diverse Plaintiff sought permission from State of California to sue the entity in Federal Court however, Plaintiff alleges that State of California has *respondeat superior* liability for individual actors "as provided by statute" according to California law, and no Eleventh Amendment immunity due to an alleged abuse of sovereignty and commingling of State of California operations with The State Bar of California's alleged corruption of State of California. Further, the Eleventh Amendment (as plaintiff will detail in motions) does not bar Plaintiff's suit

as he is not diverse. Finally, State of California refuses to appear in Superior Court after being served eight times. Plaintiff alleges this to invoke Federal jurisdiction as a fundamental right of due process for the non-diverse Plaintiff by reverse incorporation of Fourteenth into Fifth (U.S.)..

4) Plaintiff filed two motions for summary judgment in this case with an exhaustive, cited evidentiary record in support of his claims *prior to discovery*. They were terminated after Charles Tsai allegedly obstructed justice in this Court by deliberately misleading Honorable Cynthia A. Bashant. Plaintiff alleges he must be granted the opportunity to amend his pleadings or provide support for his allegations if The State Bar of California and its public/private actors are successful in misleading this Court further in seeking wholesale dismissal. Plaintiff draws this Court's attention to U.S. Supreme Court's decision and supporting FTC guidance: The State Bar of California, as a regulator of active market participants, is **not the sovereign actor here.**

5) In Orange County Superior Court after Plaintiff received a vested right to sue The State Bar of California, Suzanne Grandt allegedly defrauded the Court where control of the judiciary by The State Bar of California is central to the Plaintiff's allegations and need for U.S. intervention. (Plaintiff alleged this control and compromise before it was conceded by The State Bar of California publicly by press release on March 10, 2023). Specifically, Ms. Grandt told Judge John C. Gastelum in Orange County Superior Court that Board of Trustees, Office of General Counsel, and Office of Chief Trial Counsel did not coordinate decisions – then disclosed inadvertently that this was materially false, she knew it was false, and the Court relied on it. Further, due to alleged control of the enterprise, "sustained demurrer without leave" was ordered on the basis of blanket immunity that turns on facts, and despite Plaintiff having a vested right to sue. The "sustained demurrer without leave to amend" from Judge John C. Gastelum cites an unconstitutional decision from 2000 applicable to lawyers (not the public), which precedes the date that The State Bar of California, its officers, directors, and employees became expressly subject to Government Claims Act (January 1, 2019). The "sustained demurrer without leave to amend" also precedes, by 15 years, federal antitrust laws applied to regulator The State Bar of California in which it was determined The State Bar of California and its actors are not sovereign. It is alleged Gastelum deliberately ignored binding law at direction of State Bar Enterprise.

Plaintiff will notice this Court of RICO decisional law in the 9th Circuit showing public corruption to be actionable, where fraudulent schemes and bribery allegedly fall under 18 U.S.C. § 1346 and virtually all conduct of Catanzarite Law Corporation enterprise and State Bar Enterprise against Plaintiff fits this definition.

Plaintiff will notice this Court of Eleventh Amendment cases in the 9th Circuit showing the State of California is properly named a party to this case filed by non-diverse Plaintiff, and other authority showing the Eleventh Amendment is not relevant to this case.

CORRECTION, AMENDMENT TO SECOND AMENDED COMPLAINT:

Paragraph ¶ 203 on PageID.4703 is amended to include "Catanzarite Law Corporation" as a defendant under Count V—RICO § 1962(d) on the basis that a corporation can conspire with its own officers and directors, here, Kenneth J. Catanzarite. Plaintiff alleges Catanzarite Law Corporation agreed to commit all alleged racketeering activity of Kenneth J. Catanzarite.

Respectfully Submitted,

March 26, 2023

_____

Justin S. Beck

In Propria Persona

**PROOF OF SERVICE**

I, Justin S. Beck, hereby declare that I am over 18 years of age and am a party to this action, in in Propria Persona, and that my address is 3501 Roselle St., Oceanside, CA 92056.

On March 26, 2023, I served or scheduled for service one copy of the following document:

**RICO CASE STATEMENT & SUPPLEMENT TO SECOND AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery March 27, 2023 to the following email addresses:

| | |
|---|---|
| State of California | AGElectronicService@doj.ca.gov |
| Tim Jude Vanden Heuvel | tim.vandenheuvel@doj.ca.gov |
| Azucena Lopez | azucena.lopez@doj.ca.gov |
| Rhonda Mallory | rhonda.mallory@doj.ca.gov |
| Tania Hopkins | tania.hopkins@doj.ca.gov |
| Robert Retana | robert.retana@calbar.ca.gov |
| Governor of California | govlegalunit@gov.ca.gov |
| Matthew Green | matthew.green@bbklaw.com |
| Ruben Duran (Public) | ruben.duran@calbar.ca.gov |
| Ruben Duran (Private) | ruben.duran@bbklaw.com |
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |
| U.S. Attorney's Office | efile.dkt.civ@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

3:22-CV-01616-AGS-DDL

1    I declare the foregoing to be true under penalty of perjury under the laws of the State of California

2  and United States. I am signing this from Oceanside, California on March 26, 2023.

Justin S. Beck, Declarant

2                                3:22-CV-01616-AGS-DDL