FILED

APR 0 7 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DM                                    DEPUTY

Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JUSTIN S. BECK,

        Plaintiffs,

        vs.

CATANZARITE LAW CORPORATION;
STATE OF CALIFORNIA; THE STATE BAR
OF CALIFORNIA; ORANGE COUNTY
SUPERIOR COURT; ORANGE COUNTY
DISTRICT ATTORNEY'S OFFICE; RUBEN
DURAN, ESQ.; SUZANNE CELIA
GRANDT, ESQ.; RICHARD FRANCIS
O'CONNOR, JR.; MOHAMMED
ZAKHIREH; JAMES DUFFY; KENNETH
CATANZARITE, ESQ.; JIM TRAVIS TICE,
ESQ.; NICOLE MARIE CATANZARITE
WOODWARD, ESQ.; BRANDON
WOODWARD, ESQ.; TIM JAMES
O'KEEFE, ESQ.; AMY JEANETTE
COOPER; CLIFF HIGGERSON; ELI DAVID
MORGENSTERN, ESQ.; LEAH WILSON,
ESQ.; ROBERT GEORGE RETANA, ESQ.;
ELLIN DAVTYAN, ESQ.; JOHN C.
GASTELUM; JORGE E. NAVARETTE;
GEORGE SARGENT CARDONA, ESQ.;
ANTHONY B. SCUDDER

        Defendants,

UNITED STATES ATTORNEY GENERAL;
UNITED STATES OF AMERICA

        Nominal Defendants

Case No.: 3:22-CV-01616-AGS-DDL

Judge:      Hon. Andrew G. Schopler

**PLAINTIFF JUSTIN S. BECK'S
OPPOSITION TO JOINDER BY
DEFENDANT STATE OF CALIFORNIA
IN MOTION TO DISMISS SECOND
AMENDED COMPLAINT; SUPPORTING
MEMORANDUM OF POINTS AND
AUTHORITIES**

Hearing Date: May 8, 2023

REQUEST FOR ORAL ARGUMENT

Action Filed: January 30, 2023

Trial Date:    None Set

## I.    INTRODUCTION

"The United States Attorney [and Attorney General of California are] the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a [case alleging public corruption affecting United States citizens] is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or <u>innocence suffer</u>. He may [defend] with earnestness and vigor — indeed, he should do so. But, while he may [deflect] hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful [decision] as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935)

"In a March 10, 2023 press release, The State Bar of California revealed two heavily redacted investigative reports detailing illegal payments of $1 million from Thomas V. Girardi to employees of The State Bar of California, gifts and other items of value to staff and leadership, relatives of The State Bar of California staff employed by Girardi's firm (Girardi-Keese), improper involvement of Office of Chief Trial Counsel in matters assigned to outside conflict counsel, Executive Director ghostwriting decisions in matters assigned to outside conflict counsel, and various "unethical and unacceptable behavior." Supplement, p. 3, ¶ 11. Plaintiff alleged this in his prior pleadings before it was publicly admitted, and he alleges leadership of The State Bar of California knew about this in 2014. SAC, p. 11, ¶¶ 61-65. Plaintiff alleges Kenneth J. Catanzarite of Catanzarite Law Corporation is allegedly bribing staff of The State Bar of California (including, but not limited to Eli David Morgenstern and Suzanne Grandt) in a manner similar to Girardi. Plaintiff alleges State Bar leadership are fully aware of this but continue to publish false statements to conceal corruption." SAC, p. 3, ¶ 15.

State Bar defendants and State of California are muddying the waters on what is really a simple issue requiring well-pleaded facts to substantiate a very serious smatter (in which they are *required* to be neutral, just as with U.S. Attorney's Office): is The State Bar of California a corrupt organization requiring the imposition of damages done, and federal injunctive relief? The answer to this is yes. Is it causing undue harm to United States citizens in furtherance of private attorney interests? Unequivocally. *Now the burning question*: why is defense counsel so earnestly seeking to conceal this, here?

## II.    FACTUAL ALLEGATIONS AGAINST STATE OF CALIFORNIA

Plaintiff alleges State's direct liability for illegal conduct, and for its non-sovereign actors on *respondeat superior* basis. SAC, pp. 42, 44, 46, 50-52. (It enables crimes under color of sovereignty.)

"It is alleged State Bar Enterprise controls State of California, the world's largest sub-national economy – not the other way around." Supplement, p. 116 (14:17). "State Bar Enterprise through its alleged stranglehold on the judicial system by corruption allegedly controls $3.63 trillion in U.S. GDP, and its admittance of 700+ Club members pro hac vice across state lines allegedly affects commerce in 49 states who are subject to the allegedly predatory practices, bribery of public employees including law enforcement, and racketeering activity of Catanzarite Law Corporation, 700+ Club, and State Bar Enterprise." Id., p. 119 (24:28). "Further, it is alleged the same corruption…allegedly affects and controls a large percentage of the national market for legal education. Where it is alleged State Bar Enterprise is systemically corrupt and commingled with State of California, this is allegedly defrauding the United States as underwriter for student loans…controlled by the same alleged racketeering activity." Id., p. 120 (1:5). "In any event, Plaintiff alleges United States has a duty to protect Plaintiff from public corruption in California known to the United States, and to restrain alleged violations of RICO and antitrust laws by [non-sovereign] regulators in California." Id., p. 142 (20:22). Plaintiff alleges State of California has respondeat superior liability for individual actors "as provided by statute" according to California law, and no Eleventh Amendment immunity due to an alleged abuse of sovereignty and commingling of State of California operations with The State Bar of California's alleged corruption of State of California. Further, the Eleventh Amendment…does not bar Plaintiff's suit as he is not diverse. Finally, State of California refuses to appear in Superior Court after being served eight times. Plaintiff alleges this to invoke Federal jurisdiction as a fundamental right of due process for the non-diverse Plaintiff by reverse incorporation of Fourteenth into Fifth (U.S.) *See Bolling v. Sharpe*, 347 U.S. 497, (1954) Charles Tsai transitioned from State AG to State Bar to defend these cases. Id., p. 83-84. State Bar announced receipt of $20 million in federal funds, which it paid to active market participants, as public suffered from its corruption. Id., p. 71 (19:20). "State of California is a passive participant in…alleged fraud against the United States government through the conduct of State Bar Enterprise against national insurance carriers, student loan programs, Medicare." Id., p. 105 (14:17).

"When Plaintiff sued The State Bar of California and later State of California which refused to appear in Superior Court despite repeated service in Orange County Superior Court Case No. 30-2020-01145998 and 30-2021-01237499, Plaintiff alleges public employees and elected officials of The State Bar of California and State of California embarked on a spectacularly relentless mission to conceal public corruption and defraud Plaintiff. Specifically, Plaintiff alleges each to be involved in the schemes, or they would resolve government claims amicably." Supplement, p. 11, ¶ 69 (19:24).

Other victims: "United States. The conduct at issue allegedly defrauds the United States in violation of 18 U.S.C. § 371. Beyond the harm to Courts and innocent defendants sued under knowingly fraudulent pretenses, or whose money is stolen, Plaintiff is informed by law students subject to similar predation as Plaintiff has experienced by other staff bound by duty to help and protect them. Where The State Bar of California affects approximately 20% of the United States market for legal services and controls approximately $3.63 trillion in interstate commerce, the effect on the United States cannot be underestimated. It is alleged The State Bar of California is an unlawful trust, but it is not capable of being penetrated without federal intervention because the unlawful trust controls the entire judicial system in California, and may even obstruct the Federal judiciary. In one manner, the United States underwrites student loans for law school; The State Bar of California allegedly defrauds the U.S. through its alleged corrupt monopoly on the same." Id., p. 29 (3:13).

Other victims: "44 United States Persons, daily. Plaintiff alleges the deliberate fraud conducted by The State Bar of California, some of which is alleged in the predicate acts outlined herein, occurs 44 times per day at minimum and comprises fraudulent schemes under 18 U.S.C. § 1346. This number is based on the number of persons who allegedly inform The State Bar of California of their harm, who are subject to the predatory practices by mail and wire, negligence, and deliberate protection of 700+ Club members and other attorneys who defraud the public with commingled operations by and between the allegedly corrupt attorneys' practices, Office of General Counsel, Office of Chief Trial Counsel, Executive Director, and Board of Trustees. No other State has "State Bar Court." It is alleged that these 44 United States Persons would not be harmed but for the abuse of sovereignty and alleged systemic corruption that State Bar Enterprise has caused and will cause without federal intervention." SAC, p. 29 (14:24). Plaintiff alleges seventy-one predicate acts in conformance to 9(b).

3:22-CV-01616-AGS-DDL

"Plaintiff is direct target of a pattern of racketeering activity intended to 1) defraud him of business and property, and 2) to prevent him from his money judgments for claims against the government to conceal the conduct and suppress the evidence of public corruption in his possession." SAC, p. 3, ¶ 6 (2:4). "State of California…act[s] to continue the unlawful activity and defraud." SAC, p. 3, ¶ 12 (23:25). "State of California allegedly abuses sovereignty in refusing to actively supervise (as defined by federal antitrust laws in regulation per FTC guidance after 2015) The State Bar of California, State-elected official Ruben Duran, Esq., and each public employee, elected official named herein. State liability arises under Gov. Cod. §§§ 815.2, 815.3, and 815.6." SAC, p. 4, ¶ 19 (17:21).

## III.    OPPOSITION TO STATE OF CALIFORNIA'S JOINDER

### A.    Rule 8 is Not the Standard for Antitrust or RICO Allegations Lying in Fraud

State of California joins State Bar defendants' arguments that Plaintiff's claims should be dismissed for failing to comply with F.R.Civ.P. 8. Joinder, p. 3, ¶ 1 (14:18). F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957). For claims that do not involve fraud or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is entitled to relief." F.R.Civ.P. 8(a). F.R.Civ.P. 9(b), however, holds "Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." SAC, Supplement.

Plaintiff's claims all lie in fraud, corruption, and protectionist behavior violative of antitrust laws involving active market participants (including State of California Attorney General's Office). The SAC and Supplement at Docket #50 "is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc*. 818 F.2d 1433, 1439 (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al*., 989 F.Supp.2d 973 978 (C.D.Cal. 2013). It is simply improper to demand Plaintiff conform to Rule 8 for fraud allegations.

**B.      State of California is Not Immune from Non-Diverse Plaintiff's Claims**

State of California joins State Bar defendants' arguments that Plaintiff's claims should be dismissed due to the Eleventh Amendment and lack of subject matter jurisdiction under F.R.Civ.P. 12(b)(1). Joinder, p. 3, ¶ 2 (19:23). Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N. Y.* v. *County of Oneida,* 414 U.S. 661, 666 (1974); see also *Romero* v. *International Terminal Operating Co.,* 358 U.S. 354, 359 (1959).  The question whether a federal statute creates a claim for relief is not jurisdictional"); *Montana-Dakota Util. Co.* v. *Northwestern Public Service Co.,* 341 U.S. 246, 249 (1951).

State's joinder to State Bar defendants' Rule 12(b)(1) arguments fail at threshold. For antitrust injunctions, U.S. District Court has original subject matter jurisdiction under 15 U.S.C. § 4 and 15 U.S.C. § 15 for damages. For RICO injunctions, U.S. District Court has original subject matter jurisdiction under 18 U.S.C. § 1964(a) and 18 U.S.C. § 1964(c) for damages. For constitutional claims, U.S. district court has original jurisdiction under 28 U.S.C. § 1331. For Cal. Gov. Cod. § 815.3 and Cal. Gov. Cod. § 815.6, U.S. District Court has supplemental jurisdiction under 28 U.S.C. § 1367.

"Federal antitrust law…is "as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United States v. Topco Associates, Inc.,*405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). "The antitrust laws declare a considered and decisive prohibition by the Federal Government of cartels, price fixing, and other combinations or practices that undermine the free market." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* 574 U.S. 494, 502 (2015) "[T]he Court in *Parker v. Brown* interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity. See 317 U.S., at 350–351, 63 S.Ct. 307." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* 574 U.S. 494, 503 (2015). (This law protects the public, *not* State Bar defendants nor State).

State of California, without separation of powers from The State Bar of California and a refusal to protect the public from corruption, is allegedly defrauding the United States as set forth above. Plaintiff offers seventy-one specific predicate acts and must be allowed to show why he alleges this.

1    "But while the Sherman Act confers immunity on the States' own anticompetitive policies out of

2    respect for federalism, it does not always confer immunity where, as here, a State delegates control over

3    a market to a nonsovereign actor." See *Parker, supra,* at 351, 63 S.Ct. 307 ("[A] state does not give

4    immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that

5    their action is lawful"). For purposes of *Parker*, a nonsovereign actor is one whose conduct does not

6    automatically qualify as that of the sovereign State itself. See *Hoover, supra,* at 567–568, 104 S.Ct.

7    1989. State agencies are not simply by their governmental character sovereign actors for purposes of

8    state-action immunity. See *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d

9    572 (1975) ("The fact that the State Bar is a state agency for some limited purposes does not create an

10   antitrust shield that allows it to foster anticompetitive practices for the benefit of [State, State Bar

11   defendants nor Catanzarite]"). Immunity for state agencies, therefore, requires more than a mere facade

12   of state involvement, for it is necessary in light of *Parker* 's rationale to ensure the States accept political

13   accountability for anticompetitive conduct they permit and control." See *FTC v. Ticor Title Ins*, 504

14   U.S. 636 (1992). *N.C. State Bd., supra,* 574 U.S. 494, 504-5 (2015). (State waives sovereignty here.)

15       The State Bar of California is not protected by the Eleventh Amendment because it is "not the

16   sovereign." Even if it were, Plaintiff is non-diverse with permission to sue where U.S. District Court has

17   subject matter jurisdiction for antitrust, RICO, and U.S. Constitution claims. Further, The State Bar of

18   California announced it accepted $20 million from the U.S. government on July 13, 2022, which it used

19   to pay active market participants. Supplement, Predicate Act #53, p. 71. The 9th Circuit addressed the

20   issue, "reaffirming…precedent that a State waives Eleventh Amendment immunity by accepting federal

21   funds. *Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir. 200) (reaffirming Douglas's holding that by

22   accepting federal funds, a state waives its sovereign immunity); *Lovell v. Chandler*, 303 F.3d at 1051.

23       **C.    Plaintiff Does Not Fail to State Sufficient Facts to State a Claim**

24       State of California joins State Bar defendants' arguments that Plaintiff's claims should be

25   dismissed for failing to state a claim under F.R.Civ.P. 12(b)(6), and that the action is frivolous under 28

26   U.S.C. § 1951(e)(2)(B). Joinder, p. 3, ¶ 3 (24:28). F.R.Civ.P. 12(b)(6) allows a party to assert "failure

27   to state a claim upon which relief can be claimed" by motion. Quoting *Burgert v. Lokelani Bernice

28   Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), "[a]ll allegations of material fact are taken as

1  true and construed in the light most favorable to the nonmoving party" (Plaintiff). "A court considering
2  a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than
3  conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the
4  framework of a complaint, they must be supported by factual allegations. When there are well-pleaded
5  factual allegations, a court should assume their veracity and then determine whether they plausibly give
6  rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.
7  2d 868 (2009). F.R.Civ.P. 12(d) converts the Motion to Dismiss into one for summary judgment under
8  Rule 56 if "matters outside the pleadings are presented to and not excluded by the Court," as here,
9  granting all parties opportunity to present pertinent evidence. Plaintiff welcomes this opportunity.

10     The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v.*
11  *Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful
12  presumption against rejecting pleadings for failure to state a claim.") "In exercising its discretion to
13  summarily dismiss claims on its own motion or by motion of the defendants, the Court takes into
14  consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an
15  opportunity to amend their pleadings to remedy any deficiencies that were identified during screening
16  or after a motion to dismiss has been adjudicated. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,
17  1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling,
18  and in the normal course district courts should freely grant leave to amend when a viable case may be
19  presented."). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence
20  to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202,
21  1205 (9th Cir. 2007) (citations omitted)." *Hook v. Idaho*, 1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022)
22  There are several fraudulent schemes pleaded, and seventy-one predicate acts. Supplement, pp. 30-85.

23     As for 28 U.S.C. § 1951(e)(2)(B), this is not an *in forma pauperis* proceeding. Dkt. #5. The case
24  did not commence until payment of the fee, and the Court did not rule on any request to waive fees. This
25  argument is moot. Further, it is nonsensical that Plaintiff cannot state a claim or that the claims are
26  frivolous when State Bar defendants and State fundamentally misunderstand or misrepresent the law.
27  State Bar defendants are not sovereign actors, have no Eleventh Amendment protection, and State of
28  California is allegedly enabling criminal behavior against non-diverse Plaintiff and the United States.

8                                  3:22-CV-01616-AGS-DDL

**D.      State of California is Not Named in Counts VIII or IX**

State of California joins State Bar defendants' arguments that Plaintiff's claims should be dismissed for failing to state a claim under F.R.Civ.P. 12(b)(6) as to Counts VIII or IX because it does not constitute a person. Joinder, p. 4, ¶ 4 (1:7). State of California is not named in Counts VIII or IX. Whether State of California or The State Bar of California choose to indemnify them, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("[P]laintiffs may seek damages against a state official in his personal capacity."); *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (stating the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities"); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394–95 (9th Cir. 1997); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). "[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity." *Mitchell*, 818 F.3d at 442 (citing *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)). Even if they had Eleventh Amendment protection, which they don't, individual actors remain and State is not named anyway.

**E.      Breach of Mandatory Duty, IIED Claims are Actionable Against State**

State of California joins State Bar defendants' arguments that Plaintiff's claims should be dismissed for failing to state a claim under F.R.Civ.P. 12(b)(6) for breach of mandatory duty and intentional infliction of emotional distress. Joinder, p. 5, ¶ 5 (8:14). Count VI is for breach of mandatory duty. SAC, p. 51, ¶ 231. Count VII is for intentional infliction of emotional distress. Id., ¶ 240 (26:27).

State Bar defendants are "not the sovereign," so sovereign immunities are moot. But even if they were available: Cal. Gov. Code § 815 holds "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." As Government Code section 820.8 makes clear, "[n]othing in this section [on specific immunities to meet causes of action] exonerates a public employee from liability for injury

1    proximately caused by his own negligent **or wrongful act or omission**." (Immunities are available to

2    *sovereign* actors for *policy*, not operational, acts). *Johnson v. State* (1968) 69 Cal.2d 782.

3       "Liability is '<u>provided by statute</u>' under Cal. Gov. Cod. § 815.2, Cal. Gov. Cod. § 815.3, Cal.

4    Gov. Cod. § 815.6, 42 U.S.C. § 1983, and 18 U.S.C. § 1962(a)-(d) in this action. The statutes that provide

5    for liability do not need to be part of Government Claims Act, and do not need to provide specifically

6    on their face that they apply to public entities." *Rodriguez v. Inglewood Unified School Dist.* (1986) 186

7    Cal.App.3d 707." SAC, p. 8, ¶ 47. "In a tort action against a public entity… the question is whether any

8    statutory immunity applies to bar plaintiff's [RICO, antitrust, Constitutional, or intentional infliction of

9    emotional distress] cause of action." *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 202. "[State

10    Bar, State] contends that it is immune under Government Code sections [815.2, 818.4, 821, 821.2]. None

11    of these immunities is applicable." Id. For instance, "Government Code section 818.2 provides that a

12    public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing

13    to enforce any law." This section was intended to provide immunity for legislative and quasi-legislative

14    actions [e.g., **policy decisions**]. Cal. Law Revision Com. Committee to Gov. Cod. § 818.2.

15       Cal Gov. Cod. § 815.6 holds "Where a public entity is under a mandatory duty imposed by an

16    enactment that is designed to protect against the risk of a particular kind of injury, the public entity is

17    liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public

18    entity establishes that it exercised reasonable diligence to discharge the duty." State Bar has

19    "implementation guidelines" because all of its attorneys are dutifully bound to uphold the United States

20    Constitution – it is not an option. It is *mandatory duty*. Cal. Bus. Prof. Cod. § 6068(a). (Court decision

21    cited by State Bar defendants does not involve attorneys bound to uphold Fourteenth Amendment.)

22    California Supreme Court also finds mandatory duty to Plaintiff owed via special relationship. SAC, p.

23    2, ¶ 2. *Brown v. U.S. Taekwondo*, 11 Cal.5th 204, 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021).

24    Concerning the purported (non-specific) immunities, "To apply [immunity] sections to immunize [State

25    Bar or State] from liability for beach of a mandatory duty would completely eviscerate Government

26    Code section 815.6 which specifically provides for liability of the public entity for injuries resulting

27    from a failure to carry out a mandatory duty imposed by a public enactment." *Elton v. County of Orange*,

28    (1970) 3 Cal.App.3d 1053, 1059. See also *Alejo v. City of Alhambra*, 75 Cal.App.4th at p. 1194.

3:22-CV-01616-AGS-DDL

**IV.      CONCLUSION**

Plaintiff is in an impossible position here. State Bar defendants and State want conformance to Rule 8, but Plaintiff is separately told he cannot state a claim on spurious legal grounds. If Plaintiff proves even one more predicate act of 18 U.S.C. § 1343 by any State Bar defendant, he is entitled relief.

Dissenting to *Twombly's* (later, *Iqbal's*) heightened pleading standards for fraud, which Plaintiff adheres to in earnest through his Supplement and SAC...Justice Stevens writes "[u]nder the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in. The merits of a claim would be sorted out during a flexible pretrial process and, as appropriate, through the crucible of trial. See *Swierkiewicz*, 534 U.S., at 514, 122 S. Ct. 992, ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim") *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 575 (2007) "[O]ne purpose of Rule 8 was to get away from the highly technical distinction between statements of fact and conclusions of law . . ."); *Oil, Chemical & Atomic Workers Int'l Union v. Delta*, 277 F.2d 694, 697 (CA6 1960) ("Under the notice system of pleading established by the Rules of Civil Procedure, . . . the ancient distinction between pleading 'facts' and 'conclusions' is no longer significant"); 5 Wright & Miller § 1218, at 267 ("[T]he federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties"). "Defendants entered into a contract" is no more a legal conclusion than "defendant negligently drove," see Form 9; supra, at 575-576, at 952. Indeed it is less of one.9 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 590 (2007) *Brownlee v. Conine*, 957 F.2d 353, 354 (CA7 1992) ("The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading, . . . so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it")" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 590 (2007)

Cutting through the muck of State Bar defendants and State's motions to dismiss and joinder, they don't want to answer the specific allegations for the very reasons Plaintiff brings this action and its related case. It is simply improper to request dismissal of Plaintiff's detailed allegations, however long.

Respectfully Submitted,

April 6, 2023,                          _____

                                        Justin S. Beck, Opposing Party, Plaintiff

**PROOF OF SERVICE**

1

2      I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action,

3 and that my address is 3501 Roselle St., Oceanside, CA 92056.

4      On April 7, 2023, I served one copy of the following documents:

5

6 **PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO JOINDER BY DEFENDANT STATE OF CALIFORNIA IN MOTION TO DISMISS SECOND AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

7

8      Participants in the case who are registered CM/ECF users will be served when these papers are

9 filed with the Court.

10      *See the CM/ECF service list.*

11      Electronic service is scheduled for delivery April 6, 2023, to the following email addresses:

12      Corey Amundson                corey.amundson@usdoj.gov

13      Todd Gee                      todd.gee@usdoj.gov

14      Robert Heberle                 Robert.heberle@usdoj.gov

15      Sean Mulryne                 sean.mulryne@usdoj.gov

16      U.S. Attorney's Office           efile.dkt.civ@usdoj.gov

17

18      By electronic mail by personally transmitting a true copy thereof via an electronic email service

19 connected to the internet, addressed to the email address listed above [X].

20      I declare the foregoing to be true under penalty of perjury under the laws of the State of California

21 and United States. I am signing this from Oceanside, California on April 7, 2023.

22

23

24                                       _____

25                                        Brian Bargabus, Declarant

26

27

28

12                                       3:22-CV-01616-AGS-DDL