1  Justin S. Beck
2  3501 Roselle St.,
   Oceanside, CA 92056
3  760-449-2509
   justintimesd@gmail.com
4  *In Propria Persona*

FILED

APR 0 7 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ⊙ꟼ          DEPUTY

5
6  **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

7  JUSTIN S. BECK,                              )  Case No.: 3:22-CV-01616-AGS-DDL
                                                )
8              Plaintiffs,                       )  Judge:      Hon. Andrew G. Schopler
                                                )
9     vs.                                        )
                                                )  **PLAINTIFF JUSTIN S. BECK'S**
10                                               )  **OPPOSITION TO STATE BAR**
    CATANZARITE LAW CORPORATION;                 )  **DEFENDANTS' MOTION TO DISMISS**
11  STATE OF CALIFORNIA; THE STATE BAR)            **SECOND AMENDED COMPLAINT;**
    OF CALIFORNIA; ORANGE COUNTY                 )  **SUPPORTING MEMORANDUM OF**
12  SUPERIOR COURT; ORANGE COUNTY                )  **POINTS AND AUTHORITIES**
    DISTRICT ATTORNEY'S OFFICE; RUBEN )
13  DURAN, ESQ.; SUZANNE CELIA                   )  Hearing Date: May 8, 2023
14  GRANDT, ESQ.; RICHARD FRANCIS                )
    O'CONNOR, JR.; MOHAMMED                      )  REQUEST FOR ORAL ARGUMENT
15  ZAKHIREH; JAMES DUFFY; KENNETH               )
    CATANZARITE, ESQ.; JIM TRAVIS TICE,          )  Action Filed: January 30, 2023
16  ESQ.; NICOLE MARIE CATANZARITE               )
    WOODWARD, ESQ.; BRANDON                      )  Trial Date:    None Set
17  WOODWARD, ESQ.; TIM JAMES                    )
    O'KEEFE, ESQ.; AMY JEANETTE                  )
18  COOPER; CLIFF HIGGERSON; ELI DAVID )
19  MORGENSTERN, ESQ.; LEAH WILSON,              )
    ESQ.; ROBERT GEORGE RETANA, ESQ.;            )
20  ELLIN DAVTYAN, ESQ.; JOHN C.                 )
    GASTELUM; JORGE E. NAVARETTE;                )
21  GEORGE SARGENT CARDONA, ESQ.;                )
22  ANTHONY B. SCUDDER                           )
                                                )
23                                               )
               Defendants,                       )
24                                               )
                                                )
25  UNITED STATES ATTORNEY GENERAL; )
    UNITED STATES OF AMERICA                     )
26                                               )
                                                )
27             Nominal Defendants                )
                                                )
28  ─────────────────────────────────── )

i                                    3:22-CV-01616-AGS-DDL

TABLE OF CONTENTS

I.     **INTRODUCTION**...............................................................................................1

II.    **RELEVANT BACKGROUND**........................................................................2

      A.    Binding Decisional Law of U.S. Supreme Court & California's Refusal to Conform

      B.    Conduct of State Bar Enterprise & Investments to Legal Aid Association of California

      C.    The State Bar of California Admits to Its Own Corruption & Bribery Schemes

      D.    Plaintiff's Deliberately Obstructed Antitrust Petition in California Supreme Court

      E.    Plaintiff's Companion Action with Varied Legal Theories

      F.    Plaintiff's Allegations Against Non-Sovereign Actors in Dual Capacities in this Case

           1. The State Bar of California

           2. Ruben Duran, Chair of State Bar; Partner, Best Best & Krieger

           3. Suzanne Celia Grandt, Individually and Officially

           4. Ellin Davtyan, Individually and Officially

           5. Leah Wilson, Individually and Officially

           6. Robert George Retana, Individually and Officially

           7. George Sargent Cardona, Officially

III.    **LEGAL STANDARDS**............................................................................11-12

      A.    Rule 8

      B.    Rule 12(b)(6)

      C.    Rule 12(b)(1)

      D.    This is Not an In Forma Pauperis Proceeding

IV.    **ARGUMENT**.......................................................................................12-24

      **A. Short and Plain Statements will Not Suffice for RICO or Antitrust Lying in Fraud**

      **B. U.S. District Court Possesses Original & Supplemental Jurisdiction for All Claims**

           1. The State Bar of California is "Not the Sovereign" – Eleventh Amendment is Moot

           2. Individual Defendants Are Not Sovereign Actors – Eleventh Amendment is Moot

           3. Cardona, Morgenstern, and Grandt's Prosecution is Not at Issue

           4. Eleventh Amendment Does Not Apply to Individual Capacities in Ninth Circuit

ii

C. SAC and Supplement Are Not Frivolous and Do Not Fail to Allege Facts to State Claims

    1. Plaintiff Sufficiently States Claims Under RICO

    2. Plaintiff Sufficiently States Claims Under Section 1983

       a. Retaliation Claim—First Amendment—Citizen Plaintiff

       b. Judicial Deception Claim

    3. Plaintiff's Remaining Claims Have Merit; Plaintiff Must Be Allowed to Show It

    4. SAC and Supplement Do Not Fail to State a Claim

V.     CONCLUSION ....................................................................................25

3:22-CV-01616-AGS-DDL

1

## TABLE OF AUTHORITIES

2

Cases—State

3  *Alejo v. City of Alhambra*, ...................................................................................23

4  75 Cal.App.4th at p. 1194 (1994)

5  *Barner v. Leeds*, ...............................................................................................24

6  24 Cal.4th 676, 685 (2000)

7  *Brown v. U.S. Taekwondo*, ..................................................................................23

8  11 Cal.5th 204, 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021)

9  *Calif. Self-insurers' Security Fund v. Superior Court*, .............................................24

10  Cal.App.5th 1065, 1071 (2018)

11  *Davidson v. City of Westminster*, .........................................................................22

12  32 Cal.3d 197, 202 (1982)

13  *Elton v. County of Orange*, ................................................................................23

14  3 Cal.App.3d 1053, 1059 (1970)

15  *Hoff v. Vacaville Unified School Dist.*, ..................................................................24

16  19 Cal.4th 925 (1998)

17  *In re Att'y Disc. Sys.*, ........................................................................................3

18  19 Cal.4th 582, 598-99 (1998)

19  *In re Rose*, ...............................................................................................3, 21

20  22 Cal. 4th 430, 438 (2000)

21  *Johnson v. State*, .............................................................................................22

22  69 Cal.2d 782 (1968)

23  *Muskopf v. Corning Hospital District*, ...................................................................21

24  55 Cal.2d 211 (1961)

25  *Rodriguez v. Inglewood Unified School Dist.*, .........................................................22

26  186 Cal.App.3d 707 (1986)

27  *Wirin v. Parker*, .........................................................................................*passim*

28  48 Cal.2d 890, 894 (1957)

Statutes & Rules—State

Cal. Bus. & Prof. Cod. § 6094(a) ...............................................................21

    Government Claims Act Applies to State Bar, Staff January 1, 2019

Cal. Gov. Cod. § 815...............................................................................22

    Except as Provided by Statute, Sovereign Government is Immune from Tort Claims

Cal. Gov. Cod. § 815.2 ...........................................................7, 22, 23, 25

    Respondeat Superior Liability Statute for Public Employees

Cal. Gov. Cod. § 815.3.............................................5, 7, 14, 22, 23, 24

    Intentional Tort Liability for Officials

Cal. Gov. Cod. § 815.6.............................................5, 7, 14, 22, 23

    Public Entity Liability for Breaching Mandatory Duties

Cal. Gov. Cod. § 818.2..............................................................................22

    Public Entity Immunity for Policy (not Operational) Decisions Regarding Enactments

Cal. Gov. Cod. § 820...........................................................................passim

    Public Employee Liability

Cal. Gov. Cod. § 820.8.............................................................................22

    Public Employee is Liable for Negligent or Wrongful Acts or Omissions

Cal. Bus. & Prof. Cod. § 6068.............................................................1, 23

    Codified Duties of All Attorneys Licensed by The State Bar of California

Cases—Federal

*Ashcroft v. Iqbal,* ...............................................................................12, 13

    556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009)

*Ashker v. Cal. Dep't of Corr.,* ....................................................................15

    112 F.3d 392, 394–95 (9th Cir. 1997)

*Bell Atlantic Corp. v. Twombly,* .................................................................11

    550 U.S. 544, 555 (2007)

*Bui v. Nguyen,* .......................................................................................16

    712 Fed. Appx. 606, 609 (9th Cir. 2017)

1   *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* ...................................................12

2         200 F.3d 661, 663 (9th Cir. 2000)

3   *Branch v. Tunnell,* ...................................................................................19

4         937 F.2d 1382, 1387 (9th Cir. 1991)

5   *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* .......................3

6         445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980

7   *Chism v. Washington State,* ......................................................................19

8         661 F.3d 380, 393 (9th Cir. 2011)

9   *Cornel v. Hawaii,* ...................................................................................15

10        37 F.4th 527, 531 (9th Cir. 2022)

11  *Diaz v. Int'l Longshore and Warehouse Union, Local 13,* .................................13

12        474 F.3d 1202, 1205 (9th Cir. 2007)

13  *FTC v. Phoebe Putney Health System, Inc.,* ................................................3

14        568 U.S. 216, 225, 133 S.Ct. 1003, 1010, 185 L.Ed.2d 43 (2013)

15  *FTC v. Ticor Title Ins,* ............................................................................4

16        504 U.S. 636 (1992).

17  *Goldfarb v. Virginia State Bar,* ...............................................................3

18        421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)

19  *Gilligan v. Jamco Dev. Corp.,* .................................................................12

20        108 F.3d 246, 248-49 (9th Cir. 1997)

21  *Hafer v. Melo,* .......................................................................................15

22        502 U.S. 21, 30–31 (1991)

23  *Haines v. Kerner,* ....................................................................................1

24        404 U.S. 519, 92 S. Ct. 594 (1972)

25  *H.J., Inc. v. Nw. Bell Tel. Co.,* ...............................................................17

26        492 U.S. 229, 238, 240 (1989)

27  *Hook v. Idaho,* ........................................................................................13

28        1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022)

1   *Hoover v. Ronwin,* ...............................................................................................................3

2        567–568, 104 S.Ct. 1989

3   *Howard v. America Online,* ..............................................................................................17

4        208 F.3d 741, 751 (9th Cir. 2000)

5   *Keates v. Koile,* ................................................................................................................19

6        883 F.3d 1228, 1240 (9th Cir. 2018).

7   *Lipton v. Pathogenesis Corp.,* .........................................................................................12

8        284 F.3d 1027, 1039 (9th Cir. 2002)

9   *Lovell v. Chandler,* ..........................................................................................................14

10        303 F.3d at 1051 (9th Cir. 2002)

11   *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.,* ..............................................17

12        833 F.2d 1360, 1363 (9th Cir. 1987)

13   *Mendocino Env'l Ctr. v. Mendocino County,* ...................................................................18

14        14 F.3d 457, 459-60 (9th Cir. 1994)

15   *Mendocino Env'l Ctr.,* .....................................................................................................18

16        192 F.3d at 1288.

17   *Mitchell v. Washington,* ...................................................................................................15

18        818 F.3d 436, 442 (9th Cir. 2016)

19   *Miranda v. Ponce Federal Bank,* .....................................................................................16

20        948 F.2d 41, 44 n.3 (1st Cir. 1991)

21   *Montana-Dakota Util. Co. v. Northwestern Public Service Co.,* ......................................13

22        341 U.S. 246, 249 (1951)

23   *National Organization for Women, Inc. v. Scheidler,* .......................................................4

24        510 U.S. 249, 256-61 (1994)

25   *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* .....................................2, 3, 4, 6, 14

26        574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015)

27   *Odom v. Microsoft Corp.,* ................................................................................................16

28        486 F.3d at 548 (9th Cir. 2007)

3:22-CV-01616-AGS-DDL

*Oki Semiconductor Co. v. Wells Fargo Bank,* ...........................................................................17

      298 F.3d 768, 774-75 (9th Cir. 2002)

*Oneida Indian Nation of N. Y. v. County of Oneida,* ..............................................................13

      414 U.S. 661, 666 (1974)

*Parker v. Brown,* ............................................................................................................3, 4, 14

      317 U.S., at 350–351, 63 S.Ct. 307

*Pelayo v. Nestle USA, Inc. et al.,* ...................................................................................11, 18

      989 F.Supp.2d 973 978 (C.D.Cal. 2013)

*Pena v. Gardner,* ...........................................................................................................................15

      976 F.2d 469, 472 (9th Cir. 1992)

*Porter v. Jones,* ............................................................................................................................15

      319 F.3d 483, 491 (9th Cir. 2003)

*Romano v. Bible,* ..........................................................................................................................15

      169 F.3d 1182, 1186 (9th Cir. 1999)

*Romero v. International Terminal Operating Co.,* .....................................................................13

      358 U.S. 354, 359 (1959).

*Rosenthal v. Justices of the Sup. Ct. of Cal.,* .................................................................................3

      910 F.2d 561, 566-67 (9th Cir. 1990).

*Salinas v. United States,* ...........................................................................................................17, 18

      522 U.S. 52, 63, 65 (1997)

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* ..........................................................................................16

      473 U.S. 479, 495 (1985)

*Sever v. Alaska Pulp Corp.,* ........................................................................................................17

      978 F.2d at 1529 (9th Cir. 1992)

*Sloman v. Tadlock,* .......................................................................................................................18

      21 F.3d 1462, 1469 (9th Cir. 1994)

*Spencer v. Peters,* ........................................................................................................................19

      857 F.3d 789, 798 (9th Cir. 2017)

*United States v. Fernandez*, ...............................................................................18

     388 F.3d 1199, 1229-30 (9th Cir. 2004)

*United States v. Murphy*, ..................................................................................2

     768 F.2d 1518 (7th Cir. 1985)

*United States v. Topco Associates, Inc.*, ............................................................14

     405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972)

*United States v. Weaver*, ..................................................................................16

     860 F.3d 90, 94 (2nd Cir. 2017)

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, ...................................................16

     No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993),

     *judgment aff'd*, 20 F.3d 771 (7th Cir. 1994)

*Vinson v. Thomas*, ...........................................................................................14

     288 F.3d 1145, 1151 (9th Cir. 2000)

*Wilcox v. First Interstate Bank*, .........................................................................16

     815 F.2d 522, 531-32 (9th Cir. 1987)

*Wool v. Tandem Computers Inc.* .......................................................................11

     818 F.2d 1433, 1439 (9th Cir. 1987)

### Statutes & Rules—Federal

15 U.S.C. § 4 ....................................................................................................13

     U.S. District Court Jurisdiction for Antitrust Injunctive Relief

15 U.S.C. § 15 ..................................................................................................13

     U.S. District Court Jurisdiction for Antitrust Damages

18 U.S.C. § 1341 ..........................................................................................7, 16

     Mail Fraud

18 U.S.C. § 1343 .......................................................................................4, 7, 16

     Wire Fraud

18 U.S.C. § 1344 ........................................................................................4, 16

     Bank Fraud

3:22-CV-01616-AGS-DDL

1  18 U.S.C. § 1346...................................................................................................4, 7, 16, 17

2      Intangible Right to Good Faith, Honest Services without Bribery or Corruption

3  18 U.S.C. § 1503(a) ...........................................................................................4, 6, 7, 16

4      Obstruction of Justice

5  18 U.S.C. § 1952(a) ...................................................................................................7, 16

6      Using a Facility Engaged in Interstate Commerce to Carry On Illegal Activity

7  18 U.S.C. § 1956...........................................................................................................16

8      Money Laundering

9  18 U.S.C. § 1957...........................................................................................................16

10     Dealing in Money or Property Derived from Unlawful Activity

11 18 U.S.C. § 1960...........................................................................................................16

12     Unlawful Money Transmitters

13 18 U.S.C. § 1961(1) ......................................................................................................16

14     Racketeering Activity Code Sections

15 18 U.S.C. § 1961(4) ......................................................................................................16

16     Enterprise Definition

17 18 U.S.C. § 1961(5) ...................................................................................................7, 17

18     Pattern of Racketeering Activity Definition

19 18 U.S.C. § 1964(a) ......................................................................................................14

20     U.S. District Court Jurisdiction for RICO Injunctions

21 18 U.S.C. § 1964(c) ......................................................................................................14

22     U.S. District Court Jurisdiction for Civil RICO Claims

23 18 U.S.C. § 1962(a)......................................................................................8, 10, 18, 22, 25

24     Investing Proceeds of Racketeering in an Enterprise

25 18 U.S.C. § 1962(b) ...........................................................................................8, 9, 11, 18

26     Acquired or Maintained Interests in or Control of Enterprise via Pattern of Racketeering

27 18 U.S.C. § 1962(c) ....................................................................................................8, 9

28     Racketeering

18 U.S.C. § 1962(d) ..........................................................................4, 11, 17, 18

    RICO Conspiracy

28 U.S.C. § 1331...............................................................................................14

    U.S. District Court Jurisdiction for Constitutional Claims

28 U.S.C. § 1367...............................................................................................14

    Supplemental U.S. District Court Jurisdiction

42 U.S.C. § 1983.....................................................................................5, 18, 22

    Claims Arising from U.S. Constitution

F.R.Civ.P. 8(a)(2) ..............................................................................................11

    Non-Fraud or Mistake Pleading Standards

F.R.Civ.P. 8(d)(1) ..............................................................................................11

    Non-Fraud or Mistake Pleading Standards

F.R.Civ.P. 9(b) ..........................................................................11, 13, 16, 17, 25

    Fraud or Mistake Pleading Standards

F.R.Civ.P. 12(b)(1) ......................................................................................12, 13

    Motion to Dismiss for Lack of Subject Matter Jurisdiction

F.R.Civ.P. 12(b)(6) ......................................................................................12, 25

    Motion to Dismiss for Failure to State a Claim

F.R.Civ.P. 12(d) ......................................................................................12, 16, 25

    Conversion to Summary Judgment; When Court "Must" Allow Evidence Presentation

<u>Other Authorities</u>

William Baude & Stephen E. Sachs *The Misunderstood Eleventh Amendment*, .....................*passim*

    169 U. Pa. L. Rev. 609 (2021).

FTC Staff Guidance on Active Supervision of State Regulatory Boards....................................14

    Controlled by Market Participants

Cal. Law Revision Com. Committee to Gov. Cod. § 818.2................................................22

**I.      INTRODUCTION**

"The exposure and punishment of public corruption is an honor to a nation, not a disgrace. The shame lies in toleration, not in correction…" – Teddy Roosevelt. "Corruption equals monopoly minus accountability." – Robert Klitgaard. This Honorable Court can choose to be part of the problem, or the bold solution. There is no in between. This Court cannot grant State Bar defendants' motion to dismiss ("Motion to Dismiss") as a matter of binding U.S. law. State Bar defendants are not above the law. Plaintiff has a right to access this Court, and any imperfections of his complaint (now supplemented) are not legal cause to dismiss his claims. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972)

State Bar defendants are "**not the sovereign**" and lack such immunity for any purpose per U.S. Supreme Court and FTC. Plaintiff alleges in detail seventy-one predicate acts involving State Bar defendants lying in fraud, corruption, and bribery – which they somehow cast as being "ordinary."

Cal. Bus. & Prof. Cod. § 6068 holds "It is the <u>duty</u> of [Ruben Duran, Suzanne Grandt, Eli David Morgenstern, Leah Wilson, Ellin Davtyan, Robert Retana, and George Cardona] to do all of the following: (a) To support the Constitution and laws of the United States and of this state…(g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest…(h) Never to reject, for any consideration personal to himself or herself, the cause of the defenseless or the oppressed." These people are responsible for protecting Plaintiff.

Conversely, the Motion to Dismiss seeks to 1) ignore the United States Constitution and Plaintiff's rights for their own benefit; 2) allow continuance of alleged bribery, corruption, and multiple fraudulent acts by State Bar defendants and Catanzarite harming Plaintiff and other innocent members of the public on the malicious basis that Plaintiff is suing State Bar defendants; 3) reject, for consideration personal to each of the State Bar defendants, the cause of the defenseless and oppressed Plaintiff; 4) ignore binding decisional antitrust law of U.S. Supreme Court applied to every operational decision which State Bar defendants' miscast to be acts of State; 5) ignore elements pleaded of Racketeer Influenced and Corrupt Organizations Act ("RICO") on the basis that State Bar defendants say so.

The State Bar of California publicly conceded to its own corruption and bribery schemes on March 10, 2023. This confession came after Plaintiff had alleged the same, as he is mocked. The Court must grant Plaintiff his Constitutional right to due process. The Motion to Dismiss must be denied.

## II.    RELEVANT BACKGROUND

Operation Greylord "was one of the most important cases in the annals of public corruption investigations in the United States." Dkt. #57, p. 157. "[T]hrough undercover operations that used honest and very courageous judges and lawyers posing as crooked ones and with the strong assistance of the Cook County court and local police—92 officials were indicted, including 17 judges, 48 lawyers, eight policemen, 10 deputy sheriffs, eight court officials, and one state legislator. Nearly all were convicted, most of them pleading guilty...<u>Abuse of the public trust cannot and must not be tolerated</u>. Corrupt practices in government strike at the heart of social order and justice...By 1976, the Department of Justice had created a Public Integrity Section, and the FBI was tasked with the investigations, focusing on major, systemic corruption in the body politic." Ibid. The RICO enterprise can be the court system itself. *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985)

"In 2015 *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015), the United States Supreme Court "reaffirmed that a state regulatory board" controlled by majority of active market participants such as The State Bar of California "**is not the sovereign**." Defendants to this case ignore this binding law and its implications on each of them." RICO Case Statement & Supplement to Second Amended Complaint for Damages & Injunctive Relief, Docket #50 ("Supplement"), p. 3, ¶ 10 (2:6).

"In a March 10, 2023 press release, The State Bar of California revealed two investigative reports detailing illegal payments of $1 million from Thomas V. Girardi to employees of The State Bar of California, gifts and other items of value to staff and leadership, relatives of The State Bar of California staff employed by Girardi's firm (Girardi-Keese), improper involvement of Office of Chief Trial Counsel staff in matters assigned to outside conflict counsel, and various "unethical and unacceptable behavior." It is alleged this conduct continues, even in this Court." Id. p. 2, ¶ 11 (7:13). Plaintiff alleges this conduct was known since at least 2014, concealed from the public. SAC, p. 11, ¶¶ 61-6 (11:28).

The Court cannot rely upon what State Bar defendants contend is Plaintiff's theory. Motion to Dismiss, p. 1 (Line 12). Plaintiff's theories are as pleaded, including convictions for related conduct associated with those theories, and the public confession by The State Bar of California of its own corruption and bribery schemes providing support or proof to Plaintiff's theories. SAC, Supplement.

3:22-CV-01616-AGS-DDL

**A.   Binding Decisional Law of U.S. Supreme Court & California's Refusal to Conform**

Decided fifteen years before binding federal law *clarified* the role of State Bar defendants, and the lack of sovereign character for all purposes of their acts, *In re Rose*, 22 Cal. 4th 430, 438 (2000) has nothing to do with this case. Nor do cases cited by State Bar defendants filed by attorneys challenging their own discipline have anything to do with antitrust, RICO, or Government Claims Act. Motion to Dismiss, p. 2-3 (e.g., *In re Att'y Disc. Sys.*, 19 Cal.4th 582, 598-99 (1998); *Rosenthal v. Justices of the Sup. Ct. of Cal.*, 910 F.2d 561, 566-67 (9th Cir. 1990). These cases are stale and completely off point.

"[T]he Court in *Parker v. Brown* interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity. See 317 U.S., at 350–351, 63 S.Ct. 307. *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 503 (2015). "In this case [State Bar defendants] argue[] its members were invested by [California] with the power of the State and that, as a result, [State Bar defendants'] actions are cloaked with *Parker* immunity. This argument fails, however. A nonsovereign actor controlled by active market participants—such as [State Bar defendants]—enjoys *Parker* immunity only if it satisfies two requirements: "first that 'the challenged restraint ... be one clearly articulated and affirmatively expressed as state policy,' and second that 'the policy ... be actively supervised by the State.' " *FTC v. Phoebe Putney Health System, Inc.*, 568 U.S. 216, 225, 133 S.Ct. 1003, 1010, 185 L.Ed.2d 43 (2013) (quoting *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) ).

"But while the Sherman Act confers immunity on the States' own anticompetitive policies out of respect for federalism, it does not always confer immunity where, as here, a State delegates control over a market to a nonsovereign actor." See *Parker, supra*, at 351, 63 S.Ct. 307 ("[A] state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful"). For purposes of *Parker*, a nonsovereign actor is one whose conduct does not automatically qualify as that of the sovereign State itself. See *Hoover, supra*, at 567–568, 104 S.Ct. 1989. State agencies are not simply by their governmental character sovereign actors for purposes of state-action immunity. See *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) ("The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of [State actors, State Bar

3                                        3:22-CV-01616-AGS-DDL

1   defendants nor Catanzarite]"). Immunity for state agencies, therefore, requires more than a mere facade

2   of state involvement, for it is necessary in light of *Parker* 's rationale to ensure the States accept political

3   accountability for anticompetitive conduct they permit and control." See *FTC v. Ticor Title Ins*, 504

4   U.S. 636 (1992). *N.C. State Bd.*, *supra*, 574 U.S. 494, 504-5 (2015). (State also loses sovereignty here.)

5   **B.    Conduct of State Bar Enterprise, Investments to Legal Aid Association of California**

6       "[T]he only consistent function of The State Bar of California's schemes by mail and wire: pay

7   attorneys and defraud non-attorneys of money and property." Supplement, p. 10, ¶ 58. See also ¶ 57.

8       "U.S. citizens and businesses [seeking] public protection from The State Bar of California [are]

9   defrauded by mail and wire of honest services within the meaning of 18 U.S.C. § 1346 by the "public

10  protection agency" via bribery, fraud...For instance, December 22, 2019, one "Former Investigator" for

11  State Bar of California (Former Employee) is quoted: "I was an investigator in the OCTC [Office of

12  Chief Trial Counsel]. The Idea is NOT to investigate attorney misconduct but to draft memo after memo

13  in an effort to make it look as if there had actually been an investigation...**OCTC is for all intents [and]**

14  **purposes a fraudulent enterprise**." Supplement, p. 28-29. (This is a *fraudulent scheme*.) Our Supreme

15  Court is clear and unanimous: even if State Bar defendants lacked economic motive, it does not bar

16  RICO claims. *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256-61 (1994)

17      Girardi allegedly defrauded insurance companies of $1 billion paid to constituents of State Bar

18  Enterprise in violation of 18 U.S.C. § 1344. Id., p. 12, ¶ 67 (2:5). Stephen Young Kang of State Bar

19  Enterprise was convicted of two counts of wire fraud, which did violate 18 U.S.C. § 1343 in 2016. On

20  July 20, 2017, Grandt and Retana allegedly defrauded Federal judge William Alsup, and thereby

21  violated 18 U.S.C. § 1503(a). Id., p. 12, ¶ 69 (12:28). On September 22, 2017, State Bar Enterprise Jose

22  Lopez, Jr. was sentenced for violation of 18 U.S.C. § 1962(d) for fixing over 1,000 cases in Orange

23  County Superior Court. Id., p. 13, ¶ 70 (1:3). On February 14, 2020, Michael Avenatti of State Bar

24  Enterprise was convicted of one count of wire fraud violative of 18 U.S.C. § 1343. SAC, p. 17, ¶ 85

25  (14:16). In June 2022, Avenatti pled guilty to four counts of wire fraud violative of 18 U.S.C. § 1343.

26  SAC, p. 25, ¶ 104 (18:20). On October 4, 2022, Matthew Charles Elstein of State Bar Enterprise was

27  convicted of one count wire fraud for "sham court documents" violative of 18 U.S.C. § 1343. SAC, p.

28  29, ¶ 111 (4:7). (Each are associated in fact with The State Bar of California, State Bar Enterprise).

1

C.    **The State Bar of California Admits to Its Own Corruption & Bribery Schemes**

2      In the SAC filed February 27, 2023 and alleged in all prior pleadings in similar form: "[o]n

3  information and belief, public entity State Bar operates primarily for the personal benefit of 700+ Club

4  which includes KJC, NMC, BW, TJO, Tice, Grandt, Davtyan, Duran, Retana, Wilson, Morgenstern,

5  Thomas V. Girardi, David Richard Lira, Keith Griffin, Walter Lack, Paul Traina, Gloria Allred, Todd

6  Spitzer, and other allegedly corrupt persons among State Bar Enterprise." SAC, p. 10, ¶ 55 (25:28).

7      A March 10, 2023, press release from State Bar disclosed two heavily redacted investigative

8  reports confirming Plaintiff's allegation, at least providing foundation. Supplement, p. 3, ¶ 11. State Bar

9  defendants are allegedly concealing that KJC is similar to Thomas V. Girardi, and that CLC is similar

10  to Girardi-Keese. Id., ¶ 66. They are concealing it because they are allegedly "in on it." SAC,

11  Supplement. State Bar defendants are allegedly concealing material liability from auditors as public

12  statements are made of reform as facts remain concealed with malice. SAC, p. 21-22, ¶ 97, p. 23, ¶ 100.

13      Plaintiff's 18 U.S.C. § 1962(a)-(d), antitrust, Cal. Gov. Cod. § 815.3, Cal. Gov. Cod. § 815.6,

14  and 42 U.S.C. § 1983 claims, center largely upon conduct in and control over California Courts as set

15  forth below predicated upon corruption and bribery schemes. SAC, Supplement. Motion to Dismiss does

16  nothing to address the well-pleaded, specific facts and overt acts, except to assert they are "ordinary"

17  which does nothing to dismiss them. The question of whether they are fraudulent is for a jury to decide.

18

D.    **Plaintiff's Deliberately Obstructed Antitrust Petition in California Supreme Court**

19      "Common Plan #4. Prevent decisional law from disrupting racketeering activity and corruption

20  of State Bar Enterprise and State… State Bar Enterprise is responsible for monitoring the conduct of

21  itself…also for making antitrust determinations for itself as if that were legal." Supplement, p. 90

22      "Office of General Counsel. This law firm within the nonsovereign entity The State Bar of

23  California is alleged to coordinate, conceal, and protect 700+ Club constituents. This law firm: provides

24  frivolous legal opinions to enable State Bar Enterprise's allegedly criminal conduct, is "Complaint

25  Review Unit" to conceal and continue allegedly criminal conduct from facilities engaged in interstate

26  commerce, makes "antitrust determinations" for itself and allegedly criminal conduct of State Bar

27  Enterprise, acts as civil defense law firm, as here, while regulating the same conduct (which is a material

28  conflict), and takes actions on behalf of Duran himself." Supplement, p. 13 (22:28).

1    "Plaintiff's true antitrust petition accepted by California Supreme Court is confirmed… served

2    on the Office of General Counsel…as well as its Board of Trustees…with accompanying exhibit

3    attachments 1-3. Finally, an additional batch of exhibits were served and filed in case the Court is unable

4    to judicially notice other evidence referenced." SAC, p. 27-8, ¶ 109. On October 17, 2022, Plaintiff

5    received "Antitrust Determination 2022-001" which disregarded or removed four volumes of exhibits,

6    U.S. Supreme Court, and the face of Administrative Order 2017-09-20 holding "Actions of the State

7    Bar that have the effect of advancing the interests of attorneys without a clear benefit to the public must

8    be scrutinized for potential antitrust violations." Id., p. 29, ¶ 113. The legal opinion casts all operational

9    decisions of The State Bar of California as being legislative in character. Ibid. The file cites law from

10   1943 without regard of *N.C. State Bd. Of Dental Exam'rs. v. FTC* (2015) 547 U.S. 494. Ibid. Retana

11   sent a letter to Navarette of California Supreme Court on October 17, 2022, that Plaintiff had a right to

12   file a new antitrust petition within 60-days of October 17, 2022. Id., p. 30, ¶ 114. Without notifying

13   Plaintiff, and without giving him 60-days, using obstructed files, Navarette filed new petition for

14   Plaintiff without authority **one day later** (without giving Plaintiff 2-days, much less 60). Navarette or

15   someone acting for him then removed from TrueFiling three of four exhibit volumes. Id., p. 30, ¶ 115.

16   Plaintiff did not authorize this petition; he describes these acts as a means to exert control over Orange

17   County Superior Court enterprise and defraud Plaintiff, U.S. Supplement, p. 122 (10:28), p. 123 (1:26).

18   **E.      Instant Action and Plaintiff's Companion Action with Varied Legal Theories**

19   This action did not commence until Plaintiff paid a fee January 3, 2023 (it is not *in forma*

20   *pauperis*). Dkt. #5. On February 14, 2023, after Plaintiff filed two motions for summary judgment with

21   related evidence, Honorable Cynthia A. Bashant was at least misled, and allegedly obstructed, by

22   conduct of Charles Tsai seeking to conceal criminal conduct at issue. 18 U.S.C. § 1503(a). SAC, p. 35,

23   ¶ 124.   Plaintiff has two genuine cases in U.S. Court with varied theories. State Bar is carrying on fifteen

24   fraudulent cases with malice with Catanzarite. SAC, Supplement. "Limits on state-action immunity are

25   most essential when the State seeks to delegate its regulatory power to active market participants, for

26   established ethical standards may blend with private anticompetitive motives in a way difficult even for

27   market participants to discern. Dual allegiances are not always apparent to an actor." *N.C. State Bd. of*

28   *Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 505 (2015) (U.S. Supreme Court is right.)

**F.**   **Plaintiff's Allegations Against Non-Sovereign Actors in Dual Capacities in this Case**

1. The State Bar of California, Part of State Bar Enterprise

Plaintiff added Count X to this action against The State Bar of California. Supplement, p. 2. California Supreme Court Order 2017-09-20 clearly states The State Bar of California is not immune from antitrust laws without proving two elements, which they can't do on a motion to dismiss. Id., ¶ 6. Plaintiff alleges The State Bar of California for all times relevant has served interests of all attorneys in this case to the direct and ongoing detriment of the public, which harmed Plaintiff. Id., ¶ 7. (Related case 3:23-CV-0164-AGS-DDL alleges antitrust against State of California for its refusal and enablement).

For one scheme and the plan, "For the State Bar Enterprise and State of California, it is alleged the common plan is to prevent the Plaintiff from fair or neutral forums to conceal the systemic public corruption of State Bar Enterprise and bribery schemes....This common plan is part of a pattern of racketeering activity [for] public employees and elected officials...to enrich themselves and their peers with impunity. State Bar Enterprise seeks to suppress its own corruption." Supplement, p. 90.

"The pattern of racketeering activity involves attorneys associated with State Bar Enterprise as beneficiaries targeting non-attorney members of the public using the Courts and fraudulent schemes." SAC, p. 10, ¶ 52. Plaintiff alleges related conduct encompassing more than two convictions for wire fraud violative of 18 U.S.C. § 1343 among State Bar Enterprise within the last 10-years, prior obstruction of justice by Grandt and Retana violative of 18 U.S.C. § 1503(a), thousands of mailers from facilities engaged in interstate commerce violative of 18 U.S.C. § 1341 and 18 U.S.C. § 1952(a), bribery defrauding the public of good and honest services within the meaning of 18 U.S.C. § 1346, that Girardi's conduct was deemed "unquestionably criminal" leading to his wire fraud indictment in February 2023, and a RICO conviction for fixing 1,000+ cases in Orange County Superior Court by a clerk thereby constituting a pattern of racketeering activity. 18 U.S.C. § 1961(5). Plaintiff alleges State Bar to have *respondeat superior* liability for Grandt, Duran, Retana, Morgenstern, Davtyan, and Cardona. SAC, pp. 37-50 under RICO and Cal. Gov. Cod. § 815.2 or § 815.3, and direct liability for violating Cal. Gov. Cod. § 815.6 and § 815.3. SAC, pp. 50-2. State Bar's agreement to violate § 1962(a)-(c) is shown by all conduct of CLC and Girardi-Keese intercorporate, and all conduct of Duran, Wilson, Morgenstern, Grandt, Cardona, and Davtyan intracorporate related to Plaintiff. SAC, p. 49, ¶ 224.

1

## 2. Ruben Duran, Chair of State Bar; Partner, Best Best & Krieger

2  Plaintiff sues Duran in his official and individual capacities. SAC, p. 5, ¶ 27 (15:19). Plaintiff
3  alleges, *inter alia*, Duran engaged in the following conduct with intent to defraud: mailed Plaintiff a
4  Government Claims Act denial, knowing he would obstruct related proceedings. SAC, p. 21, ¶ 95 (4:15).
5  Supplement, Predicate Act #45, p. 64. Duran or some among State Bar Enterprise directed Richard Lee
6  to recuse, and John C. Gastelum be assigned, in Orange County Superior Court Case No. 30-2021-
7  01237499 on January 18, 2022. Id., p. 21, ¶ 96 (16:22). Supplement, Predicate Act #46, p. 64. Duran
8  disseminated a press release concerning Girardi January 24, 2022, "we have been proactively doing
9  everything in our power to learn from the past and do better in the future to prevent harms like this from
10 recurring" which he knew was not true. Id., p. 21-2, ¶ 97. Supplement, Predicate Act #7, p. 32-33. Duran,
11 as he concealed liability from auditors, emailed Cardona, Wilson, that he wanted a "briefing" concerning
12 the scheme. Id., p. 23, ¶ 100. Grandt, Duran, and Board of Trustees used the mail July 20, 2022, to
13 defraud Plaintiff, admitting they were retaliating against Plaintiff because he chose to petition for
14 redress. SAC, p. 26, ¶ 106. Supplement, Predicate Act #54, p. 72.  Duran used the wire August 18, 2022,
15 to file knowingly false statements to defraud Plaintiff. Supplement, Predicate Act #56, p. 74. Duran used
16 the wire August 22, 2022, to file knowingly false statements to defraud Plaintiff. Id, p. 27, ¶ 108.
17 Supplement, Predicate Act #57, p. 75. He did it again with other material misrepresentations to defraud
18 Plaintiff. Id., Predicate Act #58, p. 75. Duran sent another press release or communication November 3,
19 2022, intending to defraud the public while he was concealing the conduct and liability related to the
20 instant case. Id., p. 31-2, ¶ 118. Supplement, Predicate Act #9, p. 34-5. Duran caused Associate Justices
21 to be nominated or appointed to Court of Appeal during Plaintiff's State proceedings on exact dates with
22 intent to defraud Plaintiff and control Orange County Superior Court enterprise. Supplement, Predicate
23 Act #44, p. 63 (Sanchez). Id., Predicate Act #48, p. 66 (Motoike). Id., Predicate Act #55, p. 73 (Delaney).
24 Duran's agreement to violate 18 U.S.C. § 1962(a) is shown by his communications November 3, 2022,
25 and investment of proceeds from that conduct announced July 13, 2022. SAC, p. 47, ¶ 205. His
26 agreement to violate 1 § 1962(a)-(c) is shown by knowledge of the 2014 MTO report, concealment of
27 it, false statements by wire January 24, 2022, and enablement/concealment of CLC enterprise conduct
28 in real time. SAC, p. 47, ¶ 206. Duran's agreement to violate § 1962(c) and § 1962(b) is shown by his

1   May 19, 2022, email to Andresen, Wilson, and Cardona for a "briefing" and Davtyan's later attempts to
2   conceal that evidence. SAC, p. 48. ¶ 216. Duran's agreement to violate § 1962(c) and § 1962(b) is shown
3   by materially false statements of fact and law in OCSC to obtain sustained demurrer from Gastelum,
4   who relied on the false statements to defraud Plaintiff. SAC, p. 48, ¶ 217. Duran's agreement to violate
5   § 1962(a)-(c) is shown by the July 20, 2022, letter to Plaintiff.

6                   3. Suzanne Celia Grandt, Individually and Officially

7           Plaintiff sues Grandt in her official and individual capacities. SAC, p. 5, ¶ 28 (20:23). Plaintiff
8   alleges, *inter alia,* Grandt engaged in the following conduct with intent to defraud: lied repeatedly to
9   Honorable William H. Alsup July 20, 2017 and obstructed justice with Retana. SAC, p. 12, ¶ 69 (12:28).
10  Supplement, Predicate Act #5, p. 32. Grandt filed materially false statements to defraud Plaintiff on June
11  2, 2022. Supplement, Predicate Act #51, p. 69. Grandt sent Plaintiff an email intending to defraud
12  Plaintiff on June 28, 2022. Supplement, Predicate Act #52, p. 70. For Duran and Board of Trustees,
13  Grandt delivered Plaintiff mail and email on July 20, 2022, intending to carry on criminal conduct with
14  malice, and intending to retaliate against Plaintiff for exercising his right to petition for redress.
15  Supplement, Predicate Act #54, ¶ 72. Grandt filed materially false statements to defraud Plaintiff on
16  August 18, 2022. Supplement, Predicate Act #56, p. 74. Grandt filed materially false statements to
17  defraud Plaintiff on August 22, 2022. Supplement, Predicate Act #57, p. 75. Grandt filed materially false
18  statements to defraud Plaintiff on August 22, 2022, again. Supplement, Predicate Act #58, p. 75. Grandt
19  appeared using Zoom to defraud Plaintiff October 11, 2022. Supplement, Predicate Act #60, p. 77.
20  Grandt's agreement to violate § 1962(b)-(c) is shown by propounded materially false statements upon
21  which Gastelum relied in OCSC to defraud Plaintiff. SAC, p. 48, ¶ 217. Grandt's agreement to violate
22  § 1962(a)-(c) is shown by July 20, 2022, letter to Plaintiff. SAC, p. 48, ¶ 219.

23                   4. Leah Wilson, Individually and Officially

24          Plaintiff sues Wilson in her official and individual capacities. SAC, p. 5, ¶ 29 (24:27). Plaintiff
25  alleges Wilson engaged in the following conduct with intent to defraud: Wilson used the wire to provide
26  false information about the nature and origin of some IOLTA funds and engaged as principal or
27  conspirer in the investment of racketeering proceeds. Supplement, Predicate Act #53, p. 71-2. Wilson
28  and Duran delivered a letter to Umberg related to investment schemes July [12], 2022. SAC, p. 43, ¶

171. Wilson's agreement to violate 18 U.S.C. § 1962(a) is indicated by her resignation as executive director in 2019 "to pursue what she described as a venture mixing public and private dollars with philanthropy" after leading formation of State Bar's Leadership Bank Program. SAC, pp. 48-9. ¶ 220. Plaintiff describes Wilson's role as Executive Director, her work setting up "Leadership Bank Program" with Chinese and Taiwanese banks, and membership with 700+ Club. Supplement, p. 21 (20:28).

### 5. <u>Robert George Retana, Individually and Officially</u>

Plaintiff sues Retana in his official and individual capacities. SAC, p. 6, ¶ 30 (1:4). Plaintiff alleges Retana engaged in the following conduct with intent to defraud: appeared with Grandt before Federal Judge William Alsup in which the Court declared "Ms. Grandt told me something that wasn't true, and I relied on it." SAC, p. 12, ¶ 69 (12:28). Predicate Act #5, Supplement, p. 32 (3:15). Retana drafted materially false statements, then delivered "Antitrust Determination 2022-001" without regard for binding U.S. decisional law or four volumes of probative exhibits. SAC, p. 29, ¶ 113. Predicate Act #64, Supplement, p. 80-81. Retana delivered email to Jorge E. Navarette on October 17, 2022, declaring Plaintiff had "60-days" to challenge Retana's legal opinion in California Supreme Court. SAC, p. 30, ¶ 114. Predicate Act #65, Supplement, p. 81-82. Plaintiff describes Retana's role within Office of General Counsel, his work with Grandt, and membership with 700+ Club. Supplement, p. 22 (18:28).

### 6. <u>Ellin Davtyan, Individually and Officially</u>

Plaintiff sues Davtyan in her official and individual capacities. SAC, p. 6, ¶ 31 (5:8). Plaintiff alleges Davtyan engaged in the following conduct with intent to defraud: Davtyan used the mail on December 15, 2022 to threaten Plaintiff to destroy evidence of public corruption and fraud delivered by Grandt, and further sought to control the enterprise by demanding a list of all persons to whom Plaintiff delivered the evidence. SAC, p. 33, ¶ 121. Plaintiff describes Davtyan's lead role within Office of General Counsel, and membership with 700+ Club. Supplement, p. 22 (4:17).

### 7. <u>George Sargent Cardona, Officially</u>

Plaintiff sues Cardona in his official capacity only. SAC, p. 6, ¶ 32 (9:12). Plaintiff alleges Cardona engaged in the following conduct with intent to defraud: Cardona "delivered email to Duran with actual knowledge of criminal activity to defraud Plaintiff with malice on May 25, 2022, on the basis that Plaintiff was suing State Bar." Id., p. 38 (16:17). SAC, p. 23, ¶ 101. Cardona sent this "with

1    intent to defraud and conceal Government Claims Act litigation from auditors in furtherance of the
2    schemes." Predicate Act #49, Supplement, p. 67-8. Cardona's agreement to violate § 1962(b)-(c) is
3    shown by the same email. SAC, p. 48, ¶ 218.

4                    8. <u>Eli David Morgenstern, Individually and Officially</u>

5           Plaintiff sues Morgenstern in his official and individual capacities. SAC, p. 6, ¶ 33 (13:16).
6    Plaintiff alleges Morgenstern engaged in the following conduct with intent to defraud: accepted bribes
7    from KJC to protect CLC enterprise, just like other staff did from Girardi. SAC, p. 3, ¶ 15. Morgenstern
8    delivered mail or email to Plaintiff April 3, 2020; November 21, 2021; and October 31, 2022; by
9    coordinating and carrying on a fraudulent scheme from a facility engaged in interstate commerce against
10   Plaintiff, and by aiding KJC, BW, TJO, and CLC. Morgenstern was allegedly bribed by KJC, or in the
11   alternative, threatened by KJC that KJC would disclose operations of 700+ Club so Morgenstern was
12   forced to enable and continue the scheme." SAC, p. 38, ¶ 149 (11:15). Morgenstern violated § 1962(d).

13   **III.   LEGAL STANDARDS**

14          **A. Federal Rules of Civil Procedure 8(a)(2) and 8(d)(1)**

15          F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the…claim is and the
16   grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*
17   *v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957). For claims that do not involve fraud
18   or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is
19   entitled to relief." F.R.Civ.P. 8(a). But Plaintiff's claims lie in fraud, bribery, and corruption.

20          **B. Federal Rules of Civil Procedure 9(b)**

21          The SAC and Supplement at Docket #50 "is sufficient under rule 9(b) if it identifies the
22   circumstances constituting fraud so that a defendant can prepare an adequate answer from the
23   allegations. While statements of the time, place, and nature of the alleged fraudulent activities are
24   sufficient, mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc.* 818
25   F.2d 1433, 1439 (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases
26   presents a question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA,*
27   *Inc. et al.*, 989 F.Supp.2d 973 978 (C.D.Cal. 2013). (They can answer the Supplement if SAC fails, there
28   are 71 Predicate Acts detailed – the question of whether they were fraud are for a jury).

**C. Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(d)**

F.R.Civ.P. 12(b)(1) allows a party to assert "lack of subject-matter jurisdiction," whereas F.R.Civ.P. 12(b)(6) allows a party to assert "failure to state a claim upon which relief can be claimed" by motion. Quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" (Plaintiff). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009). F.R.Civ.P. 12(d) converts the Motion to Dismiss into one for summary judgment under Rule 56 if "matters outside the pleadings are presented to and not excluded by the Court," as here, granting all parties opportunity to present pertinent evidence.

**D. This is Not an In Forma Pauperis Proceeding**

State Bar defendants cast Plaintiff as vexatious. Motion to Dismiss, p. 10. Plaintiff welcomes the opportunity to address, *with specificity and evidence*, *any single allegation* that is purportedly "fanciful," "fantastic," or "delusional." Motion to Dismiss, p. 11. Plaintiff would not have filed motions for summary judgment if this were the case. Dkt. #15, Dkt. #26. Plaintiff's "fanciful" facts and cases were important enough for Charles Tsai to transition overtly from Deputy Attorney General for State of California to Office of General Counsel for State Bar to defend them. SAC, pp. 34-5, ¶¶ 122-23.

**III.   ARGUMENT**

The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") "In exercising its discretion to summarily dismiss claims on its own motion or by motion of the defendants, the Court takes into consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an opportunity to amend their pleadings to remedy any deficiencies that were identified during screening or after a motion to dismiss has been adjudicated. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,

1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling, and in the normal course district courts should freely grant leave to amend when a viable case may be presented."). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted)." *Hook v. Idaho*, 1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022) Plaintiff can't be denied due process yet again, here.

**A. Short and Plain Statement will Not Suffice for RICO Based on Fraud or Conspiracy**

Plaintiff's Counts I through X provide a framework for the complaint. SAC, pp. 35-54. Supplement, p. 2. Plaintiff offers specific allegations in conformance with 9(b) (where his antitrust and RICO claims all lie in alleged fraudulent conduct, bribery, convictions, and corruption). SAC, pp. 10-35. He offers more specificity and predicate acts in his Supplement. The Court has the framework of complaint, and the specific allegations to conform with *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009). It is unclear why State Bar defendants demand conformance with Rule 8 which is not the pleading standard for RICO or antitrust involving fraud. Motion to Dismiss, pp. 11-12. Nor is it clear why convictions for predicate acts associated-in-fact to The State Bar of California from which it accepted proceeds and re-invested them (for instance) are "irrelevant." Ibid. Plaintiff offers specific details on his damages in case they are unclear. Supplement, pp. 136-41.

**B. U.S. District Court Possesses Original & Supplemental Jurisdiction for All Claims**

Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N. Y. v. County of Oneida*, 414 U.S. 661, 666 (1974); see also *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359 (1959). The question whether a federal statute creates a claim for relief is not jurisdictional"); *Montana-Dakota Util. Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249 (1951). Motion to Dismiss miscasts Plaintiff's allegations to their own mold.

State Bar defendants' Rule 12(b)(1) arguments fail at threshold. For antitrust injunctions, U.S. District Court has original subject matter jurisdiction under 15 U.S.C. § 4 and 15 U.S.C. § 15 for damages. For RICO injunctions, U.S. District Court has original subject matter jurisdiction under 18

13

3:22-CV-01616-AGS-DDL

1  U.S.C. § 1964(a) and 18 U.S.C. § 1964(c) for damages. For constitutional claims, U.S. district court has
2  original jurisdiction under 28 U.S.C. § 1331. For Cal. Gov. Cod. § 815.3 and Cal. Gov. Cod. § 815.6,
3  U.S. District Court has supplemental jurisdiction under 28 U.S.C. § 1367.

4      The State Bar of California is not protected by the Eleventh Amendment because it is "not the
5  sovereign." Even if it were, Plaintiff is non-diverse with permission to sue where U.S. District Court has
6  subject matter jurisdiction for antitrust, RICO, and U.S. Constitution claims. Further, The State Bar of
7  California announced it accepted $20 million from the U.S. government on July 13, 2022, which it used
8  to pay active market participants. Supplement, Predicate Act #53, p. 71. The 9th Circuit addressed the
9  issue, "reaffirming…precedent that a State waives Eleventh Amendment immunity by accepting federal
10  funds. *Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir. 200) (reaffirming Douglas's holding that by
11  accepting federal funds, a state waives its sovereign immunity); *Lovell*, 303 F.3d at 1051.

12          1. The State Bar of California is "Not the Sovereign" – Eleventh Amendment is Moot
13      All cases cited by State Bar defendants are off point. As the FTC reiterated, for the avoidance of
14  doubt: "In North Carolina State Board of Dental Examiners, the Supreme Court reaffirmed that a state
15  regulatory board is not the sovereign. [emph.] Accordingly, a state regulatory board is not necessarily
16  exempt from federal antitrust liability." Document #39-1, PageID.4771. Put simply, The State Bar of
17  California is *not the State*. State Bar defendants, and each of them, lack any form of sovereignty, much
18  less some blanket immunity from antitrust, RICO, and Constitutional claims. This is unambiguous.

19          2. Individual Defendants Are Not Sovereign Actors – Eleventh Amendment is Moot
20      "Federal antitrust law…is "as important to the preservation of economic freedom and our free-
21  enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United*
22  *States v. Topco Associates, Inc.,*405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). "The antitrust
23  laws declare a considered and decisive prohibition by the Federal Government of cartels, price fixing,
24  and other combinations or practices that undermine the free market." *N.C. State Bd. of Dental Examiners*
25  *v. Fed. Trade Comm'n*, 574 U.S. 494, 502 (2015) "[T]he Court in *Parker v. Brown* interpreted the
26  antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign
27  capacity. See 317 U.S., at 350–351, 63 S.Ct. 307." *N.C. State Bd. of Dental Examiners v. Fed. Trade*
28  *Comm'n*, 574 U.S. 494, 503 (2015). (This law protects the public, *not* State Bar defendants nor State).

3. <u>Cardona, Morgenstern, and Grandt's Prosecution is Not at Issue</u>

Motion to Dismiss characterizes all of Cardona, Morgenstern, and Grandt's conduct as being somehow prosecutorial. First, Plaintiff is not an attorney, and Cardona, Morgenstern, and Grandt are not above the law to violate RICO, antitrust, U.S. Constitution, or Government Claims Act. Second, none have ever performed prosecutorial functions relevant to the instant case. Motion to Dismiss, pp. 14-5. (This overture comes after Grandt and Duran told Gastelum they were not prosecutors in Orange County Superior Court.) Once more, if Cardona, Morgenstern, and Grandt were to murder someone – does that go to State Bar Court, or is that part of their prosecutorial immunity against attorneys? State Bar defendants simply do not understand the law, or they are defrauding this Court, and this argument fails.

4. <u>Eleventh Amendment Does Not Apply to Individual Capacities in Ninth Circuit</u>

The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("[P]laintiffs may seek damages against a state official in his personal capacity."); *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (stating the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities"); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394–95 (9th Cir. 1997); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). "[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity." *Mitchell*, 818 F.3d at 442 (citing *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)). Even if they had Eleventh Amendment protection, which they don't, individual actors remain.

**C. SAC and Supplement Are Not Frivolous and Do Not Fail to Allege Facts to State Claims**

1. <u>Plaintiff Sufficiently States Claims Under RICO in SAC and Supplement</u>

State Bar defendants contend Plaintiff fails to allege a RICO enterprise as they demand short and plain statements separately. Motion to Dismiss, p. 16. As non-fraud allegations, Plaintiff properly pleads four enterprises: CLC, Legal Aid Association of California, Orange County Superior Court enterprise, and State Bar Enterprise. Supplement, p. 14, pp. 95-102. Plaintiff offers plain statements as framework of the complaint for CLC, (SAC, p. 35, ¶ 127), State Bar Enterprise (Id., p. 38, ¶ 147), Legal Aid Association (Id., p. 42, ¶ 167), and Orange County Superior Court. (Id., p. 44, ¶ 180).

3:22-CV-01616-AGS-DDL

"An enterprise includes any individual, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4). For each CLC, Legal Aid Association, State Bar Enterprise, and Orange County Superior Court, the "definition is not very demanding." *Odom v. Microsoft*, 486 F.3d at 548.

State Bar defendants want Plaintiff to provide "evidence" which is improper at this stage of proceeding, although Plaintiff is happy to do so immediately under F.R.12(d) and F.R.56 or an evidentiary hearing. Motion to Dismiss, p. 28 Plaintiff describes enterprise operations in detail. (Supplement, p. 91-113), "normal" operations, (Id. pp. 113-16), benefits to each. (Id., pp. 116-17). Supplement is part of complaint. *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 n.3 (1st Cir. 1991)

To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act."). Plaintiff alleges violations of 18 U.S.C. § 1952(a), 18 U.S.C. § 1503(a), 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 1346, 18 U.S.C. § 1956, 18 U.S.C. § 1957, and 18 U.S.C. § 1960. SAC, Supplement. State Bar defendants do not even address most of these statutes or the fact that there exist convictions for violating some of them. Motion to Dismiss. Plaintiff properly alleges schemes that harmed him that rely upon bribery of public officials. While this is not the subject of a motion to dismiss, predicate acts must be proved by a preponderance of the evidence. *See Wilcox v. First Interstate Bank*, 815 F.2d 522, 531-32 (9th Cir. 1987). As Plaintiff sets forth several schemes, "[c]riminal mail and wire fraud involves: (1) a scheme based on an intent to defraud; and (2) the use of the mails or wires to further that scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2nd Cir. 2017); *Bui v. Nguyen*, 712 Fed. Appx. 606, 609 (9th Cir. 2017). A scheme to defraud encompasses "acts of artifice or deceit which are intended to deprive [Plaintiff] of his property or money." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.* No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993), *judgment aff'd*, 20 F.3d 771 (7th Cir. 1994). State Bar defendants have each used the mail or wire in furtherance of schemes.

F.R.Civ.P. 9(b) holds "Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." SAC, Supplement.

1    "A pattern of racketeering activity requires at least two acts of racketeering activity, one of
2    which occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred
3    within ten years (excluding any period of imprisonment) after the commission of a prior act of
4    racketeering activity." 18 U.S.C. § 1961(5).   Plaintiff alleges predicate acts forming a pattern of
5    racketeering activity, including convictions for related conduct violative of 18 U.S.C. § 1343 and 18
6    U.S.C. § 1962(d). SAC, pp. 12-35. Fraud allegations conform to F.R.Civ.P. 9(b). Plaintiff provides
7    further details on Predicate Acts #1-#71. Supplement, pp. 12-87. Plaintiff alleges in his SAC that The
8    State Bar of California is corrupted by bribery of public employees, which it admitted publicly on March
9    10, 2023. Supplement, p. 3, ¶ 12. State Bar defendants do not address this. See also 18 U.S.C. § 1346.

10    Proving two predicate acts is a necessary condition for finding a violation, but may not be
11    sufficient. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). To establish a "pattern of
12    racketeering activity," the predicate acts must be both "related" and "continuous." *Id.*; *Sever v. Alaska*
13    *Pulp Corp.*, 978 F.2d at 1529. Related conduct "embraces criminal acts that have the same or similar
14    purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by
15    distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 240. Relatedness of the
16    alleged or proven predicate acts is rarely an issue. *See Medallion Television Enters., Inc. v. SelecTV of*
17    *Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987) (finding alleged predicate acts to be related when all
18    were directed toward plaintiff or inducing plaintiff). Plaintiff alleges in detail 71 predicate acts.

19    A RICO conspiracy under § 1962(d) may be established by proof of an agreement to commit a
20    substantive violation of RICO. *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th
21    Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove
22    any substantive RICO violations ever occurred as a result of the conspiracy"). The conspirator need not
23    have agreed to commit or facilitate each and every part of the substantive offense. *Howard*, 208 F.3d
24    741, 751 (9th Cir. 2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).   The "**agreement**
25    **need not be express as long as its existence can be inferred from words, actions, or interdependence**
26    **of activities and persons involved.**" *Oki Semiconductor Co.*, 298 F.3d at 775. If a RICO conspiracy is
27    demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators." *Id.* A defendant can be
28    held liable for a RICO conspiracy if the <u>evidence</u> shows that he or she "knowingly agree[d] to facilitate

1  a scheme which includes the operation or management of a RICO enterprise [of which there are four

2  pleaded]." *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004).  Plaintiff need not prove

3  that any defendant committed any racketeering act or any overt act (a person can agree to the commission

4  of a crime by someone else). *Salinas v. United States*, 522 U.S. at 63. (Holding that RICO's conspiracy

5  provision "does not...excuse from [its] reach...an actor who does not himself commit...the two or more

6  predicate acts requisite to the underlying offense." "The RICO conspiracy statute, simple in formulation,

7  provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection

8  (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). *Salinas v. United States*, 522 U.S. 52, 63 (1997)

9  (Plaintiff welcomes an evidentiary trial with witnesses, now, to show why he alleges RICO conspiracy.)

10      Where they seek wholesale dismissal of fraud allegations without foundation of law, "[t]he

11  question of whether [State Bar defendants' conduct] is deceptive in most cases presents a question of

12  fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*, 989 F.Supp.2d

13  973 978 (C.D.Cal. 2013) How Plaintiff's allegations are wholly incredible – beyond the plain statement

14  legal conclusions of State Bar defendants – is unclear. Motion to Dismiss, p. 29. State Bar defendants

15  fail to address 18 U.S.C. § 1962(a) or 18 U.S.C. § 1962(b) allegations and thereby waive their arguments.

16              2. Plaintiff Sufficiently States Claims Under Section 1983

17              **a. Retaliation (Citizen Plaintiff, First Amendment) Claim**

18      Under the First Amendment to the United States Constitution, a citizen has the right to be free

19  from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or

20  to deter citizen from exercising those rights in the future. *Sloman v. Tadlock*, 21 F.3d 1462, 1469. Thus,

21  to demonstrate a First Amendment violation, a citizen plaintiff must provide evidence showing that "by

22  his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was

23  a substantial or motivating factor in [the defendant's] conduct."  *Mendocino Env'l Ctr. v. Mendocino

24  County*, 14 F.3d 457, 459-60 (9th Cir. 1994). A plaintiff need not prove, however, that his "speech was

25  actually inhibited or suppressed." *Mendocino Env'l Ctr.*, 192 F.3d at 1288.

26      This claim lies in Plaintiff's deliberately obstructed petitioning in Orange County Superior Court

27  against State Bar defendants, and his deliberately obstructed petitioning in California Supreme Court,

28  which were substantial or motivating factors in the conduct of Duran and Grandt. SAC, p. 52-53.

Plaintiffs petitioning caused Duran (as Chair of State Bar Board of Trustees) nomination of three Court of Appeal Associate Justices (Sanchez, Motoike, and Delaney) on exact dates of Plaintiff's Orange County Superior Court proceedings to obstruct them. SAC, p. 20, ¶ 94, p. 22, ¶ 99. Supplement, Predicate Act #44, p. 63 (Sanchez). Id., Predicate Act #48, p. 66 (Motoike). Id., Predicate Act #55, p. 73 (Delaney). Supervisor Duran communicated with Cardona, Andresen, and Wilson wherein Cardona made operational decisions with malice because Plaintiff "has a pending lawsuit against the State Bar… and is pursuing discovery." SAC, p. 23-24, ¶ 101. Duran and Grandt chose to retaliate against Plaintiff by their own admission on July 20, 2022: "Mr. Duran declines to waive confidentiality…on the basis that such waiver is not warranted for protection of the public…[because]…you have a pending lawsuit against the State Bar…Sincerely, Suzanne Grandt." SAC, p. 26, ¶ 106. Duran and Grandt repeatedly propounded materially false statements, upon which Judge John C. Gastelum unlawfully relied, because Plaintiff sued them. SAC, p. 26-7, ¶ 107. Because Plaintiff served a deposition subpoena, Duran and Grandt refused to produce discovery, State Bar refused to appear, and filed an anti-SLAPP motion 5-months late without any showing of protected activity, then threatened Plaintiff with legal fees (improperly). Grandt: "I encourage you to dismiss your case now." SAC, p. 26-7, ¶ 107.

### b. Judicial Deception Claim

In order to prevail on a judicial deception claim, a plaintiff must prove that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). If Duran, Grandt, or Retana "submitted an affidavit [or other court documents] that contained statements he [or she] knew to be false or would have known were false had he not recklessly disregarded the truth,…he [or she] cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost." *Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011) (quoting *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991). *Keates v. Koile,* 883 F.3d 1228, 1240 (9th Cir. 2018).

Plaintiff alleges his claims in Orange County Superior Court were deliberately obstructed through materially false statements of fact and law by Duran and Grandt which caused Plaintiff's loss of judgment in Orange County Superior Court for $138,889,249 damages. SAC, p. 53, ¶259. He further alleges deliberate obstruction of an antitrust petition filed under federal law. SAC, pp. 30-1, ¶¶ 114-16.

1        "With intent to defraud on June 2, 2022, working with Suzanne Grandt, Carissa Andresen in

2 Office of General Counsel filed ROA #79…Grandt allegedly defrauded Judge John C. Gastelum and

3 the Plaintiff by asserting causes of action that turn on facts were subject to some form of blanket

4 immunity or immunities that did not meet causes of action even though the Plaintiff had vested rights to

5 sue from The State Bar of California…and he was defrauded to provide a decision that was not supported

6 by law October 11, 2022." Supplement, Predicate Act #51, p. 69-70. [This led to sustained demurrer due

7 to the deception]. This was not an isolated act, either. It was part of several allegedly fraudulent schemes.

8        "With intent to defraud on August 18, 2022…Suzanne Grandt filed ROA #136 to "continue the

9 hearing on Plaintiff's Summary Judgment Motion…Despite alleging corruption and fraud, Ms. Grandt

10 continues to assert that Plaintiff cannot state a claim in any manner, even though he had a vested right

11 to sue The State Bar of California and even though The State Bar of California has since publicly

12 conceded to its own corruption on March 10, 2023…Grandt allegedly defrauded Judge John C.

13 Gastelum and the Plaintiff by asserting causes of action that turn on facts were subject to some form of

14 blanket immunity or immunities that did not meet causes of action even though the Plaintiff had vested

15 rights to sue from The State Bar of California and the cases cited predated January 1, 2019, when

16 Government Claims Act expressly applied to The State Bar of California…Grandt knew the [Anti-

17 SLAPP] filing [used to delay, then estop, Plaintiff's hearing on the merits] was filed 5-months

18 late…asserted Superior Court of California did not have jurisdiction to hear…Government Claims Act

19 litigation…intended to prevent Plaintiff from fair and neutral proceedings to prevent him from obtaining

20 his money judgments to protect State Bar Enterprise. Grandt also knew The State Bart of California was

21 carrying on serial fraud of Kenneth J. Catanzarite." Supplement, Predicate Act #56, p. 74.

22        "On August 22, 2022…Duran…Grandt…told the Court all information concerning disciplinary

23 investigations are confidential within the Office of Chief Trial Counsel." Grandt knew this was

24 materially false, but defrauded the Court, which relied upon the false representations just as with

25 Honorable William Alsup July 20, 2017." SAC, p. 27, ¶ 108. Supplement, Predicate Act #58, p. 75.

26 [Grandt was aware of Predicate Act #49. Supplement, p. 67. Grandt knew she had defrauded the Court

27 to harm Plaintiff, which is why she tried to conceal it December 12, 2022, then Davtyan sought to

28 intimidate Plaintiff and conceal it further on December 15, 2022. SAC, p. 33, ¶ 120-21.]

                            3:22-CV-01616-AGS-DDL

1    "With intent to defraud on October 11, 2022, Suzanne Grandt appeared before Honorable Judge
2    John C. Gastelum…requested in that hearing that the Court dismiss all claims filed by the Plaintiff, who
3    had a vested right to sue the government under Government Claims Act…Grandt told the Court that
4    Plaintiff would "keep adding parties with no relation to the facts" which she knew was not true, because
5    the Plaintiff had alleged illegal coordination between Office of General Counsel, Board of Trustees, and
6    Office of Chief Trial Counsel to defraud the public. Ms. Grandt later inadvertently disclosed this to be
7    true as alleged…she did defraud the Court through false assertions of law and fact to obtain a "sustained
8    demurrer without leave to amend"…[citing] a case from 2000 while applies to attorneys and not
9    Government Claims Act statutes that did not apply to the defendants Suzanne Grandt, Ruben, Duran,
10   The State Bar of California, Eli David Morgenstern…until January 1, 2019." Supplement, Predicate Act
11   #60, p. 77-8. SAC, p. 33, ¶ 120-21. (Now, the same irrelevant case from 2000, *In re Rose*, is cited *again*.)

12        Plaintiff alleges Retana removed or ignored four volumes of exhibits from an antitrust petition
13   in California Supreme Court. SAC, p. 29, ¶ 113. Plaintiff alleges Retana ignored binding decisional law
14   of U.S. Supreme Court in making "Antitrust Determination 2022-001." Ibid. Plaintiff alleges Retana
15   delivered the obstructed files to Jorge E. Navarette October 17, 2022. Id., p. 30, ¶ 114. Plaintiff alleges
16   these acts led to fraudulent filing of an antitrust petition that he did not authorize nor file October 18,
17   2022, one day after being purportedly granted 60-days to file a petition, and that TrueFiling was used to
18   remove evidence. Id., p. 30-1, ¶ 115. [Plaintiff challenged conduct in Orange County Superior Court,
19   ignored by Retana with malice. Retana filed Rule 11 motion sans declaration, exhibits. PageID.4747]

20        3. Plaintiff's Remaining Claims Have Merit; Plaintiff Must Be Allowed to Prove Them
21        California Supreme Court in *Muskopf v. Corning Hospital District* (1961) 55 Cal.2d 211,
22   basically "discarded as mistaken and unjust" the concept of sovereign immunity. State Bar defendants
23   provide no authority for the blanket legal conclusion that "The State Bar has immunity against claims
24   in intentional tort." Motion to Dismiss, p. 22. This is materially false under U.S. and California law.
25   Codified after U.S. Supreme Court's clarity that State Bar defendants are "not the sovereign" actors –
26   "The State Bar and officers and employees are subject to the rules governing liability of public entities,
27   officers, and employees specified in Division 3.6 (commencing with Section 810) of Title 1 of the
28   Government Code." Cal. Bus. & Prof. Code § 6094(a). SAC, p. 2, ¶ 3.

1   State Bar defendants are "not the sovereign," so sovereign immunities are moot. But even if they

2   were available: Cal. Gov. Code § 815 holds "<u>Except as otherwise provided by statute</u>: (a) A public entity

3   is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a

4   public employee or any other person. (b) The liability of a public entity established by this part

5   (commencing with Section 814) is subject to any immunity of the public entity provided by statute,

6   including this part, and is subject to any defenses that would be available to the public entity if it were

7   a private person." As Government Code section 820.8 makes clear, "[n]nothing in this section [on

8   specific immunities to meet causes of action] exonerates a public employee from liability for injury

9   proximately caused by his own negligent **or wrongful act or omission**." (Or, alleged crimes.)

10  (Immunities are available for *policy*, not operational, acts). *Johnson v. State* (1968) 69 Cal.2d 782.

11  "Liability is '<u>provided by statute</u>' under Cal. Gov. Cod. § 815.2, Cal. Gov. Cod. § 815.3, Cal.

12  Gov. Cod. § 815.6, 42 U.S.C. § 1983, and 18 U.S.C. § 1962(a)-(d) in this action. The statutes that provide

13  for liability do not need to be part of Government Claims Act, and do not need to provide specifically

14  on their face that they apply to public entities." *Rodriguez v. Inglewood Unified School Dist.* (1986) 186

15  Cal.App.3d 707." SAC, p. 8, ¶ 47. "In a tort action against a public entity… the question is whether any

16  statutory immunity applies to bar plaintiff's [RICO, antitrust, Constitutional, or intentional infliction of

17  emotional distress] cause of action." *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 202. "[State

18  Bar] contends that it is immune under Government Code sections [815.2, 818.4, 821, 821.2]. None of

19  these immunities is applicable." Id. For instance, "Government Code section 818.2 provides that a public

20  entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to

21  enforce any law." This section was intended to provide immunity for legislative and quasi-legislative

22  actions [e.g. policy decisions]. Cal. Law Revision Com. Committee to Gov. Cod. § 818.2.

23  "Cal. Gov. Cod. § 815.2 applied to 18 U.S.C. § 1962(a)-(d), *respondeat superior*: "(a) A public

24  entity is liable for injury proximately caused by an act or omission of an employee of the public entity

25  within the scope of his employment if the act or omission would, apart from this section, have given rise

26  to a cause of action against that employee or his personal representative. (b) Except as provided by

27  statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the

28  public entity where the employee is immune from liability." SAC, p. 9, ¶ 48.

1  Indeed, Cal. Gov. Cod. § 815.3 expressly provides for liability against officials and public
2  entities for intentional torts in violation of RICO and intentional infliction of emotional distress. SAC,
3  p. 9, ¶ 49. It also provides for liability for "employee managerial functions." Id. (13:15)
4  Cal. Bus. & Prof. Cod. § 6068(a) holds "It is the duty of an attorney to do all of the following
5  (a) To support the Constitution and laws of the United States and of this state." Plaintiff alleges State
6  Bar had mandatory duty under the Equal Protection Clause of the Fourteenth Amendment of the United
7  States Constitution to Plaintiff, which holds in relevant part "No State shall make or enforce any law
8  which shall abridge the privileges or immunities of citizens of the United States; nor shall any State
9  deprive any person of life, liberty, or property, without due process of law; nor deny to any person within
10  its jurisdiction the equal protection of the laws." But State Bar did deprive and deny Plaintiff.
11  Cal Gov. Cod. § 815.6 holds "Where a public entity is under a mandatory duty imposed by an
12  enactment that is designed to protect against the risk of a particular kind of injury, the public entity is
13  liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public
14  entity establishes that it exercised reasonable diligence to discharge the duty." State Bar has
15  "implementation guidelines" because all of its attorneys are dutifully bound to uphold the United States
16  Constitution – it is not an option. It is *mandatory duty*. Cal. Bus. Prof. Cod. § 6068(a). (Court decision
17  cited by State Bar defendants does not involve attorneys bound to uphold Fourteenth Amendment.)
18  California Supreme Court also finds mandatory duty to Plaintiff owed via special relationship. SAC, p.
19  2, ¶ 2. *Brown v. U.S. Taekwondo*, 11 Cal.5th 204, 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021).
20  Concerning the purported immunities, "To apply [immunity] sections to immunize [State Bar]
21  from liability for beach of a mandatory duty would completely eviscerate Government Code section
22  815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to
23  carry out a mandatory duty imposed by a public enactment." *Elton v. County of Orange*, (1970) 3
24  Cal.App.3d 1053, 1059. See also *Alejo*, 75 Cal.App.4th at p. 1194.
25  Cal. Gov. Cod. § 815.2 is a statute providing for liability on *respondeat superior* as set forth
26  above. "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation
27  of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval,
28  order, or similar authorization where the public entity or an employee of the public entity is authorized

23                                      3:22-CV-01616-AGS-DDL

1   by enactment to determine whether or not such authorization should be issued, denied, suspended or

2   revoked." Cal. Gov. Code § 818.4 "A public employee is not liable for an injury caused by his adoption

3   of or failure to adopt an enactment or by his failure to enforce an enactment." Cal. Gov. Code § 821. "A

4   public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of,

5   or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval,

6   order, or similar authorization where he is authorized by enactment to determine whether or not such

7   authorization should be issued, denied, suspended or revoked." Cal. Gov. Code § 821.2.

8       Plaintiff's seventh cause of action should be construed as a claim for intentional infliction of

9   emotional distress, because that's what it is. SAC, p. 51-52. Plaintiff is happy to amend to common law

10  intentional infliction of emotional distress with liability arising from Cal. Gov. Cod. § 815.3 or re-style

11  it under Americans with Disabilities Act Title II. The question of whether State Bar defendants conduct

12  was "outrageous" is a question of fact for a jury, or what caused Plaintiff's severe emotional distress,

13  including a new onset seizure. Id. ¶ 243. Once more, State Bar defendants suggest Plaintiff somehow

14  needs to plead a "prima facie" case (without an evidentiary hearing or trial.) It is unfortunate for Plaintiff

15  and the public that State Bar defendants consider their alleged racketeering conduct, including alleged

16  bribery, corruption, non-judicial fraud, judicial fraud, protectionist behavior, and Constitutional

17  violations among active market participants as being "ordinary." This, too, is a question of fact for the

18  jury. (Such is the crisis in California for the public). Motion to Dismiss, p. 24.

19      "The Court's paramount concern should be to preserve public trust in the scrupulous

20  administration of justice and the integrity of the Bar." *Calif. Self-insurers' Security Fund v. Superior

21  Court* (2018) Cal.App.5th 1065, 1071. "A public employee is liable for negligence [or RICO] 'to the

22  same extent as a private person.' *Hoff v. Vacaville Unified School Dist.*, 19 Cal.4th 925 (1998). Immunity

23  does not reach operational acts of State Bar defendants. *Barner v. Leeds*, 24 Cal.4th 676, 685. (2000)

24      4. SAC and Supplement Do Not Fail to State a Claim

25      Plaintiff will not succumb to gaslighting from public servants. The assertion that Plaintiff's

26  claims lack merit is simply not credible – where State Bar defendants continue to ignore binding

27  decisional law of United States Supreme Court, California law, and conceal material facts from this

28  Court with impunity. Plaintiff has a right to appeal any decision of this Court as any other litigant.

24                                          3:22-CV-01616-AGS-DDL

V.    **CONCLUSION**

      Plaintiff cannot plead conformance with RICO or antitrust based on fraud without extending beyond the confines of F.R.Civ. 8 pleading standards. The State Bar of California and its actors, in any capacity, are not subject of the Eleventh Amendment because they are "not the sovereign." The State Bar of California accepted federal funds, so it waived sovereignty anyway.

      Plaintiff provides specificity on 71 predicate acts in conformance with F.R.Civ.P. 9(b) of State Bar defendants that they either conducted or carried on from facilities engaged in interstate commerce including convictions for wire fraud and RICO associated in fact with The State Bar of California. He provides context for the various enterprises and is fully willing and able to conduct an evidentiary trial now if there be any purported "fanciful" or "delusional" character to any single one of his claims or allegations. State Bar defendants failed to oppose Plaintiff's allegations of 18 U.S.C. § 1962(a)-(b) so they waive those arguments. The State Bar of California conceded to its own corruption on March 10, 2023, but they cast this as being "ordinary." It is not appropriate to dismiss fraud allegations at this stage, and the 9th Circuit is particularly hostile to motions to dismiss under 12(b)(6). State Bar defendants contend this Court lacks subject matter jurisdiction, but Plaintiff's claims are primarily original subject matter jurisdiction for antitrust and RICO. State Bar defendants are bound to protect the United States Constitution, and further bound not to oppress Plaintiff. Duran, Grandt, and Retana have engaged in judicial deception. Plaintiff requests the Court consider his Count VII as a claim for intentional infliction of emotional distress as pleaded whether or not the Court distinguishes Duran as being "elected" or "appointed" because the claim remains at least in individual capacities. Plaintiff asserts Cal. Gov. Cod. § 815.2 gives rise to respondeat superior liability in either instance. State Bar defendants lack sovereign immunities, but if they had them, they offer no on-point immunity meeting Plaintiff's claims.

      Plaintiff requests the Court deny the Motion to Dismiss so State Bar defendants can answer the allegations or convert it to a motion for summary judgment under F.R.Civ.P.12(d) if the Court considers matters outside the pleadings as State Bar defendants request, or to schedule an evidentiary hearing.

Respectfully Submitted,

April 6, 2023,                 Justin S. Beck, Opposing Party, Plaintiff

**PROOF OF SERVICE**

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056.

On April 7, 2023, I served one copy of the following documents:

**PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO STATE BAR DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery April 6, 2023, to the following email addresses:

| | |
|---|---|
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |
| U.S. Attorney's Office | efile.dkt.civ@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

I declare the foregoing to be true under penalty of perjury under the laws of the State of California and United States. I am signing this from Oceanside, California on April 7, 2023.

_____
Brian Bargabus, Declarant

26                                          3:22-CV-01616-AGS-DDL