

1  Justin S. Beck
   3501 Roselle St.,
2  Oceanside, CA 92056
3  760-449-2509
   justintimesd@gmail.com
4  *In Propria Persona*

5        **IN THE UNITED STATES DISTRICT COURT**
6        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

7  JUSTIN S. BECK,                          )  Case No.:  3:22-CV-01616-AGS-DDL
                                            )
8           Plaintiffs,                     )  Judge:      Hon. Andrew G. Schopler
                                            )
9      vs.                                  )
                                            )  **PLAINTIFF JUSTIN S. BECK'S**
10                                          )  **OPPOSITION TO DEFENDANTS JORGE**
   CATANZARITE LAW CORPORATION;             )  **E. NAVARETTE, JOHN C. GASTELUM,**
11 STATE OF CALIFORNIA; THE STATE BAR       )  **AND ORANGE COUNTY SUPERIOR**
   OF CALIFORNIA; ORANGE COUNTY             )  **COURT'S MOTION TO DISMISS**
12 SUPERIOR COURT; ORANGE COUNTY            )  **SECOND AMENDED COMPLAINT;**
13 DISTRICT ATTORNEY'S OFFICE; RUBEN        )  **SUPPORTING MEMORANDUM OF**
   DURAN, ESQ.; SUZANNE CELIA               )  **POINTS AND AUTHORITIES**
14 GRANDT, ESQ.; RICHARD FRANCIS            )
15 O'CONNOR, JR.; MOHAMMED                  )       [Related to Docket #54]
   ZAKHIREH; JAMES DUFFY; KENNETH           )
16 CATANZARITE, ESQ.; JIM TRAVIS TICE,      )  Hearing Date: May 9, 2023
   ESQ.; NICOLE MARIE CATANZARITE           )
17 WOODWARD, ESQ.; BRANDON                  )  Time:       3:00 PM
18 WOODWARD, ESQ.; TIM JAMES                )
   O'KEEFE, ESQ.; AMY JEANETTE              )  Courtroom:  5C, 5th Floor
19 COOPER; CLIFF HIGGERSON; ELI DAVID       )
20 MORGENSTERN, ESQ.; LEAH WILSON,          )  Action Filed: October 19, 2022
   ESQ.; ROBERT GEORGE RETANA, ESQ.;        )
21 ELLIN DAVTYAN, ESQ.; JOHN C.             )  Trial Date:   None Set
   GASTELUM; JORGE E. NAVARETTE;            )
22 GEORGE SARGENT CARDONA, ESQ.;            )
23 ANTHONY B. SCUDDER                       )
                                            )
24         Defendants,                      )
                                            )
25 UNITED STATES ATTORNEY GENERAL;          )
26 UNITED STATES OF AMERICA                 )
                                            )
27      Nominal Defendants                  )
                                            )
28 ─────────────────────────────────────    )

                                    i                    3:22-CV-01616-AGS-DDL

TABLE OF CONTENTS

I.      INTRODUCTION....................................................................................1

II.     SECOND AMENDED COMPLAINT, SUPPLEMENT, AND RICO STATEMENT........2

        A. Common Plans to Defraud Plaintiff and the United States Involving Movants

        B. Enterprise Conduct in Which Movants are Inextricably Intertwined

        C. Jorge E. Navarette Allegations (Individual & Official Capacities)

        D. John C. Gastelum Allegations (Individual & Official Capacities)

        E. Orange County Superior Court is an Enterprise Subject of RICO Precedent

III.    ROOKER-FELDMAN DOCTRINE OFF-POINT TO PLAINTIFF ALLEGATIONS......6

        A. Plaintiff Does Not Seek Reversal of Any State Court Judgment Here

        B. U.S. District Court Has Original Subject Matter Jurisdiction for RICO & Antitrust

        C. Movants Have Allegedly Engaged in or Agreed to Conduct Violative of RICO

        D. Movants Participated in Conduct Violative of U.S. Antitrust Laws Against Plaintiff

IV.     NO IMMUNITY EXISTS FOR ALLEGED RICO VIOLATIONS.....................................9

        A. It is Outside Gastelum's Judicial Authority to Violate RICO or U.S. Antitrust Laws

        B. It is Outside Navarette's Authority to Violate RICO or U.S. Antitrust Laws

V.      ELEVENTH AMENDMENT ARGUMENT FAILS............................................................11

        A. Plaintiff is Non-Diverse with Permission to Sue in an Antitrust & RICO Action

        B. For Prospective Relief Against Gastelum & Navarette – *Ex Parte Young* is Instructive

        C. Eleventh Amendment Not Applicable to Gastelum or Navarette in Personal Capacities

        D. State of California Accepted Federal Funds and Allegedly Defrauds the U.S.

VI.     RULE 8 NOT THE STANDARD FOR RICO, ANTITRUST FRAUD ALLEGATIONS...13

VII.    SECOND AMENDED COMPLAINT SUFFICIENTLY STATES CLAIMS.....................13

        A. Plaintiff Properly Pleads Several Enterprises

        B. Plaintiff Properly Pleads Racketeering Activity

        C. Plaintiff Properly Pleads a Pattern of Racketeering Activity

        D. Plaintiff Properly States Detailed, then Plain Statement Claims Against Navarette

                1. 18 U.S.C. § 1962(c) Racketeering

2. 18 U.S.C. § 1962(b) Interests in or Control of RICO Enterprise

**E. Plaintiff Properly States Detailed, then Plaint Statement Claims Against Gastelum**

1. 18 U.S.C. § 1962(b) Interests in or Control of RICO Enterprise

2. 18 U.S.C. § 1962(d) RICO Conspiracy

**F. Plaintiff Properly States Claims Against Orange County Superior Court**

**G. If Plaintiff's SAC, Supplement Fail, Plaintiff Must Be Granted Opportunity to Amend**

**H. Rule 12(d) Converts Motion to Dismiss to Summary Judgment Motion Opportunity**

**VIII. CONCLUSION**.................................................................................................................20

3:22-CV-01616-AGS-DDL

1

## TABLE OF AUTHORITIES

2

Cases—State

3   *Wirin v. Parker,* .................................................................................................*passim*

4       48 Cal.2d 890, 894 (1957)

5

Cases—Federal

6   *Andrews Farms v. Calcot, Ltd.,* ...............................................................................10, 16

7       527 F. Supp. 2d 1239, 1256 (E.D. Cal.2007)

8   *Ashcroft v. Iqbal,* .......................................................................................................19

9       556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009)

10  *Ashker v. Cal. Dep't of Corr.,* .....................................................................................12

11      112 F.3d 392, 394–95 (9th Cir. 1997)

12  *Armstrong v. Wilson,* ..................................................................................................12

13      124 F.3d 1019, 1025 (9th Cir. 1997)

14  *Baumer v. Pachl,* ........................................................................................................10

15      8 F.3d 1341, 1346 (9th Cir. 1993)

16  *Bell Atlantic Corp. v. Twombly,* .................................................................................13

17      550 U.S. 544, 555 (2007)

18  *Bui v. Nguyen,* ...........................................................................................................14

19      712 Fed. Appx. 606, 609 (9th Cir. 2017)

20  *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* .....................................................19

21      200 F.3d 661, 663 (9th Cir. 2000)

22  *Bush Ranch v. E.I. DuPont de Nemours Co. (In re DuPont),* ........................................7

23      918 F.Supp. 1524, 1556-58 (M.D.Ga. 1995),

24      *rev'd on other grounds,* 99 F.3d 363 (11th Cir. 1996)

25  *Cincinnati Gas & Elec. Co. v. General Elec. Co.,* .......................................................19

26      656 F. Supp. 49, 85 (S.D. Ohio 1986)

27  *Conley v. Gibson,* .......................................................................................................13

28      355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d 80 (1957)

*Cornel v. Hawaii*, ...........................................................................................................................................11, 12

     37 F.4th 527, 531 (9th Cir. 2022)

*Diaz v. Int'l Longshore and Warehouse Union, Local 13*, ...............................................................19

     474 F.3d 1202, 1205 (9th Cir. 2007)

*Doe v. Lawrence Livermore Nat'l Lab.*, ............................................................................................12

     131 F.3d 836, 839 (9th Cir. 1997);

*Doe v. Regents of the Univ. of Cal.*, ...................................................................................................12

     891 F.3d 1147, 1153 (9th Cir. 2018)

*Ex Parte Young*, ..........................................................................................................................11, 12

     209 U.S. 123 (1908)

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, .........................................................................6

     544 U.S. 280, 125 S. Ct. 1517 (2005)

*Federal Information Systems, Corp. v. Boyd*, ...................................................................................16

     753 Boyd F. Supp. 971, 974 (D.D.C. 1990)

*Flint v. Dennison*, ...........................................................................................................................12

     488 F.3d 816, 825 (9th Cir. 2007)

*FTC v. Ticor Title Ins*, .......................................................................................................................8

     504 U.S. 636 (1992)

*Gilligan v. Jamco Dev. Corp.*, ........................................................................................................13

     108 F.3d 246, 248-49 (9th Cir. 1997)

*Goldfarb v. Virginia State Bar*, .........................................................................................................8

     421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)

*Grimmett v. Brown*, ......................................................................................................................7, 15

     75 F.3d 506, 510 (9th Cir. 1996)

*Hafer v. Melo*, ..................................................................................................................................12

     502 U.S. 21, 30–31 (1991)

*Haines v. Kerner*, .............................................................................................................................20

     404 U.S. 519, 92 S. Ct. 594 (1972)

*H.J., Inc. v. Nw. Bell Tel. Co.,* ............................................................................................. 15

    492 U.S. 229, 238, 240 (1989)

*Hook v. Idaho,* ....................................................................................................................... 19

    1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022)

*Howard v. America Online, Inc.* ........................................................................................... 10

    208 F.3d 741, 751 (9th Cir. 2000)

*Ikuno v. Yip,* ......................................................................................................................... 19

    912 F.2d at 310,

*Idaho v. Coeur d'Alene Tribe of Idaho,* ............................................................................... 11

    521 U.S. 261, 269 (1997)

*Kawamata Farms v. United Agri Prods.* ................................................................................. 7

    ,86 Hawai'i 214, 948 P.2d 1055, 1083, 1087-88 (1996),

      *aff'd,*86 Hawai'i 214, 948 P.2d 1055 (Haw. 1997);

*Lipton v. Pathogenesis Corp.,* .............................................................................................. 19

    284 F.3d 1027, 1039 (9th Cir. 2002)

*Living Designs, Inc. v. E.I. Dupont De Nemours and Co.,* ........................................... 7, 8, 15

    431 F.3d 353, 358, 361 (9th Cir. 2005)

*Lovell v. Chandler,* .............................................................................................................. 12

    303 F.3d at 1051

*Matsuura II,* ........................................................................................................................... 8

    73 P.3d at 691

*Mecinas v. Hobbs,* ................................................................................................................ 11

    30 F.4th 890, 903 (9th Cir. 2022)

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.,* ................................................. 15

    833 F.2d 1360, 1363 (9th Cir. 1987)

*Mitchell v. Washington,* ....................................................................................................... 12

    818 F.3d 436, 442 (9th Cir. 2016)

3:22-CV-01616-AGS-DDL

*National Organization for Women, Inc. v. Scheidler,* ...................................................................9

    510 U.S. 249, 256-61 (1994)

*N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n,* ....................................7, 8, 9, 20

    574 U.S. 494, 502, 503 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015)

*Odom v. Microsoft,* ...................................................................................................................13

    486 F.3d at 548

*Oki Semiconductor Co. v. Wells Fargo Bank,* .......................................................................9, 10

    298 F.3d 768, 774-75 (9th Cir. 2002)

*Parker v. Brown,* .......................................................................................................................7, 8

    317 U.S., at 350–351, 63 S.Ct. 307 (1943)

*Pelayo v. Nestle USA, Inc. et al.,* .............................................................................................9, 13

    989 F.Supp.2d 973 978 (C.D.Cal. 2013)

*Pena v. Gardner,* .........................................................................................................................12

    976 F.2d 469, 472 (9th Cir. 1992)

*Pennhurst State Sch. & Hosp. v. Halderman,* ............................................................................11

    465 U.S. 89, 102–06 (1984)

*Porter v. Jones,* ...........................................................................................................................12

    319 F.3d 483, 491 (9th Cir. 2003)

*Romano v. Bible,* .........................................................................................................................12

    169 F.3d 1182, 1186 (9th Cir. 1999)

*Salinas v. United States,* .........................................................................................................10, 18

    522 U.S. 52, 63, 65 (1997)

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* ...........................................................................................14

    473 U.S. 479, 495 (1985)

*Sever v. Alaska Pulp Corp.,* ........................................................................................................15

    978 F.2d at 1529

*United States v. Fernandez,* .........................................................................................................10

    388 F.3d 1199, 1229-30 (9th Cir. 2004)

*United States v. Jacobsen*, ....................................................................................................19

     691 F.2d 110, 112-13 (2nd Cir. 1982)

*United States v. Murphy*, ...................................................................................1, 10, 16, 17

     768 F.2d 1518 (7th Cir. 1985)

*United States v. Topco Associates, Inc.*, .............................................................................6

     405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972)

*United States v. Weaver*, .....................................................................................................14

     860 F.3d 90, 94 (2nd Cir. 2017)

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.* ...................................................................14

     No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993),

     *judgment aff'd*, 20 F.3d 771 (7th Cir. 1994)

*Vinson v. Thomas*, ...............................................................................................................12

     288 F.3d 1145, 1151 (9th Cir. 2000)

*Wilcox v. First Interstate Bank*, .........................................................................................13

     815 F.2d 522, 531-32 (9th Cir. 1987).

*Wool v. Tandem Computers, Inc.* .......................................................................................13

     818 F.2d 1433, 1439 (9th Cir. 1987)

<u>Statutes & Rules—Federal Other Authorities</u>

15 U.S.C. § 4.............................................................................................................................7

     U.S. District Court Subject Matter Jurisdiction for Antitrust Injunctions

15 U.S.C. § 15...........................................................................................................................7

     U.S. District Court Subject Matter Jurisdiction for Antitrust Damages (Private Right of Action)

18 U.S.C. § 1341.....................................................................................................................14

     Mail Fraud

18 U.S.C. § 1343................................................................................................................14, 15

     Wire Fraud

18 U.S.C. § 1344....................................................................................../.................14

     Bank Fraud

3:22-CV-01616-AGS-DDL

18 U.S.C. § 1346......................................................................................................14, 15

    Fraudulent Scheme Includes Right to Good Faith Honest Service without Bribery/Corruption

18 U.S.C. § 1503(a) .......................................................................................................14

    Obstruction of Justice

18 U.S.C. § 1952(a) .......................................................................................................14

    Carrying On Illegal Activity from a Facility Engaged in Interstate Commerce

18 U.S.C. § 1956...........................................................................................................14

    Money Laundering

18 U.S.C. § 1957...........................................................................................................14

    Dealing in Financial Instruments Derived from Illegal Activity

18 U.S.C. § 1960...........................................................................................................14

    Illegal Money Transmitters

18 U.S.C. § 1961(1) .......................................................................................................14

    Racketeering Activity

18 U.S.C. § 1961(4) .......................................................................................................13

    Enterprise Definition

18 U.S.C. § 1961(5) .......................................................................................................15

    Pattern of Racketeering Activity Definition

18 U.S.C. § 1962(a) ..................................................................................................18, 19

    Investing Proceeds from Racketeering Activity in an Interstate Enterprise

18 U.S.C. § 1962(b) ......................................................................................16, 17, 18, 19

    Acquired Interests, Maintenance, or Control of Enterprise through Pattern of Racketeering

18 U.S.C. § 1962(c) .........................................................................................7, 15, 16, 18

    Racketeering

18 U.S.C. § 1962(d) ...........................................................................4, 9, 10, 14, 15, 18

    RICO Conspiracy

18 U.S.C. § 1964(a) .........................................................................................................7

    U.S. District Court Subject Matter Jurisdiction for RICO Injunctions

18 U.S.C. § 1964(c) .................................................................................................7, 15

    U.S. District Court Subject Matter Jurisdiction for RICO Damages (Private Right of Action)

18 U.S.C. § 1968.....................................................................................................*passim*

    Attorney General Demand for Racketeering Investigations

F.R.Civ.P. 8...................................................................................................................13

    Pleading Standards (Non-Fraud Allegations)

F.R.Civ.P. 9(b) ...........................................................................................13, 15, 17, 18

    Pleading Standards (Fraud Allegations)

F.R.Civ.P. 12(b)(1) ..................................................................................................*passim*

    Motion to Dismiss for Lack of Subject Matter Jurisdiction

F.R.Civ.P. 12(b)(6) ................................................................................................13, 19

    Motion to Dismiss for Failure to State a Claim

<u>Other Authorities</u>

William Baude & Stephen E. Sachs *The Misunderstood Eleventh Amendment,* ....................*passim*

    169 U. Pa. L. Rev. 609 (2021)

FTC Staff Guidance on Active Supervision of State Regulatory Boards.............................*passim*

    Controlled by Market Participants

Operation Greylord: Famous Cases & Criminals.............................................................*passim*

    https://www.fbi.gov/history/famous-cases/operation-greylord

## I.    INTRODUCTION

Orange County Superior Court ("OCSC"), John C. Gastelum ("Gastelum"), and Jorge E. Navarrete ("Navarrete") (together "Movants") seek wholesale dismissal of Plaintiff's Second Amended Complaint (Dkt. #37) and its supplement with RICO case statement (Dkt. #50). In doing so, Movants misrepresent the basis of Plaintiff's allegations, material facts underlying his claims, and the law itself.

Operation Greylord "was one of the most important cases in the annals of public corruption investigations in the United States." Dkt. #57, p. 157. "[T]hrough undercover operations that used honest and very courageous judges and lawyers posing as crooked ones and with the strong assistance of the Cook County court and local police—92 officials were indicted, including 17 judges, 48 lawyers, eight policemen, 10 deputy sheriffs, eight court officials, and one state legislator. Nearly all were convicted, most of them pleading guilty...Abuse of the public trust cannot and must not be tolerated. Corrupt practices in government strike at the heart of social order and justice...By 1976, the Department of Justice had created a Public Integrity Section, and the FBI was tasked with the investigations, focusing on major, systemic corruption in the body politic." Ibid. The RICO enterprise can be the court system itself. *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985) *Movants are not above federal law.*

"In a March 10, 2023 press release, The State Bar of California revealed two investigative reports detailing illegal payments of $1 million from Thomas V. Girardi to employees of The State Bar of California, gifts and other items of value to staff and leadership, relatives of The State Bar of California staff employed by Girardi's firm (Girardi-Keese), improper involvement of Office of Chief Trial Counsel staff in matters assigned to outside conflict counsel, and various "unethical and unacceptable behavior." It is alleged this conduct continues, even in this Court." SAC. p. 2, ¶ 11 (7:13). Plaintiff alleges this conduct was known since 2014, concealed from the public. SAC, p. 11, ¶¶ 61-6 (11:28).

This Court possesses subject matter jurisdiction for RICO, and *Rooker-Feldman* doctrine is irrelevant to claims lying in RICO or antitrust here. Where Plaintiff's allegations must be given a favorable light and the Court should assume their veracity, Gastelum is not permitted to communicate *ex parte* with The State Bar of California to obstruct justice or agree to violate RICO. Nor is Navarrete permitted to file antitrust cases in California Supreme Court using obstructed files, nor file cases *without authority* from Plaintiff. Is it so much to ask for a neutral, objective forum, in the United States in 2023?

## II.  SECOND AMENDED COMPLAINT, SUPPLEMENT, AND RICO STATEMENT

### A. Common Plans to Defraud Plaintiff and the United States Involving Movants

"Common Plan #3. For the State Bar Enterprise and State of California, it is alleged the common plan is to prevent the Plaintiff from fair or neutral forums to conceal the systemic public corruption of State Bar Enterprise and bribery schemes. Plaintiff is alleged to be the first to file Government Claims Act litigation against The State Bar of California and has already shown a series of Court of Appeal decisions supporting allegations of at least three counts of malicious prosecution and not less than four mandatory disqualifications affecting the Catanzarite Law Corporation enterprise; it is alleged that Plaintiff constitutes a direct and ongoing threat to the interests of the criminal conduct of Office of General Counsel, Office of Chief Trial Counsel, Board of Trustees, and the Catanzarite Law Corporation enterprise – as well as the links to each of these and the 700+ Club. To evidence this common plan, it is alleged that the efforts to stop Plaintiff from obtaining judgments in a neutral forum [continuing] to which he is allegedly entitled are greater than the efforts for the State of California and The State Bar of California to resolve them amicably on their merits as is the duty of the government (the government is not an ordinary party.) Plaintiff will show The State Bar of California – including its Chairman of the Board of Trustees – have engaged in deliberate fraud on Courts and members of the public. This common plan is part of a pattern of racketeering activity where The State Bar of California owes the public good faith, honest services, but instead public employees and elected officials use The State Bar of California to enrich themselves and their peers with impunity. State Bar Enterprise seeks to suppress its own corruption to keep the "gravy train" going for individuals." Supplement and RICO Case Statement, Dkt. #50 ("Supplement"), p. 90 (1:19)

"Common Plan #4. Prevent decisional law from disrupting racketeering activity and corruption of State Bar Enterprise and State of California. The United States Supreme Court clarified The State Bar of California is not a sovereign actor in 2015, although it allegedly uses this guise to defraud Courts and to conduct racketeering with commingled operations among allegedly corrupt lawyers and law firms, as well as the IOLTA and client trusts through which they are alleged to launder money, and public employees. It is alleged the conduct affects Medicare and Medicaid, and involved pandemic funds, as well as Chinese banks listed herein. Because State Bar Enterprise is responsible for monitoring the

conduct of itself including its own alleged money laundering, also for making antitrust determinations for itself as if that were legal it is alleged that lawyers have thus far been reticent to challenge it, which is why the Courts have never seen a case such as this. It is alleged that The State Bar of California purports to operate as being under the sovereign authority of State of California, however, such conduct would need to be undertaken as if it were that of State of California itself. If that were the case, State of California is a direct and proximate threat to the United States as it is abusing its sovereignty for unlawful taking from the public, which is unconscionable and illegal. It is alleged this plan is continued through deliberate obstruction of justice [continuing] to prevent Federal Courts of competent jurisdiction from making decisional law that will stop State Bar Enterprise from these practices. Conduct of Charles Tsai is evidence, who transitioned from California Deputy Attorney General to Office of General Counsel, and continuously casts Plaintiff as vexatious despite overwhelming evidence of corruption known to Tsai and a preservation of evidence letter." Supplement, p. 90-91.

**B. Enterprise Conduct in Which Movants are Inextricably Intertwined**

"Despite United States Supreme Court's binding decisional law and FTC guidance, Plaintiff alleges The State Bar of California has not changed its ways to conform to federal antitrust laws because it allegedly controls the judiciary in California and believes itself above the law." Id., p. 11, ¶ 64.

"The main enterprise consists of Los Angeles Superior Court, Girardi-Keese, Orange County Superior Court, State Bar's Office of General Counsel, Office of Chief Trial Counsel, Executive Director, Board of Trustees, 700+ Club, Client Security Fund, unnamed State employees, other law firms, inanimate corporate entities formed or overtaken by attorneys to suit any given fraudulent scheme, interest on lawyer trust accounts ("IOLTA"), client trust accounts ("CTA"), and banks holding IOLTA/CTA to launder and exchange sub rosa compensation among members (together "State Bar Enterprise.") SAC, p. 10, ¶ 51. Plaintiff alleges predicate acts involving actual convictions, thereby constituting a pattern of racketeering activity of State Bar Enterprise. SAC, Supplement. [If Plaintiff proves *only one* predicate act of this enterprise by preponderance harming him, he will be entitled relief.]

"Plaintiff is direct target of a pattern of racketeering activity intended to 1) defraud him of business and property, and 2) to prevent him from his money judgements against the government to conceal the conduct and suppress the evidence of public corruption in his possession." SAC, p. 3, ¶ 6.

1    "On Friday, September 22, 2017, it was announced that Orange County Superior Court clerk

2    Jose Lopez, Jr. was sentenced to over 11 years in federal prison for racketeering offense, violation of 18

3    U.S.C. § 1962(d), for a bribery scheme fixing cases. At least 1,000 cases were affected, and it is alleged

4    that other Orange County Superior Court clerks are bribed by Kenneth J. Catanzarite and influenced by

5    The State Bar of California's Office of General Counsel. It is alleged that Suzanne Grandt previously,

6    and Charles Tsai currently, communicate with Judge John C. Gastelum with intent to defraud Plaintiff

7    and obstruct justice. It is alleged that Grandt and Tsai seek to make it appear to this Court as if it is

8    Plaintiff being vexatious despite the overwhelming record of fraud to which he has been subject, and

9    others are subject, including actual convictions of wire fraud in Orange County, and RICO by a Clerk

10   in the Court." Supplement, p. 32 (16:28). [The State Bar of California admitted to its own corruption.]

11   "When Plaintiff sued The State Bar of California and later State of California which refuses to

12   appear in Superior Court despite repeated service in Orange County Superior Court Case No. 30-2020-

13   01145998 and 30-2021-01237499, Plaintiff alleges public employees and elected officials embarked on

14   a spectacularly relentless mission to conceal public corruption and defraud Plaintiff. Specifically,

15   Plaintiff alleges each to be involved in the schemes, or they would resolve government claims amicably."

16   Supplement, p. 11, ¶ 69. [The State Bar of California is concealing the instant case and its implications.]

17   **C. Jorge E. Navarette Allegations (Individual & Official Capacities)**

18   "Defendant JORGE E. NAVARETTE ("Navarette") is a State Bar associated culpable person

19   sued in both his official and individual capacities whose principal business address is 350 McAllister

20   St., San Francisco, CA 94102, and whose individual address is unknown to Plaintiff. Navarette is Court

21   Administrator, Deputy, Clerk, and Executive Officer of California Supreme Court." SAC, p. 6, ¶ 34.

22   Plaintiff describes State Bar Enterprise, and Navarette's alleged role. Supplement pp. 95-105.

23   "Jorge E. Navarette. This individual is the California Supreme Court Executive Officer, Clerk,

24   and Deputy. Mr. Navarette filed, or caused to be filed, a fraudulent antitrust petition on behalf of the

25   Plaintiff in California Supreme Court on October 18, 2022, that was not authorized (Case No. S276939).

26   After November 29, 2022 notice of potential obstruction of federal proceedings including antitrust

27   allegations delivered United States Department of Justice, Mr. Navarette obtained, or manufactured, an

28   "En Banc" decision on the fraudulent antitrust petition that Plaintiff did not file nor authorize (S276939),

1  with a rubber-stamp signature of Chief Justice Cantil-Sakauye on November 30, 2022 that was delivered
2  by mail to Plaintiff. Before the antitrust petition, Mr. Navarette also sent postal mail to the Plaintiff
3  related to the alleged "accusation" scheme to defraud operated by Cal. Supreme Court to protect "700+
4  Club" and screen for them. Specifically, Mr. Navarette is alleged to review accusations against State
5  Bar attorneys and ensure California Supreme Court does not hear such accusations by sending postal
6  mail intending to defraud members of the public and protect 700+ Club constituents. Plaintiff later
7  identified through public records requests that .008% of "accusations" succeeded (14 out of 1,732 from
8  2010-2022). Notably, Plaintiff's "accusation" that was "returned unfiled" by Navarette – later used by
9  Carissa Andresen to defraud Orange County Superior Court in February 2022 as if estopping duty to
10  curtail Catanzarite's fraud – was not listed as being filed. On information and belief, "accusations" are
11  another fraudulent scheme of State Bar Enterprise to pay lawyers, protect State Bar Enterprise, and
12  defraud the public of good faith honest services." Supplement, p. 21 (1:19).

13      Plaintiff alleges specific acts of Navarette to defraud Plaintiff and/or the U.S. in furtherance of
14  schemes to defraud. SAC, p. 19, ¶ 90; SAC, p. 19, ¶ 91. SAC, p 22, ¶ 98. See also Supplement, Predicate
15  Act #47, pp. 65-6. SAC, p. 29-30, ¶ 113. SAC, p. 30, ¶ 114. SAC, p. 31, ¶ 115. SAC, p. 32, ¶ 119.

16      **D. John C. Gastelum Allegations (Individual & Official Capacities)**
17      "Defendant JOHN C. GASTELUM ("Gastelum") is a State Bar associated culpable person sued
18  in both his official and individual capacities whose principal business address is 700 W. Civic Center
19  Dr., Santa Ana, CA 92701, and whose individual address is unknown to Plaintiff. Gastelum is judge in
20  Department C11 for Orange County Superior Court presiding over Case No. 30-2021-01237499." SAC,
21  p. 6, ¶ 35. Gastelum is subject to corrupt use of State Bar Enterprise functions. Supplement, p. 99 (13:21).

22      Plaintiff alleges specific acts of Gastelum to defraud Plaintiff used to control Orange County
23  Superior Court, and as part of a RICO conspiracy where Gastelum agreed to the acts of others to defraud
24  Plaintiff. SAC, p. 20, ¶ 93. SAC, p. 21, ¶ 96. See also Supplement, Predicate Act #46, pp. 64-5.
25  Supplement, Predicate Act #51, p. 69-70. Supplement, Predicate Act #52, pp. 70-1. SAC, p. 26-7, ¶ 107.
26  Supplement, Predicate Act #56, pp. 74-5. SAC, p. 27, ¶ 108. Supplement, Predicate Act #49, pp. 67-8.
27  SAC, p. 33-4, ¶ 121. Supplement, Predicate Acts #44 pp. 63-64 and #48 pp. 66-7. [Gastelum's conduct
28  indicates alleged agreement to violate substantive provisions of RICO and control RICO enterprise.]

**E. Orange County Superior Court is an Enterprise Subject of RICO Precedent**

"Defendant ORANGE COUNTY SUPERIOR COURT ("OCSC") is a State Bar associated enterprise and function of State government whose principal business address is 455 Golden Gate Avenue, San Francisco, CA 94102, and physical address is 700 W. Civic Center Dr., Santa Ana, CA 94102 and 751 W. Santa Ana Blvd., Santa Ana, CA 92701." SAC, p. 6, ¶ 36.

Orange County Superior Court enterprise was used to carry out, or controlled by, Catanzarite, State Bar Enterprise, and Gastelum at issue. See SAC, Supplement, including Predicate Acts #1-#71.

**III.    ROOKER-FELDMAN DOCTRINE OFF-POINT TO PLAINTIFF ALLEGATIONS**

Movants appear to contend they can conduct or agree to RICO and antitrust violations under State authority to defraud the public and prevent the United States from stopping them. This is *absurd.*

**A. Plaintiff Does Not Seek Reversal of Any State Court Judgment Here**

Plaintiff does not seek the U.S. District Court to reverse any state court judgment, so *Rooker-Feldman* is off-point. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005) is instructive. "(a) *Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, § 1257, precludes a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005). Plaintiff does not seek reversal of any State court orders. Plaintiff seeks retrospective and prospective relief for violations of RICO and intertwined violations of U.S. antitrust law that caused him damages and which require injunctive relief to protect Plaintiff and other innocent public members.

**B. U.S. District Court Has Original Subject Matter Jurisdiction for RICO & Antitrust**

As Plaintiff alleges, this case is not without precedent because it involves alleged corruption of an entire Court system through violations of antitrust laws and RICO. (See Operation Greylord). Movants are not beyond its reach. "Federal antitrust law…is "as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United States v. Topco Associates, Inc.,* 405 U.S. 596, 610, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). "The antitrust laws declare a considered and decisive prohibition by the Federal Government of <u>cartels</u>, price fixing, and other combinations or practices that undermine the free

1   market." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 502 (2015) "[T]he

2   Court in *Parker v. Brown* interpreted the antitrust laws to confer immunity on anticompetitive conduct

3   by the States when acting in their sovereign capacity. See 317 U.S., at 350–351, 63 S.Ct. 307." *N.C.*

4   *State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 503 (2015). (This law protects the

5   public, *not* Movants, who are not "free to act on their own conviction" to violate antitrust laws, either).

6           For antitrust injunctions, U.S. District Court has original subject matter jurisdiction under 15

7   U.S.C. § 4 and 15 U.S.C. § 15 for damages. For RICO injunctions, U.S. District Court has original

8   subject matter jurisdiction under 18 U.S.C. § 1964(a) and 18 U.S.C. § 1964(c) for damages.

9           **C. Movants Have Allegedly Engaged in or Agreed to Conduct Violative of RICO**

10          The elements of a racketeering claim are as follows: "(1) conduct (2) of an enterprise (3) through

11  a pattern (4) of racketeering activity (known as `predicate acts') (5) causing injury to plaintiff's `business

12  or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c),

13  1962(c)). *Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005)

14          *Living Designs* is all about law firms and those associated with them concealing evidence or

15  committing fraud on the Court – which the Ninth Circuit held to involve properly pleaded racketeering

16  activity. All the conduct alleged by Plaintiff undertaken by (or agreed to by) Movants involves

17  racketeering activity or antitrust violations. *Rooker-Feldman* is off point because non-sovereign

18  defendants State Bar, Grandt, Duran, Morgenstern deliberately concealed evidence *and* defrauded

19  Plaintiff through materially false representations of fact and law to obtain two (non-final) rulings from

20  John C. Gastelum: 1) to move (then *remove*) a properly noticed motion for summary judgment; 2) to

21  obtain a non-final, "sustained demurrer without leave to amend" in OCSC Case No. 30-2021-01237499.

22          In *Living Designs*, "[t]wo district courts held that DuPont had intentionally engaged in

23  fraudulent conduct by withholding this evidence. *See Kawamata Farms v. United Agri Prods.*, 86

24  Hawai'i 214, 948 P.2d 1055, 1083, 1087-88 (1996) (imposing $1.5 million punitive sanction for

25  discovery abuse), *aff'd*, 86 Hawai'i 214, 948 P.2d 1055 (Haw. 1997); *Bush Ranch v. E.I. DuPont de*

26  *Nemours Co.* (*In re DuPont*), 918 F. Supp. 1524, 1556-58 (M.D.Ga. 1995) (imposing sanctions

27  potentially totaling $115 million), *rev'd on other grounds*, 99 F.3d 363 (11th Cir. 1996) *Living Designs,*

28  *Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353, 358 (9th Cir. 2005) After learning that DuPont

1    fraudulently withheld evidence of Benlate's contamination, Plaintiffs filed the instant actions in the

2    United States District Court for the District of Hawai'i, asserting claims under RICO and state common

3    law claims of fraud, conspiracy, misrepresentation, abuse of process, infliction of emotional distress,

4    interference with prospective economic advantage, negligence, and spoliation of evidence. In sum,

5    Plaintiffs alleged that DuPont fraudulently withheld evidence of Benlate's contamination to induce

6    Plaintiffs to settle their underlying Benlate litigation. Plaintiffs allege they were harmed by DuPont's

7    fraudulent conduct "because they would have requested more money or refused to settle had they known

8    about the concealed data." *Matsuura II,* 73 P.3d at 691. *Living Designs, Inc. v. E.I. Dupont De Nemours*

9    *and Co.,* 431 F.3d 353, 358 (9th Cir. 2005) [Movants are now concealing evidence from this Court.]

10    **D. Movants' Participated in Conduct Violative of U.S. Antitrust Laws Against Plaintiff**

11    Movants contend that State of California has vested in them the ability to violate RICO and

12    antitrust laws, and that U.S. District Court has no authority to stop them. This argument fails. "But while

13    the Sherman Act confers immunity on the States' own anticompetitive policies out of respect for

14    federalism, it does not always confer immunity where, as here, a State delegates control over a market

15    to a nonsovereign actor [here The State Bar of California, whose conduct is intertwined with Movants,

16    in fact]." See *Parker, supra,* at 351, 63 S.Ct. 307 **("[A] state does not give immunity to those who**

17    **violate the Sherman Act by authorizing them to violate it, or by declaring that their action is**

18    **lawful**"). For purposes of *Parker,* a nonsovereign actor is one whose conduct does not automatically

19    qualify as that of the sovereign State itself. See *Hoover, supra,* at 567–568, 104 S.Ct. 1989. State

20    agencies are not simply by their governmental character sovereign actors for purposes of state-action

21    immunity. See *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 791, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)

22    ("The fact that the State Bar is a state agency for some limited purposes does not create an antitrust

23    shield that allows it to foster anticompetitive practices for the benefit of [State actors, State Bar

24    defendants nor Catanzarite using Orange County Superior Court, Jorge E. Navarette, or John C.

25    Gastelum]"). Immunity for state agencies, therefore, requires more than a mere facade of state

26    involvement, for it is necessary in light of *Parker* 's rationale to ensure the States accept political

27    accountability for anticompetitive conduct they permit and control." See *FTC v. Ticor Title Ins,* 504

28    U.S. 636 (1992). *N.C. State Bd., supra,* 574 U.S. 494, 504-5 (2015).

1        To put it simply, State of California lacks authority to defraud Plaintiff through Orange County

2   Superior Court, Jorge E. Navarette, or John C. Gastelum if Plaintiff shows violations of U.S. antitrust

3   laws as alleged. State of California must be held to account for its anticompetitive behavior, because

4   The State Bar of California is "not the sovereign," and aiding anticompetitive acts are not sovereign in

5   character, either under U.S. law. The order to strike a petition from the public in favor of an unlawful

6   trust (S276517), deferring to non-sovereign actors to make decisions, and then filing an antitrust petition

7   without authority (S276939) each violate U.S. antitrust laws. So, too, does California Supreme Court's

8   "accusation" scheme by mail (with a .008% success rate, while enriching more lawyers in the process).

9   **IV.    NO IMMUNITY EXISTS FOR ALLEGED RICO VIOLATIONS**

10        The cases cited by Movants are off point because they precede *N.C. State Bd. of Dental*

11   *Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110

12   (2015) and they do not involve violations of RICO or antitrust laws. A State does not grant authority to

13   violate antitrust laws or RICO by declaring the conduct to be legal. Movants' alleged RICO and antitrust

14   violations are an affront to public interest; worse to suggest they are somehow core functions of

15   government as Movants contend. Gastelum is not "free to act upon his own conviction" to conspire with

16   The State Bar of California to defraud Plaintiff and the U.S. (Motion to Dismiss, p. 5).

17        U.S. Supreme Court is clear and unanimous: even if Movants lacked economic motive in their

18   alleged racketeering, control of a RICO enterprise, or conspiracy, it does not bar RICO claims. *National*

19   *Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256-61 (1994)

20        **A. It is Outside Gastelum's Judicial Authority to Violate RICO or U.S. Antitrust Laws**

21        Gastelum has no authority to work with The State Bar of California to defraud Plaintiff or agree

22   to violate U.S. law. Period. Whether Gastelum agreed to one or both common plans of State Bar

23   Enterprise to defraud Plaintiff is a question of fact not properly suited for a motion to dismiss. "The

24   question of whether a business practice is deceptive in most cases presents a question of fact not

25   amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*, 989 F.Supp.2d 973

26   978 (C.D.Cal. 2013) Gastelum's conduct already appears to indicate agreement to violate RICO, though.

27        A RICO conspiracy under § 1962(d) may be established by proof of an agreement to commit a

28   substantive violation of RICO. *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th

1   Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove

2   any substantive RICO violations ever occurred as a result of the conspiracy"). The conspirator need not

3   have agreed to commit or facilitate each and every part of the substantive offense. *Howard*, 208 F.3d

4   741, 751 (9th Cir. 2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). However, the

5   conspirator must have been "aware of the essential nature and scope of the enterprise and intended to

6   participate in it." *Id.* (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)).

7           The "agreement need not be express as long as its existence can be inferred from words, actions,

8   or interdependence of activities and persons involved." *Oki Semiconductor Co.*, 298 F.3d at 775. If a

9   RICO conspiracy is demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators." *Id.*

10          A defendant can be held liable for a RICO conspiracy if the evidence shows that he or she

11  "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO

12  enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004).

13          Plaintiff has not yet been furnished opportunity to show evidence, so it is not appropriate that his

14  genuine RICO claims be dismissed as Movants would sincerely prefer. Although a substantive RICO

15  offense requires proof that each defendant committed at least two racketeering acts, it is settled law that

16  to establish a criminal RICO conspiracy charge, Plaintiff need not prove that Gastelum committed any

17  racketeering act or any overt act (a person can agree to the commission of a crime by someone else).

18  *Salinas v. United States*, 522 U.S. at 63. (Holding that RICO's conspiracy provision "does not...excuse

19  from [its] reach...an actor who does not himself commit...the two or more predicate acts requisite to

20  the underlying offense."

21          Nor can Navarette or Gastelum engage in conduct to control Orange County Superior Court

22  enterprise to defraud Plaintiff through a pattern of racketeering activity. Plaintiff must allege that his or

23  her injury stems not from Movants' predicate acts, but from defendants' acquisition or maintenance of

24  an interest in, control over, the pertinent enterprise. *Andrews Farms v. Calcot, Ltd.* 527 F. Supp. 2d

25  1239, 1256 (E.D. Cal.2007). Orange County Superior Court is an enterprise engaged in and whose

26  activities affect interstate commerce. The enterprise can be the court system itself. *United States v.*

27  *Murphy*, 768 F.2d 1518 (7th Cir. 1985). Somehow, Movants contend Plaintiff cannot allege an enterprise

28  without regard of the face of Plaintiff's pleading, or that a Court alone is an enterprise.

**B. It is Outside Navarette's Authority to Violate RICO or U.S. Antitrust Laws**

Like Gastelum, it is outside Navarette's authority to intentionally defraud Plaintiff and the United States. Whether Navarette intended to defraud Plaintiff by mail or wire, or the United States, is a question of fact not suited for a Motion to Dismiss. It is outside Navarette's authority to file antitrust cases without permission with intent to defraud Plaintiff or the United States. It would appear his argument of entitlement supports Plaintiff's theory – this was done in furtherance of a fraudulent scheme to prevent U.S. District Court decisional law from stopping antitrust violations of State Bar Enterprise.

## V.    ELEVENTH AMENDMENT ARGUMENT FAILS

### A. Plaintiff is Non-Diverse with Permission to Sue in an Antitrust & RICO Action

The Eleventh Amendment does not mean what it does not say. William Baude & Stephen E. Sachs *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609 (2021). Non-diverse Plaintiff has permission to sue The State Bar of California, State of California, and Orange County Superior Court. State of California refuses to appear in Superior Court since May 2, 2022, in two cases. The State Bar of California defrauded Plaintiff in Orange County Superior Court by concealing evidence and misrepresenting material facts and law in alleged control of a RICO enterprise.

Plaintiff cannot sue Orange County Superior Court as RICO enterprise in Orange County Superior Court – it strikes to the authenticity of due process. State of California is allegedly defrauding the United States, and The State Bar of California is allegedly an unlawful trust acting in restraint of $3.63 trillion in U.S. GDP. If this doesn't give rise to U.S. District Court authority, indeed, what does?

### B. For Prospective Relief Against Gastelum & Navarette – *Ex Parte Young* is Instructive

Plaintiff properly pleads for prospective relief against Gastelum and Navarette. The doctrine of *Ex Parte Young*, 209 U.S. 123 (1908) – that the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacity – is a well-recognized exception to the general prohibition of the Eleventh Amendment. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–06 (1984); *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("[T]he *Ex parte Young* doctrine, applies where a plaintiff "alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective."); *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir.

2022) ("[U]nder *Ex parte Young*, [Eleventh Amendment] immunity is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement of the act." (internal quotation marks and citation omitted)); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) ("Under the *Ex parte Young* exception to that Eleventh Amendment bar, a party may seek prospective injunctive relief against an individual state officer in her official capacity."); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity."); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

## C. Eleventh Amendment Not Applicable to Gastelum or Navarrette in Personal Capacities

The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("[P]laintiffs may seek damages against a state official in his personal capacity."); *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (stating the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities"); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394–95 (9th Cir. 1997); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). "[W]hen a plaintiff sues a defendant for damages, there is a presumption that he is seeking damages against the defendant in his personal capacity." *Mitchell*, 818 F.3d at 442 (citing *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999)). Even if they had Eleventh Amendment protection, which they don't, individual actors remain.

## D. State of California Accepted Federal Funds and Allegedly Defrauds the U.S.

Movants are not protected by the Eleventh Amendment because they are "not the sovereign." The State Bar of California announced it accepted $20 million from the U.S. government on July 13, 2022, which it used to pay active market participants. Supplement, Predicate Act #53, p. 71. The 9th Circuit addressed the issue, "reaffirming...precedent that a State waives Eleventh Amendment immunity by accepting federal funds. *Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir. 200) (reaffirming Douglas's holding that by accepting federal funds, a state waives its sovereign immunity); *Lovell*, 303 F.3d at 1051.

1   **VI.    RULE 8 IS NOT THE STANDARD FOR RICO, ANTITRUST FRAUD ALLEGATIONS**

2         F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the…claim is and the

3   grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*

4   *v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957). For claims that do not involve fraud

5   or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is

6   entitled to relief." F.R.Civ.P. 8(a). (A short and plain statement will not suffice for fraud, however).

7         The SAC with Supplement is "sufficient under rule 9(b) if it identifies the circumstances

8   constituting fraud so that a defendant can prepare an adequate answer from the allegations. While

9   statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere

10  conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc.* 818 F.2d 1433, 1439

11  (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases presents a

12  question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*,

13  989 F.Supp.2d 973 978 (C.D.Cal. 2013). Detailed fraud allegations are not subject to dismissal.

14  **VII.   SECOND AMENDED COMPLAINT SUFFICIENTLY STATES CLAIMS**

15        The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v.*

16  *Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful

17  presumption against rejecting pleadings for failure to state a claim.").

18        **A. Plaintiff Properly Pleads Several Enterprises**

19        Movants contend "Plaintiff has not pled and cannot plead an enterprise." Motion to Dismiss, p.

20  11 (22). "An enterprise includes any individual, corporation, association, or other legal entity, and any

21  union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4). For each

22  CLC, State Bar Enterprise, and Orange County Superior Court, the "definition is not very demanding."

23  *Odom v. Microsoft*, 486 F.3d at 548. For CLC and OCSC, they are legal entities, and the definition is

24  met. For State Bar Enterprise, Plaintiff provides detailed allegations of operations, members, and

25  associations-in-fact and the Court should assume their veracity. Supplement, pp. 95-105. If their veracity

26  be questioned, Plaintiff welcomes an evidentiary hearing or motions for summary judgment on any

27  single claim or allegation, which must be proven by a preponderance only to entitle Plaintiff relief. *See*

28  *Wilcox v. First Interstate Bank*, 815 F.2d 522, 531-32 (9th Cir. 1987).

**B. Plaintiff Properly Pleads Racketeering Activity**

Movants contend "plaintiff fails to allege facts constituting racketeering activity." Motion to Dismiss, p. 11 (26:27). To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985) ("'[R]acketeering activity' consists of no more and no less than commission of a predicate act."). Plaintiff alleges violations of 18 U.S.C. § 1952(a), 18 U.S.C. § 1503(a), 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1344, 18 U.S.C. § 1346, 18 U.S.C. § 1956, 18 U.S.C. § 1957, and 18 U.S.C. § 1960 (each are predicate acts and there are convictions already for some). SAC, Supplement.

As Plaintiff sets forth several schemes to defraud, *supra*, "[c]riminal mail and wire fraud involves: (1) a scheme based on an intent to defraud; and (2) the use of the mails or wires to further that scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2nd Cir. 2017); *Bui v. Nguyen*, 712 Fed. Appx. 606, 609 (9th Cir. 2017). A scheme to defraud encompasses "acts of artifice or deceit which are intended to deprive [Plaintiff] of his property or money." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.* No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993), *judgment aff'd*, 20 F.3d 771 (7th Cir. 1994). Movants have each used the mail or wire or conspired to do so in furtherance of schemes to defraud Plaintiff.

**C. Plaintiff Properly Pleads a Pattern of Racketeering Activity**

Girardi allegedly defrauded insurance companies of $1 billion paid to constituents of State Bar Enterprise in violation of 18 U.S.C. § 1344. Id., p. 12, ¶ 67 (2:5). Stephen Young Kang of State Bar Enterprise was convicted of two counts of wire fraud, which did violate 18 U.S.C. § 1343 in 2016. On July 20, 2017, Grandt and Retana allegedly defrauded Federal judge William Alsup, and thereby violated 18 U.S.C. § 1503(a). Id., p. 12, ¶ 69 (12:28). On September 22, 2017, State Bar Enterprise Jose Lopez, Jr. was sentenced for violation of 18 U.S.C. § 1962(d) for fixing over 1,000 cases in Orange County Superior Court. Id., p. 13, ¶ 70 (1:3). On February 14, 2020, Michael Avenatti of State Bar Enterprise was convicted of one count of wire fraud violative of 18 U.S.C. § 1343. SAC, p. 17, ¶ 85 (14:16). In June 2022, Avenatti pled guilty to four counts of wire fraud violative of 18 U.S.C. § 1343. SAC, p. 25, ¶ 104 (18:20). On October 4, 2022, Matthew Charles Elstein of State Bar Enterprise was convicted of one count wire fraud for "sham court documents" violative of 18 U.S.C. § 1343 [sham

3:22-CV-01616-AGS-DDL

1    court documents underlie most of Plaintiff's claims against Movants]. SAC, p. 29, ¶ 111 (4:7). (Each

2    are associated in fact with The State Bar of California, State Bar Enterprise).

3              "A pattern of racketeering activity requires at least two acts of racketeering activity, one of which

4    occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred within

5    ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering

6    activity." 18 U.S.C. § 1961(5).  Plaintiff alleges predicate acts forming a pattern of racketeering activity,

7    including convictions for related conduct violative of 18 U.S.C. § 1343 and 18 U.S.C. § 1962(d). SAC,

8    pp. 12-35. Fraud allegations conform to F.R.Civ.P. 9(b). Plaintiff provides further details on Predicate

9    Acts #1-#71. Supplement, pp. 12-87. Plaintiff alleges in his SAC that The State Bar of California is

10   corrupted by bribery of public employees, which it admitted publicly on March 10, 2023. Supplement,

11   p. 3, ¶ 12. Movants do not address, indeed, they ignore this. See also 18 U.S.C. § 1346.

12             Proving two predicate acts is a necessary condition for finding a violation, but may not be

13   sufficient. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). To establish a "pattern of

14   racketeering activity," the predicate acts must be both "related" and "continuous." *Id.*; *Sever v. Alaska

15   Pulp Corp.*, 978 F.2d at 1529. Related conduct "embraces criminal acts that have the same or similar

16   purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by

17   distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 240. Relatedness of the

18   alleged or proven predicate acts is rarely an issue. *See Medallion Television Enters., Inc. v. SelecTV of

19   Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987) (finding alleged predicate acts to be related when all

20   were directed toward plaintiff or inducing plaintiff). Plaintiff alleges a pattern of racketeering activity.

21   **D. Plaintiff Properly States Detailed, then Plain Statement Claims Against Navarette**

22                  1. 18 U.S.C. § 1962(c) Racketeering

23             The elements of a § 1962(c) claim are as follows: "(1) conduct (2) of an enterprise (3) through a

24   pattern (4) of racketeering activity (known as `predicate acts') (5) causing injury to plaintiff's `business

25   or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c),

26   1962(c)). *Living Designs, Inc. v. E.I. Dupont De Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005)

27             "State Bar Enterprise is an enterprise engaged in and whose activities affect interstate commerce.

28   [Navarette is] employed by or associated with the enterprise." SAC, p. 38, ¶ 147. "[Navarette] agreed to

1   and did conduct and participate in the conduct of the State Bar Enterprise's affairs through a pattern of

2   racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff." Id., ¶ 148.

3        "Navarette used the mail on September 29, 2020, then again on March 22, 2021, to carry on

4   knowingly illegal activity of State Bar Enterprise, conceal it, and defraud Plaintiff." Id., p. 39, ¶ 155.

5   "Navarette used the wire October 18, 2022, to file a fraudulent antitrust petition that was not authorized

6   by Plaintiff using obstructed, altered files from Retana. Navarette then created a fake case S276939 to

7   defraud Plaintiff and the U.S. for State Bar Enterprise and personal gain." Id., ¶ 156. "Navarette

8   responded to a warning of potential obstruction of justice delivered by Plaintiff November 29, 2022 by

9   obtaining a fraudulent "En Banc" decision November 30, 3022, on an obstructed antitrust petition filed

10  in California Supreme Court without Plaintiff's authorization." Id. ¶ 157. "[Navarette has] directly

11  and indirectly conducted and participated in the conduct of the State Bar Enterprise's affairs through a

12  pattern of racketeering and activity described above, in violation of 18 U.S.C § 1962(c)." Id. ¶ 162. "As

13  a direct and proximate result of [Navarette's] racketeering activities and violations of 18 U.S.C. §

14  1962(c), Plaintiff has been injured in his business and property[]." Id. ¶ 163.

15              2. 18 U.S.C. § 1962(b) Interests in or Control of RICO Enterprise

16       Under 18 U.S.C. § 1962(b), Plaintiff must allege that his or her injury stems not from Movants'

17  predicate acts, but from defendants' acquisition or maintenance of an interest in, control over, the

18  pertinent enterprise. *Andrews Farms v. Calcot, Ltd.* 527 F. Supp. 2d 1239, 1256 (E.D. Cal.2007).

19  (recognizing that to state § 1962(b) claim, plaintiff must allege that (1) defendant's activity led to its

20  control of RICO enterprise, and (2) control resulted in injury to plaintiff.) RICO prohibits the acquisition

21  or maintenance of an interest in an enterprise engaged in interstate commerce through a pattern of

22  racketeering activity." *Federal Information Systems, Corp. v. Boyd*, 753 Boyd F. Supp. 971, 974 (D.D.C.

23  1990) § 1962(b).

24       "Orange County Superior Court is an enterprise engaged in and whose activities affect interstate

25  commerce. The enterprise can be the court system itself. *United States v. Murphy*, 768 F.2d 1518 (7th

26  Cir. 1985)." Id. p. 44, ¶ 180.

27       "[Navarette] acquired and maintained interests in and control of the Orange County Superior

28  Court enterprise through a pattern of racketeering activity." Id. ¶ 181.

1    "Retana and Navarette colluded to defraud Plaintiff and the U.S. by obstructing S276517,
2    creating unauthorized case S276939, then obtaining a fraudulent CSC decision." Id. p. 45, ¶ 186.
3        "[Navarette has] directly and indirectly acquired and maintained interests in and control of the
4    Orange County Superior Court enterprise through the pattern of racketeering activity described above
5    [in paragraphs 1 through 177], in violation of 18 U.S.C. § 1962(b)." Id. p. 46 ¶ 199. "As direct and
6    proximate result of [Navarette's] racketeering activities and violation of 18 U.S.C. § 1962(b), Plaintiff
7    has been injured in his business and property[]." Id. ¶ 200. Plaintiff details Navarette's control over the
8    enterprise. Supplement, pp. 120-25. Plaintiff's supplement provides more specific details for 9(b).
9        **E. Plaintiff Properly States Detailed, then Plaint Statement Claims Against Gastelum**
10             1. 18 U.S.C. § 1962(b) Interests in or Control of RICO Enterprise
11       "Orange County Superior Court is an enterprise engaged in and whose activities affect interstate
12    commerce. The enterprise can be the court system itself. *United States v. Murphy*, 768 F.2d 1518 (7[th]
13    Cir. 1985)." SAC. p. 44, ¶ 180.
14       "[Gastelum] acquired and maintained interests in and control of the Orange County Superior
15    Court enterprise through a pattern of racketeering activity." Id. ¶ 181. "Duran and Grandt colluded *ex*
16    *parte* by wire with Gastelum and OCSC to obstruct Government Claims Act litigation for all times
17    relevant after January 18, 2022 to defraud Plaintiff." Id. ¶ 183. "Grandt, Duran,[]Morgenstern
18    propounded materially false statements of fact and law to obtain[] "sustained demurrer without leave"
19    from Gastelum in OCSC to defraud Plaintiff." Id. p. 45, ¶ 185. "Gastelum acted in concert with other
20    Count IV Defendant(s) with intent to defraud Plaintiff in 30-2021-01237499 for secret, illegal
21    consideration or benefit unrelated to the merits." Id. ¶ 196. "Charles Tsai caused OCSC to reject a motion
22    for summary judgment, statement of facts, and declaration on February 15, 2023 that was accepted in
23    July 2022 to defraud Plaintiff and to conceal the racketeering activity and filed evidence from the
24    record." Id. p. 46, ¶ 197.
25       "[Gastelum has] directly and indirectly acquired and maintained interests in and control of the
26    Orange County Superior Court enterprise through the pattern of racketeering activity described above
27    [in paragraphs 1 through 177], in violation of 18 U.S.C. § 1962(b)." Id. p. 46 ¶ 199. "As direct and
28    proximate result of [Gastelum's] racketeering activities and violation of 18 U.S.C. § 1962(b), Plaintiff

1   has been injured in his business and property[]." Id. ¶ 200. Plaintiff details Gastelum's control over the

2   enterprise. Supplement, pp. 120-25. Plaintiff's supplement provides more specific details for 9(b).

3              2. 18 U.S.C. § 1962(d) RICO Conspiracy

4              "The RICO conspiracy statute, simple in formulation, provides: "It shall be unlawful for any

5   person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C.

6   § 1962(d). *Salinas v. United States*, 522 U.S. 52, 63 (1997)

7              "As set forth above [in paragraphs 1 through 201], Count V Defendant(s) [including Gastelum]

8   agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c)." SAC, p. 47, ¶ 204.

9              "Gastelum's agreement to violate § 1962(c) and (b) is shown by his role in OCSC No. 30-2021-

10  01237499, the acceptance and reliance of materially false statements of fact and law from Duran, Grandt,

11  and Morgenstern, and the "sustained demurrer without leave" on the basis that he did not possess

12  jurisdiction over Government Claims Act litigation, which he knew was false." Id. p. 49, ¶ 221.

13  "Gastelum's agreement to violate § 1962(c) and § 1962(b) is shown by the rejection on February 15,

14  2023, of Plaintiff's filings and evidence that were accepted in July 2022 in OCSC." Id. ¶ 222.

15             "The Count V Defendant(s) [including Gastelum] intentionally conspired and agreed to directly

16  and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate

17  enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and

18  conduct and participate in the conduct of the affairs of an enterprise through a pattern of racketeering

19  activity. The Count V Defendant(s) [including Gastelum] knew that their predicate acts were part of a

20  pattern of racketeering activity and agreed to the commission of those acts to further the schemes

21  described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b), and (c), in

22  violation of 18 U.S.C. § 1962(d)." Id. ¶ 226. "As direct and proximate result of the Count V

23  Defendant(s)' [including Gastelum] conspiracy, the overt acts taken in furtherance of that conspiracy,

24  and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in [his] business and property[]." Id.,

25  p. 50, ¶ 227. Plaintiff describes detailed facts constituting conspiracy in which Gastelum participated.

26  Supplement, pp. 126-36. Plaintiff's supplement provides more specific details for 9(b). Id. pp. 30-87.

27          **F. Plaintiff Properly States Claims Against Orange County Superior Court**

28

1    Like § 1962(a), most courts have ruled that § 1962(b) does not require the defendant to be
2    separate from the enterprise, so Orange County Superior Court is properly named a defendant here where
3    it was not only allegedly used to carry on myriad racketeering activity, it is also an enterprise defendant
4    which Plaintiff has vested rights to sue. (The definition is not very demanding).

5    In *Ikuno v. Yip*, 912 F.2d at 310, the Ninth Circuit relied on *Cincinnati Gas & Elec. Co. v.*
6    *General Elec. Co.*, 656 F. Supp. 49, 85 (S.D. Ohio 1986*),* a case where a party was found to have control
7    under § 1962(b) where it had voting rights and was directly involved in management. See also *United*
8    *States v. Jacobsen*, 691 F.2d 110, 112-13 (2nd Cir. 1982) (finding lease could be used to control
9    enterprise.) Plaintiff alleges control of Orange County Superior Court enterprise to defraud him.

10   **G. If Plaintiff's SAC, Supplement Fail, Plaintiff Must Be Granted Opportunity to Amend**

11   "In exercising its discretion to summarily dismiss claims on its own motion or by motion of the
12   defendants, the Court takes into consideration that, in any case, and more so in pro se cases, the law
13   requires that plaintiffs be given an opportunity to amend their pleadings to remedy any deficiencies that
14   were identified during screening or after a motion to dismiss has been adjudicated. *See Lipton v.*
15   *Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may
16   seek amendment after an adverse ruling, and in the normal course district courts should freely grant
17   leave to amend when a viable case may be presented."). The issue is not whether plaintiff will prevail
18   but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and*
19   *Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted)." *Hook v. Idaho*,
20   1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022) Plaintiff can't be denied due process yet again, here.

21   F.R.Civ.P. 12(b)(6) allows a party to assert "failure to state a claim upon which relief can be
22   claimed" by motion. Quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th
23   Cir. 2000), "[a]ll allegations of material fact are taken as true and construed in the light most favorable
24   to the nonmoving party" (Plaintiff). "A court considering a motion to dismiss can choose to begin by
25   identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption
26   of truth. While legal conclusions can provide the framework of a complaint, they must be supported by
27   factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity
28   and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556

1   U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009). The Court should assume veracity:

2   Movants have intentionally defrauded Plaintiff and the United States using the wire and mail.

3       **H. Rule 12(d) Converts Motion to Dismiss to Summary Judgment Motion Opportunity**

4       F.R.Civ.P. 12(d) converts the Motion to Dismiss into one for summary judgment under Rule 56

5   if "matters outside the pleadings are presented to and not excluded by the Court," as here, granting all

6   parties opportunity to present pertinent material. (Movants filed various records here; Plaintiff must be

7   granted opportunity to show why they involve fraud, antitrust, and RICO violations if they are

8   considered). Honorable Cynthia A. Bashant was already misled by Charles Tsai as if Plaintiff could not

9   support claims, yet there exist two terminated motions for summary judgment at Docket #15 and Docket

10  #26. Plaintiff cannot legally be prevented from showing and discovering *more* proof of public corruption

11  involving Gastelum, Navarette and Orange County Superior Court here.

12  **VIII.   CONCLUSION**

13      "In 2015 *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct.

14  1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015), the United States Supreme Court "reaffirmed that a

15  state regulatory board" controlled by majority of active market participants such as The State Bar of

16  California "**is not the sovereign**." Defendants to this case ignore this binding law and its implications

17  on each of them." Supplement, p. 3, ¶ 10 (2:6). Movants' conduct is inextricably intertwined with The

18  State Bar of California in this case, and the conduct is anticompetitive in favor of allegedly corrupt

19  lawyers. Plaintiff even alleged bribery and corruption before it was publicly admitted March 10, 2023.

20      Plaintiff has a right to access a neutral, objective U.S. Court, and any imperfections in his SAC

21  and Supplement are not legal cause to dismiss his claims. Indeed, he has a less stringent standard than

22  lawyers according to U.S. Supreme Court. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972)

23      John C. Gastelum, Jorge E. Navarette, and Orange County Superior Court's Motion to Dismiss

24  must be denied, or in the alternative, the Court should order an evidentiary hearing or schedule

25  converting it to motion for summary judgment under 12(d). Plaintiff is prepared to meet either moment.

26

27      Respectfully Submitted,

28      April 11, 2023,                          Justin S. Beck, Opposing Party, Plaintiff

                                    20                        3:22-CV-01616-AGS-DDL

1

<u>**PROOF OF SERVICE**</u>

2       I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action,

3   and that my address is 3501 Roselle St., Oceanside, CA 92056.

4       On April 11, 2023, I served one copy of the following documents:

5

6   **PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO DEFENDANTS JORGE E. NAVARETTE, JOHN C. GASTELUM, AND ORANGE COUNTY SUPERIOR COURT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

7

8

9       Participants in the case who are registered CM/ECF users will be served when these papers are

10   filed with the Court.

11       *See the CM/ECF service list.*

12   Electronic service is scheduled for delivery April 11, 2023, to the following email addresses:

13       Corey Amundson                    corey.amundson@usdoj.gov

14       Todd Gee                          todd.gee@usdoj.gov

15       Robert Heberle                    Robert.heberle@usdoj.gov

16       Sean Mulryne                      sean.mulryne@usdoj.gov

17       U.S. Attorney's Office            efile.dkt.civ@usdoj.gov

18

19       By electronic mail by personally transmitting a true copy thereof via an electronic email service

20   connected to the internet, addressed to the email address listed above [X].

21       I declare the foregoing to be true under penalty of perjury under the laws of the State of California

22   and United States. I am signing this from Oceanside, California on April 11, 2023.

23

24

25

26                                   Brian Bargabus, Declarant

27

28

21                                         3:22-CV-01616-AGS-DDL