Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

FILED

APR 19 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| JUSTIN S. BECK, | Case No.: 3:22-CV-01616-AGS-DDL |
| Plaintiffs, | Judge:        Hon. Andrew G. Schopler |
| vs. | **PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| CATANZARITE LAW CORPORATION; STATE OF CALIFORNIA; THE STATE BAR OF CALIFORNIA; ORANGE COUNTY SUPERIOR COURT; ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE; RUBEN DURAN, ESQ.; SUZANNE CELIA GRANDT, ESQ.; RICHARD FRANCIS O'CONNOR, JR.; MOHAMMED ZAKHIREH; JAMES DUFFY; KENNETH CATANZARITE, ESQ.; JIM TRAVIS TICE, ESQ.; NICOLE MARIE CATANZARITE WOODWARD, ESQ.; BRANDON WOODWARD, ESQ.; TIM JAMES O'KEEFE, ESQ.; AMY JEANETTE COOPER; CLIFF HIGGERSON; ELI DAVID MORGENSTERN, ESQ.; LEAH WILSON, ESQ.; ROBERT GEORGE RETANA, ESQ.; ELLIN DAVTYAN, ESQ.; JOHN C. GASTELUM; JORGE E. NAVARETTE; GEORGE SARGENT CARDONA, ESQ.; ANTHONY B. SCUDDER | Hearing Date: May 9, 2023 |
| | Time:        3:00PM |
| | Crtrm:        5C (5th Floor) |
| | Trial Date:        None Set |
| Defendants, | |
| UNITED STATES ATTORNEY GENERAL; UNITED STATES OF AMERICA | |
| Nominal Defendants | |

TABLE OF CONTENTS

I.     INTRODUCTION...................................................................................1

II.    FACTUAL ALLEGATIONS..............................................................2-4

III.   ARGUMENT IN OPPOSITION......................................................4-14

       A. Plaintiff Provides Plain Statement Allegations vs. OCDA Complying with Rule 8

              1. This Court's Prior Order Was Legally Incorrect, Improperly Influenced by Tsai

              2. Ninth Circuit is Particularly Hostile to Motions to Dismiss Under 12(b)(6)

              3. Plaintiff's Pleading Standard is Lesser Than Attorneys Per U.S. Supreme Court

       B. Plaintiff States Facts & Legal Theories to Support a Claim Against OCDA

              1. Plaintiff Alleges Law Firm OCDA Had Duty Under Fourteenth Amendment, U.S.

                     a. OCDA Attorneys Are All Bound to Cal. Bus. & Prof. Cod. § 6068

                     b. OCDA is a Supervisory Law Firm Under Cal. Rul. Prof. Cond. 5.1

              2. Plaintiff Alleges OCDA Breached Duty Under Fourteenth Amendment, U.S.

              3. There Is No Immunity for Violating Mandatory Duty Under Cal. Gov. Cod. § 815.6

       C. Plaintiff Supplements SAC Herewith via Additional Tort Theories v. OCDA

              1. Additional Factual Allegations by Supplement #2

              2. § 1983 Claim for Unlawful Policy, Practice or Custom

              3. § 1983 Claim for Failing to Prevent Violations of Law or Failure to Train

              4. § 1983 Claim for Due Process—State Created Danger

IV.    CONCLUSION.....................................................................................15

# TABLE OF AUTHORITIES

## Cases—State

*Alejo v. City of Alhambra,* .......................................................................................9

    75 Cal.App.4th at p. 1194

*Barner v. Leeds,* .......................................................................................................9

    24 Cal.4th 676, 685 (2000)

*Brown v. U.S. Taekwondo,* .....................................................................................10

    11 Cal.5th 204, 209 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021)

*Davidson v. City of Westminster,* ........................................................................9, 10

    32 Cal.3d 197, 202 (1982)

*Elton v. County of Orange,* .....................................................................................9

    3 Cal.App.3d 1053, 1059 (1970)

*Hoff v. Vacaville Unified School Dist.,* ..................................................................10

    19 Cal.4th 925 (1998)

*Johnson v. State,* ...............................................................................................9, 10

    69 Cal. 2d 782 (1968)

*Marzec v. Public Employees' Retirement System,* ...................................................7

    236 Cal.App.4th 889, 917 (2015)

*McCorkle v. City of Los Angeles,* ............................................................................9

    70 Cal.2d 252, 261 (1969)

*Muskopf v. Corning Hospital District,* .....................................................................9

    55 Cal.2d 211 (1961)

*People for Ethical Operation of Prosecutors & Law Enf't v. Spitzer,* ......................1

    53 Cal.App.5th 391, 267 Cal. Rptr. 3d 585 (Cal. Ct. App. 2020)

*Rowland v. Christian,* ............................................................................................10

    69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968)

*Scott v. County of Los Angeles,* ..............................................................................10

    27 Cal.App.4th 125 (1994)

1   *Tarasoff v. Regents of University of California,* ..............................................................10

2        17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] (1976)

3   *Thompson v. County of Alameda,* ...........................................................................10

4        27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728] (1980)

5   *Wirin v. Parker,* ...............................................................................*passim*

6        48 Cal.2d 890, 894 (1957)

7                    <u>Statutes & Rules—State</u>

8   Cal. Bus. & Prof. Cod. § 6077.......................................................................8

9   Cal. Bus. & Prof. Cod. § 6068.................................................................7, 9, 11

10  Cal. Civ. Cod. § 1714............................................................................10

11  Cal. Gov. Cod. § 810.6...........................................................................6

12  Cal. Gov. Cod. § 815.6.................................................................6, 8, 9, 12, 13, 14

13  Cal. Gov. Code § 820.2...........................................................................10

14  Cal. Gov. Code § 820.8...........................................................................10

15  Cal. Pen. Cod. § 518.............................................................................3

16  Cal. Pen. Cod. § 522.............................................................................3

17  Cal. Pen. Cod. § 523.............................................................................3

18  Cal. Rul. Prof. Cond. 1.0.1..................................................................7, 8, 11

19  Cal. Rul. Prof. Cond. 5.1 ...................................................................7, 8, 11

20  Cal. Rul. Court 8.1115(b) .....................................................................1, 11

21                       <u>Cases—Federal</u>

22  *Ashcroft v. Iqbal,* ...........................................................................1, 6

23        556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009)

24  *Bell Atlantic Corp. v. Twombly,* ..............................................................1, 4

25        550 U.S. 544, 555, 590 (2007)

26  *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* .................................................6

27        200 F.3d 661, 663 (9th Cir. 2000)

28

*Burns v. Reed,* ...........................................................................................................9

     500 U.S. 478, 486 (1991)

*Christie v. Iopa,* ........................................................................................................13

     176 F.3d 1231, 1235 (9th Cir. 1999)

*City of St. Louis v. Praprotnik,* ...............................................................................12

     485 U.S. 112, 127 (1988)

*Conley v. Gibson,* ......................................................................................................4

     355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957)

*Connick v. Thompson,* .........................................................................................12, 14

     563 U.S. 51, 62 (2011)

*Diaz v. Int'l Longshore and Warehouse Union, Local 13,* ........................................5

     474 F.3d 1202, 1205 (9th Cir. 2007)

*Eagle Point Education Assoc. v. Jackson Cnty. School Dist.,* ...................................13

     880 F.3d 1007, 1108 (9th Cir. 2018)

*Ellins v. City of Sierra Madre,* .................................................................................12

     710 F.3d 1049, 1066 (9th Cir. 2013)

*Gillette v. Delmore,* ..................................................................................................12

     979 F.2d 1342, 1346 (9th Cir. 1992)

*Gilligan v. Jamco Dev. Corp.,* ...................................................................................5

     108 F.3d 246, 248-49 (9th Cir. 1997)

*Gravelet-Blondin v. Shelton,* .....................................................................................13

     728 F.3d 1086, 1096 (9th Cir. 2013)

*Haines v. Kerner,* ........................................................................................................6

     404 U.S. 519, 92 S. Ct. 594 (1972)

*Harper v. City of Los Angeles,* .............................................................................13, 14

     533 F.3d 1010, 1026 (9th Cir. 2008)

*Hernandez v. City of San Jose,* ..................................................................................14

     897 F.3d 1125, 1133-35 (9th Cir. 2018)

*Tsao v. Desert Palace, Inc.,* ...................................................................................13, 14

698 F.3d 1128, 1143, 1145, 1146 (9th Cir. 2012)

*Walker Distributing Co. v. Lucky Lager Brewing Co.,* .....................................................1

323 F.2d 1, 3-4 (CA9 1963)

*Wool v. Tandem Computers, Inc.* ...............................................................................4

818 F.2d 1433, 1439 (9th Cir. 1987)

<u>Statutes & Rules—Federal Other Authorities</u>

42 U.S.C. § 1983.........................................................................................12, 13, 14

F.R.Civ.P. 8(a)(2) ...........................................................................................4

F.R.Civ.P. 9(b) ...........................................................................................1, 6

F.R.Civ.P. 12(b)(6) ...........................................................................................5, 6

<u>Other Authorities</u>

Rest. 2d. Torts (1965) § 315...........................................................................................10

## I.    INTRODUCTION

Plaintiff's allegations against Orange County District Attorney's Office ("OCDA") arise from the conduct of the entity itself, its staff, and its local business within OCDA's criminal jurisdiction – Catanzarite Law Corporation and its attorneys Kenneth J. Catanzarite, Brandon Woodward, Tim James O'Keefe, Nicole Marie Catanzarite Woodward, and Jim Travis Tice. (SAC, Supplement).

Plaintiff alleges with particularity criminal conduct from 2007 through present wherein the local business in Orange County uses its license to practice law as a racketeering license to commit state and federal crimes against non-attorneys. He not only makes allegations in painstaking conformance with Federal Rules of Procedure 9(b), but he also cites Court of Appeal rulings which a Court can rely upon under California Rules of Court 8.1115(b) even when unpublished to evidence crimes. He includes citations from public records produced by The State Bar of California about Catanzarite's gang.

Like their peers [bosses] at The State Bar of California, OCDA seeks to dismiss Plaintiff's pleading at this early stage as if Plaintiff cannot state a claim. Dkt. #64 ("Motion to Dismiss"). Like their peers, OCDA believes itself subject to some unnamed and non-specific blanket immunity that gobbles up every act of every person associated with its organization. This argument fails at this stage.

Plaintiff provides short and plain statements as a framework of the complaint, and detailed factual allegations to conform with F.R.Civ.P. 9(b)'s heightened pleading standards under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and later under *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868, 73 Fed. R. Serv. 3d 837 (2009). Dissenting to *Twombly* and joined by Justice Ginsburg, Justice Stevens condemned these heightened standards that Plaintiff meets. ("The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading, . . . so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it"); *Walker Distributing Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 3-4 (CA9 1963) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 590 (2007)

Plaintiff alleges OCDA to be part of a corrupt machinery that is robbing the public through bribery, extortion, illegal protection of criminals. The U.S. Department of Justice made similar OCDA findings, as did Court of Appeal. *People for Ethical Operation of Prosecutors & Law Enf't v. Spitzer*, 53 Cal.App.5th 391, 267 Cal. Rptr. 3d 585 (Cal. Ct. App. 2020) Where there is smoke, there is fire.

## II.    FACTUAL ALLEGATIONS

"Plaintiff is direct target of a pattern of racketeering activity intended to 1) defraud him of business and property, and 2) to prevent him from his money judgments for claims against the government to conceal the conduct and suppress the evidence of public corruption in his possession." Dkt. #37, Second Amended Complaint ("SAC"), p. 3, ¶ 6. "Catanzarite Law Corporation, Kenneth Catanzarite, Nicole Marie Catanzarite Woodward, Brandon Woodward, Tim James O'Keefe, and Jim Travis Tice designed or carried out a fraudulent scheme using Orange County Superior Court to defraud Plaintiff and others aided, ratified by State actors." Ibid. ¶ 7. "Orange County District Attorney's Office and Orange County Superior Court choose to carry on the illegal conduct with malice and actual knowledge of its illegal nature to conceal public corruption." Ibid. ¶ 13. "Defendant ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE ("OCDA") is a State Bar associated enterprise and component of County of Orange government...Most of the conduct at issue occurred within OCDA's criminal jurisdiction, and OCDA has actual knowledge of its alleged criminal nature." Id., p. 7, ¶ 37. "The main enterprise consists of...Orange County Superior Court...Catanzarite Law Corporation...Orange County District Attorney's Office." SAC, p. 10, ¶ 51. "On information and belief, public entity State Bar operates primarily for the personal benefit of 700+ Club which includes KJC, NMC, BW, TJO, Tice...Todd Spitzer, and other allegedly corrupt persons among State Bar Enterprise." Id., p. 10, ¶ 55. [Spitzer is Orange County District Attorney]. "If a member of the public threatens operations of 700+ Club, a combined attack using purported "discretion" of State Bar Enterprise to conceal or enable crimes under color of sovereignty exists." Id., p. 11, ¶ 60. "Released October 13, 2022, "Justice Department Finds Civil Rights Violations by Orange County, California, District Attorney's office and Sheriff's Department" based on a thorough investigation from 2007 through 2016 that revealed systemic Fourteenth Amendment violations." Id., p. 29, ¶ 112.

"Overtly, using the wire on October 19, 2022 at 03:45 PM, Orange County District Attorney's Office...wrote to Plaintiff: "Dear Mr. Beck, I am the Victims' Rights Liaison and my role is to address victims' concerns. I reviewed [your allegations and Court of Appeal findings.] First, if you believe you or your family are in danger, please contact your local police department to inform them of any threats to your safety...allegations you put forth involve federal statutes...Orange County District Attorney's

1   Office does not have jurisdiction over federal crimes." This person knew Plaintiff was in danger and

2   had read Court of Appeal's conclusions that he was a victim of serial fraud by KJC, BW, and TJO from

3   local business CLC within their criminal jurisdiction, and that Plaintiff was entitled to equal protection

4   under the law. Consistent with US DOJ's findings delivered October 13, 2022, OCDA chose not to help

5   Plaintiff, and instead chose to protect members of the State Bar Enterprise, willfully." Id., p. 31, ¶ 116.

6       "Plaintiff uncovered manipulation of Court records in Orange County Superior Court in cases

7   involving Catanzarite, for which clerks were later convicted of RICO conspiracy." Dkt. #50, Supplement

8   and Rico Case Statement ("Supplement"), p. 10, ¶ 60. "When Plaintiff sued The State Bar of California

9   and later State of California which refuses to appear in Superior Court despite repeated service in Orange

10  County Superior Court Case No. 30-2020-01145998 and 30-2021-01237499, Plaintiff alleges public

11  employees and elected officials of The State Bar of California and State of California embarked on a

12  spectacularly relentless mission to conceal public corruption and defraud Plaintiff. Plaintiff alleges each

13  to be involved in the schemes, or they would resolve government claims amicably." Supplement, p. 11,

14  ¶ 69.

15      "Plaintiff informed local law enforcement of Court orders related and unrelated to Plaintiff

16  involving Catanzarite Law Corporation. Anaheim Police Department informed Plaintiff it did not accept

17  online police reports for attorney fraud, racketeering (only every other crime). Plaintiff visited the

18  Anaheim PD station, but they refused to investigate." Id., p. 12, ¶ 72. "Plaintiff visited Orange County

19  District Attorney's office, which refused to meet with him, and said that it would not review without

20  investigation by Anaheim Police Department." Ibid., ¶ 72. "Plaintiff alleges local law enforcement in

21  Orange County, specifically Anaheim Police Department, Anaheim City Attorney's Office, and Orange

22  County District Attorney's Office, to be either involved and bribed, or complicit, in the ongoing schemes

23  to defraud the public by Catanzarite Law Corporation and The State Bar of California." Ibid. ¶ 74. "On

24  information and believe, a local corruption probe is already underway in Orange County targeting City

25  Attorney's Office, which produced public records detailing their knowledge of Catanzarite Law

26  Corporation's fraudulent schemes related, and unrelated, to Plaintiff." Ibid., ¶ 74. "Plaintiff informed

27  intent to arrest KJC, Anaheim PD threatened Plaintiff immediately by phone." Ibid., ¶ 75. [Plaintiff also

28  alleges extortion under Cal. Pen. Cod. §§ 518-523 PC from Orange County by KJC/CLC; Supplement.]

"Common Plan #1. For the Catanzarite Law Corporation enterprise, it is alleged the plan consists of bribing public employees of The State Bar of California, Anaheim Police Department, Orange County District Attorney's Office, filing fraudulent cases that lack legal standing or probable cause predicated upon non-judicial fraud and the ongoing protection of The State Bar of California and law enforcement, then calling it "litigation activity" as if it were protected speech.[]." Supplement, p. 88 (21:28), p. 89 (1:19). "It is alleged that Kenneth Joseph Catanzarite, allegedly in a similar manner to Thomas V. Girardi in Los Angeles Superior Court and Los Angeles, has corrupted Orange County Superior Court, Orange County District Attorney's Office, and the City of Anaheim. It is alleged Mr. Catanzarite's knowledge of the intricacies and actors engaged in public corruption places leverage upon all actors, who are forced to continue the conduct of the enterprise." Id., p. 93 (10:15). "It is alleged...that The State Bar of California enterprise operates for 700+ Club to defraud insurers and non-attorneys." Id., p. 96 (1:2).

## III.    ARGUMENT IN OPPOSITION

### A. Plaintiff Provides Plain Statement Allegations vs. OCDA Complying with Rule 8

F.R.Civ.P. 8(a)(2)'s purpose is to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2L.Ed. 2d. 80 (1957).

For claims that do not involve fraud or mistake, Plaintiff need only plead a "short and plain statement of the claim showing the pleader is entitled to relief." F.R.Civ.P. 8(a). But Plaintiff's claims lie in fraud, bribery, and corruption in OCDA's jurisdiction – and he provides plain statement allegations against OCDA as set forth below. Put simply, Plaintiff can't achieve both standards under Rule 8.

The SAC and Supplement at Docket #50 "is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Wool v. Tandem Computers, Inc.* 818 F.2d 1433, 1439 (9th Cir. 1987). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Pelayo v. Nestle USA, Inc. et al.*, 989 F.Supp.2d 973 978 (C.D.Cal. 2013). OCDA, under color of state law, carried on many of the Predicate Acts #1-#71 with knowledge of public harm due in part to alleged bribery. SAC.

1     1. <u>This Court's Prior Order Was Legally Incorrect & Improperly Influenced by Tsai</u>

2    Plaintiff describes the circumstances involving Charles Tsai and Honorable Bashant.

3 Supplement, pp. 83-85, Predicate Acts #67-70. Charles Tsai promptly left this action a soon as Plaintiff

4 detailed these allegations; defendants Davtyan, Retana assumed the role of defense counsel. Dkt. #52.

5 Honorable Bashant assigned this case to Honorable Schopler. Dkt. #47. In any event, Plaintiff was not

6 required to conform to the 35-page request, and the false statements of law from Tsai that Plaintiff's

7 claims were barred by the Eleventh Amendment were incorrect as a matter of binding decisional laws

8 of U.S. Supreme Court (for State Bar and any of its actors, who are "not the sovereign") and the Ninth

9 Circuit (for individuals, who are not beyond the reach of Plaintiff's claims in any event.) Dkt. #61.

10    "In 2015 *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct.

11 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015), the United States Supreme Court "reaffirmed that a

12 state regulatory board" controlled by majority of active market participants such as The State Bar of

13 California "**is not the sovereign**." Defendants to this case ignore this binding law and its implications

14 on each of them." Supplement, p. 3, ¶ 10 (2:6). [Indeed, they all *continue* to ignore this binding law].

15    2. <u>Ninth Circuit is Particularly Hostile to Motions to Dismiss Under 12(b)(6)</u>

16    The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *Gilligan v.*

17 *Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ("The Rule 8 standard contains a powerful

18 presumption against rejecting pleadings for failure to state a claim.") "In exercising its discretion to

19 summarily dismiss claims on its own motion or by motion of the defendants, the Court takes into

20 consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an

21 opportunity to amend their pleadings to remedy any deficiencies that were identified during screening

22 or after a motion to dismiss has been adjudicated. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,

23 1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling,

24 and in the normal course district courts should freely grant leave to amend when a viable case may be

25 presented."). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence

26 to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202,

27 1205 (9th Cir. 2007) (citations omitted)." *Hook v. Idaho*, 1:21-cv-00199-BLW, 3 (D. Idaho Feb. 4, 2022)

28 It is too early to dismiss OCDA here; the Court should assume veracity of Plaintiff's allegations.

F.R.Civ.P. 12(b)(6) allows a party to assert "failure to state a claim upon which relief can be claimed" by motion. Quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party" (Plaintiff). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 868 (2009).  Plaintiff satisfies these standards.

### 3. Plaintiff's Pleading Standard is Lesser Than Attorneys Per U.S. Supreme Court

Whether or not he has a license to practice law, Plaintiff has a right to access this Court, and the U.S. Supreme Court holds that Plaintiff is not subject to the same stringent pleading standards of lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972). Nevertheless, Plaintiff meets very stringent standards in his FAC and RICO Case Statement. SAC, Supplement under F.R.Civ.P. 9(b). The volume of allegations to which he has been subject are not a viable reason to dismiss his claims where most of them involve fraud allegations amidst more than twenty parties for RICO and antitrust. The question is not whether Plaintiff alleges too much on a motion to dismiss, its whether he alleges sufficient facts to state a claim here against OCDA, which he does via framework, and specific facts.

**B. Plaintiff States Facts & Legal Theories to Support a Claim Against OCDA**

### 1. Plaintiff Alleges Law Firm OCDA Had Duty Under Fourteenth Amendment, U.S.

"The allegations of paragraphs 1 through 228 are incorporated herein by reference." Id., p. 51, ¶ 229. "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov. Cod. § 815.6. SAC, p. 51, ¶ 231.

"Enactment" means a constitutional provision, statute, charter provision, ordinance, or regulation. Cal. Gov. Cod. § 810.6." Ibid. ¶ 232. [Enactment includes Fourteenth Amendment equal protection clause, which causes mandatory duty to attorneys licensed by The State Bar of California].

1    "[OCDA] knew Plaintiff was in danger and had read Court of Appeal's conclusions that he was

2    a victim of serial fraud by KJC, BW, and TJO from local business CLC within their criminal jurisdiction,

3    and that Plaintiff was entitled to equal protection under the law. Consistent with US DOJ's findings

4    delivered October 13, 2022, OCDA chose not to help Plaintiff, and instead chose to protect members of

5    the State Bar Enterprise, willfully." Id., p. 31, ¶ 116. OCDA relies entirely upon *Marzec v. Public*

6    *Employees' Retirement System*, 236 Cal.App.4th 889, 917 (2015) that "a claim under the Equal

7    Protection clause requires a showing that a classification affecting two or more similarly situated groups

8    has been adopted in an unequal manner." Motion to Dismiss, p. 6 (13:16).

9    Here, we have Plaintiff a member of the public in the "protected class of citizenry" (SAC, p. 2,

10   ¶¶ 1-2) entitled to protection from crime in OCDA's criminal jurisdiction – and unequal application of

11   protection under the law because Plaintiff is a victim of State Bar Enterprise. Put differently, if Plaintiff

12   were a victim of a street gang in OCDA's criminal jurisdiction and not a law gang, Plaintiff believes

13   OCDA would have exercised reasonable care. But it failed to do so because Plaintiff is victimized by

14   lawyers protected by State Bar Enterprise, involving alleged bribery and corruption as set forth above.

15   According to Cal. Bus. & Prof. Cod. § 6068, Cal. Rul. Prof. Cond. 1.0.1 defining OCDA as a

16   law firm, Cal. Rul. Prof. Cond. 5.1 for supervisory employees at the government law firm, and the

17   Fourteenth Amendment – Orange County District Attorney's Office has mandatory duty to Plaintiff.

### a. *OCDA Attorneys Are All Bound to Cal. Bus. & Prof. Cod. § 6068*

19   "It is the <u>duty</u> of an attorney to do all of the following: (a) To <u>support the Constitution and laws</u>

20   <u>of the United States</u> and of this state." Cal. Bus. & Prof. Code § 6068. In seeking wholesale dismissal,

21   OCDA contends "Plaintiff seems to allege that the OCDA breached some unidentified mandatory duty

22   under the Equal Protection Clause." Motion to Dismiss, p. 6 (10:11). The duty is identified plainly.

23   OCDA attorneys are bound by oath to uphold the Fourteenth Amendment to the United States

24   Constitution, Equal Protection Clause – and that they are bound to support the laws of the United States

25   (including RICO, which is not Plaintiff's job to allege when reporting crimes to law enforcement).

### b. *OCDA is a Supervisory Law Firm Under Cal. Rul. Prof. Cond. 5.1*

27   Cal. Rul. Prof. Cond. 5.1 holds "Responsibilities of Managerial and Supervisory Lawyers: (a) A

28   lawyer who individually or together with other lawyers possesses managerial authority in a law firm,*

shall make reasonable* efforts to ensure that the firm* has in effect measures giving reasonable* assurance that all lawyers in the firm* comply with these rules and the State Bar Act. (b) A lawyer having direct supervisory authority over another lawyer, whether or not a member or employee of the same law firm,* shall make reasonable* efforts to ensure that the other lawyer complies with these rules and the State Bar Act. (c) A lawyer shall be responsible for another lawyer's violation of these rules and the State Bar Act if: (1) the lawyer orders or, with knowledge of the relevant facts and of the specific conduct, ratifies the conduct involved; or (2) the lawyer, individually or together with other lawyers, possesses managerial authority in the law firm* in which the other lawyer practices, or has direct supervisory authority over the other lawyer, whether or not a member or employee of the same law firm,* and knows* of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable* remedial action." This is another way to impose duty on OCDA for CLC conduct.

Cal. Rul. Prof. Cond. 1.0.1 holds "Terminology: (c) "Firm" or "law firm" means a law partnership; a professional law corporation; a lawyer acting as a sole proprietorship; an association authorized to practice law; or lawyers employed in a legal services organization or in the legal department, division or office of a corporation, of a government organization, or of another organization." OCDA is a law firm.

Each Cal. Rul. Prof. Cond. 1.0.1 (Terminology) and 5.1 (Managerial and Supervisory Lawyers) is binding on the law firm Orange County District Attorney's Office under Cal. Bus. & Prof. Cod. § 6077, which holds: "The rules of professional conduct adopted by the board, when approved by the Supreme Court, are binding upon all licensees of the State Bar." That includes all of OCDA.

2. Plaintiff Alleges OCDA Breached Duty Under Fourteenth Amendment, U.S.

"OCDA...had mandatory duty under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution to Plaintiff." Ibid. ¶ 233. "OCDA...failed to discharge the duty to Plaintiff." Ibid. ¶ 234. As direct and proximate result of [OCDA's] violation Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Plaintiff suffered: [damages list]. Ibid., ¶ 236. It is too early on a Motion to Dismiss to ascertain whether OCDA exercised reasonable care in upholding the United States Constitution, laws of the United States, or properly supervised the attorneys engaged in alleged serial fraud within their jurisdiction, under Cal. Gov. Cod. § 815.6.

3. <u>There Is No Immunity for Violating Mandatory Duty Under Cal. Gov. Cod. § 815.6</u>

OCDA contends "even if the OCDA had jurisdiction over the federal RICO crimes, the OCDA's prosecutors are absolutely immune for all decisions associated with initiating and presenting state prosecutions." *Burns v. Reed*, 500 U.S. 478, 486 (1991). This argument fails, because California law holds there is no immunity for violating mandatory duty, and Plaintiff is not alleging anything about a failure to prosecute – he alleges OCDA unequally applied the law under the Fourteenth Amendment since he is a victim of corrupt attorneys in Orange County associated with State Bar Enterprise, which caused him damages, and that OCDA failed to exercise reasonable care to exercise its duty. SAC, pp. 50-51, ¶¶ 239-45. "To apply [immunity] sections to immunize [OCDA] from liability for breach of a mandatory duty would completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment." (*Elton v. County of Orange* (1970) 3 Cal.App.3d 1053, 1059; see also *Alejo [v. City of Alhambra]*, 75 Cal.App.4th at p. 1194.) SAC, p. 10, ¶ 50.

As set forth above, attorneys within OCDA lack discretion to violate the Fourteenth Amendment under Cal. Bus. & Prof. Cod. § 6068(a). OCDA is misapplying Government Claims Act. Motion to Dismiss, p. 4 (5:23). *Muskopf v. Corning Hospital District*, 55 Cal.2d 211 (1961) put an end to this ambiguity, leading to the California Tort Claims Act of 1963: "where there is negligence, liability is the rule, immunity the exception." Stated otherwise, injury to Plaintiff results not from the OCDA employee's exercise of discretion, but from negligence in performing it after having made the discretionary decision to do so. (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 261.)

Because Plaintiff establishes governmental liability after successfully imposing a duty, the next threshold issue is whether any statutory immunity applies to bar his cause of action. (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 202.) Statutory immunity calls for "judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government." (*Johnson v. State* (1968) 69 Cal.2d 782.) As a result, the availability of immunity turns on whether the act or omission constituted an exercise of discretion in the making of a basic policy decision at the *planning stage* rather than at the *operational level* of government decision making incident to normal operations, with the latter not being immune. (*Barner v. Leeds* (2000) 24 Cal.4th 676,

9

685.) In determining whether an act is discretionary or ministerial (i.e., not immune), one has to determine whether the act or omission involved a conscious balancing of risks or advantages, or whether the act or omission amounted to obedience or orders that leave the officer no choice, where the act or omission was governed by specific statutory or regulatory directives. (*Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125.)

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov. Code § 820.8. Here, we have negligent ministerial or operational decisions allegedly violating mandatory duty for OCDA where Plaintiff's harm is known to OCDA, ignored under color of law. (These purported blanket immunities fail.)

What happens after a discretionary decision is made is within the realm of tort claims because Plaintiff's harm is known specifically to OCDA, they just chose to ignore it despite the existence of a special relationship. *Hoff v. Vacaville Unified School Dist.*, 19 Cal.4th 925 (1998); *Johnson v. State*, 69 Cal. 2d 782 (1968); *Davidson v. City of Westminster*, 32 Cal.3d 197 ("[1] As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." (Rest. 2d. Torts (1965) § 315; *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728]; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) OCDA does not dispute that it has actual knowledge of the harm to Plaintiff arising from its criminal jurisdiction, or the crimes themselves, it simply believes it has no duty to exercise reasonable care (which is not true). See also *Brown v. U.S. Taekwondo*, 11 Cal.5th 204, 276 Cal. Rptr. 3d 434, 483 P.3d 159 (Cal. 2021). "Civ. Code, § 1714; *Rowland v. Christian* (1968) 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561" *Brown v. U.S. Taekwondo*, 11 Cal.5th 204, 209 (Cal. 2021)

**C. Plaintiff Supplements SAC Herewith via Additional Tort Theories v. OCDA**

    1. <u>Additional Factual Allegations by Supplement #2</u>

Plaintiff maintains his allegations are sufficient under any standard but supplements as follows:

1. Defendant Orange County District Attorney's Office ("OCDA") is a law firm bound to Cal. Rul. Prof. Cond. 5.1 as defined by Cal. Rul. Prof. Cond. 1.0.1 comprised of approximately 250 attorneys associated with The State Bar of California and those working on their behalf.

2. Each of the OCDA attorneys are bound by mandatory duty to support the Constitution of the United States, and laws of United States including RICO, under Cal. Bus. & Prof. Cod. § 6068(a).

3. Plaintiff was, and remains, in special relationship to OCDA as a victim of state and federal crimes by its local business Catanzarite Law Corporation ("CLC"), CLC attorneys, and from the negligent operational decisions of OCDA leaders, officials, attorneys and employees.

4. OCDA received allegations of extortion, state equivalent racketeering statutes, and alleged serial perjury and subornation of perjury supported by Court of Appeal rulings per Cal. Rules of Court 8.1115(b) in Anaheim Police Department Police Report 22-197470 on December 21, 2022.

5. Anaheim Police Department confirmed Plaintiff's allegations were provided to OCDA after Plaintiff's police report was filed.

6. Anaheim City Police Department informed Plaintiff on December 21, 2022, that it was OCDA's jurisdiction and duty to follow up with Anaheim Police Report 22-197470.

7. With deliberate indifference or malice, OCDA chose to ignore the allegations and opted to protect CLC and its attorneys under color of law without regard for Plaintiff's harm or damages.

8. With knowledge of Plaintiff's actual harm and imminent harm supported by Court of Appeal rulings, Rule 8.1115(b), OCDA refused to even speak with Plaintiff much less uphold its duty to protect him from state equivalent racketeering statute violations within its criminal jurisdiction.

9. Plaintiff was and is being harmed by OCDA, CLC, and each of its attorneys led by Kenneth J. Catanzarite, while in special relationship to OCDA. The harm continues.

10. Plaintiff had a clearly established right to equal protection under the law, but OCDA willfully chose, or acted with deliberate indifference to Plaintiff's injuries, to place Plaintiff in danger.

11. OCDA unequally applies the law in favor of attorneys to the detriment of non-attorneys.

1        2. § 1983 Claim for Unlawful Policy, Practice or Custom

2        Where OCDA contends that Plaintiff cannot state a claim under Cal. Gov. Cod. § 815.6, Plaintiff

3    alleges violation of 42 U.S.C. § 1983 against OCDA for unlawful policy, practice, or custom through

4    his Supplement #2 filed herewith as Count XI. Supplement #2, p. 3, ¶¶ 12-21.

5        *Monell* liability is based on an expressly adopted official policy or a widespread or longstanding

6    practice or custom of the defendant that is alleged either to be itself unlawful or to direct employees to

7    act in an unlawful manner. *See, e.g., Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).

8        *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Such liability may attach when

9    an employee committed a constitutional violation pursuant to an expressly adopted official policy.

10   *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). "Official policy" means a formal

11   policy, such as a rule or regulation adopted by the defendant, resulting from a deliberate choice to follow

12   a course of action made from among various alternatives by the official or officials responsible for

13   establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati*,

14   475 U.S. 469, 483 (1986); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011).

15       *Monell* liability may also attach when an employee committed a constitutional violation pursuant

16   to a widespread practice or custom as alleged here. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

17   (1988). The plaintiff must prove the existence of such a widespread practice or policy as a matter of

18   fact. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) ("Normally, the question of whether a policy

19   or custom exists would be a jury question."). A widespread "custom or practice" must be so "persistent"

20   that it constitutes a "permanent and well settled city policy" and "constitutes the standard operating

21   procedure of the local governmental entity." *Id.* at 918 (quoting *Monell*, 436 U.S. at 691); *Gillette v.*

22   *Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (providing final quotation). Allegations of an isolated or

23   sporadic incident cannot form the basis for *Monell* liability. *Saved Magazine v. Spokane Police Dept.*,

24   19 F.4th 1193, 1201 (9th Cir. 2021). (Here, Orange County District Attorney's Office was already

25   subject to a U.S. Department of Justice investigation for systemic Fourteenth Amendment violations as

26   announced on October 13, 2022.)

27       The Ninth Circuit has held that "a custom or practice can be supported by evidence of repeated

28   constitutional violations which went uninvestigated and for which the errant municipal officers went

unpunished." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011); *see also Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019) (citing evidence sufficient to create triable issue regarding informal practice or policy). The Ninth Circuit has used the term "longstanding" practice or custom interchangeably with the Supreme Court's more frequent usage of "widespread." *See, e.g., Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)

A plaintiff can establish municipal liability by demonstrating that the government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (citations and quotations omitted). "To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation." *Id. See also Eagle Point Education Assoc. v. Jackson Cnty. School Dist.*, 880 F.3d 1007, 1108 (9th Cir. 2018) (holding school district liable for acts of security officer implementing district's official policy that unconstitutionally restricted student speech) (citing *Monell*, 436 U.S. at 708).

### 3. § 1983 Claim for Failing to Prevent Violations of Law or Failure to Train

Where OCDA contends that Plaintiff cannot state a claim under Cal. Gov. Cod. § 815.6, Plaintiff alleges violation of 42 U.S.C. § 1983 against OCDA for policy that fails to prevent violations of law or fails to train in his Supplement #2 filed herewith as Count XII. Supplement #2, pp. 4-5, ¶¶ 22-31.

*Monell* liability can also based on OCDA's policy of inaction, such as a failure to train its associated police officers or attorneys. Plaintiff alleges failures to adopt a needed policy, where OCDA purports to allow federal racketeering without inquiry or justification. *Jackson v. Barnes*, 749 F.3d 755, 763-64 (9th Cir. 2014) (addressing failure to supervise), *cert. denied*, 135 S. Ct. 980 (2015); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (addressing failure to implement policy). As with a failure to train claim, Plaintiff can show that the failure to hire, supervise, or adopt a policy amounted to deliberate indifference by OCDA. *See, e.g., Tsao*, 698 F.3d at 1145

Plaintiff can establish a "direct causal link" between the OCDA policy or custom and the alleged constitutional violation. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 681 (9th Cir. 2021). This "requires showing both but for and proximate causation." *Tsao*, 698 F.3d at 1146 (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). In *Harper*, the Ninth Circuit approved of a jury instruction that explained that "proximate cause exists where "an act or omission played a

1   substantial part in bringing about or actually causing the injury or damage to plaintiffs." *Harper*, 533

2   F.3d at 1026.

3   　　　"A policy of inaction or omission may be based on failure to implement procedural safeguards

4   to prevent constitutional violations." *Tsao*, 698 F.3d at 1143.   "In limited circumstances, a local

5   government's decision not to train certain employees about their legal duty to avoid violating citizens'

6   rights may rise to the level of an official government policy for purposes of § 1983." *Connick v.*

7   *Thompson*, 563 U.S. 51, 61 (2011) (holding that county's failure to train prosecutors regarding *Brady v.*

8   *Maryland*, 373 U.S. 83 (1963), did not constitute obvious deficiency because attorneys had attended law

9   school and were charged with knowing the law). "[P]olicies of omission regarding the supervision of

10  employees … can be 'policies' or 'customs' that create municipal liability … only if the omission

11  'reflects a deliberate or conscious choice' to countenance the possibility of a constitutional violation."

12  *Tsao*, 698 F.3d at 1145 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989)).   "[A]

13  municipality's failure to train its employees in a relevant respect must amount to 'deliberate

14  indifference' to the rights of persons with whom the [untrained employees] come into contact." *Connick*,

15  563 U.S. at 61 (second alteration in original).

16  　　　　　　　4. § 1983 Claim for Due Process—State Created Danger

17  　　　Where OCDA contends that Plaintiff cannot state a claim under Cal. Gov. Cod. § 815.6, Plaintiff

18  alleges violation of 42 U.S.C. § 1983 against OCDA for Victim's Rights Liaison, or Todd Spitzer, or

19  one or more attorneys working for defendant OCDA violation of particular rights under the Fourteenth

20  Amendment—Due Process—State Created Danger in his Supplement #2 filed herewith as Count XIII.

21  Supplement #2, pp. 5-6, ¶¶ 32-45. *See Hernandez v. City of San Jose*, 897 F.3d 1125, 1133-35 (9th Cir.

22  2018); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-65 (9th Cir. 2006). *Respondeat superior*

23  liability for Victim's Rights Liaison, or Todd Spitzer, or one or more attorneys working for defendant

24  OCDA to OCDA arises under Cal. Gov. Cod. § 815.2(a) where "A public entity is liable for injury

25  proximately caused by an act or omission of an employee of the public entity within the scope of his

26  employment if the act or omission would, apart from this section, have given rise to a cause of action

27  against that employee or his personal representative." No immunity of Government Claims Act meets a

28  cause of action for due process—state created danger on their face.

## IV.   CONCLUSION

Operation Greylord "was one of the most important cases in the annals of public corruption investigations in the United States." Dkt. #57, p. 157. "[T]hrough undercover operations that used honest and very courageous judges and lawyers posing as crooked ones and with the strong assistance of the Cook County court and local police—92 officials were indicted, including 17 judges, 48 lawyers, eight policemen, 10 deputy sheriffs, eight court officials, and one state legislator. Nearly all were convicted, most of them pleading guilty...<u>Abuse of the public trust cannot and must not be tolerated.</u> Corrupt practices in government strike at the heart of social order and justice...By 1976, the Department of Justice had created a Public Integrity Section, and the FBI was tasked with the investigations, focusing on major, systemic corruption in the body politic." Ibid. The RICO enterprise can be the court system itself. *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985)

Plaintiff respectfully requests the Court deny OCDA's motion to dismiss for the foregoing reasons – or grant an opportunity to amend or supplement again. Plaintiff has been granted only one opportunity to amend his complaint after the Court's screening, which screening was facially based upon materially false statements of fact and law from Deputy Attorney General of California Charles Tsai (See Dkt. #61 for details) – who served some special role in this proceeding for The State Bar of California after California Department of Justice refused to produce public records to Plaintiff without explanation. Mr. Tsai promptly left when it was brought to the Court's attention and scuttled back to his day-to-day role in the executive branch. Again, where there is smoke, there is fire, and the Court must assume the veracity of Plaintiff's pleadings and act impartially despite the implications thereof.

Respectfully Submitted,

April 18, 2023

_____
Justin S. Beck, Plaintiff,
*In Pro Per*

Opposing Motion to Dismiss

**PROOF OF SERVICE**

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056.

I served or scheduled for service one copy of the following documents:

**SUPPLEMENT #2 TO SECOND AMENDED COMPLAINT REGARDING ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE CLAIMS**

**PLAINTIFF JUSTIN S. BECK'S OPPOSITION TO ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery April 19, 2023, to the following email addresses:

| | |
|---|---|
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

I declare the foregoing to be true under penalty of perjury under the laws of the State of California and United States. I am signing this from Oceanside, California on April 19, 2023.

Brian Bargabus, Declarant

16                                                    3:22-CV-01616-AGS-DDL