EXHIBIT "C"

1  Samuel Y. Edgerton, III (SBN 127156)
   Johnny L. Antwiler (SBN 288772)
2  **O'HAGAN MEYER, LLC**
   4695 MacArthur Court, Suite 210
3  Newport Beach, CA 92660
   Telephone: (949) 942-8500
4  Facsimile:  (949) 942-8510
   Email: sedgerton@ohaganmeyer.com
5  Email: jantwiler@ohaganmeyer.com

6  Attorneys for Defendants, Robert Bernheimer, Miguel Motta, Justin Beck, Robert Kamm, Irving Einhorn

7

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **FOR THE COUNTY OF ORANGE**

10

11 | DENISE PINKERTON, et al., | Case No. 30-2018-01018922
12 |                           |
13 |         Plaintiffs,       | **DEFENDANTS' JOINDER IN CULTIVATION TECHNOLOGIES, INC.'S MOTION TO DISQUALIFY CATANZARITE LAW CORPORATION**
14 |     v.                    |
   | RICHARD JOSEPH PROBST, et al. |
15 |                           | Assigned for All Purposes to the Honorable Randall Sherman Dept. CX105
16 |         Defendants,       |
   |         -and-             | [*Filed concurrently with Memorandum of Points and Authorities; Request for Judicial Notice; and Declaration of Johnny L. Antwiler*]
17 | CULTIVATION TECHNOLOGIES, INC., |
18 |                           |
19 |     Nominal Defendant.    | Hearing Date: January 10, 2020
20 |                           | Time: 10:00 a.m.
21 |                           |
22 |                           | First Amended Complaint Filed: August 21, 2019
23 |                           | Trial Date: None Set

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard in Department CX105 of the above-entitled Court, located at 751 W. Santa Ana Blvd., Santa Ana, California, Defendants Justin Beck, Miguel Motta, Robert Bernheimer, Robert Kamm, and Irving Einhorn (collectively the "Defendants") will, and hereby do, join in Cultivation Technologies, Inc.'s ("CTI") Motion to Disqualify Catanzarite Law Corporation (the "Motion"). Defendants request the same relief as in the Motion, that Catanzarite Law Corporation be disqualified from representing any parties.

Defendants join in the Motion for all reasons set forth in the Motion, CTI's accompanying Memorandum of Points and Authorities, Declarations of Richard Probst, in Defendants' accompanying Memorandum of Points and Authorities and Declaration of Johnny L. Antwiler, and attached exhibits, Defendants' Request for Judicial Notice, and any argument or evidence that may be presented to or considered by the Court at the hearing prior to its ruling.

.

DATED: December 18, 2019                    **O'HAGAN MEYER, LLC**

By: _____
Sam Y. Edgerton, III, Esq
Johnny L. Antwiler, Esq.
Attorneys for Defendants,
Justin Beck, Miguel Motta, Robert Bernheimer,
Robert Kamm, and Irving Einhorn

TABLE OF CONTENTS

I. OVERVIEW OF ARGUMENT ..................................................................................1
   A. CATANZARITE LAWS' SIMULTANEOUS REPRESENTATIONS OF ADVERSE INTERESTS MUST RESULT IN ITS PER SE AND AUTOMATIC DISQUALIFICATION..........................3
      1. CATANZARITE LAW'S SIMULTANEOUS REPRESENTATIONS IN THE *FINCANNA* AND *SCOTTSDALE* CASES OF ADVERSE INTERESTS TO CTI.................................................4
      2. REPRESENTATION IN *MFS* CASE RESULTED IN SIMULTANEOUSLY BRINGING A TRO AGAINST CTI WHILE REPRESENTING THE CTI CLASS IN THE *MESA* CASE...............4
      3. CATANZARITE LAW SIMULTANEOUSLY SOUGHT DAMAGES AGAINST CTI AS A DEFENDANT IN THE *ROOT* CASE WHILE REPRESENTING THE CTI CLASS..................6
   B. CALIFORNIA LAW REQUIRES DISQUALIFICATION FOR "SUBSTANTIALLY RELATED" SUCCESSIVE REPRESENTATIONS ...............................................................................7
   C. CATANZARITE LAW CANNOT REPRESENT THE CTI CLASS .......................................8
      1. CLASS ACTION COUNSEL HELD TO "HEIGHTENED STANDARD" ..............................8
      2. CATANZARITE LAW HAS CAUSED A CONFLICT OF INTEREST IN CTI CLASS .............9
      3. "REPRESENTATIVE PLAINTIFFS" AND HIGHER SETTLEMENT NEGOTIATIONS.. **Error! Bookmark not defined.**
      4. SELLING OUT THE CLASS ........................................**Error! Bookmark not defined.**
   D. CATANZARITE LAW HAS ENGAGED IN ETHICAL MISCONDUCT, INCLUDING ABUSING THE DERIVATIVE SUITS FOR ITS OWN GAIN..............................................................10
   E. FORGERY / FORGED PROXIES ................................................................................12

II. CONCLUSION AND RELIEF ...................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, (1997) 52 Cal.App.4th 1 ........................7, 13

*Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597 ....................................................15

*Comden v. Sup.Ct.* (1978) 20 Cal.3d 906 ..........................................................................................5

*Flatt v. Sup.Ct.*, (1994) 9 Cal. 4th 275..................................................................................4, 8, 9

*Gregori v. Bank of America*, (1989) 207 Cal.App.3d 291..............................................................14

*Palumbo v. Tele-Communications, Inc.* (1994) 157 F.R.D. 129 ....................................................11

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135 ...................................................................................................................................................2, 15

*State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.,* (1999) 72 Cal.App.4th 1422..............5

*Walker v. Apple, Inc.* (2016) 4  Cal.App.5th 1098 ..........................................................................10

**Rules**

Fed.R.Civ.P 23................................................................................................................................10, 11

Rule 4.2 of the Rules of Professional Conduct................................................................................15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. OVERVIEW OF ARGUMENT

Catanzarite Law Corporation ("Catanzarite Law") should be disqualified from representing all parties in this action because it has repeatedly represented clients simultaneously with adverse interests. The conflicts of interest created by Catanzarite Law within the class also mandate its disqualification. Finally, the ethical misconduct committed by Catanzarite Law will likely have a continuing effect on the litigation and provide another, separate reason to disqualify Catanzarite Law. When all these issues are considered together, this Court should grant the motion to disqualify Catanzarite Law from representing all parties in this action.

The California Supreme Court made it clear that disqualification of an attorney lies where ethical violations threaten the administration of justice or the integrity of the bar.

> "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146.

Here, the preservation of the public trust in the administration of justice and the integrity of the bar requires the disqualification of Catanzarite Law. Catanzarite Law has committed numerous ethical violations, including repeatedly breaching the duty of loyalty to its clients. Catanzarite Law has simultaneously represented adverse interests in every single case in which it has been counsel. This included Catanzarite Law representing the plaintiff suing CTI and seeking damages in the *Root* case while simultaneously representing the CTI class in this action. Additionally, Catanzarite Law has made material representations to the Court to the extreme detriment of the parties he is opposing at one moment yet representing in the next.

Catanzarite Law cannot cure its conflict of interests and divided loyalty to its clients. The clients have diverging and adverse interests. Even inside the CTI class which Catanzarite

represents in the *Mesa* action, Catanzarite Law has divided loyalties and created differing incentives. While the "CTI Class" is defined as all person who are common stockholders of CTI (FAC ¶50), the representative Plaintiffs are all significant shareholders in MFS. Catanzarite Law also represents MFS and MFS shareholders in the *MFS* case. It is of little surprise then that through settlement negotiations, Catanzarite Law has sought to treat the members of the CTI Class which are MFS shareholders more advantageously than those members who are not.

This conduct of divided loyalty has been standard operating procedure for Catanzarite Law which has consistently breached its duty to the class and derivative plaintiff in each of its cases for the benefit of itself or the plaintiff. Catanzarite Law has repeatedly and improperly dismissed defendants in the derivative actions at the expense of the plaintiffs in the current action for its own gain or the gain of plaintiffs in the other cases. For example, Richard O'Connor and Amy Cooper were both dismissed without court approval in the derivative *Root* case. This was at the expense of the plaintiff Roger Root and the derivative plaintiff MFS. O'Connor and Cooper were the key actors in the direct claims by Root, yet they were dismissed for apparently nothing in return. Instead, Catanzarite Law sought to benefit itself from the dismissal by only a few days later filing the *MFS* case against CTI with the support of Amy Cooper.

Catanzarite Law has also shown no respect for the scrupulous administration of justice or the integrity of the bar by taking ethically suspect actions. Catanzarite Law submitted and filed false and fraudulent documents, including a forged proxy and a written consent by a "majority" of the CTI shareholders which included false representations of the shares voted in support. Catanzarite Law has found ways to repeatedly negotiate and settle with defendants represented by counsel without counsel's authorization or consent. <u>The depths of the ethical depravity are illustrated by Catanzarite Law's settlement demands which requested 7,000,000 shares of CTI common stock to Catanzarite Law (and $75,000) while providing no compensation or additional stock to CTI class members which were not MFS shareholders.</u>

It is clear that the preservation of the public trust in the administration of justice and the integrity of the bar requires the disqualification of Catanzarite Law.

### A. CATANZARITE LAWS' SIMULTANEOUS REPRESENTATIONS OF ADVERSE INTERESTS MUST RESULT IN ITS PER SE AND AUTOMATIC DISQUALIFICATION

California law is well-settled regarding the consequences of the simultaneous representation of clients with adverse interests. The California Supreme Court made clear that "in all but a few instances, the rule of disqualification in simultaneous representations is a *per se* or 'automatic' one." *Flatt v. Sup.Ct.*, (1994) 9 Cal. 4th 275, 284. The reasoning behind the "mandatory disqualification rule" is that simultaneously representing clients with adverse interests strikes at the heart of the attorney's duty of loyalty to the client. *Id.* at 286. "Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*." *Id.* at 284.

Once the confidence and trust in the attorney-client relationship has been compromised, it can never be restored. *See Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, (1997) 52 Cal.App.4th 1, 12 ("we would be surprised if members of the putative class aware of [counsel's] attempted betrayal of their interests did not harbor continuing doubts about his loyalty and the integrity of the judicial proceedings in which he participate"). "So inviolate is the duty of loyalty to an existing client, that not even by withdrawing from the relationship can the attorney evade it." *Flatt*, 9 Cal. 4th at 288. Accordingly, California courts have consistently applied the "mandatory disqualification rule" even where the circumstances giving rise to the conflicting representation was fleeting, had since been completely removed, and there was no prejudice.

By way of example, in *State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.,* (1999) 72 Cal.App.4th 1422, the court cited the mandatory disqualification rule and disqualified counsel from bringing an action against a defendant insurance company when, at the same time, the firm represented an individual insured by that company. Even though the two cases were completely unrelated, and a "fortuitous settlement acted to sever [counsel's] relationship with its preexisting client, it did not remove the taint of a three-month concurrent representation." *Id.* at 1432-1433. Thus, the court found that "[c]onsequently, the mandatory disqualification rule applies." *Id.* at 1433. This was a result of the oft-cited principle that "the paramount concern

must be the preservation of the public trust both in the scrupulous administration of justice and in the integrity of the bar." *Id.* at 1428 (citing *Comden v. Sup.Ct.* (1978) 20 Cal.3d 906, 915).

### 1. CATANZARITE LAW'S SIMULTANEOUS REPRESENTATIONS IN THE *FINCANNA* AND *SCOTTSDALE* CASES OF ADVERSE INTERESTS TO CTI

Catanzarite Law is subject to the "mandatory disqualification rule" for a number of reasons. First, Catanzarite Law simultaneously represented CTI and interests adverse to CTI. Catanzarite Law represented CTI in the related *FinCanna v. CTI., et al.* case. At the same time, Catanzarite Law represented a faction of CTI shareholders in the *Mesa* case to impose a receiver on CTI, relief which would be adverse to CTI. In *CTI v. Scottsdale Ins. Co.*, Catanzarite Law represented CTI and sought to invalidate a defense and indemnity for CTI directors in this case under an insurance policy issued on CTI's behalf. That action is also adverse to the interests of CTI as the denial of coverage would trigger indemnity claims and defense costs directly against CTI by the individuals.

### 2. REPRESENTATION IN *MFS* CASE RESULTED IN SIMULTANEOUSLY BRINGING A TRO AGAINST CTI WHILE REPRESENTING THE CTI CLASS IN THE *MESA* CASE

The violations of simultaneous representations do not stop there though. In the related case, *MFS v. Richard Joseph Probst, et al.*, Catanzarite Law represents the Plaintiff MFS. In the *MFS* Complaint, Catanzarite Law made several allegations against CTI which were adverse to not only CTI's interests, but also the very class that Catanzarite Law is attempting to represent in this action.

These allegations include, but are not limited to the following:

- MFS is the rightful and proper owner of 28,000,000 of CTI shares of Common Stock and entitled to not suffer dilution of their rights. *MFS* Complaint ¶50.
- MFS states "MFS was and remains the sole owner of CTI and entitled to fully exercise its voting rights to its 28,000,000 CTI Common Shares…" *MFS* Complaint ¶112.

- "Plaintiffs also seek by this complaint cancellation of the Preferred Series A Shares, the Stock Option Grant, the Added CTI Offerings, 3x Preferred Shares and $1,650,000 Notes." *MFS* Complaint ¶¶62, 112.
- MFS sought to cancel all share issuances that were issued after March 30, 2015 without the voting consent of MFS (including all shares of CTI Class members) ¶113.
- MFS seeks a declaration from the Court that "any claimed stock issued by [Defendants] to any person is null and void and of no legal consequence, and that insider loans and transactions are cancelled." *MFS* Complaint ¶80.

The heart of the argument in the original *MFS* case was that MFS was the *sole* shareholder of CTI and that all other stock issued was improper and should be null and void. While CTI may have been the "nominal defendant," it was not the CTI composed of the current shareholders; it was a CTI composed solely of MFS. The position in the *MFS* case was that *none* of the current class members and shareholders of CTI should have any stock or any rights.

An argument that a conflict was removed when CTI was dropped as a nominal defendant in the *MFS* case and some allegations were removed in the First Amended Complaint holds no water. This action was originally filed on or about April 16, 2019. On May 5, 2019, Plaintiffs filed the operative First Amended Complaint. At that time, the original *MFS* Complaint was still operative with all the above allegations with CTI as a nominal Defendant. MFS alleged to be shareholder of CTI and to bring a derivative action for two months until on June 14, 2019, that all derivative claims (and thus nominal defendant CTI) was dismissed *without prejudice* in the MFS case. It was not until August 21, 2019, that MFS filed its First Amended Complaint removing some of the allegations adverse to CTI and the current class in the *Mesa* case.

To see the depths of how adverse the interests of MFS and CTI were in the *MFS* case, the Court only needs to review the temporary restraining order ("TRO") sought and obtained by Catanzarite Law corporation *against* CTI. On March 20, 2019, Catanzarite Law appeared *ex parte* in front of the Honorable James Crandall and requested the TRO against CTI. This TRO was extremely adverse to the interests of CTI and the current CTI shareholders. The TRO sought

1  to restrict CTI from taking any actions, including (1) prevent CTI from using or encumbering any
2  assets other than in the ordinary course, (2) taking any actions which require a vote by the
3  shareholders, (3) taking any actions required by CTI's Board of Directors, and (4) entering into
4  any binding agreements. *See* RJN Exhibit F TRO.

5  The TRO greatly interfered with CTI's business operations, CTI immediately lost clients,
6  and its mere existence greatly contributed to the foreclosure by its primary creditor, FinCanna
7  Capital. The *FinCanna* case pending against CTI was a direct result of the adverse actions taken
8  by Catanzarite Law. This TRO remained in place against CTI until this Court dissolved the TRO
9  after the 709(b) hearing on May 1, 2019. Thus, Catanzarite Law actively represented the party
10 and enforced the terms of the TRO against CTI while simultaneously representing the Plaintiff in
11 the *Mesa* case[1].

12 While the *Mesa* case was active and pending, Catanzarite Law appeared on behalf of
13 MFS in front of this Court and made arguments on the record directly adverse to CTI and its
14 current shareholders (including the CTI Class it represents). On April 30, 2019, and May 1, 2019,
15 Catanzarite Law appeared on behalf of MFS in front of this Court on the 709(b) hearing to
16 determine whether MFS was denied the right to vote at the previous Board of Directors election.
17 During those two days, Catanzarite Law repeatedly argued and asserted that MFS was the
18 rightful sole shareholder of 28,000,000 shares. Catanzarite Law appeared directly in opposition
19 and adverse to CTI while the *Mesa* case had been filed two weeks before.

20        **3.**       **CATANZARITE LAW SIMULTANEOUSLY SOUGHT DAMAGES AGAINST**
21              **CTI AS A DEFENDANT IN THE *ROOT* CASE WHILE REPRESENTING THE**
22              **CTI CLASS**

23 The adverse interests are even more apparent in the earliest related case, *Denise*
24 *Pinkerton v. CTI, et al.* (the "Root" case) Catanzarite Law represents the Plaintiff, Denise
25 Pinkerton as attorney in fact for Roger D. Root. <u>The original Complaint named CTI as a</u>
26 <u>defendant</u>. In the Root Complaint, Root demanded that CTI, and every person who received CTI

---

[1] The Complaint was filed on April 16, 2019. Catanzarite enforced the TRO against CTI for two weeks while the *Mesa* Complaint was pending before the Court ruled against Catanzarite Law at the 709(b) hearing. Three days after the ruling, Catanzarite Law filed the First Amended Complaint in the *Mesa* case.

shares (including every member of the current class in the *Mesa* case) surrender all stock certificates. *See* Root Complaint ¶¶114-119. Root, derivatively on behalf of MFS, further alleged that CTI had misappropriated trade secrets of MFS. *See* Root Complaint ¶¶120-127. Catanzarite Law directly sued CTI in the *Root* case, then represented CTI in the *FinCanna* and *Scottsdale* cases. Catanzarite is bringing a derivative suit on behalf of CTI in the *Mesa* case and purportedly represents the class. Yet, while claiming to bring a claim on behalf of CTI and representing CTI class members, Catanzarite Law was simultaneously representing an adverse party suing them.

**Catanzarite Law represented the plaintiff in the *Root* case for over three months—who was actively seeking damages against CTI—while still attempting to represent the Plaintiffs in the *Mesa* case.** In regard to the Rules of Professional Conduct, the California Supreme Court deemed this conduct to be "what is perhaps the most egregious example of its violation—simultaneously representing opposing parties in the same litigation." *Flatt*, 9 Cal. 4th at 282-283. Finally, on July 23, 2019, Catanzarite Law filed a dismissal of CTI *without prejudice* in the *Root* case. On or about August 21, 2019, Catanzarite Law filed the First Amended Complaint in the *Root* case where some of the adverse allegations against CTI had been removed. However, the damage had already occurred and Catanzarite simultaneously represented adverse parties in each of the three remaining cases for months.

      B.      **CALIFORNIA LAW REQUIRES DISQUALIFICATION FOR "SUBSTANTIALLY RELATED" SUCCESSIVE REPRESENTATIONS**

This Court should further disqualify Catanzarite Law as he has successively represented clients with potentially adverse interests in cases with a "substantial relationship." While it is client loyalty at stake in simultaneous representations, the chief fiduciary value jeopardized by successive representations is client confidentiality. *Flatt*, 9 Cal.4th at 283. Thus, where the disqualification of an attorney is sought to prevent the attorney from serving as counsel in the successive case, "the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations." *Id.* The "substantial relationship" test balances the tension between the right of a subsequent client to have the counsel of choice and the interest of the former client in ensuring the permanent

confidentiality of matters disclosed to the attorney in the court of representation. *Id.* "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory." *Id.*

Catanzarite Law filed two lawsuits on behalf of CTI and purportedly represented CTI in the *FinCanna* and *Scottsdale* cases. While Catanzarite Law has dismissed or been disqualified from those actions (except as to the wholly owned subsidiaries), Catanzarite Law continues to represent clients with potentially adverse interests to CTI. It is clear that the *FinCanna* case and the current case have a "substantial relationship." It would seem impossible for Catanzarite Law to dispute the "substantial relationship" when it filed the notice of related cases and even brought a motion to consolidate the two cases. Thus, there is a presumption that Catanzarite Law has obtained access to confidential information during the course of representation of CTI. It follows that disqualification is mandatory unless Catanzarite Law can overcome that presumption. To further underscore the absurdity of Catanzarite Law's conduct, it is at this very moment representing two wholly owned subsidiaries of CTI while continuing to take actions against CTI. Catanzarite Law has refused to admit that a conflict exists, even though the motion to disqualify was granted in the *FinCanna* case and there is a pending motion to disqualify Catanzarite Law from representing the two subsidiaries.

### C.    CATANZARITE LAW CANNOT REPRESENT THE CTI CLASS

Catanzarite Law cannot adequately represent the CTI class because of the simultaneous representations of adverse interests, the conflict of interest and divide inside the CTI class, the "representative plaintiffs" have not and cannot fairly and adequately protect the interests of the class, and Catanzarite Law's unethical selling out of the class for its own gain during settlement negotiations.

#### 1.    CLASS ACTION COUNSEL HELD TO "HEIGHTENED STANDARD"

Counsel which represents the class and absent class members is held to a "heightened standard." Indeed, "in a class action context, disqualification is more likely because putative

class counsel are subject to a 'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members." *Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1107; *see also Cal Pak Delivery, Inc.* (1997) 52 Cal.App.4th at 12 ("Precisely because of the responsibility to absent class members, counsel's qualification in the class action context are subject to a 'heightened standard.'"). In class actions, "the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented." *Id.*; *See* Fed.R.Civ.P 23(a)(4) (requires representative parties to "fairly and adequately represent the interests of the class"). The *Cal Pak Delivery, Inc.* court explained this "because in certifying a class action, the Court confers on absent person the status of litigants and 'creates an attorney-client relationship between those persons and a lawyer or group of lawyers.'" *Id.*

Catanzarite Law cannot meet this heightened standard for all of the reasons set forth herein, including the conflict of interests and simultaneous representation of the adverse interests. Several courts have specifically listed that conflict of interests will cause a law firm to not meet the heightened standard. *See, e.g., Palumbo v. Tele-Communications, Inc.* (1994) 157 F.R.D. 129, 133 ("Because of the conflict of interests detailed above, [the attorney] and his firm do not meet the heightened standard required of attorneys in class action cases.") (cited with approval by *Cal Pak Delivery, Inc.* (1997) 52 Cal.App.4th at 12).

### 2. CATANZARITE LAW HAS CAUSED A CONFLICT OF INTEREST IN CTI CLASS

Catanzarite Law created a divide inside the CTI Class and caused a conflict of interests between at least two groups of the CTI Class—MFS shareholders and non-MFS shareholders. Catanzarite Law created this divide by his active and current representation of MFS and its shareholders in the *MFS* case. Catanzarite Law made that divide larger and conflict more apparent in settlement negotiations. In the last settlement proposal made, Catanzarite Law requested that 28,114,000 shares "shall be reallocated in accordance with the formula announced to the MFS investors…" **Antwiler Decl., ¶2 Ex. 1.** At the same time, Catanzarite Law only sought to "confirm" the shares of the CTI Class which did not hold MFS stock. For example, the

1  CTI shareholders who obtained their shares through convertible notes to CTI and CTI
2  shareholders who actually paid $1.00 per share would receive *no* additional stock, but only have
3  their current stock "confirmed." *Id.* Keep in mind that MFS shareholders who received CTI
4  common stock through the "Friends & Family" round only paid $0.01 / share. Yet, these same
5  MFS shareholders were having millions of shares reallocated to be divided among them. This
6  clearly divides the CTI Class (all common shareholders of CTI) into at least two groups. The
7  interests of the MFS shareholders inside the class is clearly adverse to the interests of the newer
8  CTI class and are clearly adverse because if more stock is given to MFS shareholders, then less
9  goes to non-MFS shareholders. Thus, Catanzarite Law cannot simultaneously represent parties
10  with adverse interests and must be disqualified.

### D. CATANZARITE LAW HAS ENGAGED IN ETHICAL MISCONDUCT, INCLUDING ABUSING THE DERIVATIVE SUITS FOR ITS OWN GAIN

13  Further support for the disqualification of Catanzarite Law exists because of the ethical
14  misconduct committed by the law firm. In evaluating whether the ethical misconduct warrants a
15  disqualification, the Court must determine "whether there exists a genuine likelihood that the
16  status or misconduct of the attorney in questions will affect the outcome of the proceedings
17  before the court." *Gregori v. Bank of America*, (1989) 207 Cal.App.3d 291, 308-309.; *Cal Pak*
18  (1997) 52 Cal.App.4th at 15. Furthermore, "[i]f the status or misconduct which is urged as a
19  ground for disqualification will have a continuing effect on the judicial proceedings which are
20  before the court, it is justified in refusing to permit the lawyer to participate in such
21  proceedings." *Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607.

22  The court has the inherent power to disqualify Catanzarite Law for ethical misconduct.
23  "A trial court's authority to disqualify an attorney derives from the power inherent in every court
24  '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other
25  persons in any manner connected with a judicial proceeding before it, in every matter pertaining
26  thereto.'" *SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th at 1145 (citing Code Civ. Proc.,
27  §128(a)(5)). Catanzarite Law's glaring deeds of ethical misconduct have and will continue to
28  affect the outcome of this litigation and demand its disqualification.

1    Catanzarite Law improperly dismissed at least eight defendants in the *Root* case without
2 court approval or authorization when the defendants had pending derivative causes of action
3 against them. Catanzarite Law used these dismissals for its own benefit, not for the benefit of the
4 plaintiff or MFS (the nominal defendant). While it does not appear that Root benefitted or
5 received any compensation from these dismissals, Catanzarite Law certainly benefitted. As a
6 result, Cooper became a representative plaintiff in this class action (which does not stand to
7 benefit either Root or MFS). O'Connor would be the principal declaration writer and provider of
8 requested evidence. However, Root dismissed claims against two of the three directors of MFS
9 and original directors of CTI with potentially nothing to show for it. In fact, Catanzarite Law
10 admits that Root has nothing to show for all the dismissals. In a letter drafted by Catanzarite Law
11 for Richard O'Connor to the MFS shareholders, the following comment is made, "I want to be
12 clear that neither I, Richard O'Connor, Tony Scudder nor anyone else sued in the Root case or
13 the Mobile Farming Case have settled any claims with Root or anyone else. All we did was agree
14 to toll the statute of limitations to allow claims to be brought against us later." Thus, Root is left
15 with nothing as Catanzarite Law dismissed the defendants without prejudice and is not seeking
16 any discovery to pursue those claims. At the same time, Catanzarite Law is benefitting from the
17 dismissals.

18    Catanzarite Law has also consistently communicated and negotiated settlements and deals
19 with defendants represented by counsel without counsel's authorization or presence. In the *Root*
20 case, both Richard O'Connor and Amy Cooper were named defendants in the case represented
21 by counsel (appointed by the same insurance company Catanzarite Law later sued). While they
22 were still participating in defending the case, unbeknownst to Amy Cooper's attorney, she was
23 either directly or indirectly discussing settlement and dismissal with Catanzarite Law. The
24 dismissal of Amy Cooper came as a surprise not only to the other defendants, but also to
25 Cooper's own counsel who had not authorized Catanzarite Law to communicate with Cooper or
26 participated in any settlement negotiations. Whether Catanzarite Law communicated directly
27 with Amy Cooper or directed Richard O'Connor to communicate with her on its behalf is
28 unknown. What is known, is that a few days after Catanzarite Law dismissed Amy Cooper in the

*Root* case, Amy Cooper was named by Catanzarite Law as a representative plaintiff in the instant action.

Similarly, Thomas Brodeur who was represented by the same firm as Defendants, negotiated a complete settlement and dismissal without the authorization or knowledge of defense counsel. Even if Catanzarite Law did not directly communicate with Thomas Brodeur, if it indirectly communicated with Thomas Brodeur through an agent or individual on its behalf, then Catanzarite Law has violated Rule 4.2 (formerly 2-100) of the Rules of Professional Conduct. "While representing a client, a member shall not communicate directly or *indirectly* about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." (emphasis added). Catanzarite Law did not have the authorization from Thomas Brodeur's counsel, yet still managed to enter into a settlement agreement with Thomas Brodeur. **Antwiler Decl. ¶3.**

### E.   FORGERY / FORGED PROXIES

Catanzarite Law has repeatedly represented that it is in control of the common shares and has taken actions on behalf of CTI as if the Preferred Shares were never issued. The basis for this control and these actions are a Written Consent of CTI ("O'Connor Consent") dated May 14, 2019, signed by Richard O'Connor. **Probst Decl. ¶12 Exhibit C.** In the O'Connor Consent, it is represented that O'Connor has obtained enough proxies to provide him a majority of the shares entitled to vote. O'Connor attempts to use this power to remove the entire Board of Directors of CTI.

There are many issues with the O'Connor Consent which make it ineffective and invalid. One of these reasons is that at least one of the proxies to form the purported majority was forged. **Probst Decl. ¶13 Exhibit E, Calixto Decl.** Calixto explains that he was pressured to sign the proxy by Catanzarite Law and O'Connor. O'Connor went as far to even offer $5,000 to Calixto to obtain his signature on the proxy. When Calixto refused, his signature was forged. *Id.*

Another fundamental flaw with the O'Connor Consent was the attempt to deceive the court and third parties by including a knowingly false or fraudulent alleged shareholder vote by James Duffy. In the O'Connor Consent, Duffy attempted to vote over 2.7 million shares.

Admittedly though, Duffy was not the shareholder of record at the time of anywhere near that amount of shares. While it was represented that those shares had been transferred from Richard O'Connor, this was not the case. It is undisputed that O'Connor's shares were collateral and subject a security agreement on which O'Connor was not current. Moreover, as long as O'Connor was the shareholder of record, there was a valid proxy which allowed his shares to be voted by certain defendants. Yet, despite Duffy not being the shareholder of record of those shares, Catanzarite Law represented to the court that it had the majority and undertook the representation of CTI on that representation.

Catanzarite Law's submission of forged and false documents to this Court, along with its other ethical misconduct, warrants the disqualification of Catanzarite Law.

## II. CONCLUSION AND RELIEF

For each of the foregoing reasons stated herein, the Defendants request this court grant the Motion to Disqualify Catanzarite Law Corporation.

DATED: December 17, 2019                O'HAGAN MEYER, LLC

By: _____
Sam Y. Edgerton, III, Esq
Johnny L. Antwiler, Esq.
Attorneys for Defendants,
Justin Beck, Miguel Motta, Robert Bernheimer, Robert Kamm, and Irving Einhorn

# PROOF OF SERVICE
### *DENISE PINKERTON, ET AL. V. RICHARD JOSEPH PROBST, ET AL.*
**Orange County Superior Court Case No. 30-2018-01018922**

1
2
3   I am over the age of eighteen years and not a party to the within action.  I am employed by O'HAGAN MEYER, LLC, whose business address is 4695 MacArthur Court, Suite 210, Newport Beach, California 92660.
4
5   On **December 18, 2019**, I served the within document(s) described as:

6   **DEFENDANTS' JOINDER IN CULTIVATION TECHNOLOGIES, INC.'S MOTION TO DISQUALIFY CATANZARITE LAW CORPORATION**

7   on the parties in said action as follows:

8   **SEE ATTACHED SERVICE LIST**

9
10   ☒   **BY ELECTRONIC FILING AND SERVICE:**  Pursuant to Code of Civil Procedure 1010.6 and this Court's Local Rules, I caused the documents described above to be electronically filed and served on One Legal's electronic filing system.  Notice of this filing will be sent by One Legal to all parties indicated on the electronic filing receipt.  Parties may access this filing through One Legal's electronic filing system.
11
12
13   ☒   (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
14
15   Executed on **December 18, 2019,** at Hermosa Beach, California.

16
                                         *Liana Bickford*
17                                          Liana Bickford

---

1
PROOF OF SERVICE

**SERVICE LIST**
*DENISE PINKERTON, ET AL. V. RICHARD JOSEPH PROBST, ET AL.*
Orange County Superior Court Case No. 30-2018-01018922

| | |
|---|---|
| Kenneth J. Catanzarite, Esq.<br>Brandon E. Woodward, Esq.<br>CATANZARITE LAW CORP.<br>2331 West Lincoln Ave.<br>Anaheim, CA 92801<br>Tel: (714) 520-5544<br>Fax: (714) 520-0680<br>Email: kcatanzarite@catanzarite.com<br>Email: bwoodward@catanzarite.com | ***Attorneys for Plaintiffs*** |
| Wendy M. Thomas, Esq.<br>Andrew P. Danza, Esq.<br>Bella Ngo, Esq.<br>MARKUN ZUSMAN FRENIERE & COMPTON, LLP<br>17383 Sunset Blvd., Suite A380<br>Pacific Palisades, CA 90272<br>Tel: (310) 454-5900<br>Fax: (310) 454-5970<br>Email: wthomas@mzclaw.com<br>Email: adanza@mzclaw.com<br>Email: bngo@mzclaw.com | ***Attorneys for Richard Joseph Probst, Darren Wetherhold, Michael Burdick, Hank Casillas, and Frederick Heim*** |
| Jeffrey F. Kagan, Esq.<br>Richard P. Tricker, Esq.<br>WINGET SPADAFORA & SCHWARTZBER, LLP<br>1900 Avenue of the Stars, Suite 450<br>Los Angeles, CA 90067<br>Tel: (310) 836-4800<br>Fax: (310) 836-4801<br>Email: kagan.j@wssllp.com<br>Email: tricker.r@wssllp.com | ***Attorneys for Nominal Defendant Cultivation Technologies, Inc.*** |