FILED

MAY 2 2 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DM                          DEPUTY

1   Justin S. Beck
2   3501 Roselle St.,
    Oceanside, CA 92056
3   760-449-2509
    justintimesd@gmail.com
4   *In Propria Persona*

5
6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

7   JUSTIN S. BECK,                              )   Case No.: 3:22-CV-01616-AGS-DDL
8                                                )
           Plaintiffs,                           )   Judge:      Hon. Andrew G. Schopler
9                                                )
       vs.                                       )   **PLAINTIFF JUSTIN S. BECK'S**
10                                               )   **REQUEST FOR EARLY NEUTRAL**
    CATANZARITE LAW CORPORATION;                 )   **EVALUATION CONFERENCE AND/OR**
11  STATE OF CALIFORNIA; THE STATE BAR           )   **SUPERVISED DISCOVERY**
    OF CALIFORNIA; ORANGE COUNTY                 )   **CONFERENCE; DECLARATION OF**
12  SUPERIOR COURT; ORANGE COUNTY                )   **JUSTIN S. BECK IN SUPPORT**
13  DISTRICT ATTORNEY'S OFFICE; RUBEN            )
    DURAN, ESQ.; SUZANNE CELIA                   )
14  GRANDT, ESQ.; RICHARD FRANCIS                )
15  O'CONNOR, JR.; MOHAMMED                      )
    ZAKHIREH; JAMES DUFFY; KENNETH               )
16  CATANZARITE, ESQ.; JIM TRAVIS TICE,          )
17  ESQ.; NICOLE MARIE CATANZARITE               )
    WOODWARD, ESQ.; BRANDON                      )
18  WOODWARD, ESQ.; TIM JAMES                    )
    O'KEEFE, ESQ.; AMY JEANETTE                  )
19  COOPER; CLIFF HIGGERSON; ELI DAVID           )
20  MORGENSTERN, ESQ.; LEAH WILSON,              )
    ESQ.; ROBERT GEORGE RETANA, ESQ.;            )
21  ELLIN DAVTYAN, ESQ.; JOHN C.                 )
22  GASTELUM; JORGE E. NAVARETTE;                )
    GEORGE SARGENT CARDONA, ESQ.;                )
23  ANTHONY B. SCUDDER                           )
                                                 )
24         Defendants,                           )
                                                 )
25  UNITED STATES ATTORNEY GENERAL;              )
26  UNITED STATES OF AMERICA                     )
                                                 )
27         Nominal Defendants                    )
                                                 )
28  _____          )

REQUEST FOR CONFERENCE.                    1                3:22-CV-01616-AGS-DDL

**TO THE COURT, ALL PARTIES & ATTORNEYS OF RECORD:**

Plaintiff hereby respectfully requests the Court establish a date to hold an early neutral evaluation conference and/or discovery conference ("Requested Conference") pursuant to CivLR 16.1(c)(1), which can be made "at any time after the filing of a complaint and before an answer has been filed" through a "request in writing to the judge in the case." CivLR 16.1(c)(1). "Upon receiving such request, the judge will examine the circumstances of the case and the reasons for the request and determine whether any such conference would assist in the reduction of expense and delay in the case." Ibid.

Good cause exists to have the Requested Conference, as set forth below.

1. "All counsel and parties, if they are proceeding pro se" as is Plaintiff "must proceed with diligence to take all steps necessary to bring an action to readiness for trial." CivLR 16.1(b). Plaintiff requested to confer and/or set a Rule 26(f) conference. Beck Decl. ¶ 1. Plaintiff seeks the Requested Conference after failed, good faith, diligent attempts to advance the pre-trial process.

2. Except for defendant Orange County District Attorney's Office ("OCDA") and nominal defendants United States and United States Attorney General (together "U.S."), defendants refuse to respond to Plaintiff's requests to commence discovery process or confer regarding Rule 26(f) conference, much less "proceed with diligence." Beck Decl. ¶ 2. OCDA and U.S. erroneously cite the pendency of 12(b) motions as cause for delay. Beck Decl., Ex. 1, 2.

3. Rule 26 and the accompanying Advisory Committee Notes make clear that 26(f) conferences should happen sooner rather than later, regardless of the preliminary nature of the proceedings. F.R.Civ.P. 26, 1993 Advisory Committee Notes ["It will be often desirable...for the parties to have their Rule 26(f) meeting early in the case, perhaps before a defendant has answered the complaint..."].) Rule 26(f)(1) expressly states that "the parties must confer as soon as practicable."

4. Defendants are in violation of the Rules and their clear directives by refusing to confer with Plaintiff or set Rule 26(f) conference. For all defendants and nominal defendants and their counsel, each refuse to schedule or participate in Rule 26(f) conference which places a stay of all discovery at a time when such discovery could be valuable in amending Plaintiff's pleadings if needed after disposition of pending motions to dismiss.

5. F.R.Civ.P. 16(b)(2) requires issuance of a scheduling order "as soon as practicable" and unless there is good cause for delay, "the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared." However, CivLR 16.1(a)(1) holds "timing of the Federal Rule 16(b) scheduling order is adjusted to accommodate the Early Neutral Evaluation Conference."

6. Each defendant has appeared in this case. The obligation to participate in the planning process is imposed on all parties that have appeared in the case, including defendants who, because of a pending Rule 12 motion, may not yet have filed an answer in the case. Plaintiff reminded Defendants of this on April 25, 2023. Beck Decl., Ex. 1. F.R.Civ.P. Rule 26 Advisory Committee Notes. See *Melaleuca, Inc. v. Hansen*, 1:10-CV-00553-EJL, 2014 WL 1343452 (tel: 1343452), at *8 (D. Idaho Apr. 3, 2014) [compelling defendant to participate in rule 26(f) conference while granting plaintiff leave to amend the complaint], *ATEN Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 122 (E.D. Tex. 2009) [party not excused from making initial disclosures simply because of pending motions to dismiss].

7. Plaintiff cannot file a motion to compel Rule 26.1(f) discovery conference because the local rules require meet and confer, which defendants and their counsel refuse citing the pendency of 12(b) motions as to OCDA and U.S., or through absolutely no response at all as to other defendants.

8. The Requested Conference may serve to reduce costs and unnecessary delay in this proceeding. It will invariably serve the ends of justice, under the circumstances.

9. Plaintiff suffers from a mental disability protected by Title II of the Americans with Disabilities Act and is presently being exploited in Orange County Superior Court by staff who refuse to provide him ADA accommodations in apparent retaliation. Catanzarite Law Corporation actors and those they represent continue to engage in the conduct underlying this case. Beck Decl. ¶ 5, 6, Ex. 3.

10. The Requested Conference may help the Court determine whether early appointment of a Master or Special Master is appropriate to manage discovery and make sensitive findings of fact, given the criminal allegations, implications of this case on the broader public interest, and in light of the early refusal of defendants to participate diligently in pre-trial processes as required by F.R.Civ.P. and CivLR. Respectfully Submitted,

May 21, 2023,                                      Justin S. Beck, Plaintiff, *In Pro Per*

REQUEST FOR CONFERENCE.                     3                      3:22-CV-01616-AGS-DDL

**DECLARATION OF JUSTIN S. BECK IN SUPPORT OF REQUEST FOR CONFERENCE**

I, Justin S. Beck, am over the age of 18 and am the Plaintiff in this action. I declare the following under penalty of perjury under the laws of the State of California and the United States. If called to testify, I could and would do so competently as to truth of any matter on which I declare, except for those things I state on information and belief, in which case I believe them to be true, and could and would testify on the basis therefore. I confirm the authenticity of each exhibit attached hereto.

1. On Tuesday, April 25, 2023, at 4:10 PM, I delivered to all parties in this case and their attorneys of record by email a request "RE: Rule 26(f) Conference in U.S. Southern District of California Case Nos. 3:22-CV-01616-AGS-DDL & 3:23-CV-0164-AGS-DDL." I received no response.

2. On Wednesday, April 26, 2023, at 2:07 PM, I delivered to all parties in this case and their attorneys of record by email a second request "RE: Rule 26(f) Conference in U.S. Southern District of California Case Nos. 3:22-CV-01616-AGS-DDL & 3:23-CV-0164-AGS-DDL." I only received replies from the United States, United States Attorney General, and Orange County District Attorney's Office.

3. On Friday, April 28, 2023, at 12:48 PM, I delivered to all parties in this case and their attorneys of record by email a draft discovery plan (V1.0). I received no responses on my request for feedback on scheduling discovery so that the parties are diligently prepared for pre-trial hearings before the Court.

4. I suffer from a mental disability protected by Title II of the Americans with Disabilities Act ("ADA") that substantially limits one or more major life activities. After naming it and a judge, and informing Orange County Superior Court, I believe staff is retaliating against me for suing, and because of my disclosed disability, in each case to exploit me and take advantage of my disability.

5. After Orange County Superior Court refused my ADA accommodations, I filed another case, requested appointment of counsel pursuant to ADA's broad guidelines, and sought a temporary stay in Orange County Superior Court Case No. 30-2020-01145998 to allow my RICO allegations to be heard, and/or to obtain injunctive relief so I have ADA accommodations and am no longer exploited.

6. A true and correct copy of the reply I received by email from Orange County District Attorney's Office at 2:41 PM on April 26, 2023, is attached hereto as Exhibit 1.

7. A true and correct copy of the reply I received by email from the United States and United States Attorney General at 3:55 PM on April 26, 2023, is attached hereto as Exhibit 2.

REQUEST FOR CONFERENCE.                     4                     3:22-CV-01616-AGS-DDL

8. A true and correct copy of the email I sent to all parties and their attorneys of record at 12:48 PM on Friday, April 27, 2023, is attached hereto as Exhibit 3.

9. A true and correct copy of the ADA case I filed 3:23-CV-0882-AGS-DDL on May 15, 2023, *sans* exhibits is attached hereto as Exhibit 4.

10. A true and correct copy of the temporary restraining order I filed in 3:23-CV-0882-AGS-DDL on May 16, 2023, is attached hereto as Exhibit 5.

11. While I am seeking a temporary restraining order to enforce ADA and protect me from exploitation, I complied to the Orange County Superior Court's motions to compel discovery and am ready to produce it should no restraining order issue, although I believe the production will cause me and others further irreparable harm by way of deliberate fraud as I have shown by Court of Appeal and U.S. District Court rulings involving Catanzarite Law Corporation actors.

I SWEAR THE FOREGOING TO BE TRUE AND CORRECT UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA. I'M SIGNING THIS FROM OCEANSIDE, CA.

May 21, 2023

_____

Justin S. Beck

Declarant

1   **PROOF OF SERVICE**

2   I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action,

3   and that my address is 3501 Roselle St., Oceanside, CA 92056.

4   I served or scheduled for service one copy of the following documents:

5
    **PLAINTIFF JUSTIN S. BECK'S REQUEST FOR EARLY NEUTRAL EVALUATION**
6   **CONFERENCE AND/OR SUPERVISED DISCOVERY CONFERENCE; DECLARATION OF**
    **JUSTIN S. BECK IN SUPPORT**
7

8   Participants in the case who are registered CM/ECF users will be served when these papers are

9   filed with the Court.

10  *See the CM/ECF service list.*

11  Electronic service is scheduled for delivery May 22, 2023, to the following email addresses:

12

13  Corey Amundson                    corey.amundson@usdoj.gov

14  Todd Gee                          todd.gee@usdoj.gov

15  Robert Heberle                    Robert.heberle@usdoj.gov

16  Sean Mulryne                      sean.mulryne@usdoj.gov

17

18  By electronic mail by personally transmitting a true copy thereof via an electronic email service

19  connected to the internet, addressed to the email address listed above [X].

20  I declare the foregoing to be true under penalty of perjury under the laws of the State of California

21  and United States. I am signing this from Oceanside, California on May 21, 2023.

22

23

24

25  Brian Bargabus, Declarant

26

27

28

REQUEST FOR CONFERENCE.                 6                      3:22-CV-01616-AGS-DDL

Exhibit 1

Case 3:22-cv-01616-AGS-DDL    Document 87    Filed 05/22/23    PageID.6272    Page 8 of 101

5/21/23, 7:54 PM                Gmail - BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-...

 **Gmail**                                                                                    Justin Beck <justintimesd@gmail.com>

---

## BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-AGS-DDL)

**Christina Sprenger** <csprenger@lbaclaw.com>                                      Wed, Apr 26, 2023 at 2:40 PM
To: Justin Beck <justintimesd@gmail.com>, Kenneth Catanzarite <kcatanzarite@catanzarite.com>, "jechoi@ohhlegal.com" <jechoi@ohhlegal.com>, "kgilbert@ohshlaw.com" <kgilbert@ohshlaw.com>, "Tim.VandenHeuvel@doj.ca.gov" <tim.vandenheuvel@doj.ca.gov>, Jim Tice <jtt@tice.lawyer>, "soverton@cmda-law.com" <soverton@cmda-law.com>, "stephanie.sotomayor@usdoj.gov" <stephanie.sotomayor@usdoj.gov>
Cc: Christina Sprenger <csprenger@lbaclaw.com>, Egle Urbonaite <eurbonaite@lbaclaw.com>, Donna Adams <dadams@lbaclaw.com>

Good afternoon Mr. Beck:

Thank you for your email. Please note that the hearing on Orange County District Attorney's pending Motion to Dismiss is scheduled for May 9th and we have asserted prosecutorial immunity. The Court's ruling on the Motion to Dismiss will define what claims remain against the District Attorney, if any, and will inform the scope of our Rule 26(f) conference. Accordingly, I propose that we schedule the conference of counsel after the Court has ruled on the pending Motion to Dismiss. To that end, I am available mid-day on May 16th and 17th and, assuming we have a ruling by then, we can schedule a phone conference at your convenience on either of those dates.

Enjoy your afternoon.

Christina Sprenger

LAWRENCE BEACH        ATTORNEYS AT LAW
                      ALLEN & CHOI · PC

959 South Coast Drive, Suite 260

Costa Mesa, California 92626

Phone: (714) 479-0180

E-mail: csprenger@lbaclaw.com

http://www.lawrencebeach.com

**\*\* We have moved \*\***

As of February 17, 2023, the address for our Orange County office is:

LAWRENCE BEACH ALLEN & CHOI, PC

959 South Coast Drive, Suite 260

Costa Mesa, California 92626

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering this message to the

5/21/23, 7:54 PM          Gmail - BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-...

intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this in error, please notify Lawrence Beach Allen & Choi, PC immediately by telephone at (714) 479-0180. Thank you.

**From:** Justin Beck <justintimesd@gmail.com>
**Sent:** Wednesday, April 26, 2023 2:07 PM
**To:** Kenneth Catanzarite <kcatanzarite@catanzarite.com>; jechoi@ohhlegal.com; kgilbert@ohshlaw.com; Tim.VandenHeuvel@doj.ca.gov; Jim Tice <jtt@tice.lawyer>; soverton@cmda-law.com; Christina Sprenger <csprenger@lbaclaw.com>; stephanie.sotomayor@usdoj.gov
**Subject:** Re: Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-AGS-DDL)


**RE: Rule 26(f) Conference in U.S. Southern District of California Case Nos. 3:22-CV-01616-AGS-DDL & 3:23-CV-0164-AGS-DDL**


To All Parties & Counsel:


I'm writing again in case you missed my request yesterday to set the discovery conference in the above cases.


The Advisory Committee Notes to Federal Rules of Civil Procedure 26(f) indicate that a conference must be scheduled even if a defendant has not yet answered a complaint.


Rule 26 and the accompanying Advisory Committee Notes make clear that 26(f) conferences should happen sooner rather than later, regardless of the preliminary nature of the proceedings. (Fed. Rules Civ. Proc., rule 26, 1993 Advisory Committee Notes ["It will often be desirable...for the parties to have their Rule 26(f) meeting early in the case, perhaps before a defendant has answered the complaint..."].) Rule 26(f)(1) expressly states that "the parties must confer as soon as practicable."


This is my second attempt to confer prior to moving to compel scheduling of the rule 26 conference with all defendants.


Thank you,


Justin S. Beck


On Tue, Apr 25, 2023 at 4:10 PM Justin Beck <justintimesd@gmail.com> wrote:

Justin S. Beck

3501 Roselle St.

Oceanside, CA 92056

760-449-2509

justintimesd@gmail.com

**RE: Rule 26(f) Conference in U.S. Southern District of California Case Nos. 3:22-CV-01616-AGS-DDL & 3:23-CV-0164-AGS-DDL**

To All Parties & Counsel:

I would like to schedule a Rule 26(f) conference for Defendants Catanzarite Law Corporation, State of California, The State Bar of California, Orange County Superior Court, Orange County District Attorney's Office, Ruben Duran, Esq., Suzanne Celia Grandt, Esq., Richard Francis O'Connor, Jr., Mohammed Zakhireh, James Duffy, Kenneth Catanzarite, Esq., Jim Travis Tice, Esq., Nicole Marie Catanzarite Woodward, Esq., Brandon Woodward, Esq., Tim James O'Keefe, Esq., Amy Jeanette Cooper, Cliff Higgerson, Eli David Morgenstern, Esq., Leah Wilson, Esq., Robert George Retana, Esq., Ellin Davtyan, Esq., John C. Gastelum, Jorge E. Navarette, George Sargent Cardona, Attorney General of the United States, United States of America, and Anthony B. Scudder in the above cases.

F.R.Civ.P. 26(f)(1) requires setting a Rule 26(f) conference "as soon as practicable." In the event Defendants do not wish to hold the Rule 26 conference, this is my attempt to schedule a meet and confer conference pursuant to CivLR 26.1(a) with regards to a motion to compel a Rule 26 conference.

Please send me dates and times you are available to meet by phone or Zoom between May 1, 2023, and May 4, 2023, between 10AM PST and 3PM PST. If necessary, I can schedule separate conferences for groups of defendants. I will form and circulate a draft framework for discovery planning from which we can operate and on which you can provide feedback during the conference so we may agree to a discovery plan. Please note the pendency of motions to dismiss are not good cause to delay this request.

I look forward to hearing back from you – kindly reply with scheduling options.

Respectfully,

Justin S. Beck

--

==============

**Justin Beck**

**760-449-2509**

--

==============

**Justin Beck**

**760-449-2509**

Exhibit 2

Case 3:22-cv-01616-AGS-DDL   Document 87   Filed 05/22/23   PageID.6277   Page 13 of 101

5/21/23, 7:55 PM                Gmail - BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-...

 **Gmail**

Justin Beck <justintimesd@gmail.com>

---

## BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-AGS-DDL)

Sotomayor, Stephanie (USACAS) <Stephanie.Sotomayor@usdoj.gov>                 Wed, Apr 26, 2023 at 3:54 PM
To: Justin Beck <justintimesd@gmail.com>, Christina Sprenger <csprenger@lbaclaw.com>, Kenneth Catanzarite <kcatanzarite@catanzarite.com>
Cc: "jechoi@ohhlegal.com" <jechoi@ohhlegal.com>, "kgilbert@ohshlaw.com" <kgilbert@ohshlaw.com>, "Tim.VandenHeuvel@doj.ca.gov" <tim.vandenheuvel@doj.ca.gov>, Jim Tice <jtt@tice.lawyer>, "soverton@cmda-law.com" <soverton@cmda-law.com>, Egle Urbonaite <eurbonaite@lbaclaw.com>, Donna Adams <dadams@lbaclaw.com>

Good afternoon Mr. Beck –

I hope this email finds you well, and I appreciate you reaching out to the parties regarding the scheduling of a Rule 26(f) conference.

The Federal Defendants' pending Motion to Dismiss is scheduled to be heard on May 9. Once the Court has issued a ruling upon the Motion, the Federal Defendants will have a better idea of which claims, if any, require an Answer or other responsive pleading.

In my experience in this District, once the Defendants file their Answers, the Court schedules an Early Neutral Evaluation (ENE) Conference and the parties are given a timetable and directed to proceed under Rule 26(f). Because this matter has not yet reached that stage, a Rule 26(f) conference at this juncture will not be as productive as it would be if it were held once the Defendants are all aware of which claims remain against them. As such, in the interests of economy and efficiency, the Federal Defendants propose that the parties schedule a 26(f) conference once all of the parties that remain in this matter have filed their respective Answers. Alternatively, the Federal Defendants propose that the parties schedule the 26(f) conference once they have been directed by the Court to do so.

Thank you.

Sincerely,

Stephanie A. Sotomayor

Assistant United States Attorney

Office of the U.S. Attorney

Southern District of California

880 Front Street, Room 6293

San Diego, CA 92101

Office: (619) 546-9590

Cell: (619) 988-8708

[Quoted text hidden]

Exhibit 3

Case 3:22-cv-01616-AGS-DDL  Document 87  Filed 05/22/23  PageID.6280  Page 16 of 101

5/21/23, 8:06 PM        Gmail - BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-...

 Gmail                                                    Justin Beck <justintimesd@gmail.com>

## BECK v CATANZARITE - OCDA response to Rule 26(f) Conference Schedule Request (3:22-CV-01616-AGS-DDL + 3:23-CV-0164-AGS-DDL)

**Justin Beck** <justintimesd@gmail.com>                              Fri, Apr 28, 2023 at 12:48 PM
To: "Sotomayor, Stephanie (USACAS)" <Stephanie.Sotomayor@usdoj.gov>
Cc: Christina Sprenger <csprenger@lbaclaw.com>, Kenneth Catanzarite <kcatanzarite@catanzarite.com>,
"jechoi@ohhlegal.com" <jechoi@ohhlegal.com>, "kgilbert@ohshlaw.com" <kgilbert@ohshlaw.com>,
"Tim.VandenHeuvel@doj.ca.gov" <tim.vandenheuvel@doj.ca.gov>, Jim Tice <jtt@tice.lawyer>, "soverton@cmda-law.com"
<soverton@cmda-law.com>, Egle Urbonaite <eurbonaite@lbaclaw.com>, Donna Adams <dadams@lbaclaw.com>

3:22-CV-01616-AGS-DDL & 3:23-CV-0164-AGS-DDL

Hello Everyone,

As promised, please see the draft discovery plan attached. For the record, I've thus far only heard from the Orange
County District Attorney's Office, United States, and United States Attorney General regarding a 26(f) conference. It
appears the Judge sets a scheduling order 90-days after service, so this is timely.

Because the supporting factual allegations are similar between 3:22-CV-01616-AGS-DDL and 3:23-CV-0164-AGS-DDL
(the legal theories and parties are different) -- I'd propose we use one discovery plan for both cases.

Please provide any feedback on scheduling. At this time, while the list of discovery issues may appear large, I do not
expect to require more than the statutory standards on RFAs, interrogatories, etc. since many of these things relate to one
another and I have a strong base of facts and evidence already.

Respectfully,

Justin S. Beck


[Quoted text hidden]

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

📄 **Discovery Plan V1.0.docx**
72K

Exhibit 4

Justin S. Beck
3501 Roselle St.,
Oceanside, CA 92056
760-449-2509
justintimesd@gmail.com
*In Propria Persona*

**FILED**

May 15 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ melissadwilliams          DEPUTY

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### SOUTHERN DISTRICT OF CALIFORNIA

JUSTIN S. BECK,

       Plaintiff,

   vs.

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE

      Defendant,

Case No.: **'23CV0882 JES  NLS**

Judge: _____

**COMPLAINT FOR DECLARATORY
RELIEF, INJUNCTIVE RELIEF, AND
DAMAGES**

**1. DENIAL OF ACCESS UNDER
AMERICANS WITH DISABILITIES ACT,
TITLE II**

**2. FAILURE TO ACCOMMODATE UNDER
AMERICANS WITH DISABILITIES ACT,
TITLE II**

**3. UNRUH CIVIL RIGHTS ACT
VIOLATIONS**

**4. EQUITABLE INDEMNIFICATION**

1

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff JUSTIN S. BECK ("Plaintiff") for his complaint against SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE ("Defendant") alleges as follows:

1. Plaintiff is a qualified, disabled individual under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the "ADA") in that he has mental impairments that substantially limit one or more major life activities. A former CEO, Plaintiff is indigent due to the conduct at issue.

2. Title II of the ADA prohibits discrimination on the basis of disability by "public entities," which results in the denial of access to programs, services and activities operated by state and local governments. 42 U.S.C. §§ 12131(1), 12132. Defendant is a public entity subject to the ADA.

3. Title II of the ADA imposes federal mandates on the day-to-day operations of Defendant.

4. Title II of the ADA requires that all programs, services, and activities of Defendant are accessible to the qualified, disabled individual Plaintiff who is presently being exploited by Defendant.

5. As a qualified individual with a disability, Plaintiff was and is being excluded from participation in Defendant services, programs, or activities with malice and knowledge of his harm.

6. As a qualified individual with a disability, Plaintiff was and is being denied the benefits of Defendant services programs, or activities with malice and knowledge of his harm.

7. Defendant's willful exclusion of Plaintiff, denial of benefits to Plaintiff with knowledge of his disability, and discrimination against Plaintiff was and is by reason of Plaintiff's disability.

8. Plaintiff satisfied the claim presentation requirements of Government Claims Act under California law, has vested right to sue Defendant for damages, and Plaintiff brings this action within 6-months of claim denial. Clearly, Plaintiff cannot try this case before Defendant.

9. Plaintiff has further exhausted all purported administrative remedies available under state law and faces an acute and immediate threat of further irreparable harm and further damages as direct and proximate cause of Defendant's violations of Title II of the ADA against Plaintiff.

10. Plaintiff seeks declaratory relief that he is a qualified individual under Title II of the ADA.

11. Plaintiff seeks to permanently enjoin Defendant violations of Title II of the ADA against him.

12. Plaintiff seeks compensatory damages for willful violations and malice under Title II of the ADA and actual damages plus treble damages under state law under Unruh Civil Rights Act.

<u>JURISDICTION</u>

13. This court has original jurisdiction under 28 U.S.C. § 1331 where Title II of Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101, *et seq.* is mandatory law of the United States.

14. This court has supplemental jurisdiction under 28 U.S.C. § 1367 because the state claims under Unruh Civil Rights Act are so related to claims in the action having original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this court under 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this judicial district. Plaintiff also has pending RICO and antitrust claims pending in this court.

<u>PARTY IDENTIFICATION</u>

16. Plaintiff JUSTIN S. BECK ("Beck" or "Plaintiff") is an individual who has a disability under 42 U.S.C. § 12102(1) whose place of residence is 3501 Roselle St., Oceanside, CA 92056. Plaintiff presented claims for money damages to Defendant which were denied on or around December 22, 2022, vesting his right to sue. This case arises from similar facts and circumstances.

17. Defendant SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE ("OCSC" or "Defendant") is a public entity whose public facilities under ADA Title II and Unruh are 751 W. Santa Ana Blvd., Santa Ana, CA 92701 and 700 W Civic Center Dr., Santa Ana, CA 92701.

<u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u>

1. On March 10, 2023, The State Bar of California publicly confessed it was infected with bribery and corruption. On information and belief, Mr. Catanzarite is allegedly among its worst actors.

2. Before September 14, 2018, when fraudulent schemes targeted Plaintiff through Defendant, dating back to at least 2005, Catanzarite Law Corporation led by attorney Kenneth J. Catanzarite has engaged in a pattern of practice of filing knowingly fraudulent claims, deliberate concealment of material facts, deliberate misstatements to judicial officers, willful obstruction of justice, misappropriation of client assets with intent to defraud, malicious and vexatious litigation, and un-waivable conflicts of interest barred by mandatory law and ethical tenets.

3. On March 17, 2005, Catanzarite Law Corporation placed a lien for $120,000 on its own client's home with alleged intent to steal it. On December 1, 2017, Kenneth J. Catanzarite transferred the ~$1.3 million home to a "Robert J. Valusek | Charla L. Valusek" for a value of $99,500.

4. In 2007 according to public records produced to Plaintiff by The State Bar of California on June 14, 2022, "Catanzarite did not tell the Court that his client, who was declaring bankruptcy, deeded his home to Catanzarite. In bankruptcy, the person declaring bankruptcy cannot sell or give away without telling the Court. **Catanzarite took the property to pay for his fees, but did not tell the [bankruptcy] Court,** violating this strict rule." This was allegedly willful bankruptcy fraud by Mr. Catanzarite, and part of a pattern also carried on through Defendant.

5. In 2011 according to public records produced to Plaintiff by The State Bar of California on June 14, 2022, "Catanzarite violated court rules by making statements to the court without any proof. The court said: "But here plaintiffs [Catanzarite] admit they violated several rules. They also continued to cite the excluded evidence in their reply brief even after the defendants noted the error with their briefs." The Court pointed out that Catanzarite's brief made 39 unsupported factual statements, and paragraphs lacking references. Some statements were completely incorrect. **Catanzarite does not care about the truth in making statements to the Court."**

6. In 2013 according to public records produced to Plaintiff by The State Bar of California on June 14, 2022, "the Court punished Catanzarite for saying one thing, then switching his story. The court stated that **Catanzarite's case was a "sham."** First, Catanzarite claimed that the dental practice run by Dr. Noroski and Dr. Schneider should give back money to patients who had been treated at the dental office, but did not say anything was wrong with the dentistry. Then, Catanzarite realized he had no case, because the plaintiffs who were former patients had their depositions and said they were happy with Dr. Noroski and happy with Dr. Schneider...The plaintiffs dropped out and Catanzarite had no case. Catanzarite asked to file an amended complaint that now said the dental services were bad. **The Court punished Catanzarite...for wasting everybody's time."**

7. An elderly Richard Carlson testified on February 12, 2020, that he was **visited** *at his home* **by Kenneth J. Catanzarite when he was not seeking an attorney and did not believe he suffered damages.** Mr. Catanzarite filed <u>nine putative class actions</u> on Mr. Carlson's behalf anyway for hundreds of millions of dollars in damages, some of which were filed in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE with alleged intent to defraud.

4

8. Between 1988 and 2011, on information and belief, Plaintiff alleges the records and captions of at least 25 cases filed against Kenneth J. Catanzarite, his family, or Catanzarite Law Corporation, were "fixed" and manipulated in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE by court staff to conceal and obstruct them in exchange of alleged bribes.

9. On September 22, 2017, a clerk within SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE was sentenced for "fixing" over 1,000 cases violative of RICO, 18 U.S.C. § 1962(d).

10. On October 13, 2022, the United States Department of Justice announced: "Civil Rights Violations by Orange County, California, District Attorney's Office and Sheriff's Department." The indigent, disabled Plaintiff sought help from Orange County District Attorney's Office ("OCDA") and even filed a police report with Anaheim Police Department ("APD"), but each overtly chose to protect local business Catanzarite Law Corporation, Mr. Catanzarite, and his alleged gang of unscrupulous marauders. Neither OCDA nor APD would even speak to Plaintiff.

11. For the matter of Richard Carlson who did not believe he had suffered damages, was not seeking an attorney when visited at his home by Kenneth J. Catanzarite, a series of Court orders issued in U.S. District Court, U.S. Bankruptcy Court and later in 11th Circuit Court of Appeals.

12. On May 8, 2020, a court order signed by Honorable Judge Scott M. Grossman issued pertaining to "discovery requests served by Mr. Catanzarite in violation of Federal Rule of Civil Procedure 26(g)(1)(B)" which resulted in sanctions. This fraudulent scheme commenced with the elderly "client" Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

13. An "Order Affirming Order of Bankruptcy Court" on appeal upheld sanctions for "violation of a preliminary injunction." This commenced with the elderly Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

14. An "Order Liquidating and Awarding Compensatory Sanctions" ordered Mr. Catanzarite must pay "$49,020.50" and "11,639.25" for sanctionable conduct related to Mr. Carlson's "cases." This commenced with the elderly Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

15. An "Order for Preliminary Injunction and Imposing Sanctions" found that Catanzarite violated a court-ordered preliminary injunction related to the elderly Mr. Carlson by "filing the Henkin-Looper Case and the associated *lis pendens* [in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE]" and "[a]ny further violations of this Court's Orders, the Bankruptcy Code, Bankruptcy Rules, or the Local Rules will result in an order requiring Mr. Catanzarite to show cause why his pro hac vice status should not be revoked."

16. After Mr. Catanzarite disregarded that order, too, an "Order to Show Cause Why Attorney Kenneth Catanzarite's Pro Hac Vice Status Should Not Be Revoked" found Mr. Catanzarite filed a "false affidavit" to certify his pro hac vice status, and that he was in fact suspended from the practice of law in New York, that he "refuses to be governed by" the rules of the court and professional conduct in that jurisdiction, that a website he published "contained misleading information" and "otherwise sought to undermine the bankruptcy process," that Mr. Catanzarite engaged in "numerous discovery violations" resulting in "sanctions," that Mr. Catanzarite engaged in "unilaterally noticing depositions at an inconsiderate time and inconvenient time and place," "violation of preliminary injunction," and that Mr. Catanzarite filed a "false emergency" that was "completely meritless."

17. On June 16, 2020, according to public records produced by The State Bar of California, Mr. Catanzarite informed Office of Chief Trial Counsel that he had been repeatedly sanctioned, but Mr. Catanzarite failed to disclose that his "client" Mr. Carlson on whose behalf 9 putative class actions were filed did not believe he had suffered damages and was not seeking an attorney. Nevertheless, Mr. Catanzarite said he would appeal all sanctions; all were upheld. *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766 (11th Cir. Mar. 9, 2022)

18. On June 11, 2021, an order to expunge notice of pendency of action (*lis pendens*) was ordered removed in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE which was found to have violated a federal court order, and $13,600 in costs were imputed to Catanzarite or his client. Again, this commenced with the elderly Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

19. On information and belief, Catanzarite bribes OCDA, APD, and The State Bar of California.

## CATANZARITE'S FRAUDULENT SCHEMES TARGET PLAINTIFF VIA DEFENDANT

20. Consistent with his patterns of practice, commencing September 14, 2018, Kenneth J. Catanzarite of Catanzarite Law Corporation commenced a fraudulent and vexatious scheme targeting Plaintiff in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE.

21. The scheme in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE targeting Plaintiff involves seven frivolous and knowingly fraudulent cases or adversary cross complaints filed on behalf of directly adverse parties without standing or objective probable cause.

22. Using SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, Kenneth J. Catanzarite deliberately abused the court system to exploit Plaintiff and others, created, and exacerbated Plaintiff's disability with Defendant, willfully corrupted due process for Plaintiff and other innocent people, repeatedly misled judicial officers inside and outside Defendant's walls, engaged in non-judicial acts of fraud to perpetuate his fraudulent schemes, and is now taking advantage of Plaintiff's disability with Defendant maliciously to cover it all up.

23. For the first case, filed for a non-shareholder of MFS in a fraudulent derivative action:

(1) The Pinkerton Action. *Denise Pinkerton v. Cultivation Technologies, Inc., et al.*, OCSC No. 30-2018-01018922. Catanzarite filed this lawsuit on September 14, 2018, on behalf of an elderly woman (via an attorney in fact) who invested all her retirement savings in MFS shares. This shareholder, individually and derivatively on behalf of MFS, asserted CTI, Probst, O'Connor, Cooper, and [Plaintiff] involved with CTI, engaged in fraud, conversion, breach of fiduciary duty, conspiracy, fraudulent concealment, and theft of trade secrets. In addition to damages, this derivative action demanded the cancellation of CTI stock certificates, an injunction preventing the sale of CTI stock, an injunction forcing CTI to stop using MFS's trade secrets, and the payment of punitive damages and attorney fees. For this lawsuit, CTI attorney of record was Winget, Spadafora, Schwartzberg LLP (Winget). On January 23, 2019, a few days before Catanzarite filed a shareholder derivative action involving CTI shareholders, Catanzarite dismissed several defendants from the Pinkerton Action, including CTI and members of the O'Connor Faction (O'Connor and Cooper). It also deleted causes of action for misappropriation of trade secrets, unfair competition, and declaratory relief against CTI. In August 2019, Catanzarite amended the complaint to remove all shareholder derivative causes of action on behalf of MFS. Thus, the only defendants remaining were members of the Probst Faction (Probst, Justin Beck, I'm Rad, LLC, Robert Kamm, Robert Bernheimer, Irving Einhorn, and Miguel Motta). *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 3 (Cal. Ct. App. Jun. 28, 2021) [The derivative action filed by Catanzarite was compromised without court approval (See F.R.Civ.P.23.1(c) and Exhibit 1). After serving 5,000 discovery requests including 500 on MFS itself, Catanzarite simply took over its adversary, MFS, by allegedly extorting signatures and property from O'Connor, Cooper, Higgerson to avoid a motion for security.]

24. For the second case, rejected with "every fiber of [Court's] being" on May 1, 2019, in a trial:

(2) The MFS Action. *Mobile Farming Systems, Inc. v. Cultivation Technologies, Inc., et al.*, OCSC No. 30-2019-01046904. Catanzarite filed this lawsuit in January 28, 2019, for MFS and "derivatively on behalf of its wholly owned subsidiary [n]ominal [d]efendant [CTI]." MFS asserted it was entitled to file a derivative action because it organized CTI and acquired 28,000,000 shares of CTI common stock, and therefore, CTI was its wholly owned subsidiary. The complaint asserted MFS contributed assets to CTI (a seedling trailer and a shipping container) and paid start-up costs. MFS sought cancellation of CTI's shares as well as any "insider loans and transactions." It alleged CTI owed MFS "$75,007.24 plus accrued interest of $12,444.29" (MFS's start-up loan) and other damages to be proven at trial. (Underline omitted.) The complaint sought attorney fees, punitive damages, and interest. The lawsuit was based on the premise that no CTI shareholders, other than MFS shareholders, had any valid stock or voting rights. This complaint also asserted the Probst Faction violated Corporations Code section 1507 by "preparing, signing and circulating false minutes, issuing securities, transacting business with insiders, [and] borrowing money from insiders and records relating to CTI." MFS requested that the court enjoin the Probst Faction from operating CTI until the court held a section 709 hearing "to determine the rightful ownership of CTI, its appropriate [b]oard of [d]irectors, and executive structure. The court initially granted a temporary restraining order (TRO). According to Probst, the TRO was financially devastating for CTI because "CTI's operations ground to a halt" for several months. Probst declared, "CTI did not have access to its working capital and... key customers became aware of the TRO and refused to continue to place orders and the cash flow began to severely suffer." The court dissolved the TRO in May 2019, after holding a section 709 hearing. The court determined MFS was not a CTI shareholder and could not challenge the election of CTI's directors. In August 2019, the same day Catanzarite amended the Pinkerton Action to be a direct rather than derivative action, Catanzarite also transformed the MFS Action into a direct action. The first amended complaint (FAC) omitted CTI as a party and alleged only direct claims against members of the Probst Faction [including Plaintiff] for breach of fiduciary duty, conversion, misappropriation of trade secrets, and unfair competition. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 4-5 (Cal. Ct. App. Jun. 28, 2021) [Facing a trial of fact (709 trial) Mr. Catanzarite knew he would lose, he knew he had to place another chess piece on the board to further monopolize due process rights of everyone with impunity].

25. For the third case, directly conflicting with the first/second case as all three were operative:

(3) The Mesa Action. *Mesa, et al. v. Probst, et al.*, OCSC No. 30-2019-01064267. Catanzarite filed this shareholder derivative class action on April 16, 2019. The complaint asserted the "nature of [the] action" was on behalf of shareholders owning both MFS and CTI shares seeking to "join MFS in a consolidated action with [the MFS Action] and to among other relief, recognize the ownership and control of CTI as held by" four groups of shareholders. (Capitalization and bold omitted.) These shareholder groups included MFS (holding 28,000,000 CTI shares), as well as any MFS shareholders who purchased CTI shares in various offerings. The complaint expressly excluded shares held by Probst Faction members, their attorneys, agents, or affiliates. Richard Mesa initiated the lawsuit in three capacities: (1) individually as a "shareholder of both" MFS and CTI shares; (2) in a representative capacity on behalf of over 100 similarly situated shareholders; and (3) derivatively on behalf of CTI. The Mesa Action asserted nine causes of

action against the Probst Faction and CTI as a nominal defendant. Identical to allegations in the MFS Action, the Mesa Action sought to enjoin the Probst Faction from operating CTI until there could be an expedited section 709 hearing. In addition to damages, the class sought punitive damages and attorney fees. One month later, Catanzarite amended the complaint to add Cooper and Tom Mebane as plaintiffs and FinCanna as a defendant. More significantly, the complaint's "nature of the action" changed. The class members no longer sought to join the MFS Action or seek recognition of MFS's controlling shares over CTI. Instead, the Mesa Action plaintiffs sought to declare the current CTI directors' meetings and actions void. In particular, the class sought to unravel CTI's financial dealings with FinCanna, who had just foreclosed on CTI's properties. The FAC included two new causes of action, as well as allegations the Probst Faction wrongfully liquidated CTI's assets and that FinCanna should not have initiated foreclosure proceedings. The FAC asserted FinCanna "claims ownership of the extraction facility and CTI's employees have effectively become [FinCanna] employees." Furthermore, it maintained CTI shareholders "have suffered a total loss of their share value of not less than $5,000,000 and millions more in business opportunities...." CTI's attorney of record, Winget, filed an answer asserting the plaintiffs lacked standing or were not qualified to maintain a derivative lawsuit on CTI's behalf. In October 2019, the Mesa Action plaintiffs filed a motion requesting the court appoint a receiver for CTI. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 5-6 (Cal. Ct. App. Jun. 28, 2021)

26. Summarizing conflicts of interest on May 1, 2019, and implications on disabled Plaintiff:

"Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and some of its Founders (the Probst Faction) as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action [without court approval, which is necessary to prevent collusion under state and federal law, including F.R.Civ.P. 23.1(c)]; (3) it became MFS's counsel of record [after suing the company and taking it over]; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board of directors." *Beck v. Catanzarite Law Corp.*, No. G059766, 17 (Cal. Ct. App. Jul. 13, 2022)

27. For the fourth case, even though an auditor was already engaged as part of a public merger:

(4) The Cooper Action. *Cooper, et al., v. Cultivation Technologies, Inc.*, OCSC No. 30-2019-01072443. On May 23, 2019, Catanzarite filed an action directly against CTI on behalf of two CTI shareholders (Cooper and Mebane), who were members of the O'Connor Faction. The previous day, FinCanna had filed a breach of contract action against CTI and CTI Subsidiaries and requested a receivership. The Cooper Action requested the court direct CTI to (1) hold a shareholder's meeting to elect a board of directors; (2) deliver an annual report; (3) appoint an accountant to conduct an audit; and (4) order CTI to pay the costs for an investigation, audit, and costs of the suit. Winget, on behalf of CTI filed an opposition, asserting a shareholder meeting was scheduled for August 2019. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 6-7 (Cal. Ct. App. Jun. 28, 2021) [Catanzarite is also suing Ms. Cooper, and "tolling claims," now.]

28. For the fifth case, filed by Mr. Catanzarite corruptly, willfully, and without authority:

(5) The FinCanna Action Cross-complaint. *FinCanna v. Cultivation Technologies, Inc., et al.*, OCSC No. 30-2019-01072088. As mentioned, in May 2019, FinCanna filed a breach of contract action against CTI and CTI Subsidiaries. On July 2, 2019, Catanzarite filed a cross-complaint on behalf of CTI and CTI Subsidiaries against FinCanna and three of its directors. Large sections of the cross-complaint appear to have been cut and pasted from the Mesa Action complaint. Catanzarite purported to represent CTI and its subsidiaries. In Probst's declaration, prepared to oppose the section 709 request in the Mesa Action, he explained Catanzarite's actions in the FinCanna Action created confusion and harm. He noted Catanzarite filed a cross-complaint and propounded discovery against CTI's "primary secured lender" without telling CTI's board "and during a time when FinCanna has not yet served their complaint on CTI due to ongoing settlement negotiations." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7 (Cal. Ct. App. Jun. 28, 2021) [CTI is not, and has never been, a *bona fide* client of Catanzarite.]

29. For the sixth case, also filed by Mr. Catanzarite corruptly, willfully, and without authority:

(6) The Scottsdale Action. *Cultivation Technologies, Inc., v. Scottsdale Insurance Company*, OCSC No. 30-2019-01096233. On September 6, 2019, Catanzarite filed this declaratory relief action purporting to represent CTI. In this lawsuit, CTI demanded that its insurance company, Scottsdale, stop providing a defense or indemnity to the Probst Faction defendants in the Mesa Action. The complaint asserted Scottsdale "refused to communicate with the officers and directors elected by the common shareholders of CTI and who are of the position that only they and their elected officers and directors speak for CTI." In the complaint, CTI sought the court's declaration of its rights under the insurance policy and orders forbidding Scottsdale from providing a defense "unless and until the vote of the disinterested common shareholders of CTI [was] obtained." We note that immediately before filing the Scottsdale Action, Catanzarite amended the complaints in the first two derivative actions transforming them into direct actions against individuals who were part of the Probst Faction (the Pinkerton and MFS Actions). Additionally, after filing the Scottsdale Action, Catanzarite dismissed the Cooper Action on September 13, 2019. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7-8 (Cal. Ct. App. Jun. 28, 2021) [Catanzarite separately claims MFS is the sole shareholder of CTI].

30. For the seventh case, deliberately concealing 709 trial findings, known facts in violation of California Rules of Professional Conduct 3.3, with ongoing intent to defraud:

(7) The MFS Cross Action. *Justin S. Beck v. Kenneth Catanzarite, et al.*, OCSC No. 30-2020-01145998. On August 12, 2020, Catanzarite purporting to represent the company MFS it sued derivatively September 14, 2018, assumed control over in January 2019, essentially refiled the MFS Action against Plaintiff while concealing the material facts of the 709 Trial on May 1, 2019, in violation of California Rules of Professional Conduct 3.3. Catanzarite also assumed the role of counsel of all defendants, including those it was suing and tolling claims against to "bring later": Amy Cooper, Richard O'Connor, Cliff Higgerson, and the other CTI shareholders that it was expressly disqualified from representing: Mohammed Zakhireh, James Duffy, and others.

## DEFENDANT IS WILLFULLY VIOLATING PLAINTIFF'S CIVIL RIGHTS

31. On May 1, 2019, a 709 trial of fact rejected claims filed against Plaintiff with "every fiber of the [Court's] being" citing "overwhelming evidence." Despite this, the same fraudulent claims are redirected at plaintiff, and allowed by Defendant. Plaintiff incorporates **EXHIBIT 1** here.

32. Notably, the 709 trial concluded that O'Connor and Cooper were responsible for the conduct that Catanzarite is using the inanimate shell, MFS, to direct at Plaintiff using Defendant. It should come as no surprise that these individuals are cooperating with Catanzarite in furtherance of the scheme as the claims are tolled against them to "bring later."

33. On June 28, 2021, four disqualification orders against Catanzarite Law Corporation, Kenneth Catanzarite, Brandon Woodward, Tim James O'Keefe, and Nicole Marie Catanzarite Woodward (together "Catanzarite") were upheld by Court of Appeal. Despite this, Catanzarite is still representing CTI shareholders from which it was expressly disqualified from representing.

34. On July 13, 2022, four Anti-SLAPP orders were overturned by Court of Appeal in favor of Plaintiff, who showed a *prima facie* case for malicious prosecution of the Pinkerton Action, MFS Action, and Scottsdale Action as being filed by Catanzarite against Plaintiff in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, without objective probable cause, achieving favorable termination reflecting Plaintiff's innocence, with malice. Despite this, Catanzarite is still maliciously prosecuting Plaintiff, re-trying adjudicated matters filed on behalf of parties it is suing and tolling claims against, in each case to take advantage of Plaintiff's disability and indigent status aided by Defendant to cover up the fraudulent schemes.

35. In October 2022, Catanzarite propounded discovery against Plaintiff on behalf of Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC, and Mobile Farming Systems, Inc. and later moved to compel him to produce responses as it continued to represent adverse parties from which it was disqualified from representing in violation of California Rules of Professional Conduct 1.7(d)(3) and 1.9. Not only is Catanzarite adverse to them directly in the same case for malicious prosecution, but Catanzarite is tolling claims against most from a false derivative action against MFS.

11

36. On the evening of December 1, 2022, Plaintiff suffered a new onset seizure as a direct and proximate result of ongoing, illegal harassment by Catanzarite in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, contraindication of medication Plaintiff commenced directly caused by intentional infliction of emotional distress against him, and the ongoing fraudulent scheme and due process violations that caused, now exacerbates, his disability protected by Title II of the ADA.

37. Plaintiff has two other cases pending in U.S. Southern District of California, alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal antitrust laws, and Fourteenth Amendment violations: *Justin S. Beck v. Catanzarite Law Corporation, et al.* 3:22-CV-01616-AGS-DDL which names Orange County Superior Court and Judge John C. Gastelum as defendants, and *Justin S. Beck v. State of California*, 3:23-CV-0164-AGS-DDL.

38. Plaintiff has two pending cases before SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE: *Justin S. Beck v. Kenneth Catanzarite, Esq. et al.* (OCSC 30-2020-01145998) filed May 26, 2020, by counsel, where motions to compel were filed, lying in malicious prosecution and intentional infliction of emotional distress, and *Justin S. Beck v. The State Bar of California, et al.* (OCSC Case No. 30-2021-01237499) lying in negligence, corruption, and fraud.

39. After suing The State Bar of California (which has allegedly coerced various acts of Defendant with malice to conceal public corruption, and whose staff is allegedly bribed by Catanzarite) and State of California (which *refuses* to appear in Superior Court despite service), government employees have engaged in a relentless campaign to oppress Plaintiff and retaliate against him for seeking redress of genuine grievances under Government Claims Act.

40. Plaintiff's genuine claims are supported by overwhelming evidence consisting of court orders related and unrelated to Plaintiff showing Catanzarite's pattern of serial fraud and vexatious litigation inside and outside Defendant walls. Defendant is carrying this on with malice.

41. It strains credulity that judicial officers and staff for Defendant, despite notice, and even after Courts of Appeal have disqualified Catanzarite Law Corporation, Kenneth Catanzarite, Brandon Woodward, Tim James O'Keefe, and Nicole Marie Catanzarite Woodward (together "Catanzarite") for violations of mandatory law – are still enabling Catanzarite to target Plaintiff.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE CONDUCT

42. Plaintiff is unable to cognitively function sufficiently to access government services of Defendant, or protect himself from serial violations of law, without accommodations and relief.

43. Defendant allows Catanzarite to break mandatory law and virtually every rule in the proverbial book, yet Plaintiff is somehow required to conform to minutiae despite Court of Appeal findings.

44. Defendant allows Catanzarite to violate California Rules of Professional Conduct every day but requires the disabled Plaintiff to conform to the most rigorous standards of California Code of Civil Procedure while disregarding Catanzarite's *adjudicated* fraud and disregard of the rules.

45. Facing unlawfully filed motions to compel discovery (Rule 1.7(d)(3) and Rule 1.9) amidst un-waivable conflicts of interest set for May 5, 2023, hearing – the disabled Plaintiff found an ADA advocate to alert Defendant of his needs, acute harm, and federally protected rights.

46. Showing Defendant's malice for Plaintiff separately, Orange County Superior Court Case No. 30-2021-01237499 was remanded to Defendant on January 12, 2023, for lack of removal jurisdiction. Defendant would later comment on March 29, 2023, that Defendant lacked jurisdiction, which was materially false. Plaintiff alleges Defendant is retaliating against Plaintiff for naming Defendant in 3:22-CV-01616-AGS-DDL as an alleged RICO enterprise defendant, and for naming John C. Gastelum, the judicial officer in C11, for allegedly agreeing to violate substantive provisions of RICO with State Bar's Suzanne Grandt. (See Docket #50 in that case).

47. On February 15, 2023, after Orange County Superior Court Case No. 30-2021-01237499 was remanded to Defendant January 12, 2023, Defendant surreptitiously *removed* ROA #101, #103, #107, and #111 from Plaintiff's record (summary judgment papers accepted in July 2022).

48. Facing malicious motions to compel filed amidst directly adverse parties which completely inhibit Plaintiff from achieving fair or neutral hearings, on March 28, 2023, at 9:26 AM, Plaintiff made his first request to ADAinformation@occourts.org : "Please see the attached ADA accommodation requests for: Dept. CX105 – Case No. 30-2020-01145998 (+ Related Cases in CX105)[, and] Dept. C11 – Case No. 30-2021-01237499. I've included evidentiary support of a new onset seizure resulting from my disability. If you require anything else, please let me know. Thank you for your assistance." (Hereinafter, ADA Request #1)

13

49. Plaintiff identified for the ADA coordinator and court the procedural harassment to which he was subject, the threat to his health, un-waivable conflicts, and the mandatory law violations under which motions to compel were pending and still allowed by Defendant, unequally.

50. On March 28, 2023, at 2:39 PM, Plaintiff received a reply from "Becky Torres, ADA Coordinator" that his "ADA accommodation requests have been received and will be forwarded for judicial review."

51. On March 29, 2023, at 9:02 AM, Plaintiff received a reply from "Becky Torres, ADA Coordinator" that she had "been informed that case 30-2021-01237499 has been removed to Federal Court" and that they "no longer have any jurisdiction over [that] case" which was false.

52. Plaintiff informed Ms. Torres on April 4, 2023, he would be filing expanded accommodation requests under ADA after reviewing Defendant's Title II obligations and his due process rights.

53. For ADA Request #1, Plaintiff was granted nominal accommodation of a court watcher after informing the court he was filing expanded needs. Plaintiff was also directed to file for protective order to restrain the procedural harassment by Catanzarite and discrimination of Defendant.

54. After conferring with his advocate, Plaintiff filed expanded accommodation requests ("ADA Request #2"). He did not know that his protective order would be disregarded maliciously.

55. On April 17, 2023, Plaintiff filed a cross-motion for a protective order and opposition to motions to compel as directed by the court to prevent the procedural harassment, discrimination, and violations of mandatory law to which he is subject by Catanzarite and Defendant.

56. On April 17, 2023, Plaintiff filed an ex parte application for entry of protective order to prevent the procedural harassment, discrimination, and violations of mandatory law to which he is subject by Catanzarite and Defendant.

57. On April 18, 2023, Plaintiff received a discriminatory complete denial of ADA Request #2 on the basis that Plaintiff's "requested accommodations are not reasonable" which Plaintiff alleges to be triable. Plaintiff had a clearly established right to equal access to Defendant services.

58. Also, on April 18, 2023, Plaintiff received a discriminatory order that his "ex parte application [was] denied without a hearing. No good cause to have this matter heard on shortened notice by an Ex Parte Application" which Plaintiff alleges to be triable, malicious, and willful.

14

59. After April 18, 2023, Plaintiff's advocate repeatedly contacted Ms. Torres of the emergency circumstances, seeking to speak with a supervisor to understand Defendant's conduct toward Plaintiff, and to alert Defendant of the further, irreparable harm that Defendant's refusal to accommodate, discrimination, and retaliation, was causing and would cause Plaintiff.

60. Despite Plaintiff filing for protective order to receive accommodation needed to prevent his harm and due process violations, where Defendant knew of the irreparable harm to which he was subject, Defendant acted with actual malice to Plaintiff, or at least indifference by denying it without a hearing. Defendant repeatedly grants Catanzarite the opportunity to move ex parte, no matter how frivolous. Defendant repeatedly discriminates against Plaintiff due to his disability.

61. On April 21, 2023, Plaintiff filed opposition to motions to compel discovery filed by Catanzarite amidst un-waivable conflicts, after 5-years of fraudulent, vexatious litigation in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE prefaced by similar patterns since 2005.

62. On May 5, 2023, Plaintiff's advocate once more contacted Ms. Torres, who refused to answer.

63. Ms. Torres and Defendant further refuse to address the manipulation of records in Orange County Superior Court Case No. 30-2021-01237499, or the fact that Defendant refuses to enter defaults against State of California despite the case being remanded on January 12, 2023. State of California was served, will not answer, will not appear, and Defendant will not enter default.

64. On May 5, 2023, without regard of Plaintiff's due process rights, serious disability, ADA needs, known harm, or Catanzarite's fraud, prior vexatious litigation and mandatory disqualification under Rule 1.7(d)(3) and Rule 1.9, Defendant entered four orders compelling Plaintiff to produce: Form Interrogatories, Set One from Kenneth Catanzarite, Esq.; 102 separate Special Interrogatories from "Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC, and Mobile Farming Systems, Inc." (all of whom 1) Catanzarite is either suing and tolling claims against from a fraudulent derivative action filed without standing on September 14, 2018 that was compromised without Defendant approval, which is required to prevent collusion, 2) Catanzarite was disqualified from representing by Court of Appeal, and/or 3) Catanzarite is barred by mandatory

law from representing); Request for Production of Documents, Set One from Kenneth Catanzarite; and 94 Requests for Production of Documents from "Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC, and Mobile Farming Systems, Inc." (all of whom 1) Catanzarite is either suing and tolling claims against from a fraudulent derivative action filed without standing on September 14, 2018 that was compromised without Defendant approval, which is required to prevent collusion, 2) Catanzarite was disqualified from representing by Court of Appeal, and/or 3) Catanzarite is barred by mandatory law from representing).

65. On May 5, 2023, in addition to compelling the disabled Plaintiff to produce thousands of documents to his abusers with a well-documented history of fraud, the Court also ordered Plaintiff, who is now indigent as a direct result of Catanzarite's fraudulent scheme with Defendant, *to pay his abusers sanctions* of $310, $1,435, $1,185, and $60 ($2,990 total).

66. On May 9, 2023, more than ten-days after requesting the information, Defendant delivered Plaintiff's advocate (but not Plaintiff) "Confidential Re: ADA Request in Beck v. Catanzarite 30-202[0]-01145998." ("May 9 Letter")

67. The May 9 Letter claimed that Plaintiff's ADA needs were somehow estopped under color of state law or local procedure, and that Plaintiff's ability to challenge Defendant's refusal to accommodate would require "[a] petition for writ review [which] must be filed within 10 days (plus 5 days for mail) of the Court's order on the accommodation request" dated April 18, 2023.

68. Writ relief is extraordinary, and the disabled Plaintiff's ability to petition is purportedly past. Further, Plaintiff is unduly prejudiced in that he was concurrently being compelled to produce information illegally to his abusers as he was concurrently purportedly required to file a writ petition within 10-days that had past, with a debilitating disability.

69. But for Defendant's aiding of Catanzarite and mutual exploitation of Plaintiff's disability, Plaintiff would not lack legal counsel for these matters but for the fraudulent scheme and his indigent status caused thereby.

70. Plaintiff has been denied federally mandated disability accommodations by Defendant under color of law, retaliated against for naming Defendant and one of its judicial officers in 3:22-CV-01616-AGS-DDL, discriminated against due to his disability, discriminated against due to his requests for disability accommodations, and discriminated against for "calling out" the 5-year fraudulent scheme involving Defendant to which he and other innocent people are subject.

71. Plaintiff exhausted all purported procedural remedies in state courts as set forth in the May 9 Letter. Plaintiff brings this action as a last resort where Defendant refuses to protect Plaintiff in overt discrimination with malice. Defendant seeks to oppress and overwhelm Plaintiff by compelling him to produce information to which his abusers are not lawfully entitled, at least not within any neutral forum acting reasonably under the circumstances under ADA, Title II.

72. As direct and proximate cause of Defendant, Catanzarite, and those acting in concert with each, Plaintiff has suffered irreparable harm and now faces further threats to take advantage of his disability. At this point, Defendant is acting in active concert with Catanzarite to exploit Plaintiff.

73. Under the circumstances, in light of the factual record regarding Plaintiff spanning five years with related Court of Appeal rulings, and the cumulative record of Catanzarite's patterns of willful abuse and serial fraud dating back to 2005 by court orders and public records produced to Plaintiff by The State Bar of California, Defendant's conduct against Plaintiff is despicable, outrageous, willful, and no person should reasonably be required to bear it. Defendant's conduct against Plaintiff falls outside what any reasonable person would deem acceptable in a normal, civilized society. Plaintiff demands neutral forum to try Defendant's abuse before a jury of peers.

74. The ADA violations to which Plaintiff was subject and is being subject are reckless, wanton, and clear violations of Plaintiff's due process rights as well as his right to equal protection under the law, each protected by the Fourteenth Amendment.

75. United States Congress explicitly provides the United States and U.S. District Court authority to enforce the Fourteenth Amendment against Defendant to protect and compensate Plaintiff.

76. *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) "Held: Insofar as Title II creates a private cause of action for damages against State for conduct that actually violates the Fourteenth Amendment, **Title II validly abrogates state sovereign immunity**" at Pp. 157-160.

17

## FIRST CAUSE OF ACTION

## DENIAL OF ACCESS UNDER ADA, TITLE II

77. Plaintiff incorporates paragraphs 1 through 76 by reference as if set forth fully here.

78. Plaintiff brings this first cause of action against Defendant for denial of access under the ADA.

79. Under 42 U.S.C. § 12101(a), "[t]he Congress finds that—(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination," and that "(3) discrimination against individuals with disabilities persists in such critical areas as....access to public services," and that "(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination," and that "(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion...and communication barriers, overprotective rules and policies, failure to make modifications to existing...practices, exclusionary qualification standards and criteria...and relegation to lesser services, programs, activities, benefits...or other opportunities."

80. Under 42 U.S.C. § 12101(b), "[i]t is the purpose of this chapter—(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

81. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

82. Under federally mandated regulations codified by Title II, § 35.150(a), Defendant "shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

83. For all times relevant, Defendant had a duty to the qualified, disabled Plaintiff to provide ready access to Defendant services under ADA, Title II, § 35.150(a).

84. From September 14, 2018, through present, Defendant has knowingly engaged or ratified in a scheme wherein Plaintiff was denied equal access to Defendant services on the basis of Plaintiff's disability. Defendant repeatedly violated Plaintiff's clearly established due process rights and engaged in willful or indifferent abuse of those rights knowing Plaintiff's harm.

85. When viewed in the entirety, Defendant services are virtually unusable and inaccessible by the disabled Plaintiff under the circumstances. Defendant unreasonably denies Plaintiff ready access to Defendant services with knowledge of Plaintiff's disability, actual harm and the malicious scheme to which he has been, and is being, subject, through Defendant's unequal providing of government services to others.

86. ADA, Title II is a mandate of United States Congress for Defendant where ADA, Title II provides implementation instructions for Defendant and mandatory duties to Plaintiff.

87. Under Cal. Gov. Cod. § 815.6, where Defendant "is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

88. As direct and proximate cause of Defendant's violations of 42 U.S.C. § 12132 and ADA, Title II, § 35.150(a), Plaintiff has suffered severe emotional distress consisting of daily suffering, anxiety, humiliation, and a seizure which now precludes him from taking contraindicating medication to treat his symptoms. Plaintiff is willfully being denied equal access to a neutral court by Defendant to harass and vex him, which is his right as a citizen, free of due process violations. Plaintiff is willfully being denied equal protection under the law, where Defendant nefariously favors the rights of Catanzarite and those working in concert with them, unequally applying the laws of California and the United States, with malice.

89. WHEREFORE, Plaintiff seeks the Court enter judgment in his favor against Defendant for denial of access under 42 U.S.C. § 12132, ADA, Title II, § 35.150(a) with liability for damages arising from ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

90. WHEREFORE, Plaintiff seeks the Court enter order enjoining Defendant from further restricting Plaintiff's equal access to government services in accordance with his needs; enjoining due process violations by Defendant unlawfully requiring him to produce information to serial abusers associated with Catanzarite while it engages in un-waivable conflicts of interest; enjoining due process violations by Defendant unlawfully enabling un-waivable conflicts of interest to harass and vex the disabled Plaintiff; enjoining equal protection clause violations by Defendant which unreasonably caters to and advances the interests of attorneys engaged in actual fraud on the Court and un-waivable conflicts of interest to the detriment of the disabled Plaintiff, unequally; and awarding Plaintiff economic and non-economic compensatory damages according to proof in trial under ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

1     <u>SECOND CAUSE OF ACTION</u>

2     <u>FAILURE TO ACCOMMODATE UNDER ADA, TITLE II</u>

3     91. Plaintiff incorporates paragraphs 1 through 90 by reference as if set forth fully here.

4     92. Plaintiff brings this second cause of action against Defendant for failure to accommodate under

5         the ADA.

6     93. Under federally mandated regulations codified by Title II, § 35.150(b)(1)(i), Defendant "in

7         providing...service, may not, directly or through contractual, licensing, or other arrangements,

8         on the basis of disability—deny a qualified individual with a disability an opportunity to

9         participate in or benefit from the...services that is not equal to that afforded others."

10    94. Under federally mandated regulations codified by Title II, § 35.150(b)(3), Defendant "may not,

11        directly or through contractual or other arrangements, utilize criteria or methods of

12        administration—(i) That have the effect of subjecting qualified individuals with disabilities to

13        discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or

14        substantially impairing accomplishment of the public entity's program with respect to

15        individuals with disabilities."

16    95. From March 28, 2023, when noticed of Plaintiff's disability, irreparable harm, special needs, and

17        the extraordinary violations of due process and mandatory law to which he is subject by

18        Defendant, Defendant unreasonably denied Plaintiff an opportunity to participate in Defendant

19        services in a manner unequal to others. Indeed, Catanzarite's due process rights are treated by

20        Defendant as being superior to Plaintiff's even after Defendant was made factually aware of

21        Plaintiff's disability and the serial fraud to which Plaintiff is subject reflected by Court of Appeal,

22        U.S. District Court, and 11th Circuit Court of Appeal rulings among at least five separate

23        fraudulent schemes by Catanzarite.

24    96. From March 28, 2023, when noticed of Plaintiff's disability, irreparable harm, special needs, and

25        the extraordinary violations of due process and mandatory law to which he is subject by

26        Defendant, Defendant used methods of administration having the effect of subjecting Plaintiff

27        to discrimination based on his disability, or in the alternative, that had the purpose or effect of

28

                                        21

1     defeating or substantially impairing accomplishment of Defendant's program of operating a

2     neutral court with respect to Plaintiff.

3   97. The foregoing code sections are also mandatory duties imposed on Defendant by United States

4     Congress under Title II of the ADA, and Defendant failed to exercise reasonable diligence to

5     discharge the duty to Plaintiff under Cal. Gov. Cod. § 815.6.

6   98. As direct and proximate cause of Defendant's violations of 42 U.S.C. § 12132, ADA, Title II, §

7     35.150(b), Plaintiff has suffered severe emotional distress, anxiety, humiliation, and shame from

8     Defendant's treatment of and discrimination against Plaintiff. Defendant is compelling the

9     disabled Plaintiff to produce yet more information to serial abusers without regard for mandatory

10     law after 5-years of due process violations and equal protection clause violations involving

11     Defendant, even after the Court of Appeal has concluded serial violations of mandatory law

12     against Plaintiff within Defendant's public facilities. Plaintiff experiences horror and anguish at

13     the implications of producing more information that no reasonable Court would order against a

14     disabled person, under the circumstances, in light of the facts and Court of Appeal rulings known

15     to Defendant and un-waivable conflicts of interest that are no fault of Plaintiff. Plaintiff has

16     suffered and will continue to suffer worry and shock after detailing his needs, and those needs

17     being disregarded under color of state law and local procedures by Defendant, with malice.

18   99. WHEREFORE, Plaintiff seeks the Court enter judgment in his favor against Defendant for

19     failure to accommodate under 42 U.S.C. § 12132, ADA, Title II, § 35.150(b) with liability for

20     damages arising from ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877

21     (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal.

22     Gov. Cod. § 815.2 for the conduct of Defendant's staff.

23   100.     WHEREFORE, Plaintiff seeks the Court enter order enjoining Defendant from restricting

24     Plaintiff's equal access to Defendant's government services in accordance with his ADA

25     accommodation needs; enjoining due process violations by Defendant mandated under the

26     Fourteenth Amendment; enjoining Defendant from unlawfully compelling the disabled Plaintiff

27     to produce discovery to serial abusers associated with Catanzarite until such time that there exist

28     no un-waivable conflicts of interest and the law is applied equally under California Rules of

Professional Conduct 1.7(d)(3) and 1.9; and awarding Plaintiff economic and non-economic compensatory damages according to proof in trial under ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

23

<u>THIRD CAUSE OF ACTION</u>

<u>UNRUH CIVIL RIGHTS ACT</u>

101.    Plaintiff incorporates paragraphs 1 through 100 by reference as if set forth fully here.

102.    Plaintiff brings this third cause of action against Defendant for violation of Unruh Civil Rights Act under Cal. Cod. Civ. Proc. §§ 51, 52 (incorporating Title II of the ADA) and Cal. Gov. Cod. § 815.6.

103.    Where this Court may abstain generally from supplemental jurisdiction, extraordinary circumstances of this case require invocation of supplemental jurisdiction as Plaintiff's harm is caused by a court Defendant which is maliciously violating ADA after Plaintiff's clearly established rights to protection. Plaintiff will not achieve fair adjudication of Unruh Civil Rights Act within Defendant's walls or any other branch of Superior Court.

104.    Plaintiff claims that Defendant denied him full and equal advantages, facilities, privileges, or services because of his disability or medical condition.

105.    Defendant denied, aided, or incited a denial of, discriminated, or made a distinction that denied full and equal advantages, facilities, privileges, or services to Plaintiff.

106.    A substantial or motivating reason for Defendant's conduct was its perception of Plaintiff's disability or medical condition.

107.    Plaintiff was harmed.

108.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

109.    WHEREFORE, Plaintiff seeks the Court enter judgment in his favor against Defendant for violation of Unruh Civil Rights Act, Cal. Cod. Civ. Proc. §§ 51, 52 with liability for damages arising from Cal. Gov. Cod. § 815.6.

110.    WHEREFORE, Plaintiff seeks the Court enter order awarding Plaintiff economic and non-economic compensatory damages against Defendant according to proof in trial under Cal. Gov. Cod. § 815.6, and up to three times the amount of Plaintiff's actual damages according to proof in trial under Cal. Gov. Cod. § 815.6 as a penalty against Defendant (as under CACI 3067). As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

## FOURTH CAUSE OF ACTION

## EQUITABLE INDEMNIFICATION

111.    Plaintiff incorporates paragraphs 1 through 110 by reference as if set forth fully here.

112.    Plaintiff brings this fourth cause of action against Defendant for indemnification under Cal. Gov. Cod. § 815.6 and Title II, ADA regulations set forth above which are mandatory duty.

113.    Where Plaintiff has failed any procedural requirements set forth by Defendant or California Code of Civil Procedure resulting in compulsion of discovery from the disabled Plaintiff, Defendant is at fault for violating Title II, ADA, with knowledge and privity of illegal conduct by and with Catanzarite, and Plaintiff's federally protected rights under Title II, ADA.

114.    Defendant knows Plaintiff is suffering, and that Catanzarite is engaged in serial schemes to defraud using or with Defendant, but Defendant compelled the knowingly disabled Plaintiff to succumb to the fraudulent scheme with malice or at least indifference of the consequences.

115.    As direct and proximate cause of Defendant's actions, Defendant has knowingly compelled the disabled Plaintiff as of May 5, 2023 to produce discovery responses to Catanzarite which were unlawfully filed in the first instance with malice through Defendant, which compelled discovery responses were and are unreasonably burdensome and oppressive, and which answers should be private or confidential under the circumstances due to ongoing violations of Plaintiff's due process rights protected by the Fourteenth Amendment, California Rules of Professional Conduct 1.7(d)(3), and California Rules of Professional Conduct 1.9 which are binding under Cal. Bus. & Prof. Cod. § 6077 but disregarded by Defendant unequally and nefariously in favor of Catanzarite's fraudulent schemes shown by court orders.

116.    WHEREFORE, Plaintiff seeks the Court enter order awarding Plaintiff indemnification against Defendant for all economic damages and non-economic damages caused to or purportedly by Plaintiff after April 18, 2023, according to proof in trial under ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6, including but not limited to $2,990 in sanctions issued against Plaintiff on May 5, 2023, by Defendant. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

<u>PLAINTIFF DEMANDS TRIAL BY JURY.</u>

117.   For the foregoing reasons, Plaintiff requests the Court order judgment in his favor.

118.   Plaintiff seeks compensatory damages according to proof in trial under ADA, Title II, or in accordance with Government Claims Act, Cal. Gov. Cod. § 815.6, declaratory relief that he is entitled ADA accommodations by Defendant irrespective of Defendant's local customs or administrative nuances, injunctive relief to restrain future violations of ADA and indigent Plaintiff's federally protected rights to due process of law and equal protection under the Fourteenth Amendment to the U.S. Constitution, actual damages within the meaning of Unruh Civil Rights Act, treble damages within the meaning of Unruh Civil Rights Act, and any other such relief as may be deemed just by the Court or available to Plaintiff under the law.

119.   Plaintiff seeks immediate stay of State court proceedings by temporary restraining order under 28 U.S.C. § 2283 not later than May 24, 2023, in Orange County Superior Court Case No. 30-2020-01145998 as being necessary to aid in this court's jurisdiction under Title II of the ADA as being expressly authorized by Congress. If this Court does not hear or grant such temporary restraining order by May 24, 2023, Plaintiff seeks alternative injunctive relief permanently restraining and enjoining Defendant from permitting or engaging in due process violations under the Fourteenth Amendment against the disabled, indigent Plaintiff under F.R.Civ.P. 65.

120.   CERTIFICATION AND CLOSING. Under F.R.Civ.P. 11, by signing below, I certify to the best of my knowledge, information, and belief, that this complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support[]; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

May 15, 2023,

Justin S. Beck, Plaintiff

In Pro Per

Qualified Individual Under ADA, Title II

**Compendium of Exhibits in Subsequent Document to Show Due Process Violations against Disabled Plaintiff Occurring on Defendant's Premises with Malice**

| Description of Evidence Supporting Plaintiff Complaint | Pages | Pages |
|---|---|---|
| Omnibus Opposition to Motions to Compel; Assertion of Clearly Established ADA Rights and Due Process Violations | 2 | 13 |
| Factual Summary with Citations to Sub-Exhibits; Disabled Plaintiff Cannot Obtain Fair Hearings or Due Process | 8 | 13 |
| Catanzarite Tells Superior Court, Count of Orange that its Own Conflicts of Interest Harm its Attorneys Due Process Rights | 18 | 18 |
| Showing Catanzarite is Materially Adverse to MFS Before Taking it Over to Harass, Vex, and Defraud Disabled Plaintiff | 75 | 85 |
| Showing Catanzarite is Materially Adverse to Cooper, Made Contact with Her While She Was Represented by Counsel | 90 | 90 |
| Deliberate Acts of Fraud Induced By Catanzarite to Unwind Millions of Dollars in Securities Transactions | 92 | 93 |
| Catanzarite Threatens Plaintiff He is "Working with Law Enforcement" to Extort Him After Taking Over MFS Illegally | 95 | 96 |
| Showing Catanzarite is Materially Adverse to Higgerson, Too – and Roger Root Was Not a Shareholder of MFS | 98 | 101 |
| Catanzarite is Warned of the Implications of its Scheme and the Absurdity of False Claims Propounded v. Disabled Plaintiff | 103 | 106 |
| Catanzarite is "Tolling Claims" Against Parties it is Propounding Discovery From v. Disabled Plaintiff | 123 | 124 |
| 709 Trial Rejects Fraudulent Claims v. Plaintiff; Catanzarite Just Refiles Them and Conceals Findings v. Disabled Plaintiff | 126 | 182 |
| CTI Shareholder Carlos Calixto Declares Catanzarite Tried to Bribe Him – He Declined; So Calixto's Signature was Forged | 184 | 186 |
| Caption/Sig. for 30-2018-01018922: Catanzarite Adverse to MFS, Cooper, Higgerson, O'Connor in False Derivative Action | 196 | 198 |
| Caption/Sig. Catanzarite Takes Over MFS to Avoid Motion for Security, Assumes "Counsel" for MFS itself | 200 | 201 |
| Caption/Sig. for 30-2019-01064267 Catanzarite Sues on Behalf of CTI Shareholders it Separately Claims Doesn't Exist | 203 | 204 |
| Catanzarite Amends using Forged Signature of Calixto After Failing 709 Trial Adding Adverse Party Cooper as "Client" | 206 | 208 |
| Catanzarite Assumes "Counsel" Role for CTI itself without Authority as it Sues CTI itself using MFS | 210 | 211 |
| Catanzarite Amends MFS Action 30-2019-01046904 Omitting All Factual Conclusions of 709 Trial and Evidence | 213 | 214 |
| Catanzarite Amends Derivative Claims v. MFS in Pinkerton Action 30-2018-0108922 without Court Approval | 216 | 217 |

| | | |
|---|---|---|
| Caption/Sig. for 30-2019-01096233 Catanzarite Sues on Behalf of CTI itself as it Sues CTI, Remove Plaintiff Defense | 220 | 226 |
| Catanzarite Sues Plaintiff Using MFS After Suing MFS, Taking it Over, and ignoring 709 Trial Conclusions and Evidence | 227 | 229 |
| Showing Catanzarite Law Corporation is MFS – and O'Connor, Cooper, Duffy are Pawns to Malign Disabled Plaintiff (2022) | 231 | 232 |
| Showing Catanzarite Law Corporation is MFS – and O'Connor, Cooper, Duffy are Pawns to Malign Disabled Plaintiff (2020) | 234 | 236 |
| May 8, 2020 U.S. Bankruptcy Court Order v. Catanzarite: Order Liquidating and Awarding Compensatory Sanctions | 241 | 247 |
| July 7, 2021 U.S. Southern District of Florida, Order Affirming Order of Bankruptcy Court (Violation of Injunction, Etc.) | 249 | 260 |
| May 8, 2020 U.S. Bankruptcy Court Order v. Catanzarite: $49,020.50 in Sanctions + $11,639.25 in Sanctions | 262 | 267 |
| January 15, 2020 U.S. Bankruptcy Court Order v. Catanzarite: Granting Motion to Sanction and Enforce Prelim. Injunction | 269 | 283 |
| May 8, 2020 Order to Show Cause why K. Catanzarite's Pro Hac Vice Status Should Not Be Revoked | 285 | 302 |
| March 9, 2022 U.S. Court of Appeals, Eleventh Circuit Order Upholding All Sanctions v. Catanzarite | 304 | 308 |
| State Bar Summary to Plaintiff via PRA: "The court stated Catanzarite's case was a "sham." | 312 | 312 |
| State Bar Summary to Plaintiff via PRA: "Catanzarite does not care about the truth making statements to the Court." | 312 | 312 |
| State Bar Summary to Plaintiff via PRA: "Catanzarite took the property to pay for his fees, but did not tell the [BK] Court." | 312 | 312 |
| Court Orders (Catanzarite's case was a sham; does not care about the truth; took the property in alleged BK fraud.) | 313 | 338 |
| FTC Guidance Under Federal Antitrust Laws; The State Bar of California is Unlawfully Protecting Catanzarite (15 U.S.C. § 1) | 340 | 352 |
| Plaintiff Exhausted State Remedies: State Bar Protects Catanzarite Despite Serial Fraud Known to Board of Trustees | 354 | 356 |
| State Bar's Davtyan Threatens Disabled Plaintiff After Grandt Inadvertently Reveals Internal Collusion to Aid Catanzarite | 358 | 358 |
| Plaintiff Exhausted State Remedies: State Won't Appear, and Still Refuses to Produce PRAs Showing Collusion | 360 | 362 |
| Plaintiff's Former Counsel Hears from Matthew Kinley About a Parallel Scheme of Catanzarite Similarly Patterned | 364 | 364 |
| State Bar Files Anti-SLAPP 5-Months Late to Avoid Plaintiff Deposition; Threatens Disabled Plaintiff w/Pro Se Legal Fees | 366 | 366 |
| Plaintiff Exhausted State Remedies: State Bar Lacks Active State Supervision per FTC Guidance, Antitrust Laws | 368 | 368 |

| | | |
|---|---|---|
| Plaintiff Exhausted State Remedies: State Bar is Responsible for Catanzarite, Refuses to Protect Disabled Plaintiff | 370 | 377 |
| Plaintiff Shows Prima Facie Case for 3X Counts Malicious Prosecution – Defendant Continues to Enable the Scheme | 381 | 422 |
| Catanzarite Is Disqualified 4 Times, Including from Rep. of CTI Shareholders, Defendant Still Allows v. Disabled Plaintiff | 424 | 454 |

Exhibit 5

FILED

MAY 1 6 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

1   Justin S. Beck
    3501 Roselle St.,
2   Oceanside, CA 92056
    760-449-2509
3   justintimesd@gmail.com
4   *In Propria Persona*

5                **IN THE UNITED STATES DISTRICT COURT**
6                              **FOR THE**
7                **SOUTHERN DISTRICT OF CALIFORNIA**

8   ─────────────────────────────
9   JUSTIN S. BECK,                    )   Case No.: 3:23-CV-0882-JES-NLS
                                       )
10          Plaintiff,                 )   Judge:    Hon. James E. Simmons, Jr.
                                       )
11      vs.                            )   ***EX PARTE* APPLICATION FOR**
                                       )   **TEMPORARY RESTRAINING ORDER;**
12                                     )   **DECLARATION OF JUSTIN S. BECK IN**
    SUPERIOR COURT OF CALIFORNIA,      )   **SUPPORT**
13  COUNTY OF ORANGE                   )
                                       )
14          Defendant,                 )
                                       )
15                                     )
                                       )
16  ─────────────────────────────

17

18

19

20

21

22

23

24

25

26

27

28

    3:23-CV-0882-JES-NLS                    1              Application for TRO

## I.   INTRODUCTION

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

Under 42 U.S.C. § 12101(b), "[i]t is the purpose of this chapter—(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." Plaintiff is disabled, prejudiced, and currently being exploited.

Plaintiff hereby applies for a temporary restraining order to stay proceedings in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE Case No. 30-2020-01145998. Such stay is required as being expressly authorized by Congress in enacting Americans with Disabilities Act, Title II because court proceedings are the primary function of SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE. Plaintiff is being excluded from participation in or being denied the benefits of the services, programs, or activities of SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE. Further, Plaintiff is subject to discrimination by SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE on the basis of Plaintiff's disability. Finally, a stay of proceedings is necessary in aid of this Court's jurisdiction under Title II of the Americans with Disabilities Act.

The Court must exercise jurisdiction in order to enforce the fourteenth amendment because SUPERIOR COURT, COUNTY OF ORANGE, The State Bar of California, State of California, and Orange County District Attorney's Office are each depriving Plaintiff the most basic inalienable right to life, liberty, and property without due process of law, with malice.

Plaintiff is likely to succeed on the merits, he is likely to suffer irreparable harm if the Court does not grant preliminary relief, SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE will not be prejudiced whatsoever if relief is granted, and an injunction is in the best interest of the public.

## II.   LEGAL STANDARD

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995). The Court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra OnLine, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). *D.M. v. Or. Scholastic Activities Ass'n*, Civ. 6:22-cv-01228-MC, 4-5 (D. Or. Sep. 9, 2022)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To succeed on his Title II claim, Plaintiff must show (1) he is a qualified individual with a disability, (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Public entities include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(b).

"[F]ailure to provide [a] reasonable accommodation can constitute discrimination." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). Plaintiff must demonstrate "the existence of a reasonable accommodation" that would enable him to participate in the activity at issue. *Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008) (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999)). The burden then shifts to Defendant to show that the modification would require a fundamental alteration or pose an undue hardship on the entity. *Id.* (citing 28 C.F.R. § 35.150(a)(3)). The reasonableness

1    determination is a fact-specific, case-by-case inquiry based on the disabled individual's circumstances

2    and the accommodations sought. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999).

3    *D.M. v. Or. Scholastic Activities Ass'n*, Civ. 6:22-cv-01228-MC, 5-6 (D. Or. Sep. 9, 2022)

4    **III.    ARGUMENT**

5           1. *Plaintiff is Likely to Succeed on the Merits*

6                  A. Plaintiff is a Qualified Individual with a Disability

7           Plaintiff suffers from post-traumatic stress disorder and Legal Abuse Syndrome (LAS) which is

8    a separate diagnosis in DSM-5 (Diagnostic and Statistical Manual of Mental Disorders version 5) caused

9    when a person is repeatedly dragged back into court on false allegations or other misinformation. He

10   suffers from severe emotional distress that is often debilitating, and which contributed to a seizure on

11   December 1, 2022, from contraindication of medication, due to the abuse he has suffered in SUPERIOR

12   COURT OF CALIFORNIA, COUNTY OF ORANGE. Declaration of Beck ("Decl.") ¶ 1. Ex. 1.

13          Importantly, as set forth in Plaintiff's compendium of exhibits (G059766), the Court of Appeal

14   has already concluded a series of cases were filed against Plaintiff without objective probable cause (as

15   in, it is incurable).   Despite this, SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

16   purports that it is his abusers' right to file meritless and frivolous litigation without restraint, without

17   regard for the Fourteenth Amendment to the United States Constitution. Decl. ¶ 2.

18                  B. Plaintiff was Excluded from Participation or Denied Benefit of Defendant Services

19          Plaintiff verifies the operative complaint as being true and correct. Decl. ¶ 3. On notice of his

20   harm, SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE refuses to accommodate his

21   needs which require nothing but adherence to mandatory law and some nominal adjustments to protect

22   him. Decl. ¶ 4. Worse, SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE is

23   exacerbating Plaintiff's harm in active concert with his abusers. Decl. ¶ 5. SUPERIOR COURT OF

24   CALIFORNIA, COUNTY OF ORANGE is retaliating against Plaintiff by refusing to enter defaults

25   against State of California which refuses to appear in one case (30-2021-01237499), and further, the

26   court refuses to even place the remanded case (from January 12, 2023) on the docket. Decl. ¶ 6. The

27   court has gone so far as to remove Plaintiff's motion for summary judgment, evidence, and papers from

28   his record in one case to conceal the facts of public corruption and oppress him. Decl. ¶ 7. Ex. 3.

1    Here, Plaintiff asked for (and needs): 1) physical separation, if requested, from his abusers; 2)

2    having his ADA advocate by his side or by telephone/Zoom, and a support person if requested; 3)

3    allowance for 15-minute breaks if he becomes symptomatic; 4) digital recording of all proceedings to

4    ensure they can be remembered; 5) accommodations when made to testify that he can prepare and is not

5    "put on the spot"; 6) that he not be pressured under duress to make material decisions in court; 7) that

6    his disabilities not be exploited in any way, by any person, party, the court, staff or bailiffs, that may be

7    present in court or out of court; 8) that the Court scrutinize discovery and provide accommodation

8    limiting circumstances likely to trigger symptoms; 9) the court consider the ex parte application and un-

9    waivable conflicts, concealment of facts, court orders, and threat of further irreparable harm. Decl. ¶ 4.

10    After Plaintiff made accommodation requests, on April 18, 2023, SUPERIOR COURT OF

11    CALIFORNIA, COUNTY OF ORANGE asserted that Plaintiff's needs were "unreasonable" without

12    explanation. The same day, the court denied the reserved ex parte hearing after directing Plaintiff to file

13    a protective order in apparent retaliation for making request for disability accommodations. Decl. ¶ 5.

14    On May 5, 2023, SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE – after five

15    years of well documented abuse against Plaintiff and nearly twenty years of fraud and adjudicated,

16    vexatious litigation by his abusers against other innocent people – the court *sanctioned* the disabled

17    Plaintiff and compelled him to produce discovery to his abusers despite their mandatory disqualification

18    and violations of law under California Rules of Professional Conduct 1.7(d)(3) and 1.9. Decl. ¶ 8. In

19    other words, the court looked past the conduct to which Plaintiff has been subject for five years,

20    overlooked the mandatory disqualification of his abusers, refused to consider several Court of Appeal

21    rulings or a trial of fact before the same judicial officer, and granted license to his abusers to "have

22    another go" at the disabled Plaintiff after denying ADA accommodations with malice. Decl. ¶ 8.

23        C. Such Exclusion or Discrimination was By Reason of Plaintiff's Disability

24    As set forth in his verified complaint, the ADA coordinator Becky Torres was anything but

25    accommodating – she refused to answer questions of Plaintiff or his advocate. Decl. ¶ 9. The judicial

26    officer on May 5, 2023, without regard of the U.S. Constitution, said that it was his abusers' right to file

27    meritless cases. Decl. ¶ 2. The discrimination and retaliation against Plaintiff is increasing, not

28    decreasing, in veracity now that the court knows Plaintiff is disabled. (See Complaint, Exhibits).

1    *2. Plaintiff is Likely to Suffer Irreparable Harm Absent Preliminary Relief*

2        Not only will Plaintiff suffer irreparable harm, his condition was caused in part by SUPERIOR

3    COURT OF CALIFORNIA, COUNTY OF ORANGE. If the Court does not stay proceedings until such

4    time that he is accommodated or related RICO allegations are heard (3:22-CV-01616-AGS-DDL),

5    Plaintiff faces not only health complications and adverse symptoms, but he faces an ongoing and

6    perpetual "snowball" of this: he need not show he is a victim of serial fraud, because the Court of Appeal

7    has shown it (as a matter of law RE: no objective probable cause), and U.S. District Court, Circuit Court

8    as well as The State Bar of California have furnished cumulative evidence. (Exhibits). Decl. ¶ 10.

9        The May 5, 2023, order sanctioning Plaintiff, compelling him to produce discovery is

10   unconscionable under the circumstances: the Court is requiring the disabled Plaintiff to produce

11   thousands of documents while it grants license to Plaintiff's abusers to violate mandatory law. Plaintiff

12   cannot comprehend how this is occurring but for making reasonable inferences: The State Bar of

13   California admitted on March 10, 2023, that it was infected by bribery and corruption. Decl. ¶ 11. One

14   of Defendant's clerks was sentenced for violating RICO and fixing 1,000 cases in September 2017.

15   Decl. ¶ 12. Orange County District Attorney's Office was subject to civil rights investigation by the U.S.

16   finding systematic violations of the Fourteenth Amendment. Decl. ¶ 13. *Something is going on in*

17   *Defendant's court.* Compelling Plaintiff to produce discovery while ignoring un-waivable conflicts of

18   interest as RICO allegations are pending, as SUPERIOR COURT OF CALIFORNIA, COUNTY OF

19   ORANGE refuses to accommodate Plaintiff, is a license to defraud Plaintiff and other innocent people

20   further. It makes no sense, it is unequal, malicious, and makes the judicial machinery appear unfair.

21       *3. The Balance of Equities Tips in Plaintiff's Favor*

22       SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE will suffer no hardship by

23   staying all proceedings in Case No. 30-2020-01145998. If the proceedings are not stayed, Plaintiff could

24   be found in contempt if he fails to comply with the overwhelming requests from his abusers who have

25   demanded information prejudicial *to their own clients*, and if he does comply with the overwhelming

26   requests – he and others could suffer from years of additional harassment under color of law and the

27   guise of "advocacy." Plaintiff relies upon the compendium of exhibits and 454 pages of court orders, a

28   trial of fact, and The State Bar of California's own summary: Plaintiff's abusers are a threat to the public.

4. *An Injunction is in the Public Interest*

Allowing SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE to freely violate the Fourteenth Amendment to the United States Constitution and the Americans with Disabilities Act, Title II is an affront to democracy and mandate of Congress. Plaintiff's abusers, including SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE also make The State Bar of California – which recently admitted to its own corruption and bribery schemes on March 10, 2023 – look even worse which is a danger to the public, courts, and legal profession. There is no benefit (except to Plaintiff's abusers) to society or the public by enabling the conduct to which Plaintiff is subject. This Court needs to hit the "pause" button. Plaintiff is suffering, other people are suffering, and there is no end in sight. Where The State Bar of California refuses to perform its most basic function, and judicial officers in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE are enabling the conduct, the U.S. District Court is bound to act by Congress under the Americans with Disabilities Act, Title II as a matter of law.

5. *A Temporary Restraining Order Can Issue without Notice, Here*

The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(A) Movant shows in his verified complaint that he is being compelled to produce voluminous discovery to attorneys engaged in serial fraud in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE which is due on May 25, 2023. Decl. ¶¶ 3, 15. There is no time to be heard. Plaintiff adds 454 pages of exhibits reflecting at least five fraudulent schemes constituting a pattern of practice; if Plaintiff has to produce more information, it is certain to result in more fraud and meritless litigation lacking probable cause that will trigger symptoms in the indigent, disabled Plaintiff. Decl. ¶¶ 3, 15.

(B) Movant certifies in writing that he gave notice to SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE – but notice should not be required. ADA says that Plaintiff need not take any acts "for show" when it is clear Defendant will not accommodate him nor will it protect him as required under the Fourteenth Amendment, nor will it suffer harm placing a stay on abuse. Decl. ¶ 16. Ex. 11.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court grant Plaintiff's temporary restraining order application. A proposed order was delivered to chambers upon filing this application, and a copy was furnished to SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE.

Respectfully Submitted,

May 15, 2023,

_____

Justin S. Beck, Plaintiff

In Pro Per

Qualified Individual Under ADA, Title II

DECLARATION OF JUSTIN S. BECK IN SUPPORT OF INUNCTIVE RELIEF

I, Justin S. Beck, hereby declare under penalty of perjury under the laws of the State of California: I have personal knowledge of each fact set forth within this declaration, my complaint for declaratory relief, injunctive relief, and damages, and the authenticity of each exhibit attached. If called to testify, I could and would do so competently on any matter to which I declare.

1. I suffer from severe emotional distress, depression, and anxiety which substantially limit my ability to read, concentrate, think, and communicate on a daily basis. During the scheme described in my complaint, my psychiatrist prescribed escitalopram for my severe symptoms. On December 1, 2022, that medication contraindicated with Vyvanse, which I had taken for nearly ten years without issue to treat attention deficit hyperactivity disorder – resulting in a seizure. To remove the risk of seizure, I was ordered to cease taking both medications, leaving me with unmedicated severe depression, anxiety, and attention deficit hyperactivity disorder. During this proceeding, I intend to furnish proof consisting of expert physician testimony of my post-traumatic stress disorder and Legal Abuse Syndrome (DSM-5). As direct and proximate cause of these factors, I am presently unemployed, have trouble sleeping, and my cognition is affected severely from time to time which substantially affects virtually all of my major life activities.

2. When I told Honorable Randall J. Sherman on May 5, 2023 in open court, of the health and due process implications of my being forced to produce discovery to attorneys engaged in serial fraud, amidst un-waivable violations of California Rules of Professional Conduct 1.7(d)(3) and 1.9 propounded on behalf of parties Catanzarite was concurrently adverse to, suing, and/or tolling claims against to "bring later" -- especially after Catanzarite Law Corporation had been disqualified four times in the same or substantially related matters -- I was informed that it was Catanzarite's right to file frivolous litigation lacking objective probable cause. The State Bar of California refuses to do anything, either. I have exhausted all other avenues of remedy.

3. I hereby verify the contents of my complaint in this case as being true and correct. I am readily familiar with all the facts set forth in my complaint, the public records produced to me by The State Bar of California about Catanzarite, and the fraudulent nature of claims directed, adjudicated, and re-directed at me.

4.  The following accommodations were denied by SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE on April 18, 2023: 1) physical separation, if requested, from my abusers; 2) having my ADA advocate by my side or by telephone/Zoom, and a support person if requested; 3) allowance for 15-minute breaks if I become symptomatic; 4) digital recording of all proceedings to ensure they can be remembered; 5) accommodations when made to testify that I can prepare and I am not "put on the spot"; 6) that I not be pressured under duress to make material decisions in court; 7) that my disabilities not be exploited in any way, by any person, party, the court, staff or bailiffs, that may be present in court or out of court; 8) that the Court scrutinize discovery and provide accommodation limiting circumstances likely to trigger symptoms; 9) the court consider my ex parte application scheduled for April 18, 2023, the un-waivable conflicts impairing or eliminating my due process rights protected by the fourteenth amendment, and the concealment of facts, court orders, and the threat of further irreparable harm that I faced without objective probable cause after 5-years of abuse shown by court orders.

5.  The same day my ADA accommodations were denied as being "unreasonable," April 18, 2023, my ex parte application raising ADA accommodation needs, due process violations, and violations of mandatory law was denied on the basis that there was "[n]o good cause to have this matter heard on shortened notice by an Ex Parte Application." Showing such cause did exist, the Court granted motions to compel discovery from Catanzarite on May 5, 2023, but disregarded mandatory disqualification and mandatory law violations by the firm through unequal application of the law. This has exacerbated my condition, and SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE has no regard for me or my rights to ADA accommodations or due process.

6.  I have a pending Government Claims Act case before SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE (30-2021-01237499) in which State of California has been served and refuses to appear or answer. I have requested defaults, but the Court refuses to enter them. I tried to remove the case to U.S. Central District of California, Southern Division citing a lack of fair and neutral forum – it was remanded January 12, 2023. SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE refuses to place the case on the docket.

7. On February 15, 2023, after 30-2021-01237499 was remanded on January 12, 2023, SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE staff manipulated my record by removing ROA #101, ROA #103, ROA #107, and ROA #111 from the case – which were summary judgment papers that were accepted in July 2022.

8. On May 5, 2023, during the hearing concerning motions to compel discovery, the Court granted all motions filed unlawfully by Catanzarite, without regard for mandatory disqualification or law, and ordered me to produce it within 20-days without objection, and sanctioned me $2,990.

9. The ADA Coordinator, Becky Torres, for SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE has failed repeatedly to communicate with me or my advocate in a timely or effective manner.

10. I have shown through my verified complaint and the associated compendium exhibits that I am virtually certain to face serial fraud and more frivolous litigation if the Court does not place a stay on 30-2020-01145998 to ensure I am accommodated and that my due process rights are no longer abrogated in favor of Catanzarite. I also understand violations of the United States Constitution constitute irreparable harm, and my fourteenth amendment rights are abrogated every day I appear amidst un-waivable conflicts of interest, or without regard for my disability.

11. On March 10, 2023, The State Bar of California publicly announced that it was infected with bribery and corruption. Specifically, it confirmed a private lawyer had paid over $1,000,000 to staff, provided gifts to staff and leadership, and even employed relatives at his law firm.

12. On September 22, 2017, U.S. Attorney's Office announced a former clerk for SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE was sentenced to over 11-years in prison for violating RICO in a bribery scheme to fix over 1,000 cases.

13. On October 13, 2022, U.S. Department of Justice announced Orange County District Attorney's Office and Sheriff's Department were found by the Civil Rights Division to have operated a custodial informant program that systematically violated Fourteenth Amendment rights.

14. I was compelled to produce volumes upon volumes of documents and interrogatories to Catanzarite Law Corporation by May 25, 2023 – as it continues to represent parties it was disqualified from representing in the same or substantially related matters – and as it engages in

material conflicts of interest. The firm even demurred to my pleading that their own conflicts, which are no fault of mine, affect their attorney's due process rights and inability to provide a defense. It is against mandatory law, including but not limited to California Rules of Professional Conduct 1.7(d)(3) and 1.9, to engage in these conflicts. SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE is unreasonably favoring the rights of Catanzarite as it strips me of my constitutional right to due process of law protected by the fourteenth amendment.

15. Within my complaint and exhibits, I show five separate fraudulent and malicious schemes using the judicial system to extort litigants and/or insurance carriers. SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE is unreasonably carrying this on and further granting license to perpetuate it. I lose several hours of sleep each night thinking about it and the depression I'm experiencing is debilitating. Attorneys are afraid to represent me because I'm combatting corruption at The State Bar of California and have compared Kenneth J. Catanzarite to Thomas V. Girardi. I cannot afford to endure more frivolous or fraudulent litigation where my policy was already depleted by $1.26 million as of July 13, 2022, by Catanzarite pursuing knowingly false claims lacking objective probable cause. I have no income as a direct and proximate cause of these schemes.

16. I provided written notice to SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE of the filing of my lawsuit, attached a copy, and furnished a draft of my temporary restraining order application with my intent to file it should they wish to oppose it.

17. I presented claims under Government Claims Act which were denied on or about December 22, 2022, vesting my right to sue SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, with waiver of sovereign immunity (as provided by statute).

18. Attached as Exhibit 1 is a true and correct copy reflecting my December 2, 2022, physician's visit showing contraindication of medication and a seizure. I obtained this through my physician's online portal.

19. Attached as Exhibit 2 is a true and correct copy of the docket in Orange County Superior Court Case No. 30-2021-01237499 – which I sought to remove to U.S. Central District, Southern

Division – before it was removed for lack of removal jurisdiction on January 12, 2023. I printed this from Pacer.

20. Attached as Exhibit 3 is a true and correct copy of a notice of only some of the filings that were surreptitiously removed from my record in Orange County Superior Court Case No. 30-2021-01237499 on February 15, 2023, after they were accepted on or around July 18, 2022. I received this notification by email.

21. Attached as Exhibit 4 is a true and correct copy of a rejection notice I received after requesting an entry of default against State of California which refuses to appear in Orange County Superior Court Case No. 30-2021-01237499. I obtained this through Swift Attorney Service.

22. Attached as Exhibit 5 is a true and correct copy of third-party proof of service of summons in Orange County Superior Court Case No. 30-2021-01237499 on The State of California. The State of California refuses to appear in the case since it was named May 2, 2022. I obtained this through Swift Attorney Service.

23. Attached as Exhibit 6 is a true and correct copy denying my ex parte application without a hearing after I was directed by the Court to file for a protective order to prevent or restrain the procedural abuse of which I complain. I received this the same time I received complete denial of my ADA accommodations on April 18, 2023.

24. Attached as Exhibit 7 is a true and correct copy of the tentative ruling that was adopted on May 5, 2023, compelling me to produce voluminous discovery without regard for mandatory disqualification of Catanzarite, serial violations of California Rules of Professional Conduct 1.7(d)(3), 1.9, four disqualification orders in the same or substantially related matters, or my due process rights. The Court says "monetary sanctions are mandatory" as it disregards that disqualification was mandatory, and that the propounding of discovery on behalf of parties Catanzarite sued, is tolling claims against, and/or is directly adverse to in the same proceeding under the circumstances was unlawful in the first instance. I obtained this from One Legal through Notice of Ruling delivered me by Catanzarite.

25. Attached as Exhibit 8 is a true and correct copy of a press release from The State Bar of California dated March 10, 2023, wherein it is disclosed that its operations were infected with bribery and corruption. I obtained this from the internet.

26. Attached as Exhibit 9 is a true and correct copy of a press release from the U.S. Attorney's Office dated September 22, 2017, wherein it is disclosed that a former clerk in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE was sentenced to over 11-years in prison for fixing over 1,000 cases in a bribery scheme, in violation of RICO (18 U.S.C. § 1962(d).) I obtained this from the internet.

27. Attached as Exhibit 10 is a true and correct copy of a press release from United States Department of Justice dated October 13, 2022, describing an investigation of Orange County District Attorney's Office and Orange County Sheriff's Department involving systematic Fourteenth Amendment violations. I obtained this from the internet.

28. Attached as Exhibit 11 is a true and correct copy of an email I sent to SUPERIOR COURT OF CALIIFORNIA, COUNTY OF ORANGE notifying it of the pendency of the instant case, including a copy of my draft application for temporary restraining order, and intent to file it. I sent this email and am readily familiar with its contents.

I DECLARE THE FOREGOING TO BE TRUE AND CORRECT UNDER PENALTY OF PERJURY. I'M SIGNING THIS FROM OCEANSIDE, CALIFORNIA ON MAY 15, 2023.

Justin S. Beck
Declarant

TRO Application
Exhibit #1

12/5/22, 3:32 PM                                    Patient Portal - health > care summaries

CLANCY MEDICAL GROUP • 2375 S. MELROSE DR., VISTA CA 92081-8788
BECK, Justin (id #5612, dob: 09/05/1980)

CLANCY MEDICAL GROUP
2375 S. MELROSE DR.
VISTA, CA 92081-8788
Phone: (760) 305-1900, Fax: (760) 305-1910

Date: 12/02/2022

Dear Justin Beck,

The following is a summary of your visit today. If you have any questions, please contact our office.

Sincerely,

Electronically Signed by: JOHN H. CLANCY, DO

## Patient Care Summary for Justin Beck

### Most Recent Encounter
12/02/2022 John Harold Clancy: 2375 S. Melrose Dr., Vista, CA 92081-8788, Ph. tel:+1-760-3051900

### Reason for Visit
follow-up

### Assessment and Plan

The following list includes any diagnoses that were discussed at your visit.
Assessment Note
Patient presented for follow up of: . Studies ordered as below. Discussed plan with , who expressed understanding. Follow up as noted below.
1. Seizure disorder
New onset
lab work
neurology referral
contact psychiatrist
discontinue lexapro and discuss weaning Vyvanse as combination may cause higher seizure threshold
• epilepsy: care instructions
• neurologist referral

2. Moderate major depression
contact PSychiarist and new referralexplained process

Discussion Note: None recorded.

### Plan of Care
Reminders
Appointments                None recorded.                                    Provider

CLANCY MEDICAL GROUP • 2375 S. MELROSE DR., VISTA CA 92081-8788
BECK, Justin (id #5612, dob: 09/05/1980)

| Reminders | | | Provider |
|---|---|---|---|
| Lab | None recorded. | | |
| Referral | Neurologist Referral | 12/02/2022 | |
| Procedures | None recorded. | | |
| Surgeries | None recorded. | | |
| Imaging | None recorded. | | |

## Current Medications

Your medical record indicates you are on the following medicine. If this list is not consistent with the medications you are currently taking, or if you are taking additional over-the-counter medicines, please inform your provider.

| Name | Prescribed Date | Start Date |
|---|---|---|
| albuterol sulfate HFA 90 mcg/actuation aerosol inhaler | | |
| cephalexin 500 mg capsule | | |
| doxycycline hyclate 100 mg capsule | | |
| escitalopram 10 mg tablet<br>TAKE 1 TABLET BY MOUTH EVERY DAY | | |
| oxycodone-acetaminophen 5 mg-325 mg tablet<br>TAKE 1 TABLET BY MOUTH EVERY SIX HOURS AS NEEDED FOR PAIN | | |
| Vyvanse 60 mg capsule<br>TAKE 1 CAPSULE BY MOUTH EVERY DAY IN THE MORNING | | |

## Medications Administered

None recorded.

## Vitals

| Height | Weight | BMI | Blood Pressure | Pulse | O2 Saturation | Temperature | Respiration Rate |
|---|---|---|---|---|---|---|---|
| 5 ft 10 in Stated | 220.8 lbs With clothes | 31.7 kg/m2 | 130/81 mm[Hg] | 96 bpm regular | 97% Room Air at Rest | 97.5 F° temporal artery | 18 |

Notes:
Anna Parry MA

## Results
Lab Results

None recorded.

## Allergies

Please review your allergy list for accuracy. Contact your provider if this list needs to be updated.

| Code | Code System | Name | Reaction | Severity | Onset |
|---|---|---|---|---|---|
| NKDA | | | | | |

12/5/22, 3:32 PM                                    Patient Portal - health > care summaries

CLANCY MEDICAL GROUP • 2375 S. MELROSE DR., VISTA CA 92081-8788
BECK, Justin (id #5612, dob: 09/05/1980)

## Problems

| Name | | Status | Onset Date | Source |
|---|---|---|---|---|
| Moderate Major Depression | | Active | 08/11/2022 | |
| Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type | | Active | 08/11/2022 | |

## Procedures

None recorded.

## Vaccine List

Here is a copy of your most up-to-date vaccination list.

None recorded.

## Tobacco Smoking Status

| Tobacco Smoking Status | Never Smoker |
|---|---|

## Past Encounters

| Encounter Date | Diagnosis | Provider |
|---|---|---|
| 12/02/2022 | Seizure Disorder; Moderate Major Depression | John Harold Clancy, DO: 2375 S. Melrose Dr., Vista, CA 92081-8788, Ph. (760) 305-1900 |

## Demographics

| | | | |
|---|---|---|---|
| Sex: | Male | Ethnicity: | Information not available |
| DOB: | 09/05/1980 | Race: | Information not available |
| Preferred language: | English | Marital status: | Information not available |

Contact:            3501 Roselle St, Oceanside, CA 92056, Ph. tel:+1-760-4492509

Note: Patients are solely responsible for maintaining the privacy and security of all information printed from the Patient Portal.

Exhibit #2
TRO Application

1/22/23, 12:54 PM                                          CM/ECF - California Central District

Query   Reports   Utilities   Help   Log Out

(ADSx),CLOSED,DISCOVERY,MANADR,REMANDED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
### CIVIL DOCKET FOR CASE #: 8:23-cv-00022-FWS-ADS

Justin S. Beck v. The State Bar of California et al          Date Filed: 01/05/2023
Assigned to: Judge Fred W. Slaughter                          Date Terminated: 01/12/2023
Referred to: Magistrate Judge Autumn D. Spaeth                Jury Demand: Defendant
Demand: $9,999,000                                            Nature of Suit: 950 Constitutional - State
Case in other court: Orange County Superior Court, 30-02021-   Statute
          01237499                                            Jurisdiction: Federal Question
Cause: 28:1441 Notice of Removal

**Plaintiff**

**Justin S. Beck**                          represented by **Justin S. Beck**
*an individual*                                             3501 Roselle Street
                                                            Oceanside, CA 92056
                                                            760-449-2509
                                                            PRO SE

V.

**Defendant**

**The State Bar of California**             represented by **Suzanne Grandt**
*a public corporation and public entity*                    The State Bar of California
                                                            180 Howard Street
                                                            San Francisco, CA 94105
                                                            415-538-2388
                                                            Fax: 415-538-2321
                                                            Email: suzanne.grandt@calbar.ca.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Anand Kuman**                             represented by **Suzanne Grandt**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Ruben Duran**                             represented by **Suzanne Grandt**
*an individual employee acting in an official*              (See above for address)
*capacity*                                                  *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 2: 001

1/3

1/22/23, 12:54 PM                                                      CM/ECF - California Central District

**Carissa Andresen**
*an individual employee acting in an official capacity*

represented by **Suzanne Grandt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Suzanne Grandt**
*an individual employee acting in an official capacity*

represented by **Suzanne Grandt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Legislature of the State of California**

**Defendant**

**Office of Attorney General**
*law firm for State of California*

**Defendant**

**Speaker of the California State Assembly**
*an individual elected official acting in an official capacity*

**Defendant**

**President Pro Tempore of the California State Senate**
*an individual elected official acting in an official capacity*

**Defendant**

**Leah T. Wilson**
*an individual acting in an official capacity*

**Defendant**

**DOES**
*9-30*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/05/2023 | 1 | NOTICE OF REMOVAL from Orange County Superior Court, filed by Plaintiff Justin S. Beck. Case number 30-2021-1237499 with copy of complaint. Case assigned to Judge Fred W. Slaughter, Discovery to Magistrate Judge Autumn D. Spaeth. (Attachments: # 1 Part 2, # 2 Part 3, # 3 Part 4, # 4 CV71) (jtil) (Entered: 01/11/2023) |
| 01/05/2023 | 2 | REQUEST to Proceed In Forma Pauperis, Declaration in Support filed by Plaintiff Justin S. Beck. (jtil) (Entered: 01/11/2023) |
| 01/11/2023 | 3 | NOTICE OF ASSIGNMENT to District Judge Fred W. Slaughter and Magistrate Judge Autumn D. Spaeth. (jtil) (Entered: 01/11/2023) |
| 01/11/2023 | 4 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 01/11/2023) |

Case 3:22-cv-01616-AGS-DDL  Document 87  Filed 05/22/23  PageID.6333  Page 69 of 101
Case 3:23-cv-00882-AGS-DDL  Document 4  Filed 05/16/23  PageID.675  Page 22 of 54
1/22/23, 12:54 PM                                        CM/ECF - California Central District

| 01/11/2023 | 5 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (jtil) (Entered: 01/11/2023) |
| 01/11/2023 | 6 | CIVIL STANDING ORDER by Judge Fred W. Slaughter. (mku) (Entered: 01/11/2023) |
| 01/12/2023 | 7 | MINUTES ORDER REMANDING Action 1 and DENYING AS MOOT IFP Request 2 by Judge Fred W. Slaughter: Plaintiff may not remove the underlying action filed in Orange County Superior Court, Case No. 30-2020-01145998, the court concludes that removal is improper and REMANDS the action. The court also DENIES AS MOOT Plaintiffs Request to Proceed In Forma Pauperis. The clerk is directed to close this case. (MD JS-6, Case Terminated.) (jp) (Entered: 01/12/2023) |
| 01/12/2023 | 8 | TRANSMITTAL of documents to Orange County Superior Cour. A certified copy of the order of remand and a copy of the docket sheet from this court was sent to Orange County Superior Court - Central Justice Center. Case number: 30-02021-01237499. (jp) (Entered: 01/12/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/22/2023 12:54:03 | | |
| PACER Login: | justintimesd | Client Code: |
| Description: | Docket Report | Search Criteria: | 8:23-cv-00022-FWS-ADS End date: 1/23/2023 |
| Billable Pages: | 3 | Cost: | 0.30 |

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 2: 003

3/3

Exhibit #3
TRO Application

5/15/23, 5:29 PM                    Gmail - Court eFiling Order Rejected for Justin S. Beck vs. The State Bar of California, Case # 30-2021-01237499-CU-PN-CJC

 Gmail                                                          **Justin Beck <justintimesd@gmail.com>**

## Court eFiling Order Rejected for Justin S. Beck vs. The State Bar of California, Case # 30-2021-01237499-CU-PN-CJC

donotreply@swiftattorneyservice.mail.legalconnect.com                                          Wed, Feb 15,
<donotreply@swiftattorneyservice.mail.legalconnect.com>                                         2023 at 11:11 AM
To: justintimesd@gmail.com

### Court eFiling Order Rejected

Your Court eFiling order has been rejected. Please review the rejection notice and resubmit your filing.

**Rejection Notice (court returned document)**

**Notice of Confirmation of Filing (court returned document)**

**Payment Receipt (court returned document)**

**Notice of Motion (court returned document)**

**Notice of Confirmation of Filing (court returned document)**

**Separate Statement (court returned document)**

**Notice of Confirmation of Filing (court returned document)**

**Declaration in Support (court returned document)**

Filing Status: **Rejected**

At: **Central Justice Center**

Should you have any questions, please contact us or log in and manage your cases and orders at http://www.swiftattorneyservice.com

Thank you for using Swift Attorney Service.

Order(s): **6172307**

Billing Code: **SysGen**

This automated message is being sent by Swift Attorney Service It is intended exclusively for the individuals and/or entities to which it is addressed. This communication including any links or attachments, may contain information that is proprietary, confidential, privileged or otherwise exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate any part of this message, or any part of any links or attachments thereto. If you have received this message in error, please notify the sender immediately by email and delete all copies of the message and attachments from your records.

© 2023 Swift Attorney Service All Rights Reserved.
500 Allerton Street Suite 105, Redwood City, CA 94063
Contact Us

Beck TRO Application (3:23-CV-0882-JES-NLS)
https://mail.google.com/mail/u/0/?ik=cee2a89658&view=pt&search=all&permmsgid=msg-f:1757925403254089682&simpl=msg-f:1757925403254089682          1/2
Exhibit 3: 001

Exhibit #4
TRO Application

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME:   Central Justice Center | FOR COURT USE ONLY |
|---|---|
| SHORT TITLE: Beck vs. The State Bar of California | |
| **NOTICE OF REJECTION OF ELECTRONIC FILING** | CASE NUMBER:<br>30-2021-01237499-CU-PN-CJC |

The electronic filing described by the summary data below was reviewed and rejected by the Superior Court of California, County of Orange

### E-Filing Summary Data

Electronically Submitted By: Justin Beck
On Behalf of:
Transaction Number:        11109823
Court received Date:        03/03/2023
Court received Time:        03:34:40 PM
Amount not to Exceed:

### Documents Electronically Filed

Request for Entry of Default

This electronic filing was rejected based on the following reason(s):

**Reject Reason 1:**   Other
                  Clerk's comments to submitter:
                  This case has been removed to Federal Court, case suspended.

### E-Filing Service Provider Information
Name:            LegalConnect
Email:            support@legalconnect.com
Contact Person:  Customer Support
Phone:            8009096859

E-filing Rejection Notice
Date Printed:        03/10/2023
User ID:            ndorfman

Exhibit #5
TRO Application

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Justin Beck<br>3501 Roselle St<br>Oceanside, CA 92056<br>TELEPHONE NO.: (760) 449-2509          FAX NO. (Optional):<br><br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):     Self Represented | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE - CENTRAL
  STREET ADDRESS: 700 Civic Center Drive West
  MAILING ADDRESS: 700 Civic Center Drive West
  CITY AND ZIP CODE: Santa Ana, CA 92701
  BRANCH NAME: SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE -
                        CENTRAL

| PLAINTIFF/PETITIONER: Justin S. Beck | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ruben Duran | 30-2021-01237499-CU-PN-CJC |

| PROOF OF SERVICE SUMMONS | Ref. No. or File No.: |
|---|---|

(Separate proof of service is required for each party served.)

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of: *Summons; Plaintiff Justin S. Beck's First Amended Complaint for Damages &amp; Injunctive Relief*

3.   a.   Party served *(specify name of party as shown on documents served):* **THE STATE OF CALIFORNIA**

     b.   [×]   Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
               under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
               **Officer B. Silkwood, Authorized Agent**

4.   Address where the party was served: *1300 I St,  Sacramento, CA 95814*

5.   I served the party *(check proper box)*
     a.   [×]   **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
               service of process for the party (1) on: **7/21/2022** (2) at: **11:45 AM**
     b.   [ ]   **by substituted service.** On: at:  I left the documents listed in item 2 with or in the presence of *(name and title or
               relationship to person indicated in item 3):*
               ( Gender: Female Height:  Weight:  Race:  Hair:  Other: )

          (1)   [ ]   **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
                    of the person to be served. I informed him or her of the general nature of the papers.
          (2)   [ ]   **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
                    place of abode of the party. I informed him or her of the general nature of the papers.
          (3)   [ ]   **(physical address unknown)** a person of at least 18 years of age apparently in charge at the usual
                    mailing address of the person to be served, other than a United States Postal Service post office box. I
                    informed him or her of the general nature of the papers.
          (4)   [ ]   I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at
                    the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents:
                    on:              from:              or [ ] a declaration of mailing is attached.

POS-010 [Rev. January 1, 2007]                    **PROOF OF SERVICE OF SUMMONS**                    Invoice # 6173009

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 5: 001

| PLAINTIFF/PETITIONER: | Justin S. Beck | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | Ruben Duran | 30-2021-01237499-CU-PN-CJC |

    (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on:               (2) from:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **THE STATE OF CALIFORNIA**
    under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☒ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**
a. Name: **Michael Lynn Henry**
b. Address: **500 Allerton Street Suite 105, Redwood City, CA 94063**
c. Telephone number: **650-364-9612**
d. **The fee for service was:** $ \$100.00 $
e. **I am:**
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ a registered California process server:
        (i) ☐ owner   ☐ employee   ☒ independent contractor.
        (ii) Registration No.: **2019-24**
        (iii) County: **Sacramento**

**PROOF OF SERVICE OF SUMMONS**

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 5: 002

| PLAINTIFF/PETITIONER: | Justin S. Beck | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | Ruben Duran | 30-2021-01237498-CU-PN-CJC |

8. [X] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Michael Lynn Henry_                      Date: 07/22/2022

Exhibit #6
TRO Application

### SUPERIOR COURT OF CALIFORNIA,
### COUNTY OF ORANGE
### CIVIL COMPLEX CENTER

#### MINUTE ORDER

DATE: 04/18/2023                    TIME: 03:56:00 PM        DEPT: CX105
JUDICIAL OFFICER PRESIDING: Randall J. Sherman
CLERK: J. Phu
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2020-01145998-CU-BT-CXC**    CASE INIT.DATE: 05/26/2020
CASE TITLE: **Beck vs. Catanzarite**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Business Tort

---

EVENT ID/DOCUMENT ID: 73996413
**EVENT TYPE:** Chambers Work

---

| APPEARANCES |
|---|

There are no appearances by any party.

Ex-Parte application for Entry of Protective Order in Favor of Justin S. Beck, Denial of Motions to Compel, Advancement of Demurrer and Motion to Strike Portions of Complaint Hearing Dates, and/or Other Relief the Court Deems Just is requested by plaintiff, Justin S. Beck.

Ex Parte Application is denied without a hearing. No good cause to have this matter heard on shortened notice by an Ex Parte Application.

The Ex Parte set for 4/19/2023 at 1:30 PM in Department CX105 is vacated.

Court orders clerk to give notice.

---

DATE: 04/18/2023                    MINUTE ORDER                    Page 1
DEPT: CX105                                                         Calendar No.

Exhibit #7
TRO Application

# TENTATIVE RULINGS

## JUDGE RANDALL J. SHERMAN

## DEPARTMENT CX105

## MAY 5, 2023

**Appearances, whether remote or in person, must be in compliance with Code of Civil Procedure §367.75, California Rules of Court, Rule 3.672, and Superior Court of California, County of Orange, Appearance Procedure and Information, Civil Unlimited and Complex, located at https://www.occourts.org/media-relations/covid/Civil_Unlimited_and_Complex_Appearance_Procedure_and_Infor mation.pdf. Unless the court orders otherwise, remote appearances will be conducted via Zoom through the court's online check-in process, available at https://www.occourts.org/media-relations/civil.html. Information, instructions and procedures to appear remotely are also available at https://www.occourts.org/media-relations/aci.html. Once online check-in is completed, counsel and self-represented parties will be prompted to join the courtroom's Zoom hearing session. Participants will initially be directed to a virtual waiting room while the clerk provides access to the video hearing.**

**Court reporters will not be provided for motions or any other hearings. If a party desires a court reporter for a motion, it will be the responsibility of that party to provide its own court reporter. Parties must comply with the court's policy on the use of pro tempore court reporters, which can be found on the court's website at www.occourts.org/media/pdf/Privately_Retained_Court_Reporter_Policy.pdf.**

**If you intend to submit on the tentative ruling, please advise the other parties and the court by calling (657) 622-5305 by 9:00 a.m. on the hearing date. Make sure the other parties submit as well before you forgo appearing, because the court may change the ruling based on oral argument. Do not call the clerk about a tentative ruling with questions you want relayed to the court. Such a question may be an improper ex parte communication.**

| # | Case Name & No. | Tentative Ruling |
|---|---|---|
| 1 | | |

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 7: 001

| 6 | | | |
|---|---|---|---|
| 7 | | | |
| 8 | **Beck vs. Catanzarite 2020-01145998** | | Defendant Kenneth J. Catanzarite's Motion to Compel Responses and Production of Documents to Request for Production of Documents, Set One From Plaintiff Justin S. Beck is granted.  Defendant's Request for Sanctions is granted in the amount of $310, payable within 30 days.<br><br>Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammad Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC and Mobile Farming Systems, Inc.'s Motion to Compel Responses and Production of Documents to Request for Production of Documents, Set Two From Plaintiff Justin S. |

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 7: 002

Case 3:22-cv-01616-AGS-DDL   Document 87   Filed 05/22/23   PageID.6347   Page 83 of 101
Case 3:23-cv-00882-AGS-DDL   Document 4   Filed 05/16/23   PageID.689   Page 36 of 54

5/4/23, 12:12 PM                                                        https://occourts.org/tentativerulings/rshermanrulings.htm

Beck is granted.  Defendants' Request for Sanctions is granted in the amount of $1,435, payable within 30 days.

Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammad Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC and Mobile Farming Systems, Inc.'s Motion to Compel Responses to Special Interrogatories From Plaintiff Justin S. Beck is granted.  Defendants' Request for Sanctions is granted in the amount of $1,185, payable within 30 days.

Defendant Kenneth J. Catanzarite's Motion to Compel Responses to Form Interrogatories From Plaintiff Justin S. Beck is granted.  Defendant's Request for Sanctions is granted in the amount of $60, payable within 30 days.

Plaintiff must serve complete, code-compliant, objection-free responses to the Requests for Production of Documents, Sets One and Two, Special Interrogatories and Form Interrogatories, and any responsive documents to the Requests for Production of Documents, Sets One and Two, within 20 days.  Good cause exists to compel production of documents.

It is undisputed that defendants served the subject discovery on plaintiff, and plaintiff failed and refused to provide any responses to the discovery.  Plaintiff does not argue that the discovery requests themselves are irrelevant or invalid.  Rather, plaintiff claims that Catanzarite should be disqualified as counsel, but plaintiff fails to cite any legally valid basis that would excuse plaintiff from his discovery obligations.  Plaintiff has not acted with substantial justification, and monetary sanctions are mandatory under the Code of Civil Procedure.

Moving party defendants are ordered to give notice of the ruling.

Exhibit #8
TRO Application

5/15/23, 6:03 PM         State Bar of California Releases Reports Detailing Past Unethical Conduct in Handling Girardi Complaints - The State Bar of California - News …

 The State Bar *of California*

## News Releases

**Media Contact**

Office of Communications | 213-765-1388 | barcomm@calbar.ca.gov

### State Bar of California Releases Reports Detailing Past Unethical Conduct in Handling Girardi Complaints
**Agency to Implement Additional Enhancements to Strengthen Oversight, Improve Discipline System, and Prevent Conflicts of Interest**



Friday, March 10, 2023    Categories: News Releases

The State Bar of California Board of Trustees released today two redacted reports on its past handling of complaints against disgraced and disbarred attorney Thomas V. Girardi. The Board decided to release the reports in furtherance of the agency's public protection mission and its commitment to transparency and accountability. In releasing these reports, the State Bar has redacted information that is protected under the law, including California Business and Professions Code section 6086.1, and the right to privacy.

The first report was prepared by attorney Alyse Lazar, who in 2021 was retained by the State Bar to review 115 files of past complaints against Girardi. Her review, limited to documents in investigative files, identified numerous instances in which complaints were closed without complete investigations or despite the development of facts warranting discipline. A redacted version of the report is posted here.

The second report was completed by Halpern May Ybarra Gelberg LLP, an outside law firm hired by the State Bar to conduct a wide-ranging investigation that was not limited to file review and included interviews of 74 witnesses and extensive evidence gathering. The May report details instances where Girardi's efforts to buy relationships and exercise influence at the State Bar—at all levels—likely impacted the handling of some complaints against him, causing those complaints to be closed improperly. A redacted version of the report is posted here.

Together, the two reports provide a clear and comprehensive review of how Girardi's unethical and unacceptable behavior went unchecked for so long and reveal systemic organizational dysfunction that persisted for many years and through many changes of leadership. Importantly, none of the individuals whose unethical behavior is detailed in the May report are still affiliated with or employed by the State Bar in any capacity.

"To ensure that what happened in the Girardi matter never happens again, we commissioned unflinching investigations by outside experts, are making the results public to the extent we can legally do so, and are addressing the findings comprehensively," said Ruben Duran, Chair of the State Bar Board of Trustees. "While none of the individuals named in the May report are still at the State Bar, the magnitude and duration

5/15/23, 6:03 PM          State Bar of California Releases Reports Detailing Past Unethical Conduct in Handling Girardi Complaints - The State Bar of California - News ...

of the transgressions reveal persistent institutional failure and a shocking past culture of unethical and unacceptable behavior. In recent years we have put in place many safeguards that serve both to prevent unethical or corrupt behavior and—if it does occur—to catch and address it quickly. That work continues. Providing this disclosure is a necessary step to demonstrate our commitment to transparency and accountability and restore public trust."

**The findings**

During a 16-month investigation, May and his team reviewed over 950,000 documents, issued 23 subpoenas, and interviewed, either voluntarily or under compulsion, 74 witnesses. The May report indicates that Girardi intentionally cultivated relationships at many levels in the State Bar to increase his influence in the agency. The report outlines several instances of past State Bar staff exercising poor judgment, ignoring or poorly handling conflicts of interest, and otherwise behaving unethically. None of the individuals identified as engaging in unethical conduct remain affiliated with or employed by the State Bar.

Examples include:

- Former State Bar employee Tom Layton, who was terminated in 2015, (and his wife) received gifts and payments estimated at over $1 million from Girardi, through his firm, while Layton was employed at the State Bar. Those payments and gifts were never properly disclosed.
- Other State Bar employees and Board members accepted and failed to report gifts and other items of value from Girardi.
- Relatives of staff members were employed by Girardi's firm.
- Staff in the Office of Chief Trial Counsel (OCTC) were improperly involved in matters assigned to outside conflict counsel.
- Eight Girardi cases were closed by individuals who May determined had conflicts of interest at the time they worked on the cases. The report found that their conflicts tainted their decisions to close the cases.
- Interim Executive Director Bob Hawley ghostwrote decisions in matters assigned to outside conflict counsel without disclosing that fact, including a decision to recommend closure of a complaint against Girardi.
- Between 2013 and 2015, both the Executive Director's Office and Office of General Counsel received reports about Girardi's influence at the State Bar and connection to Layton and others but failed to investigate.
- Former Executive Director Joe Dunn, who was terminated in 2014, and Hawley made questionable terminations of two OCTC attorneys who were advocating for disciplinary actions against Girardi.
- On at least one occasion, Girardi successfully deployed his connections at the State Bar to discourage people from making complaints against him.

The May report found that—while the State Bar has since done much to remedy these problems—in the past, conflict policies were weak, record-keeping on conflicts was incomplete, and awareness of conflict rules, which should have influenced case assignments and handling, was low.

The 2021 Lazar report revealed errors made in case closures over the four decades of Girardi's career. In particular, the report identified significant issues regarding the investigation and evaluation of high-dollar, high-volume trust accounts. The 2021 Lazar report prompted the Board to undertake the May investigation and to take several actions by the Board to strengthen the discipline system.

**Actions already taken**

Current Board and staff leadership have already taken many steps to reform the agency. Many of the failures outlined in the May report occurred before 2018, when the State Bar shed its professional association functions and focused more sharply on its public protection mission. Examples of these reforms include:

- More robust policies and procedures regarding conflicts-of-interest and gifts that recognize the importance of avoiding the appearance of impropriety and mandate frequent reporting.
- New OCTC policies that limit the ability to close cases when a complaining party withdraws a complaint.
- Improvements in how OCTC reviews patterns of complaints.
- Numerous steps to strengthen the Special Deputy Trial Counsel (SDTC) Program, which handles cases when internal staff have conflicts.
- Elimination of Board elections. All Trustees are now appointed, and elections for Board officer positions have also been eliminated.
- Greater oversight by the Board of the CTC and SDTC.

**Looking ahead**

Before the May report was submitted, the Board created an Ad Hoc Committee on Oversight and Accountability Reforms to review the findings and recommendations from the May report and recommend additional changes in State Bar governance and operations. Committee members are Trustees Arnie Sowell, Jr., Hailyn J. Chen, and Melanie M. Shelby.

After its members fully consider the May report's findings in conjunction with the Lazar report, the committee will make recommendations that will be posted for public comment before being acted on by the Board of Trustees.

"The commissioning and release of the May and Lazar reports represent important steps in the State Bar's efforts to better fulfill its public protection mission by fostering a culture grounded in integrity, accountability, and transparency," Duran said. "While much has already been achieved, these investigations equip us to further strengthen governance, ethical culture, policies, and procedures."

Frequently asked questions about the release of these reports and past actions on the Girardi matter are posted here.

###

Follow the State Bar online

LinkedIn, Twitter, Facebook, and Instagram

*The State Bar of California's mission is to protect the public and includes the primary functions of licensing, regulation and discipline of attorneys; the advancement of the ethical and competent practice of law; and support of efforts for greater access to, and inclusion in, the legal system.*

Previous Article

Next Article

Copyright © 2023 The State Bar of California

Exhibit #9
TRO Application

5/15/23, 6:05 PM          Central District of California I Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in Federal Prison for Racketeering Of...

Welcome to the new look of justice.gov. In the coming months you'll see more pages in          ×
this new design. Please share your feedback with our webmaster.

 An official website of the United States government
Here's how you know

Menu

Search                                                                                    Q

PRESS RELEASE

# Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in Federal Prison for Racketeering Offense Stemming from Bribery Scheme to 'Fix' Criminal Cases and Traffic Charges

Friday, September 22, 2017

Share

**For Immediate Release**

U.S. Attorney's Office, Central District of California

*SANTA ANA, California* – A former clerk of the Orange County Superior Court was sentenced today to 135 months in federal prison for orchestrating a scheme in which he was paid approximately $420,000 dollars in bribes to "fix" criminal cases and traffic offenses on terms favorable to hundreds of defendants without the knowledge of prosecutors or judges.

Jose Lopez Jr., 36, of Anaheim, was sentenced this morning after pleading guilty in March to one count of conspiring to violate the federal Racketeer Influenced and Corrupt Organizations Act (RICO).

5/15/23, 6:05 PM          Central District of California I Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in Federal Prison for Racketeering Of...

Lopez was sentenced by United States District Judge Josephine L. Staton, who said Lopez created, led and profited from the scheme.

"This [criminal conduct] was not an aberration from his character – this was his character," the judge said.

Lopez admitted that he was at the center of a scheme in which bribes as high as $8,000 were paid to co-conspirators to fraudulently resolve cases for hundreds of defendants. The co-conspirators were middlemen who recruited individuals with pending cases to pay money that was given to Lopez to resolve their cases without the authorization of the court.

"People who were facing their second drunk driving offense were able to bribe their way out of mandatory jail sentences," said Acting United States Attorney Sandra R. Brown. "Mr. Lopez led a long-running scheme that brought him well over $400,000 and caused untold damage to the operations and reputation of the criminal justice system in Orange County."

According to court documents, Lopez improperly resolved approximately 1,034 cases, including 69 misdemeanor driving under the influence cases, 160 other misdemeanor cases and 805 traffic-related infraction cases.

Over the course of more than five years, Lopez "resolved" cases by entering information into the court's computers to make it appear that a defendant had pleaded guilty, paid required fees or had performed community service. In some cases, Lopez fraudulently created records that made it appear drunk driving charges had been dismissed or defendants had served mandatory jail time.

In addition to taking the bribes and falsifying court records, Lopez forged the signature of a prosecutor with the Orange County District Attorney's Office.

The conspiracy ended in the spring of 2015 when the Orange County Superior Court learned about the misconduct and took steps to reopen the cases that Lopez tampered with.

"Because of [Lopez]'s corrupt actions, the Orange County Superior Court audited each and every case that [Lopez] handled," prosecutors wrote in a sentencing memorandum filed with the court. "The state court recalled the cases where fraud was found to restore the integrity of its records." According to a victim impact statement submitted by the Orange County Superior Court, Lopez's corruption scheme cost the Orange County Superior Court about $170,000 to clean up.

Lopez used the money he received as part of the scheme to pay for, among other things, international vacations, trips to Las Vegas and the opening of a restaurant in Garden Grove.

"Defendant Lopez was entrusted with protecting the interests of justice but instead made a lucrative income operating an underground business for clients seeking a pass on criminal

activity," said Danny Kennedy, the Assistant Director in Charge of the FBI's Los Angeles Field Office. "The successful investigation and prosecution of Mr. Lopez and his many co-conspirators is a result of a collaborative effort by multiple agencies and should serve as a warning to public officials who use their access to benefit personally."

"Mr. Lopez used his public position of trust to enrich himself and undermined public safety," stated IRS Criminal Investigation's Acting Special Agent in Charge Aimee Schabilion. "IRS Criminal Investigation will continue to use our financial investigative expertise to combat public corruption and hold officers of the court accountable for their actions."

Lopez is one of a dozen defendants who have been convicted of participating in the racketeering conspiracy. The other 10 defendants who have pleaded guilty before Judge Staton are:

- Ricardo Quinones, 33, of Santa Ana, who was sentenced to 15 months in federal prison;

- Juan C. Rosas Santillana, 33, of Chino Hills, who is scheduled to be sentenced on October 13;

- Ramon Salvador Vasquez, 28, of Santa Ana, who was sentenced to two years in prison;

- Manuel Galindo Jr., 27, of Santa Ana, who was sentenced to one year and one day in prison;

- Gibram Rene Lopez, also known as "Ivan," 27, of Anaheim, who was also sentenced today to 15 months in prison;

- Agustin Sanchez Jr., 33, of Santa Ana, who was sentenced to one year and one day in prison;

- Luis Alberto Flores Guillen, also known as "Bills," 27, of Santa Ana, who was sentenced last Friday to 10 months (five months in jail and five months of home confinement);

- Oscar Centeno, also known as "Mosquito," 27, of Santa Ana, who is scheduled to be sentenced on November 17;

- Jeff Reynes Fernandez, also known as "Lean," 25, of Fullerton, who was sentenced last Friday to one year and one day in prison ; and

- Jesus Saldana, 29, of Garden Grove, who was sentenced to 10 months (five months in jail and five months of home confinement).

The twelfth defendant, Javed Asefi, also known as "Joey," 44, of Ladera Ranch, was found guilty by a federal jury earlier this month and is scheduled to be sentenced on December 8.

Prior to the 12-defendant indictment being returned by a federal grand jury last fall, three other recruiters pleaded guilty to federal bribery charges, including Rebeca Sarai Rosell, who

worked at a Santa Ana bail bonds company and funneled a bribe to Lopez so a second-time drunk driving offender could avoid serving his mandatory 60-day jail sentence.

This case was investigated by special agents with the Federal Bureau of Investigation and IRS Criminal Investigation.

This case was prosecuted by Assistant United States Attorney Vib Mittal of the Santa Ana Branch Office.

**Contact**

Thom Mrozek
Spokesperson/Public Affairs Officer
United States Attorney's Office
Central District of California (Los Angeles)
213-894-6947

*Updated April 18, 2023*

**Component**

USAO - California, Central

Press Release Number: 17-166

# Related Content

**PRESS RELEASE**

## Santa Barbara County Man Who Deliberately Crashed Airplane for YouTube Video Admits to Obstructing Federal Investigation

May 11, 2023

5/15/23, 6:05 PM          Central District of California | Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in Federal Prison for Racketeering Of...

PRESS RELEASE

## Former Wells Fargo Executive Agrees to Plead Guilty to Obstructing Bank Examination Involving the Opening of Millions of Accounts Without Customer Authorization

March 15, 2023

PRESS RELEASE

## West Los Angeles Man Pleads Guilty to Federal Charges for Using Snapchat to Entice Child into Producing Sexually Explicit Videos

January 6, 2023

Central District of California

312 North Spring Street
Suite 1200
Los Angeles, California 90012

Phone: 213-894-2400
Fax: 213-894-0141

Stay Connected

5/15/23, 6:05 PM          Central District of California | Former Clerk in Orange County Superior Court Sentenced to Over 11 Years in Federal Prison for Racketeering Of...



Archives

Budget & Performance

FOIA

Accessibility

Legal Policies & Disclaimers

Privacy Policy

For Employees

Information Quality

Office of the Inspector General

No FEAR Act Data

Small Business

Vote.gov

Español

## Have a question about Government Services?

Contact USA.gov

Exhibit #10
TRO Application

5/15/23, 6:09 PM          Justice Department Finds Civil Rights Violations by Orange County, California, District Attorney's Office and Sheriff's Department in Use of Ja...



An official website of the United States government
Here's how you know

THE UNITED STATES
**DEPARTMENT** *of* **JUSTICE**
**STICE NEWS**

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                          Thursday, October 13, 2022

## Justice Department Finds Civil Rights Violations by Orange County, California, District Attorney's Office and Sheriff's Department in Use of Jailhouse Informants

Assistant Attorney General Kristen Clarke of the Justice Department's Civil Rights Division announced today, based upon a thorough investigation focused on custodial informant activity from 2007 through 2016, that the Orange County District Attorney's Office and the Orange County Sheriff's Department operated a custodial informant program that systematically violated criminal defendants' Sixth Amendment right to counsel and Fourteenth Amendment right to due process of law.

Specifically, the department found reasonable cause to believe that Orange County prosecutors and Sheriff deputies violated the Sixth Amendment by using jailhouse informants to elicit incriminating statements from people who had been arrested, after those individuals had been charged with a crime. The department also found that Orange County prosecutors violated the Fourteenth Amendment by failing to disclose exculpatory evidence about those custodial informants to criminal defendants. The department believes that OCDA and OCSD stopped using informants as agents of law enforcement to obtain statements from charged defendants in the Orange County Jail in 2016.

The Justice Department provided a comprehensive, written report of its investigative findings to the Orange County District Attorney and Sheriff. The report explicitly acknowledges the reforms that the District Attorney's Office and the Sheriff's Department have implemented already, and identifies the additional remedial measures that the department believes are necessary to fully address its findings.

"All persons who are accused of a crime are guaranteed basic constitutional protections that are intended to ensure fairness in criminal proceedings and due process of law," said Assistant Attorney General Kristen Clarke. "Prosecutors and law enforcement officers have an obligation to uphold these rights in their fight against crime and in their pursuit of justice, including in the way that they use custodial informants against criminal defendants. The failure to protect these basic constitutional guarantees not only deprives individual defendants of their rights, it undermines the public's confidence in the fundamental fairness of criminal justice systems across the county."

The evidence uncovered by the department reveals that custodial informants in the Orange County Jail system acted as agents of law enforcement to elicit incriminating statements from defendants represented by counsel, and that for years Orange County Sheriff deputies maintained and concealed systems to track, manage, and reward those custodial informants. The evidence also reveals that Orange County prosecutors failed to seek out and disclose exculpatory information regarding custodial informants to defense counsel.

The department opened this investigation in 2016. The department reviewed thousands of pages of documents, conducted numerous site visits and interviewed dozens of witnesses, including Orange County prosecutors. The department also monitored developments in criminal cases, including those that culminated recently. Orange County officials cooperated throughout the investigation.

The Special Litigation Section of the Department of Justice Civil Rights Division in Washington, D.C., conducted the investigation pursuant to the Violent Crime Control and Law Enforcement Act of 1994, which prohibits state and local

Back TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 10: 001

5/15/23, 6:09 PM          Justice Department Finds Civil Rights Violations by Orange County, California, District Attorney's Office and Sheriff's Department in Use of Ja...

governments from engaging in a pattern or practice of conduct by law enforcement officers that deprives individuals of rights protected by the Constitution or federal law. The statute allows the department to remedy such misconduct through civil litigation.

The Special Litigation Section will be contacting members of the Orange County community for input on reforms to address the department's findings. Individuals may also submit recommendations by email at Community.OrangeCountyCA@usdoj.gov.

Information specific to the Civil Rights Division's Police Reform Work can be found here: https://www.justice.gov/crt/file/922421/download.

**Attachment(s):**
Download Findings Report

**Topic(s):**
Civil Rights

**Component(s):**
Civil Rights Division
Civil Rights - Special Litigation Section

**Press Release Number:**
22-1097

*Updated October 13, 2022*

Exhibit #11
TRO Application

5/15/23, 6:30 PM                Gmail - Notice of Federal ADA Lawsuit v. Superior Court of California, County of Orange + U.S. DOJ Civil Rights Complaints #204141-CGZ ...

 **Gmail**                                                              **Justin Beck <justintimesd@gmail.com>**

## Notice of Federal ADA Lawsuit v. Superior Court of California, County of Orange + U.S. DOJ Civil Rights Complaints #204141-CGZ + #290551-ZLR

**Justin Beck <justintimesd@gmail.com>**                                      Mon, May 15, 2023 at 11:58 AM
To: ADAInformation <ADAInformation@occourts.org>, maria.hernandez@jud.ca.gov
Cc: civil.rights@usdoj.gov, soverton@cmda-law.com
Bcc: Angelina Dettamanti <adettamanti61717@gmail.com>

**RE: Notice of Federal Lawsuit under Title II, ADA & Unruh Civil Rights Act Complaint for Declaratory Relief, Injunctive Relief, and Damages in *Justin S. Beck v. Superior Court of California, County of Orange*, U.S. Southern District of California (3:23-CV-0882-JES-NLS), Preservation of Evidence Letter, Notice of Application for Temporary Restraining Order to Stay Proceedings in OCSC 30-2020-01145998**

ATTN: Anthony Palumbo, Facilities Director; Becky Torres, ADA Coordinator; Maria Hernandez, Presiding Judge, Superior Court of California, County of Orange

CC: United States Department of Justice, Civil Rights Division (#204141-CBZ + #290551-ZLR); Sarah L. Overton, Cummings, McClorey, Davis, Acho & Associates, P.C.

To Whom it May Concern:

Please find the attached federal complaint filed under Title II of the Americans with Disabilities Act in the U.S. Southern District of California. A summons has yet to issue, however, this is a good faith attempt to notify Superior Court of California, County of Orange of my intent to move for temporary injunctive relief through an ex parte application. I am including a draft of that application (attached).

As the Superior Court of California, County of Orange is aware -- I have vested claims to sue for damages under the Government Claims Act, and this action was filed within 6-months of claim denial. Separately, I am including for reference binding case law (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006)) concerning the alleged due process violations to which I've been subject which also give rise to my claims for damages under ADA Title II and abrogation of sovereign immunity.

Please retain all evidence in this matter. I am specifically interested in all internal communications upon receipt of my disability accommodation requests after March 28, 2023, as well as prior communications by and between attorney Suzanne Grandt, attorney Charles Tsai, Department C11 and Department CX105 and any clerks operating therein between December 21, 2021 and present.

In accordance with your duty, please notify the data administrator for the Superior Court of California, County of Orange of the pendency of the attached case (and 3:22-CV-01616-AGS-DDL) to preserve any email communications internally, or between calbar.ca.gov and jud.ca.gov servers as well as all records of any inbound or outbound phone calls from December 21, 2021 and present that may be reasonably related.

Attached you will find:

- Copy of filed complaint in *Justin S. Beck v. Superior Court of California, County of Orange* (3:23-CV-0882-JES-NLS)
- Exhibits to supplement the complaint (a compendium of exhibits is attached to the complaint)
- *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) (due process violations under ADA Title II abrogate sovereign immunity)
- Draft copy of my temporary restraining order application should you choose to oppose it*
- Seizure support reflecting the irreparable harm to which I've been subject proximately caused

Respectfully,

Justin S. Beck

*Due to the short notice of this matter, it is unclear if I'm able to obtain the relief I'm requesting -- but the Superior Court of California, County of Orange is nevertheless hereby noticed of the irreparable harm that its conduct has caused and will cause to a

Beck TRO Application (3:23-CV-0882-JES-NLS)

Exhibit 11: 001

5/15/23, 6:30 PM          Gmail - Notice of Federal ADA Lawsuit v. Superior Court of California, County of Orange + U.S. DOJ Civil Rights Complaints #204141-CGZ ...

*disabled person absent such relief. I'm requesting a stay in OCSC Case No. 30-2020-01145998 on or before May 24, 2023, but allege that U.S. District Court's action/inaction in the matter is discrete of Superior Court of California, County of Orange's duties under Title II, ADA. I will seek any and all damages caused resulting from obstruction of my state proceedings, or as a result of failing to stay the case pending either my accommodations, cessation of unlawful conduct in CX105, and/or resolution of my RICO and antitrust allegations in 3:22-CV-01616-AGS-DDL.*

--
==========

**Justin Beck**
760-449-2509

**5 attachments**

📄 **3-23-CV-0882-JES-NLS Filed 5_15_23.pdf**
   8731K

📄 **ADA Complaint EXHIBITS ONLY 5_15_23.pdf**
   14172K

📄 **United States v. Georgia.pdf**
   174K

📄 **Seizure Support for OC ADA.pdf**
   600K

📄 **TRO from ADA Case DRAFT.pdf**
   179K