1  Justin S. Beck
2  3501 Roselle St.,
   Oceanside, CA 92056
3  760-449-2509
   justintimesd@gmail.com
4  *In Propria Persona*

FILED

JUN 26 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

6

7  JUSTIN S. BECK,                              ) Case No.: 3:22-CV-01616-AGS-DDL
8                    Plaintiff,                  )
                                                 ) Judge:      Hon. Andrew G. Schopler
9         vs.                                    )
                                                 ) **PLAINTIFF'S REQUEST FOR JUDICIAL**
10 CATANZARITE LAW CORPORATION;                  ) **NOTICE PURSUANT TO FEDERAL**
   STATE OF CALIFORNIA; THE STATE BAR)           **RULES OF EVIDENCE RULE 201**
11 OF CALIFORNIA; ORANGE COUNTY                  )
   SUPERIOR COURT; ORANGE COUNTY                 )
12 DISTRICT ATTORNEY'S OFFICE; RUBEN             )
13 DURAN, ESQ.; SUZANNE CELIA                    )
   GRANDT, ESQ.; RICHARD FRANCIS                 )
14 O'CONNOR, JR.; MOHAMMED                       )
15 ZAKHIREH; JAMES DUFFY; KENNETH                )
16 CATANZARITE, ESQ.; JIM TRAVIS TICE,           )
   ESQ.; NICOLE MARIE CATANZARITE                )
17 WOODWARD, ESQ.; BRANDON                       )
18 WOODWARD, ESQ.; TIM JAMES                     )
   O'KEEFE, ESQ.; AMY JEANETTE                   )
19 COOPER; CLIFF HIGGERSON; ELI DAVID            )
   MORGENSTERN, ESQ.; LEAH WILSON,               )
20 ESQ.; ROBERT GEORGE RETANA, ESQ.;             )
21 ELLIN DAVTYAN, ESQ.; JOHN C.                  )
   GASTELUM; JORGE E. NAVARETTE;                 )
22 GEORGE SARGENT CARDONA, ESQ.;                 )
   ANTHONY B. SCUDDER                            )
23                                               )
24                Defendants,                    )
                                                 )
25 UNITED STATES ATTORNEY GENERAL;               )
26 UNITED STATES OF AMERICA                      )
                                                 )
27          Nominal Defendants                   )
                                                 )
28 _____)

                                    i                    3:22-CV-01616-AGS-DDL

## I.   INTRODUCTION

In support of his Oppositions to Motions to Dismiss filed by Defendants The State Bar of California, Ruben Duran, Esq., Suzanne Celia Grandt, Esq., Eli David Morgenstern, Esq., Ellin Davtyan, Esq., Robert George Retana, Esq., George Sargent Cardona, Esq., Leah Wilson, Esq., joinder by State of California, and Orange County District Attorney's Office, Plaintiff Justin S. Beck requests that the court take judicial notice of the following decisions, documents, papers, and records pursuant to Federal Rules of Evidence 201 ("Rule 201").

Under Rule 201, facts appropriate for judicial notice are those "not subject to reasonable dispute in that either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Federal Rules of Evidence 201(b). The Court may take judicial notice of its own records and records of other court cases.

## II.   RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Second Amended Complaint on February 27, 2023. (Dkt. #37). On March 13, 2023, George Sargent Cardona, Esq., Ellin Davtyan, Esq., Ruben Duran, Esq., Suzanne Celia Grandt, Esq., Eli David Morgenstern, Esq., Robert George Retana, Esq., The State Bar of California, and Leah Wilson, Esq. ("State Bar Defendants") filed Motion to Dismiss Plaintiff's Second Amended Complaint under F.R.Civ.P. 12(b). (Dkt. #39). On March 15, 2023, State of California filed joinder to State Bar Defendants Motion to Dismiss. (Dkt. #46). On March 27, 2023, Plaintiff filed a RICO Case Statement and Supplement to be read as part of the Second Amended Complaint as a matter of course. (Dkt. #50). On April 7, 2023, Orange County District Attorney's Office filed Motion to Dismiss under F.R.Civ.P. 12(b). (Dkt. #64). Plaintiff filed oppositions to each of the Motions to Dismiss: State of California joinder (Dkt. #59), State Bar Defendants' (Dkt. #61), and Orange County District Attorney's Office (Dkt. #67). State Bar Defendants (Dkt. #73) and Orange County District Attorney's Office replied (Dkt. #74). On May 3, 2023, the Court vacated its hearing on Motions to Dismiss and took all motions under submission. (Dkt. #78). On June 22, 2023, California Supreme Court issued its unanimous decision in *Dora Leon v. County of Riverside* (S269672), re-affirming application of "prosecutorial immunity" and method of analyses of immunity statutes. Plaintiff files this request for judicial notice under Rule 201.

| | |
|---|---|
| 1 | **II     REQUEST FOR JUDICIAL NOTICE** |
| 2 | **A. The Unanimous Court Decision in Full Regarding Court's Immunity Analyses** |
| 3 | Plaintiff requests the Court take Judicial Notice of the analyses and application of "prosecutorial |
| 4 | immunity" as it relates to each subsection of Government Claims Act upon which State Bar Defendants |
| 5 | rely: Cal. Gov. Cod. § 818.4, Cal. Gov. Cod. § 820.2, Cal. Gov. Cod. § 821, and Cal. Gov. Cod. § 821.2 |
| 6 | (Dkt. #39, p. 11) and upon which Orange County District Attorney's Office relies as being "absolutely |
| 7 | immune for all decisions with initiating and presenting state prosecutions." (Dkt. #64-1, p. 6, 11:13). |
| 8 | As California Supreme Court Justice Kruger aptly explains, "[a] provision of the Government |
| 9 | Claims Act immunizes public employees from liability for "instituting or prosecuting any judicial or |
| 10 | administrative proceeding" within the scope of their employment, "even if" the employees act |
| 11 | "maliciously and without probable cause."  (Gov. Code, § 821.6 (section 821.6).)  This provision |
| 12 | immunizes public employees from claims of injury caused by wrongful prosecution.  The question |
| 13 | before us is whether, as several Courts of Appeal have held, it also confers immunity from claims based |
| 14 | on other injuries inflicted in the course of law enforcement investigations.  The answer is no.  While |
| 15 | other provisions of the Government Claims Act may confer immunity for certain investigatory actions, |
| 16 | section 821.6 does not broadly immunize police officers or other public employees for any and all |
| 17 | harmful actions they may take in the course of investigating crime." |
| 18 | Plaintiff requests the Court take Judicial Notice that California Supreme Court's June 22, 2023, |
| 19 | conclusions are relevant to this Court's inquiry on State Bar Defendants' Motion to Dismiss, State of |
| 20 | California's joinder thereto, and Orange County District Attorney's Office Motion to Dismiss. |
| 21 | While State Bar Defendants are "not the sovereign" in the first instance under *N.C. State Bd. of* |
| 22 | *Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. |
| 23 | 4110 (2015) due to their active market participant control in the same market they regulate – the |
| 24 | sovereign immunities upon which they rely under Government Claims Act also fail to meet Plaintiff's |
| 25 | causes of action based on the plain language of each purported immunity as demonstrated by the |
| 26 | unanimous Court's inquiry and analyses into Cal. Gov. Cod. § 821.6 for "prosecutorial immunity." |
| 27 | Plaintiff requests the Court take judicial notice of *Dora Leon v. County of Riverside* (S269672) |
| 28 | attached hereto as <u>Exhibit A</u> for judicial efficiency to avoid an error in ruling and potential appeal. |

**B. California Law Revision Commission Regarding Sovereign Immunity**

Plaintiff requests the Court take Judicial Notice of the California Law Revision Commission Recommendation relating to Sovereign Immunity, Number 1—Tort Liability of Public Entities and Public Employees ("Recommendation"), January 1963 and "sovereign immunity" as it relates to each subsection of Government Claims Act upon which State Bar Defendants rely: Cal. Gov. Cod. § 818.4, Cal. Gov. Cod. § 820.2, Cal. Gov. Cod. § 821, and Cal. Gov. Cod. § 821.2 (Dkt. #39, p. 11) and upon which Orange County District Attorney's Office relies as being "absolutely immune for all decisions with initiating and presenting state prosecutions." (Dkt. #64-1, p. 6, 11:13).

Plaintiff requests the Court take notice that "[o]n January 27, 1961, the California Supreme Court, in *Muskopf v. Corning Hospital District*, 55 Cal.2d 211, decided that the doctrine of sovereign immunity would no longer protect the State and other public entities in California from civil liability for their torts. At the same time, the Court decided *Lipman v. Brisbane Elementary School District*, 55 Cal.2d 224, in which it stated that the doctrine of discretionary immunity, which protects public officers and employees from liability for their discretionary acts, might not protect public entities from liability in all situations where the officers and employees are immune." (pp. 803, 807).

Plaintiff requests the Court take Judicial Notice that Recommendation conclusions are relevant to this Court's inquiry on State Bar Defendants' Motion to Dismiss, State of California's joinder thereto, and Orange County District Attorney's Office Motion to Dismiss because the Recommendation helped shape Government Claims Act of 1963 and the statutes causing liability upon which Plaintiff relies.

While State Bar Defendants are "not the sovereign" in the first instance under *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 574 U.S. 494, 135 S. Ct. 1101, 191 L. Ed. 2d 35, 83 U.S.L.W. 4110 (2015) due to their active market participant control in the same market they regulate – the sovereign immunities upon which they rely under Government Claims Act also fail to meet Plaintiff's causes of action, where the Recommendation says "a public entity should be liable for a negligent or wrongful act or omission of its employee within the scope of his employment" and that if "the act done is a serious crime, is of course, a factor indicating that it is not in the scope of employment." (p. 814).

Plaintiff requests the Court take judicial notice of the Recommendation attached hereto as Exhibit B for judicial efficiency to avoid an error in ruling and potential appeal.

III.     **ARGUMENT & AUTHORITY**

  **A. Plaintiff's Request for Judicial Notice is Timely and Necessary for Judicial Efficiency**

   Under Rule 201(c), "the court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." Under Rule 201(d), "[t]he court may take judicial notice at any stage of the proceeding."

   While the Court has already taken the Motions to Dismiss of State Bar Defendants, State's joinder thereto, and Orange County District Attorney's Office under submission, the Court may take judicial notice "at any stage of the proceeding."

   Here, *Dora Leon v. County of Riverside* (S269672) was decided June 22, 2023, and the Recommendation may help the Court in its analyses and rulings on pending Motions to Dismiss.

  **B. Exhibit A and Exhibit B Contain Facts That May Be Judicially Noticed**

   Under Rule 201(b), "Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

   Exhibit A contains judicially noticeable facts of California Supreme Court's application of Government Claims Act immunity by looking at the plain text of each respective code section to determine if it meets a cause of action or conduct in pleading upon which relief may be sought.

   Exhibit B contains judicially noticeable facts underlying the entire statutory scheme of Government Claims Act (Cal. Gov. Cod. § 810, et seq.), distinguishing that negligence or crimes absolutely cause liability to either a sovereign entity or individual acting therefore, at issue in this case.

   Exhibit A and Exhibit B are both generally known within the trial court's territorial jurisdiction, or can be accurately and readily determined from California Supreme Court or public records, whose accuracy cannot reasonably be questioned.

  **C. State Bar Defendants, State, or Orange County District Attorney's Office May Be Heard**

   It is not Plaintiff's intent to "pull a fast one" here, rather, provide judicial efficiency to ensure accurate rulings. Should the Court rely upon Exhibit A or Exhibit B in making its rulings on the pending Motions to Dismiss, any purportedly prejudiced party can request to be heard under Rule 201(e).

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court take judicial notice of all facts contained within Exhibit A and Exhibit B under Federal Rules of Evidence 201.

Respectfully Submitted,

June 25, 2023

Justin S. Beck, Plaintiff,

*In Pro Per*

Party Requesting Judicial Notice

3:22-CV-01616-AGS-DDL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PROOF OF SERVICE</u>**

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056.

I served or scheduled for service one copy of the following documents:

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE PURSUANT TO FEDERAL RULES OF EVIDENCE RULE 201**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery June 26, 2023, to the following email addresses:

| | |
|---|---|
| Corey Amundson | corey.amundson@usdoj.gov |
| Todd Gee | todd.gee@usdoj.gov |
| Robert Heberle | Robert.heberle@usdoj.gov |
| Sean Mulryne | sean.mulryne@usdoj.gov |

By electronic mail by personally transmitting a true copy thereof via an electronic email service connected to the internet, addressed to the email address listed above [X].

I declare the foregoing to be true under penalty of perjury under the laws of the State of California and United States. I am signing this from Oceanside, California on June 25, 2023.

Brian Bargabus, Declarant

3:22-CV-01616-AGS-DDL

# EXHIBIT A

# IN THE SUPREME COURT OF CALIFORNIA

DORA LEON,
Plaintiff and Appellant,
v.
COUNTY OF RIVERSIDE,
Defendant and Respondent.

S269672

Fourth Appellate District, Division Two
E073781

Riverside County Superior Court
RIC1722990

June 22, 2023

Justice Kruger authored the opinion of the Court, in which
Chief Justice Guerrero and Justices Corrigan, Liu, Groban,
Jenkins, and Evans concurred.

# LEON v. COUNTY OF RIVERSIDE
## S269672

### Opinion of the Court by Kruger, J.

A provision of the Government Claims Act immunizes public employees from liability for "instituting or prosecuting any judicial or administrative proceeding" within the scope of their employment, "even if" the employees act "maliciously and without probable cause." (Gov. Code, § 821.6 (section 821.6).) This provision immunizes public employees from claims of injury caused by wrongful prosecution. The question before us is whether, as several Courts of Appeal have held, it also confers immunity from claims based on other injuries inflicted in the course of law enforcement investigations. The answer is no. While other provisions of the Government Claims Act may confer immunity for certain investigatory actions, section 821.6 does not broadly immunize police officers or other public employees for any and all harmful actions they may take in the course of investigating crime.

## I.

Plaintiff Dora Leon's husband, José Leon, was shot and killed in the driveway of a mobile home lot near his home.[1] When Riverside County Sheriff's deputies arrived on the scene, they heard additional shots. They dragged José behind a vehicle, where they unsuccessfully attempted to revive him. The

---

[1]    For clarity, we refer to Dora and José Leon by their first names.

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

movement had caused José's pants to slide down to his ankles, exposing his naked body.  His body remained in that uncovered state for approximately eight hours while officers searched for the shooter and investigated the shooting.  The officers ultimately determined that the shooter had killed himself shortly after killing José.  No charges were filed.

Dora sued, asserting a single cause of action for negligent infliction of emotional distress.  The complaint alleged that the deputies and the public entity that employed them failed to exercise reasonable care when they left José's body exposed and uncovered for hours, in view of both Dora and the general public.

The County of Riverside (County) moved for summary judgment.  Under the Government Claims Act (sometimes the Act), a public entity like the County is ordinarily immune from liability when its employees are immune.  (Gov. Code, § 815.2, subd. (b); see *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980.) As relevant here, the County argued that its employees were immune under section 821.6 for "all conduct related to the investigation and filing of charges." Because the suit arose from steps taken while investigating José's homicide, the County argued, both the employees and their employer were immune from liability.  (See Gov. Code, §§ 815.2, 821.6.)  The trial court agreed and entered judgment for the County.

The Court of Appeal affirmed.  (*Leon v. County of Riverside* (2021) 64 Cal.App.5th 837 (*Leon*).)  As it explained, a line of appellate cases "ha[s] consistently construed section 821.6 as immunizing a public employee from liability for any injury-causing act or omission in the course of the institution and prosecution of any judicial or administrative proceeding, *including an investigation that may precede the institution of*

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

*any such proceeding.*" (*Id.* at p. 846, italics added.) Because "the deputies' negligence, if any, in failing to promptly cover or remove José's body from the scene, occurred during the course of the deputies' performance of their official duties [and their] investigation of the shooting," the deputies, and thus the County, were immune. (*Id.* at p. 848.)

Justice Raphael joined the majority opinion but wrote separately to observe that this court, addressing other fact patterns, had construed section 821.6 more narrowly to "provide[] absolute immunity only against malicious prosecution claims." (*Leon, supra*, 64 Cal.App.5th at p. 860 (conc. opn. of Raphael, J.), citing *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710.) "Working on a blank slate," Justice Raphael would have adopted the narrower interpretation. (*Leon*, at p. 863 (conc. opn. of Raphael, J.).) But he concluded, "[A]ny correction to the Court of Appeal's decades-old, expansive application of section 821.6 will have to come from our Supreme Court, rather than from us." (*Id.* at p. 864 (conc. opn. of Raphael, J.).)

We granted review.

## II.

### A.

For many years before the Government Claims Act was enacted in 1963, California courts had applied a common law doctrine of governmental immunity that generally barred tort suits against public entities. (*Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 214–215.) Over time, however, this common law immunity became "riddled with exceptions" that "operate[d] so illogically as to cause serious inequality." (*Id.* at p. 216.) As scholarly criticism mounted, other jurisdictions

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

judicially abolished governmental tort immunity. (*Ibid.*, citing, e.g., *Molitor v. Kaneland Community Unit District No. 302* (1959) 18 Ill.2d 11, 14–25 [163 N.E.2d 89, 90–96]; *Colorado Racing Com'n v. Brush Racing Ass'n* (1957) 136 Colo. 279, 284–285 [316 P.2d 582, 585–586]; *Hargrove v. Town of Cocoa Beach* (Fla. 1957) 96 So.2d 130, 132–134.) In 1961, this court joined those jurisdictions and abrogated the common law rule of governmental tort immunity. (*Muskopf*, at p. 216.)

Presented with the abrupt discontinuation of governmental immunity from tort suits, the Legislature temporarily restored the status quo ante pending further study. (Civ. Code, former § 22.3, enacted by Stats 1961, ch. 1404, § 1, pp. 3209–3210; see *Corning Hospital Dist. v. Superior Court* (1962) 57 Cal.2d 488, 492–495.) The California Law Revision Commission (sometimes Commission) completed a comprehensive review of governmental immunity and submitted to the Legislature a series of proposed statutes governing the tort liability of public entities and employees. (Recommendation Relating to Sovereign Immunity, Number 1 – Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 801 (Recommendation).) In 1963, the Legislature enacted the Commission's proposed scheme, with minor modifications, as the California Tort Claims Act (Stats. 1963, ch. 1681, § 1, pp. 3266–3284), which has since been retitled the Government Claims Act (see *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803, fn. 1 (*Quigley*)).

The Government Claims Act abolished common law tort liability and immunity for public entities, replacing it with "a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts."

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

(*Quigley*, *supra*, 7 Cal.5th at p. 803; see Gov. Code, § 815.) As a general rule, the Act makes public entities liable for injuries proximately caused by their employees in the course of employment but immunizes the public entity from liability when the employee is immune. (Gov. Code, § 815.2, subds. (a), (b).) The Act contains numerous provisions conferring immunity on employees, including for acts or omissions resulting from an exercise of discretion vested with the employee (*id.*, § 820.2); for the execution of enactments when carried out with due care (*id.*, § 820.4); and for the failure to adopt or enforce an enactment (*id.*, § 821). The immunity provision at issue in this case, section 821.6, provides in full: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

## B.

This is not our first encounter with section 821.6. In *Sullivan v. County of Los Angeles*, *supra*, 12 Cal.3d 710 (*Sullivan*), this court considered whether section 821.6 immunized a county and its officials from a false imprisonment suit for failing to discharge an inmate once his lawful term expired. Based on examination of the text and legislative history, we concluded section 821.6 afforded no such immunity. "[T]he Legislature," we explained, "intended the section to protect public employees from liability only for *malicious prosecution* and not for *false imprisonment*." (*Sullivan*, at p. 719.)

We reiterated and expanded on this conclusion in *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, which involved a

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

claim against police officers and their employer for false arrest and imprisonment before a trial at which Asgari was ultimately acquitted. As in *Sullivan*, the defendants invoked section 821.6. We explained in *Asgari* that police officers are not, by virtue of their job title alone, outside the scope of section 821.6. Because section 821.6 "focus[es] upon the nature of the alleged tort, rather than the nature of the governmental duties performed by the defendant" (*Asgari*, at p. 756), the immunity it confers can extend beyond " 'prosecuting attorneys and other similar individuals' . . . 'to police officers as well' " (*id.* at pp. 756–757, citation omitted). But immunity under section 821.6 " 'is dependent on how the injury is caused.' " (*Asgari,* at p. 757.) We went on to explain that "[u]nder California law, a police officer may be held liable for false arrest and false imprisonment, but not for malicious prosecution." (*Ibid.*) These are " 'mutually inconsistent concepts, the former relating to conduct that is without valid legal authority and the latter to conduct where there is valid process or due authority.' " (*Ibid.*) We thus concluded that the defendants in the case were not immune from liability for false arrest and imprisonment that occurred before the plaintiff's arraignment. Once he was arraigned, however, his continued incarceration was a result of the institution of judicial proceedings against him, and the officers were immune under section 821.6 for any role they played in bringing about that result. (*Asgari*, at p. 758.)

While *Sullivan* and *Asgari* both described section 821.6 as conferring immunity against what they termed "malicious prosecution" claims, the Courts of Appeal to address section 821.6 have ventured in different directions. Some appellate decisions have hewed to the same course as *Sullivan* and *Asgari*, granting immunity to officers and their employers for their role

6

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

in initiating prosecutions. (See, e.g., *Collins v. City and County of San Francisco* (1975) 50 Cal.App.3d 671, 676–678; *Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 85–87; see *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 463 [§ 821.6 "is intended to prevent malicious prosecution actions against government officials"]; *Sharp v. County of Orange* (9th Cir. 2017) 871 F.3d 901, 920–921 [following *Sullivan*: § 821.6 protection limited to malicious prosecution claims].) But many Courts of Appeal have charted a different path, extending section 821.6 to claims for injuries caused by official conduct other than the initiation or prosecution of a proceeding. (See, e.g., *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1211–1214 (*Amylou R.*) [police officers investigating a rape immune for inflicting emotional distress on victim through comments they made to and about her]; *Citizens Capital Corp. v. Spohn* (1982) 133 Cal.App.3d 887, 888 [officials immune for publicizing allegations of improper conduct].) These courts either understood *Sullivan* as limited to its facts (e.g., *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 283 [reading *Sullivan* as limited to false imprisonment claims]) or ignored it altogether (e.g., *Citizens Capital Corp., supra*, 133 Cal.App.3d 887).

As particularly relevant here, the 1994 decision in *Amylou R.* concluded that section 821.6 applied to the tort claims of plaintiffs allegedly harmed by police misconduct or negligence in the course of investigating crimes, even where the plaintiffs' injuries did not result from the initiation or prosecution of an official proceeding. Since then, a number of appellate courts have followed *Amylou R.*'s lead in applying section 821.6 immunity against claims of harm stemming from police investigations. (See, e.g., *Baughman v. State of California*

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

(1995) 38 Cal.App.4th 182, 191–193 [police immune for destruction of data storage discs in the course of executing a search warrant]; *Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1443–1445, 1461 [California Highway Patrol officer immune from liability for negligently losing or destroying identification information during investigation of accident].)

In this case, the Court of Appeal relied on *Amylou R.* and similar decisions to conclude that section 821.6 immunity for, in the statutory language, "instituting or prosecuting any judicial or administrative proceeding," applies to a claim for negligent infliction of emotional distress resulting from the conduct of a police investigation. The court so held even though the claim was brought by a plaintiff who claimed no harm resulting from the institution or prosecution of judicial or administrative proceedings — and who could not conceivably have claimed such harm, because no proceedings were ever instituted. (*Leon, supra*, 64 Cal.App.5th at pp. 846–848.)

We conclude this was error. The Court of Appeal's conclusion is inconsistent with section 821.6's text and history, as well as our precedent construing the same.

## III.

### A.

To understand the intended scope of section 821.6, we begin with the text. (*Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, 114.) Section 821.6 immunizes public employees from liability "for injury caused by . . . instituting or prosecuting any judicial or administrative proceeding," provided those actions occur "within the scope of . . . employment," and "even if" those actions are taken "maliciously and without probable cause." We described the dictionary meaning of the

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

relevant terms in *Sullivan*: "According to Webster's Third New International Dictionary (1961) 'institute' means 'to originate and get established . . . [to] initiate,' and 'prosecute' means 'to institute legal proceedings against; *esp*: to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal.' " (*Sullivan, supra*, 12 Cal.3d at p. 719.) Other contemporaneous sources further explain that "[t]o 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion." (Black's Law Dict. (4th ed. 1951) p. 1385, col. 1; see 12 Oxford English Dict. (2d ed. 1989) p. 662 [tracing historical definition].) We explained in *Sullivan* that, "viewed literally," this language "does not reach the act of holding a person in jail beyond his term," which was the act challenged in that case. (*Sullivan*, at p. 719.) The language likewise does not reach the investigatory acts challenged in this case, none of which constitute the initiation or continued prosecution of official proceedings.

What we had described in *Sullivan* as the "literal," dictionary-derived meaning of the language of section 821.6 echoes the common law usage of the same operative terms to describe the tort of malicious prosecution — a tort generally defined as "improperly instituting or maintaining" a legal action. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169; see *Sullivan, supra*, 12 Cal.3d at p. 720 ["Malicious prosecution 'consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause' " (italics omitted)].) We generally presume that when the Legislature uses common law terms in its enactments, it intends to incorporate their settled common law meanings. (E.g., *People*

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

*v. Lopez* (2003) 31 Cal.4th 1051, 1060; *People v. Tufunga* (1999) 21 Cal.4th 935, 946.) This presumption is particularly appropriate here, in a case concerning the meaning of the Government Claims Act — a statute consciously enacted against the backdrop of the common law for the purpose of governing common law tort claims against public entities and employees. (See Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at pp. 807–813.)

Consideration of common law meaning reinforces our conclusion that section 821.6 immunity does not reach the officer's conduct in this case. Under the common law governing the malicious prosecution tort, the conduct of an investigation, without more, is not an actionable institution or prosecution of a legal action. (E.g., *Van Audenhove v. Perry* (2017) 11 Cal.App.5th 915, 924 ["Before charges are filed, the actions of the police and the prosecutor are merely investigatory," and no malicious prosecution claim will lie]; *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 736–737; *Imig v. Ferrar* (1977) 70 Cal.App.3d 48, 58–60.) While a claim of malicious prosecution may lie against a defendant other than the public prosecutor who filed the relevant charges, the claim still must be based on the defendant's role in bringing the proceedings about. (*Sullivan*, *supra*, 12 Cal.3d at p. 720 [" 'The test is whether the defendant was actively instrumental in causing the prosecution' "].)[2] We presume that when the Legislature crafted an immunity provision using language largely tracking the

_____

[2]     Because Dora does not allege her injuries arose from any official proceeding, this case provides no occasion for further delineating the causal connection between a defendant's conduct and the initiation of a proceeding that *Sullivan* identified as necessary for a malicious prosecution action.

10

definition of the common law tort of malicious prosecution, it intended for courts to respect the traditional distinction between mere investigation and the prosecution of a legal action.

The language of section 821.6 does deviate from the malicious prosecution tort in one regard. The malicious prosecution tort requires proof that the defendant acted with malice and without probable cause. (*Sullivan, supra*, 12 Cal.3d at p. 720; see also, e.g., *Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 313.) But the statutory immunity applies to a public employee who commits covered acts *"even if* he acts maliciously and without probable cause." (§ 821.6, italics added.) Although this language is certainly broad enough to include traditional malicious prosecution claims alleging malice and a lack of probable cause, the inclusive phrase "even if" makes clear that the statute is not limited to traditional malicious prosecution claims; suits for damages arising from a *negligent* prosecution are covered too. (See *Johnson v. City of Pacifica, supra*, 4 Cal.App.3d at pp. 86–87 (lead opn. of Christian, J.) ["If the Legislature had inexplicably intended to deny immunity to an officer who merely acts negligently while protecting one who, more culpably, is guilty of malicious prosecution, it would have been superfluous to use the word 'even' "].)[3]

---

[3]   *Johnson v. City of Pacifica, supra*, 4 Cal.App.3d 82 is an example of a court upholding section 821.6 immunity in a case involving allegations of negligence rather than malice. For other examples, see *Jenkins v. County of Orange, supra*, 212 Cal.App.3d at page 283 (social worker's negligence allegedly leading to baseless child welfare proceeding); *Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 455–457 (police negligence in the course of a prosecution). We cite these

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

For this reason, although our prior decisions have loosely described section 821.6 as conferring immunity against malicious prosecution claims (e.g., *Sullivan, supra,* 12 Cal.3d at p. 721), section 821.6 is more aptly characterized as providing immunity against liability for claims of injury based on tortious or wrongful prosecution.  The immunity is narrow in the sense that it applies only if the conduct that allegedly caused the plaintiff's injuries was the institution or prosecution of an official proceeding.  But this immunity is broad in the sense that it applies to every such tort claim, whether formally labeled as a claim for malicious prosecution or not.  And where it applies, it is absolute, meaning that "the immunity is not conditioned on a showing that the defendant acted in a reasonable or procedurally proper manner, or any similar requirement." (*Quigley, supra,* 7 Cal.5th at p. 809; cf., e.g., Gov. Code, § 820.4 [qualified immunity for execution or enforcement of laws with "due care"]; *id.,* § 820.6 [qualified immunity for actions under apparent authority of unconstitutional, invalid, or inapplicable enactments, taken "in good faith, without malice"].)

The County does not dispute that section 821.6 covers only injuries caused by the institution or prosecution of official proceedings.  It argues, however, that injuries caused by police investigations qualify because of the close relationship between investigations and prosecutions.  The County leans heavily on the Court of Appeal's opinion in *Amylou R., supra,* 28 Cal.App.4th 1205, which held that section 821.6 applied to a

_____

decisions only for the principle that claims of negligence can come within section 821.6, not for what they may say on other points, such as when a public employee other than the public prosecutor may be considered to have initiated or prosecuted an official proceeding.

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

crime victim's claims related to the mishandling of a police investigation because "investigation is part of the prosecution of a judicial proceeding." (*Amylou R.*, at p. 1211.)  *Amylou R.* elsewhere reasoned that "[b]ecause investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.' " (*Id.* at p. 1210, quoting *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436–1437 and citing *Jenkins v. County of Orange, supra,* 212 Cal.App.3d at pp. 283–284, *Johnson v. City of Pacifica, supra,* 4 Cal.App.3d 82 and *Stearns v. County of Los Angeles* (1969) 275 Cal.App.2d 134, 136–137.)

In the wake of *Amylou R.,* numerous Courts of Appeal have extended section 821.6's immunity for "instituting or prosecuting" an official proceeding to cases in which the plaintiff's alleged injuries arose from investigative or law enforcement conduct other than the prosecution of an official proceeding.  (See *Leon, supra,* 64 Cal.App.5th at p. 855; *Doe v. State of California* (2017) 8 Cal.App.5th 832, 844; *Strong v. State of California, supra,* 201 Cal.App.4th at p. 1461; *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 229; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1062; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048; *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293; *Baughman v. State of California, supra,* 38 Cal.App.4th at p. 192.)

Following in the same vein, the County argues that because an investigation can be described as a precursor to a criminal prosecution, investigation qualifies as "prosecuting any judicial . . . proceeding" (§ 821.6) — even in a case like this one, where no charges are ever filed and no judicial proceeding is ever prosecuted.  This argument is at odds with the plain

13

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

meaning of the statutory language, not to mention this court's explication of that very same language in *Sullivan* and the substantial body of common law distinguishing the investigation of crime from the wrongful prosecution of a legal action. It likewise ignores the simple reality that investigations need not, and often do not, lead to the institution or prosecution of any proceedings — a fact that ought to serve as a tipoff that the two things are not the same and cannot plausibly be treated as though they were.

To be sure, the facts surrounding the conduct of an investigation and the initiation or conduct of prosecution may sometimes overlap. But the potential for factual overlap between investigations and prosecutions does not justify treating them as one and the same, as the County asks us to do. If a law enforcement officer has initiated an official proceeding, the officer will enjoy immunity for that conduct under section 821.6, regardless of whether the officer's conduct may include certain acts described as investigatory. Where, however, the plaintiff's claim of injury does not stem from the initiation or prosecution of proceedings, section 821.6 immunity does not apply.

**B.**

To the extent the text leaves any room for debate, the legislative history confirms our reading of the statute. (*National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 498.) The history shows that section 821.6 was primarily designed to codify a preexisting common law immunity against malicious prosecution claims. The history contains no suggestion that the statute was also designed to create a new and much broader immunity for police officers engaged in investigation.

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

Before the Government Claims Act was enacted, police officers were generally immune from civil liability for malicious prosecution, but not for other negligent or wrongful acts committed in the course of their duties. (*Sullivan, supra,* 12 Cal.3d at p. 720; *Davis v. Kendrick* (1959) 52 Cal.2d 517, 518–519; A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) pp. 415–416, 433.) As noted, after this court abolished the common law doctrine of governmental immunity in *Muskopf,* the Legislature charged the California Law Review Commission with recommending appropriate statutory provisions to govern governmental tort liability. Section 821.6 was one of several provisions proposed by the Commission. (See Recommendation, *supra,* 4 Cal. Law Revision Com. Rep. at p. 845 [proposed § 821.6]; Sen. Bill No. 42 (1963 Reg. Sess.) as introduced Jan. 10, 1963, § 1 [identical text].) The Legislature enacted the Commission's proposed section 821.6 without change. (See Stats. 1963, ch. 1681, § 1, p. 3270.)

In its report to the Legislature, the Commission commented on the understanding behind each proposed provision, including section 821.6. The Senate Committee on Judiciary made minor revisions to the Commission's comment on section 821.6 and issued the modified comment as reflective of its own intent in approving the statute: "The California courts have repeatedly held public entities and public employees immune from liability for [the conduct immunized by the proposed statute]. *Dawson v. Martin,* 150 Cal.App.2d 379, 309 P.2d 915 (1957) (public entities). *White v. Towers,* 37 Cal.2d 727, 235 P.2d 209 (1951); *Coverstone v. Davies,* 38 Cal.2d 315, 239 P.2d 876 (1952); *Hardy v. Vial,* 48 Cal.2d 577, 311 P.2d 494 (1957) (public employees). This section continues the existing immunity of public employees; and, because no statute imposes

15

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

liability on public entities for malicious prosecution, public entities likewise are immune from liability." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) 2 Sen. J. (1963 Reg. Sess.) p. 1890.)[4]

As we explained in *Sullivan*, the comment indicates that section 821.6 was designed to continue preexisting law immunizing public employees against liability for malicious prosecution. (*Sullivan*, *supra*, 12 Cal.3d at pp. 719–720.) The common law immunity cases cited in the comment "all involve the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff" — that is, acts that would support a finding the defendant played a sufficient role in bringing about the prosecution, as a malicious prosecution claim requires. (*Id.* at p. 720; see *id.* at p. 720, fn. 9 [discussing common law cases].) The same cases demonstrate that claims predicated on conduct other than the prosecution of official proceedings fell outside the common law immunity and were dealt with on the merits. (See *Coverstone v. Davies*, *supra*, 38 Cal.2d at pp. 319–322 [rejecting malicious prosecution claim based on immunity but dealing with trespass, assault and battery, conspiracy, and false arrest and imprisonment claims on the merits]; *Dawson v. Martin*, *supra*, 150 Cal.App.2d at p. 381 [rejecting malicious prosecution claim based on immunity

---

[4]    The Assembly Committee on Ways and Means thereafter reviewed both the Commission's comments and the Senate Committee on Judiciary's modifications to those comments. It offered its own revisions to some comments — none affecting any provision at issue here — and otherwise endorsed the Commission's and Senate Committee's views as reflective of its own "intent . . . in approving the various provisions of Senate Bill No. 42." (Assem. Com. on Ways & Means, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) 3 Assem. J. (1963 Reg. Sess.) p. 5439.)

but dealing with false arrest and imprisonment claims on the merits].)

Other available legislative history underscores the point that section 821.6 was principally directed to malicious prosecution claims and not other types of tort claims. In the Commission's proposal to the Legislature, section 821.6, which conferred prosecution immunity on public employees, would have been accompanied by a separate provision, proposed Government Code section 816, which would have imposed liability on public entities if an employee, "acting within the scope of his employment, instituted or prosecuted a judicial or administrative proceeding without probable cause and with actual malice." (Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at p. 841.) In explaining the proposal, the Commission described it entirely in terms of its effect on the liability of public employees and employers for malicious prosecution: "The immunity from liability for malicious prosecution that public employees now enjoy should be continued so that public officials will not be subject to harassment by 'crank' suits. However, where public employees have acted maliciously in using their official powers, the injured person should not be totally without remedy." (*Id.* at p. 817.) The Commission went on: "Under the previous law, public employees were not liable for malicious prosecution. *White v. Towers*[, *supra*, 37 Cal.2d 727]. This immunity is continued by Section 821.6. But under ... Section 816, the public entity employing the particular employee may be held liable." (*Id.* at p. 841.) The Legislature did not, however, enact the Commission's proposed section 816 establishing malicious prosecution liability for public entities. The Senate Committee on Judiciary explained that the provision was deleted from the

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

bill to restore "pre-*Muskopf* law, and both public entities (Sections 815 and 815.2) and public employees (Section 821.6) are immune from liability for malicious prosecution." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42, *supra*, 2 Sen. J. (1963 Reg. Sess.) p. 1888.)

The available history, in short, indicates that section 821.6 was designed primarily to preserve the existing common law immunity for conduct that might otherwise support a malicious prosecution action. This immunity, we observed in *Sullivan*, did not extend to the act challenged there, consisting of "holding of a person in jail beyond his term," which had never before given rise to a malicious prosecution finding. (*Sullivan, supra,* 12 Cal.3d at p. 720.) Neither has the conduct challenged here — the investigation of a potential crime, unconnected to the filing of any charges — ever formed the basis of a malicious prosecution finding. Section 821.6 does expand the scope of immunity to include any claim of injury caused by wrongful prosecution, even if the prosecution is merely negligent and not malicious. But neither text nor legislative history lends support to the County's argument that section 821.6 covers claims of injury caused by acts that are merely investigatory and unconnected to the prosecution of any official proceeding.

## C.

The County argues that policy considerations favor a broader reading of section 821.6. We are unpersuaded.

The County's arguments invoke language from cases discussing the common law immunity of public employees from claims of malicious prosecution. In *White v. Towers, supra,* 37 Cal.2d 727, the defendant, a Fish and Game Commission investigator, swore out affidavits that caused state and federal

18

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

prosecutions of the plaintiff; after all charges were dismissed, the plaintiff sued for malicious prosecution. (*Id.* at pp. 728–729.) We held that common law immunity extends to peace officers sued for injuries arising from an alleged malicious prosecution, explaining: "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm." (*Id.* at pp. 729–730.) To avoid such a breakdown, "experience has shown that the common good is best served by permitting law enforcement officers to perform their assigned tasks without fear of being called to account in a civil action for alleged malicious prosecution." (*Id.* at p. 730.) Such immunity " 'is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service.' " (*Id.* at p. 732.)

Similarly, in *Hardy v. Vial, supra,* 48 Cal.2d 577, we held that school officials were entitled to common law immunity in a malicious prosecution action brought by a professor who claimed the defendants had wrongfully instituted administrative proceedings to have him fired from his position. Describing the rationale for official immunity more generally, we quoted Judge Learned Hand: " '[I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

subject those who try to do their duty to the constant dread of retaliation.' " (*Id.* at p. 583, quoting *Gregoire v. Biddle* (2d Cir. 1949) 177 F.2d 579, 581.)

The Courts of Appeal have relied on these passages in *White* and *Hardy* as justification for extending immunity under section 821.6 beyond wrongful prosecution to all manner of other torts. (*Leon, supra,* 64 Cal.App.5th at pp. 847, 855–856; *Doe v. State of California, supra,* 8 Cal.App.5th at p. 844; *Amylou R., supra,* 28 Cal.App.4th at p. 1213; *Citizens Capital Corp. v. Spohn, supra,* 133 Cal.App.3d at p. 889.) Emphasizing the potential chilling effect of suits like this one might have on legitimate law enforcement investigative activity, the County invites us to do likewise.

We decline the invitation. For one thing, the County overreads *White* and *Hardy.* *White* and *Hardy* afforded immunity only from claims based on wrongful institution of proceedings; neither case purported to recognize a sweeping immunity for any and all acts police officers may perform within the scope of their employment. And while each case did discuss the societal benefits of officer immunity, each also discussed the substantial considerations on the other side of the balance, including the hardship to individuals who may be left without an effective remedy for harm they have suffered. (*White v. Towers, supra,* 37 Cal.2d at p. 730; accord, *Hardy v. Vial, supra,* 48 Cal.2d at p. 583 [" 'There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative' "], quoting *Gregoire v. Biddle, supra,* 177 F.2d at p. 581.)

20

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

In any event, the legal landscape has changed considerably since our common law decisions in *White* and *Hardy*. Since then, the Legislature enacted a comprehensive statutory scheme that wipes the slate clean of common law liabilities and immunities and replaces them with statutory provisions specifying the extent of liability or immunity. (See Gov. Code, §§ 815, 815.2, 820.) In enacting section 821.6, the Legislature conferred absolute immunity against claims based on injuries caused by wrongful prosecutions, but not other types of injuries inflicted in the course of law enforcement investigations. The scope of the statute reflects the Legislature's considered judgment about how to balance the relevant policy considerations at stake, and we are bound to give effect to it.

It bears some emphasis, however, that section 821.6 is not the only provision of the Government Claims Act capable of addressing the concerns the County now raises. For instance, in enacting the Government Claims Act, the Legislature provided for public entity defense of claims and payment of judgments against public employees. (Gov. Code, §§ 825–825.6.) As we have previously recognized, these provisions alleviate the kinds of difficulties we outlined in *Hardy*: they mean that "[t]he public employee need not suffer concern over the possibility that he will be compelled to finance and oversee a tort suit filed against him personally" and "faces only a slim danger of ultimate personal liability; such liability attaches only in the rare instances of injuries arising from acts either outside the scope of employment or performed with actual fraud, corruption, or malice." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 791–792.)

In addition, various provisions of the Act confer immunity for official acts other than the institution or prosecution of official proceedings; the scope of immunity conferred by each provision is tailored to the relevant circumstances. The "most significant" of the Act's immunity provisions confers a general immunity for discretionary acts taken within the scope of authority. (Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at p. 812.) This immunity was long recognized at common law (*Caldwell v. Montoya*, *supra*, 10 Cal.4th at p. 979; see, e.g., *Downer v. Lent* (1856) 6 Cal. 94, 95) and preserved in Government Code section 820.2 (Recommendation, at p. 843; see *Caldwell*, at p. 980). But the Act also contains other, more targeted immunity provisions addressing what the Commission described as specific types of discretionary acts. (Gov. Code, §§ 820.4–821.8; see Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at pp. 843–845; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42, *supra*, 2 Sen. J. (1963 Reg. Sess.) pp. 1889–1890.) These provisions include Government Code section 820.4, which confers immunity for any "act or omission, exercising due care, in the execution or enforcement of any law," though not for "false arrest or false imprisonment." These provisions also include Government Code section 821, which expressly immunizes the "failure to enforce an enactment." (See Recommendation, at p. 844 [provision continues existing common law immunity for, inter alia, failure to arrest, citing *Rubinow v. County of San Bernardino* (1959) 169 Cal.App.2d 67].)

Depending on the circumstances, these and other immunity provisions may apply to certain investigatory actions of law enforcement officers even if section 821.6's absolute immunity does not apply. Ultimately, although the County may

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

prefer section 821.6's absolute immunity to the other possibilities, this preference does not justify an expansive reading of that immunity that accords with neither its text nor its history.

## D.

Little of what we say today is new; we reached essentially the same conclusions in *Sullivan, supra,* 12 Cal.3d 710. Relying on the text and legislative history, this court adopted a "narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution actions." (*Id.* at p. 721; see *id.* at pp. 719–722.) We restate that conclusion here with this clarification: Section 821.6 applies to claims of injury arising from a public employee's initiation or prosecution of an official proceeding, whether the act was allegedly done with malice and without probable cause, as required for a malicious prosecution action, or was allegedly tortious for other reasons.

According to the County, *Sullivan* decided only that false imprisonment is not immunized under section 821.6 and thus left open the question whether the statute might apply to other torts, such as negligent infliction of emotional distress, and other actions, such as investigations preliminary to any potential prosecution. The Court of Appeal below relied on a similar rationale to distinguish *Sullivan,* as have many of the Courts of Appeal that have applied section 821.6 to claims other than wrongful prosecution. (*Leon, supra,* 64 Cal.App.5th at p. 854; see *Gillan v. City of San Marino, supra,* 147 Cal.App.4th at pp. 1048–1049; *Jenkins v. County of Orange, supra,* 212 Cal.App.3d at p. 283; cf. *Amylou R., supra,* 28 Cal.App.4th at p. 1211 & fn. 2 [citing *Sullivan,* but without distinguishing it].)

LEON v. COUNTY OF RIVERSIDE

Opinion of the Court by Kruger, J.

But our analysis in *Sullivan* was not limited to the distinction between malicious prosecution and false imprisonment; we addressed the intended scope of section 821.6 more generally, concluding the statute was intended to continue the common law immunity for malicious prosecution alone. (See *Sullivan, supra*, 12 Cal.3d at pp. 719–721.) While the discussion in *Sullivan* did focus on the lack of immunity for false imprisonment, we ultimately enunciated what we described as a "narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution actions." (*Id.* at p. 721.) We explained that narrow interpretation was consistent with the statute's language and history. (*Id.* at pp. 719–720.) The facts of *Sullivan* may have involved wrongfully holding the plaintiff in confinement beyond his term. But the rationale for our decision was not limited to those facts. The County offers no adequate explanation for concluding otherwise.

In the alternative, the County argues that the Court of Appeal decisions extending section 821.6 immunity to investigatory conduct, including the court's decision in this very case, are consistent with *Sullivan*, properly understood, because they simply "apply, directly or indirectly, the same test applied in *Sullivan* with regard to malicious prosecution — 'whether the defendant was actively instrumental in causing the prosecution.'" But in this case and some others on which the County relies, there was either no prosecution at all or no causal connection between the prosecution and the plaintiff's claimed injuries. Dora is not suing the County and its officers for causing an unjust prosecution, but for the officers' lack of care in handling her late husband's body. Much the same is true of the plaintiffs in, for example, *Amylou R., supra*, 28 Cal.App.4th 1205 (suit over disparaging remarks) and *Baughman v. State of*

24

*California, supra,* 38 Cal.App.4th 182 (suit over destroyed research).

Finally, the County argues that even if *Sullivan* establishes section 821.6 immunity extends only to tortious prosecution claims, "the doctrine of stare decisis should not be mechanically applied," and this court should reconsider *Sullivan* in light of the many Courts of Appeal that have interpreted the immunity more broadly. But as we have discussed, the textual and policy-based arguments on which those decisions rest do not hold up to scrutiny. And "[t]he principles underlying the doctrine of stare decisis apply with special force in the context of statutory interpretation, because the Legislature remains free to alter what we have done." (*Barner v. Leeds* (2000) 24 Cal.4th 676, 686, fn. 2.) We declined in *Barner* to disturb a decades-old construction of the scope of the immunity afforded by Government Code section 820.2; we do the same here with respect to immunity under section 821.6. We reaffirm the holding of *Sullivan, supra,* 12 Cal.3d 710, 719: Section 821.6 protects public employees from liability only for initiation or prosecution of an official proceeding.

To the extent they are inconsistent with this opinion, we disapprove *Doe v. State of California, supra,* 8 Cal.App.5th 832; *Strong v. State of California, supra,* 201 Cal.App.4th 1439; *County of Los Angeles v. Superior Court, supra,* 181 Cal.App.4th 218; *Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE), supra,* 157 Cal.App.4th 1056; *Gillan v. City of San Marino, supra,* 147 Cal.App.4th 1033; *Javor v. Taggart* (2002) 98 Cal.App.4th 795; *Ingram v. Flippo, supra,* 74 Cal.App.4th 1280; *Baughman v. State of California, supra,* 38 Cal.App.4th 182; *Amylou R. v. County of Riverside, supra,* 28

LEON v. COUNTY OF RIVERSIDE
Opinion of the Court by Kruger, J.

Cal.App.4th 1205; *Jenkins v. County of Orange, supra,* 212 Cal.App.3d 278; and *Citizens Capital Corp. v. Spohn, supra,* 133 Cal.App.3d 887.

## IV.

The Court of Appeal upheld the application of section 821.6 to confer absolute immunity on the County for negligent infliction of emotional distress arising out of the alleged mishandling of plaintiff's husband's body. This was error. Because the claim does not concern alleged harms from the institution or prosecution of judicial or administrative proceedings, section 821.6 does not apply.

Section 821.6 prosecution immunity was the only defense the trial court and Court of Appeal addressed, but it was not the only defense the County raised in its motion for summary judgment. Nothing we say addresses these other defenses, including whether Government Code sections 820.2, 820.4, or any other statutory immunity provision may apply.

## V.

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

KRUGER, J.

We Concur:

GUERRERO, C. J.
CORRIGAN, J.
LIU, J.
GROBAN, J.
JENKINS, J.
EVANS, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Leon v. County of Riverside

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 64 Cal.App.5th 837
**Review Granted (unpublished)**
**Rehearing Granted**

**Opinion No.** S269672
**Date Filed:** June 22, 2023

**Court:** Superior
**County:** Riverside
**Judge:** Daniel A. Ottolia

**Counsel:**

Law Office of Steven Zwick, Steven Zwick, James Alquist; Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiff and Appellant.

Law Offices of Ali Taheripour, Ali Taheripour; Law Offices of Les T. Zador and Leslie T. Zador for Ali Taheripour and Leslie T. Zador as Amici Curiae on behalf of Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Arthur K. Cunningham, Jeffry A. Miller and Lann G. McIntyre for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard L. Antognini
Law Office of Richard L. Antognini
2485 Notre Dame Boulevard, Suite 370-45
Chico, CA 95928-7167
(916) 295-4896

Leslie T. Zador
Law Offices of Les T. Zador
15760 Ventura Boulevard, Suite 700
Encino, CA 91436
(818) 584-3560

Jeffry A. Miller
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street, Suite 1700
San Diego, CA 92101
(619) 233-1006

EXHIBIT B

STATE OF CALIFORNIA

# CALIFORNIA LAW
# REVISION COMMISSION

## RECOMMENDATION

*relating to*

## Sovereign Immunity

_____

### Number 1—Tort Liability of Public Entities
### and Public Employees

January 1963

CALIFORNIA LAW REVISION COMMISSION
School of Law
Stanford University
Stanford, California

## NOTE

This pamphlet begins on page 801. The Commission's annual reports and its recommendations and studies are published in separate pamphlets which are later bound in permanent volumes. The page numbers in each pamphlet are the same as in the volume in which the pamphlet is bound. The purpose of this numbering system is to facilitate consecutive pagination of the bound volumes.

STATE OF CALIFORNIA

# CALIFORNIA LAW REVISION COMMISSION

## RECOMMENDATION

*relating to*

## Sovereign Immunity

_____

### Number 1—Tort Liability of Public Entities and Public Employees

**January 1963**

CALIFORNIA LAW REVISION COMMISSION
School of Law
Stanford University
Stanford, California



EDMUND G. BROWN
*Governor*

STATE OF CALIFORNIA
# CALIFORNIA LAW REVISION COMMISSION

**COMMISSION MEMBERS**

HERMAN F. SELVIN
*Chairman*
333 West 6th Street
Los Angeles 14

JOHN R. McDONOUGH, Jr.
*Vice Chairman*
School of Law
Stanford University

JAMES A. COBEY
*Member of the Senate*
P. O. Box 1229
Merced

CLARK L. BRADLEY
*Member of the Assembly*
802 First National Bank Bldg.
San Jose 13

JOSEPH A. BALL
120 Linden Avenue
Long Beach 2

JAMES R. EDWARDS
399 Arrowhead Avenue
San Bernardino

RICHARD H. KEATINGE
3325 Wilshire Boulevard
Los Angeles 5

SHO SATO
School of Law
University of California
Berkeley

THOMAS E. STANTON, Jr.
221 Sansome Street
San Francisco

ANGUS C. MORRISON
*Ex Officio*
*Legislative Counsel*
3021 State Capitol
Sacramento 14

**COMMISSION STAFF**

JOHN H. DeMOULLY
*Executive Secretary*

JOSEPH B. HARVEY
*Assistant Executive Secretary*

JON D. SMOCK
*Assistant Counsel*

GEORGE S. GROSSMAN
*Administrative Assistant*

Office of Commission and Staff
School of Law
Stanford University
Stanford, California

January 2, 1963

To His Excellency, Edmund G. Brown
   *Governor of California*
   *and to the Legislature of California*

The California Law Revision Commission was authorized by Resolution Chapter 202 of the Statutes of 1957 to make a study to determine whether the doctrine of sovereign or governmental immunity in California should be abolished or revised.

On January 27, 1961, the California Supreme Court, in *Muskopf* v. *Corning Hospital District*, 55 Cal.2d 211, decided that the doctrine of sovereign immunity would no longer protect the State and other public entities in California from civil liability for their torts. At the same time, the Court decided *Lipman* v. *Brisbane Elementary School District*, 55 Cal.2d 224, in which it stated that the doctrine of discretionary immunity, which protects public officers and employees from liability for their discretionary acts, might not protect public entities from liability in all situations where the officers and employees are immune.

In response to these decisions, the Legislature enacted Chapter 1404 of the Statutes of 1961. This legislation suspends the effect of the *Muskopf* and *Lipman* decisions until the ninety-first day after the adjournment of the 1963 Regular Session of the Legislature. At that time, unless further legislative action is taken, the State and other public entities in California will be liable for their torts under the conditions set forth in the *Muskopf* and *Lipman* cases.

Since the decision in the *Muskopf* case, the Commission has devoted substantially all of its time to the study of sovereign immunity. The Commission herewith submits its recommendation on one portion of this subject—tort liability of public entities and public employees. This is one of a series of reports prepared for the 1963 legislative session containing the recommendations of the Commission relating to various aspects of the subject of sovereign immunity. The Commission also has published a research study relating to sovereign immunity prepared by its research consultant, Professor Arvo Van Alstyne of the School of Law, University of California at Los Angeles.

804      CALIFORNIA LAW REVISION COMMISSION

In formulating its recommendations concerning sovereign immunity, the Commission first prepared a series of tentative recommendations, each of which related to a different aspect of the subject. These tentative recommendations were widely distributed, and comments and suggestions were solicited from all persons and organizations who expressed an interest in this subject. The State Bar appointed a special committee to consider the recommendations of the Commission relating to sovereign immunity, and this Committee has provided the Commission with helpful comments and suggestions. In addition, representatives of various public entities and other interested persons have attended the meetings of the Commission as observers. All comments and suggestions received were considered by the Commission in preparing its final recommendations.

Although the Commission has devoted the major portion of its time during the past two years to the study of sovereign immunity, the subject is so vast that a complete study of all its aspects could not be completed prior to the 1963 legislative session. The recommendations prepared for the 1963 legislative session are designed to meet the most pressing problems in regard to governmental tort liability. Other problems remain to be solved in the areas of activity already studied; and there are other areas of activity, where claims of liability arise less frequently, that require attention. Accordingly, the Commission proposes to continue its study of this subject and to make recommendations to subsequent legislative sessions dealing with the remaining problems. Among the topics that may be the subject of future study and recommendation by the Commission are liability without fault (including liability for ultrahazardous activities), specific or preventive relief against public entities and public employees, and liability for injuries to reputational interests (including defamation and invasion of privacy).

Respectfully submitted,

HERMAN F. SELVIN, *Chairman*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| BACKGROUND | 807 |
| The Need for Legislation | 807 |
| Drawing Standards for Governmental Liability | 810 |
| The Legislation Proposed by the Commission | 811 |
| Determination of basic statutory approach | 811 |
| Formulation of rules governing liability | 811 |
| RECOMMENDATIONS | 814 |
| General Provisions Relating to Liability | 814 |
| Dangerous Conditions of Public Property | 819 |
| Background | 819 |
| Effect of the *Muskopf* decision | 821 |
| Recommendation | 821 |
| Police and Correctional Activities | 826 |
| Fire Protection | 827 |
| Medical, Hospital and Public Health Activities | 829 |
| Tort Liability Under Agreements Between Public Entities | 831 |
| Disposition of Pending Claims and Actions | 832 |
| Amendments and Repeals of Existing Statutes | 833 |
| PROPOSED LEGISLATION | 834 |

# RECOMMENDATION OF THE CALIFORNIA LAW REVISION COMMISSION

### *relating to*

## SOVEREIGN IMMUNITY

## Number 1—Tort Liability of Public Entities and Public Employees

## BACKGROUND

On January 27, 1961, the California Supreme Court, in *Muskopf* v. *Corning Hospital District*,[1] decided that the doctrine of sovereign immunity would no longer protect public entities[2] in California from civil liability for their torts. At the same time, the Supreme Court decided *Lipman* v. *Brisbane Elementary School District*,[3] in which it stated that the doctrine of discretionary immunity, which protects public employees[4] from liability for their discretionary acts, might not protect public entities from liability in all situations where the employees are immune.

In response to these decisions, the Legislature enacted Chapter 1404 of the Statutes of 1961. This legislation suspends the effect of the *Muskopf* and *Lipman* decisions until the ninety-first day after the final adjournment of the 1963 Regular Session of the Legislature. At that time, unless further legislative action is taken, the public entities of California will be liable for their torts under the conditions set forth in the *Muskopf* and *Lipman* decisions.

## The Need for Legislation

Prior to the *Muskopf* and *Lipman* decisions, extensive legislation relating to the subject of governmental liability or immunity had been enacted. This legislation expresses a variety of conflicting policies. Some statutes create broad immunities for certain entities and others create wide areas of liability. Some apply to many public entities and others apply to but one. In some cases, statutes expressing conflicting policies overlap.[5] Even where statutes impose liability on public entities, they do so in a variety of inconsistent ways. Some entities are

---

[1] 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961).

[2] As used in this recommendation "public entities" includes the State and all other public entities.

[3] 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (1961).

[4] As used in this recommendation: "employee" includes an officer, agent or employee, but not an independent contractor; and "employment" includes office, agency or employment.

[5] For example, Streets and Highways Code Sections 5640 and 5641 (part of the Improvement Act of 1911) provide that cities, counties, resort districts and all corporations organized for municipal purposes are immune from liability for injuries caused by street and sidewalk defects. It is likely that these immunity provisions apply to several other kinds of districts, for the Improvement Act of 1911 has been incorporated by reference in many other statutes. But Government Code Section 53051 provides that cities, counties and school districts are liable for such dangerous conditions. As the Government Code section was last enacted, it has impliedly repealed the Streets and Highways Code sections insofar as cities and counties are concerned, but not insofar as resort districts and corporations organized for municipal purposes are concerned.

liable directly for the negligence of their employees. Others are not liable directly, but are required to pay judgments recovered against their employees even where the judgments result from malicious acts.

Where statutes are not applicable, the courts have determined liability on the basis of whether the injury was caused in the course of a governmental or proprietary activity. Thus, if the injury occurred in a swimming pool (a ''governmental'' activity), the public entity was not liable; but if the injury occurred on a golf course (a ''proprietary'' activity), the public entity was liable.

Even where a public entity is immune from liability for a negligent or wrongful act or omission, the public employee who acted or failed to act is often personally liable; and many public entities have assumed the cost of insurance protection for their employees against this liability.

Thus, even before the *Muskopf* and *Lipman* cases were decided, there was a pressing need for comprehensive legislation to deal with the problems of governmental liability and immunity.

The effect of the *Muskopf* and *Lipman* decisions on the existing statutes is not clear. Statutes that impose liability upon public entities in particular areas of activity may be construed either as limitations on the liability that would exist under these decisions or, in cases where a rule is declared that is broader than the common law rule that would be applicable under these decisions, as extensions of governmental liability.

The problem of reconciling the *Muskopf* and *Lipman* decisions with the existing statutory law could be met by repealing the existing statutes. Then the courts could decide all cases under the general principle that a public entity is liable for its torts. The federal government and some of the states have taken this approach. Thus, in some jurisdictions, a statute merely declares that the government is not immune from liability for its torts,[6] while in others, the courts have declared a similar rule.[7]

This solution to the problem, though, is fraught with difficulties. No precise standards for the determination of the liability of government have as yet been defined by the California courts. Hence, it is impossible to ascertain how large the potential liability would be if the *Muskopf* and *Lipman* cases were permitted to determine all governmental liability. The suggestion in the *Lipman* case that public entities may be liable for discretionary actions of public employees has given rise to fears that governmental liability may be expanded to the extent that essential governmental functions will be impaired. Experience in states which have left the limits of liability to be determined by the courts has shown that liability insurance to protect the financial integrity

[6] United States (28 U.S.C. §§ 1346, 2671-2680) ; New York (N.Y. Ct. Cl. Act § 8—State only) ; Illinois (37 Ill. Ann. Stat. §§ 439.1-439.25 (Smith-Hurd Supp. 1961) —State only) ; Washington (Wash. Stats. 1961, Ch. 136—State only) ; Kentucky (Ky. Rev. Stat. § 44.070—State, negligence only) ; North Carolina (N.C. Gen. Stat. § 143-291—State, negligence only) ; Alaska (Alaska Comp. Laws Ann. § 56-2-2—local entities only, as construed in City of Fairbanks v. Schaible, 375 P.2d 201 (Alaska 1962) ; Alaska Comp. Laws Ann. § 56-7-1 *et seq.*—State only) ; Hawaii (Hawaii Rev. Laws § 245A-1 *et seq.*—State only).
[7] New York (Bernardine v. City of New York, 294 N.Y. 361, 62 N.E.2d 604 (1945)—local entities only) ; Florida (Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 60 A.L.R.2d 1193 (Fla. 1957)—local entities only) ; Illinois (Molitor v. Kaneland Community Unit Dist., 18 Ill.2d 11, 163 N.E.2d 89 (1959)—local entities only) ; Michigan (Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961)) ; Wisconsin (Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962)).

Case 3:22-cv-01616-AGS-DDL   Document 89   Filed 06/26/23   PageID.6418   Page 51 of 128

of small public entities is at times prohibitively expensive or impossible to obtain when there is no defined limit to the potential extent of liability. As a result, some of these states have enacted legislation that substantially curtails governmental liability.

The courts, of course, have recognized that the liability of government cannot be unlimited. In the *Muskopf* case, the Supreme Court stated that it is not a tort for government to govern. In other jurisdictions where there has been a general waiver of sovereign immunity, the courts have worked out the limits of liability on a case by case basis over a period of years. Thus, in New York, the courts have declared that public entities are not liable for failing to enforce the law, for negligently inspecting buildings or for improperly issuing building permits. If the limits of governmental liability are not specified by statute in California, our courts will have to define the limits of such liability much as the courts in New York have been required to do. Under this process, though, many years will pass before the extent of governmental liability can be determined with certainty. Many cases must be tried and processed through the appellate courts. Large amounts of both private and public money must be fruitlessly expended in prosecuting and defending actions where the governmental defendant cannot be held liable. And in the meantime, while the potential liability is yet unknown, the financial stability of many public entities may be unprotected because of the unavailability of insurance at rates that they can afford to pay.

There is an immediate need, therefore, for the enactment of comprehensive legislation stating in considerable detail the extent to which public entities will be liable when the legislation suspending the effect of the *Muskopf* and *Lipman* decisions expires. In preparing this legislation, California may profit from the experience of New York and the federal government in administering their governmental tort laws. The difficulties the New York and federal courts have experienced in defining the limits of liability may be avoided here to a considerable extent by the statement of these limits in statutory form. Where the New York and federal courts have reached sound conclusions, the rules declared may be enacted here so that no time or money need be lost in test cases to determine whether the California courts will reach the same conclusions. Where the courts of these jurisdictions have reached unsound conclusions and have either restricted liability unduly or placed burdens on government that impair its ability to perform its vital functions, California can meet the problem by declaring a different rule by statute.

The resulting certainty will be of benefit both to public entities and to persons injured by governmental activities. If the limits of potential liability are known, public entities may plan accordingly, may budget for their potential liabilities, and may obtain realistically priced insurance. Meritorious claims will not be resisted in the hope that the appellate courts will create an additional immunity; and unmeritorious claims will not be pressed in the hope that an existing immunity will be curtailed or that liability will be extended beyond previously established limits.

## Drawing Standards for Governmental Liability

The problems involved in drawing standards for governmental liability and governmental immunity are of immense difficulty. Government cannot merely be made liable as private persons are, for public entities are fundamentally different from private persons. Private persons do not make laws. Private persons do not issue and revoke licenses to engage in various professions and occupations. Private persons do not quarantine sick persons and do not commit mentally disturbed persons to involuntary confinement. Private persons do not prosecute and incarcerate violators of the law or administer prison systems. Only public entities are required to build and maintain thousands of miles of streets, sidewalks and highways. Unlike many private persons, a public entity often cannot reduce its risk of potential liability by refusing to engage in a particular activity, for government must continue to govern and is required to furnish services that cannot be adequately provided by any other agency. Moreover, in our system of government, decision-making has been allocated among three branches of government—legislative, executive and judicial—and in many cases decisions made by the legislative and executive branches should not be subject to review in tort suits for damages, for this would take the ultimate decision-making authority away from those who are responsible politically for making the decisions.

The courts have recognized these problems where tort actions have been brought against public employees for injuries caused by their activities. Where the injury is caused by a discretionary act of a public employee that was committed within the scope of the authority delegated to him, the public employee has been held immune from liability. The courts have said that this immunity is necessary because the employee's fear of personal liability might otherwise inhibit him from carrying out his public duties with diligence. Similar considerations justify a comparable immunity where the claim is against the government itself instead of an employee of the government, for rising expenses and a limited tax base may make a public employee as apprehensive of the effect of governmental liability upon the budget he must administer as he is of the effect of personal liability upon his own resources.

Yet it would be harsh and unjust to deny compensation to all persons injured as the result of the wrongful or negligent acts or omissions of public employees. Government operates for the benefit of all; hence, it is reasonable to expect that all should bear some of the burden of the injuries that are wrongfully inflicted by the government. The basic problem is to determine how far it is desirable to permit the loss distributing function of tort law to apply to public entities without unduly frustrating or interfering with the desirable purposes for which such entities exist.

## The Legislation Proposed by the Commission

**Determination of basic statutory approach.** The initial question to be decided in formulating a legislative plan to govern the tort liability of public entities is whether they should be liable only as made liable by specific enactment [8] or whether they should be made liable for all damages and injuries caused by their activities except as such liability is limited or conditioned by statute.

A statute imposing liability with specified exceptions would provide the governing bodies of public entities with little basis upon which to budget for the payment of claims and judgments for damages, for public entities would be faced with a vast area of unforeseen situations, any one of which could give rise to costly litigation and a possible damage judgment. Such a statute would invite actions brought in hopes of imposing liability on theories not yet tested in the courts and could result in greatly expanding the amount of litigation and the attendant expense which public entities would face. Moreover, the cost of insurance under such a statute would no doubt be greater than under a statute which provided for immunity except to the extent provided by enactment, since an insurance company would demand a premium designed to protect against the indefinite area of liability that exists under a statute imposing liability with specified exceptions.

Accordingly, the legislation recommended by the Commission provides that public entities are immune from liability unless they are declared to be liable by an enactment. This will provide a better basis upon which the financial burden of liability may be calculated, since each enactment imposing liability can be evaluated in terms of the potential cost of such liability. Should further study in future years demonstrate that additional liability of public entities is justified, such liability may then be imposed by the Legislature within carefully drafted limits.

**Formulation of rules governing liability.** In its formulation of rules to govern the liability of public entities and public employees, the Commission has studied a number of areas of potential liability: dangerous conditions of public property; police and correctional activities; suppression of mobs and riots; fire protection; medical, hospital and public health activities; park and recreational activities; and operation of motor vehicles. These are the areas where experience in other states and under the Federal Tort Claims Act has shown that claims of liability are most apt to arise. In each area, the Commission has sought to determine how the interest of the public in effective governmental administration should be balanced against the need for providing compensation to those injured by the activities of government. From this study of particular areas of governmental activity, the Commission has concluded that certain problems recur and that the rule formulated to meet a problem in one area may be readily applied to similar problems in other areas of governmental activity. On the other hand, in some areas of activity there are unique problems that require specific legislative solutions. Therefore, the Commission recommends

[8] As used in this recommendation, "enactment" means a formal legislative or quasi-legislative statement of the law such as a constitutional provision, statute, charter, ordinance or regulation.

the enactment of legislation containing sections of general application to all activities of public entities and, in addition, a number of sections stating special rules applicable to problems requiring separate treatment.

One of the most important provisions in the recommended legislation is that a public entity is liable for a tort of its employee within the scope of his employment to the extent that the employee is personally liable and, unless an enactment declares a contrary rule, is immune from liability for an act or omission of its employee if the employee himself is immune from liability. The liability of public employees is an existing liability and one for which insurance companies now provide insurance coverage. By imposing vicarious liability only to the extent that public employees are personally liable, the provision adopts a liability of ascertained or ascertainable limits. Thus, the Commission's recommendation avoids the problems inherent in a statute (such as those adopted in New York and by the federal government) that waives immunity from liability generally and attempts to specify exceptions to governmental liability. For example, this provision forecloses the possibility that government may be liable for discretionary acts for which public employees are immune, unless such liability is imposed by a specific legislative declaration.

Because a public entity is, as a general rule, immune from liability if the public employee who caused the injury is immune, the provision imposing vicarious liability on public entities is substantially qualified by a number of other provisions providing for the immunity of public employees in particular cases. The most significant of the immunity provisions contained in the recommended legislation is one that provides that a public employee is not liable for his discretionary acts within the scope of his employment. Under existing law, public employees enjoy this discretionary immunity; but the statutory statement of the rule will assure its continued existence. Although the case law has spelled out in some detail the extent of the discretionary immunity of public employees, there are instances where the law is not clear. The Commission therefore recommends statutory provisions that will clarify the scope of discretionary immunity. These provisions will, to a considerable extent, eliminate the need to determine the scope of discretionary immunity by piecemeal judicial decisions. The judicial process, by its very nature, can deal only with the isolated problems of individual citizens which from time to time are litigated and appealed. To wait for the fabric of the law to shape itself in this fashion would be slow, unpredictable and expensive.

The Commission has also concluded that under certain circumstances a public entity should be liable although no employee is personally liable. For example, such liability should exist in some cases where public property is in a dangerous condition or where a public entity fails to exercise reasonable diligence to comply with an applicable statute or regulation which establishes minimum safety standards for public equipment or public improvements. Such liability should exist, however, only where the liability is created by an enactment. In the absence of such an enactment, a public entity should not be liable unless its employee is personally liable.

The legislation recommended by the Commisison will meet the most pressing problems in regard to liability that public entities will face upon the expiration of the statute suspending the effect of the *Muskopf* and *Lipman* decisions. The subject of sovereign immunity is so vast, however, that a complete study of all aspects of the subject could not be completed prior to the 1963 session of the Legislature. Other problems remain to be solved in the areas of activity already studied; and there are other areas of activity, where claims of liability arise less frequently, which require attention. Accordingly, the Commission intends to continue its study of sovereign immunity so that recommendations may be submitted to subsequent legislative sessions to deal with these remaining problems.

## RECOMMENDATIONS

### General Provisions Relating to Liability

1. For the reasons stated above,[1] a statute should be enacted providing that public entities are not liable for torts unless they are declared to be liable by an enactment. The Commission is recommending the enactment of several statutes imposing liability upon public entities within limits that are carefully described. These limits would have little meaning if liability could be imposed beyond the area defined in these statutes.

2. A public entity should be liable for a negligent or wrongful act or omission[2] of its employee within the scope of his employment[3] to the extent that the employee is personally liable for such act or omission. This would impose upon public entities, in all areas of governmental activity, the responsibility for the tortious acts of their employees to which they are now subject in regard to "proprietary" activities.

Under the pre-*Muskopf* law, the immunity of public entities for "governmental" activities did not protect the public employees engaged in these activities. Thus, the public employee, unlike his counterpart in private industry, was exclusively exposed to all of the liability risks created by his employer's enterprise. Many statutes have been enacted to remove from public employees the burden of bearing personally these risks incurred for the benefit of the public employer. Some statutes require certain public entities to pay judgments against their employees. Some impute the negligence of public employees to their employers. School districts are required to insure their employees against liability for negligence. These statutory protections, though, are haphazard and incomplete. Most apply only to liability for negligence; yet, there is no substantive difference between many so-called "intentional" torts and negligence. For example, in many cases a person may commit an assault because he has made a negligent determination of the amount of force he is entitled to use under the circumstances, or a person may be guilty of false arrest or false imprisonment because he has made a negligent, *i.e.*, an unreasonable, determination of whether there is probable cause for an arrest. A public employee should be entitled to as much protection in the one situation as he is in the other.

Under this recommendation, the public employee would no longer be required to assume personally, to the exclusion of his employer, all of the liability risks created by his public employment, for his employer would be subjected to the same risks. The Commission hereafter recom-

---

[1] See p. 811 *supra*.

[2] The phrase "negligent or wrongful act or omission" embraces any act or failure to act, whether negligent, intentionally tortious or criminal. The fact that the act done is a serious crime is, of course, a factor indicating that it is not in the scope of employment.

[3] The phrase "scope of his employment" is intended to make applicable the general principles that the California courts use to determine whether the particular kind of conduct is to be considered within the scope of employment in cases involving actions by third persons against the employer for the torts of his employee.

( 814 )

mends that public entities be immune from liability under many circumstances; but in each case where the public entity is immune, the public employee also is immune so that the public employee is not again required to assume personally all of the liability risks of governmental enterprise.

For some entities, this recommendation would expand their liability insofar as their "governmental" activities are concerned. But, for many other entities, this recommendation would constitute little or no extension of their existing liability. School districts and reclamation districts are now generally liable for the negligence of their employees. Certain flood control districts are generally liable for the negligence of their trustees. Community services districts, county water districts, various water agencies and several other districts are required to pay any judgments recovered against their employees for acts or omissions committed in the service of the district. Irrigation districts and California water districts must pay judgments recovered against their officers. Thus, under existing statutes, over 2,400 public entities in California are financially responsible for the negligence of some or all of their employees, and many of these entities are financially responsible for all torts of their employees. In addition, under existing Vehicle Code Section 17001, all public entities in the State are vicariously liable for the negligent operation of motor vehicles by their employees; and cities, counties and school districts are liable under Government Code Section 53051 for injuries caused by dangerous conditions of public property that have been negligently created or permitted to remain. The Commission's recommendation would extend the principle of vicarious liability that underlies these statutes to all public entities in the State and to all areas of governmental activity.

This recommendation, too, obviates the necessity for myriad statutes imposing liability upon public entities for ordinary "run-of-the-mill" torts that may be committed in various areas of governmental activity. And, if there were no provision such as that here recommended, the existing liability of public entities for their "proprietary" activities would be virtually eliminated.

3. A public entity should be immune from liability for the act or omission of its employee if the employee himself is immune from liability. This recommendation would, for example, make applicable to public entities the discretionary immunity doctrine now applicable only to public employees. Under this doctrine, public employees are not liable for their acts or omissions within the scope of their discretionary authority. Thus, judges are immune from liability for their judicial acts, administrative officials are immune from liability for suspending or revoking licenses, health officers are immune from liability for deciding not to quarantine, and city officers are not liable for awarding a franchise.

A dictum in the *Lipman* case stated that public entities may be liable in some situations where public employees enjoy an immunity. The Commission agrees that there are some instances where such should be the rule. For example, a public entity is made liable under the recommended legislation for its failure to exercise reasonable diligence to comply with a mandatory statute or enactment. In the absence of an enactment imposing such liability, however, the public entity should

816 CALIFORNIA LAW REVISION COMMISSION

not be liable for the discretionary act or omission of a public employee. In order to clarify the limits of the discretionary immunity, the Commission has considered the application of the doctrine in areas where claims of liability most often arise and recommends specific statutory provisions that will indicate whether or not liability should exist in particular situations. Where no specific provision covers a particular case, the discretionary immunity developed or to be developed by the cases in regard to the personal liability of public employees will be the standard of immunity for public entities.

The Commission recognizes that occasionally the application of the discretionary immunity doctrine may seem harsh and unfair—as, for example, when persons are denied all relief in those rare cases where injuries are caused by deliberate and malicious abuses of governmental authority. The Commission, in its continuing study of sovereign immunity, will undertake a study of other areas where the discretionary immunity doctrine applies to determine whether further modifications of the doctrine should be made.

4. Public entities should be liable for the tortious acts and omissions of independent contractors to the same extent as private persons, for they should not be able to escape their legal responsibilities by contracting for the performance of work that is likely to lead to injury. Under existing law, private parties and public entities have been held liable for the negligence of an independent contractor when the contractor is performing a nondelegable duty, where the hazardous nature of the work called for by the contract may result in injury if care is not exercised, and where the very act the contractor undertakes to perform causes the injury.

5. Public entities should be liable for the damages that result from their failure to exercise reasonable diligence to comply with applicable standards of safety and performance established by statute or regulation. Although decisions relating to the facilities, personnel or equipment to be provided in various public services involve discretion and public policy to a high degree, nonetheless, when minimum standards of safety and performance have been fixed by statute or regulation—as, for example, the duty to supervise pupils under Education Code Section 13557 and the rules of the State Board of Education, the duty to provide lifeguard service at public swimming pools under Health and Safety Code Section 24101.4 and the regulations of the State Department of Public Health, or the duty to meet applicable requirements established by law in the construction of improvements—there should be no discretion to fail to comply with those minimum standards.

6. Under the common law, certain public officers were at times held liable for the acts of subordinate employees even though the officers themselves were innocent of any negligence or other wrong. For most public officers, though, the courts held that *respondeat superior* was inapplicable and that they were not liable for the acts of their subordinates unless they themselves were guilty of some misconduct.

Scattered throughout the codes and the uncodified acts are a large number of statutes limiting the liability of certain public employees for the acts of others. The principle of these statutes should be extended to all public employees.

7. The immunity from liability for malicious prosecution that public employees now enjoy should be continued so that public officials will not be subject to harassment by "crank" suits. However, where public employees have acted maliciously in using their official powers, the injured person should not be totally without remedy. The employing public entity should, therefore, be liable for the damages caused by such abuse of public authority; and, in those cases where the responsible public employee acted with actual malice, the public entity should have the right to indemnity from the employee.

8. Public entities should not be liable for punitive or exemplary damages. Such damages are imposed to punish a defendant for oppression, fraud or malice. They are inappropriate where a public entity is involved, since they would fall upon the innocent taxpayers.

9. An essential function of government is the making and enforcing of laws. The public officials charged with this function will remain politically responsible only if the desirability of enacting and enforcing particular laws is not subject to court review through the device of deciding tort actions. Hence, the statutes should make clear that public entities and their employees are not liable for any injury flowing from the adoption of or failure to adopt any statute, ordinance, or regulation, or from the execution of any law with due care.

For similar reasons, public entities and their employees should not be liable for inadequate enforcement of any law or regulation or for failure to take steps to regulate the conduct of others. The extent and quality of governmental service to be furnished is a basic governmental policy decision. Public officials must be free to determine these questions without fear of liability either for themselves or for the public entities that employ them if they are to be politically responsible for these decisions.

The remedy for officials who make bad law, who do not adequately enforce existing law, or who do not provide the people with services they desire, is to replace them with other officials. But their discretionary decisions in these areas cannot be subject to review in tort suits for damages if government is to govern effectively.

Public entities and public employees should not be liable for failure to make arrests or otherwise to enforce any law. They should not be liable for failing to inspect persons or property adequately to determine compliance with health and safety regulations. Nor should they be liable for negligent or wrongful issuance or revocation of licenses and permits. The government has undertaken these activities to insure public health and safety. To provide the utmost public protection, governmental entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Moreover, if liability existed for this type of activity, the risk exposure to which a public entity would be subject would include virtually all activities going on within the community. There would be potential governmental liability for all building defects, for all crimes, and for all outbreaks of contagious disease. No private person is subjected to risks of this magnitude. In many of these cases, there is some person (other than the public employee) who is liable for the injury, but liability is sought to be imposed on govern-

818            CALIFORNIA LAW REVISION COMMISSION

ment for failing to prevent that person from causing the injury. The Commission believes that it is better public policy to leave the injured person to his remedy against the person actually causing the injury than it is to impose an additional liability on the government for negligently failing to prevent the injury. And where no third party is liable—as in the case where a license application is denied—the aggrieved party has ample means for obtaining relief in the courts other than by tort actions for damages. Far more persons would suffer if government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately.

Sections 50140 through 50145 of the Government Code are inconsistent with the foregoing recommendations. These sections impose absolute liability upon cities and counties for property damage caused by mobs or riots within their boundaries. These sections are an anachronism in modern law. They are derived from similar English laws that date back to a time when the government relied on local townspeople to suppress riots. The risk of property loss from mob or riot activity is now spread through standard provisions of insurance policies. Accordingly, these sections should be repealed.

At common law, public employees were immune from liability for trespasses necessarily committed in the execution of law. However, if the authority of the public employee was abused or if he committed some tortious injury while upon the property, he was personally liable *ab initio* as a trespasser for the entry and all injuries resulting therefrom. A great many statutes have been enacted to modify this common law rule. Generally, they limit the liability of the employee to the damages flowing from his negligent or wrongful act. But there are many other statutes authorizing public employees to enter private land that contain no reference to the liabilities that may be incurred. There should be enacted, therefore, a general statute applicable to all public employees limiting the liability of the entering employee to the damages caused by his negligent or wrongful act.

Government Code Section 1955 now provides public employees with an immunity from liability for enforcing laws later held to be unconstitutional. This section, though, does not provide adequate protection. It is not clear whether it applies to state constitutional provisions, charter provisions, ordinances or administrative regulations. Moreover, it does not provide protection for an employee who in good faith enforces a law later held to be repealed by implication or inapplicable for any other reason. Protection in these situations is also needed. Frequently a statute that apparently applies to a particular situation will be construed narrowly and held inapplicable to avoid constitutional problems. In other instances, a conflict in applicable statutes or regulations will be resolved by an officer acting in good faith in one way, and a court will later hold that the conflict is to be resolved in another and will hold the enactment relied upon by the officer repealed by implication. A public employee should be protected in these situations to the same extent that he is protected when acting in good faith under an unconstitutional statute. Hence, the protection given by Sec-

tion 1955 should be broadened to provide an immunity whenever an employee, exercising due care and acting in good faith and without malice, enforces any constitutional provision, statute, charter provision, ordinance or regulation that is subsequently held to be unconstitutional, invalid or inapplicable.

10. Not only should public entities be directly liable for the torts of their employees, but in cases where an action is brought against a public employee for tortious acts committed in the scope of his employment, the public entity should be required to pay the compensatory damages, but not the punitive damages, awarded in the judgment if the public entity has been given notice of the action and an opportunity to defend it. A number of statutes now require certain public entities to pay judgments against their employees, but none require the employee to give notice and an opportunity to defend to the entity. Yet it seems only fair that if governmental entities are to be bound by judgments, they should have the right to defend themselves by controlling the litigation.

11. Whenever a public entity is held liable for acts of an employee committed with actual fraud, corruption or actual malice, the public entity should have the right to indemnity from the employee. This right to indemnity, however, should not exist in any case where the public entity has undertaken the defense of the employee, unless the public entity has reserved a right of indemnity by agreement with the employee. In conducting an employee's defense, the entity's interest might be adverse to the interest of the employee. For example, if both the employee and the entity were joined as defendants, the public entity's interest might be best served by showing malice on the part of the employee; for if the employee acted with malice the public entity could recover indemnity from the employee for any amounts the entity was required to pay. Hence, the undertaking of an employee's defense should constitute a waiver of the public entity's right to indemnity unless, by agreement between the entity and the employee, the public entity's right of indemnity is reserved.

12. Section 1095 of the Code of Civil Procedure, which requires that damages assessed in a mandate action be levied against the entity represented by the respondent officer, should be amended to apply to all public entities and to agents and employees as well as officers. The section presently applies only to officers of the State, counties and municipal corporations.

## Dangerous Conditions of Public Property

**Background.** Prior to the *Muskopf* decision,[1] a public entity was not liable for an injury resulting from a dangerous condition of public property owned or occupied for a "governmental" purpose, as distinguished from a "proprietary" purpose, unless some statutory waiver of its sovereign or governmental immunity was applicable. The principal statutory waiver was found in the Public Liability Act of 1923,

[1] Muskopf v. Corning Hosp. Dist., 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961).

now Section 53050 *et seq.* of the Government Code.[2] This Act waived immunity from liability for dangerous conditions only for cities, counties and school districts. There is no other general statute waiving governmental immunity from liabilities arising out of dangerous conditions of public property.

Prior to the *Muskopf* decision, however, all public entities were liable for injuries arising out of "proprietary" activities. This liability was based upon common law principles of liability applicable to private individuals. Thus, all public entities were liable for injuries caused by dangerous conditions of property owned or occupied for a proprietary purpose to the same extent that private owners and occupiers of land are liable to trespassers, licensees and invitees for injuries caused by dangerous conditions. In the case of cities, counties and school districts, liability for injuries caused by dangerous conditions of property owned or occupied for a proprietary purpose could be based either on the Public Liability Act or on common law principles of liability of owners and occupiers of land.

There are significant differences in the standard of liability under the Public Liability Act and the common law standard of liability for owners and occupiers of land. There are also striking similarities. Under the Public Liability Act, as well as under common law principles, liability for dangerous conditions of property may exist only if the owner or occupier of the property has created or otherwise knows of the condition. Knowledge of the condition under either the Public Liability Act or common law principles may be actual or constructive. However, under the Public Liability Act, a public entity may be held liable only if the knowledge is that of the governing body or of an officer authorized to remedy the condition. Under common law principles, the knowledge of employees will be imputed to the landowner if such knowledge relates to a matter within the scope of the employee's employment.

As a general rule, liability of a private landowner to a trespasser or licensee for a condition of the property must be based upon wanton or wilful injury and not merely upon negligent failure to discover or correct dangerous conditions. Hence, a private landowner is under no general duty to inspect his land to discover conditions that are apt to expose licensees and trespassers to danger. A private landowner may be held liable to licensees—and possibly to trespassers—for failure to discover and repair dangerous conditions in instrumentalities such as electric power lines where extremely hazardous conditions may arise if inspections and repairs are not made with due diligence.

On the other hand, the Public Liability Act draws no distinctions between invitees, licensees and trespassers. Thus, a public entity may be held liable under that Act for injuries to trespassers and licensees

---

[2] The section of the Public Liability Act that states the conditions of liability for dangerous conditions is Government Code Section 53051. It provides:

    A local agency [defined in Section 53050 as a city, county or school district] is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

      (a) Had knowledge or notice of the defective or dangerous condition.

      (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

caused by conditions of property even though common law principles would not impose liability under the same circumstances.

**Effect of the Muskopf decision.** In the *Muskopf* case, the Supreme Court held that the doctrine of sovereign immunity will no longer be a defense for public entities. Under this decision, public entities other than cities, counties and school districts will probably be liable under common law principles for injuries caused by dangerous conditions of public property—whether such property is owned or occupied in a governmental or proprietary capacity—to the same extent that private landowners are liable.

Just what effect the *Muskopf* decision will have upon the liabilities of cities, counties and school districts for dangerous conditions of property is not certain. Recent decisions of the District Courts of Appeal have indicated that the *Muskopf* decision will have no effect at all—that these entities will be liable for dangerous conditions of property owned or occupied in a governmental capacity only under the conditions specified in the Public Liability Act and will be liable for dangerous conditions of property owned or occupied in a proprietary capacity under both the Public Liability Act and common law principles. These decisions reflect the view that the *Muskopf* decision did not purport to alter the standards of liability set forth in the previous cases interpreting the Public Liability Act, despite the fact that those standards incorporated the distinction between governmental and proprietary functions. In view of the unqualified renunciation of that distinction in *Muskopf*, however, it is possible that the Supreme Court may hold that common law principles furnish an alternative basis for the liability of cities, counties and school districts for dangerous conditions of property owned or occupied in a governmental capacity.

So far as counties, cities and certain other public entities are concerned, the *Muskopf* decision probably will not broaden their liability for dangerous street and sidewalk conditions. Streets and Highways Code Section 5640 grants these entities a statutory immunity from liability for street and highway defects except to the extent that the Public Liability Act imposes liability. Although the *Muskopf* decision may have wiped out the common law immunity of governmental entities, it is likely that it did not affect this statutory immunity.

**Recommendation.** The Law Revision Commission has concluded that the pre-*Muskopf* law relating to the liability of public entities for dangerous conditions of public property used for governmental purposes does not adequately protect persons injured by such conditions, nor does it adequately protect public entities against unwarranted tort liability. Many public entities—including the State—are not liable at all for injuries caused by their negligence in maintaining such property. In the cases where the Public Liability Act is applicable, the liability that has been placed upon public entities has been broader than is warranted by a proper balancing of public and private interests, for the Act does not have any standard defining the duty of an entity to make inspections to discover defects in its property. As a result, public entities have been held liable at times for dangerous conditions which a reasonable inspection system would not have revealed.

Moreover, the pre-*Muskopf* law is unduly and unnecessarily complex. If no changes are made in the existing statutes, it seems unlikely that the situation will be greatly improved when the *Muskopf* decision becomes effective. There is, for example, no reason for having one law applicable to dangerous conditions of publicly owned swimming pools (held to be a governmental activity) and another law applicable to dangerous conditions of publicly owned golf courses (held to be a proprietary activity), or for applying one standard of liability to cities, counties and school districts and another to all other public entities, or for having one law applicable to municipal streets and sidewalks and another law applicable to all other governmental property.

Repeal of the existing statutes relating to dangerous conditions of public property would achieve uniformity in the law and would avoid such inconsistencies as are outlined in the preceding paragraph. Repeal of these statutes, however, is not recommended, for in many respects the Public Liability Act is greatly superior to the common law as it relates to the liabilities of owners and occupiers of land. The Public Liability Act does not draw any distinctions between invitees, licensees and trespassers. Liability may be established simply by showing a breach of duty to keep property in a safe condition and that foreseeable injuries resulted from this breach of duty. The Commission has concluded, therefore, that the general principles of the Public Liability Act should be retained. That statute should be revised, however, to eliminate certain defects and to make it applicable to all public entities and to all public property, whether owned or occupied in a governmental or proprietary capacity.

Accordingly, the Commission recommends the enactment of new legislation that would retain the desirable principles of the Public Liability Act with the following principal modifications:

1. "Dangerous condition" should be defined as a condition of property that exposes persons or property to a substantial risk of injury or damage when the property is used with due care in a manner in which it is reasonably foreseeable that the property will be used. The condition of the property involved should create a "substantial risk" of injury, for an undue burden would be placed upon public entities if they were responsible for the repair of all conditions creating any possibility of injury, however remote that possibility might be. The "dangerous condition" of the property should be defined in terms of the manner in which it is foreseeable that the property will be used by persons exercising due care in recognition that any property can be dangerous if used in a sufficiently abnormal manner. Thus, a public entity should not be liable for injuries resulting from the use of a highway—safe for use at 65—at 90 miles an hour, even though it may be foreseeable that persons will drive that fast. The public entity should only be required to provide a highway that is safe for reasonably foreseeable *careful* use. On the other hand, where it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children—may, consistently with the standard of care applicable to such persons, use property for an unintended purpose, the public entity should be required to take reasonable precautions to prevent an undue risk of injury arising from such use. Thus, a public entity may be expected to fence swimming pools or to fence or lock up dangerous

instrumentalities if it is reasonably foreseeable that small children may be injured if it does not do so. But public entities should not be required to guard against the potentialities of injury that arise from remotely foreseeable uses of their property. To impose such liability would virtually require public entities to insure the safety of all persons using public property.

2. The "trivial defect" rule, developed by the courts in sidewalk cases arising under the Public Liability Act to prevent juries from imposing unwarranted liability on public entities, should be extended to all cases arising under the Act. Under this rule, the courts will not permit a public entity to be held liable for injuries caused by property defects unless the court (as distinguished from the jury) is satisfied that a reasonable person could conclude that the defect created a substantial risk of injury.

3. Certain immunities from liability under the dangerous conditions statute should receive explicit statutory recognition. The courts have recognized some of these immunities in cases arising under the Public Liability Act. For example, there is no liability under that Act for failing to provide stop signals at particular intersections or for failing to provide adequately maintained firefighting equipment. The Legislature has provided other immunities, such as the immunity for dangerous conditions of stock or bridle trails. These immunities are recognitions of the fact that the sufficiency of governmental services and the wisdom of governmental decisions are not proper subjects for review in tort litigation. Giving expression to these immunities in the statutes relating to governmental liability will assure their continued recognition by the courts and will obviate the need for test cases to determine whether such immunities continue to exist.

There should be immunity from liability for the plan or design of public construction and improvements where the plan or design has been approved by a governmental agency exercising discretionary authority, unless there is no reasonable basis for such approval. While it is proper to hold public entities liable for injuries caused by arbitrary abuses of discretionary authority in planning improvements, to permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.

Public entities should be immune from liability for failure to provide regulatory traffic signals and devices, such as stop signs and road markings. The California courts have held public entities immune from such liability despite the broad language of the Public Liability Act. Whether or not to install regulatory traffic devices in particular locations requires an evaluation of a large variety of technical data and policy criteria, including traffic volume frequency and peak load factors, physical layout and terrain, visibility hazards and obstructions, prevailing weather conditions, nature of vehicular use, normal traffic speed in the area, volume of pedestrian traffic, alignment and curvature, need for similar precautionary measures at other like places, alternative methods of control, and availability of funds to do the job. Decisions

not to adopt control devices, when based on premises of this order, do not appear to be readily susceptible to intelligent and rational reexamination by untrained juries or judges sitting as triers of fact.

Public entities should also be immune from liability for failing to install other traffic or warning signs, signals, markings or devices except where they are necessary to warn of concealed traps endangering the safe movement of traffic.

Public entities should be immune from liability for the effect of weather conditions on the streets and highways unless there is some actual physical destruction or deterioration caused by the weather. Drivers should be expected to take weather conditions into consideration when they drive. They should be expected to realize that a highway is likely to be slippery when covered by ice and snow. Moreover, a public entity should not be required to post signs informing motorists of matters, such as fog, that are as obvious as a sign would be. It is unlikely that a court would hold such conditions dangerous, but it is desirable to make the immunity for such conditions explicit in order to preclude claims from being presented and actions from being litigated.

There is much public property in the State over which public entities exercise little or no supervision. They permit the public to use bodies of water and water courses for recreational activities, and to use remote trails and roads for hunting, fishing, riding and camping. It is desirable to preserve these uses of public property, but such uses would likely be curtailed if the public entities owning such property were required by law to make extensive inspections of the property for the purpose of discovering potential hazards. Hence, public entities should be immune from liability for conditions of such property unless they have actual knowledge of concealed hazards, not likely to be apparent to the users of the property, and fail to take reasonable steps to warn of the hazards.

The State, by virtue of its sovereignty, owns vast acreages that are unimproved and unoccupied. There should be an absolute immunity from liability for any condition of such property until it has been improved or occupied.

4. The dangerous conditions statute should provide specifically that a governmental entity is liable for dangerous conditions of property created by the negligent or wrongful act of an employee acting within the scope of his employment even if no showing is made that the entity had any other notice of the existence of the condition or an opportunity to make repairs or take precautions against injury. The courts have construed the existing Public Liability Act as making public entities liable for negligently created defects.

Liability under the Act should not be limited to negligence liability. Just as private landowners may be held liable for deliberately creating traps calculated to injure persons coming upon their land, public entities should be liable under the terms of the dangerous conditions statute if a public employee commits similar acts within the scope of his employment.

5. Where the dangerous condition has not been created by the negligent or wrongful act of an employee of the entity, the entity should be liable only if it acts unreasonably in failing after notice to repair the condition or otherwise to protect persons against the risk of injury.

This is an existing basis for the liability of public entities under the Public Liability Act and for the liability of private landowners to invitees; however, private landowners are generally not liable to licensees or trespassers upon this basis. The Public Liability Act, like the proposed statute, does not distinguish between invitees, licensees and trespassers in determining liability after the duty to discover and remedy defects has been breached. These common law distinctions were developed so that the private landowner's duty to inspect his property and to maintain it in a safe condition would not be unduly burdensome. Under these common law rules, a person foreseeably injured as a result of a landowner's admitted negligence in inspecting and maintaining property may be denied recovery because he does not fit into the proper classification. The courts at times have developed arbitrary and unrealistic distinctions to avoid such harsh results. The Commission believes that if the duty of public entities to inspect and maintain their property is to be limited, the limitation should be expressed directly —either by curtailing the duty of inspection or by granting specific immunities from liability. The proposed legislation does both.

6. The requirement that the dangerous condition of public property be known to the governing board or a person authorized to remedy the defect should be repealed. The ordinary rules for imputing the knowledge of an employee to an employer should be applicable to public entities just as they are applicable to private owners and occupiers of land. Under these rules, the knowledge of an employee concerning a dangerous condition is imputed to the employer if under all the circumstances it would have been unreasonable for the employee not to have informed his employer. The knowledge of employees will not be imputed to the entity in other circumstances. These rules are sensible and workable.

7. A public entity should not be charged with notice of a dangerous condition of its property if the condition and its dangerous nature would not have been revealed by a reasonable inspection system. The Public Liability Act provides that entities are liable if they fail to remedy dangerous conditions after "notice" without specifying how such notice may be acquired. Cases have held that entities may be charged with notice if the condition is so obvious and has existed for such a substantial length of time that it should have been discovered by a reasonable inspection. As this standard is applied in the cases, it appears that courts sometimes impute notice to a public entity where the condition would be obvious to a person inspecting the property without considering whether it was reasonable to have expected the entity to have made such an inspection. Such a "notice" standard imposes too great a burden upon public entities, for it virtually requires them to be insurers of the safety of their property. The proposed legislation makes it clear that public entities are not chargeable with notice if they establish either that reasonable inspections would not have revealed the dangerous condition or that they made reasonable and careful inspections of their property and did not discover the dangerous condition.

8. A public entity should be able to absolve itself of liability for a dangerous condition of public property—other than those conditions it negligently or wrongfully created—by showing that the entity did all that it reasonably could have been expected to do under the cir-

cumstances to remedy the condition or to warn or protect persons against it. A public entity should not be an insurer of the safety of its property. When its action or lack of action is all that reasonably could have been expected of it under the circumstances, there should be no liability.

9. The standards for personal liability of public employees for negligently or wrongfully creating or failing to remedy dangerous conditions, now contained in Government Code Section 1953, should be revised so that they are not inconsistent with the liability standards contained in the sections relating to public entities. In addition to the matters that must be shown to establish entity liability, a person seeking to hold a public employee personally liable for failing to remedy a dangerous condition should be required to show that the particular employee knew or should have known of the condition and that he had the means available and the authority and responsibility to take action to remedy the condition or to warn or to provide safeguards but failed to do so. This further showing is necessary to show personal culpability on the part of the employee. The employee should be able to show by way of defense that he did not act unreasonably in failing to remedy the condition or protect against the risk of injury created by it.

## Police and Correctional Activities

A major activity at all levels of government involves the detection, arrest and incarceration of violators of the law. This function of government has been regarded traditionally as an exclusively governmental, as distinguished from proprietary, activity. Hence, public entities have been immune from liability for damages caused by public employees engaged in law enforcement. Moreover, public employees have also been held immune from liability for many of their law enforcement activities. For example, judges have been held immune for damages caused by their judicial acts, prosecutors are immune for instituting prosecutions, and police officers are not liable for failing to arrest offenders, even though these acts or omissions may have been malicious.

Although governmental law enforcement officers have enjoyed an extensive immunity from liability for their discretionary acts, they are still subject to tort liability in many situations. They may be held liable in damages for false arrest, false imprisonment or assault, even though they may have been acting in utmost good faith in carrying out their duties. Because the government has been immune from all liability in this area, public law enforcement officers have had to bear this liability alone. In some instances, public entities have provided their law enforcement officers with insurance, but the protection offered them has been neither uniform nor complete.

The recommendations made in regard to the liability of public entities and employees generally will provide adequate rules for determining liability in most cases that may arise out of police and correctional activities. In a few instances, though, experience in jurisdictions that have waived sovereign immunity indicates the need for legislation stating rules applicable specifically to this area of activity.

The Commission, therefore, recommends the enactment of legislation containing the following principles:

1. Public entities and employees should not be liable for failure to provide police protection or for failure to provide adequate police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.

2. Public entities and employees should not be liable for failure to provide a jail or other detention or correctional facility or for failure to provide sufficient equipment, personnel or facilities therein unless the facility is in a dangerous condition or there has been a departure from an applicable statutory or regulatory standard. There are few statutes and regulations that now prescribe standards for local jails and detention facilities; but to the extent that they do impose mandatory standards, the local authorities should not have any discretionary immunity for departing from those standards.

3. Public entities and public employees should be made liable for the damages proximately resulting from their intentional and unjustifiable interference with the attempt of an inmate of a correctional institution to seek a judicial review of the legality of his confinement. The right of a person confined involuntarily to seek redress in the courts is a fundamental civil right that should receive effective legal protection.

4. As a general rule, public entities and public employees should not be liable for failing to provide medical care for prisoners. Again, the standards of care to be provided prisoners involve basic governmental policy that should not be subject to review in tort suits for damages. However, if an employee charged with the care actually knows or has reason to know that a prisoner is in need of immediate medical attention, he and his employing public entity should be subject to liability if he fails to take reasonable action to see that such attention is provided.

5. Public entities and employees should not be liable for the damage caused by escaping or escaped prisoners or by persons released on parole or probation. The nature of the precautions necessary to prevent the escape of prisoners and the extent of the freedom that must be accorded prisoners for rehabilitative purposes are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability.

6. Public employees should not be liable for failing to arrest violators of the law. Under existing law, public employees are immune from liability for such failure. This immunity should be continued in statutory form.

## Fire Protection

Public administration of programs of fire prevention and protection have long been regarded as a "governmental" function and, hence, a form of activity protected by the doctrine of sovereign immunity. Even in states where the doctrine of sovereign immunity has been waived,

the courts have held public entities immune from liability for failing to maintain adequate water pressure for firefighting purposes. In California, the Legislature has removed a substantial portion of this immunity by providing that public entities are liable for the negligent operation of emergency vehicles, including firefighting equipment, when responding to emergency calls.

There are strong policy reasons for retaining the large measure of the immunity that now exists. The incentive to diligence in providing fire protection that might be provided by liability is already provided because fire insurance rates rise where the fire protection provided is inadequate. Moreover, the risk-spreading function of tort liability is performed to a large extent by fire insurance. In emergency situations, it is more desirable for firefighters to act diligently to combat a conflagration, without thought of the possible liabilities that might be incurred, than it is to spread the loss from the fire by imposing such cost upon the taxpayers. Thus, in formulating rules of liability applicable to fire protection activities, it is necessary to strike a careful balance between the need for encouraging utmost diligence in combatting fires and the need for providing compensation for injuries caused by the negligent or wrongful conduct of public personnel. To resolve these problems, the Commission recommends that legislation be enacted containing the following principles:

1. Public entities should not be liable for failure to provide fire protection or for failure to provide enough personnel, equipment or other fire protection facilities. Whether fire protection should be provided at all, and the extent to which fire protection should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.

2. Except to the extent that public entities are liable under Vehicle Code Sections 17000 to 17004 for the tortious operation of vehicles, public entities and public personnel should not be liable for injuries caused in fighting fires or in maintaining fire protection equipment. There are adequate incentives to careful maintenance of fire equipment without imposing tort liability; and firemen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable. The liability created by the Vehicle Code for tortious operation of emergency fire equipment should be retained, however, for such liability does not relate to the conduct of the actual firefighting operation.

3. Fire protection agencies often provide assistance in combatting fires beyond their own boundaries. In such cases, the entity calling for aid may be held responsible for a tortious injury caused by an entity answering the call on the basis of *respondeat superior*. A small public entity may have a large outbreak of fire requiring the services of many fire departments and hundreds of men. To impose all risks of liability upon the agency calling for aid under such circumstances might expose it to risks of liability far beyond its capacity to bear. Moreover, most fire protection agencies are insured against liabilities that may arise

Case 3:22-cv-01616-AGS-DDL   Document 89   Filed 06/26/23   PageID.6438   Page 71 of 128

out of the operation of their firefighting vehicles. If the entity calling for aid were liable for torts committed by the entities answering its call, it would be required to procure insurance for a potential liability that had already been insured. The Commission recommends, therefore, that each public entity should be liable only for the torts committed by its own personnel. The public entities should, of course, have the right to allocate ultimate financial responsibility in some other way by agreement.

4. Existing statutes provide an immunity to firefighting personnel for transporting persons injured by fire to obtain medical assistance. This immunity should be continued, for the fear of tort liability might provide an undesirable deterrence to the prompt and diligent furnishing of such assistance.

## Medical, Hospital and Public Health Activities

Medical, hospital and public health activities of public entities have traditionally been regarded as "governmental" in nature, even where, for example, the particular hospital involved received paying patients and otherwise was operated like a private hospital. As a result, public entities have been immune from liability arising out of these activities. The effect of this immunity of public entities has been lessened, however, by legislation authorizing the purchase of malpractice insurance for the personnel employed in such hospitals and requiring the State to pay judgments in malpractice cases brought against state officers and employees.

The general recommendations relating to the liability of public entities will resolve most of the problems of liability and immunity growing out of medical and hospital activities that have been revealed by the cases arising in jurisdictions where sovereign immunity has been waived. Some of these problems, though, call for statutes of particular application in this area of activity:

1. A public entity should be liable for an injury which results from the failure to comply with an applicable statute, or an applicable regulation of the State Department of Public Health or the State Department of Mental Hygiene, which establishes minimum standards for equipment, personnel or facilities in public hospitals and other public medical facilities, unless the public entity establishes that it exercised reasonable diligence to comply with the statute or regulation. Although decisions as to the facilities, personnel or equipment to be provided in public medical facilities involve discretion and public policy to a high degree, nonetheless, when minimum standards have been fixed by statute or regulation, there should be no discretion to fail to meet those minimum standards.

This recommendation will leave determinations of the standards to which public hospitals and other public medical facilities must conform in the hands of the persons best qualified to make such determinations and will not leave those standards to the discretion of juries in damage actions. Hence, public entities will know what is expected of them and will continue to be able to make the basic decisions as to the standards and levels of care to be provided in public hospitals and

other public medical facilities within the range of discretion permitted by state statutes and regulations.

Although most public hospitals and mental institutions are subject to regulation by the State Department of Public Health or the State Department of Mental Hygiene, some (e.g., the University of California's hospitals) are not. Yet, these hospitals should be required to exercise reasonable diligence to maintain the same minimum standards that other comparable public hospitals do. Accordingly, public entities should be liable for damages resulting from inadequate facilities, personnel or equipment in public medical facilities not specifically subject to regulation if they do not exercise reasonable diligence to conform to the regulations applicable to other facilities of the same character and class.

2. Public entities and public employees should be liable for the damages proximately caused by their intentional and unjustifiable interference with any right of an inmate of a public medical facility to seek judicial review of the legality of his confinement. The right of a person involuntarily confined to petition the courts is a fundamental civil right that should receive effective legal protection.

3. Public entities and public employees should not be liable for negligence in diagnosing that a person is afflicted with mental illness or mental deficiency. Nor should liability be imposed for negligence in prescribing treatment for such conditions. Much of the diagnosis and treatment of these conditions goes on in public mental institutions. The field of psychotics is relatively new and standards of diagnosis and treatment are not as well defined as where physical illness is involved. Moreover, public mental hospitals must take all patients committed to them; hence, there are frequently problems of supervision and treatment created by inadequate staff and excessive patient load that similar private hospitals do not have to meet. For the same reasons, no tort liability should exist for determining whether to confine a person for a mental or emotional disturbance for which commitment to a public hospital is authorized, nor for determining the terms and conditions of the confinement. Similarly, there should be no tort liability for determining whether to parole or release such persons. Providing immunity from tort liability does not, of course, impair any right to other legal remedies, such as a judicial review of the legality of any such confinement. The statute should make clear, however, that public entities and employees are liable for injuries caused by negligent or wrongful acts or omissions in administering or failing to administer prescribed treatment or confinement.

4. Public health officials and public entities should not be liable for determining whether to impose quarantines or otherwise take action to prevent or control the spread of disease, where they have been given the legal power to determine whether or not such action should be taken. Where the law gives a public employee discretion to determine a course of conduct, liability should not be based upon the exercise of that discretion in a particular manner; for this would permit the trier of fact to substitute its judgment as to how the discretion should have been exercised for the judgment of the person to whom such discretion was lawfully committed. But when a public official has a legal duty to

act in a particular manner, he should be liable for his wrongful or negligent failure to perform the duty; and his employing public entity should be liable if such failure occurs in the scope of his employment.

5. Public entities and public health officials and other public employees who are required to examine persons to determine their physical condition should not be liable for failing to examine or to make an adequate examination of any person for the purpose of determining whether such person has a communicable disease or any other condition that might constitute a hazard to the public or to the person examined. This immunity from liability would not cover an examination or diagnosis for the purpose of treatment, but would cover such examinations as public tuberculosis examinations, examinations for the purpose of determining whether persons should be isolated or quarantined, eye examinations for prospective drivers, and examinations of athletes—such as boxers or high school football players—to determine whether they are qualified to engage in athletic activity.

The New York courts have granted similar immunities to public entities in that state. Government undertakes these activities to insure public health and safety and to add a measure of safety to some hazardous occupations, such as boxing. To provide the utmost public protection, public entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Far more persons would suffer if government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately.

## Tort Liability Under Agreements Between Public Entities

Throughout the California statutes there are provisions authorizing public entities by agreement to embark upon joint projects. Other statutes authorize one public entity to contract with another public entity for the performance of various governmental services such as fire protection, police protection, tax assessment and tax collection. Under existing law, public entities even may, by agreement, create new and independent entities to carry out joint projects.

The problems of governmental immunity and liability can become quite complex if no provision is made in these agreements for the allocation of responsibility for the torts that may occur in the performance of the agreements. Moreover, as governmental entities may create an independent entity to carry out a joint project, the participating public entities may insulate themselves from tort liability in connection with the project and leave the risk of such liability with an entity having limited resources and no power to raise money by taxation.

The Commission recommends, therefore, that when agreements are entered into between public entities to carry out some project or activity, each of the contracting entities involved should be jointly and severally liable to the injured party for any torts that may occur in the performance of the agreement for which any one of the entities, or any agency created by the agreement, is otherwise made liable by law. However, the entities should be permitted to allocate

the ultimate financial responsibility among themselves in whatever manner seems most desirable. Where an agreement between public entities fails to specify how the responsibility for tort liability is to be allocated, each of the entities should be required to contribute to any one that is subjected to liability so that one entity will not have to bear alone what ought to be a common responsibilty. The share of each of the public entities should be determined by dividing the total amount of the liability by the number of public entities that are parties to the agreement. Where it would not be appropriate to determine contributions in this manner, the public entities may by agreement provide another method of allocating responsibility for tort liability.

## Disposition of Pending Claims and Actions

A major problem that must be solved by any legislative program relating to sovereign immunity involves the disposition to be made of the claims and actions that are pending against the various public entities in the State. These claims and actions fall into several classifications, and the extent to which the Legislature constitutionally may adopt legislation affecting them varies with each different classification. In some instances, there are no clear precedents indicating the extent of the Legislature's power.

Inasmuch as the law relating to sovereign immunity prior to the *Muskopf* decision consisted of a welter of inconsistent statutes and decisions, and inasmuch as the effect of the *Muskopf* and *Lipman* decisions upon the previous law is quite uncertain, the Commission recommends that the legislation that is adopted by the Legislature relating to sovereign immunity be given a retroactive effect to the full extent that it constitutionally can be given such an effect. This will permit the courts, acting under this legislation, to develop a uniform body of law applicable to all cases involving the liability of public entities instead of developing one group of rules applicable to pre-*Muskopf* cases, another group of rules applicable to cases arising after *Muskopf* but before the moratorium legislation, another group of rules applicable to cases arising under the moratorium legislation, and still another group of rules applicable to cases arising after the effective date of the legislation to be adopted.

Giving such a retroactive effect to the proposed legislation may, in some instances, create new liabilities that did not previously exist. On the other hand, it will abolish some pre-existing liabilities. It must be recognized, of course, that it may not be constitutional to abolish some vested causes of action. But, nonetheless, to the extent that a uniform body of law relating to the liability of public entities can be created by legislative action, the Commission recommends that such a body of law be created.

In regard to those vested causes of action that cannot be abolished because of constitutional limitations upon the power of the Legislature, the Commission recommends that a short claims filing period and a short statute of limitations should be made applicable so that, within a reasonably brief period, all cases reaching the courts will be decided under the standards approved by the Legislature. A similar technique was used when the causes of action for breach of

promise to marry, alienation of affections, criminal conversation and seduction were abolished. Code of Civil Procedure Section 341.5, enacted at the same time as the legislation abolishing those causes of action, required all actions to be brought on previously vested causes of action within 60 days after the effective date of that legislation.

Claims relating to causes of action that cannot be constitutionally abolished should be presented in accordance with the applicable claims procedure within the period prescribed by the applicable claims procedure or before January 1, 1964, whichever is earlier. Actions upon such causes of action should be commenced within the period prescribed by the applicable statute of limitations or before July 1, 1964, whichever is earlier; except that if the applicable claims procedure requires that a claim be rejected before action can be commenced, action upon the claim should be commenced within six months from the date of rejection. These limitations will provide the holders of these causes of action a fair opportunity to present their claims and file their actions. But these limitations will cut off such causes of action in less than a year after the effective date of the legislation. Public entities will thus be enabled to determine the conditions under which they may be subjected to liability within a relatively brief period of time.

Of course, the legislation should also provide that causes of action barred by claims requirements or statutes of limitation are not revived or reinstated.

## Amendments and Repeals of Existing Statutes

A substantial number of codified and uncodified statutes relate to the liability of public entities and public employees. Many of these statutes are of general application and are inconsistent with the recommendations of the Commission. These statutes should be amended or repealed in view of the general liability statute recommended by the Commission.

A large number of statutes relating to the liability of public entities and public employees relate to the activities of but one public entity. Revision of these statutes will be necessary in order to make the recommendations of the Law Revision Commission applicable to all public entities in the State. But inasmuch as these statutes are not of general application, and inasmuch as there is such a large number of these statutes, revising them to conform to the Commission's recommendation does not appear to be a feasible venture until the ultimate nature of the governmental tort liability legislation that will be enacted in California becomes apparent.

The general liability statute recommended by the Commission contains the text of each section of general application that should be amended or repealed. A comment under each of these sections indicates the reason why its amendment or repeal is proposed. In many cases where the comment states that an existing section is superseded by a provision in the legislation recommended by the Commission, the new provision may be somewhat narrower or broader (in imposing liability or granting immunity) than the existing law. In these cases, the Commission has concluded that the recommended provision is better than the existing law.

## PROPOSED LEGISLATION

The Commission's recommendation would be effectuated by enactment of the following measure:

> *An act to add Division 3.6 (commencing with Section 810) to Title 1 of the Government Code, and to amend Sections 340, 1095 and 1242 of the Code of Civil Procedure, and to repeal Sections 903, 1041, 1042, 13551, 15512, 15513, 15514, 15515 and 15516 of the Education Code, and to repeal Article 1 (commencing with Section 1950) of Chapter 6 of Division 4 of Title 1 of, Article 6 (commencing with Section 50140) of Chapter 1 of Part 1 of Division 1 of Title 5 of, Article 3 (commencing with Section 53050) of Chapter 2 of Part 2 of Division 1 of Title 5 of, and Sections 2002.5, 39586, 54002, 61627 and 61633 of, the Government Code, and to amend Sections 943 and 954 of, and to repeal Chapter 23 (commencing with Section 5640) of Part 3 of Division 7 of, the Streets and Highways Code, and to repeal Article 10 (consisting of Section 51480) of Part 7 of Division 15 of, Chapter 5 (commencing with Section 60200) of Part 3 of Division 18 of, and Sections 22725, 22726, 22730, 22731, 31083, 31089, 31090, 35750, 35751, 35755, 35756, 50150 and 50152 of, the Water Code, and to amend Sections 6005, 6610.3 and 6610.9 of the Welfare and Institutions Code, and to repeal Section 21 of the Municipal Water District Act of 1911 (Chapter 671, Statutes of 1911), and to repeal Section 10 of Chapter 641 of the Statutes of 1931 (Flood Control and Flood Water Conservation District Act), relating to liability of public entities and public officers, agents and employees.*

*The people of the State of California do enact as follows:*

SECTION 1.   Division 3.6 (commencing with Section 810) is added to Title 1 of the Government Code, to read:

### DIVISION 3.6.   CLAIMS AND ACTIONS AGAINST PUBLIC ENTITIES AND PUBLIC EMPLOYEES

### PART 1.   DEFINITIONS

810.   Unless the provision or context otherwise requires, the definitions contained in this part govern the construction of this division.

**Comment:** This section is based on similar provisions found in the definitions or general provisions portions of various codes. See, for example, Section 5 of the Government Code.

( 884 )

The definition of these terms in this part makes it possible to avoid unnecessary repetition in the various statutory provisions in Division 3.6.

810.2.  "Employee" includes an officer, agent or employee, but does not include an independent contractor.

**Comment:** Independent contractors are excluded from the definition of "employee" so that the problems of liability, insurance, defense, and claims arising out of acts and omissions of independent contractors may be met by different statutory provisions than those applicable to public employees.

810.4.  "Employment" includes office, agency or employment.

**Comment:** This definition obviates unnecessary repetition in later sections.

810.6.  "Enactment" means a constitutional provision, statute, charter provision, ordinance or regulation.

**Comment:** This definition is intended to refer to all measures of a formal legislative or quasi-legislative nature. "Regulation" is defined in Section 811.6 to carry out this intent more fully.

810.8.  "Injury" means death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person.

**Comment:** This definition merely defines "injury"; it does not impose liability for an injury. The standards and conditions of liability for an injury are found in other provisions of this division and in other statutes. The purpose of the definition is to make clear that public entities and public employees may be held liable only for injuries to the kind of interests that have been protected by the courts in actions between private persons.

811.  "Law" includes not only enactments but also the decisional law applicable within this State as determined and declared from time to time by the courts of this State and of the United States.

**Comment:** Section 810.6 defines enactment to mean a measure of a formal legislative or quasi-legislative nature. The definition of "law" contained in this section includes enactments and also the common law applicable within the State as determined by the courts.

811.2.  "Public entity" includes the State, the Regents of the University of California, a county, city, district, public

authority, public agency, and any other political subdivision or public corporation in the State.

**Comment:** This definition is intended to include every kind of independent political or governmental entity in the State.

811.4.   "Public employee" means an employee of a public entity.

**Comment:** Liability and immunity provisions in Division 3.6 are often made applicable to "public employees." These provisions will not be applicable to independent contractors since the term "employee" is defined in Section 810.2 to exclude independent contractors.

811.6.   "Regulation" means a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States or of a public entity pursuant to authority vested by constitution, statute, charter or ordinance in such employee or agency to implement, interpret, or make specific the law enforced or administered by the employee or agency.

**Comment:** See the comment under Section 810.6.

811.8.   "Statute" means an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act.

**Comment:** Section 810.6 defines enactment to mean a legislative or quasi-legislative measure adopted by any employee or agency of government that has power to legislate. "Statute" is here defined to include only those enactments that are adopted by Congress, the Legislature of California, or the people of California (by initiative act).

## PART 2.   LIABILITY OF PUBLIC ENTITIES AND PUBLIC EMPLOYEES

### CHAPTER 1.   GENERAL PROVISIONS RELATING TO LIABILITY

#### Article 1.   Scope of Part

814.   Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee.

**Comment:** The doctrine of sovereign immunity has not protected public entities in California from liability arising out of contract. This section makes clear that this statute has no effect on the contractual liabilities of public entities or public employees.

This section also declares that the provisions of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages. Thus, for example, even though Section 820.6 provides that public employees are not liable for enforcing unconstitutional

statutes, and even though public entities have a similar immunity under Sections 815 and 815.2, the right to enjoin the enforcement of unconstitutional statutes will still remain. Under this statute as limited by this section, the appropriate way to seek review of discretionary governmental actions is by an action for specific or preventive relief to control the abuse of discretion, not by tort actions for damages.

### Article 2.   Liability of Public Entities

815.   Except as otherwise provided by enactment:
    (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
    (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute and is subject to any defenses that would be available to the public entity if it were a private person.

**Comment:** This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, *e.g.*, inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if an enactment is found declaring them to be liable. Because of the limitations contained in Section 814, which declares that this part does not affect liability arising out of contract or the right to obtain specific relief against public entities and employees, the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts. The use of the word "tort" has been avoided, however, to prevent the imposition of liability by the courts by reclassifying the act causing the injury.

In the following portions of this division, there are many sections providing for the liability of governmental entities under specified conditions. In other codes there are a few provisions providing for the liability of governmental entities, *e.g.*, Vehicle Code Section 17001 *et seq.* and Penal Code Section 4900. But there is no liability in the absence of an enactment declaring such liability. For example, there is no section in this statute declaring that public entities are liable for nuisance, even though the California courts have previously held that public entities are subject to such liability even in the absence of statute. Under this statute, the right to recover damages for nuisance will have to be established under the provisions relating to dangerous conditions of public property or under some other statute that may be applicable to the situation. However, the right to specific or preventive relief in nuisance cases is not affected. Similarly, this statute eliminates the common law liability of public entities for injuries inflicted in proprietary activities.

In the following portions of this division, there also are many sections granting public entities and public employees broad immunities from liability. In general, the statutes imposing liability are cumulative in nature, *i.e.*, if liability cannot be established under the requirements of one section, liability will nevertheless exist if liability can

be established under the provisions of another section. On the other hand, under subdivision (b) of this section, the immunity provisions will as a general rule prevail over all sections imposing liability. Where the sections imposing liability or granting an immunity do not fall into this general pattern, the sections themselves make this clear.

Subdivision (b) also makes it clear that the sections imposing liability are subject to the ordinary defenses, such as contributory negligence and assumption of the risk, that are available in tort litigation between private persons.

> 815.2.  (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
>
> (b) Except as otherwise provided by enactment, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

**Comment:** This section imposes upon public entities vicarious liability for the tortious acts and omissions of their employees. It makes clear that in the absence of legislation a public entity cannot be held liable for an employee's act or omission where the employee himself would be immune. The California courts have held on many occasions that a public employee is immune from liability for his discretionary acts within the scope of his employment even though the discretion be abused. This rule is codified in Section 820.2 of this division. Under the above section, a public entity also is entitled to the protection of that immunity. Thus, this section nullifies the suggestion appearing in a dictum in *Lipman* v. *Brisbane Elementary School District*, 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (1961), that public entities may be liable for the acts of their employees even when the employees are immune.

Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable.

The exception appears in subdivision (b) because under certain circumstances it appears to be desirable to provide that a public entity is liable even when the employee is immune. For example, Section 816 provides that an entity may be held liable for malicious prosecution even though the responsible employee is not directly liable. And under Section 815.8, a public entity may be liable for the discretionary act of an employee in selecting or failing to discipline a subordinate.

Subdivision (a) expresses a rule that has been applicable to all public entities in the State insofar as their "proprietary" activities are concerned. The section is similar to the English Crown Proceedings Act of 1947, the Canadian Crown Proceedings Act, and a Uniform Proceedings Against the Crown Act that has been adopted in several Canadian provinces. Under statutes of a similar nature, more than

2,400 public entities in California have been subjected to liability for the negligence of their employees or for all torts of their employees. Some statutes impose liability directly on the public entity, others require the public entity to pay judgments against their employees. These statutes are Education Code Section 903 (which applies to approximately 1,734 school districts), Water Code Section 50152 (applicable to approximately 144 reclamation districts), and Section 10 of the Flood Control and Flood Water Conservation District Act (applicable to approximately 4 districts), which impute the negligence of public employees to the public entity concerned, and Government Code Section 61633 (affecting approximately 85 community services districts), Water Code Sections 22730 (approximately 117 irrigation districts), 31090 (approximately 168 county water districts), 35755 (approximately 92 California water districts) and 60202 (1 water replenishment district), Section 21 of the Municipal Water District Act of 1911 (approximately 45 municipal water districts), Section 38 of the Alpine County Water Agency Act, Section 9.4 of the Amador County Water Agency Act, Section 76 of the Antelope Valley-East Kern Water Agency Law, Section 23 of the Contra Costa County Water Agency Act, Section 26 of the Crestline-Lake Arrowhead Water Agency Act, Section 24 of the Desert Water Agency Law, Section 37 of the El Dorado County Water Agency Act, Section 9.3 of the Kern County Water Agency Act, Section 17 of the Kings River Conservation District Act, Section 7.4 of the Mariposa County Water Agency Act, Section 27 of the Mojave Water Agency Law, Section 38 of the Nevada County Water Agency Act, Section 7.4 of the Placer County Water Agency Act, Section 24 of the San Gorgonio Pass Water Agency Law, Section 7.4 of the Sutter County Water Agency Act, Section 24 of the Upper Santa Clara Valley Water Agency Law, Section 7.4 of the Yuba County Water Agency Act, and Section 37 of the Yuba-Bear River Basin Authority Act, which require public entities to pay tort judgments generally that are recovered against their personnel.

815.4. A public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity.

**Comment:** The California courts have held that public entities—and private persons, too—may at times be liable for the acts of their independent contractors. *Snyder* v. *Southern Cal. Edison Co.*, 44 Cal.2d 793, 285 P.2d 912 (1955) (discussing general rule) ; *Los Angeles County Flood Control Dist.* v. *Southern Cal. Bldg. & Loan Assn.*, 188 Cal. App. 2d 850, 10 Cal. Rptr. 811 (1961). This section retains that liability. Under the terms of this section, though, a public entity cannot be held liable for an independent contractor's act if the entity would have been immune had the act been that of a public employee.

815.6. Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

**Comment:** This section declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards. *Alarid* v. *Vanier*, 50 Cal.2d 617, 327 P.2d 897 (1958) (setting forth general rule); *Lehmann* v. *Los Angeles City Bd. of Educ.*, 154 Cal. App.2d 256, 316 P.2d 55 (1957) (applying rule to public entity).

In the sections that follow in this division, there are stated some immunities from this general rule of liability. See, for example, Section 818.2.

815.8. A public entity is liable for an injury caused by an employee of the public entity if the injury was proximately caused by the failure of the appointing power of the public entity to:

(a) Exercise due care in selecting or appointing the employee; or

(b) Exercise due care to eliminate the risk of such injury after the appointing power had knowledge or notice that the conduct, or the continued retention, of the employee in the position to which he was assigned created an unreasonable risk of such injury.

**Comment:** This section expresses a principle contained in a number of codified and uncodified statutes—that a public employee is not liable for the torts of a subordinate unless the superior public employee failed to exercise due care in selecting or failing to discipline the subordinate employee.

The practical effect of the section is quite limited. It has independent significance only where the subordinate employee was not guilty of tortious conduct or was outside the scope of his employment. If the subordinate is guilty of tortious conduct within the scope of his employment, the liability of the public entity may be founded on Section 815.2.

The liability under this section must be based on a failure to exercise due care on the part of the "appointing power," *i.e.*, that superior employee with the power to appoint or institute disciplinary proceedings. Thus, the findings and orders of civil service commissions or personnel boards may not be subjected to collateral attack in tort actions under this section.

Statutes expressing a similar rule are Government Code Sections 1953.6, 1954, and 61627, Water Code Sections 22726, 31083, 35751, and 60200, Section 21 of the Municipal Water District Act of 1911, Section 36 of the Alpine County Water Agency Act, Section 9.2 of the Amador County Water Agency Act, Section 76 of the Antelope Valley-East

Kern Water Agency Law, Section 26 of the Crestline-Lake Arrowhead Water Agency Act, Section 24 of the Desert Water Agency Law, Section 35 of the El Dorado County Water Agency Act, Section 9.1 of the Kern County Water Agency Act, Section 14 of the Kings River Conservation District Act, Section 7.2 of the Mariposa County Water Agency Act, Section 36 of the Nevada County Water Agency Act, Section 7.2 of the Placer County Water Agency Act, Section 24 of the San Gorgonio Pass Water Agency Law, Section 7.2 of the Sutter County Water Agency Act, Section 24 of the Upper Santa Clara Valley Water Agency Law, Section 7.2 of the Yuba County Water Agency Act, and Section 35 of the Yuba-Bear River Basin Authority Act.

816.   A public entity is liable for injury proximately caused by an employee of the public entity if the employee, acting within the scope of his employment, instituted or prosecuted a judicial or administrative proceeding without probable cause and with actual malice.

**Comment:** Under the previous law, public employees were not liable for malicious prosecution. *White* v. *Towers*, 37 Cal.2d 727, 235 P.2d 209 (1951). This immunity is continued by Section 821.6. But under the above Section 816, the public entity employing the particular employee may be held liable. The public entity may then, under the provisions of Section 825.6, recover any amounts paid on the judgment from the employee whose maliciousness caused the injury.

818.   Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant.

**Comment:** This section exempts public entities from liability for punitive or exemplary damages.

818.2.   A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any enactment.

**Comment:** This section would be unnecessary except for a possible implication that might arise from Section 815.6, which imposes liability upon public entities for failure to exercise reasonable diligence to comply with a mandatory duty imposed by an enactment. This section recognizes that the wisdom of legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained.

The New York courts recognize a similar immunity in the absence of statute. Under the Federal Tort Claims Act, this immunity falls within the general immunity for discretionary acts.

818.4.   A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the

failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

**Comment:** This section, like the previous one, would be unnecessary but for a possible implication that might arise from Section 815.6. It recognizes another immunity that has been recognized by the New York courts in the absence of statute. Under the Federal Tort Claims Act, the immunity would be within the general discretionary immunity. Direct review of this type of action by public entities is usually available through writ proceedings.

818.6.  A public entity is not liable for injury caused by its failure to make an inspection, or to make an adequate inspection, of any property, other than property of the public entity, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety.

**Comment:** Like the previous two sections, this section would be unnecessary but for Section 815.6. It recognizes another immunity that has been recognized by the New York courts in the absence of statute. Because of the extensive nature of the inspection activities of public entities, a public entity would be exposed to the risk of liability for virtually all property defects within its jurisdiction if this immunity were not granted.

So far as its own property is concerned, a public entity may be held liable under Chapter 2 (commencing with Section 830) for negligently failing to discover a dangerous condition by conducting reasonable inspections, or a public entity may be held liable under Section 815.6 if it does not exercise reasonable diligence to comply with any mandatory legal duty that it may have to inspect its property.

The immunity provided by this section relates to the "adequacy" of the inspection; the section does not provide immunity, for example, where a public employee negligently injures a person while making an inspection.

### Article 3.  Liability of Public Employees

820.  (a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person.

(b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person.

**Comment:** This section declares the pre-existing law.

820.2.   Except as otherwise provided by enactment, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

**Comment:** This section restates the pre-existing California law. *Lipman* v. *Brisbane Elem. School Dist.*, 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (1961); *Hardy* v. *Vial*, 48 Cal.2d 577, 311 P.2d 494 (1957); *White* v. *Towers*, 37 Cal.2d 727, 235 P.2d 209 (1951). The discretionary immunity rule is restated here in statutory form to ensure that, unless otherwise provided by enactment, public employees will continue to remain immune from liability for their discretionary acts within the scope of their employment.

In the sections that follow, several immunities of public employees are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated here in statutory form so that the liability of public entities and employees may not be expanded by redefining "discretionary immunity" to exclude certain acts that had previously been considered as discretionary.

820.4.   A public employee is not liable for his act or omission, exercising due care, in the execution of any enactment. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

**Comment:** This immunity, by virtue of Section 815.2, will inure to the benefit of the public entity employing the particular public employee. A similar immunity in almost identical language appears in the Federal Tort Claims Act.

820.6.   If a public employee, exercising due care, acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.

**Comment:** This section broadens an immunity contained in former Government Code Section 1955 that applied only to actions pursuant to unconstitutional statutes.

820.8.   Except as otherwise provided by enactment, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission.

**Comment:** This section expresses a principle contained in several sections scattered through the codes and uncodified acts that limit a public employee's liability to liability for his own negligent or wrongful conduct. The section nullifies the holdings of a few old cases that some public officers are vicariously liable for the torts of their subordinates.

844          CALIFORNIA LAW REVISION COMMISSION

Sections expressing a similar rule are Agricultural Code Sections 748, 1300.21, 2185, 2916, 3407, 5084, 5406, and 5571, Education Code Sections 1042, 13551, and 15512, Government Code Section 1953.5, Water Code Sections 22725 and 35750, Section 49 of the Orange County Water District Act, Section 23 of the Contra Costa County Water Agency Act, and Section 27 of the Mojave Water Agency Law.

See Section 815.8, imposing liability on public entities for failure to exercise due care in selecting or failing to discipline employees.

This section and Section 820 permit the repeal of sections such as Government Code Section 1953.5, which provides that a public employee is not liable for money stolen from his custody unless he failed to exercise due care. Government Code Section 1953.5 is merely an application of the principle of these two sections to one particular set of circumstances.

821.   A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment.

**Comment:** This section continues an existing immunity of public employees. *Martelli* v. *Pollock,* 162 Cal. App.2d 655, 328 P.2d 795 (1958) (city councilman immune for actions as councilman); *Rubinow* v. *County of San Bernardino,* 169 Cal. App.2d 67, 336 P.2d 968 (1959) (no liability for failure to arrest drunk driver).

821.2.   A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

**Comment:** The immunity stated here has been long established in California. *Downer* v. *Lent,* 6 Cal. 94 (1856) (pilot commissioners immune from liability for maliciously revoking pilot's license).

821.4.   A public employee is not liable for injury caused by his failure to make an inspection, or to make an adequate inspection, of any property, other than the property of the public entity employing the public employee, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety.

**Comment:** This section grants immunity to a public employee for his failure to make adequate inspections of private property. Thus, a building inspector would be immune from liability if he negligently failed to detect a defect in the building being inspected. So far as a public employee's liability for public property is concerned, see Sections 840 to 840.6, relating to the liability of public employees for dangerous conditions of public property.

The immunity provided by this section relates to the "adequacy" of the inspection; the section does not provide immunity, for example,

where a public employee negligently injures a person while making an inspection.

821.6.   A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

**Comment:** The California courts have repeatedly held public employees immune from liability for this sort of conduct. *White* v. *Towers*, 37 Cal.2d 727, 235 P.2d 209 (1951); *Coverstone* v. *Davies*, 38 Cal.2d 315, 239 P.2d 876 (1952); *Hardy* v. *Vial*, 48 Cal.2d 577, 311 P.2d 494 (1957). See Section 816 and the comment to that section.

821.8.   A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission.

**Comment:** This section expresses a principle contained in a large number of statutes scattered through the codes providing particular public employees with a similar immunity. The section nullifies the common law rule that a public employee who enters property under authority of law but then commits a negligent or wrongful act is a trespasser *ab initio* and liable for all damages resulting from his entry.

Sections that include provisions similar to this section are Business and Professions Code Section 5312, Code of Civil Procedure Section 1242, Public Resources Code Section 4006.6, Public Utilities Code Section 21635, Section 5 of the Alameda County Flood Control and Water Conservation District Act, Section 5 of the Contra Costa County Flood Control and Water Conservation District Act, Section 5 of the Contra Costa County Storm Drainage District Act, Section 6 of the Del Norte County Flood Control District Act, Section 6 of the Humboldt County Flood Control District Act, Section 5 of the Lake County Flood Control and Water Conservation District Act, Section 5 of the Marin County Flood Control and Water Conservation District Act, Section 5 of the Monterey County Flood Control and Water Conservation District Act, Section 5 of the Napa County Flood Control and Water Conservation District Act, Section 6 of the San Benito County Water Conservation and Flood Control District Act, Section 5 of the San Joaquin County Flood Control and Water Conservation District Act, Section 5 of the San Luis Obispo County Flood Control and Water Conservation District Act, Section 5 of the Santa Barbara County Flood Control and Water Conservation District Act, and Section 5 of the Santa Clara County Flood Control and Water Conservation District Act.

## Article 4.   Indemnification of Public Employees

825.   If an employee or former employee of a public entity requests the public entity to defend him against any claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an em-

ployee of the public entity or if the public entity conducts the defense of an employee or former employee against any claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. Nothing in this section authorizes a public entity to pay such part of a claim or judgment as is for punitive or exemplary damages.

**Comment:** The sections in this article require public entities to pay claims and judgments against public employees that arise out of their public employment. The sections permit the public entity to recover such amounts from the employee only where the employee has acted with actual malice, actual fraud or corruption. But to avoid conflicts of interest, the public entity waives its right to recover from the employee if it furnishes his defense.

A number of sections scattered throughout the California statutes grant particular classes of public employees similar rights. Unlike many of these sections, the sections in this article require the public employee to offer the defense of the action to the public entity before he is entitled to the rights this article grants.

Similar sections, some of which are superseded by this statute, are Government Code Sections 2002.5 and 61633, Water Code Sections 22730, 31090, 35755, and 60202, Section 38 of the Alpine County Water Agency Act, Section 9.4 of the Amador County Water Agency Act, Section 76 of the Antelope Valley-East Kern Water Agency Law, Section 23 of the Contra Costa County Water Agency Act, Section 26 of the Crestline-Lake Arrowhead Water Agency Act, Section 24 of the Desert Water Agency Law, Section 37 of the El Dorado County Water Agency Act, Section 9.3 of the Kern County Water Agency Act, Section 17 of the Kings River Conservation District Act, Section 7.4 of the Mariposa County Water Agency Act, Section 27 of the Mojave Water Agency Law, Section 38 of the Nevada County Water Agency Act, Section 7.4 of the Placer County Water Agency Act, Section 24 of the San Gorgonio Pass Water Agency Law, Section 7.4 of the Sutter County Water Agency Act, Section 24 of the Upper Santa Clara Valley Water Agency Law, Section 7.4 of the Yuba County Water Agency Act, and Section 37 of the Yuba-Bear River Basin Authority Act.

825.2.  (a) Subject to subdivision (b), if an employee or former employee of a public entity pays any claim or judgment against him, or any portion thereof, that the public entity is required to pay under Section 825, he is entitled to recover the amount of such payment from the public entity.

(b) If the public entity did not conduct his defense against the action or claim, or if the public entity conducted such defense pursuant to an agreement with him reserving the rights of the public entity against him, an employee or former employee of a public entity may recover from the public entity under subdivision (a) only if he establishes that the act or omission upon which the claim or judgment is based occurred within the scope of his employment as an employee of

the public entity and the public entity fails to establish that he acted or failed to act because of actual fraud, corruption or actual malice.

**Comment:** This section permits a public employee to enforce his right of indemnity against the public entity where he has been required to pay a judgment that the entity is required to pay under Section 825.

825.4.   Except as provided in Section 825.6, if a public entity pays any claim or judgment against itself or against an employee or former employee of the public entity, or any portion thereof, for an injury arising out of an act or omission of the employee or former employee of the public entity, he is not liable to indemnify the public entity.

**Comment:** See comment to Section 825.

825.6.   (a)  If a public entity pays any claim or judgment, or any portion thereof, either against itself or against an employee or former employee of the public entity, for an injury arising out of an act or omission of the employee or former employee of the public entity, the public entity may recover from the employee or former employee the amount of such payment if he acted or failed to act because of actual fraud, corruption or actual malice. Except as provided in subdivision (b), a public entity may not recover any payments made upon a judgment or claim against an employee or former employee if the public entity conducted his defense against the action or claim.

(b)  If a public entity pays any claim or judgment, or any portion thereof, against an employee or former employee of the public entity for an injury arising out of his act or omission, and if the public entity conducted his defense against the claim or action pursuant to an agreement with him reserving the rights of the public entity against him, the public entity may recover the amount of such payment from him unless he establishes that the act or omission upon which the claim or judgment is based occurred within the scope of his employment as an employee of the public entity and the public entity fails to establish that he acted or failed to act because of actual fraud, corruption or actual malice.

**Comment:** See comment to Section 825. This section is worded broadly to apply whenever the public entity is required to pay a judgment, whether the judgment is against the entity itself or against the employee. The entity has the right to recover the amount paid from the responsible employee whenever the employee has acted with actual malice, actual fraud or corruption. The public entity will have this right even in those cases where the public employee would have been immune from liability had he been sued directly. See, for example, Sections 816 and 821.6, relating to malicious prosecution.

CHAPTER 2.   DANGEROUS CONDITIONS OF PUBLIC PROPERTY

Article 1.   General

830.   As used in this chapter:

(a) "Dangerous condition" means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.

(b) "Protect against" includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, and warning of a dangerous condition.

(c) "Property of a public entity" and "public property" mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.

**Comment**: This section defines the terms used in this chapter. The definition of "dangerous condition" defines the type of property conditions for which a public entity may be held liable but does not impose liability. A public entity may be held liable for a "dangerous condition" of public property only if it has acted unreasonably in creating or failing to remedy or warn against the condition under the circumstances described in subsequent sections.

A "dangerous condition" is defined in terms of "foreseeable use." This does not change the pre-existing law relating to cities, counties and school districts. These entities are liable under Government Code Section 53051 for maintaining property in a condition that creates a hazard to foreseeable users even if those persons use the property for a purpose for which it is not designed to be used or for a purpose that is illegal. *Acosta* v. *County of Los Angeles*, 56 Cal.2d 208, 14 Cal. Rptr. 433, 363 P.2d 473 (1961); *Torkelson* v. *City of Redlands*, 198 Cal. App.2d 354, 17 Cal. Rptr. 899 (1961).

The definition of "dangerous condition" is quite broad because it incorporates the broad definition of "injury" contained in Section 810.8. Thus, the danger involved need not be a danger of physical injury; it may be a danger of injury to intangible interests so long as the injury is of a kind that the law would redress if it were inflicted by a private person. For example, liability for an offensive odor may be imposed if the requirements of this chapter are satisfied.

Under the previous law, public entities were liable for maintaining a nuisance; but under this statute liability for conditions that would constitute a nuisance will have to be based on the somewhat more rigorous standards set forth in this chapter. Liability for such conditions cannot be imposed upon a nuisance theory because Section 815 provides public entities with immunity from liability unless liability is imposed by an enactment, and there is no enactment imposing liability on a nuisance theory.

"Adjacent property" as used in the definition of "dangerous condition" refers to the area that is exposed to the risk created by a dan-

gerous condition of the public property. For example, the hazard created by a condition of public property may not be a hazard to persons using the public property itself, but may be a hazard to other property or to those using other property. A tree located on public property may have a decayed limb overhanging private property and creating a hazard to that property and the persons on it. Explosives on public property may create a hazard to a wide area of private property adjacent to the public property.

Under the definition as it is used in subsequent sections, a public entity cannot be held liable for dangerous conditions of ''adjacent property.'' A public entity may be liable only for dangerous conditions of its own property. But its own property may be considered dangerous if it creates a substantial risk of injury to adjacent property or to persons on adjacent property; and its own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury.

A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons. The definition would, however, take into consideration the standard of care that would be applicable to foreseeable users of the property. Where it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children—may be exposed to a substantial risk of injury from the property, the public entity should be required to take reasonable precautions to protect such persons from that risk. Thus, a public entity may be expected to fence a swimming pool or to fence or lock up a dangerous instrumentality if it is reasonably foreseeable that small children may be injured if such precautions are not taken.

Although the condition will not be considered dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property *with due care,* this does not require that the injured person prove that he was free from contributory negligence. Contributory negligence is a matter of defense under subdivision (b) of Section 815. The plaintiff is, however, required to establish that the condition was one that created a hazard to a person who foreseeably would use the property or adjacent property with due care.

A condition will not be considered dangerous unless it creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury.

The definition of ''protect against'' is self-explanatory.

''Property of a public entity'' excludes easements, encroachments and similar property, not owned or controlled by the public entity, that may be located on the property of a public entity in order to make clear that it is not the duty of the owner of the servient estate to inspect such property for hazards; rather, it is the duty of the person or entity that owns the easement, encroachment, etc. Of course, if the condition of the easement or encroachment renders the public property dangerous—as, for example, where a privately owned power line falls

or sags across a public highway—the public entity will have an obligation to take reasonable precautions after it receives notice of the condition.

830.2. A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.

**Comment:** This section declares a rule that has been applied by the courts in cases involving dangerous conditions of sidewalks. Technically it is unnecessary, for it merely declares the rule that would be applied in any event when a court rules upon the sufficiency of the evidence. It is included in the chapter to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous.

830.4. A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code.

**Comment:** This section prevents the liability of a public entity for dangerous conditions of public property from being based upon the failure to provide regulatory traffic signs. The California courts have held public entities immune from liability for failure to provide stop signs. *Perry* v. *City of Santa Monica*, 130 Cal. App.2d 370, 279 P.2d 92 (1955). This section would not, however, prevent the imposition of liability where a dangerous condition exists and a warning signal or device of the kind mentioned in Section 830.8 would be required.

830.6. Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could

have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor.

**Comment:** Sections 830.6 to 831.6, inclusive, describe certain limitations on the liability of public entities for conditions of public property. Some of these limitations have been previously established by the courts of this State in determining the liability of entities under the Public Liability Act of 1923; some have been established by the courts of other states where public entities are liable generally for their torts. Still others reflect policies previously adopted by the Legislature or logical extensions of the legislatively and judicially established policies. The immunities are stated here in statutory form so that litigation will not be needed to determine whether or not there is liability in these situations under this statute.

Section 830.6 provides immunity where a governmental body exercises the discretion given to it under the laws of the State in the planning and designing of public construction and improvements. No similar immunity for liability is provided entities under the Public Liability Act of 1923. The immunity provided by Section 830.6 is an immunity from liability under this chapter (Sections 830 to 840.6) only; hence, a public entity in some cases may be held liable under some enactment not contained in this chapter. For example, a public entity might be held liable under Section 815.6 for an injury resulting from its failure to exercise reasonable diligence to discharge a mandatory duty imposed by an enactment.

The immunity provided by Section 830.6 is similar to an immunity that has been granted by judicial decision to public entities in New York. See *Weiss* v. *Fote*, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960).

830.8. Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.

**Comment:** This section prevents the imposition of liability based on the failure to provide traffic regulatory or warning signals or devices of a type not listed in Section 830.4, but liability may exist for failure to provide such a signal or device where the condition constitutes a trap to a person using the street or highway with due care.

831. Neither a public entity nor a public employee is liable for an injury caused by the effect on the use of streets and highways of weather conditions as such. Nothing in this section

exonerates a public entity or public employee from liability for injury proximately caused by such effect if it would not be reasonably apparent to, and would not be anticipated by, a person exercising due care. For the purpose of this section, the effect on the use of streets and highways of weather conditions includes the effect of fog, wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets and highways resulting from weather conditions.

**Comment:** This section may be unnecessary in view of the other provisions of this chapter setting forth the conditions of liability for dangerous conditions of public property. Nonetheless, it is included to forestall unmeritorious litigation that might be brought in an effort to hold public entities responsible for injuries caused by weather.

831.2.   (a) Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any natural lake, stream, river or beach, if at the time of the injury the person who suffered the injury was not using the property for a purpose for which the public entity intended the property to be used.

(b) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by such a condition if:

(1) The condition is a dangerous condition that would not be reasonably apparent to, and would not be anticipated by, a person using the property with due care; and

(2) The public entity or the public employee had actual knowledge of the condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

**Comment:** This section is included so that public entities will not be required to inspect the many bodies of water and water courses in the State that are not held out for public use. Of course, where a public entity designates a body of water for use as a public park, it may be expected to conduct reasonable inspections to see that the property is safe for such use.

Under this section liability may not be predicated on the entity's knowledge of the dangerous condition alone. The plaintiff must establish that the condition amounted to a trap and must also meet the evidentiary burdens placed on him in the other portions of this chapter. Moreover, the entity may escape liability by showing the defensive matters it is entitled to show under other provisions of this chapter or under subdivision (b) of Section 815.

831.4.   (a) Neither a public entity nor a public employee is liable for an injury caused by a condition of any unpaved road which is not a state or federal highway and which provides access to fishing, hunting or primitive camping, recreational or scenic areas and which is never or only rarely used by the general public for other purposes, or of any hiking, riding, fishing or hunting trail.

(b) Nothing in this section exonerates a public entity or public employee from liability proximately caused by such a condition if:

(1) The condition is a dangerous condition that would not be reasonably apparent to, and would not be anticipated by, a person using such property with due care; and

(2) The public entity or the public employee had actual knowledge of the condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

**Comment:** This section continues and extends an existing policy adopted by the Legislature in Government Code Section 54002. It is desirable to have trails for hikers and riders and roads for campers into the primitive regions of the State, but the burden and expense of maintaining a continuous inspection of such property would probably cause many public entities to close such roads and trails to public use. Hence, this subdivision permits an entity to be held liable for a dangerous condition of such property only if it has actual knowledge of the condition.

In connection with this section, it should be noted that the Commission amendment to Section 954 of the Streets and Highways Code provides counties with an absolute immunity for death or injury to a vehicle owner or operator or passenger, or for damage to a vehicle or its contents, resulting from a dangerous condition of a stock trail.

Under this section, as under Section 831.2, liability may not be predicated on the entity's knowledge of the dangerous condition alone. The plaintiff must establish that the condition amounted to a trap and must also meet the evidentiary burdens placed on him in the other portions of this chapter. Moreover, the entity may escape liability by showing the defensive matters it is entitled to show under other provisions of this chapter or under subdivision (b) of Section 815.

831.6. Neither the State nor an employee of the State is liable under this chapter for any injury caused by a condition of the unimproved and unoccupied portions of:

(a) The ungranted tidelands and submerged lands, and the beds of navigable rivers, streams, lakes, bays, estuaries, inlets and straits, owned by the State.

(b) The unsold portions of the 16th and 36th sections of school lands, the unsold portions of the 500,000 acres granted to the State for school purposes, and the unsold portions of the listed lands selected of the United States in lieu of the 16th and 36th sections and losses to the school grant.

**Comment:** This section exempts the State from liability under the dangerous conditions statute for conditions of the vast amounts of property, title to which has vested in the State because of its sovereignty, but which it has never occupied or improved. The descriptions of the property are taken from Public Resources Code Sections 6301 and 7301.

The immunity provided by this section, like that provided by Section 830.6, is an immunity from liability under this chapter (Sections 830

to 840.6) only. In a proper case, liability may be based on a provision in some other enactment.

### Article 2.   Liability of Public Entities

835.   Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, that the public entity did not take adequate measures to protect against the risk and that either:

(a)  A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

(b)  The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

**Comment:** This section is similar to the Public Liability Act of 1923, under which cities, counties and school districts are liable for the dangerous conditions of their property.

Although there is no provision similar to subdivision (a) in the Public Liability Act of 1923, the courts have held that entities are liable under that act for dangerous conditions created by the negligent or wrongful acts of their employees. *Pritchard* v. *Sully-Miller Contracting Co.*, 178 Cal. App.2d 246, 2 Cal. Rptr. 830 (1960).

Subdivision (b) declares the traditional basis for holding an entity liable for a dangerous condition of property: failure to protect against the hazard after notice. Unlike the 1923 Act, this section does not leave the question of notice to judicial construction. The requisite conditions for notice are stated in Section 835.2.

The section is not subject to the discretionary immunity that public entities derive from Section 815.2, for this chapter itself declares the limits of a public entity's discretion in dealing with dangerous conditions of its property.

Liability does not necessarily exist if the evidentiary requirements of this section are met. Even if the elements stated in the statute are established, a public entity may avoid liability if it shows that it acted reasonably in the light of the practicability and cost of pursuing alternative courses of action available to it. In addition to the defenses available to public entities under Section 835.4, a public entity also may use any other defense—such as contributory negligence or assumption of the risk—that is available under subdivision (b) of Section 815 to avoid liability under this section.

This section requires the plaintiff to show that the injury suffered was of a kind that was reasonably foreseeable. Thus, a person landing an airplane on a public road might not be able to recover for an

injury resulting from striking a chuckhole, whereas a motorist might be able to recover for the injury resulting from striking the same hazard; for it is reasonably foreseeable that motorists will be injured by such a defect, but it is highly unlikely that airplanes will encounter the hazard.

This section also requires the plaintiff to show that whatever measures the entity took in regard to the hazard were not sufficient to protect against the risk of injury, *i.e.*, that the condition still created a substantial risk of harm to those who foreseeably would be using the property with due care. Thus, a plaintiff would be required to show not only that a hole in the street was dangerous, but also that lights and barriers either were not placed around the hole, or were inadequate to protect street users from the hazard created by the hole.

Under this section, if an entity placed lights and barriers around a hole sufficient to remove any substantial risk to persons who would be foreseeably using the street with due care, the entity could not be held liable for any injuries caused by the condition, for the condition would not be "dangerous" within the meaning of Section 830. If the lights subsequently failed to function, a person injured from striking the hazard would have to show either that there was some negligence in preparing the lights or that, although the lights failed without fault on the part of the entity, the entity had notice of the failure and did not take appropriate precautions.

> 835.2.   (a)  A public entity had actual notice of a dangerous condition within the meaning of Section 835 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> (b)  Subject to subdivision (c) of this section, a public entity had constructive notice of a dangerous condition within the meaning of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
>
> (c)  Notwithstanding subdivision (b) of this section, a public entity did not have constructive notice of a dangerous condition within the meaning of Section 835 if it establishes either:
>
> (1)  The existence of the condition and its dangerous character would not have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property; or
>
> (2)  The public entity maintained and operated such an inspection system with due care and did not discover the condition.

**Comment:** This section sets forth the matters that must be established before a public entity may be charged with notice of a dangerous condition.

Under the Public Liability Act of 1923, the knowledge necessary to charge a public entity with notice of a dangerous condition has to be the knowledge of "the legislative body, board, or person authorized to remedy the condition." Subdivision (a), however, permits an entity to be charged with knowledge under the ordinary agency rules of imputed knowledge that would be applicable to a private person.

Under subdivision (a), as under the pre-existing law, actual knowledge by an entity of the existence of a particular condition is not a basis for the imposition of liability unless the entity also knew or should have known of the danger created by the condition. *Ellis* v. *City of Los Angeles,* 167 Cal. App.2d 180, 334 P.2d 37 (1959).

Under the Public Liability Act of 1923, public entities are at times charged with "constructive notice" of a defect because it would be obvious upon an inspection and because it has existed for a substantial period of time. Subdivision (b) continues these rules. However, subdivision (c) recognizes that public entities cannot reasonably be expected to know of all substantial defects in their property, even where such defects may be obvious to any observer or may have existed for a substantial period of time. This subdivision permits an entity to show as a defense on the issue of notice that a reasonable inspection system—one designed to inform the entity whether its property is safe—would not have informed the entity of the particular defect. And to encourage public entities to exercise reasonable diligence in inspecting their property to discover hazards, the careful operation of a reasonable inspection system by the entity is made a complete defense to the issue of notice if such inspection system did not disclose the condition. In determining whether an inspection system is reasonable, the jury is permitted to consider the problems faced by the particular entity: the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger. The Public Liability Act does not provide public entities with any similar defenses on the question of notice.

835.4.  (a) A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury.

(b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and oppor-

tunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury.

**Comment:** Under this section, a public entity may absolve itself from liability for creating or failing to remedy a dangerous condition by showing that it would have been too costly and impractical for the public entity to have done anything else.

This defense has been provided public entities in recognition that, despite limited manpower and budgets, there is much that they are required to do. Unlike private enterprise, a public entity often cannot weigh the advantage of engaging in an activity against the cost and decide not to engage in it. Government cannot ''go out of the business'' of governing. Therefore, a public entity should not be liable for injuries caused by a dangerous condition if it is able to show that under all the circumstances, including the alternative courses of action available to it and the practicability and cost of pursuing such alternatives, its action in creating or failing to remedy the condition was not unreasonable.

No similar defense is provided to public entities by the Public Liability Act of 1923.

In addition to the defense specified here, the defenses normally available to private litigants—contributory negligence and assumption of the risk—are available to the public entity under subdivision (b) of Section 815.

### Article 3.   Liability of Public Employees

840.   Except as provided in this article, a public employee is not liable for injury caused by a condition of public property where such condition exists because of any act or omission of such employee within the scope of his employment. The liability established by this article is subject to any immunity of the public employee provided by statute and is subject to any defenses that would be available to the public employee if he were a private person.

**Comment:** Government Code Section 1953 has provided the exclusive basis for the liability of public officers and employees for dangerous conditions of public property since its enactment in 1919. This article supersedes Section 1953, and the provisions of that section that make it the exclusive basis of liability are carried forward, in substance, in this section. Hence, liability, if any, of a public employee for a condition of public property must be grounded upon this article and upon no other statute.

On the other hand, the general liability of public employees that is described here is subject to statutory immunities from liability that are found in other statutes, such as the immunities of Article 1 of this chapter and the immunities found in Article 3 of Chapter 1. It also is subject to the defenses normally available to private litigants.

840.2.   An employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, that no adequate measures were taken to protect against that risk, and that either:

(a) The dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee and the employee had the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous condition; or

(b) The employee had the authority and it was his responsibility to take adequate measures to protect against the dangerous condition at the expense of the public entity and the funds and other means for doing so were immediately available to him, and he had actual or constructive notice of the dangerous condition under Section 840.4 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

**Comment:** Subdivision (a) of this section subjects a public employee to liability for injuries caused by conditions which he has negligently created. The cases that have arisen under Government Code Section 1953 are in conflict upon the question whether public employees are subject to such liability, although the more recent authority seems to indicate that they are not.

Under this section, a public employee who has negligently created a dangerous condition may not be held liable for injuries caused thereby if someone other than the employee has taken adequate measures to protect against the condition. For example, if an employee through negligence creates a dangerous condition in a street, the employee may not be held liable to an automobile passenger who is injured when the auto strikes the condition if the entity has placed lights, warnings or barriers sufficient to prevent injury to careful motorists, even though the defense of contributory negligence may not be available against the passenger.

Subdivision (b) is comparable to Government Code Section 1953. However, unlike Section 1953, this section does not leave the question of notice to judicial construction. The requisite conditions for notice are stated in Section 840.4.

Under this section, a public employee may not be held liable for injuries caused by a dangerous condition of public property if it was not reasonably foreseeable that the particular type of injury incurred would occur. There is no similar provision in Section 1953. See the comment under Section 835.

840.4.   (a) A public employee had actual notice of a dangerous condition within the meaning of Section 840.2 if he had

actual personal knowledge of the existence of the condition and knew or should have known of its dangerous character.

(b) Subject to subdivision (c), a public employee had constructive notice of a dangerous condition within the meaning of Section 840.2 only if the plaintiff establishes that (1) the public employee had the authority and it was his responsibility as a public employee to inspect the property of the public entity or to see that inspections were made to determine whether dangerous conditions existed in the public property, (2) that the means for making such inspections or for seeing that such inspections were made were immediately available to the public employee, and (3) the dangerous condition had existed for such a period of time and was of such an obvious nature that the public employee, in the exercise of his authority and responsibility with due care, should have discovered the condition and its dangerous character.

(c) Notwithstanding subdivision (b), a public employee did not have constructive notice of a dangerous condition within the meaning of Section 840.2 if he establishes either:

(1) The existence of the condition and its dangerous character would not have been discovered by an inspection system that was reasonably adequate within the meaning of subdivision (c) of Section 835.2; or

(2) The public employee, in the exercise of his authority and responsibility as a public employee, maintained such an inspection system with due care and did not discover the condition.

**Comment:** This section prescribes the conditions under which a public employee may be charged with notice of a dangerous condition. See the discussion under Section 835.2.

840.6.   (a) A public employee is not liable under subdivision (a) of Section 840.2 for injury caused by a dangerous condition of public property if he establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or protecting against the risk of injury.

(b) A public employee is not liable under subdivision (b) of Section 840.2 for injury caused by a dangerous condition of public property if he establishes that the action taken to protect against the risk of injury created by the condition or the failure to take such action was reasonable. The reasonableness of the inaction or action shall be determined by taking into consideration the time and opportunity the public employee had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury.

**Comment:** This section makes available to a public employee a defense similar to that given public entities by Section 835.4. See the comment to that section.

### CHAPTER 3.   POLICE AND CORRECTIONAL ACTIVITIES

845.   Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.

**Comment:** This section grants a general immunity for failure to provide police protection or for failure to provide enough police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.

845.2.   A public employee is not liable for failure to provide a jail, detention or correctional facility or, if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein.

**Comment:** This section grants an immunity for failure to provide a jail, detention or correctional facility or for failure to provide sufficient equipment, personnel or facilities therein. This immunity is justified on the same ground as the immunity provided by Section 845. Notwithstanding the immunity provided public employees by this section, a public entity may be held liable for failure to provide the equipment, personnel or facilities mentioned in this section if the conditions of liability stated in Section 815.6 or in Chapter 2 (commencing with Section 830) of this part can be established.

845.4.   A public employee acting within the scope of his employment is not liable for interfering with the right of an inmate of a jail, detention or correctional facility to obtain a judicial determination or review of the legality of his confinement, but a public employee is liable for injury proximately caused by his intentional and unjustifiable interference with such right.

**Comment:** This section makes clear that liability exists for the intentional and unjustifiable interference with a basic legal right—the right of a person confined involuntarily to seek redress in the courts.

845.6.   Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee is liable if he knows or has reason

to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to see that the prisoner receives such medical care.

**Comment:** This section limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of *immediate* medical care. The standards of medical care to be provided to prisoners involve basic governmental policy that should not be subject to review in tort suits for damages. The immunity from *liability for damages* that is provided by this section exists even where some other statute might be construed to impose a mandatory duty to provide medical care to prisoners under other circumstances. In cases where another statute is so construed, the prisoner is left to the other remedies provided by law to compel public employees to perform their duties.

845.8.  Neither·a public entity nor a public employee is liable for:

(a)  Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release.

(b)  Any injury caused by an escaping or escaped prisoner.

**Comment:** This section is a specific application of the discretionary immunity recognized in California·cases and in Section 820.2. The extent of the freedom that must be accorded to prisoners for rehabilitative purposes and the nature of the precautions necessary to prevent escape of prisoners are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability.

846.  Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest.

**Comment:** This section is a specific application of the principle stated in Sections 818.2 and 821.

### CHAPTER 4.  FIRE PROTECTION

850.  Neither a public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection service.

**Comment:** Sections 850, 850.2 and 850.4 provide for a broad immunity from liability for injuries resulting in connection with fire protection service.

Sections 850 and 850.2 provide an absolute immunity from liability for injury resulting from failure to provide fire protection or from failure to provide enough personnel, equipment or other fire protection facilities. Whether fire protection should be provided at all, and the extent to which fire protection should be provided, are political decisions which are committed to the policy-making officials of government.

To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.

Section 850.4 provides for absolute immunity from liability for injury caused in fighting fires (other than injuries resulting from operation of motor vehicles) or from failure to properly maintain fire protection equipment or facilities. There are adequate incentives to careful maintenance of fire equipment without imposing tort liability; and firemen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable.

> 850.2.  Neither a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities.

**Comment:** See the comment to Section 850.

> 850.4.  Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires.

**Comment:** See the comment to Section 850.

> 850.6.  Whenever a public entity, pursuant to a call for assistance from another public entity, provides fire protection or firefighting service outside of the area regularly served and protected by the public entity providing such service, the public entity providing such service is liable for any injury for which liability is imposed by statute caused by its act or omission or the act or omission of its employee occurring in the performance of such fire protection or firefighting service. Notwithstanding any other law, the public entity calling for assistance is not liable for any act or omission of the public entity providing the assistance or for any act or omission of an employee of the public entity providing the assistance; but the public entity providing such service and the public entity calling for assistance may by agreement determine the extent, if any, to which the public entity calling for assistance will be required to indemnify the public entity providing the assistance.

**Comment:** This section makes clear which public entity is liable when one entity calls for the assistance of another in fighting a fire. Unless the entities otherwise agree, each entity is financially responsible only for the torts of its own personnel.

850.8. Any member of an organized fire department, fire protection district, or other firefighting unit of either the State or any political subdivision, any employee of the Division of Forestry, or any other public employee when acting in the scope of his employment, may transport or arrange for the transportation of any person injured by a fire, or by a fire protection operation, to a physician and surgeon or hospital if the injured person does not object to such transportation.

Neither a public entity nor a public employee is liable for any injury sustained by the injured person as a result of or in connection with such transportation or for any medical, ambulance or hospital bills incurred by or in behalf of the injured person or for any other damages, but a public employee is liable for injury proximately caused by his wilful misconduct in transporting the injured person or arranging for such transportation.

**Comment:** This section is based on Section 1957 of the Government Code which provides a similar immunity to firefighting personnel for transporting persons injured by a fire or by a fire protection operation.

## CHAPTER 5. MEDICAL, HOSPITAL AND PUBLIC HEALTH ACTIVITIES

855. (a) A public entity that operates or maintains any medical facility that is subject to regulation by the State Department of Public Health or the State Department of Mental Hygiene is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities required by any statute or any regulation of the State Department of Public Health or the State Department of Mental Hygiene prescribing minimum standards for equipment, personnel or facilities, unless the public entity establishes that it exercised reasonable diligence to comply with the applicable statute or regulation.

(b) A public entity that operates or maintains any medical facility that is not subject to regulation by the State Department of Public Health or the State Department of Mental Hygiene is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities substantially equivalent to those required by any statute or any regulation of the State Department of Public Health or the State Department of Mental Hygiene prescribing minimum standards for equipment, personnel or facilities applicable to a public medical facility of the same character and class, unless the public entity establishes that it exercised reasonable diligence to conform with such minimum standards.

(c) Nothing in this section confers authority upon, or augments the authority of, the State Department of Public Health or the State Department of Mental Hygiene to adopt, administer or enforce any regulation. Any regulation establishing minimum standards for equipment, personnel or facilities in

864     CALIFORNIA LAW REVISION COMMISSION

any medical facility operated or maintained by a public entity, to be effective, must be within the scope of authority conferred by law.

**Comment:** This section imposes liability upon a public entity operating or maintaining medical facilities where the public entity fails to comply with applicable minimum standards for equipment, personnel or facilities, unless the public entity establishes that it exercised reasonable diligence to comply. The minimum standards for equipment, personnel or facilities may be established by statute or by regulations promulgated by the State Department of Public Health or the State Department of Mental Hygiene.

Paragraph (c) makes clear that this section grants no authority to adopt or enforce regulations; such authority must be granted by some other statute.

855.2. A public employee acting within the scope of his employment is not liable for interfering with the right of an inmate of a medical facility operated or maintained by a public entity to obtain a judicial determination or review of the legality of his confinement, but a public employee is liable for injury proximately caused by his intentional and unjustifiable interference with such right.

**Comment:** This section, like Section 845.4, makes clear that liability exists for the intentional and unjustifiable interference with a basic legal right—the right to obtain judicial review of the legality of confinement.

855.4. (a) Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused.

(b) Neither a public entity nor a public employee is liable for an injury caused by an act or omission in carrying out with due care a decision described in subdivision (a).

**Comment:** This section declares a specific rule of discretionary immunity for acts or omissions relating to quarantines or other measures for the prevention or control of disease.

855.6. Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.

**Comment:** This section declares an immunity that has been recognized by the New York courts in the absence of statute. It grants an immunity for failure to perform adequately public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants. It does not apply to examinations for the purpose of treatment such as are made in doctors' offices and public hospitals. In those situations, the ordinary rules of liability would apply.

The immunity provided by this section relates only to failure to make any examination or, if an examination is made, to the "adequacy" of the examination; the section does not provide immunity, for example, where a public employee negligently injures a person while making an examination.

855.8.   (a) As used in this section, "mental illness" means mental illness, mental disorder bordering on mental illness, or mental deficiency.

(b) A public employee acting within the scope of his employment is not liable for injury resulting from diagnosing or failure to diagnose that a person is afflicted with mental illness or from prescribing or failing to prescribe for mental illness.

(c) A public employee acting within the scope of his employment is not liable for administering with due care the treatment prescribed for mental illness.

(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental illness.

**Comment:** This section declares an immunity from liability for diagnosing or prescribing treatment for mental illness. Diagnosis and treatment of mental illness necessarily involve a very high degree of discretion because of the inexact knowledge regarding such conditions. The section also declares an immunity from liability for carrying out with due care prescribed treatment. Liability may be imposed, however, for failure to use reasonable care in administering prescribed treatment, for the act or omission causing injury in this case would be a departure from a defined standard of care.

856.   (a) As used in this section, "mental illness or addiction" means mental illness, mental disorder bordering on mental illness, mental deficiency, epilepsy, habit forming drug addiction, narcotic drug addiction, dipsomania or inebriety, sexual psychopathy, or such mental abnormality as to evidence utter lack of power to control sexual impulses.

(b) A public employee acting within the scope of his employment is not liable for any injury resulting from determining in accordance with any applicable enactment:

(1) Whether to confine a person for mental illness or addiction.

(2) The terms and conditions of confinement for mental illness or addiction in a medical facility operated or maintained by a public entity.

(3) Whether to parole or release a person from confinement for mental illness or addiction in a medical facility operated or maintained by a public entity.

(c) A public employee is not liable for carrying out with due care a determination described in subdivision (b).

(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in carrying out or failing to carry out:

(1) A determination to confine or not to confine a person for mental illness or addiction.

(2) The terms or conditions of confinement of a person for mental illness or addiction in a medical facility operated or maintained by a public entity.

(3) A determination to parole or release a person from confinement for mental illness or addiction in a medical facility operated or maintained by a public entity.

**Comment:** This section declares an immunity from liability for determining whether to confine a person for "mental illness or addiction," for determining the terms and conditions of any such confinement and for determining whether to parole or release a person from confinement for such conditions. The phrase "mental illness or addiction" is used to describe certain mental or emotional conditions for which a person may be committed to a public hospital under the provisions of Welfare and Institutions Code Sections 5000 *et seq.* and 5100 *et seq.* (mental illness), 5075 *et seq.* (mental disorder bordering on mental illness), 5250 *et seq.* (mental deficiency), 5300 *et seq.* (epilepsy), 5350 *et seq.* (narcotic drug addiction), 5400 *et seq.* (habit forming drug addiction or dipsomania or inebriety), 5500 *et seq.* (sexual psychopathy), and 5600 *et seq.* (such mental abnormality as to evidence utter lack of power to control sexual impulses). The determination whether to confine or release a person who may be suffering from such a condition and the determination of the terms and conditions of his confinement necessarily involve a high degree of discretion.

The section also declares an immunity from liability for carrying out with due care the discretionary determinations that are made. Liability may be imposed, however, for failure to use reasonable care in carrying out whatever determination has been made, for the act or omission causing injury in this case would be a departure from a defined standard of care.

### CHAPTER 21.   TORT LIABILITY UNDER AGREEMENTS BETWEEN PUBLIC ENTITIES

895. As used in this chapter "agreement" means a joint powers agreement entered into pursuant to Chapter 5 (commencing with Section 6500) of Division 7 of Title 1 of the Government Code, an agreement to transfer the functions of

a public entity or an employee thereof to another public entity pursuant to Part 2 (commencing with Section 51300) of Division 1 of Title 5 of the Government Code, and any other agreement under which a public entity undertakes to perform any function, service or act with or for any other public entity or employee thereof with its consent, whether such agreement is expressed by resolution, contract, ordinance or in any other manner provided by law.

**Comment:** "Agreement" is used here to refer to any consensual arrangement between public entities under which some service, function or act is to be performed with or for any or all of the participating public entities. The broad definition is used so that the liability standards of this chapter will be applicable to all such arrangements regardless of whether the agreement is entered into under the authority of Government Code Section 6502 or under the authority of any other law.

895.2.   Whenever any public entities enter into an agreement, they are jointly and severally liable upon any liability which is imposed by any law other than this chapter upon any one of the entities or upon any entity created by the agreement for injury caused by a negligent or wrongful act or omission occurring in the performance of such agreement.

Notwithstanding any other law, if a judgment is recovered against a public entity for injury caused in the performance of an agreement, the time within which a claim for such injury may be presented or an action commenced against any other public entity that is subject to the liability determined by the judgment under the provisions of this section begins to run when the judgment is rendered.

**Comment:** This section makes each of the public entities that are parties to an agreement jointly and severally liable to the injured party for any torts that may occur in the performance of the agreement for which any one of the entities, or an entity created by the agreement, is otherwise made liable by law.

The time for presenting claims or filing actions against other entities is extended by the second paragraph so that the rights granted by this section will not become unenforceable during the time the first judgment is being obtained.

895.4.   As part of any agreement, the public entities may provide for contribution or indemnification by any or all of the public entities that are parties to the agreement upon any liability arising out of the performance of the agreement.

**Comment:** This section permits public entities that are parties to an agreement to allocate the ultimate financial responsibility among themselves in whatever manner seems most desirable to them. The section does not affect the right of the injured person to recover the full amount of his damages from any one of the public entities under Section 895.2.

895.6. Unless the public entities that are parties to an agreement otherwise provide in the agreement, if a public entity is held liable upon any judgment for damages caused by a negligent or wrongful act or omission occurring in the performance of the agreement and pays in excess of its pro rata share in satisfaction of such judgment, such public entity is entitled to contribution from each of the other public entities that are parties to the agreement. The pro rata share of each public entity is determined by dividing the total amount of the judgment by the number of public entities that are parties to the agreement. The right of contribution is limited to the amount paid in satisfaction of the judgment in excess of the pro rata share of the public entity so paying. No public entity may be compelled to make contribution beyond its own pro rata share of the entire judgment.

**Comment:** Where an agreement between public entities fails to specify how the responsibility for tort liability is to be allocated, this section requires each entity to contribute a pro rata share of the amount of any judgment based on a tort that occurs in the performance of the agreement. Where it would not be appropriate to determine contributions according to the formula set out in this section, the public entities may by agreement provide another method of allocating responsibility for tort liability. See Section 895.4.

895.8. This chapter applies to any agreement between public entities, whether entered into before or after the effective date of this chapter.

**Comment:** This section makes this chapter apply to agreements made before its effective date. Thus, for example, where existing agreements do not contain any provision indicating which public entity is to bear the ultimate financial burden, this chapter will provide appropriate rules governing contribution.

SEC. 2. Section 340 of the Code of Civil Procedure is amended to read:

340. Within one year:

1. An action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the State, except when the statute imposing it prescribes a different limitation;

2. An action upon a statute, or upon an undertaking in a criminal action, for a forfeiture or penalty to the people of this State;

3. An action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another, or by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement, or against any person who boards or feeds an animal or fowl or who

engages in the practice of veterinary medicine as defined in Business and Professions Code Section 4826, for such person's neglect resulting in injury or death to an animal or fowl in the course of boarding or feeding such animal or fowl or in the course of the practice of veterinary medicine on such animal or fowl;

4. An action against a sheriff or other officer for the escape of a prisoner arrested or imprisoned on civil process;

~~5. An action against a municipal corporation for damages or injuries to property caused by a mob or riot;~~

~~6.~~ *5.* An action against an officer to recover damages for the seizure of any property for a statutory forfeiture to the State, or for the detention of, or injury to property so seized, or for damages done to any person in making any such seizure.

**Comment:** The deleted subdivision 5 is obsolete in view of the repeal of Article 6 (commencing with Section 50140) of Chapter 1 of Part 1 of Division 1 of Title 5 of the Government Code.

SEC. 3. Section 1095 of the Code of Civil Procedure is amended to read:

1095. If judgment be given for the applicant, he may recover the damages which he has sustained, as found by the jury, or as may be determined by the court or referee, upon a reference to be ordered, together with costs; and for such damages and costs an execution may issue; and a peremptory mandate must also be awarded without delay; provided, however, that in all cases where the respondent is ~~a state, county or municipal~~ *an* officer *of a public entity*, all damages and costs, or either, which may be recovered or awarded, shall be recovered and awarded against the ~~state, county or municipal corporation~~ *public entity* represented by such officer and not against such officer so appearing in said proceeding, and the same shall be a proper claim against the ~~state, or county, or municipal corporation~~ *public entity* for which such officer shall have appeared, and shall be paid as other claims against the ~~state, county or municipality~~ *public entity* are paid; but in all such cases, the court shall first determine that the officer appeared and made defense in such proceeding in good faith. *For the purpose of this section, "public entity" includes the State, a county, city, district or other public agency or public corporation. For the purpose of this section, "officer" includes officer, agent or employee.*

**Comment:** The amendment makes this section apply to all public entities and to agents and employees as well as officers.

SEC. 4. Section 1242 of the Code of Civil Procedure is amended to read:

1242. ~~Parties may make location. May enter to make surveys.~~ In all cases where land is required for public use, the State, or its agents in charge of such use, may survey and

locate the same; but it must be located in the manner which will be most compatible with the greatest public good and the least private injury, and subject to the provisions of Section 1247. The State, or its agents in charge of such public use, may enter upon the land and make examinations, surveys, and maps thereof, ~~and such entry shall constitute no cause of action in favor of the owners of the land, except for injuries resulting from negligence, wantonness, or malice~~ .

**Comment:** The deleted portions of the above section are superseded by new Government Code Sections 815 (public entities immune except as provided by statute) and 821.8 (immunity for public employees for entering property pursuant to law).

### Sec. 5.    Section 903 of the Education Code is repealed.

~~903.    The governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers or employees.~~

**Comment:** The above section is superseded by new Government Code Sections 815.2 (public entities liable for torts of employees within the scope of employment), 815.4 (liability for act or omission of independent contractor), 815.6 (liability for failure to discharge a mandatory duty), 815.8 (liability for failure to exercise due care in appointing or disciplining employees), 816 (liability for malicious prosecution) and by other provisions of the legislation recommended by the Commission.

### Sec. 6.    Section 1041 of the Education Code is repealed.

~~1041.    No member of the governing board of any school district shall be held personally liable for accidents to children going to or returning from school, or on the playgrounds, or in connection with school work.~~

**Comment:** The above section is superseded by new Government Code Section 820.2 (discretionary immunity of public employees), by other sections in new Article 2 (commencing with Section 820) of Chapter 1 of Part 2 of Division 3.6 of Title 1 of the Government Code, which grant public employees immunity from liability in a variety of circumstances and by new Government Code Sections 840 to 840.6 (liability of public employees for dangerous conditions of public property).

### Sec. 7.    Section 1042 of the Education Code is repealed.

~~1042.    No member of the governing board of any school district shall be held personally liable for the death of, or injury to, any pupil enrolled in any school of the district, resulting from his participation in any classroom or other activity to which he has been lawfully assigned as a pupil in the school unless negligence on the part of the member of the governing board is the proximate cause of the injury or death.~~

**Comment:** This section and Sections 13551 and 15512 are superseded by new Government Code Section 820.8 (immunity of public employees from liability for acts of others). See also the comment to Education Code Section 1041.

SEC. 8.   Section 13551 of the Education Code is repealed.

~~13551. No superintendent, principal, teacher, or other employee of a school district employed in a position requiring certification qualifications shall be held personally liable for the death of, or injury to, any pupil enrolled in any school of the district, resulting from the participation of the pupil in any classroom or other activity to which he has been lawfully assigned as a pupil in the school unless negligence on the part of the employee is the proximate cause of the injury or death.~~

**Comment:** See the comment to Education Code Section 1042.

SEC. 9.   Section 15512 of the Education Code is repealed.

~~15512. No member of the governing board shall be held personally liable for any damage or injury to person or property as a result of the use of tents or other temporary structures, except in case of his own personal negligence or misconduct.~~

**Comment:** See the comments to Education Code Sections 1041 and 1042.

SEC. 10.   Section 15513 of the Education Code is repealed.

~~15513. If, at the election, neither the issuance of bonds nor the increase of the tax rate is authorized, and the other proposition on the ballot does not receive a majority of the votes cast thereon in favor thereof, no member of the governing board of the district shall be held personally liable for any injury to person or damage to property as a result of the continued use of any building or buildings referred to in the resolution or notice calling the election.~~

**Comment:** The above section and Education Code Sections 15514, 15515 and 15516 are superseded by new Chapter 2 (commencing with Section 830) of Part 2 of Division 3.6 of Title 1 of the Government Code (liability of public entities and public employees for dangerous conditions of public property).

SEC. 11.   Section 15514 of the Education Code is repealed.

~~15514. No member of the governing board of the district shall be held personally liable for injury to person or damage to property by reason of the use of any building.~~

**Comment:** See the comment to Education Code Section 15513.

SEC. 12.   Section 15515 of the Education Code is repealed.

~~15515. Nothing in Sections 15512, 15513, or 15514 shall be construed as relieving any school district of any liability for injury to person or damage to property imposed by law.~~

**Comment:** This section is obsolete in view of the repeal of all of the sections it refers to.

SEC. 13.   Section 15516 of the Education Code is repealed.

15516.   No member of the governing board of any school district or employee of any school district shall be held personally liable for the death or injury of any pupil above the compulsory school age or for damage to the property of any such pupil resulting from his voluntary attendance upon classes on premises and not under the management and control of the governing board of the district, or resulting from his voluntary attendance in buildings not owned, rented or leased by the school district or upon field trips, if such death, injury, or damage is caused by the dangerous or defective condition of the premises or buildings in which such classes are maintained or which are entered on field trips.

**Comment:** See the comment to Section 15513.

SEC. 14.   Article 1 (commencing with Section 1950) of Chapter 6 of Division 4 of Title 1 of the Government Code is repealed.

**Comment:** Article 1 consists of Sections 1950, 1951, 1952, 1953, 1953.5, 1953.6, 1954, 1955, 1956, 1956.5, 1957 and 1959. The text of these sections is set out below in strike-out type.

1950.   As used in this chapter, "board" means board of supervisors, board of city trustees, city council, board of education, board of school trustees or the legislative body of a county, city or school district, whatever the name by which it is known.

1951.   As used in this chapter, "public property" means public street, highway, bridge, building, park, grounds, works or property.

1952.   This article shall not be construed as enlarging the duty or liability of any public officer.

1953.   No officer of the State or of any district, county, or city is liable for any damage or injury to any person or property resulting from the defective or dangerous condition of any public property, unless all of the following first appear:

(a) The injury sustained was the direct and proximate result of such defective or dangerous condition.

(b) The officer had notice of such defective or dangerous condition or such defective or dangerous condition was directly attributable to work done by him, or under his direction, in a negligent, careless or unworkmanlike manner.

(c) He had authority and it was his duty to remedy such condition at the expense of the State or of a political subdivision thereof and that funds for that purpose were immediately available to him.

(d) Within a reasonable time after receiving such notice and being able to remedy such condition, he failed so to do, or failed to take reasonable steps to give adequate warning of such condition.

(c) The damage or injury was sustained while such public property was being carefully used, and due care was being exercised to avoid the danger due to such condition.

1953.5. No officer of the State, or of any district, county, city and county, city, or judicial district, is liable for moneys stolen from his official custody unless the loss was sustained because the officer failed to exercise due care.

1953.6. No officer of a county, city, or city and county, whose sole compensation by virtue of his office is a fixed salary established by the Legislature, the local governing body, or the board of supervisors, shall be personally liable for the negligent act or omission of any deputy or employee serving under him and performing the duties of his office, where the appointment or qualification of such deputy or employee is required to be and has been approved by the local governing body or the board of supervisors, or by the civil service commission, unless the officer failed to exercise due care in the selection, appointment, or supervision of such deputy or employee, or negligently failed to suspend or secure the discharge of such deputy or employee after knowledge or notice of his inefficiency or incompetency.

Nothing in this section shall be interpreted as placing any liability upon the principal officer for the act of a deputy or employee unless such liability is otherwise imposed upon the principal officer by law, nor shall this section be construed or interpreted as releasing or relieving any such county, city, or city and county of any liability for the negligent act or omission of any such deputy or employee otherwise imposed by law.

1954. No member of any board is liable for the negligent act or omission of any appointee or employee appointed or employed by him in his official capacity, whether the appointment or employment was made singly or in conjunction with other members of the board, unless the member or members of the board making the appointment or employment either:

(a) Knew or had notice that the person appointed or employed was inefficient and incompetent to perform or render the service or services for which he was appointed or employed.

(b) Retained such inefficient or incompetent person after knowledge or notice of such inefficiency or incompetency.

1955. If any officer, agent, or employee of the State, a district, county, political subdivision, or city acts in good faith and without malice under the apparent authority of any law of the State, whether an initiative measure or an act enacted by the Legislature and the law subsequently is judicially declared to be unconstitutional as in conflict with the Constitution of the State or of the United States, he is not civilly liable in any action in which he would not have been liable if the law had not been declared unconstitutional, nor is he liable to any greater extent than he would have been if the law had not been declared unconstitutional.

1956. (a) The State, a county, city, district, or any other public agency or public corporation may insure its officers, deputies, assistants, agents, and employees against any liability, other than a liability which may be insured against under the provisions of Division 4 (commencing with Section 3201) of the Labor Code, for injuries or damages

874                CALIFORNIA LAW REVISION COMMISSION

resulting from their negligence or carelessness during the course of their service or employment and for the injuries or damages resulting from the dangerous or defective condition of public property, including public property as defined in subdivision (b) of this section, and due to their alleged negligence or carelessness, and for injuries or damages resulting from false arrest or false imprisonment, either by self-insurance, or in any insurer authorized to transact such insurance in the State (except in the case of school district governing boards to the extent they are authorized to place insurance in nonadmitted insurers by Sections 1044 and 15802 of the Education Code). The premium for the insurance is a proper charge against the Treasury of the State, county, city, district, public agency or public corporation.

(b) In addition to the definition of public property as contained in Section 1951, "public property" includes any vehicle, implement or machinery whether owned by the State, a county, city, district, or any other public agency or public corporation, or operated by or under the direction, authority or at the request of any public officer.

(c) "Officers" includes any deputy, assistant, agent or employee of the State, a county, city, district, or any other public agency or public corporation acting within the scope of his office, agency or employment.

1956.5.   A county, city, district, or any other public agency or public corporation may insure itself against any liability, other than a liability which may be insured against pursuant to Division 4 of the Labor Code, either by self-insurance or in any insurer authorized to transact such insurance in the State. The premium for such insurance is a proper charge against such county, city, district or other public agency or public corporation.

1957.   Any member of an organized fire department, fire protection district, or other fire-fighting unit of either the State or any political subdivision, or any employee of the Division of Forestry, may transport or arrange for the transportation of any person injured by a fire, or by an accident which occurs as a result of any fire-fighting or fire protection operation, to a physician and surgeon or hospital, if the injured person does not object to such transportation.

Any member of an organized fire department, fire protection district, or other fire-fighting unit of either the State or any political subdivision, or any employee of the Division of Forestry shall not be liable for any damages or for any medical, ambulance, or hospital bills incurred in behalf of the injured party.

1959.   Each county may insure the officers and attaches of its superior, municipal, and justice courts against any liability, other than a liability which may be insured against under the provisions of Division 4 of the Labor Code, for injuries or damages resulting from their negligence or carelessness during the course of their service or employment. The premium for the insurance is a proper charge against the treasury of the county.

The above sections are repealed for the reasons indicated below:

Sections 1950 and 1951 are definitional sections; they become unnecessary because the defined terms are used only in the repealed article.

Section 1952 becomes unnecessary when the article is repealed.

Section 1953 is superseded by new Article 3 (commencing with Section 840) of Chapter 2 of Part 2 of Division 3.6 of Title 1 of the Government Code (liability of public employees for dangerous conditions of public property).

Section 1953.5 is superseded by new Section 820.8.

Section 1953.6 is superseded by new Sections 820.8 and 815.8.

Section 1954 is superseded by new Sections 820.8 and 815.8.

Section 1955 is superseded by new Sections 820.4 and 820.6.

Section 1956 is superseded by the general statute relating to insurance recommended by the Commission.

Section 1956.5 is superseded by the Commission's general insurance statute.

Section 1957 is superseded by new Government Code Section 850.8.

Section 1959 is superseded by the Commission's general insurance statute.

SEC. 15. Section 2002.5 of the Government Code is repealed.

~~2002.5. Whenever a suit is filed against an employee or officer of the State of California licensed in one of the healing arts under Division 2 of the Business and Professions Code, for malpractice alleged to have arisen out of the performance of his duties as a state employee, a copy of the complaint shall also be served upon the Attorney General and the Attorney General upon the request of such employee shall defend said suit on behalf of such employee. If there is a settlement or judgment in the suit the State shall pay the same; provided, that no settlement shall be effected without the consent of the head of the state agency concerned and the approval of the Attorney General. The settlement of such claims or judgments shall be limited to those arising from acts of such officers and employees of the State in the performance of their duties, or by reason of emergency aid given to inmates, state officials, employees, and to members of the public.~~

**Comment:** This section is superseded by new Government Code Sections 825 to 825.6 (indemnity of public employees) and by the recommendation of the Commission relating to defense of actions brought against public employees.

SEC. 16. Section 39586 of the Government Code is repealed.

~~39586. If the legislative body finds that property damage was caused by the negligence of a city officer or employee in connection with the abatement of a nuisance pursuant to this article, a claim for such damages may be paid from the city general fund. Claims therefor are governed by Chapter 2 (commencing with Section 700) of Division 3.5 of Title 1 of this code.~~

**Comment:** This section is superseded by the new general liability statute (Government Code Sections 815 to 818.6), especially by Section 815.2.

SEC. 17.  Article 6 (commencing with Section 50140) of Chapter 1 of Part 1 of Division 1 of Title 5 of the Government Code is repealed.

**Comment:** Article 6 consists of Sections 50140 to 50145, inclusive. The text of the sections in the repealed article is set out below in strike-out type.

50140. A local agency is responsible for damage by mobs or riots to property within its boundaries.

50141. Such actions shall be tried in the county where the property damaged is situated and shall be commenced within one year after the commission of the act complained of.

50142. The plaintiff in any such action shall not recover if the damage was aided, sanctioned, or permitted by his negligence.

50143. On the certificate of the presiding judge or clerk of the court rendering judgment against the local agency for damages by mobs or riots, the legislative body, by ordinance, shall cause a warrant to be issued on the general fund, which shall be paid in its regular order.

50144. Within three years, at the proper times, the legislative body shall levy and cause to be collected a tax on the taxable property of the local agency for the payment of the warrant.

50145. When the levees and other works of reclamation of a district are damaged or destroyed by mobs or riots and an action is brought for damages, it shall be prosecuted by the Attorney General in the name of the people of the State of California. The amount recovered shall be paid to the treasurer of the county, who shall credit it to the district.

Sections 50140 to 50145 are inconsistent with the legislation recommended by the Commission. Sections 50140 to 50145 impose absolute liability upon cities and counties for property damages caused by mobs or riots within their boundaries. These sections are an anachronism in modern law. They are derived from similar English laws that date back to a time when the government relied on local townspeople to suppress riots. The risk of property loss from mob or riot activity is now spread through standard provisions of insurance policies. Sections 50140 to 50145 should, therefore, be repealed.

SEC. 18.  Article 3 (commencing with Section 53050) of Chapter 2 of Part 2 of Division 1 of Title 5 of the Government Code is repealed.

**Comment:** Article 3 consists of Sections 53050 to 53057, inclusive. The text of the repealed sections in this article are set out below in strike-out type.

53050. As used in this article:

(a) "Person" or "public" includes any pupil attending the public schools of any school or high school district.

(b) "Public property" means public street, highway, building, park, grounds, works, or property.

(c) "Local agency" means city, county, or school district.

53051. A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property

if the legislative body, board or person authorized to remedy the condition:

(a) Had knowledge or notice of the defective or dangerous condition.

(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.

53052. When it is claimed that a person has been injured or property damaged as a result of the dangerous or defective condition of public property, a written claim for damages shall be presented in conformity with and shall be governed by Chapter 2 (commencing with Section 700) of Division 3.5 of Title 1 of the Government Code.

53054. When a damage suit is brought against a local agency for injuries to person or property allegedly received as a result of the dangerous or defective condition of public property, the attorney for the local agency shall be defense counsel unless other counsel is provided for. The fees and expenses of defending the suit are lawful charges against the local agency.

53055. When legal liability is admitted or disputed the local agency may pay a bona fide claim or compromise a disputed claim out of public funds, if the attorney for the local agency approves of the compromise.

53056. A local agency may insure against liability, except a liability which may be insured against pursuant to Division 4 of the Labor Code, for injuries or damages resulting from the dangerous or defective condition of public property by self-insurance, or insurance in an admitted insurer (except in the case of school district governing boards to the extent they are authorized to place insurance in nonadmitted insurers by Sections 1044 and 15802 of the Education Code). The premium for the insurance is a charge against the local agency.

53057. A local agency which authorizes its employees to burn weeds and rubbish on vacant property shall be liable for injuries to persons and damage to other property caused by negligence of the employees in burning the weeds and rubbish. A written claim for such damages shall be presented in conformity with and shall be governed by Chapter 2 (commencing with Section 700) of Division 3.5 of Title 1. The cost of insuring the liability imposed by this section may be added to any assessment authorized to be levied by a local agency to defray the costs of burning weeds and rubbish on vacant property.

For the purposes of this section, "local agency" shall include all other districts in addition to school districts.

Article 6 (set out above) should be repealed because Sections 53050 and 53051 are superseded by new Chapter 2 of Part 2 (commencing with Section 830) of Division 3.6 of Title 1 of the Government Code (liability for dangerous conditions of property); Section 53057 is superseded by new Government Code Section 815.2. Sections 53052, 53054, 53055 and 53056 are superseded by provisions in the recommendations of the Commission relating to insurance; claims, actions and judgments; and defense of public employees.

SEC. 19.   Section 54002 of the Government Code is repealed.

54002. The State, city, or county, is not liable for damages caused by accidents on the bridle trails.

878          CALIFORNIA LAW REVISION COMMISSION

**Comment:** This section is superseded by new Government Code Section 831.4 which grants public entities immunity from liability for conditions of various kinds of property.

SEC. 20.    Section 61627 of the Government Code is repealed.

61627.   No officer, agent, or employee shall be liable for any act or omission of any agent or employee appointed or employed by him unless he had actual notice that the person appointed or employed was inefficient or incompetent to perform the service for which he was appointed or employed or retains the inefficient or incompetent person after notice of the inefficiency or incompetency.

**Comment:** This section is superseded by new Government Code Sections 815.8 (imposing liability on public entities for appointing or failing to remove employees known to be incompetent) and 820.8 (granting public employees immunity from liability for injuries caused by the torts of other persons).

SEC. 21.    Section 61633 of the Government Code is repealed.

61633.   If an officer, agent, or employee of the district is held liable for any act or omission in his official capacity, except in case of actual fraud or actual malice, and any judgment is rendered thereon, the district shall pay the judgment without obligation for repayment by the officer, agent, or employee.

**Comment:** This section is superseded by new Government Code Sections 825 to 825.6 (indemnification of public employees).

SEC. 22.    Section 943 of the Streets and Highways Code is amended to read:

943.    Such board may:

(a) Acquire any real property or interest therein for the uses and purposes of county highways. When eminent domain proceedings are necessary, the board shall require the district attorney to institute such proceedings. The expense of and award in such proceedings may be paid from the road fund or the general fund of the county, or the road fund of any district benefited.

(b) Lay out, construct, improve, and maintain county highways.

(c) Incur a bonded indebtedness for any of such purposes, subject to the provisions of Section 944.

(d) Construct and maintain stock trails approximately paralleling any county highway, retain and maintain for stock trails the right-of-way of any county highway which is superseded by relocation. The county shall not be liable in any way for any damages resulting from the use of such stock trail by any vehicle. Such stock trails shall not be included in the term "maintained mileage of county roads" as that term is used in Chapter 3 of Division 3 of this code.

**Comment:** The immunity stated in the deleted language is also granted by Streets and Highways Code Section 954 and is retained in that section.

SEC. 23.   Section 954 of the Streets and Highways Code is amended to read:

954.   Except in the case of highways dedicated to the public by deed or by express dedication of the owner or acquired through eminent domain proceedings, all county highways which for a period of five consecutive years are impassable for vehicular travel, and on which during such period of time no public money is expended for maintenance, are unnecessary highways, subject to abandonment pursuant to Sections 955 and 956, or as herein provided. The board of supervisors of any county on its own motion or on the petition of any interested taxpayer of the county may abandon any such unnecessary highway or may designate such county highway a stock trail. The board of supervisors shall cause notices to be posted upon such stock trails, and also at the entrance of such stock trails, directing all persons to drive all untethered stock thereon.

After a stock trail has been established or designated as provided in this chapter, the county ~~shall~~ *is* not ~~be liable in any way for any damages resulting from the use of such stock trail by any~~ *vehicle for death or injury to a vehicle owner or operator or passenger, or for damage to a vehicle or its contents, resulting from a dangerous condition of the stock trail.*

Such stock trails shall not be included in the term "maintained mileage of county roads" as that term is used in Chapter 3 of Division 3 of this code.

**Comment:** This is an adjusting amendment to conform the section to the provisions of the new Chapter 2 (commencing with Section 830) of Part 2 of Division 3.6 of Title 1 of the Government Code.

SEC. 24.   Chapter 23 (commencing with Section 5640) of Part 3 of Division 7 of the Streets and Highways Code is repealed.

**Comment:** Chapter 23 consists of Sections 5640 and 5641. The text of the repealed chapter is set out below in strike-out type.

~~5640.   If, because any graded street or sidewalk is out of repair and in condition to endanger persons or property passing thereon, any person, while carefully using the street or sidewalk and exercising ordinary care to avoid the danger, suffers damage to his person or property, through any such defect therein, no recourse for damages thus suffered shall be had against the city.~~

~~5641.   If the defect in the street or sidewalk has existed for a period of 24 hours or more after written notice thereof to the superintendent of streets, then the person on whom the law may have imposed the obligations to repair such defect in the street or sidewalk, and also the officer through whose official negligence such defect remains un-~~

repaired, shall be jointly and severally liable to the party injured for the damage sustained; provided, that the superintendent of streets has the authority to make the repairs, under the direction of the legislative body, at the expense of the city.

This chapter is superseded by new Chapter 2 (commencing with Section 830) of Part 2 of Division 3.6 of Title 1 of the Government Code (liability of public entities for dangerous conditions of public property).

The chapter was previously repealed by implication to a large extent by the Public Liability Act of 1923 (Government Code Section 53051).

SEC. 25.   Section 22725 of the Water Code is repealed.

22725.   No officer shall be personally liable for any damage resulting from the operation of the district or from the negligence or misconduct of any of its officers or employees unless the damage was proximately caused by the officer's own negligence, misconduct, or wilful violation of official duty.

**Comment:** This section, and Section 22726 of the Water Code, are superseded by new Government Code Sections 815.8 (liability of public entity for not exercising due care in appointing or disciplining employees) and 820.8 (employee not liable for acts or omissions of another person).

SEC. 26.   Section 22726 of the Water Code is repealed.

22726.   No officer or agent shall be liable for the negligence of any agent or employee appointed or hired by him unless he had actual notice that the person appointed or hired was inefficient or incompetent to perform the service for which he was appointed or hired or retains the inefficient or incompetent person after actual notice of the inefficiency or incompetency.

**Comment:** See the comment to Water Code Section 22725.

SEC. 27.   Section 22730 of the Water Code is repealed.

22730.   When an officer of a district is held liable for any act or omission done or omitted in his official capacity and any judgment is rendered thereon, the district shall pay the judgment without obligation for repayment by the officer.

**Comment:** This section is superseded by new Government Code Sections 825 to 825.6 (indemnification of public employees).

SEC. 28.   Section 22731 of the Water Code is repealed.

22731.   Nothing in the preceding portion of this article shall be construed as creating any liability except as provided in Section 22730 unless it would have existed regardless of this article.

**Comment:** This section is unnecessary in view of the repeal of Section 22730.

SEC. 29.   Section 31083 of the Water Code is repealed.

~~31083.   No officer, agent, or employee shall be liable for any act or omission of any agent or employee appointed or employed by him unless he had actual notice that the person appointed or employed was inefficient or incompetent to perform the service for which he was appointed or employed or retains the inefficient or incompetent person after notice of the inefficiency or incompetency.~~

**Comment:** This section is superseded by new Government Code Section 815.8 (liability for failure to exercise due care in appointing or disciplining employees) and Section 820.8 (employee immune from liability for tortious act of another person).

SEC. 30.   Section 31089 of the Water Code is repealed.

~~31089.   Nothing in Sections 31083 to 31088, inclusive, shall be construed as creating any liability unless it would have existed regardless of these sections, nor shall these sections amend, modify, or repeal Sections 1951, 1952, 1953, or 2001 of the Government Code.~~

**Comment:** This section is unnecessary because Water Code Section 31083 is repealed.

SEC. 31.   Section 31090 of the Water Code is repealed.

~~31090.   If an officer, agent, or employee of the district is held liable for any act or omission in his official capacity, except in case of actual fraud or actual malice, and any judgment is rendered thereon, the district shall pay the judgment without obligation for repayment by the officer, agent, or employee.~~

**Comment:** This section is superseded by new Government Code Sections 825 to 825.6 (indemnification of public employees).

SEC. 32.   Section 35750 of the Water Code is repealed.

~~35750.   No officer shall be personally liable for any damage resulting from the operation of the district or from the negligence or misconduct of any of its officers or employees unless the damage was proximately caused by the officer's own negligence, misconduct, or wilful violation of official duty.~~

**Comment:** This section, and Section 33751 of the Water Code, are superseded by new Government Code Sections 815.8 (liability of public entity for not exercising due care in appointing or disciplining employees) and 820.8 (employee not liable for acts or omissions of another person).

SEC. 33.   Section 35751 of the Water Code is repealed.

~~35751.   No officer or agent shall be liable for the negligence of any agent or employee appointed or hired by him unless he had actual notice that the person appointed or hired was in-~~

~~efficient or incompetent to perform the service for which he was appointed or hired or retains the inefficient or incompetent person after actual notice of the inefficiency or incompetency.~~

**Comment:** See the comment to Water Code Section 35750.

SEC. 34.   Section 35755 of the Water Code is repealed.
~~35755.   When an officer of a district is held liable for any act or omission done or omitted in his official capacity and any judgment is rendered thereon, the district shall pay the judgment without obligation for repayment by the officer.~~

**Comment:** This section is superseded by new Government Code Sections 825 to 825.6 (indemnification of public employees).

SEC. 35.   Section 35756 of the Water Code is repealed.
~~35756.   Nothing in this article shall be construed as creating any liability unless it would have existed regardless of this article.~~

**Comment:** This section is unnecessary in view of the repeal of Water Code Sections 35750, 35751 and 35755.

SEC. 36.   Section 50150 of the Water Code is repealed.
~~50150.   The board shall be named as party defendant and legally served before a judgment can be entered in an action instituted against any person by reason of his official connection with a district.~~

**Comment:** This section is repealed because it is inconsistent with the provisions of Part 2 (commencing with Section 814), which relates to liability of public entities and public employees, of new Division 3.6 of Title 1 of the Government Code—particularly Sections 825 to 825.6 (indemnification of public employees).

SEC. 37.   Section 50152 of the Water Code is repealed.
~~50152.   The negligence of a trustee in his official capacity or any employee or servant of a district shall be imputed to the district to the same extent as if the district were a private corporation.~~

**Comment:** This section is superseded by new Government Code Section 815.2 (liability of public entities for acts of public employees).

SEC. 38.   Article 10 (consisting of Section 51480) of Part 7 of Division 15 of the Water Code is repealed.

**Comment:** This article consists only of Section 51480, the text of which is set out below in strike-out type.
~~51480.   The district may levy assessments to pay any damage incurred through the negligent conduct of the trustees, employees or servants of the district which is imputed to the district under the pro-~~

~~visions of Section 50152, and such damages are incidental expenses of the district.~~

This section is designed to implement Water Code Section 50152, which is repealed.

SEC. 39.   Chapter 5 (commencing with Section 60200) of Part 3 of Division 18 of the Water Code is repealed.

**Comment:** Chapter 5 consists of Sections 60200 to 60202, inclusive. The text of the repealed chapter is set out below in strike-out type.

~~60200.   No director or other officer, agent, or employee of any district shall be liable for any act or omission of any officer, agent or employee appointed or employed by him unless he had actual notice that the person appointed or employed was inefficient or incompetent to perform the service for which such person was appointed or employed or unless he retains the inefficient or incompetent person after notice of the inefficiency or incompetency.~~

~~60201.   The district may employ counsel to defend any litigation brought against any director or other officer, agent or employee thereof, on account of his official action, and the fees and expenses involved therein shall be a lawful charge against the district.~~

~~60202.   If any director or other officer, agent, or employee of the district is held liable for any act or omission in his official capacity, and any judgment is rendered thereon, the district, except in case of his actual fraud or actual malice, shall pay the judgment without obligation for repayment by such director or other officer, agent or employee.~~

Section 60200 is superseded by new Government Code Sections 815.8 (liability of public entities for lack of care in appointing or disciplining employees) and 820.8 (immunity of public employees for tortious acts of other persons). Sections 60201 and 60202 are superseded by new Government Code Sections 825 to 825.6 (indemnification of public employees) and the legislation recommended by the Commission relating to defense of public employees.

SEC. 40.   Section 6005 of the Welfare and Institutions Code is amended to read:

6005.   Any superintendent or person in charge of the county psychiatric hospital, and any public officer, public employee, or public physician who either admits, causes to be admitted, delivers, or assists in delivering, detains, cares for, or treats, or assists in detaining, caring for or treating, any person pursuant to this chapter shall not be rendered *criminally* liable thereby . ~~either civilly or criminally.~~

**Comment:** The deleted portions of this section, Section 6610.3, and Section 6610.9 of the Welfare and Institutions Code are superseded by new Government Code Sections 820.4 (immunity of public employees for executing the law with due care), 821.6 (immunity of public employees for malicious prosecution), 855.8 (immunity for diagnosis and treatment of mental illness) and 856 (immunity of public employees for confining persons for mental illness).

SEC. 41.   Section 6610.3 of the Welfare and Institutions Code is amended to read:

6610.3.   Any relative or friend of a person believed to be mentally ill and in need of supervision, care, or treatment may report that fact to the local health officer, together with the name and place of residence of the person. The local health officer may make or cause to be made such investigations as he deems to be necessary to ascertain the facts. If it appears to the health officer that there is reasonable cause for believing that admission to a state hospital under this article will be for the best interest of the person he may make the application to a state hospital. Proceedings under this article shall be stopped whenever the person believed to be mentally ill or any relative or friend acting in his behalf protests against such proceedings to the investigating health officer or to the examining physicians.

Any local health officer or his employee who makes or assists in making an application under this article shall not be rendered ~~civilly or~~ criminally liable thereby when there is reasonable cause for believing that such application will be for the best interest of the person.

**Comment:** See the comment to Welfare and Institutions Code Section 6005.

SEC. 42.   Section 6610.9 of the Welfare and Institutions Code is amended to read:

6610.9.   Any public officer or employee who transports or delivers or assists in transporting or delivering or detains or assists in detaining any person pursuant to this article shall not be rendered ~~civilly or~~ criminally liable thereby unless it be shown that such officer s or employee acted maliciously or in bad faith or that his negligence resulted in bodily injury to such person.

**Comment:** See the comment to Welfare and Institutions Code Section 6005.

SEC. 43.   Section 10 of Chapter 641 of the Statutes of 1931 (Flood Control and Flood Water Conservation District Act) is repealed.

~~Sec. 10.   The negligence of a trustee or trustees of a flood control and water conservation district shall be imputed to the district to the same extent as if the water conservation and flood control district were a private corporation, and such district shall have power and authority to levy assessments for the purpose of paying any damage so incurred as hereafter provided.~~

**Comment:** This section is superseded by new Government Code Section 815.2 (liability of public entities for acts or omissions of public employees) and other legislation recommended by the Commission.

SEC. 44.   Section 21 of the Municipal Water District Act of 1911 (Chapter 671, Statutes of 1911) is repealed.

~~Sec. 21.   No director or other officer, agent, or employee of any district shall be liable for any act or omission of any officer, agent or employee appointed or employed by him unless he had actual notice that the person appointed or employed was inefficient or incompetent to perform the service for which such person was appointed or employed or unless he retains the inefficient or incompetent person after notice of the inefficiency or incompetency.~~

~~The district may employ counsel to defend any litigation brought against any director or other officer, agent, or employee thereof, on account of his official action, and the fees and expenses involved therein shall be a lawful charge against the district.~~

~~If any director or other officer, agent, or employee of the district is held liable for any act or omission in his official capacity, and any judgment is rendered thereon, the district, except in case of his actual fraud or actual malice, shall pay the judgment without obligation for repayment by such director or other officer, agent, or employee.~~

**Comment:** The provision relating to liability of district employees for acts or omissions of other employees is superseded by new Government Code Sections 815.8 (liability of public entities for lack of care in appointing or disciplining employees) and 820.8 (immunity of public employees for tortious acts of other persons).

The provisions relating to defense of employees and payment of judgments against district personnel are superseded by proposed Government Code Sections 825 to 825.6 (indemnification of public employees) and by other legislation recommended by the Commission.

SEC. 45.   (a)  This act applies retroactively to the full extent that it constitutionally can be so applied.

(b)  Nothing in this act revives or reinstates any cause of action that, on the effective date of this act, is barred either by failure to comply with any applicable statute, charter or ordinance requiring the presentation of a claim or by failure to commence an action thereon within the period prescribed by an applicable statute of limitations.

(c)  For the purpose of this section, any cause of action that did not exist prior to the effective date of this act but which is created by the retroactive application of this act shall be deemed to be subject to and to have been subject to:

(1)  Any claims procedure established by statute, charter or ordinance that would have been applicable thereto if the cause of action had accrued at the time the injury giving rise to the cause of action occurred.

(2)  Any statute of limitations that would have been applicable thereto if the cause of action had accrued at the time the injury giving rise to the cause of action occurred.

(d) Any cause of action that accrued prior to the effective date of this act and to which this act cannot constitutionally be made applicable is barred if:

(1) An applicable statute, charter or ordinance requires the presentation of a claim relating thereto and no claim is presented either before the expiration of the period prescribed in such statute, charter or ordinance, or before January 1, 1964, whichever is earlier; or

(2) An action thereon is not commenced either before the expiration of the period prescribed by the applicable statute of limitations (including Chapter 1404 of the Statutes of 1961), or before July 1, 1964, whichever is earlier; except that an action thereon may be commenced within six months after a claim relating thereto is rejected if the applicable statute, charter or ordinance requires such prior rejection before the action may be commenced.

**Comment:** Subdivision (a) provides that this act states the law governing the extent to which public entities may be liable for injury even in those cases where the injury occurred prior to the effective date of the act, prior to the moratorium legislation (Chapter 1404, Statutes of 1961), or prior to the decision in *Muskopf* v. *Corning Hospital District*, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961). Such retroactive application of this act may create new liabilities and may abolish recognized causes of action. The subdivision recognizes, however, that there may be a constitutional limitation on the extent to which it can be applied retroactively. But whether there is such a limitation, and if so what the extent of such limitation is, must be determined by the courts.

Subdivision (b) declares that this act does not revive any cause of action that has been barred because of a failure to comply with a claims presentation requirement or a statute of limitations. Subdivision (b), together with subdivision (c), also declares that a cause of action newly created by the retroactive application of this act is nonetheless barred if there has been no compliance with the claims procedure or statute of limitations that would have been applicable if the cause of action had accrued at the time of the injury. These provisions are to prevent stale claims and actions from being asserted on causes of action where the injury occurred long before the effective date of the act.

Subdivision (d) provides a limited period within which vested rights to causes of action that cannot be abolished by this act must be asserted. Of course, if the courts should hold that there is no constitutional impediment to the giving of full retroactive effect to this act, subdivision (d) would become unnecessary.

o

75831   8-62   4M          *printed in* CALIFORNIA STATE PRINTING OFFICE

(887—1000 blank)